# EXHIBIT "H"

Page 1

1          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2          CIVIL ACTION NO. 2:22-CV-0688 (JMY)

3    _____

4    AMERICAN ENVIRONMENTAL
     ENTERPRISES, INC., D/B/A
5    THESAFETYHOUSE.COM,

6    Plaintiff,

7    vs.                                Oral Deposition of:

8                                       DAPHNA ZEKARIA

9    MANFRED STERNBERG, ESQUIRE, AND
     MANFRED STERNBERG & ASSOCIATES,
10   PC, AND CHARLTON HOLDINGS GROUP,
     LLC, AND SAMUEL GROSS A/K/A SHLOMO
11   GROSS, AND GARY WEISS, AND
     ASOLARDIAMOND, LLC A/K/A ASOLAR,
12   LLC, AND DAPHNA ZEKARIA, ESQUIRE,
     AND SOKOLSKI & ZEKARIA, P.C.,

13
     Defendants.
14   _____

15
          U N C E R T I F I E D   T R A N S C R I P T   of
16   the stenographic notes of the proceedings in the
     above-entitled matter, as taken by and before CAYCE
17   KILEY, a Certified Court Reporter and Notary Public of
     the State of New Jersey, held at Bluestone Country Club,
18   711 Boehms Church Road, Blue Bell, Pennsylvania, on
     Tuesday, April 2nd, 2024, commencing at 12:07 p.m.

19

20
                    TATE & TATE
21            Certified Court Reporters
             825 Route 73 North, Suite G
22             Marlton, New Jersey 08053
           (856) 983-8484 - (800) 636-8283
23               www.tate-tate.com

24

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT        April 2, 2024

## Page 2

1  A P P E A R A N C E S :
2
3  LIGHTMAN & MANOCHI
   BY: GARY P. LIGHTMAN, ESQUIRE
4  600 Germantown Pike, Suite 400
   Plymouth Meeting, PA 19422
5  (215) 760-3000
   garylightman@lightmanlaw.com
6  Representing the Plaintiff.
7
8
9  GOLDBERG & SEGALLA
   BY: SETH LAVER, ESQUIRE
   1700 Market Street, Suite 1418
10 Philadelphia, PA 19103-3907
   (267) 519-6800
11 slaver@goldbergsegalla.com
   Representing the Defendants Manfred Sternberg, Esquire,
12 and Manfred Sternberg & Associates, P.C.
13
14
15 REBAR KELLY
   BY: PATRICK HEALEY, ESQUIRE
16 470 Norristown Road, Suite 201
   Blue Bell, PA 19422
17 (484) 344-5340
   phealey@rebarkelly.com
18 Representing the Defendants Sokolski & Zekaria, P.C. &
   Daphna Zekaria.
19
20 A L S O   P R E S E N T :
21 Daniel Scully
22 Gary Weiss
23
24

## Page 3

1           I N D E X
2  WITNESS:     DIRECT  CROSS  REDIRECT RECROSS
3  DAPHNA ZEKARIA
   BY ATTORNEY LIGHTMAN  6
4
5
6           E X H I B I T S
7  EXHIBIT     DESCRIPTION        PAGE
8  Exhibit DZ-1    Amended notice of      18
                   deposition
9
   Exhibit DZ-2    Article            40
10
   Exhibit DZ-8    Case summary         25
11
   Exhibit DZ-9    WhatsApp messages     66
12
   Exhibit DZ-10    Text messages        66
13
   Exhibit DZ-11    Copy of Judge Younge's   100
14                  order dated April 1, 2024
15 Exhibit DZ-12    Responses and objections of  101
                    defendants Daphna Zekaria,
16                  Esquire, and Sokolski and
                    Zekaria P.C. to plaintiff's
17                  interrogatories
18 Exhibit DZ-13    Responses and objections of  101
                    defendants Daphna Zekaria,
19                  Esquire, and Sokolski and
                    Zekaria P.C. to plaintiff's
20                  first request for
                    production of documents
21
22           (Exhibits retained by counsel.)
23
24

## Page 4

1     I N F O R M A T I O N   R E Q U E S T E D
2  DESCRIPTION                PAGE  LINE
3  Official resignation of Robert Sokolski   21   16
4  Picture                    58   11
5
6     Q U E S T I O N S   M A R K E D
   QUESTION TEXT               PAGE  LINE
7  And when was the last time you       31   19
   represented Stacey?
8
   Did you represent Stacey Panagakos    33   14
9  in any legal matter after
   January 1, 2022, when this dispute arose?
10
   You're not going to state whether you   37   11
11 live with your husband?
12 What's your residence address?       37   14
13 What are your other email addresses?    38   17
14 How long have you lived in your residence  38   23
   address?
15
   What crime?                 40   10
16
   Is the first column and part of the     42    1
17 second column where it talks about
   an attorney being charged with --
18 a New York state lottery winner hiring
   you, making promises to withhold a
19 portion of her winnings in the firm's
   escrow account and an additional
20 portion on her behalf, and saying you
   collected a total of 230,000 from the
21 client transactions; and instead of
   holding the money or investing it, you
22 made large transfers to other individuals
   which she would have not been able to
23 make without her client's funds.
   Is that a reference to the charges that
24 were brought against you?

## Page 5

1  D A P H N A   Z E K A R I A ,
2     Stating the address 267 Main Street, Second Floor,
3  Huntington, NY, 11743, having been first duly sworn by a
4  Notary Public of the State of New Jersey, was examined
5  and testified as follows:
6
7     THE WITNESS:  I just wanted to apologize for
8  the delay this morning.  I -- I'm recently on a
9  medication that has messed with my sleeping schedule.  I
10 normally wake up without any prompting between three and
11 four in the morning.  My plan was to wake up at five,
12 six o'clock.  And I did set my alarm.  I woke up an hour
13 late which shifted the balance of train travel by over
14 an hour.  I live an hour from Penn Station.  So I
15 appreciate delaying it now.  I just wanted on the
16 record for why we started late.
17    ATTORNEY LIGHTMAN:  Okay.  I'd like the record
18 to -- thank you for that.  I'd like the record to
19 reflect that at approximately 7:30 this morning, Patrick
20 Healey called me, told me you missed your train and
21 wanted to cancel the deposition.  I requested that he
22 contact you and tell you to take the next train or an
23 Uber and that we would delay the deposition.  He said he
24 would see what he could do and then called me back and

(856) 983-8484                    Tate & Tate, Inc.                    (800) 636-8283
825 Route 73 North, Suite G, Marlton, New Jersey 08053

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.                    Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

---

Page 6

1  said we can start at noon which is fine today.  We may
2  have to take you a second time, probably --
3        THE WITNESS:  Well, I don't think we will be.
4  ATTORNEY LIGHTMAN:  Well, we'll see.  But --
5        THE WITNESS:  I know we won't.
6        (Overlapping speakers.)
7  THE COURT REPORTER:  One at a time.
8  ATTORNEY LIGHTMAN:  I want to thank Mr. Healey.
9        THE WITNESS:  And I wanted to thank you for
10  accommodating the noon appointment.  I didn't think you
11  would suggest that which is why I wanted to reschedule.
12
13        DIRECT EXAMINATION BY ATTORNEY LIGHTMAN:
14  Q.  Okay.  Good morning.
15  A.  Good morning.
16  Q.  Or good afternoon.  By the way, the record will
17  reflect the deposition started at 12:07.  My name is Gary
18  Lightman.  And as you're aware, I represent the plaintiff
19  in this case, American Environmental Enterprises doing
20  business as The Safety House.  The person seated to my
21  right is Dan Scully, the principal of the client.  At the
22  end of the table, that's Seth Laver.  And he represents
23  the Sternberg defendants.  To his right is Gary Weiss who
24  you're aware of and so on.  I'm going to be asking you a

---

Page 7

1  series of questions today.
2        First, please make sure you understand my
3  question.  If not, let me know and I'll do whatever is
4  necessary to make my question clear.
5        Second, please answer my question verbally so the
6  court reporter sitting between us can transcribe what
7  you're saying.  Don't talk over me and I won't talk over
8  you.  Let one person talk at a time.  Please answer each
9  question as fully and completely and truthfully as
10  possible.  It's okay to say "I don't remember" or "I
11  don't recall" if you don't remember an answer to a
12  question or you don't recall.  But if you do remember the
13  answer and say "I don't remember," that's perjury.
14  A.  I'm sorry?
15  Q.  I said --
16  A.  I didn't --
17        (Overlapping speakers.)
18  Q.  If I ask you a question and you remember an
19  answer to a question but tell me "I don't remember" --
20  A.  Got it.  Got it.  Got it.  It just rolled into.
21  Q.  Okay.  Are you under the influence of any drugs
22  or medications or suffering from any physical or mental
23  disability that would affect your ability to think
24  logically and clearly, recall past events?

---

Page 8

1  A.  Not sure.  I mean, I don't think so.
2  Q.  Okay.
3  A.  I'm going to put it on the record because I'm
4  not embarrassed about it.  I've recently been
5  hospitalized, in large part due to a lot of things that
6  other people have done.  I am not blaming you, Mr.
7  Lightman.  But what I am saying is I was recently
8  hospitalized and I'm on medication.  Now, does that
9  medication -- we spoke about this in the car -- impact --
10        ATTORNEY HEALEY:  You don't have to tell him
11  what we discussed.
12        THE WITNESS:  Well, that's all I'm going to
13  say.
14  BY ATTORNEY LIGHTMAN:
15  Q.  Okay.  Does the medication --
16        (Overlapping speakers.)
17  THE COURT REPORTER:  One at a time.
18        (Overlapping speakers.)
19  THE COURT REPORTER:  Guys, you're talking at
20  the same time and I'm not going to be able to take this
21  down --
22  A.  I was literally speaking and you did start this
23  out by saying --
24        (Overlapping speakers.)

---

Page 9

1  A.  I don't know.  I'm not my own doctor.  I don't
2  think it does.  But I'm telling you I'm on medication.  I
3  was recently hospitalized.
4  Q.  Okay.
5  A.  Not more than a month ago because my medication
6  is not even a month old.
7  Q.  What is the medication you're doing?
8  A.  I don't even know the name of it.
9  Q.  Do you have it in your pocketbook?
10  A.  Yes, I do.  Because I don't know the name of it.
11  It's a generic version of something else.
12  Q.  May I see it, please?
13  A.  No, I'm going to -- I gave it to my attorney.
14        ATTORNEY HEALEY:  Quetiapine,
15  q-u-e-t-i-a-p-i-n-e.
16  A.  It impacts --
17  Q.  It should say the brand name of that -- that
18  generic --
19  A.  It doesn't.  It doesn't.  It tells you --
20        (Overlapping speakers.)
21  THE COURT REPORTER:  I'm sorry, guys.  If you
22  don't all speak one at a time --
23        (Overlapping speakers.)
24  THE COURT REPORTER:  -- I won't be able to do

---

3 (Pages 6 to 9)

Page 10

1   this. I won't be able to take it down or certify it.
2   So it has to be one at a time.
3          THE WITNESS: Right. But he should honor --
4       ATTORNEY HEALEY: Just --
5          (Overlapping speakers.)
6       THE COURT REPORTER: I'm just making sure
7   everyone is clear on this.
8       ATTORNEY LIGHTMAN: Did you get the spelling of
9   the name?
10      THE COURT REPORTER: I know the medication,
11  yes. Thank you.
12  BY ATTORNEY LIGHTMAN:
13      Q. Okay. Any other medication?
14      A. No.
15      Q. All right. So if I ask you a question and you
16  give me an answer, I'm going to assume, first, that you
17  understood my question and, second, are answering it in
18  accordance with these instructions. Okay?
19      A. That's fine.
20      Q. You're represented by an attorney today. That's
21  Patrick Healey seated to your left?
22      A. Oh, yes.
23      Q. Okay. And you're aware that you're under oath
24  subject to the penalties of perjury?

Page 11

1       A. I am aware.
2       Q. Okay. So, for example, you have the absolute
3   right to plead the Fifth Amendment at any time --
4       A. I'm not speaking about pleading the fifth. I'm
5   speaking about I object because I know that the district
6   attorney in Suffolk County is still investigating me and
7   has spoken to you. So I'm not letting -- and my criminal
8   defense lawyer does not yet know that this is happening
9   here and today.
10         I wanted to comply to answer questions about
11  where the money went pursuant to my client's directive
12  pursuant to Mr. Sternberg's directive. But anything
13  beyond that, it's not about pleading the fifth. I'm not
14  letting discovery happen through you. You're not going
15  to be using this deposition as a little badge to do
16  investigative work for the DA where my case is coming up.
17         If anything, if you don't want just answers to
18  where the money went -- because I have no problem with
19  that. I never did have a problem with that. But I did
20  have a problem with things called attorney-client
21  privilege and having waivers for that, which I understand
22  that Mr. Weiss did not give. You can ask him. We're
23  going to ask him if that's been revised. But where the
24  money went, I'm happy to answer. What the arrangements

Page 12

1   were about that money, it's already been asked and
2   answered by many people about this.
3          What you're not going to do, what I will get up
4   and walk out -- and I'm happy to get sanctioned if that's
5   what you want to try to do. If what you're looking to do
6   is be detective for the Suffolk County District Attorney
7   to aid in investigation that I won't participate in, you
8   know, to add potentially or create more drama for my
9   life. As it is, my life isn't good. You don't need to
10  add to it. She can or cannot add to it. But I won't let
11  you help her add to it.
12         So if you'd like to help your client, I'm willing
13  to do that. Get -- know where the money went. That's
14  not a problem. It's never been a problem. We've given
15  you most of the records I have. I'm in the middle of
16  shutting down a practice so I have things everywhere. I
17  will have access to a more organized version of my files
18  hopefully within the next two weeks.
19      Q. Are you finished?
20      A. Yeah.
21      Q. Okay. I'm here to talk about the two million
22  dollars that's -- my client paid and didn't get his money
23  back for the goods he purchased. If I ask you a
24  question -- any question -- you have the absolute right

Page 13

1   under the law to refuse to answer under the Fifth
2   Amendment.
3       A. It's not because of the Fifth Amendment --
4       Q. Please, please let me finish --
5          ATTORNEY HEALEY: Daphna, let him ask -- let
6   him --
7   BY ATTORNEY LIGHTMAN:
8       Q. If I ask you a question and you assert your
9   Fifth Amendment rights -- for example, if I say to you
10  "Isn't it true it's raining out?" and you say "I assert
11  my Fifth Amendment rights" --
12      A. That's ridiculous.
13         (Overlapping speakers.)
14         ATTORNEY HEALEY: Daphna, let him -- this will
15  go much quicker --
16  BY ATTORNEY LIGHTMAN:
17      Q. Can you please let me -- if I ask you a question
18  like "Isn't is it true that it's raining out" --
19      A. Am I boring you?
20         ATTORNEY HEALEY: Daphna, let's focus on the
21  deposition.
22  BY ATTORNEY LIGHTMAN:
23      Q. If I ask you a question like "Isn't it true it's
24  raining out?" and you answer "I assert my Fifth Amendment

4 (Pages 10 to 13)

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT      April 2, 2024

Page 14

1  rights and refuse to answer the question," you have every
2  right to assert a Fifth Amendment right in response to
3  any question.  But if you do that, then I am entitled to
4  get the jury to adversely infer from your refusal to
5  answer the question that it is in fact raining outside.
6  That's what the assertion --
7      **A. Right.**
8      Q. Please --
9          (Overlapping speakers.)
10     **A. I know the answer.  What I'm saying is --**
11         (Overlapping speakers.)
12     **A. I'm objecting not just on Fifth Amendment.  On**
13  **many grounds.  I'm not letting you become the prosecutor.**
14     Q. I don't intend to be.
15     **A. Right.  So my objection is not on Fifth**
16  **Amendment so that you can or so that she can concoct it**
17  **somehow.  My objection is on attorney-client privilege.**
18  **It's on Fifth Amendment potentially.  We don't even know.**
19  **And it's not letting you be the investigator into things**
20  **that are beyond the scope of where this money went.**
21         **We gave you proof that Mr. Weiss received money.**
22  **We gave you proof that -- that they had a 65-35 split,**
23  **that money went to them, or how it was directed by them.**
24  **And Manfred approved it.  Manfred himself said that I am**

Page 15

1  **not the blameworthy party.**
2          **I never met Manfred actually.  I spoke to him a**
3  **few times on the phone to say, Is this okay?  You know,**
4  **should -- you know, should you get authority?  He said**
5  **we're okay.  I have authority.  And he gave authority to**
6  **release the money.  What more do you want from me?**
7      Q. Are you finished?
8      **A. Yeah.**
9      Q. Okay.  How long have you been a practicing
10 attorney?
11     **A. Since 1997.**
12     Q. And currently are you in good standing?
13     **A. Yes.**
14     Q. Okay.  And you're licensed in New York?
15     **A. I'm sorry?**
16     Q. Are you licensed in --
17     **A. Yes.**
18     Q. -- any other jurisdictions?
19     **A. No.**
20     Q. And have you taken depositions before --
21     **A. Well, actually, I'm sorry.  Federal would be --**
22  **yeah.**
23     Q. All right.  State?  Any other state courts?
24     **A. No, no.**

Page 16

1      Q. Have you taken any depositions over your --
2      **A. Career?**
3      Q. -- 30 years of practice?
4      **A. Well, it's not 30.**
5      Q. How many?  When did you start --
6      **A. No, no.  When I graduated law school is '96 or**
7  **'97.**
8      Q. So almost thirty --
9      **A. Yeah, yeah.**
10     Q. -- it's 17 -- 18 years?
11         **ATTORNEY HEALEY:** Just to clarify the record --
12     Q. 20 years?
13         **ATTORNEY HEALEY:** -- which federal courts?
14         (Overlapping speakers.)
15         THE WITNESS:  I think it's eastern and
16  southern.  And honestly I don't know if I renewed them.
17  If there was a renewal thing.
18  BY ATTORNEY LIGHTMAN:
19     Q. In the 27 years practice, have you taken any
20  depositions?
21     **A. Yeah.**
22     Q. How many?
23     **A. I don't know.**
24     Q. Over 50?

Page 17

1      **A. I don't know.**
2      Q. Okay.  Have you --
3      **A. Again I don't know.**
4      Q. Have you defended depositions --
5          (Overlapping speakers.)
6          THE COURT REPORTER:  I'm sorry.  One at a time.
7      **A. Yes.  I've defended and taken.**
8      Q. Okay.  So you're familiar with how this works,
9  right?  I'd like to hand you what's been marked --
10     **A. I mean, in other words, you just said "right"**
11  **and you didn't wait for my answer and that --**
12         **ATTORNEY HEALEY:** Daphna --
13  BY ATTORNEY LIGHTMAN:
14     Q. Are you familiar with how the deposition
15  procedures work in general?
16     **A. Not in federal court.**
17     Q. You've never taken a deposition in federal court
18  --
19     **A. Actually no, no.**
20     Q. Okay.  Never --
21         (Overlapping speakers.)
22         THE COURT REPORTER:  I'm sorry.  One at a time.
23  You need to slow down.  I'm not going to be able to take
24  this down.

5 (Pages 14 to 17)

Page 18

1  BY ATTORNEY LIGHTMAN:
2      Q. I'd like to hand you what's been marked as
3  Daphna Zekaria 1.
4          (Exhibit DZ-1 was marked for
5          identification.)
6      A. What is this?  I just realized I never did --
7      Q. I will represent to you that Daphna Zekaria 1 is
8  a true and correct copy of the amended notice of
9  deposition of Daphna Zekaria, Esquire, and Sokolski and
10  Zekaria P.C. with requests for production of documents
11  that we served on you through your attorney on or about
12  March 8th, 2024.  Did you see this before?
13      A. Not really.  I was in the hospital.
14      Q. You've never seen it at any time --
15      A. I've seen it but I have not studied it.
16      Q. But you received it before today --
17      A. You asked and I answered it.
18      Q. Did you receive it before today?
19      A. I received this page before today.
20      Q. Okay.  So you received.  And are you testifying
21  here today both individually and as a designated
22  representative?
23      A. I'm the only person in the corporation.
24      Q. Mr. Sokolski --

Page 19

1      A. He has not been part of that corporation for
2  over ten years, and he withdrew from it a couple months
3  ago I think.
4      Q. So your answers today are both --
5      A. I'm the only one.
6      Q. Could you please let me finish --
7      ATTORNEY HEALEY:  Daphna, just wait until he --
8      Q. -- my question and then I will give you the
9  courtesy of giving an answer without interruption.  Okay?
10  I'll take your silence as assent.
11      So you are testifying here today both
12  individually and as the designated representative for
13  defendant Sokolski and Zekaria P.C.?
14      A. Yes, as the only representative.
15      Q. Okay.  And when your -- the Sokolski -- Sokolski
16  is Gary, was your husband?  Sokolski?  Robert Sokolski?
17      A. I'm sorry?
18      Q. The Sokolski --
19      A. Yes, yes, yes.  I didn't know what your question
20  was.
21      Q. You're married, right?
22      A. Yes.
23      Q. And Robert Sokolski is your husband, right?
24      A. Yes, yes, yes.

Page 20

1          (Overlapping speakers.)
2      Q. And he --
3      A. No, it's just that you're asking it weird, so.
4      Q. And when did he withdraw from Sokolski --
5          (Overlapping speakers.)
6      THE COURT REPORTER:  Again, wait until the end
7  of the question, please.  I'm not going to be able to --
8      THE WITNESS:  I apologize.
9  BY ATTORNEY LIGHTMAN:
10      Q. Can you give me an approximation?
11      A. I don't have the date.  A few months ago.  It
12  was to formalize something that happened over a year ago.
13      Q. What happened over a year ago?
14      A. That he left the firm.  He wasn't working there.
15      Q. So he left the firm over about a year ago --
16      A. Over a year ago and it was to culminate the fact
17  that he had been absent from the firm for over ten years.
18      Q. Why was he absent?
19      A. He had been sick.  He basically consulted from
20  home on occasion.  He was sick.  He had an assortment of
21  medical conditions.  He had his own issues that I can't
22  speak to necessarily.  But outside of that, he did
23  consult on some cases.
24      But when COVID hit we didn't quite shut down but

Page 21

1  we -- well, to back up, we primarily do landlord tenant
2  practice.  And the tenant regulations -- format -- the
3  laws for tenant protection changed in 2019.  So that
4  impacted the nature of our long-term business.  And after
5  that changed, he worked less.  But as that -- even less
6  than he did in the ten years prior.  But he would work
7  from home or here and there do some harder case.
8      But when COVID hit and we were shutting --
9  contemplating shutting down, we had too many cases to
10  just simply shut down.  So we kind of kept it going to
11  see when two weeks became two years would end.  And so he
12  hasn't really practiced in all this time, but.  So he
13  gave official resignation a few months ago I think.
14      Q. There's a document evidencing that?
15      A. I believe so but I don't have it.
16      Q. All right.  I request you produce that document
17  --
18      A. I will --
19      ATTORNEY LIGHTMAN:  Every -- Ms. Court
20  Reporter, every time I request a document, can you mark
21  it so that I can go back --
22      A. Yes, I will get that.  He told it to me.
23      Q. And you'll give me the document from Robert --
24      A. I have --

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 22

1      Q. -- from Robert Sokolski terminating his
2  affiliation with Sokolski and Zekaria, right?
3      A. Yes.
4      Q. Is he still practicing law?
5      A. He's unsure of what he's going to do. He is
6  uncertain of whether he wants to take on more clients.
7      Q. Okay. Was he still practicing law in 2022 --
8      (Overlapping speakers.)
9      A. Well, he has no cases at the moment.
10     Q. Would you please --
11     A. You asked. I answered. I said so -- it's not a
12  yes or no.
13     Q. I didn't even finish my question. Please let me
14  ask the question and then you can answer it. Okay?
15     A. Okay.
16     Q. Thank you. Was he still practicing law back in
17  2022, January, February, March, at or about the time the
18  events in this case were transpiring?
19     A. Practicing law? Licensed to. But actually
20  working on the business of Sokolski and Zekaria? Very
21  far and few between.
22     Q. Okay.
23     A. He had nothing to do with this case, with
24  probably 95 percent of our cases.

Page 23

1      Q. Did he ever -- who are you representing in
2  connection with this transaction?
3      A. He's right there. Gary Weiss.
4      Q. Gary Weiss. Okay. Were you representing anyone
5  else in connection with this transaction --
6      A. No, no.
7      Q. Were you representing Sam Gross --
8      A. No, he had Manfred.
9      Q. Were you representing any of Gary Weiss's
10  entities?
11     A. Right. Gary Weiss and whoever his entity would
12  have been which I believe was Asolar.
13     Q. Asolar or Asolar Diamond?
14     A. I call it Asolar. I don't remember the
15  actual -- whether it's Asolar, Inc., or Asolar Diamond.
16  But I represented Gary Weiss.
17     Q. All right. So when we say Asolar, we're going
18  to refer to Asolar Diamond?
19     A. We're going to refer to Gary Weiss.
20     Q. Okay. And you weren't representing Sam Gross in
21  this deal?
22     A. No.
23     Q. You weren't representing any of Sam Gross's
24  entities?

Page 24

1      A. No.
2      Q. You weren't representing Manfred Sternberg?
3      A. Manfred Sternberg represented himself.
4      Q. So the answer to my question is --
5      (Overlapping speakers.)
6      A. My answer is no.
7      Q. -- no, you weren't representing him. So the
8  only person you were representing in connection with this
9  deal was Gary Weiss?
10     A. Correct.
11     Q. Ad when did you first start representing Gary
12  Weiss?
13     A. I don't have that date memorized.
14     Q. Did you represent Gary Weiss at all before this
15  transaction?
16     A. I represented Gary Weiss in connection with this
17  transaction and another transaction. And I'm not sure if
18  they were simultaneous or one came before the other.
19     Q. What was the other transaction?
20     A. There's another transaction, and I'm going to
21  allege and I'm going to -- not -- I'm going to object
22  because --
23     ATTORNEY HEALEY: Attorney-client privilege.
24     A. -- attorney-client privilege --

Page 25

1      Q. Was it a lawsuit?
2      A. -- which he has not I believe waived.
3      Q. Is it a lawsuit?
4      A. He has not -- I -- that's it.
5      ATTORNEY LIGHTMAN: Mark this as DZ-8, please.
6      (Exhibit DZ-8 was marked for
7      identification.)
8      ATTORNEY LIGHTMAN: Before that, Mr. Weiss, can
9  she disclose the other matters for which you retained
10  her?
11     GARY WEISS: This one?
12     ATTORNEY LIGHTMAN: No, she said was there
13  another matter. Before we get to this, can she disclose
14  to me the name of that other matter?
15     GARY WEISS: That other matter which is this --
16     ATTORNEY LIGHTMAN: This is the one? All
17  right.
18     THE WITNESS: I don't know what you're all
19  looking at.
20     ATTORNEY LIGHTMAN: All right. Can she
21  disclose it?
22     GARY WEISS: This one?
23     ATTORNEY LIGHTMAN: Is there another one
24  besides this?

USDC, ED of PA         American Environmental Ent. v. Manfred Sternberg, Esq., et al.         Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT         April 2, 2024

Page 26

1    **GARY WEISS:** Can you spell the name?
2    **ATTORNEY LIGHTMAN:** I will but she said there
3    were --
4    **GARY WEISS:** Can you spell the name, please?
5    I'll answer you.
6         (Overlapping speakers.)
7    **THE COURT REPORTER:** One at a time.
8    **ATTORNEY LIGHTMAN:** Blue River 4747 LLC.
9    **GARY WEISS:** Okay. She can.
10   **ATTORNEY LIGHTMAN:** Okay. Is that the second
11   -- okay.
12   BY ATTORNEY LIGHTMAN:
13   Q. I'd like you to look at --
14   **A. Well, how many others are we talking about?**
15   Q. Could you look at DZ-8, please.
16   **ATTORNEY HEALEY:** Look at this. This is --
17   **A. I'm sorry.**
18   Q. I will represent to you that DZ-8 is a search I
19   found online from the New York County Court System, a
20   case summary for Blue River 4747 LLC versus Bullion
21   Trading LLC. And it indicates in the case summary
22   section --
23   **A. Yes, this is the case.**
24   Q. This is the second case --

Page 27

1    **A. Yes.**
2    Q. Let me ask you a question.
3    **A. There's no more questions that I will answer.**
4    Q. Well, no. No, no. It's not attorney-client
5    privilege --
6    **A. Well, it's not --**
7    **ATTORNEY HEALEY:** Let him ask -- let him --
8    **A. It's not relevant.**
9         (Overlapping speakers.)
10   **ATTORNEY HEALEY:** Stop. Let him answer the
11   question -- let him ask the question.
12   BY ATTORNEY LIGHTMAN:
13   Q. Look at page 2. Who does it identify as the
14   plaintiff's attorney?
15   **A. Robert Sokolski but I used -- he -- it was -- we**
16   **recently have had trouble changing it. He set it up over**
17   **25 years ago. He is not the attorney of record. I did**
18   **the lawsuit. I drafted it. The NYSCEF that is linked to**
19   **my Sokolski and Zekaria email address and it's -- he**
20   **created it over 30 years ago or 27 years ago.**
21   Q. So Robert -- if I get the actual entry of
22   appearance or the complaint that was filed, it will not
23   be Robert Sokolski's name? It will be your name --
24   **A. Well, it shouldn't be. It will be me.**

Page 28

1    Q. Did you sign the complaint that was filed in
2    this case --
3    **A. I don't remember.**
4    Q. Okay.
5    **A. I mean --**
6    Q. Is Robert Sokolski representing the plaintiff in
7    this case?
8    **A. Robert Sokolski didn't even draft this pleading.**
9    Q. Okay. So your answer is no --
10   **A. My -- my my --**
11        (Overlapping speakers.)
12   Q. -- Robert Sokolski is not representing the
13   plaintiff in this case?
14   **A. No, no. My associate, Mark Davies, at the**
15   **time -- my associate at the time. He doesn't represent**
16   **now. He doesn't work for me now. But at the time, I**
17   **didn't have Robert's help even on the drafting of the**
18   **complaint.**
19   Q. Does Sokolski and Zekaria have any associates
20   now?
21   **A. No.**
22   Q. Besides Mark Davies, were there any other
23   associates that Sokolski --
24   **A. Over the years plenty of different rotating**

Page 29

1    associates.
2    Q. How about from January 1, 2022, to the present?
3    **A. I can't be -- I don't want to misspeak. I don't**
4    **know.**
5    Q. All right.
6    **A. I mean, I know that Mark Davies may have been**
7    **one. But, you know, in giving you an answer on actual**
8    **dates, we've had other not just attorney associates but**
9    **we have had other legal assistants.**
10   Q. Okay. Did -- Mark Davies you said drafted the
11   complaint --
12   **A. I believe he did, yeah.**
13   Q. So he was working for Sokolski and Zekaria in
14   2022?
15   **A. I believe he was.**
16   Q. Did he have any involvement in the Gary Weiss,
17   Sam Gross, Manfred Sternberg, SafetyHouse transactions,
18   the subject of my lawsuit?
19   **A. No.**
20   Q. And when did --
21   **A. None of us did.**
22   Q. How do you spell his last name?
23   **A. Davies?**
24   Q. Mm-hmm.

8 (Pages 26 to 29)

USDC, ED of PA    American Environmental Ent. v. Manfred Sternberg, Esq., et al.    Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT    April 2, 2024

Page 30

1      A. D-a-v-i-e-s.
2      Q. And where is he now?
3      A. He's for a long time been at another law firm.
4  I'm not sure where he is now --
5      Q. In New York City?
6      A. I believe so.  I don't know.  He left not under
7  bad terms but he left to pursue other things.
8      Q. Okay.  Did you represent Taylor Panagakos at
9  all?
10      A. I don't believe so.
11      Q. How about Stacey Panagakos?
12      A. At some point, yes.
13      Q. When did you represent Stacey?
14      A. She had a ticket in Rockefeller Center.
15      Q. Speeding ticket?
16      A. No.  I forget what kind of ticket.
17      Q. Moving violation?
18      A. No.
19      Q. What kind of ticket?
20      A. I don't remember.  You keep asking me --
21      ATTORNEY HEALEY:  Daphna, you can just say "I
22  don't remember."
23      THE WITNESS:  I did say that and he keeps
24  going --

Page 31

1      (Overlapping speakers.)
2      ATTORNEY HEALEY:  No comments.  This will take
3  much longer than it needs to.
4  BY ATTORNEY LIGHTMAN:
5      Q. Is that the only matter in which you represented
6  Stacey?
7      A. No.
8      Q. What other matters?
9      A. Are you going to keep cutting me off?  Because I
10  was trying to recall.  I think it was something about a
11  fence.  I don't know.  And it was something with the
12  town.  And in a foreclosure proceeding.  And I think
13  that's it.  I could be wrong.
14      Q. Who is Stacey Panagakos?
15      A. She's Sam Gross's wife I believe.
16      Q. And --
17      A. Well, not -- or the mother of his child, his
18  wife.  And Taylor --
19      Q. And when was the last time you represented
20  Stacey?
21      A. I don't know.
22      Q. Was it --
23      A. And I'm not -- you know what?  At this point, I
24  don't think that I'm going to answer any more questions

Page 32

1  because it goes so far afield of --
2      ATTORNEY HEALEY:  Daphna, let's just --
3      A. I'm going to --
4      ATTORNEY HEALEY:  -- answer the questions.
5      A. You know what?  I object.
6      Q. Okay.  Thank you.  Let the --
7      A. That's it.
8      ATTORNEY LIGHTMAN:  Every time she refuses to
9  answer --
10      (Overlapping speakers.)
11      THE COURT REPORTER:  One at a time.  I'm not
12  going to be able to certify this transcript soon, guys.
13  You have to speak one at a time or --
14      (Overlapping speakers.)
15      ATTORNEY LIGHTMAN:  Please, Madam Court
16  Reporter, every time she refuses to answer, mark that as
17  well.
18  BY ATTORNEY LIGHTMAN:
19      Q. Did you represent Stacey --
20      A. I refuse to answer.
21      Q. Did you represent Stacey Panagakos at any time
22  after January 1, 2022 --
23      A. I refuse to answer.
24      Q. May I please finish my question?  Thank you.

Page 33

1      A. No because you asked it and I'm answering you
2  that I refuse to answer --
3      ATTORNEY HEALEY:  Daphna, let --
4      A. -- about Stacey or about anything beyond this
5  case with Gary Weiss.
6      ATTORNEY HEALEY:  Daphna --
7      A. I mean, it has nothing to do with your case.
8      ATTORNEY HEALEY:  Daphna, let him answer the
9  question and give the answer you're going to give.
10      THE WITNESS:  My answer is an objection.
11      ATTORNEY HEALEY:  I understand that.  But let
12  him ask the question.
13  BY ATTORNEY LIGHTMAN:
14      Q. Did you represent Stacey Panagakos in any legal
15  matter after January twenty -- January 1, 2022, when this
16  dispute arose?
17      A. Objection.
18      Q. You're refusing to answer?
19      A. I'm refusing to answer on multiple grounds.  Not
20  Fifth Amendment or attorney-client privilege or one or
21  the other.  I'm just refusing to answer.  Because --
22      Q. You don't have to give me a reason.
23      A. Well, I do because you're going to say that I'm
24  being obstructionist.  I'm not.  I'm saying I refuse to

9 (Pages 30 to 33)

Page 34

1  answer because of multiple grounds.
2      Q. Did --
3      A. I know she's been investigated.  You know, I've
4  heard that from investigators.
5      Q. Did Stacey Panagakos have anything to do with
6  the transactions which are the subject of this lawsuit?
7      A. This lawsuit I will answer to.  Yes.
8      Q. What did she have to do?
9      A. Well, she received checks.  I don't know if she
10 had anything to do with the actual negotiation of the --
11 of the transaction between Manfred and your client.
12     Q. Why did she receive checks?
13     A. Because she was part of Charlton Holdings.
14     Q. She's a principal of Charlton Holdings?
15     A. What I understood, yes.
16     Q. How did -- what's your understanding based on?
17     A. Because she -- apparently the corporate
18 formation -- corporate -- excuse me -- formation was to
19 include her as the principal.
20     Q. Did you see the corporate --
21     A. No.
22     Q. -- formation documents?
23     A. No.  But I was told to write to her because she
24 -- either to her or to Charlton.

Page 35

1      Q. Who told you to write checks to Stacey --
2      A. Mr. Gross as well as I believe her daughter
3  even.
4      Q. So Stacey -- her daughter's Taylor?
5      A. Yes.
6      Q. So Taylor Panagakos told you to write --
7      A. I was told when to write checks, and it was
8  either to Charlton -- you have the copies of the checks.
9  And that's why it was written to them because they were
10 part of Charlton Holdings.
11     Q. Could you please let me finish my question
12 before you answer?  My question is did Taylor Panagakos
13 tell you to write checks to Stacey Panagakos?
14     A. She may have.  She may have at least in one
15 instance.  But I would have been directed when a check
16 was written to her or to Stacey or to Charlton or to
17 anyone that was the beneficiary of that portion that was
18 to Mr. Gross.
19     Q. Okay.  Who gave you authority to write checks to
20 Taylor -- excuse me -- to Stacey?
21     A. She did at least on one occasion say it's okay
22 to send to me.  He did.
23     Q. He meaning?
24     A. Meaning Sam Gross as -- and that's it.  He said

Page 36

1  she was part of Charlton Holdings.
2      Q. So your client is Gary Weiss, right?
3      A. My client is Gary Weiss who gave authority to
4  cut 65 percent to him and 35 percent to Gross.  And Gross
5  then, who had been a former client -- and that's all I'm
6  asking -- answering -- said I don't want the money
7  directly.  I owe this one some money and I owe that one
8  some money and the rest can go to my company because they
9  owe more money.
10     Q. So we'll get to the 65-30.  But from the 35
11 percent cut --
12     A. He had it divvied up, yes.  Yes.  And growl at
13 me all you want.  Yes, the 35 percent is how they all got
14 paid.  But Mr. Weiss got his 65 percent.  Yes.  Next
15 question.
16     Q. From the 35 percent that you claim was to go to
17 Gross that -- from that distributions from that Sam Gross
18 told you to pay Taylor?
19     A. Yes.
20     Q. Did he ever tell you to pay Stacey?
21     A. Yes.
22     Q. Did he ever tell you to pay anyone other than
23 Taylor or Stacey?
24     A. Yes.  And you have a list of the checks that I

Page 37

1  was able to find so far.  Ron Kuby for legal fees.  There
2  was a couple of other people that he had owed money to
3  that he wanted it paid directly to them.  Midtown Watch
4  Company stands out because I thought that was odd but I
5  guess he bought a watch and he owed them money.
6      Q. Okay.  How long you been married to Robert
7  Sokolski?
8      A. Since '97.  And that's all I'm going to answer.
9      Q. Do you live together?
10     A. Objection.
11     Q. You're not going to state whether you live with
12 your husband?
13     A. I don't need to.
14     Q. Okay.  What's your residence address?
15     A. I'm not giving it to you.  You know it.
16     Q. If I know it, tell me a resident address.
17     A. Objection.
18     Q. You're refusing to disclose your residence
19 address --
20     A. I'm going to continue to object to every
21 question that has nothing to do with where the money
22 went.
23     Q. Okay.
24     A. I answered those questions.

10 (Pages 34 to 37)

Page 38

1    Q. You're refusing to --
2    A. Yes.
3    Q. Okay. And what -- do you have any other cell
4  phones other than your one cell phone?
5    A. No.
6    Q. Okay.
7    A. And you have that number.
8    Q. And your email address -- do you have any other
9  email addresses other than Sokolski.zekaria --
10       (Overlapping speakers.)
11   A. Yes.
12      THE COURT REPORTER: I didn't hear the end of
13  the email address.
14   Q. Sokolski.zekaria@mindspring.com. Do you have
15  other email addresses?
16   A. Yup.
17   Q. What are your other email addresses?
18   A. Objection.
19   Q. Why aren't you answering that?
20   A. Because it's a defunct email address that I
21  haven't used in over seven years. And I'm not giving a
22  personal email address to people that just don't have it.
23   Q. Okay. How long have you lived in your residence
24  address?

Page 39

1    A. Objection.
2    Q. Why aren't you telling that?
3    A. Because I don't have to.
4    Q. I believe you do but --
5    A. Okay.
6    Q. -- I'm not going to fight with you.
7    A. That's good.
8    Q. And do you have a website?
9    A. You would know.
10   Q. Do you have a --
11   A. Yes.
12   Q. -- website? What's the name -- what's the
13  address --
14   A. You mean -- wait. Objection. Are you talking
15  about the business?
16      ATTORNEY HEALEY: Wait. Daphna, stop. Let me
17  clarify, Gary. Is it a website for her law?
18  BY ATTORNEY LIGHTMAN:
19   Q. When I say "you," I'm referring to you
20  personally and as the designated representative of
21  Sokolski and Zekaria P.C. So if there's --
22   A. Oh, wait --
23   Q. -- a difference -- if there's a difference in an
24  answer, then please let me know. Otherwise assume it

Page 40

1  pertains to both --
2    A. Actually no.
3    Q. There's no website for you individually or for
4  Sokolski and Zekaria?
5    A. There shouldn't be.
6    Q. And have you ever been convicted of a crime?
7    A. No.
8    Q. Have you been accused of a crime?
9    A. Yup.
10   Q. What crime?
11   A. No. Objection.
12   Q. Okay. I'd like to show you a document that's
13  been marked as --
14       (Exhibit DZ-2 was marked for
15       identification.)
16   A. I'm going to leave soon.
17   Q. -- Daphna Zekaria 2.
18   A. I haven't seen this before. Oh, okay. No, it
19  says two lawyers. And I didn't know what that's about.
20  I haven't read this.
21   Q. I will represent to you that this is an article
22  I found online that is titled "Two Lawyers Charged with
23  Stealing Money from Former Clients." One attorney
24  accused of taking funds from a state lottery winner and

Page 41

1  then there's a whole left column and part of the right
2  column that --
3    A. I understood it as soon as I actually read it
4  that it was talking about a different attorney.
5    Q. Well, it says here separate larceny charges and
6  it says in a separate case Douglas Valente, and then it
7  goes onto that person, and that's a second lawyer.
8    A. Well, that's why I got confused when I saw the
9  title.
10   Q. So the first column and part of the second
11  column -- that's talking about --
12   A. Objection then if you want me to answer
13  questions about it.
14   Q. Is the first column in this article and part of
15  the --
16   A. Objection.
17   Q. Will you please --
18      ATTORNEY HEALEY: Let her answer.
19       (Overlapping speakers.)
20   Q. Let me finish my question.
21   A. Don't growl and grit your teeth at me.
22   Q. I'm not growling. You just keep continually
23  interrupting me. Show some civil courtesy, please.
24  Thank you.

11 (Pages 38 to 41)

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 42

1        Is the first column and part of the second column
2    where it talks about an attorney being charged with -- a
3    New York state lottery winner hiring you, making promises
4    to withhold a portion of her winnings in the firm's
5    escrow account and an additional portion on her behalf,
6    and saying you collected a total of 230,000 from the
7    client transactions; and instead of holding the money or
8    investing it, you made large transfers to other
9    individuals which she would have not been able to make
10   without her client's funds.  Is that a reference to the
11   charges that were brought against you?
12       A. Objection.
13       Q. You're not answering the question?
14       A. Right.
15       Q. Isn't it true that --
16       A. Objection.  How many --
17          ATTORNEY HEALEY:  Daphna, stop --
18          THE WITNESS:  Well, I'm not going to let him
19   ask it ten different ways --
20          (Overlapping speakers.)
21          THE COURT REPORTER:  One at a time.  One at a
22   time.
23          (Overlapping speakers.)
24          THE COURT REPORTER:  I need to take a minute

Page 43

1    break.
2          (Overlapping speakers.)
3          ATTORNEY LIGHTMAN:  We're taking a break.
4          (Off the record.)
5    BY ATTORNEY LIGHTMAN:
6        Q. Is it your contention that all of the money that
7    was wired to you by Manfred Sternberg was distributed by
8    him?
9        A. Yes.
10       Q. Did you retain or make any money from these
11   deals?
12       A. Not that I'm recalling but objection.  No.  Not
13   objection.  Withdrawn.  Because it has to do with this
14   deal.  With this deal, it's -- I was told to take -- I
15   had a retainer agreement to take money but I didn't wind
16   up taking money because there was nothing really involved
17   in -- I regret that now.  But there was nothing really
18   involved.
19          We had a retainer agreement that I've been trying
20   to locate.  Because I'm cleaning my office and I didn't
21   print everything all the time, I did look for it.  So
22   yes.  I don't mean to be difficult.  But here is where I
23   want to talk about there's a retainer agreement that I
24   would have received significant compensation.  I never

Page 44

1    received that.  I --
2        Q. What was the compensation --
3        A. I don't remember exactly and I wish I had the
4    retainer agreement because I didn't get paid under that
5    retainer agreement because I wound up being told, oh,
6    this was -- there was no problem, there was no dispute.
7    So I didn't take money.
8          Mr. Weiss got everything that we gave you in the
9    bank records so I didn't take money back from him.
10   There's nothing that I believe he's saying -- or at least
11   I'm not sure of what he's saying.  But what I'm told is
12   he's saying he didn't receive the money.  I don't know
13   what I'm being told.  But he received wires and I've
14   shown the wires and the conversations about getting the
15   wires.  So he received that money, and I never received
16   money from that money.
17          He -- you know, what he did or didn't do with it
18   is beyond that.  It would only be speculation on my part.
19   But what I can say is that after I wired him the
20   money, I never received money from him.  Not in cash, not
21   in wires, not in checks.  Not from any entity.
22       Q. How about gems?  Did you ever receive gems or
23   diamonds?
24       A. I received -- not as a compensation.  I received

Page 45

1    at one point, after he received money, stones to deliver
2    to Mr. Gross for no particular purpose.  I don't know if
3    they were diamonds, gems, or anything because I didn't
4    have them evaluated.  I did the favor of meeting in the
5    city whoever he directed.  And I've seen some of the
6    pictures of Starbucks or whatever.  That happened.  I
7    didn't know it was necessarily for your client.  But I do
8    know that it could have been anything.
9          They did a lot of other business together which
10   I'm going to stop here.  Like I said, I've been
11   objecting.  But it was just -- it could have been
12   anything.  I don't know what it was.  Because if I knew
13   what it was, it would mean that I would have taken them
14   to a gemologist which I did not do.
15       Q. Mr. Weiss testified in his deposition that he
16   met you at a Starbucks --
17       A. He did not.  Sorry.  I'm sorry.  That -- you're
18   right there.  I apologize.
19       Q. Mr. Weiss testified that he met you at a
20   Starbucks in Center City and gave you four diamonds.
21       A. He did not.
22       Q. Did you meet someone on his behalf --
23       A. Yes.
24       Q. -- and get four diamonds?

12 (Pages 42 to 45)

## Page 46

1      **A. Four stones.**

2      Q. Did you sign a receipt for those?

3      **A. A receipt for stones.**

4      Q. Okay. And what did you do with stones? Did you

5   keep them or --

6      **A. I -- no.**

7      Q. What did you do with them?

8      **A. Immediately was going back to Long Island and**

9   **met Timothy Mahoney who I gave them to.**

10     Q. And who was Timothy Mahoney?

11     **A. He's someone that was designated by both parties**

12  **I believe to deliver them to Mr. Gross.**

13     Q. And do you have contact information for Mr.

14  Mahoney?

15     **A. Currently no.**

16     Q. How did you meet him?

17     **A. Through Mr. Gross. He was giving them to Mr.**

18  **Gross.**

19     Q. Right.

20     **A. Mr. Mahoney I believe has changed his phone**

21  **number. I don't know his phone number. I haven't called**

22  **him in years.**

23     Q. Do you have his old phone number?

24     **A. I can look. Sorry.**

## Page 47

1     **ATTORNEY LAVER:** Off the record.

2     (Off the record.)

3  BY ATTORNEY LIGHTMAN:

4     **A. An old number was --**

5     Q. What's the number?

6     **A. -- was (516) 402-9872.**

7     Q. Do you have an email --

8     **A. I have it as Timmy.**

9     Q. Do you have an email address?

10    **A. No.**

11    Q. All right.

12    **GARY WEISS:** Can I ask a question?

13    **ATTORNEY LIGHTMAN:** What? Tell me and I'll ask

14  her.

15    **GARY WEISS:** Who is this Timothy Mahoney?

16    **ATTORNEY LIGHTMAN:** I'm going to get to that --

17    (Overlapping speakers.)

18  BY ATTORNEY LIGHTMAN:

19    Q. Let's go back on the record. The person that

20  you met at the Starbucks on behalf of Mr. Weiss -- do you

21  remember his name?

22    **A. It was a woman, and no.**

23    Q. You don't know? Okay.

24    **A. I remember it being a woman.**

## Page 48

1     Q. She gave you a package of four stones; you

2  signed the receipt --

3     **A. I don't recall if it was four. But I'm sure if**

4  **you say it was four, it was four.**

5     Q. That's what Mr. Weiss told us.

6     **A. Maybe but --**

7     (Overlapping speakers.)

8     **THE COURT REPORTER:** I'm sorry. One at a time.

9  Slow it down, guys --

10    (Overlapping speakers.)

11  BY ATTORNEY LIGHTMAN:

12    Q. I apologize. What did you do after this woman

13  gave you stones and left?

14    **A. Gave it directly in Queens on my way home or**

15  **back to Huntington I should say to Timothy Mahoney, who I**

16  **just spoke about, as the representative of Charlton.**

17    Q. And how did you know to deliver the stones to

18  Timothy Mahoney --

19    **A. Because I knew that he worked with them.**

20    Q. How did you know that?

21    **A. Because I was told that in the past. And Mr.**

22  **Weiss did not direct me not to give it to a**

23  **representative. He just said that I could pick these up**

24  **at Starbucks to deliver to Mr. Gross. It was not as an**

## Page 49

1  **escrow agent. It was not in the capacity of anything.**

2  **It's no good deed goes unpunished. I made the delivery**

3  **from one spot to the other because I happened to be in**

4  **the city. I used to work in the city regularly.**

5    Q. Did Sam Gross tell you to deliver the stones to

6  Timothy Mahoney?

7    **A. He said just give them to Timothy and you'll be**

8  **in touch with him.**

9    Q. Okay. Let's go back to the retainer agreement.

10  You said there were no funds that you transferred to Gary

11  Weiss that he paid you as a retainer. Were there any

12  funds that Manfred Sternberg wired to you that you

13  retained as a fee?

14    **A. No.**

15    Q. None at all?

16    **A. No. Maybe -- when I said I don't know for sure,**

17  **it could be that there would be a residual $5,000. But**

18  **if it was more than that, it would be amazing because I**

19  **was offered money and refused it. Because I said I don't**

20  **really want to be involved in this. It was too easy, God**

21  **willing. It was not too easy. It ruined my life here.**

22  **But at the time I said no. I mean, it just didn't make**

23  **sense.**

24    **I said if you guys have a good deal and you, you**

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT        April 2, 2024

Page 50

1  know, finished it because that's what Manfred said
2  happened, great. And then a month later I started
3  getting calls from investigators on behalf of Mr. Scully
4  and I didn't -- Mr. Napolitano I believe in fact. And I
5  couldn't cooperate at the time because there's
6  attorney-client privilege. So I didn't.
7      Q. Did you delete any emails?
8      A. No.
9      Q. Pertaining to this?
10     A. No, no, no.
11     Q. So you have all the emails, right?
12     A. I have all the emails. But what happened with
13  my email which I'm trying to recover -- I have no reason
14  to delete them. They would only help me. What happened
15  with my email that -- for a while at least -- is that
16  there was an auto delete in effect that as you -- when
17  you --
18     Q. I know what auto delete is.
19     A. No, no, no. When I go to open something on an
20  iPad, it would just delete it. Like, if I was not
21  swiping it right. So we recovered some. But it was not
22  even for a long period of time because I didn't use an
23  iPad back in that time.
24     Long story short, I have at least many hard

Page 51

1  drives to go through to make sure that I can -- I don't
2  know which computer would -- I was using at the time.
3  But the one that was attached to my desk, I know where I
4  was sitting when Gary sent me an email saying it's okay
5  to cut the check or release the funds.
6      Q. Which computer were you using?
7      A. The one in my front office.
8      Q. And do you still have that computer?
9      A. Yeah.
10     Q. And you haven't deleted any emails from that
11  computer?
12     A. No.
13     Q. Okay. Is that --
14     A. No, no, no. That's not a true statement. I
15  have never deleted emails? Never deleted emails in
16  connection with this.
17     Q. Okay. And what was the --
18     A. I've absolutely deleted emails.
19     Q. Who was your email provider?
20     A. Mindspring.
21     Q. Mindspring. Okay. And is that the same
22  computer you used to draft this retainer agreement?
23     A. Yeah.
24     Q. And you sent the draft of the retainer agreement

Page 52

1  to Gary --
2      (Overlapping speakers.)
3      THE COURT REPORTER: One at a time, guys. This
4  is my last plea here. You need to slow down. It has to
5  be one at a time --
6      (Overlapping speakers.)
7      THE COURT REPORTER: -- or I am not going to be
8  able to stay.
9  BY ATTORNEY LIGHTMAN:
10     Q. You sent a copy of the retainer agreement to
11  Gary Weiss via email?
12     A. Can I answer now?
13     Q. Yes.
14     A. Yes.
15     Q. And you sent a copy of the retainer agreement
16  draft to Sam Gross for his review and approval?
17     A. Not that I'm aware of. If I sent it to Sam
18  Gross, it would have been to both of them at once or
19  after the fact to say, like, this is done. We're
20  representing. I believe I sent to Gary. Gary signed it.
21  But then we texted each other through WhatsApp. And he
22  asked -- in other words, when it was time to wire the
23  funds to him, he sent me that information and where to
24  send it to on WhatsApp. It would not be in the retainer

Page 53

1  agreement.
2      Q. Okay. The retainer agreement -- we'll get to
3  the wires in a minute.
4      A. Well, no, but I'm saying it's not part of the
5  retainer agreement.
6      Q. The retainer agreement -- you emailed that to
7  Gary Weiss --
8      A. Definitely.
9      Q. And when it was signed by Gary Weiss, you also
10  emailed it to Sam Gross; correct?
11     A. I don't know. I don't know.
12     Q. Okay. And how about --
13     A. If I emailed it, it would have been to Charlton
14  but I don't believe I did. And definitely not to
15  Manfred.
16     Q. Okay. And --
17     A. Well, definitely is a very strong statement. I
18  don't believe to Manfred.
19     Q. And why haven't you been able to locate that
20  email on your server?
21     A. Why? I don't -- because of the deleted email
22  business, and I haven't been able to -- the way I did
23  things when I was in the office is sometimes I'd save a
24  document or I would just email it right from my desktop.

14 (Pages 50 to 53)

Page 54

1   But I can't find it. And I would love to find
2   it. I definitely printed it. It's definitely sitting in
3   this stack of crap that's, like, all over my floor, like,
4   because there was a while where I wasn't printing -- my
5   old practice was every time you send an email or get a
6   response, print it, put it in the filing tray, put it in
7   the file. I didn't do that for a long time because too
8   much was happening by email versus here and there.
9   Q. But you remember printing out the retainer --
10  A. Yes, absolutely.
11  Q. You remember printing out this retainer?
12  A. Yes, I do.
13  Q. So it's in a stack of piles somewhere in your
14  office --
15  A. I hope so. Yeah, and I hope to have that by the
16  end of the week because I'm going through every piece of
17  paper in my office not just for your purposes but just to
18  make sure everything is where it needs to be.
19  Q. What do you recall sitting here today were the
20  terms of payments for your services that were put in the
21  retainer?
22  A. It was going to originally come out of this but
23  it was just an amount that was ridiculous. It was over a
24  hundred thousand dollars. But it would have contemplated

Page 55

1   defense of any litigation. And there was no litigation,
2   or at least there wasn't. So I didn't take a fee for the
3   -- for that service.
4   But then when this investigation started to
5   happen, I sort of distanced myself from any of it because
6   it was -- I wouldn't want to use the word aggressive, but
7   I didn't know enough about it to participate in it. I
8   felt that it was better directed to Manfred because he
9   negotiated the entire agreement and knew more about it
10  than I did. And it was my understanding that it did
11  direct to him and he did deal with it for a while.
12  But I -- you know, at that point I hadn't even
13  been in touch with him. I've only spoken to Manfred even
14  maybe two to maybe three to four times. And more of the
15  times that I spoke to him was after the fact, like,
16  you know, did you answer Dan's -- like, what's going on
17  here.
18  (Whereupon server of the country club
19  entered the room.)
20  ATTORNEY LIGHTMAN: Give me fifteen more
21  minutes.
22  BY ATTORNEY LIGHTMAN:
23  Q. So was it a lump sum payment that was
24  contemplated and set forth in the retainer agreement?

Page 56

1   A. I don't remember. I don't -- maybe.
2   Q. When you said over a hundred thousand, what's
3   the basis for that?
4   A. I don't -- I think it contemplated litigation
5   potentially between all of -- like, in other words, if --
6   if he didn't get paid but the goods were delivered, you
7   know, there could have been a reality where he delivered
8   and Mr. Scully would have, you know, not authorized
9   release of the money.
10  See, from all I knew is that Mr. Sternberg had to
11  authorize it. I didn't have to go to Mr. Scully to get
12  that authority. So but if -- you know, when -- to back
13  up, when I received the money, Mr. Sternberg asked me for
14  proof that the goods were on the truck. And I said okay,
15  I'll get you that, presuming that he would go get
16  whatever authority he needed pursuant to his own contract
17  to authorize release of the funds.
18  So when I called Mr. -- or contacted Mr. Weiss --
19  I don't know if it was by phone or by text or a
20  combination. I said they want proof that the goods
21  are -- or Manfred wants proof that the goods are on the
22  truck in order to authorize release to you.
23  Now, I didn't need Mr. Scully to authorize. I
24  figured that as a licensed attorney in Texas who

Page 57

1   negotiated the agreement with Mr. Scully that it would be
2   a foregone conclusion that he had whatever mechanisms in
3   place to authorize the release of the money.
4   Anyway, so Mr. Weiss did send a picture of what
5   was on the truck as well as a picture of himself to show,
6   hey, I'm here and I put it on the truck. That was enough
7   for Mr. Sternberg to say almost immediately -- I wouldn't
8   say it was within moments -- yes, I'm satisfied. You can
9   cut the check to -- or you -- he didn't use those words.
10  You can release -- you can distribute to Mr. Weiss.
11  I didn't immediately distribute to Mr. Weiss,
12  but -- because it was some time at night I remember. And
13  the bank wouldn't have been open. So I believe in the
14  next day or two or three, I think I remember it taking a
15  few days till I could get to the bank and do it. But
16  then I released to Mr. Weiss based on Mr. Sternberg's
17  authorization.
18  Q. I'm going to show you what's been marked as
19  Manfred Sternberg deposition 16. Is that a picture that
20  was sent to you by Mr. Sternberg?
21  A. By Mr. Sternberg?
22  ATTORNEY LAVER: Objection.
23  BY ATTORNEY LIGHTMAN:
24  Q. By Mr. Sternberg or Mr. -- who -- was that the

15 (Pages 54 to 57)

Page 58

1  picture of the goods on the truck that was sent to you
2  that you just referred to?
3      A. I believe mine might have been a little bit
4  different because there was a picture of Mr. Weiss in it.
5      Q. Okay.  So it was a different picture?
6      A. This is -- yeah.
7      Q. Do you have that picture?
8      A. I think we -- I gave it to you.
9      Q. Pointing to Mr. Healey.
10     A. Yes.
11     Q. I request that you produce that picture.
12     A. Well, I gave it -- I don't have it other than I
13  gave it to him from a screenshot.
14     Q. You still should have the screenshot, right --
15     A. Well, I didn't -- I don't know.
16         ATTORNEY HEALEY:  If you do have it --
17         (Overlapping speakers.)
18         ATTORNEY LIGHTMAN:  Mr. Healey, if you have it,
19  could you produce it?
20     A. Either way if I still have it, I'll give it.  I
21  just don't know if I --
22         ATTORNEY HEALEY:  If I had it, I would have
23  produced it.
24         ATTORNEY LIGHTMAN:  I figured that.

Page 59

1      THE WITNESS:  Well, let me look.
2         ATTORNEY HEALEY:  No, no, don't look --
3         ATTORNEY LIGHTMAN:  We can go back and look.  I
4  just made a request.
5      THE WITNESS:  No, no, but I don't want --
6         ATTORNEY LIGHTMAN:  Don't worry about it.
7  We'll deal with documents later.
8  BY ATTORNEY LIGHTMAN:
9      Q. So tell me your best recollection of what --
10     A. How --
11     Q. -- services you were supposed to provide in this
12  retainer agreement?
13     A. Well --
14     Q. What was your role in the transaction?
15     A. The role in the transaction --
16     Q. Your role.
17     A. Yes.  My role was Mr. Weiss was to provide goods
18  and deliver goods by putting them on a truck.  He was not
19  going to put them on a truck without some security of
20  having the funds available.  He didn't I guess know Mr.
21  Sternberg enough to -- just because he was negotiating
22  essentially with Mr. Sternberg and Mr. Gross.  And
23  whether he had a good or a bad relationship with Mr.
24  Gross, he didn't know Mr. Sternberg at all.  And Mr.

Page 60

1  Sternberg being the attorney and/or somewhat of a
2  recipient in -- you know, an investor in this
3  transaction, he wanted protection from that.
4      Q. Who wanted protection?
5      A. Mr. Weiss.
6      Q. Wanted protection from what?
7      A. From delivering goods and not being paid for
8  them.
9      Q. Okay.
10     A. So he wanted his own counsel because Mr.
11  Sternberg was not just the attorney for Charlton but also
12  a beneficiary of this transaction.  So to that extent --
13  is what I'm under the impression of.  And again, I
14  wouldn't have actual knowledge of that.  But it's my
15  understanding that Mr. Sternberg did not represent Mr.
16  Weiss at all.  And Mr. Weiss needed independent counsel
17  to secure that he got paid if the goods were on the
18  truck.
19     So what I was -- what I was told is that I would
20  have the money held.  I wouldn't release the money.  I
21  wasn't asked to sign anything.  But even just -- it's --
22  without Manfred's authorization, it would have been
23  insanity to release anything.  But he didn't even ask me
24  to sign anything.  He just said all I need to do is have

Page 61

1  proof that the goods are on the truck and then I'll give
2  you the okay.  And that's what happened.
3      Q. When --
4      A. Whether he needed authority from the
5  plaintiff --
6         ATTORNEY HEALEY:  Daphna, you answered.
7      A. Yeah, that's it.  I don't know.
8      Q. Whether Manfred needed authority from Mr.
9  Scully --
10     A. I don't know whether he did or he didn't.  I
11  presume he had it.
12     Q. You presume that Mr. Sternberg had authority
13  from Mr. Scully to release --
14     A. To release.
15     Q. -- the goods?  Okay.  And so your role --
16     A. Actually he told me he did.
17     Q. Okay.  Who told you he did?
18     A. Mr. Sternberg told me that he had authority once
19  he had proof that the goods were on the truck.
20     Q. Okay.  When you say the goods were on the truck,
21  the goods have to be owned by Gary Weiss or his company?
22     A. I didn't understand the question.
23     Q. Well, anybody can load goods on the truck.  Did
24  the goods have to be owned by Gary Weiss before you would

16 (Pages 58 to 61)

Page 62

1  release the money?
2      A. No. It was not a requirement. And in fact
3  there was no requirement. The only requirement was that
4  the masks -- those were the goods -- the masks were
5  loaded on the truck to be delivered to the plaintiff.
6  Again not a requirement that was made of me.
7      My only answer -- my only comment is is that I
8  told Manfred don't send me money and then leave me
9  sitting there with it. Either authorize me to release it
10  or tell me what to do with it. He said, no, there was no
11  problem. My contract with Safety House only requires
12  that we deliver, meaning the delivery has to be goods on
13  truck.
14      So I asked Mr. Weiss for proof of that. When I
15  got a picture of Mr. Weiss in front of a truck, I sent it
16  to Manfred. To me that was like -- well, that may not be
17  enough in and of itself as proof that you loaded a truck
18  with those masks. But I sent it to him and figured that
19  he would do his own due diligence as far as his, you
20  know, checking whether the truck was sufficient, whether
21  everything was okay, whether the goods were in fact on
22  the truck. That was on him.
23      Q. So you weren't concerned whether or not Gary
24  Weiss had title to the masks that were on the truck?

Page 63

1      A. I was told that Gary Weiss needed to produce
2  goods on a truck -- not to have title to it, not to own
3  it. Maybe he owned it. Maybe he didn't. Maybe he had a
4  partner in it. What I was told is that he had to load
5  goods on a truck. He had to, you know, essentially
6  get -- source them and put them on a truck. And what I
7  understood is that he completed that task.
8      Q. Was -- were they N95 masks?
9      A. I don't know. I wasn't on the truck.
10      Q. Okay. Were they supposed to be N95 masks?
11      A. I believe so.
12      Q. You believe so?
13      A. I believe so based on -- not a contract that I
14  entered but based on everything that, you know, was part
15  of that transaction was that they -- it was for the COVID
16  masks.
17      Q. So your role was once Manfred told you we're
18  satisfied that Gary Weiss has these N95 masks on a truck,
19  whether or not he moved them or not, you were authorized
20  to release funds to Gary Weiss?
21      A. What I was under the impression was that
22  Manfred, an attorney who negotiated the transaction, once
23  he authorized the release of funds is when I would do it.
24  And he did do that. If he didn't do that, I wouldn't

Page 64

1  have released the funds and I would have waited for --
2  then I would have had to do one of several things.
3      One would have been to negotiate an outcome
4  between Manfred, the parties involved which includes Mr.
5  Scully, or go to court to, you know, essentially force
6  the issue as this unfortunately has come to be because I
7  wouldn't have wanted to continue to hold it. I would
8  have wanted a determination absent an agreement.
9      Q. What your --
10      A. Because I wouldn't want exactly what's happening
11  here to be happening.
12      Q. Your understanding of your role in the
13  transaction, who is the person that could authorize you
14  to release the funds from your attorney as per
15  accounting? Is it Manfred Sternberg?
16      A. Manfred Sternberg as well as my client, you
17  know, subsequent to that. But primarily speaking
18  Manfred. Because without his authority, I wouldn't have
19  done any of it.
20      Q. So if Gary Weiss had said to you "I want the
21  funds that Manfred wired to you and Manfred" --
22      A. He did say that. And I said, no, I'm waiting
23  for authority.
24      Q. From Manfred?

Page 65

1      A. Yeah.
2      ATTORNEY LIGHTMAN: I'm going to take a break
3  and order some lunch.
4      (Off the record.)
5  BY ATTORNEY LIGHTMAN:
6      Q. Ms. Zekaria, in addition to the retainer
7  agreement was supposed to be a -- was there supposed to
8  be a separate escrow agreement that sets forth your
9  responsibilities and duties when you -- for your receipt
10  and subsequent disbursement of the funds --
11      A. I don't recall if we were doing it separate or
12  together as part of one document.
13      Q. So your recollection it's supposed to one --
14      A. I --
15      Q. -- document that sets forth both?
16      A. No, I just said I don't recall. And you're just
17  putting words in my mouth. Yeah.
18      Q. Okay. Okay. The -- your duties as an escrow
19  agreement, did you require any documentation from Gary
20  Weiss or Asolar evidencing his purchase of the goods
21  before you released the funds?
22      A. No.
23      Q. Were you required to obtain that
24  documentation --

17 (Pages 62 to 65)

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 66

1    A. Nope.
2    Q. No. Okay.
3        ATTORNEY LIGHTMAN: Okay. Could we have this
4    marked as DZ-8?
5        THE COURT REPORTER: We're up to 9.
6        ATTORNEY LIGHTMAN: DZ-9. I'm sorry. 8 was
7    the --
8        ATTORNEY LAVER: The other --
9        ATTORNEY LIGHTMAN: The what?
10       ATTORNEY LAVER: Eight was the other case.
11       ATTORNEY LIGHTMAN: Eight was the --
12       (Overlapping speakers.)
13   THE WITNESS: The newspaper article.
14       ATTORNEY LIGHTMAN: Newspaper article, right.
15   No, that was --
16       (Overlapping speakers.)
17       ATTORNEY LAVER: Eight was the Blue River
18   lawsuit.
19       ATTORNEY HEALEY: What's -- did you introduce 3
20   and 4?
21       ATTORNEY LIGHTMAN: Not yet. We'll get to
22   that. Let's have this marked as 9 and 10.
23       (Exhibits DZ-9 and DZ-10 were marked for
24       identification.)

Page 67

1    Q. I'm going to hand you two documents which have
2    been marked as DZ-9 and DZ-10. For the record --
3    A. I don't know what this is.
4    Q. For the record, DZ-9 has been marked
5    Zekaria000001 through Zekaria 4. And the document --
6    A. This is the transcription. Okay.
7    Q. Yes.
8    A. No, I just didn't understand the format. I was
9    asking him.
10   Q. These are documents you produced, so. And the
11   document marked as DZ-10 has a Bates stamp Zekaria000011.
12   A. Oh, I thought because I sent it to you like
13   this. Okay. Sorry. It just took a minute.
14   Q. So would you agree that DZ-9 is a transcription
15   of the WhatsApp messages between you and Gary Weiss and
16   Sam Gross?
17   A. No. I wouldn't agree. Because I don't know. I
18   would have to read it and compare it. But I would assume
19   that that is what it looks like. I just sat with my
20   attorney asking what this is. And you watched me do
21   that.
22   Q. These are -- I'm sorry?
23   A. Because I didn't recognize the format or the
24   font.

Page 68

1    Q. Okay. And, for example, if you look at DZ-10 --
2    A. Well --
3    Q. If you look at DZ --
4    A. -- I look at DZ-10 I'm looking at a -- so is --
5    are you saying that this and this is the same?
6    Q. No. I'm trying to finish my question before you
7    answer it. But you interrupted me. So if you look at
8    DZ-10 which is Zekaria document 11 where it says "Shlomo,
9    please confirm to her 250K is coming in. She is waiting
10   for it and 130 is yours" and you look at the bottom of
11   the second page of DZ-9, you see where it says -- if you
12   find the entry for 3:37.
13   A. Wait. What are we talking about?
14       ATTORNEY HEALEY: Compare this --
15   A. This to?
16   Q. To what's on page 2 of DZ-9, it says --
17   A. What is all this now?
18   Q. Well, go to the bottom --
19   A. Where it says -- no, I mean, you asked me to --
20       ATTORNEY HEALEY: Stop.
21   Q. I'm asking a specific question. If you go to
22   the bottom one, two, three, four, five, six, seven lines
23   or six lines up where it says 2/15 3:37:39 p.m. and it
24   says "Shlomi"?

Page 69

1    A. Please confirm to her --
2    Q. Right.
3    A. Gary, please confirm to her --
4    Q. Right.
5    A. So is that --
6    Q. What's printed on DZ-10 --
7    A. Oh, oh, is this.
8    Q. -- is the same as what's listed on --
9    A. They are the same words.
10   Q. Right. So this screenshot of a text message
11   shown on DZ-10 is transcribed and is --
12   A. I don't know.
13   Q. -- the same -- please let me finish.
14   A. You just keep asking me the same thing.
15       ATTORNEY HEALEY: Daphna, let him finish the
16   question.
17   Q. If you read DZ-10 where Shlomo at 3:37 p.m. is
18   writing "Gary, please confirm to her 250K is coming in.
19   She is waiting for it" in parentheses "and 130 is yours,"
20   that's what this screenshot on DZ-10 indicates; correct?
21   A. When you're done talking, I'm going to take a
22   moment. I don't know. I know that these are the same
23   words with the same time. I didn't prepare what you have
24   labeled as 9. I gave what you have labeled as 10. So if

18 (Pages 66 to 69)

USDC, ED of PA                 American Environmental Ent. v. Manfred Sternberg, Esq., et al.                 Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT        April 2, 2024

---

Page 70

1   you're asking me are these the same words, yes, they are.
2        Q.  Okay.
3        A.  But here's the problem.  This all seems like a
4   lot more words than this is.
5        Q.  I agree.  DZ --
6        A.  So that's why -- that's why I'm having trouble
7   with it.
8        Q.  DZ-10 is a screenshot of a portion of what's
9   reflected in DZ-9?
10       A.  Oh, okay.  I thought that --
11       Q.  Got it?
12       A.  -- this was supposedly --
13       Q.  No.
14       A.  -- a transcript of this.
15       Q.  No.
16       A.  Well, because I didn't prepare this.
17       Q.  Okay.  If you look at --
18            ATTORNEY HEALEY:  Can I talk to her outside a
19   second?  It might --
20            THE WITNESS:  No, it's fine.  I'm reading it
21   now --
22            ATTORNEY LIGHTMAN:  No, no, no.  We're already
23   almost done.
24            ATTORNEY HEALEY:  No, it might clear a lot of

---

Page 71

1   things up.
2   BY ATTORNEY LIGHTMAN:
3        Q.  Okay.  Ready?  If you look at --
4        A.  No.  The way this started -- stop for a second.
5   The way this started was as though I prepared this in my
6   mind.  At least that's the way the question was
7   presented.  So when I'm looking at these two, I'm
8   thinking that doesn't --
9        Q.  Okay.  These are documents that your -- you
10  produced for us.
11       A.  I produced this?
12       Q.  Yes.  It's labeled Zekaria 1, 2 --
13            ATTORNEY HEALEY:  That's why --
14       Q.  -- 3 --
15            ATTORNEY HEALEY:  Let me --
16       Q.  -- 4, and 5.  No, I can clear it up on the
17  record.  See at the bottom Zekaria 1, 2, 3, 4, and 5?
18  These are documents that you produced in discovery in
19  this case.
20       A.  Okay.  I gave you --
21            ATTORNEY HEALEY:  Well, let me talk to her
22  outside a second.  It might clear it all up.
23            ATTORNEY LIGHTMAN:  You can say it on the
24  record if you want to clear it up.

---

Page 72

1            ATTORNEY HEALEY:  No, I can't because I want to
2   talk to her outside --
3            (Overlapping speakers.)
4            (Off the record.)
5   BY ATTORNEY LIGHTMAN:
6        Q.  Your counsel asked to speak with you outside.
7   Did he clear something up for you?
8        A.  He did.
9        Q.  Okay.
10       A.  I sent him just, like, a whole forward of a
11  WhatsApp group.  I didn't -- so when I looked at this
12  document -- I apologize to you, Mr. Lightman.  Because
13  when I'm wrong, I'm wrong.  I didn't -- I didn't
14  recognize the font or everything that came as a result of
15  it.  So I guess what you did counsel, Mr. Healey, is you
16  took it and this is how it prints.  I didn't know that.
17       Q.  So DZ-9, the documents labeled Zekaria 1 --
18       A.  It's --
19       Q.  -- through 5 is a printout of what you forwarded
20  to your attorney?
21       A.  Is what I'm told.
22       Q.  Okay.
23       A.  I haven't compared it to what I forwarded but
24  what I'm told is what I forwarded, which I remembered

---

Page 73

1   doing, printout that looks like this.
2        Q.  Okay.  And if you look at DZ-10 again --
3        A.  So then this would be a screenshot of something
4   within it.
5        Q.  Part of it?  Okay.
6        A.  Yeah.
7        Q.  If you look at DZ-10 right above what we talked
8   about where Sam Gross -- that's Shlomi in this, right?
9        A.  Mm-hmm.  Right.
10       Q.  You recognize Shlomi as Sam Gross --
11       A.  I recognize this group.
12       Q.  Okay.  Right above it, there's cutoff and the
13  green part at the top of DZ-10 says --
14       A.  Additional --
15            (Overlapping speakers.)
16       Q.  -- for my additional fees?  See that?  On DZ-10?
17            ATTORNEY HEALEY:  On DZ-10, yeah.
18            (Overlapping speakers.)
19            THE COURT REPORTER:  One at a time.  Guys, I
20  cannot take you both down at the same time.  I need you
21  to slow down --
22            (Overlapping speakers.)
23            THE COURT REPORTER:  This is sort of a last
24  warning.  I'm still trying to give instructions.

---

19 (Pages 70 to 73)

Case 2:22-cv-00688-JMY   Document 167-9   Filed 05/28/24   Page 21 of 41

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 74

1      **ATTORNEY LIGHTMAN:** Okay. Got it. Start
2  again.
3      THE WITNESS: Where are we?
4      **ATTORNEY LIGHTMAN:** Let me -- listen to me.
5      **ATTORNEY HEALEY:** He's on DZ-10 --
6      (Overlapping speakers.)
7      Q. If you look at DZ-10 at the top, see where it
8  says in green "rest for my" --
9      **A. Yes.**
10     Q. -- "additional fees?" question mark? And if you
11 go to DZ-9, right above where the Shlomi Sam Gross --
12     **A. Yeah, yeah, yeah.**
13     Q. -- 3:37 email is, it says "rest for my
14 additional fees."
15     **A. Right.**
16     Q. See that?
17     **A. Yes.**
18     Q. And you wrote right above that where Gary Weiss
19 wrote "Please confirm," you wrote "It's my understanding
20 that I'm about to receive an additional wire of 250,000
21 which is 130,000 to Gary Weiss and the rest for my
22 additional fees?" question mark. Do you see that?
23     **A. Yes, I do.**
24     Q. So at 3:37 you wrote to that -- you wrote in

Page 75

1  this WhatsApp that you're going to get an additional wire
2  of 250 and that 130 is to go to Gary and the rest is for
3  your additional fees. Do you see that?
4      **A. I do.**
5      Q. And do you see Gary Weiss -- excuse me -- Sam
6  Gross then wrote "Gary, please confirm to her 250K is
7  coming and she is waiting for it. And 130 is yours." Do
8  you see that?
9      **A. Wait. I don't see that. Sorry. Where is**
10 **the -- wait. Where -- oh, please confirm to her. It's**
11 **just the way it's -- the way it prints. Meaning I was**
12 **waiting for the --**
13     Q. I'll start again.
14     **A. No, no, no. I'm reading it now. Just give me,**
15 **like, a hot second so I can -- and then it's Gary --**
16 **(reading sotto voce.) Yeah. Okay.**
17     Q. So Shlomi -- Sam Gross -- writes to you "Gary,
18 please confirm to her 250K is coming. She's waiting
19 for it. And a 130 is yours." Do you see --
20     **A. Yes.**
21     Q. And then Gary writes back "Gary Weiss: Hi,
22 Daphna. That is correct. You're sending me 130.
23 Thanks."
24     **A. Right.**

Page 76

1      Q. And then you write "awesome," right?
2      **A. Well, because I was sending him 130. I --**
3  **yeah --**
4      Q. You wrote -- you wrote "awesome" here, right?
5  And then you wrote "Daphna: Thanks for the confirmation
6  and opportunity to represent you." Do you see that?
7      **A. Yes, I do. I agree --**
8      Q. So according to this email exchange
9  February 15th, you're getting a wire from Manfred of 250.
10 You're giving 130 to Gary Weiss. And you're keeping 120
11 as your fee according to this right here; correct?
12     **A. According to this, that's how it looks. But**
13 **that's not what wound up happening because there was no**
14 **litigation as a result. If there were to be litigation,**
15 **then I would have enforced that. Because --**
16     Q. Does it say in here --
17     **A. I wish I did enforce that honestly --**
18     Q. Does it say in here "I'm going to give you back
19 the 130" anywhere in this email exchange?
20     **A. What was -- what was significant at that moment**
21 **was giving him 130. I wound up not using the -- I**
22 **believe it was 120. I have to look at the retainer**
23 **agreement. And when I find it, I will be able to resolve**
24 **because I think the original retainer agreement called**

Page 77

1  **for a significant amount that I didn't take.**
2      **And then there was another case that we discussed**
3  **that I also didn't take any money up front. So somehow**
4  **whatever I may have gotten paid would have just covered**
5  **some time spent on the two cases. But not 130 or 120.**
6      Q. It's 120 according to your -- the writing here.
7  Is there anywhere in this text exchange that says "I'm
8  giving you back the 120"?
9      **A. Well, at that moment no. But there were**
10 **subsequent conversations with them where I said, "I'm**
11 **working for you for free. Why don't you answer these**
12 **people? Why don't you participate in this case?" I**
13 **mean, honestly, they should have participated in this**
14 **before it got to this. I said it back when you first**
15 **called me. I said it to Gary. I said it to Sam. I said**
16 **it at the time that Mr. Napolitano called me.**
17     Q. So there's nothing in writing that --
18     **A. It was phone calls.**
19     Q. Could you please -- let --
20     (Overlapping speakers.)
21     **ATTORNEY HEALEY:** Let him --
22     (Overlapping speakers.)
23     **A. No, there isn't that I have now --**
24     **ATTORNEY HEALEY:** Let him answer the question.

20 (Pages 74 to 77)

Page 78

1  BY ATTORNEY LIGHTMAN:
2      Q.  There's nothing in writing to document that you
3  gave them back the 120 that you acknowledged and that
4  they acknowledged on February 15th you were keeping as
5  your fee?
6      **A.  I'm not sure.**
7      Q.  Is there anything in here --
8      **A.  In this particular exchange, no.**
9      Q.  Is there any documentation in any of the 37
10  documents you produced that confirms you gave them back
11  the 120,000?
12      **A.  I don't know.**
13      **ATTORNEY LIGHTMAN:**  All right.  This is a good
14  break for lunch.
15          (Off the record.)
16  BY ATTORNEY LIGHTMAN:
17      Q.  Ms. Zekaria, have you ever met Sam Gross
18  personally before this morning?
19      **ATTORNEY HEALEY:**  Gary Weiss.
20      Q.  Gary Weiss.  Excuse me.  Have you ever met Gary
21  Weiss?
22      **A.  No.  No.**
23      Q.  This is the first time --
24      **A.  Yes.**

Page 79

1      Q.  -- in person though?  Okay.  Let's go back to
2  DZ-9, the transcript of the text message, the WhatsApp
3  text messages.
4      **A.  Where is this?  I don't -- oh.  Is this the same
5  one that we were looking at?**
6      **ATTORNEY HEALEY:**  Yes.
7      THE WITNESS:  Okay.
8      Q.  So it starts at the top --
9      **A.  No, it's just because I'm still not used to
10  the --**
11      Q.  Format?
12      **A.  Yeah.**
13      Q.  Okay.  So it starts in at the top on
14  February 4th in the afternoon --
15      **A.  Started a call.  Yeah.**
16      Q.  -- Gary Weiss started -- or Shlomo, Sam Gross,
17  created the group iHealth.  Then he added you.  Then Gary
18  Weiss started a call.  And Sam says at 4:54 "Gary, please
19  confirm to Daphna here from the 1.9 million 65 percent is
20  yours.  The rest is mine.  Thanks."  Do you see that?
21      **A.  Yes, I do.**
22      Q.  And that --
23      **A.  You don't need to read to me.  Just tell me what
24  to --**

Page 80

1      Q.  I'm making a record.
2      **A.  Okay.**
3      Q.  And at February 4th at 5:02, Gary Weiss writes
4  to you "Hi, Daphna.  I confirm 35 percent of the
5  million-nine going to Sam and 65 percent of the
6  million-nine to me, Gary Weiss."  Do you see that?
7      **A.  Yes, I do and I literally gave you this
8  information.**
9      Q.  Why is Sam getting 35 percent of the
10  million-nine transfer?
11      **A.  I don't know.**
12      Q.  You don't know?  Did you confirm or write to --
13  did you notify Manfred "Hey, I know you're wiring a
14  million-nine.  My client says he gets 65 percent of it
15  and 35 percent goes to Sam.  Is that okay?"
16      **A.  It wasn't a requirement to ask Manfred how and
17  what to do with the money once it was available for
18  release on behalf of Mr. Weiss.  I mean, I just needed
19  Mr. Weiss's approval.**
20      Q.  I thought you said you needed Manfred's
21  approval?
22      **A.  I needed Mr. Weiss's approval how to release his
23  portion.  From my perspective all of it was his unless
24  otherwise determined.**

Page 81

1      Q.  Okay.
2      **A.  He according to them or what I understood owed
3  Sam some money from a prior transaction.  Whether that's
4  true or not, I don't know.  But they did business with
5  each other in the past.  And it's not that out of the
6  1.9, it was Sam's money per se.  It was Gary's money and
7  Gary was giving 35 percent of it presumably to even up
8  some accounting between them.  I don't know if that's
9  true.  All I know is that I represented Mr. Weiss, and
10  Mr. Weiss was to get the 1.9.  To do anything but that
11  needed his consent.  And that's why I guess this
12  happened.**
13      Q.  So Manfred was the one that you needed
14  authorization from to release --
15      **A.  That I needed, yeah.**
16      Q.  -- to release the 1.9 million from escrow; Gary
17  Weiss is the person that told you how to distribute that
18  once Manfred approved?
19      **A.  Correct.  Because but for this, I was given 1.9
20  to Gary Weiss.**
21      Q.  Okay.  So all you needed --
22      **A.  All of it.**
23      Q.  All you needed to get Manfred Sternberg's
24  confirmation is that the masks were loaded on a truck for

21 (Pages 78 to 81)

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 82

1  delivery?
2      A.  All I needed to get Manfred Sternberg's
3  confirmation was Manfred saying "You may release it."
4      Q.  Okay.
5      A.  And that's what he did.
6      Q.  Okay.  He confirmed you can release the
7  million-nine?
8      A.  Yes.  And he in fact is confirming it in
9  multiple documents that I was not at fault, that he, if
10  anything, authorized it.  I think I've seen it somewhere.
11      Q.  Where are the documents?
12      A.  Well, he wrote to the disciplinary committee.  I
13  saw at some point in one of the motions.  The bottom line
14  is I don't think he's disputing that he gave me authority
15  to release it.  He never told me to hold onto it.
16  There's a problem.
17      Q.  As an escrow agent holding the million-nine, you
18  need some writing as an attorney to authorize you to
19  release --
20      A.  Well, he did send an email --
21          (Overlapping speakers.)
22      Q.  Please --
23      A.  Jesus Christ.  I'm telling you that all I needed
24  was him to say go ahead.  I don't have an agreement with

Page 83

1  Mr. Scully saying you are an escrow agent.  All I was was
2  the place to park the money until Mr. Weiss put goods on
3  a truck.  There was no other requirement other than to
4  get Mr. Sternberg's go ahead and green light.  That's it.
5      I didn't need Mr. Scully's.  I didn't even know
6  who he was.  I didn't know who he was until months later
7  when I was called by an investigator.  I couldn't answer
8  the investigator because I have an attorney-client
9  relationship as far as this goes with Mr. Weiss.  I
10  couldn't just talk about it.  But instead of -- and my
11  thanks for not talking about it is I was dragged into a
12  case I believe that was commenced by someone that he
13  defaulted in an agreement with as a result of whatever
14  was going on here.
15      Again I didn't have anything to do with this
16  case.  Manfred negotiated it.  Manfred had whatever
17  contract he had with these people.  And it's my
18  understanding that it's not limited to this amount of
19  money, that there's something more at stake here.  Again,
20  not something I negotiated.  I negotiated one piece which
21  was a retainer agreement with Mr. Weiss to hold money
22  until he put goods on a truck.
23      Q.  Please, please, pretty please with a cherry on
24  top --

Page 84

1      A.  And sugar and whipped cream?  Yeah.  What?
2      Q.  Let me finish my questions, please.
3      A.  I do.
4      Q.  No.  You said there's other things.  There's
5  other victims that have claimed that they were similarly
6  defrauded?
7      A.  I'm not saying there's other victims.  Don't --
8  please don't put --
9      Q.  Other purchasers of goods --
10      A.  And don't put words in my mouth.  I really
11  resent that.  I'm saying there's another case where
12  everybody's involved that's involved here by I don't know
13  who it is.  But it's someone that I believe that if you
14  want to call them a victim, they would be Safety House's
15  victims because Safety House didn't deliver based on
16  whatever they did or did not do here.
17      It's my understanding that Safety House was
18  delivered to.  At least that's what I'm told by Manfred,
19  by Mr. Weiss, by Mr. Gross.  I don't know that they were
20  or they weren't.  What I'm hearing is that they weren't
21  from Mr. Scully, from you.
22      Q.  Is the other victim VRC Medical Supplies?
23      A.  Objection.  I don't know if they're a victim.
24      Q.  Is the other purchaser that has raised similar

Page 85

1  claims VRC Medical Supplies?
2      A.  Objection.  I don't know that they are a
3  purchaser.  I just know that there's a lawsuit brought by
4  someone named VRC.
5      Q.  And you're named as a defendant in that
6  lawsuit --
7      A.  I was later joined in.
8      Q.  And your law firm is also named as a defendant,
9  right?
10      A.  Well, yeah.
11      Q.  And they claimed that they wired 2.4 million to
12  Manfred --
13      A.  Not to me.
14      Q.  -- to Manfred; and that that in turn was wired
15  to you and they never got their good or their money,
16  right?
17      A.  I -- I don't know.  I -- what I'm saying is is
18  that there is another lawsuit.  And I don't know what
19  funds Manfred used to pay Mr. Weiss.  I just know that it
20  resulted in these two lawsuits.
21      Q.  Okay.  Why are you saying that the goods that
22  were supposed to be delivered to Mr. Scully's company
23  were masks?
24      A.  Because it was -- I was told that it was either

22 (Pages 82 to 85)

Page 86

1  masks or COVID test kits. I'm not sure which one. I
2  didn't have anything to do with the delivery.
3     Q. Why did you say under oath --
4     A. Because it --
5     Q. -- at today's deposition that it was masks that
6  were supposed to --
7     A. I believe it was masks. I don't know for sure
8  because I told you also under oath I wasn't on the truck.
9     Q. Okay. Let's go back to DZ-9.
10    A. I know that it was COVID-related items.
11    Q. Let's go to -- so you may have been not telling
12 the truth when you said masks --
13    A. No, I didn't say that. I said I believe. I
14 didn't ever say I know. And I in fact recall saying that
15 I don't know for sure because I wasn't, A, on the truck;
16 B, I didn't see the items; C, I didn't know who owned
17 what. I believed it was COVID-related, either masks or
18 whatever.
19    Q. Go to DZ-9 --
20    A. I don't know -- I don't know what's in the truck
21 even at the time that he sent the picture of himself in
22 front of a truck.
23    Q. Go to DZ --
24    A. I expected that Manfred would have confirmed it.

Page 87

1     ATTORNEY HEALEY: Just -- go to -- he's asking
2  you a question.
3     A. Yes. DZ-9.
4     Q. Go to DZ-9, please.
5     A. What is the contract -- (reading sotto voce.)
6  I'm reading it myself. Go ahead.
7     Q. So if you go -- after Gary Weiss writes "I
8  confirm 35 percent of the 1.9 million is going to Sam and
9  65 percent to me," you wrote "Okay, no problem," right?
10 5:16 on February 4th?
11    A. Oh, you want me to answer that now?
12    Q. Yeah. Okay.
13    A. Yes, no problem.
14    Q. Then on February 6th, you write at 10:58 a.m.
15 "Daphna: I will draft a formal agreement on who I
16 represent and an escrow authorization that mirrors the
17 terms of the disbursement that we texted about. What's
18 your current email address?" Do you see that?
19    A. Yeah.
20    Q. And then he writes -- or you write -- Daphna,
21 you write lon at two minutes later "I will speak to
22 Shlomi" -- that's Sam -- "again before sending
23 everything. I will let you know if I have more
24 questions. It's 11 now. I anticipate being ready with

Page 88

1  some of this by one or so." Do you see that?
2     A. I see it, yes.
3     Q. Then you wrote at a minute later "The documents
4  will be dated on February 4th."
5     A. Yes, because I believe that's when we started
6  negotiating this outcome.
7     Q. Okay. So two days later on February 6th you're
8  talking about drafting a document and backdating it to
9  February 4th; correct?
10    A. No. The retainer agreement could be dated as of
11 the date. It doesn't really matter what date is what I'm
12 saying. I'm saying it would be as of 2/4 because I
13 believe I started drafting it that day.
14    Q. But you're talking about "I will draft."
15    A. Will finish drafting.
16    Q. No, no, you don't -- at 10:58 you write "I will
17 draft a formal agreement." You don't write "I'm drafting
18 it and I need to finish it" --
19    A. I believe I had started --
20    Q. You wrote, quote "I will draft a formal
21 agreement." Do you see that --
22    A. Between them. Not between anyone else.
23    Q. On --
24    A. Regarding the three-point -- I'm sorry -- the 35

Page 89

1  and the 65 but also in a retainer agreement to
2  contemplate what I'm doing for him.
3     Q. You write on February 6th not "I'm in the
4  process." Not it's -- you wrote "I will draft a formal
5  agreement." They're your words, right?
6     A. Yeah, I don't remember if I had started it or I
7  was finishing it. But, yes, those are my words.
8     Q. You wrote "I will draft," right?
9     A. That's --
10    Q. And then you wrote one, two --
11    A. And he gave a retainer --
12    Q. -- three, four -- four lines later on
13 February 6th you write that the documents will be dated
14 two days earlier on --
15    A. Okay. And?
16    Q. -- February 4th, right? Correct? That's what
17 you wrote --
18    A. Correct. That's what it says.
19    Q. And then you wrote "And it will be my pleasure
20 to represent you in the future," right?
21    A. Yes.
22    Q. Then a minute later you write "Just need the
23 business name that contracted with Manfred, et cetera,"
24 right?

23 (Pages 86 to 89)

Page 90

1    A. Yeah.
2    Q. And that would be Mr. Scully's company,
3  right? He's the --
4    A. No.
5    Q. Well, who contracted with Manfred?
6    A. I need the business name that contracted with
7  Manfred. That was to both of them. It could have -- I
8  think it was Charlton Holdings that ultimately contracted
9  through Manfred.
10    Q. Okay.
11    A. It had nothing to do with Mr. Weiss. It's not
12  my understanding that Asolar contracted with Mr. Scully.
13  I said I would like to know who's involved in this
14  negotiation.
15    Q. Then you two two minutes later at 1:03 on
16  February 6th "My fee," in quotes, "will include all
17  negotiations and litigation if necessary that may arise
18  from this transaction" --
19    A. Yeah. I -- because I contemplated waiving my
20  fee because I didn't anticipate a problem.
21    Q. Why did you write "My fee," in quotes, "will
22  include litigation if necessary." Did you think that
23  litigation may possibly be necessary?
24    A. No because I also had a companion litigation

Page 91

1  that was going to come up, and that's why it was
2  laughable because I never got paid for anything here.
3    Q. But you didn't write from the companion
4  transaction. You wrote --
5    A. But I included --
6    Q. Please let me finish. You wrote "My fee" in
7  quotes --
8    A. Yes.
9    Q. -- "will include all negotiations and litigation
10  if necessary that may arise from this transaction" --
11    A. Correct. I anticipated that they'd be suing
12  each other. Or Manfred.
13    Q. So Gary and Sam agreed to a 65-35 split of a
14  million-nine and you anticipated -- and both of them said
15  yes, but you anticipated --
16    A. It's not --
17    Q. -- them suing each other?
18    A. I anticipated a problem from Manfred potentially
19  where we couldn't release the money to Mr. Weiss. And
20  then there would be litigation as a result of that
21  between Charlton and Asolar potentially. Or between
22  Asolar and Manfred. I didn't think that Manfred would
23  say yes right away. I in fact couldn't believe that he
24  did.

Page 92

1    Q. The wire that you got, the million-nine, was
2  wired before February 6th --
3    A. No, I don't believe it was.
4    ATTORNEY HEALEY: If it was, it was.
5    A. I don't know. I don't know. But I know that I
6  was not releasing it without an agreement between them.
7    Q. I'm going to show you what's been marked as --
8    A. Wait. Hold on. I'm looking at here. Because
9  this is where --
10    ATTORNEY HEALEY: He's going to show you
11  documents, Daphna.
12    THE WITNESS: Okay. That's fine.
13    ATTORNEY HEALEY: Let him show you the
14  documents.
15  BY ATTORNEY LIGHTMAN:
16    Q. Manfred Deposition Exhibit 19. When does it --
17  when does it show --
18    A. Wait. Can you just --
19    Q. I apologize.
20    A. -- stop it for a second. Don't hand me a
21  document and then speak like we're in a classroom. I am
22  an adult. I'm trying to -- oh, so is this the second
23  one?
24    ATTORNEY HEALEY: No, here's --

Page 93

1    THE WITNESS: Wait. I don't --
2    ATTORNEY HEALEY: -- he's asking you about
3  this.
4    A. Yeah, I don't know what he's asking me about.
5    Q. I'm saying I will represent to you that
6  Deposition Exhibit Manfred Sternberg exhibit --
7    A. Oh, wait this is --
8    Q. Please stop --
9    ATTORNEY HEALEY: Stop --
10    (Overlapping speakers.)
11    THE WITNESS: I'm talking to you.
12    ATTORNEY HEALEY: But you don't -- don't.
13  Just --
14    THE WITNESS: I'm talking to you while I go
15  through this. I don't need his voice telling me what
16  I'm reading. I can read.
17    Q. Okay. Well, tell me when you're ready.
18    A. So take me a --
19    Q. My apologies.
20    A. It was sent on the 4th.
21    ATTORNEY HEALEY: Okay. Let him ask the
22  question.
23    A. Okay. Go ahead.
24    Q. I'm showing you Manfred Sternberg Deposition

24 (Pages 90 to 93)

USDC, ED of PA American Environmental Ent. v. Manfred Sternberg, Esq., et al. Tuesday
No. 2:22-CV-0688 (JMY) Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT April 2, 2024

Page 94

Exhibit 19 which is a page from the Sternberg defendant's answers to interrogatories. And it says that on February 4th, one million nine hundred and eleven thousand nine hundred and sixty thousand dollars was wired from the Sternberg IOLTA account to the Sokolski JP Morgan Chase account. Do you see that?
**A. I see it.**
Q. I have a wire transfer confirmation from Mr. Sternberg's attorney escrow account showing that wire was made on February 4th --
**A. Can you just take your voice down a notch?**
Q. I'm not yelling. This is my normal tone of voice --
(Overlapping speakers.)
**A. No, you're being a jerk right now. Just yes, do you have it? Great.**
Q. Okay. So assume that he -- Sternberg wired you the money February 4th. Why are you saying "In case Sternberg doesn't wire us the money"?
(Overlapping speakers.)
**THE COURT REPORTER:** One at a time.
Q. I need my, quote, unquote, fee --
**A. I didn't have it on the fourth. It was, like, I believe a Friday. I went back and looked. I believe it**

Page 95

**was a Friday. I didn't know about it until Monday first of all. I believe we went over this.**
Q. So they --
**ATTORNEY HEALEY:** He's asking you questions.
THE WITNESS: Yeah. I --
Q. They told you that a wire had been made?
**A. Telling me and doing it are two different things. He needed to confirm that the goods were on the truck. That I knew as well.**
Q. So why are you writing -- if you knew there was a wire in the works, why are you writing I need in case we have to sue Mr. Sternberg from this transaction?
**A. Or each other.**
**ATTORNEY HEALEY:** Objection. That's not what she said --
(Overlapping speakers.)
**A. That's not what I said.**
**ATTORNEY HEALEY:** That's not what's written.
**A. All right. Can we move on?**
**ATTORNEY HEALEY:** He -- just answer his question.
(Overlapping speakers.)
Q. No. I want to know why you're writing "My fee will include litigation as a result of this transaction"

Page 96

when you were told the wire was made and the wire had --
**A. No, I don't believe that I was told that any wire was made at the time that this was written in fact. Let me see. Where am I -- (reading sotto voce.) I just lost it. Can you point to it?**
**ATTORNEY HEALEY:** What are you looking for?
**A. The current -- that statement. I'm just -- oh, right here.**
**ATTORNEY HEALEY:** 103. Down to 103 --
THE WITNESS: No, no, no.
Q. Two six -- on DZ-9 it's the entry on February --
(Overlapping speakers.)
Q. -- 6th at 1:03 --
**A. Yeah, I don't think I had the money yet or had any evidence that the money came to me yet.**
Q. Okay. So you did get subsequently the 1.9 in --
**A. Subsequently. And then I did --**
Q. So there was no need for you to sue --
(Overlapping speakers.)
**THE COURT REPORTER:** Guys, again, I can't take this down anymore. I'm really sorry. This is not working. I cannot certify the transcript.
(Off-the-record discussion regarding unreportable conduct of proceedings.)

Page 97

**ATTORNEY LIGHTMAN:** The court reporter has indicated that because of the continuing interruptions that she can't certify the record as an accurate record. I have asked you numerous times --
**ATTORNEY HEALEY:** Well --
**ATTORNEY LIGHTMAN:** Please. You can make a statement afterwards, please. I've asked you numerous times to please let me finish my questions. It's apparent that you have not done so, and the record will speak for itself.
So here's what I'm going to request. Since she's not going to certify the record, we're going to need to redo this and I'm going to request that the deposition be recommenced in Judge Younge's courtroom so that he can listen to what's going on and make instant rulings on the record. Do you agree to that or am I going to need to make --
(Overlapping speakers.)
**ATTORNEY HEALEY:** No, we're not going to agree to that because a lot -- some of the interruptions were due to you also, Gary. You weren't exactly always waiting for her to finish her answer before you asked a question. There's -- and I don't like your client sitting here shaking his head. He's not on the record.

25 (Pages 94 to 97)

(856) 983-8484 Tate & Tate, Inc. (800) 636-8283
825 Route 73 North, Suite G, Marlton, New Jersey 08053

Page 98

1  If he wants to be on the record during things, he can be
2  on the record. He can't make any statements on the
3  record here. If we're going to reconvene, we can
4  reconvene. But it's -- there's fault on both sides.
5          ATTORNEY LIGHTMAN: So you're refusing to do it
6  in front of Judge Younge and in his court --
7          THE WITNESS: I'm refusing to do it in front of
8  Judge Younge. We can reconvene at another time and do
9  the deposition not in the courtroom.
10         ATTORNEY LIGHTMAN: It's not going to work
11 because I have asked her countless times to stop
12 interrupting me, and she refuses to do that.
13         ATTORNEY HEALEY: And you haven't been all --
14 you haven't been innocent in this game either.
15         ATTORNEY LIGHTMAN: I think you can count on
16 one hand the times that I've interrupted her. But I
17 think --
18         (Overlapping speakers.)
19         THE COURT REPORTER: You're doing it right now.
20 Excuse me. I'm sorry. That's it. The statements have
21 been made. If you want to put anything else on the
22 record, it will be one at a time and then I'm leaving.
23 Thank you.
24         ATTORNEY LIGHTMAN: I think that you can count

Page 99

1  on one hand the times I may have interrupted her but I
2  think you would need the hands and fingers of everyone
3  in this courtroom -- in this room to count the number of
4  times that she's interrupted. So I'm asking --
5          THE WITNESS: Are you --
6          (Overlapping speakers.)
7          ATTORNEY LIGHTMAN: -- I'm going to make a
8  motion if you don't agree. I think when the judge sees
9  this transcript, he's going to order it but you can save
10 some time and some money.
11         ATTORNEY HEALEY: Well, you know you can make
12 all the statements you want. I've been in other
13 depositions where you've mischaracterized testimony and
14 evidence. I'm not going to get into it right now. But
15 I think there's fault on both sides. We would agree to
16 come back at another time to be deposed. We're not just
17 going to roll over and decide, like, oh, yeah, you want
18 to do it in front of Judge Younge in his courtroom. No.
19         THE WITNESS: I'm happy to come back. I'm
20 happy to continue now --
21         ATTORNEY HEALEY: Stop. Daphna, stop. That's
22 it.
23         ATTORNEY LIGHTMAN: Before we go --
24         THE WITNESS: I'm leaving.

Page 100

1          ATTORNEY HEALEY: Stop.
2          ATTORNEY LIGHTMAN: You can leave, but before
3  you go --
4          THE WITNESS: I'm leaving. This is enough.
5  This is abusive already.
6          ATTORNEY LIGHTMAN: I'd like this marked as --
7          THE WITNESS: Can we close the record --
8          (Overlapping speakers.)
9          ATTORNEY HEALEY: Daphna, sit and let me talk.
10         ATTORNEY LIGHTMAN: I'd like this marked as
11 Daphna DZ-11.
12         THE WITNESS: What is that?
13         ATTORNEY HEALEY: Stop.
14         ATTORNEY LIGHTMAN: I'd like this marked.
15         ATTORNEY HEALEY: I'm going to object to any
16 marking of exhibits since the court reporter said she
17 can't certify the transcript --
18         ATTORNEY LIGHTMAN: She doesn't need to --
19         ATTORNEY LAVER: I join that objection.
20         ATTORNEY HEALEY: Yeah. And if there are --
21         THE WITNESS: Can you --
22         ATTORNEY LIGHTMAN: Stop. Stop. Daphna, stop.
23         ATTORNEY LIGHTMAN: Mark these as 11 and 12.
24         ATTORNEY HEALEY: I will object to their

Page 101

1  admission because she said she can't certify the
2  transcript.
3          ATTORNEY LAVER: I join.
4          ATTORNEY HEALEY: Okay. And you're also -- I
5  object to the admission of DZ-11 because it is a court
6  order. It's already filed. It's on the docket. Your
7  motion got granted. It doesn't need to be attached as
8  an exhibit. And we would object to any --
9          GARY WEISS: Can I ask one question?
10         ATTORNEY LIGHTMAN: Hold on. I need to create
11 my record.
12         ATTORNEY HEALEY: Well, you can't create the
13 record. We don't have a court reporter that's going to
14 certify it.
15         ATTORNEY LIGHTMAN: This is -- I don't need it
16 certified. This is 12 and 13.
17         (Exhibits DZ-12 and DZ-13 were marked for
18         identification.)
19         THE WITNESS: But we have no --
20         ATTORNEY HEALEY: Stop. Stop.
21         GARY WEISS: Can I ask one question, please?
22         ATTORNEY LIGHTMAN: Not yet. Mr. Healey, I've
23 handed you three documents. The first document marked
24 as DZ-11 is a copy of Judge Younge's order dated

26 (Pages 98 to 101)

Page 102

1  April 1, 2024, docket number ECF158 that grants
2  plaintiff's motion to compel discovery from defendants
3  Daphna Zekaria, Esquire, and Sokolski and Zekaria P.C.
4  and directs in paragraph two within ten days from the
5  date of this order, which is April 1st, each of the
6  Zekaria defendants shall deliver to plaintiff full and
7  complete verified answers to plaintiff's interrogatories
8  addressed to them without objections.
9     Paragraph three of Judge Younge's April 1st order
10  says within ten days of the date hereof, each of the
11  Zekaria defendants shall produce and deliver to
12  plaintiff their written responses together with all
13  documents responsive to plaintiff's request for
14  production of documents addressed to them without
15  objections.
16     DZ-12 is a copy of the responses and objections of
17  the defendants Daphna Zekaria, Esquire, to plaintiff's
18  --
19         ATTORNEY HEALEY: Which one?  Twelve?
20         ATTORNEY LIGHTMAN: -- twelve -- plaintiff's
21  first request for production of documents.
22         ATTORNEY HEALEY: Twelve is the
23  interrogatories.
24         ATTORNEY LIGHTMAN: I'm sorry.  Twelve is the

Page 103

1  interrogatories.  My apologies.
2         ATTORNEY HEALEY: No problem.
3         ATTORNEY LIGHTMAN: Twelve is the responses and
4  objections of defendants Daphna Zekaria, Esquire, and
5  Sokolski and Zekaria P.C. to plaintiff's first -- to
6  plaintiff's interrogatories.  And for each of the -- I'm
7  sorry -- the verification's dated March 29 and this was
8  sent to me I believe on March 30th.  Each of the
9  questions starts out -- each of the responses of the
10  Zekaria defendants starts out, quote, "objection," end
11  quote.  The --
12         ATTORNEY HEALEY: Well, there's more to it than
13  that but --
14         ATTORNEY LIGHTMAN: I'm just creating a record.
15  You'll have your chance.
16     The document marked as DZ-13 is the responses and
17  objections of defendants Daphna Zekaria, Esquire, and
18  Sokolski and Zekaria P.C. to plaintiff's first request
19  for production of documents.  Again, this was dated
20  March 29, 2024.  I believe we got it on March 30th.
21  Each of the requests for production of documents -- or
22  I'm sorry.  Not each of them but most of them asserts
23  objections.
24     I also note for the record that many of the

Page 104

1  questions -- or the responses.  Excuse me.  Many of the
2  responses of the Zekaria defendants to the
3  interrogatories states that after the objection and that
4  it's over broad and unduly burdensome and beyond the
5  scope.  And it also says as it -- quote, "as it deals
6  with matters protected by the attorney-client
7  privilege," end quote.
8     I note for the record that there was no privilege
9  lock produced by the Zekaria defendants that identified
10  any of the documents or any of the areas that allegedly
11  are protected by the attorney-client privilege contrary
12  to not only the instructions accompanying these
13  discovery requests but the rules of court.  I would note
14  for the record that the responses of the Zekaria
15  defendants dated March 29 and produced March 30th are
16  not in compliance with Judge Younge's April 1st order.
17     I note for the record in fairness to Mr. Healey that
18  they were produced before Judge Younge issued his order.
19  I would respectfully request on the record that DZ-12
20  and DZ-13 be amended and that in the supplemental
21  responses that there's full and complete compliance with
22  Judge Younge's order.
23         THE WITNESS: What's 12 and 13?
24         ATTORNEY HEALEY: Stop.

Page 105

1         THE WITNESS: No.  I'm just --
2         ATTORNEY HEALEY: It's our discovery responses.
3         THE WITNESS: Okay.
4         ATTORNEY HEALEY: The discovery responses were
5  sent to you prior to the judge's order so I don't know
6  how they cannot be in compliance with the order because
7  the order wasn't issued until after they were produced.
8  I will tell you we will be in compliance with any court
9  order issued.
10         ATTORNEY LIGHTMAN: That's all I needed to
11  hear.
12         ATTORNEY HEALEY: I will also note that this is
13  kind of a little bit of grandstanding here since we
14  can't -- the court reporter is not certifying the
15  record.  So it's --
16         THE WITNESS: I mean --
17         ATTORNEY HEALEY: -- kind of a -- stop.
18  Daphna, stop.
19         THE WITNESS: No, I don't think she said that
20  yet really.
21         ATTORNEY LAVER: She has.  And I'm --
22         THE WITNESS: No, I mean on the record.
23         ATTORNEY HEALEY: Stop.
24         ATTORNEY LAVER: I'll point out that I reserve

27 (Pages 102 to 105)

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 106

1   my right to question the witness whenever we reconvene.

2        ATTORNEY LIGHTMAN:  And I will talk to Mr.

3   Healey about reconvening amicably.  But I am not going

4   to go through this a second time.  I have asked over a

5   dozen times for Ms. Zekaria to stop interrupting me.

6   She refused to do so.  So I think the appropriate remedy

7   is to do it in court, and we will have further

8   discussion about it --

9        ATTORNEY HEALEY:  Yeah, but like I said, you

10  weren't exactly innocent in this game.  But we can

11  discuss it amicably --

12        (Overlapping speakers.)

13        ATTORNEY HEALEY:  -- we have in the past.

14        ATTORNEY LIGHTMAN:  I think it's comparing a

15  kindergartner versus a high school graduate, and she's a

16  high school graduate of interruption compared to --

17        ATTORNEY HEALEY:  Yeah, well, we've long

18  graduated high school --

19        (Overlapping speakers.)

20        THE COURT REPORTER:  Okay.  I'm off the record.

21

22   (Whereupon at 2:23 p.m. the deposition was suspended.)

23

24

Page 107

1                S T A T E M E N T

2

3        I, CAYCE KILEY, a Certified Court Reporter and

4   Notary Public of the State of New Jersey, am unable to

5   certify that the foregoing is a true and accurate

6   transcript of the testimony as taken at the place and on

7   the date hereinbefore set forth due to the unreportable

8   conduct of the proceedings.  The deposition was suspended

9   due to continuing difficulties with overlapping speakers

10  despite several warnings.  The testimony was transcribed

11  to the best of my ability given these limitations.

12

13

14

15

16   _____

     /s/ Cayce Kiley

17   Certified Court Reporter

     License No. 30XI00243600

18

19

20

21

22

23

24

(856) 983-8484                    Tate & Tate, Inc.                    (800) 636-8283
                825 Route 73 North, Suite G, Marlton, New Jersey 08053

USDC, ED of PA                   American Environmental Ent. v. Manfred Sternberg, Esq., et al.                   Tuesday
No. 2:22-CV-0688 (JMY)   Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT                   April 2, 2024

Page 108

**A**

**a.m** 87:14
**A/K/A** 1:10,11
**ability** 7:23 107:11
**able** 4:22 8:20 9:24
    10:1 17:23 20:7
    32:12 37:1 42:9
    52:8 53:19,22
    76:23
**above-entitled** 1:16
**absent** 20:17,18
    64:8
**absolute** 11:2 12:24
**absolutely** 51:18
    54:10
**abusive** 100:5
**access** 12:17
**accommodating**
    6:10
**accompanying**
    104:12
**account** 4:19 42:5
    94:5,6,9
**accounting** 64:15
    81:8
**accurate** 97:3 107:5
**accused** 40:8,24
**acknowledged** 78:3
    78:4
**ACTION** 1:2
**actual** 23:15 27:21
    29:7 34:10 60:14
**Ad** 24:11
**add** 12:8,10,10,11
**added** 79:17
**addition** 65:6
**additional** 4:19 42:5
    73:14,16 74:10,14
    74:20,22 75:1,3
**address** 4:12,14 5:2
    27:19 37:14,16,19
    38:8,13,20,22,24
    39:13 47:9 87:18
**addressed** 102:8,14
**addresses** 4:13 38:9
    38:15,17
**admission** 101:1,5
**adult** 92:22
**adversely** 14:4
**affect** 7:23
**affiliation** 22:2
**afield** 32:1
**afternoon** 6:16
    79:14
**agent** 49:1 82:17

83:1
**aggressive** 55:6
**ago** 9:5 19:3 20:11
    20:12,13,15,16
    21:13 27:17,20,20
**agree** 67:14,17 70:5
    76:7 97:16,19
    99:8,15
**agreed** 91:13
**agreement** 43:15,19
    43:23 44:4,5 49:9
    51:22,24 52:10,15
    53:1,2,5,6 55:9,24
    57:1 59:12 64:8
    65:7,8,19 76:23
    76:24 82:24 83:13
    83:21 87:15 88:10
    88:17,21 89:1,5
    92:6
**ahead** 82:24 83:4
    87:6 93:23
**aid** 12:7
**alarm** 5:12
**allege** 24:21
**allegedly** 104:10
**amazing** 49:18
**amended** 3:8 18:8
    104:20
**Amendment** 11:3
    13:2,3,9,11,24
    14:2,12,16,18
    33:20
**American** 1:4 6:19
**amicably** 106:3,11
**amount** 54:23 77:1
    83:18
**and/or** 60:1
**answer** 7:5,8,11,13
    7:19 10:16 11:10
    11:24 13:1,24
    14:1,5,10 17:11
    19:9 22:14 24:4,6
    26:5 27:3,10 28:9
    29:7 31:24 32:4,9
    32:16,20,23 33:2
    33:8,9,10,18,19
    33:21 34:1,7
    35:12 37:8 39:24
    41:12,18 52:12
    55:16 62:7 68:7
    77:11,24 83:7
    87:11 95:20 97:22
**answered** 12:2
    18:17 22:11 37:24
    61:6

**answering** 10:17
    33:1 36:6 38:19
    42:13
**answers** 11:17 19:4
    94:2 102:7
**anticipate** 87:24
    90:20
**anticipated** 91:11
    91:14,15,18
**anybody** 61:23
**anymore** 96:21
**Anyway** 57:4
**apologies** 93:19
    103:1
**apologize** 5:7 20:8
    45:18 48:12 72:12
    92:19
**apparent** 97:9
**apparently** 34:17
**appearance** 27:22
**appointment** 6:10
**appreciate** 5:15
**appropriate** 106:6
**approval** 52:16
    80:19,21,22
**approved** 14:24
    81:18
**approximately** 5:19
**approximation**
    20:10
**April** 1:18 3:14
    102:1,5,9 104:16
**areas** 104:10
**arose** 4:9 33:16
**arrangements** 11:24
**article** 3:9 40:21
    41:14 66:13,14
**asked** 12:1 18:17
    22:11 33:1 52:22
    56:13 60:21 62:14
    68:19 72:6 97:4,7
    97:22 98:11 106:4
**asking** 6:24 20:3
    30:20 36:6 67:9
    67:20 68:21 69:14
    70:1 87:1 93:2,4
    95:4 99:4
**Asolar** 1:11 23:12
    23:13,13,14,15,15
    23:17,18 65:20
    90:12 91:21,22
**ASOLARDIAM...**
    1:11
**assent** 19:10
**assert** 13:8,10,24

14:2
**assertion** 14:6
**asserts** 103:22
**assistants** 29:9
**associate** 28:14,15
**associates** 1:9 2:12
    28:19,23 29:1,8
**assortment** 20:20
**assume** 10:16 39:24
    67:18 94:17
**attached** 51:3 101:7
**attorney** 3:3 4:17
    5:17 6:4,8,13 8:10
    8:14 9:13,14 10:4
    10:8,12,20 11:6
    12:6 13:5,7,14,16
    13:20,22 15:10
    16:11,13,18 17:12
    17:13 18:1,11
    19:7 20:9 21:19
    24:23 25:5,8,12
    25:16,20,23 26:2
    26:8,10,12,16
    27:7,10,12,14,17
    29:8 30:21 31:2,4
    32:2,4,8,15,18
    33:3,6,8,11,13
    39:16,18 40:23
    41:4,18 42:2,17
    43:3,5 47:1,3,13
    47:16,18 48:11
    52:9 55:20,22
    56:24 57:22,23
    58:16,18,22,24
    59:2,3,6,8 60:1,11
    61:6 63:22 64:14
    65:2,5 66:3,6,8,9
    66:10,11,14,17,19
    66:21 67:20 68:14
    68:20 69:15 70:18
    70:22,24 71:2,13
    71:15,21,23 72:1
    72:5,20 73:17
    74:1,4,5 77:21,24
    78:1,13,16,19
    79:6 82:18 87:1
    92:4,10,13,15,24
    93:2,9,12,21 94:9
    95:4,14,18,20
    96:6,9 97:1,5,6,19
    98:5,10,13,15,24
    99:7,11,21,23
    100:1,2,6,9,10,13
    100:14,15,18,19
    100:20,22,23,24

101:3,4,10,12,15
    101:20,22 102:19
    102:20,22,24
    103:2,3,12,14
    104:24 105:2,4,10
    105:12,17,21,23
    105:24 106:2,9,13
    106:14,17
**attorney-client**
    11:20 14:17 24:23
    24:24 27:4 33:20
    50:6 83:8 104:6
    104:11
**authority** 15:4,5,5
    35:19 36:3 56:12
    56:16 61:4,8,12
    61:18 64:18,23
    82:14
**authorization** 57:17
    60:22 81:14 87:16
**authorize** 56:11,17
    56:22,23 57:3
    62:9 64:13 82:18
**authorized** 56:8
    63:19,23 82:10
**auto** 50:16,18
**available** 59:20
    80:17
**aware** 6:18,24 10:23
    11:1 52:17
**awesome** 76:1,4

**B**

**B** 3:6 86:16
**back** 5:24 12:23
    21:1,21 22:16
    44:9 46:8 47:19
    48:15 49:9 50:23
    56:12 59:3 75:21
    76:18 77:8,14
    78:3,10 79:1 86:9
    94:24 99:16,19
**backdating** 88:8
**bad** 30:7 59:23
**badge** 11:15
**balance** 5:13
**bank** 44:9 57:13,15
**based** 34:16 57:16
    63:13,14 84:15
**basically** 20:19
**basis** 56:3
**Bates** 67:11
**behalf** 4:20 42:5
    45:22 47:20 50:3
    80:18

Case 2:22-cv-00688-JMY   Document 167-9   Filed 05/28/24   Page 31 of 41

USDC, ED of PA            American Environmental Ent. v. Manfred Sternberg, Esq., et al.            Tuesday
No. 2:22-CV-0688 (JMY)   Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT            April 2, 2024

Page 109

**believe** 21:15 23:12 25:2 29:12,15 30:6,10 31:15 35:2 39:4 44:10 46:12,20 50:4 52:20 53:14,18 57:13 58:3 63:11 63:12,13 76:22 83:12 84:13 86:7 86:13 88:5,13,19 91:23 92:3 94:24 94:24 95:2 96:2 103:8,20
**believed** 86:17
**Bell** 1:18 2:16
**beneficiary** 35:17 60:12
**best** 59:9 107:11
**better** 55:8
**beyond** 11:13 14:20 33:4 44:18 104:4
**bit** 58:3 105:13
**blameworthy** 15:1
**blaming** 8:6
**Blue** 1:18 2:16 26:8 26:20 66:17
**Bluestone** 1:17
**Boehms** 1:18
**boring** 13:19
**bottom** 68:10,18,22 71:17 82:13
**bought** 37:5
**brand** 9:17
**break** 43:1,3 65:2 78:14
**broad** 104:4
**brought** 4:24 42:11 85:3
**Bullion** 26:20
**burdensome** 104:4
**business** 6:20 21:4 22:20 39:15 45:9 53:22 81:4 89:23 90:6

**C**

**C** 1:15,15 2:1 86:16
**call** 23:14 79:15,18 84:14
**called** 5:20,24 11:20 46:21 56:18 76:24 77:15,16 83:7
**calls** 50:3 77:18
**cancel** 5:21
**capacity** 49:1

**car** 8:9
**Career** 16:2
**case** 3:10 6:19 11:16 21:7 22:18,23 26:20,21,23,24 28:2,7,13 33:5,7 41:6 66:10 71:19 77:2,12 83:12,16 84:11 94:18 95:11
**cases** 20:23 21:9 22:9,24 77:5
**cash** 44:20
**Cayce** 1:16 107:3,16
**cell** 38:3,4
**Center** 30:14 45:20
**certified** 1:17,21 101:16 107:3,17
**certify** 10:1 32:12 96:22 97:3,12 100:17 101:1,14 107:5
**certifying** 105:14
**cetera** 89:23
**chance** 103:15
**changed** 21:3,5 46:20
**changing** 27:16
**charged** 4:17 40:22 42:2
**charges** 4:23 41:5 42:11
**Charlton** 1:10 34:13 34:14,24 35:8,10 35:16 36:1 48:16 53:13 60:11 90:8 91:21
**Chase** 94:6
**check** 35:15 51:5 57:9
**checking** 62:20
**checks** 34:9,12 35:1 35:7,8,13,19 36:24 44:21
**cherry** 83:23
**child** 31:17
**Christ** 82:23
**Church** 1:18
**city** 30:5 45:5,20 49:4,4
**civil** 1:2 41:23
**claim** 36:16
**claimed** 84:5 85:11
**claims** 85:1
**clarify** 16:11 39:17
**classroom** 92:21

**cleaning** 43:20
**clear** 7:4 10:7 70:24 71:16,22,24 72:7
**clearly** 7:24
**client** 4:21 6:21 12:12,22 34:11 36:2,3,5 42:7 45:7 64:16 80:14 97:23
**client's** 4:23 11:11 42:10
**clients** 22:6 40:23
**close** 100:7
**club** 1:17 55:18
**collected** 4:20 42:6
**column** 4:16,17 41:1 41:2,10,11,14 42:1,1
**combination** 56:20
**come** 54:22 64:6 91:1 99:16,19
**coming** 11:16 68:9 69:18 75:7,18
**commenced** 83:12
**commencing** 1:18
**comment** 62:7
**comments** 31:2
**committee** 82:12
**companion** 90:24 91:3
**company** 36:8 37:4 61:21 85:22 90:2
**compare** 67:18 68:14
**compared** 72:23 106:16
**comparing** 106:14
**compel** 102:2
**compensation** 43:24 44:2,24
**complaint** 27:22 28:1,18 29:11
**complete** 102:7 104:21
**completed** 63:7
**completely** 7:9
**compliance** 104:16 104:21 105:6,8
**comply** 11:10
**computer** 51:2,6,8 51:11,22
**concerned** 62:23
**conclusion** 57:2
**concoct** 14:16
**conditions** 20:21
**conduct** 96:24 107:8

**confirm** 68:9 69:1,3 69:18 74:19 75:6 75:10,18 79:19 80:4,12 87:8 95:8
**confirmation** 76:5 81:24 82:3 94:8
**confirmed** 82:6 86:24
**confirming** 82:8
**confirms** 78:10
**confused** 41:8
**connection** 23:2,5 24:8,16 51:16
**consent** 81:11
**consult** 20:23
**consulted** 20:19
**contact** 5:22 46:13
**contacted** 56:18
**contemplate** 89:2
**contemplated** 54:24 55:24 56:4 90:19
**contemplating** 21:9
**contention** 43:6
**continually** 41:22
**continue** 37:20 64:7 99:20
**continuing** 97:2 107:9
**contract** 56:16 62:11 63:13 83:17 87:5
**contracted** 89:23 90:5,6,8,12
**contrary** 104:11
**conversations** 44:14 77:10
**convicted** 40:6
**cooperate** 50:5
**copies** 35:8
**copy** 3:13 18:8 52:10,15 101:24 102:16
**corporate** 34:17,18 34:20
**corporation** 18:23 19:1
**correct** 18:8 24:10 53:10 69:20 75:22 76:11 81:19 88:9 89:16,18 91:11
**counsel** 3:22 60:10 60:16 72:6,15
**count** 98:15,24 99:3
**countless** 98:11
**country** 1:17 55:18

**County** 11:6 12:6 26:19
**couple** 19:2 37:2
**court** 1:1,17,21 6:7 7:6 8:17,19 9:21 9:24 10:6,10 17:6 17:16,17,22 20:6 21:19 26:7,19 32:11,15 38:12 42:21,24 48:8 52:3,7 64:5 66:5 73:19,23 94:21 96:20 97:1 98:6 98:19 100:16 101:5,13 104:13 105:8,14 106:7,20 107:3,17
**courtesy** 19:9 41:23
**courtroom** 97:14 98:9 99:3,18
**courts** 15:23 16:13
**covered** 77:4
**COVID** 20:24 21:8 63:15 86:1
**COVID-related** 86:10,17
**crap** 54:3
**cream** 84:1
**create** 12:8 101:10 101:12
**created** 27:20 79:17
**creating** 103:14
**crime** 4:15 40:6,8,10
**criminal** 11:7
**CROSS** 3:2
**culminate** 20:16
**current** 87:18 96:7
**currently** 15:12 46:15
**cut** 36:4,11 51:5 57:9
**cutoff** 73:12
**cutting** 31:9

**D**

**D** 1:15 3:1 4:1,5 5:1
**D-a-v-i-e-s** 30:1
**D/B/A** 1:4
**DA** 11:16
**Dan** 6:21
**Dan's** 55:16
**Daniel** 2:1
**Daphna** 1:8,12 2:18 3:3,15,18 13:5,14 13:20 17:12 18:3

Case 2:22-cv-00688-JMY   Document 167-9   Filed 05/28/24   Page 32 of 41

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)   Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 110

18:7,9 19:7 30:21
32:2 33:3,6,8
39:16 40:17 42:17
61:6 69:15 75:22
76:5 79:19 80:4
87:15,20 92:11
99:21 100:9,11,22
102:3,17 103:4,17
105:18
**date** 20:11 24:13
88:11,11 102:5,10
107:7
**dated** 3:14 88:4,10
89:13 101:24
103:7,19 104:15
**dates** 29:8
**daughter** 35:2
**daughter's** 35:4
**Davies** 28:14,22
29:6,10,23
**day** 57:14 88:13
**days** 57:15 88:7
89:14 102:4,10
**deal** 23:21 24:9
43:14,14,49 55:11 59:7
**deals** 43:11 104:5
**decide** 99:17
**deed** 49:2
**defaulted** 83:13
**defendant** 19:13
85:5,8
**defendant's** 94:1
**defendants** 1:13
2:11,17 3:15,18
6:23 102:2,6,11
102:17 103:4,10
103:17 104:2,9,15
**defended** 17:4,7
**defense** 11:8 55:1
**definitely** 53:8,14
53:17 54:2,2
**defrauded** 84:6
**defunct** 38:20
**delay** 5:8,23
**delaying** 5:15
**delete** 50:7,14,16,18
50:20
**deleted** 51:10,15,15
51:18 53:21
**deliver** 45:1 46:12
48:17,24 49:5
59:18 62:12 84:15
102:6,11
**delivered** 56:6,7

62:5 84:18 85:22
**delivering** 60:7
**delivery** 49:2 62:12
82:1 86:2
**deposed** 99:16
**deposition** 1:7 3:8
5:21,23 6:17
11:15 13:21 17:14
17:17 18:9 45:15
57:19 86:5 92:16
93:6,24 97:13
98:9 106:22 107:8
**depositions** 15:20
16:1,20 17:4
99:13
**DESCRIPTION** 3:7
4:2
**designated** 18:21
19:12 39:20 46:11
**desk** 51:3
**desktop** 53:24
**despite** 107:10
**detective** 12:6
**determination** 64:8
**determined** 80:24
**Diamond** 23:13,15
23:18
**diamonds** 44:23
45:3,20,24
**difference** 39:23,23
**different** 28:24 41:4
42:19 58:4,5 95:7
**difficult** 43:22
**difficulties** 107:9
**diligence** 62:19
**direct** 3:2 6:13
48:22 55:11
**directed** 14:23
35:15 45:5 55:8
**directive** 11:11,12
**directly** 36:7 37:3
48:14
**directs** 102:4
**disability** 7:23
**disbursement** 65:10
87:17
**disciplinary** 82:12
**disclose** 25:9,13,21
37:18
**discovery** 11:14
71:18 102:2
104:13 105:2,4
**discuss** 106:11
**discussed** 8:11 77:2
**discussion** 96:23

106:8
**dispute** 4:9 33:16
44:6
**disputing** 82:14
**distanced** 55:5
**distribute** 57:10,11
81:17
**distributed** 43:7
**distributions** 36:17
**district** 1:1,1 11:5
12:6
**divvied** 36:12
**docket** 101:6 102:1
**doctor** 9:1
**document** 21:14,16
21:20,23 40:12
53:24 65:12,15
67:5,11 68:8
72:12 78:2 88:8
92:21 101:23
103:16
**documentation**
65:19,24 78:9
**documents** 3:20
18:10 34:22 59:7
67:1,10 71:9,18
72:17 78:10 82:9
82:11 88:3 89:13
92:11,14 101:23
102:13,14,21
103:19,21 104:10
**doing** 6:19 9:7 65:11
73:1 89:2 95:7
98:19
**dollars** 12:22 54:24
94:4
**Douglas** 41:6
**dozen** 106:5
**draft** 28:8 51:22,24
52:16 87:15 88:14
88:17,20 89:4,8
**drafted** 27:18 29:10
**drafting** 28:17 88:8
88:13,15,17
**dragged** 83:11
**drama** 12:8
**drives** 51:1
**drugs** 7:21
**due** 8:5 62:19 97:21
107:7,9
**duly** 5:3
**duties** 65:9,18
**DZ** 68:3 70:5 86:23
**DZ-1** 3:8 18:4
**DZ-10** 3:12 66:23

67:2,11 68:1,4,8
69:6,11,17,20
70:8 73:2,7,13,16
73:17 74:5,7
**DZ-11** 3:13 100:11
101:5,24
**DZ-12** 3:15 101:17
102:16 104:19
**DZ-13** 3:18 101:17
103:16 104:20
**DZ-2** 3:9 40:14
**DZ-8** 3:10 25:5,6
26:15,18 66:4
**DZ-9** 3:11 66:6,23
67:2,4,14 68:11
68:16 70:9 72:17
74:11 79:2 86:9
86:19 87:3,4
96:11

_____
**E**
**E** 1:15,15 2:1,1,20
2:20 3:1,6 4:1,1,1
4:5,5 5:1 107:1,1
**earlier** 89:14
**eastern** 1:1 16:15
**easy** 49:20,21
**ECF158** 102:1
**effect** 50:16
**Eight** 66:10,11,17
**either** 34:24 35:8
58:20 62:9 85:24
86:17 98:14
**eleven** 94:3
**email** 4:13 27:19
38:8,9,13,15,17
38:20,22 47:7,9
50:13,15 51:4,19
52:11 53:20,21,24
54:5,8 74:13 76:8
76:19 82:20 87:18
**emailed** 53:6,10,13
**emails** 50:7,11,12
51:10,15,15,18
**embarrassed** 8:4
**enforce** 76:17
**enforced** 76:15
**entered** 55:19 63:14
**Enterprises** 1:4 6:19
**entire** 55:9
**entities** 23:10,24
**entitled** 14:3
**entity** 23:11 44:21
**entry** 27:21 68:12
96:11

**Environmental** 1:4
6:19
**escrow** 4:19 42:5
49:1 65:8,18
81:16 82:17 83:1
87:16 94:9
**Esquire** 1:9,12 2:3,9
2:11,15 3:16,19
18:9 102:3,17
103:4,17
**essentially** 59:22
63:5 64:5
**et** 89:23
**evaluated** 45:4
**events** 7:24 22:18
**everybody's** 84:12
**evidence** 96:15
99:14
**evidencing** 21:14
65:20
**exactly** 44:3 64:10
97:21 106:10
**EXAMINATION**
6:13
**examined** 5:4
**example** 11:2 13:9
68:1
**exchange** 76:8,19
77:7 78:8
**excuse** 34:18 35:20
75:5 78:20 98:20
104:1
**exhibit** 3:7,8,9,10,11
3:12,13,15,18
18:4 25:6 40:14
92:16 93:6,6 94:1
101:8
**exhibits** 3:22 66:23
100:16 101:17
**expected** 86:24
**extent** 60:12

_____
**F**
**F** 1:15 4:1
**fact** 14:5 20:16 50:4
52:19 55:15 62:2
62:21 82:8 86:14
91:23 96:3
**fairness** 104:17
**familiar** 17:8,14
**far** 22:21 32:1 37:1
62:19 83:9
**fault** 82:9 98:4
99:15
**favor** 45:4

Case 2:22-cv-00688-JMY   Document 167-9   Filed 05/28/24   Page 33 of 41

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)   Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 111

**February** 22:17
76:9 78:4 79:14
80:3 87:10,14
88:4,7,9 89:3,13
89:16 90:16 92:2
94:3,10,18 96:11
**federal** 15:21 16:13
17:16,17
**fee** 49:13 55:2 76:11
78:5 90:16,20,21
91:6 94:22 95:23
**fees** 37:1 73:16
74:10,14,22 75:3
**felt** 55:8
**fence** 31:11
**fifteen** 55:20
**fifth** 11:3,4,13 13:1
13:3,9,11,24 14:2
14:12,15,18 33:20
**fight** 39:6
**figured** 56:24 58:24
62:18
**file** 54:7
**filed** 27:22 28:1
101:6
**files** 12:17
**filing** 54:6
**find** 37:1 54:1,1
68:12 76:23
**fine** 6:1 10:19 70:20
92:12
**fingers** 99:2
**finish** 13:4 19:6
22:13 32:24 35:11
41:20 68:6 69:13
69:15 84:2 88:15
88:18 91:6 97:8
97:22
**finished** 12:19 15:7
50:1
**finishing** 89:7
**firm** 20:14,15,17
30:3 85:8
**firm's** 4:19 42:4
**first** 3:20 4:16 5:3
7:2 10:16 24:11
41:10,14 42:1
77:14 78:23 95:1
101:23 102:21
103:5,18
**five** 5:11 68:22
**floor** 5:2 54:3
**focus** 13:20
**follows** 5:5
**font** 67:24 72:14

**force** 64:5
**foreclosure** 31:12
**foregoing** 107:5
**foregone** 57:2
**forget** 30:16
**formal** 87:15 88:17
88:20 89:4
**formalize** 20:12
**format** 21:2 67:8,23
79:11
**formation** 34:18,18
34:22
**former** 36:5 40:23
**forth** 55:24 65:8,15
107:7
**forward** 72:10
**forwarded** 72:19,23
72:24
**found** 26:19 40:22
**four** 5:11 45:20,24
46:1 48:1,3,4,4
55:14 68:22 89:12
89:12
**fourth** 94:23
**free** 77:11
**Friday** 94:24 95:1
**front** 51:7 62:15
77:3 86:22 98:6,7
99:18
**full** 102:6 104:21
**fully** 7:9
**funds** 4:23 40:24
42:10 49:10,12
51:5 52:23 56:17
59:20 63:20,23
64:1,14,21 65:10
65:21 85:19
**further** 106:7
**future** 89:20

G

**G** 1:21
**game** 98:14 106:10
**Gary** 1:11 2:3,22
6:17,23 19:16
23:3,4,9,11,16,19
24:9,11,14,16
25:11,15,22 26:1
26:4,9 29:16 33:5
36:2,3 39:17
47:12,15 49:10
51:4 52:1,11,20
52:20 53:7,9
61:21,24 62:23
63:1,18,20 64:20

65:19 67:15 69:3
69:18 74:18,21
75:2,5,6,15,17,21
75:21 76:10 77:15
78:19,20,20 79:16
79:17,18 80:3,6
81:7,16,20 87:7
91:13 97:21 101:9
101:21
**Gary's** 81:6
**garylightman@li**-
2:5
**gemologist** 45:14
**gems** 44:22,22 45:3
**general** 17:15
**generic** 9:11,18
**Germantown** 2:4
**getting** 44:14 50:3
76:9 80:9
**give** 10:16 11:22
19:8 20:10 21:23
33:9,9,22 48:22
49:7 55:20 58:20
61:1 73:24 75:14
76:18
**given** 12:14 81:19
107:11
**giving** 19:9 29:7
37:15 38:21 46:17
76:10,21 77:8
81:7
**go** 13:15 21:21 36:8
36:16 47:19 49:9
50:19 51:1 56:11
56:15 59:3 64:5
68:18,21 74:11
75:2 79:1 82:24
83:4 86:9,11,19
86:23 87:1,4,6,7
93:14,23 99:23
100:3 106:4
**God** 49:20
**goes** 32:1 41:7 49:2
80:15 83:9
**going** 4:10 6:24 8:3
8:12,20 9:13
10:16 11:14,23
12:3 17:23 20:7
21:10 22:5 23:17
23:19 24:20,21,21
30:24 31:9,24
32:3,12 33:9,23
37:8,11,20 39:6
40:16 42:18 45:10
46:8 47:16 52:7

54:16,22 55:16
57:18 59:19 65:2
67:1 69:21 75:1
76:18 80:5 83:14
87:8 91:1 92:7,10
97:11,12,12,13,15
97:16,19 98:3,10
99:7,9,14,17
100:15 101:13
106:3
**GOLDBERG** 2:8
**good** 6:14,15,16
12:9 15:12 39:7
49:2,24 59:23
78:13 85:15
**goods** 12:23 56:6,14
56:20,21 58:1
59:17,18 60:7,17
61:1,15,19,20,21
61:23,24 62:4,12
62:21 63:2,5
65:20 83:2,22
84:9 85:21 95:8
**gotten** 77:4
**graduate** 106:15,16
**graduated** 16:6
106:18
**grandstanding**
105:13
**granted** 101:7
**grants** 102:1
**great** 50:2 94:16
**green** 73:13 74:8
83:4
**grit** 41:21
**Gross** 1:10,11 23:7
23:20 29:17 35:2
35:18,24 36:4,4
36:17,17 45:2
46:12,17,18 48:24
49:5 52:16,18
53:10 59:22,24
67:16 73:8,10
74:11 75:6,17
78:17 79:16 84:19
**Gross's** 23:23 31:15
**grounds** 14:13
33:19 34:1
**group** 1:10 72:11
73:11 79:17
**growl** 36:12 41:21
**growling** 41:22
**guess** 37:5 59:20
72:15 81:11
**guys** 8:19 9:21

32:12 48:9 49:24
52:3 73:19 96:20

H

**H** 3:6 5:1
**hand** 17:9 18:2 67:1
92:20 98:16 99:1
**handed** 101:23
**hands** 99:2
**happen** 11:14 55:5
**happened** 20:12,13
45:6 49:3 50:2,12
50:14 61:2 81:12
**happening** 11:8
54:8 64:10,11
76:13
**happy** 11:24 12:4
99:19,20
**hard** 50:24
**harder** 21:7
**head** 97:24
**Healey** 2:15 5:20
6:8 8:10 9:14 10:4
10:21 13:5,14,20
16:11,13 17:12
19:7 24:23 26:16
27:7,10 30:21
31:2 32:2,4 33:3,6
33:8,11 39:16
41:18 42:17 58:9
58:16,18,22 59:2
61:6 66:19 68:14
68:20 69:15 70:18
70:24 71:13,15,21
72:1,15 73:17
74:5 77:21,24
78:19 79:6 87:1
92:4,10,13,24
93:2,9,12,21 95:4
95:14,18,20 96:6
96:9 97:5,19
98:13 99:11,21
100:1,9,13,15,20
100:22,24 101:4
101:12,20,22
102:19,22 103:2
103:12 104:17,24
105:2,4,12,17,23
106:3,9,13,17
**hear** 38:12 105:11
**heard** 34:4
**hearing** 84:20
**held** 1:17 60:20
**help** 12:11,12 28:17
50:14

Case 2:22-cv-00688-JMY   Document 167-9   Filed 05/28/24   Page 34 of 41

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Tuesday
No. 2:22-CV-0688 (JMY)   Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT        April 2, 2024

Page 112

hereinbefore 107:7
hereof 102:10
hey 57:6 80:13
Hi 75:21 80:4
high 106:15,16,18
hiring 4:18 42:3
hit 20:24 21:8
hold 64:7 82:15
  83:21 92:8 101:10
holding 4:21 42:7
  82:17
Holdings 1:10 34:13
  34:14 35:10 36:1
  90:8
home 20:20 21:7
  48:14
honestly 16:16
  76:17 77:13
honor 10:3
hope 54:15,15
hopefully 12:18
hospital 18:13
hospitalized 8:5,8
  9:3
hot 75:15
hour 5:12,14,14
House 6:20 62:11
  84:15,17
House's 84:14
hundred 54:24 56:2
  94:3,4
Huntington 5:3
  48:15
husband 4:11 19:16
  19:23 37:12

                I

identification 18:5
  25:7 40:15 66:24
  101:18
identified 104:9
identify 27:13
iHealth 79:17
immediately 46:8
  57:7,11
impact 8:9
impacted 21:4
impacts 9:16
impression 60:13
  63:21
include 34:19 90:16
  90:22 91:9 95:24
included 91:5
includes 64:4
independent 60:16

indicated 97:2
indicates 26:21
  69:20
individually 18:21
  19:12 40:3
individuals 4:22
  42:9
infer 14:4
influence 7:21
information 46:13
  52:23 80:8
innocent 98:14
  106:10
insanity 60:23
instance 35:15
instant 97:15
instructions 10:18
  73:24 104:12
intend 14:14
interrogatories 3:17
  94:2 102:7,23
  103:1,6 104:3
interrupted 68:7
  98:16 99:1,4
interrupting 41:23
  98:12 106:5
interruption 19:9
  106:16
interruptions 97:2
  97:20
introduce 66:19
investigated 34:3
investigating 11:6
investigation 12:7
  55:4
investigative 11:16
investigator 14:19
  83:7,8
investigators 34:4
  50:3
investing 4:21 42:8
investor 60:2
involved 43:16,18
  49:20 64:4 84:12
  84:12 90:13
involvement 29:16
IOLTA 94:5
iPad 50:20,23
Island 46:8
issue 64:6
issued 104:18 105:7
  105:9
issues 20:21
items 86:10,16

                J

January 4:9 22:17
  29:2 32:22 33:15
  33:15
jerk 94:15
Jersey 1:17,22 5:4
  107:4
Jesus 82:23
JMY 1:2
join 100:19 101:3
joined 85:7
JP 94:5
judge 3:13 97:14
  98:6,8 99:8,18
  101:24 102:9
  104:16,18,22
judge's 105:5
jurisdictions 15:18
jury 14:4

                K

K 4:5 5:1
keep 30:20 31:9
  41:22 46:5 69:14
keeping 76:10 78:4
keeps 30:23
KELLY 2:14
kept 21:10
Kiley 1:17 107:3,16
kind 21:10 30:16,19
  105:13,17
kindergartner
  106:15
kits 86:1
knew 45:12 48:19
  55:9 56:10 95:9
  95:10
know 6:5 7:3 9:1,8
  9:10 10:10 11:5,8
  12:8,13 14:10,18
  15:3,4 16:16,23
  17:1,3 19:19
  25:18 29:4,6,7
  30:6 31:11,21,23
  32:5 34:3,3,9
  37:15,16 39:9,24
  40:19 44:12,17
  45:2,7,8,12 46:21
  47:23 48:17,20
  49:16 50:1,18
  51:2,3 53:11,11
  55:7,12,16 56:7,8
  56:12,19 58:15,21
  59:20,24 60:2
  61:7,10 62:20

63:5,9,14 64:5,17
67:3,17 69:12,22
69:22 72:16 78:12
80:11,12,13 81:4
81:8,9 83:5,6
84:12,19,23 85:2
85:3,17,18,19
86:7,10,14,15,16
86:20,20 87:23
90:13 92:5,5,5
93:4 95:1,23
99:11 105:5
knowledge 60:14
Kuby 37:1

                L

L 2:20
labeled 69:24,24
  71:12 72:17
landlord 21:1
larceny 41:5
large 4:22 8:5 42:8
late 5:13,16
laughable 91:2
Laver 2:9 6:22 47:1
  57:22 66:8,10,17
  100:19 101:3
  105:21,24
law 13:1 16:6 22:4,7
  22:16,19 30:3
  39:17 85:8
laws 21:3
lawsuit 25:1,3 27:18
  29:18 34:6,7
  66:18 85:3,6,18
lawsuits 85:20
lawyer 11:8 41:7
lawyers 40:19,22
leave 40:16 62:8
  100:2
leaving 98:22 99:24
  100:4
left 10:21 20:14,15
  30:6,7 41:1 48:13
legal 4:9 29:9 33:14
  37:1
let's 13:20 32:2
  47:19 49:9 66:22
  79:1 86:9,11
letting 11:7,14
  14:13,19
License 107:17
licensed 15:14,16
  22:19 56:24
life 12:9,9 49:21

light 83:4
Lightman 2:3,3 3:3
  5:17 6:4,8,13,18
  8:7,14 10:8,12
  13:7,16,22 16:18
  17:13 18:1 20:9
  21:19 25:5,8,12
  25:16,20,23 26:2
  26:8,10,12 27:12
  31:4 32:8,15,18
  33:13 39:18 43:3
  43:5 47:3,13,16
  47:18 48:11 52:9
  55:20,22 57:23
  58:18,24 59:3,6,8
  65:2,5 66:3,6,9,11
  66:14,21 70:22
  71:2,23 72:5,12
  74:1,4 78:1,13,16
  92:15 97:1,6 98:5
  98:10,15,24 99:7
  99:23 100:2,6,10
  100:14,18,23
  101:10,15,22
  102:20,24 103:3
  103:14 105:10
  106:2,14
limitations 107:11
limited 83:18
line 4:2,6 82:13
lines 68:22,23 89:12
linked 27:18
list 36:24
listed 69:8
listen 74:4 97:15
literally 8:22 80:7
litigation 55:1,1
  56:4 76:14,14
  90:17,22,23,24
  91:9,20 95:24
little 11:15 58:3
  105:13
live 4:11 5:14 37:9
  37:11
lived 4:14 38:23
LLC 1:10,11,12
  26:8,20,21
load 61:23 63:4
loaded 62:5,17
  81:24
locate 43:20 53:19
lock 104:9
logically 7:24
long 4:14 15:9 30:3
  37:6 38:23 46:8

Case 2:22-cv-00688-JMY   Document 167-9   Filed 05/28/24   Page 35 of 41

USDC, ED of PA            American Environmental Ent. v. Manfred Sternberg, Esq., et al.            Tuesday
No. 2:22-CV-0688 (JMY)   Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT                April 2, 2024

Page 113

50:22,24 54:7
  106:17
**long-term** 21:4
**longer** 31:3
**look** 26:13,15,16
  27:13 43:21 46:24
  59:1,2,3 68:1,3,4
  68:7,10 70:17
  71:3 73:2,7 74:7
  76:22
**looked** 72:11 94:24
**looking** 12:5 25:19
  68:4 71:7 79:5
  92:8 96:6
**looks** 67:19 73:1
  76:12
**lost** 96:5
**lot** 8:5 45:9 70:4,24
  97:20
**lottery** 4:18 40:24
  42:3
**love** 54:1
**lump** 55:23
**lunch** 65:3 78:14

_____ **M** _____

**M** 4:1,5 107:1
**Madam** 32:15
**Mahoney** 46:9,10
  46:14,20 47:15
  48:15,18 49:6
**Main** 5:2
**making** 4:18 10:6
  42:3 80:1
**Manfred** 1:9,9 2:11
  2:12 14:24,24
  15:2 23:8 24:2,3
  29:17 34:11 43:7
  49:12 50:1 53:15
  53:18 55:8,13
  56:21 57:19 61:8
  62:8,16 63:17,22
  64:4,15,16,18,21
  64:21,24 76:9
  80:13,16 81:13,18
  81:23 82:2,3
  83:16,16 84:18
  85:12,14,19 86:24
  89:23 90:5,7,9
  91:12,18,22,22
  92:16 93:6,24
**Manfred's** 60:22
  80:20
**MANOCHI** 2:3
**March** 18:12 22:17

103:7,8,20,20
  104:15,15
**mark** 21:20 25:5
  28:14,22 29:6,10
  32:16 74:10,22
  100:23
**marked** 17:9 18:2,4
  25:6 40:13,14
  57:18 66:4,22,23
  67:2,4,11 92:7
  100:6,10,14
  101:17,23 103:16
**Market** 2:9
**marking** 100:16
**Marlton** 1:22
**married** 19:21 37:6
**masks** 62:4,4,18,24
  63:8,10,16,18
  81:24 85:23 86:1
  86:5,7,12,17
**matter** 1:16 4:9
  25:13,14,15 31:5
  33:15 88:11
**matters** 25:9 31:8
  104:6
**mean** 8:1 17:10 28:5
  29:6 33:7 39:14
  43:22 45:13 49:22
  68:19 77:13 80:18
  105:16,22
**meaning** 35:23,24
  62:12 75:11
**mechanisms** 57:2
**medical** 20:21 84:22
  85:1
**medication** 5:9 8:8,9
  8:15 9:2,5,7 10:10
  10:13
**medications** 7:22
**meet** 45:22 46:16
**meeting** 2:4 45:4
**memorized** 24:13
**mental** 7:22
**message** 69:10 79:2
**messages** 3:11,12
  67:15 79:3
**messed** 5:9
**met** 15:2 45:16,19
  46:9 47:20 78:17
  78:20
**middle** 12:15
**Midtown** 37:3
**million** 12:21 79:19
  81:16 85:11 87:8
  94:3

**million-nine** 80:5,6
  80:10,14 82:7,17
  91:14 92:1
**mind** 71:6
**Mindspring** 51:20
  51:21
**mine** 58:3 79:20
**minute** 42:24 53:3
  67:13 88:3 89:22
**minutes** 55:21 87:21
  90:15
**mirrors** 87:16
**mischaracterized**
  99:13
**missed** 5:20
**misspeak** 29:3
**Mm-hmm** 29:24
  73:9
**moment** 22:9 69:22
  76:20 77:9
**moments** 57:8
**Monday** 95:1
**money** 4:21 11:11
  11:18,24 12:1,13
  12:22 14:20,21,23
  15:6 36:6,7,8,9
  37:2,5,21 40:23
  42:7 43:6,10,15
  43:16 44:7,9,12
  44:15,16,16,20,20
  45:1 49:19 56:9
  56:13 57:3 60:20
  60:20 62:1,8 77:3
  80:17 81:3,6,6
  83:2,19,21 85:15
  91:19 94:18,19
  96:14,15 99:10
**month** 9:5,6 50:2
**months** 19:2 20:11
  21:13 83:6
**Morgan** 94:6
**morning** 5:8,11,19
  6:14,15 78:18
**mother** 31:17
**motion** 99:8 101:7
  102:2
**motions** 82:13
**mouth** 65:17 84:10
**move** 95:19
**Moving** 30:17
**multiple** 33:19 34:1
  82:9

_____ **N** _____

**N** 1:15,15 2:1,20 3:1

4:1,1,5 5:1 107:1
**N95** 63:8,10,18
**name** 6:17 9:8,10,17
  10:9 25:14 26:1,4
  27:23,23 29:22
  39:12 47:21 89:23
  90:6
**named** 85:4,5,8
**Napolitano** 50:4
  77:16
**nature** 21:4
**necessarily** 20:22
  45:7
**necessary** 7:4 90:17
  90:22,23 91:10
**need** 12:9 17:23
  37:13 42:24 52:4
  56:23 60:24 73:20
  79:23 82:18 83:5
  88:18 89:22 90:6
  93:15 94:22 95:11
  96:18 97:12,17
  99:2 100:18 101:7
  101:10,15
**needed** 56:16 60:16
  61:4,8 63:1 80:18
  80:20,22 81:11,13
  81:15,21,23 82:2
  82:23 95:8 105:10
**needs** 31:3 54:18
**negotiate** 64:3
**negotiated** 55:9
  57:1 63:22 83:16
  83:20,20
**negotiating** 59:21
  88:6
**negotiation** 34:10
  90:14
**negotiations** 90:17
  91:9
**never** 11:19 12:14
  15:2 17:17,20
  18:6,14 43:24
  44:15,20 51:15,15
  82:15 85:15 91:2
**New** 1:17,22 4:18
  5:4 15:14 26:19
  30:5 42:3 107:4
**newspaper** 66:13,14
**night** 57:12
**nine** 94:3,4
**noon** 6:1,10
**Nope** 66:1
**normal** 94:12
**normally** 5:10

**Norristown** 2:15
**North** 1:21
**Notary** 1:17 5:4
  107:4
**notch** 94:11
**note** 103:24 104:8
  104:13,17 105:12
**notes** 1:16
**notice** 3:8 18:8
**notify** 80:13
**number** 38:7 46:21
  46:21,23 47:4,5
  99:3 102:1
**numerous** 97:4,7
**NY** 5:3
**NYSCEF** 27:18

_____ **O** _____

**O** 2:20 4:1,1,5
**o'clock** 5:12
**oath** 10:23 86:3,8
**object** 11:5 24:21
  32:5 37:20 100:15
  100:24 101:5,8
**objecting** 14:12
  45:11
**objection** 14:15,17
  33:10,17 37:10,17
  38:18 39:1,14
  40:11 41:12,16
  42:12,16 43:12,13
  57:22 84:23 85:2
  95:14 100:19
  103:10 104:3
**objections** 3:15,18
  102:8,15,16 103:4
  103:17,23
**obstructionist** 33:24
**obtain** 65:23
**occasion** 20:20
  35:21
**odd** 37:4
**Off-the-record**
  96:23
**offered** 49:19
**office** 43:20 51:7
  53:23 54:14,17
**official** 4:3 21:13
**oh** 10:22 39:22
  40:18 44:5 67:12
  69:7,7 70:10
  75:10 79:4 87:11
  92:22 93:7 96:7
  99:17
**okay** 5:17 6:14 7:10

Case 2:22-cv-00688-JMY   Document 167-9   Filed 05/28/24   Page 36 of 41

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)   Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 114

7:21 8:2,15 9:4
10:13,18,23 11:2
12:21 15:3,5,9,14
17:2,8,20 18:20
19:9,15 22:7,14
22:15,22 23:4,20
26:9,10,11 28:4,9
29:10 30:8 32:6
35:19,21 37:6,14
37:23 38:3,6,23
39:5 40:12,18
46:4 47:23 49:9
51:4,13,17,21
53:2,12,16 56:14
58:5 60:9 61:2,15
61:17,20 62:21
63:10 65:18,18
66:2,3 67:6,13
68:1 70:2,10,17
71:3,9,20 72:9,22
73:2,5,12 74:1
75:16 79:1,7,13
80:2,15 81:1,21
82:4,6 85:21 86:9
87:9,12 88:7
89:15 90:10 92:12
93:17,21,23 94:17
96:16 101:4 105:3
106:20
**old** 9:6 46:23 47:4
54:5
**once** 52:18 61:18
63:17,22 80:17
81:18
**online** 26:19 40:22
**open** 50:19 57:13
**opportunity** 76:6
**Oral** 1:7
**order** 3:14 56:22
65:3 99:9 101:6
101:24 102:5,9
104:16,18,22
105:5,6,7,9
**organized** 12:17
**original** 76:24
**originally** 54:22
**outcome** 64:3 88:6
**outside** 14:5 20:22
70:18 71:22 72:2
72:6
**overlapping** 6:6
7:17 8:16,18,24
9:20,23 10:5
13:13 14:9,11
16:14 17:5,21

20:1,5 22:8 24:5
26:6 27:9 28:11
31:1 32:10,14
38:10 41:19 42:20
42:23 43:2 47:17
48:7,10 52:2,6
58:17 66:12,16
72:3 73:15,18,22
74:6 77:20,22
82:21 93:10 94:14
94:20 95:16,22
96:12,19 97:18
98:18 99:6 100:8
106:12,19 107:9
**owe** 36:7,7,9
**owed** 37:2,5 81:2
**owned** 61:21,24
63:3,19 86:16

---
**P**

**P** 1:15 2:1,1,3,20 5:1
**P.C** 1:12 2:12,17
3:16,19 18:10
19:13 39:21 102:3
103:5,18
**p.m** 1:18 68:23
69:17 106:22
**PA** 2:4,10,16
**package** 48:1
**page** 3:7 4:2,6 18:19
27:13 68:11,16
94:1
**paid** 12:22 36:14
37:3 44:4 49:11
56:6 60:7,17 77:4
91:2
**Panagakos** 4:8 30:8
30:11 31:14 32:21
33:14 34:5 35:6
35:12,13
**paper** 54:17
**paragraph** 102:4,9
**parentheses** 69:19
**park** 83:2
**part** 4:16 8:5 19:1
34:13 35:10 36:1
41:1,10,14 42:1
44:18 53:4 63:14
65:12 73:5,13
**participate** 12:7
55:7 77:12
**participated** 77:13
**particular** 45:2 78:8
**parties** 46:11 64:4
**partner** 63:4

**party** 15:1
**Patrick** 2:15 5:19
10:21
**pay** 36:18,20,22
85:19
**payment** 55:23
**payments** 54:20
**PC** 1:10
**penalties** 10:24
**Penn** 5:14
**Pennsylvania** 1:1,18
**people** 8:6 12:2 37:2
38:22 77:12 83:17
**percent** 22:24 36:4
36:4,11,13,14,16
79:19 80:4,5,9,14
80:15 81:7 87:8,9
**period** 50:22
**perjury** 7:13 10:24
**person** 6:20 7:8
18:23 24:8 41:7
47:19 64:13 79:1
81:17
**personal** 38:22
**personally** 39:20
78:18
**perspective** 80:23
**Pertaining** 50:9
**pertains** 40:1
**phealey@rebarke...**
2:17
**Philadelphia** 2:10
**phone** 15:3 38:4
46:20,21,23 56:19
77:18
**phones** 38:4
**physical** 7:22
**pick** 48:23
**picture** 4:4 57:4,5
57:19 58:1,4,5,7
58:11 62:15 86:21
**pictures** 45:6
**piece** 54:16 83:20
**Pike** 2:4
**piles** 54:13
**place** 57:3 83:2
107:6
**plaintiff** 1:6 2:6 6:18
28:6,13 61:5 62:5
102:6,12
**plaintiff's** 3:16,19
27:14 102:2,7,13
102:17,20 103:5,6
103:18
**plan** 5:11

**plea** 52:4
**plead** 11:3
**pleading** 11:4,13
28:8
**please** 7:2,5,8 9:12
13:4,4,17 14:8
19:6 20:7 22:10
22:13 25:5 26:4
26:15 32:15,24
35:11 39:24 41:17
41:23 68:9 69:1,3
69:13,18 74:19
75:6,10,18 77:19
79:18 82:22 83:23
83:23,23 84:2,8
87:4 91:6 93:8
97:6,7,8 101:21
**pleasure** 89:19
**plenty** 28:24
**Plymouth** 2:4
**pocketbook** 9:9
**point** 30:12 31:23
45:1 55:12 82:13
96:5 105:24
**Pointing** 58:9
**portion** 4:19,20
35:17 42:4,5 70:8
80:23
**possible** 7:10
**possibly** 90:23
**potentially** 12:8
14:18 56:5 91:18
91:21
**practice** 12:16 16:3
16:19 21:2 54:5
**practiced** 21:12
**practicing** 15:9 22:4
22:7,16,19
**prepare** 69:23 70:16
**prepared** 71:5
**present** 29:2
**presented** 71:7
**presumably** 81:7
**presume** 61:11,12
**presuming** 56:15
**pretty** 83:23
**primarily** 21:1
64:17
**principal** 6:21 34:14
34:19
**print** 43:21 54:6
**printed** 54:2 69:6
**printing** 54:4,9,11
**printout** 72:19 73:1
**prints** 72:16 75:11

**prior** 21:6 83:1
105:5
**privilege** 11:21
14:17 24:23,24
27:5 33:20 50:6
104:7,8,11
**probably** 6:2 22:24
**problem** 11:18,19
11:20 12:14,14
44:6 62:11 70:3
82:16 87:9,13
90:20 91:18 103:2
**procedures** 17:15
**proceeding** 31:12
**proceedings** 1:16
96:24 107:8
**process** 89:4
**produce** 21:16
58:11,19 63:1
102:11
**produced** 58:23
67:10 71:10,11,18
78:10 104:9,15,18
105:7
**production** 3:20
18:10 102:14,21
103:19,21
**promises** 4:18 42:3
**prompting** 5:10
**proof** 14:21,22
56:14,20,21 61:1
61:19 62:14,17
**prosecutor** 14:13
**protected** 104:6,11
**protection** 21:3 60:3
60:4,6
**provide** 59:11,17
**provider** 51:19
**Public** 1:17 5:4
107:4
**purchase** 65:20
**purchased** 12:23
**purchaser** 84:24
85:3
**purchasers** 84:9
**purpose** 45:2
**purposes** 54:17
**pursuant** 11:11,12
56:16
**pursue** 30:7
**put** 8:3 54:6,6,20
57:6 59:19 63:6
83:2,22 84:8,10
98:21
**putting** 59:18 65:17

Case 2:22-cv-00688-JMY   Document 167-9   Filed 05/28/24   Page 37 of 41

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)   Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 115

**Q**

q-u-e-t-i-a-p-i-n-e
  9:15
**Queens** 48:14
**question** 4:6 7:3,4,5
  7:9,12,18,19
  10:15,17 12:24,24
  13:8,17,23 14:1,3
  14:5 19:8,19 20:7
  22:13,14 24:4
  27:2,11,11 32:24
  33:9,12 35:11,12
  36:15 37:21 41:20
  42:13 47:12 61:22
  68:6,21 69:16
  71:6 74:10,22
  77:24 87:2 93:22
  95:21 97:23 101:9
  101:21 106:1
**questions** 7:1 11:10
  27:3 31:24 32:4
  37:24 41:13 84:2
  87:24 95:4 97:8
  103:9 104:1
**Quetiapine** 9:14
**quicker** 13:15
**quite** 20:24
**quote** 88:20 94:22
  103:10,11 104:5,7
**quotes** 90:16,21
  91:7

**R**

**R** 1:15,15,15 2:1,20
  4:1,1,5 5:1
**raining** 13:10,18,24
  14:5
**raised** 84:24
**read** 40:20 41:3
  67:18 69:17 79:23
  93:16
**reading** 70:20 75:14
  75:16 87:5,6
  93:16 96:4
**ready** 71:3 87:24
  93:17
**reality** 56:7
**realized** 18:6
**really** 18:13 21:12
  43:16,17 49:20
  84:10 88:11 96:21
  105:20
**reason** 33:22 50:13
**REBAR** 2:14
**recall** 7:11,12,24

31:10 48:3 54:19
  65:11,16 86:14
**recalling** 43:12
**receipt** 46:2,3 48:2
  65:9
**receive** 18:18 34:12
  44:12,22 74:20
**received** 14:21
  18:16,19,20 34:9
  43:24 44:1,13,15
  44:15,20,24,24
  45:1 56:13
**recipient** 60:2
**recognize** 67:23
  72:14 73:10,11
**recollection** 59:9
  65:13
**recommenced** 97:14
**reconvene** 98:3,4,8
  106:1
**reconvening** 106:3
**record** 5:16,17,18
  6:16 8:3 16:11
  27:17 43:4 47:1,2
  47:19 65:4 67:2,4
  71:17,24 72:4
  78:15 80:1 97:3,3
  97:9,12,16,24
  98:1,2,3,22 100:7
  101:11,13 103:14
  103:24 104:8,14
  104:17,19 105:15
  105:22 106:20
**records** 12:15 44:9
**recover** 50:13
**recovered** 50:21
**RECROSS** 3:2
**REDIRECT** 3:2
**redo** 97:13
**refer** 23:18,19
**reference** 4:23
  42:10
**referred** 58:2
**referring** 39:19
**reflect** 5:19 6:17
**reflected** 70:9
**refusal** 14:4
**refuse** 13:1 14:1
  32:20,23 33:2,24
**refused** 49:19 106:6
**refuses** 32:8,16
  98:12
**refusing** 33:18,19
  33:21 37:18 38:1
  98:5,7

**regarding** 88:24
  96:23
**regret** 43:17
**regularly** 49:4
**regulations** 21:2
**relationship** 59:23
  83:9
**release** 15:6 51:5
  56:9,17,22 57:3
  57:10 60:20,23
  61:13,14 62:1,9
  63:20,23 64:14
  80:18,22 81:14,16
  82:3,6,15,19
  91:19
**released** 57:16 64:1
  65:21
**releasing** 92:6
**relevant** 27:8
**remedy** 106:6
**remember** 7:10,11
  7:12,13,18,19
  23:14 28:3 30:20
  30:22 44:3 47:21
  47:24 54:9,11
  56:1 57:12,14
  89:6
**remembered** 72:24
**renewal** 16:17
**renewed** 16:16
**reporter** 1:17 6:7
  7:6 8:17,19 9:21
  9:24 10:6,10 17:6
  17:22 20:6 21:20
  26:7 32:11,16
  38:12 42:21,24
  48:8 52:3,7 66:5
  73:19,23 94:21
  96:20 97:1 98:19
  100:16 101:13
  105:14 106:20
  107:3,17
**Reporters** 1:21
**represent** 4:8 6:18
  18:7 24:14 26:18
  28:15 30:8,13
  32:19,21 33:14
  40:21 60:15 76:6
  87:16 89:20 93:5
**representative**
  18:22 19:12,14
  39:20 48:16,23
**represented** 4:7
  10:20 23:16 24:3
  24:16 31:5,19

81:9
**representing** 2:6,11
  2:17 23:1,4,7,9,20
  23:23 24:2,7,8,11
  28:6,12 52:20
**represents** 6:22
**request** 3:20 21:16
  21:20 58:11 59:4
  97:11,13 102:13
  102:21 103:18
  104:19
**requested** 5:21
**requests** 18:10
  103:21 104:13
**require** 65:19
**required** 65:23
**requirement** 62:2,3
  62:3,6 80:16 83:3
**requires** 62:11
**reschedule** 6:11
**resent** 84:11
**reserve** 105:24
**residence** 4:12,14
  37:14,18 38:23
**resident** 37:16
**residual** 49:17
**resignation** 4:3
  21:13
**resolve** 76:23
**respectfully** 104:19
**response** 14:2 54:6
**responses** 3:15,18
  102:12,16 103:3,9
  103:16 104:1,2,14
  104:21 105:2,4
**responsibilities** 65:9
**responsive** 102:13
**rest** 36:8 74:8,13,21
  75:2 79:20
**result** 72:14 76:14
  83:13 91:20 95:24
**resulted** 85:20
**retain** 43:10
**retained** 3:22 25:9
  49:13
**retainer** 43:15,19,23
  44:4,5 49:9,11
  51:22,24 52:10,15
  52:24 53:2,5,6
  54:9,11,21 55:24
  59:12 65:6 76:22
  76:24 83:21 88:10
  89:1,11
**review** 52:16
**revised** 11:23

**ridiculous** 13:12
  54:23
**right** 6:21,23 10:3
  10:15 11:3 12:24
  14:2,2,7,15 15:23
  17:9,10 19:21,23
  21:16 22:22 23:3
  23:11,17 25:17,20
  29:5 36:2 41:1
  42:14 45:18 46:19
  47:11 50:11,21
  53:24 58:14 66:14
  69:2,4,10 73:7,8,9
  73:12 74:11,15,18
  75:24 76:1,4,11
  78:13 85:9,16
  87:9 89:5,8,16,20
  89:24 90:3 91:23
  94:15 95:19 96:8
  98:19 99:14 106:1
**rights** 13:9,11 14:1
**River** 26:8,20 66:17
**Road** 1:18 2:15
**Robert** 4:3 19:16,23
  21:23 22:1 27:15
  27:21,23 28:6,8
  28:12 37:6
**Robert's** 28:17
**Rockefeller** 30:14
**role** 59:14,15,16,17
  61:15 63:17 64:12
**roll** 99:17
**rolled** 7:20
**Ron** 37:1
**room** 55:19 99:3
**rotating** 28:24
**Route** 1:21
**ruined** 49:21
**rules** 104:13
**rulings** 97:15

**S**

**S** 1:15 2:1,20,20 3:6
  4:1,5,5 107:1
**s/** 107:16
**Safety** 6:20 62:11
  84:14,15,17
**SafetyHouse** 29:17
**Sam** 3:7,20,23
  29:17 31:15 35:24
  36:17 49:5 52:16
  52:17 53:10 67:16
  73:8,10 74:11
  75:5,17 77:15
  78:17 79:16,18

Case 2:22-cv-00688-JMY   Document 167-9   Filed 05/28/24   Page 38 of 41

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)   Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 116

80:5,9,15 81:3
87:8,22 91:13
**Sam's** 81:6
**SAMUEL** 1:10
**sanctioned** 12:4
**sat** 67:19
**satisfied** 57:8 63:18
**save** 53:23 99:9
**saw** 41:8 82:13
**saying** 4:20 7:7 8:7
8:23 14:10 33:24
42:6 44:10,11,12
51:4 53:4 68:5
82:3 83:1 84:7,11
85:17,21 86:14
88:12,12 93:5
94:18
**says** 40:19 41:5,6
68:8,11,16,19,23
68:24 73:13 74:8
74:13 77:7 79:18
80:14 89:18 94:2
102:10 104:5
**schedule** 5:9
**school** 16:6 106:15
106:16,18
**scope** 14:20 104:5
**screenshot** 58:13,14
69:10,20 70:8
73:3
**Scully** 2:21 6:21
50:3 56:8,11,23
57:1 61:9,13 64:5
83:1 84:21 90:12
**Scully's** 83:5 85:22
90:2
**se** 81:6
**search** 26:18
**seated** 6:20 10:21
**second** 4:17 5:2 6:2
7:5 10:17 26:10
26:24 41:7,10
42:1 68:11 70:19
71:4,22 75:15
92:20,22 106:4
**section** 26:22
**secure** 60:17
**security** 59:19
**see** 5:24 6:4 9:12
18:12 21:11 34:20
56:10 68:11 71:17
73:16 74:7,16,22
75:3,5,8,9,19 76:6
79:20 80:6 86:16
87:18 88:1,2,21

94:6,7 96:4
**seen** 18:14,15 40:18
45:5 82:10
**sees** 99:8
**SEGALLA** 2:8
**send** 35:22 52:24
54:5 57:4 62:8
82:20
**sending** 75:22 76:2
87:22
**sense** 49:23
**sent** 51:4,24 52:10
52:15,17,20,23
57:20 58:1 62:15
62:18 67:12 72:10
86:21 93:20 103:8
105:5
**separate** 41:5,6 65:8
65:11
**series** 7:1
**served** 18:11
**server** 53:20 55:18
**service** 55:3
**services** 54:20 59:11
**set** 5:12 27:16 55:24
107:7
**Seth** 2:9 6:22
**sets** 65:8,15
**seven** 38:21 68:22
**shaking** 97:24
**shifted** 5:13
**Shlomi** 68:24 73:8
73:10 74:11 75:17
87:22
**Shlomo** 1:10 68:8
69:17 79:16
**short** 50:24
**show** 40:12 41:23
57:5,18 92:7,10
92:13,17
**showing** 93:24 94:9
**shown** 44:14 69:11
**shut** 20:24 21:10
**shutting** 12:16 21:8
21:9
**sick** 20:19,20
**sides** 98:4 99:15
**sign** 28:1 46:2 60:21
60:24
**signed** 48:2 52:20
53:9
**significant** 43:24
76:20 77:1
**silence** 19:10
**similar** 84:24

similarly 84:5
**simply** 21:10
**simultaneous** 24:18
**sit** 100:9
**sitting** 7:6 51:4 54:2
54:19 62:9 97:24
**six** 5:12 68:22,23
96:11
**sixty** 94:4
**slaver@goldbergs...**
2:11
**sleeping** 5:9
**slow** 17:23 48:9 52:4
73:21
**Sokolski** 1:12 2:17
3:16,19 4:3 18:9
18:24 19:13,15,15
19:16,16,18,23
20:4 22:1,2,20
27:15,19 28:6,8
28:12,19,23 29:13
37:7 39:21 40:4
94:5 102:3 103:5
103:18
**Sokolski** 5:12 27:23
**Sokolski.zekaria**
38:9
**Sokolski.zekaria...**
38:14
**somewhat** 60:1
**soon** 32:12 40:16
41:3
**sorry** 7:14 9:21
15:15,21 17:6,22
19:17 26:17 45:17
45:17 46:24 48:8
66:6 67:13,22
75:9 88:24 96:21
98:20 102:24
103:7,22
**sort** 55:5 73:23
**sotto** 75:16 87:5
96:4
**source** 63:6
**southern** 16:16
**speak** 9:22 20:22
32:13 72:6 87:21
92:21 97:10
**speakers** 6:6 7:17
8:16,18,24 9:20
9:23 10:5 13:13
14:9,11 16:14
17:5,21 20:1,5
22:8 24:5 26:6
27:9 28:11 31:1

32:10,14 38:10
41:19 42:20,23
43:2 47:17 48:7
48:10 52:2,6
58:17 66:12,16
72:3 73:15,18,22
74:6 77:20,22
82:21 93:10 94:14
94:20 95:16,22
96:12,19 97:18
98:18 99:6 100:8
106:12,19 107:9
**speaking** 8:22 11:4
11:5 64:17
**specific** 68:21
**speculation** 44:18
**Speeding** 30:15
**spell** 26:1,4 29:22
**spelling** 10:8
**spent** 77:5
**split** 14:22 91:13
**spoke** 8:9 15:2
48:16 55:15
**spoken** 11:7 55:13
**spot** 49:3
**Stacey** 4:7,8 30:11
30:13 31:6,14,20
32:19,21 33:4,14
34:5 35:1,4,13,16
35:20 36:20,23
**stack** 54:3,13
**stake** 83:19
**stamp** 67:11
**standing** 15:12
**stands** 37:4
**Starbucks** 45:6,16
45:20 47:20 48:24
**start** 6:1 8:22 16:5
24:11 74:1 75:13
**started** 5:16 6:17
50:2 55:4 71:4,5
79:15,16,18 88:5
88:13,19 89:6
**starts** 79:8,13 103:9
103:10
**state** 1:17 4:10,18
5:4 15:23,23
37:11 40:24 42:3
107:4
**statement** 51:14
53:17 96:7 97:7
**statements** 98:2,20
99:12
**states** 1:1 104:3
**Stating** 5:2

**Station** 5:14
**stay** 52:8
**Stealing** 40:23
**stenographic** 1:16
**Sternberg** 1:9,9
2:11,12 6:23 24:2
24:3 29:17 43:7
49:12 56:10,13
57:7,19,20,21,24
59:21,22,24 60:1
60:11,15 61:12,18
64:15,16 93:6,24
94:1,5,17,19
95:12
**Sternberg's** 11:12
57:16 81:23 82:2
83:4 94:9
**stones** 45:1 46:1,3,4
48:1,13,17 49:5
**stop** 27:10 39:16
42:17 45:10 68:20
71:4 92:20 93:8,9
98:11 99:21,21
100:1,13,22,22,22
101:20,20 104:24
105:17,18,23
106:5
**story** 50:24
**Street** 2:9 5:2
**strong** 53:17
**studied** 18:15
**subject** 10:24 29:18
34:6
**subsequent** 64:17
65:10 77:10
**subsequently** 96:16
96:17
**sue** 95:12 96:18
**suffering** 7:22
**sufficient** 62:20
**Suffolk** 11:6 12:6
**sugar** 84:1
**suggest** 6:11
**suing** 91:11,17
**Suite** 1:21 2:4,9,15
**sum** 55:23
**summary** 3:10
26:20,21
**supplemental**
104:20
**Supplies** 84:22 85:1
**supposed** 59:11
63:10 65:7,7,13
85:22 86:6
**supposedly** 70:12

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Tuesday
No. 2:22-CV-0688 (JMY)    Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT        April 2, 2024

Page 117

**sure** 7:2 8:1 10:6 24:17 30:4 44:11 48:3 49:16 51:1 54:18 78:6 86:1,7 86:15
**suspended** 106:22 107:8
**swiping** 50:21
**sworn** 5:3
**System** 26:19

**T**

**T** 1:15,15,15 2:20 3:6 4:1,1,5 107:1 107:1,1
**table** 6:22
**take** 5:22 6:2 8:20 10:1 17:23 19:10 22:6 31:2 42:24 43:14,15 44:7,9 55:2 65:2 69:21 73:20 77:1,3 93:18 94:11 96:20
**taken** 1:16 15:20 16:1,19 17:7,17 45:13 107:6
**talk** 7:7,7,8 12:21 43:23 70:18 71:21 72:2 83:10 100:9 106:2
**talked** 73:7
**talking** 8:19 26:14 39:14 41:4,11 68:13 69:21 83:11 88:8,14 93:11,14
**talks** 4:17 42:2
**task** 63:7
**TATE** 1:20,20
**Taylor** 30:8 31:18 35:4,6,12,20 36:18,23
**teeth** 41:21
**tell** 5:22 7:19 8:10 35:13 36:20,22 37:16 47:13 49:5 59:9 62:10 79:23 93:17 105:8
**telling** 9:2 39:2 82:23 86:11 93:15 95:7
**tells** 9:19
**ten** 19:2 20:17 21:6 42:19 102:4,10
**tenant** 21:1,2,3
**terminating** 22:1

**terms** 30:7 54:20 87:17
**test** 86:1
**testified** 5:5 45:15 45:19
**testifying** 18:20 19:11
**testimony** 99:13 107:6,10
**Texas** 56:24
**text** 3:12 4:6 56:19 69:10 77:7 79:2,3
**texted** 52:21 87:17
**thank** 5:18 6:8,9 10:11 22:16 32:6 32:24 41:24 98:23
**thanks** 75:23 76:5 79:20 83:11
**THESAFETYHO...** 1:5
**they'd** 91:11
**thing** 16:17 69:14
**things** 8:5 11:20 12:16 14:19 30:7 53:23 64:2 71:1 84:4 95:8 98:1
**think** 6:3,10 7:23 8:1 9:2 16:15 19:3 21:13 31:10,12,24 56:4 57:14 58:8 76:24 82:10,14 90:8,22 91:22 96:14 98:15,17,24 99:2,8,15 105:19 106:6,14
**thinking** 71:8
**thirty** 16:8
**thought** 37:4 67:12 70:10 80:20
**thousand** 54:24 56:2 94:4,4
**three** 5:10 55:14 57:14 68:22 89:12 101:23 102:9
**three-point** 88:24
**ticket** 30:14,15,16 30:19
**till** 57:15
**time** 4:7 6:2,7 7:8 8:17,20 9:22 10:2 11:3 17:6,22 18:14 21:12,20 22:17 26:7 28:15 28:15,16 30:3 31:19 32:8,11,13

32:16,21 42:21,22 43:21 48:8 49:22 50:5,22,23 51:2 52:3,5,22 54:5,7 57:12 69:23 73:19 73:20 77:5,16 78:23 86:21 94:21 96:3 98:8,22 99:10,16 106:4
**times** 15:3 55:14,15 97:4,8 98:11,16 99:1,4 106:5
**Timmy** 47:8
**Timothy** 46:9,10 47:15 48:15,18 49:6,7
**title** 41:9 62:24 63:2
**titled** 40:22
**today** 6:1 7:1 10:20 11:9 18:16,18,19 18:21 19:4,11 54:19
**today's** 86:5
**told** 5:20 21:22 34:23 35:1,6,7 36:18 43:14 44:5 44:11,13 48:5,21 60:19 61:16,17,18 62:8 63:1,4,17 72:21,24 81:17 82:15 84:18 85:24 86:8 95:6 96:1,2
**tone** 94:12
**top** 73:13 74:7 79:8 79:13 83:24
**total** 4:20 42:6
**touch** 49:8 55:13
**town** 31:12
**Trading** 26:21
**train** 5:13,20,22
**transaction** 23:2,5 24:15,17,17,19,20 34:11 59:14,15 60:3,12 63:15,22 64:13 81:3 90:18 91:4,10 95:12,24
**transactions** 4:21 29:17 34:6 42:7
**transcribe** 7:6
**transcribed** 69:11 107:10
**transcript** 32:12 70:14 79:2 96:22 99:9 100:17 101:2 107:6

**transcription** 67:6 67:14
**transfer** 80:10 94:8
**transferred** 49:10
**transfers** 4:22 42:8
**transpiring** 22:18
**travel** 5:13
**tray** 54:6
**trouble** 27:16 70:6
**truck** 56:14,22 57:5 57:6 58:1 59:18 59:19 60:18 61:1 61:19,20,23 62:5 62:13,15,17,20,22 62:24 63:2,5,6,9 63:18 81:24 83:3 83:22 86:8,15,20 86:22 95:9
**true** 13:10,18,23 18:8 42:15 51:14 81:4,9 107:5
**truth** 86:12
**truthfully** 7:9
**try** 12:5
**trying** 31:10 43:19 50:13 68:6 73:24 92:22
**Tuesday** 1:18
**turn** 85:14
**twelve** 102:19,20,22 102:24 103:3
**twenty** 33:15
**two** 12:18,21 21:11 21:11 40:19,22 55:14 57:14 67:1 68:22 71:7 77:5 85:20 87:21 88:7 89:10,14 90:15 95:7 96:11 102:4

**U**

**U** 1:15 4:1,5
**Uber** 5:23
**ultimately** 90:8
**unable** 107:4
**uncertain** 22:6
**understand** 7:2 11:21 33:11 61:22 67:8
**understanding** 34:16 55:10 60:15 64:12 74:19 83:18 84:17 90:12
**understood** 10:17 34:15 41:3 63:7

81:2
**unduly** 104:4
**unfortunately** 64:6
**UNITED** 1:1
**unpunished** 49:2
**unquote** 94:22
**unreportable** 96:24 107:7
**unsure** 22:5
**use** 50:22 55:6 57:9

**V**

**Valente** 41:6
**verbally** 7:5
**verification's** 103:7
**verified** 102:7
**version** 9:11 12:17
**versus** 26:20 54:8 106:15
**victim** 84:14,22,23
**victims** 84:5,7,15
**violation** 30:17
**voce** 75:16 87:5 96:4
**voice** 93:15 94:11,13
**VRC** 84:22 85:1,4
**vs** 1:7

**W**

**wait** 17:11 19:7 20:6 39:14,16,22 68:13 75:9,10 92:8,18 93:1,7
**waited** 64:1
**waiting** 64:22 68:9 69:19 75:7,12,18 97:22
**waived** 25:2
**waivers** 11:21
**waiving** 90:19
**wake** 5:10,11
**walk** 12:4
**want** 6:8 11:17 12:5 15:6 29:3 36:6,13 41:12 43:23 49:20 55:6 56:20 59:5 64:10,20 71:24 72:1 84:14 87:11 95:23 98:21 99:12 99:17
**wanted** 5:7,15,21 6:9,11 11:10 37:3 60:3,4,6,10 64:7,8 **wants** 22:6 56:21 98:1
**warning** 73:24

Case 2:22-cv-00688-JMY   Document 167-9   Filed 05/28/24   Page 40 of 41

USDC, ED of PA            American Environmental Ent. v. Manfred Sternberg, Esq., et al.            Tuesday
No. 2:22-CV-0688 (JMY)  Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT            April 2, 2024

Page 118

**warnings** 107:10
**wasn't** 20:14 54:4
  55:2 60:21 63:9
  80:16 86:8,15
  105:7
**watch** 37:3,5
**watched** 67:20
**way** 6:16 48:14
  53:22 58:20 71:4
  71:5,6 75:11,11
**ways** 42:19
**we'll** 6:4 36:10 53:2
  59:7 66:21
**we're** 11:22 15:5
  23:17,19 43:3
  52:19 63:17 66:5
  70:22 92:21 97:12
  97:19 98:3 99:16
**we've** 12:14 29:8
  106:17
**website** 39:8,12,17
  40:3
**week** 54:16
**weeks** 12:18 21:11
**weird** 20:3
**Weiss** 1:11 2:22
  6:23 11:22 14:21
  23:3,4,11,16,19
  24:9,12,14,16
  25:8,11,15,22
  26:1,4,9 29:16
  33:5 36:2,3,14
  44:8 45:15,19
  47:12,15,20 48:5
  48:22 49:11 52:11
  53:7,9 56:18 57:4
  57:10,11,16 58:4
  59:17 60:5,16,16
  61:21,24 62:14,15
  62:24 63:1,18,20
  64:20 65:20 67:15
  74:18,21 75:5,21
  76:10 78:19,20,21
  79:16,18 80:3,6
  80:18 81:9,10,17
  81:20 83:2,9,21
  84:19 85:19 87:7
  90:11 91:19 101:9
  101:21
**Weiss's** 23:9 80:19
  80:22
**went** 11:11,18,24
  12:13 14:20,23
  37:22 94:24 95:2
**weren't** 23:20,23

24:2,7 62:23
  84:20,20 97:21
  106:10
**WhatsApp** 3:11
  52:21,24 67:15
  72:11 75:1 79:2
**whipped** 84:1
**wife** 31:15,18
**willing** 12:12 49:21
**wind** 43:15
**winner** 4:18 40:24
  42:3
**winnings** 4:19 42:4
**wire** 52:22 74:20
  75:1 76:9 92:1
  94:8,9,19 95:6,11
  96:1,1,3
**wired** 43:7 44:19
  49:12 64:21 85:11
  85:14 92:2 94:5
  94:17
**wires** 44:13,14,15
  44:21 53:3
**wiring** 80:13
**wish** 44:3 76:17
**withdraw** 20:4
**Withdrawn** 43:13
**withdrew** 19:2
**withhold** 4:18 42:4
**witness** 3:2 5:7 6:3,5
  6:9 8:12 10:3
  16:15 20:8 25:18
  30:23 33:10 42:18
  59:1,5 66:13
  70:20 74:3 79:7
  92:12 93:1,11,14
  95:5 96:10 98:7
  99:5,19,24 100:4
  100:7,12,21
  101:19 104:23
  105:1,3,16,19,22
  106:1
**woke** 5:12
**woman** 47:22,24
  48:12
**word** 55:6
**words** 17:10 52:22
  56:5 57:9 65:17
  69:9,23 70:1,4
  84:10 89:5,7
**work** 11:16 17:15
  21:6 28:16 49:4
  98:10
**worked** 21:5 48:19
**working** 20:14

22:20 29:13 77:11
  96:22
**works** 17:8 95:11
**worry** 59:6
**wouldn't** 55:6 57:7
  57:13 60:14,20
  63:24 64:7,10,18
  67:17
**wound** 44:5 76:13
  76:21
**write** 34:23 35:1,6,7
  35:13,19 76:1
  80:12 87:14,20,21
  88:16,17 89:3,13
  89:22 90:15,21
  91:3
**writes** 75:17,21 80:3
  87:7,20
**writing** 69:18 77:6
  77:17 78:2 82:18
  95:10,11,23
**written** 35:9,16
  95:18 96:3 102:12
**wrong** 31:13 72:13
  72:13
**wrote** 74:18,19,19
  74:24,24 75:6
  76:4,4,5 82:12
  87:9 88:3,20 89:4
  89:8,10,17,19
  91:4,6
**www.tate-tate.com**
  1:23

                **X**
**X** 3:1,6

                **Y**
**yeah** 12:20 15:8,22
  16:9,9,21 29:12
  51:9,23 54:15
  58:6 61:7 65:1,17
  73:6,17 74:12,12
  74:12 75:16 76:3
  79:12,15 81:15
  84:1 85:10 87:12
  87:19 89:6 90:1
  90:19 93:4 95:5
  96:14 99:17
  100:20 106:9,17
**year** 20:12,13,15,16
**years** 16:3,10,12,19
  19:2 20:17 21:6
  21:11 27:17,20,20
  28:24 38:21 46:22

**yelling** 94:12
**York** 4:18 15:14
  26:19 30:5 42:3
**Younge** 98:6,8
  99:18 104:18
**Younge's** 3:13
  97:14 101:24
  102:9 104:16,22
**Yup** 38:16 40:9

                **Z**
**Z** 5:1
**Zekaria** 1:8,12,12
  2:17,18 3:3,15,16
  3:18,19 18:3,7,9
  18:10 19:13 22:2
  22:20 27:19 28:19
  29:13 39:21 40:4
  40:17 65:6 67:5
  68:8 71:12,17
  72:17 78:17 102:3
  102:3,6,11,17
  103:4,5,10,17,18
  104:2,9,14 106:5
**Zekaria000011** 67:5
**Zekaria000011**
  67:11

                **0**
**08053** 1:22

                **1**
**1** 3:14 4:9,16 18:3,7
  29:2 32:22 33:15
  71:12,17 72:17
  102:1
**1.9** 79:19 81:6,10,16
  81:19 87:8 96:16
**1:03** 90:15 96:13
**10** 4:15 66:22 69:24
**10:58** 87:14 88:16
**100** 3:13
**101** 3:15,18
**103** 96:9,9
**11** 4:4,10 68:8 87:24
  100:23
**11743** 5:3
**12** 100:23 101:16
  104:23
**12:07** 1:18 6:17
**120** 76:10,22 77:5,6
  77:8 78:3
**120,000** 78:11
**13** 101:16 104:23
**130** 68:10 69:19

75:2,7,19,22 76:2
  76:10,19,21 77:5
**130,000** 74:21
**14** 4:8,12
**1418** 2:9
**15th** 76:9 78:4
**16** 4:3 57:19
**17** 4:13 16:10
**1700** 2:9
**18** 3:8 16:10
**19** 4:7 92:16 94:1
**19103-3907** 2:10
**19422** 2:4,16
**1997** 15:11
**1st** 102:5,9 104:16

                **2**
**2** 27:13 40:17 68:16
  71:12,17
**2.4** 85:11
**2/15** 68:23
**2/4** 88:12
**2:22-CV-0688** 1:2
**2:23** 106:22
**20** 16:12
**201** 2:15
**2019** 21:3
**2022** 4:9 22:7,17
  29:2,14 32:22
  33:15
**2024** 1:18 3:14
  18:12 102:1
  103:20
**21** 4:3
**215** 2:5
**23** 4:14
**230,000** 4:20 42:6
**25** 3:10 27:17
**250** 75:2 76:9
**250,000** 74:20
**250K** 68:9 69:18
  75:6,18
**267** 2:10 5:2
**27** 16:19 27:20
**29** 103:7,20 104:15
**2nd** 1:18

                **3**
**3** 66:19 71:14,17
**3:37** 68:12 69:17
  74:13,24
**3:37:39** 68:23
**30** 16:3,4 27:20
**30th** 103:8,20
  104:15

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Tuesday
No. 2:22-CV-0688 (JMY)   Deposition of Daphna Zekaria - UNCERTIFIED TRANSCRIPT          April 2, 2024

Page 119

**30XI00243600**
107:17
**31** 4:7
**33** 4:8
**344-5340** 2:16
**35** 36:4,10,13,16
80:4,9,15 81:7
87:8 88:24
**37** 4:10,12 78:9
**38** 4:13,14

**4**

**4** 66:20 67:5 71:16
71:17
**4:54** 79:18
**40** 3:9 4:15
**400** 2:4
**402-9872** 47:6
**42** 4:16
**470** 2:15
**4747** 26:8,20
**484** 2:16
**4th** 79:14 80:3
87:10 88:4,9
89:16 93:20 94:3
94:10,18

**5**

**5** 71:16,17 72:19
**5,000** 49:17
**5:02** 80:3
**5:16** 87:10
**50** 16:24
**516** 47:6
**519-6800** 2:10
**58** 4:4

**6**

**6** 3:3
**600** 2:4
**636-8283** 1:22
**65** 36:4,14 79:19
80:5,14 87:9 89:1
**65-30** 36:10
**65-35** 14:22 91:13
**66** 3:11,12
**6th** 87:14 88:7 89:3
89:13 90:16 92:2
96:13

**7**

**7:30** 5:19
**711** 1:18
**73** 1:21
**760-3000** 2:5

**8**

**8** 66:6
**800** 1:22
**825** 1:21
**856** 1:22
**8th** 18:12

**9**

**9** 66:5,22 69:24
**95** 22:24
**96** 16:6
**97** 16:7 37:8
**983-8484** 1:22