# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CIVIL ACTION

## No.2022-cv-00688 (JMY)

REC'D JUL 1 2 2024

**AMERICAN ENVIRONMENTAL ENT**
**D/b/a The <u>safetyhouse.com</u>**
**Plaintiff**
**vs.**
**Manfred Sternberg, Esquire**
**Sam Gross, CHG**
**GARY WEISS. Pro-Se**
**DAFNA ZEKARIA**
**Defendants**
**Re:**   *DEFENDANTS RESPONSE TO :*
**PLAINTIFFS REQUEST FOR ADMISSION AND SUPPLEMENTAL INTERROGATORY**
**Gary Weiss, Pro-Se, response**

The Definitions Chapter on page 8. To Clarify, Gary Weiss or A.Solar, Never entered into any contract with The Defendant, The Safety House or Daniel Scully. The Payment of $1,960,600.00 that The Safety House Made to Sam Gross, CHG, through Attorney Manfred Sternberg's IOLTA account, was made many days before I made a SALE to Sam Gross, CHG the Covid 19 Test Kits, Gary Weiss Never took part in Soliciting The sale of Covid Test Kits from Sam Gross CHG to TSH Daniel Scully, or participating in any Agreement that led to that Sale, transaction. That was Done By Chris Cortese & Dick Gray & others. Plaintiff, The Safety House never submitted any Agreement which Gary Weiss is in Violation of, or any Unlawful conduct towards Daniel Scully of the Safety House.

**ANSWERS TO : REQUEST FOR ADMISSION.**

Admission to All statements by Plaintiff is denied, from Number 1 to Number 172, Except where it is Explicitly not denied or contradicted.

In many paragraphs Plaintiff is grossly inaccurate.

1. Sternberg is Not in Good Standing, Cannot verify his license .
2. Dafna Zekaria is Not in Good Standing, No longer licensed ( permitted by the New York Bar) to practice law.
3. SPA , Sale and Purchase Agreement was signed by Plaintiff, dated 01`-21-2022, also Invoice from Charlton Holding Group to The Safety House dated 02-21-2022, presented on document ECF 80, Exhibit C, on 07-31-2023 by Plaintiff, with confirmation of the SPA marked on that invoice, under the price $1,965,600.00. The solicitation of this deal was made, by other persons not named in page one of this document, and was solicited many days before January 21- 2022.
4. Correct as far as quantity and price, cannot verify " true and correct copy, the Buyer The Safety House, Dan Scully, with experience of many years, sends a Purchase Order which is with very little details like, Liability, insurance, and disputes, relies on additional documents, which were supplemented by the SPA, SOP, & Invoice from Sam Gross, CHG, which are common in transaction large as this order of 1.96 Million dollars, hence the SPA & SOP were generated to be part of the order between Buyer & Seller, and not in a way to "induce fraud", but preventing it.
5. Cannot Verify, Did not receive Sternberg's Deposition transcript, nor Exhibit 14. To be True, Plaintiff cannot separate the "SPA", SALE AND PURCHASE AGREEMENT, and "Bill Of Sale" from the Purchase Order, it is 1 and the same transaction and all paragraphs were agreed. They are referencing the same and only transaction. " The Bill of Sale" is more important than "Purchase Order", as it is acknowledgement of the order and the confirmation of order, which Plaintiff is trying to hide from the court and Defendants by not referencing to it as Existing and important. The Plaintiff also is in possession of SOP, which is Standard Operating Agreement, which is not presented to the court, as part of the deception by Plaintiff & Counsel, as a binding agreement between Buyer & Seller, further step in assurance of that all details regarding this order are known and agreed by Buyer & Seller, and were overseen and drafted by Attorney Manfred Sternberg, assuring that Buyer understands all the details regarding placing this order.

6. Correct.
7. Denied, "Received by" means, this agreement should be finalized by 01-25-2022 and agreed upon by 01-25-2022, does not mean the merchandise to be delivered by 01-25-2022. Denied if Plaintiff claims that "Received By" means the merchandise will be delivered by 01-25-2022.  Plaintiff cannot separate the "SPA", SALE AND PURCHASE AGREEMENT,  and "Bill Of Sale" from the Purchase Order, it is 1 and the same transaction and all paragraphs were agreed.  They are referencing the same and only transaction. " The Bill of Sale" is more important than "Purchase Order", as it is acknowledgement of the order and the confirmation of order, which Plaintiff is trying to hide from the court and Defendants by not referencing to it as Existing and important. The Plaintiff also is in possession of SOP, which is Standard Operating Agreement, which is not presented to the court.
8. Denied, as the " Bill of Sale" describes the " Vendor" as CHARLTON HOLDINGS GROUP , LLC. And not Manfred Sternberg, Esq., Plaintiff is trying to portray Attorney Sternberg as the Seller, a clear attempt to confuse the Court ?, the true and only Seller is CHARLTON HOLDING GROUP, described Unambiguosly in ECF 80, Exhibit E filed by Plaintiff on 07-23-2022, in Plaintiff's Exhibit E, Scully also submitted the SOP to the Texas Bar in his grievance filing against Attorney Manfred Sternberg am Gross , CHG, also in the SOP in the description column under the dollar amount $1,965,000.00, the reference to the SPA, as a document that is part of the agreement between Buyer & Seller, Which was submitted also to The Texas Bar as a supporting document 03-14-2022, by Daniel Scully of The Safety House.
9. Denied, Plaintiff tries to establish the " Vendor" as Manfred Sternberg, Esq. , to confuse the court and Defendants, Look at Exhibit E of the ECF 80, the SOP, dated 07-31-2022, Filed by the Plaintiff !!... the Seller is Unambiguously marked as : Charlton Holding Group.
10. " The Bill of Sale" is more important than "Purchase Order", as it is acknowledgement of the order and the confirmation of order, The Plaintiff also is in the possession of SOP, presented by Plaintiff as Exhibit E in ECF 80, dated 07-31-2022, which is Standard

Operating Agreement, which is presented to the court, and never contested by plaintiff, on the contrary, Plaintiff presents that document as his supporting evidence.

11. False, Denied, CHG has Assets, has many gems and Controlled by Sam Gross, with 25 years of Experience in the Diamond & Gem industry.

12. Denied, not supported by accurate & true documents, meant to portray defendant Guilty in advance.

13. False. Gross & Sternberg did not agree to " Quickly Deliver" the Covid Test Kits, Plaintiff did not present any Evidence to these claims.

14. False. Gross & Sternberg did not agree to " Quickly Deliver" the Covid Test Kits. False, at no time did Manfred & Gross " induce" The Safety House, Daniel Scully, to purchase anything, there are no documents to show that Sam Gross or Manfred Sternberg " inducing" The Safety House to send Money. Nor " Quickly Deliver ".., the additional Documents , SPA & SOP in addition to Invoice and Purchase are further details provided to Buyer & Seller, as to not RUSH the process and give time and understanding fully the transaction, and not " INDUCING " as Inducing Fraud, which Plaintiff is Alleging.

15. False, it should be the " Signed" Sale and Purchase agreement, it is false because SPA that Plaintiff used in ECF 80, is unsigned, and in Plaintiff's Grievance Filing to the Texas Bar on 03-14-2022, Daniel Scully, provided a signed SPA.

16. False, Plaintiff presented an unsigned SPA in ECF 80, but presented a signed SPA in the Grievance filing to the Texas Bar, in it's Grievance filing on March 14, 2022, page 3 of 8, is the signature page, which Daniel Scully, TSH, presented twice, once unsigned and once signed, which was filed with the help of his Attorney, Gary Lightman Esq., and presented in the first Complaint, ECF 1 on February 23-2022,  a Perjury committed by both Attorney Lightman and Plaintiff Daniel Scully, the unsigned page 3 of the Sale and Purchase agreement was claimed as unsigned and the foundation of the complaint filed 02-23-2022, ECF 1 ( Document 1, Exhibit 1 ) as to not to have to abide by all agreed upon terms of the sale between Seller & Buyer, and to deceive the court.

17. Denied, Plaintiff never presented me with Exhibit 4 of Sternberg's deposition.

18. False, Plaintiff did not present to me Exhibit 5 of the Sternberg Deposition, which is the SPA, which was presented to the Texas Bar in Daniel Scully's Grievance filing on March 14-2022, and was Emailed to Sternberg by Dick Grey, and CC to Daniel Scully, TSH, & Chris Cortese & Sam Gross on January 21-2022, both documents are in Plaintiff's possession, and were presented through the Pacer Court documents relating to this case, Plaintiff is in the possession of the Email by Dick Gray Attorney Manfred Sternberg on 01-21-2022 confirming of having the SPA signed by Daniel Scully, and CC to Attorney Sternberg, so, Plaintiff is Lying to the court and defendants, and Attorney Sternberg is Lying under oath in his deposition, as is most of his Testimony and conduct. See Confession Exhibit 5a & 5b.

19. Denied. To be decided by the court at Trial. Failure of Attorney Sternberg to present a document is not evidence of SPA not a valid Document, which Plaintiff relied upon in making this purchase of $1,965,000.00, and presented by Plaintiff as Existing and Signed, as presented by Daniel Scully, TSH, to the Texas Bar, see Exhibit 10L, 10L (a), 10n, and referenced many times to certain Paragraphs in this Discovery proceedings.

20. Plaintiff quotes the SPA, Sale and Purchase Agreement, as being a valid document, as a further proof that no fraud or misunderstanding by Buyer & Seller, as this Sale is in the Millions of Dollars. Plaintiff wants to portray Attorney Manfred Sternberg as the Seller. The Various Documents, SOP, SPA, PURCHASE ORDER, INVOICE, are to ensure that Buyer understands fully the terms of this DEAL.

21. Correct, the wire was made in the afternoon of February 21-2022, not Early in the AM.

22. Correct, wire by Plaintiff was made on January 21, 2022, there are no supporting documents presented by Plaintiff to claim a negative, " Neither Gross Nor Sternberg owned.. " that Gross or Sternberg Owned or had possession of 151,000 Test Kits, which was not a requirement or a condition put forward by Plaintiff to place and order or pay for it, even the Boeing Aviation Company

takes a payment in advance for their Airplanes to be delivered later, in Plaintiff's ECF 80, Exhibit 1, ' PURCHASE ORDER", under Terms, it is Unambiguously marked, CIA ( Cash in Advance). Plaintiff is trying to Establish Induce Fraud, but acknowledges Full Payment in Advance, as a sign of Understanding this enormous Deal of Payment in Advance of $1,965,600.00, as a result of Attorney Manfred Sternberg not rushing the deal, and providing the SPA, SOP, INOICE, Purchase Order and an Escrow account, which Plaintiff neglected to obtain.

23. False, on February  07-2022, Sam Gross owned 365,000 Covid 19 Test kits, and actually sent a deposit of $219,000.00 as early as February 1, 2022 to secure his purchase of the 365,000 Covid 19 Test Kits, the order which Sam Gross placed with Gary Weiss on January 26,-2022, that were Placed on the truck of the Common Carrier, Available Movers, documents that were supplied to Plaintiff, but again, Plaintiff wants to deceive the court, and engages in inaccurate statement.

24. False, Sam Gross had 365,000 test kits, that were Loaded on the truck of the Common Carrier, Available Movers, on Feb 07-2022, documents that were supplied to Plaintiff, but again, Plaintiff wants to deceive the court, and engages in Perjury, Sam Gross secured his purchase from Gary Weiss on February 1, 2022 with a deposit of $219,000.00. Title of said merchandise was transferred to buyer, as per Paragraph 6 of the SPA, Plaintiff neglected to insure his merchandise on Feb 07-2022, the date the title to the merchandise became his ( the Plaintiff's).

25. False, as above of Paragraph 23. False, The line in the first Bill of Sale is Blank & underline, it is written ; February, underline, line left blank, and than written February, as that section will be dated in the future, and was dated in the second Bill of Sale, and Marked February 08, 2022, signed by Sam Gross, see exhibit 10 F, that is when the Test Kits were already on the truck by the " Common carrier " , Available Movers, documents that were supplied to Plaintiff, but again, Plaintiff wants to deceive the court, and engages in Lying. Plaintiff is trying to portray Fraud, and trying to deceive the court, again. Also Plaintiff starts this paragraph, " The first Bill of sale", because the Plaintiff's counsel and Plaintiff are aware of the second Bill of Sale which is already dated February

08, 2022 and was signed by Sam Gross for CHG LLC. See Exhibit 10 F.

26. False, a true Bill of Sale will be decided by the court, as there are several "Bill of Sale" documents, the one that is signed by Seller, is marked , " This transfer is effective as February 08, 2022, and is page 7 of 8, that Scully signed on January 21, 2022, which includes the SPA & SOP, suggesting those documents were reviewed and signed on February 21-2022 or earlier. See Exhibit 10 F.

27. False, as far as True and correct copy, see paragraph 26, however, Plaintiff agrees with the documents presented in ECF 13 as true and correct, admitting to the SPA, SOP & BOL.

28. False, there are no documents presented by Plaintiff to substantiate this claim, nor is the seller obligated to have Covid Test kits in his possession in order to make a contract to sell Kitts, and issue a Bill of Sale, Daniel Scully of TSH admitted that he is engaging in the same manner, taking order, even before he purchase the Covid 19 Test Kits.

29. False, the Plaintiff admits to considering his complaint on the validity of the SPA, and ALL 18 paragraph. Paragraph 4 & 5 of the SPA, clearly identifies the Attorney, as recipient of the money in Sellers Escrow account, which is described above paragraph 1 in the SPA, Seller is CHG, Sam Gross, the Buyer is TSH, and nowhere in the SPA, it identifies Sternberg as "Escrow Agent for the Plaintiff's $1,965,600.00 purchase price", Paragraphs 4 & 5 of the SPA, describes Unambiguously, the opposite claim of Plaintiff, again a blatant twisting of written contract.

30. Correct, and merchandise was delivered to " Common Carrier" as agreed in the SPA, see Exhibit 4a-4h, the "Seller" being CHG LLC, for further identification the Seller described in the SPA, identified as having the address, 78 Buckminster Road, Rockville center, New York 11570, there is 1 seller, CHG, LLC, not Sam Gross, not Gary Weiss, not Attorney Manfred Sternberg, not Attorney Dafna Zekaria. The reference to the SPA in this paragraph again by Plaintiff, is affirmation of the Valid, Signed SPA, and the validity of ALL it's contents, all 18 Paragraphs.

31. False, the entire paragraph 31 in Plaintiff's Request for Admission as per SPA, language in the SPA does not support any of the claims in this paragraph, the reference to the SPA is another

affirmation of it's validity, and validates all 18 paragraphs in the SPA.

32. False, Attorney Sternberg released funds once he verified that merchandise were placed in the Common Carriers truck, documents from Common Carrier, Available Movers verifies the pick up of merchandise by Available Movers, packed in 365 boxes, and payment by Gary Weiss, for the pick up and Storage of the merchandise. See Exhibit 4a-4h.

33. False, Plaintiff admitted that merchandise which arrived to his warehouse on March 29-2022, was refused delivery, and the driver was ordered to return the merchandise on the delivery truck, and delivery was refused by the Safety House , Dan Scully. Sternberg & Sam Gross caused another attempt at delivery on February 7, 2022, see Exhibit 4a-4h.

34. False, the SPA in paragraph 6 of the SPA, states that Title Transfer will happen contemporaneously when placed in the Hands of the Common Carrier, the 3rd sentence in paragraph 6 of the SPA. And indeed Unambiguously was placed on the truck on February 7-2022. See Exhibit 4a-4b.

35. VRC is not a party to this agreement , Weiss cannot verify the claim by plaintiff. Not relevant and is made to Vilify the defendants.

36. Agreed. Not verified by me, plaintiff did not supply me with all documents to establish this claim.

37. False, 2nd delivery was made and refused on March 29-2022, the 1st Delivery was made by the title transfer on February 07-2022, see Exhibit 10 L (a) , Plaintiff neglected to insure his merchandise.

38. Refund was offered several times, (see Exhibit ConfExhibit 9 F, 2-15-2022 text between Gross & Scully), Gross directed Plaintiff to receive a refund on this transaction from his Lawyer that still had the Money on behalf of Gross in his Escrow account, Plaintiff and Seller could not agree on the correct Dollar amount, refund offers were made by Sam Gross as recent as April of 2024, on more than 5 times in the form of Gems and Diamonds, each time Plaintiff refused to complete the refund with different excuses, all documented with Emails between Plaintiff and Sam Gross. See Exhibit 7.

39. False, kits were delivered to VRC, Plaintiff did not present documents to his claim "Failed to deliver to VRC".

40. Denied, not supported by documents, and False statement at best.
41. Cannot verify accuracy of #s claimed, except the sum of 219,240.00, which is 41 a.
42. Denied, Cannot verify, Plaintiff does not provide supporting documents.
43. Denied, cannot verify, Plaintiff does not provide supporting documents to Weiss.
44. Plaintiff did provide me with supporting documents.
45. Denied, cannot verify what and how many they did have, they already purchased from Weiss 365,000 test kits on January 26, 2022, which deposit was given on February 10-2022, the sum of $219,000.00.
46. Denied. Accuracy of this statement will be decided at trial. Sternberg & Gross already placed their order with Weiss on February of 26, 2022 and gave a deposit on February 1, 2022.
47. Correct.
48. Correct.
49. Correct. There is no agreement or contract between Weiss & TheSafety House for such requirement. Plaintiff did not provide Weiss with Sternberg's Exhibit 28.
50. Correct, not verified, no documents were supplied to Weiss to support Plaintiff's claim.
51. The address on the document was marked 2 west 47st, room 1005, NY NY 10036, not verified as Vacant or building closed prior to 2020,  no documents to support Plaintiff's claim.
52. Denied, no documents to support Plaintiffs claim, as to who were all the occupants, sharing this address as their business address.
53. False, the document clearly has all the info, was given to Plaintiff, Plaintiff does not provide documents to verify it's claim.
54. False, Weiss presented a document to evidence his purchase with the names clearly on the invoice.
55. False, Weiss's purchase was made on January 26, 2022, the invoice of 02-06-2022, was generated at final payment and delivery of the merchandise.
56. False, Weiss purchased the Test Kits on January 26- 2022, and made the final payment of his purchase on February 06-2022.
57. False, Sam Gross agreed to buy 365,000 Test kits from Weiss on 01-26-2022, and promised to send 10% deposit, which he did, Sam

Gross sent the deposit on February 1, 2022, through his Attorney Manfred Sternberg, Weiss purchase the Test Kits on February 26-2022, and made the final payment of his purchase on February 06-2022..

58. False, the merchandise was on the Common Carriers Available movers truck with title of merchandise owned by the Safety House as agreed and documented in the SPA. See Exhibit 4a-4h, and Exhibit 10 L ( a ).

59. False, the merchandise was on the Common Carriers truck. See Exhibit 5a-5h. And title to merchandise by TheSafety House as per SPA.

60. False, exactly the opposite ! Also see Exhibit 10 M paragraph 15 of SPA.

61. False claim in Entirety. That Escrow account was solely for the benefit of CHG, LLC, there are no documents or agreement to suggest any other party, or Agent of another party ( Paragraphs 4 & 5 of the SPA ) . And it is contrary to Paragraph 15 of the SPA, Exhibit 10 M, Paragraph 15, agreed by Buyer & Seller.

62. False claim as per Paragraph 15 of the SPA, buyer quotes the SPA, and the entire SPA as a Valid document with 18 Paragraphs. Title Transfer occurred already on February 07-2022, once placed on the truck of Common Carrier, as per paragraph 6 of the SPA.

63. Denied, Sternberg's responsibility will have to decided by the court, at no time did Sternberg claim to be the Seller, Sternberg acted only as the Lawyer for CHG. False claim by Plaintiff, as Zekaria did verify Merchandise placed with Common Carrier, and called Sternberg 3 times to get consent from Manfred to release the funds to Weiss, as was her testimony at her 1st deposition.

64. Denied as the final invoice was sent on February 6, 2022, 3 times.

65. False, a true and correct copy of the final invoice was sent to Gross & Manfred on 02-04-2022, on three different occasions, on 02-06-2022, at 12PM, at 1:17PM, & 1:19pm, and provided to Plaintiff. See Exhibit 12a- 12c.

66. Sternberg did not send the True & Correct copy to the Counsel of the Texas Bar, He Knew the True and correct invoice was sent on February 04-2022, 3 times. See Exhibit 12a-12c.

67. Plaintiff did not present me with Sternberg deposition Exhibit 6.

68. Correct. However, Sternberg still submitted the affidavit.

69. When I told Sternberg that I will not sign for him the Affidavit, he told me that he will submit it without my signature, it was clear to me that he is about to not tell the truth to the Texas Bar, otherwise he will be disciplined or worse, as an outcome of Scully's Grievance filing, which was due to Manfred's Wrongdoing ? Today we know of his wrongdoing, like "Ponzy Scheme", which Manfred engaged in, defrauding some of his customers ?

70. False, the true and correct Final invoice was presented to Plaintiff, which happened on February 4, 2022, which was sent 3 times to Sam Gross & Manfred Sternberg, Which is in the possession of Plaintiff.  See Exhibit 12a to 12c.

71. Not the correct Final invoice.

72. I assumed that 5 recipients is not correct, and suspected Fraudulent intentions towards me, in order to delay my receiving the balance due from Sam Gross, Money which was still held by Manfred.

73. Correct, I was still negotiating terms and price with my Seller, and my buyer CHG, Sam Gross.

74. Correct, I was still negotiating terms and price with my Seller, and my buyer CHG, Sam Gross.

75. To be decided by the court at trial, if indeed Attorney Manfred Sternberg, had to perform all those acts, alleged by Plaintiff. Manfred Sternberg was the Attorney for CHG, Sam Gross, not VRC or TSH, both VRC & TSH acted foolishly, and in a negligent manner by sending enormous amount of Money, without Legal advice of an Attorney, sending $$$ to Manfred Sternberg Esq., which at that time was engaging in fraud with previous potential customers ?, as was his admission according to Attorney Gary Lightman, at Sternberg's deposition by Attorney G.Lightman.

76. False, was verified by Attorney Dafna Zekaria, Manfred's instruction to Attorney Zekaria was to Verify Merchandise Loaded to Common Carrier, which she did, and only than he, Manfred Authorized her to release the balance to Gary Weiss, as she testified at her 1st deposition.

77. False, this claim is not supported by any documents.

78. Correct.

79. Correct.

80. Correct.

81. Plaintiff never presented to me those documents, cannot verify.
82. Plaintiff never presented to me those documents, cannot verify.
83. Plaintiff never presented to me those documents, cannot verify.
84. Correct.
85. Plaintiff never presented to me those documents, cannot verify.
86. Plaintiff never presented to me those documents, cannot verify.
87. Correct.
88. Correct.
89. Plaintiff never presented to me those documents, but saw the Email, Confirmed.
90. Correct.
91. Correct.
92. Not true, the SPA does not address issues of dispute with that Unambiguous language, or that dispute, to be decided by the court.
93. Correct.
94. Plaintiff never presented to me those documents, cannot verify, however Plaintiff refused delivery on March 29, 2022, see Exhibit 8f, Manfred described delivery to the Texas Bar.
95. Plaintiff never presented to me those documents, cannot verify.
96. Plaintiff never presented to me those documents, cannot verify, Manfred, that Thief would not pay all the money to Sam Gross from the Escrow account, so, that Sam Gross could pay me the balance of the sale, there is still over $1,000,000.00 That Manfred used unauthorized .. Despite Plaintiff's request for Refund & Cancellation on February 16-2022, Manfred will continue to " Frame" Weiss through damning Emails.
97. Plaintiff never presented to me those documents, cannot verify, Manfred, that thief would not pay all the money to Sam Gross from the Escrow account, so, that Sam Gross could pay me the balance of the sale, despite the merchandise placed with the Common carrier on February 7, 2022 as directed by Manfred. Despite Plaintiff's request for Refund & Cancellation on February 16-2022, Manfred will continue to " Frame" Weiss through damning Emails.
98. However, Attorney Manfred Sternberg knows the merchandise is in the possession of the Common Carrier, Available Movers, and no longer in my control, and asked Sam Gross to write the demand of MORE money, which is in Manfred's IOLTA Escrow

account, so he can give me more of the balance owed to me, and refusing to give Sam Gross the balance in the escrow account which is Sam Gross's money, till today Attorney Manfred still owes over $1,000,000.00 that belongs to Sam Gross .

99. Correct.

100. True, but not correct, in the deposition I corrected part of the Answer to the complaint, which showed a mistake. ( a ) False, I took delivery of the Test Kits on February 6, 2022. ( b ) False, I was asked by Sam Gross to make arrangement for delivery on his behalf with a Common Carrier, Available Movers, which I did on Feb 7, 2022 at about 10:00AM. ( c ) The Merchandise was loaded onto the truck of Available Movers, all 365 boxes, see Exhibit 4a-4h, confirmed by available movers, the truck left for the delivery, after 10 minutes I noticed the truck is stopped, parked at the end of the street, I approached it, and asked the driver why he is stopped, he told me that he does not have a document that is called " BILL OF LADING ", and his office instructed him to wait till they will receive a BILL OF LADING. ( d ), Correct, I called Sam Gross and explained him the problem, that he needs to provide a Bill of Lading, and he told me he will supply it "soon", so, the truck waited, after 1 hour of waiting, the truck driver advised me that he was instructed by his office to proceed to their headquarters ( which is also a Warehouse), which is in a storage facility, and he will wait there to receive the BILL OF LADING, so he can complete the delivery, Sam Gross told me that he will send it "soon" to the office of the Common Carrier, Available movers. ( e ), after 1 month of hearing "soon", I decided to go retrieve the kits from Available Movers, and resolve the delivery issues, planning to make the delivery myself. ( f ) False, I picked up the 365 boxes that were on the truck of Available Movers, and drove to New Jersey in the vicinity of my house to separate the quantities of boxes to each destination, and discovered that the contents of the boxes no longer had Covid Test Kits, each box contained a bag of rice, 20lbs each, no longer the Covid 19 Test Kits.

101. False, Sam Gross was notified, Sam told me that he will investigate, and told me he will call his Lawyer Manfred, and advised me that I will be contacted by the FBI, that an

investigation is already under way, see Exhibit 8g, an investigation already underway since March 1-2022, which he did not tell me.

102. False & Correct, the filing ECF 105 on 09-12-2023 which was done through my lawyers, ( dismissed for incompetence & more ) the description regarding pick up of boxes from AMS, had 1 mistake, which I corrected in my deposition on February 16, 2024. At the Time I retrieved the Boxes from Available Movers, I picked them up Taped, and did not open them up at their facility, I discovered that all 365K Covid Test Kits were replaced with rice, each box with 1 bag of 20lbs of rice, after I picked up the 365 boxes from AMS and drove back to NJ.

103. False, I let Sam Gross know after the discovery, he informed me that the FBI is in the midst of investigation and wait, that I should wait till they visit me. FBI on the case verified in ConfExhibit 8g, in Manfred's sworn testimony to the Texas Bar.

104. Correct.

105. False, the manifest was on the final invoice on 02-06-2022, in 3 separate invoices, correct as far as I never provided a Bill of Lading to Gross.

106. Correct, they were Plaintiff's boxes and other Buyers of Gross.

107. False, see Exhibit 4a-4h, the common Carrier confirmation that they picked up 365 boxes and in their posession.

108. Cannot verify.

109. Plaintiff never presented to me those documents, cannot verify.

110. SPA is identical in all 18 Paragraphs to TSH & VRC, and TSH, once again references the SPA as a valid document, with all 18 Paragraphs.

111. Correct.

112. False, plaintiff has no supporting documents.

113. Cannot verify.

114. Correct, those Emails were forwarded to me by Attorney Manfred Sternberg, however I cannot verify accuracy of Attorney's Berman allegations, .

115. Correct, Zekaria is accountable to Attorney Manfred Sternberg, and not to Gary Weiss, Plaintiff did not provide me with Sternberg's Exhibit 38.

116. Correct, those Emails were forwarded to me by Attorney Manfred Sternberg, regarding Attorney's Berman ( true ) allegations, nor was I provided with Exhibit 38 of Manfred's Deposition.

117. Cannot verify, but it is correct when looking at those Emails.

118. Plaintiff did not present Exhibit 38 from Manfred's Deposition, but I have that Email. Manfred is " In Charge", and advised Attorney Berman that he will start to sell the Collateral, clearly admitting to have control of the Collateral. Verifying my CLAIM that I gave refund worth Millions of dollars.

119. Plaintiff did not provide me with Exhibit 38, but I saw the Email, I confirm. But I read the Mmail, clearly Manfred is "In Charge"

120. Plaintiff did not send me supporting documents to this claim.

121. Cannot confirm.

122. Plaintiff did not provide me with Exhibit 29. But, I did make that statement to Manfred & Gross.

123. False, Gross & Sternberg asked for collateral beginning in February 21-2022, and received already 4 diamonds valued over 800K on February 22-2022, given to Attorney Zekaria in Starbucks, NYC. Weiss placed the merchandise with Available Movers on Feb 07-2022.

124. I did not contend that claim. Plaintiff did not provide me with Exhibit 30. Plaintiff uses language of Blame and Doubt in contrast to established facts by verified Documents, like the SPA, Sale & Purchase Agreement, Invoices, Bill of Sale, Verified Confirmation of the Common Carrier, Available Movers, which includes a description of each individual box that they picked up, their verification of EACH individual box is verified by Available Movers, in a separate & Unique Document, along with receipts paid by Gary Weiss, attesting to their pick up of the 365 boxes on February 7, 2022. In compliance with the SPA & Bill of Sale, which references the SPA in clear language, ( under the dollar amount $1,965,600.00 ) which was filed in ECF 80, exhibit C, dated 07-31-2022, provided as supporting evidence by plaintiff !!! Which Validates again the SPA and all 18 paragraphs, Which further confirms the Perjury committed by both Plaintiff and Counsel Attorney Gary Lightman, filing document ECF 1, filed on 02-23-2022, claiming that the SPA was not signed, which by itself without even the signature compelled Plaintiff, TSH, Daniel Scully

to wire the $1,965,600.00 to Attorney Manfred Sternberg's IOLTA account for the benefit of Sam Gross, CHG.

125. Plaintiff did not provide me with said documents & Exhibits .

126. Correct, however, Plaintiff uses the word " Claim " as to confuse the court. The collateral, is verified by many documents, and it's value as worth over $4,000.000.00, agreed and verified by the recipients Sam Gross , CHG, and their Attorney Manfred Sternberg, over 800 days ago, ( which is 19,200 hours ago ).

127. Correct.

128. Correct.

129. Correct.

130. Correct. However , Plaintiff did not provide Gary Weiss Sternberg's Deposition Exhibit 37, but those Emails between Attorney Manfred Sternberg & Esquire Randolph Adler on behalf of VRC, were sere sent to Gary Weiss by Attorney Sternberg in March of 2022.

131. Correct. Sent to me by Attorney Sternberg in March -2022.

132. ?

133. Plaintiff did not provide me documents to verify this claim.

134. Plaintiff did not provide me documents to verify this claim.

135. Plaintiff did not provide me documents to verify this claim.

136. Plaintiff did not Establish " Intentions ", will be decided by the court at Trial.

137. False, they placed the merchandise on the truck of the Common Carrier, Available Movers's truck on February 7, 2022.

138. False,  they placed the merchandise on the truck of the Common Carrier, Available Movers's truck on February 7, 2022 through Weiss.

139. The SPA is referenced as agreed document, regarding the Bill of Lading, that document will be addressed at the Trial. Weis presented shippers information.

140. False, to be decided by the court at Trial, and is not supported by the language of the SPA, SOP, INOICE or Purchase Order, to "INDUCE" claim is denied, as this order was solicited by Chris Cortese & Dick Grey, not by any of the Defendants listed in page 1., Weiss presented shippers information to Manfred & Gross.

141. To be decided at Trial.

142. Gary Weiss placed the  merchandise on the truck of the Common Carrier, Available Movers, verified by Available Movers, and Manfred Sternberg, see Exhibit 4a-4h.

143. False, Plaintiff does not provide documents to show Available Movers is not in Possession of the Merchandise on Feb 8, 2022 or on Feb 17-2022. Enclosed verification of the Number of Boxes Available Movers picked up and in their possession, confirmation on February 8-2022, 1:26PM, Exhibit ConfExhibit 4a, 4b, 4c, 4d, 4f, 4g 4h.

144. Plaintiff's request, Demand,  of the Bill of Lading from Sam Gross and other documents, is documented only in that SMS, the claim of NUMEROUS REQUESTS by Plaintiff on more occasions is not presented to Gary Weiss in this document. Available Movers picked 365 boxes full of merchandise Covid 19 Test Kits, up and in their possession, confirmation on February 8-2022, 1:26PM, Exhibit ConfExhibit 4a, 4b, 4c, 4d, 4f, 4g 4h.

145. To be decided by the court. Weiss did not have any agreement With Plaintiff, oral or in writing, never.

146. Could not be verified. Weiss did not have any agreement With Plaintiff, oral or in writing, never.

147.  Denied. A claim like that cannot be verified by Plaintiff.

148. Denied. A claim like that cannot be verified by Plaintiff.

149. False, plaintiff is Lying.

150. Cannot verify.

151. Cannot verify.

152. Correct.

153. Correct.

154. Correct.

155. Correct.

156. Correct.

157. Correct.

158. False, Defendant Gary Weiss never deprived Plaintiff of anything, and as a matter of fact placed the Plaintiff's 151,000 Test Kits on the truck of Common Carrier , Available Movers, on Feb 07, 2022.

159. Gary Weiss cannot verify that Plaintiff's money is the money that was paid to him through Attorney Dafna Zekaria, from the SOKOLSKY & ZEKARIA's IOLTA bank account.

160. Gary Weiss cannot verify that Plaintiff's claim, except what I received.

161. Gary Weiss cannot verify this claim, plaintiff did not provide documents to support this claim.

162. Fraud was not established, on the contrary, Plaintiff received, SPA, SOP, Bill of Sale, Invoice, Purchase order, all those Agreements to be clear and understand the deal, Delivery was made on 2 Occasions.

163. Denied. Merchandise was delivered, and returned to the truck Driver on March 29, 2022. Merchandise was placed by Weiss on February 07-2022, on the truck of the Common Carrier, Available Movers. Weiss did not defraud Plaintiff of even 1 cent, the payment and agreement between Gross & The Safety House was done many days before I came into a deal with Gross.

164. To be decided at trial.

165. Denied, Weiss did not have a contract with TSH, Weiss gave a full refund to Gross, which was acknowledged numerous times by Gross and Sternberg, Gross confirmed that Weiss fulfilled it's obligations to him. Gary Weiss gave a full refund to Sam Gross via the Collateral on Feb-March of 2022, verified by Gross & Manfred.

166. To be decided at trial.

167. To be decided at Trial.

168. Denied, Weiss never engaged in Fraud against TSH.

169. Denied, Weiss never Caused a Fraud against The Safety House, and fulfilled it's obligation to Gross.

170. Denied, Weiss never Caused a Fraud against The Safety House, nor had any commercial agreement with the Safety House.

171. Denied, Weiss never Caused a Fraud against The Safety House, nor had any commercial agreement with the Safety House. Weiss has no Liability to any Defendant as agreed in the SALE and PURCHASE AGREEMENT in Paragraph 15 of the SPA.

**GARY WEISS, Pro - Se**
07-11-2024
wgary4109@gmail.com
908-546 2649

EXHIBITS TO PLAINTIFFS REQUEST FOR ADMISSION AND SUPPLEMENTAL INTERROGATORY

EXHIBIT 4. Available Movers confirmation and pick up of 365 boxes of Merchandise from Gary Weiss, and details about boxes on 02-08-2022 And cotract details between Available Movers & Gary Weiss.

EXHIBIT 5. Dick Gray execute SPA signed on January 21-2022, confirmed and sent to Attorney Manfred Sternberg.

EXHIBIT 8. Attorney Manfred Sternberg Testimony to Texas Bar on April 20-2022, confirming signed SPA. Manfred Sternberg REQUEST an Attorney from Weiss to have Escrow before verification of Weiss loading merchandise to a common carrier before releasing the funds.

EXHIBIT 10.  Dan Scully's GRIEVANCE filing with the Texas Bar, filed on 03-03-2022, with Supporting Documents, SIGNED "SPA",  SOP, INVOICES, BILL OF SALE, PURCHASE OREDER, verification of Acceptance of complaint, Grievance, by the Texas Bar, and Testimony of the events accouding to Daniel Scully .

EXHIBIT 12. Final, True invoices from GARY WEISS, 02-04-2022.

EXHIBIT 7. GROSS attempting to Refund, settle dispute with Plaintiff, last time as of April 2024.

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

March 30, 2022

***Sent Via Email:*** *manfred@msternberg.com*

Mr. Manfred Sternberg Jr.
1700 Post Oak Boulevard, Suite 600
Houston, Texas 77056-3973

Re:  202201819 - Dan Scully – Manfred Sternberg, Jr.

Dear Mr. Sternberg:

The Office of Chief Disciplinary Counsel has received the above-referenced Grievance, a copy of which is enclosed with this notice.  This office has examined the Grievance and determined that the information provided alleges Professional Misconduct.  Pursuant to the Texas Rules of Disciplinary Procedure, this matter has been classified as a Complaint.

If you are represented by an attorney for this Complaint, please notify this office immediately and ask your attorney to send us a letter of representation.

You must furnish to this office a written response to the Complaint within thirty (30) days of receipt of this notice.  The response should address specifically each allegation contained in the Complaint, and should further provide all information and documentation necessary for a determination of Just Cause as defined in the Texas Rules of Disciplinary Procedure.

**You may mail your response to this office but the preferred method for you to deliver your response and documentation to our office is in PDF digital format.  Please email the response and supporting documents to** <u>houcdcresponses@texasbar.com</u>**.  If you are including a large number of documents, over 25MB of information, please either download the supporting documents to a flash drive and mail the flash drive to this office or send the documents attached to multiple emails.**

<u>**Pursuant to Rule 2.10 of the Texas Rules of Disciplinary Procedure, you are required to provide a copy of your response directly to the Complainant.**</u>

<u>**Pursuant to Rules 8.01(b) and 8.04(a)(8) of the Texas Disciplinary Rules of Professional Conduct, failure or refusal to timely furnish a response or other information requested by**</u>

**4801 Woodway Drive, Suite 315-W  Houston, Texas 77056**
**Phone:  713-758-8200  Fax:  713-758-8292**

CONF EXHIBIT 189

**the Chief Disciplinary Counsel, without timely asserting legal grounds to do so, constitutes Professional Misconduct.**

Please know that the Office of the Chief Disciplinary Counsel maintains confidentiality in the grievance process as directed by the Texas Rules of Disciplinary Procedure, except that the pendency, subject matter, and status of a Disciplinary Proceeding may be disclosed by the Chief Disciplinary Counsel if the Respondent has waived confidentiality or the Disciplinary Proceeding is based upon conviction of a serious crime. The Chief Disciplinary Counsel may provide appropriate information, including the response, to law enforcement agencies, under Rule 6.08 of the Texas Rules of Disciplinary Procedure.

You will be notified in writing of further proceedings in this matter.

Sincerely,

Khadija T. Roberts
Assistant Disciplinary Counsel

KTR/slb

Enclosure(s):   Grievance **(Copy of Complaint)**
                Copy of Complainant Notice

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

March 30, 2022

***Sent Via Email:*** *dans@thesafetyhouse.com*

Dan Scully
99 Aldan Avenue #5
Glen Mills, Pennsylvania 19342

Re:  202201819 – Dan Scully – Manfred Sternberg, Jr.

Dear Mr. Scully:

The Office of Chief Disciplinary Counsel of the State Bar of Texas has reviewed the above-referenced grievance and determined that the information provided alleges Professional Misconduct or a Disability, or both.  The lawyer will be provided a copy of your Complaint, directed to file a response, and provide you a copy of the response within thirty (30) days of receiving notice of the Complaint.

After receipt of the lawyer's written response, the Office of Chief Disciplinary Counsel shall investigate the Complaint to determine whether there is Just Cause to believe that the lawyer has committed Professional Misconduct or suffers from a Disability.  During this time it is important that you keep us informed of any changes to your address, telephone number, or employment, and that you cooperate fully with our investigation.  You will be notified in writing of further proceedings in this matter.

Please know that the Office of the Chief Disciplinary Counsel maintains confidentiality in the grievance process as directed by the Texas Rules of Disciplinary Procedure.

Sincerely,

Khadija T. Roberts
Assistant Disciplinary Counsel

KTR/slb

Cc: Mr. Manfred Sternberg Jr.                                    ***Sent Via Email***

4801 Woodway Drive, Suite 315-W  Houston, Texas 77056
Phone:  713-758-8200  Fax:  713-758-8292

(exef EXHIBIT 10B)

****The investigator assigned to this case is **Orlando Mayers**. If you have any questions or would like to discuss this matter further, please contact the investigator at 713-758-8200.****

**II.   INFORMATION ABOUT YOU -- PLEASE KEEP CURRENT**

1.       TDCJ/SID # _____   ☒ Mr.     Name:   Dan Scully
                                         ☐ Ms.

RECEIVED BY
CHIEF DISCIPLINARY COUNSEL

MAR 14 2022

Immigration # _____

Address: ___ 99 Aldan Avenue, Suite 5 _____

_____

City: __Glen Mills_____   State: ___PA_____   Zip Code: __19342_____

2.   Employer:___ THESAFETYHOUSE.COM _____

Employer's Address:___ same as above _____

_____

3.   Telephone numbers: Residence: _____   Work: _____
Cell: __610-496-4094_____

4.   Email: ___ dans@thesafetyhouse.com _____

5.   Drivers License # __20-633-155_____   Date of Birth ___12/19/1962_____

6.   Name, address, and telephone number of person who can always reach you in the event that the Office of Chief Disciplinary Counsel needs to locate you. **Please note that confidentiality is not waived and this individual does not have the authority to contact the Office of Chief Disciplinary Counsel in order to obtain information about this grievance.**

Name ___Gary Lightman_____   Address ___156 Inverness Drive_____

__Blue Bell, PA 19422_____   Telephone ___215-760-3000_____

7.   Do you understand and write in the English language? ____Yes_____
If no, what is your primary language? _____
Who helped you prepare this form? ___Gary Lightman_____
Will they be available to translate future correspondence during this process? ____Yes____

8.   Are you a Judge? ___No_____
If yes, please provide Court, County, City, State: _____

## III. INFORMATION ABOUT ATTORNEY

<u>Note</u>:   Grievances are not accepted against law firms.  You must specifically name the attorney against whom you are complaining.  A separate grievance form must be completed for each attorney against whom you are complaining.

1.  Attorney name:   Manfred Sternberg _____   Address:   1700 Post Oak Blvd.,
   2 Boulevard Place, Suite 600

   City:   Houston _____   State:   TX _____   Zip Code:   77056 _____

2.  Telephone number:  Work  713-622-4300   Home _____ Cell: 713-824-9170   Other _____

3.  Have you or a member of your family filed a grievance about this attorney previously?
   Yes ____  No  X  If "yes", please state its approximate date and outcome. _____

   _____

   Have you or a member of your family ever filed an appeal with the Board of Disciplinary Appeals about this attorney?

   Yes ____  No  X  If "yes," please state its approximate date and outcome.

   _____

4.  Please check one of the following:
   _____   This attorney was **hired** to represent me.
   _____   This attorney was **appointed** to represent me.
     X       This attorney was hired to represent **someone else.**

   If you hired the attorney, tell us how you met the attorney. Specifically, please provide details about how you came to know and hire this attorney.   Sternberg was supposed to hold $1,965,600

    in his attorney escrow account and not release any funds until we were supplied with a Bill of Sale

    and Bill of Lading for 151,200 Health COVID-19 Rapid 2 Pack Test Kits.

   Please give the date the attorney was hired or appointed.  1/21/22

   Please state what the attorney was hired or appointed to do._____

      (Hold money in his attorney escrow account).

   _____

5.  What was your fee arrangement with the attorney?   He was being paid by the seller of the 151,200

    COVID tests kits my company was buying.

0720

3

Exhibit 10K



**DAN SCULLY**

dans@thesafetyhouse.com
Office: 610.344.0637, ext. 325
Cell: 610.496.4094

99 Aldan Avenue, Suite 5 • Glen Mills, PA 19342
www.thesafetyhouse.com

How much did you pay the attorney?   (unknown what fees Sternberg received from the seller).

**If you signed a contract and have a copy, please attach.**     1/21/22 Sale Purchase Agreement is
**If you have copies of checks and/or receipts, please attach.**   attached, although they never sent me
**Do not send originals.**     the contract signed by them.

6.   If you did not hire the attorney, what is your connection with the attorney?  Explain briefly

        See #4 and #5 above.

7.   Are you currently represented by an attorney?    Yes,
     If yes, please provide information about your current attorney:    Gary Lightman, Esquire,

     Lightman & Manochi, cell phone 215-760-3000

8.   Do you claim the attorney has an impairment, such as depression or a substance use
     disorder?  If yes, please provide specifics (your **personal** observations of the attorney such
     as slurred speech, odor of alcohol, ingestion of alcohol or drugs in your presence etc.,
     including the date you observed this, the time of day, and location).

        No impairment.

9.   Did the attorney ever make any statements or admissions to you or in your presence that
     would indicate that the attorney may be experiencing an impairment, such as depression or
     a substance use disorder?  If so, please provide details.

        No.

## IV.   INFORMATION ABOUT YOUR GRIEVANCE

1.   Where did the activity you are complaining about occur?

     County: _____   City:   Houston   Texas     (Also - Glen Mills, PA)

2.   If your grievance is about a lawsuit, answer the following, if known:
                    My grievance is about the $1,965,600 I lost when attorney Sternberg wrongfully
     a.  Name of court _____
     released that money that I had wired into his attorney escrow account, not to be released until my

     151,200 COVID test kits were shipped to me.

0720                                                                                          4

b. Title of the suit _____

c. Case number and date suit was filed _____

d. If you are not a party to this suit, what is your connection with it?  Explain briefly.

_____

**If you have <u>copies</u> of court documents, please attach.**

3. Explain in detail why you think this attorney has done something improper or has failed to do something which should have been done.  Attach additional sheets of paper if necessary.
    See #2 above, (improper disbursement of escrow funds, then lying about it).
**Supporting documents, such as copies of a retainer agreement, proof of payment, correspondence between you and your attorney, the case name and number if a specific case is involved, and copies of papers filed in connection with the case, may be useful to our investigation.  <u>Do not send originals, as they will not be returned.</u> <u>Additionally, please do not use staples, post-it notes, or binding.  Please limit your</u> <u>supporting documentation to 25 pages.  Information, including audio, video or image</u> <u>files, submitted on a USB thumb drive or flash drive must not exceed 25MB.</u> Information received after the 10 day deadline will be returned and not considered, as well as information submitted on CDs, DVDs, cassette tapes or other unsupported media.**
    Copies of Sternberg emails lying about shipping the goods also are attached.
**Include the names, addresses, and telephone number of all persons who know something about your grievance.**

**Please be advised that a copy of your grievance will be forwarded to the attorney named in your grievance. To protect your privacy and the privacy of others, please redact personal identifying information (i.e., social security number, date of birth) from any document you provide in support of your grievance and avoid submitting medical records or protected health information belonging to third-parties. <u>Please be advised that in the event that you do provide records that contain</u> <u>your own personal identifying information or protected health information, you</u> <u>are authorizing us to share this information with the attorney named in your</u> <u>grievance.</u> Be advised that documents that contain unredacted third party personal identifying information or that individual's protected health information will be returned and not considered. <u>By executing the grievance below, you authorize the</u> <u>CDC to disclose your personal identifying information and protected health</u> <u>information as necessary to comply with the law, or as necessary to carry out the</u> <u>function and duties of the CDC.</u>**

  Gary Lightman (my attorney) cell ph: 215-760-3000

_____

_____

0720

EXHIBIT 10 I

## V.   HOW DID YOU LEARN ABOUT THE STATE BAR OF TEXAS' ATTORNEY GRIEVANCE PROCESS?

| | | | |
|---|---|---|---|
| __ | **Yellow Pages** | __ | **CAAP** |
| __ | **Internet** | X | **Attorney** |
| __ | **Other** | __ | **Website** |

## VI.   ATTORNEY-CLIENT PRIVILEGE WAIVER

I hereby expressly waive any attorney-client privilege as to the attorney, the subject of this Grievance, and authorize such attorney to reveal any information in the professional relationship to the Office of Chief Disciplinary Counsel of the State Bar of Texas. I understand that it may be necessary to act promptly to preserve any legal rights I may have, and that commencement of a civil action may be required to preserve those rights.

Additionally, I understand that the Office of Chief Disciplinary Counsel may exercise its discretion and refer this Grievance to the Client-Attorney Assistance Program (CAAP) of the State Bar of Texas for assistance in resolving a subject matter of this Grievance. In that regard, I hereby acknowledge my understanding that such discretionary referral does not constitute the commencement of a civil action and that the State Bar of Texas will not commence any civil action on my part. I acknowledge that it is my responsibility to seek and obtain any necessary legal advice with respect to this matter. I also understand that any information I provide to the State Bar of Texas may be used to assist me and will remain confidential for purposes of resolving the issue(s) described above.

I understand that the Office of Chief Disciplinary Counsel maintains as confidential the processing of Grievances. I authorize you both to disclose any information to or, or obtain any information from my attorney, Gary Lightman.

I hereby swear and affirm that I am the person named in Section II, Question 1 of this form (the Complainant) and that the information provided in this Grievance is true and correct to the best of my knowledge.

Signature: _Dan Scully_    Date: _3|3|2022_

March 3, 2022

**TO ENSURE PROMPT ATTENTION, THE GRIEVANCE SHOULD BE MAILED TO:**

THE OFFICE OF CHIEF DISCIPLINARY COUNSEL
P.O. Box 13287
Austin, TX 78711
Fax: (512) 427-4169

EXHIBIT 10H

There also is at least one other victim (VRC Medical Supplies) that I discovered also was defrauded by Manfred Sternberg in a similar fashion (improper release of attorney escrow funds). They lost a total of $2,449,400.00 VRC's New Jersey attorney is Bill Berman (phone # 908-992-7720; cell # 908-303-6969). Mr. Berman will fill you in on how Sternberg took $2.5 million from his client/victim.

Seller (Sam "Shlomo" Gross) sold me the 151,200 iHealth antigen COVID test kits. Our arrangement was (1) I wire transfer the $1,965,600 purchase price to Manfred Sternberg's attorney escrow account; (ii) Attorney Sternberg is not supposed to release that money from escrow until I received (a) a signed Bill of Sale and (b) a Bill of Lading from a recognized common carrier carrying the goods I purchased to confirm were in transit to me.

I wired the $1.97 million into attorney Sternberg's attorney escrow account. Sternberg wrongfully released my money from his attorney escrow account. I never received a Bill of Lading, although I was told the goods were in transit (which turned out to be a lie). When I called Seller (Sam "Shlomo" Gross) and demanded the documents, he mistakenly sent me several Bills of Sale for other customers (victims) but not one for me. (This is how we found out about VRC). Those Bills of Sale also are included with this grievance.

Seller Sam Gross never sent any Bill of Lading.

I got my attorney Gary Lightman involved. We called Sternberg and demanded he delivery of the COVID test kits I purchased, or my $1.97 million back from his attorney escrow account. Sternberg did not give me my $1.97 million back and the goods were not shipped to me. Sternberg compounded his wrongful conduct by writing us an email in

which he represented to us the goods were being shipped and I would get them tomorrow. Sternberg's email is attached with my grievance. That was a lie, Sternberg never provided me with the Bill of Lading we asked for, and attorney Stenberg refused to tell us any shipping information. The goods never came.

On March 2, 2022, my attorney and I spoke with Sternberg and demanded the $1.97 million be returned to me immediately. Attorney Stenberg told me he only had some of my $1.97 million in his attorney escrow account, but refused to tell me how much or wire that back to me as I demanded.

10G
10.2



**CHARLTON HOLDING GROUP, LLC**

## SALE AND PURCHASE AGREEMENT

### January 21, 2022

THIS AGREEMENT IS FOR THE SALE AND PURCHASE OF the product identified on the Purchase Order attached hereto and marked as Exhibit A attached hereto (the "Goods"). This Sale and Purchase Agreement is referred to herein as (this "Agreement").

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer") (each hereafter as "Party" and together as the "Parties")

For good and valuable consideration, the Parties agree:

1. Seller shall provide Buyer the Goods listed in Exhibit A for the Purchase Price, provided that Buyer complies with the conditions of this Agreement.

2. Seller agrees to sell to Buyer  151,200  boxes of 2 count iHealth COVID 19 home test kits shall be provided to the Buyer by the Seller for each lot of boxes available for payment as they are ready to be delivered.

3. The Buyer agrees to pay the Seller @ $13.00(USD) per box. Payment upon invoice as the product lots are ready for delivery, total cost **$1,965,600.00.**

4. The product lots may be located in more than one (1) location or warehouse in various locales in the United States.  Immediately after delivering a Purchase Order, Buyer agrees to authorize a wire be made to Seller through the Seller's Attorney Escrow Account identified in Exhibit B for the actual number of boxes of product contained in the Purchase Order.

5. As per the invoice below (EXHIBIT C), Seller agrees to sell **151,200  boxes** of 2 count iHealth COVID 19 home test kits . The Buyer shall transfer the above-mentioned funds to the Seller's Attorney Escrow Account listed inExhibit B as per each invoice.

6. Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer.  Title transfer shall happen contemporaneously with funds being released to Seller. Exhibit E attached hereto is incorporated herein as Seller's agreed upon Standard Operating Procedure.

7. Seller agrees to pay commissions, if any, included with rolls and extensions for the duration of this Agreement as per separate written agreement.

8. The Seller agrees to coordinate and pay for common carrier transportation to deliver the Goods from the Seller's warehouse(s) to Buyer at Seller's cost and is included in the purchase price paid to Seller by Buyer hereunder.

**CHARLTON HOLDING GROUP, LLC**

9. Risk of loss shall transfer to Buyer at the point the product is paid for by Buyer and the Seller is released of all loss guarantees.

10. The Goods shall be sold with the manufacturer's warranty only. Seller makes a warranty of Title to product only when it is paid for by Buyer. Seller makes no other warranty of any kind, express or implied, and any warranty by Seller is expressly disclaimed.

11. Neither Buyer nor Seller shall be liable to the other for any consequential damages, lost profits, cover costs, or punitive or exemplary damages arising out of or related to this Agreement; however if Buyer in any way attempts to circumvent Seller, Seller will be entitled to liquidated damages of $50,000 from Buyer or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer.

12. Seller may terminate this Agreement if Seller determines, in its sole discretion, that Buyer does not have the funds to purchase the Goods, or the Goods become unavailable and all funds deposited with Seller, if any, shall be returned to Buyer.

13. This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.

14. Buyer warrants and represents this transaction is in full compliance with all applicable laws and regulations, including but not limited to Executive Order No. 13224, as amended, the Patriot Act (Public Law 107 56), and any other law relating to the prevention and detection of terrorism and money laundering

15. Buyer agrees to indemnify, defend, and hold harmless the Seller, its agents, servants, employees, contractors, and affiliates (the "Indemnified Parties"), from and against all damages, losses, costs, and expenses (including reasonable attorneys' fees) which they may incur by reason of any breach of the representations and warranties made by Buyer in this Agreement, or any false or misleading representation or warranty in this Agreement or other document provided by Buyer to Seller.

16. Seller and Buyer are independent contracting Parties and nothing in this Agreement shall make either Party the agent, employee, or legal representative of the other.

17. The terms of this Agreement are confidential and may only be disclosed as required by law or to complete the transaction.

18. This constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties. Neither Party is relying upon any representation not contained in this Agreement.

*We, the undersigned, with full legal and corporate responsibility accept the agreement this date:*

**Signing Page**

Agreed and Signed By:

Exhibit 10 M



**CHARLTON HOLDING GROUP, LLC**

## SALE AND PURCHASE AGREEMENT

### January 21, 2022

THIS AGREEMENT IS FOR THE SALE AND PURCHASE OF the product identified on the Purchase Order attached hereto and marked as Exhibit A attached hereto (the "Goods").  This Sale and Purchase Agreement is referred to herein as (this "Agreement").

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer")  (each hereafter as "Party" and together as the "Parties")

For good and valuable consideration, the Parties agree:

1. Seller shall provide Buyer the Goods listed in Exhibit A for the Purchase Price, provided that Buyer complies with the conditions of this Agreement.

2. Seller agrees to sell to Buyer  151,200  boxes of 2 count iHealth COVID 19 home test kits shall be provided to the Buyer by the Seller for each lot of boxes available for payment as they are ready to be delivered.

3. The Buyer agrees to pay the Seller @ $13.00(USD) per box. Payment upon invoice as the product lots are ready for delivery, total cost **$1,965,600.00.**

4. The product lots may be located in more than one (1) location or warehouse in various locales in the United States.  Immediately after delivering a Purchase Order, Buyer agrees to authorize a wire be made to Seller through the Seller's Attorney Escrow Account identified in Exhibit B for the actual number of boxes of product contained in the Purchase Order.

5. As per the invoice below (EXHIBIT C), Seller agrees to sell **151,200 boxes** of 2 count iHealth COVID 19 home test kits . The Buyer shall transfer the above-mentioned funds to the Seller's Attorney Escrow Account listed inExhibit B as per each invoice.

6. Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer.  Title transfer shall happen contemporaneously with funds being released to Seller. Exhibit E attached hereto is incorporated herein as Seller's agreed upon Standard Operating Procedure.

7. Seller agrees to pay commissions, if any, included with rolls and extensions for the duration of this Agreement as per separate written agreement.

8. The Seller agrees to coordinate and pay for common carrier transportation to deliver the Goods from the Seller's warehouse(s) to Buyer at Seller's cost and is included in the purchase price paid to Seller by Buyer hereunder.



**CHARLTON HOLDING GROUP, LLC**

9. Risk of loss shall transfer to Buyer at the point the product is paid for by Buyer and the Seller is released of all loss guarantees.

10. The Goods shall be sold with the manufacturer's warranty only. Seller makes a warranty of Title to product only when it is paid for by Buyer. Seller makes no other warranty of any kind, express or implied, and any warranty by Seller is expressly disclaimed.

11. Neither Buyer nor Seller shall be liable to the other for any consequential damages, lost profits, cover costs, or punitive or exemplary damages arising out of or related to this Agreement; however if Buyer in any way attempts to circumvent Seller, Seller will be entitled to liquidated damages of $50,000 from Buyer or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer.

12. Seller may terminate this Agreement if Seller determines, in its sole discretion, that Buyer does not have the funds to purchase the Goods, or the Goods become unavailable and all funds deposited with Seller, if any, shall be returned to Buyer.

13. This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.

14. Buyer warrants and represents this transaction is in full compliance with all applicable laws and regulations, including but not limited to Executive Order No. 13224, as amended, the Patriot Act (Public Law 107 56), and any other law relating to the prevention and detection of terrorism and money laundering

15. Buyer agrees to indemnify, defend, and hold harmless the Seller, its agents, servants, employees, contractors, and affiliates (the "Indemnified Parties"), from and against all damages, losses, costs, and expenses (including reasonable attorneys' fees) which they may incur by reason of any breach of the representations and warranties made by Buyer in this Agreement, or any false or misleading representation or warranty in this Agreement or other document provided by Buyer to Seller.

16. Seller and Buyer are independent contracting Parties and nothing in this Agreement shall make either Party the agent, employee, or legal representative of the other.

17. The terms of this Agreement are confidential and may only be disclosed as required by law or to complete the transaction.

18. This constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties. Neither Party is relying upon any representation not contained in this Agreement.

*We, the undersigned, with full legal and corporate responsibility accept the agreement this date:*

**Signing Page**

Agreed and Signed By: *Daniel J. Scully*

CHARLTON SALE & PURCHASE AGREEMENT DATED «DATE»                    Page 2 of 8

ExHiBit 10 of (a)



**CHARLTON HOLDING GROUP, LLC**

For and on behalf of Seller,
Charlton Holdings Group, LLC

_____

Authorized Signatory

Name: Mr. Sam Gross

Position: Managing Partner

Date:

For and on behalf of Buyer

_____

Authorized Signatory

Name:
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342

Date: January 21, 2022

SENT BEFORE
SIGNATURE



**CHARLTON HOLDING GROUP, LLC**

For and on behalf of Seller,
Charlton Holdings Group, LLC

Authorized Signatory

Name: Mr. Sam Gross

Position: Managing Partner

Date:
For and on behalf of Buyer

Authorized Signatory

Name:  Daniel J. Scully
Safety House
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342

Date: January 21, 2022

/ EXHIBIT PON /



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT "A"- ICPO



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT "B" - ESCROW ACCOUNT
# Manfred Sternberg Jr. Attorney at Law IOLTA-Trust
# Account Wire Instructions

## Bank of America



### Bank of America; Phone # 888.287.4637
### ABA #026009593

### ACCOUNT NAME:
### Manfred Sternberg Jr. Attorney at Law
### IOLTA - Trust Account
### ACCT # 0008 4000 2143

Bank of America's SWIFT code **BOFAUS3N** should be used for incoming wires in U.S. dollars.

Bank of America's SWIFT code **BOFAUS6S** should be used for incoming wires in foreign currency.
If you do not know or are unsure of the type of currency being received please use **BOFAUS3N**

Someone sending an incoming international wire to you may also ask for Bank of America's address. The address to provide is as follows:
**BOFAUS3N** (US dollars or unknown currency)
    Bank of America, NA
    222 Broadway
    New York, New York 10038
**BOFAUS6S** (foreign currency)
    Bank of America, NA
    555 California St
    San Francisco, CA 94104

Manfred Sternberg
Attorney at Law
1700 Post Oak Blvd., 2 Blvd. Place, Suite 600
Houston, TX 77056
TEL: (713) 622-4300
FAX: (713) 622-9899
manfred@msternberg.com



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT C

# INVOICE

Charlton Holdings Group, LLC,
78 Buckminster Road - Rockville Center
New York 11570, USA

INVOICE _____ DATE: January 21, 2022

TO:
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342
*Ship To:*

**INSTRUCTIONS**: Funds are only due and payable upon receipt of Invoice. All sales are final.

| SALESPERSON | P.O. NUMBER | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| SAM GROSS | 18316 | | Common Carrier | Delivery to Buyer | Due on receipt |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 151,200 | iHealth COVID 19 home test kits | $13.00 | $1,965,600.00 |
| | | | |
| | CREDIT FOR DEPOSIT PER SPA $1,965,600.00 | | ($1,965,600.00) |

NO SALES TAX (RESALE)

## TOTAL DUE $0.00

Bank wire or deposit:
**ACCOUNT NAME:**
Manfred Sternberg Jr. Attorney at Law
IOLTA - Trust Account
Bank of America; Phone # 888.287.4637
ABA #026009593
ACCT # 0008 4000 2143



CHARLTON HOLDING GROUP, LLC

# EXHIBIT D –
# BILL OF SALE

### LOT #1 (ref: #18315)

*CHARLTON HOLDINGS GROUP, LLC (the "Seller") does hereby sell, assign and transfer to the "Buyer" Safety House  99 Aldan Avenue, Suite 5 Glen Mills, PA 19342  the item(s) described as follows:*

> 151,200 boxes of 2 count iHealth COVID 19 home test kits  @ $13.00 PER BOX INCLUSIVE.

*for the TOTAL AMOUNT OF $1,965,600.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of January _____, 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933



**CHARLTON HOLDING GROUP, LLC**

# BILL OF SALE

### LOT #2 *(ref: #NYV0004CHAR & A011822CHAR)*

*CHARLTON HOLDINGS GROUP, LLC* (the "Seller") does hereby sell, assign and transfer to the "Buyer" VRC Medical Services  357 Elf Road Sewaren, NJ 07077  the item(s) described as follows:

      189,000 boxes of 2 count iHealth COVID 19 home test kits @ $12.00 PER BOX INCLUSIVE.

*for the TOTAL AMOUNT OF $2,268,000.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of February*   08  , *2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933



**CHARLTON HOLDING GROUP, LLC**

# BILL OF SALE

### LOT #1 *(ref: #18315)*

*CHARLTON HOLDINGS GROUP, LLC (the "Seller") does hereby sell, assign and transfer to the "Buyer" Safety House 99 Aldan Avenue, Suite 5 Glen Mills, PA 19342 the item(s) described as follows:*

151,200 boxes of 2 count iHealth COVID 19 home test kits @ $13.00 PER BOX INCLUSIVE.

*for the TOTAL AMOUNT OF $1,965,600.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of February* ___08___ *, 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

DocuSigned by:

—32F072D662204E6...

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933



**CHARLTON HOLDING GROUP, LLC**

# BILL OF SALE

### LOT #1 *(ref: # 30321)*

*CHARLTON HOLDINGS GROUP, LLC* (the "Seller") does hereby sell, assign and transfer to the "Buyer" Hand Safety, LLC  500 S. Barrett, Unit 101 Denison, TX 75020  the item(s) described as follows:

151,200 boxes of 2 count iHealth COVID 19 home test kits @ $13.00 PER BOX INCLUSIVE.

*for the TOTAL AMOUNT OF $1,965,600.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of February*  ___08___ *, 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

DocuSigned by:

32F672D802204E6...

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933

1 CONT EXHIBIT 1 OF 1

**Dan Scully**

| | |
|---|---|
| **From:** | Gary Lightman <garylightman@lightmanlaw.com> |
| **Sent:** | Tuesday, February 15, 2022 10:34 PM |
| **To:** | Manfred |
| **Cc:** | G. Manochi; Wl. Stamps; K. DiTomaso; GARY LIGHTMAN |
| **Subject:** | Re: TheSafetyHouse.com v. Manfred Sternberg & Associates, and Manfred Sternberg, Esquire, and Sam Gross, and Charlton Holding Group, LLC -- Docket No. 2022-[NOT YET FILED] |

Mr. Sternberg,

Your email below is NOT what you represented to me in our phone call of earlier today.

You were not authorized to release any funds from your attorney escrow account until "Seller deliver[ed] the goods to a common carrier" with the appropriate *signed* Seller's Bill of Sale transferring title of the goods to Buyer.

This is the second (and last) time we will request that you provide us IMMEDIATELY with the identity and contact information of the "common carrier" that you represented to me in our phone call (and that did not deny in your below email) that has the goods that you represented to me already were being shipped to TSH.

We also request that you email to us a copy of the *signed* Bill of Sale, as well as the Bill of Lading for the common carrier shipment.

If we do not receive this information and documentation from you by no later than tomorrow, then we have been instructed (1) to immediately file a lawsuit, and (2) to file a disciplinary complaint against you for your unauthorized transfer of escrow funds.

You should write us back first thing in the am, if you have any questions or problems.  Otherwise, we look forward to timely receiving from you the requested information and documentation.

Please be guided accordingly.

thx
Gary Lightman
cell 215-760-3000

> On Feb 15, 2022, at 7:08 PM, Manfred <Manfred@msternberg.com> wrote:
>
> Mr. Gary Lightman,   I am not sure what you heard, but I certainly did not confirm that our law firm is still holding the $1,965,600.00 that TSH wired into our attorney escrow.   The funds were disbursed to the Seller in accordance with the SPA and per the instruction of our client.   I will note, your interpretation of the SPA and your explanation below is not consistent with the terms of the SPA.  Maybe you should read it?
>
> Paragraph 6 of the SPA
> says:   Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D)s
> hall be provided, and Seller will deliver the Goods to a common carrier with instructions to

1

deliver the Goods to the location(s) as directed by Buyer.  Title transfer shall happen contemporaneously with funds being released to Seller.   Your client should have an executed Bill of Sale and funds have been transferred for the purchase when the goods were loaded onto the common carrier.

You will also note that Paragraph 13 says:   This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue
which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.
   Proceed accordingly.

I am told the product will be arriving tomorrow at the location provided by your client.   Let me know when your client is in possession of his product.

*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard
2 BLVD Place, Suite 600
Houston, Texas 77056

☎Ph: 713-622-4300
Fax: 713-622-9899
Email: manfred@manfredlaw.com

<image001.png>
<image002.png><image003.png>

**From:** Gary Lightman <garylightman@lightmanlaw.com>
**Date:** Tuesday, February 15, 2022 at 5:35 PM
**To:** Manfred Sternberg <Manfred@msternberg.com>
**Cc:** "G. Manochi" <gmanochi@lightmanlaw.com>, "Wl. Stamps" <wlstamps@lightmanlaw.com>, "K. DiTomaso" <kditomaso@lightmanlaw.com>, GARY LIGHTMAN <ltag8r@me.com>
**Subject:** TheSafetyHouse.com v. Manfred Sternberg & Associates, and Manfred Sternberg, Esquire, and Sam Gross, and Charlton Holding Group, LLC -- Docket No. 2022-[NOT YET FILED]

Mr. Manfred Sternberg,

Our law firm has been retained as litigation counsel for TheSafetyHouse.com ("TSH").  This email will confirm your phone call to me, that just ended.  Thank you for your courtesies in timely returning the voice mail message that we left when we called your work number (713-622-4300) earlier today (and

please do not delete that phone message, unless and until this dispute is fully resolved to our client's satisfaction).

You represented to us that the 151,200 boxes of 2 count iHealth COVID 19 home test kits that TSH purchased from your client (Sam Gross and Charlton Holding Group, LLC) already were being shipped and in transit to TSH, and that TSH should expect delivery of the goods tomorrow. You also confirmed that your law firm still is holding the $1,965,600.00 that TSH wired into your attorney escrow account, that is supposed to be held by you and not released from escrow until TSH has received delivery of the goods.

You should use "reply all" immediately, if this email does not accurately memorialize our phone conversation. Otherwise, please use "reply all" and provide us with the shipping information that we requested from you when we just spoke (i.e., the name and contact information of the carrier that is delivering the goods).

We look forward to your timely response.

Very truly yours,
Gary Lightman, Esquire
LIGHTMAN & MANOCHI
Attorneys for TSH

cc: client

--
Gary P. Lightman, Esquire
e-mail:
garylightman@lightmanlaw.com
or ltag8r@me.com
cell 215-760-3000

LIGHTMAN & MANOCHI
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
Phone: (215) 545-3000 (ext. 107);
fax (215) 545-3001

New Jersey:
Phone: (856) 795-9669 (ext. 107);
fax (856) 795-9339

****************************
****************************
**********
ATTENTION: This e-mail and any
attachments to it may contain
PRIVILEGED AND
CONFIDENTIAL INFORMATION
intended only for the use of the

3



CHARLTON HOLDING GROUP, LLC

# EXHIBIT E -
# STANDARD OPERATING PROCEDURE (SOP)

January 21, 2022

RE:  151,200  boxes of 2 count iHealth COVID 19 home test kits

Seller: Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller")
AND

Buyer: Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer")  (each hereafter as "Party" and together as the "Parties")

The following SOP is how Seller engages with Buyers.

1. Buyer to provide Purchase Order to Seller.
2. Seller's Attorney to draft and provide Buyer with Seller form of Sale and Purchase Agreement. ("SPA").
3. Buyer and Seller execute SPA and Buyer wires Seller's Attorney the total purchase price called for in the Purchase Order.
4. Purchase price funds released to Seller.
5. Title Transfer to Goods to Buyer per SPA.
6. Goods delivered to common carrier by Seller per SPA for delivery to Buyer.
7. Seller to provide Buyer with BOL(s) and executed Bill of Sale for Goods shipped
8. Buyer and its agents agree not to speak to anyone other than Seller or Seller's representative regarding this transaction.   Any discussions with Seller's vendors will be considered attempted circumvention.

EXHIBIT 10 Q



THE **SAFETY**house.COM ®

99 Aldan Avenue, Suite 5 • Glen Mills, PA 19342
1-800-872-3684 • PH: 610-344-0637 • FAX: 1-610-436-4983
www.thesafetyhouse.com

## ---- PURCHASE ORDER ----

### P.O. #                     18315

| | |
|---|---|
| **Date** | 1/21/2022 |
| **Receive By** | 1/25/2022 |
| **Vendor Account #** | |
| **Memo** | |
| **Terms** | CIA (Cash In Advance) |
| **Ship Via** | |
| **FOB** | |
| **Freight In Status** | Freight Included |
| **Buyer** | Dan Scully |
| **Date Printed** | 01/21/2022 11:58:56 |

**Vendor**
(713) 824-9170
C/O: Manfred Sternberg ESQ
Charlton Holding Group LLC
78 Buckminster Road
Rockville Centre NY 11570
United States

**Ship To**
The Safetyhouse.com
99 Aldan Avenue
Suite 5
Glen Mills PA 19342
United States

| Item | Ship To | Qty | Recv | Ship | U/M | Description | Rate | Amount |
|---|---|---|---|---|---|---|---|---|
| FS1001 | FS1001 | 151,200 | 0 | | Each | FS1001 - iHealth Covid-19 Antigen Rapid Test, 2 Tests per Kit | 13.00 | 1,965,600... |

**Total**          $1,965,600.00

Authorized Signature



CHARLTON HOLDING GROUP, LLC

# EXHIBIT C
# INVOICE

Charlton Holdings Group, LLC,
78 Buckminster Road - Rockville Center
New York 11570, USA

INVOICE _____ DATE: January 21, 2022

TO:
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342
*Ship To:*

**INSTRUCTIONS**: Funds are only due and payable upon receipt of Invoice. All sales are final.

| SALESPERSON | P.O. NUMBER | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| SAM GROSS | 18315 | | Common Carrier | Delivery to Buyer | Due on receipt |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 151,200 | iHealth COVID 19 home test kits | $13.00 | $1,965,600.00 |
| | CREDIT FOR DEPOSIT PER SPA $1,965,600.00 | . | ($1,965,600.00) |

NO SALES TAX (RESALE)

## TOTAL DUE $0.00

<u>Bank wire or deposit:</u>
ACCOUNT NAME:
Manfred Sternberg Jr. Attorney at Law
IOLTA - Trust Account
Bank of America; Phone # 888.287.4637
ABA #026009593
ACCT # 0008 4000 2143



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT E -
# STANDARD OPERATING PROCEDURE (SOP)

January 21, 2022

RE:  151,200  boxes of 2 count iHealth COVID 19 home test kits

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller")
AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer")  (each hereafter as "Party" and
together as the "Parties")

The following SOP is how Seller engages with Buyers.

1.  Buyer to provide Purchase Order to Seller.
2.  Seller's Attorney to draft and provide Buyer with Seller form of Sale and Purchase Agreement. ("SPA").
3.  Buyer and Seller execute SPA and Buyer wires Seller's Attorney the total purchase price called for in the
    Purchase Order.
4.  Purchase price funds released to Seller.
5.  Title Transfer to Goods to Buyer per SPA.
6.  Goods delivered to common carrier by Seller per SPA for delivery to Buyer.
7.  Seller to provide Buyer with BOL(s) and executed Bill of Sale for Goods shipped
8.  Buyer and its agents agree not to speak to anyone other than Seller or Seller's representative regarding this
    transaction.  Any discussions with Seller's vendors will be considered attempted circumvention.

**OUTGOING WIRE TRANSFER**   Bank Name:   FULTON BANK NA

Wire Created by UserID:   MARAMIREZ                          Date: 1/21/2022          Time: 15:08:28

Branch: 001                              Name: DEFAULT BR - BK 057          Phone #:

Amount:                              1,965,600.00 USD    WIRE FEE AMOUNT:  Refer to Fee Schedule

Ins
Amount:                                             Ins Currency:               Exchange Rate:

Account #:  0089344700

Customer Name:  AMERICAN ENVIRONMENTAL ENTERPR             Phone #:
Address1:       DBA THESAFETYHOUSE.COM, LLC
Address 3:      GLEN MILLS,PA 19342-              Address 2: 99 ALDAN AVE STE 5

## BANK INFORMATION

Destination Bank Name:    BANK OF AMERICA, N.A., NY                Bank ABA: 026009593
Destination Bank Address 1:
Destination Bank Address 2:
Destination Bank Address 3:
Beneficiary Bank Name:                                            Bank ABA:
Beneficiary Bank Address 1:
Beneficiary Bank Address 2:

## CUSTOMER (BENEFICIARY) INFORMATION

Beneficiary Name to Credit:    MANFRED STERNBERG JR ATTORNEY ATLAW
Account Number to Credit:      000840002143
Beneficiary Address 1:         IOLTA-TRUST ACCOUNT
Beneficiary Address 2:         1700 POST OAK BLVD, 2 BLVD PLACE
Beneficiary Address 3:         SUITE 600, HOUSTON, TX 77056
Other Information:             220121143457MA9B
Bank to Bank Info:
ORG to BNF Info:

Customer Signature:                                          Date:

WIRE TRANSFER 1/21/2022

*EMAILED IN ERROR*



**CHARLTON HOLDING GROUP, LLC**

# BILL OF SALE

### LOT #1 *(ref: #A6373NAT)*

*CHARLTON HOLDINGS GROUP, LLC  (the "Seller") does hereby sell, assign and transfer to the  "Buyer"* VRC Medical Services  357 Elf Road Sewaren, NJ 07077  *the item(s) described as follows:*

15,120 boxes of 2 count iHealth COVID 19 home test kits @ $12.00 PER BOX INCLUSIVE.

*for the TOTAL AMOUNT OF $181,440.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of February*   08  *, 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933

addressee. If you are not the intended recipient or an agent or employee responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this document or the information contained therein is strictly prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (215) 545-3000 (or in NJ: 856-795-9669) and delete this e-mail from your computer.

DISCLAIMER - The transmission or receipt of this e-mail and any attachments, in and of itself, does not, and is not intended to, create an attorney-client relationship with Lightman & Manochi or any of its attorneys. The sending of e-mail to Lightman & Manochi or one of its attorneys does not create an attorney-client relationship. In the event and to the extent that an addressee named herein is not an existing client of Lightman & Manochi, please note that the contents of this e-mail and any attachments are not legal advice and should not be used as such.
*******************************
*******************************
**********

4

EXHIBIT 10 +/

UNITED STATES
POSTAL SERVICE®

PRIORITY
MAIL
EXPRESS®

EI 289 728 172 US

CUSTOMER USE ONLY

FROM: (PLEASE PRINT)      PHONE ( )

Dan Scelly
The Safetyhusic.com
99 Alban Ave
Suite S
Glen Mills PA 19342

MAR 14 2022

DELIVERY OPTIONS (Customer Use Only)

☒ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)
   *Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)      PHONE ( 512 )  427-1350

The Office of Disciplinary Counsel
P.O. Box 13287
Austin, TX 78711

ZIP +4® (U.S. ADDRESSES ONLY)

1 8 7 1 1

⬆ PEEL FROM THIS CORNER

☒ For pickup or USPS Tracking™ visit USPS.com or call 800-222-1811.
☒ $100.00 insurance included.

PAYMENT BY ACCOUNT (If Applicable)

USPS® Corporate Acct. No.        Federal Agency Acct. No. or Postal Service™ Acct. No.

ORIGIN (POSTAL SERVICE USE ONLY)

| PO ZIP Code | Day of Delivery | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|---|
| 19380 | ☐ 1-Day  ☐ 2-Day  ☐ Military  ☐ DPO | 3/11/22 | $ 35.70 |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 3/9/22 | ☐ 10:30 AM  ☐ 3:00 PM | $ | $ |
| Time Accepted | 12:15 ☐ AM ☒ PM | Special Handling/Fragile | Sunday/Holiday Premium Fee | Return Receipt Fee | Live Animal Transportation Fee |
| | | $ | $ | $ | $ |

DELIVERY (POSTAL SERVICE USE ONLY)

| Weight | ☐ Flat Rate | Acceptance Employee Initials |
|---|---|---|
| lbs. | ozs. | JW |

| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature | Total Postage & Fees |
|---|---|---|---|
| | | | $ 35.70 |
| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature | |

LABEL 11-B, MAY 2021

THESAFETYHOUSE.COM
99 Aldan Ave. Suite 5
Glen mills, PA. 19342

RECEIVED BY
CHIEF DISCIPLINARY COUNSEL

MAR 14 2022

The Office of Chief Disciplinary
P.O. Box 13287
Austin, Tx 78711

EXHIBIT 10.V

 Gmail

Gary Weiss <wgary4109@gmail.com>

## Gems and settlement.

3 messages

---

**sam gross** <charltonholdinggroupllc@aol.com>                    Mon, Apr 1, 2024 at 9:35 AM
To: Gary Lightman <garylightman@lightmanlaw.com>, Gary Lightman <ltag8r@me.com>, Gary Weiss
<wgary4109@gmail.com>

Dear Mr Lightman,
We have spoken number of times and per your request to resolve this dispute I had shown out most will to do so.
You had requested my proposal, which I handed over to you. And since then all we have done was bicker and
argue and avoid the subject on hand.
Should you still wish to resolve the matter ? Kindly submit a counter proposal.

Best regards,

Sam Gross

---

**Gary Lightman** <garylightman@lightmanlaw.com>                    Tue, Apr 2, 2024 at 11:38 PM
To: sam gross <charltonholdinggroupllc@aol.com>
Cc: Gary Weiss <wgary4109@gmail.com>, GARY LIGHTMAN <ltag8r@me.com>

SETTLEMENT COMMUNICATION

Sam,

In response to your below email, and as we previously informed you:

My client's first choice is to get cash from you.

My client's second choice is to get real (not lab) diamonds and/or gold from you that when sold, will generate at
least $2 million in cash.

If you are interested, let's talk.

So there is no misunderstanding or miscommunication, please note that unless and until may client actually gets
his money back, we have been instructed to proceed forward with the lawsuit.

thx

Gary Lightman
cell 215-760-3000

PS, still waiting to hear from the attorney you said you were hiring, pls advise, thx

---

**Gary Weiss** <wgary4109@gmail.com>                    Fri, Apr 26, 2024 at 9:24 PM
To: Pat Healey <phealey@rebarkelly.com>, Cathleen Kelly Rebar <crebar@rebarkelly.com>, Gary Weiss
<wgary4109@gmail.com>, Gary Weiss <monipair@aol.com>, Sam Gross <samrosinc@icloud.com>, "G. Manochi"
<gmanochi@lightmanlaw.com>, "K. DiTomaso" <kditomaso@lightmanlaw.com>, GARY LIGHTMAN
<ltag8r@me.com>, "Laver, Seth L." <slaver@goldbergsegalla.com>

EXHIBIT 7



**Enjoy the difference with Available Movers & Storage, reliable moving company in New York NYC.**

**Available Movers & Storage**
656 656 E 133rd St,
Manhattan, NY 10020
info@availablemovers.com

US DOT #1323278US MC #510368NYDOT #T-36716

Phone7182926500
Chat online

03/08/22 1:24PM

**A solar**

9085462649

monipair@aol.com

**Order for Service**

From **1020 Augusta, Elizabeth, NJ 07206**

To **Farmingdale, NY 11735**

**Job # 714194**

Straight-job
Date**02/07/22**

**Note: Please be advised this is your final invoice and you understand by agreeing to these charges you understand the final totalincluding storage is $6,080.09.**

**These Charges are non-refundable.**

| | |
|---|---|
| Pickup | 02/07/228:00AM-9:00AM |
| Delivery | 02/07/22 |
| Job Description | 2 trucks 3 workers |
| Estimated Size | 2000.00 cf |
| Liability & Protection | Released Value |
| Job Distance | 108.20 mi |
| | |
| Sales Manager | Gerard |
| Phone | 7182926500 |
| Fax | 7182927797 |
| Email | gerard@availablemovers.com |

| | |
|---|---|
| 1 month of storage | $1040.00 |
| 1 Week Storage | $1040.00 |
| Basic Handling Fee | $0.09 |
| Truck NJ To Farmingdale | $1500.00 |
| Truck to NJ/Pa | $2500.00 |
| **Subtotal** | **$6,080.09** |
| **Total Job** | **$6,080.09** |

**Inventory**

| Item | Qty | Item | Qty | Item | Qty |
|---|---|---|---|---|---|
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |

CON EXHIBIT 4a

*INVOICE PAID IN FULL*

*TOTAL OF $6,080 —*

*# OF BOXES CONFIRMED*



*24 Boxes*

**Note: Please be advised this is your final invoice and you understand by agreeing to these charges you understand the final total including storage is $6,080.09.**

**These Charges are non-refundable.**

| | |
|---|---|
| Pickup | 02/07/228:00AM-9:00AM |
| Delivery | 02/07/22 |
| Job Description | 2 trucks 3 workers |
| Estimated Size | 2000.00 cf |
| Liability & Protection | Released Value |
| Job Distance | 108.20 mi |
| Sales Manager | Gerard |
| Phone | 7182926500 |
| Fax | 7182927797 |
| Email | gerard@availablemovers.com |

| | |
|---|---|
| 1 month of storage | $1040.00 |
| 1 Week Storage | $1040.00 |
| Basic Handling Fee | $0.09 |
| Truck NJ To Farmingdale | $1500.00 |
| Truck to NJ/Pa | $2500.00 |
| **Subtotal** | **$6,080.09** |
| **Total Job** | **$6,080.09** |

## Inventory

| Item | Qty | Item | Qty | Item | Qty |
|---|---|---|---|---|---|
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |


*Conf Exhibit 4 b*

| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 |
|---|---|---|---|---|---|
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |

*Handwritten note: 62? Boxes*

*Handwritten: CON EXHIBIT 4c*

| | | | | | |
|---|---|---|---|---|---|
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |

*123 Boxes*

CONF EXHIBIT 4 9 1

| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
|---|---|---|---|---|---|
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box ( | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box ( | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box ( | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box ( | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box ( | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box ( | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |

*(Handwritten note on pink sticky: 123)*

*(Handwritten: CONF EXHIBIT 4 e)*

| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | | |

## Local Move Estimate

**Inventory**
Only the items listed are included in the total cost. Any additional items or any additional services added will result in an additional cost. Packing materials are charged separately from the hauling.

**Reservations**
To schedule a date and reserve space on a truck, a deposit of 20% of the total cost of the move is required upon booking. The deposit will be applied to the move and deducted from the total cost. The deposit is refundable up to 7 days prior to your move date. All cancellations must be in writing via e-mail. The deposit can be in the form of Visa or Master Card. By providing us with your credit car[...] the terms and conditions of this contract.

**Form of payment**
20% deposit due upon booking via Visa or Master Card, 40% due upon pick up via Cash, Postal Money Ord[...] 40% due upon delivery via Postal Money Order OR Cash ONLY. A 4% Credit Card Surcharge will apply to c[...] deposits.NO PERSONAL CHECKS Please

**Charges include**
1. Disassembling and assembling of basic furniture (except cribs), loading & unloading.
2. Transportation, gas, tolls, mileage (Parking Tickets are extra)
3.Padding for protection of furniture with moving blankets, padding materials

**Estimate Information:**
This estimate includes labor, loading, unloading, and basic valuation. All furniture must be wrapped in blankets and/or protective [...] disassembly and reassembly of basic furniture is also included provided all parts are available excluding cribs. The shipper also understands that boxes & labor for packing boxes are not included and will be charged per items ordered and listed on the packing materials price list. If non-binding, the total charges are based on the actual weight of the property and may exceed the estimate subject to U.S. Federal Law and the 110% rule; you may be charged 110% of the non-binding estimate. Estimate may also be based upon or the actual space or cubic feet occupied by the property on the transport vehicle. If binding, the total amount of the binding estimate must be paid in full prior to unloading. For all estimates there may be additional charges for flights of stairs, elevators, extra drop-offs or pick-ups, re-delivery, long carriers over 150 feet from the entrance to the home and shuttles for residences in restrictive areas such as downtown Manhattan or other restrictive complexes. There will be a fuel surcharge on all shipments in the amount of 18% of the line haul charges. All charges are based upon full tariff rates. The carrier`s tariff is available for inspection upon reasonable request. Please contact carrier to make arrangements.

**Dispute settlement program**
Our neutral arbitration program has been designed to give neither the carrier nor the shipper any special advantage. If a dispute arises between the carrier and the shipper Arbitration may be a mutually beneficial alternative to help resolve the dispute. Section 49 U.S.C. Section 375.211 provides that a mover must have a program in place to provide shippers with an Arbitration alternative. Arbitration is optional and not required under Federal law. 1. Summary of the arbitration process: Arbitration is an alternative to courtroom litigation. It provides each party to the dispute to present their cases and allows a neutral third party arbitrator to make decision as to the merits of each side`s case. 2. Applicable costs: Each party is responsible for their own costs associated with arbitration. A benefit to the arbitration alternative may be that it is less expensive than traditional litigation. Each party is responsible for 50% of the costs associated with securing the arbitrator and 100% of their own expenses, including but not limited to attorney fees. 3. Legal effects: If the arbitration alternative is chosen, then any decision made by the arbitrator may be binding. Additionally, an arbitration decision may not be appealed in a court of law. There are many arbitration programs available at multiple locations throughout the United States. It is mandatory that JAMS Arbitration services be used for. Contact information and other information about JAMS can be found athttp://www.jamsadr.com. Please contact the moving company if you wish to participate in or get more information about the arbitration program.

**Cancellation/Rescheduling Policy**
All cancelations must be made in writing at least 7 business days prior to the original move date as stated on the original estimate in order for a refund to be honored. Written cancellations may be submitted either via mail, email or fax to the office listed on this estimate. For the quickest cancellation process, it is best to forward your cancellation request via email. Your deposit will not be refundable if your cancellation notice is not received 7 business days or more prior to the first date of your moving pick up window (moving date). For original reservations made less than 7 business days prior to the move and/or postponed moves, cancellation policy does not apply, therefore deposit is non-refundable.
By placing a deposit with Available Movers & Storage, I am agreeing to the Terms & Conditions stated above. By approving this Estimate Cost for Service via my electronic or hand signature, I hereby voluntarily free Available Movers & Storage the liability of an onsite visual, and agree to an online, e-mail / over the phone estimate. I am fully aware that I am entitled to an in home consultation at my request for no additional cost and that

CONF EXHIBIT 4

it is my responsibility to request it.

**Storage**
Monthly rates are charged at 50 per cubic foot, with a minimum of 200 cubic feet. Handling fees may apply.

**Packing/Unpacking**
Unless specified in the Additional Services above, your move does not include packing services, unpacking services or packing materials. Packing labor and packing materials can be ordered through your salesperson or at the time of the pick-up with the foreman. All Trucks come fully equipped with a full line of moving supplies such as boxes, tape, shrink wrap, etc. Our company policy states that certain items MUST BE PROTECTED IN BOXES before being moved and loaded. You may pack these items yourself, prior to the moving date, in either the original boxes or other suitable boxes.

**Visual/In-Home Survey**
Shipper has read and agrees to accept the estimate based on the terms and conditions set forth on all pages of this estimate. Shipper understands that they may request for an additional charge a visual binding estimate if they live within a 50 mile radius of the estimators location. However, the shipper hereby waives his/her right to a visual estimate and selects to have a FREE non-visual estimate of services.

**Your Right And Responsibilities When You Move**
Please click on the link below to view this important pamphlet - Right and Responsibilities | FMCSA

**Protect Your Move**
Please click on the link below to review this important pamphlet - Protect Your Move | FMCSA

**Valuation**
Available Movers & Storage will do everything that we can to ensure that your shipment is delivered in the same condition as it was picked-up in. But, because of to unforeseen circumstances, Available Movers & Storage provides Standard Moving Valuation free of charge. Standard valuation offers coverage of 60 cents per pound per article.
If you choose to examine other coverage options, we recommend the following: 1. Check with you Home Owners or Renters Insurance 2. Call MovingInsurance.Com at 888-893-8835 or log onto movinginsurance.com for more information

**Do not Ship the Following Items**
Available Movers & Storage recommends that the following items not be transported with ANY moving company. These items include passports, deeds, mortgage papers, bank reports, gold, silver, jewelry, coins, currency, diamonds, medications, military items, ammunition, government documents legal documents, personal checks. These items ARE not covered by Available Movers & Storage.

**Boxes Packed by the Owner**
If you choose to pack your own boxes, please note that Available Movers & Storage has no way of determining the contents or the conditions of said contents in your boxes. Thus, these boxes will not be honored or accepted for claims, unless there is Clear and Visible damage to the actual box.

**Electronics**
Available Movers & Storage. is Not Responsible for the inner working or functionality of any electronic device(including, but not limited to televisions, DVD players, surround sound systems, speakers, ps3, iPods, laptops, stoves, microwaves, etc.), unless there is Clear and Visible physical damage to the unit and the original manufactures` box it was shipped in.

**Press wood/Particle Board Furniture**
Furniture made from press wood and particle boards are easily broken when dismantled and/or transported. Available Movers & Storage will accept these items for shipment, but at the risk of the owner, not Available Movers & Storage. We will not dismantle any furniture piece made of this material, regardless of it being one piece or the entire unit, unless it is at the sole responsibility of the shipper.

**Labelling All Your Items**
We highly recommend labelling all your items including furniture and boxes with the name on file and order number provided for your move. We do offer labelling services at an additonal small cost. If you wish to order labels from us, please ensure to make this request directly from your salesperson before the scheduled move date. Labels will be prepared with all of your information and brought to the pick up location to be used then.

**Please Note the Following Information Regarding Valuation**
If a moving company loses or damages your goods, there are 2 different standards for the companies liability based on the types of rates you pay. BY FEDERAL LAW, THIS FORM MUST CONTAIN A FILLED-IN ESTIMATE OF THE COST OF A MOVE FOR WHICH THE MOVING COMPANY ISLIABLEFOR THE FULL (REPLACEMENT) VALUE OF YOUR GOODS in the event of loss of, or damage to, the goods. This form may also contain an estimate of the cost of a move in which the moving company is liable for FAR LESS than the replacement value of your goods, typically at a lower cost to you. You will select the liability level later, on the bill of lading (contract) for your move. Before selecting a liability level, please read Your Rights and Responsibilities When You Move Provided by the moving company, and seek further information at the government website

CONT EXHIBIT 4 a

-Protect Your Move | FMCSA

**Understanding Your Delivery Schedule:**
To ensure proper and timely delivery of your household goods, please take the time to read your contract thoroughly. When you state your first available date for delivery, Available Movers & Storage uses that date as the starting time line for your delivery. For East Coast bound shipments, delivery can take between 3 to 14 business days. For Midwest shipments, the delivery schedule will be between 5 to 14 business days. For West Coast bound shipments, your expected delivery should be between 7 to 21 business days. For shipments destined for the Pacific Northwest, delivery makes take up to 30 days. This assures that the delivery does not arrive prior to your availability.

**Questions About Your Move**
If you have questions or issues regarding any part of your move (i.e. delivery, scheduling, inquiries, claims, or just basic customer service), please forward us an e-mail at info@availablemovers.com Please remember to include your Job Number for a faster response. Our customer services representatives will contact you immediately after receipt.

**Summary of Estimate**
(I) Unless packing services are requested above, shipper must be packed and ready to move. If you choose to do your own packing, please make sure that all loose items are placed in a box. Also, protect all fragile items and items of delicate nature with a box/carton.

(II) The deposit will be deducted from the total cost of the move and is refundable up to 7 days prior to the scheduled move date.

(III) There will be no taxes charged for moving/labor services.

(IV) Delivery can take up to 14 business days for east coast delivery and 21 business days forwest coast toWest coast delivery (or west coast to east coast), effective from first requested delivery date.[EINI

(V) At the destination, in case of a walk up building, there will be a charge of $75 for each flight of stairs after the first flight which is free.

(VI) At the destination, in case of no access for a trailer, additional special services charges for long carry or shuttle truck may apply.

(VII) Reassembly/Disassembly: Available Movers & Storage assistonly withbasicdisassembly and reassembly of standardHousehold items, such as beds or table legs. For items requiring more complex assembly or disassembly it is the customer's responsibility to arrange such services with another company.

**Full Value Protection**
Amount of Liability: (Optional Service)

**WARNING**
If a moving company loses or damages your goods, there are 2 different standards for the company's liability based on the types of rates you pay. **BY FEDERAL LAW, THIS FORM MUST CONTAIN A FILLED-IN ESTIMATE OF THE COST OF A MOVE FOR WHICH THE MOVING COMPANY IS LIABLE FOR THE FULL (REPLACEMENT) VALUE OF YOUR GOODS** in the event of loss of, or damage to, the goods. This form may also contain an estimate of the cost of a move in which the moving company is liable for **FAR LESS** than the replacement value of your goods, typically at a lower cost to you. You will select the liability level later, on the bill of lading (contract) for your move.

**Before selecting a liability level, please read:**

Right and Responsibilities | FMCSA

Ready To Move Brochure | FMCSA

Protect Your Move | FMCS

CONT EXHIBIT 4 N

**Attorneys at Law**

1700 Post Oak Boulevard

2 BLVD Place, Suite 600

Houston, Texas 77056

☎Ph: 713-622-4300

▤Fax: 713-622-9899

✉ Email: manfred@manfredlaw.com

<image001.png>

<image002.png><image003.png>

**From:** Dick Gray <dickgray1951@aol.com>
**Date:** Friday, January 21, 2022 at 3:03 PM
**To:** Manfred Sternberg <Manfred@msternberg.com>
**Cc:** Sam Gross <Samrosinc@icloud.com>, Chris Cortese
<cjcsvpllc@gmail.com>
**Subject:** PDF Signed SPA and wire transfer receipt from from Dan Scully

Manfred,

Attached is the signed SPA from Dan Scully for 151,200 kits - iHealth

Would you please get the SPA signed by Sam or Chris for DBA The Safety House
American Environmental Enterprises.?

The wire has been sent for $1,965,600. Wire copy attached.

Thanks,



Gmail – Fw: Safety House Re: PDF Signed SPA and wire transfer receipt from from Dan Scully   Case 2:22-cv-00688-JMY   Document 180   Filed 07/12/24   Page 67 of 79

9/9/23, 6:11 AM

 

**From:** Manfred Sternberg <Manfred@msternberg.com>
**Date:** Tuesday, February 8, 2022 at 3:17 PM
**To:** Dick Gray <dickgray1951@aol.com>
**Subject:** Re: PDF Signed SPA and wire transfer receipt from from Dan Scully

Got it thanks, the safety thing got me confused.  You are right.   Give me a couple of minutes.

*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**

**Attorneys at Law**

1700 Post Oak Boulevard

2 BLVD Place, Suite 600

Houston, Texas 77056

☎Ph: 713-622-4300

Fax: 713-622-9899

✉ Email: manfred@manfredlaw.com



 

CONFESSION EXHIBIT
5b

# MANFRED STERNBERG & ASSOCIATES, P.C.
## ATTORNEYS AT LAW
1700 POST OAK BLVD., SUITE 600
HOUSTON, TEXAS 77056
manfred@manfredlaw.com

MANFRED STERNBERG, JR.*
DANA L. KIRKPATRICK
* Board Certified: Consumer & Commercial Law
Also admitted in Louisiana

TELEPHONE: (713)622-4300
FACSIMILE:  (713)622-9899

· ONE EXHIBIT 8a-8h
NUMBERED TO TEXAS BAR
APRIL 20-2022

COVER EXHIBIT
8 a-8h

# MANFRED STERNBERG & ASSOCIATES, P.C.
## ATTORNEYS AT LAW
1700 POST OAK BLVD., SUITE 600
HOUSTON, TEXAS 77056
manfred@manfredlaw.com

MANFRED STERNBERG, JR.*
DANA L. KIRKPATRICK
* Board Certified: Consumer & Commercial Law
Also admitted in Louisiana

TELEPHONE:  (713)622-4300
FACSIMILE:   (713)622-9899

April 20, 2022



*Via mail:*  *houcdcreponses@texasbar.com*
Office of the Chief Disciplinary Counsel
State Bar of Texas
4801 Woodway Drive, Suite 315-W
Houston, Texas 77056

      RE:   2022-01819 – Dan Scully - Manfred Sternberg, Jr.; Complaint to the Office of the
      Chief Disciplinary Counsel State Bar of Texas

Dear Counsel:

I am in receipt of your notice of Complaint and file this as my response to same.  Along with this
letter please see the production of documents as Exhibits to this letter, that is being supplied to
you for your reference.

There are a number of omissions and outright misrepresentations of material fact in Mr. Dan
Scully's ("Scully")  complaint, so it may be helpful moving forward for all of us to understand
the facts as they occurred.

Our law firm represents Charlton Holdings Group, LLC. ("Charlton").   We have no direct
relationship with Scully or Scully's company, Safety House.  Our law firm has no agreement
with Scully or Safety House, and certainly Safety House was never our law firm's client.   There
is no escrow agreement between our firm and Scully or Safety House.  I do not believe I have
ever spoken with Mr. Scully.

Instead, Safety House as Buyer, is a party to a contract for product with the Seller, our client
Charlton.  Our law firm is not a party nor signatory to the contract, although we drafted the Sale
and Purchase Agreement ("SPA") at Charlton's request.    It was always my assumption that
Safety House was competently represented by Attorney Gary Lightman ("Lightman")
(referenced in the complaint) from Pennsylvania when Safety House signed the contract with
Charlton.

The $1,965,600. deposit that was transferred into our trust account by Scully on Safety House's
behalf was wired on January 21, 2022 pursuant to this written SPA between the parties.

Notably, the fully executed SPA was omitted from the Complaint by Scully, even though in
fairness it should be considered when determining the merits of Scully's complaint.    There



Office of the Chief Disciplinary Counsel
State Bar of Texas
Sternberg Response to Grievance
April 20, 2022
Page 2 of 6

should be no responsibility by undersigned counsel because Scully or his counsel failed to request a fully executed contract from the Seller after it was signed.   It has certainly never been the undersigned's duty to make sure Scully had a copy of the fully executed contract.   It is now attached hereto as Exhibit "A" and it is requested to be made a part of the Chief Disciplinary Counsel's file on this matter.

It is important to note that in paragraphs 5 and 6 of the SPA, the parties contractually agreed as follows:

5.  As per the invoice below (EXHIBIT C), Seller agrees to sell **151,200  boxes** of 2 count iHealth COVID 19 home test kits. The Buyer shall transfer the above-mentioned funds to the Seller's Attorney Escrow Account listed inExhibit B as per each invoice.

6.  Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D)shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer.  Title transfer shall happen contemporaneously with funds being released to Seller. Exhibit E attached hereto is incorporated herein as Seller's agreed upon Standard Operating Procedure.

Furthermore, Exhibit E of the SPA referenced immediately above and incorporated into the SPA states in relevant part as follows:

The following SOP is how Seller engages with Buyers.

1.  Buyer to provide Purchase Order to Seller.
2.  Seller's Attorney to draft and provide Buyer with Seller form of Sale and Purchase Agreement. ("SPA").
3.  Buyer and Seller execute SPA and Buyer wires Seller's Attorney the total purchase price called for in the Purchase Order.
4.  Purchase price funds released to Seller.
5.  Title Transfer to Goods to Buyer per SPA.
6.  Goods delivered to common carrier by Seller per SPA for delivery to Buyer.
7.  Seller to provide Buyer with BOL(s) and executed Bill of Sale for Goods shipped

On or about January 26, 2022 Charlton received an invoice form ASOLAR, LLC for the goods that were sold to various customers of Charlton including Safety House.

On or about February 1, 2022, undersigned counsel was directed by our client Sam Gross with Charlton to wire $219,240.00 from our IOLTA account to ASOLAR's bank as a deposit to hold the product and schedule shipping of the goods in the possession of ASOLAR and its principal Mr. Gary Weiss.      Notably, Gary Weiss and Sam Gross have a prior 20 plus year trusted

Office of the Chief Disciplinary Counsel
State Bar of Texas
Sternberg Response to Grievance
April 20, 2022
Page 3 of 6

professional working relationship with each other in the diamond industry in New York City, transacting millions of dollars in product over the years.

On or about February 4, 2022, the undersigned was directed by our client Sam Gross with Charlton to wire an additional $1,911,960.00 from our IOLTA account to ASOLAR's bank as payment in full for the product in the possession of ASOLAR and its principal Mr. Gary Weiss. Because the dollar amount was sizeable, I requested that ASOLAR use a New York licensed attorney and officer of the Court to receive the wire to hold the funds in trust until the product was confirmed to be loaded onto a common carrier.

Mr. Weiss  represented that Daphna Zekaria, Esq. was his lawyer for many years and she would serve in this capacity.   The transaction was discussed by undersigned counsel with Ms. Zekaria and her identity and credentials were confirmed by Internet searches on the State Bar of New York website, and during several telephone calls and emails between counsel.

Daphna Zekaria, Esq. is with the law firm of Sokolski & Zekaria, P.C., 1133 Broadway Ste 1001 New York, NY 10010-7993; Phone:(212) 571-408 Email:sokolski.zekaria@mindspring.com  Ms. Zakaria was admitted to the New York Bar on 07/14/1997 and has no disciplinary record according to the State Bar of New York website.  The funds were wired directly to Ms. Zekaria's IOLA account with the notation in the reference "RE Charlton Holding Trust Asolar Inv10054" See Exhibit _____ attached.

It was represented to undersigned counsel that a Manifest or Bill of Lading was provided to Charlton by ASOLAR on the letterhead of Available Movers & Storage with an address in Manhattan NY.    On or about February 8, 2022   Manifest or Bill of Lading from Available Movers & Storage along with an executed Bill of Sale to Safety House by Charlton were provided to the Buyer.  See Exhibit _____ attached.

Mr. Weiss assured the undersigned repeatedly by email, text and verbally that the product was en route and being delivered immediately.    Below is an example of one of the many assurances made by Gary Weiss to the undersigned.

**From:** Gary Weiss <wgary4109@gmail.com>
**Date:** Thursday, February 10, 2022 at 8:20 AM
**To:** sam gross <charltonholdinggroupllc@aol.com>, Manfred Sternberg <Manfred@msternberg.com>
**Subject:** order #10054

*8e*

Office of the Chief Disciplinary Counsel
State Bar of Texas
Sternberg Response to Grievance
April 20, 2022
Page 4 of 6

_____

Hi Sam & Manfred, the order is going out Today, please reconfirm Addresses and phone # of the recipients, we to avoid confusion where order were sent to the wrong places, which happened in the past, Waiting for your speedy response.
best
Gary

When Scully states that the undersigned   "Sternberg compounded his wrongful conduct by writing us an email in which represented to us the goods were being shipped and I would get them tomorrow.  Sternberg's email is attached to my grievance.   That was a lie,…"

Please reference the email that Scully is referencing that was attached to his complaint. You will note Mr. Scully is the one actually not telling the truth about these facts.   My email in relevant parts says:  "I am told the product will be arriving tomorrow."

That statement was and is 100% true. That is what I was told by Mr. Gary Weiss " the product will be arriving tomorrow."

As counsel for an out of state client, Scully and his counsel know that I have no personal knowledge about the location of Product or delivery other than what I am told by other people. Scully's statement in this regard demonstrates his willingness to stretch the true facts and goes directly to his credibility for candor and honesty in this complaint.   It is simply their effort to try to mislead this Office of the Chief Disciplinary Counsel into believing that I lied to him and his lawyer. I did not. Even their own "proof" supports that conclusion.

In fact, product described in the SPA began being delivered to Safety House at the location provided in the SPA on March 29, 2022.   The product was refused and not accepted by Safety House and it is the Seller's contention that the SPA has now been breached by the Buyer by refusing delivery of paid for product.   Because of the continued threats by Mr. Scully to every one ,from Charlton's lawyer to the product delivery driver, no future deliveries are as of this date scheduled.   A civil court resolution will be required or a resolution will need to be negotiated between the actual parties pursuant to the SPA.

The attached Declaration by Charlton President Sam Gross confirms the facts stated above and further states that ASOLAR owned over 300,000 iHealth Covid Test Kits and sold such test kits to Charlton and for which it was fully paid under ASOLAR Invoice 10054.   Mr. Gross also attests that through no fault of Charlton, and due to an unforeseen personnel and logistics problem within his company, ASOLAR was unable to deliver the product as they represented and agreed with Charlton.

8 F

Office of the Chief Disciplinary Counsel
State Bar of Texas
Sternberg Response to Grievance
April 20, 2022
Page 5 of 6

Mr. Gross further states that he honestly believed the trucks with product were en route to deliver product as Gary Weiss specifically promised several times to Sam Gross and Manfred Sternberg, but he also states he was surprised when delivery was in fact not made as represented to him by Gary Weiss and his team. Mr. Weiss admits it was his company's responsibility for filling the order, and ASOLAR is still, to this date, attempting to fill the order

The attached declaration by Sam Gross confirms the facts stated above and further states that it is Charlton's contention that the SPA between the parties contains no specific deadlines that were not complied with, and that Charlton still intends to fulfill the contract in a commercially reasonable manner.

However, now that Buyer has refused to accept the product Charlton now contends that Buyer is in default and will submit the matter to a civil court in Texas to determine next steps to resolve the issues that remain between Buyer and Seller per the SPA. He states that there was no malfeasance by Manfred Sternberg and that it was simply a commercial transaction that to date has failed to be completed, through no fault of Charlton or Manfred Sternberg

In order to create a conflict between Charlton and my client, and to create negotiation leverage to lower the price of the product, Scully not only caused a civil lawsuit to be filed against our client and others, but also against the undersigned attorney personally in Pennsylvania. The venue selection itself is indicative of the harassment sought to be inflicted on undersigned counsel despite the parties specifically agreeing to the exclusive venue provision is State District Court in Harris County Texas. (Paragraph 13). There is currently a motion to dismiss pending in Safety House's lawsuit.

This Office should know that on information and belief, shortly before filing this grievance, Scully and Lightman engaged a person to impersonate an Federal FBI agent named Russel Stoner, who Lightman says he knows. On March 1, 2022 at 10:06 am said agent called undersigned counsel with regard to this transaction and demanded my home address to personally "pay me a visit" because of the Safety House transaction. The "agent" refused to give undersigned his badge number after repeated requests.

Mr. Scully also threatened to file a grievance against the undersigned attorney if the purchase price was not returned, without even addressing the SPA. Per the terms of the SPA we followed the SPA with regard to disbursing the funds in question, there are no missed dates for compliance by the Seller, who is acting in a commercially reasonable fashion and in accord with the terms of the SPA. Hence this complaint was filed.

89

Office of the Chief Disciplinary Counsel
State Bar of Texas
Sternberg Response to Grievance
April 20, 2022
Page 6 of 6

_____

This is a simple breach of contract matter between two parties to a contract, with the purchase price for the goods deposited into my trust account as the Seller's attorney.   Now, the Buyer has Buyer's remorse and because the terms of the contract do not allow him to exit the contract, he is attacking Seller's lawyer by filing this Grievance.

I stand ready to respond to any request by your office.

Respectfully,

Manfred Sternberg

Copy to:

Mr. Dan Scully

8h

**From:** Gary Weiss <wgary4109@gmail.com>

**Date:** Friday, February 4, 2022 at 12:19 PM

**To:** sam gross <charltonholdinggroupllc@aol.com>, Manfred Sternberg <Manfred@msternberg.com>

**Subject:** Re: Inv #10054, PDF,G

Dear Sam & Manfred, Enclosed the invoice, All ready to ship Monday, with the shipping company, All info for Payment to my Attorny's Escrow account is on the invoice, kindly Escrow this account Today, so my Attorney can send me the funds Monday once all is on the trucks, my Attornys name is Dafna Zekaria ESQ., her cell # is 917-251-2218, do not hesitate to contact her .

best regards Gary Weiss



CONF EXHIBIT 129

Fri, Feb 4, 2022, 1:19 PM

CONF EXHIBIT 126

**Gary Weiss** <wgary4109@gmail.com>

to sam, Manfred

Dear Sam & Manfred, Enclosed the invoice, All ready to ship Monday, with the shipping company, All info for Payment to my Attorny's Escrow account is on the invoice, kindly Escrow this account Today, so my Attorney can send me the funds Monday once all is on the trucks, my Attornys name is Dafna Zekaria ESQ., her cell # is 917-251-2218, do not hesitate to contact her.

best regards Gary Weiss

---

Charles Holding Group, LLC. 78 Buckminster Road - Rockville Center New
York 11570 USA
Sam Even

Mr. /552123
wsmartcharlie@aol.com
Len Charles Holding Group, LLC. 78 Buckminster Road - Rockville Center
New York 11570 USA

Choose a different Customer

Edit columns

| Invoice number | 3 |
| P.O./S.O. number | 10054 |
| Invoice date | 2022-01-26 |
| Payment due | 2022-02-04 |

| Item | Quantity | Price | Amount |
|------|----------|-------|--------|
| Health Covid Test Kits · Health Covid-19 Test Kits | 355000 | 6.00 | $2,131,200.00 |
| View income account | | | — |
| Edit income account #1 15,300 units i.e. NoJo · Health Covid-19 Test Kits | 15000 | 0.00 | $0.00 |
| Tax: Select a tax | | | — |
| Edit income account #2 7009 units i.e. VNC+ · Health Covid-19 Test Kits | 7000 | 0.00 | $0.00 |
| Tax: Select a tax | | | — |
| Edit income account #3 151,200 units i.e. 99 / · Health Covid-19 Test Kits | 151200 | 0.00 | $0.00 |
| Tax: Select a tax | | | — |
| Edit income account #4. 199000 units i.e. NoJo · Health Covid-19 Test Kits | 199000 | 0.00 | $0.00 |
| Tax: Select a tax | | | — |

Add an item

| | Subtotal | $2,131,200.00 |
| | Add discount | |
| Total  USD 151—U.S. dollar | | $2,131,200.00 |

Terms / Terms

Payment of 2131200.00, Total, 0 deposit payment of 2131200.00 was made on 02-00-2022 by MANFRED STEINBERG, JR
ATTORNEY AT LAW ESQ. balance of $2131200.00 payment required, to ship. The balance will be made to law Attorneys
Escrow account, Sokoloff & Zekaria PC. 1919 Broadway, ... ... ... ...

**Gary Weiss** <wgary4109@gmail.com>

to sam, Manfred

Feb 4, 2022, 1:17 PM

Dear Sam & Manfred, Enclosed the invoice, All ready to ship Monday, with the shipping company, All info for Payment to my Attorny's Escrow account is on the invoice, kindly Escrow this account Today, so my Attorney can send me the funds Monday once all is on the trucks, my Attorney's name is Dafna Zekaria ESQ. , her cell # is 917-251-2218, do not hesitate to contact her .

best regards

Gary Weiss

CONF EXHIBIT 20e

---

Charlon Holding Group, LLC, 78 Buckminster Road - Rockville Center New York 11570 USA

**Invoice number** 3
**PO/S.O number** 1002A
**Invoice date** 2022-01-26
**Payment due** 2022-01-04

Edit Charlon Holding Group, LLC, 78 Buckminster Road - Rockville Center New York 11570 USA

Choose a different customer

Edit columns

| Items | Quantity | Price | Amount |
|---|---|---|---|
| iHealth Covid Test Kits | 355200 | 6.00 | 52,131,200.00 |
| iHealth Covid-19 Test Kits | | | |
| #1 13,200 units to NGH | 13200 | 0.00 | $0.00 |
| iHealth Covid-19 Test Kits | | | |
| #2 7000 units to VRC | 7000 | 0.00 | $0.00 |
| iHealth Covid-19 Test Kits | | | |
| #3 131,200 units to PV / | 131200 | 0.00 | $0.00 |
| iHealth Covid-19 Test Kits | | | |
| #4 189000 units to Mal | 189000 | 0.00 | $0.00 |
| iHealth Covid-19 Test Kits | | | |

Add line item

| Subtotal | 52,131,200.00 |
|---|---|
| Add discount | |
| **Total USD151 = U.S. dollar** | **52,131,200.00** |

Pay / Terms.

 payment of $52,131,200.00, Total, a deposit payment of $21,926,000.00 was made on 02-01-2022 by MANSFELD STEINBERG .JR TOFNCT AT LAW 59E, balance of $19,926,000.00 payment required, to ship. The balance will be made to the Attorney non escrow account, Dafna Zekaria & Zekaria PC, 1123 Broadway, Suite 1001, New York, NY 10010, 1-212-271-4060 1 Account # 085562862 Routing # 473000217, Escrow account at JP CHASE account, Sokolski & Zekaria PC, Atention Dafna Zekaria k, Tel 917-251-2218.