# EXHIBIT "B"

GOLDBERG SEGALLA LLP                   *Attorneys for Defendants*
BY:  SETH L. LAVER                     *Manfred Sternberg, Esquire and*
ATTORNEY ID NO:  94518                 *Manfred Sternberg & Associates*
1700 MARKET STREET, SUITE 1418
PHILADELPHIA, PA 19103-3907
T:  267-519-6800
F:  267-519-6801
Email:  slaver@goldbergsegalla.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM | : : | |
| *Plaintiff,* | : | |
| v. | : | CIVIL ACTION |
| Manfred Sternberg, Esquire; Manfred Sternberg & Associates, PC; Charlton Holdings Group, LLC; and Samuel Gross, | : : : | No. 2022-CV-00688(JMY) |
| *Defendants,* | : | |
| v. | : | |
| Gary Weiss | : | |
| *Third Party Defendant.* | : | |

## ANSWERS AND OBJECTIONS OF DEFENDANTS MANFRED STERNBERG, ESQ AND MANFRED STERNBERG & ASSOCIATES, PC TO PLAINTIFF'S REQUESTS FOR ADMISSION

Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC (collectively, the "Sternberg Defendants" or "Answering Defendants"), by and through their undersigned counsel Goldberg Segalla LLP, hereby respond to the Requests for Admission of Plaintiff American Environmental, Enterprises, Inc. D/B/A THESAFETYHOUSE.com ("Plaintiff"), as follows:

### GENERAL OBJECTIONS

Answering Defendants assert the following objections to Plaintiff's Requests for Admission. Each such objection is incorporated by reference into each of Answering Defendants' responses.

1.      Answering Defendants object to the instructions, definitions and requests (collectively, the "Requests") to the extent they seek to impose upon Answering Defendants obligations greater than those imposed by the applicable Rules of Civil Procedure, the rules of this Court, or other applicable law.

2.      Answering Defendants object to the Requests to the extent they require them to provide the same information more than once on the ground that such duplicative disclosure is unduly burdensome.

3.      Answering Defendants object to the Requests to the extent they seek privileged or otherwise protected communications, including without limitation, information protected by the attorney-client privilege, the work-product doctrine, or to the extent they seek proprietary, confidential, or sensitive commercial information.

4.      Answering Defendants object to the Requests to the extent that any Interrogatory is vague, ambiguous, unclear, or otherwise unintelligible.

5.      Answering Defendants object to the Requests to the extent that they seek information not relevant to issues raised in this action and not reasonably calculated to lead to the discovery of admissible evidence. Nothing herein shall be construed (a) as an admission by Answering Defendants respecting the admissibility or relevance of any fact or document, or (b) as an admission of the truth or accuracy of any characterization, document, or information or any kind sought by the Requests.

6.      Answering Defendants object to the Requests to the extent that they are overly broad, unduly burdensome, or oppressive.

7.      Answering Defendants object to the Requests to the extent that any Interrogatory seeks information that is protected from discovery under the Rules of Civil Procedure, the rules of this Court, or other applicable law.

8.      Answering Defendants object to the Requests to the extent that any Interrogatory assumes facts not admitted and is argumentative.

9.      Answering Defendants' responses to the Requests are made without in any way waiving or intending to waive but, rather, to the contrary, preserving, and intending to preserve the following:

   a.  all questions as to the confidentiality, relevance, materiality, privilege, and admissibility of evidence for any purpose of the responses or documents, or the subject matter thereof, in any aspect of this or any other action, arbitration, proceeding or investigation;
   b.  the right to objects on any ground to the use of the response or documents, or the subject matter thereof, in any aspect of this or any other action, arbitration, proceeding or investigation;
   c.  the right to object at any time to any other Requests; and
   d.  the right at any time to revise, supplement, correct, add to or clarify this response.

10.     Answering Defendants object to the Requests to the extent that any Interrogatory does not set forth any specific timeframe and thus is overly broad, burdensome, and oppressive.

11.     Answering Defendants object to the Requests to the extent that any Interrogatory calls for information not in the answering party's possession, custody or control.

12.     Answering Defendants object to the Requests to the extent that any Interrogatory calls for information that is in the possession of the requesting party or that is no less available to the requesting party than to Answering Defendants.

## REQUESTS FOR ADMISSION

1.      At all times relevant to the Complaint, Sternberg was an attorney in good standing and duly licensed to practice law in Texas.

**RESPONSE:** Admitted.

2.      At all times relevant to the Complaint, Zekaria was an attorney in good standing and duly licensed to practice law in New York.

**RESPONSE:** Answering Defendants lack knowledge or information sufficient to admit or deny this request. To the extent that a substantive response is required, denied.

3.      On or about January 21, 2022, Plaintiff agreed to purchase 151,200 iHealth Covid-19 Antigen Rapid two-pack test kits (the "Covid Test Kits") for a total payment of $1,965,600.00 (the "Purchase Price").

**RESPONSE:** Admitted that Plaintiff agreed to purchase Covid Test Kits from Gross.

4.      A true and correct copy of Plaintiff's Purchase Order for the Test Kits is attached as the first page of Exhibit 1 to Plaintiff's Complaint [ECF 80, at page 35 of the 56 page pdf].

**RESPONSE:** Answering Defendants lack knowledge or information sufficient to admit or deny this request. To the extent that a substantive response is required, denied.

5.      A true and correct copy of Plaintiff's Purchase Order for the Test Kits was marked as Sternberg Deposition Exhibit 14 at the Sternberg Deposition.

**RESPONSE:** Answering Defendants lack knowledge or information sufficient to admit or deny this request. To the extent that a substantive response is required, denied.

6.      The Purchase Order is dated January 21, 2022.

**RESPONSE:** Admitted that the document contains a date of January 21, 2022.

7.      The Purchase Order clearly and unambiguously states a "Receive By" date of January 25, 2022.

**RESPONSE:** Denied as stated. This document speaks for itself and any characterization thereof is denied.

8.      The "Vendor" stated in the Plaintiff's Purchase Order is as follows: "(713) 824-9170, C/O Manfred Sternberg, ESQ., Charlton Holding Group, LLC, 78 Buckminster Road, Rockville Centre NY 11570"

**RESPONSE:** Admitted.

9.      The "(713) 824-9170" phone number set forth in the "Vendor" section of Plaintiff's Purchase Order is the phone number for Sternberg.

**RESPONSE:** Admitted that the Sternberg Defendants maintain that phone number.

10.      The "78 Buckminster Road, Rockville Centre NY 11570" address set forth in the "Vendor" section of Plaintiff's Purchase Order is the address for Gross.

**RESPONSE:** Admitted that Gross maintained that address.

11.      CHG is an entity with no assets, that was undercapitalized, and that is owned and controlled by defendant Samuel Gross.

**RESPONSE:** Answering Defendants lack knowledge or information sufficient to admit or deny this request. To the extent that a substantive response is required, denied.

12.      Gross, starting in 2014, served at least 18 months in a New York State prison based upon convictions for Grand Larceny and Scheme to Defraud.

**RESPONSE:** Answering Defendants lack knowledge or information sufficient to admit or deny this request. To the extent that a substantive response is required, denied.

13.      Gross and Sternberg represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States, and that Plaintiff had to wire the money to them asap in order to secure Plaintiff's position in the queue for purposes of shipping the Test Kits.

**RESPONSE:** Denied.

14.      To induce Plaintiff to make the purchase of the Test Kits Gross and Sternberg represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States, and that Plaintiff had to wire the money to them asap in order to secure Plaintiff's position in the queue for purposes of shipping the Test Kits.

**RESPONSE:** Denied.

15.      The Sale and Purchase Agreement used for the Plaintiff's Purchase Order was drafted by Sternberg.

**RESPONSE:** Denied as stated. The Sternberg Defendants edited/revised/drafted a portion of the subject document.

16.      A true and correct copy of the SPA is attached as Exhibit 1 to the Complaint, right after the Purchase Order. [ECF 80, at pages 36-43 of the 56 page pdf].

**RESPONSE:** Answering Defendants lack knowledge or information sufficient to admit or deny this request. To the extent that a substantive response is required, denied.

17.     A true and correct copy of the SPA was marked as Sternberg Deposition Exhibit 4 at the Sternberg Deposition.

**RESPONSE:** Answering Defendants lack knowledge or information sufficient to admit or deny this request. To the extent that a substantive response is required, denied. By way of further answer, Answering Defendants have no reason to believe that this was not the document marked during the subject deposition.

18.     As late as March 24, 2022, Sternberg did not have a copy of the fully executed SPA, as he admitted in his 3/24/22 email Sternberg sent to Gross, a copy of which Sternberg 3/24/22 email was marked as Sternberg Deposition Exhibit 5 at the Sternberg Deposition.

**RESPONSE:** Admitted that the Sternberg Defendants did not have an executed copy of the SPA on March 24, 2022.

19.     Sternberg was requested by Plaintiff to produce, but failed to produce, the documents and metadata showing when the SPA was signed, and when and how the SPA was delivered by Gross to Sternberg.

**RESPONSE:** Denied.

20.     Instead of making the Purchase Price payment directly to Seller, the SPA provides for SAFETY HOUSE as Purchaser to pay the $1,965,600.00 Purchase Price into the Sternberg attorney escrow account, to be disbursed pursuant to the terms and conditions of the SPA.

**RESPONSE:** Denied. This document speaks for itself.

21.     Plaintiff wired the $1,965,600.00 Purchase Price into the Sternberg attorney escrow account on January 21, 2022.

**RESPONSE:** Denied. The wire was into the Trust account.

22.     When Plaintiff wired the $1,965,600.00 Purchase Price into the Sternberg attorney escrow account on January 21, 2022, neither Gross nor Sternberg owned or actually had possession of the 151,200 Test Kits purchased by Plaintiff.

**RESPONSE:** Admitted only that the Sternberg Defendants never had possession of any test kits purchased by Plaintiff, nor did they represent to anyone otherwise. Denied that Plaintiff wired Purchase Price into any escrow account, as it was wired into the Trust account.

23.     At no time, from January 21, 2022, through February 23, 2022, when Plaintiff filed the initial Complaint in this lawsuit, did Gross or Sternberg own or actually have possession of the 151,200 Test Kits purchased by Plaintiff.

**RESPONSE:** See prior response.

24.     At no time, from January 21, 2022, through the present, did Gross or Sternberg own

or actually have possession of the 151,200 Test Kits purchased by Plaintiff.

      **RESPONSE:** See prior response.

      25.    The first Bill of Sale delivered by Gross and/or Sternberg to Plaintiff stated that the transfer of the Test Kits to Plaintiff "is effective as of January 21, 2022" (the "1/21/22 Bill of Sale").

      **RESPONSE:** Denied. This document speaks for itself. Any characterization thereof is denied.

      26.    A true and correct copy of the 1/21/22 Bill of Sale was used by Sternberg and Gross in this case, and was attached as Exhibit D to the Motion to Dismiss made by Sternberg and Gross in this case on April 1, 2022 [ECF 13-4, page 9 of 10].

      **RESPONSE:** Denied. This document speaks for itself. Any characterization thereof is denied.

      27.    A true and correct copy of the 1/21/22 Bill of Sale that was attached as Exhibit D to the Motion to Dismiss made by Sternberg and Gross in this case on April 1, 2022 [ECF 13].

      **RESPONSE:** Denied. This document speaks for itself. Any characterization thereof is denied. By way of further answer, Answering Defendants have no reason to believe that this is not a true and correct copy of the subject document.

      28.    When the 1/21/22 Bill of Sale was delivered to Plaintiff, neither Gross nor Sternberg owned or actually had possession of the 151,200 Test Kits purchased by Plaintiff.

      **RESPONSE:** Admitted only that the Sternberg Defendants never had possession of any test kits purchased by Plaintiff, nor did they represent to anyone otherwise.

      29.    The SPA states that CHG is the Seller and Plaintiff is the Buyer, but the SPA also states that Sternberg was the Escrow Agent for the Plaintiff's $1,965,600.00 Purchase Price for the test kits that were the subject of Plaintiff's Purchase Order.

      **RESPONSE:** Denied. This document speaks for itself. Any characterization thereof is denied.

      30.    Paragraph 6 of the SPA clearly states as follows (emphasis added): "Once the transferred funds [the Purchase Price] have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. **Title transfer shall happen contemporaneously with the funds being released to Seller."**

      **RESPONSE:** Denied. This document speaks for itself. Any characterization thereof is denied.

      31.    Sternberg's role as the Escrow Agent under the SPA was to make sure that the funds were not released to Seller unless and until TSH as Buyer was assured of getting delivery of the

purchased Test Kits, i.e., by making sure that a Bill of Sale for the Test Kits and a Bill of Lading for the Test Kits from a common carrier first were delivered to Plaintiff as Buyer "contemporaneously with the funds being released to Seller."

**RESPONSE:** Denied. The Sternberg Defendants served as counsel for CHG.

32.     Sternberg and Gross failed to deliver or cause to be delivered to Plaintiff, a Bill of Lading from a common carrier for the 151,200 Test Kits purchased by Plaintiff, before Sternberg released most of Plaintiff's funds from the Sternberg attorney escrow account.

**RESPONSE:** Denied.

33.     Sternberg and Gross failed to deliver or cause to be delivered to Plaintiff, a Bill of Lading from a common carrier for the 151,200 Test Kits purchased by Plaintiff, at any time.

**RESPONSE:** Denied.

34.     Title transfer to the Test Kits [to Plaintiff] did not happen contemporaneously with Sternberg's release of the funds from the Sternberg attorney escrow account that Plaintiff wire-transferred to Sternberg.

**RESPONSE:** Denied.

35.     On January 19, 2022, VRC wired $2,268,000.00 to Sternberg's attorney escrow trust account, and on January 20, 2022, VRC wired $181,440.00 to Sternberg's attorney escrow trust account, for a total of $2,449,440.00, for their purchase of a total of 204,120 Test Kits from Gross and Sternberg.

**RESPONSE:** Admitted that CHG and VRC entered into an agreement separate and apart from any agreement between CHG and Plaintiff.

36.     Between January 19 and January 21, 2022, Sternberg received wire-transfers from Plaintiff and VRC totaling $4,415,040.00 for purchases of Test Kits, that were made into Sternberg's attorney escrow account.

**RESPONSE:** Admitted that CHG and VRC entered into an agreement separate and apart from any agreement between CHG and Plaintiff.

37.     Gross and Sternberg failed to deliver the 151,200 Test Kits purchased by Plaintiff.

**RESPONSE:** Denied. The Sternberg Defendants never agreed to provide Plaintiff with any test kits.

38.     Gross and Sternberg failed to refund to Plaintiff the $1,965,600.00 paid by plaintiff and wired to Sternberg for Plaintiff's purchase of the 151,200 Test Kits.

**RESPONSE:** Denied. The Sternberg Defendants were not obligated to provide Plaintiff with anything. By way of further answer, the Sternberg Defendants relied upon the instructions and representations of their client.

39.     Gross and Sternberg failed to deliver the 204,120 Test Kits purchased by VRC.

**RESPONSE:** Denied. The Sternberg Defendants had no obligation to provide VRC with anything.

40.     Gross and Sternberg failed to refund to VRC the $2,449,440.00 paid by plaintiff and wired to Sternberg for Plaintiff's purchase of the 204,120 Test Kits.

**RESPONSE:** Denied. The Sternberg Defendants were not obligated to provide VRC with anything. By way of further answer, the Sternberg Defendants relied upon the instructions and representations of their client.

41.     Sternberg made the following wire-transfers totaling $2,571,200.00 from the Sternberg attorney escrow account into which Plaintiff wired the $1,976,600.00 Purchase Price and into which VRC wire-transferred a total of $2,449,440.00: (a) The sum of $219,240.00, wire-transferred by Sternberg directly to Weiss on 2/1/22; and (b) The sum of $1,911,960.00, wire-transferred by Sternberg to the Zekaria attorney escrow account on 2/4/22; and (c) The sum of $250,000.00, wire-transferred by Sternberg to the Zekaria attorney escrow account on 2/15/22; and (d) The sum of $190,000.00, wire-transferred by Sternberg to the Zekaria attorney escrow account on 2/25/22.

**RESPONSE:** Denied. These wire transfers are reflected in documents that speak for themselves. Any characterization thereof is denied.

42.     Sternberg made the wire transfers set forth in the preceding request, totaling $2,571,200.00, out of the Sternberg attorney escrow account, into which Plaintiff and VRC made their wire transfers that totaled $4,415,440.00 (leaving a balance of $1,842,840.00 paid by Plaintiff and VRC into the Sternberg trust account, but not disbursed by Sternberg to Weiss and Zekaria).

**RESPONSE:** Denied. These wire transfers are reflected in documents that speak for themselves. Any characterization thereof is denied.

43.     Sternberg Deposition Exhibit 21 is a true and correct copy of a text authored by Gross on September 20, 2023, in which he states an "end balance [of] $1,876,003.89 (one million eight hundred seventy six)".

**RESPONSE:** Denied. This document speaks for itself. Any characterization thereof is denied.

44.     The "end balance [of] $1,876,003.89" to which Gross referred in Sternberg Deposition Exhibit 21 is the ending balance that Gross stated that he and Sternberg still had in their possession or control as of 9/20/23.

**RESPONSE:** Answering Defendants lack knowledge or information sufficient to admit or deny this request. To the extent that a substantive response is required, denied.

45.     When Sternberg released the sum of $219,240.00 from his attorney escrow account to Weiss on February 1, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff.

**RESPONSE:** Denied. By way of further answer, the Sternberg Defendants never had possession of any test kits purchased by Plaintiff, and never suggested otherwise to anyone.

46.     When Sternberg released the sum of $1,911,960.00 from his attorney escrow account to Zekaria on February 4, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff.

**RESPONSE:** Denied. By way of further answer, the Sternberg Defendants never had possession of any test kits purchased by Plaintiff, and never suggested otherwise to anyone.

47.     Weiss claims that he purchased 365,700 Test Kits from "Mask & Eldiven."

**RESPONSE:** Answering Defendants are unable to admit or deny this request. See responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

48.     The only document that Weiss produced that Weiss claims evidences his purchase of 365,700 Test Kits from "Mask & Eldiven" was a single page document dated February 6, 2022, purporting to be from "Mask & Eldiven, 2 W 47st, Room 1005, New York, New York 10036" (the "2/6/22 M&E document").

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

49.     A true and correct copy of the 2/6/22 M&E document was marked as Sternberg Deposition Exhibit 28 at the Sternberg Deposition, and also marked as Weiss Deposition Exhibit 5 at the Weiss Deposition.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

50.     The address set forth for Mask & Eldiven in the 2/6/22 document -- 2 W 47st, Room 1005, New York, New York 10036 – was at the time a vacant building.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. See responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

51.     The address set forth for Mask & Eldiven in the 2/6/22 document -- 2 W 47st, Room 1005, New York, New York 10036 – was for a building that was closed prior to 2020, and a demolition permit was filed for the building in October of 2019.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

52.     Before the 2 W 47st building was closed, Room 1005 was occupied for several years by Louis Cicero Jewelers and was not occupied or used at all by Mask & Eldiven.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. See responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

53.     Weiss admitted that he does not have the full names of any of the principals of Mask & Eldiven to whom he claims he paid $1,810,660.00 for the Test Kits, and also that he has no contact information for Mask & Eldiven other than what was set forth in the 2/6/22 M&E document.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. See responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

54.     Weiss has no documents evidencing his claim that he paid $1,810,660.00 to Mask & Elviden for the Test Kits, other than the 2/6/22 M&E document, and no documents to evidence his source of the $1,810,660.00 he claims he paid them.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

55.     Sternberg's release of the sum of $219,240.00 from his attorney escrow account to Weiss on February 1, 2022, was prior to the date of Weiss's purported 2/6/22 purchase of Test Kits, that was evidenced by the 2/6/22 M&E document.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

56.     Sternberg's release of the sum of $1,911,960.00 from his attorney escrow account to Zekaria on February 4, 2022, was prior to the date of Weiss's purported 2/6/22 purchase of Test Kits, that was evidenced by the 2/6/22 M&E document.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

57.     Neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff, either on 1/21/22, or on 2/1/22, or on 2/4/22, or on 2/15/22, or on 2/25/22, or to date.

**RESPONSE:** Admitted only that the Sternberg Defendants never had possession of any test kits purchased by Plaintiff and did not suggest otherwise to anyone.

58.     When Sternberg released the sum of $250,000.00 from his attorney escrow account to Zekaria on February 15, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff.

**RESPONSE:** See prior response.

10

59.     When Sternberg released the sum of $190,000.00 from his attorney escrow account to Zekaria on February 25, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff.

**RESPONSE:** See prior response.

60.     Sternberg as an Escrow Agent under the SPA owed a fiduciary duty to both Plaintiff as Buyer and Gross as Seller.

**RESPONSE:** Denied.

61.     Sternberg as an Escrow Agent under the SPA owed a fiduciary duty to both Plaintiff as Buyer and Gross as Seller, to make disbursement of the escrow funds pursuant to the terms of the SPA.

**RESPONSE:** Denied.

62.     Sternberg as an Escrow Agent under the SPA owed a fiduciary duty to both Plaintiff as Buyer and Gross as Seller, to make sure that "title transfer" to the Goods purchased by Plaintiff happened "contemporaneously with the funds [paid by Plaintiff] being released to Seller."

**RESPONSE:** Denied.

63.     Sternberg failed to undertake any independent investigation to confirm that "title transfer to the Goods purchased by Plaintiff happened "contemporaneously with the funds [paid by Plaintiff] being released to Seller" (other than relying upon what Gross and/or Weiss told him).

**RESPONSE:** Denied.

64.     Weiss sent an invoice dated January 26, 2022, purporting to sell to CHG a total of 355,200 Test Kits (the 1/26/22 invoice").

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

65.     A true and correct copy of 1/26/22 invoice sent by Weiss to Gross was marked as Weiss Deposition Exhibit 6, at the Weiss Deposition.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

66.     A true and correct copy of 1/26/22 invoice sent by Weiss to Gross was attached as Exhibit "B" to the April 24, 2022 letter authored by Sternberg and submitted to the Office of the Chief Disciplinary Counsel for the State Bar of Texas.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

67.     A true and correct copy of the April 24, 2022 letter authored by Sternberg and submitted to the Office of the Chief Disciplinary Counsel for the State Bar of Texas, was marked as Sternberg Deposition Exhibit 6 at the Sternberg Deposition.

**RESPONSE:** This document refers to a writing that speaks for itself. Any characterization thereof is denied. By way of further answer, Answering Defendants have no reason to believe that this is not a true and correct copy of the subject document.

68.     Sternberg prepared an Affidavit for Weiss to sign (a copy of which draft Weiss Affidavit was marked as Weiss Deposition Exhibit 10 at the Weiss Deposition), that Sternberg wanted to submit as part of Sternberg's submission to the Office of the Chief Disciplinary Counsel for the State Bar of Texas, but Weiss refused to sign the draft Affidavit prepared by Sternberg because it contained several statements that Weiss stated were false and not correct.

**RESPONSE:** Admitted that the Sternberg Defendants prepared an affidavit for Weiss to review as part of a submission to the State Bar of Texas.

69.     Weiss also stated that the Affidavit that Sternberg prepared for Gross to sign (a copy of which draft Gross Affidavit was marked as Weiss Deposition Exhibit 11 at the Weiss Deposition), which Gross Affidavit Sternberg in fact submitted as part of Sternberg's 4/24/22 submission to the Office of the Chief Disciplinary Counsel for the State Bar of Texas (Sternberg Deposition Exhibit 6), contained several statements that Weiss stated were false and not correct.

**RESPONSE:** Admitted that the Sternberg Defendants prepared an affidavit for Weiss to review as part of a submission to the State Bar of Texas.

70.     A true and correct copy of the 1/26/22 invoice sent by Weiss to Gross, purporting to sell to CHG a total of 355,200 Test Kits, was marked as Weiss Deposition Exhibit 6 at the Weiss Deposition.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

71.     The 1/26/22 invoice prepared by Weiss showed 5 buyers for the Test Kits, including Plaintiff and VRC.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

72.     Weiss has stated that Gross and Sternberg "instructed [him] to make an invoice with Fraudulent intentions, as there are no 5 buyers as they told me, with the detail they instructed me to make the invoice" -- this was documented by Weiss in an email he sent to his attorney on July19, 2023,

a true and correct copy of which 7/19/23 email was marked as Weiss Deposition Exhibit 9 at the Weiss Deposition.

**RESPONSE:** This request refers to a document that speaks for itself. Any characterization thereof is denied.

73.     When Weiss sent his 1/26/22 invoice to Gross, Weiss did not own or have possession of any Test Kits, let alone the 151,200 Test Kits purchased by Plaintiff.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

74.     When Weiss sent his 1/26/22 invoice to Gross, Weiss did not own or have possession of any Test Kits, let alone the 204,120 Test Kits purchased by VRC from Gross and/or Sternberg.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

75.     Sternberg failed to undertake any independent investigation or otherwise perform any due diligence to confirm that Gross or Weiss had purchased or had ownership of the 151,200 Test Kits purchased by Plaintiff, let alone the 355,200 Test Kits, that were the subject of Weiss's 1/26/22 invoice, before Sternberg released from the Sternberg attorney escrow account, most of Plaintiff's Purchase Price and monies also sent to Sternberg's trust account by VRC.

**RESPONSE:** Denied.

76.     Sternberg failed to undertake any independent investigation or otherwise perform any due diligence to confirm that "title transfer" to the Goods purchased by Plaintiff happened "contemporaneously with the funds [paid by Plaintiff] being released to Seller."

**RESPONSE:** Denied.

77.     ASD is an entity with no assets, that that was undercapitalized, and that is owned and controlled by defendant Gary Weiss.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. See responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

78.     Gross wrote texts to Plaintiff on or about February 15, 2022, in which Gross stated that Plaintiff could cancel the purchase and obtain a refund of the Purchase Price.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

79.    True and correct copies of the texts that Gross wrote to Plaintiff on or about February 15, 2022, in which Gross stated that Plaintiff could cancel the purchase and obtain a refund of the Purchase Price, accompany these requests and are marked as Exhibits RFA-1 through RFA-4.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves. Moreover, see responses to Plaintiff's Requests for Admissions provided by Defendant Weiss.

80.    The document marked as Sternberg Deposition Exhibit 9, at the Sternberg Deposition, is an accurate transcription of the texts that Gross wrote to Plaintiff, on or about February 15, 2022, in which Gross stated that Plaintiff could cancel the purchase and obtain a refund of the Purchase Price.

**RESPONSE:** Answering Defendants are unable to admit or deny this request. Any and all documents speak for themselves.

81.    In Sternberg Deposition Exhibit 10, Sternberg informed Plaintiffs' attorney on February 15, 2022, as follows: "I am told the product will be arriving tomorrow at the location provided by your client. Let me know when your client is in possession of his product."

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied. Otherwise, admitted.

82.    On February 16, 2022, Plaintiff emailed a letter to Gross in which Plaintiff informed Gross as follows: "Yesterday [i.e., 2/15/22] your attorney Manfred Sternberg told my attorney, Gary Lightman, that the goods for my purchase order #18315 had been shipped and should be received at my warehouse in Glen Mills, PA, today [2/16/22]. On February 16, 2022, But as of today, February 16, 2020, I have not received a Bill of Lading (BOL) or any other shipping documents pertaining to this shipment. Please email me the BOL and any relevant shipping documents that identify the shipment and confirms the delivery of all goods I ordered. I NEED ALL SHIPPING DOCUMENTS TODAY."

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied.

83.    A true and correct copy of Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition.

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied.

84.    Neither Gross nor Sternberg sent Plaintiff the Bill of Lading or other shipping documents pertaining to the alleged shipment, in response to Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg, and was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition.

**RESPONSE:** Denied.

85.     Neither Gross nor Sternberg responded to Plaintiff's 2/16/22 email (that was sent to and received by Gross and Sternberg, and was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition), by informing Plaintiff that the goods were not shipped as represented.

**RESPONSE:** Denied.

86.     The Test Kits that were referenced in Plaintiff's 2/16/22 email (that was sent to and received by Gross and Sternberg, and was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition.), in fact were not delivered to Plaintiff, either by 2/16/22, or any time in February 2022.

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied. By way of further answer, upon information and belief CHG did not deliver or cause to be delivered test kits to Plaintiff in February 2022.

87.     On February 16, 2022, Plaintiff sent an email to Gross and Sternberg, canceling the Plaintiff's purchase transaction and demanding the return of the $2 million Purchase Price that Plaintiff paid for the Test Kits that were never delivered.

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied.

88.     A true and correct copy of Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg canceling the purchase and demanding a full refund was marked as Sternberg Deposition Exhibit 13 at the Sternberg Deposition.

**RESPONSE:** Denied.

89.     Plaintiff through its counsel also notified Sternberg on February 15, 2022, not to make any further disbursements from Sternberg's attorney escrow account, in a phone call and then an email exchange, that was memorialized as Sternberg Deposition Exhibit 11 at the Sternberg Deposition.

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied. By way of further answer, denied.

90.     Sternberg continued to make disbursements from the Sternberg trust account on and after 2/15/22, even after being put on notice not to make any further disbursements from his trust account.

**RESPONSE:** Denied.

91.     Section 11 of the SPA states in part as follows: "…. if Buyer in any way attempts to circumvent Seller, Seller will be entitled to liquidated damages of $50,000 from Buyer, or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer."

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied.

92.     The SPA does not allow Gross and Sternberg to retain the $1,965,600.00 Purchase Price paid by Plaintiff for the Test Kits, and also not make delivery of the Test Kits to Plaintiff.

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied. By way of further answer, the Sternberg Defendants never agreed to nor were they otherwise obligated to provide Plaintiff with test kits.

93.     There is no agreement between Plaintiff, on the one hand, and Gross and Sternberg, on the other hand, that would allow Gross and Sternberg to retain the $1,965,600.00 Purchase Price paid by Plaintiff for the Test Kits, and also not make delivery of the Test Kits to Plaintiff.

**RESPONSE:** Admitted.

94.     The document marked as Sternberg Deposition Exhibit 32 at the Sternberg Deposition, is a true and correct copy of a text sent by Sternberg to Gross, shortly after February 25, 2022.

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied. By way of further answer, Answering Defendants have no reason to believe that this is not a true and correct copy of the subject document.

95.     In Sternberg Deposition Exhibit 32, Stenberg states: "he [referring to Weiss] is buying himself and his lawyer a bunch of bad pr and claims of fraud and wire fraud."

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied.

96.     In Sternberg Deposition Exhibit 32, Stenberg states: "especially last Friday when he [referring to Weiss] said less than 45 min away and I scrambled to send him another $190k [referring to the $190,000.00 wire transfer made by Sternberg on Friday, 2/25/22 to Zekaria].

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied.

97.     In Sternberg Deposition Exhibit 32, Stenberg writes: "That [referring to Wiess's claim that he needed another $190,000 in order to deliver the Test Kits] is classic fraud in the inducement and can only be cured by delivery or return of all money."

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied.

98.     Weiss filed an Answer to Plaintiff's Complaint that Weiss filed under oath on September 12, 2023 [ECF 105], subject to the penalties for perjury.

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied.

99.     Deposition Exhibit Weiss-7 is a true and correct copy of the Answer to Plaintiff's Complaint that Weiss filed under oath on September 12, 2023 [ECF 105], subject to the penalties for perjury.

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied. By way of further answer, the Sternberg Defendants have no reason to suspect that this is not a "true and correct copy" of the suggested document.

100.    In the Answer to Plaintiff's Complaint that Weiss filed under oath on September 12, 2023 [ECF 105], subject to the penalties for perjury, Weiss claimed that: (a) he took delivery of 355,200 Test Kits on February 7, 2022, (b) but he could not deliver the Test Kits because Gross and Sternberg failed to supply him with Bills of Lading, and (c) he then had the Test Kits transported to and held in storage for about two weeks by Available Moving & Storage ("AMS"), and (d) he "repeatedly requested the Bill of Lading, and requisite details, from the Gross and Sternberg Defendants" without success, and (e) "still having not received the Bill of Lading, the Weiss Defendants made arrangements to retrieve the test kits form the transport facility" [AMS], and (f) "upon arrival at the transport facility, the Weiss Defendants learned that the test kits were no longer on the truck and that they could not be located." [ECF 105, Weiss Answer to Plaintiff's Complaint, at ¶¶ 172 – 183].

**RESPONSE:** This document speaks for itself. Any characterization thereof is denied.

101.    Weiss admitted in his Weiss Deposition, that he did not confront AMS when he learned (as he claimed) that "the test kits were no longer on the truck and that they could not be located" and Weiss also admitted that he did not contact the police or make a police report about the missing Test Kits, and that he also did not notify Gross or Sternberg about the alleged disappearance of the Test Kits.

**RESPONSE:** Weiss' deposition transcript is a document that speaks for itself. Any characterization thereof is denied. By way of further answer, see responses to Requests for Admissions provided by Defendant Weiss.

102. In the Weiss Deposition conducted under oath on February 16, 2024, Weiss subsequently made a claim inconsistent with the claims he made in his 9/12/23 Answer filed in Court in this case [ECF 105] – in the Weiss Deposition Weiss claimed under oath that he was able to pick up the Test Kits from AMS, but when he brought the truck back to New Jersey and checked the Test Kits later that morning, Weiss claims he discovered that someone had taken all of 151,200 Test Kits and instead replaced the Test Kits with rice in the Test Kit boxes.

**RESPONSE:** Weiss' deposition transcript is a document that speaks for itself. Any characterization thereof is denied. By way of further answer, see responses to Requests for Admissions provided by Defendant Weiss.

103.    Weiss admitted in his Weiss Deposition, that he did not confront AMS when he learned (as he claimed) that the Test Kits had been removed from their boxes and replaced with rice, and Weiss also admitted that he did not contact the police or make a police report about the missing Test Kits being replaced with rice, and also admits that he did not notify Gross or Sternberg about the alleged Test Kits being replaced with rice.

**RESPONSE:** Weiss' deposition transcript is a document that speaks for itself. Any characterization thereof is denied. By way of further answer, see responses to Requests for Admissions provided by Defendant Weiss.

104.    Weiss admitted in his Weiss Deposition, that he did not take any pictures of the Test Kit boxes being replaced with rice, or otherwise create any documents to evidence this claim.

**RESPONSE:** Weiss' deposition transcript is a document that speaks for itself. Any characterization thereof is denied. By way of further answer, see responses to Requests for Admissions provided by Defendant Weiss.

105.    Neither Weiss nor ASD ever provided a Manifest of Bill of Lading to Gross or CHG.

**RESPONSE:** Answering Defendants cannot admit or deny this request. By way of further answer, see responses to Requests for Admissions provided by Defendant Weiss.

106.    The picture marked as RFA-5, a copy of which accompanies these requests, is picture that Weiss took of boxes on a truck, that Weiss claimed were the Test Kits purchased by Plaintiff.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied. By way of further answer, see responses to Requests for Admissions provided by Defendant Weiss.

107.    The picture marked as RFA-5, is a picture of less than all of the 151,200 Test Kits that Plaintiff purchased.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied. By way of further answer, see responses to Requests for Admissions provided by Defendant Weiss.

108.    On May 31, 2022, Gross wrote an email to Sternberg in which Gross stated that Sternberg still had $400,000 or so left of the funds transferred to Sternberg.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

109.    A true and correct copy of the 5/31/22 email from Gross to Sternberg was marked as Sternberg Deposition Exhibit 23 at the Sternberg Deposition.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

110.    VRC's purchase of their Test Kits was pursuant to a Sales and Purchase Agreement (the "VRC SPA") that contained terms and conditions similar to the SPA used for Plaintiff's purchase.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

111.    Paragraph 6 of the VRC SPA clearly states as follows (emphasis added): "Once the transferred funds [the Purchase Price] have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. **Title transfer shall happen contemporaneously with the funds being released to Seller."**

18

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

112.    VRC never received the 204,120 Test Kits that were purchased from Gross and/or Sternberg.

**RESPONSE:** Denied. The Sternberg Defendants had no obligation to provide VRC with test kits.

113.    Gross and Sternberg did not refund to VRC, any of the $2,449,440, that VRC transferred into the Sternberg attorney escrow account for VRC's purchase of 204,120 Test Kits from Gross and Sternberg.

**RESPONSE:** Denied. The Sternberg Defendants had no obligation to provide VRC with test kits and/or any refund.

114.    On March 1, 2022, William Berman, Esquire, attorneys for VRC, sent an email to Zekaria, in which (a) Berman informed Zekaria that after VRC transferred $2,449,440 to Sternberg's trust account, "Sternberg has advised that he transferred the funds to [Zekaria's] trust account" and (b) that the funds paid by VRC and deposited with Sternberg in trust were "not to be released until a Bill of Lading was issued" and Berman also states that (c) his review of the history has "led our group to conclude that this was a fraudulent transaction" and that (d) Berman hopes that Zekaria "can explain that it was not and have the funds returned immediately" and (e) that "there has been no delivery of any product to [his] client" and (f) Berman tells Zekaria that his client has made "previous demands for the return of the funds."

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

115.    A true and correct copy of the 3/1/22 email from Berman to Zekaria in which those statements were made is included as part of the document marked as Sternberg Deposition Exhibit 38 at the Sternberg Deposition.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

116.    Zekaria forwarded Berman's 3/1/22 email to Sternberg and asked Sternberg to "address this."

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

117.    A true and correct copy of the 3/1/22 email from Zekaria forwarding Berman's 3/1/22 email to Sternberg is included as part of the document marked as Sternberg Deposition Exhibit 38 at the Sternberg Deposition.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

118. Sternberg then had a phone conversation with and sent an email to William Berman that same day, March 1, 2022.

**RESPONSE:** Admitted.

119. The document marked as Sternberg Deposition Exhibit 38 at the Sternberg Deposition, is a true and correct copy of an email sent by Sternberg to William Berman, Esquire, attorneys for VRC, telling him not to further contact Zekaria and asking him to "wait a few more days and plan for delivery."

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

120. VRC did not get the 204,120 Test Kits that VRC purchased from Gross and/or Sternberg.

**RESPONSE:** Denied. VRC did not purchase anything from the Sternberg Defendants.

121. Gross and Sternberg did not refund the $2,449,440 that VRC wired to Sternberg to hold in trust, for VRC's purchase of their Test Kits.

**RESPONSE:** Denied. The Sternberg Defendants had no responsibility to refund anything to VRC.

122. The document marked as Sternberg Deposition Exhibit 29 at the Sternberg Deposition is a true and correct copy of an email dated March 1, 2022, from Weiss to Sternberg and Gross, in which Weiss states as follows: "Of course as I said many times before If you would like a refund you have no questions asked."

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

123. Weiss claims he delivered diamonds and other gemstones worth $3 million to $4 million to Gross and Sternberg after he could not deliver the Test Kits.

**RESPONSE:** Denied. Weiss did not provide any gemstones to the Sternberg Defendants.

124. Both Weiss and Gross contend that Sternberg did not want the money back from Weiss and Zekaria (that Sternberg had wired to Weiss/Zekaria) because Sternberg did not want to "lose the profit" (as set forth in Sternberg Deposition Exhibit 30) and that it was Sternberg who wanted Weiss to give Gross and Sternberg the collateral (diamonds and gemstones worth $3 to $4 million) instead.

**RESPONSE:** Denied. Answering Defendants cannot admit or deny as they are unaware of the contentions of Weiss and Gross.

125.    The documents marked as Sternberg Deposition Exhibits 29, 30, 31, 33, 34, and 35 at the Sternberg Deposition are true and correct copies of texts from Weiss and Gross and other documents from them, that memorialize that it was Sternberg who wanted Weiss to give collateral (diamonds and gemstones) instead of returning the money that Sternberg wired to Weiss and Zekaria.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

126.    A list of the collateral that Weiss claims he delivered diamonds and other gemstones worth $4 million to Gross and Sternberg after he could not deliver the Test Kits, was marked as Sternberg Deposition Exhibit 28 at the Sternberg Deposition.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

127.    None of the diamonds and gemstones that Weiss gave as collateral to Gross and/or Sternberg was then delivered to Plaintiff, and Plaintiff has not received any proceeds from the sale of any of that collateral.

**RESPONSE:** Denied. Weiss did not provide the Stenberg Defendants with any gemstones.

128.    Sternberg had control over the disposition of the diamonds and gemstones that Weiss gave as collateral to Gross and/or Sternberg.

**RESPONSE:** Denied.

129.    Sternberg offered to Randolph ("Randy") Adler, Esquire (counsel for VRC) to liquidate the collateral that Weiss gave to Gross and/or Sternberg, and pay the proceeds to VRC, in the event that Gross and Sternberg failed to deliver to VRC the Test Kits that VRC purchased from Gross and/or Sternberg – Mr. Adler memorialized Sternberg's offer in Adler's email to Sternberg dated March 13, 2022, a copy of which was marked as Weiss Deposition Exhibit 12 at the Weiss Deposition.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

130.    Sternberg did not write back to Adler disputing what Adler wrote to him on 3/13/22 in Weiss Deposition Exhibit 12; instead, Sternberg forwarded the email to Gross.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

131.    The document marked as Sternberg Deposition Exhibit 37 at the Sternberg Deposition, is a true and correct copy of a letter dated February 23, 2022, sent by Randolph ("Randy")

Adler, Esquire, attorneys for VRC, to Sternberg, in which they accused Gross of failing to deliver the 204,120 Test Kits that VRC purchased.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

132.     In his 2/23/22 letter to Sternberg, Mr. Adler also instructed Sternberg not to disburse any portion of the $2,449,440 that VRC wired to Sternberg to hold in trust, that Sternberg was required to hold in trust "until the transaction is complete…"

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

133.     [SIC]

134.     VRC has sued Gross and Stenberg alleging they defrauded VRC –VRC claims they paid over $2.4 million to Gross and Sternberg for their purchase of Test Kits, and that they never received the Test Kits or the return of their money they wired to Sternberg's trust account.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

135.     The document marked as Sternberg Deposition Exhibit 39 is a true and correct copy of the Complaint that VRC filed against Gross and Sternberg.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

136.     There are other purchasers of Test Kits and other PPE equipment, that have claimed that they were defrauded by one or more of the Defendants, including: (a) Nail & Beauty, LLC ("N&B"); and (b) BELCO Distributors ("BELCO"); and (c) Hand Safety LLC; and (d) George Gianfacaro/ Indutex USA ("Indutex"); and (e) George Carcia-Menocal, Esquire; and (f) Daniel Rodin; and (g) David Wright/DKW Consulting, Inc.; and (h) Nationwide Medical Services ("NMS": and (i) Yuba County Schools. ("Yuba"); and (j) El Monte Unified School District (El Monte"); and (k) Linda Coughlin or her client.

**RESPONSE:** Denied.

137.     Gross and Sternberg had no intention to perform under the SPA.

**RESPONSE:** Denied.

138.     Gross and Sternberg lacked the ability to perform under the SPA.

**RESPONSE:** Denied.

139.     Contrary to the representations that Gross and Sternberg made to Plaintiff – that they had the Test Kits available for purchase and shipment to Plaintiff – to induce Plaintiff to transfer the

$1,965,600.00 Purchase Price to the Sternberg trust account, the Test Kits were not owned or available to Gross and Sternberg as they represented.

**RESPONSE:** Denied.

140.     The Gross and Sternberg Attorney Defendants never provided Plaintiff with a Bill of Lading, from a recognized common carrier, and also failed to provide other shipping information to Plaintiff, as required under the SPA and as a prerequisite to the release of the $1,965,600.00 Purchase Price from Sternberg's the attorney escrow account.

**RESPONSE:** Denied.

141.     To induce Plaintiff to make the wire transfer to them, Gross and Sternberg Defendants represented to Plaintiff that Plaintiff's $1,965,600.00 Purchase Price would remain in Sternberg's attorney escrow account, and that the $1,965,600.00 Purchase Price would not be released from the Sternberg attorney escrow account, unless and until the Covid Test Kits had been delivered to a common carrier for delivery to Plaintiff, and Plaintiff was supplied with the required Bill of Lading from a recognized common carrier evidencing that the Covid Test Kits were in transit to Plaintiff.

**RESPONSE:** Denied.

142.     Prior to filing the lawsuit, Plaintiff and its counsel gave Defendants multiple opportunities to confirm that they did not fraudulently take Plaintiff's $1,965,600.00 Purchase Price, and that Defendants in fact shipped the Covid Test Kits to Plaintiff.

**RESPONSE:** Denied.

143.     However, Defendants continued to make lies and misrepresentations to Plaintiff concerning the status of the delivery of the Covid Test Kits.

**RESPONSE:** Denied.

144.     For example, on or about February 8, 2022, Sternberg misrepresented to Plaintiff that the Covid Test Kits were en route and would be delivered to Plaintiff by no later than February 17, 2022, when in fact they were not with a common carrier or otherwise being shipped to Plaintiff; as of February 17, 2022, and as of the filing of Plaintiff's Complaint), no delivery had been made. *See* Exhibit 3 to the Complaint.

**RESPONSE:** Denied.

145.     Plaintiff on numerous occasions prior to filing suit, requested that Defendants provide Plaintiff with a Bill of Lading and other shipping documents to show Seller had delivered the Covid Test Kits to a common carrier for delivery to Plaintiff. *See* Exhibit 4.

**RESPONSE:** Denied.

146.     However, Defendants failed and refused to deliver this shipping documentation to Plaintiff.

**RESPONSE:** Denied.

147.     On or about February 16, 2022, a man named "Shraga" contacted Plaintiff and advised Plaintiff the Covid Test Kits were on a truck and that delivery would be made to Plaintiff by 4:00 pm on February 16, 2022.

**RESPONSE:** Answering Defendants lack sufficient knowledge or information to admit or deny this request.

148.     When the alleged shipment did not arrive at 4:00 p.m. on 2/16/22, Plaintiff contacted Shraga who advised Plaintiff the truck had "broken down" and that the Kits would be delivered in the morning of February 17, 2022.

**RESPONSE:** Answering Defendants lack sufficient knowledge or information to admit or deny this request.

149.     The Test Kits in fact were not delivered to Plaintiff, either on February 16, 2022, or on February 17, 2022, or at any time before the lawsuit was filed, or thereafter.

**RESPONSE:** Denied.

150.     Defendant Gary Weiss admitted that he was the person who contacted Plaintiff using the name "Shraga."

**RESPONSE:** Answering Defendants lack sufficient knowledge or information to admit or deny this request.

151.     The document marked as Weiss Deposition Exhibit 13 is a true and correct copy of a text from Zekaria to Gross.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

152.     The document marked as Weiss Deposition Exhibit 14 is a true and correct copy of a text from Zekaria to Gross.

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

153.     The document marked as DZ 00036 (and also marked as Zekaria-00001) is a true and correct copy of a WhatsApp text chat between Zekaria and Weiss and Gross on February 4, 2022, in which Gross writes to Weiss as follows, as respects the $1.9 million wire transfer made by Sternberg to Zekaria on February 4, 2022: "Gary, please confirm to Daphna here. From the 1.9 m 65% is yours. The rest is mine. Thanks."

24

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

154.     In that same document marked as DZ 00036 (and also marked as Zekaria-00001), Weiss responds to the text from Gross as follows: "Hi, Daphna, I confirm 35% of 1.9m going To Sam, and 65% of 1.9 m to me Gary Weiss."

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

155.     The document marked as Zekaria-00002 is a true and correct copy of a WhatsApp text chat between Zekaria and Weiss and Gross on February 15, 2022, in which Daphna writes as follows, as respects the $250,000.00 wire transfer made by Sternberg to Zekaria on February 15, 2022: "Daphna [at 3:37 pm]: It's my understanding that I am about to receive an additional wire of 250,000 which is 130,000 to Gary Weiss and the rest for my additional fees?

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

156.     In that same document marked as Zekaria-00002, Gross then writes as follows: "Shlomi [Weiss]" Gary please confirm to her 250K is coming in (and she is waiting for it)" And 130 is yours."

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

157.     In that same document marked as Zekaria-00002, Weiss then writes as follows: "Gary Weiss: Hi Daphna, that is correct you are sending me 130K, thanks."

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

158.     In that same document marked as Zekaria-00002, Zekaria then writes as follows: "Daphna: Awesome. Thanks for the confirmation and opportunity to represent you."

**RESPONSE:** This refers to a document that speaks for itself. Any characterization thereof is denied.

159.     Defendants worked in concert with each other to deprive Plaintiff of the $1,965,600.00 Purchase Price that Plaintiff paid to purchase 151,200 Test Kits.

**RESPONSE:** Denied.

160.     Each of the Defendants received and retained portions of the Purchase Price funds that Plaintiff wired into Sternberg's trust account.

**RESPONSE:** Denied.

161.     Each of the Defendants received and retained portions of the funds that VRC wired into Sternberg's trust account to purchase their Test Kits.

**RESPONSE:** Denied.

162.     As Sternberg aptly stated to Gross in Sternberg Deposition Exhibit 32, the conduct of Defendants: "is classic fraud in the inducement and can only be cured by delivery or return of all money."

**RESPONSE:** Denied.

163.     Plaintiff was defrauded by the conduct of the Defendants.

**RESPONSE:** Denied.

164.     Defendants engaged in a wrongful civil conspiracy that caused damages to Plaintiff, including defrauding Plaintiff out of the $1,965,600.00 Purchase Price that Plaintiff paid to purchase 151,200 Test Kits that Defendants failed to deliver to Plaintiff.

**RESPONSE:** Denied.

165.     Gross is personally liable for the damages caused to the Plaintiff and the corporate veil of CHG should be pierced.

**RESPONSE:** Answering Defendants lack sufficient knowledge or information to admit or deny this request.

166.     Weiss is personally liable for the damages caused to the Plaintiff and the corporate veil of ASD should be pierced.

**RESPONSE:** Answering Defendants lack sufficient knowledge or information to admit or deny this request.

167.     Sternberg is personally liable for the damages caused to the Plaintiff and the corporate veil of MSA should be pierced.

**RESPONSE:** Denied.

168.     Zekaria is personally liable for the damages caused to the Plaintiff and the corporate veil of S&K should be pierced.

**RESPONSE:** Answering Defendants lack sufficient knowledge or information to admit or deny this request.

169.     Each of Gross and Sternberg and Weiss and Zekaria are liable to Plaintiff for their individual participation in their fraudulent scheme, pursuant to the Participation Theory.

**RESPONSE:** Denied.

170.    Each of Gross and Sternberg and Weiss and Zekaria have been unjustly enriched and thus are liable to Plaintiff.

**RESPONSE:** Denied.

171.    Each of Gross and Sternberg and Weiss and Zekaria have tortiously interfered with the contractual relations of Plaintiff and its customers, and thus are liable to Plaintiff.

**RESPONSE:** Denied.

172.    Each of Gross and Sternberg and Weiss and Zekaria have tortiously interfered with the prospective economic advantage of Plaintiff and its customers, and thus are liable to Plaintiff.

**RESPONSE:** Denied.

**GOLDBERG SEGALLA LLP**

BY: */s/Seth L. Laver*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
SETH L. LAVER, ESQ.
Attorneys for Defendants
Manfred Sternberg, Esquire and
Manfred Sternberg & Associates

Dated: July 17, 2024

27

## **VERIFICATION**

I, Manfred Sternberg, Esquire, on behalf of myself in my individual capacity and on behalf of Manfred Sternberg & Associates, PC, hereby state that based upon records and investigation, I believe the foregoing responses to Plaintiff's Requests for Admissions to be true and correct to the best of my present knowledge, information and belief.

BY: _____
   MANFRED STERNBERG, ESQUIRE


Dated: July 17, 2024