**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM** | **CIVIL ACTION** |
| **Plaintiff,** | **No. 2022-cv-00688 (JMY)** |
| **v.** | |
| **MANFRED STERNBERG, ESQUIRE, and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SAMUEL GROSS a/k/a SHLOMO GROSS, and GARY WEISS, and ASOLARDIAMOND, LLC a/k/a, ASOLAR. LLC, and DAPHNA ZEKARIA, ESQUIRE, and SOKOLSKI & ZEKARIA, P.C.** | |
| **Defendants.** | |

**NOTICE OF PLAINTIFF'S RULE 56 MOTION FOR SUMMARY JUDGMENT AGAINST ALL DEFENDANTS, AND RULE 55 MOTION FOR DEFAULT JUDGMENT AGAINST THE GROSS DEFENDANTS AND THE WEISS DEFENDANTS AND THE ZEKARIA DEFENDANTS**

**TO:** (1) Manfred Sternberg, Esquire, and
(2) Manfred Sternberg & Associates, PC
c/o Seth Laver, Esquire (VIA EMAIL: slaver@goldbergsegalla.com)
c/o Joseph Ross, Esquire (VIA EMAIL: jross@goldbergsegalla.com)
(3) Sam Gross and
(4) Charlton Holdings Group, LLC
(VIA EMAIL charltonholdinggroupllc@aol.com and Scg1212@gmail.com and publicdiamonds@gmail.com and Samrosinc@icloud.com
(5) Gary Weiss and
(6) ASOLARDIAMOND, LLC
(VIA EMAIL: wgary4109@gmail.com and monipair@aol.com )
(7) Daphna Zekaria, Esquire and
(8) SOKOLSKI & ZEKARIA, P.C.
(VIA EMAIL: Dzandpeanut@aol.com)

**PLEASE TAKE NOTICE** that plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM ("TSH" or "SAFETY HOUSE"), hereby files its Motion for Summary Judgment and/or for Default Judgment (the "Motion"), seeking Summary Judgment against each of the defendants, Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC (collectively the "Sternberg Defendants"), and Daphna Zekaria, Esquire, and Sokolski & Zekaria, P.C. (collectively the "Zekaria Defendants"), and Gary Weiss and ASOLARDIAMOND, LLC, a/k/a ASOLAR, LLC (collectively the "Weiss Defendants"), and Sam Gross and Charlton Holdings Group, LLC (collectively the "Gross Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and paragraph 1(c) of the Court's March 20, 2024 Amended Scheduling Order [ECF 154], and also seeking a Default Judgment against the Gross Defendants and the Weiss Defendants and the Zekaria Defendants, pursuant to Rule 55 of the Federal Rules of Civil Procedure, and paragraph 1(c) of the Court's March 20, 2024 Amended Scheduling Order [ECF 154], and plaintiff TSH seeks the entry of an Order in the proposed form of Order accompanying this Motion, granting Summary Judgment and/or Default Judgment, in favor of plaintiff TSH, against each of the Defendants, individually, jointly and severally, for the $1,965,600.00 in compensatory damages sought in the plaintiff's Amended Complaint, and in the Certification of Plaintiff accompanying this Motion, plus punitive damages (of $19,656,000.00, *i.e*., ten times the amount of the compensatory damages; or in the alternative, summary judgment for liability on punitive damages against all defendants, and providing plaintiff with the opportunity to conduct asset discovery of Defendants, and thereafter scheduling a hearing solely on the amount of plaintiff's punitive damages claims against the Defendants); and in support of its Motion, plaintiff TSH will rely upon the accompanying Motion and Certifications of Daniel Scully and Plaintiff's Counsel (with exhibits) and Memorandum of Law.

**TAKE FURTHER NOTICE** that if you desire to oppose the relief sought in this Motion, you must file your written response with the Court and serve a copy of same upon undersigned counsel, within the time prescribed by the Rules and Orders of the Court.  In the absence of such timely filed and served response, the Court may, upon consideration of the Motion, grant the relief requested by plaintiff TSH in the Motion.

ORAL ARGUMENT IS REQUESTED BY PLAINTIFF IF THIS MOTION IS OPPOSED.

Respectfully submitted,

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64223
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Tel. No. 215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date:  September 30, 2024          Attorneys for plaintiff TSH

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 2022-cv-00688 (JMY)** |
| **v.** | : | |
| **MANFRED STERNBERG, ESQUIRE, and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SAMUEL GROSS a/k/a SHLOMO GROSS, and GARY WEISS, and ASOLARDIAMOND, LLC a/k/a, ASOLAR. LLC, and DAPHNA ZEKARIA, ESQUIRE, and SOKOLSKI & ZEKARIA, P.C.** | : | |
| **Defendants.** | : | |

**PLAINTIFF'S RULE 56 MOTION FOR SUMMARY JUDGMENT AGAINST ALL DEFENDANTS, AND RULE 55 MOTION FOR DEFAULT JUDGMENT AGAINST THE GROSS DEFENDANTS AND THE WEISS DEFENDANTS AND THE ZEKARIA DEFENDANTS**

Plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM ("TSH" or "SAFETY HOUSE"), hereby files its Motion for Summary Judgment and Default Judgment (the "Motion"), seeking Summary Judgment against each of the defendants, Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC (collectively the "Sternberg Defendants"), and Daphna Zekaria, Esquire, and Sokolski & Zekaria, P.C. (collectively the "Zekaria Defendants"), and Gary Weiss and ASOLARDIAMOND, LLC, a/k/a ASOLAR, LLC (collectively the "Weiss Defendants"), and Sam Gross and Charlton Holdings Group, LLC (collectively the "Gross Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure,

and paragraph 1(c) of the Court's March 20, 2024 Amended Scheduling Order [ECF 154], and also seeking a Default Judgment against the Gross Defendants and the Weiss Defendants and the Zekaria Defendants, pursuant to Rule 55 of the Federal Rules of Civil Procedure, and paragraph 1(c) of the Court's March 20, 2024 Amended Scheduling Order [ECF 154]; and plaintiff seeks the entry of an Order in the proposed form of Order accompanying this Motion, granting Summary Judgment and/or Default Judgment in favor of Plaintiff, against each of the Defendants, individually, jointly and severally, for the $1,965,600.00 in compensatory damages sought in the plaintiff's First Amended Complaint [ECF 80], plus punitive damages (of $19,656,000.00, *i.e*., ten times the amount of the compensatory damages; or in the alternative, summary judgment for liability for punitive damages, and providing for plaintiff to conduct asset discovery of Defendants, and thereafter scheduling a hearing solely on the amount of plaintiff's punitive damages claims against the Defendants), and in support of its Motion, plaintiff states as follows:

**SUMMARY OF LAWSUIT**

1. Plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM ("TSH" or "SAFETY HOUSE" or "Plaintiff") was fraudulently induced by defendants to purchase 151,200 iHealth Covid-19 Antigen Rapid two-pack test kits (the "COVID Test Kits"), for the $1,965,600.00.

2. On January 21, 2022, SAFETY HOUSE wired the $1,965,600.00 Purchase Price into escrow to Sternberg's attorney trust account, and submitted TSH's Purchase Order #18315 for the purchase of the 151,200 COVID Test Kits, which Purchase Order clearly and unambiguously had a "Deliver by" date of January 25, 2022.

3. Sternberg was not supposed to release the $1,965,600.00 from his attorney trust account until SAFETY HOUSE received assurances that TSH had purchased the COVID Test Kits

(by TSH's receipt of a Bill of Sale for the COVID Test Kits), ***and*** that they were en route to TSH (by TSH's receipt of a Bill of Lading from a recognized common carrier that they were being delivered to TSH).

4. Defendants provided TSH with a fraudulent Bill of Sale, and also failed to provide TSH with a Bill of Lading, for the COVID Test Kits.

5. Defendants failed to deliver any of the 151,200 COVID Test Kits to SAFETY HOUSE, and they also failed to return TSH's $1,965,600.00 Purchase Price to TSH.

6. Instead, defendants kept all of TSH's $1,965,600.00 Purchase Price and divided TSH's money up amongst themselves.

7. Not only did TSH receive a fraudulent Bill of Sale, for COVID Test Kits (that the defendants in fact did not own at the time), but throughout the relevant time, defendants made numerous misrepresentations to TSH, including about the purported delivery of the COVID Test Kits to TSH (despite repeated representations that the COVID Test Kits were en route for delivery to TSH, no COVID Test Kits were delivered to TSH); and including misrepresentations that TSH could cancel the transaction and get a full refund (when TSH then canceled the transaction after being told by the Gross Defendants that TSH could do so, and after TSH requested a full refund of the $1,965,600.00 Purchase Price, the Stenberg Defendants simply ignored what their client (the Gross Defendants), had told TSH, and instead the Sternberg Defendants continued to disburse the funds amongst the defendants).

8. Plaintiff's Amended Complaint [ECF 80], asserts causes of action for Fraud in the Inducement (Count I), and for Fraud (Counts II and III), and for Wrongful Civil Conspiracy (Count IV), and for Piercing the Corporate Veil (Counts V and VI), and for Participation Theory (Count VII), and for Unjust Enrichment/Quantum Meruit (Counts VIII and XI), and for Intentional

Interference With Contractual Relations (Count IX), and for Intentional Interference With Prospective Economic Advantage (Count X),

**SUMMARY OF MOTION**

9. Plaintiff SAFETY HOUSE is entitled to Summary Judgment under Rule 56, against all Defendants, individually, jointly and severally, based upon the undisputed facts of record.

10. Plaintiff SAFETY HOUSE is entitled to a Default Judgment under Rule 55, against the Weiss Defendants, and the Gross Defendants, and the Zekaria Defendants, individually, jointly and severally, because defaults previously have been entered or requested of record against each of said defendants (which defaults establish their liability, leaving only the amount of the Judgment to be determined).

11. Defaults were filed of record against each of the Weiss Defendants, and the Gross Defendants, and the Zekaria Defendants, because each of said defendants failed to abide by Court Orders and failed to defend this matter, and because after their respective counsel withdrew from their representation, each of said defendants failed to procure replacement counsel.

12. The amount of compensatory damages sustained by plaintiff TSH is $1,965,600.00—SAFETY HOUSE wired $1,965,600.00 on January 21, 2022, in escrow, to the attorney trust account of the Sternberg Defendants, but Defendants kept the entire purchase price and also failed to deliver the 151,200 iHealth Covid-19 test kits purchased by plaintiff, and they also failed to return the $1,965,600.00 purchase price to plaintiff. SAFETY HOUSE not only lost the $1,965,600.00, but suffered further financial hardship, including having to cover the re-sales of the COVID Test Kits that TSH had lined up.

13. Plaintiff TSH also is entitled to Summary Judgment under Rule 56 for $1,965,600.00 against the Gross Defendants, and the Zekaria Defendants, because they failed to

respond at all, let alone admit or deny, Plaintiff's Rule 36 Requests for Admission served upon said defendants on June 17, 2024, and Summary Judgment is fully warranted and appropriate against said defendants, based upon said Requests for Admission, all of which are deemed admitted against said defendants under the Rules of Court.

14. Plaintiff TSH also is entitled to Summary Judgment under Rule 56 for that amount against the Sternberg Defendants, as well as each of the other defendants, based upon the undisputed material facts in this case.

15. As set forth in greater detail in the Statement of Undisputed Facts accompanying this Motion, there is no dispute that:

(a) Plaintiff TSH wired the $1,965,500 purchase price in escrow to the Sternberg attorney trust account.

(b) Defendants failed to deliver the 151,200 iHealth Covid-19 test kits purchased by TSH, either by the 1/25/22 "deliver by" date set forth in TSH's 1/21/22 Purchase Order, or at any time prior to TSH canceling the Order and filing this lawsuit.

(c) The terms of the Sale and Purchase Agreement (the "SPA") do not allow defendants to keep the $1,965,500 Purchase Price and also not deliver the test kits.

(d) TSH was supposed to receive (but never in fact received) both a bona fide Bill of Sale, as well as any Bill of Lading from a recognized common carrier evidencing that the goods were in transit to TSH, as required by the Sale and Purchase Agreement (the "SPA").

(e) TSH was supposed to, but did not, receive a bona fide Bill of Sale, as well as a bona fide Bill of Lading, for the 151,200 COVID Test Kits that TSH purchased, before Sternberg could release the $1,965,600 funds wired by SAFETY HOUSE into escrow to Sternberg's trust account for the purchase of the goods.

(f)     Sternberg released the funds from his attorney trust account before a bona fide Bill of Sale, as well as a bona fide Bill of Lading, for the 151,200 COVID Test Kits were supplied to TSH.

(g)     TSH did not receive any Bill of Lading for 151,200 COVID Test Kits purchased by TSH.

(h)     The 1/21/22 Bill of Sale that was emailed to TSH was fraudulent -- one of the Defendants owned 151,200 COVID Test Kits on January 21, 2022, the date of that Bill of Sale.

(i)     Defendants made repeated misrepresentations that the COVID Test Kits were en route and would be delivered to TSH, which representations were false --  no delivery of the 151,200 COVID Test Kits was made to TSH.

(j)     Paragraph 6 of the SPA clearly states that "Title transfer shall happen contemporaneously with funds being released to Seller," but Sternberg wrongfully released funds from his attorney trust account before any of the Defendants owned any COVID Test Kits, and before SAFETY HOUSE had any 151,200 COVID Test Kits, and before TSH received a bona fide Bill of Sale, and before TSH received a Bill of Lading from a recognized common carrier evidencing that the good were in transit to SAFETY HOUSE.

(k)     The Gross Defendants (the Seller, who also were Sternberg's client) told SAFETY HOUSE on 2/15/22 that the purchase could be canceled and Sternberg would return the full purchase price to TSH, but Stenberg refused to return TSH's money after his client agreed that TSH canceled the transaction and demanded a full refund.

(l)     Sternberg continued to make distributions from his attorney trust account after he expressly was put on notice not to make any further disbursements.

(m)    Defendants kept the entire $1,965,600.00 Purchase Price paid by SAFETY HOUSE for the 151,200 COVID Test Kits, and divided TSH's funds up amongst themselves, and also failed to deliver any COVID Test Kits to TSH.

(n)    Even the terms of the SPA between the Gross Defendants (as Seller) and TSH (as Buyer) did not allow Defendants both to kept all of TSH's funds and not deliver any COVID Test Kits.[1]

16.    Summary Judgment under Rule 56 also is fully warranted and appropriate against the Sternberg Defendants, based upon the failure of the Sternberg Defendants to properly respond to Plaintiff's Requests for Admission, which are deemed admitted under Rule 36 of the Federal Rules of Civil Procedure.[2]

17.    Finally, Summary Judgment under Rule 56 for punitive damages in favor of plaintiff TSH against all Defendants is fully warranted and appropriate -- no reasonable minds could differ that the conduct of the defendants was egregious and in bad faith, and that punitive damages as a matter of law against defendants is warranted by the undisputed clear and convincing evidence in this case.

18.    The  Court has the power to and either should enter an amount of said punitive damages, as part of this Motion, or in the alternative, enter a judgment for liability for punitive

---

[1] *After* TSH canceled the transaction, and *after* TSH filed this lawsuit, defendants attempted to deliver one skid of Test Kits in late March, 2022.  However, the skid of Test Kits had expiration dates in two weeks, and had serial numbers that were not authorized by iHealth.  TSH rejected the late, non-conforming attempted delivery of a fraction of the total 151,200 Test Kits that were ordered on January 21, 2022, all of which 1511,200 Test Kits were supposed to be delivered to TSH by January 25, 2022.

[2] On July 24, 2024, Plaintiff filed its Rule 36(a)(6) Motion to Determine Requests for Admission and for Sanctions against the Sternberg Defendants [ECF 184], which Rule 36(a)(6) Motion currently is pending before the Court.

damages in favor of plaintiff against all Defendants, and establish a schedule for plaintiff to conduct asset discovery of the Defendants, and thereafter conduct a punitive damages hearing to determine the amount of punitive damages to be awarded in favor of plaintiff against the Defendants.

**PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPORT OF PLAINTIFF'S RULE 56 MOTION FOR SUMMARY JUDGMENT AGAINST ALL DEFENDANTS**

19. Plaintiff incorporates by reference herein, the separate Statement of Undisputed Facts accompanying this Motion, as if fully set forth at length.

**RELIEF REQUESTED**

WHEREFORE, plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM, respectfully submits that the Court should enter the proposed Order accompanying this Motion: (a) granting Summary Judgment under Rule 56, in favor of plaintiff TSH against each of the Defendants, individually jointly and severally, for compensatory damages in the amount of $1,965,600.00, plus post-Judgment interest at the legal rate, plus costs; and (b) granting a final Default Judgment under Rule 55, in favor of plaintiff TSH against the Weiss Defendants, and the Gross Defendants, and the Zekaria Defendants, individually, jointly and severally, for compensatory damages in the amount of $1,965,600.00, plus post-Judgment interest at the legal rate, plus costs; and (c) granting Summary Judgment under Rule 56, for punitive damages in favor of plaintiff TSH against each of the defendants, individually jointly and severally, either in an amount determined by the Court (which plaintiff requests be ten times the purchase price paid by plaintiff), or in the alternative, enter liability for punitive damages in favor of plaintiff TSH against all Defendants and establish a schedule for Plaintiff to conduct asset discovery of the Defendants, and thereafter schedule and conduct a punitive damages hearing to determine the amount of

punitive damages to be awarded in favor of plaintiff against the Defendants; and (c) granting to

plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64223
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date:  September 30, 2024                    Attorneys for plaintiff TSH

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MANFRED STERNBERG, ESQUIRE, and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SAMUEL GROSS a/k/a SHLOMO GROSS, and GARY WEISS, and ASOLARDIAMOND, LLC a/k/a, ASOLAR. LLC, and DAPHNA ZEKARIA, ESQUIRE, and SOKOLSKI & ZEKARIA, P.C.**<br><br>**Defendants.** | **CIVIL ACTION**<br><br>**No. 2022-cv-00688 (JMY)** |

**PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPORT OF PLAINTIFF'S RULE 56 MOTION FOR SUMMARY JUDGMENT AGAINST ALL DEFENDANTS**

Pursuant to section D of Judge Younge's Policies and Procedures governing Summary Judgment Motions in Civil Cases, Plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM ("TSH" or "SAFETY HOUSE"), respectfully submits this Statement of Undisputed Material Facts, in support of plaintiff TSH's Motion for Summary Judgment, and Motion for Default Judgment, and incorporates each of the following facts as part of its Rule 56 Motion and Rule 55 Motion.

1. Plaintiff instituted this action on February 23, 2022 [ECF 1].

2. SAFETY HOUSE claims in this case that it was the victim involving a significant financial fraud perpetrated upon plaintiff by and between the Defendants, wherein TSH was induced

to purchase 151,200 boxes of iCovid Kits (the "COVID Test Kits" or "Test Kits") for $1,965,600.00 – plaintiff wired the $1,965,600.00 purchase price to the Sternberg Defendants, but did not receive the COVID Test Kits, and TSH has not gotten back the purchase price it paid for those COVID Test Kits.  Instead, defendants divided up the $1,965,600 paid by TSH amongst themselves *See generally,* First Amended Complaint, [ECF 80] (a copy of which pleading is marked as Exhibit P-36 accompanying this Motion ; *see also*, Certification of Daniel Scully (the "Scully Certification") accompanying this Motion.

3.      Plaintiff served Requests for Admission (sometimes referred to as the "RFAs") upon each of the defendants on June 17, 2024, a copy of which Requests for Admission with exhibits is marked as Exhibit P-1 and Exhibits RFA-1 through RFA-5 accompanying this Motion. *See* Certification of Gary Lightman (the  "Lightman Certification") accompanying this Motion, at ¶ 9, and Exhibits P-1 and RFA-1 through RFA-5.

4.      Exhibit P-1 accompanying this Motion is a  true and correct copy of Plaintiff's Rule 36  Requests for Admission that were served upon each of the defendants on June 17, 2024. *Id*. at ¶ 4.

5.      Exhibits RFA-1 through RFA-5 are true and correct copies of the documents that accompanied the Requests for Admission served on each of the defendants on June 17, 2024. *Id*. at ¶¶ 5-9.

6.      The Gross Defendants failed to serve responses to Plaintiff's Requests for Admission, either within thirty (30) days of service of the RFAs upon them, or to date. Lightman Certification, at ¶ 10.

7. The Zekaria Defendants failed to serve responses to Plaintiff's Requests for Admission, either within thirty (30) days of service of the RFAs upon them, or to date. Lightman Certification, at ¶ 11.

8. Pursuant to Rule 36 of the Federal Rules, each of the Requests for Admission are deemed admitted, as against the Gross Defendants and as against the Zekaria Defendants. Rule 36, Fed.R.Civ.P.

9. The Gross Defendants and the Zekaria Defendants each have made the following admissions (as a result of their failure to respond at all to Plaintiff's Rule 36 Requests for Admission):[3]

(1) At all times relevant to the Complaint, Sternberg was an attorney in good standing and duly licensed to practice law in Texas. RFA #1.

(2) At all times relevant to the Complaint, Zekaria was an attorney in good standing and duly licensed to practice law in New York.[4] RFA #2.

(3) On or about January 21, 2022, Plaintiff agreed to purchase 151,200 iHealth Covid-19 Antigen Rapid two-pack test kits (the "Covid Test Kits") for a total payment of $1,965,600.00 (the "Purchase Price"). RFA #3

(4) A true and correct copy of Plaintiff's Purchase Order for the Test Kits is attached as the first page of Exhibit 1 to Plaintiff's Complaint [ECF 80, at page 35 of the 56 page pdf][5] RFA #4

(5) A true and correct copy of Plaintiff's Purchase Order for the Test Kits was marked as Sternberg Deposition Exhibit 14 at the Sternberg Deposition. RFA #5

(6) The TSH Purchase Order is dated January 21, 2022. RFA #6

[3] Each of the following facts set forth in (1) through (172) in this paragraph 9 are taken verbatim from the Rule 36 Requests for Admission, to which the Gross Defendants and the Zekaria Defendants each failed to answer or respond.

[4] Subsequent to the filing of this lawsuit, several criminal charges have been brought against Zekaria, *inter alia* for stealing funds from her clients, which criminal charges currently are pending in New York, and Zekaria's law license has been suspended, and a Receiver has been appointed over her firm's files. *See* In re Matter of Zekaria, 2024 NY Sup. Ct., App. Div., Case No. 2024-00376

[5] Plaintiff's 1/21/22 Purchase Order also accompanies this Motion as Exhibit P-2.

(7) The Purchase Order clearly and unambiguously states a "Receive By" date of January 25, 2022. RFA #7

(8) The "Vendor" stated in the Plaintiff's Purchase Order is as follows:

"(713) 824-9170
C/O Manfred Sternberg, ESQ.
Charlton Holding Group, LLC
78 Buckminster Road
Rockville Centre NY 11570"

RFA #8

(9) The "(713) 824-9170" phone number set forth in the "Vendor" section of the Purchase Order is the phone number for Sternberg. RFA #9

(10) The "78 Buckminster Road, Rockville Centre NY 11570" address set forth in the "Vendor" section of Plaintiff's Purchase Order is the address for Gross. RFA #10

(11) CHG is an entity with no assets, that was undercapitalized, and that is owned and controlled by defendant Samuel Gross. RFA #11

(12) Gross, starting in 2014, served at least 18 months in a New York State prison based upon convictions for Grand Larceny and Scheme to Defraud. RFA #12

(13) Gross and Sternberg represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States, and that Plaintiff had to wire the money to them asap in order to secure Plaintiff's position in the queue for purposes of shipping the Test Kits. RFA #13

(14) To induce Plaintiff to make the purchase of the Test Kits Gross and Sternberg represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States, and that Plaintiff had to wire the money to them asap in order to secure Plaintiff's position in the queue for purposes of shipping the Test Kits. RFA #14

(15) The Sale and Purchase Agreement ("SPA") used for the Plaintiff's Purchase Order was drafted by Sternberg. RFA #15

(16) A true and correct copy of the SPA is attached as Exhibit 1 to the Complaint, right after the Purchase Order. [ECF 80, at pages 36-43 of the 56 page pdf].[6] RFA #16

[6] The Sale and Purchase Agreement ("SPA") drafted by Sternberg that was used for the Plaintiff's Purchase Order also accompanies this Motion as Exhibit P-3.

(17)     A true and correct copy of the SPA was marked as Sternberg Deposition Exhibit 4 at the Sternberg Deposition.  RFA #17

(18)     As late as March 24, 2022, Sternberg did not have a copy of the fully executed SPA, as he admitted in his 3/24/22 email Sternberg sent to Gross, a copy of which Sternberg 3/24/22 email was marked as Sternberg Deposition Exhibit 5 at the Sternberg Deposition.[7]  RFA #18

(19)     Sternberg was requested by Plaintiff to produce, but failed to produce, the documents and metadata showing when the SPA was signed, and when and how the SPA was delivered by Gross to Sternberg.  RFA #19

(20)     Instead of making the Purchase Price payment directly to Seller, the SPA provides for SAFETY HOUSE as Purchaser to pay the $1,965,600.00 Purchase Price into the Sternberg attorney escrow account, to be disbursed pursuant to the terms and conditions of the SPA.  RFA #20

(21)     Plaintiff wired the $1,965,600.00 Purchase Price into the Sternberg attorney escrow account on January 21, 2022. RFA #21

(22)     When Plaintiff wired the $1,965,600.00 Purchase Price into the Sternberg attorney escrow account on January 21, 2022, neither Gross nor Sternberg owned or actually had possession of the 151,200 Test Kits purchased by Plaintiff. RFA #22

(23)     At no time, from January 21, 2022, through February 23, 2022, When Plaintiff filed the initial Complaint in this lawsuit, did Gross or Sternberg own or actually have possession of the 151,200 Test Kits purchased by Plaintiff.  RFA #23

(24)     At no time, from January 21, 2022, through the present, did Gross or Sternberg own or actually have possession of the 151,200 Test Kits purchased by Plaintiff.  RFA #24

(25)     The first Bill of Sale delivered by Gross and/or Sternberg to Plaintiff stated that the transfer of the Test Kits to Plaintiff "is effective as of January 21, 2022" (the "1/21/22 Bill of Sale").  RFA #25

(26)     A true and correct copy of the 1/21/22 Bill of Sale was used by Sternberg and Gross in this case, and was attached as Exhibit D to the Motion to Dismiss made by Sternberg and Gross in this case on April 1, 2022 [ECF 13-4, page 9 of 10].[8]  RFA #26

---

[7] A copy of the 3/24/22 email that Sternberg sent to Gross, which was marked as Sternberg Deposition Exhibit 5 at the Sternberg Deposition, also accompanies this Motion as Exhibit P-4.

[8] A copy of the 1/21/22 Bill of Sale that was used by Sternberg and Gross in this case, and that was attached as Exhibit D to the Motion to Dismiss made by Sternberg and Gross in this case on April 1, 2022 [ECF 13-4, page 9 of 10], also accompanies this Motion as Exhibit P-5a.

(27)     A true and correct copy of the 1/21/22 Bill of Sale that was attached as Exhibit D to the Motion to Dismiss made by Sternberg and Gross in this case on April 1, 2022 [ECF 13]. RFA #27

(28)     When the 1/21/22 Bill of Sale was delivered to Plaintiff, neither Gross nor Sternberg owned or actually had possession of the 151,200 Test Kits purchased by Plaintiff.  RFA #28

(29)     The SPA states that CHG is the Seller and Plaintiff is the Buyer, but the SPA also states that Sternberg was the Escrow Agent for the Plaintiff's $1,965,600.00 Purchase Price for the test kits that were the subject of Plaintiff's Purchase Order.  RFA #29

(30)     Paragraph 6 of the SPA clearly states as follows (emphasis added):

> "Once the transferred funds [the Purchase Price] have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer.  **Title transfer shall happen contemporaneously with the funds being released to Seller**."

RFA #30

(31)     Sternberg's role as the Escrow Agent under the SPA was to make sure that the funds were not released to Seller unless and until TSH as Buyer was assured of getting delivery of the purchased Test Kits, i.e., by making sure that a Bill of Sale for the Test Kits and a Bill of Lading for the Test Kits from a common carrier first were delivered to Plaintiff as Buyer "contemporaneously with the funds being released to Seller."  RFA #31

(32)     Sternberg and Gross failed to deliver or cause to be delivered to Plaintiff, a Bill of Lading from a common carrier for the 151,200 Test Kits purchased by Plaintiff, before Sternberg released most of Plaintiff's funds from the Sternberg attorney escrow account.  RFA #32

(33)     Sternberg and Gross failed to deliver or cause to be delivered to Plaintiff, a Bill of Lading from a common carrier for the 151,200 Test Kits purchased by Plaintiff, at any time.  RFA #33

(34)     Title transfer to the Test Kits [to Plaintiff] did not happen contemporaneously with Sternberg's release of the funds from the Sternberg attorney escrow account that Plaintiff wire-transferred to Sternberg.  RFA #34

(35)     On January 19, 2022, VRC wired $2,268,000.00 to Sternberg's attorney escrow trust account, and on January 20, 2022, VRC wired $181,440.00 to Sternberg's attorney escrow trust account, for a total of $2,449,440.00, for their purchase of a total of 204,120 Test Kits from

Gross and Sternberg.[9]  RFA #35

(36)     Between January 19 and January 21, 2022, Sternberg received wire-transfers from Plaintiff and VRC totaling $4,415,040.00 for purchases of Test Kits, that were made into Sternberg's attorney escrow account. RFA #36

(37)     Gross and Sternberg failed to deliver the 151,200 Test Kits purchased by Plaintiff. RFA #37

(38)     Gross and Sternberg failed to refund to Plaintiff the $1,965,600.00 paid by plaintiff and wired to Sternberg for Plaintiff's purchase of the 151,200 Test Kits.  RFA #38

(39)     Gross and Sternberg failed to deliver the 204,120 Test Kits purchased by VRC. RFA #39

(40)     Gross and Sternberg failed to refund to VRC the $2,449,440.00 paid by plaintiff and wired to Sternberg for Plaintiff's purchase of the 204,120 Test Kits.  RFA #40

(41)     Sternberg made the following wire-transfers totaling $2,571,200.00 from the Sternberg attorney escrow account into which Plaintiff wired the $1,976,600.00 Purchase Price and into which VRC wire-transferred a total of $2,449,440.00:

(a) The sum of $219,240.00, wire-transferred by Sternberg directly to Weiss on 2/1/22; and

(b) The sum of $1,911,960.00, wire-transferred by Sternberg to the Zekaria attorney escrow account on 2/4/22; and

(c) The sum of $250,000.00, wire-transferred by Sternberg to the Zekaria attorney escrow account on 2/15/22; and

(d) The sum of $190,000.00, wire-transferred by Sternberg to the Zekaria attorney escrow account on 2/25/22.[10]

RFA #41

(42)     Sternberg made the wire transfers set forth in the preceding request, totaling $2,571,200.00, out of the Sternberg attorney escrow account, into which Plaintiff and VRC made

---

[9] A copy of the document evidencing VRC's wire transfers totaling $2,449,440.00 into the Sternberg trust account on January 19-20, 2022, is marked as Exhibit P-6 accompanying this Motion. *See also*, Exhibit P-35 accompanying this Motion, a copy of the lawsuit filed by VRC against the Sternberg Defendants and the Gross Defendants, at ¶¶ 4-5.

[10] The page from Sternberg's Answer to Plaintiff's Interrogatory No. 23, setting forth these wire transfers, also marked as Sternberg-19 at the Sternberg deposition, is marked as Exhibit P-7 accompanying this Motion.

their wire transfers that totaled $4,415,440.00 (leaving a balance of $1,842,840.00 paid by Plaintiff and VRC into the Sternberg trust account, but not disbursed by Sternberg to Weiss and Zekaria). RFA #42

(43)    Sternberg Deposition Exhibit 21 is a true and correct copy of a text authored by Gross on September 20, 2023, in which he states an "end balance [of] $1,876,003.89 (one million eight hundred seventy six)".[11] RFA #43

(44)    The "end balance [of] $1,876,003.89" to which Gross referred in Sternberg Deposition Exhibit 21 is the ending balance that Gross stated that he and Sternberg still had in their possession or control as of 9/20/23. RFA #44

(45)    When Sternberg released the sum of $219,240.00 from his attorney escrow account to Weiss on February 1, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff.  RFA #45

(46)    When Sternberg released the sum of $1,911,960.00 from his attorney escrow account to Zekaria on February 4, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff.  RFA #46

(47)    Weiss claims that he purchased 365,700 Test Kits from "Mask & Eldiven."  RFA #47

(48)    The only document that Weiss produced that Weiss claims evidences his purchase of 365,700 Test Kits from "Mask & Eldiven" was a single page document dated February 6, 2022, purporting to be from "Mask & Eldiven" (the "2/6/22 M&E document").  RFA #48

(49)    A true and correct copy of the 2/6/22 M&E document was marked as Sternberg Deposition Exhibit 28 at the Sternberg Deposition, and also marked as Weiss Deposition Exhibit 5 at the Weiss Deposition.[12]  RFA #49

(50)    The address set forth for Mask & Eldiven in the 2/6/22 document -- 2 W 47st, Room 1005, New York, New York 10036 – was at the time a vacant building.  RFA #50

(51)    The address set forth for Mask & Eldiven in the 2/6/22 document -- 2 W 47st, Room 1005, New York, New York 10036 – was for a building that was closed prior to 2020, and a demolition permit was filed for the building in October of 2019 (source: https://newyorkyimby.com/2019/10/demo-permits-filed-for-2-10-west-47th-street-in-midtown-manhattan.html).  RFA #51

---

[11] A copy of Sternberg Deposition Exhibit 21, the text authored by Gross on September 20, 2023, in which he states an "end balance [of] $1,876,003.89 (one million eight hundred seventy six)" also accompanies this Motion as Exhibit P-8.

[12] A copy of the 2/6/22 Mask & Eldiven ("M&E") document, that was marked as Weiss Deposition Exhibit 5 at the Weiss Deposition, also accompanies this Motion as Exhibit P-9.

(52) Before the 2 W 47st building was closed, Room 1005 was occupied for several years by Louis Cicero Jewelers and was not occupied or used at all by Mask & Eldiven. RFA #52

(53) Weiss admitted that he does not have the full names of any of the principals of Mask & Eldiven to whom he claims he paid $1,810,660.00 for the Test Kits, and also that he has no contact information for Mask & Eldiven other than what was set forth in the 2/6/22 M&E document. RFA #53

(54) Weiss has no documents evidencing his claim that he paid $1,810,660.00 to Mask & Elviden for the Test Kits, other than the 2/6/22 M&E document, and no documents to evidence his source of the $1,810,660.00 he claims he paid them. RFA #54[13]

(55) Sternberg's release of the sum of $219,240.00 from his attorney escrow account to Weiss on February 1, 2022, was prior to the date of Weiss's purported 2/6/22 purchase of Test Kits, that was evidenced by the 2/6/22 M&E document. RFA #55

(56) Sternberg's release of the sum of $1,911,960.00 from his attorney escrow account to Zekaria on February 4, 2022, was prior to the date of Weiss's purported 2/6/22 purchase of Test Kits, that was evidenced by the 2/6/22 M&E document. RFA #56

(57) Neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff, either on 1/21/22, or on 2/1/22, or on 2/4/22, or on 2/15/22, or on 2/25/22, or to date. RFA #57

(58) When Sternberg released the sum of $250,000.00 from his attorney escrow account to Zekaria on February 15, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff. RFA #58

(59) When Sternberg released the sum of $190,000.00 from his attorney escrow account to Zekaria on February 25, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff. RFA #59

(60) Sternberg as an Escrow Agent under the SPA owed a fiduciary duty to both Plaintiff as Buyer and Gross as Seller. RFA #60

(61) Sternberg as an Escrow Agent under the SPA owed a fiduciary duty to both Plaintiff as Buyer and Gross as Seller, to make disbursement of the escrow funds pursuant to the terms of the SPA. RFA #61

(62) Sternberg as an Escrow Agent under the SPA owed a fiduciary duty to both Plaintiff as Buyer and Gross as Seller, to make sure that "title transfer" to the Goods purchased by Plaintiff

---

[13] Weiss claimed, in his 2/16/24 deposition, that he paid $400,000 in cash and paid the $1.4 million balance of the $1.8 million purchase in diamonds and gemstones. *See* Exhibit P-19, the Weiss 2/16/24 deposition transcript, at Tr. 82:9-21.

happened "contemporaneously with the funds [paid by Plaintiff] being released to Seller."  RFA #62

(63)     Sternberg failed to undertake any independent investigation to confirm that "title transfer to the Goods purchased by Plaintiff happened "contemporaneously with the funds [paid by Plaintiff] being released to Seller" (other than relying upon what Gross and/or Weiss told him). RFA #63

(64)     Weiss sent an invoice dated January 26, 2022, purporting to sell to CHG a total of 355,200 Test Kits (the 1/26/22 invoice").  RFA #64

(65)     A true and correct copy of 1/26/22 invoice sent by Weiss to Gross was marked as Weiss Deposition Exhibit 6, at the Weiss Deposition.[14]  RFA #65

(66)     A true and correct copy of 1/26/22 invoice sent by Weiss to Gross was attached as Exhibit "B" to the April 24, 2022 letter authored by Sternberg and submitted to the Office of the Chief Disciplinary Counsel for the State Bar of Texas.  RFA #66

(67)     A true and correct copy of the April 24, 2022 letter authored by Sternberg and submitted to the Office of the Chief Disciplinary Counsel for the State Bar of Texas, was marked as Sternberg Deposition Exhibit 6 at the Sternberg Deposition.  RFA #67

(68)     Sternberg prepared an Affidavit for Weiss to sign (a copy of which draft Weiss Affidavit was marked as Weiss Deposition Exhibit 10 at the Weiss Deposition), that Sternberg wanted to submit as part of Sternberg's submission to the Office of the Chief Disciplinary Counsel for the State Bar of Texas, but Weiss refused to sign the draft Affidavit prepared by Sternberg because it contained several statements that Weiss stated were false and not correct.  RFA #68

(69)     Weiss also stated that the Affidavit that Sternberg prepared for Gross to sign (a copy of which draft Gross Affidavit was marked as Weiss Deposition Exhibit 11 at the Weiss Deposition), which Gross Affidavit Sternberg in fact submitted as part of Sternberg's 4/24/22 submission to the Office of the Chief Disciplinary Counsel for the State Bar of Texas (Sternberg Deposition Exhibit 6), contained several statements that Weiss stated were false and not correct. RFA #69

(70)     A true and correct copy of the 1/26/22 invoice sent by Weiss to Gross, purporting to sell to CHG a total of 355,200 Test Kits, was marked as Weiss Deposition Exhibit 6 at the Weiss Deposition.  RFA #70

(71)     The 1/26/22 invoice prepared by Weiss showed 5 buyers for the Test Kits, including Plaintiff and VRC.  RFA #71

---

[14] A copy of 1/26/22 invoice sent by Weiss to Gross, which was marked as Weiss Deposition Exhibit 6 at the Weiss deposition, and that also was  attached as Exhibit "B" to the April 24, 2022 letter authored by Sternberg and submitted to the Office of the Chief Disciplinary Counsel for the State Bar of Texas, also accompanies this Motion as Exhibit P-10.

(72) Weiss has stated that Gross and Sternberg "instructed [him] to make an invoice with Fraudulent intentions, as there are no 5 buyers as they told me, with the detail they instructed me to make the invoice" -- this was documented by Weiss in an email he sent to his attorney on July19, 2023, a true and correct copy of which 7/19/23 email was marked as Weiss Deposition Exhibit 9 at the Weiss Deposition.[15] RFA #72

(73) When Weiss sent his 1/26/22 invoice to Gross, Weiss did not own or have possession of any Test Kits, let alone the 151,200 Test Kits purchased by Plaintiff. RFA #73

(74) When Weiss sent his 1/26/22 invoice to Gross, Weiss did not own or have possession of any Test Kits, let alone the 204,120 Test Kits purchased by VRC from Gross and/or Sternberg. RFA #74

(75) Sternberg failed to undertake any independent investigation or otherwise perform any due diligence to confirm that Gross or Weiss had purchased or had ownership of the 151,200 Test Kits purchased by Plaintiff, let alone the 355,200 Test Kits, that were the subject of Weiss's 1/26/22 invoice, before Sternberg released from the Sternberg attorney escrow account, most of Plaintiff's Purchase Price and monies also sent to Sternberg's trust account by VRC. RFA #75

(76) Sternberg failed to undertake any independent investigation or otherwise perform any due diligence to confirm that "title transfer" to the Goods purchased by Plaintiff happened "contemporaneously with the funds [paid by Plaintiff] being released to Seller." RFA #76

(77) ASOLARDIAMOND, LLC ("ASD") is an entity with no assets, that that was undercapitalized, and that is owned and controlled by defendant Gary Weiss. RFA #77

(78) Gross wrote texts to Plaintiff on or about February 15, 2022, in which Gross stated that Plaintiff could cancel the purchase and obtain a refund of the Purchase Price. RFA #78

(79) True and correct copies of the texts that Gross wrote to Plaintiff on or about February 15, 2022, in which Gross stated that Plaintiff could cancel the purchase and obtain a refund of the Purchase Price, accompany these requests and are marked as Exhibits RFA-1 through RFA-4.[16] RFA #79

(80) The document marked as Sternberg Deposition Exhibit 9, at the Sternberg Deposition, is an accurate transcription of the texts that Gross wrote to Plaintiff, on or about February 15, 2022, in which Gross stated that Plaintiff could cancel the purchase and obtain a

[15] A copy of the email that Weiss sent to his attorney on July19, 2023, which 7/19/23 email was marked as Weiss Deposition Exhibit 9 at the Weiss deposition, also accompanies this Motion as Exhibit P-11.

[16] Copies of said 2/15/22 texts also accompany this Motion as Exhibits RFA-1 through RFA-4

refund of the Purchase Price.[17]  RFA #80

(81)    In Sternberg Deposition Exhibit 10, Sternberg informed Plaintiffs' attorney on February 15, 2022, as follows:

> "I am told the product will be arriving tomorrow at the location provided by your client. Let me know when your client is in possession of his product."[18]

RFA #81

(82)    On February 16, 2022, Plaintiff emailed a letter to Gross in which Plaintiff informed Gross as follows (emphasis in original):

> "Yesterday [i.e., 2/15/22] your attorney Manfred Sternberg told my attorney, Gary Lightman, that the goods for my purchase order #18315 had been shipped and should be received at my warehouse in Glen Mills, PA, today [2/16/22]. On February 16, 2022,
>
> But as of today, February 16, 2020, I have not received a Bill of Lading (BOL) or any other shipping documents pertaining to this shipment.  Please email me the BOL and any relevant shipping documents that identify the shipment and confirms the delivery of all goods I ordered.  **I NEED ALL SHIPPING DOCUMENTS TODAY**."

RFA #82

(83)    A true and correct copy of Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition.[19]  RFA #83

(84)    Neither Gross nor Sternberg sent Plaintiff the Bill of Lading or other shipping documents pertaining to the alleged shipment, in response to Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg, and was marked as Sternberg Deposition Exhibit 12

---

[17] A copy of Sternberg Deposition Exhibit 9, marked at the Sternberg Deposition, accompanies this Motion as Exhibit P-12.

[18] A copy of Sternberg Deposition Exhibit 10, marked at the Sternberg Deposition, accompanies this Motion as Exhibit P-13.

[19] A true and correct copy of Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg was marked as Sternberg Deposition Exhibit 12 at the Sternberg deposition. accompanies this Motion as Exhibit P-14.

at the Sternberg Deposition. RFA #84

(85) Neither Gross nor Sternberg responded to Plaintiff's 2/16/22 email (that was sent to and received by Gross and Sternberg, and was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition), by informing Plaintiff that the goods were not shipped as represented. RFA #85

(86) The Test Kits that were referenced in Plaintiff's 2/16/22 email (that was sent to and received by Gross and Sternberg, and was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition.), in fact were not delivered to Plaintiff, either by 2/16/22, or any time in February 2022. RFA #86

(87) On February 16, 2022, Plaintiff sent an email to Gross and Sternberg, canceling the Plaintiff's purchase transaction and demanding the return of the $2 million Purchase Price that Plaintiff paid for the Test Kits that were never delivered. RFA #87

(88) A true and correct copy of Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg canceling the purchase and demanding a full refund was marked as Sternberg Deposition Exhibit 13 at the Sternberg Deposition.[20] RFA #88

(89) Plaintiff through its counsel also notified Sternberg on February 15, 2022, not to make any further disbursements from Sternberg's attorney escrow account, in a phone call and then an email exchange, that was memorialized as Sternberg Deposition Exhibit 11 at the Sternberg Deposition.[21] RFA #89

(90) Sternberg continued to make disbursements from the Sternberg trust account on and after 2/15/22, even after being put on notice not to make any further disbursements from his trust account. RFA #90

(91) Section 11 of the SPA states in part as follows:

> "…. if Buyer in any way attempts to circumvent Seller, Seller will be entitled to liquidated damages of $50,000 from Buyer, or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer."

RFA #91

---

[20] A copy of Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg canceling the purchase and demanding a full refund, that was marked as Sternberg Deposition Exhibit 13 at the Sternberg deposition, also accompanies this Motion as Exhibit P-15.

[21] A copy of the 2/15/22 email from Plaintiff's counsel to Sternberg also accompanies this Motion as Exhibit P-16.

(92) The SPA does not allow Gross and Sternberg to retain the $1,965,600.00 Purchase Price paid by Plaintiff for the Test Kits, and also not make delivery of the Test Kits to Plaintiff. RFA #92

(93) There is no agreement between Plaintiff, on the one hand, and Gross and Sternberg, on the other hand, that would allow Gross and Sternberg to retain the $1,965,600.00 Purchase Price paid by Plaintiff for the Test Kits, and also not make delivery of the Test Kits to Plaintiff. RFA #93

(94) The document marked as Sternberg Deposition Exhibit 32 at the Sternberg Deposition, is a true and correct copy of a text sent by Sternberg to Gross, shortly after February 25, 2022.[22] RFA #94

(95) In Sternberg Deposition Exhibit 32, Stenberg states: "he [referring to Weiss] is buying himself and his lawyer a bunch of bad pr and claims of fraud and wire fraud." RFA #95

(96) In Sternberg Deposition Exhibit 32, Stenberg states: "especially last Friday when he [referring to Weiss] said less than 45 min away and I scrambled to send him another $190k [referring to the $190,000.00 wire transfer made by Sternberg on Friday, 2/25/22 to Zekaria]. RFA #96

(97) In Sternberg Deposition Exhibit 32, Stenberg writes (emphasis added):

> "**That** [referring to Wiess's claim that he needed another $190,000 in order to deliver the Test Kits] **is classic fraud in the inducement and can only be cured by delivery or return of all money**."

RFA #97

(98) Weiss filed an Answer to Plaintiff's Complaint that Weiss filed under oath on September 12, 2023 [ECF 105], subject to the penalties for perjury. RFA #98

(99) Deposition Exhibit Weiss-7 is a true and correct copy of the Answer to Plaintiff's Complaint that Weiss filed under oath on September 12, 2023 [ECF 105], subject to the penalties for perjury.[23] RFA #99

(100) In the Answer to Plaintiff's Complaint that Weiss filed under oath on September 12, 2023 [ECF 105], subject to the penalties for perjury, Weiss claimed that: (a) he took delivery

---

[22] A copy of the document marked as Sternberg Deposition Exhibit 32 at the Sternberg deposition, the text sent by Sternberg to Gross, shortly after February 25, 2022 also accompanies this Motion as Exhibit P-17.

[23] A copy of the Answer filed by Weiss to Plaintiff's Amended Complaint that Weiss filed under oath on September 12, 2023 [ECF 105], subject to the penalties for perjury, accompanies this Motion as Exhibit P-18.

of 355,200 Test Kits on February 7, 2022, (b) but he could not deliver the Test Kits because Gross and Sternberg failed to supply him with Bills of Lading, and (c) he then had the Test Kits transported to and held in storage for about two weeks by Available Moving & Storage ("AMS"), and (d) he "repeatedly requested the Bill of Lading, and requisite details, from the Gross and Sternberg Defendants" without success, and (e) "still having not received the Bill of Lading, the Weiss Defendants made arrangements to retrieve the test kits form the transport facility" [AMS], and (f) "upon arrival at the transport facility, the Weiss Defendants learned that the test kits were no longer on the truck and that they could not be located." [ECF 105, Weiss Answer to Plaintiff's Complaint, at ¶¶ 172 – 183].  RFA #100

(101)   Weiss admitted in his Weiss Deposition, that he did not confront AMS when he learned (as he claimed) that "the test kits were no longer on the truck and that they could not be located" and Weiss also admitted that he did not contact the police or make a police report about the missing Test Kits, and that he also did not notify Gross or Sternberg about the alleged disappearance of the Test Kits.  RFA #101

(102)   In the Weiss Deposition conducted under oath on February 16, 2024, Weiss subsequently made a claim inconsistent with the claims he made in his 9/12/23 Answer filed in Court in this case [ECF 105] – in the Weiss Deposition Weiss claimed under oath that he was able to pick up the Test Kits from AMS, but when he brought the truck back to New Jersey and checked the Test Kits later that morning, Weiss claims he discovered that someone had taken all of the Test Kits and instead replaced the Test Kits with rice in the Test Kit boxes.[24]  RFA #102

(103)   Weiss admitted in his Weiss Deposition, that he did not confront AMS when he learned (as he claimed) that the Test Kits had been removed from their boxes and replaced with rice, and Weiss also admitted that he did not contact the police or make a police report about the missing Test Kits being replaced with rice, and also admits that he did not notify Gross or Sternberg about the alleged Test Kits being replaced with rice.[25]  RFA #103

(104)   Weiss admitted in his Weiss Deposition, that he did not take any pictures of the Test Kit boxes being replaced with rice, or otherwise create any documents to evidence this claim.[26] RFA #104

(105)   Neither Weiss nor ASD ever provided a Manifest or Bill of Lading to Gross or CHG.  RFA #105

---

[24] Excerpts from the 2/16/24 Weiss Deposition transcript in which Weiss claimed that the Test Kits had turned to rice, accompany this Motion as Exhibit P-19.

[25] Excerpts from the 2/16/24 Weiss Deposition transcript in which Weiss admitted that he did not make a Police Report or confront AMS, also accompany this Motion as Exhibit P-19.

[26] Excerpts from the 2/16/24 Weiss Deposition transcript in which Weiss admitted that he did not take any pictures of the Test Kit boxes being replaced with rice, or otherwise create any documents to evidence this claim, also accompany this Motion as Exhibit P-19.

(106) The picture marked as RFA-5, a copy of which accompanied the Requests for Admission (and also accompanies this Motion as Exhibit RFA-5 se requests, is picture that Weiss took of boxes on a truck, that Weiss claimed were the Test Kits purchased by Plaintiff.[27] RFA #106

(107) The picture marked as RFA-5, is a picture of less than all of the 151,200 Test Kits that Plaintiff purchased. RFA #107

(108) On May 31, 2022, Gross wrote an email to Sternberg in which Gross stated that Sternberg still had $400,000 or so left of the funds transferred to Sternberg. RFA #108

(109) A true and correct copy of the 5/31/22 email from Gross to Sternberg was marked as Sternberg Deposition Exhibit 23 at the Sternberg Deposition.[28] RFA #109

(110) VRC's purchase of their Test Kits was pursuant to a Sales and Purchase Agreement (the "VRC SPA") that contained terms and conditions similar to the SPA used for Plaintiff's purchase. RFA #110

(111) Paragraph 6 of the VRC SPA clearly states as follows (emphasis added):

> "Once the transferred funds [the Purchase Price] have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. **Title transfer shall happen contemporaneously with the funds being released to Seller**."

RFA #111

(112) VRC never received the 204,120 Test Kits that were purchased from Gross and/or Sternberg. RFA #112

(113) Gross and Sternberg did not refund to VRC, any of the $2,449,440, that VRC transferred into the Sternberg attorney escrow account for VRC's purchase of 204,120 Test Kits from Gross and Sternberg. RFA #113

(114) On March 1, 2022, William Berman, Esquire, attorneys for VRC, sent an email to Zekaria, in which (a) Berman informed Zekaria that after VRC transferred $2,449,440 to Sternberg's trust account, "Sternberg has advised that he transferred the funds to [Zekaria's] trust account" and (b) that the funds paid by VRC and deposited with Sternberg in trust were "not to be released until a Bill of Lading was issued" and Berman also states that (c) his review of the history

[27] A copy of this picture also accompanies this Motion as Exhibit RFA-5.

[28] A copy of the 5/31/22 email from Gross to Sternberg that was marked as Sternberg Deposition Exhibit 23 at the Sternberg deposition, also accompanies this Motion as Exhibit P-20.

has "led our group to conclude that this was a fraudulent transaction" and that (d) Berman hopes that Zekaria "can explain that it was not and have the funds returned immediately" and (e) that "there has been no delivery of any product to [his] client" and (f) Berman tells Zekaria that his client has made "previous demands for the return of the funds." RFA #114

(115) A true and correct copy of the 3/1/22 email from Berman to Zekaria in which those statements were made is included as part of the document marked as Sternberg Deposition Exhibit 38 at the Sternberg Deposition.[29] RFA #115

(116) Zekaria forwarded Berman's 3/1/22 email to Sternberg and asked Sternberg to "address this." RFA #116

(117) A true and correct copy of the 3/1/22 email from Zekaria forwarding Berman's 3/1/22 email to Sternberg is included as part of the document marked as Sternberg Deposition Exhibit 38 at the Sternberg Deposition. RFA #117

(118) Sternberg then had a phone conversation with and sent an email to William Berman that same day, March 1, 2022. RFA #118

(119) The document marked as Sternberg Deposition Exhibit 38 at the Sternberg Deposition, is a true and correct copy of an email sent by Sternberg to William Berman, Esquire, attorneys for VRC, telling him not to further contact Zekaria and asking him to "wait a few more days and plan for delivery."[30] RFA #119

(120) VRC did not get the 204,120 Test Kits that VRC purchased from Gross and/or Sternberg. RFA #120

(121) Gross and Sternberg did not refund the $2,449,440 that VRC wired to Sternberg to hold in trust, for VRC's purchase of their Test Kits. RFA #121

(122) The document marked as Sternberg Deposition Exhibit 29 at the Sternberg Deposition is a true and correct copy of an email dated March 1, 2022, from Weiss to Sternberg and Gross, in which Weiss states as follows:

> "Of course as I said many times before If you would like a refund you have no questions asked."[31]

---

[29] A copy of the 3/1/22 email from Berman to Zekaria in which those statements were made, that was part of the document marked as Sternberg Deposition Exhibit 38 at the Sternberg deposition, also accompanies this Motion as Exhibit P-21.

[30] This document also accompanies this Motion as Exhibit P-21.

[31] A copy of the document marked as Sternberg Deposition Exhibit 29 at the Sternberg Deposition the email dated March 1, 2022, from Weiss to Sternberg and Gross, also accompanies this Motion as Exhibit P-22.

RFA #122

(123) Weiss claims he delivered diamonds and other gemstones worth $3 million to $4 million to Gross and Sternberg after he could not deliver the Test Kits. RFA #123

(124) Both Weiss and Gross contend that Sternberg did not want the money back from Weiss and Zekaria (that Sternberg had wired to Weiss/Zekaria) because Sternberg did not want to "lose the profit" (as set forth in Sternberg Deposition Exhibit 30) and that it was Sternberg who wanted Weiss to give Gross and Sternberg the collateral (diamonds and gemstones worth $3 to $4 million) instead. RFA #124

(125) The documents marked as Sternberg Deposition Exhibits 29, 30, 31, 33, 34, and 35 at the Sternberg Deposition are true and correct copies of texts from Weiss and Gross and other documents from them, that memorialize that it was Sternberg who wanted Weiss to give collateral (diamonds and gemstones) instead of returning the money that Sternberg wired to Weiss and Zekaria.[32] RFA #125

(126) A list of the collateral that Weiss claims he delivered diamonds and other gemstones worth $4 million to Gross and Sternberg after he could not deliver the Test Kits, was marked as Sternberg Deposition Exhibit 28 at the Sternberg Deposition. RFA #126

(127) None of the diamonds and gemstones that Weiss gave as collateral to Gross and/or Sternberg was then delivered to Plaintiff, and Plaintiff has not received any proceeds from the sale of any of that collateral. RFA #127

(128) Sternberg had control over the disposition of the diamonds and gemstones that Weiss gave as collateral to Gross and/or Sternberg. RFA #128

(129) Sternberg offered to Randolph ("Randy") Adler, Esquire (counsel for VRC) to liquidate the collateral that Weiss gave to Gross and/or Sternberg, and pay the proceeds to VRC, in the event that Gross and Sternberg failed to deliver to VRC the Test Kits that VRC purchased from Gross and/or Sternberg – Mr. Adler memorialized Sternberg's offer in Adler's email to Sternberg dated March 13, 2022, a copy of which was marked as Weiss Deposition Exhibit 12 at the Weiss Deposition.[33] RFA #129

(130) Sternberg did not write back to Adler disputing what Adler wrote to him on 3/13/22

[32] Copies of the documents marked as Sternberg Deposition Exhibits 28, 29, 30, 31, 33, 34, and 35 at the Sternberg deposition are true and correct copies of texts from Weiss and Gross and other documents from them, also accompany this Motion and are marked as Exhibits P-23a through P-23g.

[33] A copy of Randy Adler's email to Sternberg dated March 13, 2022 which was marked as Weiss Deposition Exhibit 12 at the Weiss deposition, also accompanies this Motion as Exhibit P-24.

in Weiss Deposition Exhibit 12;  instead, Sternberg forwarded the email to Gross.  RFA #130

(131)   The document marked as Sternberg Deposition Exhibit 37 at the Sternberg Deposition, is a true and correct copy of a letter dated February 23, 2022, sent by Randolph ("Randy") Adler, Esquire, attorneys for VRC, to Sternberg, in which they accused Gross of failing to deliver the 204,120 Test Kits that VRC purchased.[34]  RFA #131

(132)   In his 2/23/22 letter to Sternberg, Mr. Adler also instructed Sternberg not to disburse any portion of the $2,449,440 that VRC wired to Sternberg to hold in trust, that Sternberg was required to hold in trust "until the transaction is complete…"  RFA #132

(133)   [no RFA #133 was set forth in plaintiff's RFAs]

(134)   VRC has sued Gross and Stenberg alleging they defrauded VRC –VRC claims they paid over $2.4 million to Gross and Sternberg for their purchase of Test Kits, and that they never received the Test Kits or the return of their money they wired to Sternberg's trust account.  RFA #134

(135)   The document marked as Sternberg Deposition Exhibit 39 is a true and correct copy of the Complaint that filed against Gross and Sternberg.[35]  RFA #135

(136)   There are other purchasers of Test Kits and other PPE equipment, that have claimed that they were defrauded by one or more of the Defendants, including:

       (a)  Nail & Beauty, LLC ("N&B"); and

       (b)  BELCO Distributors ("BELCO"); and

       (c)  Hand Safety LLC; and

       (d)  George Gianfacaro/ Indutex USA ("Indutex"); and

       (e)  George Carcia-Menocal, Esquire; and

       (f)  Daniel Rodin; and

---

[34] A copy of Randy Adler's letter to Sternberg dated February 23, 2022, which was marked as Sternberg Deposition Exhibit 37 at the Sternberg deposition, also accompanies this Motion as Exhibit P-25.

[35] A copy of the Complaint that VRC filed against Gross and Sternberg, which also was marked as Sternberg Deposition Exhibit 39 at the Sternberg deposition, also accompanies Plaintiff's Rule 56 Motion as Exhibit P-26.  VRC also sued the Sternberg Defendants and Gross Defendants in federal court, and a copy of that Complaint is marked as Exhibit P-35 accompanying this Motion.

(g) David Wright/DKW Consulting, Inc.; and

(h) Nationwide Medical Services ("NMS": and

(i) Yuba County Schools. ("Yuba"); and

(j) El Monte Unified School District (El Monte"); and

(k) Linda Coughlin or her client.

RFA #136

(137)   Gross and Sternberg had no intention to perform under the SPA.  RFA #137

(138)   Gross and Sternberg lacked the ability to perform under the SPA.  RFA #138

(139)   Contrary to the representations that Gross and Sternberg made to Plaintiff -- that they had the Test Kits available for purchase and shipment to Plaintiff – to induce Plaintiff to transfer the $1,965,600.00 Purchase Price to the Sternberg trust account, the Test Kits were not owned or available to Gross and Sternberg as they represented.  RFA #139

(140)   The Gross and Sternberg Attorney Defendants never provided Plaintiff with a Bill of Lading, from a recognized common carrier, and also failed to provide other shipping information to Plaintiff, as required under the SPA and as a prerequisite to the release of the $1,965,600.00 Purchase Price from Sternberg's the attorney escrow account.    RFA #140

(141)   To induce Plaintiff to make the wire transfer to them, Gross and Sternberg Defendants represented to Plaintiff that Plaintiff's $1,965,600.00 Purchase Price would remain in Sternberg's attorney escrow account, and that the $1,965,600.00 Purchase Price would not be released from the Sternberg attorney escrow account, unless and until the Covid Test Kits had been delivered to a common carrier for delivery to Plaintiff, and Plaintiff was supplied with the required Bill of Lading from a recognized common carrier evidencing that the Covid Test Kits were in transit to Plaintiff.  RFA #141

(142)   Prior to filing the lawsuit, Plaintiff and its counsel gave Defendants multiple opportunities to confirm that they did not fraudulently take Plaintiff's $1,965,600.00 Purchase Price, and that Defendants in fact shipped the Covid Test Kits to Plaintiff.  RFA #142

(143)   However, Defendants continued to make lies and misrepresentations to Plaintiff concerning the status of the delivery of the Covid Test Kits.  RFA #143

(144)   For example, on or about February 8, 2022, Sternberg misrepresented to Plaintiff that the Covid Test Kits were en route and would be delivered to Plaintiff by no later than February 17, 2022, when in fact they were not with a common carrier or otherwise being shipped to Plaintiff; as of February 17, 2022, and as of the filing of Plaintiff's Complaint), no delivery had been made.

*See* Exhibit 3 to the Complaint.[36]  RFA #144

(145)   Plaintiff on numerous occasions prior to filing suit, requested that Defendants provide Plaintiff with a Bill of Lading and other shipping documents to show Seller had delivered the Covid Test Kits to a common carrier for delivery to Plaintiff.  *See* Exhibit 4 to the Complaint.[37] RFA #145

(146)   However, Defendants failed and refused to deliver this shipping documentation to Plaintiff.  RFA #146

(147)   On or about February 16, 2022, a man named "Shraga" contacted Plaintiff and advised Plaintiff the Covid Test Kits were on a truck and that delivery would be made to Plaintiff by 4:00 pm on February 16, 2022.  RFA #147

(148)   When the alleged shipment did not arrive at 4:00 p.m. on 2/16/22, Plaintiff contacted Shraga who advised Plaintiff the truck had "broken down" and that the Kits would be delivered in the morning of February 17, 2022.  RFA #148

(149)   The Test Kits in fact were not delivered to Plaintiff, either on February 16, 2022, or on February 17, 2022, or at any time before the lawsuit was filed, or thereafter.  RFA #149

(150)   Defendant Gary Weiss admitted that he was the person who contacted Plaintiff using the name "Shraga."  RFA #160

(151)   The document marked as Weiss Deposition Exhibit 13 is a true and correct copy of a text from Zekaria to Gross.[38]  RFA #151

(152)   The document marked as Weiss Deposition Exhibit 14 is a true and correct copy of

---

[36] A copy of the February 8, 2022, email from Sternberg, in which Sternberg misrepresented to Plaintiff that the Covid Test Kits were en route and would be delivered to Plaintiff by no later than February 17, 2022 (when in fact they were not with a common carrier or otherwise being shipped to Plaintiff; as of February 17, 2022), which email also was attached as Exhibit 3 to Plaintiff's Amended Complaint, also accompanies this Motion as Exhibit P-27.

[37] Copies of the requests made by Plaintiff on numerous occasions prior to filing suit, for Defendants to provide Plaintiff with a Bill of Lading and other shipping documents to show Seller had delivered the Covid Test Kits to a common carrier for delivery to Plaintiff, which requests also were attached as Exhibit 4 to Plaintiff's Amended Complaint, also accompany this Motion as Exhibit P-28.

[38] A copy of the document marked as Weiss Deposition Exhibit 13, which is a text from Zekaria to Gross, also accompanies this Motion as Exhibit P-29.

a text from Zekaria to Gross.[39]  RFA #152

(153)   The document marked as DZ 00036 (and also marked as Zekaria-00001) is a true and correct copy of a WhatsApp text chat between Zekaria and Weiss and Gross on February 4, 2022, in which Gross writes to Weiss as follows, as respects the $1.9 million wire transfer made by Sternberg to Zekaria on February 4, 2022:[40]

> "Gary, please confirm to Daphna here.
> From the 1.9 m 65% is yours. The rest is mine.
> Thanks."

RFA #153

(154)   In that same document marked as DZ 00036 (and also marked as Zekaria-00001), Weiss responds to the text from Gross as follows:

> "Hi, Daphna, I confirm 35% of 1.9m going
> To Sam, and 65% of 1.9 m to me Gary Weiss."

RFA #154

(155)   The document marked as Zekaria-00002 is a true and correct copy of a WhatsApp text chat between Zekaria and Weiss and Gross on February 15, 2022, in which Daphna writes  as follows, as respects the $250,000.00 wire transfer made by Sternberg to Zekaria on February 15, 2022:[41]

> "Daphna [at 3:37 pm]: It's my understanding that I am about
> to receive an additional wire of 250,000 which is 130,000 to
> Gary Weiss and the rest for my additional fees?

RFA #155

(156)   In that same document marked as Zekaria-00002, Gross then writes as follows:

> "Shlomi [Weiss]" Gary please confirm to her

---

[39] A copy of the document marked as Weiss Deposition Exhibit 14, which is a text from Zekaria to Gross, also accompanies this Motion as Exhibit P-30.

[40] A copy of the document marked as DZ 00036 (and also marked as Zekaria-00002), which is a WhatsApp text chat between Zekaria and Weiss and Gross on February 4, 2022, is included as Exhibit P-31 accompanying this Motion.

[41] A copy of the document marked as DZ 00036 (and also marked as Zekaria-00001), which is a WhatsApp text chat between Zekaria and Weiss and Gross on February 15, 2022, is included in Exhibit P-31 accompanying this Motion.

> 250K is coming in (and she is waiting for it)"
> And 130 is yours."[42]

RFA #156

(157) In that same document marked as Zekaria-00002, Weiss then writes as follows:

> "Gary Weiss: Hi Daphna, that is correct you are sending me 130K, thanks."[43]

RFA #157

(158) In that same document marked as Zekaria-00002, Zekaria then writes as follows:

> "Daphna: Awesome. Thanks for the confirmation and opportunity to represent you."[44]

RFA#158

(159) Defendants worked in concert with each other to deprive Plaintiff of the $1,965,600.00 Purchase Price that Plaintiff paid to purchase 151,200 Test Kits. RFA#159

(160) Each of the Defendants received and retained portions of the Purchase Price funds that Plaintiff wired into Sternberg's trust account. RFA#160

(161) Each of the Defendants received and retained portions of the funds that VRC wired into Sternberg's trust account to purchase their Test Kits. RFA#161

(162) As Sternberg aptly stated to Gross in Sternberg Deposition Exhibit 32, the conduct of Defendants:[45]

> "is classic fraud in the inducement and can only be cured by delivery
> or return of all money."

RFA#162

(163) Plaintiff was defrauded by the conduct of the Defendants. RFA#163

(164) Defendants engaged in a wrongful civil conspiracy that caused damages to Plaintiff, including defrauding Plaintiff out of the $1,965,600.00 Purchase Price that Plaintiff paid to purchase 151,200 Test Kits that Defendants failed to deliver to Plaintiff. RFA#164

---

[42] This is part of Exhibit P-31.

[43] This is part of Exhibit P-31.

[44] This is part of Exhibit P-31.

[45] *See* items (94) through (97) and footnote 18, *supra*, and Exhibit P-17 that accompanies this Motion.

(165)  Gross is personally liable for the damages caused to the Plaintiff and the corporate veil of CHG should be pierced.  RFA#165

(166)  Weiss is personally liable for the damages caused to the Plaintiff and the corporate veil of ASD should be pierced.  RFA#166

(167)  Sternberg is personally liable for the damages caused to the Plaintiff and the corporate veil of MSA should be pierced.  RFA#167

(168)  Zekaria is personally liable for the damages caused to the Plaintiff and the corporate veil of S&K should be pierced.  RFA#168

(169)  Each of Gross and Sternberg and Weiss and Zekaria are liable to Plaintiff for their individual participation in their fraudulent scheme, pursuant to the Participation Theory.  RFA#169

(170)  Each of Gross and Sternberg and Weiss and Zekaria have been unjustly enriched and thus are liable to Plaintiff.  RFA#170

(171)  Each of Gross and Sternberg and Weiss and Zekaria have tortiously interfered with the contractual relations of Plaintiff and its customers, and thus are liable to Plaintiff.  RFA#171

(172)  Each of Gross and Sternberg and Weiss and Zekaria have tortiously interfered with the prospective economic advantage of Plaintiff and its customers, and thus are liable to Plaintiff. RFA#172

10.  Plaintiff filed for a default against defendants Gary Weiss and ASOLARDOIAMOND, LLC, a/k/a ASOLAR, LLC, on December 21, 2023 [ECF 141]; Lightman Certification at ¶ 12.

11.  Plaintiff filed for a default against defendants Daphna Zekaria, Esquire, and Sokolski & Zekaria, PC, on August 13, 2024 [ECF 190]; Lightman Certification at ¶ 13.

12.  Plaintiff filed for a default against defendants Samuel Gross, a/k/a Shlomo Gross, and Charlton Holdings Group, LLC, on August 31, 2023 [ECF 100]; Lightman Certification at ¶ 14.

13.  Plaintiff is entitled to a Judgment in favor of plaintiff, against defendants Daphna Zekaria, Esquire, and Sokolski & Zekaria, PC, and Samuel Gross, a/k/a Shlomo Gross, and Charlton Holdings Group, LLC, for compensatory damages in the amount of $1,965,600.00, based

upon their admissions, as set forth in Nos. 8 and 9, above.

14. Plaintiff is entitled to a Judgment in favor of plaintiff, against defendants Daphna Zekaria, Esquire, and Sokolski & Zekaria, PC, and Samuel Gross, a/k/a Shlomo Gross, and Charlton Holdings Group, LLC, and Gary Weiss, and ASOLARDIAMOND, LLC, a/k/a ASOLAR, LLC, for compensatory damages in the amount of $1,965,600.00, based upon the defaults filed by plaintiff against said defendants, as set forth in Nos. 10-12, above.

15. Plaintiff is entitled to a Judgment in favor of plaintiff, against defendants Daphna Zekaria, Esquire, and Sokolski & Zekaria, PC, and Samuel Gross, a/k/a Shlomo Gross, and Charlton Holdings Group, LLC, and Gary Weiss, and ASOLARDIAMOND, LLC, a/k/a ASOLAR, LLC, for punitive damages, based upon the aforesaid undisputed material facts, which establish by clear and convincing evidence as a matter of law that the conduct of said defendants was egregious and in bad faith.

**UNDISPUTED FACTS PERTAINING TO CLAIMS**
**AGAINST STERNBERG DEFENDANTS**

16. Paragraph 4 of the SPA clearly states that "The product lots may be located in more than one (1) location or warehouse in various locales in the United States." Exhibit P-3, the SPA, at ¶ 4.

17. On January 21, 2022, the date of the SPA, none of the defendants had any COVID Test Kits, let alone "product lots" that were located in any location or warehouse, as was represented to TSH to induce them to enter into the SPA. RFA Nos. 23, 24, and 47; Exhibits P-9 and P-10.

18. Paragraph 4 of the SPA clearly states that "Immediately after delivering a Purchase Order, Buyer [TSH] agrees to authorize a wire be made to Seller {Gross Defendants] through the Seller's Attorney [the Sternberg Defendants'] Escrow Account identified in Exhibit B for the

actual number of product in the Purchase Order." Exhibit P-3, the SPA, at ¶ 4.

19. Paragraph 5 of the SPA clearly states that "Seller agrees to sell 151,200 boxes of 2 count iHealth COVID 19 home test kits. The Buyer shall transfer the aforementioned funds to the Seller's Attorney [the Sternberg Defendants'] Escrow Account listed in Exhibit B…." Exhibit P-3, the SPA, at ¶ 4; Sternberg RFA #3.

20. Exhibit B included in the SPA had the following header, and contained wire instructions for a wire transfer into Sternberg's trust account (emphasis in original):

"Exhibit "B" – Escrow Account
**Manfred Sternberg Jr. Attorney at Law IOLTA –**
**Trust Account Wire Instructions"**

Exhibit P-2, at p. 5 of 7.

21. On January 21, 2022, SAFETY HOUSE wired the $1,965,600.00 Purchase Price to Sternberg's attorney trust account, and submitted TSH's Purchase Order #18315 for the purchase of the 151,200 COVID Test Kits, which clearly and unambiguously had a "Deliver by" date of January 25, 2022. Exhibit P-2.

22. Sternberg is identified as the "vendor" in TSH's Purchase Order. Sternberg RFA #8; Exhibit P-2.

23. As late as March 18, 2022, Sternberg did not have a copy of the SPA executed by his client, Gross. Sternberg RFA #18.

24. Paragraph 6 of the SPA clearly states that a "BILL OF SALE (EXHIBIT D) shall be provided , and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. **Title transfer shall happen contemporaneously with funds being released to Seller**." Exhibit P-3, the SPA, at ¶ 4 (emphasis added).

25. The SPA drafted by Sternberg states in paragraph 8 that "The Seller agrees to

coordinate and pay for common carrier transportation to deliver the Goods from the Seller's warehouse(s) to Buyer at Seller's cost and is included in the purchase price paid to Seller by Buyer hereunder"  but the Seller did not have any warehouses and did not own any COVID Test Kits. Exhibit P-3, at ¶ 8; Exhibit P-37, Sternberg deposition transcript, at Tr. 106:4-107:14; RFA #28.

26.     The Bill of Sale that was provided to TSH, dated 1/21/22, is fraudulent.  *See* Nos. 31-32, *infra*., and cites therein.

27.     No Bill of Lading for the 151,200 COVID Test Kits ever was provided to TSH. Exhibit P-19, 2/16/24 Weiss deposition, at Tr. 169:6-173:7; *see* Nos. 33-35, *infra*, and cites therein.

28.     When TSH wired the $1,965,600 purchase price for the Test Kits into escrow, to the attorney escrow account of the Sternberg Defendants, Sternberg agreed not to release the funds from escrow until the conditions of the SPA (paragraphs 4, 5 and 6)were satisfied.  Exhibit P-3, the SPA, at ¶¶ 4, 5, and 6.

29.     The Sternberg Defendants released funds from their attorney trust account on February 1, 2022 ($219,240.00 wired directly to the Weiss Defendants), and again on February 4, 2022 ($1,911,960 wired to the Zekaria Defendants), *before* TSH had any goods or title to any goods, and *before* SAFETY HOUSE received a Bill of Sale, and *before* TSH received a Bill of Lading from a recognized common carrier evidencing that the good were in transit to TSH, and *before* any goods were with a common carrier en route for delivery to TSH.  *See* cites in Nos. 29-31, *infra,* and RFA Nos. 7, 41 and 45.

30.     Defendants failed to deliver the 151,200 iHealth Covid-19 test kits purchased by TSH, either by the 1/25/22 "deliver by" date set forth in TSH's 1/21/22 Purchase Order, or at any time prior to TSH canceling the Order and filing this lawsuit.  Scully Certification, at ¶¶  13-18; RFA #37, 41, and 45.

31. Defendants provided TSH with a fraudulent Bill of Sale:

(a)      TSH received a Bill of Sale dated January 21, 2022.  Exhibits P-2, P-5, P-5a).

(b)      Sternberg attached that 1/21/22 Bill of Sale to the Motion to Dismiss that the Sternberg Defendants filed in this case on April 1, 2022 [ECF 13-9, at p. 9 of 10]. Exhibit P-5a.

(c)      On January 21, 2022, none of the defendants owned or had possession of any COVID Test Kits – the first time that defendants claim they had COVID Test Kits is Gary Weiss's claim that he purchased 365,790 COVID Test Kts on February 6, 2022.  Exhibit P-19, Gary Weiss 2/16/24 deposition transcript at Tr. 78:7-12, 82:6-21; Exhibit P-9; Sternberg RFA # 22; *see* RFA #22 generally (not disputed by other defendants).

(d)      At no time from January 21, 2022 through the present [June 17, 2024], did the Sternberg Defendants or the Gross Defendants have possession of the 151,200 Test Kits purchased by Plaintiff.  Sternberg RFAs #23, #24, #28, and #57 *see* RFAs #23, #24, #28, and #57 generally (not disputed by other defendants).

(e)      The Sternberg Defendants and Gross Defendants claim that they bought COVID Test Kits on January 26, 2022, from the Weiss Defendants, and rely upon an invoice dated January 26, 2022, that Gary Weiss sent to them, billing them for the COVID Test Kits.   Exhibit P-10.

(f)      But when Gary Weiss sent the Sternberg Defendants and the Gross Defendants his 1/26/22 invoice, neither Weiss nor his LLC owned or had possession of any COVID Test Kits, let alone the 151,200 COVID Test Kits that TSH paid to purchase.  Exhibit P-19, Gary Weiss 2/16/24 deposition transcript at Tr. 78:7-12, 82:6-21; Sternberg RFA #73 and #74;

*see generally* RFA #73 and #74 (not disputed by defendants)..

(g) The Sternberg Defendants did not physically inspect the COVID Test Kits that the Weiss Defendants claim they purchased, and the Sternberg Defendants failed to undertake any due diligence to confirm the existence of the COVID Test Kits; other than Sternberg merely relying on Gross (a felon convicted of embezzlement) telling him that he saw the goods at Weiss's warehouse. Exhibit P-37, Sternberg Deposition, at Tr. 183:3-184:22; RFA Nos. 75-76.

(h) But the Gross Defendants did not physically inspect the alleged COVID Test Kits at any time. Exhibit P-19, 2/16/24 Weiss deposition transcript, at Tr. 72:17-23.

32. TSH was supposed to receive a Bill of Sale, as well as a Bill of Lading from a recognized common carrier evidencing that the goods were in transit to TSH, before Sternberg could release the $1,965,600 funds wired by Plaintiff to Sternberg's trust account for the purchase of the goods, but Stenberg released the funds from his attorney trust account before those documents were supplied to TSH: Exhibit P-3, at ¶ 6; Scully Certification, at ¶¶ 5-10.

33. TSH never received a bona fide Bill of Lading for the151,200 COVID Test Kits purchased by TSH. Scully Certification, at ¶¶ 13-15; Exhibit P-19, 2/16/24 Weiss deposition, at Tr. 169:6-173:7, 236:9-238:2.

34. Defendants failed to deliver a Bill of Lading to SAFETY HOUSE evidencing that the 151,200 COVID Test Kits were with a recognized common carrier en route to TSH. Scully Certification, at ¶¶ 13-15.

35. Sternberg was not supposed to release the $1,965,600.00 from his attorney trust account until SAFETY HOUSE received assurances that TSH had purchased the COVID Test Kits and that they were en route to TSH, by TSH's receipt of a Bill of Sale for the COVID Test Kits, as well as a Bill of Lading from a recognized common carrier that they were being delivered to

TSH. Exhibit P-3; Scully Certification at ¶¶ 3-8.

36. *Sternberg made transfers out of escrow from his attorney trust account, totaling at least $2,131,200.00, before any let alone 151,200 Test Kits were purchased by any Defendants*. *See* No. 28 above, and cites therein; *see also* Sternberg RFAs #58 and #59; *see generally* RFAs #58-59 (not disputed by defendants).

37. Defendants did not deliver the 151,200 COVID Test Kits to SAFETY HOUSE. Scully Certification, at ¶ 13.

38. Defendants also failed to return TSH's $1,965,600.00 Purchase Price to TSH. Scully Certification, at ¶¶ 13, 54, and 58.

39. Instead, defendants kept all of TSH's $1,965,600.00 Purchase Price and divided TSH's money up amongst themselves. Exhibits P-7 and P-31.

40. Not only did TSH receive a fraudulent 1/21/22 Bill of Sale for COVID Test Kits (that the defendants in fact did not own at the time), but throughout the relevant time, defendants made numerous misrepresentations to TSH, including about the delivery of the COVID Test Kits (which were not delivered as promised):

(a) The Sternberg Defendants made repeated misrepresentations about the purported delivery of the COVID Test Kits to TSH, and when Sternberg made his repeated representations to TSH that the COVID Test Kits were en route for delivery to TSH, Sternberg knew or should have known that his representations were false, since no Bill of Lading had been obtained by them or sent to SAFETY HOUSE, and no COVID Test Kits were delivered to TSH as Sternberg represented. Exhibit P-19, 2/16/24 Gary Weiss deposition transcript, at Tr. 90:13-19, 239:5-19; Scully Certification at ¶¶ 13-15, 41-44; Exhibits P-13 and P-27.

41. The Gross Defendants and Sternberg Defendants lied to SAFETY HOUSE about

TSH canceling the transaction and getting a full refund:

(a)      The Gross Defendants told TSH on 2/15/22 that SAFETY HOUSE could cancel the transaction and then notify the Sternberg Defendants to get a full refund of the $1,965,600.00 purchase price that TSH wired to the Sternberg Defendants.  Exhibit P-12, and Exhibits RFA-1 through RFA-4; Scully Certification, at ¶¶ 48-50.

(b)      The Gross Defendants on 2/15/22 told TSH to contact the Sternberg Defendants for the refund because TSH wired the money to Sternberg, and Sternberg had the money.  *Id*.

(c)      TSH then canceled the transaction on 2/16/22 after being told by the Gross Defendants that TSH could do so, and TSH requested a full refund of the $1,965,600.00 Purchase Price.   Exhibits P-14 and P-15; Scully Certification, at ¶¶ 48-50.

42.      After TSH canceled the transaction and contacted Sternberg for a full refund, the Stenberg Defendants simply ignored what their client (the Gross Defendants) had represented, and instead the Sternberg Defendants continued to disburse the funds amongst the defendants.  Exhibits P-7 and P-12; Scully Certification, at ¶¶ 52-54.

43.      The terms of the Sale and Purchase Agreement (the "SPA") do not allow defendants to keep the $1,965,600.00 Purchase Price and also not deliver the test kits.  Exhibit P-3, at ¶ 11 -- but even that that damages limitation (in paragraph 11 of the SPA) is not applicable because in the instant case, it was defendants who breached the SPA (by failing to deliver the COVID Test Kits).

44.      The terms of the Sale and Purchase Agreement (the "SPA") do not allow defendants to keep the $1,965,500 Purchase Price and also not deliver the test kits.  Exhibit P-3; RFA #93.

45.      There is no agreement that would allow Gross and Sternberg to retain TSH's $1,965,600.00 purchase price, and also not make delivery of the COVID Test Kits to TSH. Sternberg RFA #93.

46.     The Sternberg Defendants **co**ntinued to make distributions from the Sternberg attorney trust account after Sternberg expressly was put on notice not to make any further disbursements.   Exhibits P-7 and P-16.

47.     VRC Medical Supplies has sued the Sternberg Defendants and the Gross Defendants, alleging in their lawsuit the same fraud scheme that is the subject of TSH's lawsuit in the instant case -- that said defendants defrauded VRC out of the $2,449,440.00 that VRC wired to the Sternberg Defendants for VRC's purchase of 204,120 COVID Test Kits; similar to what TSH has alleged in this lawsuit, VRC alleges in its Complaint that the Sternberg Defendants kept VRC's $2,449,440 funds and failed to deliver the 204,120 Test Kits that VRC wired to Sternberg for the purchase of those Test Kits.  Exhibit P-35; *see also*, Sternberg RFAs #55, #56

48.     Sternberg made the following admissions in response to the 6/17/24 Requests for Admission:

(a)     The Sternberg Defendants were unable to admit whether Weiss purchased 365,790 Test Kits from Mask & Eldiven.  Sternberg RFA #47.

(b)     The Sternberg Defendants were unable to admit whether the 2/6/22 M&E document that Weiss produced was the document that Weiss claimed evidenced his purchase of 365,790 Test Kits from Mask & Eldiven (Sternberg RFA #48).

(c)     The Sternberg Defendants were unable to admit whether the document marked as Weiss Deposition Exhibit 5 was a copy of the 2/6/22 M&E document (Sternberg RFA

#49), or anything else about the 2/6/22 M&E document.  (Sternberg RFAs #48-#54).


                                          LIGHTMAN & MANOCHI

                                          BY: /s/ Gary P. Lightman
                                          GARY P. LIGHTMAN, ESQUIRE
                                          GLENN A. MANOCHI, ESQUIRE
                                          Identification Nos. 28529 & 64223
                                          600 W. Germantown Pike, Suite 400
                                          Plymouth Meeting, PA 19462
                                          Tel. No. 215-760-3000
                                          garylightman@lightmanlaw.com
                                          gmanochi@lightmanlaw.com


Date:  September  30, 2024                 Attorneys for Plaintiff TSH

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 2022-cv-00688 (JMY)** |
| **v.** | : | |
| **MANFRED STERNBERG, ESQUIRE, and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SAMUEL GROSS a/k/a SHLOMO GROSS, and GARY WEISS, and ASOLARDIAMOND, LLC a/k/a, ASOLAR. LLC, and DAPHNA ZEKARIA, ESQUIRE, and SOKOLSKI & ZEKARIA, P.C.** | : | |
| **Defendants.** | : | |

**CERTIFICATION OF DANIEL J. SCULLY IN SUPORT OF PLAINTIFF'S RULE 56 MOTION FOR SUMMARY JUDGMENT AGAINST ALL DEFENDANTS**

DANIEL J. SCULLY, of full age, being first duly sworn upon his oath, states as follows:

1. I am the President of American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM, the Plaintiff in this lawsuit, and am the authorized representative of Plaintiff. I have knowledge of the facts set forth in this Certification, and of called to testify, could do so competently.

2. I respectfully submit this Certification in support of Plaintiff's Motion for Summary Judgment against each of the named defendants in this lawsuit, seeking summary judgment against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC (collectively the "Sternberg Defendants"), and against defendants Daphna Zekaria, Esquire, and Sokolski &

Zekaria, P.C. (collectively the "Zekaria Defendants"), and against defendants Gary Weiss and ASOLARDIAMOND, LLC, a/k/a ASOLAR, LLC (collectively the "Weiss Defendants"), and against defendants Sam Gross and Charlton Holdings Group, LLC (collectively the "Gross Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and seeking a final Default Judgment against the Gross Defendants and the Weiss Defendants and the Zekaria Defendants, pursuant to Rule 55 of the Federal Rules of Civil Procedure.

3.      Sales brokers for Sam Gross and Manfred Sternberg (primarily John Mann and Dick Gray) contacted me in January, 2022, shortly before January 21,  and inquired if TSH was interested in purchasing iHealth Covid-19 test kits.

4.      I was told that Sam Gross had hundreds of thousands of those test kits immediately available, but that they were selling fast, and that TSH had to move quickly to "get in the queue" if TSH wanted to purchase any test kits.

5.      TSH was induced to pay the $1,965,600.00 purchase price into escrow, to the attorney trust account of the Sternberg Defendants, based upon the representations of the Gross and Sternberg Defendants (through their sales brokers that communicated with me and were acting on their behalf), that the COVID Test Kits would be shipped to TSH forthwith, and that the $1,965,600.00 purchase price would not be released from escrow unless and until TSH was supplied both with a Bill of Sale, as well as a Bill of Lading from a recognized common carrier evidencing that the goods were owned by and in transit to TSH.

6.      The whole purpose of TSH sending the money into escrow to the attorney trust account of Manfred Sternberg (who was the attorney for Sam Gross, the seller), instead of directly to the Seller, was to provide TSH with assurances that Sternberg, who was an attorney duly licensed to practice law in Texas, would hold my purchase price in his attorney trust account, and

not release the Purchase Price from his attorney trust account, to his client, the Seller, unless and until TSH received satisfactory assurances that the COVID test kits actually were purchased by and en route to TSH, namely, by their delivery to us of a Bill of Sale to evidence that there actually were test kits that TSH bought, and by their delivery to us of a Bill of Lading, to evidence that the test kits actually were with a recognized common carrier en route to TSH.

7. Paragraph 6 of the Sale and Purchase Agreement (the "SPA") that TSH signed for the purchase of the 151,200 COVID Test Kits,[46] clearly states as follows:

> "Once the transferred funds [the Purchase Price] have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. **Title transfer shall happen contemporaneously with the funds being released to Seller**."

8. I researched Sternberg on the Internet and felt comfortable having Sternberg, a bona fide Texas attorney, hold the purchase price in his attorney trust account, and not to release those funds, unless and until I received both a Bill of Sale and a Bill of Lading, for the 151,200 COVID test kits that TSH was purchasing.

9. Even defendant Gary Weiss, the person whom the Sternberg Defendants and the Gross Defendants claim was supposed to procure the COVID Test Kits for them, stated that "Manfred testified that he executed legally, verified that THE SALE AND PURCHASE AGREEMENT, (SPA), was signed by Daniel J. Scully the buyer of the Safety House, prior to **Scully sending the funds to Lawyer Manfred, to his Escrow, IOLTA account, to be released once merchandise is on the truck, EN ROUTE, verified, which at that point the Title of the merchandise is transferred to the Safety House**." *See* the document marked as Weiss-9 at the

[46] A copy of the 1/21/22 SPA accompanies this Motion as Exhibit P-3.

Weiss Deposition, a copy of which also accompanies this Motion as Exhibit P-11 (emphasis added).

10.     On January 21, 2022, in reliance upon Defendants' aforesaid representations, TSH wired the $1,965,600.00 purchase price into escrow to the attorney trust account of the Sternberg Defendants, and also signed and emailed the SPA, including TSH's Purchase Order #18315 to defendants for the COVID Test Kits.

11.     On January 21, 2022, Dick Gray, the broker who was acting for Sternberg, sent an email to Sternberg (and copied to me and to Sam Gross), telling Sternberg as follows:

> "Manfred,
> Attached is the signed SPA from Dan Scully for 151,200 kits – iHealth.
> Would you please get the SPA signed by Sam or Chris for DBA The Safety House American Environmental Enterprises?
> The wire has been sent for $1,965,600. Wire copy attached.
> Thanks."

A true and correct copy of that 1/21/22 email to Sternberg is marked as Exhibit P-32 accompanying the Motion.[47]

12.     The TSH Purchase Order #18315 that TSH sent to them expressly stated, "deliver by 1/25/22."  *See*, ECF 80, Amended Complaint, at ¶¶ 23-29, and Exhibit "1" to the Complaint (plaintiff's Purchase Order #18315).  A copy of TSH's 1/21/22 Purchase Order #18315 with the "deliver by" date of 1/25/22 also is marked as Exhibit P-2 accompanying this Motion.

---

[47] I did not receive a copy of the SPA signed by Sam Gross for Seller until after my lawsuit was started, and despite a document request to the Sternberg Defendants, I believe that they failed to produce the metadata for the signature page signed by Sam Gross, which would have shown when Gross's signature page to the SPA was sent by Gross to Sternberg.  *See also*, Exhibit P-4 accompanying the Motion, which is an email dated March 24, 2022, from Sternberg to Gross (i.e., a month after the lawsuit was filed), in which Sternberg admits he does not have the fully executed SPA

13.     TSH did not receive the 151,200 COVID test kits, either by January 25, 2022, as required by the TSH Purchase Order #18315, or at any time.

14.     The Defendants' numerous representations about the COVID test kits being delivered to TSH were false.

15.     TSH did not receive any Bill of Lading evidencing that the 151-200 COVID Test Kits had been delivered to a recognized common carrier and were en route for delivery to SAFETY HOUSE.

16.     Gross sent me a Bill of Sale dated January 21, 2022, a copy of which accompanies this Motion as Exhibit P-5.  However, that bill of Sale is fraudulent – on January 21, 2022, none of the Defendants owned any COVID test kits, let alone the 151,200 test kits that I wired them $1,965,600.00 to purchase.

17.     The Sternberg Defendants and the Gross Defendants used that same fraudulent Bill of Sale as an exhibit when they made their Motion to Dismiss TSH's Complaint  -- those defendants attached the same fraudulent 1/21/22 Bill of Sale as Exhibit D to their Motion to Dismiss that they filed in this lawsuit on April 1, 2022 [*see* ECF 13-4, page 9 of 19].  A copy of the fraudulent 1/21/22 Bill of Sale that they actually attached to their Motion to Dismiss accompanies this Motion as Exhibit P-5a.

18.     In the Declaration of their attorney that was filed in support of their Motion to Dismiss, the attorney for the Sternberg Defendants and the Gross Defendants declares "under penalty of perjury" that a "true and correct copy of a Sale and Purchase Agreement ("SPA") dated January 21, 2022, entered into between Defendant Sam Gross on behalf of Defendant Charlton Holdings Group, LLC as Seller and Daniel J. Scully on behalf of Plaintiff as Buyer, is annexed [to

said defendants' Motion to Dismiss as Exhibit 'B.'"   *See* Certification of counsel for the Sternberg Defendants and the Gross Defendants dated and filed 4/1/22, at ¶ 4 [ECF 13-2, page 2 of 2].

19.    Defendants cannot and do not dispute that on January 21, 2022, the date of the Bill of Sale that was sent to me, none of the defendants owned or had possession of the 151,200 COVID test kits that are set forth in that (fraudulent) Bill of Sale.

20.    The Sternberg and Gross Defendants claim that Sam Gross made arrangements with the Weiss Defendants to procure the COVID Test Kits.  However, by the admission of the Weiss Defendants, Weiss did not purchase the test kits until February 6, 2022, pursuant to a purported Bill of Sale dated February 6, 2022, a copy of which Bill of Sale accompanies this Motion as Exhibit P-9, and which also was marked as Weiss-5 at Gary Weiss's Deposition.

21.    The purported 2/6/22 Purchase Order produced by defendant Gary Weiss in this case, states that he purchased 365,790 "COVID-19 test kits (I Health)" test kits for "Total paid cash & Merchandise, $1,810,000.00 US dollars."  *See* Exhibit P-9.

22.    However, the entity listed as the seller of the test kits – "MASK & ELDIVEN" cannot be located and has no existence on the Internet.

23.    The address shown on the purported sale document – "2 W. 47ST, Room 1005, NEW YORK, NEW YORK 10036" is the address to a building which was vacant on 2/5/2002, and which was vacant for several years prior to 2/6/22

24.    When I performed a Google search for the 2 West 47st NYC address, I learned that a demolition permit had been filed for that building back in 2019:

https://newyorkyimby.com/2019/10/demo-permits-filed-for-2-10-west-47th-street-in-midtown-manhattan.html

25.     In addition, no one has answered the phone number shown on the purported sale document (201-575-0193), and no one ever has returned any of the numerous messages that I left on their answering machine.

26.     In addition, Gary Weiss could not supply the full names of the persons he claims he purchased the test kits from, or their addresses or other contact information.

27.     The story, or more accurately, the two inconsistent stories,  that Gary Weiss testified to in this case about what happened to the alleged 365,790 test kits he claimed he purchased is even more incredible.

28.     In his verified Answer to the Amended Complaint that he filed in this case on September 12, 2023 [ECF 105] (a copy of which Answer accompanies this Motion as Exhibit P-18), Weiss claimed under oath that after he took delivery of the 365,790 test kits he claims he purchased, but that he could not delver any of them, because he did not get a Bill of Lading from Sternberg or Gross, and that he was forced to store the test kits at Available Moving & Storage ("AMS").  *See* Exhibit P-18, at ¶¶ 172-179.

29.     In his  same verified Answer, Weiss claimed that approximately two weeks later, when the Gross Defendants and the Sternberg Defendants still failed to provide him with any Bill of Lading, he was forced to get the goods out of storage from AMS.  *See* Exhibit P-18, at ¶¶ 180-182.

30.     In his same verified Answer, Weiss claimed that that when he went back to AMS to pick up the 365,790 test kits he had stored at AMS, he "learned that the test kits were no longer on the truck and that they could not be located." *See* Exhibit P-18, at ¶¶ 183.

31.     Later in this case, Gary Weiss gave his sworn deposition on February 16, 2024.

32.     A copy of Weiss's 2/16/24 deposition transcript accompanies this Motion as Exhibit P-19.

33.      In his sworn deposition on 2/16/24, Weiss testified under oath that he picked up the 365,790 test kits he had stored at AMS, but when he drove back to his place in New Jersey, he claims he discovered that someone had replaced all of the 365,790 test kits with rice.  *See* Exhibit P-19, 2/16/24 Weiss deposition transcript, at Tr. 102:1-107:19.

34.      In either case, Weiss also admitted that he did not make a police report, or confront or sue AMS, concerning the alleged 365,790 test kits Weiss claims he bought for $1.8 million, that he first claimed AMS lost, and then claimed were replaced with rice, and that he did not take any pictures of the alleged piles of rice.  *See* Exhibit P-19, at TR. 110:21-111:13,  129:3-130:23.

35.     After 1/25/22, when the COVID test kits that TSH purchased were not delivered, I repeatedly contacted John Mann, the sales broker for Sternberg and Gross, who repeatedly told me that Sternberg had promised him that the COVID test kits were being delivered to me.

36.     On February 8, 2022, Stenberg sent an email to Dick Gray and copied Sam Gross, in which he represented that TSH's product "is in route for delivery…." but when Sternberg sent that email, he knew that his representations were not true, because on February 6, 2022, Gary Weiss had asked Gross and Sternberg to send him (Weiss) a Bill of Lading that was necessary to ship the goods, and they had not sent any Bill of Lading to Weiss.  A copy of Sternberg's 2/8/22 email is marked as Exhibit P-27 accompanying this Motion, and also was attached as Exhibit "3" to plaintiff's Amended Complaint [ECF 80-6, at page 2].

37.     On February 15, 2022, when they still failed to deliver the COVID test kits, I retained attorney Gary Lightman, and his law firm of LIGHTMAN & MANOCHI, to represent me in this dispute.

38. On February 15, 2022, Gary Lightman and I called and we spoke to Manfred Sternberg.

39. During our phone call with Sternberg on February 15, 2022, Sternberg represented to us that the 151,200 boxes of the COVID test kits that TSH purchased from his client (Sam Gross and Charlton Holding Group, LLC) already were being shipped and in transit to TSH, and that TSH "should expect delivery of the goods tomorrow." *See* Exhibit P-13, Sternberg's 2/15/22 email.

40. During that phone call, Sternberg also told us that he still was holding $1,965,600 in his attorney trust account. I was on the phone and heard Sternberg claim he still had the $1,965,600.00 in his trust account (until he disputed that in his email he then sent – *see* nos. 41-42 below).

41. Following that phone call, my attorney wrote an email to Sternberg, confirming what Sternberg told us during the call. A copy of my attorney's 2/15/22 email to Sternberg is marked as Exhibit P-16 accompanying this Motion.

42. Sternberg wrote back and disputed he told us that he still had $1.965,600 in his attorney trust account.[48] A copy of Sternberg's email back to my attorney is included in Exhibit P-16.

---

[48] Records obtained during discovery show that Sternberg's claim about not having $1.965,600 in his attorney trust account also is false. Sternberg received at least $4,415,040 into his attorney trust account on January 19-21, 2022: $1,965,600 from TSH on 1/21, and $2,449,440 from VRC Medical on January 19-20, 2022. I believe VRC is another victim of defendants' fraud scheme--VRC also has filed their own fraud lawsuit against the Sternberg Defendants and the Gross Defendants, and a copy of that VRC Complaint accompanies this Motion as Exhibit P-35. The records also show that Stenberg disbursed a total of $2,381,200 through 2/15/22: $250,000 wired to Gary Weiss on 2/1/22; and $1,911,960 wired to Zekaria on 2/4/22; and another $250,000 wired to Zekaria on 2/15/22. That leaves a balance of $2,033,840 in Sternberg's attorney trust account. *See also*, ¶¶ 39-40, *infra*.

43. Stenberg also represented to us, both in our phone call of February 15, 2022, and in his email later that day, that "the product will be arriving tomorrow at the location provided by [TSH]. Let me know when [TSH] is in possession of his product." *See* Exhibit P-16, the 2/15/22 email sent by Stenberg to my attorney.

44. Sternberg's representation to us, that the goods were in transit, also was false.

45. Stenberg also told us that "funds have been transferred for the purchase when the goods were loaded onto the common carrier." *See* Exhibits P-13 and P-16, the 2/15/22 email sent by Stenberg to my attorney.

46. Sternberg's representation to us -- that the goods were delivered to a common carrier and were in transit to TSH -- also was false; Gary Weiss testified at his deposition that on February 6, 2022, he asked Sternberg and Gross to provide him with a Bill of Lading, which they never did provide to him, so Manfred knew on February 15, when he told us that the goods were in transit to us, that the goods in fact were not in transit, since neither Sternberg not Gross ever suppled Weiss with the required Bill of Lading. See, Exhibit P-19, 2/16/24 Weiss deposition transcript, at Tr. 169:6-173:7, 236:9-238:2.

47. Sternberg also was put on notice on February 15, 2022, not to make any further disbursements from his attorney trust account, but he ignored that instruction and continued to disburse funds from the trust account, even after we told him not to do so.[49] *See* Exhibit "4" to Plaintiff's Amended Complaint [ECF 80-7, at page 2]; a copy of which email also is marked as Exhibit P-16 accompanying this Motion.

[49] Documents produced in discovery also evidence that the attorneys for VRC also instructed Sternberg not to make any further disbursements from his attorney trust account, which Sternberg also ignored. *See* Exhibit P-25 accompanying this Motion.

48.     I also had a text message exchange with Sam Gross on February 15, 2022, about canceling the transaction and getting a full refund.

49.     My email exchange with Sam Gross on February 15, 2022 was as follows:

**TEXT FROM DAN SCULLY TO SAM GROSS sent 2/15/22 @ 2:20 pm:**

"Sam just spoke to my attorney and he is insisting that u or Manfred call him right away. I lost over a million dollars in business because of you and Manfred.
My attorney is going to file lawsuit today CRIMINAL lawsuit against u

personally Gary Lightman: 215-760-3000"

**SAM GROSS TEXT RESPONSE TO DAN SCULLY sent 2/15/22@ 2:25 pm (2 texts sent back to back):**

"The funds was sent to Manfred. Not me.

Your lawyer can file whatever he likes.

But I am not holding the funds. Manfred is.

So this is a funny statement.

You wired money to manfred per the contract. If you wish to cancel the contract? You need to have your lawyer email Manfred stating he represents you. And he wants the contract void and funds back.

And then Manfred can refund him.

Making such statements?
This is extortion for something that I didn't even received [sic].
If you want to cancel the transaction ? And you want a refund ? All you have to do is have your attorny [sic] contact manfred with a formal request so Manfred can issue him a refund.
Manfred is not calling your lawyer. Neither am I.
If you wish to cancel.
Like I stated before.
Have your attorny [sic] contact manfred via text or email.
And he will gladly attend to it.

Manfred +1 (713) 824-9170

Manfred Email

manfred@msternberg.com

And

manfred@manfredlaw.com"

50.     A true and correct copy of the aforesaid text exchanges were marked as RFA-1 through RFA-4 accompanying plaintiff's 6/27/24 Requests for Admission served on each of the defendants, and they also are included as Exhibits RFA-1 through RFA-4 accompanying this Motion; an accurate transcription of those 2/15/22 text exchanges also was marked as Sternberg Deposition Exhibit-9 at Sternberg's deposition conducted on 2/7/24, and also is marked as Exhibit P-33 accompanying this Motion.

51.     The COVID test kits that Sternberg told me on February 15, 2022 were in transit and would be delivered to me by "tomorrow" (i.e., by 2/16), never arrived.

52.     On February 16, 2022, I sent an email with a letter to Sam Gross (and copied Sternberg) in which I told him the goods did not arrive as Sternberg had promised me the day before, and that I still have not received a Bill of Lading or any other shipping documents pertaining to the shipment. In my 2/16/22 email and letter, I asked him to "email me the Bill of Lading and any relevant shipping documents that identify the shipment and confirms the delivery of all goods that I ordered**. I NEED ALL SHIPPING DOCUMENTS TODAY**."  *See* Exhibits P-14, a copy of my 2/16/22 email and letter to Sam Gross, copied to Sternberg (emphasis in original).

53.     At 6:30 pm the evening of 2/15/22, I sent another email to Manfred and Gross, which stated as follows:

> "Sam/Manfred:
> It's after 6:30 Pm and I still have not received the goods both of you promised I would get today. I think you guys are lying to me and have continued to lie to me.
> Not to mention you both breached our contract.  (And you never even sent me a fully signed contract)
> I think you guys defrauded me.
>
> Due to your inability to deliver the goods that I ordered and paid for, you leave me no alternative but to cover my contracts with my existing customers.
>
> I **WANT MY 2 MILLION DOLLARS WIRED BACK TO ME IMMEDIATELY.**

> You also will be hearing from my attorneys. I intent to hold each of you fully responsible for all damages I have incurred for your fraudulent and wrongful conduct. I also think your actions are criminal and I intent to report your fraudulent activity to the US Attorneys office and to the District Attorney's office both in Houston and Austin Texas and in New York.
> Manfred you also should be disbarred, not only did you wrongfully release my money from escrow .. but you lied to me about afterwards.
>
> I am sending a copy of this email to my attorney's and instructing them take all necessary legal action to enforce my rights.
>
> Dan Scully
> TheSafetyHouse.com"

A true and correct copy of that 2/16/22 email and letter that I sent to Sternberg and Gross is marked as Exhibits P-15 and P-16 accompanying this Motion, and also was marked as Sternberg Deposition Exhibit 13 at the 2/7/24 Sternberg Deposition.

54. Both Sternberg and Gross ignored my 2/16/22 email – neither one sent me any Bill of Lading, or any shipping documents, or any shipping information for the shipment they told me was in transit and would be delivered to TSH by 2/16/22.

55. Even though Sam Gross told me on February 15, 2022, in writing that TSH could cancel the purchase and obtain an immediate return of the $2 million purchase price TSH paid into the attorney trust account of the Sternberg Defendants, Sternberg failed to return any of the $1,965,600.00 to TSH.

56. The SPA does not allow the Defendants to keep the $1.965,600.00 purchase price that TSH paid for the COVID test kits, and also not deliver the test kits.

57. Paragraph 11 of the SPA provides in relevant part that "if Buyer [TSH] in any way attempts to circumvent Seller [Gross/CHG], Seller will be entitled to liquidated damages of

$50,000 from Buyer or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer."

58. However, I do not believe that either of those damages limitations are applicable to this case – TSH did not attempt to circumvent Gross, and TSH terminated the SPA for cause (i.e. because Seller did not deliver the COVID test kits by the 1/25/22 "deliver by" date in TSH's Purchase Order #18315).

59. I have learned in the course of discovery in this case that there are others similarly situated to TSH, who also claim they were the victims of the same fraud scheme that is the subject of the TSH Complaint, both before and after TSH wired money to the Sternberg Defendants, and after TSH filed this lawsuit, including:

(a) VRC Medical Supplies, who wired $2,449,440.00 into escrow to the Sternberg attorney trust account of the Sternberg Defendants for VRC's purchase of 204,120 COVID Test Kits, which VRC never received (*see*, Exhibit P-35, the federal court Complaint filed by VRC against the Sternberg Defendants and the Gross Defendants in federal court in New Jersey); and

(b) George Gianforcaro, of Inductex USA, who wired $50,000.00 to Sternberg, who refused to return George's money until after George got the local, Houston police involved; and

(c) Daniel Rodin, who wired $200,000.00 to Sternberg who refused to return his money, forcing Daniel to sue; and

(d) George Carcia-Menocal, Esquire, who wired $50,000.00 to Sternberg, who refused to return George's money

60. To date, over two and a half years later, Defendants have failed to return the $1,965,600.00 purchase price TSH paid, and they also failed to deliver to TSH the 151,200 COVID Test Kits as promised.

61. Instead of giving TSH back the $1,965,600, the Defendants instead divided up the funds amongst themselves:

(a) Sternberg received a total of $4,415,040 from TSH and VRC.

(b) Sternberg's trust records show he wired $219,240 directly to Gary Weiss.

(c) Sternberg's trust records show that he wired a total of $2,351,950 to Zekaria.

(d) The WhatsApp transcription of communications between Zekaria, Gross and Weiss show that they divided up that $2,351,950 amongst the three of them.

(e) After Sternberg wired a total of $2,571,200 out of his trust account, he was left with a balance of $1,842,840.[50]

62. Sam Gross wrote a text to Sternberg on September 20, 2023, in which Gross writes there is an "end balance [of] $1,876,003.89 (one million eight hundred seventy six)." A copy of that 9/20/23 text is marked as Exhibit P-8 accompanying this Motion, and also was marked as Sternberg Deposition Exhibit 21 at Sternberg's deposition.

63. In addition, Gary Weiss claims that when he offered to give Gross and Sternberg a refund of what they paid him, Sternberg refused and stated that he instead wanted Weiss to give them

[50] At his deposition on July 16, 2024, Gary Weiss produced a spreadsheet that he testified that Sternberg had supplied to Gross, that Gross in turn sent to him; that spreadsheet shows that Sternberg actually received a total in excess of $5.5 million from their PPE scheme. A copy of that Sternberg spreadsheet (that Weiss produced, but that Sternberg did not produce during discovery), is marked as Exhibit P-34 accompanying this Motion, and also was marked as Deposition Exhibit Weiss-20 at the 7/16/24 Gary Weiss Deposition.

diamonds and gemstones, because Sternberg "did not want to lose his profit," and that Weiss then gave them diamonds and gemstones valued in excess of $4 million. *See* Exhibit P-23 accompanying this Motion.

64.     TSH has sustained damages of $1,965,600.00, representing the Purchase Price it wired into the Sternberg trust account for the purchase of the COVID test kits that TSH did not receive.

65.     I strongly believe and thus respectfully submit that the $1,965,600.00 loss sustained by TSH is directly attributable to the fraudulent conduct of Stenberg and the other defendants:

(a)     Sternberg was required to hold the $1,965,600.00 PSH purchase Price in escrow in his attorney trust account and not release it from escrow, unless and until TSH received a Bill of Sale, as well as a Bill of Lading, but Sternberg wrongfully released TSH's funds from his attorney trust account before TSH received the required Bill of Lading, then lied about that to me.

(b)     The Bill of Sale that Sternberg and Gross sent me was fraudulent –neither Gross, nor CHG, not Sternberg, ever had actual possession of the actual 151,200 COVID test kits that they represented to me they had through the Bill of Sale they sent me.

(c)     Stenberg failed to conduct any due diligence, to confirm that his client, the Seller, actually purchased and had possession of the 151,200 COVID test kits – Stenberg did not obtain any documents to evidence the actual purchase of any of the COVID test kits; and Stenberg did not personally confirm that any of the COVID test kits actually existed; instead, Sternberg claims he just relied upon the word of Sam Gross, his client, that the COVID test kits existed and were purchased (even though Stenberg knew that Gross was a convicted felon who served jail time for embezzlement).

(d)     Sternberg made repeated promises to me that the COVID test kits were en route to TSH, when Sternberg knew or should have known that his representations were false.

(e)     Stenberg continued to disburse funds from his attorney trust account, after we instructed him (and the attorney for VRC also instructed him), not to make any further disbursements form his trust account.

(f)     Gross told me that his attorney Sternberg would refund the full $1,965,600 Purchase Price to TSH, but when we requested that Sternberg send TSH back the money, Sternberg failed to honor his client's promise and give TSH back the money.

66.     As if speaking to the instant case, Sternberg wrote to Gross shortly after February 25, 2022, as follows:  **"That is classic fraud in the inducement and can only be cured by delivery or the return of all money."**  *See* Exhibit P-17 accompanying this Motion (emphasis added).  Stenberg was referring to Gary Weiss telling them that he (Weiss) needed another $190,000 in order to deliver the test kits, which induced Sternberg to wire another $190,000 on February 25, 2022, following which the test kits never were delivered.  But I believe that Sternberg's comment to Gross applies with equal force to the $1,965,600 which they induced TSH to wire them $1,965,600 for COVID test kits that they never had:  **"That is classic fraud in the inducement and can only be cured by delivery or the return of all money."**

I certify subject to the penalties of perjury that the foregoing facts are true and correct to the best of my knowledge, information and belief.

Daniel J. Scully, President
American Environmental Enterprises, Inc.
d/b/a THE SAFETY HOUSE.COM

DATED: September  30, 2024

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 2022-cv-00688 (JMY)** |
| **v.** | : | |
| **MANFRED STERNBERG, ESQUIRE, and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SAMUEL GROSS a/k/a SHLOMO GROSS, and GARY WEISS, and ASOLARDIAMOND, LLC a/k/a, ASOLAR. LLC, and DAPHNA ZEKARIA, ESQUIRE, and SOKOLSKI & ZEKARIA, P.C.** | : | |
| **Defendants.** | : | |

**CERTIFICATION OF GARY LIGHTMAN, ESQUIRE IN SUPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND/OR FOR DEFAULT JUDGMENT AGAINST ALL DEFENDANTS**

GARY LIGHTMAN, ESQUIRE, of full age, being first duly sworn upon his oath, states as follows:

1. I am counsel of record for American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM, the plaintiff in this lawsuit, and am the authorized representative of Plaintiff.

2. I have knowledge of the facts set forth in this Certification, and if called to testify, could do so competently.

3.      I respectfully submit this Certification in support of plaintiff's Motion for Summary Judgment against each of the named defendants in this lawsuit, Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC (collectively the "Sternberg Defendants"), and Daphna Zekaria, Esquire, and Sokolski & Zekaria, P.C. (collectively the "Zekaria Defendants"), and Gary Weiss and ASOLARDIAMOND, LLC, a/k/a ASOLAR, LLC (collectively the "Weiss Defendants"), and Sam Gross and Charlton Holdings Group, LLC (collectively the "Gross Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and plaintiff's Motion for Default Judgment against the Zekaria Defendants, and the Weiss Defendants, and the Gross Defendants, pursuant to Rule 55 of the Federal Rules of Civil Procedure.

4.      Exhibit P-1 that accompanies Plaintiff's Motion is a true and correct copy of Plaintiff's 6/17/24 Requests for Admission (sometimes referred to as "RFAs") served on each defendant in this case on 6/17/24.

5.      Exhibit RFA-1 that accompanies Plaintiff's Motion is a true and correct copy of a document that was identified as a 2/15/22 text from Gross to Plaintiff, that also accompanied Plaintiff's Requests for Admission.

6.      Exhibit RFA-2 that accompanies Plaintiff's Motion is a true and correct copy of a document that was identified as a 2/15/22 text from Gross to Plaintiff, that also accompanied Plaintiff's Requests for Admission.

7.      Exhibit RFA-3 that accompanies Plaintiff's Motion is a true and correct copy of a document that was identified as a 2/15/22 text from Gross to Plaintiff, that also accompanied Plaintiff's Requests for Admission.

8.　　Exhibit RFA-4 that accompanies Plaintiff's Motion is a true and correct copy of a document that was identified as a 2/15/22 text from Gross to Plaintiff, that also accompanied Plaintiff's Requests for Admission.

9.　　Exhibit RFA-5 that accompanies Plaintiff's Motion is a true and correct copy of a document that was identified as a picture taken by Weiss of boxes in a truck, that also accompanied Plaintiff's Requests for Admission.

10.　　The Gross Defendants failed to file any response to the RFAs served on them on 6/17/24, either by the deadline set forth in Rule 36 of the Rules of Court, or to date.

11.　　The Zekaria Defendants failed to file any response to the RFAs, served on them on 6/17/24,  either by the deadline set forth in Rule 36 of the Rules of Court, or to date.

12.　　Plaintiff filed for a default against defendants Gary Weiss and ASOLARDOIAMOND, LLC, a/k/a ASOLAR, LLC, on December 21, 2023 [ECF 141].

13.　　Plaintiff filed for a default against defendants Daphna Zekaria, Esquire, and Sokolski & Zekaria, PC, on August 13, 2024 [ECF 190].

14.　　Plaintiff filed for a default against defendants Samuel Gross, a/k/a Shlomo Gross, and Charlton Holdings Group, LLC, on August 31, 2023 [ECF 100].

15.　　Exhibit P-2 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 14 at the deposition of the Sternberg Defendants conducted on February 7, 2024 (the "Sternberg Deposition"), that was identified as the Purchase Order of plaintiff SAFETY HOUSE for the 151,200 test kits with a "Deliver by " date of January 25, 2022 [that also was Exhibit 1 to Plaintiff's Amended Complaint, ECF 80, at pages 36-43 of the 56 page pdf].

16.     Exhibit P-3 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 7 at the Sternberg Deposition, and that also was marked as Exhibit 1 to Plaintiff's Amended Complaint [ECF 80], which was identified as the Sale and Purchase Agreement ("SPA") drafted by Sternberg that was used for the TSH's purchase of 151,200 COVID Test Kits.

17.     Exhibit P-4 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 5 at the Sternberg Deposition, and identified as the 3/24/22 email that Sternberg sent to Gross.

18.     Exhibit P-5 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 20 at the Sternberg Deposition, and identified as the 1/21/22 Bill of Sale that was given to TSH in this case.

19.     Exhibit P-5a that accompanies Plaintiff's Motion is a true and correct copy of the same 1/21/22 Bill of Sale as Exhibit P-5, with an ECF header showing that is was attached as Exhibit D to the Motion to Dismiss made by the Sternberg Defendants and the Gross Defendants in this case on April 1, 2022 [ECF 13-4, page 9 of 10].

20.     Exhibit P-6 that accompanies Plaintiff's Motion is a true and correct copy of a document that was identified as a copy of the documents evidencing VRC's wire transfers totaling $2,449,440.00 into the Sternberg attorney trust account on January 19-20, 2022.

21.     Exhibit P-7 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 19 at the Sternberg Deposition, and identified as the page from Sternberg's Answer to Plaintiff's Interrogatory No. 23, setting forth the wire transfers totaling $2,571,200.00 made out of the Sternberg attorney trust account, to the Weiss Defendants and the Zekaria Defendants.

22.     Exhibit P-8 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 21 at the Sternberg deposition, and identified as a copy of a text authored by Gross on September 20, 2023, in which Gross states to Sternberg on 9/20/23 that there is an "end balance [of] $1,876,003.89 (one million eight hundred seventy six)."

23.     Exhibit P-9 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Weiss Deposition Exhibit 5 at the 2/16/24 deposition of the Weiss Defendants (the "2/16/24 Weiss deposition"), and identified as a copy of the 2/6/22 Mask & Eldiven document that the Weiss Defendants claim evidences Weiss's purchase of 365,790 COVID Test Kits on February 6, 2022

24.     Exhibit P-10 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Weiss Deposition Exhibit 6, at the 2/16/24 Weiss deposition, and identified as a copy of the /26/22 invoice sent by the Weiss Defendants to Gross, that also was attached as Exhibit "B" to the April 24, 2022 letter authored by Sternberg and submitted to the Office of the Chief Disciplinary Counsel for the State Bar of Texas, which 4/24/22 Sternberg letter was marked as Sternberg Deposition Exhibit 6 at the Sternberg Deposition.

25.     Exhibit P-11 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Weiss-9 at the 2/16/24 Weiss Deposition, and identified as a Gary Weiss email dated July 19, 2023, to Rebecca Price,

26.     Exhibit P-12 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 9 at the Sternberg deposition, and identified as an accurate transcription of the texts that Gross wrote to Plaintiff, on or about February

15, 2022, in which Gross stated that TSH could cancel the purchase and obtain a full refund of the Purchase Price that Plaintiff paid for the Test Kits.

27.     Exhibit P-13 that accompanies Plaintiff's is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 10 at the Sternberg Deposition, and identified as an email sent 2/15/22 from Sternberg in which Sternberg informs plaintiff's counsel that "I [Sternberg] am told the product will be arriving tomorrow at the location provided by your client [TSH]. Let me know when your client is in possession of his product."

28.     Exhibit P-14 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition, and identified as a copy of Plaintiff's 2/16/22 letter that was emailed to and received by Gross and Sternberg.

29.     Exhibit P-15 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 13 at the Sternberg Deposition, and identified as a copy of TSH's 2/16/22 email that was sent to and received by Gross and Sternberg, canceling the purchase and demanding a full refund.

30.     Exhibit P-16 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 11 at the Sternberg Deposition, and identified as a copy of the February 15, 2022, email sent by plaintiff's counsel to Sternberg, notifying Sternberg not to make any further disbursements from Sternberg's attorney trust account.

31.     Exhibit P-17 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 32 at the Sternberg Deposition, that was identified as a text sent by Sternberg to Gross, shortly after February 25, 2022, in which Sternberg tells Weiss (emphasis added), "**That** [referring to Wiess's claim that he needed another

$190,000 from Sternberg in order to deliver the Test Kits, that Weiss then in fact did not deliver] **is classic fraud in the inducement and can only be cured by delivery or return of all money**."

32.     Exhibit P-18 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Deposition Exhibit GW-7 at the 2/16/24 Weiss deposition, and identified as the Answer filed by Weiss to Plaintiff's First Amended Complaint that Weiss filed under oath on September 12, 2023 [ECF 105].

33.     Exhibit P-19 that accompanies Plaintiff's Motion is a true and correct copy of the 2/16/24 Gary Weiss Deposition transcript, in which Weiss claimed under oath that when he picked up the 365,790 test kits from AMS, he discovered that those 265,790 Test Kits all had been replaced with rice, and in which Weiss admitted that he did not contact the police or make a police report about the missing Test Kits being replaced with rice, and in which Weiss also admitted that he did not confront AMS or sue AMS about the alleged Test Kits being replaced with rice, and that he did not notify Gross or Sternberg about the alleged Test Kits being replaced with rice, and in which Weiss admitted that he did not take any pictures of the Test Kit boxes being replaced with rice, or otherwise create any documents to evidence his claim (that when he picked up the Test Kits from Available Moving and Storage ("AMS"), all 365,790 boxes of the Test Kits had been replaced with rice).  *See* Exhibit P-19, 2/16/24 Weiss Deposition, at , at Tr. 102:1-107:19.

34.     Exhibit P-20 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 23 at the Sternberg Deposition, and identified as the May 31, 2022, email that Gross wrote to Sternberg in which Gross stated that Sternberg still had $400,000 or so left of the funds transferred into the Sternberg trust account.

35.     Exhibit P-21 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 38 at the Sternberg Deposition, and

identified as a copy of the 3/1/22 email from William Berman, Esquire (an attorney for VRC) to Zekaria, that was part of that document.

36.     Exhibit P-22  that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Sternberg Deposition Exhibit 29 at the Sternberg Deposition, and identified as a copy of the email dated March 1, 2022, from Weiss to Sternberg and Gross.

37.     Exhibits P-23a through P-23g  that accompany Plaintiff's Motion are true and correct copies of the documents marked as Sternberg Deposition Exhibits 28, 29, 30, 31, 33, 34, and 35 at the Sternberg Deposition, which are copies of texts from Weiss and Gross, and other documents from them, that memorialize  that it was Sternberg who wanted Weiss to give back collateral (diamonds and gemstones) instead of returning the money that Sternberg wired to Weiss and Zekaria.

38.     Exhibit P-24 that accompanies Plaintiff's Motion is a copy of a document that was identified as an email dated March 13, 2022, from Randolph ("Randy") Adler, Esquire, an attorney for VRC, to Sternberg, with Weiss yellow post-it notes on it, a copy of which was marked as Weiss Deposition Exhibit 12 at the 2/16/24 Weiss deposition, memorializing that *Sternberg* offered to liquidate the gems and diamonds comprising the collateral that Weiss gave to Gross and/or Sternberg, and pay the proceeds to VRC,  in the event that Gross and Sternberg failed to deliver to VRC the Test Kits that VRC purchased from Gross and/or Sternberg.

39.     Exhibit P-25 that accompanies Plaintiff's Motion is a true and correct copy of a document that was identified as a letter from Randy Adler, Esquire, VRC's attorney, to Sternberg dated February 23, 2022, a copy of which was marked as Sternberg Deposition Exhibit 37 at the Sternberg Deposition, in which VRC accused Gross of failing to deliver the 204,120 Test Kits that VRC purchased, and in which Mr. Adler also instructed Sternberg not to disburse any portion of

the $2,449,440 that VRC wired to Sternberg to hold in trust, that Sternberg was required to hold in trust "until the transaction is complete…"

40. Exhibit P-26 that accompanies Plaintiff's Motion is a true and correct copy of the state court Complaint that VRC filed against Gross and Sternberg, which also was marked as Sternberg Deposition Exhibit 39 at the Sternberg deposition.[51]

41. Exhibit P-27 that accompanies Plaintiff's Motion is a true and correct copy of a document that was identified as the February 8, 2022, email from Sternberg, in which Sternberg misrepresented to Plaintiff that the Covid Test Kits were en route and would be delivered to Plaintiff by no later than February 17, 2022 (when in fact they were not with a common carrier or otherwise being shipped to Plaintiff).

42. Exhibit P-28 that accompanies Plaintiff's Motion is a true and correct copy of documents identified as copies of the requests made by Plaintiff on numerous occasions prior to filing suit, for Defendants to provide Plaintiff with a Bill of Lading and other shipping documents to show Seller had delivered the Covid Test Kits to a common carrier for delivery to Plaintiff, which also were attached as Exhibit 4 to Plaintiff's Amended Complaint.

43. Exhibit P-29 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Weiss Deposition Exhibit 13, at the 2/16/24 Weiss deposition, and identified as a copy of a text from Zekaria to Gross.

[51] VRC also filed a lawsuit against the Sternberg Defendants and the Gross Defendants in federal court on 2/6/24, in the case styled VRC Consulting, Inc., d/b/a VRC Medical Services, Inc. v. Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holdings Group, LLC, and Samuel Gross, USDC, D NJ, Civil No. 3:24-cv-00710. A true and correct copy of VRC's federal court lawsuit accompanies this Motion as Exhibit P-35.

44.    Exhibit P-30 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Weiss Deposition Exhibit 14, at the 2/16/24 Weiss deposition, and identified as a text from Zekaria to Gross.

45.    Exhibit P-31 that accompanies Plaintiff's Motion is a true and correct copy of a document that was marked as Zekaria-00001 though Zekaria-00004, and identified as a transcription of the WhatsApp text chats between Zekaria and Weiss and Gross from February 4, 2022, through February 28, 2022..

46.    Exhibit P-32 that accompanies Plaintiff's Motion is a true and correct copy of a document that was identified as the email dated January 21, 2022, that Dick Gray sent to Sternberg, with the SPA signed by TSH, and a copy of the $1,965,600.00 wire to Sternberg.

47.    Exhibit P-33 that accompanies Plaintiff's Motion is a true and correct copy of a document that was identified as a true and accurate transcription of the text exchanges between Dan Scully and Sam Gross on February 15, 2022 (which texts also were marked as Exhibits RFA-1 through RFA-5 that accompanied plaintiff's Rule 36 Requests for Admission dated and served on each of the defendants on June 17, 2024), and which texts also accompany this Motion as Exhibits RFA-1 through RFA-5.

48.    Exhibit P-34 that accompanies Plaintiff's Motion is a true and correct copy of a document that was produced by Gary Weiss (not Manfred Sternberg) at the 7/16/24 Gary Weiss deposition, and identified by Gary Weiss as the Sternberg Spreadsheet that Sternberg prepared and sent to Sam Gross, that Gross in turn forwarded to Weiss, that shows in excess of $5.5 million in receipts by Sternberg from the fraud scheme that is the subject of plaintiff's lawsuit, that was marked as Deposition Exhibit Weiss-20 at the 7/16/24 Gary Weiss Deposition.

49. Exhibit P-35 that accompanies Plaintiff's Motion is a true and correct copy of the federal court lawsuit filed by VRC against the Sternberg Defendants and the Gross Defendants on 2/6/24, in the case styled VRC Consulting, Inc., d/b/a VRC Medical Services, Inc. v. Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holdings Group, LLC, and Samuel Gross, USDC, D NJ, Civil No. 3:24-cv-00710.

50. Exhibit P-36 that accompanies Plaintiff's Motion is a true and correct copy of TSH's First Amended Complaint [ECF 80].

51. Exhibit P-37 that accompanies Plaintiff's Motion is a true and correct copy of the 2/7/24 Deposition Transcript of Manfred Sternberg.

I certify subject to the penalties of perjury that the foregoing facts are true and correct to the best of my knowledge, information and belief.

BY: *Gary Lightman*
Gary Lightman, Esquire
Attorney for Plaintiff

DATED: September 30, 2024

**EXHIBITS TO PLAINTIFF'S RULE 56 AND RULE 55 MOTION**

| EXHIBIT | DESCRIPTION |
|---|---|
| P-1 | Plaintiff's 6/17/24 Requests for Admission served on each defendant |
| RFA-1 | 2/15/22 text from Gross to Plaintiff, (accompanying Plaintiff's Requests for Admission) |
| RFA-2 | 2/15/22 text from Gross to Plaintiff (also accompanying Plaintiff's Requests for Admission) |
| RFA-3 | 2/15/22 text from Gross to Plaintiff (also accompanying Plaintiff's Requests for Admission) |
| RFA-4 | 2/15/22 text from Gross to Plaintiff (also accompanying Plaintiff's Requests for Admission) |
| RFA-5 | Picture taken by Weiss of boxes in a truck (also accompanying Plaintiff's Requests for Admission) |
| P-2 | 1/21/22 Purchase Order of Plaintiff for the 151,200 test kits with a "Deliver by " date of January 25, 2022 [exhibit 1 to Amended Complaint, ECF 80, at pages 36-43 of the 56 page pdf][also marked as Sternberg Deposition Exhibit 14 at the Sternberg deposition] |
| P-3 | Sale and Purchase Agreement ("SPA") drafted by Sternberg that was used for the Plaintiff's Purchase Order [also Exhibit 1 to Amended Complaint, ECF 80] |
| P-4 | The 3/24/22 email that Sternberg sent to Gross, which was marked as Sternberg Deposition Exhibit 5 at the Sternberg deposition |
| P-5 | The 1/21/22 Bill of Sale that was sent to TSH by Gross in this case, that also was marked as Sternberg-20 at the Sternberg Deposition |
| P-5a | The same 1/21/22 Bill of Sale that was used by the Sternberg Defendants and the Gross Defendants in this case, and that was attached as Exhibit D to their Motion to Dismiss made by Sternberg and Gross in this case on April 1, 2022 [ECF 13-4, page 9 of 10] |
| P-6 | Copy of the document evidencing VRC's wire transfers totaling $2,449,440.00 into the Sternberg attorney trust account on January 19-20, 2022 |

P-7      The page from Sternberg's Answer to Plaintiff's Interrogatory No.23, setting forth the wire transfers totaling $2,571,200.00 made from the Sternberg attorney trust account, also marked as Sternberg-19 at the Sternberg Deposition

P-8      Sternberg Deposition Exhibit 21, a copy of a text authored by Gross on September 20, 2023, in which he states an "end balance [of] $1,876,003.89 (one million eight hundred seventy six)"

P-9      A copy of the 2/6/22 Mask & Eldiven document that was marked as Weiss Deposition Exhibit 5 at the Weiss deposition

P-10      A copy of 1/26/22 invoice sent by Weiss to Gross, which was marked as Weiss Deposition Exhibit 6, at the Weiss deposition, and that also was attached as Exhibit "B" to the April 24, 2022 letter authored by Sternberg and submitted to the Office of the Chief Disciplinary Counsel for the State Bar of Texas

P-11      A copy of the email that Weiss sent to his attorney on July19, 2023, which 7/19/23 email was marked as Weiss Deposition Exhibit 9 at the Weiss deposition

P-12      A copy of Sternberg Deposition Exhibit 9, marked at the Sternberg deposition, which is an accurate transcription of the texts that Gross wrote to Plaintiff, on or about February 15, 2022, in which Gross stated that Plaintiff could cancel the purchase and obtain a refund of the Purchase Price

P-13      A copy of Sternberg Deposition Exhibit 10, marked at the Sternberg deposition, in which Sternberg informs Plaintiff's counsel on February 15, 2022, that "I [Sternberg] am told the product will be arriving tomorrow at the location provided by your client [TSH]. Let me know when your client is in possession of his product."

P-14      A copy of Plaintiff's 2/16/22 letter that was emailed to and received by Gross and Sternberg was marked as Sternberg Deposition Exhibit 12 at the Sternberg deposition

P-15      A copy of Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg, canceling the purchase and demanding a full refund, that also was marked as Sternberg Deposition Exhibit 13 at the Sternberg deposition

P-16      A copy of the February 15, 2022, email sent by Plaintiff's counsel to Sternberg, notifying Sternberg not to make any further disbursements from Sternberg's attorney trust account, that also was marked as Sternberg Deposition Exhibit 11 at the Sternberg deposition

P-17      A copy of the document marked as Sternberg Deposition Exhibit 32 at the Sternberg deposition, which is a true and correct copy of a text sent by Sternberg to Gross, shortly after February 25, 2022, in which Sternberg tells Weiss (emphasis added),

> "**That** [referring to Wiess's claim that he needed another $190,000 in order to deliver the Test Kits] **is classic fraud in the inducement and can only be cured by delivery or return of all money**."

P-18 A copy of the Answer filed by Weiss to Plaintiff's First Amended Complaint that Weiss filed under oath on September 12, 2023 [ECF 105], subject to the penalties for perjury, also marked as Deposition Exhibit GW-7 at the 2/16/24 Gary Weiss Deposition

P-19 The 2/16/24 deposition transcript for the deposition of Gary Weiss conducted on 2/16/24., in which Weiss now claimed that all of the 365,790 the Test Kits all had been replaced with rice, and in which Weiss admitted that he did not contact the police or make a police report about the missing Test Kits being replaced with rice, and in which Weiss also admitted that he did not confront or sue AMS about the alleged Test Kits being replaced with rice, and in which Weiss also admitted that he did not notify Gross or Sternberg about the alleged Test Kits being replaced with rice, and in which Weiss admitted that he did not take any pictures of the Test Kit boxes being replaced with rice, or otherwise create any documents to evidence this claim.

P-20 The May 31, 2022, email that Gross wrote to Sternberg in which Gross stated that Sternberg still had $400,000 or so left of the funds transferred to Sternberg, that also was marked as Sternberg Deposition Exhibit 23 at the Sternberg deposition

P-21 A copy of the 3/1/22 email from Berman to Zekaria, that was part of the document marked as Sternberg Deposition Exhibit 38 at the Sternberg deposition

P-22 A copy of the email dated March 1, 2022, from Weiss to Sternberg and Gross, also marked as Sternberg Deposition Exhibit 29 at the Sternberg deposition

P-23a-g Copies of the documents marked as Sternberg Deposition Exhibits 28, 29, 30, 31, 33, 34, and 35 at the Sternberg deposition, which are copies of texts from Weiss and Gross and other documents from them, that memorialize that it was Sternberg who wanted Weiss to give collateral (diamonds and gemstones) instead of returning the money that Sternberg wired to Weiss and Zekaria

P-24 Email dated March 13, 2022, from Randolph ("Randy") Adler, Esquire (counsel for VRC) to Sternberg, a copy of which was marked as Weiss Deposition Exhibit 12 at the Weiss deposition, memorializing that Sternberg offered to liquidate the collateral that Weiss gave to Gross and/or Sternberg, and pay the proceeds to VRC, in the event that Gross and Sternberg failed to deliver to VRC the Test Kits that VRC purchased from Gross and/or Sternberg

P-25 Randy Adler's (attorneys for VRC) letter to Sternberg dated February 23, 2022, a copy of which was marked as Sternberg Deposition Exhibit 37 at the Sternberg

deposition, in which they accused Gross of failing to deliver the 204,120 Test Kits that VRC purchased, and in which Mr. Adler also instructed Sternberg not to disburse any portion of the $2,449,440 that VRC wired to Sternberg to hold in trust, that Sternberg was required to hold in trust "until the transaction is complete…"

P-26       The Complaint that VRC filed against Gross and Sternberg, which also was marked as Sternberg Deposition Exhibit 39 at the Sternberg deposition

P-27       The February 8, 2022, email from Sternberg, in which Sternberg misrepresented to Plaintiff that the Covid Test Kits were en route and would be delivered to Plaintiff by no later than February 17, 2022 (when in fact they were not with a common carrier or otherwise being shipped to Plaintiff; as of February 17, 2022), which email also was attached to Plaintiff's Amended Complaint

P-28       Copies of the requests made by Plaintiff on numerous occasions prior to filing suit, for Defendants to provide Plaintiff with a Bill of Lading and other shipping documents to show Seller had delivered the Covid Test Kits to a common carrier for delivery to Plaintiff, which requests also were attached as Exhibit 4 to Plaintiff's Amended Complaint

P-29       A copy of the document marked as Weiss Deposition Exhibit 13, which is a text from Zekaria to Gross

P-30       A copy of the document marked as Weiss Deposition Exhibit 14, which is a text from Zekaria to Gross

P-31       A copy of the document marked as Zekaria-00001 through Zekaria-00004, which is a transcription of WhatsApp text chats between Zekaria and Weiss and Gross from February 4, 2022, through February 28, 2022.

P-32       A document that was identified as the email dated January 21, 2022, that Dick Gray sent to Sternberg, with the SPA signed by TSH, and a copy of the $1,965,600 wire to Sternberg.

P-33       A true and accurate transcription of the text exchanges between Dan Scully and Sam Gross on February 15, 2022 (which texts also were marked as Exhibits RFA-1 through RFA-5 that accompanied plaintiff's Rule 36 Requests for Admission dated and served on each of the defendants on June 17, 2024), and which texts also accompany this Motion as Exhibits RFA-1 through RFA-5.

P-34       A true and correct copy of a document that was identified by Gary Weiss as the Sternberg Spreadsheet that Sternberg prepared and sent to Sam Gross, that Gross in turn forwarded to Weiss, that shows in excess of $5.5 million in receipts by Sternberg from the PPE scheme, marked as Deposition Exhibit Weiss-20 at the 7/16/24 Weiss Deposition.

| | |
|---|---|
| P-35 | A true and correct copy of the lawsuit filed by VRC against the Sternberg Defendants and the Gross Defendants in federal court on 2/6/24, in the case styled VRC Consulting, Inc., d/b/a VRC Medical Services, Inc. v. Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holdings Group, LLC, and Samuel Gross, USDC, D NJ, Civil No. 3:24-cv-00710. |
| P-36 | Plaintiff's First Amended Complaint [ECF 80] |
| P-37 | A copy of the 2/7/24 deposition transcript of the Sternberg Defendants |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | **No. 2022-cv-00688 (JMY)** |
| **v.** | : | |
| **MANFRED STERNBERG, ESQUIRE, and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SAMUEL GROSS a/k/a SHLOMO GROSS, and GARY WEISS, and ASOLARDIAMOND, LLC a/k/a, ASOLAR. LLC, and DAPHNA ZEKARIA, ESQUIRE, and SOKOLSKI & ZEKARIA, P.C.** | : | |
| **Defendants.** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 56 MOTION FOR SUMMARY JUDGMENT AGAINST ALL DEFENDANTS, AND RULE 55 MOTION FOR DEFAULT JUDGMENT AGAINST THE ZEKARIA DEFENDANTS, AND THE GROSS DEFENDANTS AND THE WEISS DEFENDANTS**

Plaintiff American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM ("TSH" or "SAFETY HOUSE"), hereby files this Memorandum of Law in support of its Motion for Summary Judgment and Default Judgment (the "Motion"), seeking Summary Judgment against each of the defendants, Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC (collectively the "Sternberg Defendants"), and Daphna Zekaria, Esquire, and Sokolski & Zekaria, P.C. (collectively the "Zekaria Defendants"), and Gary Weiss and ASOLARDIAMOND, LLC, a/k/a ASOLAR, LLC (collectively the "Weiss Defendants"), and Sam Gross and Charlton Holdings Group, LLC (collectively the "Gross Defendants"), pursuant to Rule 56 of the Federal

Rules of Civil Procedure, and paragraph 1(c) of the Court's March 20, 2024 Amended Scheduling Order [ECF 154], and also seeking a Default Judgment against the Gross Defendants and the Weiss Defendants and the Zekaria Defendants, pursuant to Rule 55 of the Federal Rules of Civil Procedure, and paragraph 1(c) of the Court's March 20, 2024 Amended Scheduling Order [ECF 154], and plaintiff seeks the entry of an Order in the proposed form of Order accompanying this Motion, granting Summary Judgment and/or Default Judgment, in favor of Plaintiff, against each of the Defendants, individually, jointly and severally, for the $1,965,600.00 in compensatory damages sought in the plaintiff's Amended Complaint, and in the Certification of Plaintiff accompanying this Motion, plus punitive damages (of $19,656,000.00, *i.e*., ten times the amount of the compensatory damages; or in the alternative, providing for asset discovery of defendants and thereafter scheduling a trial solely on the amount of Plaintiff's punitive damages claims against the Defendants).

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff TSH incorporates by reference herein, the facts and procedural background set forth in its separate Statement of Undisputed Material Facts, filed contemporaneously in support of plaintiff TSH's Rule 56 Motion for Summary Judgment, as if fully set forth at length herein. In sum, Plaintiff TSH is entitled to Summary Judgment and a Default Judgment against the Weiss Defendants, and the Gross Defendants, and the Zekaria Defendants, individually, jointly and severally, because defaults previously have been entered or requested of record against each of said defendants (which defaults establish their liability, leaving only the amount of the Judgment to be determined). Defaults were filed of record against each of said defendants, because they failed to abide by Court Orders and failed to defend this matter, after their respective counsel withdrew from their representation, and each failed to procure replacement counsel. The amount

of compensatory damages sustained by Plaintiff is $1,965,600.00—the Plaintiff wired $1,965,600.00 on January 21, 2022, into escrow to the attorney trust account of the Sternberg Defendants, but Defendants kept the entire purchase price and also failed to deliver the 151,200 iHealth Covid-19 test kits purchased by Plaintiff, and they also failed to return the $1,965,600.00 purchase price to Plaintiff.

Plaintiff TSH also is entitled to Summary Judgment for that amount against the Gross Defendants, and the Zekaria Defendants, because they failed to respond at all, let alone admit or deny, Plaintiff's Rule 36 Requests for Admission served upon said defendants on June 17, 2024, and Summary Judgment is fully warranted and appropriate against said defendants, based upon said Requests for Admission, all of which are deemed admitted against said defendants under the Rules of Court.

Plaintiff TSH also is entitled to Summary Judgment for that amount against the Sternberg Defendants, as well as each of the other defendants, based upon the undisputed material facts in this case.

Summary Judgment also is fully warranted and appropriate against the Sternberg Defendants, based upon the failure of the Sternberg Defendants to properly respond to Plaintiff's Requests for Admission, which are deemed admitted under Rule 36 of the Federal Rules of Civil Procedure.[52]

Summary Judgment for punitive damages in favor of Plaintiff against all defendants is fully warranted and appropriate -- no reasonable minds could differ that the conduct of the defendants was egregious and in bad faith, and that punitive damages as a matter of law against defendants is

[52] On July 24, 2024, Plaintiff filed its Rule 36(a)(6) Motion to Determine Requests for Admission and for Sanctions against the Sternberg Defendants [ECF 184], which Rule 36(a)(6) Motion currently is pending before the Court

warranted by the undisputed clear and convincing evidence. The Court either should enter an amount of said punitive damages, as part of this Motion (which Plaintiff requests be ten times the compensatory damages sustained by Plaintiff), or in the alternative, enter liability for punitive damages in favor of Plaintiff TSH against all defendants, and establish a schedule for Plaintiff to conduct asset discovery of the defendants, and thereafter conduct a punitive damages hearing to determine the amount of punitive damages to be awarded in favor of Plaintiff against the defendants.

**LEGAL ARGUMENT IN SUPPORT OF RULE 56 MOTION**

**APPLICABLE LEGAL STANDARD**

The standard for disposing of summary judgment motions is well established in this Court. As succinctly stated by one eminent jurist:

> "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making this determination, we must weigh all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). "For its part, '[t]he non-moving party must oppose the motion and, in doing so, may not rest upon the mere allegations or denials [in] his pleadings' **[*11]** but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Id.* at 288-89 (quoting *D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014)).
>
> "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 289 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Conversely, 'where a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law.'" *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)). "The same standards and burdens apply on cross-motions for summary judgment." *Allah v. Ricci*, 532 F. App'x 48, 50 (3d Cir. 2013) (citing *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987))."

Constr. Fin. Admin. Servs., LLC v. Fed. Ins. Co., 2022 U.S. Dist. LEXIS 103042, 2022 WL 2073824 (E.D. Pa. 2022) (Younge, J) (partial summary judgment granted based upon undisputed material facts). *See also*, Niles v. Clifton, 2023 U.S. Dist. LEXIS 187359, 2023 WL 6880389 (E.D. Pa. 2023) (Younge, J.) (summary judgment granted based upon undisputed material facts); Zimmer Dev. Co., LLC v. TVC Dev. Co., LLC, 2022 U.S. Dist. LEXIS 114776, 2022 WL 2345746 (ED Pa 2022) (Younge, J.) (partial summary judgment granted based upon undisputed material facts); Williams v. Garland, 2023 U.S. Dist. LEXIS 203304, 2023 WL 7646490 (E.D. Pa. 2023) (Younge, J). (plaintiff's summary judgment motion granted and defendant's summary judgment motion denied); Consumers Ins. USA v. Huntleigh Dealership Servs., 2022 U.S. Dist. LEXIS 81500, 2022 WL 1423621 (E.D. Pa. 2022) (plaintiff's summary judgment motion granted and defendant's summary judgment motion denied); Isidore Paiewonsky Assocs., Inc. v. Van Caem Klerks Grp. BV, 2023 U.S. Dist. LEXIS 168790, 2023 WL 6199808 (D.V.I 2023), *citing* SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 203-04 (3d Cir. 2022) (citation omitted); Manetas v. Int'l Petroleum Carriers, Inc., 541 F. 2d 408 (3d Cir. 1976); Eugenia VI Venture Holdings, Ltd.. v. Maplewood Mgmt. LP (In re AMC Invs., LLC), 656 B.R. 95, 2024 US Dist. LEXIS 9146, 2024 WL 195925 (D. Del. 2024) (affirming Bankruptcy Court grant of summary judgment); Wells Fargo Bank, N.A. v. Chun Chin Yung, 317 F. Supp. 3d 879, 2018 U.S. Dist. LEXIS 97865, 2018 WL 2966845 (ED Pa. 2018) (Robreno, J.) (motion for summary judgment granted); Great Am. E&S Ins. Co. v. John P. Cawley, Ltd., 866 F. Supp. 2d 437, 2011 U.S. Dist. LEXIS 59808, 2011 WL 2174975 (E.D. Pa. 2011 (DuBois, J.) (summary judgment granted and defaults entered against two non-appearing defendants).

**PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AGAINST THE WEISS DEFENDANTS, AND THE GROSS DEFENDANTS, AND THE ZEKARIA DEFENDANTS, INDIVIDUALLY, JOINTLY AND SEVERALLY, BECAUSE DEFAULTS PREVIOUSLY HAVE BEEN ENTERED OR REQUESTED OF RECORD AGAINST EACH OF SAID DEFENDANTS**

The entry of a default and default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure.  In the instant case, defaults previously were filed against the Weiss Defendants (Gary Weiss and ASOLARDIAMOND, LLC) on December 21, 2023 [ECF 141].  In the instant case, defaults also previously were filed against the Gross Defendants (Sam Gross a/k/a Shlomo Gross and Charlton Holdings Group, LLC) on August 31, 2023 [ECF 100].  In the instant case, defaults also previously were filed against the Zekaria Defendants (Daphna Zekaria and Sokolski & Zekaria PC) on August 13, 2024 [ECF 190].  None of those defendants against whom a default was requested has moved to vacate or set aside the default.  It is appropriate for the Court to enter a final default judgment in favor of plaintiff SAFETY HOUSE, against defendants Gary Weiss and ASOLARDIAMOND, LLC, and against defendants Sam Gross a/k/a Shlomo Gross and Charlton Holdings Group, LLC, and against defendants Daphna Zekaria and Sokolski & Zekaria PC, individually, jointly and severally.

Federal Rule of Civil Procedure 55 provides in relevant part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default….In all other cases, the party must apply to the court for a default judgment." Rule 55 (a) and (b), Fed.R.Civ.P.

To grant a default judgment, the Court first "must ascertain whether the unchallenged facts constitute a legitimate cause of action . . . ." Phoenix Ins. Co. v. Small, 307 F.R.D. 426, 433 (E.D. Pa. 2015) (citations omitted).  When considering a motion for default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."

DIRECTV, Inc. v. Albright, No. 03-4603, 2003 WL 22956416, at *1 (E.D. Pa. Dec. 9, 2003), *quoting* Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)).

If the complaint pleads a legitimate cause of action, the Court of Appeals for the Third Circuit requires that district courts consider the following factors: (1) the potential for prejudice to the plaintiff if default judgment is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether the defendant's failure to respond is due to culpable conduct. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000), *citing* United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984).

In the instant case, a default judgment for $1.965.500.00 is fully justified in favor of plaintiff TSH against the Weiss Defendants and the Gross Defendants and the Zekaria Defendants. Plaintiff TSH paid $1,965,600.00 for the purchase of 151,200 iHealth Covid-19 test kits, and did not receive any of the test kits that it purchased or a refund of its money. Instead, the defendants divided up the money amongst themselves.

A default judgment against the Weiss Defendants and the Gross Defendants and the Zekaria Defendants is fully justified upon consideration of the three Chamberlain factors. Under the first Chamberlain factor, plaintiff TSH undoubtedly will be prejudiced if default judgment is denied against said defendants. The Gross Defendants failed to respond to plaintiff's First Amended Complaint filed and served on July 31, 2023 [ECF 80], and have failed to defend this matter, or to comply with Court Orders, or to respond to any discovery, or to produce any discovery, or to appear for their duly noticed deposition, after their attorney was granted leave to withdraw on March 21, 2023 [ECF 55]. The Zekaria Defendants failed to defend this matter, or to respond to Orders requiring them to produce discovery [e.g., ECF 174], or to appear for their duly noticed deposition, after their attorney was granted leave to withdraw on July 10, 2024 [ECF

179]. The Weiss Defendants also failed to produce all required discovery, or to properly defend this matter, after their attorney was granted leave to withdraw on November 13, 2023 [ECF 133] Therefore, "denying the request for default judgment will prejudice Plaintiff because it has no other means of vindicating its claims." Commodity Futures Trading Comm'n v. Salerno, No. 18-1585, 2020 WL 7122418, at *2 (E.D. PA. Sept. 23, 2020) (citations omitted). The prejudice to plaintiff TSH is particularly acute where, as here, a significant sum is involved -- $1,965,600.00 is owed to plaintiff under the plain terms of the SPA< a genuine agreement. *See* Axalta Coating Sys., LLC v. SRS Ventures, Inc., 2022 WL 874951, at *2 (E.D. Pa. Mar. 24, 2022) ($100,000 debt justified default judgment).

The second Chamberlain factor -- whether the defendants appear to have a litigable defense -- also justifies a default judgment in favor of plaintiff TSH against the Weiss Defendants and the Gross Defendants and the Zekaria Defendants. None of said defendants has a litigable defense. As previously stated, plaintiff TSH paid $1,965,600.00 for the purchase of 151,200 iHealth Covid-19 test kits, and did not receive any of the test kits that it purchased or a refund of its money. Instead, the Weiss Defendants and the Gross Defendants and the Zekaria Defendants received distributions of plaintiff TSH's purchaser price from the Sternberg Defendants, while misrepresentations were being made to plaintiff about delivering test kits, which they did not even purchase.[53]

[53] Gary Weiss's claim – that he purchased 365,790 COVID Test Kits from Mask & Eldiven on 2/6/22 – itself is suspect. Gary Weiss gave two inconsistent and conflicting stories about the test kits he allegedly obtained. In his verified Answer to the Amended Complaint that he filed [ECF 105], *see* Exhibit P-18 accompanying this MSJ, Weiss claimed under oath that he was forced to store the 365,790 test kits that he claims he bought, with Available Moving & Storage ("AMS"), but that when he went to AMS to pick them up, they were no longer on the truck and could not be located. Exhibit P-18, Answer of the Weiss Defendants to the First Amended Complaint [ECF 105], at ¶¶ 172-183. In his sworn deposition conducted on 2/16/24 (Exhibit P-19 accompanying the MSJ), Weiss testified under oath that he picked them up from AMS, but when he drove back

The third and final Chamberlain factor—whether the defendants' failure to respond is due to culpable conduct—weighs heavily in favor of a default judgment against them. Defendants caused the default because they failed to comply with Court Orders and they failed "to engage in the litigation process and to offer [any] reason for this failure," which can be considered culpable conduct. Salerno, *supra*, 2020 WL 7122418 at *3. Simply put, there is no excuse or justification for default, apart from defendants' own culpability.

Upon consideration of the three Chamberlain factors, the Court can, and should, enter default judgment against the Weiss Defendants and the Gross Defendants and the Zekaria Defendants m pursuant to Rule 55, in the amount of $1,965,600.00, the amount set forth in plaintiff's Complaint and in the Certification of Daniel Scully accompanying this Motion for Summary Judgment

An independent basis also justifying the entry of a default judgment and/or summary judgment in favor of plaintiff TSH against the Gross Defendants and the Zekaria Defendants is their failure to respond to plaintiff's Rule 36 Requests for Admission that were served on them. *See*, the following section, *infra*.

---

to his place in New Jersey, he claims he discovered that someone had replaced all of the 365,790 test kits with rice. Exhibit P-19, 2/16/24 Weiss deposition, at Tr. 102:1-107:19. In either case, Weiss admitted that he did not make a police report, or confront or sue AMS, or even inform Sternberg or Gross, concerning the alleged $1.8 million of test kits he claimed he bought, that AMS either lost or replaced with rice. The alleged seller of the test kits (Mask & Eldiven) cannot be located or reached, and the address Weiss gave for them turned out to be a vacant building.

**PLAINTIFF ALSO IS ENTITLED TO SUMMARY JUDGMENT
AGAINST THE GROSS DEFENDANTS, AND THE ZEKARIA DEFENDANTS,
BECAUSE THEY FAILED TO RESPOND AT ALL, LET ALONE ADMIT OR DENY,
PLAINTIFF'S RULE 36 REQUESTS FOR ADMISSION SERVED UPON SAID
DEFENDANTS, AND SUMMARY JUDGMENT IS FULLY WARRANTED AND
APPROPRIATE AGAINST SAID DEFENDANTS, BASED UPON SAID REQUESTS
FOR ADMISSION, ALL OF WHICH ARE DEEMED ADMITTED AGAINST SAID
DEFENDANTS UNDER THE RULES OF COURT.**

Federal Rule 36 states that "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."  Federal Rule 36(a)(1), Fed.R.Civ.P.

Federal Rule 36 provides in relevant part that a "matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Rule 36(a)(4), Fed.R.Civ.P.

Plaintiff TSH served Requests for Admission upon each of the defendants on June 17, 2024, pursuant to Rule 36 of the Federal Rules of Civil Procedure.  *See* Exhibit P-1 accompanying this MSJ.  The Gross defendants -- Sam Gross a/k/a Shlomo Gross and Charlton Holdings Group, LLC – and the Zekaria Defendants -- Daphna Zekaria, Esquire, and Sokolski & Zekaria PC – each failed to respond to the Requests for Admission served on them, either by the 30 day deadline set forth in Rule 36, or to date.  Pursuant to Rule 36, all of the plaintiff's Requests for Admission are now deemed admitted by each of those defendants.  Based upon those admissions, plaintiff TSH is entitled to summary judgment in favor of plaintiff, against each of the Gross Defendants and each of the Zekaria Defendants, both for $1,965,600 in compensatory damages, and for punitive damages.  *See generally*, Statement of Undisputed Material Facts, at ¶¶ 1- 8 and ¶¶ 9(1)-(172).

**SUMMARY JUDGMENT ALSO IS FULLY WARRANTED AND APPROPRIATE AGAINST THE STERNBERG DEFENDANTS, BASED UPON THE FAILURE OF THE STERNBERG DEFENDANTS TO PROPERLY RESPOND TO PLAINTIFF'S REQUESTS FOR ADMISSION, WHICH ARE DEEMED ADMITTED UNDER THE RULES OF COURT**

Federal Rule 36 also provides in relevant part that if "a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. **A denial must fairly respond to the substance of the matter**; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Rule 36(a)(4), Fed.R.Civ.P. (emphasis added).

Federal Rule 36(a)(4) provides in relevant part the "answering party may assert lack of knowledge or information as a reason for failing to admit or deny **only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny**." Rule 36(a)(4), Fed. R. Civ. P. (emphasis added).

If a party responding to a RFA claims to lack knowledge, he must inform himself in reasonable fashion. *See* E. H. Tate Co. v. Jiffy Enterprises, Inc., 16 F.R.D. 571 (E.D. Pa. 1954); Hise v. Lockwood Grader Corp., 153 F. Supp. 276 (D.Nebr. 1957); *see also*, Finman, The Request for Admissions in Federal Civil Procedure, 71 Yale L.J. 371, 404-409 (1962); 4 Moore's Federal Practice 36.04 (2d ed. 1966); 2A Barron & Holtzoff, Federal Practice and Procedure 509 (Wright ed. 1961).

The Notes of the Advisory Committee to the 1970 Amendments states that "Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."

Federal Rule 36 also provides in relevant part that on "finding that an answer does not comply with this rule, the court may order … that the matter is admitted…." Federal Rule 36(a)(6), Fed.R.Civ.P.

Rule 36 also provides that Rule 37(a)(5) applies to an award of attorney fees and costs. Rule 37(a)(5)(A) thus provides that an award of expenses is mandatory unless the opposing party's response or objection to the discovery was substantially justified or other circumstances make an award of expenses unjust. Drone Technologies, Inc. v. Parrot S.A., No. 14-CV-0111, 2015 U.S. Dist. LEXIS 76519, 2015 WL 3756318, at *9 (W.D. Pa. June 12, 2015)(Rule 37(a)(5)(A) requires the court to award expenses unless one of the three exceptions applies). *See also* Dietz & Watson, Inc. v. Liberty Mut. Ins. Co., No. 14-CV-4082, 2015 U.S. Dist. LEXIS 58827, 2015 WL 2069280, at *6 (E.D. Pa. May 5, 2015)(noting the mandatory nature of Rule 37(a)(5)).

In the instant case, the Sternberg Defendants failed and refused to comply with their discovery obligations under Rule 36 of the Federal Rules of Civil Procedure – the Sternberg Defendants failed and refused to provide proper responses to the 6/17/24 Requests for Admission served on them, as set forth in detail in Plaintiff's Motion under Rule 36(a)(6) of the Federal Rules, seeking a Court determination deeming as admitted, Plaintiff's Rule 36 Requests for Admission served on June 17, 2024, on defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and for an award of attorney fees and costs under Rule 37(a)(5) of the Federal Rules, filed on July 24, 2024 [ECF 184] (the "Rule 36 Motion").  Plaintiff's Rule 36 Motion against the Sternberg Defendants is incorporated herein by reference, as if fully set forth at length.  The whole purpose of Plaintiff's Requests for Admission served on the defendants was to substantially reduce trial time, by getting the Sternberg Defendants to admit matters of fact and documents that are not in dispute.  However, the responses of the Sternberg Defendants (the "Sternberg RFA

Responses") to plaintiff's Requests for Admission are deficient in so many respects, that plaintiff respectfully believes and submits that said Sternberg RFA Responses border on bad faith; the Sternberg RFA Responses fail to comply with Rule 36 and certainly are contrary to the aforesaid stated purposes served by Rule 36 RFAs.

Accordingly, the Sternberg Defendants' deficient responses to Plaintiff's Requests for Admission, which fail to comply with Rule 36, are deemed admitted. Cruz v. Auker, 2023 U.S. Dist. LEXIS 169062 (MD Pa 2023) (Requests for Admission deemed admitted where responses deficient and failed to comply with Rule 36); In re Creda Software, Inc., 2022 Bankr. LEXIS 1480 (Bkrtcy. Del. 2022) (Requests for Admission deemed admitted where responses deficient and failed to comply with Rule 36)

For the reasons set forth in plaintiff's Rule 36 Motion, plaintiff is entitled to have deemed admitted, the Requests for Admission served on the Sternberg Defendants Those admissions of the Sternberg Defendants serve as an independent basis upon which the Court may, and should, enter Summary Judgment in favor of plaintiff TSH against the Sternberg Defendants.

**PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT FOR $1,965,600.00 AGAINST THE STERNBERG DEFENDANTS, AS WELL AS EACH OF THE OTHER DEFENDANTS, BASED UPON THE UNDISPUTED MATERIAL FACTS IN THIS CASE**

The underlying undisputed material facts establish that SAFETY HOUSE is entitled to Summary Judgment against the Sternberg Defendants (as well as all other defendants) for the causes of action asserted against the Sternberg Defendants in the First Plaintiff's Amended Complaint [ECF 80], for Fraud in the Inducement (Count I), and for Fraud (Count II), and for Wrongful Civil Conspiracy (Count IV), and for Participation Theory (Count VII), and for Unjust Enrichment/Quantum Meruit (Counts VIII), and for Intentional Interference With Contractual Relations (Count IX), and for Intentional Interference With Prospective Economic Advantage

(Count X).

The Sternberg Defendants (and Gross Defendants) induced SAFETY HOUSE to wire $1,965,600.00 into escrow to the Sternberg attorney trust account, based upon the representations they made to TSH, as set forth in detail in this Motion, and they knew that their representations were not true, and that TSH would rely upon their representations, and they, together with the Weiss Defendants and the Zekaria Defendants, caused damages to TSH.  SAFETY HOUSE was induced to send the money to Sternberg, based upon assurances that the money would not be released from Sternberg's escrow account, until Safety House received a Bill of Sale, and a Bill of Lading from a recognized common carrier, for the COVID Test Kits.  But the 1/21/22 Bill of Sale was fraudulent, and TSH did not receive any Bill of Lading for its 151,200 COVID Test Kits.

Whether you believe Gary Weiss's first story (that when he went to pick up the Test Kits from AMS, where he had stored them (because the Sternberg Defendants and Gross Defendants failed to supply him with Bills of Lading), the 365,790 Test Kits no longer were on the truck and could not be located), or Gary Weiss's second story (that when he picked up the Test Kits from AMS, he discovered that someone had replaced all 365,790 Test Kits with rice), the undisputed fact remains that the 151,200 COVID Test Kits were not delivered to TSH, either by the 1/25/22 "deliver by" date in SAFETY HOUSE's 1/21/22 Purchase Order #18315, or at any time prior to when TSH canceled the order and filed this lawsuit.

And even defendants' claim – that they did purchase 365,790 COVID Test Kits on February 6, 2022 – is very suspect.  The purported seller – Mask & Eldiven ("M&E") – on the one page document that Weiss claims evidences his purchase of 365,690 Test Kits (Exhibit P-9), is an entity that cannot be located and has no Internet presence.  The address shown for M&E – 2 W 47st, Room 1005, New York, New York 10036 – is the address of a building that has been vacant

since 2019, and for which a demolition permit was obtained.  Noone answers the phone number shown on the M&E document, and Weiss does not even know the full names or contact information of the two people he claims were from M&E from whom he claims he purchased the 365,790 Test Kits.  Weiss did not take any  pictures of the Test Kits (the only picture he produced was of a truck partially full of "Home Depot" boxes, not even "iHealth" packing boxes).  Weiss did not take any pictures of the alleged switch to rice.  Weiss did not make any Police report about AMS allegedly losing the allegedly missing 365,790 Test Kits (Weiss story #1), or about switching them to rice (Weiss story #2), even though Weiss claimed he paid $1.8 million to buy them.  Weiss did not confront, or sue, AMS, for allegedly losing the alleged Test Kits (Weiss story #1) or switching them to rice (Weiss story #2).  Weiss did not even tell the Sternberg Defendants or the Gross Defendants about either AMS allegedly losing the alleged Test Kits (Weiss story #1) or switching them to rice (Weiss story #2).

The Gross and Sternberg Defendants represented to TSH that "**Title transfer shall happen contemporaneously with the funds being released to Seller.**" (SPA at ¶ 6).  But that also was a misrepresentation made to TSH to induce SAFETY HOUSE to wire transfer the $1,965,600 purchase price to them.  The first date that any of the defendants claim they actually purchased the Test Kits was Weiss's claim that he bought 365,790 Test Kits from M&E on February 6, 2022.  Even though Sternberg promised the funds would not be released from escrow until "contemporaneous" with title transfer of the 151,200 Test Kits to TSH, Stenberg disbursed $219,240 from his attorney trust account directly to Weiss on February 1, 2022, six *days even before Weiss claims he purchased Test Kits,* and Sternberg disbursed another $1,911,960 to Zekaria (Weiss's attorney) on February 4, 2022, *two days even before Weiss claims he purchased Test Kits.* Defendants also repeated lied to TSH about the Test Kits being en route to TSH (despite such

repeated representations, 151,200 never were delivered to TSH).

After defendants wrongfully induced TSH to wire the $1,965,600.00 to Sternberg, the defendants failed to deliver the Test Kits, and failed to return TSH's purchase price to TSH; instead they kept all of SAFETY HOUSE's money, and divided it up amongst themselves, each of the defendants got a portion of TSH's purchase price. The SPA did not allow defendants both to keep the entire $1,965,600 purchase price paid by TSH, and not deliver the 151,200 Test Kits to TSH.

Fraud in the inducement occurs when someone signs the document they intended to sign, but their assent was induced by a material misrepresentation about facts external to that document. Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 109 (3d Cir. 2000); 37 Am. Jur. 2d Fraud and Deceit § 2 (2020)). Based upon the undisputed facts in this case, in the words of Sternberg himself, "**That is classic fraud in the inducement and can only be cured by delivery or return of all money**." *See* Exhibit P-17. Bancorp Bank v. Condor Developers, LLC, 2017 U.S. Dist. LEXIS 123845, 2017 WL 3393804 (D. NJ 2017) (partial summary judgment on fraud in inducement claim);

What the defendants did is classic fraud, and fraud in the inducement, and TSH is entitled to Summary Judgment on those claims. State Auto Prop. & Cas. Ins. Co. v. Sigismondi Foreign Car Specialists, Inc., 533 F. Supp. 3d 268, 2021 US Dist. LEXIS 69791 (E.D. Pa. 2021) (summary judgment granted on fraud claim) (Robreno, J); Berati Transporter, LLC v. Penske Truck Leasing Co. LP, 311 A. 3d 554, 2023 WL 8307007, 2023 Pa. Super. Unpub. LEXIS 2978 (Pa. Super. 2022) (summary judgment on fraud claim affirmed on appeal)

What the defendants did also is a classic wrongful civil conspiracy. The defendants wrongfully conspired with each other to fraudulently induce SAFETY HOUSE to send them almost Two Million Dollars, without any intent or capacity to perform the alleged agreement to

sell YTSH 151,200 COVID Test Kits. Each defendant took steps to further that wrongful conspiracy. Each defendant received a portion of TSH's $1,965,600, and defendants refused to return the funds or deliver the Test Kits. Plaintiff is entitled to summary judgment on its unlawful civil conspiracy against the defendants. West Shore Home, LLC v. Chappell, 2024 U.S. Dist. LEXIS 104171, 1014 U.S.P.Q. 2d (BNA) 1074 ((MD Pa. 2024).

For the reasons set forth above in this Motion and supporting papers, and based upon the aforesaid undisputed facts, TSH also has established its other causes of action against the defendants.

**SUMMARY JUDGMENT FOR PUNITIVE DAMAGES IN FAVOR OF PLAINTIFF AGAINST ALL DEFENDANTS IS FULLY WARRANTED AND APPROPRIATE**

Punitive damages are appropriate when tortious conduct is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." In re Lemington Home for the Aged, 777 F.3d 620, 633 (3d Cir. 2015) (internal quotation marks omitted), *quoting Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747 (Pa. 1984)*; Advanced Fluid Sys. V. Huber, 281 F. Supp. 3d 362 M.D. Pa. 2019), affirmed, 958 F. 3d 168, 2020 U.S. App. LEXIS 13909 **; 106 Fed. R. Serv. 3d (Callaghan) 910, 2020 WL 2078298 (3d Cir. 2020). As succinctly stated by the Third Circuit:

"'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'" *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (Pa. 1984) (quoting Restatement (Second) of Torts, § 908(2)). "Punitive damages . . . are not awarded to compensate the plaintiff for her damages but rather to [**27] heap an additional punishment on a defendant who is found to have acted in a fashion which is particularly egregious." *Phillips v. Cricket Lighters*, 584 Pa. 179, 883 A.2d 439, 446 (Pa. 2005) (citation omitted). "The state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." *Feld*, 485 A.2d at 748. "[W]e must make a 'careful analysis of the entire trial record' and examine whether the plaintiffs provided sufficient evidence to support a punitive damage award." *David by Berkeley v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 237 (3d Cir. 1984)(quoting Berroyer v. Hertz, 672 F.2d 334, 341, 19 V.I. 641 (3d

Cir. 1982)). "'[F]or punitive damages to be awarded there must be acts of *malice, vindictiveness and a wholly wanton disregard of the rights of others.*'" *Tunis Bros.*, 952 F.2d at 741 (quoting *Smith*, 564 A.2d at 193) (emphasis added)."

Lemington, *supra*, 777 F. 3d at 633.

On a summary judgment motion, the Court has the full power and authority to award punitive damages as a matter of law. Lemington, *supra*, 958 F. 3d at 173 (Third Circuit affirmed trial court's grant of summary judgment for punitive damages on a motion for summary judgment).

In the instant case, an award of punitive damages by the Court against all Defendants is amply supported by the facts of record in this case, undisputed evidence that is clear and convincing. Defendants willfully and knowingly misappropriated the entire $1,965,600.00 purchase price paid into escrow to the Sternberg attorney trust account, all the time lying to TSH about the COVID test kits being en route for delivery (which never was true). The Sternberg Defendants knowingly and willfully disbursed the funds from their attorney trust account, in violation of the terms of the SPA, and in violation of the fiduciary duty that Sternberg owed to both the buyer, TSH, and Sternberg's client, Gross, the seller. Sternberg wrongfully released the funds from his attorney trust account before confirming that the goods purchased by plaintiff TSH were delivered to a common carrier for delivery to TSH – no Bill of Lading evidencing any such delivery ever was created, let alone sent to plaintiff TSH. Sternberg also knew or should have known that the 1/21/22 Bill of Sale furnished by Sternberg and Gross to plaintiff was fraudulent, because they never in fact actually owned any of the COVID test kits evidenced by the purported Bill of Sale. Even after Gross confirmed to plaintiff that TSH could cancel the transaction and receive a full refund, and after plaintiff TSH in fact canceled the transaction and demanded the return of the $1,965,600.00 purchase price, Stenberg compounded his wrongful conduct by simply ignoring what his client (Gross) told TSH, and defendants instead kept all of plaintiff's purchase

money, and Sternberg continued to make disbursements form his attorney trust account to the other defendants, while not delivering any of the COVID test kits, and even after being instructed not to make any further disbursements from his trust account.  Defendants' fraudulent and tortious conduct was active, deliberate, knowing, willful, and unlawful, and to date, Defendants still fail to appreciate the gravity of their wrongdoing or the severe and substantial financial loss and consequences to plaintiff TSH, insisting they did nothing wrong.  The conduct of the Defendants in this case, as aptly stated by Stenberg himself, **"is classic fraud in the inducement and can only be cured by delivery or return of all money**."  *See,* Sternberg Deposition Exhibit 32, a copy of which is marked as Exhibit P-17 accompanying this Motion.

The factual record in this case warrants the imposition of punitive damages against all defendants. Hutchison ex rel. Hutchison v. Liddy, 582 Pa. 114, 870 A. 2d 766, 773 (Pa. 2005) (Pennsylvania Supreme "Court found that an award of punitive damages was proper for claims sounding in breach of fiduciary duty, as well as intentional withholding of information and fraudulent misrepresentation."); *see also*, Klein v. Weidner, 2010 U.S. Dist. LEXIS 66945, 2010 WL 2671450 (E.D. Pa. 2010); Karp v. Jenkins, 2022 U.S. Dist. LEXIS 66845 *, 2022 WL 1086406 (M.D. Pa. 2022).

Nor is evidence of a defendant's wealth required before punitive damages may be imposed. Vance v. 46 & 2, Inc., 2007 PA Super 71, 900 A. 2d 202, 207 (Pa. Super. 2007) (collecting cases) (The weight of Pennsylvania case law is  that "evidence of a tortfeasor's wealth is not a necessary condition precedent for imposition of an award of punitive damages."); *accord*, Estate of Lemington for the Aged v. Baldwin (In re Lemington Home for the Aged Official Comm. of Unsecured Creditors), 777 F.3d 620, 631-32 (3d Cir. 2015).

This Court should grant plaintiff TSH's Motion and enter an award of punitive damages as against all defendants. Plaintiff requests that the amount of punitive damages be ten times the compensatory damages sought. In the alternative, the Court should enter liability for punitive damages in favor of plaintiff TSH against all defendants, and establish a schedule for plaintiff to conduct asset discovery of the defendants, and thereafter schedule and conduct a punitive damages hearing to determine the amount of punitive damages to be awarded in favor of plaintiff TSH against the defendants.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM, respectfully submits that the Court should enter the proposed Order accompanying this Motion: (a) granting Summary Judgment for compensatory damages in favor of Plaintiff TSH against each of the defendants, Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC (collectively the "Sternberg Defendants"), and Daphna Zekaria, Esquire, and Sokolski & Zekaria, P.C. (collectively the "Zekaria Defendants"), and Gary Weiss and ASOLARDIAMOND, LLC, a/k/a ASOLAR, LLC (collectively the "Weiss Defendants"), and Sam Gross and Charlton Holdings Group, LLC (collectively the "Gross Defendants"), individually jointly and severally, in the amount of $1,965,600.00, plus post-Judgment interest at the legal rate, plus costs; and (b) granting a Default Judgment in favor of TSH against the Gross Defendants and the Weiss Defendants and the Zekaria Defendants, individually jointly and severally, in the amount of $1,965,600.00, plus post-Judgment interest at the legal rate, plus costs; and (c) granting Summary Judgment for punitive damages in favor of Plaintiff against each of the defendants, individually jointly and severally, either in an amount determined by the Court (which plaintiff requests be ten times the purchase price paid by Plaintiff,) or in the alternative, enter liability for punitive damages

in favor of Plaintiff against all defendants and establish a schedule for Plaintiff to conduct asset

discovery of the defendants, and thereafter conduct a punitive damages hearing to determine the

amount of punitive damages to be awarded in favor of Plaintiff against the defendants; and (d)

granting to Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64223
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date: September 30, 2024                    Attorneys for plaintiff TSH

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date shown below he caused to be served a true and correct copy of Plaintiff's Rule 56 Motion for Summary Judgment and Rule 55 Motion for Default Judgment, and all supporting exhibits and papers, upon all defendants, via ECF, and/or email, upon the following:

Seth Laver, Esquire
Joseph Ross, Esquire
Goldberg Segalla
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
slaver@goldbergsegalla.com
Jross@goldbergsegalla.com

Gary Weiss
ASOLARDIAMOND, LLC
437 1st Avenue
Elizabeth, NJ 07206
wgary4109@gmail.com
monipair@aol.com

Samuel Gross
a/k/a Shlomo Gross
78 Buckminster Road
Rockville Centre, NY 11570
charltonholdinggroupllc@aol.com
publicdiamonds@gmail.com
Scg1212@gmail.com
Samrosinc@icloud.com

Daphna Zekaria, Esquire
SOKOLSKI & ZEKARIA, PC
8 Westminster Road
Syosset, NY 11791
Dzandpeanut@aol.com

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE

Date: September 30, 2024

Attorneys for Plaintiff TSH