# EXHIBIT "P-1"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMERICAN ENVIRONMENTAL** : | |
| **ENTERPRISES, INC., d/b/a** : | |
| **THESAFETYHOUSE.COM** : | |
| : | **CIVIL ACTION** |
| **Plaintiff,** : | |
| : | **No. 2022-cv-00688 (JMY)** |
| **v.** : | |
| : | |
| **MANFRED STERNBERG, ESQUIRE,** : | |
| **and MANFRED STERNBERG &** : | |
| **ASSOCIATES, PC, and CHARLTON** : | |
| **HOLDINGS GROUP, LLC, and** : | |
| **SAMUEL GROSS a/k/a SHLOMO** : | |
| **GROSS, and GARY WEISS,** : | |
| **and ASOLARDIAMOND, LLC a/k/a,** : | |
| **ASOLAR. LLC, and DAPHNA** : | |
| **ZEKARIA, ESQUIRE, and SOKOLSKI** : | |
| **& ZEKARIA, P.C.** : | |
| : | |
| **Defendants.** : | |

**PLAINTIFF'S REQUESTS FOR ADMISSION**
**DIRECTED TO EACH OF THE DEFENDANTS**
**AND SUPPLEMENTAL INTERROGATORY**
**AS TO ANY DENIED REQUESTS**

TO:   (1)   Daphna Zekaria, Esquire
       (2)   SOKOLSKI & ZEKARIA, P.C.
             c/o Patrick J. Healey, Esquire (VIA EMAIL: phealey@rebarkelly.com)
             c/o Cathleen Kelly Rebar, Esquire (VIA EMAIL: crebar@rebarkelly.com)

       (3)   Manfred Sternberg, Esquire
       (4)   MANFRED STERNBERG & ASSOCIATES, PC
             c/o Seth Laver, Esquire (VIA EMAIL: slaver@goldbergsegalla.com)
             c/o Joseph Ross, Esquire (VIA EMAIL: jross@goldbergsegalla.com)

       (5)   Sam Gross
       (6)   CHARLTON HOLDINGS GROOUP, LLC
             (VIA EMAIL charltonholdinggroupllc@aol.com and Scg1212@gmail.com and
             publicdiamonds@gmail.com and Samrosinc@icloud.com)

       (7)   Gary Weiss
       (8)   ASOLARDIAMOND, LLC
             (VIA EMAIL: wgary4109@gmail.com and monipair@aol.com)

Plaintiff American Environmental Enterprises, Inc. d/b/a TheSafetyHouse.Com, through their counsel, pursuant to Rule 36 of the Federal Rules of Civil Procedure, requests and demands that each of the Defendants make the following admissions, within the time prescribed by the Rules of Court.

## SUPPLEMENTAL INTERROGATORY

34.     For each of the following requests for admission which you deny, set forth all of the facts and all of the legal and other reasons why you deny the request, and identify the persons with knowledge of said facts.

## I.   DEFINITIONS

As used herein:

1.      "Document" or "documents" or "record" or "records" shall mean the following: any medium by which information is recorded, stored, communicated or utilized. The term "document" or "documents" is intended to be construed as broadly as possible under the Federal Rules of Civil Procedure and Federal Rules of Evidence.

2.      "Communication(s)" means any manner of transmitting or receiving information, opinions or thoughts, whether orally, in writing or otherwise, including, but not being limited to, conversations (whether face-to-face, by telephone or otherwise), correspondence, memoranda, telexes, telecopies, telegrams, releases, emails or text messages.

3.      "Meeting" shall mean any encounter between two or more persons during which a Communication of any kind occurred and shall include, but not be limited to, formal gatherings, conversations and telephone calls.

4.      "Or" includes "and," and vice versa.

5.      "Plaintiff" or "TSH" or "Safety House" refers to the Plaintiff, American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM, and its owners, agents, officers, directors, employees, predecessors-in-interest, successors-in-interest representatives, servants, and all other persons acting or purporting to act on its behalf.

6.      The "Sternberg Defendants" or "Sternberg" shall mean Defendants Manfred Sternberg, Esquire ("Sternberg"), and Manfred Sternberg & Associates, P.C. ("MSA"), or any of Sternberg and MSA, each of their respective owners, agents, officers, directors, employees, predecessors-in-interest, successors-in-interest, representatives, servants, heirs, assigns, and all

other persons and entities acting or purporting to act on each of their behalf.

7.      The "Gross Defendants" or "Gross" shall mean Defendants Samuel Gross, a/k/a Shlomo Gross ("Gross"), and Charlton Holdings Group, LLC ("Charlton" or "CHG"), or any of Gross and Charlton, and each of their respective owners, agents, officers, directors, employees, predecessors-in-interest, successors-in-interest, representatives, servants, heirs, assigns, and all other persons and entities acting or purporting to act on each of their behalf.

8.      The "Weiss Defendants" or "Weiss" shall mean Defendants Gary Weiss ("Weiss"), and ASOLARDIAMOND, LLC, d/b/a ASOLAR, LLC ("ASD" or "ASOLAR"), or any of Weiss and ASOLAR, and each of their respective owners, agents, officers, directors, employees, predecessors-in-interest, successors-in-interest, representatives, servants, heirs, assigns, and all other persons and entities acting or purporting to act on each of their behalf.

9.      The "Zekaria Defendants" or "Zekaria" shall mean Defendants Daphna Zekaria, Esquire ("Daphna"), and Sokolski & Zekaria, PC ("S&K"), or any of Daphna, and S&K, and each of their respective owners, agents, officers, directors, employees, predecessors-in-interest, successors-in-interest, representatives, servants, heirs, assigns, and all other persons and entities acting or purporting to act on each of their behalf.

10.     "Defendants" shall mean the Sternberg Defendants, and the Zekaria Defendants, and the Weiss Defendants, and the Gross Defendants,  and any of them, and each of their respective owners, agents, officers, directors, employees, predecessors-in-interest, successors-in-interest, representatives, servants, heirs, assigns, and all other persons and entities acting or purporting to act on each of their behalf.

11.     "VRC" or "VRC Medical" shall mean VRC Medical Services.

12.     "Complaint" or "Amended Complaint" shall mean the Amended Complaint filed in this action on or about July 31, 2023 [ECF 80], and/or as may be further amended.

13.     "Answer" shall mean the answer filed by each of the Defendants to the Complaint.

14.     "Sale Agreement" or "SPA" shall mean the January 21, 2022 document entitled "Sale and Purchase Agreement" with all Exhibits, a copy of which is attached as Exhibit "1" to the Complaint.

15.     "Sternberg Escrow Account" or "Sternberg attorney escrow account" shall mean the Sternberg IOLTA-Trust Account further identified in Exhibit "B" of the Sale Agreement, into which trust account Plaintiff (and VRC) wired funds to purchase Test Kits.

16.     "Escrow Account" or "Your Escrow Account" shall mean the attorney escrow or other escrow account, of the particular Defendant to which reference is being made.

17.     "Test Kits" or "Covid Test Kits" shall mean the iHealth Covid-19 Antigen two-pack test kits which were purchased by Plaintiff or to be supplied pursuant to the Sale Agreement or the Order or which were to be supplied by or through any Defendant, or to be

purchased by VRC or other person or entity.

18.     "Order" shall mean TSH's Purchase Order # 18315 purchase of 151,200 Test Kits in exchange for the payment of $1,965,600.

19.     "Escrow Funds" or "Purchase Price" shall mean the $1,965,600.00 amount that TSH wire transferred to the Sternberg Escrow Account on January 21, 2022.

20.     "Affirmative Defenses" shall mean each any every affirmative defense asserted by any Defendant in any pleading filed with the Court.

21.     The "Sternberg Deposition" shall mean the sworn oral deposition of Sternberg conducted by Plaintiff through counsel on February 7, 2024.

22.     The "Weiss Deposition" shall mean the sworn oral deposition of Weiss conducted by Plaintiff through counsel on February 16, 2024.

23.     The Definitions and Instructions to the Plaintiff's prior discovery requests (Interrogatories and Document Requests) propounded upon Defendants are incorporated herein by reference, and shall apply, to the extent not inconsistent with the Definitions and Instructions expressly set forth in these requests for admission.

## II.     **INSTRUCTIONS**

1.     You shall answer and admit each request for admission in writing and separately and fully, unless it is denied or objected to, in which event the reason for the objection or denial shall be set forth in detail.

2.     Each request for admission below shall be deemed admitted unless, within 30 (thirty) days after service of these requests, the party to whom the request is directed serves upon Plaintiff a written denial or objection addressed to the matter.

3.     Any matter admitted herein is conclusively established unless the Court, on motion, permits withdrawal or amendment of the admission.

4.     If the responding party denies a request for admission, said denial shall fairly meet the substance of the requested admission, and when good faith requires that the responding party qualify an answer or deny only a part of the matter of which an admission is requested, the responding party shall specify·so much of it as is true and qualify or deny the remainder.

5.     The responding party may not give lack of information or knowledge as a reason for failure to admit or deny unless that party states that it has made reasonable inquiry and that the info1mation known or readily obtainable by it is insufficient to enable

it to admit or deny.

6.      The responding party may not object to a request for admission on the ground that the admission requested presents a genuine issue for trial.

7.      If the responding party fails to admit the genuineness of any document or the truthfulness of any matter as requested herein, and if Plaintiff thereafter proves the genuineness of the document or the truth of the matter, Plaintiff may, to the extent provided in Federal Rule of Civil Procedure 37(c)(2), apply to the Court for an Order requiring the responding party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees.

8.      For the purposes of the following requests for admissions, the relevant time period, unless otherwise specified for a particular request, is from January 1, 2022, through the present. If a statement is true as applied to any particular time or individual during the relevant period, such statement must be admitted to that extent.

III.      **REQUESTS FOR ADMISSION**

1.      At all times relevant to the Complaint, Sternberg was an attorney in good standing and duly licensed to practice law in Texas.

2.      At all times relevant to the Complaint, Zekaria was an attorney in good standing and duly licensed to practice law in New York.

3.      On or about January 21, 2022, Plaintiff agreed to purchase 151,200 iHealth Covid-19 Antigen Rapid two-pack test kits (the "Covid Test Kits") for a total payment of $1,965,600.00 (the "Purchase Price").

4.      A true and correct copy of Plaintiff's Purchase Order for the Test Kits is attached as the first page of Exhibit 1 to Plaintiff's Complaint [ECF 80, at page 35 of the 56 page pdf].

5.      A true and correct copy of Plaintiff's Purchase Order for the Test Kits was marked as Sternberg Deposition Exhibit 14 at the Sternberg Deposition.

6.      The Purchase Order is dated January 21, 2022.

7.      The Purchase Order clearly and unambiguously states a "Receive By" date of January 25, 2022.

8.      The "Vendor" stated in the Plaintiff's Purchase Order is as follows:

> "(713) 824-9170
> C/O Manfred Sternberg, ESQ.
> Charlton Holding Group, LLC
> 78 Buckminster Road
> Rockville Centre NY 11570"

9.      The "(713) 824-9170" phone number set forth in the "Vendor" section of Plaintiff's Purchase Order is the phone number for Sternberg.

10.     The "78 Buckminster Road, Rockville Centre NY 11570" address set forth in the "Vendor" section of Plaintiff's Purchase Order is the address for Gross.

11.     CHG is an entity with no assets, that was undercapitalized, and that is owned and controlled by defendant Samuel Gross.

12.     Gross, starting in 2014, served at least 18 months in a New York State prison based upon convictions for Grand Larceny and Scheme to Defraud.

13.     Gross and Sternberg represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States, and that Plaintiff had to wire the money to them asap in order to secure Plaintiff's position in the queue for purposes of shipping the Test Kits.

14.     To induce Plaintiff to make the purchase of the Test Kits Gross and Sternberg represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States, and that Plaintiff had to wire the money to them asap in order to secure Plaintiff's position in the queue for purposes of shipping the Test Kits.

15.     The Sale and Purchase Agreement used for the Plaintiff's Purchase Order was drafted by Sternberg.

16.     A true and correct copy of the SPA is attached as Exhibit 1 to the Complaint, right after the Purchase Order. [ECF 80, at pages 36-43 of the 56 page pdf].

17.     A true and correct copy of the SPA was marked as Sternberg Deposition Exhibit 4 at the Sternberg Deposition.

18.     As late as March 24, 2022, Sternberg did not have a copy of the fully executed SPA, as he admitted in his 3/24/22 email Sternberg sent to Gross, a copy of which Sternberg 3/24/22 email was marked as Sternberg Deposition Exhibit 5 at the Sternberg Deposition.

19.     Sternberg was requested by Plaintiff to produce, but failed to produce, the documents and metadata showing when the SPA was signed, and when and how the SPA was delivered by Gross to Sternberg.

20.     Instead of making the Purchase Price payment directly to Seller, the SPA provides for SAFETY HOUSE as Purchaser to pay the $1,965,600.00 Purchase Price into the Sternberg attorney escrow account, to be disbursed pursuant to the terms and conditions of the SPA.

21.     Plaintiff wired the $1,965,600.00 Purchase Price into the Sternberg attorney escrow account on January 21, 2022.

22.     When Plaintiff wired the $1,965,600.00 Purchase Price into the Sternberg attorney escrow account on January 21, 2022, neither Gross nor Sternberg owned or actually had possession of the 151,200 Test Kits purchased by Plaintiff.

23.     At no time, from January 21, 2022, through February 23, 2022, When Plaintiff filed the initial Complaint in this lawsuit, did Gross or Sternberg own or actually have possession of the 151,200 Test Kits purchased by Plaintiff.

24.     At no time, from January 21, 2022, through the present, did Gross or Sternberg own or actually have possession of the 151,200 Test Kits purchased by Plaintiff.

25.     The first Bill of Sale delivered by Gross and/or Sternberg to Plaintiff stated that the transfer of the Test Kits to Plaintiff "is effective as of January 21, 2022" (the "1/21/22 Bill of Sale").

26.     A true and correct copy of the 1/21/22 Bill of Sale was used by Sternberg and Gross in this case, and was attached as Exhibit D to the Motion to Dismiss made by Sternberg and Gross in this case on April 1, 2022 [ECF 13-4, page 9 of 10].

27.     A true and correct copy of the 1/21/22 Bill of Sale that was attached as Exhibit D to the Motion to Dismiss made by Sternberg and Gross in this case on April 1, 2022 [ECF 13].

28.     When the 1/21/22 Bill of Sale was delivered to Plaintiff, neither Gross nor Sternberg owned or actually had possession of the 151,200 Test Kits purchased by Plaintiff.

29.     The SPA states that CHG is the Seller and Plaintiff is the Buyer, but the SPA also states that Sternberg was the Escrow Agent for the Plaintiff's $1,965,600.00 Purchase Price for the test kits that were the subject of Plaintiff's Purchase Order.

30.     Paragraph 6 of the SPA clearly states as follows (emphasis added):

> "Once the transferred funds [the Purchase Price] have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer.  **Title transfer shall happen contemporaneously with the funds being released to Seller**."

31.     Sternberg's role as the Escrow Agent under the SPA was to make sure that the funds were not released to Seller unless and until TSH as Buyer was assured of getting delivery of the purchased Test Kits, i.e., by making sure that a Bill of Sale for the Test Kits and a Bill of Lading for the Test Kits from a common carrier first were delivered to Plaintiff as Buyer "contemporaneously with the funds being released to Seller."

32.     Sternberg and Gross failed to deliver or cause to be delivered to Plaintiff, a Bill of Lading from a common carrier for the 151,200 Test Kits purchased by Plaintiff, before Sternberg released most of Plaintiff's funds from the Sternberg attorney escrow account.

33.     Sternberg and Gross failed to deliver or cause to be delivered to Plaintiff, a Bill of Lading from a common carrier for the 151,200 Test Kits purchased by Plaintiff, at any time.

34.     Title transfer to the Test Kits [to Plaintiff] did not happen contemporaneously with Sternberg's release of the funds from the Sternberg attorney escrow account that Plaintiff wire-transferred to Sternberg.

35.     On January 19, 2022, VRC wired $2,268,000.00 to Sternberg's attorney escrow trust account, and on January 20, 2022, VRC wired $181,440.00 to Sternberg's attorney escrow trust account, for a total of $2,449,440.00, for their purchase of a total of 204,120 Test Kits from Gross and Sternberg.

36.     Between January 19 and January 21, 2022, Sternberg received wire-transfers from Plaintiff and VRC totaling $4,415,040.00 for purchases of Test Kits, that were made into Sternberg's attorney escrow account.

37.     Gross and Sternberg failed to deliver the 151,200 Test Kits purchased by Plaintiff.

38.     Gross and Sternberg failed to refund to Plaintiff the $1,965,600.00 paid by plaintiff and wired to Sternberg for Plaintiff's purchase of the 151,200 Test Kits.

39.     Gross and Sternberg failed to deliver the 204,120 Test Kits purchased by VRC.

40.     Gross and Sternberg failed to refund to VRC the $2,449,440.00 paid by plaintiff and wired to Sternberg for Plaintiff's purchase of the 204,120 Test Kits.

41.     Sternberg made the following wire-transfers totaling $2,571,200.00 from the Sternberg attorney escrow account into which Plaintiff wired the $1,976,600.00 Purchase Price and into which VRC wire-transferred a total of $2,449,440.00:

(a) The sum of $219,240.00, wire-transferred by Sternberg directly to Weiss on 2/1/22; and

(b) The sum of $1,911,960.00, wire-transferred by Sternberg to the Zekaria attorney escrow account on 2/4/22; and

(c) The sum of $250,000.00, wire-transferred by Sternberg to the Zekaria attorney escrow account on 2/15/22; and

(d) The sum of $190,000.00, wire-transferred by Sternberg to the Zekaria attorney escrow account on 2/25/22.

42.     Sternberg made the wire transfers set forth in the preceding request, totaling $2,571,200.00, out of the Sternberg attorney escrow account, into which Plaintiff and VRC made their wire transfers that totaled $4,415,440.00 (leaving a balance of $1,842,840.00 paid by Plaintiff and VRC into the Sternberg trust account, but not disbursed by Sternberg to Weiss and Zekaria).

43.     Sternberg Deposition Exhibit 21 is a true and correct copy of a text authored by Gross on September 20, 2023, in which he states an "end balance [of] $1,876,003.89 (one million eight hundred seventy six)".

44.     The "end balance [of] $1,876,003.89" to which Gross referred in Sternberg Deposition Exhibit 21 is the ending balance that Gross stated that he and Sternberg still had in their possession or control as of 9/20/23.

45.     When Sternberg released the sum of $219,240.00 from his attorney escrow account to Weiss on February 1, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff.

46.     When Sternberg released the sum of $1,911,960.00 from his attorney escrow account to Zekaria on February 4, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff.

47.     Weiss claims that he purchased 365,700 Test Kits from "Mask & Eldiven."

48.     The only document that Weiss produced that Weiss claims evidences his purchase of 365,700 Test Kits from "Mask & Eldiven" was a single page document dated February 6, 2022, purporting to be from "Mask & Eldiven, 2 W 47st, Room 1005, New York, New York 10036" (the "2/6/22 M&E document").

49.     A true and correct copy of the 2/6/22 M&E document was marked as Sternberg Deposition Exhibit 28 at the Sternberg Deposition, and also marked as Weiss Deposition Exhibit 5 at the Weiss Deposition.

50.     The address set forth for Mask & Eldiven in the 2/6/22 document -- 2 W 47st, Room 1005, New York, New York 10036 – was at the time a vacant building.

51.     The address set forth for Mask & Eldiven in the 2/6/22 document -- 2 W 47st, Room 1005, New York, New York 10036 – was for a building that was closed prior to 2020, and a demolition permit was filed for the building in October of 2019 (source: https://newyorkyimby.com/2019/10/demo-permits-filed-for-2-10-west-47th-street-in-midtown-manhattan.html).

52.     Before the 2 W 47st building was closed, Room 1005 was occupied for several years by Louis Cicero Jewelers and was not occupied or used at all by Mask & Eldiven.

53.     Weiss admitted that he does not have the full names of any of the principals of Mask & Eldiven to whom he claims he paid $1,810,660.00 for the Test Kits, and also that he has no contact information for Mask & Eldiven other than what was set forth in the 2/6/22 M&E document.

54.     Weiss has no documents evidencing his claim that he paid $1,810,660.00 to Mask & Elviden for the Test Kits, other than the 2/6/22 M&E document, and no documents to evidence his source of the $1,810,660.00 he claims he paid them.

55.     Sternberg's release of the sum of $219,240.00 from his attorney escrow account to Weiss on February 1, 2022, was prior to the date of Weiss's purported 2/6/22 purchase of Test Kits, that was evidenced by the 2/6/22 M&E document.

56.     Sternberg's release of the sum of $1,911,960.00 from his attorney escrow account to Zekaria on February 4, 2022, was prior to the date of Weiss's purported 2/6/22 purchase of Test Kits, that was evidenced by the 2/6/22 M&E document.

57.     Neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff, either on 1/21/22, or on 2/1/22, or on 2/4/22, or on 2/15/22, or on 2/25/22, or to date.

58.     When Sternberg released the sum of $250,000.00 from his attorney escrow account to Zekaria on February 15, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff.

59.     When Sternberg released the sum of $190,000.00 from his attorney escrow account to Zekaria on February 25, 2022, neither Gross nor Sternberg owned or had possession of the 151,200 Test Kits purchased by Plaintiff.

60.     Sternberg as an Escrow Agent under the SPA owed a fiduciary duty to both Plaintiff as Buyer and Gross as Seller.

61.     Sternberg as an Escrow Agent under the SPA owed a fiduciary duty to both Plaintiff as Buyer and Gross as Seller, to make disbursement of the escrow funds pursuant to the terms of the SPA.

62.     Sternberg as an Escrow Agent under the SPA owed a fiduciary duty to both Plaintiff as Buyer and Gross as Seller, to make sure that "title transfer" to the Goods purchased by Plaintiff happened "contemporaneously with the funds [paid by Plaintiff] being released to Seller."

63.     Sternberg failed to undertake any independent investigation to confirm that "title transfer to the Goods purchased by Plaintiff happened "contemporaneously with the funds [paid by Plaintiff] being released to Seller" (other than relying upon what Gross and/or Weiss told him).

64.     Weiss sent an invoice dated January 26, 2022, purporting to sell to CHG a total of 355,200 Test Kits (the 1/26/22 invoice").

65.     A true and correct copy of 1/26/22 invoice sent by Weiss to Gross was marked as Weiss Deposition Exhibit 6, at the Weiss Deposition.

66.     A true and correct copy of 1/26/22 invoice sent by Weiss to Gross was attached as Exhibit "B" to the April 24, 2022 letter authored by Sternberg and submitted to the Office of the Chief Disciplinary Counsel for the State Bar of Texas.

67.     A true and correct copy of the April 24, 2022 letter authored by Sternberg and submitted to the Office of the Chief Disciplinary Counsel for the State Bar of Texas, was marked as Sternberg Deposition Exhibit 6 at the Sternberg Deposition.

68.     Sternberg prepared an Affidavit for Weiss to sign (a copy of which draft Weiss Affidavit was marked as Weiss Deposition Exhibit 10 at the Weiss Deposition), that Sternberg wanted to submit as part of Sternberg's submission to the Office of the Chief Disciplinary Counsel for the State Bar of Texas, but Weiss refused to sign the draft Affidavit prepared by Sternberg because it contained several statements that Weiss stated were false and not correct.

69.     Weiss also stated that the Affidavit that Sternberg prepared for Gross to sign (a copy of which draft Gross Affidavit was marked as Weiss Deposition Exhibit 11 at the Weiss Deposition), which Gross Affidavit Sternberg in fact submitted as part of Sternberg's 4/24/22 submission to the Office of the Chief Disciplinary Counsel for the State Bar of Texas (Sternberg Deposition Exhibit 6), contained several statements that Weiss stated were false and not correct.

70.     A true and correct copy of the 1/26/22 invoice sent by Weiss to Gross, purporting to sell to CHG a total of 355,200 Test Kits, was marked as Weiss Deposition Exhibit 6 at the Weiss Deposition.

71.     The 1/26/22 invoice prepared by Weiss showed 5 buyers for the Test Kits, including Plaintiff and VRC.

72.     Weiss has stated that Gross and Sternberg "instructed [him] to make an invoice with Fraudulent intentions, as there are no 5 buyers as they told me, with the detail they instructed me to make the invoice" -- this was documented by Weiss in an email he sent to his attorney on July19, 2023, a true and correct copy of which 7/19/23 email was marked as Weiss Deposition Exhibit 9 at the Weiss Deposition.

73.     When Weiss sent his 1/26/22 invoice to Gross, Weiss did not own or have possession of any Test Kits, let alone the 151,200 Test Kits purchased by Plaintiff.

74.     When Weiss sent his 1/26/22 invoice to Gross, Weiss did not own or have possession of any Test Kits, let alone the 204,120 Test Kits purchased by VRC from Gross and/or Sternberg.

75.     Sternberg failed to undertake any independent investigation or otherwise perform any due diligence to confirm that Gross or Weiss had purchased or had ownership of the 151,200 Test Kits purchased by Plaintiff, let alone the 355,200 Test Kits, that were the subject of Weiss's 1/26/22 invoice, before Sternberg released from the Sternberg attorney escrow account, most of Plaintiff's Purchase Price and monies also sent to Sternberg's trust account by VRC.

76.     Sternberg failed to undertake any independent investigation or otherwise perform any due diligence to confirm that "title transfer" to the Goods purchased by Plaintiff happened "contemporaneously with the funds [paid by Plaintiff] being released to Seller."

77.     ASD is an entity with no assets, that that was undercapitalized, and that is owned and controlled by defendant Gary Weiss.

78.     Gross wrote texts to Plaintiff on or about February 15, 2022, in which Gross stated that Plaintiff could cancel the purchase and obtain a refund of the Purchase Price.

79.     True and correct copies of the texts that Gross wrote to Plaintiff on or about February 15, 2022, in which Gross stated that Plaintiff could cancel the purchase and obtain a refund of the Purchase Price, accompany these requests and are marked as Exhibits RFA-1 through RFA-4.

80.     The document marked as Sternberg Deposition Exhibit 9, at the Sternberg Deposition, is an accurate transcription of the texts that Gross wrote to Plaintiff, on or about February 15, 2022, in which Gross stated that Plaintiff could cancel the purchase and obtain a refund of the Purchase Price.

81.     In Sternberg Deposition Exhibit 10, Sternberg informed Plaintiffs' attorney on February 15, 2022, as follows:

> "I am told the product will be arriving tomorrow at the location provided by your client. Let me know when your client is in possession of his product."

82.     On February 16, 2022, Plaintiff emailed a letter to Gross in which Plaintiff informed Gross as follows (emphasis in original):

> "Yesterday [i.e., 2/15/22] your attorney Manfred Sternberg told my attorney, Gary Lightman, that the goods for my purchase order #18315 had been shipped and should be received at my warehouse in Glen Mills, PA, today [2/16/22]. On February 16, 2022,

But as of today, February 16, 2020, I have not received a Bill of Lading (BOL) or any other shipping documents pertaining to this shipment.  Please email me the BOL and any relevant shipping documents that identify the shipment and confirms the delivery of all goods I ordered.  **I NEED ALL SHIPPING DOCUMENTS TODAY**."

83.     A true and correct copy of Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition.

84.     Neither Gross nor Sternberg sent Plaintiff the Bill of Lading or other shipping documents pertaining to the alleged shipment, in response to Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg, and was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition.

85.     Neither Gross nor Sternberg responded to Plaintiff's 2/16/22 email (that was sent to and received by Gross and Sternberg, and was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition), by informing Plaintiff that the goods were not shipped as represented.

86.     The Test Kits that were referenced in Plaintiff's 2/16/22 email (that was sent to and received by Gross and Sternberg, and was marked as Sternberg Deposition Exhibit 12 at the Sternberg Deposition.), in fact were not delivered to Plaintiff, either by 2/16/22, or any time in February 2022.

87.     On February 16, 2022, Plaintiff sent an email to Gross and Sternberg, canceling the Plaintiff's purchase transaction and demanding the return of the $2 million Purchase Price that Plaintiff paid for the Test Kits that were never delivered.

88.     A true and correct copy of Plaintiff's 2/16/22 email that was sent to and received by Gross and Sternberg canceling the purchase and demanding a full refund was marked as Sternberg Deposition Exhibit 13 at the Sternberg Deposition.

89.     Plaintiff through its counsel also notified Sternberg on February 15, 2022, not to make any further disbursements from Sternberg's attorney escrow account, in a phone call and then an email exchange, that was memorialized as Sternberg Deposition Exhibit 11 at the Sternberg Deposition.

90.     Sternberg continued to make disbursements from the Sternberg trust account on and after 2/15/22, even after being put on notice not to make any further disbursements from his trust account.

91.     Section 11 of the SPA states in part as follows:

> "…. if Buyer in any way attempts to circumvent Seller, Seller will be entitled to liquidated damages of $50,000 from Buyer, or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer."

92.     The SPA does not allow Gross and Sternberg to retain the $1,965,600.00 Purchase Price paid by Plaintiff for the Test Kits, and also not make delivery of the Test Kits to Plaintiff.

93.     There is no agreement between Plaintiff, on the one hand, and Gross and Sternberg, on the other hand, that would allow Gross and Sternberg to retain the $1,965,600.00 Purchase Price paid by Plaintiff for the Test Kits, and also not make delivery of the Test Kits to Plaintiff.

94.     The document marked as Sternberg Deposition Exhibit 32 at the Sternberg Deposition, is a true and correct copy of a text sent by Sternberg to Gross, shortly after February 25, 2022.

95.     In Sternberg Deposition Exhibit 32, Stenberg states: "he [referring to Weiss] is

buying himself and his lawyer a bunch of bad pr and claims of fraud and wire fraud."

96.     In Sternberg Deposition Exhibit 32, Stenberg states: "especially last Friday when he [referring to Weiss] said less than 45 min away and I scrambled to send him another $190k [referring to the $190,000.00 wire transfer made by Sternberg on Friday, 2/25/22 to Zekaria].

97.     In Sternberg Deposition Exhibit 32, Stenberg writes (emphasis added):

 "**That** [referring to Wiess's claim that he needed another $190,000 in order to deliver the Test Kits] **is classic fraud in the inducement and can only be cured by delivery or return of all money**."

98.     Weiss filed an Answer to Plaintiff's Complaint that Weiss filed under oath on September 12, 2023 [ECF 105], subject to the penalties for perjury.

99.     Deposition Exhibit Weiss-7 is a true and correct copy of the Answer to Plaintiff's Complaint that Weiss filed under oath on September 12, 2023 [ECF 105], subject to the penalties for perjury.

100.    In the Answer to Plaintiff's Complaint that Weiss filed under oath on September 12, 2023 [ECF 105], subject to the penalties for perjury, Weiss claimed that: (a) he took delivery of 355,200 Test Kits on February 7, 2022, (b) but he could not deliver the Test Kits because Gross and Sternberg failed to supply him with Bills of Lading, and (c) he then had the Test Kits transported to and held in storage for about two weeks by Available Moving & Storage ("AMS"), and (d) he "repeatedly requested the Bill of Lading, and requisite details, from the Gross and Sternberg Defendants" without success, and (e) "still having not received the Bill of Lading, the Weiss Defendants made arrangements to retrieve the test kits form the transport facility" [AMS], and (f) "upon arrival at the transport facility, the Weiss Defendants learned that the test kits were no longer on the truck and that they could not be located." [ECF 105, Weiss Answer to Plaintiff's Complaint, at ¶¶ 172 – 183].

101.    Weiss admitted in his Weiss Deposition, that he did not confront AMS when he learned (as he claimed) that "the test kits were no longer on the truck and that they could not be located" and Weiss also admitted that he did not contact the police or make a police report about the missing Test Kits, and that he also did not notify Gross or Sternberg about the alleged disappearance of the Test Kits.

102.    In the Weiss Deposition conducted under oath on February 16, 2024, Weiss subsequently mad a claim inconsistent with the claims he made in his 9/12/23 Answer filed in Court in this case [ECF 105] – in the Weiss Deposition Weiss claimed under oath that he was able to pick up the Test Kits from AMS, but when he brought the truck back to New Jersey and checked the Test Kits later that morning, Weiss claims he discovered that someone had taken all of 151,200 Test Kits and instead replaced the Test Kits with rice in the Test Kit boxes.

103.    Weiss admitted in his Weiss Deposition, that he did not confront AMS when he learned (as he claimed) that the Test Kits had been removed from their boxes and replaced with rice, and Weiss also admitted that he did not contact the police or make a police report about the missing Test Kits being replaced with rice, and also admits that he did not notify Gross or Sternberg about the alleged Test Kits being replaced with rice.

104.    Weiss admitted in his Weiss Deposition, that he did not take any pictures of the Test Kit boxes being replaced with rice, or otherwise create any documents to evidence this claim.

105.    Neither Weiss nor ASD ever provided a Manifest of Bill of Lading to Gross or CHG.

106.    The picture marked as RFA-5, a copy of which accompanies these requests, is picture that Weiss took of boxes on a truck, that Weiss claimed were the Test Kits purchased by Plaintiff.

107.    The picture marked as RFA-5, is a picture of less than all of the 151,200 Test Kits that Plaintiff purchased.

108.    On May 31, 2022, Gross wrote an email to Sternberg in which Gross stated that Sternberg still had $400,000 or so left of the funds transferred to Sternberg.

109.    A true and correct copy of the 5/31/22 email from Gross to Sternberg was marked as Sternberg Deposition Exhibit 23 at the Sternberg Deposition.

110.    VRC's purchase of their Test Kits was pursuant to a Sales and Purchase Agreement (the "VRC SPA") that contained terms and conditions similar to the SPA used for Plaintiff's purchase.

111.    Paragraph 6 of the VRC SPA clearly states as follows (emphasis added):

> "Once the transferred funds [the Purchase Price] have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer.  **Title transfer shall happen contemporaneously with the funds being released to Seller**."

112.    VRC never received the 204,120 Test Kits that were purchased from Gross and/or Sternberg.

113.    Gross and Sternberg did not refund to VRC, any of the $2,449,440, that VRC transferred into the Sternberg attorney escrow account for VRC's purchase of 204,120 Test Kits from Gross and Sternberg.

114.    On March 1, 2022, William Berman, Esquire, attorneys for VRC, sent an email to Zekaria, in which (a) Berman informed Zekaria that after VRC transferred $2,449,440 to Sternberg's trust account, "Sternberg has advised that he transferred the funds to [Zekaria's] trust account" and (b) that the funds paid by VRC and deposited with Sternberg in trust were "not to be released until a Bill of Lading was issued" and Berman also states that (c) his review of the history has "led our group to conclude that this was a fraudulent transaction" and that (d) Berman hopes that Zekaria "can explain that it was not and have the funds returned immediately" and (e) that

"there has been no delivery of any product to [his] client" and (f) Berman tells Zekaria that his client has made "previous demands for the return of the funds."

115.    A true and correct copy of the 3/1/22 email from Berman to Zekaria in which those statements were made is included as part of the document marked as Sternberg Deposition Exhibit 38 at the Sternberg Deposition.

116.    Zekaria forwarded Berman's 3/1/22 email to Sternberg and asked Sternberg to "address this."

117.    A true and correct copy of the 3/1/22 email from Zekaria forwarding Berman's 3/1/22 email to Sternberg is included as part of the document marked as Sternberg Deposition Exhibit 38 at the Sternberg Deposition.

118.    Sternberg then had a phone conversation with and sent an email to William Berman that same day, March 1, 2022.

119.    The document marked as Sternberg Deposition Exhibit 38 at the Sternberg Deposition, is a true and correct copy of an email sent by Sternberg to William Berman, Esquire, attorneys for VRC, telling him not to further contact Zekaria and asking him to "wait a few more days and plan for delivery."

120.    VRC did not get the 204,120 Test Kits that VRC purchased from Gross and/or Sternberg.

121.    Gross and Sternberg did not refund the $2,449,440 that VRC wired to Sternberg to hold in trust, for VRC's purchase of their Test Kits.

122.    The document marked as Sternberg Deposition Exhibit 29 at the Sternberg Deposition is a true and correct copy of an email dated March 1, 2022, from Weiss to Sternberg and Gross, in which Weiss states as follows:

> "Of course as I said many times before If you would like a refund you have no questions asked."

123.   Weiss claims he delivered diamonds and other gemstones worth $3 million to $4 million to Gross and Sternberg after he could not deliver the Test Kits.

124.   Both Weiss and Gross contend that Sternberg did not want the money back from Weiss and Zekaria (that Sternberg had wired to Weiss/Zekaria) because Sternberg did not want to "lose the profit" (as set forth in Sternberg Deposition Exhibit 30) and that it was Sternberg who wanted Weiss to give Gross and Sternberg the collateral (diamonds and gemstones worth $3 to $4 million) instead.

125.   The documents marked as Sternberg Deposition Exhibits 29, 30, 31, 33, 34, and 35 at the Sternberg Deposition are true and correct copies of texts from Weiss and Gross and other documents from them, that memorialize that it was Sternberg who wanted Weiss to give collateral (diamonds and gemstones) instead of returning the money that Sternberg wired to Weiss and Zekaria.

126.   A list of the collateral that Weiss claims he delivered diamonds and other gemstones worth $4 million to Gross and Sternberg after he could not deliver the Test Kits, was marked as Sternberg Deposition Exhibit 28 at the Sternberg Deposition.

127.   None of the diamonds and gemstones that Weiss gave as collateral to Gross and/or Sternberg was then delivered to Plaintiff, and Plaintiff has not received any proceeds from the sale of any of that collateral.

128.   Sternberg had control over the disposition of the diamonds and gemstones that Weiss gave as collateral to Gross and/or Sternberg.

129.     Sternberg offered to Randolph ("Randy") Adler, Esquire (counsel for VRC) to liquidate the collateral that Weiss gave to Gross and/or Sternberg, and pay the proceeds to VRC, in the event that Gross and Sternberg failed to deliver to VRC the Test Kits that VRC purchased from Gross and/or Sternberg – Mr. Adler memorialized Sternberg's offer in Adler's email to Sternberg dated March 13, 2022, a copy of which was marked as Weiss Deposition Exhibit 12 at the Weiss Deposition.

130.     Sternberg did not write back to Adler disputing what Adler wrote to him on 3/13/22 in Weiss Deposition Exhibit 12;  instead, Sternberg forwarded the email to Gross.

131.     The document marked as Sternberg Deposition Exhibit 37 at the Sternberg Deposition, is a true and correct copy of a letter dated February 23, 2022, sent by Randolph ("Randy") Adler, Esquire, attorneys for VRC, to Sternberg, in which they accused Gross of failing to deliver the 204,120 Test Kits that VRC purchased.

132.     In his 2/23/22 letter to Sternberg, Mr. Adler also instructed Sternberg not to disburse any portion of the $2,449,440 that VRC wired to Sternberg to hold in trust, that Sternberg was required to hold in trust "until the transaction is complete…"

133.

134.     VRC has sued Gross and Stenberg alleging they defrauded VRC –VRC claims they paid over $2.4 million to Gross and Sternberg for their purchase of Test Kits, and that they never received the Test Kits or the return of their money they wired to Sternberg's trust account.

135.     The document marked as Sternberg Deposition Exhibit 39 is a true and correct copy of the Complaint that VRC filed against Gross and Sternberg.

136.     There are other purchasers of Test Kits and other PPE equipment, that have claimed that they were defrauded by one or more of the Defendants, including:

      (a) Nail & Beauty, LLC ("N&B"); and

      (b) BELCO Distributors ("BELCO"); and

      (c) Hand Safety LLC; and

<u>(d)</u> George Gianfacaro/ Indutex USA ("Indutex"); and

<u>(e)</u> George Carcia-Menocal, Esquire; and

<u>(f)</u> Daniel Rodin; and

<u>(g)</u> David Wright/DKW Consulting, Inc.; and

<u>(h)</u> Nationwide Medical Services ("NMS": and

<u>(i)</u> Yuba County Schools. ("Yuba"); and

<u>(j)</u> El Monte Unified School District (El Monte"); and

<u>(k)</u> Linda Coughlin or her client.

137.    Gross and Sternberg had no intention to perform under the SPA.

138.    Gross and Sternberg lacked the ability to perform under the SPA.

139.    Contrary to the representations that Gross and Sternberg made to Plaintiff -- that they had the Test Kits available for purchase and shipment to Plaintiff – to induce Plaintiff to transfer the $1,965,600.00 Purchase Price to the Sternberg trust account, the Test Kits were not owned or available to Gross and Sternberg as they represented.

140.    The Gross and Sternberg Attorney Defendants never provided Plaintiff with a Bill of Lading, from a recognized common carrier, and also failed to provide other shipping information to Plaintiff, as required under the SPA and as a prerequisite to the release of the $1,965,600.00 Purchase Price from Sternberg's the attorney escrow account.

141.     To induce Plaintiff to make the wire transfer to them, Gross and Sternberg Defendants represented to Plaintiff that Plaintiff's $1,965,600.00 Purchase Price would remain in Sternberg's attorney escrow account, and that the $1,965,600.00 Purchase Price would not be released from the Sternberg attorney escrow account, unless and until the Covid Test Kits had been delivered to a common carrier for delivery to Plaintiff, and Plaintiff was supplied with the required Bill of Lading from a recognized common carrier evidencing that the Covid Test Kits were in transit to Plaintiff.

142.     Prior to filing the lawsuit, Plaintiff and its counsel gave Defendants multiple opportunities to confirm that they did not fraudulently take Plaintiff's $1,965,600.00 Purchase Price, and that Defendants in fact shipped the Covid Test Kits to Plaintiff.

143.     However, Defendants continued to make lies and misrepresentations to Plaintiff concerning the status of the delivery of the Covid Test Kits.

144.     For example, on or about February 8, 2022, Sternberg misrepresented to Plaintiff that the Covid Test Kits were en route and would be delivered to Plaintiff by no later than February 17, 2022, when in fact they were not with a common carrier or otherwise being shipped to Plaintiff; as of February 17, 2022, and as of the filing of Plaintiff's Complaint), no delivery had been made. *See* Exhibit 3 to the Complaint.

145.     Plaintiff on numerous occasions prior to filing suit, requested that Defendants provide Plaintiff with a Bill of Lading and other shipping documents to show Seller had delivered the Covid Test Kits to a common carrier for delivery to Plaintiff.  *See* Exhibit 4.

146.     However, Defendants failed and refused to deliver this shipping documentation to Plaintiff.

147.     On or about February 16, 2022, a man named "Shraga" contacted Plaintiff and advised Plaintiff the Covid Test Kits were on a truck and that delivery would be made to Plaintiff by 4:00 pm on February 16, 2022.

25

148.    When the alleged shipment did not arrive at 4:00 p.m. on 2/16/22, Plaintiff contacted Shraga who advised Plaintiff the truck had "broken down" and that the Kits would be delivered in the morning of February 17, 2022.

149.    The Test Kits in fact were not delivered to Plaintiff, either on February 16, 2022, or on February 17, 2022, or at any time before the lawsuit was filed, or thereafter.

150.    Defendant Gary Weiss admitted that he was the person who contacted Plaintiff using the name "Shraga."

151.    The document marked as Weiss Deposition Exhibit 13 is a true and correct copy of a text from Zekaria to Gross.

152.    The document marked as Weiss Deposition Exhibit 14 is a true and correct copy of a text from Zekaria to Gross.

153.    The document marked as DZ 00036 (and also marked as Zekaria-00001) is a true and correct copy of a WhatsApp text chat between Zekaria and Weiss and Gross on February 4, 2022, in which Gross writes to Weiss as follows, as respects the $1.9 million wire transfer made by Sternberg to Zekaria on February 4, 2022:

> "Gary, please confirm to Daphna here.
> From the 1.9 m 65% is yours. The rest is mine.
> Thanks."

154.     In that same document marked as DZ 00036 (and also marked as Zekaria-00001), Weiss responds to the text from Gross as follows:

> "Hi, Daphna, I confirm 35% of 1.9m going
> To Sam, and 65% of 1.9 m to me Gary Weiss."

155.     The document marked as Zekaria-00002 is a true and correct copy of a WhatsApp text chat between Zekaria and Weiss and Gross on February 15, 2022, in which Daphna writes as follows, as respects the $250,000.00 wire transfer made by Sternberg to Zekaria on February 15, 2022:

> "Daphna [at 3:37 pm]: It's my understanding that I am about
> to receive an additional wire of 250,000 which is 130,000 to
> Gary Weiss and the rest for my additional fees?

156.      In that same document marked as Zekaria-00002, Gross then writes as follows:

> "Shlomi [Weiss]" Gary please confirm to her
> 250K is coming in (and she is waiting for it)"
> And 130 is yours."

157.     In that same document marked as Zekaria-00002, Weiss then writes as follows:

> "Gary Weiss: Hi Daphna, that is correct you are sending me 130K, thanks."

158.     In that same document marked as Zekaria-00002, Zekaria then writes as follows:

> "Daphna: Awesome.   Thanks for the confirmation and opportunity to represent you."

159.     Defendants worked in concert with each other to deprive Plaintiff of the $1,965,600.00 Purchase Price that Plaintiff paid to purchase 151,200 Test Kits.

160.     Each of the Defendants received and retained portions of the Purchase Price funds that Plaintiff wired into Sternberg's trust account.

161.    Each of the Defendants received and retained portions of the funds that VRC wired into Sternberg's trust account to purchase their Test Kits.

162.    As Sternberg aptly stated to Gross in Sternberg Deposition Exhibit 32, the conduct of Defendants:

> "is classic fraud in the inducement and can only be cured by delivery or return of all money."

163.    Plaintiff was defrauded by the conduct of the Defendants.

164.    Defendants engaged in a wrongful civil conspiracy that caused damages to Plaintiff, including defrauding Plaintiff out of the $1,965,600.00 Purchase Price that Plaintiff paid to purchase 151,200 Test Kits that Defendants failed to deliver to Plaintiff.

165.    Gross is personally liable for the damages caused to the Plaintiff and the corporate veil of CHG should be pierced.

166.    Weiss is personally liable for the damages caused to the Plaintiff and the corporate veil of ASD should be pierced.

167.    Sternberg is personally liable for the damages caused to the Plaintiff and the corporate veil of MSA should be pierced.

168.    Zekaria is personally liable for the damages caused to the Plaintiff and the corporate veil of S&K should be pierced.

169.    Each of Gross and Sternberg and Weiss and Zekaria are liable to Plaintiff for their individual participation in their fraudulent scheme, pursuant to the Participation Theory.

170.    Each of Gross and Sternberg and Weiss and Zekaria have been unjustly enriched and thus are liable to Plaintiff.

171.    Each of Gross and Sternberg and Weiss and Zekaria have tortiously interfered with the contractual relations of Plaintiff and its customers, and thus are liable to Plaintiff.

172.    Each of Gross and Sternberg and Weiss and Zekaria have tortiously interfered with the prospective economic advantage of Plaintiff and its customers, and thus are liable to Plaintiff.

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64223
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Tel. No. 215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date:  June 17, 2024                    Attorneys for plaintiff

**EXHIBITS TO REQUESTS FOR ADMISSION**

| EXHIBIT | DESCRIPTION |
|---|---|
| RFA-1 | 2/15/22 text from Gross to Plaintiff |
| RFA-2 | 2/15/22 text from Gross to Plaintiff |
| RFA-3 | 2/15/22 text from Gross to Plaintiff |
| RFA-4 | 2/15/22 text from Gross to Plaintiff |
| RFA-5 | Picture taken by Weiss of boxes in a truck |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date shown below he caused to be served a true and correct copy Plaintiff's Requests for Admission and Supplemental Interrogatory to Defendants via email and/or regular mail, upon the following:


Seth Laver, Esquire
Goldberg Segalla
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
slaver@goldbergsegalla.com
Jross@goldbergsegalla.com

Gary Weiss
437 1st Avenue
Elizabeth, NJ 07206
wgary4109@gmail.com
monipair@aol.com


Samuel Gross
a/k/a Shlomo Gross
78 Buckminster Road
Rockville Centre, NY 11570
charltonholdinggroupllc@aol.com
publicdiamonds@gmail.com
Scg1212@gmail.com
Samrosinc@icloud.com

Patrick Healey, Esquire
Cathleen Kelly Rebar, Esquire
Rebar Kelly
Blue Bell Executive Campus
470 Norristown Road, Suite 201
Blue Bell, PA  19422
phealey@rebarkelly.com
crebar@rebarkelly.com


LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE


Date :  June 17, 2024              Attorneys for Plaintiff