# EXHIBIT "P-26"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| NAIL & BEAUTY LLC, | Civil Action |
| Plaintiff, | |
| v. | Index No. |
| VRC MEDICAL SERVICES, INC.; MICHAEL APA; DANIEL SHAUGHNESSY; STEPHEN F. CORBA a/k/a STEPHEN F. CORBA, JR.; STEPHANIE CORBA; CHARLTON HOLDINGS GROUP, LLC; SHLOMO H. GROSS a/k/a SAMUEL H. GROSS a/k/a SAM GROSS a/k/a SAM N. GROSS; MANFRED STERNBERG; MANFRED STERNBERG & ASSOC. P.C.; DAPHNA ZEKARIA; SOKOLSKI & ZEKARIA, P.C., | Venue is set pursuant to CPLR 503 based plaintiff's place of business |
| | SUMMONS |
| Defendants. | |

You are hereby summoned and required to serve upon the attorneys for plaintiffs, an answer to the complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer the complaint, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Purchase, New York
April 1, 2022

PAYKIN KRIEG & ADAMS, LLP

By: *David Schrader*
David A. Schrader, Esq.
2500 Westchester Avenue, Ste. 107
Purchase, New York 10577
(347) 879-2345
dschrader@pka-law.com
*Attorneys for Plaintiff*

EXHIBIT 39
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

NAIL & BEAUTY LLC,                                    Civil Action

          Plaintiff,

                                                      Index No.

          v.

VRC MEDICAL SERVICES, INC.;
MICHAEL APA; DANIEL SHAUGHNESSY;
STEPHEN F. CORBA a/k/a STEPHEN F.                     COMPLAINT
CORBA, JR.; STEPHANIE CORBA;
CHARLTON HOLDINGS GROUP, LLC;
SHLOMO H. GROSS a/k/a SAMUEL
H. GROSS a/k/a SAM GROSS a/k/a
SAM N. GROSS; MANFRED STERNBERG;
MANFRED STERNBERG & ASSOC. P.C.;
DAPHNA ZEKARIA; SOKOLSKI &
ZEKARIA, P.C.,

          Defendants.

Plaintiff Nail & Beauty LLC ("N&B" or "Plaintiff"), by its attorneys, by way of

complaint against defendants, alleges as follows:

### The Parties

1.      Plaintiff N&B is a New York limited liability company with its principal place of

business located at 400 Jericho Turnpike, Suite 226, Jericho, New York 11753. Among other

things, N&B is in the business of selling personal protective equipment (including but not limited to

COVID testing kits) and other products,

2.      Defendant VRC Medical Services, Inc. ("VRC"), is upon information and belief, a

New York corporation with its principal place of business located at 357 Elf Road, Sewaren, New

Jersey 07077. Upon information and belief, VRC is owned and/or operated by defendants Daniel

(Danny) Shaughnessy ("Shaughnessy"), Stephen F. Corba ("Stephen Corba") and Stephanie Corba.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been

Upon information and belief, VRC's officers and directors include Shaughnessy, Stephen Corba and Stephanie Corba. Upon information and belief, Michael Apa ("Apa") was an agent of VRC authorized to represent VRC in connection with its transaction with plaintiff. Shaughnessy, Stephen Corba, Stephanie Corba and Apa ("Apa") are hereinafter collectively referred to as the "Managers". These same four individuals, the Managers, were all directly and intimately involved in both directing and operating VRC and were directly involved in undertaking and directing the wrongful conduct of VRC the subject of this Complaint.

3.    Upon information and belief, defendant Shaughnessy is an individual residing at 132 Somerset Ave., South Plainfield, New Jersey 07080. Shaughnessy is an owner, director, officer and manager of VRC and was directly involved in the fraudulent, reckless and negligent misrepresentations made to plaintiff set forth in more detail below.

4.    Upon information and belief, defendant Stephen Corba (a/k/a Stephen F. Corba a/k/a Stephen F. Corba, Jr.) is an individual residing at 24 Alexis Dr., Farmingdale, New Jersey 07727. Stephen Corba is an owner, director, officer and manager of VRC and was directly involved in the fraudulent, reckless and negligent misrepresentations made to plaintiff set forth in more detail below.

5.    Upon information and belief, defendant Stephanie Corba is an individual and is the wife of Stephen Corba; and also resides at 24 Alexis Dr., Farmingdale, New Jersey 07727. Stephanie Corba is an owner, director, officer and manager of VRC and was directly involved in the fraudulent, reckless and negligent misrepresentations made to plaintiff set forth in more detail below.

6.    Upon information and belief, defendant Michael Apa ("Apa") is an individual

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

residing at 175 Voorhis Road, River Edge, New Jersey 07661. Apa was an agent of VRC and was directly involved in the fraud perpetrated upon plaintiff. He was also directly involved in making fraudulent, reckless and negligent misrepresentations to plaintiff set forth in more detail below. Upon information and belief, Apa received (or was to receive) a fee for his agency relationship with VRC in connection with the transaction at issue in this case.

7.     Each of the Managers was an agent of VRC involved in the wrongful conduct committed by VRC the subject of this action. Each is individually, personally and jointly responsible for VRC's misconduct and its liability to plaintiff and were each knowingly involved in the frauds committed against plaintiff and the conversion of plaintiff's funds.

8.     As set forth below, VRC entered into a contract with plaintiff whereby plaintiff paid $2.3 million to purchase COVID Test Kits. VRC and the Managers made false representations to plaintiff to induce plaintiff to enter into this transaction and pay for the COVID Test Kits notwithstanding that plaintiff did not have such goods. Although VRC is a corporate entity, it was used in the commission of a fraud by, and for the benefit of, the Managers. VRC acts as the alter ego of the Managers.

9.     Defendant Charlton Holdings Group LLC ("CHG"), is upon information and belief, a New York limited liability company with its principal place of business at 78 Buckminster Road, Rockville Center, New York 11570. Upon information and belief, it also maintains an address at 11 Broadway, New York, New York. Upon information and belief, CHG is owned and operated by defendant Shlomo H. Gross a/k/a Samuel H. Gross a/k/a Sam Gross a/k/a Sam N. Gross ("Gross").

10.     Defendant Gross is an individual who, upon information and belief, resides at 78

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

Buckminster Rd, Rockville Centre, New York 11570. This is also an address used by Gross for the operation of CHG. Gross is an owner, member, and manager of CHG. Upon information and belief, Gross has a criminal record and was previously convicted of Grand Larceny and Scheme to Defraud in connection with a scam in the Diamond Industry. Gross spent 3 years in jail from 2014 to 2017.

11.    Upon information and belief, Gary Weiss ("Weiss") is believed to be an owner, member and manager of CHG and is believed to be directly involved in the scam committed by Gross and CHG and the VRC parties. Plaintiff has inadequate information to make direct allegations against Weiss at this time but reserves the right to amend to add Weiss after taking discovery.

12.    CHG and Gross were all directly and intimately involved in the fraudulent scheme perpetrated upon plaintiff to sell plaintiff COVID Test Kits that did not exist. Alternatively, CHG and its Principals committed a fraud against VRC resulting in the ultimate theft of $2.3 million from plaintiff.

13.    Gross was directly involved in undertaking and directing the wrongful conduct of CHG; and upon information and belief, may have also been involved in directing the conduct of VRC the subject of this Complaint.

14.    Defendant Manfred Sternberg ("Sternberg") and his law firm Manfred Sternberg & Assoc. P.C. ("Sternberg PC") are attorneys in the State of Texas (the "Sternberg Defendants") who maintain an office at 1700 Post Oak Boulevard, 2 Blvd Place, Suite 600, Houston, Texas 77056. The Sternberg Defendants were directly involved in the fraudulent conduct committed by VRC, the Managers, CHG and Gross. They acted as an escrow agent for funds purportedly transferred by

4

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

VRC to CHG.

15.     The Sternberg Defendants received the funds wired by VRC allegedly in payment of the purchase of the purported COVID Test Kits. The funds were funneled through the Sternberg Defendants' escrow account on behalf of VRC, the Managers, CHG and Gross.

16.     The $2.3 million in wired proceeds of the fake sale of COVID Test Kits to the plaintiff was wired to VRC's bank account in Bayonne, New Jersey. Notwithstanding that VRC said that the funds were refundable if the product was not delivered, upon information and belief, VRC wired the funds to the Sternberg Defendants in Texas from New Jersey. The funds were then wired by the Sternberg Defendants to New York to the Zekaria law firm (discussed below).

17.     The Sternberg Defendants had knowledge that VRC and CHG did not have the goods to sell to the plaintiff and that there was a fraud being committed. Each of VRC, and then the Sternberg Defendants, each understood that they were not to release any funds from their escrow account until goods were delivered to plaintiff. Their failure to honor this condition is further evidence of their involvement in the fraud.

18.     Alternatively, the Sternberg Defendants were reckless, grossly negligent or negligent in their conduct as an escrow agent. Upon information and belief, the Sternberg Defendants released the funds from their escrow account to assist VRC, the Managers, CHG and Gross either to commit a fraud upon the plaintiff, or recklessly/negligently without regard to the restrictions on transfer and that the funds appeared to be utilized for a fraud.

19.     Defendant Daphna Zekaria ("Zekaria") and her law firm Sokolski & Zekaria, P.C. ("S&Z PC") are attorneys in the State of New York (the "Zekaria Defendants") who maintain an office at 1133 Broadway, Suite 1001, New York, NY 10010. The Zekaria Defendants were

5

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

directly involved in the fraudulent conduct committed by VRC, the Managers, CHG and Gross.

20.     The Zekaria Defendants received the funds wired from the Sternberg Defendants purportedly for the payment of non-existent COVID Test Kits. These funds were funneled to the the Zekaria Defendants escrow account on behalf of VRC, the Managers, CHG and Gross.

21.     Each of the Sternberg Defendants and the Zekaria Defendants received payment in connection with their participation in the movement of the funds effectively stolen from plaintiffs. Each were also aware, or on notice of facts which should have led them to believe, that a fraud was being committed.

22.     At least a portion of the $2.3 million in wired proceeds of the fake sale of COVID Test Kits to the plaintiff was wired to the Zekaria Defendants from the Sternberg Defendants.

23.     Each of the Sternberg Defendants and Zekaria Defendants were on notice and were notified of the fraudulent nature of the transaction and were requested to return the funds to VRC and/or plaintiff. Both sets of attorneys refused to do so and also refused to provide information on the details of their relationship with the other defendants or the transactions at issue in this case.

24.     Each of the Sternberg Defendants and the Zekaria Defendants were in receipt of the fraudulent funds and knowingly paid such funds from their escrow account to the fraudsters.

25.     The Zekaria Defendants had knowledge that defendants did not have the goods to sell to the plaintiff and that there was a fraud being committed. They actually ignored contacts from the plaintiff and VRC directing the return of the funds to plaintiff.

26.     The Zekaria and Sternberg Defendants were requested to return the escrowed funds to plaintiff, or at a minimum, hold the funds because of the fraud involved. Both ignored these contacts and failed to either freeze the funds or contact plaintiff or VRC.

6

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been

27.     Alternatively, the Zekaria Defendants were reckless, grossly negligent or negligent in their conduct. Upon information and belief, the Zekaria Defendants have released the funds from their escrow account to assist VRC, the Managers, CHG and Gross to commit a fraud upon the plaintiff. The Zekaria Defendants and Sternberg Defendants were each paid in connection with their role in these transactions and have shared in plaintiff's funds.

## THE FRAUDULENT TRANSACTION

28.     On or about January 18, 2022, plaintiff entered into an agreement with defendant VRC for the purchase of 181,440 iHealth COVID-19 Antigen Rapid Test 2 PC Kits (the "COVID Test Kits"). The purchase price for the COVID Test Kits was $2,358,720. The transaction was evidenced by a Commercial Invoice issued by VRC. A copy of the Commercial Invoice is annexed hereto as Exhibit A (the "Contract"). The Commercial Invoice was expressly signed by Danny Shaughnessy, an officer of VRC.

29.     In January 2022, in connection with the negotiation of the purchase transaction, Apa, Stephen Corba and Shaughnessy from and on behalf of VRC made oral representations to Dennis Schnur ("Schnur") and Rick Kantor ("Kantor"), each agents of plaintiff in connection with the transaction. These representations included that VRC had immediate access to sell a large volume of COVID Test Kits and the test kits were maintained in several warehouses around the country and that the goods were under VRC's control.

30.     In connection with the acceptance of the Contract by plaintiff on January 18, 2022, the Apa, Stephen Corba and Shaughnessey made express representations to Schnur and Kantor that the Test Kits would be delivered no later than January 22, 2022. This delivery date was also

7

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

expressly indicated on the Commercial Invoice.  The Commercial Invoice expressly represented that the product would ship within 24-48 hours of payment.

31.     The purchase of the goods by plaintiff was time sensitive based upon the changing market price of COVID Test Kits and the needs of plaintiff's customers.

32.     VRC and its Managers also expressly represented that the payment was refundable if the goods were not timely delivered.

33.     On January 19, 2022, pursuant to instructions received from VRC, plaintiff wired the purchase price of $2,358,720 into the bank account of VRC.

34.     On that same day after the wire was sent, Stephen Corba again stated that the product would be delivered within 24-48 hours of receipt of the wire and if not timely delivered, the payment would be refundable at plaintiff's option.  Plaintiff was also expressly told that VRC would not release the funds unless the goods were delivered to plaintiff.

35.     VRC did not disclose the source of the goods being sold or that a known criminal was involved in the transaction.  VRC also did not disclose that they in fact were releasing the funds sent to VRC and sending them to the Sternberg Defendants (see below).

36.     On January 20, 2022, Shaughnessey of VRC notified plaintiff that they would have an update soon on the specific Lot Numbers, Expiration Dates and Shipping Arrival of the product.  Also on that date, Shaughessy and Corba each acknowledged receipt of the wire and that the arrangements were being made for the delivery of the goods from a location in Pennsylvania.

37.     On January 20, 2022, plaintiff requested proof of shipment of the goods and notified VRC that if proof of shipping was not received by the next day, plaintiff wanted a refund of its payment.

8

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

38.     Corba, on behalf of VRC and the Managers, falsely stated that they had been

working with their distributor for many years and had sold numerous test kits received from this

distributor. This statement was false when made and was made to induce plaintiff to make a

purchase of goods that defendants did not have. VRC also stated that they did $250 million of sales

in the past year – another false statement. Defendant also again indicated that the money paid by

plaintiff was fully refundable upon request.

39.     Defendants, through Apa, Shaughnessy and Stephen Corba made repeated promises

that the goods were being delivered. When the goods were not delivered by January 21, 2022,

plaintiff requested a refund of their money paid.

40.     Over the next few days, VRC and its Managers continued to make excuses for the

delay and never delivered the goods or refunded the money paid – as requested. Plaintiff even

offered to send its own truck to pick up the goods and were told by VRC and its Managers that this

"would just delay things."

41.     Over the week or two following the funds being wired, VRC's Managers made

repeated excuses and provided false information about having shipping documents and also

provided multiple false dates when the goods would be delivered. Defendants made numerous false

excuses for the delay, as well as made repeated promises of the shipment to be made. Among other

things, these defendants made repeated false statements that the goods were at different warehouse

locations, including in California, Pennsylvania, Texas and New York (including in the Bronx). In

fact, none of these representations were true and VRC did not have, or have access to, the goods that

had been promised in the Contract.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

Case 2:22-cv-00688-JMY   Document 196-40   Filed 09/30/24   Page 12 of 22

42.     Even after failing to deliver the goods, VRC attempted to get plaintiff to make an additional alternative purchase of goods for even more money.

43.     On February 2 and 3, 2022, VRC purported that they were gong to refund plaintiff's money and that they were arranging the refund.  This representation was false and the funds were not returned to plaintiff.

44.     In furtherance of covering up the fraudulent scheme, and despite repeated requests made to VRC's principals and another attorney that purported to represent VRC, VRC refused to provide any documentation or information about the location of the goods, the source of the purported goods, the location of the money or any other information about the transaction. Defendant made repeated efforts to conceal and cover up their fraud.

45.     After threats were made of an immediate lawsuit, defendant VRC then provided the plaintiff with fake documentation purporting that the goods were in a warehouse in the Bronx, New York. The fake warehouse "estimate" document received was redacted such that the identifying information about the purported goods was redacted.  The address block of the warehouse itself was also doctored and it was clear on its face that the document was fraudulent.  When the warehouse was contacted about the documentation, it could not identify the document or the identifying warehouse "estimate" identification number.

46.     After the false nature of the warehouse document was addressed with VRC, VRC claimed that they bought the goods from CHG and Gross and that they were the victim of the fraud.  VRC admitted at this time that they had never had possession of the goods.  In effect, VRC and the Managers admitted that they had provided false information to plaintiff to induce the transaction.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

47.     CHG is owned by Gross who is a criminally convicted fraudster.

Notwithstanding all of the representations made by VRC that it had the goods, that it paid for the

goods in January 2022, that the goods were in transit, VRC later provided plaintiff a copy of a

purported Bill of Sale with CHG dated February 8, 2022 – a date weeks after VRC alleged to

have the goods and had failed to deliver the goods which had been promised by January 20,

2022.

48.     Efforts were made to contact CHG and CHG did not respond to these efforts.

Efforts were made to contact the various attorneys involved in the wire transfers to demand the

return of the funds. Defendants CHG, Gross and the attorney defendants never returned calls

from plaintiff and its representatives.

49.     Plaintiff has notified VRC, with whom it has direct contractual privity, that it

cancelled the transaction. Plaintiff also demanded the return of its $2.3 million payment which

VRC had promised to make if the goods were not delivered.

50.     VRC is in breach of its Contract and fraudulently induced plaintiff to enter into

the Contract. All of the defendants were part of a fraudulent scheme to convert plaintiff's

money. No defendant had an intent to deliver the goods to plaintiff which had been purchased,

and each was a knowing participant in the fraudulent scheme.

### FIRST CAUSE OF ACTION
### (Fraud and Misrepresentation)

51.     Plaintiff repeats and realleges each of the allegations set forth above as if set forth at

length herein.

52.     Defendants made false and inaccurate representations and statements to plaintiff

(and further intentionally omitted to inform plaintiff of relevant facts) to induce plaintiff to purchase

11

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been

goods from VRC which VRC did not have and was never able to deliver. These misrepresentations are set forth in the above.

53.     These deceptive statements, misrepresentations and omissions include but are not limited to repeated false and/or misleading statements that defendant had the goods; had immediate access to the goods; that the goods would be delivered within 24-48 hours; that plaintiff would and could refund the funds if the goods were not timely delivered; that defendant Gross, a known criminal convicted in a fraud, was involved in the transaction.

54.     At the time these statements were made by the defendants, they were false and defendants knew them to be false.

55.     These deceptive statements, misrepresentations and omissions were undertaken knowingly by defendant, despite defendant's full knowledge that plaintiff was relying on these representations in agreeing to enter into the Contract and wire the funds for the purchase of the COVID Test Kits.

56.     These affirmative statements, misrepresentations and omissions were made by defendants in an ongoing series of telephone conversations with plaintiff and in text messages.

57.     It became clear during ongoing communications after the goods were not timely delivered that defendants did not have the goods. Yet, despite this, defendants continued to make false statements that the goods were in transit, would be delivered shortly and other false statement to mislead plaintiff and attempt to cover up the fraud with additional misstatements of intention, and additional concealments.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

58.     The concealed facts and misstatements, had they been disclosed (and been known to be false), would have been material to plaintiff, and would have resulted in plaintiff not agreeing to enter into the Contract or make payment for the goods.

59.     Moreover, defendant had (and knew that they had) superior undisclosed knowledge affecting the veracity of and likely reliance upon what they did say.

60.     Even to the extent that VRC and its Managers were not involved in the scheme by CHG and Gross to steal the funds, their misrepresentations, concealments and omissions had the same effect on fraudulent inducing plaintiff to enter into the Contract and make payment for goods that VRC never had.

61.     Each of these false representations and knowing omissions or concealments were made or effected by defendant with the knowledge that such statements were false and misleading, or that plaintiff would be misled by said omissions and/or concealments. Moreover, such representations, omissions and concealments were made or effected by defendants intentionally and with full knowledge of the false and misleading nature of their action, and with the intent to defraud plaintiff and to induce plaintiff to purchase non-existing goods.

62.     Moreover, the concealments rendered the statements actually made misleading.

63.     These facts, had they been disclosed, would have been expressly material to plaintiff, and would have resulted in plaintiff not agreeing to enter into the Contract or wire the funds to defendants, or at an absolute minimum, would have resulted in plaintiff or taking other steps to assure adequate security or to timely take steps to halt the disbursement of the funds by the attorney defendants.

13

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been

64.     In that plaintiff did not know the false and misleading nature of these misrepresentations, omissions, and concealments, plaintiff reasonably relied upon these statements, omissions and concealments to its detriment.

65.     Defendant's conduct was malicious.

66.     As a direct result of the deceptive misrepresentations and omissions described above, plaintiff was fraudulently induced to provide the requested goods and has suffered economic loss.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

67.     Plaintiff repeats and realleges each of the allegations set forth above as if set forth at length herein.

68.     Plaintiff entered into a Contract with defendant VRC for the delivery of certain goods at an agreed price.

69.     Pursuant to the Contract, plaintiff paid for the goods and fulfilled its obligation under the Contract.

70.     Despite that plaintiff performed all of its agreed obligations under the Contract, defendant VRC breached the agreements and failed to deliver the goods causing financial injury to the plaintiff.

71.     As part of the Contract, defendant VRC had promised that if the goods were not timely delivered, that the funds paid by plaintiff would be refunded.  VRC expressly agreed to refund the funds.

72,     Despite demand, defendant never delivered the goods and failed to refund the funds to plaintiff.

14

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

73.     There remains due and owing from defendant the sum of $2,358,720 as a refund for the funds paid.

74.     Plaintiff was additionally financially injured from profits that it would have made on the resale of the COVID Test Kits, as well as other financial injuries sustained by plaintiff resulting from defendant VRC's breach of contract.

### THIRD CAUSE OF ACTION
#### (Unjust Enrichment)

75.     Plaintiff hereby repeats and realleges each of the allegations set forth above as if set forth at length.

76.     The payment provided by plaintiff to purchase the goods was provided with the full understanding that defendant VRC would deliver the goods.

77.     By not delivering the goods to plaintiff, defendant received the full benefit of plaintiff's performance without performing in return.

78.     Plaintiff has made demands of defendant for refund of the fees paid (and previously demanded deliver of the goods before terminating the Contract based upon defendant's breach), but defendant has failed and refused to perform or refund the funds to plaintiff.

79.     Plaintiff reasonably expected the delivery of the goods – and thereafter, a full refund of the payment made to defendants when the goods were not delivered. The payment made to plaintiff conferred a benefit upon defendant.

80.     Since the failure to deliver the goods or refund the money paid enriched defendant beyond their entitlement, defendant's aforesaid conduct constitutes unjust enrichment.

15

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been

## FOURTH CAUSE OF ACTION
### (Promissory Estoppel)

81.     Plaintiff hereby repeats and realleges each of the allegations set forth above as if set forth at length herein.

82.     Defendant made promises to deliver goods and additionally to refund funds paid when goods were not delivered.  These promises were clear and unambiguous in their terms.

83.     Said promises were reasonably relied upon by plaintiff to its detriment.

84.     Such reliance was foreseeable to defendants.

85.     Plaintiff was damaged as a result of said reliance.

## FIFTH CAUSE OF ACTION
### (Negligent Misrepresentation)

86.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth at length herein.

87.     Defendant's statements and omissions, described in detail above, were made with the knowledge that they would be relied upon by plaintiff, and that plaintiff would be damaged if said statements (and omissions) would prove to be false (and deceptive).

88.     In the alternative to the allegation of fraud above, in making the aforementioned statements, defendants, at a minimum, failed to exercise reasonable care to ensure that the statements made were correct and acted Recklessly, Grossly Negligently or Negligently in their conduct.

89.     By reason of the foregoing, plaintiff has been injured by its reasonable and justifiable reliance on these negligent statements (and omissions) and are entitled to damages.

16

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been    17 of 21

### SIXTH CAUSE OF ACTION
(Conversion/Money Had and Received)

90.    The plaintiff repeats each and every allegation in the preceding paragraphs as if fully set forth herein.

91.    At all times relevant, plaintiff was the rightful owner of the funds paid to the defendant VRC and had a full right to a refund.

92.    It was agreed that the funds being wired to defendants would not be released from escrow until the goods were delivered to the plaintiff – which delivery never occurred.

93.    Once deliver was not made, the plaintiff demanded a refund of the funds and was entitled to immediate possession of the funds at that time. The funds were not refunded to the plaintiff and the defendants had not continued right to possession of the funds.

94.    Each of the defendants were directly involved in the misappropriation and conversion of plaintiff's $2.3 million dollar payment and are (or were) wrongfully in the release, transfer and possession of, such funds.

95.    As such, plaintiff has been, and continues to be, entitled to immediate possession of such funds.

96.    This conversion and wrongful taking of the funds was for the personal gain and benefit of the defendants, at plaintiff's expense, and without plaintiff's permission.

97.    In this regard, defendants have intentionally and unlawfully exercised ownership, dominion and control over plaintiff's assets and property, in denial and repudiation of plaintiffs' rights thereto.

98. By reason of the foregoing, the plaintiff has been injured and continue to be injured.

99.    As a result of this conversion, the plaintiff has sustained grave economic injury.

17

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been 18 of 21

## SEVENTH CAUSE OF ACTION
### (Joint Participants In a Fraud – Aiding and Abetting a Fraud – Enterprise Liability)

100. The plaintiff repeats each and every allegation in the preceding paragraphs as if fully set forth herein.

101 Each of the defendants were jointly involved in the commission of a fraud and each had full knowledge of the fraud and the participation of the other defendants.

102. Each worked together to assist and perpetrate the commission of the fraud upon the plaintiff.

103. Each of VRC and its Managers are in fact each <u>alter egos</u> of each other and worked together to commit the fraud on behalf of VRC.

104. There is only a single "enterprise" of entities being used each acting in concert to carry on the commission of the fraud.

105. Each of the defendants were in fact, the alter egos of each other acting as a single enterprise for the commission of the fraud and to obfuscate imposition of liability to the individual defendants who are profiting from the fraudulent scheme.

106. The defendants are each responsible for the conduct of all other defendants and have imputed vicarious liability as a knowing participant in the fraudulent scheme.

WHEREFORE plaintiff demands judgment jointly, severally and in the alternative against each of the defendants:

    (a)    for compensatory damages in the amount of no less than $3 million dollars;

    (b)    for punitive damages in the amount of $10 million dollars;

    (c)    cost, disbursements, attorneys's fees;

    (d)    for an imposition of a constructive trust on the funds wired from plaintiff to

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been 19 of 21

the defendants, as they may be located with any of the defendants

(e)     for such other and further relief as the court deems just and proper.

PAYKIN KRIEG & ADAMS LLP
Attorneys for Plaintiff

By: *David Schrader*
     David A. Schrader
2500 Westchester Ave., Ste 107
Purchase, New York 10577
(347)-879-2345
dschrader@pka-law.com

Dated: April 1, 2022

19

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been     20 of 21





This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been