# EXHIBIT "P-35"

BERMAN ROSENBACH, LLC
PHILIP ROSENBACH, ESQ.
WILLIAM J. BERMAN, ESQ.
150 MORRISTOWN ROAD
SUITE 200
BERNARDSVILLE, NEW JERSEY 07924
908.992.7270
ATTORNEYS FOR PLAINTIFF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VRC CONSULTING, INC.**<br>**d/b/a VRC MEDICAL SERVICES, INC.**<br><br>*Plaintiff,*<br><br>v.<br><br>**MANFRED STERNBERG, ESQUIRE**<br>**and MANFRED STERNBERG &**<br>**ASSOCIATES, PC, and CHARLTON**<br>**HOLDINGS GROUP, LLC,**<br>**and SAMUEL GROSS**<br><br>*Defendants.* | **CIVIL ACTION NO.** |

## COMPLAINT AND JURY DEMAND

VRC Consulting, Inc., d/b/a VRC Medical Services, Inc, plaintiff herein ("VRC" or

"Plaintiff"), through its counsel, Berman Rosenbach, LLC, by way of Complaint against Manfred

Sternberg, Esquire ("Sternberg") and Manfred Sternberg & Associates, PC ("MSA"), and Charlton

Holdings Group, LLC ("CHG"), and Samuel Gross ("Gross") (collectively, "Defendants"), states

as follows:

1.    A.    Plaintiff, VRC Consulting, Inc., d/b/a VRC Medical Services, Inc, is a New

Jersey corporation with its principal place of business located at 357 Elf Road, Sewaren, New

Jersey 07077.

B.      Defendant Manfred Sternberg is a Texas attorney with an address of 1700 Post Oak Boulevard, 2 Boulevard Place, Suite 600, Houston, Texas 77056.

C.      Defendant Manfred Sternberg & Associates, PC is a Texas professional corporation with its principal place of business located at 1700 Post Oak Boulevard, 2 Boulevard Place, Suite 600, Houston, Texas 77056.

D.      Defendant Charlton Holding Group, LLC is a New York limited liability company with a principal place of business located at 78 Buckminster Road, Rockville Centre, NY 11570.

E.      Defendant Samuel Gross is an individual citizen of the State of New York with an address at 78 Buckminster Road, Rockville Centre, NY 11570.

### NATURE OF ACTION

2.      Defendants fraudulently induced VRC to purchase 204,120 iHealth Covid-19 Antigen Rapid two-pack test kits (the "Covid Test Kits") in exchange for payment of $2,449,440.00 (the "Order"). *See* Exhibit 1.

3.      The Order was supposed to be done through an escrow agreement with defendant Manfred Sternberg, Esquire and his law firm, Manfred Sternberg & Associates, P.C. (collectively the "Sternberg Attorney Defendants") acting as escrowee, but said agreement was merely a ruse to defraud Plaintiff, as Gross and Sternberg formed CHG merely as a front, and the Defendants had no intent or ability to deliver the Covid Test Kits, but instead intended to defraud Plaintiff into transferring them $2,449,440.00, without delivering the Covid Test Kits. *See* Exhibit 1.

4.      Defendants fraudulently induced VRC to wire the $2,449,440.00 into the attorney escrow account of the Sternberg Attorney Defendants, after which the Sternberg defendants wrongfully released that escrow, without delivering to Plaintiff the signed Bill of Sale and Bill of

2

Lading and other shipping documents evidencing the Covid Test Kits were purchased and being shipped to Plaintiff.

5. Defendants failed to deliver the Covid Test Kits to Plaintiff and also failed to provide a full refund of the $2,449,440.00 escrow to VRC. *See* Exhibit 2.

6. Defendants' behavior is particularly egregious and outrageous, as VRC needed the Covid Test Kits to sell to its customers, the public at large.

## PARTIES, JURISDICTION AND VENUE

7. Plaintiff is a New Jersey corporation, and operates as a trusted supplier of reliable personal protection and abatement equipment. VRC is New Jersey resident for purposes of diversity jurisdiction, with its principal place of business and headquarters located in New Jersey/ VRC did operate from 357 Elf Road, Sewaren, New Jersey 07077.

8. Defendant Manfred Sternberg is, upon information and belief, is a practicing attorney in good standing under the laws of Texas, and a citizen of the State of Texas, with an address of 1700 Post Oak Boulevard, 2 Boulevard Place, Suite 600, Houston, Texas 77056, and not in the military service of the U.S. or its allies.

9. Defendant Manfred Sternberg & Associates, PC ("MSA") is, upon information and belief, a Texas professional corporation, a citizen of the State of Texas for diversity purposes, and has its principal place of business at 1700 Post Oak Boulevard, 2 Boulevard Place, Suite 600, Houston, Texas 77056.

10. Defendants Sternberg and MSA collectively are referred to as the "Sternberg Attorney Defendants."

11. Defendant Charlton Holding Group LLC ("CHG"), is, upon information and belief, a New York limited liability company with an address of 78 Buckminster Road, Rockville

3

Centre, NY 11570, whose members are all New York residents for purposes of diversity jurisdiction.

12.     Defendant Samuel Gross is, upon information and belief, an adult individual and a citizen of the State of New York and has an address at 78 Buckminster Road, Rockville Centre, NY 11570, and not in the military service of the U.S. or its allies.

13.     Jurisdiction and venue are proper in this Court in that the actions giving rise to Plaintiff's causes of action occurred in the District of New Jersey, the amount in controversy exceeds $75,000.00 and the citizenship of the parties are from different states (namely, New Jersey is a citizen of Plaintiff, and Defendants are citizens of New York and Texas), and the jurisdictional prerequisites of this Court otherwise are satisfied.  *See* 28 U.S.C.S. §1332(a)(1) & § 1391.

## **RELEVANT FACTUAL BACKGROUND**

14.     On or about January 20, 2022, VRC agreed to purchase 204,120 iHealth Covid-19 Antigen Rapid two-pack test kits (the "Covid Test Kits") from CHG and its managing member, Defendant Gross, (the "Order") for a payment of $2,449,440.00 (the "Purchase Price").  *See* Exhibit 1, § 3.

15.     Defendants represented and promised to VRC that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States.

16.     The Order was supposed to be accomplished through a Sale and Purchase Agreement (the "Agreement"), and an escrow arrangement between Plaintiff and the Sternberg Attorney Defendants, but said "Agreement" was merely a ruse to defraud Plaintiff, as Gross, Sternberg and CHG had no intention or ability to deliver the Covid Test Kits, but instead intended to fraudulently induce Plaintiff to pay the Purchase Price for the Order without delivering the

4

Covid Test Kits.

17.     The Agreement required Plaintiff to deposit the $2,449,440.00 Purchase Price into the attorney escrow account of the Sternberg Attorney Defendants.  These funds were not to be released from escrow until after a Bill of Sale was delivered to Plaintiff and the Covid Test Kits were delivered to a common carrier for delivery to Plaintiff, and the Bill of Lading and shipping documents also delivered to Plaintiff.  *See* Exhibit 1, §6 and Exhibit D thereto.

18.     Defendants informed Plaintiff that Plaintiff needed to wire transfer the $2,449,440.00 Purchase Price into the attorney escrow account of the Sternberg Attorney Defendants immediately in order to hold Plaintiff's place in the queue, and they promised to sign and return the Agreement to Plaintiff as soon as the funds were transferred.

19.     In reliance upon Defendants' representations, on or about January 20, 2022, VRC wired the $2,449,440.00 Purchase Price into the attorney escrow account of the Sternberg Attorney Defendants.  *See* Exhibit 2.

20.     However, after VRC wired the $2,449,440.00 into the attorney escrow account of the Sternberg Attorney Defendants, Defendants failed and refused to sign and deliver the Agreement to Plaintiff.

21.     To date, Plaintiff has not received the signed Agreement from Defendants, as further evidence that Defendants never intended to perform under the Agreement.

22.     Defendants were supposed to deliver the Order so that VRC received the Covid Test Kits immediately upon the signing of the Bill of Sale.

23.     After VRC wired the $2,449,440.00 Purchase Price to Defendants, Defendants failed and refused to deliver the Covid Test Kits to Plaintiff.

24.     After demand by Plaintiff, the Defendants also have failed to provide a full refund,

or any refund, to Plaintiff.

25.     Defendants had no intention of performing as promised, and misrepresented that the Covid Test Kits were currently available for both purchase and shipment.

26.      In fact, and contrary to Defendants' representations, the Covid Test Kits were not currently available for purchase and shipment.

27.     No Bill of Lading, or other shipping information was provided to VRC, as required under the Agreement and as a prerequisite to the release of the $2,449,440.00 Purchase Price from the attorney escrow account of the Sternberg Attorney Defendants.

28.     To fraudulently induce Plaintiff to make this large purchase, Defendants represented that the 2,449,440.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the $2,449,440.00 Purchase Price would not be released from the attorney escrow account of the Sternberg Attorney Defendants unless and until the Covid Test Kits had been delivered to a common carrier for delivery to VRC.

29.     VRC needed the Order so it could supply the Covid Test Kits to its customers, namely the public at large.

30.     As a result of the aforesaid fraudulent conduct of the Defendants, VRC has incurred and will incur substantial damages, which Plaintiff believes are in excess of $25 million including the loss of the $2,449,440.00 Purchase Price, as well as significant lost profits due to the Defendants' fraud.

31.     VRC, through counsel, has given Defendants multiple opportunities to confirm that they have not fraudulently taken the $2,449,440.00 Purchase Price, and that Defendants have in fact shipped the Covid Test Kits.

32.     However, Defendants have continued to make lies and misrepresentations to

Plaintiff concerning the status of the delivery of the Covid Test Kits.

33.     For example, on multiple occasions during 2022, the Sternberg Attorney Defendants misrepresented to Plaintiff the Covid Test Kits were en route and would be delivered by no later than February 17, 2022, when in fact they were not with a common carrier or otherwise being shipped to Plaintiff; immediately (and as of the filing of this Complaint), no delivery had been made.

34.     Plaintiff on numerous occasions has requested that Defendants provide Plaintiff with a Bill of Lading and other shipping documents to show Seller had delivered the Covid Test Kits to a common carrier for delivery to Plaintiff.

35.     To date, however, Defendants have failed and refused to deliver this shipping documentation to Plaintiff.

36.     For example, on or about February 16, 2022, a man named "Shraga" contacted Plaintiff and advised Plaintiff the Covid Test Kits were on a truck and that delivery would be made to Plaintiff by 4:00 pm on February 16, 2022.  When the shipment did not arrive at 4:00 p.m., Plaintiff contacted Shraga who advised Plaintiff the truck had "broken down" and that the Kits would be delivered in the morning of February 17, 2022.

37.     As of this writing, the Covid Test Kits still have not been delivered to Plaintiff.

38.     Plaintiff believes and therefore avers Defendant never intended to provide Plaintiff with the Covid Test Kits and intended, instead, to abscond with Plaintiff's $2,449,440.00.

39.     Plaintiff and Plaintiff's counsel each demanded the immediate return of the $2,449,440.00 Purchase Price.

40.     To date, however, the $2,449,440.00 Purchase Price has not been refunded to Plaintiff, and the Covid Test Kits have not been delivered.

41.     As a result of Defendants' wrongful conduct, Plaintiff is being forced to locate and purchase Covid test kits from other sources to fulfill its contractual obligations to Plaintiff's customers and has incurred damages in doing so.

42.     The conduct of Defendants was intentional and knowing and deliberate, and so outrageous and extreme, so as to entitle Plaintiff to an award of punitive damages.

## COUNT I
## Fraud in the Inducement

43.     The above paragraphs are incorporated herein by reference as if set forth in full.

44.     Defendants represented and promised to VRC that they could sell and quickly deliver the Covid Test Kits because they had the Covid Test Kits in stock.

45.     CHG was formed on or about December 8, 2020, and appears to have been formed solely in order to defraud VRC and/or other potential victims.

46.     To fraudulently induce plaintiff to make this large purchase, Defendants represented that the $2,449,440.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the $2,449,440.00 Purchase Price would not be released from escrow, until after the Covid Test Kits had been delivered to a common carrier for delivery to VRC.

47.     Instead, the Sternberg Attorney Defendants wrongfully and improperly and prematurely released Plaintiff's $2,449,440.00 Purchase Price from escrow, without confirming that CHG purchased the Covid Test Kits and without confirming that CHG delivered the Covid Test Kits to a common carrier for delivery to Plaintiff.

48.     These representations and promises were false when made by Defendants to VRC.

49.     Defendants knowingly made these false representations and promises to VRC in order to induce it to wire the $2,449,440.00 Purchase Price, to Defendants, despite Defendants'

8

actual knowledge that they did not intend to and could not honor their representations and lacked the capacity to perform as promised.

50.     VRC reasonably relied upon the representations of Defendants and changed its position to its detriment, and sustained damages as a direct and proximate result of the fraud perpetrated by Defendants as set forth in detail in this Complaint.

51.     VRC sustained damages, including the loss of the $2,449,440.00 Purchase Price it wired into the attorney escrow account of the Sternberg Attorney Defendants.

52.     VRC has suffered additional damages including lost profits, resulting from its inability to re-sell the Covid Test Kits to its customers.

53.     VRC also has incurred damages including the increased costs it will be forced to spend to in locating Covid test kits in the marketplace so that it can cover and fulfill its contractual obligations to its customers.

54.     The conduct of Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, VRC Consulting, Inc., d/b/a VRC Medical Services, Inc., requests that the Court enter judgment against defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Samuel Gross, individually, jointly and severally, for an amount in excess of $2,500,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT II
### Fraud

55.     The above paragraphs are incorporated herein by reference as if set forth in full.

9

56.     Defendants represented and promised to VRC that they could sell and quickly deliver the Covid Test Kits because they already had the Covid Test Kits in stock.

57.     CHG was formed on or about December 8, 2020, and appears to have been formed solely in order to defraud VRC and/or other potential victims.

58.     To fraudulently induce plaintiff to make this large purchase, Defendants represented that the $2,449,440.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the funds would not be released from escrow until after the Covid Test Kits had been delivered to a common carrier for delivery to VRC.

59.     Instead, Defendants improperly took the money from escrow, and failed to deliver the Covid Test Kits, which were supposed to be resold by Plaintiff to the public at large.

60.     These representations and promises were false when made by Defendants to VRC.

61.     Defendants knowingly made these false representations and promises to VRC in order to induce it to wire the entire $2,449,440.00 Purchase Price to Defendants, despite Defendants' actual knowledge that they did not intend to honor their representations and lacked the capacity to perform as promised.

62.     VRC reasonably relied upon the representations of Defendants and changed its position to its detriment.

63.     VRC has lost the $2,449,440.00 Purchase Price it paid to Sternberg and MSA.

64.     VRC also has suffered lost profits as it has been unable to re-sell the Covid Test Kits to the customers with whom VRC had purchasing contracts, such as the public at large.

65.     VRC has also incurred damages in locating Covid test kits in the marketplace so that it can fulfill its contractual obligations to its customers.

66. The conduct of Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, VRC Consulting, Inc., d/b/a VRC Medical Services, Inc., requests that the Court enter judgment against defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Samuel Gross, individually, jointly and severally, for an amount in excess of $2,500,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT III
## CIVIL CONSPIRACY

67. The above paragraphs are incorporated herein by reference, as if set forth in full.

68. Defendants each wrongfully conspired with each other to fraudulently induce VRC to send them almost two and one half million dollars, as alleged above, without any intent or capacity to perform the alleged Agreement.

69. Defendants each took active steps to further the conspiracy, from negotiating the terms of the alleged Agreement, to representing that the Purchase Price would be held in an attorney escrow account, to promising, and failing, to provide a Bill of Lading and a signed copy of the Agreement.

70. Defendants' conspiracy aimed to obtain, and then keep, VRC's funds, without delivering the Covid Test Kits needed the public at large.

71. Each of the Defendants are liable for the actions of the other Defendants in furtherance of this conspiracy.

72. VRC has lost the $2,449,440.00 Purchase Price it paid to Defendants.

11

73.    VRC has suffered lost profits as it has been unable to sell the Covid Test Kits to the customers with whom VRC had purchasing contracts, such as the public at large.

74.    VRC has also incurred damages in locating Covid test kits in the marketplace so that it can fulfill its contractual obligations to its customers.

75.    The conduct of Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, VRC Consulting, Inc., d/b/a VRC Medical Services, Inc., requests that the Court enter judgment against defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Samuel Gross, individually, jointly and severally, for an amount in excess of $2,500,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT IV
## PIERCING THE CORPORATE VEIL

76.    The above paragraphs are incorporated herein by reference, as if set forth in full.

77.    Defendant CHG purports to be limited liability company and, on information and belief, CHG is owned entirely by its managing member, Samuel Gross.

78.    On information and belief, CHG was inadequately capitalized, failed to properly observe the required corporate formalities, and was otherwise used by Samuel Gross and the Sternberg Attorney Defendants to perpetuate a fraud against VRC.

79.    Due to the fraudulent and/or deceptive conduct of the Defendants, and the failure of one or more Defendants to properly capitalize the LLC, and/or their failure to observe corporate formalities, the corporate veil of CHG should be disregarded, and its

managing member, Samuel Gross, should be held individually liable for the wrongful acts of CHG.

WHEREFORE, Plaintiff, VRC Consulting, Inc., d/b/a VRC Medical Services, Inc., requests that the Court enter judgment against defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Samuel Gross, individually, jointly and severally, for an amount in excess of $2,500,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT V
## PARTICIPATION THEORY

80.     The above paragraphs are incorporated herein by reference as if set forth in full.

81.     Gross and Sternberg each represented and promised to VRC that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States.

82.     To fraudulently induce plaintiff to make this large purchase, Gross and Sternberg each represented that the $2,449,440.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the $2,449,440.00 Purchase Price would not be released from escrow, until after the Covid Test Kits had been delivered to a common carrier for delivery to VRC, and a Bill of Sale and Bill of Lading for the goods were delivered to Plaintiff.

83.     These funds were not to be released from escrow until after a Bill of Sale was delivered to Plaintiff and the Covid Test Kits were delivered to a common carrier for delivery to Plaintiff, and the Bill of Lading and shipping documents also delivered to Plaintiff. See Exhibit 1, §6 and Exhibit D thereto.

84.     The Sternberg Attorney Defendants misrepresented to Plaintiff the Covid Test Kits were en route and would be delivered by no later than February 17, 2022, when in fact they were not placed with a common carrier or otherwise being shipped to Plaintiff; as of February 17, 2022 (and as of the filing of this Complaint), no delivery has been made. *See* Exhibit 3.

85.     Plaintiff on numerous occasions has requested that Gross and Sternberg provide Plaintiff with a Bill of Lading and other shipping documents to show they had delivered the Covid Test Kits to a common carrier for delivery to Plaintiff.

86.     However, each of Gross and Sternberg, however, have failed and refused to deliver this shipping documentation to Plaintiff.

87.     Furthermore, Gross and Sternberg caused further deception and delay when, on or about February 16, 2022, a man named "Shraga" contacted Plaintiff and advised Plaintiff the Covid Test Kits were on a truck and that delivery would be made to Plaintiff by 4:00 pm on February 16, 2022.

88.     When the shipment did not arrive at 4:00 p.m., Plaintiff contacted Shraga who advised Plaintiff the truck had "broken down" and that the Kits would be delivered in the morning of February 17, 2022.

89.     The goods have not been placed with a common carrier or delivered to Plaintiff, wither as promised, or to date.

90.     The goods have not been placed with a common carrier or delivered to Plaintiff, wither as promised, or to date.

91.     Gross and Sternberg have each furthered the fraud and made material misrepresentations to Plaintiff, not only to obtain he funds, but to prevent and delay detection of the fraud.

92.     Each of Gross and Sternberg should be held liable for their individual participation in this fraudulent scheme pursuant to Participation Theory.

93.     Each of Gross and Sternberg made these representations with knowledge that they were false.

94.     Each of Gross and Sternberg personally participated in making these misrepresentations to VRC.

95.     VRC has lost the $2,449,440.00 Purchase Price it paid to Defendants, and has sustained and continues to sustain damages, as a result of Defendants' fraudulent and wrongful conduct.

96.     VRC has suffered lost profits as it has been unable to sell the Covid Test Kits to the customers with whom VRC had purchasing contracts, such as the public at large

97.     VRC has also incurred damages in locating Covid test kits in the marketplace so that it can fulfill its contractual obligations to its customers.

98.     The conduct of each of the Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, VRC Consulting, Inc., d/b/a VRC Medical Services, Inc., requests that the Court enter judgment against defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Samuel Gross, individually, jointly and severally, for an amount in excess of $2,500,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT VI
## Breach of Contract (Alternative Count)

99.     The above paragraphs are incorporated herein by reference as if set forth in full.

100.    This Count is pleaded in the alternative to the above Counts.

101.    VRC agreed to purchase 151,200 Covid Test Kits from CHG and its managing member, Gross, for the $2,449,440.00 Purchase Price. *See* Exhibit 1, § 3.

102.    The Agreement required Plaintiff to deposit the $2,449,440.00 Purchase Price into the attorney escrow account of the Sternberg Attorney Defendants, which funds were not to be released from escrow until after the delivery to Plaintiff of a Bill of Sale and the Covid Test Kits were delivered to a common carrier for delivery to Plaintiff, and the Bill of Lading and other shipping documents delivered to Plaintiff. *See* Exhibit 1, §6 and Exhibit D thereto.

103.    On January 21, 2022, VRC wired the $2,449,440.00 Purchase Price into the attorney escrow account of the Sternberg Attorney Defendants. *See* Exhibit 2.

104.    Defendants were supposed to deliver the Order by January 25, 2022.

105.    After VRC paid the $2,449,440.00 Purchase Price to Defendants, Defendants failed to deliver the Covid Test Kits and also failed to provide a full refund to VRC.

106.    VRC has lost the $2,449,440.00 Purchase Price it paid to Defendants.

107.    VRC has suffered damages including the loss of the $2,449,440.00 Purchase Price, as well as lost profits as it has been unable to sell the Covid Test Kits to the customers with whom VRC had purchasing contracts, such as the public at large.

108.    VRC has also incurred damages in locating Covid test kits in the marketplace so that it can fulfill its contractual obligations to its customers.

        WHEREFORE, Plaintiff, VRC Consulting, Inc., d/b/a VRC Medical Services, Inc., requests that the Court enter judgment against defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Samuel Gross, individually,

16

jointly and severally, for an amount in excess of $2,500,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT VII

### Unjust Enrichment/Quantum Meruit

109. The above paragraphs are incorporated herein by reference as if set forth in full.

110. In the alternative, VRC alleges that defendants have unjustly enriched themselves at the expense of VRC.

111. Defendants requested VRC to, *inter alia*, furnish funds to purchase the Covid Test Kits, in exchange for the $2,449,440.00 Purchase Price. *See* Exhibit 1.

112. Defendants represented that the entire $2,449,440.00 Purchase Price was required to be deposited into the attorney escrow account of the Sternberg Attorney Defendants.

113. Defendants represented that the entire $2,449,440.00 Purchase Price would not be released from the attorney escrow account of the Sternberg Attorney Defendants unless the Covid Test Kits were delivered to a common carrier for delivery to Plaintiff, and Plaintiff was supplied with a Bill of Sale and the Bill of Lading and other shipping documents.

114. In reliance upon the aforesaid representations of Defendants, on January 21, 2022, VRC wired $2,449,440.00 into the attorney escrow account of the Sternberg Attorney Defendants. *See* Exhibit 2.

115. Defendants received and accepted and used the $2,449,440.00 Purchase Price described above.

116. VRC conferred a benefit upon Defendants by delivering the $2,449,440.00

17

Purchase Price without receiving anything in return.

117.    Defendants appreciated, accepted and retained the benefit of the $2,449,440.00 Purchase Price.

118.    It would be unjust and inequitable to allow Defendants to retain the benefit of the $2,449,440.00 Purchase Price they received from VRC, without providing full compensation to VRC.

119.    The fair value of the moneys supplied by VRC to Defendants and retained and used by Defendants is the amount of $ 2,449,440.00.

WHEREFORE, Plaintiff, VRC Consulting, Inc., d/b/a VRC Medical Services, Inc., requests that the Court to enter judgment against defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Samuel Gross, individually, jointly and severally, for an amount in excess of $2,500,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as  punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

**JURY DEMAND PURSUANT TO RULE 38.(b)**

DEMAND is hereby made for trial by jury on all issues so triable.

Respectfully submitted,

BERMAN ROSENBACH, LLC

BY: /s/ Philip Rosenbach
      PHILIP ROSENBACH, ESQ

Date:  February 6, 2024

## EXHIBITS TO COMPLAINT

**EXHIBIT**      **DESCRIPTION**

"1"      [Unsigned] Purchase and Sale Agreement documents

"2"      1/19/22 Wire Transfer Documents for Wire of $2,449,440.00 Purchase Price Into Attorney Escrow Account of the Sternberg Attorney Defendants

VRC CONSULTING V. STERNBERG\COMPLAINT F1 02.06.24

EXHIBIT 1

EXHIBIT 1



**CHARLTON HOLDING GROUP, LLC**

**SALE AND PURCHASE AGREEMENT**

January 18, 2022

THIS AGREEMENT IS FOR THE SALE AND PURCHASE OF the product identified on the Purchase Order attached hereto and marked as Exhibit A attached hereto (the "Goods"). This Sale and Purchase Agreement is referred to herein as (this "Agreement").

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Buyer:** VRC Medical Services, 357 Elf Road, Sewaren, NJ 07077 (the "Buyer") (each hereafter as "Party" and together as the "Parties")

For good and valuable consideration, the Parties agree:

1. Seller shall provide Buyer the Goods listed in Exhibit A for the Purchase Price, provided that Buyer complies with the conditions of this Agreement.

2. Seller agrees to sell to Buyer 498,960 boxes of 2 count iHealth COVID 19 home test kits shall be provided to the Buyer by the Seller for each lot of boxes available for payment as they are ready to be delivered.

3. The Buyer agrees to pay the Seller @ $12.00(USD) per box. Payment upon invoice as the product lots are ready for delivery, total cost **$5,987,520.00**.

4. The product lots may be located in more than one (1) location or warehouse in various locales in the United States. Immediately after delivering a Purchase Order, Buyer agrees to authorize a wire be made to Seller through the Seller's Attorney Escrow Account identified in Exhibit B for the actual number of boxes of product contained in the Purchase Order.

5. As per the invoice below (EXHIBIT C), Seller agrees to sell **498,960 boxes** of 2 count iHealth COVID 19 home test kits. The Buyer shall transfer the above-mentioned funds to the Seller's Attorney Escrow Account listed in Exhibit B as per each invoice.

6. Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. Title transfer shall happen contemporaneously with funds being released to Seller. Exhibit E attached hereto is incorporated herein as Seller's agreed upon Standard Operating Procedure.

7. Seller agrees to pay commissions, if any, included with rolls and extensions for the duration of this Agreement as per separate written agreement.

8. The Seller agrees to coordinate and pay for common carrier transportation to deliver the Goods from the Seller's warehouse(s) to Buyer at Seller's cost and is included in the purchase price paid to Seller by Buyer hereunder.



**CHARLTON HOLDING GROUP, LLC**

9. Risk of loss shall transfer to Buyer at the point the product is paid for by Buyer and the Seller is released of all loss guarantees.

10. The Goods shall be sold with the manufacturer's warranty only. Seller makes a warranty of Title to product only when it is paid for by Buyer. Seller makes no other warranty of any kind, express or implied, and any warranty by Seller is expressly disclaimed.

11. Neither Buyer nor Seller shall be liable to the other for any consequential damages, lost profits, cover costs, or punitive or exemplary damages arising out of or related to this Agreement; however if Buyer in any way attempts to circumvent Seller, Seller will be entitled to liquidated damages of $50,000 from Buyer or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer.

12. Seller may terminate this Agreement if Seller determines, in its sole discretion, that Buyer does not have the funds to purchase the Goods, or the Goods become unavailable and all funds deposited with Seller, if any, shall be returned to Buyer.

13. This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.

14. Buyer warrants and represents this transaction is in full compliance with all applicable laws and regulations, including but not limited to Executive Order No. 13224, as amended, the Patriot Act (Public Law 107 56), and any other law relating to the prevention and detection of terrorism and money laundering

15. Buyer agrees to indemnify, defend, and hold harmless the Seller, its agents, servants, employees, contractors, and affiliates (the "Indemnified Parties"), from and against all damages, losses, costs, and expenses (including reasonable attorneys' fees) which they may incur by reason of any breach of the representations and warranties made by Buyer in this Agreement, or any false or misleading representation or warranty in this Agreement or other document provided by Buyer to Seller.

16. Seller and Buyer are independent contracting Parties and nothing in this Agreement shall make either Party the agent, employee, or legal representative of the other.

17. The terms of this Agreement are confidential and may only be disclosed as required by law or to complete the transaction.

18. This constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties. Neither Party is relying upon any representation not contained in this Agreement.

*We, the undersigned, with full legal and corporate responsibility accept the agreement this date:*

**Signing Page**

Agreed and Signed By:



**CHARLTON HOLDING GROUP, LLC**

For and on behalf of Seller,
Charlton Holdings Group, LLC

_____

Authorized Signatory

Name: Mr. Sam Gross

Position: Managing Partner

Date:

For and on behalf of Buyer

*Danny Shaughnessy*

_____

Authorized Signatory

Name:

**VRC Medical Services**
357 Elf Road
Sewaren, NJ 07077

Date: January 18, 2022



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT "A"- ICPO



**CHARLTON HOLDING GROUP, LLC**

## EXHIBIT "B" - ESCROW ACCOUNT
# Manfred Sternberg Jr. Attorney at Law IOLTA-Trust Account Wire Instructions



**Bank of America**

Bank of America; Phone # 888.287.4637
## ABA #026009593

## ACCOUNT NAME:
Manfred Sternberg Jr. Attorney at Law
IOLTA - Trust Account
### ACCT # 0008 4000 2143

Bank of America's SWIFT code **BOFAUS3N** should be used for incoming wires in U.S. dollars.

Bank of America's SWIFT code **BOFAUS6S** should be used for incoming wires in foreign currency.
If you do not know or are unsure of the type of currency being received please use **BOFAUS3N**

Someone sending an incoming international wire to you may also ask for Bank of America's address. The address to provide is as follows:
**BOFAUS3N** (US dollars or unknown currency)
    Bank of America, NA
    222 Broadway
    New York, New York 10038
**BOFAUS6S** (foreign currency)
    Bank of America, NA
    555 California St
    San Francisco, CA 94104
  Manfred Sternberg
  Attorney at Law
  1700 Post Oak Blvd., 2 Blvd. Place, Suite 600
  Houston, TX 77056
  TEL: (713) 622-4300
  FAX: (713) 622-9899
  manfred@msternberg.com

CHARLTON SALE & PURCHASE AGREEMENT DATED January 18, 2022



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT C

# INVOICE

Charlton Holdings Group, LLC,
78 Buckminster Road - Rockville Center
New York 11570, USA

Invoice _____ Date: January 18, 2022

TO:
**VRC Medical Services**
357 Elf Road
Sewaren, NJ 07077
*Ship To:*
NAIL & BEAUTY LLC
100 ADAMS BLVD
FARMINGDALE, NY 11735

**INSTRUCTIONS**: Funds are only due and payable upon receipt of Invoice. All sales are final.

| SALESPERSON | P.O. NUMBER | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| SAM GROSS | NYV0004CHAR | | Common Carrier | Delivery to Buyer | Due on receipt |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 498,960 | **iHealth COVID 19 home test kits** | $12.00 | $5,987,520.00 |
| | | | |
| | **CREDIT FOR DEPOSIT PER SPA** $5,987,520.00 | | ($5,987,520.00) |
| | | | |

NO SALES TAX (RESALE)

## TOTAL DUE $0.00

Bank wire or deposit:
**ACCOUNT NAME:**
Manfred Sternberg Jr. Attorney at Law
IOLTA - Trust Account
Bank of America; Phone # 888.287.4637
**ABA #026009593**
**ACCT # 0008 4000 2143**



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT D –
# BILL OF SALE

### <u>LOT #1</u> *(ref: #NYV0004CHAR)*

*CHARLTON HOLDINGS GROUP, LLC (the "Seller") does hereby sell, assign and transfer to the "Buyer" VRC Medical Services  357 Elf Road Sewaren, NJ 07077  the item(s) described as follows:*

498,960 **boxes** of 2 count iHealth COVID 19 home test kits @ $12.00 PER BOX INCLUSIVE.

*for the TOTAL AMOUNT OF $5,987,520.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of January _____, 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933

CHARLTON SALE & PURCHASE AGREEMENT DATED January 18, 2022

Page 7 of 8



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT E -
# STANDARD OPERATING PROCEDURE (SOP)

January 18, 2022

RE:  498,960  boxes of 2 count iHealth COVID 19 home test kits

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller")
AND

**Buyer:** VRC Medical Services, 357 Elf Road, Sewaren, NJ 07077 (the "Buyer")  (each hereafter as "Party" and together as the "Parties")

The following SOP is how Seller engages with Buyers.

1. Buyer to provide Purchase Order to Seller.
2. Seller's Attorney to draft and provide Buyer with Seller form of Sale and Purchase Agreement. ("SPA").
3. Buyer and Seller execute SPA and Buyer wires Seller's Attorney the total purchase price called for in the Purchase Order.
4. Purchase price funds released to Seller.
5. Title Transfer to Goods to Buyer per SPA.
6. Goods delivered to common carrier by Seller per SPA for delivery to Buyer.
7. Seller to provide Buyer with BOL(s) and executed Bill of Sale for Goods shipped
8. Buyer and its agents agree not to speak to anyone other than Seller or Seller's representative regarding this transaction.   Any discussions with Seller's vendors will be considered attempted circumvention.

EXHIBIT 2

| 01/19/2022 | Wire Transfer Fee | | $15.00 | |
| 01/19/2022 | Wire Transfer Debit MANFRED STERNBERG JR 026009593 006640002143 1700 FOST OAK BLVD 2 BLVD PLAC SUITE 600 HOUSTON TX 77056 BANK OF AMERICA 222 BROADWAY NEW YORK NY 10038 IHEALTH TEST KITS 181 , 4407 , A01182ZCHAR=NY0004CHAR 20220119B687H/U4001141/0 6119/434FT01 2022011198687H/KK MQPAIP/1000029 20220119844CHAR 20220119MXMQPAIP/1000029 | | | $2,258,000.00 |

