**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERICAN ENVIRONMENTAL** | : | |
| **ENTERPRISES, INC., d/b/a** | : | |
| **THESAFETYHOUSE.COM** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 2022-cv-00688 (JMY)** |
| **v.** | : | |
| | : | |
| **MANFRED STERNBERG, ESQUIRE,** | : | |
| **and MANFRED STERNBERG &** | : | |
| **ASSOCIATES, PC, and CHARLTON** | : | |
| **HOLDINGS GROUP, LLC, and** | : | |
| **SAMUEL GROSS a/k/a SHLOMO** | : | |
| **GROSS, and GARY WEISS,** | : | |
| **and ASOLARDIAMOND, LLC a/k/a,** | : | |
| **ASOLAR. LLC, and DAPHNA** | : | |
| **ZEKARIA, ESQUIRE, and SOKOLSKI** | : | |
| **& ZEKARIA, P.C.** | : | |
| | : | |
| **Defendants.** | : | |

**NOTICE OF PLAINTIFF'S MOTION TO BAR EXPERT REPORTS OF THE
STERNBERG DEFENDANTS AND PRECLUDE EXPERT TRIAL TESTIMONY ON
<u>BEHALF OF THE STERNBERG DEFENDANTS</u>**

**TO:** (1)   Manfred Sternberg, Esquire, and
     (2)   Manfred Sternberg & Associates, PC
           c/o Seth Laver, Esquire (VIA EMAIL: slaver@goldbergsegalla.com)
           c/o Joseph Ross, Esquire (VIA EMAIL: jross@goldbergsegalla.com)
     (3)   Sam Gross and
     (4)   Charlton Holdings Group, LLC
           (VIA EMAIL charltonholdinggroupllc@aol.com and Scg1212@gmail.com and
           publicdiamonds@gmail.com and Samrosinc@icloud.com
     (5)   Gary Weiss and
     (6)   ASOLARDIAMOND, LLC
           (VIA EMAIL: wgary4109@gmail.com and monipair@aol.com )
     (7)   Daphna Zekaria, Esquire and
     (8)   SOKOLSKI & ZEKARIA, P.C.
           (VIA EMAIL: Dzandpeanut@aol.com)

**PLEASE TAKE NOTICE** that plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM ("TSH" or "SAFETYHOUSE"), hereby files its Motion (the "Motion") to Bar the Expert Reports of and to Preclude Expert Trial Testimony on behalf of defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC (collectively the "Sternberg Defendants"), pursuant to Rule 37 of the Rules of Civil Procedure, and paragraph 1(c) of the Court's March 20, 2024 Amended Scheduling Order [ECF 154], and plaintiff TSH seeks the entry of an Order in the proposed form of Order accompanying this Motion, granting plaintiff TSH's Motion and barring the expert reports of Sternberg Defendants and precluding said experts from giving testimony at the trial; and in support of its Motion, plaintiff TSH will rely upon the accompanying Motion and Certifications of Daniel Scully and Certification of Plaintiff's Counsel, and accompanying exhibits, and Memorandum of Law.

**TAKE FURTHER NOTICE** that if you desire to oppose the relief sought in this Motion, you must file your written response with the Court and serve a copy of same upon undersigned counsel, within the time prescribed by the Rules of Court.  In the absence of such timely filed and served response, the Court may, upon consideration of the Motion, grant the relief requested by plaintiff TSH in the Motion.

ORAL ARGUMENT IS REQUESTED BY PLAINTIFF IF THIS MOTION IS OPPOSED.

Respectfully submitted,

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64223
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Tel. No. 215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date:  September 30, 2024          Attorneys for plaintiff TSH

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMERICAN ENVIRONMENTAL** : | |
| **ENTERPRISES, INC., d/b/a** : | |
| **THESAFETYHOUSE.COM** : | |
| : | **CIVIL ACTION** |
| **Plaintiff,** : | |
| : | **No. 2022-cv-00688 (JMY)** |
| **v.** : | |
| : | |
| **MANFRED STERNBERG, ESQUIRE,** : | |
| **and MANFRED STERNBERG &** : | |
| **ASSOCIATES, PC, and CHARLTON** : | |
| **HOLDINGS GROUP, LLC, and** : | |
| **SAMUEL GROSS a/k/a SHLOMO** : | |
| **GROSS, and GARY WEISS,** : | |
| **and ASOLARDIAMOND, LLC a/k/a,** : | |
| **ASOLAR. LLC, and DAPHNA** : | |
| **ZEKARIA, ESQUIRE, and SOKOLSKI** : | |
| **& ZEKARIA, P.C.** : | |
| : | |
| **Defendants.** : | |

**PLAINTIFF'S MOTION TO BAR EXPERT REPORTS OF STERNBERG**
**DEFENDANTS AND PRECLUDE EXPERT TRIAL TESTIMONY ON BEHALF OF**
**THE STERNBERG DEFENDANTS**

Plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM

("TSH" or "SAFETY HOUSE"), hereby files its Motion (the "Motion") to Bar the Expert Reports

of and Preclude Expert Trial Testimony on behalf of defendants Manfred Sternberg, Esquire, and

Manfred Sternberg & Associates, PC (collectively the "Sternberg Defendants"), pursuant to Rule

37(c) of the Federal Rules of Civil Procedure, and paragraph 1(c) of the Court's March 20, 2024

Amended Scheduling Order [ECF 154], and plaintiff TSH seeks the entry of an Order in the

proposed form of Order accompanying this Motion, granting plaintiff TSH's Motion and barring

the expert reports of Sternberg Defendants and precluding said experts from giving testimony at

the trial.

## <u>SUMMARY OF MOTION</u>

1.      The Sternberg Defendants served two Expert Reports on counsel for plaintiff on August 16, 2024: (1) an Expert Report on liability dated August 16, 2024, authored by Steven E. Angstreich, Esquire (the "Angstreich Report"), of the law firm of Weir Greenblatt Pierce, LLP (the Weir Law Firm"), and (2) an Expert Report on damages dated August 16, 2024, authored by Joseph W. Lesovitz, CPA, from Citrin Cooperman (the "Lesovitz Report").

2.      A copy of the Angstreich Report accompanies this Motion as Exhibit P-40, and A copy of the Lesovitz Report accompanies this Motion as Exhibit P-41.

3.      Both of the expert reports were first served by the Sternberg Defendants on plaintiff TSH on August 16, 2024, and both should be barred, and both experts should be precluded from testifying at the trial in this case:

(a)      Both expert reports were not timely produced, in violation of the Court's Amended Scheduling order entered in this case on March 20, 2024 [ECF 154] – the Sternberg Defendants first produced said Expert Reports on August 16, 2024, well after the Court's July 19, 2024 discovery deadline set in this case [ECF 154, at ¶ 1(a)], and after the Court's August 2, 2024 deadline for all Expert Reports to be produced [ECF 154, at ¶ 1(b)]; and

(b)      The Sternberg Defendants failed to designate any expert, or identity any expert report, or produce any expert report, in their discovery responses to the Interrogatories served on them by plaintiff TSH; and

(c)      The Sternberg Defendants failed to identify any expert, or produce any expert report in their discovery responses to the Document Requests served on them by plaintiff TSH; and

(d)     The Angstreich "expert" report – that the Sternberg Defendants did not breach any fiduciary duty – is irrelevant in this case, which is a fraud case, and not a malpractice case or a breach of fiduciary duty case.  The Angstreich Report also is wrong, based upon the undisputed facts of the case; and

(e)     Each expert report is not really a legal expert opinion, but instead each expert report purports to render an "expert opinion" concerning the ultimate factual questions to be determined by the jury or fact-finder in this case, and the "expert" opinions will not be helpful to the jury, especially inasmuch as this is not a complex or difficult case, and the factual questions concern whether the Sternberg Defendants defrauded plaintiff TSH or engaged in a wrongful civil conspiracy,  when they agreed to hold in escrow SAFETY HOUSE's $1,965,600.00 purchase price wired by TSH into the attorney trust account, and further agreed not to release said funds from their trust account until certain conditions precedent were met (which is the subject of the Angstreich Report), and whether any damages resulted from defendants' wrongful conduct (which is the subject of the Lesovitz Report).

4.     In addition, the Angstreich Report should be barred because there is an actual conflict of interest for an attorney from the Weir Law Firm (Angstreich) to render an expert opinion against a current client of the Weir Law Firm (SAFETY HOUSE).

## SUMMARY OF LAWSUIT

5.     Plaintiff SAFETY HOUSE was fraudulently induced by defendants to purchase 151,200 iHealth Covid-19 Antigen Rapid two-pack test kits (the "COVID Test Kits"), for $1,965,600.00.

6.     On January 21, 2022, SAFETY HOUSE wired the $1,965,600.00 Purchase Price in escrow to Sternberg's attorney trust account, and submitted TSH's Purchase Order #18315 for

the purchase of the 151,200 COVID Test Kits, which Purchase Order clearly and unambiguously had a "Deliver by" date of January 25, 2022.  *See* Exhibit P-2 accompanying plaintiff TSH's Rule 56/Rule 55 Motion.

7.       Sternberg was not supposed to release the $1,965,600.00 from his attorney trust account until SAFETY HOUSE received assurances that TSH had purchased the COVID Test Kits and that they were en route to TSH, by TSH's receipt of a Bill of Sale for the COVID Test Kits, as well as a Bill of Lading from a recognized common carrier that they were being delivered to TSH.  *See* Exhibit P-3 accompanying plaintiff TSH's Rule 56/Rule 55 Motion.

8.       Defendants provided TSH with a fraudulent Bill of Sale, and also failed to provide TSH with a Bill of Lading, for the COVID Test Kits.

9.       Defendants failed to deliver any of the 151,200 COVID Test Kits to SAFETY HOUSE, and they also failed to return TSH's $1,965,600.00 Purchase Price to TSH.

10.      Instead, defendants kept all of TSH's $1,965,600.00 Purchase Price and divided TSH's money up amongst themselves.

11.      Not only did TSH receive a fraudulent Bill of Sale, for COVID Test Kits (that the defendants in fact did not own at the time), but throughout the relevant time, defendants made numerous misrepresentations to TSH, including about the purported delivery of the COVID Test Kits to TSH (despite repeated representations that the COVID Test Kits were en route for delivery to TSH, no COVID Test Kits were delivered to TSH) and including the Seller's representation that TSH could cancel the transaction and get a full refund (when TSH then canceled the transaction after being told by the Gross Defendants that TSH could do so, and after TSH requested a full refund of the $1,965,600.00 Purchase Price, the Stenberg Defendants simply ignored what their

client (the Gross Defendants), had told TSH, and instead the Sternberg Defendants continued to disburse the funds amongst the defendants).

12.     Plaintiff's Amended Complaint [ECF 80], asserts causes of action for Fraud in the Inducement (Count I), and for Fraud (Counts II and III), and for Wrongful Civil Conspiracy (Count IV), and for Piercing the Corporate Veil (Counts V and VI), and for Participation Theory (Count VII), and   for Unjust Enrichment/Quantum Meruit (Counts VIII and XI), and for Intentional Interference With Contractual Relations (Count IX), and for Intentional Interference With Prospective Economic Advantage (Count X).

**FACTS RELEVANT TO MOTION TO BAR**
**THE EXPERT REPORTS AND TESTIMONY OF THE**
**STERNBERG DEFENDANTS' EXPERTS**

13.     This Court entered an Amended Scheduling Order on March 20, 2024 in this case [ECF 154], which Scheduling Order, among other things: (a) required all discovery to be completed by July 19, 2024 [ECF 154, at ¶ 1(a)], and (b) required the production of the parties' expert reports by Friday, August 2, 2024 [ECF 154, at ¶ 1(b)]; and (c) required the production of rebuttal expert reports by Friday, August 16, 2024 [ECF 154, at ¶ 1(b)]; required all expert discovery, including depositions of the expert witnesses, to be completed by August 30, 2024 [ECF 154, at ¶ 1(b)].

14.     Plaintiff TSH served Interrogatories and Document Requests upon the Sternberg Defendants.

15.     The Sternberg Defendants did not identify any experts, or otherwise provide all of the information requested about any experts so identified (C.V. of any expert; other matters in which any expert was involved or rendered an expert opinion, etc), in the responses of the Sternberg Defendants to the Interrogatories propounded by plaintiff upon them, either by the

Court's July 19, 2024 discovery deadline, or to date. *See* Certification of Gary Lightman in support of this Motion (the "Lightman Certification"), at ¶¶ 5-9, and Exhibits P-38 and P-39 accompanying this Motion.

16.     The Sternberg Defendants also did not produce any documents identifying any experts, and they did not otherwise provide all of the information requested about any experts so identified (C.V. of any expert; other matters in which any expert was involved or rendered an expert opinion, etc),  and the Sternberg Defendants failed to produce any expert reports, in the responses of the Sternberg Defendants to the Document Requests propounded by plaintiff upon them. *See* Lightman Certification, at ¶¶ 5-9, and Exhibits P-38 and P-39 accompanying this Motion.

17.     The Weir Law Firm has represented SAFETY HOUSE, as well as Daniel J. Scully, the principal of plaintiff TSH, as well as one or more of Mr. Scully's family members, and the Weir Law Firm currently continues to provide legal representation to the SAFETY HOUSE, on the one hand; but the Weir Law Firm through the Angstreich Report, has rendered an expert opinion that the Sternberg Defendants desire to use against SAFETY HOUSE, the plaintiff in this lawsuit. *See* Certification of Daniel Scully in support of this Motion (the "Scully Certification"), at ¶¶ 4-8.

18.     Both the Angstreich Report and the Lesovitz Report should be barred, and both experts should be precluded from testifying at the trial in this case, because both Reports are untimely and in violation of the Court's 3/20/24 Amended Scheduling order entered in this case [ECF 154]—they were not produced within the deadlines set by the Court.  *See* Lightman Certification, at ¶¶ 5-12, and Exhibits P-38 and P-39 accompanying this Motion.

19.     Both the Angstreich Report and the Lesovitz Report should be barred, and both experts should be precluded from testifying at the trial in this case, because the Sternberg Defendants failed to designate either of them as an expert, and failed to identity any expert report, and failed to produce any expert report, in their discovery responses to the Interrogatories and Document Requests served on them by plaintiff.

20.     The Angstreich Report also should be barred, and Angstreich should be precluded from testifying at the trial in this case, because the "expert" report rendered by Angstreich – that the Sternberg Defendants did not breach any fiduciary duty they may have owed plaintiff TSH  – is irrelevant in this case, which is a fraud case, and not a malpractice case or a breach of fiduciary duty case.

21.     The Angstreich Report also is wrong, based upon the undisputed facts of the case – the Sternberg Defendants did breach the fiduciary duty that they owed to plaintiff TSH in the course of defrauding the plaintiff, but even if they did not breach the fiduciary duty they owed, the Sternberg Defendants still defrauded plaintiff TSH and engaged in an unlawful civil conspiracy.

22.     Both the Angstreich Report and the Lesovitz Report should be barred, and both experts should be precluded from testifying at the trial in this case, because each report is not really an "expert" legal opinion.  Each expert report instead purports to render an "expert opinion" concerning the ultimate factual questions to be determined by the jury or fact-finder in this case, and the "expert" opinions will not be helpful to the jury, but instead invade the province of the jury and the fact questions they must determine.

23.     This is especially true inasmuch as this is not a complex or difficult case.

24.     The Angstreich Report purports to render an "expert" opinion on the factual question concerning whether the Sternberg Defendants had a duty or breached that duty,  when

10

they agreed to hold in escrow SAFETY HOUSE's $1,965,600.00 purchase price wired by TSH into the attorney trust account, and further agreed not to release said funds from their trust account until certain conditions precedent were met. – the Angstreich Report concludes that the Sternberg Defendants had no duty, but if they did, they did not breach any duty.

25.     The "expert" opinion expressed in the Angstreich Report (that the Sternberg Defendants did not have any fiduciary duty to plaintiff TSH and did not breach any duty owed to TSH) is wrong,.  Both Texas law and Pennsylvania law impose fiduciary duties on the Sternberg Defendants to both plaintiff TSH -- the Buyer paying the purchase price in escrow to the Sternberg Defendants, who were supposed to hold the money and not release the money from escrow account until the Sale and Purchase Agreement (the "SPA") conditions were satisfied – as well as to the Gross Defendants, the Seller of the COVID Test Kits, to release the money from escrow only pursuant to the SPA.

26.     Even if the opinion expressed in the Angstreich Report was true (which it is not, since the Sternberg Defendants had a fiduciary duty to both plaintiff TSH and the Gross Defendants as Seller, under the SPA pursuant to which the $1,965,600 was wired by plaintiff TSH into escrow to the Sternberg Defendants), and even if that was a relevant issue (which it is not, since this is a fraud case, and not a malpractice or breach of duty case), that is one of the factual questions the jury or fact-finder has to determine in this case, namely, whether the aforesaid conduct of the Sternberg Defendants defrauded plaintiff TSH.

27.     Similarly, the Lesovitz Report purports to render an "expert" opinion that the plaintiff TSH did not sustain any damages, but whether any damages resulted from defendants' wrongful conduct is a factual question that the jury or fact-finder has to determine in this case.

11

28.     In addition, the Angstreich Report should be barred because it is an actual conflict of interest for an attorney from the Weir Law Firm (Angstreich) to render an expert opinion against a current client of the Weir Law Firm (SAFETY HOUSE).

## RELIEF REQUESTED

WHEREFORE, Plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM, respectfully submits that the Court should enter the proposed Order accompanying this Motion: (a) granting plaintiff's Motion; and (b) barring the Angstreich Report; and (c) precluding Angstreich from testifying at trial; and (d) barring the Lesovitz Report; and (e) precluding Lesovitz from testifying at trial; and (f) granting to plaintiff TSH such other and further relief as the Court deems just and proper.

Respectfully submitted,

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64223
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date:  September 30, 2024          Attorneys for plaintiff TSH

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM | : : : : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : : | |
| **v.** | : : | **No. 2022-cv-00688 (JMY)** |
| | : | |
| MANFRED STERNBERG, ESQUIRE, and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SAMUEL GROSS a/k/a SHLOMO GROSS, and GARY WEISS, and ASOLARDIAMOND, LLC a/k/a, ASOLAR. LLC, and DAPHNA ZEKARIA, ESQUIRE, and SOKOLSKI & ZEKARIA, P.C. | : : : : : : : : : : : | |
| | : | |
| **Defendants.** | : | |

**CERTIFICATION OF DANIEL J. SCULLY IN SUPORT OF**
**PLAINTIFF'S MOTION TO BAR EXPERT REPORTS AND TO PRECLUDE EXPERT**
**TRIAL TESTIMONY ON BEHALF OF THE STERNBERG DEFENDANTS**

DANIEL J. SCULLY, of full age, being first duly sworn upon his oath, states as follows:

1. I am the President of American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM, the Plaintiff in this lawsuit, and am the authorized representative of Plaintiff. I have knowledge of the facts set forth in this Certification, and of called to testify, could do so competently.

2. I respectfully submit this Certification in support of Plaintiff's Motion to bar expert Reports and to preclude expert testimony of the two experts of the Sternberg Defendants.

3.    The Sternberg Defendants first served two Expert Reports on the attorneys for plaintiff SAFETY HOUSE on August 16, 2024: (1) an Expert Report on liability dated August 16, 2024, authored by Steven E. Angstreich, Esquire (the "Angstreich Report"), of the law firm of Weir Greenblatt Pierce, LLP (the "Weir Law Firm"), and (2) an Expert Report on damages dated August 16, 2024, authored by Joseph W. Lesovitz, CPA, from Citrin Cooperman (the "Lesovitz Report").

4.    I was shocked to discover that one of the Expert Reports that the Sternberg Defendants served on SAFETY HOUSE was authored by Steven Angstreich, Esquire, an attorney with the law firm of Weir Law Firm.

5.    The Weir Law Firm has represented SAFETY HOUSE, as well as me personally, as well as one or more of my family members, in various legal matters.

6.    The Weir Law Firm currently continues to provide legal representation to the SAFETY HOUSE.

7.    As recently as September 19, 2024, SAFETY HOUSE received an invoice for legal services from the Weir Law Firm (which was paid).

8.    I object to the Weir Law Firm continuing to represent SAFETY HOUSE, while at the same time, the Weir Law Firm, through the Angstreich Report, has rendered an expert opinion that the Sternberg Defendants desire to use against SAFETY HOUSE, the plaintiff in this lawsuit.

I certify subject to the penalties of perjury that the foregoing facts are true and correct to the best of my knowledge, information and belief.

Daniel J. Scully, President
American Environmental Enterprises, Inc.
d/b/a THE SAFETY HOUSE.COM

DATED: September  30, 2024

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMERICAN ENVIRONMENTAL** : | |
| **ENTERPRISES, INC., d/b/a** : | |
| **THESAFETYHOUSE.COM** : | |
| : | **CIVIL ACTION** |
| **Plaintiff,** : | |
| : | **No. 2022-cv-00688 (JMY)** |
| **v.** : | |
| : | |
| **MANFRED STERNBERG, ESQUIRE,** : | |
| **and MANFRED STERNBERG &** : | |
| **ASSOCIATES, PC, and CHARLTON** : | |
| **HOLDINGS GROUP, LLC, and** : | |
| **SAMUEL GROSS a/k/a SHLOMO** : | |
| **GROSS, and GARY WEISS,** : | |
| **and ASOLARDIAMOND, LLC a/k/a,** : | |
| **ASOLAR. LLC, and DAPHNA** : | |
| **ZEKARIA, ESQUIRE, and SOKOLSKI** : | |
| **& ZEKARIA, P.C.** : | |
| : | |
| **Defendants.** : | |

**CERTIFICATION OF GARY LIGHTMAN, ESQUIRE IN SUPORT OF
PLAINTIFF'S MOTION TO BAR EXPERT REPORTS AND TO PRECLUDE EXPERT
TRIAL TESTIMONY OF THE STERNBERG DEFENDANTS**

GARY LIGHTMAN, ESQUIRE, of full age, being first duly sworn upon his oath, states

as follows:

1.      I am counsel of record for American Environmental Enterprises, Inc. d/b/a THE

SAFETY HOUSE.COM ("TSH" or "SAFETY HOUSE"), the plaintiff in this lawsuit.

2.      I have knowledge of the facts set forth in this Certification, and if called to testify,

could do so competently.

3.      I respectfully submit this Certification in support of Plaintiff's Motion to Bar Expert

Reports and to preclude expert testimony of the two experts of the Sternberg Defendants

4.      This Court entered an Amended Scheduling Order on March 20, 2024, in this case [ECF 154], which Scheduling Order, among other things: (a) required all discovery to be completed by July 19, 2024 [ECF 154, at ¶ 1(a)]; and (b) required the production of the parties' expert reports by Friday, August 2, 2024 [ECF 154, at ¶ 1(b)]; and (c) required any expert rebuttal reports to be submitted by August 16, 2024 [ECF 154, at ¶ 1(b)]; and (d) required all expert discovery, including depositions of the expert witnesses, to be completed by August 30, 2024 [ECF 154, at ¶ 1(b)].

5.      Plaintiff TSH served Interrogatories and Document Requests upon the Sternberg Defendants, to which the Sternberg Defendants duly responded.

6.      A true and correct copy of the Document Requests served on the Sternberg Defendants on August 18, 2022, accompanies this Motion as Exhibit P-38.

7.      True and correct copies of the responses of the Sternberg Defendants to the plaintiff's discovery requests accompany this Motion and collectively are marked as Exhibit P-39.

8.      The Sternberg Defendants did not identify produce any expert reports, or identify any experts, or otherwise provide any of the information requested about any experts so identified (the C.V. of any expert; other matters in which any expert was involved or rendered an expert opinion, etc), in the responses of the Sternberg Defendants to the questions concerning expert witnesses (Exhibit P-38, Document Request Nos. 36-40) in the Document Requests propounded by plaintiff upon them (Exhibit P-38), either by the Court's July 19, 2024 discovery deadline, or to date.  *See* Exhibits P-38 and P-39  accompanying this Motion.

9.      The Sternberg Defendants also did not identify any expert reports in the responses of the Sternberg Defendants to those Interrogatories propounded by plaintiff upon them.

9.      The Sternberg Defendants first served two Expert Reports on the attorneys for plaintiff SAFETY HOUSE on August 16, 2024: (1) an Expert Report on liability dated August 16, 2024, authored by Steven E. Angstreich, Esquire (the "Angstreich Report"), of the law firm of Weir Greenblatt Pierce, LLP (the "Weir Law Firm"), and (2) an Expert Report on damages dated August 16, 2024, authored by Joseph W. Lesovitz, CPA, from Citrin Cooperman (the "Lesovitz Report").

10.     A true and correct copy of the Angstreich Report accompanies this Motion as Exabit P-40.

11.     A true and correct copy of the Lesovitz Report accompanies this Motion as Exabit P-41.

12.     Both the Angstreich Report and the Lesovitz Report were first produced after the 7/19/24 discovery deadline set by the Court and in violation of the Court's Amended Scheduling Order [ECF 154]  -- The Sternberg Defendants just their served expert reports out of time, without even moving to extend the discovery deadline, let alone otherwise seeking or obtaining the Court's permission for filing expert reports after the deadline established by the Court.

10.     I sent an email to counsel for the Sternberg Defendants on August 18, 2024, objecting to the Sternberg Defendants' late designation of their two experts, and their production of expert reports, well after the discovery deadline set by the Court and in violation of the Court's Amended Scheduling Order [ECF 154], and I requested that the Sternberg Defendants withdraw their untimely and improper expert reports.  They failed and refused to do so.

11.     I sent an email to counsel for the Sternberg Defendants on September 11, 2024, informing counsel for the Sternberg Defendants that Angstreich has an actual conflict of interest because the Weir Law Firm has represented and continues to represent SAFETY HOUSE, on the

one hand, but a Weir Law Firm attorney (Angstreich) has authored an expert report that the Sternberg Defendants desire to use against SAFETY HOUSE, on the other hand.  I requested that the Sternberg Defendants withdraw the Angstreich expert report, but they failed and refused to do so.

12.    I believe that plaintiff TSH will be prejudiced if the Court allows the Sternberg Defendants to designate experts and use expert reports after the discovery deadline.  Among other things, plaintiff TSH has lost the opportunity to depose each expert designated by the Sternberg Defendants after the discover deadline, and to question each expert on the substance of their expert reports that were not produced until after the Court-imposed deadline for such production, as well as to conduct discovery regarding other matters in which the experts were used.

13.    I believe that it also is unfair and prejudicial to TSH to allow the Sternberg Defendants to designate and use expert witnesses well after the Court-established deadline for the designation and use of experts, since plaintiff TSH did not designate any expert, in part because no defendant timely designated any expert.

I certify subject to the penalties of perjury that the foregoing facts are true and correct to the best of my knowledge, information and belief.

BY: *Gary Lightman*
_____
Gary Lightman, Esquire
Attorney for Plaintiff TSH

DATED: September 30, 2024

## EXHIBITS TO MOTION

**EXHIBIT**          **DESCRIPTION**

P-38          8/18/22 Document Requests propounded upon the Sternberg Defendants by plaintiff

P-39          Sternberg Defendants' Answers to Interrogatories propounded upon the Stenberg Defendants by plaintiff

P-40          8/16/24 Expert Report on liability dated August 16, 2024, authored by Steven E. Angstreich, Esquire (the "Angstreich Report"), of the law firm of Weir Greenblatt Pierce, LLP (the Weir Law Firm"), first produced to plaintiff on 8/16/24

P-41          8/16/24 Expert Report on damages dated August 16, 2024, authored by Joseph W. Lesovitz, CPA, from Citrin Cooperman (the "Lesovitz Report"), first produced to plaintiff on 8/16/24.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMERICAN ENVIRONMENTAL** : | |
| **ENTERPRISES, INC., d/b/a** : | |
| **THESAFETYHOUSE.COM** : | |
| : | **CIVIL ACTION** |
| **Plaintiff,** : | |
| : | **No. 2022-cv-00688 (JMY)** |
| **v.** : | |
| : | |
| **MANFRED STERNBERG, ESQUIRE,** : | |
| **and MANFRED STERNBERG &** : | |
| **ASSOCIATES, PC, and CHARLTON** : | |
| **HOLDINGS GROUP, LLC, and** : | |
| **SAMUEL GROSS a/k/a SHLOMO** : | |
| **GROSS, and GARY WEISS,** : | |
| **and ASOLARDIAMOND, LLC a/k/a,** : | |
| **ASOLAR. LLC, and DAPHNA** : | |
| **ZEKARIA, ESQUIRE, and SOKOLSKI** : | |
| **& ZEKARIA, P.C.** : | |
| : | |
| **Defendants.** : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO BAR EXPERT REPORTS OF AND TO PRECLUDE EXPERT TRIAL
TESTIMONY ON BEHALF OF THE STERNBERG DEFENDANTS**

Plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM

("TSH" or "SAFETY HOUSE"), hereby files its Memorandum of Law in support of it Motion to

Bar the Expert Reports and to Preclude Expert Trial Testimony  (the "Motion") of defendants

Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC (collectively the "Sternberg

Defendants")

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

This Court entered an Amended Scheduling Order on March 20, 2024 in this case [ECF

154], which Scheduling Order, among other things: (a) required all discovery to be completed by

July 19, 2024 [ECF 154, at ¶ 1(a)]; and (b) required the production of the parties' expert reports

by Friday, August 2, 2024 [ECF 154, at ¶ 1(b)]; and (c) required the production of rebuttal expert

reports by August 16, 2024 [ECF 154, at ¶ 1(b)]; and (d) required all expert discovery, including

depositions of the expert witnesses, to be completed by August 30, 2024 [ECF 154, at ¶ 1(b)].

Plaintiff TSH served Interrogatories and Document Requests upon the Sternberg

Defendants, to which the Sternberg Defendants duly responded.

However, the Sternberg Defendants did not identify any experts, or otherwise provide all

of the information requested about any experts so identified (C.V of any expert; other matters in

which any expert was involved or rendered an expert opinion, etc.), in their discovery responses

propounded by plaintiff upon the Sternberg Defendants. The Sternberg Defendants also did not

identify produce any expert reports in the responses of the Sternberg Defendants to the Document

Requests propounded by plaintiff upon them.

The Sternberg Defendants first served two Expert Reports on counsel for plaintiff on

August 16, 2024: (1) an Expert Report on liability dated August 16, 2024, authored by Steven E.

Angstreich, Esquire (the "Angstreich Report"), of the law firm of Weir Greenblatt Pierce, LLP

(the "Weir Law Firm"), and (2) an Expert Report on damages dated August 16, 2024, authored by

Joseph W. Lesovitz, CPA, from Citrin Cooperman (the "Lesovitz Report").

The Weir Law Firm has represented SAFETY HOUSE, as well as Daniel J. Scully, the

principal of plaintiff TSH, as well as one or more of Mr. Scully's family members, and the Weir

Law Firm currently continues to provide legal representation to the SAFETY HOUSE.  However,

the Weir Law Firm through the Angstreich Report, has rendered an expert opinion that the

Sternberg Defendants desire to use against SAFETY HOUSE, the plaintiff in this lawsuit.

Plaintiff TSH also incorporates by reference herein, the facts and procedural background

set forth in its separate Statement of Undisputed Material Facts, filed contemporaneously in

support of plaintiff TSH's Rule 56 Motion for Summary Judgment, as if fully set forth at length herein.

**LEGAL ARGUMENT**

**A.     THE EXPERT REPORTS OF THE STERNBERG DEFENDANTS AND THE TESTIMONY OF THEIR EXPERTS MUST BE PRECLUDED AT TRIAL, BECAUSE BOTH REPORTS WERE NOT TIMELY PRODUCED, IN VIOLATION OF THE COURT'S 3/20/24 SCHEDULING ORDER**

This Honorable Court, in the Amended Scheduling Order dated March 20, 2924, established July 19, 2024, as the discovery deadline in this case, and also required expert reports to be served by no later than August 2, 2024.  See ECF 154, 3/20/24 Amended Scheduling Order, at ¶¶ 1(a) and 1(b).  The Sternberg Defendants did not comply with or observe the Court's 3/20/24 Order.  The Sternberg Defendants did not even request the Court's permission, let alone obtain permission from the Court, to designate any expert after the Court-Ordered deadline to do so. Instead, the Sternberg Defendants just usurped the authority of the Court, and served two expert repots on August 16, 2024, well after, and in blatant violation of, the Court-Ordered deadline to do so.  In such circumstances, it is appropriate and warranted, for the Court to preclude the late expert reports, and this Court should bar the late expert reports, first produced after the deadlines in the Court's 3/20/24 Amended Scheduling Order, and preclude the testimony of said experts. Sampathkumar v. Chase Home Fin., LLC, 241 A.3d 1122, 2020 Pa. Super LEXIS 879, 2020 PA Super 250, 2020 WL 6127011 (Pa. Super. 2019) (appellate court affirmed trial court's preclusion of expert reports produced after the deadlines in the Court's Case Management Order); Virginia St. Fidelco, L.L.C. v. Orbis Prods. Corp., 2018 U.S. Dist. LEXIS 45317, 2018 WL 1399304 (D. NJ 2018) (magistrate decision to bar untimely expert report affirmed); Behrens v. Rutgers Univ., 1995 U.S. Dist. LEXIS 22030 (D. NJ 1995) (untimely expert report barred and expert barred from

testifying at trial; <u>Kremsky v. Kremsky</u>, 2017 U.S. Dist. LEXIS 216489 (E.D. PA 2017) (untimely expert report barred, and portions excluded as not reliable).

On this basis alone, the two expert reports should be excluded.

**B.     THE EXPERT REPORTS OF THE STERNBERG DEFENADNTS AND THE TESTIMONY OF THEIR EXPERTS MUST BE PRECLUDED AT TRIAL, BECAUSE THE STERNBERG DEFENDANTS FAILED TO IDENTIFY ANY EXPERTS OR ANY EXPERT REPORTS OR PROCUDE ANY EXPERT REPORTS, IN THEIR DISCOVERY RESPONSES OF THE INTERROGATORIES AND DOCUMENT REQUESTS PROPOUNDED UPON THEM BY PLAINTIFF IN THIS CASE**

The Sternberg Defendants also failed to identify any expert, or to produce any expert report, in response to the discovery requests served by plaintiff TSH on the Sternberg Defendants. Among other things, plaintiff TSH required the Sternberg Defendants to produce copies of all expert reports and drafts of the expert reports (*see* Exhibit P-38, D/R #36).  The Sternberg Defendants also failed to identify and produce the documents which any Defendant provided to any expert witness (*Id*, at #38).  The Sternberg Defendants also failed to identify and produce the documents which any Defendant used or to ne used by any expert witness (*Id*, at #39).  The Sternberg Defendants further failed to identify and produce the C.V. or resume of all expert witnesses (*Id*, at #40).

The Federal Rules of Civil Procedure clearly authorize the exclusion of expert witness testimony as a sanction for a party's failure to disclose information about the expert's opinions in accordance with court deadlines.  Rule 37(c) states in relevant part that "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless…".

In the instant case, it is appropriate and warranted, for the Court to preclude the late expert reports, because the failure of the Sternberg Defendants is not substantially justified and is not harmless to plaintiff TSH.  <u>Nicholas v Pennsylvania State Univ.</u>, 227 F. 3d 133, 2000 U.S. App. LEXIS 23182, 55 Fed. R. Evid. Serv. (Callaghan) 1028 (3d Cir. 2000)  (lower court decision to preclude expert testimony upheld on appeal);  <u>Wonderland Nursery Goods Co. v. Thorley Indus., LLC</u>, 2014 U.S. Dist. LEXIS 6120, 2014 WL 199789 (W.D. Pa. 2014) (expert report excluded where expert not identified during discovery).  Plaintiff TSH was surprised by the disclosure of experts by the Sternberg Defendants after they failed to disclose any experts during discovery. Plaintiff TSH is prejudiced by the untimely disclosure of the experts, since plaintiff did not name any experts in large part because the Sternberg Defendants (and the other defendants) did not disclose any experts.  Furthermore, plaintiff TSH now has lost the opportunity to conduct expert discovery. The expert testimony being proposed comes only a few months before the trial of this 2022 case, and would disrupt the orderly and efficient trial of this action.

The facts are undisputed that the Sternberg Defendants failed to disclose the experts during discovery or by the discovery deadline, in violation of the Court's Amended Scheduling Order [ECF 154, at ¶ 1(a)].  The facts also are undisputed that Sternberg Defendants failed to produce the experts reports by the expert report deadline, in violation of the Court's Amended Scheduling Order [ECF 154, at ¶ 1(b)].  The bad faith of the Sternberg Defendants is underscored by the fact that they failed to request, let alone obtain, permission from the Court for their failures to comply with Court-imposed deadlines – they just simply went ahead and did what they wanted, in violation of the Court deadlines.  The expert reports properly should be excluded in this case.

**C.**  **THE ANGSTREICH REPORT AND HIS TESTIMONY MUST BE BARRED AND PRECLUDED AT TRIAL, BECAUSE THERE IS AN ABSOLUTE CONFLICT OF INTEREST – THE WEIR LAW FIRM REPRESENTS SAFETY HOUSE, BUT ANGSTREICH, A WEIR FIRM ATTOREY, HAS PRODUCED AN EXPERT REPORT WHICH THE STERNBERG DEFENDANTS DESIRE TO USE AGAINST SAFETY HOUSE**

The Weir Law Firm has represented SAFETY HOUSE, as well as Daniel J. Scully, the principal of plaintiff TSH, as well as one or more of Mr. Scully's family members, and the Weir Law Firm currently continues to provide legal representation to the SAFETY HOUSE (*see* Scully Certification accompanying this Motion, at ¶¶ 4-8).   However, the Weir Law Firm through the Angstreich Report, has rendered an expert opinion that the Sternberg Defendants desire to use against SAFETY HOUSE, the plaintiff in this lawsuit.  That is an absolute conflict of interest, and plaintiff TSH has objected to the Sternberg Defendants using an attorney from the Weir Law Firm -- the same law firm that has provided and continues to provide legal services to SAFETY HOUSE – producing an expert opinion that the Sternberg Defendants now plan to use against SAFETY HOUSE.   That is an impermissible actual conflict of interest, that precludes the Sternberg Defendants from using the Angstreich Report or his testimony in this lawsuit.  CFTC v. Eustace, 2007 U.S. Dist. LEXIS 33137 (E.D. Pa. 2007) (conflict warrants disqualification); Costanzo v. Pennsylvania Turnpike Comm'n, 50 Pa. D. & C. 4th 414, 2001 Pa. Dist. & Cntty Dec. LEXIS 406 (Alleg. Cty. 2001) (expert report barred due to conflict of interest); In re Zenith Elecs. Corp., 241 B.R. 92, 1999 Bankr. LEXIS 1385 (Bkrtcy Del. 1999) (conflict of interest warrants disqualification).

The Angstreich Report and his testimony at trial be precluded based on this actual conflict of interest.

**D.** **THE ANGSTREICH REPORT AND HIS TESTIMONY MUST BE BARRED AND PRECLUDED AT TRIAL, UNDER FEDERAL RULE OF EVIDENCE 702 AND DAUBERT AND ITS PROGENY**

      **1.** **THE STANDARD FOR THE APPLICATION OF FEDERAL RULE OF EVIDENCE 702 AND DAUBERT**

Federal Rule of Evidence 702 provides that expert testimony by a qualified witness is admissible

> "if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliable to the facts of the case."

Fed. R. Evid. 702.  The United States Supreme Court's decision in Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L. Ed. 2d. 469, 113 S. Ct. 2786 (1993) ("Daubert"), requires trial judges to act as "gatekeepers" to exclude unreliable and irrelevant expert testimony. Kannankeril v. Terminix International, Inc., 128 F.3d 802, 806 (3d Cir. 1997) (trial court must insure "any and all expert testimony or evidence is not only relevant but also reliable"); Calhoun v. Yamaha Motor Corp., USA, 350 F.3d 316, 320-21 (3d Cir. 2003) (citing Daubert, 509 U.S. at 597).[1]

Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." Schneider ex. rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing

---

[1] Rule 702 applies to both scientific and non-scientific expert testimony.  See Kuhmo Tire Co., Ltd v. Carmichael, 526 U.S. 137, 141 (1999) (including "technical" and "other specialized" testimony within the scope of the Daubert holding).  See Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000) (citing Kuhmo Tire and holding Daubert applies to expert testimony "based on technical and other specialized knowledge") (internal quotes omitted) (citations omitted).

In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 741-43 (3d Cir. 1994) ("Paoli II") and Daubert).

The "qualification" restriction addresses whether a witness has specialized knowledge in the subject matter at issue. General qualifications do not satisfy this requirement. Calhoun, 350 F.3d at 322. See United States v. Fisher, 2002 U.S. Dist. LEXIS 22385 at *18 (E.D. Pa. Nov. 19, 2002) ("there must be some evidence to suggest that the proposed expert possesses sufficient knowledge of the subject matter, either through training or experience, to testify as an expert").

The "reliability" restriction allows expert testimony only "so long as the process or technique the expert used in formulating the opinion is reliable." Paoli II, 35 F.3d at 742. Reliable testimony is grounded in "methods and procedures of science" not "subjective belief or unsupported speculation." Id., (citing Daubert, 509 U.S. at 590). In addition to an expert's methodology being reliable, the data which support the expert's opinion must satisfy the reliability requirements of Federal Rules of Evidence 104 [2] and 703. [3] The Third Circuit has held the data reliability standard is "equivalent to Rule 702's reliability requirement – there must be good

---

[2] The relevant portions of Rule 104 states that "courts must decide any preliminary question about whether…evidence is admissible." Fed. R. Evid. 104(a). When "the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid 104(b).

[3] Rule 703 states
   "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

grounds on which to find that data reliable." Paoli II, 35 F.3d at 748.  The trial court judge makes this determination and must "conduct an independent evaluation into reasonableness."  Id.

> "If the underlying data are so lacking on probative force and
> reliability that no reasonable expert could base an opinion on them,
> an opinion which rests entirely upon them must be excluded."

Id. (quoting In re Agent Orange Prod. Liab. Litig., 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985)).

A lack of independent analysis also renders an expert report unreliable.  Where there is no indication in the report that the expert did any independent analysis whatsoever to determine the reasonableness of his findings, the lack of any independent verification renders an expert report unreliable as a matter of law.  Legendary Art, LLC v. Godard, 2012 U.S. Dist. LEXIS 116270, *12 (E.D. Pa. Aug. 17, 2012); Diabetes Centers of America, Inc. v. Healthplan America, Inc., 2008 U.S. Dist. LEXIS 10052, *5-7 (S. D. Tex. Feb. 11, 2008); Sunlight Saunas, Inc. v. Sundance Sauna, Inc., 427 F. Supp. 2d 1022, 1030 (D. Kans. 2006); JRL Enterprises, Inc. v. Procorp Associates, Inc., 2003 U.S. Dist. LEXIS 9397, *23 (E.D. Pa. June 3, 2003); Otis v. Doctor's Associates, Inc., 1998 U.S. Dist. LEXIS 15414, *13, 19 (N.D. Ill. Sept. 14. 1998); JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc., 1998 U.S. Dist. LEXIS 5098, *20-21 (E.D. Pa. Apr. 15, 1998); Target Market Publishing, Inc. v. Advo, Inc., 136 F.3d 1139, 1142 (7th Cir. 1998) (court affirming district court expert report preclusion where expert relied on "mere assumptions").

Addressing the reliability issue, federal courts consistently exclude expert damages reports based upon sales projections where the expert fails to perform an independent investigation of the reliability of the sales projection.  Legendary Art, LLC v. Godard, 2012 U.S. Dist. LEXIS 116270, *12 (E.D. Pa. Aug. 17, 2012) (court orders exclusion of plaintiff's expert report where expert relied upon sales projections without independently verifying them); Diabetes Centers of America, Inc.

v. Healthplan America, Inc., 2008 U.S. Dist. LEXIS 10052, *5-7 (S. D. Tex. Feb. 11, 2008) (court excludes plaintiff's expert damages report where expert bases report on patient projection numbers without "conducting independent research into whether projected figures . . . were valid or even reasonable"); Sunlight Saunas, Inc. v. Sundance Sauna, Inc., 427 F.Supp. 2d 1022, 1030 (D. Kans. 2006) (court excludes plaintiff's damages report where plaintiff's expert based conclusions on sales projections but did not "independently analyze the projections"); JRL Enterprises, Inc. v. Procorp. Associates, Inc., 2003 U.S. Dist. LEXIS 9397, *23 (E.D. Pa. June 3, 2003) (court excludes plaintiff's expert damages report where expert "performed no independent analysis" of sales projections provided to him; court holding that plaintiff "did not meet its burden of relevance and reliability under Rule 702"); Otis v. Doctor's Associates, Inc., 1998 U.S. Dist. LEXIS 15414, *13, 19 (N.D. Ill. Sept. 14. 1998) (court precludes plaintiff's expert damages testimony where expert "did not perform any independent market analysis to verify the reasonableness or accuracy" of projection's weekly average sales figures); JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc., 1998 U.S. Dist. LEXIS 5098, *20-21 (E.D. Pa. Apr. 15, 1998) (court precludes plaintiff's expert damages report and expert testimony where expert relied on sales projection but did no independent verification of plaintiff's sales).  See Target Market Publishing, Inc. v. Advo, Inc., 136 F.3d 1139, 1142 (7th Cir. 1998) (court affirms district court decision to preclude plaintiff's expert damages report where plaintiff's expert relied on "mere assumptions").

As for the "fit" requirement,

> Rule 702 requires that the expert testimony must fit the issues in the case.  In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.  The Supreme Court explained in Daubert that Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to marginal admissibility."

Schneider, 320 F.3d at 404 (*quoting* Daubert 509 U.S. at 590).

The burden of proving that proffered expert testimony satisfies the requirements of Federal Rule of Evidence 702 and <u>Daubert</u> lies with the party advancing the testimony. <u>See</u> <u>Oddi</u>, 234 F.3d at 144 (<u>citing</u> <u>Daubert</u>, 509 U.S. at 593); <u>In re: TMI Litig.</u>, 193 F.3d 613, 663 (3d Cir. 1999); <u>Paoli II</u>, 35 F.3d at 744; <u>Kerrigan v. Maxon Industries, Inc.</u>, 223 F. Supp. 2d 626, 630 (E.D. Pa. 2002).

**2.    <u>BASED UPON THE AFORESAID APPLICABLE LEGAL STANDARDS, THE ANGSTREICH REPORT MUST BE PRECLUDED</u>**

Applying these standards to the Angstreich Report requires the preclusion of the Angstreich Report and the expert testimony of Angstreich at trial.

**a.    <u>THE ANGSTREICH EXPERT REPORT WILL NOT ASSIST THE TRIER OF FACT – IT IS NOT REALLY AN EXPERT REPORT BUT INSTEAD GIVES CONCLUSIONS TO THE FACT QUESTIONS THAT THE JURY OR FACT-FINDER MUST DETERMINE</u>**

The Angstreich Report should be barred, and Angstreich should be precluded from testifying at the trial in this case, because his report is not really a legal "expert" opinion. Instead, the Angstreich Report renders an "expert opinion" concerning the ultimate factual questions to be determined by the jury or fact-finder in this case, and the "expert" opinions will not be helpful to the jury, especially inasmuch as this is not a complex or difficult case. The Angstreich Report will not assist the trier if fact – instead it will usurp the very province of the jury or fact finder and the fact question they must determine in this case. The factual question concern whether the Sternberg Defendants defrauded plaintiff TSH or engaged in a wrongful civil conspiracy, when they agreed to hold in escrow SAFETY HOUSE's $1,965,600.00 purchase price wired by TSH into the attorney trust account, and further agreed not to release said funds from their trust account until certain conditions precedent were met, is a fact question for the jury or fact-finder. In such a case,

the expert report should be excluded  *See* cases cited *supra*; <u>Greenwald Caterers Inc. v. Lancaster</u>

<u>Host, LLC</u>, 699 F. Supp. 3d 382, 2023 US Dist. LEXIS 191300, 122 Fed. R. Evid. Serv (Callaghan)

2317 (E.D. PA 2023) (expert liability report barred as unreliable).

### b. <u>THE ANGSTREICH EXPERT OPINION NOT ONLY IS IRRELEVANT, BUT ALSO IS WORNG, BASED UPON THE UNDISPUTED FACTS AND APPLICABLE LAW</u>

An expert report that goes to an irrelevant issue will be precluded from a case.  <u>Culley v.</u>

<u>Liberty Life Assur. Co.,</u> 2007 U.S. Dist. LEXIS 19495, 2007 WL 869516 (D. N.J. 2007) (irrelevant

expert report barred);    <u>Letter v. Unumprovident Corp.,</u> 2004 U.S. Dist. LEXIS 1741, 2004 WL

242360 (E.D. La. 2004) (expert report excluded as irrelevant).

In his "expert" report, Angstreich concludes that the Sternberg Defendants did not breach

any duty that they may have owed to plaintiff SAFETY HOUSE.  However, Angstreich's "expert"

report about breach of fiduciary duty is irrelevant, because this is a fraud case, and not a

malpractice or breach of duty case.  An expert opinion that is irrelevant to the issues should be

precluded.  *See* cases cited, *supra* in this section.

### c. <u>THE ANGSTREICH REPORT ALSO IS WRONG, BASED UPON THE UNDISPUTED FACTS AND APPLICABLE LAW, AND THUS IS NOT RELIABLE</u>

 In addition, Angstreich's "expert" legal opinion also is wrong.  Angstreich conveniently

ignores the clear and unambiguous provisions of the SPA that created an escrow relationship

between the parties, and both Texas law and Pennsylvania law governing such an escrow

relationship.  Even Angstreich himself admits that throughout his deposition, Daniel Scully, the

principal of plaintiff TSH, repeatedly referred to the Sternberg Defendants throughout his

deposition as the escrow agent.  *See generally*, 7/21/24 Scully Deposition; *see also*, Scully

Certification filed in support of Motion for Summary Judgment (incorporated herein by reference).

The SPA expressly states that Buyer agrees for Buyer's "wire be made to Seller through the Seller's Attorney *Escrow* Account." (SPA, at ¶ 4) (emphasis added).  The SPA repeats that the Buyer is to wire the purchase price "to the Seller's Attorney **Escrow** Account." (SPA, at ¶ 5) (emphasis added).  Exhibit B to the SPA refers to the Sternberg Defendants' "**ESCROW ACCOUNT**" (SPA, at Exhibit B) (emphasis added).

The law in both Pennsylvania and Texas is clear that a person who holds money in escrow owes duties to both parties subject to that escrow.  This appears to be the case whether or not the escrow agent is an attorney.  In the instant case, plaintiff TSH (as a Buyer) wired the $1,9065,600.00 purchase price to the Sternberg attorney trust account to be held in escrow pursuant to the provisions of the 1/21/22 Sale and Purchase Agreement (the "SPA") and not to be released to the other party, the Gross Defendants (as the Seller).  A copy of the SPA is marked as Exhibit P-3 accompanying the summary judgment motion,  In the instant case:

(1)     The SPA between plaintiff as Buyer and the Gross Defendants as Seller (*see* Exhibit P-3) requires the delivery of a Purchase Order from Buyer to Seller.  That was done.  (*see* Exhibit P-2)

(2)     The Sternberg Defendants were aware of the existence of the SPA as the SPA standard operating procedures show Sternberg is the person who drafted it.  *See* Exhibit P-3, the SPA, Exhibit "E" thereto, ¶ 2.

(3)     The Sternberg Defendants also are the parties to whom plaintiff's $1,965,600 funds are being wired, into escrow. *Id*., Exhibit "B."

(4)     Plaintiff's 1/21/22 Purchase Order specifically requires the delivery of the Test Kits to it on or before 1/25/22.  *See* Exhibit P-2.

(5)     The Sternberg Defendants also were  aware of plaintiff's Purchase Order and its terms since plaintiff TSH had provided Sternberg with a copy of its Purchase Order at the time it was issued.  *Id*.

(6)     Plaintiff SAFETY HOUSE wire transferred the $1,965,600 purchase funds to the attorney trust account of Sternberg Defendants in escrow on 1/21/22 (*see* Exhibit P-36, plaintiff's Amended Complaint [ECF 80], Exhibit 2; *see also* Scully MSJ  Certification, at ¶¶ 5-10.

(7)     The Sternberg Defendants received plaintiff TSH's wire transfer on 1/21/22 and that a series of wire transfers, the earliest starting on 2/1/22, were wired out by Sternberg, to the Weiss Defendants and the Zekaria Defendants.

(8)     As set forth in the SPA, plaintiff required the delivery of the COVID Test Kits, through delivery to TSH of a Bill of Sale (showing the goods were owned by TSH), and a Bill of Lading (showing the goods were with a recognized common carrier en route for delivery to TSH). as a condition precedent to the release by Sternberg of any pf plaintiff's funds from escrow.

Under Pennsylvania law the above facts show that an escrow agreement was created between plaintiff TSH (Buyer), the Gross Defendants (Seller) and the Sternberg Defendants (the holder in escrow of the $1,965,600 purchase price paid by Buyer), to be released by Sternberg to Seller under the terms of the SPA.  See Jansen v. Cozen O'Connor, 450 Pa. Super. 415, 423-425; 676 A.2d 242, 246; 1996 Pa. Super. LEXIS 1179, ***11(PA Super. 1996) (the depository of an escrow under an escrow agreement generally is considered to be an agent or trustee for both parties; an escrow holder cannot be the agent of only one of the parties), *citing* Kreuer v. Union National Bank of McKeesport, 276 Pa. 201, 205, 206, 119 A. 921; Kellogg v. Curry,1951, 101 Cal. App. 2d 856, 226 P.2d 381; People v. Hess, 1951, 104 Cal. App. 2d 642, 234 P.2d 65; 21 C.J., page 878, 30 C.J.S., Escrows, § 8; 11 Am. & English Encyclopedia Law, 2d Ed., p. 345; 19 Am. Jur., p. 430,

sec. 13; Paul v. Kennedy, 376 Pa. 312, 315, 102 A.2d 158, 159 (1954). See also Samango v. Pileggi, 363 Pa. Super. 423, 526 A.2d 417 (1987), allocatur denied, 517 Pa. 624, 538 A.2d 877 (1988)..   Unlike the Cozen & O'Connor situation, in the instant case the seller (the Gross Defendants ) could not unilaterally instruct the Sternberg Defendants to disburse the  plaintiff TSH's purchase price – the SPA required that "Title transfer shall happen contemporaneously with the release of the funds."  SPA, at  ¶ 6.

Accordingly, an escrow holder cannot be the agent of only one of the parties. Foreman v. Todd, 83 Idaho 482, 485, 364 P.2d 365, 366 (1961).  As such Sternberg is the agent of both parties.  The Sternberg Defendants therefore breached the escrow agreement when, being aware that Plaintiff's Purchase Order required the delivery of the Test Kits by 1/25/22, and being aware that the funds could not be released from his attorney trust account until plaintiff TSH received both a Bill of Sale and a Bill of Lading, the Sternberg Defendants nonetheless disbursed plaintiff TSH's delivered to third parties 10 days later, and before the conditions of the SPA were satisfied.

Texas law imposes even stronger duties on the Sternberg Defendants.  As in Pennsylvania, an agreement between plaintiff, the Sternberg Defendants and the Gross Defendants is required.  When (as in the instant case), such an agreement exists, the Sternberg Defendants owe fiduciary duties to both plaintiff TSH and the Gross Defendants.  Boozer v. Fischer, 674 SW 3d 314, 2023 Tex. LEXIS 628, 66 Tex. Sup. J. 1406 (Tx. Sup. Ct 2023) (fiduciary relationship created where both parties contemplated the attorney holding funds in escrow and only releasing them pursuant to the agreement of the parties)

In the instant case, TSH's Purchase Order, as part of the integrated SPA, provided that a condition of the delivery of plaintiff's funds to the Seller is that Plaintiff receives the Test Kits on or before 1/25/22.  This did not occur.  Accordingly, Sternberg breached the fiduciary duty he

owed to Plaintiff both under Texas law and Pennsylvania law (and committed fraud in the process), when Sternberg not only disbursed the plaintiff's funds from his escrow (his attorney trust account) to third parties (the Weiss Defendants and the Zekaria Defendants), after the January 25, 2022 deliver by date in the Purchase Order,  but before any defendants had title to the COVID Test Kits, i.e., after the Sternberg Defendants knew or should have known that the SPA conditions precedent to the release of TSH's funds had not been met.

Weiss claims he purchased the Test Kits on February 6, 2022, but that was after Sternberg disbursed $219,240.00 from his trust account to Weiss on February 1, 2022, and after Sternberg disbursed another $1,911,740.00 from his trust account to the Zekaria Defendants on February 4, 2022.  The Sternberg Defendants knew that their disbursements of plaintiff's funds from their attorney escrow account on February 1 and 4 were not supposed to happen, and that TSH was relying on them to act in accordance with the representations as to when and under what circumstances plaintiff's funds could be released from trust.  However, the Sternberg Defendants knowingly and willfully made the disbursement of plaintiff's funds out of trust, before any COVID Test Kits were purchased or owned by any of the defendants, and through such wrongful conduct they caused damages to TSH.  The Sternberg Defendants defrauded TSH by their wrongful conduct.

Angstreich's breach of fiduciary duty analysis in his expert report simply overlooks key provisions of the SPA, and ignores both Texas and Pennsylvania law, and is just plain wrong.  Rule 702 and Daubert requires that experts and their reports be reliable. *See* cases cited *supra*.  The Angstreich Report lack any factual foundation upon which Angstreich rests his opinion, and also is contrary to established case law imposing duties on a person (such as Sternberg) who agrees to hold money wired to him (by plaintiff) in escrow, and not to release that money from his trust

account to the other party to the escrow arrangement (the Seller), until the conditions in the SPA establishing that escrow agreement are satisfied.  Whether or not the Sternberg Defendants had and/or breached a fiduciary duty is beside the point – the Sternberg Defendants defrauded plaintiff TSH in either event.

Angstreich's conclusions have no factual foundation, let alone a "sufficient factual foundation" which ties his assumptions to the facts of record.  Elcock v. Kmart Corp., 233 F.3d 734, 755 (3d Cir. 2000).  See JMJ Enterprises, 1998 U.S. Dist. LEXIS 5098, at *6 ("expert testimony must have some connection to existing fact").  Therefore, the report, and its conclusions as to the SPA must be precluded.  Paoli II, 35 F.3d at 748 (if "underlying data are so lacking on probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded").  See Edison Wetlands Association, Inc. v. Akzo Nobel Chemicals, Inc., 2009 U.S. Dist. LEXIS 119281, (D. N.J. Dec. 22, 2009) (precluding expert report where expert ignored factual realities which formed basis of report).

The Sternberg Defendants cannot come anywhere near carrying their burden to show the Angstreich Report is reliable.  Therefore, the Court should grant plaintiff's Motion, and preclude the Angstreich Report.

### 3.   BASED UPON THE AFORESAID APPLICABLE LEGAL STANDARDS, THE LESOVICH REPORT ALSO MUST BE PRECLUDED

Applying these legal standards to the Lesovitz Report also requires the preclusion of his Report and the expert testimony of Lesovitz at trial.

The Lesovitz Expert Report and Lesovitz's testimony at trial also should be barred, because his report also is not really a legal "expert" opinion.  The Lesovitz report is not really a legal expert opinion, but instead Lesovitz renders an "expert opinion" that the plaintiff did not sustain damages.

But that is precisely the fact question that the jury or fact-finder must determine in the event that there is a finding of liability in favor of plaintiff against the Sternberg Defendants. The question of the quantum of damages sustained by plaintiff is not a complex issue, and not a question where a legal expert opinion is necessary. The jury or fact finder is fully capable of making that deamination without the "expert" opinion of Lesovitz. The Lesovitz Report will not assist the jury or fact finder , but instead will usurp province of the jury or fact finder to determine that fact question.

## CONCLUSION -  RELIEF SOUGHT

For all of the aforesaid reasons, plaintiff TSH respectfully requests that the Court grant the Motion and enter an Order which precludes the expert report of Steven Angstreich and the testimony of Steven Angstreich at trial, and which precludes the expert report of Joseph Lesovitz and the testimony of Joseph Lesovitz at trial, and grants plaintiff SAFETY HOUSE such other and further relief as this Court deems just and proper.

Respectfully submitted,

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
PA Identification Nos. 28529 & 64223
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date:  September 30, 2024          Attorneys for plaintiff TSH

<u>**CERTIFICATE OF SERVICE**</u>

     The undersigned hereby certifies that on the date shown below he caused to be served a true and correct copy of Plaintiff's Motion to Bar Expert Reports and Expert Testimony at Trial, and all supporting papers, upon all defendants, via ECF, and/or email, upon the following:

Seth Laver, Esquire
Joseph Ross, Esquire
Goldberg Segalla
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
slaver@goldbergsegalla.com
Jross@goldbergsegalla.com

Gary Weiss
ASOLARDIAMOND, LLC
437 1st Avenue
Elizabeth, NJ 07206
wgary4109@gmail.com
monipair@aol.com

Samuel Gross
a/k/a Shlomo Gross
78 Buckminster Road
Rockville Centre, NY 11570
charltonholdinggroupllc@aol.com
publicdiamonds@gmail.com
Scg1212@gmail.com
Samrosinc@icloud.com

Daphna Zekaria, Esquire
SOKOLSKI & ZEKARIA, PC
8 Westminster Road
Syosset, NY 11791
Dzandpeanut@aol.com

     LIGHTMAN & MANOCHI

     BY: /s/ Gary P. Lightman
     GARY P. LIGHTMAN, ESQUIRE

Date:  September 30, 2024     Attorneys for plaintiff TSH