# EXHIBIT "P-40"



1339 CHESTNUT STREET • SUITE 500

PHILADELPHIA, PA 19107

(215) 665-8181

(215) 665-8464 FAX

WGPLLP.com

Steven E. Angstreich  
Member of PA and NJ Bars

Direct Dial (215) 241-7741  
E-mail: sangstreich@wgpllp.com

August 16, 2024

Seth L. Laver, Esquire  
Goldberg Segalla  
1700 Market Street, Suite 1418  
Philadelphia, PA 19103

Re: American Environmental Enterprises, Inc. d/b/a The SafetyHouse.Com v. Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC et al

Dear Mr. Laver:

You have requested that I provide you with an opinion as to whether Manfred Sternberg, Esquire and his law firm Manfred Sternberg & Associates, P.C. owed any duty to American Environmental Enterprises, Inc. d/b/a The Safety House.Com ("Plaintiff" or "Purchaser"), and if so, whether they breached that duty. In order to resolve those questions, I reviewed the following documents:

- First Amended Complaint, dated July 31, 2023;
- Answer of Defendants Manfred Sternberg, Esq. and Manfred Sternberg & Associates, PC to Plaintiff's Amended Complaint and Crossclaims against all Co-Defendants, dated August 23, 2023;
- Plaintiff's Objections and Responses to Defendants Charleton Holdings Group and Sam Gross' First Set of Interrogatories;
- Plaintiff's Objections and Responses to Defendants' Manfred Sternberg, Esquire' and Manfred Sternberg & Associates, P.C.'s First Set of Interrogatories;
- Answers and Objections of Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, P.C. to Plaintiff's Interrogatories with Supplemental Response;
- Manfred Sternberg Deposition dated February 7, 2024, and exhibits Sternberg 1-Sternberg 39;

Seth L. Laver, Esquire
August 16, 2024
P a g e | **2**

- Gary Weiss Deposition dated February 16, 2024, and exhibits and dated July 16, 2024 and Exhibits referenced;
- Daniel Scully Deposition dated July 23, 2024 and exhibits;
- P0001-P0592 produced by Plaintiff in discovery;
- Engagement Letter dated April 5, 2021 between Mr. Sternberg and Charlton Holdings Group, LLC and Gross; and
- Sternberg: Phone Text Forensic Search spreadsheet.

## **INTRODUCTION**

From my review, Sternberg's client, Charlton Holdings Group, LLC ("Charlton") entered into a sale transaction with the Plaintiff in which Plaintiff agreed to purchase Covid test kits from Charlton and its principal Shlomo "Sam" Gross. Pursuant to the Sale and Purchase Agreement, the purchase funds were to be wired to the Seller's law firm's IOLTA account. Sternberg's IOLTA account received the funds and, at the direction of his client, Charlton, the funds were released to the supplier of the product to Plaintiff. You have asked me to determine whether Sternberg and the law firm owed any duty to Plaintiff and if so, whether they breached that duty by releasing the funds from the IOLTA account before the product was delivered to Plaintiff, the buyer.

Based upon that review, and in particular Sternberg's engagement letter, the Declaration of Mr. Gross (Exhibit F to Exhibit 6), the transactional documents relating to Plaintiff's purchase of product, deposition testimony and the absence of a written escrow agreement between Sternberg, his law firm and the Plaintiff, it is my opinion that (i) no duty arose as a result of the law firm's receipt in its IOLTA account of the purchase funds and (ii) neither Sternberg nor the law firm breached any duty owing to Plaintiff when the funds were released.

The opinions expressed herein are to a reasonable degree of legal certainty. My opinions are subject to change or modification should additional documents or facts become available for

review. The opinions are based upon my understanding of the facts as applied to the transaction at issue- the obligations of an attorney to follow his client's instructions to release funds held in his law firm's IOLTA account in the absence of any signed agreement imposing duties to act as an escrow agent. My opinions are further based upon the knowledge gained from my education, work experience and continued legal education. I was admitted to practice in the Commonwealth of Pennsylvania in 1970 and have been primarily engaged in the handling of complex commercial litigation for more than 53 years. For over 35 years, I have been handling legal malpractice actions, primarily for plaintiffs and have been retained as an expert for both plaintiffs and defendants during that time. I have lectured for the Philadelphia Bar Association, Pennsylvania Bar Institute, American Bar Association, National Institute Section on Tort and Insurance Practice and for NJICLE.

I am being compensated at my regular hourly rate of $625. I have no financial interest in the outcome of this litigation and payment for my time is not contingent. A current curriculum vitae is attached.

## BACKGROUND FACTS

On April 5, 2021, Sam Gross, on behalf of Charlton retained Sternberg and his law firm to provide legal representation on various PPE transactions, escrow services, strategic counsel and other matters as specifically directed by the client. (*See* Engagement Letter) Sternberg and his firm were to be compensated at their prevailing rates at the time(s) services were provided and to be reimbursed for all reasonable expenses incurred in such matters as retained. Monthly billings were to be submitted to the client.

Seth L. Laver, Esquire
August 16, 2024
P a g e | **4**

      One of the matters for which Sternberg was retained was the sale by Charlton to Plaintiff of 151,200 iHealth Covid Test Kits ("Test Kits") in January 2022. As part of his engagement, Sternberg drafted the Sale and Purchase Agreement ("SPA") for the Test Kits to be sold to Plaintiff. Pursuant to that SPA, Plaintiff, as purchaser, was to wire to Charlton's [Seller's] Attorney Trust Account the sum of $1,965,600.00 in payment for the product. Upon receipt of the funds, risk of loss transferred to the Plaintiff (Buyer) [and the title transfer shall happen contemporaneously with the funds being released to Seller]. According to the Gross Declaration, Gross had inspected the product that he was reselling to Plaintiff with his supplier, Gary Weiss, prior to instructing his attorney, Sternberg, to release the funds to Weiss. Following inspection and confirmation of the product, Gross directed Sternberg to release the funds.

      Specifically, after Plaintiff initiated the purchase of the Test Kits by issuing a purchase order to Charlton, Sternberg provided wire instructions to his IOLTA Trust Account. (*See* Exhibit "B" to Plaintiff's Complaint) Plaintiff thereafter wired the purchase funds to the IOLTA Trust Account as was required by the SPA. (*See* Exhibit "C" to Plaintiff's Complaint) Once Plaintiff wired the funds to the law firm's IOLTA Trust Account, Sternberg, at his client's instructions, released the funds to Charlton's supplier, Gary Weiss ("Weiss") so that the product could then be shipped by Weiss to Plaintiff. However, when the product was not received by Plaintiff, Plaintiff attempted to rescind the transaction, requesting a return of the funds. As the funds had already been released at the direction of Charlton and in accordance with Sternberg's understanding of the SPA, Sternberg was in no position to return Plaintiff's funds without input from Weiss and/or Gross. Further, Charlton attempted delivery of a portion of the Test Kits ordered but Plaintiff refused to accept delivery.

Seth L. Laver, Esquire
August 16, 2024
P a g e | **5**

Plaintiff seeks to hold Sternberg and his firm liable despite no attorney-client relationship and no contractual duty. Apparently, Plaintiff's claim is based upon Sternberg's release of the purchase funds deposited into his IOLTA Trust Account which Plaintiff contends is a breach of some duty or obligation that Sternberg owed to Plaintiff *vis-à-vis* the purchase monies. The SPA states that it is to be governed by the laws of the State of Texas (¶ 13). It also provides that venue is to be exclusively in the Texas State District Courts of Harris County, Texas or other Seller designated venue. The present action is pending in the United States District Court for the Eastern District of Pennsylvania. Since venue is not as provided in the SPA, I am not certain whether the law of Texas or the Commonwealth of Pennsylvania will be applied in this case. Consequently, I have reviewed the law of both jurisdictions in rendering my opinions.

## APPLICABLE LEGAL STANDARD

The question presented is whether Sternberg and his law firm breached any duty, contractual or otherwise owing to the Plaintiff for which they are liable.

### 1. Duty Arising Out of Attorney-Client Relationship

Plaintiff's principal, Daniel Scully was recently deposed. During his deposition, he acknowledged – as he must - that Sternberg was not engaged to represent Plaintiff as its legal counsel in connection with the SPA, that he never received a bill from Sternberg and never paid a fee to him. The fact that Sternberg was not acting as counsel for Plaintiff is further confirmed by Scully's statement to that effect he made to Gary Weiss. (Weiss Dep. at 92:9-18)

Thus, Sternberg's role in the transaction at issue was as attorney for the seller, Charlton. (*See* Engagement Letter and Gross Declaration.) While Scully admitted that he did not retain any

attorney to review the contract for the purchase of the Test Kits on Plaintiff's behalf, during his deposition he attempted to portray Sternberg as Plaintiff's counsel;

> Q: Was he [Sternberg] representing you?
> A: As escrow agent.
>       ****
> Q: Did any attorney on behalf of the Safety House House,…, review the sale and purchase agreement?
> A: No.
> Q: Why not?
> A: Because I had Manfred Sternberg. (Scully Dep. 57:3-12)

He conceded that there is no document that describes Sternberg or his law firm as having that role for anyone other than the seller. It is my opinion that, in the absence of an express attorney-client relationship, Sternberg owed no duty to Plaintiff.

Although no duty arose from an attorney-client relationship, both Pennsylvania and Texas case law recognizes that an attorney can be liable to a non-client where he makes an affirmative representation to the non-client that is untrue and the non-client relies on it to its detriment. Here again, Scully testified that Sternberg fraudulently induced him to enter into the SPA because he was "acting as this professional attorney with this agreement to sign." (Scully Dep. 57:14-17) However, for liability to exist under this theory, there must be an affirmative representation made by the attorney to the non-client. Here, Scully admits that he never spoke with Sternberg prior to executing the SPA and there was no writing provided to him by Sternberg other than the SPA. Scully acknowledges that the SPA was not sent to him by Sternberg but by the Seller's agent.

Even assuming the SPA were sent by Sternberg, a review of the SPA reveals that Sternberg is not a signatory or named party to the agreement, and that the only possible reference to him is found in Exhibit B to the SPA following "Buyer agrees to authorize a wire be made to Seller through Seller's Attorney Escrow Account identified in Exhibit B…." (SPA ¶ 4). Neither in

Seth L. Laver, Esquire
August 16, 2024
P a g e | 7

paragraph 4 nor in Exhibit B is there any affirmative representation made by Sternberg upon which Plaintiff could rely and which was false at the time made.

It is well-settled that an attorney's duty is to his or her own client, so an attorney owes no fiduciary duty to parties with whom he does not have any attorney-client relationship.[1] *Burns v. Stratos*, 581 F. Supp. 3d 687 (E.D. Pa. 2022), *aff'd*, No. 22-1319, 2023 WL 4014474 (3d Cir. June 15, 2023); *Smith v. Griffiths*, 327 Pa. Super. 418, 426 476 A.2d 22 (1984) ("the law is clear that the attorney owes no duty of care to the adverse party but only to his own client.") Further,

> To impose upon an attorney a duty of care to the adverse party would place the attorney in a position where his own interest would conflict with the interests of his client and prevent him from exerting a maximum effort on behalf of the client. It would place an undue burden on the profession and would diminish the quality of the legal services rendered to and received by the client.

*Smith* at 426-27.

However, Restatement of the Law Third Governing Lawyers provides in Section 51 that a lawyer owes a duty of due care to a non-client when and to the extent that: (a) the lawyer or the lawyer's client invites the non-client to rely on the lawyer's opinion or the provision of other legal services and the non-client relies thereon or if the lawyer knows that his client intends that the lawyer's services is also for the benefit of the non-client. That principle has been upheld in *Motorup Corp. v. Galland, Kharasch & Garfinkle*, P.C. 2001 WL 34368760 (E.D.Pa.) citing *Harad v. The Aetna Casualty and Surety Co.*, 839 F.2d 979, 983 n.5 (3d Cir. 1988).

In Texas, the courts have developed a comprehensive affirmative defense protecting attorneys from liability to non-clients. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex.

---

[1] With the exception of duties to a third party beneficiary as in *Guy v. Liederbach* which are not applicable here.

7

Seth L. Laver, Esquire
August 16, 2024
P a g e | **8**

2015). "[A]n attorney is immune from liability to nonclients for conduct within the scope of his representation of his clients." *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (citing *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015)). "Put differently, an attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer." *Id.* (citing *Cantey* at 481)

Further, an attorney can be liable to a non-party for misrepresentations, despite an absence of privity, but only in limited circumstances. First, the attorney must have made a knowing false representation. The mere drafting and transmission of the SPA did not constitute a representation by Sternberg. *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571 (Tex.App. 2007) Further, the attorney must be aware of the non-client's reliance on the misrepresentation and the attorney's intention that the non-client so rely. There is no testimony from Scully to support such a conclusion. *Id.*

Second, the non-client must have relied upon the false representation. To determine whether a non-client justifiably relied on a material fact, one must consider the nature of the relationship between the attorney, client, and non-client. Reliance is generally not justified when the representation takes place in an adversarial context. Thus, an attorney's conduct is not independently actionable by an opposing party to the suit if the conduct is part of the discharge of the lawyer's duties in representing his or her client. An attorney is not, however, shielded from liability when his actions constitute a fraudulent act outside the scope of his client's legal representation.

Any fraud claim must be based on a knowing falsity or recklessness as to whether it is true or false. Generally, an attorney may rely upon facts as provided by his client rather than conducting

8

Seth L. Laver, Esquire
August 16, 2024
P a g e | **9**

an independent investigation of those facts. A reasonably prudent counsel is entitled to rely on the representations of his client. *See, e.g., Reis v. Barley, Snyder, Senft & Cohen LLC*, 667 F.Supp.2d 471, 489 (E.D. Pa. 2009) ("An attorney is entitled to rely in good faith upon the statement of facts made to him by his client, and is not under a duty to institute an inquiry for the purpose of verifying his statement before giving advice thereon.")

The law is well established that "an attorney is entitled to rely in good faith upon the statement of facts made to him by his client, and is not under a duty to institute an inquiry for the purpose of verifying his statement before giving advice thereon." 52 Am.Jur.2d Malicious Prosecution § 64 (1970). If the client falsifies the facts, there may be a liability which attaches to the client, but the lawyer is not liable if, without more, he acts in good faith upon the facts stated by the client. *Meiksin v. Howard Hanna Co.*, 404 Pa. Super. 417, 424, 590 A.2d 1303, 1306 (1991)

Here, Plaintiff cannot point to any representation made by Sternberg directly to Plaintiff. The SPA, although drafted by Sternberg, contains only the express representations of the Seller. Plaintiff, therefore, could not have relied on any representation made by Sternberg and under either state's law, it is my opinion that there was no duty owing to Plaintiff that arose out of Sternberg and his firm's representation of Charlton or from any "misrepresentation" that he allegedly made to Plaintiff. Thus, the release by Sternberg of the funds from the law firm's IOLTA account at the direction his client did not constitute a breach of duty or impose liability on Sternberg or his firm.

        2.      **Duty Arising from Acting as "Escrow Agent"**

Turning from liability predicated upon an attorney-client relationship express or implied, a duty to Plaintiff *could* arise from the receipt of the purchase funds in Sternberg's law firm's

9

Seth L. Laver, Esquire
August 16, 2024
P a g e | **10**

IOLTA account *if* at the time the deposit was made, Sternberg (and/or the law firm) was acting as an escrow agent.

Throughout Scully's deposition, he repeatedly testified that Sternberg was acting as an escrow agent and that as such, he owed a duty to both Charlton *and* Plaintiff. Although there is no formal escrow agreement, Plaintiff claims that the SPA was the escrow agreement. (Scully Dep. at 60:23-24) Further, he claims that Sternberg as escrow agent was holding the funds for both Plaintiff and Charlton. (*Id*. 76:17-77:6) He testified that Sternberg's role was to hold the money until the product was received. (*Id*. 125:20-24). I disagree.

While that is Scully's testimony, it is not supported by any provision of the SPA. Rather, the SPA has no provision identifying an escrow agent or stating what duty, if any, is owed by that agent to the buyer or seller. The SPA is not signed by Sternberg in any capacity. And, of significance is ¶ 9 of the SPA which provides that the risk of loss transferred to the buyer when the product was paid for and, at which time, the seller was released from all loss guarantees. Despite those facts, Scully insists that Sternberg was the escrow agent.

Although Scully had the agreement at least a week before he wired the funds and read ¶ 9, he testified he was baffled by the provisions and the term "risk of loss" but did not seek clarification or consult with an attorney of his choosing. This was Plaintiff's largest transaction to date, and was in the midst of his admittedly desperate attempt to locate test kits, yet he executed the transaction without independent evaluation or expected due diligence. His alleged lack of understanding of the express language of ¶ 9 at the time he wired the funds does not offer Plaintiff relief from the legal import of that language.

Seth L. Laver, Esquire
August 16, 2024
P a g e | **11**

Pennsylvania law makes clear that an escrow agent "is generally considered to be an agent (or trustee) for both parties—a special agency whose authority must be strictly construed, and who is bound by the terms of the escrow agreement." *McCloskey v. Talarico,* 276 A.3d 247, *3 (Pa. Super. Ct.), *appeal denied sub nom. William C. McCloskey, Fam. Ltd. P'ship v. Talarico,* 285 A.3d 597 (Pa. 2022) (citing *Janson v. Cozen & O'Connor*, 450, Pa. Super. 415, 424, 676 A.2d 242, 247 (Pa. Super. 1996) (citations omitted)).

An escrow agent's fiduciary duties arise pursuant to an escrow agreement, and courts do not find a breach of fiduciary duty where **no** valid escrow agreement exists. *Symphony FS Ltd. v. Thompson*, 2018 WL 6715894, *13 (E.D. Pa. Dec. 20, 2018); *Struck v. Binns*, 1995 WL 5748, *3 (E.D. Pa. Feb. 10, 1995) (an escrow agent's powers "are strictly limited to those stipulated in the escrow agreement"). It is impossible to determine the scope of the [fiduciary] duty [owed by an escrow agent] without some indication of the terms of the escrow agreement. *McCloskey* at 3. To establish the existence of an escrow relationship, a plaintiff must establish that an agreement existed between the parties, i.e., the buyer and seller, the conditions of which were communicated to the depositary (escrow agent), who accepted its terms and agreed to be bound by them. *Struck* at *3 (citing Pennsylvania state law). A depositary without knowledge of an escrow agreement has no duty to conform to its terms. *Struck* at *4.

Under some limited circumstances, however, an agent or attorney of one of the parties may act as the escrow holder. *Janson,* at 424. An attorney of the grantor may act as escrow agent as long as the attorney's duties as escrow holder do not conflict with their duties to their client and so long as the condition of the escrow is not made dependent upon the client's volition. *Id.* at 426. However, "as a general rule, an instrument or funds cannot be deposited as an escrow with an

agent or attorney of the grantor or obligor, because the possession of the instrument by such agent or attorney is equivalent to possession of it by the grantor or obligor and is revocable by him." *Id.* at 425. Therefore, under Pennsylvania law, in the absence of a written escrow agreement, no duty arose.

Texas law is consistent with the above. An attorney for one party to a transaction may be appointed as the escrow agent for the transaction. *See Jones v. Blume*, 196 S.W.3d 440, 448 (Tex. App. 2006); *see also Chapman Children's Tr. v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 438 (Tex. App. 2000). "In Texas, an escrow agent is appointed through a specific written instrument which imparts a legal obligation." *Chapman Children's Tr.* at 438. Absent such a written agreement specifying the appointment of a particular party as an escrow agent, courts will find no duty to act as an escrow agent. *Id.*; *Jones* at 448 ("An escrow agent must be appointed through a specific legal document that imparts a specific legal obligation.").

Despite Scully's tortuous construction of the SPA in his effort to make Sternberg the parties' escrow agent, the SPA does not name Sternberg as escrow agent, it is silent as to any duties or obligations placed upon Sternberg, and Sternberg never signed the SPA or voluntarily agreed to act in the capacity of an escrow agent. Consistent with the above referenced law, in the absence of a written and signed escrow agreement imposing duties upon the agent, Sternberg owed no duty to Plaintiff. Thus, when he followed his client's direction and wired the funds from his attorney IOLTA Trust Account to the supplier of the goods that were to be shipped to Plaintiff, Sternberg owed no duty to Plaintiff, only to his client.

The facts in *Janson v. Cozen & O'Connor, supra* are analogous to the facts here. Defendant's attorney was holding in his attorney trust account proceeds from the sale of the

Seth L. Laver, Esquire
August 16, 2024
P a g e | **13**

plaintiff's stock which, according to the attorney was to be turned over to plaintiff at the conclusion of the litigation. Although acknowledging the purpose of the funds and his holding in his attorney trust account, there was no signed agreement between the attorney, his client and plaintiff imposing any specific duty on him. When the attorney, at the direction of his client, turned the funds over to his client (and not plaintiff), the court held that, in the absence of a written agreement, the attorney owed no duty to plaintiff and was not liable to her for releasing the funds contrary to her expectations. Similarly, it is my opinion that Sternberg owed no duty to Plaintiff arising out of the SPA or any other document.

## CONCLUSION

Based upon the foregoing, it is my opinion to a reasonable degree of legal certainty that neither Mr. Sternberg nor the law firm breached any duty to Plaintiff, and neither is liable to Plaintiff for the loss of the funds.

Very truly yours,

Steven E. Angstreich

SEA/ey

## CURRICULUM VITAE

**NAME**:                STEVEN E. ANGSTREICH, ESQUIRE

**ADDRESS:**             1212 Heron Road
                         Cherry Hill, New Jersey 08002
                         (609) 429-5121

**BIRTH:**               August 29, 1945
                         Bronx, New York

**MARITAL STATUS**:      Married, 3 children, six grandchildren

**EDUCATION:**           **UNIVERSITY OF PENNSYLVANIA**
                         Wharton School    1967
                         B.S. Economics

                         **TEMPLE UNIVERSITY**
                         School of Law     1970
                         Juris Doctor

**PROFESSIONAL EXPERIENCE:**

                         **WEIR GREENBLATT PIERCE LLP**
                         Philadelphia, Pennsylvania, January, 2022
                         Partner

                         **WEIR & PARTNERS LLP**
                         Philadelphia, Pennsylvania, January, 2009
                         Partner

                         **LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN, P.C.**
                         Philadelphia, Pennsylvania, 1974-2008
                         Shareholder

                         **MANN & UNGAR**
                         Philadelphia, Pennsylvania, 1971-1974
                         Associate

                         **GOODIS, GREENFIELD, NARIN & MANN**
                         Philadelphia, Pennsylvania, 1970-1971

**MEMBER:**              Admitted to practice in Pennsylvania in 1970 and in New Jersey in 1979

                         American Bar Association, Pennsylvania Bar Association, Philadelphia Bar Association, Camden County Bar Association, New Jersey State Bar Association, Philadelphia Trial Lawyers

                         Drafted Civil Litigation Manual - Philadelphia Bar Young Lawyers

325639-1

Section and lectured from 1971 through 1974.  Lectured on Civil Practice and Procedure.

Faculty Member and author of "The Liability of Predecessor or Successor Counsel", "Limitations of Actions and The Prematurity Defense" and "Screening A Case for Plaintiff" for the Philadelphia Bar Institute Continuing Legal Education: "Litigating the Legal Malpractice Case" (1986); 1997 Pennsylvania Bar Institute, course planner and faculty member for the "Litigating the Legal Malpractice Case"; Faculty Member and author of "Anatomy of A Legal Malpractice Case" for the Pennsylvania Bar Institute Continuing Legal Education "Anatomy of The Legal Malpractice Case" (2001) and Litigating the Legal Malpractice Case 2017; 2020 Legal Malpractice Update3-28-2020 (Statute of Limitations and Duties to Non-clients) NJICLE; Lecturer at Family Law Section, Baltimore, Maryland on legal malpractice in matrimonial matters; and American Bar Association, National Institute Section on Tort and Insurance Practice:  "Legal Malpractice Litigation: Trial and Avoidance of Claims"

**ADMISSIONS:**   Admitted to practice before the United States Supreme Court, Second, Third, Fourth, Seventh, Eighth, Ninth Circuit Court of Appeals and the United States Court of Appeals for the Federal Circuit , Federal and State Courts in the Commonwealth of Pennsylvania and the State of New Jersey.

**EXPERT TESTIMONY:**   Has handled and tried numerous malpractice actions on behalf of plaintiffs and defendants.  I have been retained as an expert witness in: legal malpractice cases in Pennsylvania and New Jersey: *Gorski v. Jenkins, et al.,* Court of Common Pleas, Montgomery County, No. 94-04001; *Belmont Industries, Inc., et al v. Bituminous Casualty Corp., et al*; *Jean F. Frottier v. Edward Aruda, et al*; *National Penn Bank v. Jestyn Payne, et al*. Court of Common Pleas, Berks County, Docket No. 4401-92; *Chemical Bank New Jersey National Association v. Ocean City Yacht Sales, Inc., et al* Superior Court of New Jersey, Cape May County, Docket No. 11685-90; *Klauder & Nunno Enterprises v. Stagliano & Deweese, P.A., et al*, United States District Court, District of New Jersey Docket No. 93cv4167; *Caplan & Luber v. Frances Sessa*, Superior Court of Connecticut (legal malpractice matter involving Pennsylvania law); *Murray Bilker, et al v. Aaron Friedmann, et al*,  Court of Common Pleas, Philadelphia County, December Term 1996, No. 0072*; Paul A. Dengler, et al vs. Byron R. LaVan, P.C., a Pennsylvania Professional Corporation, and Byron R. LaVan, Esquire,* Court of Common Pleas, Montgomery County, Civil Action No. 94-19480; *Ella Riley-Turley v. Michael A. Paul, Esquire*, et al., Superior Court of New Jersey, Burlington County, Docket No. BUR-L-531-01; *Marshall v. Fenstermacher*, U.S.D.C (E.D. Pa.), Docket No. 2:04-cv-03477-GP.  *Leff v. Morgan Lewis*, tried before the Honorable Diane M. Welsh (Ret.).  In 2017, I testified as an expert in Northern International Remail & Express, Co. v. Coffey & Associates, et. al. Superior Court of New Jersey, Morris County MRS-1187-14 and was deposed.

325639-1

I have been retained as an expert in Dragonetti actions: *Keystone Freight Corp. v. Gamburg*, Court of Common Pleas of Philadelphia County November Term 2011and Dollar Tree Stores, Inc. v. Houston Harbaugh, P.C.et al, Court of Common Pleas of Allegheny County No. GD-08-3576 In both cases, I prepared an expert report and testified as an expert witness. *Chasan v. Corcoran*, Court of Common Pleas of Philadelphia County, August Term 2022, No. 220802425; *Carmen Enterprises, Inc. v. Fox Rothschild, LLP*, February Term 2021, No. 01913

**CUSTOMARY HOURLY RATE:**   My customary hourly rate as of January 1, 2023 is $595 and $6,000 per day for deposition or trial testimony based upon a seven (7) hour day, or *pro rata* per hour.

325639-1