## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **American Environmental** | : | |
| **Enterprises, Inc. d/b/a** | : | |
| **THESAFETYHOUSE.COM** | : | CIVIL ACTION |
| *Plaintiff,* | : | No. 2022-CV-00688 |
| v. | : | (JMY) |
| **Manfred Sternberg, Esquire;** | : | |
| **Manfred Sternberg & Associates,** | : | |
| **PC; Charlton Holdings Group,** | : | |
| **LLC; Samuel Gross; Gary Weiss;** | : | |
| **A. Solar, LLC; Daphna Zekaria,** | : | |
| **Esq.; and Sokolski & Zekaria, PC,** | : | |
| | : | |
| *Defendants* | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2024,

upon consideration of the Motion for Summary Judgment of Defendants Manfred

Sternberg, Esquire and Manfred Sternberg & Associates, PC, and any response thereto,

and for good cause shown, it is hereby **ORDERED** and **DECREED** that the Motion

for Summary Judgment is **GRANTED** and that all of the plaintiff's claims as to Moving

Defendants are hereby dismissed, in their entirety, **WITH PREJUDICE.**

### BY THE COURT

_____

, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM** | : : : : : | CIVIL ACTION No. 2022-CV-00688 |
| *Plaintiff,* | : : | (JMY) |
| v. | : : | |
| **Manfred Sternberg, Esquire; Manfred Sternberg & Associates, PC; Charlton Holdings Group, LLC; Samuel Gross; Gary Weiss; A. Solar, LLC; Daphna Zekaria, Esq.; and Sokolski & Zekaria, PC,** | : : : : : : : | |
| *Defendants* | : : | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS MANFRED STERNBERG, ESQUIRE AND <u>MANFRED STERNBERG & ASSOCIATES, PC</u>

Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC (collectively the "Sternberg Defendants"), move pursuant to Federal Rule of Civil Procedure 56 to dismiss all claims asserted against them by Plaintiff American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM ("Plaintiff"). As set forth more fully in their accompanying memorandum of law, it is respectfully submitted that the Court must dismiss the First Amended Complaint as to the Sternberg Defendants because Plaintiff has not proven any viable cause of action.

The evidence is clear that the Sternberg Defendants complied with the terms of the governing contracts and effectively advocated on behalf of their clients. Plaintiff could not, and did not, reasonably rely upon the Sternberg Defendants for any purpose.

**WHEREFORE**, for all the reasons set forth in the accompanying memorandum of law in support of this Motion, the Sternberg Defendants respectfully request that the Court grant their Motion for Summary Judgment and issue an Order dismissing all claims against them, with prejudice.

Dated:       September 30, 2024          Respectfully submitted,
**GOLDBERG SEGALLA LLP**

By:     */s/ Seth L. Laver*
Seth L. Laver, Esq. (PA ID #094518)
Joseph Ross, Esq. (PA ID #318039)
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
Telephone: 267-519-6800
slaver@goldbergsegalla.com
jross@goldbergsegalla.com
*Attorneys for Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM** | : | CIVIL ACTION |
| *Plaintiff*, | : | No. 2022-CV-00688 |
| v. | : | (JMY) |
| **Manfred Sternberg, Esquire; Manfred Sternberg & Associates, PC; Charlton Holdings Group, LLC; Samuel Gross; Gary Weiss; A. Solar, LLC; Daphna Zekaria, Esq.; and Sokolski & Zekaria, PC,** | : | |
| *Defendants* | : | |

---

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS MANFRED STERNBERG, ESQUIRE AND MANFRED STERNBERG & ASSOCIATES, PC

Dated:        September 30, 2024        **GOLDBERG SEGALLA LLP**

By:    */s/ Seth L. Laver*

Seth L. Laver, Esq. (PA ID #094518)
Joseph Ross, Esq. (PA ID #318039)
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
Telephone: 267-519-6800
slaver@goldbergsegalla.com
jross@goldbergsegalla.com
*Attorneys for Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC*

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................................1

II.    PRELIMINARY STATEMENT ............................................................................................1

III.   SUMMARY OF UNDISPUTED FACTS ...............................................................................4

      a.   The Parties ...........................................................................................................4

      b.   The Contract .........................................................................................................6

      C.   The Sternberg Defendants' Limited Responsibilities ....................................8

      d.   The Failure to Deliver ........................................................................................9

      e.   The Unrefuted Expert Submissions ................................................................10

IV.    LEGAL ARGUMENT ......................................................................................................11

      a.   Summary Judgment Governing Standard .....................................................11

      b.   Summary Judgment is Required as to Counts I and II Because the Sternberg
Defendants did not Intentionally Misrepresent Any Material Fact ...............................12

      c.   Summary Judgment is Required as to Count IV Because Plaintiff Cannot Prove
Civil Conspiracy ....................................................................................................................23

      d.   Summary Judgment is Required as to Count VII Because There is No Evidence to
Support a Claim for Participation Theory ..........................................................................24

      e.   Summary Judgment is Required as to Count VIII Because the Sternberg Defendants
Have Not Been Unjustly Enriched and Plaintiff May Not Recover Under Quantum Meruit ....26

      f.   Summary Judgment is Required as to Counts IX and X ...........................................28

g.   Dismissal is Required Under the Economic Loss Doctrine.....................................30

h.   The Sternberg Defendants are Immune Under Texas Law.....................................31

V.   CONCLUSION ................................................................................................................32

## I.   INTRODUCTION

Moving Defendants Manfred Sternberg, Esq. and Manfred Sternberg & Associates, PC (collectively, the "Sternberg Defendants"), by and through their attorneys, Goldberg Segalla LLP, respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. By way of their motion, the Sternberg Defendants seek to dismiss the July 31, 2023 First Amended Complaint (ECF No. 80) of Plaintiff American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM ("Plaintiff"). Since Plaintiff cannot prove any viable claims against them, dismissal as to the Sternberg Defendants is required at this time for the reasons that follow.

## II.   PRELIMINARY STATEMENT

This matter arises from a failed commercial transaction. In the midst of the pandemic, Plaintiff – a sophisticated wholesaler of personal protective equipment (PPE) - made the opportunistic decision to pivot an aspect of its business to begin supplying COVID-19 test kits. In an apparent rush to obtain the relatively inaccessible test kits, Plaintiff executed a contract entitled *Sale and Purchase Agreement* ("SPA") to purchase the kits from a complete stranger, Defendant Charlton Holdings Group, LLC ("CHG") and its managing partner, Defendant Samuel Gross ("Gross"). Before wiring the agreed upon purchase price of nearly $2 million, Plaintiff did *not* retain nor consult with its attorneys, did *not* independently evaluate CHG or its alleged ability to supply the kits, nor did Plaintiff otherwise engage in any due diligence expected of a transaction

of this scale. It was a very expensive gamble that cost Plaintiff when CHG proved unable to supply the test kits. Plaintiff initiated this action to seek recourse.

In its First Amended Complaint, Plaintiff has cast a wide net: (i) the CHG Defendants, (ii) their purported supplier, Defendant Gary Weiss ("Weiss"), (iii) Weiss' counsel in the transaction, Defendant Daphna Zekaria, Esq., and finally, (iv) the Sternberg Defendants. This cast of characters includes two defaulted sets of defendants (CHG and Zekaria) as well as Weiss who long ago terminated his attorney and is proceeding *pro se*. Accordingly, it is primarily the Sternberg Defendants left to answer for the wrongs of others; the Stenberg Defendants who had no attorney-client relationship with Plaintiff, owed it no duty, did not execute the SPA, had no communication with Plaintiff before the transfer of funds, met the standard of care due to their client – CHG - fully performed their limited role as escrow counsel as made clear through the evidence including *unrefuted* expert testimony, and did not financially benefit from the transaction as again supported through *unrefuted* expert testimony.

As is the case in most litigation, we now know how the story ends, and it clearly did not go as planned. That is unfortunate. Yet, as set forth herein, the fact that a hastily negotiated transaction was not successful does not in and of itself prove anyone is liable to Plaintiff, let alone an attorney who owed Plaintiff no professional duty. Plaintiff has attempted to bolster its claim against the Sternberg Defendants through revisionist history that conflicts with the facts. In reality, Plaintiff entered into a risky transaction with CHG to chase the possibility of a big upside. That gamble is no sin, of course. But

concocting a theory that the Sternberg Defendants were somehow the masterminds of a fraudulent enterprise, and that Plaintiff somehow relied upon them to its detriment, is entirely unsubstantiated.

Had Plaintiff – the only unrepresented party to the transaction - engaged its *own* counsel before wiring $1,965,600 to CHG, we could have expected one of three outcomes: (i) that non-existent counsel would have advised Plaintiff that the potential financial gain was not worth the risk of engaging in a transaction during an unprecedented global pandemic; (ii) that non-existent counsel would have effectively negotiated safeguards necessary to protect Plaintiff in the event of a default or (iii) that non-existent counsel would be sitting in the defense chair instead of the Sternberg Defendants.

With an excruciating discovery phase behind us, which included Plaintiff's pattern of filing wildly accusatory, frivolous motions, this truth is readily apparent: Plaintiff cannot establish *any* of the elements of *any* cause of action as to the Sternberg Defendants. It is no secret that the Sternberg Defendants are the only represented defendants who have meaningfully engaged in the litigation process, but that does not somehow excuse Plaintiff's inability to carry its burden at trial against the Sternberg Defendants. Stated differently, there is no substitute for the evidentiary record necessary to prove its claims against the Sternberg Defendants, and that evidentiary record simply *does not exist.*

Plaintiff purports to plead ten causes of action, the following seven of which target the Sternberg Defendants, at least in part: Count I (Fraud in the Inducement); Count II (Fraud); Count IV (Civil Conspiracy); Count VII (Participation Theory); Count VIII (Unjust Enrichment/Quantum Meruit); Count IX (Intentional Interference with Existing Contractual Relations); and Count X (Intentional Interference with Perspective Economic Advantage). Summary judgment is required as to each cause of action.

### III.   SUMMARY OF UNDISPUTED FACTS

The Sternberg Defendants incorporate the separate Statement of Undisputed Material Facts ("Statement of Facts") filed contemporaneously with the instant Motion for Summary Judgment pursuant to § D of the Court's Policies and Procedures. The following summary is intended only to provide context and to highlight some of the more glaring flaws within Plaintiff's case. All citations to the record refer to the exhibits as marked in the Statement of Facts.

### a.   The Parties

#### 1.   Plaintiff (*the Buyer*)

Plaintiff is in the business of supplying personal protection and abatement equipment (PPE). *See, Ex. A, First Amended Complaint* ("Complaint") *and Ex. L, 07/23/24, Deposition of Daniel J. Scully ("Scully Dep.")* at 36:12-22. Plaintiff's president has independently and exclusively operated Plaintiff since opening the business in approximately 1993. *Id.* at 40:12-15. Per its website, Plaintiff boasts that it can ship PPE

equipment "anywhere in the United States and surrounding countries." In January 2022, Plaintiff executed a contract with CHG to purchase 151,200 iHealth COVID-19 test kits for an agreed upon purchase price of $1,965,600. *See Ex. A, Compl.*, at ¶ 1.

### 2.    CHG (*the Seller*) and Weiss (*the Supplier*)

CHG is owned and operated by Gross. Id. at ¶¶12-14. As alleged, Gross enlisted his longtime ally, Weiss, to procure the test kits necessary to fulfill Gross' contract with Plaintiff. *See Ex. J, 02/16/24 Deposition of Gary Weiss ("Weiss Dep. 1") at 46:12-21 and 49:13-23*. Weiss and Gross enjoyed a professional and personal relationship spanning over 20 years since the early 2000s. *See Ex. J, Weiss Dep. 1*, at 20:3-9. In early 2022, knowing of Gross' previous interest in PPE sales, Weiss solicited Gross to determine whether he remained in the market for COVID-19 products. *Id.* at 45:1-11.

### 3.    Zekaria (*Weiss' Counsel*)

Zekaria was licensed to practice law in New York until her recent suspension (which is unrelated to the allegations in this proceeding). *See Ex. H, 06/16/24 Grievance Decision*. Weiss engaged Zekaria to represent him in connection with the contemplated transaction between Plaintiff and CHG. *See Ex. J, Weiss Dep. 1* at 117:4-10. Zekaria provided legal counsel to Weiss and utilized her attorney IOLTA account to collect CHG's funds earmarked for Plaintiff's product. *See Ex. J, Weiss Dep. 1, at 116:23-117:5.*

### 4.    The Sternberg Defendants (*CHG's Counsel*)

CHG engaged the Sternberg Defendants to provide CHG with "legal counsel on various PPE transactions, escrow services, strategic counsel and other matters as

specifically assigned by Client." *See Ex. Q, CHG-Sternberg Fee Agreement*. Sternberg is a member in good standing of the Texas bar and is "board certified… in consumer and commercial law." *See,* https://www.manfredlaw.com-/manfred-sternberg. He has nearly 40 years of experience practicing law and representing businesses. *Id.*

> **b.    The Contract**

On January 21, 2022, Plaintiff and CHG memorialized the terms of their agreement in a contract entitled the "Sale and Purchase Agreement" ("SPA"). *See Ex. A, Compl. at ¶¶ 23. 25* and *Ex. B, SPA,* generally. The SPA explicitly incorporated CHG's Standard Operating Procedure ("SOP"). *See Ex. B, SPA*, at ¶ 6 and p. 8. The SOP provides a systematic list of "how Seller engages with Buyers," that memorialized the expectations, timing and sequence of the contemplated transaction. *See Ex. B*, SPA, at p. 8. Notably, Plaintiff agreed to be bound by these all-important terms in the following order: (i) the Sternberg Defendants, as counsel for CHG, would provide Plaintiff with the SPA; (ii) upon execution of the SPA, Plaintiff would wire the purchase price to the Sternberg Defendants; (iii) the Sternberg Defendants would release those funds to CHG; (iv) and then title for the test kits would transfer from CHG to Plaintiff. *Id.*

Although this was the largest agreed upon purchase price of any transaction in Plaintiff's history, and it had previously relied upon attorneys for assistance in other matters, Plaintiff negotiated this transaction without independent counsel. *See, Ex. L, Scully Dep.* at 77:7-14, 56:14-20, and 82:20-23. During its evaluation process, Plaintiff

did not request, propose or suggest any revisions to the SPA. *Id.*, at 97:22-98:2 and 177:10-20.

On January 21, 2022, Plaintiff delivered a purchase order and effectuated a wire transfer of $1,965,500 to "Seller's Attorney" into the Sternberg Defendants' IOLTA account, as set forth in the SPA. *See Ex. A, Compl. at ¶ 140*; Ex. B, SPA, at ¶ 4; and *Ex. L, Scully Dep.*, at 65:15-19. Thus, per the SPA, title transfer and the risk of loss associated with the test kits transferred to Plaintiff on January 21, 2022. *See Ex. B, SPA,* at ¶ 9. On February 1, 2022, at CHG's direction, the Sternberg Defendants transferred an initial installment of $219,240 to Weiss. *See Ex. I, Sternberg Dep.* at 176:18-23, 178:8-12 and 184:1-12. *See also Ex. P, Lesovitz Report, at p. 10.* Subsequently, at CHG's direction, the Sternberg Defendants transferred the balance of the purchase price from CHG to Zekaria, for Weiss' benefit, on February 4, 2022. *Id.* Thus, as of February 4, 2022, it was incumbent upon CHG to deliver the test kits to a common carrier with instructions to execute deliveries as directed by the Plaintiff since the funds had now cleared CHG's account as contemplated in the SPA. *See Ex. B, SPA,* at ¶ 6.

As expected, given their role as counsel only to CHG, the Sternberg Defendants had *no* dialog or other exchange of any kind with Plaintiff prior to the parties' execution of the SPA, Plaintiff's January 21, 2022 wire transfer, or the disbursements of Plaintiff's funds to Weiss made at CHG's instruction. *See, Ex. L, Scully Dep.,* at 20:16-22 and 85:1-6. It was not until February 16, 2022 when Plaintiff first communicated with the Sternberg Defendants by way of a demand for a refund. *See Ex. F, 02/16/22 Email re*

*Refund*. A refund was impossible given that the Sternberg Defendants had complied with the SPA and with their client's requests by distributing Plaintiff's funds nearly two weeks earlier. *Id*. Plaintiff filed suit the following week, on February 23, 2022.

### c.     The Sternberg Defendants' Limited Responsibilities

Plaintiff's theories are creative, albeit unsupported, in that it has alleged that despite the lack of an engagement letter, retainer payment, or invoice of any kind between them, Plaintiff somehow had a right to rely upon the Sternberg Defendants – CHG's counsel - as if they entered into an attorney-client relationship. *Ex. L, Scully Dep.,* at 77:18-78:10. Nonetheless, Plaintiff conceded, as it must, that he fully understood the Sternberg Defendants' role as counsel only to CHG and that Plaintiff was unrepresented in the transaction. *Id.*, at 89:13-22 and 62:13-14.

The Sternberg Defendants' exclusive role with respect to the SPA was that of "Seller's Attorney." *See. Ex. B, SPA, at ¶¶ 4 and 5*. As such, the Sternberg Defendants were expected to (i) draft the SPA, (ii) to collect funds from Plaintiff using its IOLTA account, and (iii) to release such funds at the direction of CHG. *See Ex. B, SPA,* at ¶ 6 and p. 8, ¶ 4-7. As agreed upon by the contracting parties, the Sternberg Defendants were to release the purchase price funds at the direction of CHG which then triggered CHG's duty to provide the test kits and also triggered the risk of loss from CHG to Plaintiff. *See Ex. B, SPA*, at ¶¶ 4-6, 9 and p. 8 at ¶¶ 3-5. The SPA is completely devoid of any responsibility on the Sternberg Defendants to warrant, secure, verify or provide test kits to Plaintiff or anyone. *See Ex. B, SPA, ¶¶ 1-8 and p. 1-8*.

The Sternberg Defendants had no responsibility of any kind once they transferred the balance of the purchase price funds from Plaintiff per CHG's instructions on February 4, 2022. *See Ex. I, Sternberg Dep.* at 176:18-23, 178:8-12 and 184:1-12. *See also Ex. P, Lesovitz Report, at p. 10.*

### d.      The Failure to Deliver

Although the SPA does not specify an agreed upon delivery date, Plaintiff testified that it anticipated delivery on January 25, 2022, a few days after effectuating the wire. *Ex. L, Scully Dep.* at 96:7-12. CHG did not deliver test kits to Plaintiff on January 25, 2022. *Id.*, at 98:3-17. Ultimately, after several weeks of unexplained delays, Weiss allegedly grew impatient with his common carrier and planned to personally deliver the test kits earmarked for Plaintiff and other CHG customers. *Ex. J, Weiss Dep. 1,* at 102:6-20. Unbelievably, however, in or about March 2022 – after Plaintiff initiated this action - Weiss claimed that the test kits he previously inspected personally had mysteriously and inexplicably been replaced by bags of rice. *See Ex. J, Weiss Dep. 1,* at 106:15-1-7:22 *and Ex. K, 07/06/24 Transcript of Weiss' Second Deposition,* at 138:1-9. Plaintiff initiated this litigation on February 23, 2022 via a Complaint. *See ECF No. 1.*

By way of its First Amended Complaint, Plaintiff seeks to recover from the Sternberg Defendants pursuant to the following theories:

a. Count I: fraud in the inducement,
b. Count II: fraud,
c. Count IV: civil conspiracy,
d. Count VII: participation theory,
e. Count VIII: unjust enrichment/quantum meruit,

     f.   Count IX: intentional interference with existing contractual relations, and

     g.   Count X: intentional interference with prospective economic advantage.
*See Ex. A* at pp. 11, 13, 16, 20, 23, 24 and 25, respectively.

As alleged, the Sternberg Defendants "fraudulently induce[d] Plaintiff to make the wire transfer to them, the Gross and Sternberg Attorney Defendants represented that the $1,965,600.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the $1,965,600.00 Purchase Price would not be released […]." *See, Ex. A, Complaint* at ¶ 39. Plaintiff also alleges that "the Sternberg Attorney Defendants wrongfully and improperly and prematurely released Plaintiff's $1,965,600.00 Purchase Price from escrow, without confirming that the Covid Test Kits were purchased, and without confirming that the Covid Test Kits were delivered to a recognized common carrier for delivery to Plaintiff." *Id.* at ¶ 69. Plaintiff's allegations are inconsistent with the facts and conflict with the agreed upon terms set forth in the SPA. *See Ex. B, SPA,* at ¶¶ 4-6, 9 and p. 8 at ¶¶ 3-5.

**e.**    **The Unrefuted Expert Submissions**

Summary judgment is warranted in favor of the Sternberg Defendants as evidenced, in part, by the expert submissions timely disclosed on August 16, 2024. *See Ex. N, Rule 26 Supplement.* Steven Angstreich, Esquire, a partner at Weir Greenblatt Pierce LLP, concluded "to a reasonable degree of legal certainty that neither Mr. Sternberg nor the law firm breached any duty to Plaintiff, and neither is liable to Plaintiff for the loss of the funds." *Id.*, at p.13. *See Ex. O, Angstreich Report,* at pp. 3, 14. The Sternberg Defendants' position is also bolstered by the opinions of Joseph W. Lesovitz,

CPA, that the Sternberg Defendants did not withhold any of Plaintiff's funds nor otherwise financially benefit from the contemplated transaction. *See, Ex. P, Lesovitz Report*, at p. 15. Plaintiff produced no timely expert reports to either affirmatively support its unsubstantiated claims as to liability and damages, or to rebut the opinions of the Sternberg Defendants' experts.

### IV.   LEGAL ARGUMENT

### a.   Summary Judgment Governing Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

While the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *Watson v. Eastman Kodak Company*, 235 F.3d 851, 858 (3d Cir. 2000). In doing so, the non-moving party must show more than the "mere existence of a scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252. A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. *Ridgewood Board of Education v. N.E. for*

*M.E.*, 172 F.3d 238, 252 (3d Cir. 1999); *Woods v. Bentsen*, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### b.   Summary Judgment is Required as to Counts I and II Because the Sternberg Defendants did not Intentionally Misrepresent Any Material Fact

In Counts I and II, Plaintiff purports to plead a cause of action for Fraudulent Inducement and Fraud against the Sternberg Defendants. Preliminarily, it must be stated that although not pled as such, this is a breach of contract case involving CHG's alleged inability to satisfy its contractual obligations under the SPA. The dispositive issue involves the respective responsibilities of the *parties* to that contract. The Sternberg Defendants are strangers to the SPA apart from their role as scrivener of that document in their capacity as independent counsel to CHG. Thus, Plaintiff faces an insurmountable lack of standing problem when seeking to pull the Sternberg Defendants into the fray. Its apparent solution: "fraud." Plaintiff's inability to effectively articulate and prove fraud against the Sternberg Defendants in Count I and Count II warrant summary judgment at this time.

### 1.      Standard to Prove Fraud in Pennsylvania

A cause of action grounded in fraud requires that the plaintiff show a false representation made in reference to a material fact, with knowledge of its falsity or recklessness as to whether it is true or false, made with the intent to deceive, and reliance on the misrepresentation. *Wolffe v. Galdenzi*, No. 22-994, 2022 U.S. Dist. LEXIS 194438, at *4-5 (E.D. Pa. Oct. 21, 2022) (citing *West Chester Univ. Foundation v. MetLife Ins. Co. of Connecticut*, 259 F. Supp. 3d 211, 218 (E.D. Pa. 2017) (outlining the elements of fraud under Pennsylvania law) and *Joseph W. Davis, Inc. v. Int'l Union of Operating Engineers, Local 542*, 636 F. Supp. 2d 403, 416 (E.D. Pa. 2008) (outlining the elements of fraud under the federal common law). Similarly, a plaintiff claiming fraud in the inducement under Pennsylvania law must establish the same elements. *Dunkin' Donuts Franchised Rests., LLC v. Claudia I, LLC*, 998 F. Supp. 2d 383, 389 (E.D. Pa. 2014).

Fraud claims are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See, e.g., Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *Reid v. Heartland Payment Sys.*, Civil Action No. 17-4399, 2018 U.S. Dist. LEXIS 8627, at *11 (E.D. Pa. Jan. 19, 2018) (applying Rule 9(b) to fraud in the inducement claim). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), an allegedly defrauded party "must state the circumstances of the alleged fraud with sufficient particularity to place the [opposing party] on notice of the precise misconduct with which it is charged." *Frederico*, 507 F.3d at 200. Accordingly, the party asserting a fraud

claim "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* In other words, "Rule 9(b) requires, at a minimum, that [the party] support their allegations of . . . fraud with . . . the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Properties, Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002).

Furthermore, where multiple defendants are involved, the complaint should inform each defendant of the nature of his alleged participation in the fraud. *See Tredennick v. Bone*, 323 F. App'x 103, 105 (3d Cir. 2008) (citing *Silverstein v. Percudani,* 422 F. Supp. 2d 468, 472-73 (M.D. Pa. 2006). This Court recognized in *United States v. Kindred Healthcare, Inc.* logic of that principle when it quoted the Ninth Circuit decision *US v. Corinthian Colleges:*

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.

*See United States v. Kindred Healthcare, Inc., 469 F. Supp. 3d 431, 453 (E.D. Pa. 2020)* (quoting *U.S. v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011).

Pennsylvania law requires "the trial judge to decide as a matter of law before he submits a case to the jury whether plaintiffs' evidence attempting to prove fraud is sufficiently clear, precise, and convincing to make out a prima facie case." *Beardshall v. Minuteman Press Int'l, Inc.*, 664 F.2d 23, 26 (3d Cir. 1981). "Unsupported assertions and conclusory accusations cannot create genuine issues of material fact as to the existence

of fraud." *Hart v. Arnold*, 884 A.2d 316, 339 n.7 (Pa. Super. Ct. 2005). Moreover, it is well-established that the party asserting a claim of fraud has a "very high standard" of proof. *Kostryckyj v. Pentron Laboratory Technology, LLC*, 52 A.3d 333, 338 (Pa. Super. Ct. 2012). Thus, clear and convincing evidence of fraud must exist. *See Tunis Brothers Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 731 (3d Cir. 1991). Plaintiff has not met this standard.

### 2.      Plaintiff's Unsupported Allegations of Fraud

Plaintiff has not proven that the Sternberg Defendants can be found liable for fraud in the inducement or fraud. As alleged, the Sternberg Defendants (and Gross) "represented" that the purchase price would not be transferred from the Sternberg Defendants' IOLTA account "until after Plaintiff was supplied with a Bill of Sale as well as a Bill of Lading from a recognized common carrier, evidencing that the Covid Test Kits had been delivered to a common carrier and were en route for delivery" to Plaintiff. *See, Ex. A, Complaint,* at ¶80. This allegation is fatally flawed on several grounds.

First, Plaintiff conceded, as it must, that it had no communication with the Sternberg Defendants before Plaintiff delivered its funds into the IOLTA account and therefore cannot prove detrimental reliance. *See, Ex. L, Scully Dep,* at 20:16-22. Second, the Sternberg Defendants' handling of the applicable funds was entirely consistent with the contracting parties' agreement. Finally, the Sternberg Defendants owed Plaintiff no

duty and, as set forth herein, Plaintiff cannot establish causation. Each will be evaluated in turn.

### (i) Plaintiff Cannot Prove Detrimental Reliance

To withstand summary judgment, Plaintiff must prove that it relied upon a material misrepresentation attributed to the Sternberg Defendants and that reliance caused it to incur damages. Plaintiff cannot do so because there is no evidence that Plaintiff engaged in *any* pre-contractual or pre-wire dialog with the Sternberg Defendants. In fact, Plaintiff conceded, as it must, that it had no "direct communication with Mr. Sternberg prior to wiring the subject funds." *Ex. L, Scully Dep.*, at 20:16-22 and 85:1-6. This lack of communication is not unexpected given that the Sternberg Defendants are not parties to the SPA and had no relationship with or duty to Plaintiff. Importantly, however, absent any representation to Plaintiff attributable to the Sternberg Defendants prior to Plaintiff's wire, there can be no viable cause of action because there can be no cause-and-effect.

The evidence makes clear that while Plaintiff interacted with CHG, and with non-party brokers who allegedly made the introduction to the contracting parties, the Sternberg Defendants did not represent anything to Plaintiff *before* the deal was consummated. *See, Ex. L, Scully Dep.* at 83:13-17 and 85:1-6. Plaintiff's communication with the Sternberg Defendants *after* it had already executed the SPA and *after* it had already effectuated the wire transfers had no impact on Plaintiff's alleged loss. The cow was already out of the barn. There is no deposition testimony, email, contract or other

shred of evidence to refute the fact that the Sternberg Defendants had no opportunity to materially induce or misrepresent Plaintiff's conduct because they had no pre-contract or pre-wire interaction. It is disingenuous, if not worse, for Plaintiff to suggest not only that it relied upon its adversary's attorney, but that said "reliance" occurred without any timely communication or interaction of any kind.

As to the limited interaction between Plaintiff and the Sternberg Defendants occurring weeks *after* Plaintiff effectuated the wire transfer, that dialog also cannot rise to the level of fraud. In the aftermath of the transaction, there is evidence that the Sternberg Defendants exchanged emails and text messages with the various parties in an effort to locate and provide accurate information regarding the status of the test kits. Plaintiff cannot prove that any of these well-intentioned, post-contractual communications were knowingly false, nor can Plaintiff prove that such communications impacted Plaintiff's conduct in any way. Again, by that point, the alleged damage had already occurred as the funds were already disbursed pursuant to the terms of the SPA. Counts I and II must be dismissed on these grounds alone.

What's more, there is no evidence of intentional deception given that the Sternberg Defendants appropriately relied upon their *own* client, CHG, at all times. In the context of Rule 11 jurisprudence, Pennsylvania courts are guided by the principles governing an attorney's right to rely upon the client for factual information. *Martin v. Brown*, 151 F.R.D. 580, 586 (3d Cir. 1993), see also *Gillette Foods, Inc. v. Bayernwald-Fruchteverwertung*, 977 F.2d 809, 813 (3d Cir. 1990). While an attorney "is not required to

disbelieve a client," the reasonableness of an attorney's reliance on his client depends on the circumstances. *Ellis v. Beemiller, Inc.*, 287 F.R.D. 326, 330 (W.D. Pa. 2012). Stated differently, the Rule 11 standard imposes a duty on counsel to conduct a reasonable investigation into the factual basis of the client's claim to ensure that the submission is factually grounded. *Id.*

For their part, the Sternberg Defendants understood that their client had a reliable distributor with whom CHG enjoyed a decades-long professional relationship. *See Ex. I, Sternberg Dep.* at 183:19-24. CHG consistently advised the Sternberg Defendants that it had confirmed the test kits were available and would be timely delivered. *See Ex. I, Sternberg Dep.* at 183:4-7 and 184:13-19. Likewise, CHG instructed the Sternberg Defendants when and how to collect and distribute the subject funds. *See Ex. I, Sternberg Dep.* at 178:13-24, 180:1-20, and 198:14-19. The Sternberg Defendants were well within their rights to rely upon their client and, against this backdrop, to take all reasonable steps to act in CHG's best interests. There is absolutely no evidence that the Sternberg Defendants knowingly deceived Plaintiff before, during, or after Plaintiff executed the SPA.

In short, Plaintiff quite literally cannot substantiate any element to sustain an allegation of fraud; i.e. (i) there was no pre-wire or pre-contractual representation, (ii) made with the Sternberg Defendants' knowledge of its falsity; (iii) intended to deceive Plaintiff; (iv) upon which Plaintiff relied. Since there is no evidence upon which a jury

could conclude that the Sternberg Defendants' conduct amounted to fraud, Counts I and II should be summarily dismissed.

### (ii) The Sternberg Defendants' Conduct was Consistent with the SPA and the SOP

Given that this is a contractual dispute, the roles and responsibilities of the contracting parties are set forth in the parties' contract, the SPA. Yet, according to Plaintiff, the Sternberg Defendants "prematurely" released the purchase funds before the test kits were delivered to a common carrier. *See, Ex. A, Complaint* at ¶ 69. This allegation is entirely baseless. The evidence is clear that the Sternberg Defendants' conduct was entirely consistent with the explicit terms of the SPA. Specifically, the SPA defines the sequence of events as follows: (i) funds to be delivered from Plaintiff to CHG's escrow agent (the Sternberg Defendants), (ii) funds to be released to CHG; (iii) CHG to deliver goods to a common carrier *after* the funds clear CHG's account. *See Ex. B, SPA*, at ¶ 6 and p. 8, ¶ 4-7. There is no evidence to support Plaintiff's contention that the Sternberg Defendants' handling of the purchase funds was inconsistent with the SPA or otherwise improper.

Today, after the fact, Plaintiff seemingly has second-guessed its decision to execute and be bound by the SPA and the related agreement, including the Standard Operation Procedures (the "SOP"). It would appear that Plaintiff would have preferred that their contract include different terms which prohibited the Sternberg Defendants from releasing funds until *after* the test kits were en route to Plaintiff. But Plaintiff's

current realizations are, frankly, irrelevant because the parties' contract stated otherwise. CHG's obligation to provide the test kits to a common carrier did not trigger until Plaintiff's funds cleared CHG's account. Plaintiff's apparent reconsideration of this sequence *could* have been negotiated before executing the SPA, not after the fact.

Plaintiff has conceded, as it must, that it knowingly considered, evaluated and understood the SPA and the SOP at least one week in advance of wiring the funds. *See Ex. L, Scully Dep.*, at 94:4-17 and 90:19-21). Plaintiff was irrefutably aware of the order of operations before executing the contract and before effectuating the wire. Likewise, Plaintiff understood and agreed that the SPA unequivocally "constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties" and that Plaintiff is not "relying upon any representation not contained in this Agreement." *See Ex. B, SPA*, at ¶ 18. There is no such modification in the record.

### (iii)    The Sternberg Defendants Owed Plaintiff No Duty As Proven Through Unrefuted Expert Analysis

While there is plenty of blame to cast, Plaintiff cannot articulate a viable theory against the Sternberg Defendants for this transaction gone wrong. Again, Plaintiff inexplicably did not engage counsel of its own, otherwise it presumably would have pursued a malpractice theory. Instead, in a stubborn attempt to recover from *CHG's attorneys*, Plaintiff has consistently mischaracterized the Sternberg Defendants' role, duties and scope. It is worth repeating that the SPA reflects the Sternberg Defendants' limited role in transferring funds between buyer (Plaintiff) and seller (CHG, their client).

Nothing more. The Sternberg Defendant's *unrefuted* expert opinion drives this point home.

Steven E. Angstreich, Esquire, a partner at Weir Greenblatt Pierce LLP, has been licensed to practice law in Pennsylvania for more than 50 years, and has handled legal malpractice proceedings for decades. *See Ex. N, Angstreich Report*, at pp. 3, 14. While Plaintiff could not characterize its allegations against them as "malpractice" due to the lack of privity, Plaintiff took great pains to embellish and exaggerate the Sternberg Defendants' role, at one point going so far as to testify: "I had an attorney, Manfred Sternberg," and "he was the golden boy." *See, Ex. L Scully Dep* 77:18-78:3. Of course, such testimony is unreliable, inaccurate and baseless.

For his part, Angstreich concluded "to a reasonable degree of legal certainty that neither Mr. Sternberg nor the law firm breached any duty to Plaintiff, and neither is liable to Plaintiff for the loss of the funds." *See Ex. N, Angstreich Report*, at p.13. Put simply, Plaintiff has mischaracterized the Sternberg Defendants' role in this transaction. Since it did not engage its own counsel, which would have been expected under the circumstances, Plaintiff has morphed a misguided malpractice claim into one of "fraud." In reality, "Sternberg's role in the transaction at issue was as attorney for the seller, Charlton." *See Ex. N, Angstreich Report*, at p. 5. While Angstreich notes that attorneys *can be* liable to non-clients where they make an affirmative representation to the non-client who then relies thereon to his detriment, he found no such circumstance here. *See Ex. N, Angstreich Report*, at p. 6.

Likewise, according to Angstreich's unrefuted opinion, the Sternberg Defendants properly and effectively complied with their client's requests governing the transfer of funds. Angstreich opined that the "SPA does not name Sternberg as escrow agent, it is silent as to any duties or obligations placed upon Sternberg, and Sternberg never signed the SPA or voluntarily agreed to act in the capacity of an escrow agent." *See Ex. N, Angstreich Report*, at p. 12. He continues in his unrefuted report that in the absence of an executed escrow agreement "imposing duties upon the agent, Sternberg owed no duty to Plaintiff." *Id.* Importantly, "when he followed his client's direction and wired the funds from his attorney IOLTA Account to the supplier of goods that were to be shipped to Plaintiff, Sternberg owed no duty to Plaintiff, only his client." *Id.*

Angstreich elaborated by analogy to the Superior Court of Pennsylvania's decision in *Janson v. Cozen & O'Connor*, 450 Pa. Super. 415, 676 A.2d 242 (1996), which he summarized as follows:

> Defendant's attorney was holding in his attorney trust account proceeds from the sale of the plaintiff's stock which, according to the attorney was to be turned over to plaintiff at the conclusion of the litigation. Although acknowledging the purpose of the funds and his holding in his attorney trust account, there was no signed agreement between the attorney, his client and plaintiff imposing any specific duty on him. When the attorney, at the direction of his client, turned the funds over to his client (and not plaintiff), the court held that, in the absence of a written agreement, the attorney owed no duty to plaintiff and was not liable to her for releasing the funds contrary to her expectations. Similarly, it is my opinion that Sternberg owed no duty to Plaintiff arising out of the SPA or any other document.

*See Ex. N, Angstreich Report*, at p. 13-14.

The *Janson* court reasoned that the absence of an agreement meant the absence of a fiduciary duty to the non-client and, in reversing the trial court's grant of summary judgment in favor of the non-client, held that the non-client had to attempt to recover on her judgment against the law firm's client. *Janson v. Cozen & O'Connor*, 450 Pa. Super. 415, 427, 676 A.2d 242, 248 (1996). Here, as in *Janson*, Plaintiff cannot seek recovery from the Sternberg Defendants who owed it no fiduciary or other duty.

### c.   Summary Judgment is Required as to Count IV Because Plaintiff Cannot Prove Civil Conspiracy

In Count IV, Plaintiff purports to plead a cause of action for civil conspiracy against all of the defendants including the Sternberg Defendants. The elements of civil conspiracy are: (i) an agreement between two or more persons; (ii) to do an illegal act or to do a legal act by unlawful means; (iii) malice. *Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 547 Pa. 224, 690 A.2d 169, 174 (Pa. 1997). Plaintiff's civil conspiracy claim cannot survive independent of a viable fraud claim. See *McKeeman v. Corestates Bank, N.A.*, 2000 PA Super 117, 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (holding that a plaintiff claiming civil conspiracy must also include a cause of action for the particular act which the defendants conspired to commit). There is no liability for civil conspiracy unless there is liability for the acts underlying the conspiracy. *Potter v. Hoffman*, Civ. A. No. 98-0406, 1998 U.S. Dist. LEXIS 18694, 1998 WL 826896, at *3 (E.D. Pa. Nov. 24, 1998); *Pelagatti v. Cohen*, 370 Pa. Super. 422, 536 A.2d 1337, 1341 (Pa. Super. Ct. 1987).

When, as here, there is no underlying liability for allegedly wrongful conduct, the civil conspiracy claim also fails as a matter of law. See, e.g., *Samuel v. Clark*, Civ. A. No. 95-6887, 1996 U.S. Dist. LEXIS 11487, 1996 WL 448229, at *4 (E.D. Pa. Aug. 7, 1996) (dismissing conspiracy claim where underlying claims for fraud was dismissed); *Rose v. Wissinger*, 294 Pa. Super. 265, 439 A.2d 1193, 1199 (Pa. Super. Ct. 1982) (dismissing conspiracy claim where defamation and outrageous conduct claims were dismissed); *Raneri v. Depolo*, 65 Pa. Commw. 183, 441 A.2d 1373, 1376 (Pa. Commw. Ct. 1982) (dismissing conspiracy claim where underlying claim for defamation was dismissed). *Wolk v. Teledyne Indus.*, 475 F. Supp. 2d 491, 506 (E.D. Pa. 2007). Since Plaintiff cannot prove Counts I or II sounding in fraud, such failure is fatal to its civil conspiracy claim in Count IV. *Dunkin' Donuts Franchised Rests., LLC v. Claudia I, LLC*, 998 F. Supp. 2d 383, 390 (E.D. Pa. 2014).

### d.   Summary Judgment is Required as to Count VII Because There is No Evidence to Support a Claim for Participation Theory

In Count VII, Plaintiff purports to plead a cause of action for participation theory. In Pennsylvania, "a corporate officer who takes part in the commission of a tort by the corporation is personally liable for that tort." *Laborers' Combined Funds of W. Pa. v. Molinaro Corp.*, 234 F. Supp. 3d 660, 668 (W.D. Pa. 2017) (citing *Laborers Combined Funds of W. Pa v. Cioppa*, 346 F. Supp. 2d 765 (W.D. Pa. 2004)). Liability under this theory attaches only where the corporate officer participates in the wrongful acts. *Chester-Cambridge Bank & Tr. Co. v. Rhodes*, 346 Pa. 427, 31 A.2d 128 (1943). See also

*Knuth v. Erie-Crawford Dairy Cooperative Ass'n.*, 463 F.2d 470, 481 (3d Cir. 1972), cert. denied, 410 U.S. 913, 93 S. Ct. 966, 35 L. Ed. 2d 278 (1973). Nevertheless, corporate officers and directors may not be held liable for mere nonfeasance. *Chester-Cambridge B. & T. v. Rhodes\**, 346 Pa. at 432, 31 A.2d at 131; *Hager v. Etting*, 268 Pa. Superior Ct. 416, 422, 408 A.2d 856, 859 (1979). See also *Cohen v. Maus*, 297 Pa. 454, 457, 147 A. 103, 104 (1929) (directors of a corporation cannot be held individually liable for a conversion by the corporation and its general manager about which they knew nothing simply because they might have discovered the conversion by examining the corporate records). *Id.*

As pled, each of the defendants engaged in a grand scheme to defraud Plaintiff out of the purchase price. The evidence proves otherwise. In reality, Plaintiff distributed funds into an account maintained by the Sternberg Defendants who, in turn, distributed those funds as directed by their client, CHG. That is where the Sternberg Defendants' role as escrow counsel began and ended. The Sternberg Defendants were not responsible for locating, securing or providing test kits to anyone. They were not obligated to verify, corroborate or ensure delivery. The possibility that others somehow acted to Plaintiff's detriment does nothing to evidence liability on the part of the Sternberg Defendants. The role of each professional – accountants, engineers, attorneys and others - is limited to an agreed upon scope of services and cannot stretch to include tasks outside of that scope. Here, the Sternberg Defendants appropriately and professionally carried out their responsibilities as agreed upon by their client, CHG. Plaintiff has introduced no evidence to suggest otherwise. Since Plaintiff has not proven

any malfeasance on the part of the Sternberg Defendants, it cannot demonstrate that Sternberg should be held individually liable under participation theory.

> **e.    Summary Judgment is Required as to Count VIII Because the Sternberg Defendants Have Not Been Unjustly Enriched and Plaintiff May Not Recover Under Quantum Meruit**

In Count VIII, Plaintiff purports to plead a cause of action for unjust enrichment and quantum meruit. Although distinct legal theories, Plaintiff improperly has pled both herein. We will address each of the flawed claims, in turn.

"Unjust enrichment is an equitable remedy, defined as 'the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution.'" *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 411-12 (E.D. Pa. 2023) (citing *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 648 Pa. 604, 194 A.3d 1010, 1034 (Pa. 2018). To overcome summary judgment, a plaintiff must prove that "1) they conferred benefits on the defendant, 2) the defendant appreciated such benefits, and 3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without the payment of value." *Berardi v. USAA Gen. Indem. Co.*, 606 F. Supp. 3d 158, 163 (E.D. Pa. 2022). A benefit that is conferred upon a defendant is not unjustly retained where a plaintiff confers such benefit in the hope of obtaining a future benefit in return. *Burton Imaging Grp. v. Toys*

"R" Us, Inc., 502 F. Supp. 2d 434, 440 (E.D. Pa. 2007) ("A benefit conferred is not unjustly retained if a party confers the benefit with the hope of obtaining a contract.").

Under Pennsylvania law, "quantum meruit is an equitable remedy, which is defined as 'as much as deserved' and measures compensation under an implied contract to pay compensation as reasonable value of services rendered." *Artisan Builders, Inc. v. So Young Jang*, 2022 PA Super 36, 271 A.3d 889, 892 (citing *Angino & Rovner v. Jeffrey R. Lessin & Associates*, 2016 PA Super 2, 131 A.3d 502, 508 (Pa. Super. 2016).

Plaintiff can sustain neither cause of action against the Sternberg Defendants, who received no benefit from Plaintiff. Plaintiff, really Plaintiff's counsel, created a self-serving, unsupported and inadmissible document purporting to show the flow of certain funds involving the Sternberg Defendants' escrow account. Plaintiff's "exhibit," which it marked at several fact depositions, is as unclear as it is unreliable. On the other hand, the evidence is clear that the Sternberg Defendants did not profit from the failed transactions and, quite to the contrary, incurred a loss.

Although the allegations are unclear, and seemingly ever changing, Plaintiff has suggested that the Sternberg Defendants' "motive" to defraud is evidenced by their attorney IOLTA account – the escrow account - which allegedly proves the Sternberg Defendants benefited from this transaction. That is not true. Rather than relying upon back-of-the-napkin math, the Sternberg Defendants coordinated a full and complete accounting of their bank records which entirely refute Plaintiff's claims. *See Ex. P*, Lesovitz Report, generally.

Lesovitz examined the pertinent evidence of record and concluded that "disbursements for the Test Kits exceeded amounts received from TSH [Plaintiff] for the Test Kits." Ex. C, Lesovitz Report, at p. 11. In fact, according to Lesovitz, the Sternberg Defendants incurred a significant loss in connection with the contemplated transaction. Thus, Plaintiff conferred no benefit on them, they could not appreciate any benefit, and no benefit was accepted not retained. Moreover, Plaintiff performed no services whatsoever for the Sternberg Defendants, and the Sternberg Defendants never agreed, in writing or otherwise, to compensate Plaintiff for any services performed. Therefore, Plaintiff's unjust enrichment/quantum meruit claim against the Sternberg Defendants fails and must be dismissed.

### f.   Summary Judgment is Required as to Counts IX and X

In Counts IX and X, Plaintiff purports to plead a cause of action for interference with existing contractual relations and tortious interference with contract. Pennsylvania law recognizes interference with existing contractual relations as well as interference with prospective contractual relations. *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 501 (E.D. Pa. 2018) (citing *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 925 (3d Cir. 1990)). These two causes of action, though distinct, "share essentially the same elements." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 529 (3d Cir. 1998).

A plaintiff claiming tortious interference with existing or prospective contractual relationships must prove:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonably likelihood that the relationship would have occurred but for the defendant's interference.

*Pac-West Distrib. NV LLC v. AFAB Indus. Servs.*, 674 F. Supp. 3d 132, 137 (E.D. Pa. 2023) (quoting *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009)).

Plaintiff cannot demonstrate that its inability to acquire the subject test kits interfered with any contractual relationship, either then-existing or prospective. Plaintiff has not identified any customers to whom it intended to provide test kits. Moreover, it has not proven any intentional action on the part of the Sternberg Defendants. Again, the record is devoid of any pre or post-contractual action on the part of the Sternberg Defendants which somehow caused Plaintiff's alleged harm. None. When pressed during his deposition on the "existence of a contractual or prospective contractual relationship between the plaintiff and a third party," Plaintiff's president testified simply that he would not provide that "proprietary" information and ultimately conceded that Plaintiff's intended customers for the test kits are "not part of [Plaintiff's] damages claim, so it's irrelevant." Ex. B, Scully Deposition, at 70:4-13; Scully Deposition, at 71:2-

5. Thus, Plaintiff has not and cannot demonstrate the existence of a contractual relationship with an undisclosed, hypothetical third-party.

However, even if Plaintiff could overcome this hurdle, the claims still fail because there is no evidence from which a finder of fact could conclude that the Sternberg Defendants acted purposefully with the intent to harm Plaintiff's contractual relationships. *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 502 (E.D. Pa. 2018) (citing to *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2014 U.S. Dist. LEXIS 79895, 2014 WL 2616824, at *21 (E.D. Pa. June 11, 2014) ("A party alleging tortious interference 'must show that the defendant acted for the malevolent purpose of interfering with the plaintiff's existing or prospective business relationships.") and to *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 321 F. Supp. 3d 503, 518 (M.D. Pa. 2018) ("The burden of proving the absence of any privilege or justification is on the plaintiff."). Plaintiff has not met this burden as there is no evidence that the Sternberg Defendants knew of, let alone interfered with, Plaintiff's third-party contractual relationships. Therefore, Counts IX and X also fail as a matter of law.

### g. Dismissal is Required Under the Economic Loss Doctrine

While dismissal is required for the foregoing reasons, in the alternative, each of Plaintiff's claims also fail as a matter of law pursuant to the economic loss doctrine. The economic loss doctrine in Pennsylvania "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v.*

*Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (abrogated solely with regard to the UTPCPL by *Earl v. NVR, Inc.*, 990 F.3d 310 (3d Cir. 2021)). In other words, plaintiffs seeking recovery of money they paid pursuant to a contract must seek such recovery from the contract's other parties. Negligent and intentional misrepresentation claims are generally preempted by the economic loss doctrine. *See Team Biondi, LLC v. Navistar, Inc.*, 665 F. Supp. 3d 633, 645 (M.D. Pa. 2023) (citing *Whitaker v. Herr Foods, Inc.*, 198 F.Supp.3d 476, 490-91 (E.D. Pa. 2016)).

Admittedly, there is an exception to this general rule in the face of alleged fraud to induce another to enter a contract. However, this exception clearly does not apply because, as set forth above, there is no evidence of any communication – let alone a "representation" between Plaintiff and the Sternberg Defendants *before* Plaintiff executed the SPA. Thus, summary judgment as to this rule is in play. *See Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016) (citing *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F.Supp.2d 643, 658 (E.D. Pa. 2002)).

### h.   The Sternberg Defendants are Immune Under Texas Law

Finally, again in the alternative, the Sternberg Defendants' dismissal is warranted under Texas' immunity provisions. (This Honorable Court denied the Sternberg Defendants' motion to dismiss at the pleading stage wherein they sought dismissal on jurisdictional grounds with reference to the application of Texas law). Under Texas law, attorneys are immune from liability to non-clients for conduct in the scope of their representation of their client. *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (citing

31

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015)). "Put differently, an attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer." *Id.* (citing *Cantey* at 481).

The SPA calls for the application of Texas law. *See Ex. B, SPA,* at ¶ 13. As evidenced by Angsteich's opinion, there is no evidence of record that the Sternberg Defendants acted outside the scope of their representation of CHG. *See Ex. O, Angstreich Report,* at pp. 7-8. This is fatal to Plaintiff's claims.

Thus, under Texas law, which Plaintiff and CHG agreed should govern the SPA, the Sternberg Defendants are immune from liability to Plaintiff for their limited role as counsel for CHG.

## V.   <u>CONCLUSION</u>

Wherefore, for the reasons set forth above, the Sternberg Defendants respectfully request that this Honorable Court dismiss each of Plaintiff's claims against them, with prejudice, as set forth in the attached Order.

Dated: September 30, 2024

**GOLDBERG SEGALLA LLP**

By:   */s/ Seth L. Laver*

Seth L. Laver, Esq. (PA ID #094518)
Joseph Ross, Esq. (PA ID #318039)
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
Telephone: 267-519-6800
slaver@goldbergsegalla.com
jross@goldbergsegalla.com
*Attorneys for Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC*

42614414.v1

32