**Exhibit Index for**

**Motion for Summary Judgment of Defendants**

**Manfred Sternberg, Esquire and Sternberg & Associates, P.C.**

A.  First Amended Complaint
B.  Sale and Purchase Agreement
C.  Wire Documents, 1/21/2022
D.  Bill of Sale Email, 2/8/2022
E.  Shipping Emails, 2/15/2022
F.  Refund Demand Email, 2/16/2022
G.  Sternberg Answer, 8/23/2023
H.  AGC Decision *In Re: Zekaria,* 2/18/2024
I.  Sternberg Deposition Transcript, 2/7/2024

    I-1. Exhibits to Sternberg Deposition

J.  Weiss Deposition Transcript 1, 2/16/2024
K.  Weiss Deposition Transcript 2, 7/16/2024

    K-1. Exhibits to Weiss Depositions

L.  Scully Deposition Transcript, 7/23/2024
M.  Zekaria Deposition Transcript, 4/2/2024
N.  Sternberg Letter disclosing expert reports, 8/16/2024
O.  Angstreich Report, 8/16/2024
P.  Lesovitz Report, 8/16/2024
Q.  CHG-Sternberg Fee Agreement
R.  Plaintiff 9-29-22 Reply to Sternberg Interrogatories
S.  Plaintiff 9-29-22 Reply to Sternberg Request for Production
T.  Plaintiff 4-22-24 Reply to Sternberg Interrogatories
U.  Plaintiff 4-22-24 Reply to Sternberg Request for Production

# EXHIBIT I

**To Motion for Summary Judgment of Defendants**

**Manfred Sternberg, Esquire and**

**Manfred Sternberg & Associates, PC**

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

– – –

AMERICAN ENVIRONMENTAL    : CIVIL ACTION
ENTERPRISES, INC., d/b/a :
THESAFETYHOUSE.COM        :
                          :
    Plaintiff,           :
                          :
    v.                    : No. 2:22-CV-0688 (JMY)
                          :
MANFRED STERNBERG, ESQ., :
and MANFRED STERNBERG &   :
ASSOCIATES, PC and        :
CHARLTON HOLDINGS GROUP, :
LLC and SAMUEL GROSS      :
a/k/a SHLOMO GROSS and    :
GARY WEISS and            :
ASOLARDIAMOND, LLC a/k/a :
ASOLAR, LLC and DAPHNA    :
ZEKARIA, ESQUIRE and      :
SOKOLSKI & ZEKARIA, P.C.  :
                          :
    Defendants.          :

        Oral deposition of MANFRED STERNBERG,
ESQ., taken pursuant to notice at Bluestone Country
Club, 711 Boehms Church Road, Blue Bell,
Pennsylvania, on Wednesday, February 7, 2024,
commencing at approximately 9:11 a.m. Eastern,
before Joanne Rose, a Registered Merit Reporter and
Notary Public for the Commonwealth of Pennsylvania.

TATE & TATE
Certified Court Reporters
825 Route 73 North, Suite G
Marlton, New Jersey 08053
(856) 983-8484 – (800) 636-8283
www.tate-tate.com

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

## Page 2

1    APPEARANCES:
2
3    LIGHTMAN & MANOCHI
     BY:  GARY P. LIGHTMAN, ESQUIRE
4    garylightman@lightmanlaw.com
     600 Germantown Pike, Suite 400
5    Plymouth Meeting, PA 19422
     215-545-3000
6        Attorneys for Plaintiff
7
     GOLDBERG SEGALLA LLP
8    BY:  SETH L. LAVER, ESQ.
     slaver@goldbergsegalla.com
9    1700 Market Street
     Suite 1418
10   Philadelphia, PA 19103-3907
     267-519-6877
11       Attorneys for Defendants
     Manfred Sternberg, Esq. and
12   Manfred Sternberg & Associates,
     PC
13
14   REBAR KELLY
     BY:  PATRICK J. HEALEY, ESQ.
15   phealey@rebarkelly.com
     470 Norristown Road
16   Suite 201
     Blue Bell, PA 19422
17   484-344-5340
         Attorneys for Defendants
18   Daphna Zekaria, Esq. and
     Sokolski & Zekaria, P.C.
19
20   ALSO PRESENT:
21       Daniel Scully
22
23
24

## Page 3

1              INDEX
2    WITNESS                    PAGE
3    By Mr. Lightman            10
4
5              - - -
6         EXHIBIT INDEX
7    EXHIBITS     DESCRIPTION        PAGE
8    Sternberg 1  Second Amended Notice of    13
         Depositions of the Sternberg
9        Defendants (with Request
         for Production of Documents)
10
     *Sternberg 2  Yellow sheet of paper      18
11       containing Mr. Sternberg's
         Social Security number
12
     Sternberg 3  First Amended Complaint     21
13
     Sternberg 4  Multi-page document labeled  26
14       Exhibit A
15   Sternberg 5  Email dated 3/24/22 from     27
         Manfred to
16       CharltonHoldingGroup@aol.com
17   Sternberg 6  Letter dated 4/24/22 to      39
         Office of the Chief
18       Disciplinary Counsel from
         Manfred Sternberg with
19       attachments Exhibits A-F
20   Sternberg 7  Sale and Purchase Agreement  69
         dated August 2, 2021
21
     Sternberg 8A  Email dated 8/21/23 from    122
22       117monipair@aol.com to
         Gary Lightman with
23       attachment
24

## Page 4

1    EXHIBITS (Continued...)
2
3              - - -
         EXHIBIT INDEX
4    EXHIBITS     DESCRIPTION        PAGE
5    Sternberg 8B  Local Move Estimate from   123
         Available Movers & Storage
6        dated 2/7/22
7    Sternberg 9  Document containing typed    133
         text exchange between Dan
8        Scully and Sam Gross
9    Sternberg 10  Email series with top email  139
         dated 2/15/22 from Manfred
10       Sternberg to Gary
         Lightman, et al.
11
12   Sternberg 11  Email series with top email  146
         dated 2/15/22 from Gary
13       Lightman to Manfred
         Sternberg, et al.
14   Sternberg 12  Letter dated 2/16/22 from    148
         Dan Scully to Sam Gross
15
16   Sternberg 13  Email dated 2/16/22 from     151
         Dan Scully to Charlton
17       Holding Group, LLC, et al.
18   Sternberg 14  The SAFETYhouse.com Purchase  155
         Order #18315 dated 1/21/2022
19   Sternberg 15  Email series with top email  161
         dated 4/6/22 from Manfred
20       Sternberg to Gary Weiss,
         et al.
21
22   Sternberg 16  Photograph               167
23
24

## Page 5

1    EXHIBITS (Continued...)
2
3              - - -
         EXHIBIT INDEX
4    EXHIBITS     DESCRIPTION        PAGE
5    Sternberg 17  Document entitled Payments   168
         Into and Out of Sternberg
6        Attorney Escrow Account
         (IHEALTH COVID-19 TEST KITS)
7
     Sternberg 17A Money flow chart number 2    205
8
9    Sternberg 18  Multi-page document containing  171
         Bank of America MSA IOLTA
10       Account Activity, Transaction
         Details, Wire Instruction
11       Sheet and Bill of Sale
12   Sternberg 19  Excerpt page from 10/25/22    175
         Interrogatory responses
13   Sternberg 20  Exhibit D - Bill of Sale,    185
         Bates CHG-000008
14
15   Sternberg 21  Text message               201
16   Sternberg 22  Handwritten document         206
         containing payments made to
17       Gary Weiss
18   Sternberg 23  Email dated 5/31/22 from     209
         Sam Gross to Manfred
19   Sternberg 24  Document entitled Test       218
         Kit Delivery Addresses
20
21   Sternberg 25  Documents reflecting Manfred  238
         Sternberg Jr.'s Merrill
22       IOLTA Account for January
         1, 2022 to January 31, 2022
23
24

2 (Pages 2 to 5)

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.                Wednesday
No. 2:22-CV-0688 (JMY)              Deposition of Manfred Sternberg, Esq.                      February 7, 2024

Page 6

1    EXHIBITS (Continued...)
2          - - -
3            EXHIBIT INDEX
4    EXHIBITS    DESCRIPTION          PAGE
5    Sternberg 26  Documents reflecting Manfred   252
6              Sternberg Jr.'s Merrill
               IOLTA Account for Feb. 1,
               2022 to Feb. 28, 2022
7
8    Sternberg 27  Documents reflecting Manfred   254
               Sternberg Jr.'s Bank of
9              America wire transfers

10   Sternberg 28  Email series with first    260
               email to Charlton Holding
11             Group from Asolardiamond

12   Sternberg 29  Email dated 3/1/22 from     263
               Gary Weiss to Manfred
13             Sternberg, Esq. and Sam
               Gross
14   Sternberg 30  Image of text chain        264
               messages, Weiss 000329
15
16   Sternberg 31  Images of text chain       266
               messages
17   Sternberg 32  Image of text message       283
18   Sternberg 33  Email series with top email  298
               dated 8/14/23 from Gary
19             Weiss to Manfred Sternberg,
               Esq., et al.
20
21   Sternberg 34  Email series with top email  299
               from Sam Gross to Gary Weiss
22             and bottom email dated 3/7/23
               to Sam Gross
23   Sternberg 35  Letter dated 2/28/22 to     302
               Gary Weiss from Sam Gross
24

Page 7

1    EXHIBITS (Continued...)
2          - - -
3            EXHIBIT INDEX
4    EXHIBITS    DESCRIPTION          PAGE
5    Sternberg 36  Multi-page document containing  304
               first page entitled Presentation
6              Proof Correspondence of Sam
               Gross Given Refund and
7              Conclusion on Business Deal
               Communication and attachments
8
9    Sternberg 37  Letter dated 2/23/22 to     306
               Manfred Sternberg, Esq. from
               Randolph K. Adler, Jr.
10
11   Sternberg 38  Series of emails with top    313
               email dated 3/1/22 from
               Manfred Sternberg to
12             wjb@brglaw.com, et al.
13   Sternberg 39  Summons with attached       323
               Complaint
14
15   (*Sternberg 2 was retained by counsel.)
16
17
18
19
20
21
22
23
24

Page 8

1            DEPOSITION SUPPORT INDEX
2
3    Direction to Witness Not To Answer
4    Page/Line
5    314/3
6
7    Request For Production of Documents
8    Page/Line    Page/Line     Page/Line  Page/Line
9    17/3      119/8       210/13    246/12
10   29/8      141/15      215/16    252/4
11   36/19     163/4       225/20    258/20
12   38/20     199/23      227/20    313/12
13   47/10     200/20      229/15
14   112/4     210/2       231/14
15
16   Stipulations
17   Page/Line
18   9/7
19
20   Questions Marked
21   Page/Line
22   313/23
23
24

Page 9

1        COURT REPORTER:  Are there any
2    stipulations for this deposition?
3        MR. LIGHTMAN:  The usual stipulations.
4        MR. LAVER:  Yeah and we'll read and
5    sign.
6
7        (It is stipulated by all counsel that
8    all objections, except as to the form of the
9    question, are reserved until the time of trial.)
10         - - -
11       MANFRED STERNBERG, ESQ., having been
12   first duly sworn, was examined and testified as
13   follows:
14         - - -
15       MR. LIGHTMAN:  I would just like the
16   record to reflect, without casting aspersions
17   because I like opposing counsel, that it's 9:11.
18   He was late due to traffic.  I'm just putting that
19   on the record just in case we have some sort of
20   time constraint in the future.
21         - - -
22         EXAMINATION
23         - - -
24   BY MR. LIGHTMAN:

3 (Pages 6 to 9)

Page 10

1  Q.   Good morning, Mr. Sternberg.  My name is
2  Gary Lightman of the law firm of Lightman &
3  Manochi.  I represent the plaintiff in the case
4  American Environmental trading as The SAFETY HOUSE.
5          I'm going to ask you a series of
6  questions today.  Make sure you understand my
7  questions.  If you don't, let me know and I'll do
8  whatever is necessary to make my questions clearer.
9          When you answer, please verbalize your
10  answer so that the court reporter, sitting between
11  us, can transcribe what you're saying.  Don't nod
12  your head.
13          Please answer each question as fully
14  and accurately and truthfully as possible but
15  please don't guess.
16          If you don't remember the answer or
17  don't recall the answer, don't know the answer,
18  they're perfectly acceptable responses except, of
19  course, if you do know or do remember.
20          Are my instructions clear so far?
21  A.   Yes.
22  Q.   Okay.  Are you suffering from any physical
23  or mental disability or under any drugs, alcohol or
24  other medications that would affect your ability to

Page 11

1  think logically and clearly and recall past events?
2  A.   No.
3  Q.   So if I ask you a question and you give me
4  an answer, I'm going to assume, first, that you
5  understood my question and, second, are answering
6  it fully, completely, truthfully and in accordance
7  with these instructions.  Okay?
8  A.   Yes.
9  Q.   You have the right, as every deponent does,
10  to invoke the Fifth Amendment privilege against
11  self-incrimination.
12          While that may have some protection in
13  criminal cases, in a civil case if you invoke the
14  Fifth Amendment in response to a question, the
15  Court can draw an adverse inference from your
16  refusal to answer the question on the basis of the
17  Fifth Amendment.
18          In other words, if I say to you did
19  you drink that -- isn't it true that you drank that
20  bottle of water sitting in front of you and you
21  invoke the Fifth, I can request and the Court
22  probably would draw an adverse inference that you
23  did, in fact, drink the water.
24          Do you understand that?

Page 12

1  A.   I understand what you said.
2  Q.   You're represented here by counsel.
3  Correct?
4  A.   Yes.
5  Q.   You're here today answering questions both
6  in your capacity as an individual defendant and as
7  the designated representative for Sternberg &
8  Associates, PC.  Correct?
9  A.   Manfred Sternberg & Associates, PC.
10  Q.   And both of those defendants are represented
11  by Seth Laver, your attorney sitting to your left.
12          Is that correct?
13  A.   That's correct.
14  Q.   Have you ever deposed anyone before?
15  A.   Yes.
16  Q.   How many times?
17  A.   I would have to guess.
18  Q.   More than 100?
19  A.   (No response.)
20  Q.   More than 50?
21  A.   Probably more than 50.
22  Q.   Have you ever been deposed before?
23  A.   I have.
24  Q.   How many times?

Page 13

1  A.   Two or three times.
2  Q.   Okay.  During the course of this case the
3  plaintiff served Interrogatories and document
4  requests on you.
5          You're aware of that.  Correct?
6  A.   Yes.
7  Q.   You reviewed and filed responses to the
8  document requests.  Correct?
9  A.   Yes.
10  Q.   Have you produced all non-privileged
11  documents other than the ones you redacted -- the
12  information redacted and the ones you withheld in
13  response to the document requests?
14  A.   I believe we have.
15          MR. LIGHTMAN:  Can we have this marked
16  as Sternberg 1, please.
17          (Exhibit Sternberg 1 was marked for
18  identification.)
19  BY MR. LIGHTMAN:
20  Q.   I've handed you a copy of the Second Amended
21  Deposition Notice which schedules your deposition
22  for today other than the change in location where
23  we're at now.
24          That was sent to you?

4 (Pages 10 to 13)

Page 14

1    A.   I believe, if this is the same copy --
2    Q.   Yes.
3    A.   -- that my lawyer sent to me, yes.
4    Q.   Okay.  And it asks you -- where are the
5    documents requested in that deposition notice?
6    A.   You'd have to point it out to me.
7    Q.   I will do that right now.
8         If you look at the deposition notice
9    beginning on page -- well, first, beginning on page
10   2 it says, "The matters to be inquired into as
11   respects Sternberg PC include the following:" and
12   then there's a list of categories that run through
13   page 8.  And then there's 1 through 45 and then
14   there's categories A through L.
15        Do you see that?
16   A.   On the bottom of page 9?
17   Q.   Yes -- no, no, at the bottom of page 8 to
18   the top of page 9.
19        And then it asks you to designate but
20   you've already agreed that you're the designated
21   representative.
22        And then underneath the 30(b)(6)
23   paragraph it says, "Take further notice that,
24   pursuant to Rules 30(b)(2) and 34 of the Federal

Page 15

1    Rules of Civil Procedure, each of the Sternberg
2    Defendant deponents are instructed to bring with
3    them to their deposition:" and it lists one, two,
4    three, four categories of documents.
5         Do you see that at the bottom of page
6    9 and the top of page 10 of your amended deposition
7    notice?
8    A.   Yes.
9    Q.   Where are those documents?  Do you have them
10   with you?
11   A.   I thought we had produced all the documents
12   in discovery.
13   Q.   Regardless of whether you produced documents
14   in discovery, the deposition notice instructs you
15   to bring documents to the deposition today.
16        Isn't it true that you have failed to
17   produce any documents today?
18        MR. LAVER:  Objection to form.
19        You can go ahead and answer.
20        THE WITNESS:  That's not true.
21   BY MR. LIGHTMAN:
22   Q.   Do you have documents with you today?
23   A.   You've already been given the documents.
24   Q.   My question is do you have documents with

Page 16

1    you today in response to the Second Amended
2    Deposition Notice?
3    A.   No.
4    Q.   Okay.  One more thing I forgot to say.
5         From time to time your attorney may
6    interpose an objection.  Wait until he's finished
7    creating the record and unless he instructs you not
8    to answer the question, after he makes his
9    objection, regardless of whether I respond to it --
10   most of the time I won't respond to it if he's just
11   creating a record and I reserve all my rights but
12   unless he instructs you not to answer, answer the
13   question.
14        Who is your client as respects to the
15   transaction involving The SAFETY HOUSE?
16   A.   Charlton Holdings.
17   Q.   Charlton Holdings, LLC?
18   A.   Yes.
19   Q.   And that is an LLC controlled by Sam Gross?
20   A.   I believe so.
21   Q.   Okay.  Where is the retainer agreement?  Do
22   you have a retainer agreement between you and CHG?
23   A.   I think we have a Fee Agreement, yes.
24   Q.   Where is that retainer agreement?

Page 17

1    A.   I think it's been produced.
2    Q.   No, it hasn't.
3         MR. LIGHTMAN:  And I request that you
4    produce that retainer agreement.
5         MR. LAVER:  I'll just note that if you
6    have any request for documents, just follow up with
7    me and we'll be sure to provide them.
8         MR. LIGHTMAN:  I will request on the
9    record and that will be the request for production,
10   but I will obviously follow up with an email to you
11   as well.  But I think that was requested within the
12   scope of the documents.
13   BY MR. LIGHTMAN:
14   Q.   What does your retainer agreement provide?
15   A.   It provides that my law firm is engaged by
16   the client to provide legal services on an hourly
17   basis.
18   Q.   And what's the hourly rate you're billing
19   him at?
20   A.   I'd have to look at the Fee Agreement.
21   Q.   I'm handing you a piece of paper and a pen.
22   Could you write your Social Security number on that
23   piece of paper, please.
24   A.   I mean, I can.

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 18

1  Q.  Please do.  I don't want to put it on the
2  record but please write your Social Security number
3  on that.
4  A.  (Witness complies.)
5          MR. LIGHTMAN:  Please mark this as
6  Sternberg 2.
7          (Exhibit Sternberg 2 was marked for
8  identification.)
9  BY MR. LIGHTMAN:
10  Q.  The first number, that's a 4?
11  A.  Yes, sir.
12  Q.  Okay.  Is Sam Gross your client?
13  A.  Sam Gross was the -- I believe the manager
14  of that LLC.
15  Q.  You said that Charlton, CHG -- I'll refer to
16  them as Charlton or CHG.
17          You said that Charlton or CHG was your
18  client.  Was Sam Gross also your client in
19  connection with this dispute?
20  A.  Not in connection with this dispute, no.
21  Q.  So in connection with any of the sales of
22  iCovid Test Kits to VRC, Hand Safety, The SAFETY
23  HOUSE, he was not your client.  It was only CHG.
24  Correct?

Page 19

1          THE WITNESS:  Yes.
2          MR. SCULLY:  A separate retainer.
3  BY MR. LIGHTMAN:
4  Q.  Correct?  Did you represent Sam Gross
5  individually in other matters?
6  A.  I don't believe so.
7  Q.  So to your knowledge, sitting here today,
8  your testimony is you never represented Sam Gross
9  individually.  Correct?
10  A.  I wouldn't say never but not...
11  Q.  As far as you can recollect.
12  A.  Well, not in regards to all of this, no.
13  Q.  How about Gary Weiss?  Is he your client?
14  A.  Certainly not.
15  Q.  Has he ever been?
16  A.  No.
17  Q.  How about ASolar, LLC or ASolarDiamond, LLC?
18  Have either one of those ever been your client?
19  A.  No.
20  Q.  Do you represent Taylor Panagakos,
21  P-a-n-a-g-a-k-o-s?
22  A.  No.
23  Q.  Have you ever represented her?
24  A.  No.

Page 20

1  Q.  Who is Taylor, to your knowledge?
2  A.  To the best of my knowledge, that's Sam
3  Gross' stepdaughter.
4  Q.  How about Stacey Panagakos?  Did you ever
5  represent her?
6  A.  No.
7  Q.  Who is Stacey?
8  A.  To the best of my knowledge, that's his
9  wife, Sam Gross' wife.
10  Q.  Do you represent Max Sternberg in connection
11  with the dispute that's the subject matter of this
12  action?
13  A.  Max Sternberg has nothing to do with any of
14  this.  He's my son.
15  Q.  So your testimony sworn under oath today is
16  that Max Sternberg had nothing to do at all with
17  any of the matters involved in this lawsuit?
18  A.  Other than he's my son and he's a lawyer and
19  I was -- I talk to him about most everything.
20  Q.  But you talked to him as your son.  Right?
21  Is he a lawyer involved in your representation of
22  CHG?
23  A.  No.
24  Q.  Okay.  Is he either individually, as your

Page 21

1  son or as a lawyer, involved in any of the matters
2  in this dispute?
3  A.  No.
4  Q.  Okay.  Was he involved at all in the
5  decision to get collateral from Gary Weiss or
6  ASolar at any time?
7  A.  No.
8  Q.  How about Molly Sternberg?  Do you represent
9  Molly Sternberg?
10  A.  That's my wife.
11  Q.  And does she have any involvement at all in
12  any of the subject matters of this dispute?
13  A.  When you say involvement, do I talk to them
14  about it at the dinner table?  Probably.
15  Q.  Other than talking, do they have any
16  official involvement in any of the matters in this?
17  A.  Neither one has any official involvement in
18  any of the matters that this lawsuit is about.
19          MR. LIGHTMAN:  Can we have this marked
20  as Deposition Exhibit 3, please.
21          (Exhibit Sternberg 3 was marked for
22  identification.)
23          MR. HEALEY:  Gary, you said this was
24  3?

6 (Pages 18 to 21)

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

---

Page 22

1      MR. LIGHTMAN: 3.
2      MR. HEALEY: What was 2?
3      MR. LIGHTMAN: Two was the yellow
4   piece of paper on which --
5      MR. HEALEY: Oh, the Social Security
6   number. Okay.
7   BY MR. LIGHTMAN:
8   Q.  Mr. Sternberg, I'll represent to you that
9   Deposition Exhibit Sternberg 3 is a true and
10  correct copy of the First Amended Complaint filed
11  by American Environmental Enterprises, Inc., doing
12  business as The SAFETY HOUSE, against you and your
13  law firm; Charlton Holdings Group; Sam Gross; Gary
14  Weiss; ASolar, LLC, which later was amended to
15  ASolarDiamond, LLC; Daphna Zekaria and Sokolski &
16  Zekaria, P.C.
17      You've seen this before. Correct?
18  A.  Yes.
19  Q.  By the way, have you ever represented Daphna
20  Zekaria or her law firm in connection with any of
21  the matters in this dispute?
22  A.  No.
23  Q.  You've read through this First Amended
24  Complaint. Correct?

---

Page 23

1   A.  In the past, yes.
2   Q.  And when the initial Complaint was filed,
3   the document that was attached to the initial
4   Complaint and that was attached to this as Exhibit
5   A is an unsigned copy of the SPA, correct, if you
6   look at Exhibit A?
7   A.  Yes.
8      MR. LAVER: Pardon me. Why does
9   Exhibit 1 not have the ticker on the top
10  identifying that it's been part of the filed
11  document?
12      MR. LIGHTMAN: Where are you referring
13  to? What portion?
14      MR. LAVER: Bear with me. If you look
15  at the first page, it says page 1 of 29.
16      MR. LIGHTMAN: Right.
17      MR. LAVER: And it includes the docket
18  number to establish that it was filed of record.
19      However, if you flip through Exhibit
20  1, it's unnumbered and it doesn't include that
21  ticker, which suggests to me that this is not the
22  complete copy of what was filed of record.
23      MR. LIGHTMAN: It does on the top of
24  this.

---

Page 24

1      MR. LAVER: Look at the next page.
2      Is this something you put together or
3   is this something that was printed --
4      MR. LIGHTMAN: No. That's a good
5   question. This was in my file and I have the other
6   exhibit. So I apologize for that and I will look
7   into that and correct it.
8      But I assure you that one was a copy
9   of the SPA. I will check that out. Thank you for
10  pointing that out.
11  BY MR. LIGHTMAN:
12  Q.  Both in the initial Complaint and in the
13  First Amended Complaint the document, the SPA --
14  when I say SPA, that's the Sales and Purchase
15  Agreement. Okay?
16  A.  Yes.
17  Q.  The SPA that was attached as an exhibit was
18  unsigned. Correct?
19  A.  I believe so.
20  Q.  Isn't it true that The SAFETY HOUSE was
21  never supplied with a copy of the fully-executed
22  SPA until after the First Amended Complaint was
23  filed?
24  A.  I have no idea.

---

Page 25

1   Q.  Isn't it true that the SPA was not signed
2   until at least after March 24, 2022?
3   A.  I don't believe that's true.
4   Q.  Why do you say that?
5   A.  Because SAFETY HOUSE wired money.
6   Q.  In February. Right?
7   A.  Yeah. I believe they had a signed --
8   Q.  Did you have a --
9   A.  May I finish answering? Can you ask the
10  question again?
11  Q.  Yes, my apologies.
12      Why do you believe that the SPA was
13  signed before March 24, 2022?
14  A.  Because that is what gave me the
15  instructions on what to do.
16  Q.  So is it your sworn testimony that you had a
17  copy of the fully signed SPA before March 24th?
18  A.  I don't remember the date but I have a fully
19  signed copy.
20  Q.  I know you have it now.
21      Did you have a fully signed copy of
22  the SPA in February when you made the four wire
23  transfers to Gary Weiss and Daphna Zekaria?
24  A.  I suspect I did.

---

7 (Pages 22 to 25)

Page 26

1    MR. LAVER:  Gary, do you intend to
2  mark as Exhibit 3 a copy of the Complaint as well
3  as a copy of your deposition outline?
4    MR. LIGHTMAN:  Oh, let me see it.
5  Okay.  We can go off the record for that.
6    (Discussion off the record.)
7    MR. LIGHTMAN:  Since it appears the
8  one that was marked is incomplete, I'm going to
9  take this deposition sticker 3 off and put it on
10  the actual full copy of it.  And, again, that has
11  headers missing and I will check into that.
12    I'd like to please mark this as
13  Deposition Exhibit Sternberg 4.
14    (Exhibit Sternberg 4 was marked for
15  identification.)
16  BY MR. LIGHTMAN:
17  Q.  Do you recognize this, Mr. Sternberg, as the
18  copy of the fully signed SPA with exhibits?
19  A.  Yes.
20  Q.  And if you look at the top of the second
21  page of this, it says, "Document 13-4 Filed
22  04/01/22 Page 2 of 10."
23    Do you see that?
24  A.  Yes.

Page 27

1  Q.  I will represent to you that Document 13 is
2  a copy of the Motion To Dismiss that the defendants
3  filed in response to the initial Complaint.
4    MR. LAVER:  Is there a reason that
5  pages 6 and 7 are missing?
6    MR. LIGHTMAN:  This is the way -- I'll
7  check but this is the way it came off of the --
8    MR. LAVER:  That's impossible.
9    MR. LIGHTMAN:  Hold on a second.
10    MR. LAVER:  We can go off the record.
11    (Discussion off the record.)
12    MR. LIGHTMAN:  Since 6 and 7 are
13  missing from some copies of this, I've taken
14  Exhibit 4 and put it on a copy that has all the
15  pages.
16  BY MR. LIGHTMAN:
17  Q.  Do you recognize that as a true and correct
18  copy of the SPA that is actually signed?
19  A.  It appears to be.
20    MR. LIGHTMAN:  Can we mark this as
21  Deposition Exhibit 5, Sternberg 5, please.
22    (Exhibit Sternberg 5 was marked for
23  identification.)
24    (Witness reviews exhibit.)

Page 28

1  BY MR. LIGHTMAN:
2  Q.  Deposition Exhibit Sternberg 5 is an email
3  from you, Subject: TheSafetyHouse v. Manfred
4  Sternberg, dated Thursday, March 24 from you to
5  Sam.  Correct?
6  A.  Correct.
7  Q.  It says there are nine attachments to this.
8  Correct?
9  A.  Yes.
10  Q.  For the record at the bottom left this also
11  shows Sternberg document number 132.  Correct?
12  A.  Correct.
13  Q.  I will represent to you that none of the
14  nine attachments have been included in the
15  Sternberg document production.
16    Can you tell me why?
17  A.  I believe my signature block has some
18  pictures or images like a phone, a fax, Board
19  certified, pro bono and one other, maybe, but
20  whatever those are --
21  Q.  So that's --
22  A.  If I can finish.  Okay.
23  Q.  Will you check?
24  A.  I'm not allowed to finish?

Page 29

1  Q.  I'm sorry.  Go ahead.  You believe it has
2  images.  Please finish your answer.
3  A.  I believe those were images that when it's
4  either sent or comes back, I get those images often
5  and all they are is pictures of logos.
6    MR. LAVER:  My signature does the same
7  thing.
8    MR. LIGHTMAN:  I would request that
9  you check the original of this and if there are any
10  attachments that aren't what you just said that
11  pertain to this lawsuit or other than images on a
12  signature, that you produce those.  Okay?
13    MR. LAVER:  We understand.
14    MR. LIGHTMAN:  Thank you.
15  BY MR. LIGHTMAN:
16  Q.  The first paragraph of this, on March 24
17  you're writing to Sam, quote, "Send me the fully
18  executed agreement with Safety House."
19    Do you see that?
20  A.  Yes.
21  Q.  So as of March 24 you did not have in your
22  possession a copy of the fully signed agreement
23  executed with The SAFETY HOUSE.  Correct?
24  A.  I did not have Sam's signature, correct.

8 (Pages 26 to 29)

Page 30

1    Q.   So you just testified less than five minutes
2    ago that you had a fully signed agreement before
3    you made the wire transfers in February.
4           Why did you give false testimony?
5           **MR. LAVER:**  Objection to form.
6           THE WITNESS:  I didn't give false
7    testimony.
8    BY MR. LIGHTMAN:
9    Q.   Explain that answer.
10   **A.   Because you asked me if I recalled and I**
11   **said -- I explained what I explained.  The record**
12   **will speak for itself.**
13          **But I will tell you that I had an**
14   **executed copy of it from SAFETY HOUSE, that SAFETY**
15   **HOUSE had signed it, and my client told me that he**
16   **signed it.  So I imagined he signed it.**
17          **But what I really needed was to have**
18   **SAFETY HOUSE's signature because they were a third**
19   **party, not my client.**
20   Q.   So you made four wire transfers totaling
21   about $2.5 million in February before you had in
22   your possession a fully executed copy of the
23   agreement.  Correct?
24   **A.   I had a copy that had Mr. Scully's signature**

Page 31

1    on it, I believe.
2    Q.   My question was so you made four wire
3    transfers from your attorney escrow account in
4    February totaling about $2.5 million before you had
5    a fully executed copy of the Sales and Purchase
6    Agreement in your possession.  Correct?
7    **A.   Before I had my client's signature, correct.**
8    Q.   And you write in here, "I also need the
9    fully executed contract with Keech's company Little
10   Cloud.
11          What is that all about?
12   **A.   I imagine that there was another contract**
13   **where I had the third party's signature but not my**
14   **client's.**
15   Q.   And that would be Little Cloud.  Right?
16   **A.   I assume that's correct.**
17   Q.   Then you write, "I am tired of asking for
18   things more than once.  I have other things to do
19   instead of chasing down shit that people promise me
20   but don't deliver."
21          Do you see that?
22   **A.   Yes.**
23   Q.   What do you mean by that?
24   **A.   Exactly what I said.**

Page 32

1    Q.   Why were you saying that to Sam?
2    **A.   Because I was following up on getting fully**
3    **executed contracts.**
4    Q.   Sam had told you, quote-unquote, promised
5    you shit but he didn't deliver.  Correct?
6    **A.   Yes.**
7    Q.   And that's why you were writing that to him.
8    Right?
9    **A.   Yes.**
10   Q.   Then you write in the next paragraph, quote,
11   "The GIA is now a problem."  Right?
12   **A.   Yes.**
13   Q.   What's the GIA?
14   **A.   I believe that's some sort of gemologist**
15   **type of certification.**
16   Q.   Okay.  And why do you say it's a problem?
17   **A.   I can only assume that it's because he told**
18   **me there was a GIA on a diamond that he sold to**
19   **someone and I wanted to see the GIA.**
20   Q.   And the GIA was for one of the diamonds that
21   Gary Weiss had delivered to you or him or both?
22   **A.   I don't believe so.  I believe it was a**
23   **different diamond that he sold to an attorney.**
24   Q.   Do you remember the attorney he sold it to?

Page 33

1    **A.   I only know his first name is Blake.  He was**
2    **getting engaged.**
3    Q.   And why were you involved in that?
4    **A.   Because Blake was getting engaged and**
5    **through my son asked me if I knew anybody that**
6    **could get him a diamond.**
7           **And both Sam and Gary were from the**
8    **diamond industry and they always said they could**
9    **get me diamonds.  And so I said, call Sam.**
10   Q.   Was Charlton in the diamond industry?
11   **A.   I don't know what their experience was in**
12   **the diamond industry, but Sam certainly represented**
13   **to me that he had a lot of experience in the**
14   **diamond industry.**
15   Q.   He also was convicted of a felony involving
16   embezzlement of diamonds.  Correct?
17   **A.   I don't know that.**
18   Q.   You've never heard that or...
19   **A.   I've heard that but I don't know that.**
20   Q.   You don't have any independent knowledge of
21   that but that's something you came to learn about
22   Sam?
23   **A.   People told me that, yes.**
24   Q.   Okay.  And, to your knowledge, did Charlton

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

---

Page 34

1  engage in the diamond business in any way?
2  **A.   I have no idea.**
3  Q.   To your knowledge, what business did
4  Charlton engage in?
5  **A.   My understanding was that they were in the**
6  **PPE, personal protection equipment, business.**
7  Q.   And in your memo, Sternberg 132, the one you
8  wrote -- emailed to Sam, in your email to Sam of
9  March 24, after you write, "The GIA is now a
10  problem," you write in capitals, "I WANT IT" with
11  five exclamation points.  Correct?
12  **A.   Six exclamation points.**
13  Q.   Six.  You had been asking for it and Sam has
14  been promising you but not delivering, stuff like
15  that.  Right?
16  **A.   Correct.**
17  Q.   Then you write, "Stop wasting my time on
18  bullshit things like this.  How fucking hard can
19  this be?"
20          MR. LIGHTMAN:  Excuse my language,
21  Ms. Court Reporter.
22  BY MR. LIGHTMAN:
23  Q.   "Your 30 minutes I'll get it today was
24  bullshit.  Your after dinner today I'm calling you

---

Page 35

1  was bullshit.  We are getting wires today was
2  bullshit.  Don't bullshit me.
3          "I have defended you all day and this
4  is the respect I am given?  My list of shit needs
5  to get done tomorrow or I shut down the only way I
6  know how to get" -- "the only way I know to get
7  what I need done, done.  I am tired of being
8  bullshited."
9          Do you see that?
10  **A.   Yes.**
11  Q.   What do you mean by that?
12  **A.   Exactly what I said.**
13  Q.   Has Sam been promising you things or to do
14  things or to deliver things to you that he hasn't
15  been coming through on?
16  **A.   Apparently so.**
17  Q.   And then you write, "Gary is part of that."
18  Right?
19  **A.   Yes.**
20  Q.   What do you mean by that?
21  **A.   Gary promised a lot of things as well to Sam**
22  **and also directly to me.**
23  Q.   And he never came through on that?
24  **A.   No.**

---

Page 36

1  Q.   Then you write, "I am tired of being the
2  only one that runs like a clock."
3          What does that mean?
4  **A.   I meet my obligations.**
5  Q.   And they don't.  Right?
6  **A.   (No response.)**
7  Q.   Then you ended, "I also want an accounting
8  of all the BOLs have been shipped."
9          Do you see that?
10  **A.   Yes.**
11  Q.   BOLs is Bills of Lading?
12  **A.   Yes.**
13  Q.   Did Sam ever give you an accounting of all
14  the BOLs that had been shipped?
15  **A.   I think he gave me an accounting but maybe**
16  **not of all of them.**
17  Q.   Okay.  Why didn't you produce that?
18  **A.   I don't know.**
19          MR. LIGHTMAN:  I'll make a request
20  that you produce the accounting that you testified
21  just now that Sam gave you.
22          THE WITNESS:  I think those BOLs have
23  been produced.  No?
24  BY MR. LIGHTMAN:

---

Page 37

1  Q.   The BOLs but you said, I want an accounting.
2  You said Sam gave me an accounting for some of the
3  BOLs.
4  **A.   I think it's the BOLs themselves.  I don't**
5  **think he knows how to use a spreadsheet.**
6  Q.   So when you just said, Sam gave me an
7  accounting, you weren't telling the truth?
8          MR. LAVER:  Objection to form.
9          THE WITNESS:  No, that's not true.
10  That's not true.
11  BY MR. LIGHTMAN:
12  Q.   The accounting you just referred to is
13  actually copies of the BOLs?
14  **A.   That's an accounting.**
15  Q.   Besides the BOLs -- you only gave us BOLs
16  involving alleged shipments of product to The
17  SAFETY HOUSE.  Correct?
18  **A.   I don't know.**
19  Q.   Well, check your records.  I will represent
20  to you that you only gave me four Bills of Lading
21  or alleged documents you claim were Bills of Lading
22  that were purported to be to The SAFETY HOUSE.
23          There were other alleged BOLs
24  involving shipment of product to VRC.  Correct?

---

10 (Pages 34 to 37)

Page 38

1  A.  I don't know.
2  Q.  You don't know whether product was shipped
3  to VRC?
4  A.  I was told it was shipped to VRC.
5  Q.  So if you were told it was shipped to VRC,
6  there would have had to have been a BOL involved in
7  that.  Correct?
8  A.  There should have been, yes.
9  Q.  How about Hand Safety?  Was there product
10  delivered to Hand Safety?
11  A.  I don't know.
12  Q.  How but Uyba County School District?
13  A.  I don't believe so.
14  Q.  You don't believe product was shipped to
15  Uyba County.  How about El Monte School District?
16  A.  I don't know those names.
17  Q.  You don't know those names.  How about
18  Nation Wide Medical Supplies?
19  A.  I don't know that name.
20      MR. LIGHTMAN:  So I would ask you
21  produce all Bills of Lading other than the four
22  that you gave to us involving The SAFETY HOUSE.
23      Can we mark this as Deposition Exhibit
24  Sternberg 6, please.

Page 39

1      (Exhibit Sternberg 6 was marked for
2  identification.)
3      (Witness reviews exhibit.)
4      MR. LAVER:  Pardon me.  I need a word
5  with my client.
6      MR. LIGHTMAN:  Sure.  We'll take a
7  short break.
8      (Recess taken 9:49 a.m. to 9:52 a.m.)
9      MR. LAVER:  Thank you for that.  We
10  can go back on the record.
11      Just note my objection to the use of
12  this exhibit given that this is a non-public,
13  confidential proceeding and any exhibits that come
14  out of that proceeding also are confidential.
15      With that said, you can ask the
16  witness questions about it.
17      MR. LIGHTMAN:  Thank you.  And just
18  for the record, you opened the door for us to use
19  this Texas Bar material because, first, Jason
20  Canaan (phonetic) represented to Judge Younge at
21  the September 7, 2022 Rule 16 conference that The
22  SAFETY HOUSE had filed this very complaint against
23  Manfred Sternberg and he further represented to
24  Judge Younge at that conference that the Texas Bar

Page 40

1  found in favor of Manfred Sternberg against the
2  complainant.
3      And, second, Manfred sent a copy of
4  the disciplinary complaint to Gary Weiss and also
5  sent him a copy of his 4-24 letter.  And you can
6  refer to Weiss Document 158 ETSI and Weiss 314
7  ETSI.
8      They're copies of the Complaint and
9  Mr. Sternberg's 4-24 response and also sent -- and
10  Gary Weiss produced his copy of these
11  documents to us in discovery.
12      And, third, Manfred Sternberg sent a
13  copy of the Disciplinary Complaint to Sam Gross and
14  also sent him a copy of this April 24th letter and
15  Sam Gross produced portions of this in his
16  discovery.
17      But we'll preserve the record and you
18  can do what you need to do.
19      MR. LAVER:  That's fine, but I'll just
20  respond to the four or five points you made, none
21  of which have any bearing on whether this becomes a
22  non-confidential document.
23      MR. LIGHTMAN:  He disclosed --
24      MR. LAVER:  That's irrelevant.

Page 41

1      MR. LIGHTMAN:  -- the proceeding to
2  the judge and disclosed it to third parties who he
3  doesn't represent.
4      I respectfully submit that you do the
5  research because your client does breach
6  confidentiality.
7      MR. LAVER:  I provided you with my
8  research and you didn't respond presumably because
9  you know that we're correct.
10      MR. LIGHTMAN:  We can agree to
11  disagree.  I don't think your research was correct.
12  BY MR. LIGHTMAN:
13  Q.  If you look at paragraph two of this April
14  24th letter, you represent to the Office of the
15  Chief Disciplinary Counsel of the State Bar of
16  Texas, quote, "There are a number of omissions and
17  outright misrepresentations of material fact in
18  Mr. Dan Scully's ('Scully') complaint..."
19      Do you see that?
20  A.  Yes.
21  Q.  Do you state under oath today that statement
22  you made to the Texas Bar is true and correct?
23  A.  Yes.
24  Q.  Do you still maintain that the Complaint

11 (Pages 38 to 41)

Page 42

1  filed by The SAFETY HOUSE with the Texas Bar has,
2  quote, "a number of omissions and
3  misrepresentations"?
4  **A.   Why don't you show me the Complaint.**
5  Q.   Do you still maintain today the statement
6  you made in your April 24th letter that there are a
7  number of omissions and misrepresentations made by
8  The SAFETY HOUSE in its Complaint?
9  **A.   If you show me the Complaint, I could tell**
10 **you.**
11 Q.   Okay.  So, without looking at the Complaint,
12 you can't state whether that statement is true?
13 **A.   I have no reason to believe that that's not**
14 **true.**
15 Q.   Okay.  Isn't it true that you were the one
16 who made omissions of material fact in your April
17 24th letter?
18 **A.   I don't believe so.**
19 Q.   Isn't it true that you were the one who made
20 outright misrepresentations of material fact in
21 your April 24th letter?
22 **A.   I don't believe so.**
23 Q.   So you are denying under oath today that you
24 made any misrepresentations of material fact or

Page 43

1  omissions of material fact in your April 24th
2  response to the Texas Bar?
3          **MR. LAVER:**  Objection to form.  You've
4  asked it now three times and he'll answer it the
5  same way.
6  BY MR. LIGHTMAN:
7  Q.   Is that correct?
8  **A.   Same answer.**
9  Q.   On page 2 of this letter to the Bar, you
10 write, quote, "Notably, the fully executed SPA was
11 omitted from the Complaint filed with your office
12 by Scully..."
13      Do you see that?
14 **A.   Yes.**
15 Q.   And you attach as Exhibit A to your April
16 24th letter a copy of the fully executed Sales and
17 Purchase Agreement.  Correct?
18 **A.   Correct.**
19 Q.   Go to Exhibit A, please, if you will.  And
20 if you look at the top of this Exhibit A, it's the
21 same header, Document 13-4, that appeared in the
22 signed copy of Exhibit A that I showed you.
23 Correct?
24 **A.   I assume so, yes.**

Page 44

1  Q.   So you took the exhibit of the fully
2  executed SPA that you filed in your Motion To
3  Dismiss and you sent a copy of that to the Bar.
4  Right?
5  **A.   I assume so.**
6  Q.   If you look in Exhibit A to your letter, if
7  you look at the document that says page 5 of 10,
8  the one you have in front of you, that appears to
9  be a screen shot of Sam Gross' signature on behalf
10 of Charlton right above where Daniel Scully signed
11 on behalf of The SAFETY HOUSE.  Right?
12 **A.   Yes.**
13 Q.   So how did you get this screen shot?
14 **A.   I assume I got it pursuant to Exhibit 5 in**
15 **March 24.**
16 Q.   You didn't have it as of March 24th.  In
17 your email to Sam when you said give me a copy, I'm
18 tired of asking you for stuff and you don't give it
19 to me, you didn't have it then.
20      Sometime between March 24, when you
21 said to Sam give me a copy of the fully executed
22 SPA, and April 24, when you sent a fully executed
23 copy of it, you obtained this.  Correct?
24 **A.   Yes.**

Page 45

1  Q.   How did you obtain it from Sam?  Did he
2  email it to you?  Did he take a screen shot and
3  text it to you?  Did he hand it to you in person?
4  **A.   No.  I've never met him.**
5  Q.   You've never met him.  Okay.
6      So it had to have been either through
7  the mail, through a text or through an email.
8  Correct?
9  **A.   I would assume so, yes.**
10 Q.   Where is that document?  You produced the
11 signature page, the screen shot.  Where is the
12 transmittal letter to this signature page?
13      **MR. LAVER:**  Objection.
14 BY MR. LIGHTMAN:
15 Q.   That would tell us when you got it from Sam
16 Gross.  Correct?
17      **MR. LAVER:**  Excuse me.  Objection to
18 form.
19      THE WITNESS:  Well, that assumes
20 there's a transmittal letter.
21 BY MR. LIGHTMAN:
22 Q.   You're right.  He could have just sent it by
23 a screen shot in a text.  Correct?
24 **A.   He could have, yes.**

Page 46

1    Q.  But you would have had a text showing that.
2  Right?
3    A.  **It seems like that's a communication with**
4  **my --**
5    Q.  Okay.  If he sent it to you in an email --
6    A.  **I won't answer the question.**
7    Q.  I'm sorry.
8          MR. LAVER:  You're speaking over each
9  other.
10  BY MR. LIGHTMAN:
11    Q.  It's just a yes or no answer.  I'll ask it
12  again.
13          If he sent it to you via text, you
14  would have had the text of that screen shot being
15  sent to you.  Correct?
16    A.  **Probably.**
17    Q.  Okay.  If he sent it to you in an email, you
18  would have that email where he said here's the
19  signed signature page.  Correct?
20    A.  **Probably.**
21    Q.  Have you deleted any texts or deleted any
22  emails in connection with this dispute?
23    A.  **I don't believe so.**
24    Q.  Okay.  So we don't have a spoilation issue,

Page 47

1  thank God, but why didn't you produce the text copy
2  of this or the email containing this?
3    A.  **Maybe I don't have one.  I don't know.**
4    Q.  Maybe it says, here, I finally signed it and
5  you didn't produce it.  That's an equally plausible
6  explanation.  Right?
7          MR. LAVER:  Objection to form.
8          THE WITNESS:  If you're going to
9  testify...
10          MR. LIGHTMAN:  I'll make a request
11  that you produce the transmittal of Sam Gross'
12  signature page, whether it's a text, print out the
13  text.  If it's an email, I'd like to see the email.
14  BY MR. LIGHTMAN:
15    Q.  Okay?
16    A.  **Okay.**
17    Q.  If it's a letter, I'd like to see the
18  letter.  So you've never met Sam Gross?
19    A.  **Not personally.**
20          MR. LAVER:  Off the record for a
21  second.
22          (Discussion off the record.)
23  BY MR. LIGHTMAN:
24    Q.  You never tell the Texas Bar that the SAFETY

Page 48

1  HOUSE claimed they never were supplied with a fully
2  executed copy of the agreement.  Correct?
3    A.  **SAFETY HOUSE, I don't know what they said.**
4    Q.  You don't know what SAFETY HOUSE said?
5    A.  **No.**
6    Q.  Turn to Deposition Exhibit 3, the Complaint
7  that was filed.
8    A.  **Okay.**
9    Q.  Turn to paragraph 32 of the First Amended
10  Complaint.
11    A.  **Okay.**
12    Q.  What does paragraph 32 say?
13    A.  **"To date, Plaintiff has not received the**
14  **signed Agreement from the Gross and Sternberg**
15  **Attorney Defendants, which further evidences that**
16  **these Defendants never intended to perform under**
17  **the Agreement."**
18    Q.  I'll represent to you that statement is in
19  the initial Complaint filed as well.
20          So you knew when SAFETY HOUSE filed
21  its Complaint that it was claiming they never got a
22  copy of the fully executed agreement.  Correct?
23    A.  **They were claiming a lot of things.**
24    Q.  You knew that SAFETY HOUSE was claiming when

Page 49

1  they filed this lawsuit in February of 2022 that
2  they never -- that SAFETY HOUSE claimed they never
3  were supplied with a fully executed copy of the SPA
4  from either you or Sam Gross.  Correct?
5    A.  **It wasn't my job to give it to them.**
6    Q.  I didn't ask whose job it was to give it to
7  them.
8          I said you knew from what SAFETY HOUSE
9  claimed in its Complaint that they never -- they
10  claimed they never got a copy of the Complaint, of
11  the fully executed SPA.  Correct?
12    A.  **It says what it says.**
13    Q.  That's what it says.  Right?
14    A.  **That's what it says.**
15    Q.  When you're writing to the Texas Bar and
16  telling them the fully executed SPA was omitted
17  from the Complaint, you write, "In fairness, it
18  should be considered..."
19          In fairness to make your
20  representations to the Texas Bar not misleading,
21  did you tell them that Scully or The SAFETY HOUSE
22  claimed they never got a copy of the fully executed
23  Complaint?
24    A.  **What was the date of his Complaint?**

13 (Pages 46 to 49)

Page 50

1  Q.  His Complaint was filed February --
2  A.  No, not the lawsuit, his Complaint to the
3  Bar.
4  Q.  It was before -- that's a good question.
5  A.  Yeah.
6  Q.  Hold on.
7  A.  Before you call me a liar, you should find
8  that date out.
9  Q.  I will represent to you that The SAFETY
10 HOUSE complaint was submitted to the Texas Bar
11 March of 2022.
12 A.  March what?
13 Q.  March of 2022?
14 A.  March what date?
15 Q.  I have March 10 in my notes here, so on or
16 about March 10.  Okay?
17      When you wrote your response to the
18 Bar, you knew that SAFETY HOUSE had filed a
19 Complaint in which they claimed in a Federal Court
20 filing that they never received a copy of the
21 Complaint.  Right?
22 A.  I knew that's what they claimed.
23 Q.  Okay.  You write to the Texas Bar in your
24 April 24th letter, "Notably, the fully executed SPA

Page 51

1  was omitted from the Complaint..."  Right?
2  A.  Correct.
3  Q.  Yet you failed to tell the Texas Bar that's
4  because The SAFETY HOUSE claimed they never got a
5  copy of it.  Correct?
6  A.  I don't know, I don't know what they claimed
7  they didn't have a copy of.
8  Q.  You failed to tell the Texas Bar right after
9  you said the fully executed SPA was omitted from
10 the Complaint, in fairness, it should be
11 considered.
12      You didn't say, here's a copy of it.
13 You didn't tell them that when SAFETY HOUSE filed
14 its Complaint, they claimed they never got supplied
15 with a copy of that fully executed SPA, did you?
16 A.  Which Complaint, the Complaint in Federal
17 Court or the Complaint to the grievance?
18 Q.  When SAFETY HOUSE filed its Complaint in
19 Federal Court in February and stated in there that
20 they never got a copy of the fully executed SPA,
21 you knew that when you wrote this letter to the
22 Texas Bar on April 24.  Correct?
23 A.  I knew what?
24 Q.  You knew that SAFETY HOUSE had filed a

Page 52

1  Complaint in February in Federal Court claiming
2  they never got supplied with a fully executed copy
3  of the SPA.  Correct?
4  A.  They didn't file the one in Federal Court
5  that had Mr. Scully's signature, if I recall
6  correctly.
7  Q.  They claimed in paragraph 32 that they never
8  were supplied with a fully executed copy of the
9  SPA.  Correct?
10 A.  That's what they said.
11 Q.  They made that representation in a Federal
12 Court pleading in February of 2022.  Correct?
13 A.  That's what it says.
14 Q.  You knew in April, on April 24, when you
15 wrote your response to the Texas Bar, you knew that
16 that's what The SAFETY HOUSE had claimed in their
17 Federal Court Complaint.  Right?
18 A.  They were misleading in their Complaint
19 because they didn't sign the -- send the one that
20 they did have.
21 Q.  Look at paragraph 32.  What does -- it's
22 right there.  What does paragraph 32 say?
23 A.  It has not received a signed agreement from
24 Gross and Sternberg Defendants.

Page 53

1  Q.  It doesn't say I didn't sign it.  It says as
2  of the filing of the Complaint they never received
3  a copy of the agreement signed by Sam Gross'
4  company.  Right?
5  A.  But they didn't provide it to the Federal
6  Court, the one they did sign, which they did have.
7  Q.  They didn't -- they wrote in their Complaint
8  we never got a copy of the contract signed by Sam.
9  Right?
10 A.  But they had a signed agreement.
11 Q.  They signed it.  SAFETY HOUSE signed it.
12 Correct?
13 A.  Thank you.  Thank you.  They signed it.
14 Q.  "They" meaning SAFETY HOUSE.  Right?
15 A.  SAFETY HOUSE signed it.
16 Q.  Sam didn't sign it on behalf of the seller.
17 Correct?
18 A.  Apparently he did.
19 Q.  After the fact.  You didn't have it as of
20 March 24 --
21      MR. LAVER:  Why are you yelling?
22 You're badgering the witness.
23      MR. LIGHTMAN:  Because he's not
24 answering the question.

14 (Pages 50 to 53)

Page 54

1    **MR. LAVER:** He is. Calm down and ask.
2    BY MR. LIGHTMAN:
3    Q.   When SAFETY HOUSE filed its Complaint in
4    February, they claimed that Sam -- Sam had
5    not supplied them with a copy of the SPA signed by
6    the seller. Correct?
7    **A.   That's not what it says.**
8    Q.   What does it say?
9    **A.   It doesn't say signed by the seller, does**
10   **it? It says what it says.**
11   Q.   It says they were never supplied with a copy
12   of the fully executed contract. Right?
13   **A.   That's not what it says. That's like the**
14   **third misrepresentation this morning. That's not**
15   **what it says. Let me read 32 to you.**
16   Q.   Okay.
17   **A.   "To date, Plaintiff has not received the**
18   **signed Agreement from the Gross and Sternberg**
19   **Attorney Defendants, which further evidences that**
20   **these Defendants never intended to perform under**
21   **the Agreement."**
22   **That's not what you just said.**
23   Q.   Okay. So when Scully or, excuse me, when
24   SAFETY HOUSE filed the lawsuit in February, they

Page 55

1    claimed in their Federal Court filing that to date
2    they had not received a copy of the signed contract
3    from you or your law firm or Gross or his LLC.
4    Correct?
5    **A.   That's what they claimed.**
6    Q.   That's what they claimed.
7    And you knew that on April 24th when
8    you wrote to the Texas Bar. Right?
9    **A.   I knew I had a signed copy from the**
10   **complainant. Yes, I knew that.**
11   Q.   But you also knew that SAFETY HOUSE, the
12   buyer, claimed that the seller never supplied them
13   with a fully signed contract. Right?
14   **A.   I don't ensure what the seller does or**
15   **doesn't do. I don't know what they do. That's not**
16   **me.**
17   Q.   My question wasn't who ensured what.
18   My question was when you wrote to the
19   Bar on April 24th and said the fully executed SPA
20   was omitted from the Complaint, you didn't tell
21   them that's because the buyer claimed they never
22   had received a copy of it. Correct?
23   **A.   I don't know what he got or he didn't get.**
24   **I knew I had it at the time I responded to the**

Page 56

1    **Complaint. And I would think that he would have at**
2    **least sent the grievance committee the one that he**
3    **signed but he didn't. He didn't.**
4    **He signed -- he sent the grievance**
5    **committee a fully unsigned contract, which is**
6    **misleading. It makes it look as though he didn't**
7    **do anything. At that point he had agreed to the**
8    **contract.**
9    Q.   You knew -- that's not the question.
10   Touche, but it's not my question. Okay?
11   When you said to the Bar the fully
12   executed SPA was omitted from the Complaint, you
13   knew that's because SAFETY HOUSE was claiming
14   they never got a fully executed copy. Correct?
15   **A.   I said "omitted from the Complaint filed**
16   **with your office," but you won't show me the**
17   **Complaint.**
18   **So I'm talking about a different**
19   **Complaint and you're confusing two things to try to**
20   **make me look like I'm lying to the Bar, which**
21   **you've got to show me the Complaint and I can**
22   **answer that.**
23   Q.   Isn't it true that you failed to tell the
24   Texas Bar that the SAFETY HOUSE was claiming it

Page 57

1    never got a copy of the fully signed SPA when it
2    filed its Complaint in court and when it filed its
3    disciplinary complaint?
4    Isn't that true, that that's what the
5    position of The SAFETY HOUSE was?
6    **A.   I said, I said "...was omitted from the**
7    **Complaint filed with your office." That's not --**
8    Q.   That's not what?
9    **A.   That's not the lawsuit.**
10   Q.   I understand that.
11   **A.   That's a different complaint and it was**
12   **omitted.**
13   Q.   Because --
14   **A.   And he omitted the one that he signed. Do**
15   **you think that's fair?**
16   Q.   But he didn't have one signed by your
17   client. Right?
18   **A.   He didn't even send the one he did have**
19   **signed.**
20   Q.   Answer my question. He didn't -- SAFETY
21   HOUSE didn't have a copy of the fully executed SPA
22   when it made its complaint with the Bar.
23   That's what their position is.
24   Correct?

15 (Pages 54 to 57)

Page 58

1    A.   By April 24th he did.
2    Q.   How did he have it on April 24th?  Because
3    you sent him a copy of your response.
4    A.   I didn't send him one.
5    Q.   The Bar sent him one.  Right?
6         Yes or no, when The SAFETY HOUSE made
7    a Complaint with the Texas Bar in March, did you
8    know that The SAFETY HOUSE was claiming it didn't
9    have a copy of the fully executed SPA?
10   A.   I think I've answered that and the answer is
11   the same as it was before.
12   Q.   You said they --
13   A.   I don't know what they knew.
14        MR. LAVER:  Let him finish.
15        THE WITNESS:  I knew what they filed
16   and what they complained about.  I knew that.
17   BY MR. LIGHTMAN:
18   Q.   When you knew what they filed, you knew what
19   they complained about.
20        You also knew that they were claiming,
21   whether you believe it or not, that they were
22   claiming they didn't have a copy of the fully
23   executed SPA.  Correct?
24   A.   You keep saying fully executed.  Where are

Page 59

1    those words, please?
2    Q.   The fully executed SPA, your words.  You
3    said, "Notably, the fully executed SPA was omitted
4    from the Complaint filed with your office..."
5    A.   Correct.
6    Q.   When the Complaint was filed by The SAFETY
7    HOUSE with the Texas Bar, isn't it true that The
8    SAFETY HOUSE was claiming they didn't have a copy
9    of the fully executed SPA?
10   A.   On the date they filed the Complaint, they
11   had a copy, at least, of the contract with their
12   signature.
13   Q.   So your answer to my question is that's
14   correct?
15   A.   I don't know what your question is.
16   Q.   My question is in order for the SPA to be
17   fully executed, it had to be signed both by Dan on
18   behalf of the buyer and Sam on behalf of the
19   seller.  Correct?
20   A.   That's correct.
21   Q.   That constitutes a fully executed SPA.
22   Correct?
23   A.   Agreed.
24   Q.   They claim -- you write, "The fully executed

Page 60

1    SPA was omitted from the Complaint filed with your
2    office by Scully..."  Right?
3    A.   Correct.
4    Q.   You claim he had signed it but he didn't
5    even submit that.  Right?
6    A.   Correct.
7    Q.   But he also never had a copy of the SPA
8    signed by Sam when he made his complaint.  Correct?
9    A.   You would have to depose him to ask him.  I
10   don't know what he had or what he didn't have.
11   Q.   To your knowledge, that's the position
12   SAFETY HOUSE was taking.  Right?
13   A.   I wanted the Bar to have a fully executed
14   copy.
15   Q.   Please answer my question.  Do you need it
16   read back?
17        My question wasn't did you want the
18   Bar to have a fully executed copy.  My question was
19   you knew when you wrote this to the Bar that SAFETY
20   HOUSE was claiming that they never had a copy of
21   the SPA signed by Sam.  Correct?
22   A.   I don't know what I knew.
23   Q.   Really?
24   A.   I don't know what I knew.

Page 61

1    Q.   That's your sworn testimony under oath?  You
2    didn't know what you knew?
3    A.   No.  I mean, I don't know what he, what he
4    thought he had or didn't have.  But what I -- and
5    you're twisting it but what I do know --
6    Q.   I'm not twisting it.
7    A.   -- it says what it says, doesn't it?
8    Q.   It says what it says, you're right.
9         And every time I asked you about fully
10   executed, your response was, well, Scully didn't
11   submit his copy that he signed.
12        But he never had a copy of Sam's
13   signature to submit.  Right?
14   A.   And you think that's okay for him to sign an
15   unexecuted, completely unexecuted copy to the Bar
16   and that's the truth?
17   Q.   And you think it's okay for you to tell the
18   Bar, notably, the fully executed SPA was omitted
19   from his Complaint without also telling the Bar
20   that's because they claimed they never got Sam's
21   signature?
22   A.   I don't know what they claim.  I don't
23   believe any --
24   Q.   Do you think that's fair?

Page 62

1   A.   Yes.
2   Q.   You think that's not an omission?
3   A.   No.
4   Q.   Okay.  In your letter on page 2 you write,
5   quote, "There was no responsibility by undersigned
6   counsel to provide Scully or his counsel a fully
7   executed copy of the contract, and no such request
8   was made to the undersigned by Scully or his
9   counsel Mr. Lightman at any time." Correct?
10  A.   Correct.
11  Q.   So under oath you're claiming when you wrote
12  to the Bar, we never made a request for you to send
13  us a fully executed copy of the contract?
14       That's your testimony under oath here
15  today?
16  A.   Number one, this letter is not under oath.
17  So that's a misrepresentation.
18  Q.   No, no.  I didn't ask you that.
19  A.   Yes, you did.
20  Q.   I said --
21  A.   Let the court reporter read it back --
22  Q.   Repeat the question back.
23  A.   -- and then you can apologize to me.
24       (The court reporter read back the

Page 63

1   following:
2       "Q.  So under oath you're claiming
3   when you wrote to the Bar, we never made a request
4   for you to send us a fully executed copy of the
5   contract?
6       "That's your testimony under oath here
7   today?"
8   BY MR. LIGHTMAN:
9   Q.   Here today.  Are you testifying here today
10  under oath that when you told the Texas Bar on
11  April 24th no request was made to you by Scully or
12  his attorney, Mr. Lightman, at any time for a copy
13  of the fully executed contract, that is a
14  correct representation of fact?
15  A.   You'd have to show me where the request was
16  made.
17  Q.   You wrote to the Bar on April 24th no
18  request was made to you by Scully or Lightman at
19  any time for a copy of the -- for a fully executed
20  copy of the contract.
21       That's what you wrote to the Bar on
22  April 24th.  Correct?
23  A.   It says what it says.
24  Q.   Did I read it wrong?  That's what it says.

Page 64

1   Right?
2   A.   It says what it says.
3   Q.   Okay.  And when you made that
4   representation, was that an honest representation
5   or a false representation?
6   A.   I'm not sure whether a request was made.
7   Show me where --
8   Q.   You're not -- I'm sorry.
9   A.   Show me where it was made.
10  Q.   So you're telling me, sitting here today,
11  that you don't know whether that representation you
12  made in your April 24th letter was true or not?
13  A.   No.
14  Q.   What are you telling me?
15  A.   I'm asking you to please show me the
16  evidence that that's not true.
17  Q.   We'll get to that.  First I want to know,
18  when you told the Texas Bar on April 24th, when you
19  represented to them "No such request was made to
20  the undersigned by Scully or his counsel
21  Mr. Lightman at any time," referring to providing
22  Scully or his counsel a fully executed copy of the
23  contract, was that a true representation you made
24  to the Bar on April 24th?

Page 65

1   A.   You'd have to show me where the request was
2   made.
3   Q.   So your answer, sworn answer, is I can't
4   answer that without seeing other documents?
5   A.   This was written two years ago.
6   Q.   Sitting here today, to the best of your
7   recollection, was that a true representation that
8   you made to the Bar?
9   A.   To the best of my recollection, yeah.
10  Q.   To the best of your recollection, okay.
11       Let's talk about the SPA and its
12  terms.  Do you have Deposition Exhibit 4 in front
13  of you?
14  A.   I do.
15  Q.   Wait.  Before we do that, okay, let's talk
16  about the SPA and its terms.
17       This is a form that you created.
18  Right?
19  A.   What are you talking about?
20  Q.   The SPA is a form document that you created.
21  Correct?
22  A.   I edited it, yes.
23  Q.   Edited it or created it?
24  A.   Edited it.

17 (Pages 62 to 65)

Page 66

1  Q.   You didn't create this?
2  A.   I edited it.
3  Q.   Who created the document then?
4  A.   I don't know who created it.  I edited it.
5  Q.   Really?  Go to page 1 of your April 24th
6  letter, Deposition Exhibit 6.
7          So in the fourth paragraph of your
8  letter, when you write to the Bar on April 24th, "I
9  am not, nor is our law firm, a party nor signatory
10  to the contract, although we drafted the Sale and
11  Purchase Agreement ('SPA') at Charlton's request,"
12  you were lying to the Bar when you made that
13  statement?
14          MR. LAVER:  Objection to form.  Stop
15  it.
16          THE WITNESS:  You've got to stop
17  saying I'm lying to the Bar.
18          Mr. Lightman, did you misrepresent
19  these documents to me this morning?  The answer is
20  yes, you did.
21  BY MR. LIGHTMAN:
22  Q.   Mr. Sternberg --
23          MR. LAVER:  Let him finish.
24          THE WITNESS:  Let me finish.  Let me

Page 67

1  finish.  And then you said, did you create the
2  document?  That was your words.  Correct?
3          Am I misunderstanding your question?
4  You said, did you create it?  I said, I edited it.
5  You asked me again.  I said, I edited it.
6          Now you're saying that I said I
7  created it.  I said, "although we drafted the Sale
8  and Purchase Agreement," that's what it says.
9  BY MR. LIGHTMAN:
10  Q.   So you didn't just edit it, you drafted it?
11  A.   Well, what's the difference?
12  Q.   What's the difference between editing
13  something and creating something?
14  A.   Well, you keep saying creating.
15  Q.   I'm sorry.  Is there a difference between
16  creating something and drafting something?
17  A.   I believe so.
18  Q.   What's the difference?
19  A.   I think creating something is something that
20  you create all yourself and drafting can be -- do
21  you ever use forms?  I know you probably don't use
22  forms but often I do.  And what I do is I edit
23  them.
24          And you could call that drafting.  You

Page 68

1  could call that editing, but you can't call it
2  creating because I didn't create it.  I drafted it.
3  I edited it.  I admit to that.
4  Q.   So now you admit you drafted it and edited
5  it.  Right?
6  A.   I admitted to editing it before.
7  Q.   But you didn't admit to drafting it.  Before
8  you denied it, but we'll let the record speak for
9  itself.
10  A.   No, we'll let the record speak for itself
11  that you asked me if I created it.  That was your
12  words.
13  Q.   That's right.
14  A.   Your words.
15  Q.   If you take a form off of the Internet and
16  edit it, that's creating the SPA.
17  A.   That's your opinion.  Good.  But you used
18  the word create and I answered you.
19          And you're trying to say, whoa, draft
20  means something different.  Use your words
21  carefully, please, when you ask me questions.
22  Q.   This is a form that you drafted.  Correct?
23  A.   That's what it says.
24  Q.   Okay.  Is this the form of SPA that was used

Page 69

1  in The SAFETY HOUSE deal?
2  A.   I believe so.
3  Q.   Is this the form of SPA used in other deals
4  involving other purchases of COVID test kits or
5  surgical masks or other --
6  A.   Probably.
7  Q.   Okay.  And is it the form of SPA used in
8  connection with the VRC transaction?
9  A.   I don't know.
10  Q.   And is it true this is a form of the SPA
11  used in connection with the transaction involving
12  David Wright and ROI Global Partners?
13  A.   I don't know.
14          MR. LIGHTMAN:  We'll mark this as
15  Deposition Exhibit 7.
16          (Exhibit Sternberg 7 was marked for
17  identification.)
18  BY MR. LIGHTMAN:
19  Q.   Can you identify Deposition Exhibit 7 for
20  the record?
21  A.   It looks like a SPA agreement dated August
22  2, 2021.
23  Q.   Between Charlton as the seller, Party A?
24  A.   Yes.

18 (Pages 66 to 69)

Page 70

1  Q.   And ROI Global Partners as Party B?
2  A.   Yes.
3  Q.   And in this your client, Charlton, agreed to
4  sell 24 million boxes of 50-count Everwin High
5  Performance Procedure 3-ply Level 3 masks to ROI
6  for $25,200,000.  Correct?
7  A.   Yes.
8  Q.   And this is the same form of SPA as appears
9  to be used for The SAFETY HOUSE agreement.
10  Correct?
11  A.   It appears to be.
12  Q.   And did this agreement ever come to
13  fruition?
14  A.   I would have remembered it, so the answer
15  would be no.
16  Q.   And if you look at this, on page 3 of this
17  document, do you see Mr. Gross' signature on this?
18  A.   No.
19  Q.   Is that the standard modus operandi for your
20  client is you get these buyers to sign these things
21  and Sam Gross doesn't sign them until absolutely
22  necessary?
23  A.   I wouldn't say that's standard operating
24  procedure.

Page 71

1  Q.   But he did that on at least two instances
2  that we've seen now.  Right?
3  A.   That's what it appears.
4      MR. LAVER:  Gary, where did this come
5  from?  Was this part of Charlton's production?
6      MR. LIGHTMAN:  No.  This came from --
7      MR. LAVER:  Was this produced in this
8  litigation?
9      MR. LIGHTMAN:  By David Wright.
10      MR. LAVER:  Okay.
11      MR. LIGHTMAN:  Sam knows who David
12  Wright is.  He should know.
13  BY MR. LIGHTMAN:
14  Q.   Do you know who David Wright is?
15  A.   I remember the name.
16  Q.   You had conversations with David Wright.
17  Right?
18  A.   I remember the name.  You'd have to refresh
19  my memory as to who he is.
20  Q.   He wired $25,000 into your attorney escrow
21  account.  Correct?
22  A.   I don't think he did.
23  Q.   ROI did.  Correct?
24  A.   I don't know if ROI did or didn't.

Page 72

1  Q.   Someone did in connection with this SPA.
2  Correct?
3  A.   I would assume so if...
4  Q.   Therewin never got any goods -- I'm sorry.  If
5  what?  Were you finished?
6  A.   I'm not sure what they did.  Did they wire?
7  What did they wire?
8  Q.   They wired 25,000 into your attorney escrow
9  account.
10  A.   All right.  Well, this is a $25 million
11  contract.
12  Q.   Right.  According to David Wright, he wired
13  $25,000 into your attorney escrow account.
14      Do you recall that?
15  A.   Again, I don't recall David Wright wiring me
16  money.
17  Q.   David Wright said he wired you 25,000.  The
18  person he arranged -- he was a broker for this
19  deal.  He never got -- his client never got any
20  goods.  They never got the $25,000 back.
21      Do you have any recollection of that?
22  A.   No.
23  Q.   Okay.  Let's talk about VRC.  Do you know
24  who VRC Medical Supplies are?

Page 73

1  A.   No.
2  Q.   You don't?
3  A.   I mean, I know the name.
4  Q.   You know the name.  Do you know who Randy
5  Adler is?
6  A.   Yeah, Randy Adler I do.
7  Q.   Who is he?
8  A.   He's an attorney.
9  Q.   He represented VRC at one point.  Correct?
10  A.   I don't recall.
11  Q.   Okay.  How about Bill Berman?  Do you know
12  who Bill Berman is?
13  A.   I talked to Bill Berman, I believe.
14  Q.   Who is Bill Berman?
15  A.   I think he's a lawyer in Pennsylvania.
16  Q.   He's in New Jersey, actually, North Jersey.
17  Do you know who he represented?
18  A.   No.
19  Q.   Would it surprise you to learn that he
20  represented VRC?
21  A.   I thought you said Mr. Adler did.
22  Q.   They both did.  First Adler and then Bill
23  Berman took over the litigation.
24  A.   Okay.

19 (Pages 70 to 73)

Page 74

1  Q.  In addition to the million nine that -- TSH
2  wired $1,965,600 into your attorney escrow account
3  on or about January 21. Correct?
4  **A.  Who is TSH?**
5  Q.  The SAFETY HOUSE. I'm sorry.
6  **A.  The records say what they did. I mean, that**
7  **sounds right.**
8  Q.  Isn't it true that VRC wired you a total of
9  $2,449,440 on January 19 and January 20 for their
10  purchase of 204,120 test kits?
11  **A.  If you could show me a document, I can**
12  **answer the question. I don't recall.**
13  Q.  Okay. I'm jumping ahead of myself. Before
14  we get to the money part, let's finish the SPA.
15          Is it fair to say that this SPA is the
16  form that you drafted and/or edited that was your
17  or your client's go-to document that you used for
18  other purchases in addition to The SAFETY HOUSE?
19  **A.  I would say that it was the standard.**
20  Q.  A standard document that was used?
21  **A.  Yes.**
22  Q.  You claim your only role in The SAFETY HOUSE
23  transaction was as the attorney for Charlton.
24  Correct?

Page 75

1  **A.  Yes.**
2  Q.  In your April 24th letter you say in the
3  one, two, three -- third paragraph your law firm
4  represents Charlton. "We have no direct
5  relationship with Scully or Scully's company,
6  Safety House." Correct?
7  **A.  Correct.**
8  Q.  You don't say you have no relationship at
9  all. Correct?
10  **A.  Well, my client had a relationship with him**
11  **so I guess I had a relationship with him. I was**
12  **trying to be accurate.**
13  Q.  So what relationship did you, Manfred
14  Sternberg, and your law firm have with respect to
15  the purchaser in this SPA?
16  **A.  I never spoke with him. I don't think I**
17  **ever corresponded with him. He may have called me**
18  **but I never talked to him. Unless you have**
19  **something that shows that I did, I don't think I**
20  **ever talked to him.**
21          MR. LIGHTMAN: Could you repeat the
22  question, please? Because I don't think you
23  answered it.
24          MR. LAVER: He did.

Page 76

1          MR. LIGHTMAN: I didn't ask what
2  communications he had. I said what was your -- you
3  said you have no direct relationship. So what
4  relationship --
5          MR. LAVER: You asked him your
6  question and he answered it the best he could.
7          THE WITNESS: Now, you used an
8  inarticulate word, relationship, and I gave you a
9  general response. If you want to be more specific,
10  I can answer. But you said relationship.
11  BY MR. LIGHTMAN:
12  Q.  I'm using your words.
13  **A.  Okay.**
14  Q.  You said you had no direct relationship.
15  **A.  That's correct.**
16  Q.  You didn't say you have no relationship
17  whatsoever. Correct?
18  **A.  Correct.**
19  Q.  So what is the relationship that you had?
20  And you answered that, well, I never spoke to him.
21          What relationship do you --
22  **A.  No. I also answered before, I said my**
23  **client had a relationship with him.**
24          **So just like you have a relationship**

Page 77

1  **with me, you don't represent me but you have a**
2  **relationship because you're involved in a lawsuit**
3  **that I'm involved in. There's the relationship.**
4  Q.  So your relationship with The SAFETY HOUSE,
5  the purchaser, is serving as the attorney for the
6  seller?
7  **A.  That's what the documents say, I believe.**
8  Q.  Okay. And you say, "There is no escrow
9  agreement between our firm and Scully or Safety
10  House."
11          Do you see that?
12  **A.  Yes.**
13  Q.  Is there a separate escrow agreement outside
14  of the SPA that you had with Charlton or with Sam
15  Gross?
16  **A.  No.**
17  Q.  Pardon me?
18  **A.  No.**
19  Q.  So the only relationship defining the role
20  of your law firm is set forth in the SPA. Correct?
21  **A.  Well, no.**
22  Q.  Please explain.
23  **A.  I had an attorney/client relationship with**
24  **Charlton, so that would be the relationship right**

Page 78

1  there.  That would define it.
2  Q.  Yeah, but buyers, The SAFETY HOUSE, VRC,
3  others, are wiring millions of dollars into your
4  attorney escrow account.  Right?
5  A.  Yes.
6  Q.  They're not sending it directly to Charlton
7  or Gross.  Right?
8  A.  Correct.
9  Q.  They're wiring it to you.  Right?
10  A.  Correct.
11  Q.  Why is that?
12  A.  Because the agreement says that's what they
13  need to do.
14  Q.  And why does the agreement say that's what
15  they need to do?
16  A.  Because those are the words we used.
17  Q.  Why did you restructure the deals so that
18  the purchasers would wire the money into your
19  attorney escrow account as opposed to sending it
20  directly to the seller?
21        MR. LAVER:  Objection to form.
22        You can answer if you understand.
23        THE WITNESS:  Do you want a legal
24  opinion?

Page 79

1  BY MR. LIGHTMAN:
2  Q.  No.  I want your answer to the question.
3        Why do you think that the structure of
4  these transactions was for the purchasers to wire
5  the money into your attorney escrow account instead
6  of sending it to the sellers directly?
7  A.  According to the document, that's what
8  they're supposed to do.
9  Q.  Why?
10  A.  Well, because they're trying to buy product.
11  Q.  But if they're trying to buy product, why
12  not just send the money to the seller directly?
13  A.  You'd have to ask the parties to the
14  agreement.
15  Q.  That's your answer?
16  A.  I mean...
17        MR. LAVER:  Objection.
18        THE WITNESS:  You don't like my
19  answer?
20  BY MR. LIGHTMAN:
21  Q.  I love that answer.  I hope you give it in
22  front of the jury at trial.
23        What do you think your role is in this
24  transaction?

Page 80

1  A.  My role, as is defined in that Sale and
2  Purchase Agreement, is the seller's attorney.
3  Q.  And what is your duty to the people that are
4  sending you this money --
5        MR. LAVER:  Objection to form.
6  BY MR. LIGHTMAN:
7  Q.  -- if any?
8  A.  I don't know.  I don't have any relationship
9  with them.
10  Q.  You don't have any duty to the guy that
11  wired you $1.9656 million into your attorney escrow
12  account.  Is that your testimony?
13  A.  I have the duty to perform under the Sale
14  and Purchase Agreement.
15  Q.  Right.  And when VRC wired you $2.4489
16  million into your attorney escrow account, isn't it
17  true you also had a duty to perform as the escrow
18  agent pursuant to the SPA you entered into with
19  them?
20  A.  No.
21  Q.  Why not?
22  A.  I'm not an escrow agent.
23  Q.  SAFETY HOUSE wired 1.965 million to you on
24  January 21st.  Correct?

Page 81

1  A.  If that's what you say.
2  Q.  We'll get to the records.
3        If Sam Gross or Charlton said to you
4  on January 22nd you want 250,000 to me, I want to buy a
5  Rolls Royce, would you be able to do that?
6        MR. LAVER:  Objection, hypothetical.
7        THE WITNESS:  It's a hypothetical
8  question.
9  BY MR. LIGHTMAN:
10  Q.  Would you be following the terms of the SPA
11  if that were to occur?
12  A.  I don't, I don't think so.
13  Q.  Okay.  And if Sam Gross the day after you
14  got the $2 million from SAFETY HOUSE said wire
15  $500,000 to my wife, we're going to buy a beach
16  house, would you be fulfilling your duties under
17  the SPA to wire that money?
18        MR. LAVER:  Objection.
19        THE WITNESS:  That's a hypothetical.
20  And if he told me that, I'd be suspect of it.
21  BY MR. LIGHTMAN:
22  Q.  You would not do that, would you?
23  A.  I don't know that, but I'd be suspect of it.
24  Q.  So it's possible that if Sam said to you

21 (Pages 78 to 81)

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:2-CV-0688 (JMY)              Deposition of Manfred Sternberg, Esq.                   February 7, 2024

Page 82

1  give me $500,000, I want to buy a beach house for
2  my wife, you would take $500,000 of SAFETY HOUSE's
3  $2 million and wire it to him?
4        MR. LAVER:  Same objection.
5        THE WITNESS:  I guess it's possible.
6  He's my client.  When I say he, I mean CHG.
7  BY MR. LIGHTMAN:
8     Q.   So you have no explanation for why the
9  structure of the transaction was for purchases to
10  wire the money into your attorney escrow account
11  instead of to the seller directly.  Correct?
12    A.   That's not correct.  You're misstating my
13  testimony.  I do have an explanation.  That's what
14  the SPA says.
15    Q.   And you have no explanation why the SPA says
16  the monies are to be wired into your attorney
17  escrow account as opposed to the seller directly?
18    A.   Because that's what the parties negotiated.
19    Q.   And why did the parties negotiate for the
20  money to be sent not to the seller directly but to
21  your attorney escrow account?
22    A.   You would have to ask the parties.
23    Q.   It's not set forth in the agreement?
24    A.   If it's in the agreement, it's in the

Page 83

1  agreement.
2     Q.   But what's your understanding?
3         What was your understanding of why
4  Manfred Sternberg & Associates, PC's escrow account
5  received $1,965,600 from The SAFETY HOUSE on
6  January 21st?
7     A.   It was in accordance with an agreement
8  between my client and your client.
9     Q.   Why did Scully's company send the money to
10  you instead of directly to the seller?
11    A.   Same answer as before, but you would have to
12  ask Mr. Scully.
13    Q.   Isn't it true that the buyer was told by Sam
14  or their agent that the money would not be released
15  from your escrow account until the buyer, SAFETY
16  HOUSE, received title to the goods and confirmation
17  that the goods were in transit to The SAFETY HOUSE?
18    A.   I don't know what Mr. Gross told him.
19    Q.   Okay.  Assume that to be true.  Assume that
20  when your attorney gets to depose Mr. Scully, he'll
21  testify that that's what he was told and relied
22  upon to induce him to wire transfer 2 million into
23  your attorney trust account.  Assume that to be
24  true.  Okay?

Page 84

1         If that's the case, if SAFETY HOUSE is
2  told transfer the money into the seller's
3  attorney's trust account because he will assure
4  that you have title to the goods and they're in
5  transit to you before he releases your money, would
6  you still claim that you have no fiduciary duty
7  under that arrangement?
8     A.   A fiduciary duty to who?
9     Q.   To anybody.
10    A.   Well, I have a fiduciary duty to my client.
11    Q.   Okay, because you represent him.
12         But what about a fiduciary duty to the
13  purchaser that's relying upon those representations
14  and sending the money to you instead of the seller
15  directly?
16    A.   You're asking me for a legal conclusion that
17  I don't know.
18    Q.   I am not.  What's your factual understanding
19  of what, if any, duty you owe to the buyer who sent
20  you the $2 million?
21    A.   My duty was to comply with the terms of the
22  written contract that he and I guess you looked at
23  before.
24    Q.   Why do you say me before?

Page 85

1     A.   Because you're his lawyer.
2     Q.   What factual basis do you have to say I
3  represented him at the time this deal took place?
4     A.   Because you've told me you represent him.
5     Q.   Really?  Would it surprise you to learn I
6  had no idea who Dan Scully or Manfred Sternberg or
7  Sam Gross was when this deal went down in January?
8     A.   You'd have to take your own deposition.  I
9  don't know what you knew.
10    Q.   So when you say -- look at your April 24th
11  letter again -- "It was always my assumption that
12  Safety House was competently represented by
13  Attorney Gary Lightman from Pennsylvania when
14  Safety House presumably read and signed the
15  contract with Charlton."
16         On what facts do you base that
17  representation you made to the Bar?
18    A.   I said it was my assumption.
19    Q.   Your assumption.  We had not spoken until
20  mid February.  Correct?
21    A.   Oh, I don't know when we spoke, but that's
22  my assumption.  That's why I used that word.
23    Q.   Assume that our first conversation was
24  February 15th.  I'll get to that, but assume that

22 (Pages 82 to 85)

Page 86

1   that's the case.
2       You had no factual basis whatsoever
3   when you said it was always my assumption that he
4   was competently represented by -- that SAFETY HOUSE
5   was competently represented by Attorney Lightman.
6   Right?
7   A.   It's still my assumption.
8   Q.   Okay.  You said I told you that.
9   A.   You did.
10  Q.   When did I tell you I was representing him
11  in connection with this SPA?
12  A.   Oh, when -- I don't know that you told me
13  you represented him in connection with the SPA, but
14  you said you represented him.
15  Q.   When I wrote you on February 15th -- and
16  we'll get to it -- I said we've been retained as
17  litigation counsel.
18      At any time did I tell you I
19  represented SAFETY HOUSE in connection with the
20  transaction that occurred in January?
21  A.   That's transactional.  I don't know if you
22  represented him or not.  I assumed you did.  You
23  were litigation counsel.  That's different in my
24  mind than transactional.

Page 87

1   Q.   At any time did I ever tell you I
2   represented The SAFETY HOUSE prior to February of
3   2022?
4   A.   I don't know that we ever had that
5   discussion.
6   Q.   At any time did Mr. Scully ever tell you
7   that he had me or any other attorney prior to
8   February of 2022?
9   A.   I don't think I ever spoke to him.
10  Q.   Now, isn't it true that nowhere in the SPA
11  is there any disclosure that you're only acting as
12  the attorney for Charlton?
13  A.   (Witness reviews document.) I think...
14  Q.   So your answer is that's correct?  There's
15  nowhere in the SPA --
16  A.   No, no.  Please, let me answer.  I think
17  Exhibit 7 is a misrepresentation that that's the
18  entire contract.
19  Q.   We're not talking about Exhibit 7.  Look at
20  Exhibit 4, the SPA involving The SAFETY HOUSE,
21  right there.
22      Isn't it true that nowhere in the SPA
23  with The SAFETY HOUSE is there any disclosure that
24  you're acting only as the attorney for the seller?

Page 88

1   A.   Yes.
2   Q.   That's true.  Right?
3   A.   Exhibit E says that I'm seller's attorney.
4   And in number two and number three it calls me
5   seller's attorney, two places there.
6   Q.   Right.  Isn't it true that nowhere in
7   paragraph two or paragraph three or Exhibit A is
8   there any disclaimer that you're only acting as
9   seller's attorney?
10  A.   I don't think there's disclaimers.
11  Q.   Okay.  And isn't it true that nowhere in the
12  SPA is there any disclosure that you're only acting
13  as the attorney?
14      It says you're the attorney but
15  nowhere in here do you say, I'm only acting as the
16  attorney for the seller.  Correct?
17  A.   No, that's not correct.  Read Exhibit E.
18  Q.   Exhibit E says --
19  A.   Number 2, what does that say?
20  Q.   "Seller's attorney to draft and provide
21  Buyer with Seller form of SPA."
22  A.   Does that confuse anybody that I'm the
23  seller's attorney?
24  Q.   Where in one, two, three, four, five, six,

Page 89

1   seven, eight does it say seller's attorney only
2   acting as seller's attorney?
3       It doesn't say that.  Right?
4   A.   So when you represent one party to a
5   contract, you represent all of them.  Is that what
6   you're saying?
7   Q.   No.  When the other party to the contract
8   sends you, the seller's attorney, instead of the
9   seller $2 million, I think you need to just --
10  there's no disclosure in here that the $2 million
11  you received is only as seller's attorney.
12  Correct?
13  A.   There's no -- you're right.  You're reading
14  the document correctly other than the fact that it
15  discloses that I am seller's attorney in two
16  places, at least.
17  Q.   And nowhere in this SPA is there any
18  disclaimer or disclosure that you have no duty or
19  responsibility to a purchaser, like SAFETY HOUSE,
20  who is wiring almost $2 million into your law
21  firm's attorney trust account.  Correct?
22  A.   It's a two-page contract.  There's a lot of
23  things that aren't in there.
24  Q.   That's one of the things that aren't in

23 (Pages 86 to 89)

Page 90

1  there. Right?
2  **A.   I guess it either is or is not. Right? The**
3  **words speak for themselves.**
4  Q.   It's not in there. Right?
5  **A.   No. It says I'm seller's attorney in there.**
6  Q.   Point to me where in the SPA or its exhibits
7  where it says, I have no fiduciary obligation or
8  other obligation -- I have no fiduciary duty or
9  other obligation to you, The SAFETY HOUSE?
10  **A.   First of all, I'm not a party to the**
11  **agreement. My signature and my signature line is**
12  **not on the agreement. I'm not a party to the**
13  **agreement, period.**
14  Q.   Maybe you didn't understand my question so
15  I'll make it clearer.
16          MR. LAVER:  He's still answering it.
17          THE WITNESS:  I'm answering it.
18          MR. LIGHTMAN:  I didn't ask whether
19  he's a signatory.
20  BY MR. LIGHTMAN:
21  Q.   I said show me where in this agreement that
22  you drafted, that you edited, show me where in this
23  agreement it says, SAFETY HOUSE, the buyer, I have
24  no fiduciary duty or obligation to you.

Page 91

1  **A.   Again, you keep on saying "I." I'm not a**
2  **party to the agreement. I'm a lawyer.**
3  Q.   Right. You could have, if you wanted to,
4  include a reference in here that says, seller --
5  excuse me -- buyer, the seller's attorney, who also
6  is getting your money in escrow, has no fiduciary
7  duty or obligation to you.
8          There's no words in that agreement you
9  drafted and/or edited to that effect. Right?
10  **A.   It says what it says.**
11  Q.   You can't point to anywhere in that
12  agreement where you inform the buyer that you have
13  no fiduciary obligation to the buyer. Correct?
14          MR. LAVER:  Objection.
15          THE WITNESS:  It says what it says.
16  BY MR. LIGHTMAN:
17  Q.   I'm not asking -- does it say that in the
18  agreement?
19  **A.   Does it say...**
20  Q.   Does it say Sternberg and/or the law firm
21  has no fiduciary duty or obligation to the buyer?
22  **A.   I'm not a party to the contract.**
23  Q.   I'll repeat the question. I didn't ask
24  whether you were a party to the contract.

Page 92

1          Even though you're not --
2  **A.   How can I make a representation when I'm not**
3  **a party to the contract?**
4  Q.   All you had to do was put the escrow agent
5  receiving the funds has no fiduciary duty or
6  obligation to the purchaser.
7          You could have included a sentence
8  like that in the agreement. Correct?
9  **A.   So could you have.**
10  Q.   You could have included that in your
11  agreement that you drafted and edited. Correct?
12  **A.   So could you have, yes.**
13  Q.   I couldn't have because I didn't even know
14  about this until February.
15          In the agreement that you drafted and
16  created it does not contain any language informing
17  the purchaser that the escrow agent receiving the
18  funds has no fiduciary duty or obligation to the
19  purchaser wiring the money into the seller's
20  attorney's escrow account. Correct?
21  **A.   There was no escrow agreement.**
22  Q.   There's no sentence in the SPA that says
23  that Sternberg & Associates, PC has no fiduciary
24  duty or obligation to the purchaser. Correct?

Page 93

1  **A.   The contract doesn't say that.**
2  Q.   Thank you. And you never told the buyer at
3  any time I have no fiduciary duty or obligation to
4  you, even though you're sending me almost $2
5  million of funds. Correct?
6  **A.   I never spoke to the client, your client.**
7  Q.   So the answer to my question is that is
8  correct, Gary, I never made that disclosure to the
9  purchaser. Right?
10  **A.   If I never spoke with him, I couldn't make**
11  **that representation.**
12  Q.   Thank you. Now, go to paragraph five of the
13  SPA. It says, quote, "The Buyer shall transfer the
14  above-mentioned funds" -- and that's a reference to
15  $1,965,600 -- "to the Seller's Attorney Escrow
16  Account listed in Exhibit B." Correct?
17  **A.   Well, it's the above-mentioned funds but,**
18  **yes, to seller's attorney escrow account meaning --**
19  Q.   Listed in Exhibit B. Correct?
20  **A.   Correct.**
21  Q.   And Exhibit B to the SPA is titled "Exhibit
22  B - Escrow Account Manfred Sternberg Jr. Attorney
23  at Law IOLTA-Trust Account Wire Instructions."
24  Correct?

24 (Pages 90 to 93)

Page 94

1   A.   Correct.
2   Q.   We're back to paragraph 6:  "Once the
3   transferred funds have cleared in the Seller's
4   account, Bill of Sale (Exhibit D) shall be provided
5   and Seller will deliver the Goods to a common
6   carrier with instructions to deliver the Goods to
7   the location(s) as directed by Buyer."
8        Do you see that?
9   A.   Yes.
10  Q.   And then it says, quote, "Title transfer
11  shall happen contemporaneously with funds being
12  released to Seller."  Right?
13  A.   Correct.
14  Q.   So under this agreement, the title transfer,
15  meaning the transfer of title to the goods that the
16  buyer is purchasing, shall happen contemporaneously
17  with the funds being released from your attorney
18  escrow account to the seller.  Correct?
19  A.   Correct.
20  Q.   Okay.  It clearly states that the funds get
21  released contemporaneously with the title transfer.
22  Right?
23  A.   Correct.
24  Q.   And there's no separate escrow agreement

Page 95

1   outside of the SPA regarding your receipt of
2   disbursement of funds that a purchaser, like SAFETY
3   HOUSE, sends to your attorney escrow account.
4   Correct?
5   A.   This is the only agreement, correct.
6   Q.   And that paragraph defines your fiduciary
7   duty as the escrow agent receiving funds into your
8   attorney escrow account from a purchaser like
9   SAFETY HOUSE.  Correct?
10  A.   I don't believe that's correct.
11  Q.   So what does it mean "Title transfer shall
12  happen contemporaneously with funds being released
13  to Seller"?  What does that mean?
14  A.   Are you asking a legal conclusion?
15  Q.   No.  I'm asking what's your understanding?
16       You're acting as a person whose
17  attorney escrow account is receiving almost $2
18  million in funds from my client as a purchaser.
19  Right?
20  A.   Correct.
21  Q.   My client has been told by the seller the
22  reason we're going to use Manfred is he's going to
23  make sure that your funds don't get disbursed until
24  you have title to the goods and they're in transit

Page 96

1   to you.
2        You said you have no knowledge of that
3   but that's what my client will testify to when Seth
4   gets around to deposing him.  Okay?
5        So your job, as the person holding
6   these funds in escrow, is to make sure that, quote,
7   "Title transfer shall happen contemporaneously with
8   the funds being released to Seller."  Correct?
9   A.   That's what it says.
10  Q.   Now, you can't just disburse those funds
11  from your escrow account for any reason.  Right?
12  A.   That's not correct.
13  Q.   You can disburse those funds from escrow for
14  any reason?
15  A.   Well, for some reasons.
16  Q.   No, no.
17  A.   You said any reason.  There's some reasons
18  that I can.
19  Q.   You cannot just disburse those funds from
20  your attorney escrow account for any reason.
21  Correct?
22  A.   For some reasons, yes.  When you say any,
23  that could be -- that includes some.
24       MR. LAVER:  Just rephrase the

Page 97

1   question, Gary.
2   BY MR. LIGHTMAN:
3   Q.   You have to disburse the funds from your
4   attorney escrow account in accordance with the
5   terms of the SPA.  Correct?
6   A.   Correct.
7   Q.   And isn't it true the main purpose of a
8   purchaser, like The SAFETY HOUSE or VRC, sending
9   the purchase price into your attorney escrow
10  account instead of giving those funds outright to a
11  seller is to make sure that paragraph six is
12  adhered to, namely, quote, "Title transfer shall
13  happen contemporaneously with the funds being
14  released to Seller."  Correct?
15  A.   Well, you're omitting Exhibit E, but there's
16  Exhibit E as well.
17  Q.   But this says, "Title transfer shall happen
18  contemporaneously with the funds being released."
19  Correct?
20  A.   Correct, but then "Exhibit E attached hereto
21  is incorporated..."
22  Q.   Look at Exhibit E.
23  A.   Let's see.  Okay.
24  Q.   This sets forth Standard Operating

Page 98

1  Procedure. Correct?
2  **A.   Correct.**
3  Q.   One is consistent with the terms of the SPA.
4  Correct?
5  **A.   Correct.**
6  Q.   Two is consistent with the terms of the SPA.
7  Correct?
8  **A.   Correct.**
9  Q.   Three is consistent with the terms of the
10  SPA. Correct?
11  **A.   Correct.**
12  Q.   Four of the Standard Operating Procedure is
13  inconsistent with the clear and unambiguous
14  language in Section 6. Correct?
15  **A.   No, that's not correct.**
16  Q.   You can release the funds to seller before
17  title transfer is sent to the buyer?
18  **A.   "Purchase price funds released to Seller."**
19  Q.   Six says, quote, "Title transfer shall
20  happen contemporaneously with the funds being
21  released to Seller." Correct?
22  **A.   So maybe four and five need to be just four.**
23  Q.   Well, maybe if you read four, five, six, and
24  seven together as all happening at once, that's

Page 99

1  consistent with the language in paragraph six.
2  Correct?
3  **A.   No. Paragraph six incorporates Exhibit E.**
4  Q.   Right. But paragraph six says -- right
5  before it incorporates it it says, "Title transfer
6  shall happen contemporaneously with the funds being
7  released to Seller." Correct?
8  **A.   That's what it says.**
9  Q.   Under SOP, Exhibit E, you have the funds
10  being released before the goods are released to the
11  common carrier. Correct?
12  **A.   It says, "Purchase price funds released to**
13  **Seller."**
14  Q.   That's number four. Right?
15  **A.   Yeah.**
16  Q.   Then five says, "Title Transfer to Goods to
17  the Buyer..." Correct?
18  **A.   Correct.**
19  Q.   According to the SOP, the funds are released
20  to the seller as item four. Five is the title
21  transfer to the goods to the buyer. Right?
22  **A.   Correct.**
23  Q.   Six is "Goods delivered to common
24  carrier..." Right?

Page 100

1  **A.   That's what it says.**
2  Q.   Seven is "Seller to provide Buyer with the
3  Bill of Lading and executed Bill of Sale..."
4  Right?
5  **A.   Yes.**
6  Q.   That is inconsistent with, quote, "Title
7  transfer shall happen contemporaneously with the
8  funds being released to Seller," if these steps are
9  taken in the order listed here, four, five, six and
10  seven. Correct?
11  **A.   I don't think so.**
12  Q.   Well, how can you have a title transfer
13  before the funds being released? Under SOP the
14  funds are released before title transfer. Correct?
15  **A.   I don't think that says before.**
16  Q.   You're right. These are just steps one,
17  two, three, four, five, six and seven.
18       It doesn't say one has to happen
19  before two has to happen before three has to happen
20  and before four and so on. Correct?
21  **A.   Correct.**
22  Q.   If you read four, five, six and seven
23  together as all happening at the same time, that is
24  consistent with the statement in paragraph six,

Page 101

1  quote, "Title transfer shall happen
2  contemporaneously with the funds being released to
3  Seller." Correct?
4  **A.   I don't think so.**
5  Q.   Let me tell you, if four happens before
6  five, is that consistent with paragraph six the way
7  you drafted it?
8  **A.   It might be.**
9  Q.   So how is it that you can have the purchase
10  price funds released to the seller before title
11  transfer to the goods to the buyer? How does that
12  make a title transfer contemporaneous with the
13  release of funds?
14  **A.   Have you ever gone to a 7-Eleven and bought**
15  **a pack of gum? You give them the money. You take**
16  **the gum.**
17  Q.   At the same time. Right?
18  **A.   No. You gave them the money first, didn't**
19  **you?**
20  Q.   And at the same time you get the goods.
21  Right? How about six? How about six?
22  **A.   Is that why you use two hands?**
23  Q.   How can you have the purchase price -- so
24  it's your testimony here under oath today that if

Page 102

1  the purchase funds are released to the seller
2  before title transfer to goods is to the buyer,
3  before the goods is delivered to a common carrier
4  and before the seller provides the buyer with a
5  Bill of Lading and executed Bill of Sale, that that
6  equals, quote, "Title transfer shall happen
7  contemporaneously with the funds being released to
8  the Seller"?
9          That's your sworn testimony here
10 today?
11 **A.  No.  I don't know what you -- no.  I don't**
12 **know what you said.**
13 Q.  If item number four in the Exhibit E SOP
14 happens before five, six and seven, is that a,
15 quote, title transfer happening contemporaneously
16 with the funds being released to the seller?
17 **A.  I don't know about six and seven but five.**
18 Q.  Okay.  So if four happens before six and
19 seven, that's not consistent with, quote, "Title
20 transfer shall happen contemporaneously with funds
21 being released to Seller."  Correct?
22 **A.  No, I disagree with you.**
23 Q.  So how is it that the funds can be released
24 to seller before the buyer gets a Bill of Lading

Page 103

1  and a Bill of Sale?
2  **A.  Because that's what the agreement says.**
3  Q.  No, no, that's what the SOP says.  The
4  agreement says, quote -- how does title transfer
5  occur?  Isn't it true that a Bill of Sale evidences
6  title transfer?
7  **A.  It evidences it but it doesn't make it.**
8  Q.  What else makes a title transfer of the
9  goods?
10 **A.  Possession.**
11 Q.  Okay.  So what else?  Besides the purchaser
12 getting possession of the goods, besides the
13 purchaser getting a Bill of Sale, what else
14 evidences transfer of title to goods that the
15 purchaser under this SPA buys?
16 **A.  I would think the SPA itself says that.**
17 Q.  This is an agreement of how the transfer is
18 to occur.  Correct?
19 **A.  Correct.**
20 Q.  He can't run into court with the SPA and
21 say, I own these goods.  Correct?
22 **A.  (No response.)**
23 Q.  He needs either possession of the goods or a
24 Bill of Sale to evidence his ownership of the goods

Page 104

1  he's buying.  Right?
2  **A.  I mean, you're asking me to make a legal**
3  **conclusion?**
4  Q.  What's your understanding, not a legal
5  conclusion.  You're a lawyer.  You're a business
6  lawyer.  You hold yourself out as a Texas business
7  lawyer.
8          Is there any other way a buyer takes
9  title to goods other than getting a Bill of Sale or
10 actual possession of the goods?
11 **A.  I don't have an opinion.  I don't know.**
12 Q.  You don't know?
13 **A.  I'd have to look in the law.**
14 Q.  You don't know, okay.
15          So if he doesn't have a Bill of -- how
16 does the buyer know the goods are in transit to
17 him, either by getting them or getting a Bill of
18 Lading.  Correct?
19 **A.  Yes.**
20 Q.  Okay.  So if he doesn't have a Bill of
21 Lading and he doesn't have a Bill of Sale and he
22 doesn't have possession of the goods, how is it
23 that title transfer can happen contemporaneously
24 with the funds being released to seller, which is

Page 105

1  what paragraph six says, if the funds are released
2  to seller before the Bill of Sale and Bill of
3  Lading is supplied to the buyer?
4  **A.  What's the question?**
5          MR. LIGHTMAN:  Please repeat the
6  question.
7          (The court reporter read back the
8  following:
9          "Q.  So if he doesn't have a Bill of
10 Lading and he doesn't have a Bill of Sale and he
11 doesn't have possession of the goods, how is it
12 that title transfer can happen contemporaneously
13 with the funds being released to seller, which is
14 what paragraph six says, if the funds are released
15 to seller before the Bill of Sale and Bill of
16 Lading is supplied to the buyer?")
17          THE WITNESS:  Because the contract
18 says so.
19 BY MR. LIGHTMAN:
20 Q.  And that's your answer?
21          MR. LAVER:  Is that funny?
22          MR. SCULLY:  Yes.
23          MR. LAVER:  You're not under oath.
24 Stop.

27 (Pages 102 to 105)

Page 106

1    **MR. LIGHTMAN:** Please testify like
2    this at trial.
3    BY MR. LIGHTMAN:
4    Q.   Look at paragraph 8 of the SPA. Paragraph 8
5    of the SPA says, "The Seller agrees to coordinate
6    and pay for common carrier transportation to
7    deliver the Goods from the Seller's warehouse to
8    Buyer..."
9         Do you see that?
10   **A.   I see that.**
11   Q.   When you drafted this or edited it, what was
12   the seller's warehouse you were referring to?
13   **A.   I don't know.**
14   Q.   But you wrote these words. Right?
15   **A.   I may have drafted it, but the parties**
16   **agreed to it.**
17   Q.   You represented that the seller had a
18   warehouse in paragraph eight of this, didn't you?
19   **A.   I didn't make any representations at all in**
20   **this agreement because I'm not -- because I'm not a**
21   **party to the agreement.**
22   Q.   When you drafted this SPA that the parties
23   to the agreement used, including your client, as
24   the seller, and my client, as the person who

Page 107

1    transferred $2 million into your attorney escrow
2    account, what were you referring to when you said
3    the seller is going to coordinate and pay the
4    common carrier transportation to deliver the goods
5    from the seller's warehouse to buyer?
6         What were you referring to?
7    **A.   To the seller's warehouse.**
8    Q.   Where is that located?
9    **A.   You'd have to ask the seller.**
10   Q.   It's your client. Right?
11   **A.   Yeah. I don't know everything about my**
12   **client. Do you?**
13   Q.   Does your seller have a warehouse?
14   **A.   I don't know.**
15   Q.   You don't know.
16   **A.   I assume he does.**
17   Q.   Okay. Did you ever ask Sam, where is your
18   warehouse?
19   **A.   I don't recall.**
20   Q.   In this SPA that you created, excuse me,
21   that you drafted and/or edited you are leading the
22   seller to believe that -- excuse me -- you're
23   leading the buyer, like The SAFETY HOUSE, to
24   believe that there's a warehouse that the seller

Page 108

1    has. Right?
2         **MR. LAVER:** Objection to form.
3         THE WITNESS:  Again, I'm not leading
4    him to believe anything.
5    BY MR. LIGHTMAN:
6    Q.   Okay. In paragraph eight of the SPA that
7    you created where is your client coordinating and
8    paying for the common carrier to deliver the goods
9    from?
10   **A.   It says from the seller's warehouse.**
11   Q.   Okay. And who drafted those words?
12   **A.   I drafted it.**
13   Q.   You drafted it. And you're aware that Gary
14   Weiss offered to make a refund when he couldn't
15   deliver the goods. Correct?
16   **A.   He said a lot of things, yeah.**
17   Q.   He said that to you. Right?
18   **A.   He probably did, yeah.**
19   Q.   Where in your letter to the Bar do you say,
20   by the way, when the supplier that my client
21   engaged to deliver goods couldn't deliver them, he
22   offered to make a refund?
23        You don't say that anywhere, do you?
24   **A.   I don't see it in the contract.**

Page 109

1    Q.   No, no, in your letter to the Bar.
2    **A.   Oh, in the letter. We're back on the letter**
3    **to the Bar. Okay. What's your question?**
4    Q.   In your letter to the Bar, Deposition
5    Exhibit...
6    **A.   6.**
7    Q.   ...6, isn't it true that nowhere in here do
8    you tell the Texas Bar when Gary Weiss or ASolar
9    couldn't deliver the goods, he offered to refund
10   the money we gave him? Correct?
11   **A.   It's either in there or it's not. I don't**
12   **know. But if it's not in there, maybe I didn't**
13   **think it was relevant to the matter at hand.**
14   Q.   You didn't think it was relevant to tell the
15   Texas Bar that -- you wrote in here on page 4 of
16   your letter to the Bar, you say, "Mr. Gary Weiss
17   assured the undersigned repeatedly by email, text
18   and verbally that the product was en route and
19   being delivered immediately."
20        Here's an example and you give him a
21   February 10th email from Gary to you and Sam.
22   Right?
23   **A.   Yes.**
24   Q.   On the bottom of this page 4 you say, "In

28 (Pages 106 to 109)

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:22-CV-0688 (JMY)        Deposition of Manfred Sternberg, Esq.        February 7, 2024

Page 110

1   fact, the Goods described in the SPA began being
2   delivered to Safety House at the location provided
3   in the SPA on March 29, 2022."
4        Do you see that?
5   A.   Yes.
6   Q.   The last paragraph.  The goods that you had
7   delivered, you and/or Sam had delivered to SAFETY
8   HOUSE, did they come from Gary Weiss?
9   A.   First of all, I don't deliver anything.  I'm
10  a lawyer.
11  Q.   The goods that your client had delivered to
12  The SAFETY HOUSE on March 29, 2022, did they come
13  from Gary Weiss?
14  A.   I don't know.
15  Q.   You don't know.  You sent the Bill of Lading
16  to me saying here's the Bill of Lading for the
17  first shipment.  Right?
18  A.   That's what the Bill of Lading says.
19  Q.   How did you get the Bill of Lading?
20  A.   I'm sure I got it from either Gary or from
21  Sam.
22  Q.   Did you send us the transmittal?  You sent
23  me the Bill of Lading.  Where in your documents do
24  you say, here's the transmittal of that Bill of

Page 111

1   Lading from either Gary or Sam to you?
2        MR. LAVER:  Objection.  I don't
3   understand what you just said.
4   BY MR. LIGHTMAN:
5   Q.   Well, you said, I got that Bill of Lading
6   that I sent to you from either Gary or Sam.  Right?
7   A.   Probably, yes.
8   Q.   You never gave us the transmittal letter
9   that shows how you came into possession of that
10  Bill of Lading and I request that.
11       MR. LAVER:  Objection to form.  Did we
12  establish that there's a transmittal letter?
13  BY MR. LIGHTMAN:
14  Q.   How did you get it physically from Gary?
15  You never met Sam.  Right?
16  A.   Correct.
17  Q.   You never met Gary.  Right?
18  A.   Correct.
19  Q.   So it had to have been sent to you by one of
20  those two, not handed to you.  Right?
21  A.   One would assume, yes.
22  Q.   Either it would have been by text.  Right?
23  A.   That would be one way.
24  Q.   Or email.  Right?

Page 112

1   A.   That would be one way.
2   Q.   Or letter.  Right?
3   A.   That would be one way.
4        MR. LIGHTMAN:  I request you find the
5   means of transmittal of that Bill of Lading and
6   supply that to us.
7   BY MR. LIGHTMAN:
8   Q.   On page 5, third paragraph down, you say,
9   "Mr. Gross further states that ASOLAR owned over
10  300,000 iHealth COVID Test Kits and Charlton bought
11  such test kits from ASOLAR for resale."
12       Do you see that?
13  A.   Yes.
14  Q.   "Thereafter the product was fully paid for
15  under ASOLAR Invoice 10054, Exhibit B."  Correct?
16  A.   Correct.
17  Q.   And if you look at Exhibit B, that's an
18  invoice dated January 26, 2022 to you or from
19  ASolar to Charlton for $2,131,900.  Correct?
20  A.   That's what it looks like, yes.
21  Q.   If you look at the third paragraph of your
22  April 24 letter, you say -- even though you claim
23  they fully paid for the product, the 2.1 million,
24  you write, "Through no fault of Charlton and due to

Page 113

1   an unforeseen personnel and logistics problem
2   caused solely by ASOLAR, ASOLAR was unable to
3   deliver the product as it represented and agreed
4   with Charlton."
5        Do you see that?
6   A.   That's paragraph 3 on page 5?
7   Q.   Yes.
8   A.   That's what it says.
9   Q.   What unforeseen personnel and logistics
10  problem are you talking about?
11  A.   You'd have to ask Gary.
12  Q.   You don't know?
13  A.   That's what he told me.
14  Q.   So when you told the Texas Bar there was an
15  unforeseen personnel and logistics problem, you had
16  no idea the factual basis behind that.  Correct?
17  A.   I had an idea of the factual basis.
18  Q.   What was the factual basis?
19  A.   I was told that by either Gary and/or Sam.
20  Q.   Okay.  It says, "ASOLAR was unable to
21  deliver the product as it represented and agreed
22  with Charlton."  Correct?
23  A.   Correct.
24  Q.   To your knowledge, did you subrogate any

29 (Pages 110 to 113)

USDC, ED of PA         American Environmental Ent. v. Manfred Sternberg, Esq., et al.         Wednesday
No. 2:22-CV-0688 (JMY)         Deposition of Manfred Sternberg, Esq.         February 7, 2024

---

Page 114

1   product from ASolar to Gary Weiss?
2   **A.   I have no personal knowledge of what they**
3   **got.**
4   Q.   When ASolar was unable to deliver the
5   product as it represented and agreed to Charlton,
6   isn't it true that Charlton said, I'll refund your
7   money?
8   **A.   That may have been the discussions between**
9   **those two.**
10   Q.   You were not privy to any of those
11   discussions?
12   **A.   I may have been privy to some of them.**
13   Q.   Okay.   When that was brought up, Gary Weiss
14   was told, no, we want -- give us gem stones and
15   diamonds instead.   Right?
16   **A.   You're condensing a period of time.**
17   Q.   Yes, I am.   Isn't that correct?
18   **A.   Ultimately, yes.**
19   Q.   Isn't it true that you were the one that
20   didn't want to take a refund from Gary Weiss;
21   instead you wanted him to give you collateral?
22   **A.   Not my call.**
23   Q.   Isn't it true you're the one that came up
24   with that idea with your son?

---

Page 115

1   **A.   Correct.   I said, don't let Gary get on the**
2   **plane without giving you some collateral.**
3   Q.   Isn't it true that you and your son on
4   President's Day came up with the idea that Gary
5   should give gem stones and diamonds instead of a
6   refund?
7   **A.   No.**
8   Q.   And isn't it true that the reason you didn't
9   want a refund of the money is you were going to
10   lose your profit?
11   **A.   I had no profit.   It was Sam's.**
12   Q.   So that's not true?
13   **A.   That's not true.**
14   Q.   And you're aware that you just made these
15   statements under oath.   Right?
16   **A.   I did.**
17   Q.   So let's go back to your letter.
18   Isn't it true that when Charlton was
19   unable to deliver the product and offered a refund,
20   you failed to tell that to the Texas Bar?
21   **A.   I don't think Charlton offered a refund, did**
22   **they?**
23   Q.   So your testimony is they never offered a
24   refund?

---

Page 116

1   **A.   I don't know.   Did Charlton offer a refund?**
2   Q.   Sitting here today, do you know whether
3   Charlton offered a refund?
4   **A.   They may have.   I don't know.**
5   Q.   Okay.   Isn't it true that they eventually
6   gave diamonds and gem stones worth $4 million to
7   Sam as collateral?
8   **A.   That's what they said.**
9   Q.   You know that they gave those gem stones.
10   Right?
11   **A.   No, that's what they said.   I have no**
12   **personal knowledge of anything other than what they**
13   **told me.**
14   Q.   Did you ever see the gem stones or diamonds?
15   **A.   No.**
16   Q.   You got a list of them.   Right?
17   **A.   Yeah.**
18   Q.   You sent that list to Max and Molly.   Right?
19   **A.   Yes.**
20   Q.   So where here do you tell the Bar, by the
21   way, when the supplier of our product couldn't come
22   through, they gave us collateral worth $4 million?
23   **A.   I don't know that that was part of the**
24   **Complaint that you won't show me.**

---

Page 117

1   Q.   Okay.   But you don't think it important that
2   the Texas Bar would want to know that when your
3   supplier due to, quote, unforeseen personnel and
4   logistics problems, end quote, couldn't come
5   through with the collateral, that they instead
6   gave -- with the product that they instead gave you
7   collateral worth $4 million?
8   **A.   They didn't give me anything.**
9   Q.   Excuse me.   Gave your client collateral
10   worth $4 million.
11   **A.   That's between my client and Gary, not the**
12   **grievance that was filed against me that you won't**
13   **show me.**
14   Q.   You knew about it on April 24th.   Right?
15   **A.   I knew a lot of things on April 24th.**
16   Q.   You didn't disclose to the Texas Bar that
17   your client, after transferring 2.5 million to Gary
18   Weiss and/or his attorney, got back as collateral
19   gem stones and diamonds in excess of that amount.
20   Correct?
21   **A.   If it's not in there, it's not in there.**
22   Q.   You didn't think it would be important or in
23   fairness to paint a complete picture to the Texas
24   Bar to tell them that your client got its money

---

30 (Pages 114 to 117)

Page 118

1  back in collateral, more than its money back?
2  **A.   The complaint was by your client, not my**
3  **client.**
4  Q.   You didn't think it important to disclose
5  that to the Texas Bar, that your client got its
6  collateral in excess of what it paid for the
7  product?
8  **A.   No.**
9  Q.   And when you say, last page, "You also
10  should know that on information and belief, shortly
11  before filing this grievance, Scully and Lightman
12  engaged a person to impersonate a Federal FBI agent
13  named Russell Stoner, who Lightman says he knows."
14      Do you see that?
15  **A.   Yes.**
16  Q.   Do you remember asking me about that?
17  **A.   Yes.**
18  Q.   Do you remember me saying, what the heck are
19  you talking about?  I have no idea what you're
20  talking about.
21  **A.   No.**
22  Q.   You say I admitted that I knew the FBI
23  agent?
24  **A.   You knew the name of the FBI agent, yes.**

Page 119

1  Q.   Wow.
2  **A.   Wow is what I thought.**
3  Q.   Did you document that anywhere?
4  **A.   I probably wrote some notes to myself on it.**
5  Q.   Where are the notes?  Why didn't you produce
6  them?
7  **A.   I don't know.**
8      MR. LIGHTMAN:  I make a request that
9  you produce those notes of our conversation.
10  BY MR. LIGHTMAN:
11  Q.   Because, sir, when you raised the FBI
12  question to me, I told you I had no idea what you
13  were talking about, didn't I?
14  **A.   I don't believe that.**
15  Q.   When you raised that with me and asked if
16  Dan Scully did, I said, I don't believe for a
17  moment that he would have done that.
18      Didn't I say that to you?
19  **A.   You might have said that.**
20  Q.   But yet you --
21  **A.   But you didn't deny knowing him.**
22  Q.   Okay.  So you claim I knew him and you took
23  notes of that?
24  **A.   I claim that you knew.  Whether I took notes**

Page 120

1  of it, I don't know.  I'd have to look.
2  Q.   I request that you --
3  **A.   But you knew.  You said you knew him.**
4  Q.   Isn't it true that you drafted a declaration
5  that you wanted Gary Weiss to sign when you
6  submitted to the Texas Bar?
7  **A.   Yes.**
8  Q.   And he wouldn't sign it.  Right?
9  **A.   Yes.**
10  Q.   Why wouldn't he sign it?
11  **A.   Because he's a liar, because he said one**
12  **thing.  I documented it and then he wouldn't sign**
13  **it.  And I said, forget it.  You're just a liar.**
14  Q.   Isn't it true that he didn't want to sign
15  the declaration because it wasn't true?
16  **A.   That's not true.  That's not true.  It was**
17  **true.**
18  Q.   That's not true.  Now --
19  **A.   But I didn't sign it because it wasn't my**
20  **declaration.  It was his.**
21  Q.   In your letter to the Texas Bar --
22  **A.   Right.**
23  Q.   -- you claim on February 1, page 3, you say,
24  "Charlton received an invoice... for the goods that

Page 121

1  were sold to various customers of Charlton...
2  including Safety House, Scully's company."  Right?
3  **A.   Yes.**
4  Q.   Two paragraphs down you refer to that
5  invoice as Exhibit B to your submission.  Correct?
6  **A.   Yes.**
7  Q.   And in your letter, second paragraph from
8  the bottom --
9  **A.   What page you,**
10  Q.   Page five, you say, "A Manifest or Bill of
11  Lading was provided to Charlton by ASOLAR on the
12  letterhead of" --
13  **A.   That's not what page five says, second**
14  **paragraph.**
15  Q.   Page three.  Excuse me, page three.
16  **A.   You said page five.  Correct?**
17  Q.   Page 3, second to the bottom paragraph,
18  quote, "A Manifest or Bill of Lading was provided
19  to Charlton by ASOLAR on the letterhead of
20  Available Movers & Storage with a corporate address
21  in Manhattan, New York.  See Exhibit 'D' attached."
22      Do you see that?
23  **A.   Yes.**
24  Q.   And if you turn to Exhibit D, Exhibit D is

31 (Pages 118 to 121)

Page 122

1   what you state is the Manifest or Bill of Lading.
2   Correct?
3       A.  Yes.
4           MR. LIGHTMAN:  Can we have this marked
5   as 8?  Let's mark this 8A and 8B.
6           (Exhibit Sternberg 8A was marked for
7   identification.)
8           THE WITNESS:  All right.
9   BY MR. LIGHTMAN:
10      Q.  If you look at the second page of 8A, that's
11  the same exhibit you attached as Exhibit D to your
12  letter to the Bar.  Right?
13
14          MR. LAVER:  Pardon me.  Where did this
15  exhibit come from?
16          MR. LIGHTMAN:  I'm going to get to
17  that.
18          MR. LAVER:  Has it been produced in
19  this litigation?
20          MR. LIGHTMAN:  Yes, by Gary Weiss.
21          MR. LAVER:  Okay.
22  BY MR. LIGHTMAN:
23      Q.  If you look at Exhibit D to your letter, the
24  same document that's attached as Exhibit D to your

Page 123

1   letter to the Bar is the document shown on page 2,
2   the blue document, of this Exhibit 8A.  Correct?
3       A.  It looks like that's one page of it.
4       Q.  Okay.
5       A.  But it's so small I can't see it on 8A, but
6   I'll take your representation.
7       Q.  Well, you don't have to.
8           MR. LIGHTMAN:  Let's mark this as 8B,
9   which is a blow-up of it.
10          MR. LAVER:  So this photograph was
11  something that was produced by Weiss?
12          MR. LIGHTMAN:  Yep.
13          MR. LAVER:  Whose handwriting is in
14  green?
15          MR. LIGHTMAN:  Certainly not mine.  I
16  would assume it's Weiss, but we'll find out next
17  Friday.  I think it is.
18          MR. LAVER:  Okay.
19          (Exhibit Sternberg 8B was marked for
20  identification.)
21          THE WITNESS:  Okay.
22  BY MR. LIGHTMAN:
23      Q.  So I'll represent to you that Exhibit 8B is
24  a blow-up of the same exhibit that's page 2 of 8A

Page 124

1   and Exhibit D of your letter to the Bar.  Right?
2   They appear to be the same document?
3       A.  Not really, but I'll take your
4   representation.
5       Q.  Well, if you look at the line right below
6   where Available Movers is, on the copy that you
7   sent to the Bar and on the copy that's in 8A, it
8   appears to be a black line with no writing in it.
9   Correct?
10      A.  I'm not sure I know what you mean.
11      Q.  Well, can you read the writing that's in
12  Exhibit D to your letter right below the address?
13      A.  You mean "Gary Weiss, Long Distance
14  Estimate."
15      Q.  That's what it says on this page, yes.  Is
16  it on that page?
17      A.  Yes, but my copy -- it looks like you've got
18  two agreeables at the top and you've got a
19  different one at the bottom.  But, yeah, partially.
20      Q.  It's partially blocked it looks like, maybe
21  from copying or whatever reason, and you can't read
22  it on Exhibit D to your submission.  Correct?
23      A.  It also doesn't have operation route but
24  I'll take your word for it.

Page 125

1       Q.  Okay.  But if you look at the first page of
2   8A, when Gary Weiss originally sent this to me on
3   August 21st, he writes, quote, "Manfred blocked out
4   the name Gary Weiss?  Playing stupid with his
5   question about the deposit."
6           Do you see that?
7       A.  No.
8       Q.  On the front page of Exhibit 8A.
9       A.  Who is that from?
10      Q.  That's from Gary Weiss to me when he sent me
11  the original document.  And when I asked him can
12  you send me a cleaner copy of the document, one
13  that has the wording of it, that's what he sent me,
14  Exhibit -- well, that's what he produced,
15  Deposition Exhibit Sternberg 8B.  Do you see
16  that?
17      A.  I'm not sure what you're...
18      Q.  8B.
19      A.  Where does it say 296?  Point to it.
20      Q.  It says at the top, Weiss Document Number
21  296.
22      A.  Yes.
23      Q.  Do you see that?

32 (Pages 122 to 125)

Page 126

1    A.   Yes.
2    Q.   And in the line that you can't see in your
3    Exhibit D submission, it doesn't say it's a Bill of
4    Lading, does it?
5    A.   Oh, I don't know that it ever says it's a
6    Bill of Lading, does it?
7    Q.   It doesn't say it's a manifest, does it?
8    A.   I don't think it needs to.
9    Q.   Right after it says Gary Weiss, it says
10   quote, Local Move Estimate, Estimate Number 714194.
11        Do you see that?
12   A.   Yes.
13   Q.   This is not a Bill of Lading.  Correct?
14   A.   I don't know that.
15   Q.   This is not a Manifest.  Right?
16   A.   I don't know that.
17   Q.   It's an estimate from Available Moving &
18   Storage to Gary Weiss for moving something from
19   Staten Island, New Jersey to Farmingdale, New York.
20   Correct?
21   A.   It says what it says.
22   Q.   But you didn't tell the Bar on April 24th
23   that it was a local move.  You told the Bar this is
24   a Manifest or a Bill of Lading.  Correct?

Page 127

1    A.   That's what I believed it to be.
2    Q.   If you had not blacked out where it says
3    Local Move Estimate, you would see it doesn't say
4    Bill of Lading.  Right?
5    A.   You know, I get a little aggravated with all
6    the misrepresentations you've made on the record
7    and they're all self-evident.
8         When you say I blacked this out,
9    you're just incorrect.  I didn't black out
10   anything.
11   Q.   The copy that you submitted of this
12   document, Deposition Sternberg 8B, to the Bar as
13   Exhibit D, you can't read it says Local Move
14   Estimate on your copy.  Correct?
15   A.   I didn't know that's what it said.
16   Q.   Why did you call it -- why did you represent
17   to the Texas Bar that this was a Manifest or a Bill
18   of Lading?
19   A.   Because at the top it says USDOT and then
20   New York DOT.  Department of Transportation is what
21   I assumed that to be, and it was from a moving and
22   storage company and it had a list of all the items.
23        I thought that was a Manifest.  Maybe
24   you can correct me.

Page 128

1    Q.   I'm sorry.  It didn't have -- when Available
2    Movers sent this, do you know whether it had the
3    writing on there, the handwriting, or is that Gary
4    Weiss adding the handwriting after?
5    A.   Which handwriting?
6    Q.   At the bottom of Deposition Sternberg 8B, at
7    the bottom of your Exhibit D, the writing where it
8    shows the test kits and everything, do you know
9    whether that was on this form from Available Moving
10   & Storage or whether Gary Weiss added that after
11   the fact?
12   A.   I don't know who added that.
13   Q.   Do you know whether it was on there when
14   Available Movers issued it?
15   A.   I don't know.  8B looks like a partial
16   document.
17   Q.   Okay.  So tell me, why do you call this a
18   Manifest or Bill of Lading in your letter to the
19   Bar?
20   A.   Again, because USDOT, I thought -- and it's
21   from a moving company and they're talking about
22   boxes of goods, inventory.
23        And, in fact, on page -- in Exhibit D
24   to my response to the grievance, it's got all that

Page 129

1    writing --
2    Q.   Right.
3    A.   -- on it.
4    Q.   Right.  But you don't know whether that was
5    added by someone after Available Movers issued
6    this.  Correct?
7    A.   It certainly was added after they issued it
8    I would think.  Right?  Because --
9    Q.   They would have put it on there if it was.
10   Right?  I agree with you.
11        But look at this clear version.  You
12   can clearly see this is not a Bill of Lading and
13   not a Manifest.  It says, Local Move Estimate.
14   Correct?
15   A.   That's what it says.
16   Q.   And there's a total estimate.  Right?
17   A.   That's what it says.
18   Q.   And it says, "Deposit 500, Make a Payment."
19   Correct?
20   A.   Where does it say that?
21   Q.   Right below where it says -- here's the
22   total.  And there's a line that says, Total
23   Estimate.  Right?
24   A.   Yep, yep.

Page 130

1    Q.   On your submission to the Bar, the very
2    bottom of the page where it says 1 of 5, where you
3    have Exhibit D, right there.  You're holding it in
4    your left hand.
5         Do you see where it says, "Deposit
6    $500, Make a Payment"?
7    A.   Yeah.
8    Q.   Right above that line what does it say on
9    the copy you submitted to the Texas Bar?
10   A.   Subtotal 4,000.
11   Q.   But there's a line between Subtotal 4,000
12   and deposit $500.  Right?  You can't read it on the
13   copy you submitted to the Bar but look at Exhibit
14   8B.  What does that line say?
15        The line that's in green on 8B that
16   appears blacked out on the copy you submitted to
17   the Bar.  What does that line say?
18   A.   It says -- on 8B it says, "Total Estimate,
19   $4000."
20   Q.   Total Estimate.  Can you see the words Total
21   Estimate on the copy you submitted to the Texas
22   Bar?
23   A.   No, because that's what I had.  By the way,
24   in that email it calls it a Manifest.  Gary calls

Page 131

1    it a Manifest.
2    Q.   Where does he say this?
3    A.   In the first line.
4    Q.   Where is the email?
5    A.   On page 2 of 5 of Exhibit D.  Maybe that's
6    why I called it a Manifest because he called it a
7    Manifest.
8    Q.   Where does it say that, please?
9    A.   In the first line, "Hi, Sam.  All
10   arrangements have been made for shipping, usually
11   shipment will go out after Manifest within 48-72
12   hours."
13   Q.   After Manifest.  He's not saying that this
14   is the Manifest.
15   A.   I assumed that it was because --
16   Q.   You assumed that it was.  Right?
17   A.   If I could finish.  In the attachments it
18   says, Manifest.  That's from Gary to me.  It says
19   Manifest twice in the attachments.
20   Q.   There's one, two, three, four different
21   Manifests.  Right?  One says NJNYPA Manifest.  One
22   says, California Manifest.  Correct?
23   A.   Correct, that's what it says.  I don't know
24   what -- if that's a New Jersey Manifest or New York

Page 132

1    Manifest.  I don't know.  But it does say Manifest.
2    Q.   You just assumed it was a Manifest.
3    Correct?  Even though it says an estimate, Local
4    Move Estimate, you assumed it was a Manifest?
5    A.   Based on what I was told, correct.
6    Q.   Do you know why Gary wrote in 8A, "Manfred
7    blacked out the name Gary Weiss?  Playing stupid
8    with his question about the deposit"?
9    A.   Because Gary is a liar and a perjurer and
10   cannot be trusted.  Other than that, I don't know
11   why he would say that.  And those are all my
12   opinions.
13   Q.   Isn't it true THS canceled this order?
14   A.   Who is THS?
15   Q.   The SAFETY HOUSE.  I'm sorry.  If I refer to
16   THS, that's The SAFETY HOUSE or SAFETY HOUSE.
17        Isn't it true THS canceled this order?
18   A.   It would be TSH.  Right?  You keep saying
19   THS.
20   Q.   TSH.  Isn't it true that SAFETY HOUSE
21   canceled this order on or about February 16th?
22   A.   I think they tried to cancel it, yes.
23   Q.   Tried to?  Why do you say tried to?
24   A.   Because I don't know that it was effective.

Page 133

1    They said they wanted to cancel it.
2         MR. LIGHTMAN:  Can you mark this as
3    Deposition Exhibit 9, please.
4         (Exhibit Sternberg 9 was marked for
5    identification.)
6         MR. LIGHTMAN:  Do you want to take a
7    break?  I say we go until noon and then get some
8    lunch.
9         THE WITNESS:  We can keep going.
10        MR. LIGHTMAN:  Tell me when you're
11   ready.
12        MR. LAVER:  Where did this one come
13   from?  Was this produced during discovery?
14        MR. LIGHTMAN:  As of right now there
15   was never a document request or Interrogatories
16   served on us.
17        MR. LAVER:  I don't think that's
18   accurate.
19        THE WITNESS:  All right.  I'm ready.
20   BY MR. LIGHTMAN:
21   Q.   I will represent to you that Deposition
22   Exhibit Sternberg 9 is the verbatim text exchange
23   between Dan Scully and Sam Gross sent on February
24   15th at 2:20 from Dan to Sam and Sam's response on

Page 134

1  February 15th.
2        In fact, do you have your phone with
3  you?
4  **A.  Yeah, I do.**
5        **MR. LIGHTMAN:**  Take out your phone and
6  turn to the text of February 15 that you sent to
7  Sam at 2:20.
8        **MR. LAVER:**  Note my objection to the
9  use of this exhibit.  You can ask questions about
10 it, but I think it's entirely improper.
11       **MR. SCULLY:**  I have to find them.
12       **MR. LAVER:**  Why don't you ask your
13 questions and if we want, we can take a look over
14 break.  We don't have the time.
15       **MR. LIGHTMAN:**  That's fair enough.
16       **MR. LAVER:**  Dan, don't worry about it.
17 BY MR. LIGHTMAN:
18 Q.   So Dan Scully sent Sam Gross a text on
19 February 15th at 2:20 that says, quote, "Sam, just
20 spoke to my attorney and he is insisting that u or
21 Manfred call him right away.  I lost over a million
22 dollars in business because of you and Manfred.
23       "My attorney is going to file lawsuit
24 today, CRIMINAL lawsuit against u personally" and

Page 135

1  then he states my name and phone number.
2        Did I read that accurately?
3  **A.  Yes.**
4  Q.   And at the break you can confirm with my
5  client's phone that that's what it says.
6        And then Sam texted back to Dan five
7  minutes later two texts.  The first says, quote,
8  "The funds was sent to Manfred.  Not me.  Your
9  lawyer can file whatever he likes.  But I am not
10 holding the funds.  Manfred is.  So this is a funny
11 statement.
12       "You wired money to Manfred per the
13 contract.  If you wish to cancel the contract?  You
14 need to have your lawyer email Manfred stating he
15 represents you.  And he wants the contract void and
16 funds back.  And then Manfred can refund him."
17       Do you see that?
18 **A.  I see that.**
19 Q.   So this is your client telling Sam -- Sam
20 telling Dan if he wants to cancel, tell Manfred he
21 wants the contract void and the funds back and
22 Manfred can refund him.
23       Do you see that?
24 **A.  I see that.**

Page 136

1  Q.   Do you have any reason to dispute what Sam
2  is writing back to Scully?
3  **A.  I don't know what Sam means or is saying.  I**
4  **have no idea.  You'd have to ask Sam.**
5  Q.   But you have no facts to dispute that your
6  client telling the purchaser if he wants the
7  contract void and the funds back, write to Manfred
8  and ask him that?
9  **A.  That's between the buyer and the seller it**
10 **looks like.**
11 Q.   The second email says, quote, "Making such
12 statements?  This is extortion for something that I
13 didn't even received.  If you want to cancel the
14 transaction?  And you want a refund?
15       "All you have to do is have your
16 attorney contact Manfred with a formal request so
17 Manfred can issue him a refund."
18       Did I read that correctly?
19 **A.  Yes.**
20 Q.   Do you have any reason to dispute that
21 that's what Sam Gross was telling Dan Scully to do
22 if he wanted to cancel the contract?
23 **A.  That's between Sam and -- the buyer and the**
24 **seller.**

Page 137

1  Q.   So you have nothing to dispute what the
2  buyer -- what the seller is telling the buyer.
3  Correct?
4  **A.  Well, I don't know that I had the money at**
5  **that point.**
6  Q.   This is February 15th.  Okay?
7  **A.  I think we had given the money to Gary by**
8  **then.**
9  Q.   Then he continues, quote, "Manfred is not
10 calling your lawyer" -- I'm sorry.
11       Is it your testimony that on February
12 15 you did not have at least $2 million in your
13 attorney escrow account that you could have
14 refunded to my client?
15 **A.  The documents would speak for themselves.  I**
16 **don't remember.**
17 Q.   So you don't know.
18       So if the documents show you had at
19 least $2 million in your attorney escrow account,
20 you could have given SAFETY HOUSE a full refund.
21 Correct?
22 **A.  If that's what the client wanted to do.**
23 Q.   Okay.
24 **A.  It's not my money.**

35 (Pages 134 to 137)

Page 138

1  Q.   Okay.  And then he continues in his text,
2  quote, "Manfred is not calling your lawyer.
3  Neither am I.  If you wish to cancel.  Like I
4  stated before.  Have your attorney contact Manfred
5  via text or email.  And he will gladly attend to
6  it."
7         And then he gives your phone number.
8  Correct?
9  A.   Correct.
10  Q.   And then he gives your two emails.  Correct?
11  A.   Correct.
12  Q.   Do you remember the first time you and I
13  spoke?
14  A.   Generally, yes.
15  Q.   When was it?
16  A.   I don't know.  You wrote me a bunch of
17  self-serving, wrong emails.  I remember that,
18  thinking those are two different conversations.
19  Q.   Thank you.
20         MR. LIGHTMAN:  Let's mark some of
21  those allegedly self-serving, wrong emails as
22  Deposition Exhibit 10.
23         MR. LAVER:  We'll get to those during
24  your deposition, Gary.

Page 139

1         MR. LIGHTMAN:  I'd love to be deposed.
2  I wish there was a way we could.
3         MR. LAVER:  Oh, there's a way.
4         (Exhibit Sternberg 10 was marked for
5  identification.)
6         MR. LAVER:  So this is from your
7  production?
8         MR. LIGHTMAN:  No -- yes, part of it.
9  Part of it is duplicative.
10  BY MR. LIGHTMAN:
11  Q.   Go to the second page of this.  Let's start
12  from the back.
13         There's an email from me dated
14  February 15, 5:35 p.m. to Manfred, a copy to Glenn,
15  Kim, Lightman, "Subject: TheSafetyHouse v. Manfred
16  Sternberg & Associates and Manfred Sternberg,
17  Esquire and Sam Gross and Charlton Holdings, Docket
18  No. 2022-(NOT YET FILED), Mr. Manfred Sternberg..."
19         Do you see that?
20  A.   I do.
21  Q.   Do you remember us speaking before I sent
22  you this email?
23  A.   Yeah, we had spoken.
24  Q.   To the best of your recollection, what

Page 140

1  occurred during that telephone conversation?
2  A.   I knew -- well, I'd have to read my email
3  because --
4  Q.   So other than reading the documents, you
5  would have no independent recollection of what
6  happened?
7  A.   I know that you made threats to me and you
8  left me voicemails and you threatened this and you
9  threatened that.  I don't know exactly when I got
10  the call from the fake FBI agent, but it all
11  happened around the same time.
12  Q.   By the way, I told you to save those
13  voicemails.  Do you still have those voicemails?
14  A.   I don't know that I did.
15  Q.   So you destroyed evidence in this case?
16  A.   No, I didn't --
17         MR. LAVER:  Objection.
18         THE WITNESS:  -- destroy evidence.  I
19  just don't take instruction from you on what to do.
20  BY MR. LIGHTMAN:
21  Q.   I specifically told you in the voicemail
22  save this voicemail, it constitutes evidence.
23  A.   Did you save it?
24  Q.   I didn't take the voicemail.  You have the

Page 141

1  voicemail.
2  A.   I don't know that I saved it.
3  Q.   How could I save your voicemail?
4  A.   No, it's actually your voicemail.  You left
5  a voicemail to me.  You could have just pressed
6  record and you could have recorded everything.
7  Q.   I didn't record it.
8  A.   Okay.
9  Q.   Pennsylvania is a two-party state.  You need
10  consent.
11         So did you know whether or not you
12  saved those voicemails?  Do you know whether or not
13  you saved those voicemails?
14  A.   Uncertain.
15         MR. LIGHTMAN:  I'll make a request
16  that you check for them and, if you have them, you
17  produce them.
18  BY MR. LIGHTMAN:
19  Q.   Let's go back to 10.
20         I wrote, "Our firm has been retained
21  as litigation counsel...  This email will confirm
22  your phone call to me, that just ended.  Thank you
23  for your courtesy in timely returning the voicemail
24  message we left when we called your work number

36 (Pages 138 to 141)

Page 142

1  earlier today." Right?
2  **A.   Yeah.**
3  Q.   And then I specifically write in here, "(and
4  please do not delete that phone message unless and
5  until this dispute is fully resolved to our
6  client's satisfaction)."
7      Do you see that?
8  **A.   Yes.**
9  Q.   You're a lawyer. Right?
10  **A.   Yeah.**
11  Q.   You're aware of what the Doctrine of
12  Spoliation is. Correct?
13  **A.   Yes.**
14  Q.   There's a dispute between your client and my
15  client. Right?
16  **A.   Are you a fact witness?**
17  Q.   There's a dispute between your client and my
18  client. Correct?
19  **A.   Correct.**
20  Q.   I left you a voicemail message and asked you
21  to save it. Correct?
22  **A.   That's what you asked me.**
23  Q.   So you should have it. Right?
24  **A.   I might.**

Page 143

1      **MR. LAVER:** Objection.
2  BY MR. LIGHTMAN:
3  Q.   Why would you delete a voicemail message
4  after opposing counsel told you not to delete the
5  message?
6      **MR. LAVER:** Objection to the
7  suggestion that it's required.
8      Go ahead. This is silly.
9      THE WITNESS: Because what you tell me
10  is not evidence and by your email here you've
11  completely got everything wrong that we talked
12  about.
13      But, anyway, you go on.
14  BY MR. LIGHTMAN:
15  Q.   "You represented to us that the 151,200
16  boxes of 2 count iHealth COVID-19 home test kits
17  that TSH purchased from your client (Sam Gross and
18  Charlton Holdings Group) already were being shipped
19  and in transit to The SAFETY HOUSE and TSH should
20  expect delivery of the goods tomorrow." (sic)
21      Right?
22  **A.   Correct.**
23  Q.   I wrote that to you. Right?
24  **A.   That's what you wrote.**

Page 144

1  Q.   I wrote, "You also confirmed that your law
2  firm still is holding the $1,965,600.00 that TSH
3  wired into your attorney escrow account, that is
4  supposed to be held by you and not released from
5  escrow until TSH has received delivery of the
6  goods."
7      Do you see that?
8  **A.   I see that. That's where I lost --**
9  Q.   I'm sorry.
10  **A.   That's where I lost all credibility for you
11  because that's not what I told you.**
12  Q.   Then I wrote, "You should use 'reply all'
13  immediately if this email does not accurately
14  memorialize our phone conversation. Otherwise,
15  please use 'reply all' and provide us with the
16  shipping information that we requested from you
17  when we just spoke (i.e., the name and contact
18  information of the carrier that is delivering the
19  goods). We look forward to your timely response."
20      Do you see that?
21  **A.   That's what it says.**
22  Q.   And then you responded to this email on the
23  first page of Sternberg 10 at 7:08 p.m. Right?
24  **A.   Correct, same day.**

Page 145

1  Q.   Same day. Two hours later you wrote,
2  "Mr. Gary Lightman, I am not sure what you heard,
3  but I certainly did not confirm that our law firm
4  is still holding the 1.9656 million that TSH wired
5  into our attorney escrow account." Right?
6  **A.   Yes.**
7  Q.   "The funds were disbursed to the Seller in
8  accordance with the SPA and per the instructions of
9  our client." Right?
10  **A.   Yes.**
11  Q.   "I will note, your interpretation of the SPA
12  and your explanation below is not consistent with
13  the terms of the SPA. Maybe you should read it?"
14  Right?
15  **A.   Yes.**
16  Q.   And then you say -- you repeat paragraph 6.
17  Right?
18  **A.   Yes.**
19  Q.   And in that repeating of paragraph 6 you say
20  to me, "Title transfer shall happen
21  contemporaneously with funds being released to
22  Seller."
23      Do you see that?
24  **A.   Yes.**

37 (Pages 142 to 145)

Page 146

1    Q.   "Your client should have an executed Bill of
2    Sale and funds have been transferred for the
3    purchase of the goods when the goods were loaded
4    onto the common carrier." (sic)
5            Right?
6    A.   Yes.
7    Q.   And then you tell me about how we should
8    have brought suit in Texas instead of Delaware.
9            Then you say, "I am told the product
10   will be arriving tomorrow at the location provided
11   by your client.  Let me know when your client is in
12   possession of his product."  Correct?
13   A.   Correct.
14   Q.   You did not provide the shipping information
15   that we requested from you when we spoke and as
16   outlined in my email.  Correct?
17   A.   I assume that's correct.
18           MR. LIGHTMAN:  And then mark this as
19   Deposition Exhibit Sternberg 11.
20           (Exhibit Sternberg 11 was marked for
21   identification.)
22   BY MR. LIGHTMAN:
23   Q.   You sent me your email in response at
24   7:08 p.m. and at 10:34 on the same day I write back

Page 147

1    to you.  Right?
2    A.   Correct.
3    Q.   And if you look at the second page of this
4    exhibit, at the bottom is a copy of the email
5    marked as Sternberg 10 that we just discussed?
6    A.   Correct.
7    Q.   I write, "Mr. Sternberg, your email below is
8    NOT what you represented to me in our phone call of
9    earlier today."
10           Do you see that?
11   A.   Yeah.
12   Q.   I write, "You were not authorized to release
13   any funds from your attorney escrow account until
14   'Seller deliver(ed) the goods to a common carrier'
15   with the appropriate signed Seller's Bill of Sale
16   transferring title of the goods to Buyer."
17           Right?
18   A.   That's what you said.
19   Q.   I write, "This is the second (and last) time
20   we will request that you provide us IMMEDIATELY" --
21   all caps -- "with the identity and contact
22   information of the 'common carrier' that you
23   represented to me in our phone call (and that you
24   did not deny in your below email) that has the

Page 148

1    goods that you represented to me already were being
2    shipped to THS.
3            "We also request that you email to us
4    a copy of the signed Bill of Sale, as well as the
5    Bill of Lading for the common carrier shipment."
6            Do you see that?
7    A.   I see that.
8    Q.   You never gave us the name of the common
9    carrier.  Correct?
10   A.   When you started the email with "Your email
11   below is NOT what you represented to me in our
12   phone call of earlier today," at that point I
13   thought I was dealing with someone who had trouble
14   with the truth.
15   Q.   So your answer to my question is that is
16   correct, I did not give you the requested shipper
17   information.  Correct?
18   A.   I don't think we talked after this because I
19   didn't want to talk to you anymore because you have
20   a funny way of remembering the facts.
21           MR. LIGHTMAN:  Would you mark this as
22   Sternberg 12, please.
23           (Exhibit Sternberg 12 was marked for
24   identification.)

Page 149

1    BY MR. LIGHTMAN:
2    Q.   Did you ever see a copy of Deposition
3    Exhibit 12?
4    A.   I'm not sure if I saw it but I see it now.
5    Q.   Did Sam Gross send this to you when Dan
6    Scully sent it to him?
7    A.   I assume so.
8    Q.   Okay.  And it says it's a letter from The
9    SAFETY HOUSE by Dan Scully dated February 16th to
10   Sam Gross.  Correct?
11   A.   Correct.
12   Q.   "Sam, yesterday your attorney, Manfred
13   Sternberg, told my attorney, Gary Lightman, that
14   the goods for my purchase order 18315 has been
15   shipped and should be received at my warehouse in
16   Glen Mills, PA today."
17           Do you see that?
18   A.   I see that.
19   Q.   "But as of today, February 16, I have not
20   received a Bill of Lading or any other shipping
21   documents pertaining to this shipment.  (sic)
22           "You were supposed to supply these
23   goods 5 days from receipt of monies wired into your
24   attorney's trust account on January 21, 2022. (sic)

38 (Pages 146 to 149)

Page 150

1    "Not only have you failed to do that
2 you have avoided all attempts to communicate with
3 you. I have made commitments to my clients on your
4 promise to deliver the iHealth Antigen Test Kits in
5 a timely fashion. Your failure to do this has
6 jeopardized the commitments I have made.
7    "I MUST" -- all capitals in bold --
8 "hear back from you TODAY" -- all capitals in bold.
9 "I am copying your attorney and my attorney on this
10 email.
11    "Please REPLY ALL when responding to
12 this email and any other correspondence in the
13 future. If you have any questions or need to
14 contact me, please direct all communications to my
15 attorney, Gary Lightman. He can be reached..." and
16 my phone number. "Respectfully..." and signed by
17 Dan.
18    Do you see that?
19 A.  I see that.
20 Q.  He says in this email that he copied you on
21 this. Does that refresh your recollection so that
22 you don't have to assume you received a copy of
23 this?
24 A.  I assume that's accurate.

Page 151

1 Q.  Okay. Did my client, in fact, receive the
2 goods on February 15th or February 16th or even
3 February 17th?
4 A.  I don't know but I guess he didn't because
5 that's why we're here.
6    But I do notice that his first line
7 says -- and I do recall that's part of the
8 Complaint to the Bar where he's saying that I say
9 they have shipped, which, again, is not what I told
10 you.
11    What I told you was I am told the
12 product will be arriving tomorrow. I don't know
13 where the product is. That's not my job. I don't
14 know. I only know what people have told me.
15 Q.  But you said to me, I'm told the product
16 shipped to you. Right?
17 A.  I wrote that to you.
18 Q.  Okay.
19    MR. LIGHTMAN: Let's mark this as
20 Deposition Exhibit 13.
21    (Exhibit Sternberg 13 was marked for
22 identification.)
23 BY MR. LIGHTMAN:
24 Q.  This is Sternberg Document 3.

Page 152

1    It's an email from Dan Scully to
2 Charlton, Cc to Manfred, Gary Lightman and people
3 in my office, "Subject: Delivery of iHealth
4 Antigen Test Kits, Wednesday, February 16,
5 6:45 p.m."
6    Do you see that?
7 A.  Yes.
8 Q.  And Dan, on behalf of the purchaser, is
9 saying, "Sam/Manfred, it's after 6:30 p.m. and I
10 still have not received the goods both of you
11 promise I would get today.
12    "I think you guys are lying to me and
13 have continued to lie to me. Not to mention you
14 both breached our contract (And you never even sent
15 me a fully signed contract)."
16    Do you see that?
17 A.  I see that.
18 Q.  On February 16th he's informing both of you
19 he still doesn't have a copy of the signed
20 contract. Right? Then he writes --
21 A.  Yes; after he says inaccurate things, yes.
22 I don't know if that's not inaccurate as well.
23 Q.  What's inaccurate, "It's after 6:30 p.m. and
24 I still have not received the goods..."?

Page 153

1    Is that inaccurate?
2 A.  No, "the goods both of you promise I would
3 get today." I never promised anybody anything.
4 Q.  You were told he would get the goods today?
5 A.  That's important.
6 Q.  Okay.
7 A.  So you knew that I was told and that I had
8 no personal knowledge. And then --
9 Q.  Then he writes --
10 A.  Wait. Hang on. "Not to mention you both
11 breached our contract." Again, I am not a party to
12 the contract.
13 Q.  Okay. It says -- well, if you released the
14 funds before title transfer occurred, that would be
15 a violation of Section 6 of the SPA. Correct?
16 A.  I think it happens contemporaneously. So
17 when the funds are transferred, title transfers.
18 Q.  If you release the funds not contemporaneous
19 with title transfer but before title transfer, that
20 would be a breach of paragraph 6 of the SPA.
21 Correct?
22 A.  I think by the act of transferring the
23 money, title transfers at that point.
24 Q.  If you transfer the money but title doesn't

39 (Pages 150 to 153)

Page 154

1    transfer, that would be a breach of Section 6 of
2    the SPA. Correct?
3    **A. I don't think that's what Section 6 says.**
4    Q. It says, "Title transfer shall occur
5    contemporaneously with the release of funds to
6    Seller."
7    **A. So you can't release the funds without title**
8    **transferring.**
9    Q. You can. If you got the funds on January
10   21st and without ordering, without doing anything,
11   you release the funds, that would be a release of
12   funds without title transfer occurring
13   contemporaneously. Correct?
14   **A. I disagree.**
15   Q. You disagree, okay. Why do you disagree
16   with that?
17   **A. Well, I think, again, you're playing**
18   **horseshoes. You think that you need a document**
19   **that says title is transferred.**
20          **The contract itself says when you**
21   **release the money, title transfers. That's what it**
22   **says. That's what the parties agreed to.**
23   Q. Okay. Go back to this email. I disagree
24   with your interpretation, but that's why there's

Page 155

1    chocolate and vanilla and that's why there's juries
2    and courts.
3          He writes, "I think you guys defrauded
4    me." Do you see that?
5    **A. I see that.**
6    Q. Then he writes, "Do to your inability to
7    deliver the goods that I ordered and paid for, you
8    leave me no alternative but to cover my contracts
9    with my existing customers." And then in all
10   capitals and in bold he says, "I WANT MY 2 MILLION
11   DOLLARS WIRED BACK TO ME IMMEDIATELY."
12          Do you see that?
13   **A. I see that.**
14   Q. Did you send him his money back?
15   **A. I think his money had already been used to**
16   **pay for the --**
17   Q. Did you send him his $2 million back?
18   **A. No, I didn't send it.**
19   Q. Why not?
20   **A. I didn't have it per the contract.**
21   Q. Go to the SPA, paragraph 11. Oh, I'm sorry.
22          **MR. LIGHTMAN:** Deposition Exhibit 14.
23          (Exhibit Sternberg 14 was marked for
24   identification.)

Page 156

1          THE WITNESS: Yes, I see it.
2    BY MR. LIGHTMAN:
3    Q. This is the copy of The SAFETY HOUSE
4    Purchase Order 18315. Right?
5    **A. That's what it looks like.**
6    Q. This is the purchase order that's subject to
7    the SPA. Correct? It's the subject of that.
8    Correct?
9    **A. I suspect that's correct.**
10   Q. And it says the date of this order was
11   January 21, 2022. Correct?
12   **A. Yes.**
13   Q. And the vendor is care of you, Esquire.
14   Correct?
15   **A. Yes.**
16   Q. And Charlton Holding Group. Correct?
17   **A. Correct.**
18   Q. And the purchase price is $1,965,600 for the
19   purchase of 151,200 "iHealth COVID-19 Antigen Rapid
20   Test, 2 Tests per Kit." Right?
21   **A. That's what it says, yes.**
22   Q. Go to the SPA -- oh, I'm sorry.
23          When is the delivery date that SAFETY
24   HOUSE specified in the purchase order it sent?

Page 157

1    **A. It says Received By -- I'm assuming that's**
2    **what you mean, delivery date. Received by 1-25-22.**
3    Q. And were the goods shipped by your client by
4    1-25-22?
5    **A. I don't think so.**
6    Q. Were the goods received by my client by
7    January 25, 2022?
8    **A. I don't think so.**
9    Q. Okay. So go to paragraph 11 of the SPA.
10          What does the paragraph of the SPA
11   state happens if buyer terminates this contract
12   without cause?
13   **A. Paragraph 11?**
14   Q. Paragraph 11 of the SPA.
15   **A. It says what it says.**
16   Q. What does it say?
17   **A. Do you want me to read it?**
18   Q. "If Buyer terminates this contract without
19   cause..."
20   **A. Oh, okay.**
21   Q. What does it say?
22   **A. "...Seller will be entitled to liquidated**
23   **damages of $25,000 from Buyer."**
24   Q. It doesn't say, and seller can keep the

40 (Pages 154 to 157)

Page 158

1  entire $2 million purchase price, does it?
2  **A.  It does not say that.**
3  Q.    And it does not say, and seller also does
4  not have to deliver the goods.  Correct?
5  **A.  Correct.**
6  Q.    But instead of keeping 25,000 as liquidated
7  damages, you and your client retained all of the
8  purchase price that SAFETY HOUSE wired into your
9  attorney escrow account.  Right?
10         **MR. LAVER:**  Objection to form.
11         THE WITNESS:  Yeah, I didn't retain
12  anything.
13  BY MR. LIGHTMAN:
14  Q.    Excuse me.  Instead of keeping 25,000 in
15  liquidated damages, all of the purchase price that
16  was wired into your attorney trust account was
17  retained by the seller and/or you.  Correct?
18  **A.  By the seller, not me.**
19  Q.    They were in your escrow account.  Right?
20  Is it your testimony that all of the $1.9 million
21  that my client transferred to you was wired out of
22  your account?
23  **A.  Yes.**
24  Q.    Plus, you didn't give SAFETY HOUSE the

Page 159

1  151,200 boxes that were purchased.  Right?
2         **MR. LAVER:**  Objection to form.
3         THE WITNESS:  I wasn't responsible to
4  give him anything.
5  BY MR. LIGHTMAN:
6  Q.    Okay.  Plus the seller never delivered the
7  151,200 boxes purchased.  Correct?
8  **A.  Apparently.**
9  Q.    So purchaser wires almost $2 million into
10  your attorney trust account.  Right?
11  **A.  Correct.**
12  Q.    None of that money is returned to The SAFETY
13  HOUSE.  Right?
14  **A.  Correct.**
15  Q.    SAFETY HOUSE buys 151,200 boxes of these
16  test kits.  Right?
17  **A.  Yes.**
18  Q.    They weren't delivered to The SAFETY HOUSE.
19  Correct?
20  **A.  Apparently.**
21  Q.    And Gary Weiss or his company gave 4 million
22  in gem stones as collateral to you or your client.
23  Right?
24  **A.  Not to me.**

Page 160

1  Q.    To your client.  Right?
2  **A.  And I don't know if those -- I think later**
3  **the boxes of tests were attempted to be delivered**
4  **but...**
5  Q.    One pallet?
6  **A.  That's your testimony.  I don't know.**
7  Q.    Is it your testimony -- you sent us the Bill
8  of Ladings.  Is it your testimony that your client
9  attempted delivery of 151,200 boxes of test kits?
10  **A.  I think they attempted delivery.  I don't**
11  **know how many.  I wasn't there.**
12  Q.    Isn't it true that if my client says there
13  was one --
14         **MR. LIGHTMAN:**  One skid?
15         **MR. SCULLY:**  One skid.
16  BY MR. LIGHTMAN:
17  Q.    -- one skid of test kits, do you have
18  anything to dispute that?
19  **A.  I don't.**
20  Q.    Okay.  If my client testifies that the
21  serial numbers on the test kits were fraudulent on
22  the iHealth or identified by iHealth as fraudulent
23  test kits, do you have anything to dispute that?
24  **A.  I don't.**

Page 161

1  Q.    If the expiration date on the one skid of
2  boxes that were delivered to my client was just
3  about to expire, do you have anything to dispute
4  that?
5  **A.  I don't.**
6  Q.    No.  Okay.
7         **MR. LIGHTMAN:**  I'm about to switch
8  topics.  So if you want, we can get menus, order
9  lunch and keep going.
10         Does that make sense?
11         THE WITNESS:  It sounds good.
12         (Recess taken from 12:05 p.m. to
13  12:20 p.m.)
14  BY MR. LIGHTMAN:
15  Q.    So isn't it true that the reason Gary Weiss
16  wouldn't sign the declaration you prepared is
17  because it was not accurate?
18  **A.  No.  I don't -- I'm not in the habit of**
19  **giving people Affidavits that aren't accurate.**
20         **MR. LIGHTMAN:**  Let's mark this as
21  Deposition Exhibit 15.
22         (Exhibit Sternberg 15 was marked for
23  identification.)
24  BY MR. LIGHTMAN:

41 (Pages 158 to 161)

Page 162

1  Q.  So Gary Weiss is telling you -- you asked
2  Gary Weiss to sign a declaration.  Correct?
3  **A.  Correct.**
4  Q.  And Gary Weiss is telling you, I want a
5  declaration from you that you're not going to sue,
6  that you don't have any grievances regarding the
7  shipment of iCOVID test kits, will not attempt any
8  lawsuit against me or ASolarDiamond, then I'll give
9  you the declaration you want.  Right?
10 **A.  That's what he said after he promised me**
11 **he'd sign the declaration.  Then it became a little**
12 **bit more.**
13 Q.  If you look at the first page of this
14 document, which is a Manfred document but it's not
15 stamped Manfred, on April 6 he writes to you and
16 says, "Well, the declaration is far from the truth
17 as I know it."
18       Do you see that?
19 **A.  Yeah.**
20 Q.  Okay.  And why didn't you produce a copy of
21 the declaration in your discovery documents?
22 **A.  Oh, I don't know.**
23 Q.  Isn't it because the declaration that you
24 drafted contained falsehoods and you didn't want

Page 163

1  the plaintiff to see it?
2  **A.  No.**
3  Q.  Okay.
4       **MR. LIGHTMAN:**  Well, I request that
5  you produce that for us --
6       THE WITNESS:  Yes.
7       **MR. LIGHTMAN:** -- so we can see what
8  Gary Weiss is talking about.
9       **MR. LAVER:**  You'll follow up with all
10 of your requests.  Right?
11      **MR. LIGHTMAN:**  I'm making them all on
12 the record and I will send an email to you after
13 the deposition that identifies all of these.
14 BY MR. LIGHTMAN:
15 Q.  And in this you write back to him a classic
16 response.  He sent you his email at 5:42 -- at 7:36
17 in the morning.  You guys get up early.
18      You write back to him.  You attach the
19 declaration that you haven't produced for us and
20 you write, "If it is far from the truth, then that
21 is because you have told me so many lies that I
22 still don't know the truth."
23      Do you see that?
24 **A.  I do.**

Page 164

1  Q.  "My patience for your story telling and
2  bullshit excuses is over.  This NEEDS TO BE DONE
3  THIS WEEK, again like you promised me!!!  YOU
4  UNDERSTAND what a promise is Gary?"
5       Do you see that?
6  **A.  I see that.**
7  Q.  "Revise the attached," which is the
8  declaration you drafted.  Right?
9  **A.  Yes.**
10 Q.  "...so it is TRUTHFUL AND ACCURATE, all I
11 have ever asked, and return it to me and then I
12 will review and send it by" -- "send it by
13 docusign."
14      Do you see that?
15 **A.  Yeah.**
16 Q.  "DO IT TODAY.  Gary, my patience for your
17 delay is over."  Capitals, "GET THIS DONE NOW!!!"
18 And then you write, "Or I will do it without your
19 Affidavit and then you WILL" -- with a capital
20 W-I-L-L -- "have a problem with me!!!!"
21      Do you see that?
22 **A.  I see that.**
23 Q.  What do you mean by that?  You're telling
24 him sign this declaration I drafted or else you'll

Page 165

1  have a problem with me?
2       What do you mean?
3  **A.  What I suspect I mean is that I would end up**
4  **suing him or like this, blaming him for it all**
5  **because he's the one to blame.**
6  Q.  He's the one to blame.  Why?
7  **A.  Gary lied to us so many times.**
8  Q.  How did he lie to you?
9  **A.  Every time he opened his mouth he just lied.**
10 **He's just a liar.  He's a liar.**
11 Q.  So he never came through -- the bottom line
12 is he gave you a bunch of excuses but never came
13 through with the COVID kits he promised you he
14 bought.  Right?
15 **A.  And -- yes, and he made a lot of promises of**
16 **it's totally my fault, meaning him.  He was 100**
17 **percent responsible, meaning him.  He was going to**
18 **make it right, meaning him.**
19      **He was going to help and tell the**
20 **grievance committee the truth, which then I can see**
21 **he's waffling and I'm not dealing with that.  If**
22 **your truth is different, write it.  Otherwise, I**
23 **don't need you.**
24 Q.  And some of the excuses were -- read the

42 (Pages 162 to 165)

Page 166

1　next line.  Read it into the record, please.
2　**A.  "Revise the attached" --**
3　Q.  No.  Right after you say to him sign the
4　Affidavit or you will have a problem with me, what
5　do you write?
6　**A.  "The truck is less than 45 minutes away,**
7　**more money.  The truck has a broken axel, more**
8　**money.  The truck needs new screws, blah, blah,**
9　**blah.  And you have no remorse.  You are**
10　**unbelievable!!!!" (sic)**
11　　　　**I've never dealt with people like this**
12　**before.  That's not in the email, but I've never**
13　**dealt with people like this before.**
14　Q.  Your email ends, "And you have no remorse.
15　You are unbelievable!!!!"
16　　　　You just added that extemporaneous,
17　"I've never dealt with people like that"?
18　**A.  I just said I did, yes.**
19　Q.  Didn't he make good though?  Didn't he give
20　you collateral worth $4 million?
21　**A.  He didn't give me anything.**
22　Q.  Didn't he give your -- Sam collateral?
23　**A.  That's what they said.**
24　Q.  Well, so you gave him $2 million.  He gave

Page 167

1　you back gem stones worth $4 million.
2　　　　Didn't Sam say we're square?
3　**A.  No.**
4　Q.  Sam never said that?
5　**A.  No.**
6　Q.  Sam never said, I release you from any
7　further liability?
8　**A.  He didn't tell me that if he did.**
9　　　　**MR. LIGHTMAN:**  Let's mark this as
10　Deposition Exhibit 16.
11　　　　(Exhibit Sternberg 16 was marked for
12　identification.)
13　　　　**MR. LIGHTMAN:**  One of my favorites.
14　　　　**MR. LAVER:**  Can't wait.
15　　　　**MR. LIGHTMAN:**  Did you ever see this
16　before?
17　　　　THE WITNESS:  It's probably from Gary.
18　BY MR. LIGHTMAN:
19　Q.  Have you ever seen this before?
20　**A.  No, I don't believe I have.**
21　Q.  If I told you this was a picture that --
22　　　　**MR. LIGHTMAN:**  Sam or Gary?
23　　　　**MR. SCULLY:**  This?  I think it's Gary.
24　I think it's both, actually.

Page 168

1　BY MR. LIGHTMAN:
2　Q.  Either Sam or Gary, we're not sure, sent
3　this to Dan Scully.  You don't know what this is?
4　**A.  I have no idea.**
5　Q.  All right.
6　　　　**MR. LIGHTMAN:**  I'll move on then.
7　　　　**MR. LAVER:**  Off the record.
8　　　　(Discussion off the record.)
9　BY MR. LIGHTMAN:
10　Q.  Do you know who Shraga is?
11　**A.  No, I don't know.**
12　Q.  Never heard of Shraga?
13　**A.  I heard it in this lawsuit from you, but I**
14　**don't know who he is.**
15　Q.  So Shraga, who we believe is Gary Weiss,
16　called Dan Scully and said, I'm Shraga.  I'm
17　delivering this.  The truck broke down and he sent
18　that picture.
19　**A.  I believe that.  I believe that he sent the**
20　**picture.  I don't know that the truck broke down**
21　**anymore.  I don't know what's true.**
22　　　　**MR. LIGHTMAN:**  Let's mark this as
23　Deposition Exhibit 17.
24　　　　(Exhibit Sternberg 17 was marked for

Page 169

1　identification.)
2　BY MR. LIGHTMAN:
3　Q.  Let's call this the money flow chart number
4　1.  So I created this chart and we're going to go
5　through it and see how accurate it is.  Okay?
6　　　　The first line under Purchaser is THS.
7　Do you see that?
8　**A.  Yes.**
9　Q.  And the date of the purchase order from THS
10　was January 21st.  Right?
11　**A.  Yes.**
12　Q.  And it's for 151,200 kits.  Right?
13　**A.  Yes.**
14　Q.  And he wired in $1,965,600.  Correct?
15　**A.  Yes.**
16　Q.  And the purchase price that Gary Weiss
17　charged Sam was $6 per kit.
18　　　　Do you remember that from the exhibit?
19　**A.  It may be.**
20　Q.  Go to your letter to the Bar, 4-24, and look
21　at Exhibit B to that, the purchase order.
22　**A.  Yeah.**
23　Q.  And on that purchase order it says $6 per
24　kit for all the kits on there.  Correct?

43 (Pages 166 to 169)

Page 170

1    A.   That's what it looks like, yeah.
2    Q.   So if you take 151,200 test kits and you
3    multiply it by $6 a kit, you come up with $907,200.
4    Right?
5    A.   Correct.
6    Q.   And if you take that and subtract it from
7    the $1.9656 million that was wired in to you,
8    there's a balance that was kept, at least to
9    explain it, of $1,058,400.  Right?
10   A.   I don't agree with the heading.
11   Q.   Well, you don't agree with MS/SG profit, but
12   the balance kept in your account after you took in
13   Scully's or SAFETY HOUSE's purchase price that paid
14   Gary Weiss the money to buy those kits --
15   A.   Yes.
16   Q.   -- you have 1,058,400 left over.  Okay?
17   A.   That's the accounting.
18   Q.   Right.  VRC wired you $189,000 on January
19   19th.
20        MR. SCULLY:  No, 189,000 kits.
21   BY MR. LIGHTMAN:
22   Q.   They bought 189,000 kits and wired you
23   $2,268,000 on January 19th.  Correct?
24   A.   It looks like it, yes.  I'm not looking at

Page 171

1    the original.  I'm looking at your records.
2    Q.   Right.
3    A.   If your records are right --
4    Q.   Okay.  Hold on.
5        MR. LIGHTMAN:  We'll mark this as 18,
6    please.
7        (Exhibit Sternberg 18 was marked for
8    identification.)
9    BY MR. LIGHTMAN:
10   Q.   The first page of Deposition Exhibit
11   Sternberg 18 -- I will represent to you that these
12   are documents supplied to us by counsel for VRC.
13   The first page shows --
14        MR. LAVER:  Pardon me.  And did you
15   share those with counsel in this litigation?
16        MR. LIGHTMAN:  I just got them either
17   yesterday or the day before.
18   BY MR. LIGHTMAN:
19   Q.   The first page shows a $2,268,000 wire into
20   the Sternberg escrow account for VRC on January
21   19th.  Do you see that?
22        MR. LAVER:  Note my objection to the
23   use of an exhibit that was shared with counsel but
24   not provided to remaining counsel in this case.

Page 172

1        MR. LIGHTMAN:  I just got it so...
2        MR. LAVER:  It's still highly
3    inappropriate.
4    BY MR. LIGHTMAN:
5    Q.   Do you have any reason to doubt that 2.268
6    million was wired into your account on January
7    19th?
8    A.   I actually believe that's a copy from my
9    bank, but the rest of it is not mine.
10   Q.   So if you look at the first line for VRC, it
11   shows the $2.268 million --
12   A.   Correct.
13   Q.   -- line item.  Right?
14        If you look at the second page of
15   this, that's the actual Wire Instruction Sheet to
16   you from VRC.  Do you see that?
17   A.   Yes.
18   Q.   And if you look at the third page, there's
19   another wire that was sent to you the next day on
20   January 20th by Steve Corba for $181,440.
21        Do you see that?
22   A.   That's what it appears to be, yes.
23   Q.   So those numbers correspond to the numbers
24   on the January 19 and January 20 line under the VRC

Page 173

1    Purchaser column or rows.  Correct?
2    A.   Yes.
3    Q.   If you add those two together, it's 2.449,
4    money wired into your account on the 19th and 20th.
5        Do you see that?
6    A.   Yes.
7    Q.   And if you look at the Bill of Sale number
8    2, last page, it shows 189,000 test kits, which
9    corresponds to the line on 119.  Right?
10   A.   Yes.
11   Q.   And then using the $12 per test kit, there's
12   an additional -- the 181,000 purchased an
13   additional 15,120 test kits.
14        Do you see that?
15   A.   Yes.
16   Q.   So if you take the 204,120 test kits and
17   multiply it by $6 a test kit, you come up with
18   $1,224,720.
19        Do you see that?
20   A.   Yes.
21   Q.   So for VRC, they wired a total of $2,449,440
22   into your attorney trust account.  Gary Weiss
23   billed you $1,224,720 for the VRC test kits, which
24   leaves a balance of VRC money of $1,224,720.

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 174

1  Correct?
2  A.  That's what it says.  I think Gary billed us
3  for all of them as one.
4  Q.  Right.  If you look at Exhibit B to your
5  letter to the Bar, the 2,131,000 number matches the
6  number there.  Right?
7  A.  Yes.
8  Q.  So he billed you the total of $2,131,920 for
9  the test kits for THS and VRC.  Correct?
10  A.  Yes.
11  Q.  And if you add up the total funds that you
12  got from THS and VRC, subtract from that the total
13  purchase price that Gary Weiss charged you to VRC,
14  there's a balance in your escrow account of
15  $2,283,120.
16      Do you see that?
17  A.  No.  Where is that?
18  Q.  Where it says, Total.
19  A.  Oh, yeah, I see that.
20  Q.  Take the total test kits -- by the way, take
21  total test kits, the money that was wired in for
22  those test kits, minus the purchase price that's
23  shown on his Bill of Sale, and that's the balance
24  that's in your attorney escrow account.  Right?

Page 175

1  A.  That's the accounting, yes.
2  Q.  Right, according to this thing.
3      MR. LIGHTMAN:  Let me just finish this
4  chart and then we'll break for lunch.  Okay?
5      Let's mark this as Deposition Exhibit
6  Sternberg 19.
7      (Exhibit Sternberg 19 was marked for
8  identification.)
9  BY MR. LIGHTMAN:
10  Q.  I will represent to you that this is a page
11  from the October 25, 2022 responses to the
12  Interrogatories served upon the Sternberg
13  defendants that Seth Laver sent us as your
14  attorneys.
15      And this shows the payments out of
16  your escrow account.  Do you see that?
17  A.  Yes.
18  Q.  Okay.  Well, it shows in and out.  It shows
19  the 1,965,600 into the account, which corresponds
20  with the number on the chart, Deposition Exhibit
21  17.  Correct?
22  A.  Correct.
23  Q.  And you redacted the other wires in but
24  obtaining those from VRC, that's another 2,449,440

Page 176

1  million into your account.
2      But that's not on here, is it?
3  A.  No.  I don't know what the question is.
4  Q.  Why did you redact the money that VRC wired
5  in to you from disclosure to us?
6  A.  Well, you obviously know about it.  This was
7  what your client -- this addressed your client's
8  issue.
9  Q.  But the funds were co-mingled and you didn't
10  separate out SAFETY HOUSE's purchase from VRC's
11  purchase.  Correct?
12      MR. LAVER:  Objection.
13  BY MR. LIGHTMAN:
14  Q.  Look at this.  You made one, two, three,
15  four -- you disclose that you made a total of four
16  wires out of your escrow account.  Correct?
17  A.  Correct.
18  Q.  One is for Wells Fargo on February 1st.
19  That's 219,240.  Correct?
20  A.  Yeah.
21  Q.  That was sent right to Gary Weiss directly.
22  Right?
23  A.  Yes.
24  Q.  And that's shown on the chart here where it

Page 177

1  says, Total Wires Out.  Do you see the section
2  Total Wires Out?
3  A.  Yes.
4  Q.  There's the wire on 2-1 for $219,240, which
5  corresponds to your answer.  Right?
6  A.  Yeah.
7  Q.  Then there's wires to Daphna Zekaria on
8  February 4th of $1,911,960.  Do you see that?
9  A.  Correct.
10  Q.  That's on my chart.  Right?
11  A.  Yes.
12  Q.  And another wire you made on February 15th
13  of $250,000 to Daphna Zekaria.
14      And that's on here.  Right?
15  A.  Correct.
16  Q.  And then there's another wire February 25th
17  of 2022 of $190,000.  Correct?
18  A.  Correct.
19  Q.  So you made total wires out of $2,571,000,
20  right?  $2,571,200, right?  According to your
21  escrow records --
22  A.  Yep.
23  Q.  -- you distributed one, two, three, four,
24  five escrow payments totaling 2.5.  Correct?

45 (Pages 174 to 177)

Page 178

1    A.   Correct.
2    Q.   But if you add up the first one, the wire on
3    February 1st to Gary Weiss for the $219,240 and add
4    that to the second wire, $1,911,960, that equals
5    the $2,131,920 that Gary Weiss charged you for the
6    purchase of the test kits.  Right?
7    A.   Right.
8    Q.   So once you made the wire to Gary on
9    February 4th, you had fully transferred to Weiss or
10   Zekaria the purchase price for the test kits for
11   VRC and THS.  Right?
12   A.   I believe we had.
13   Q.   So why did you make an extra $250,000
14   transfer to Daphna on February 15th?
15   A.   Because on February 15th -- and it would be
16   in some of the emails or texts from Gary -- there
17   was some sort of excuse that it's 45 minutes away,
18   we need another $250,000.
19        I said that's BS.  We shouldn't have
20   to do that.  Sam said that's just the way it works
21   on 42nd Street, wherever the diamond guys are.
22        And he said -- I said, well, we
23   shouldn't do that.  And he said, no, do it because
24   we'll get the product and we'll make it up.  Okay.

Page 179

1    I did it.
2    Q.   You'll get the product meaning what?
3    A.   We'll get the PPE product to the customers
4    that Gary was supposed to provide.
5    Q.   How are you going to make it up?  If this is
6    for product that's already paid for and sold, how
7    are you going to get the product and make it up?
8    A.   Well, because there's enough profit in there
9    that it will just eat into Sam's profit.
10   Q.   Enough profit meaning what?
11   A.   Well, I think the profit was like 1.8
12   million.  Right?
13   Q.   Well, you've got the balance of the funds.
14   You have 2.283 million kept there.  Right?
15        Oh, I'm sorry.  If you deduct all
16   these wires, you've got 2.571,200, right, in?
17   A.   Out.
18   Q.   Out.  No, no.  Right, total wires out,
19   right, exactly.  You've got $4,415,040 in.  You
20   wired out $2,571,000.  So you have a balance of a
21   million eight.
22   A.   That's what the accounting --
23   Q.   That's the profit on these deals?
24   A.   That's Sam's profit, yes.

Page 180

1    Q.   You didn't take any of that profit?
2    A.   I didn't.
3    Q.   Really?
4    A.   Not a dime.
5    Q.   Not a dime, okay.
6         And why did you send another 190,000
7    to Gary on the 25th of February?
8    A.   Ten days later the same -- it still hadn't
9    happened, the same song and dance from Gary.  Sam
10   told me to send it.
11        And, actually, I felt like I was
12   sending it to Gary's lawyer and Gary's lawyer was
13   going to make sure that we got our product.
14   Q.   And --
15   A.   That's why I asked her to be involved or a
16   lawyer for Gary to be involved.
17   Q.   So Gary and/or Daphna told you, I need
18   another 190,000 before this thing can work.  They
19   induced you to make another 190,000 payment?
20   A.   Gary told Sam that.  Sam told me to send it.
21   Q.   Okay.  In your position isn't that classic
22   fraud in the inducement?
23   A.   Yes, I thought so.  I told Sam that.
24   Q.   And the only way to cure fraud in the

Page 181

1    inducement was for Gary to either deliver the
2    product or return the money back?
3    A.   Correct.
4    Q.   Isn't that what SAFETY HOUSE is saying?  You
5    had fraudulently -- you and/or Sam fraudulently
6    induced him to pay you $1,965,600 for product that
7    he never got, classic fraud in the inducement.
8         Don't you have to give him his money
9    back or give him the product to make that right?
10   A.   Yes, you have to give them their money or
11   their product.  But I didn't induce anybody.  I
12   never talked to anybody.
13   Q.   You just had the money?
14   A.   Correct.
15   Q.   At the time Scully told you on February
16   16th, I'm canceling the deal, I want my money back,
17   you had a million eight in profit in your escrow
18   account.
19   A.   He never told me anything.  I never spoke
20   with him.
21   Q.   He wrote a text.  He texted you on February
22   16th and said, I was supposed to get my product.  I
23   didn't.  I want my money back.
24        At the time he wrote that to you, you

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:22-CV-0688 (JMY)        Deposition of Manfred Sternberg, Esq.        February 7, 2024

Page 182

1  had a million eight in your attorney escrow
2  account, didn't you?
3  **A.   Yes.**
4  Q.   You didn't give it back to him, did you?
5  **A.   No.**
6  Q.   The SPA says you only keep 50,000 as
7  liquidated damages.   Right?
8  **A.   No.   It says 25,000.**
9  Q.   I'm sorry.   My apologies.
10  **A.   I know.   You play a little loose with the**
11  **facts.**
12  Q.   No, it was just inadvertent.
13       And you never gave him any of his
14  money back?
15  **A.   No.   Sam didn't want to.**
16       **MR. LIGHTMAN:** This is a good time for
17  a break for lunch.
18       (Recess taken from 12:47 p.m. to
19  1:09 p.m.)
20  BY MR. LIGHTMAN:
21  Q.   Go to Deposition Exhibit Sternberg 17.
22  **A.   Okay.**
23  Q.   The first wire you made out of the funds for
24  SAFETY HOUSE and VRC was a wire to Gary Weiss on

Page 183

1  February 1st?
2  **A.   Correct.**
3  Q.   What, if anything, did you do by way of due
4  diligence to make sure he had the goods?
5  **A.   Well, Sam had called me before and said he**
6  **was in the warehouse, his warehouse, Gary's**
7  **warehouse.   That's what he said.**
8  Q.   And --
9       **MR. LAVER:** Finish your answer.   Go
10  ahead.
11       THE WITNESS:   I mean, they were
12  interrupting me.
13       **MR. LAVER:** I know but go ahead.
14  That's why I'm saying finish your answer.
15  BY MR. LIGHTMAN:
16  Q.   Go ahead.   I'm sorry.
17  **A.   And that Sam has seen all the goods and that**
18  **this is real.   It's happening, blah, blah, blah.**
19       **As far as their relationship, who is**
20  **this guy Gary?  Well, they came down to**
21  **Philadelphia 20 years ago and they did some sort of**
22  **diamond deal or whatever.   They had a relationship,**
23  **a long-time relationship.   So I said, do you trust**
24  **this guy?  Yeah, I trust this guy.  Okay.**

Page 184

1       **And then he said, send him $219,240 as**
2  **the deposit.   Okay.   I don't know -- that was on**
3  **the 1st.   I don't know what day of the week that**
4  **was.**
5       **But, thereafter, I said, you know, if**
6  **I'm going to send him any more money, I want to**
7  **send it to his lawyer because I wanted an officer**
8  **of the court to make sure that this is not exactly**
9  **what's happened here.   Because how was I ever**
10  **supposed to verify that the goods were there?**
11       **So that's when I said give me Gary's**
12  **lawyer.   And they complied and that was Daphna.**
13  Q.   So before you wired any money to Gary Weiss
14  or Daphna, is it true you didn't get any Bill of
15  Sale or other title documents evidencing that Gary
16  Weiss or ASolar had title to and possession of the
17  test kits?
18  **A.   I had my client verify to me that he had**
19  **possession of the test kits.**
20  Q.   So you took the word of a convicted felon
21  only.   Right?
22  **A.   I took Sam's word.   I don't know "only."**
23  **They may have provided me with other documentation**
24  **like we've seen already, some of what I would call**

Page 185

1  **a Manifest.   You say it's not a Manifest but...**
2  Q.   They're estimates.   Their Local Move
3  Estimates.   That's what they say.
4       But did you get a Bill of Sale showing
5  that Gary Weiss or ASolar had title to any test
6  kits?
7  **A.   I don't, I don't believe I got a document**
8  **that said Bill of Sale, no.**
9  Q.   Did you get any other document evidencing
10  that Gary Weiss or ASolar had title to any of these
11  documents?
12  **A.   You've seen everything I got.**
13  Q.   Okay.   The documents you submitted with your
14  April 24th letter are the only documents that you
15  had showing that, the Available Movers' documents,
16  whether they're a Local Move Estimate or what you
17  call a Manifest or Gary called a Manifest.
18  **A.   Gary called them a Manifest.**
19  Q.   You didn't actually have something like...
20       **MR. LIGHTMAN:** I'm going to mark this
21  as Exhibit 20.
22       (Exhibit Sternberg 20 was marked for
23  identification.)
24       THE WITNESS:   So you're asking me if I

47 (Pages 182 to 185)

Page 186

1  got something like this?
2  BY MR. LIGHTMAN:
3  Q.  No, no.  What is Deposition Exhibit 20?
4  A.  20 looks like a Bill of Sale from Charlton
5  to SAFETY HOUSE.
6  Q.  Dated?
7  A.  January 21, 2022.
8  Q.  And it's for 151,200 boxes.  So they're the
9  test kits that my client purchased.  Right?
10  A.  I believe so, yes.
11  Q.  And it's marked CHG-8.  Right?
12  A.  Yes.
13  Q.  Did you get a document like this showing
14  that Charlton actually owned any of these 151,000
15  test kits?
16  A.  I don't know that I did.  My client assured
17  me that he saw them.  He believed it that Gary or
18  ASolar owned it.
19      I did a little research on ASolar.
20  Not much out there.  That's when I believed that I
21  wanted a lawyer in between.
22  Q.  Was it ASolar or ASolarDiamond that you were
23  dealing with?
24  A.  I don't know the difference.

Page 187

1  Q.  Okay.  It's either or one and the same?
2  A.  I suspect they're one and the same.
3  There wasn't any other ASolar involved in the
4  transaction so...
5  Q.  This document, Deposition Exhibit 20, it
6  also references the same Purchase Order 18315 that
7  my client gave as part of the SPA.  Correct?
8  A.  Correct.
9  Q.  Okay.  And this shows that my client --
10  according to this, Charlton is selling to SAFETY
11  HOUSE the 151,000 boxes.  Right?
12  A.  Yes.
13  Q.  Other than relying upon the word of your
14  client, you did nothing by way of due diligence to
15  get documentation evidencing that.  Correct?
16  A.  It was between the seller, Sam Gross/CHG and
17  ASolar.
18  Q.  So the answer to my question is that's
19  correct, I did not do anything?
20  A.  I did not have any duty to do anything and I
21  didn't.
22  Q.  Well, factually you didn't say to Sam or
23  Gary, give me a Bill of Sale showing you own these
24  documents.  Right?

Page 188

1  A.  I do not think I did that.
2  Q.  You didn't say to Sam, I know you say that
3  and you say it's real, but how do you know that
4  they're his and how do we have proof other than him
5  telling you that, that he owns this product?
6      You never asked Sam to go beyond that.
7  Right?
8  A.  That's a fuzzy line beyond that.  We had
9  discussions about it, and he felt comfortable that
10  ASolar owned them and all the documentation that
11  ASolar provided.
12      And now that I had a lawyer who said
13  she represented ASolar and had represented him for
14  20 years, I felt comfortable.  I didn't think a
15  lawyer would have been involved in that.
16  Q.  There's a purchase order from Charlton to --
17  excuse me.  There's a purchase order -- well, first
18  of all, who was the owner of this?  Was it Gary
19  Weiss or was it ASolar?
20  A.  I don't know that there are even test kits
21  now.  I don't know.
22  Q.  But who was Gary telling you owned these
23  kits?
24  A.  ASolar.  I think that's what's on the

Page 189

1  documents, the Manifests or the -- there is a
2  document that you sent me.  It's probably on my
3  letter to the Bar.
4  Q.  Look at 8A -- 8B rather.
5  A.  8B?
6  Q.  Yeah.  Who is that estimate addressed to?
7  A.  Gary Weiss.
8  Q.  So it's not addressed to ASolar or
9  ASolarDiamond.  Correct?
10  A.  You know, it's my experience that people
11  sometimes confuse their own individual self with
12  their company.  So that didn't raise any red flags
13  to me.
14  Q.  So you believe you're dealing with -- the
15  supplier of these products you believe is
16  ASolarDiamond, LLC?
17  A.  I really didn't deal with them.  It was Sam
18  that dealt with them.  There is this -- I think
19  it's Exhibit B to my letter.
20  Q.  Which is the purchase order from ASolar to
21  Charlton --
22  A.  Correct.
23  Q.  -- for those test kits.  Right?
24  A.  Correct.

Page 190

1   Q.   So ASolar is purchasing the test kits
2   according to one document.  Gary Weiss is getting
3   what you call a Manifest, what the document states
4   is a local truck estimate.
5        And that didn't raise any alarm bells
6   in your head?
7   **A.   No.  Gary said it was a Manifest as well and**
8   **this document is an invoice from ASolar, LLC to**
9   **Charlton.**
10  Q.   Did you even --
11  **A.   And it acknowledges the amount of money.**
12  Q.   Okay.  Did you even do a search of the
13  corporate records to see if ASolar, LLC was a
14  validly existing company?
15  **A.   I might have.**
16  Q.   What did you come up with?
17  **A.   I don't remember.  I don't remember.**
18  Q.   I will represent to you that I've searched
19  New York and New Jersey and there is no entity I've
20  been able to find called ASolar, LLC.
21  **A.   I think you should ask Gary about that.**
22  Q.   I did.  There's an entity called
23  ASolarDiamond, LLC.
24  **A.   Again, that's back to my statement that**

Page 191

1   **sometimes people deal in their individual capacity**
2   **or their corporate capacity and they use part of**
3   **the name or all of the name.**
4   Q.   So here's what I don't get about you.
5        You get a million nine from my client.
6   You get 2.5 million from VRC.
7   **A.   Right.**
8   Q.   The same SPA says that the reason it goes to
9   you instead of directly to the seller is because,
10  quote, "Title transfer shall occur
11  contemporaneously with the release of funds to
12  Seller," end quote.
13       But you do nothing to make sure that
14  that happens.  You took the word of a convicted
15  felon, Sam Gross.  You didn't check about his
16  company to see if it was validly formed.  You
17  didn't get a Bill of Sale or any other document to
18  make sure he actually owned the goods.
19       All you had was your client, Sam
20  Gross, either individually or on behalf of Charlton
21  says, I'm in the warehouse.  I see these test kits.
22  It's good, wire them the money.
23       And that's what you based the wire on.
24  Correct?

Page 192

1   **A.   You put a lot into that question.**
2   Q.   I'll break it down.
3   **A.   Please.**
4   Q.   You didn't obtain any title documentation
5   from Gary Weiss or ASolar.  Correct?
6   **A.   Other than what you've seen, correct.**
7   Q.   What I've seen is you've got a Bill of Sale
8   which doesn't -- excuse me.  You have an invoice
9   where he's billing you to buy the stuff.  Right?
10  **A.   He's billing Sam to buy the stuff.**
11  Q.   Billing Sam to buy the stuff.  Excuse me.
12       And you have a truck -- a local truck
13  estimate produced by Available Moving & Storage to
14  Gary Weiss and not ASolar.  Right?
15       And they're the only documents you got
16  and relied upon in making a decision to release
17  funds from escrow?
18  **A.   And the invoice from ASolar.**
19  Q.   I said that.  An invoice from ASolar to
20  Charlton for the test kits.  Right?
21  **A.   Correct.**
22  Q.   It doesn't say, I own these test kits.
23  Right?  It just says, here's what I'm selling you.
24  There's no evidence that he actually owns that.

Page 193

1   Correct?
2   **A.   (No response.)**
3   Q.   It's an invoice.  Right?
4   **A.   There's no evidence that he doesn't.**
5   Q.   But there's no evidence that he does.
6   **A.   That's not my responsibility to check his**
7   **company.**
8   Q.   But the SPA says, "Title transfer shall
9   occur contemporaneously with the release of funds
10  to Seller."
11  **A.   Correct.  That's the wrong seller.  Seller**
12  **is CHG in that context.  You're mixing them.**
13  Q.   Okay.  So what did you have showing CHG had
14  title to the goods?
15  **A.   CHG represented to me that they were buying**
16  **the goods from ASolar or Gary.**
17  Q.   The oral conversation you had when Sam
18  called you from the warehouse.  Right?
19  **A.   And he signed a Bill of Sale.**
20  Q.   What Bill of Sale did he sign?
21  **A.   A Bill of Sale to your client.**
22  Q.   That's CHG signing a Bill of Sale to my
23  client.  Right?
24  **A.   Correct.**

49 (Pages 190 to 193)

Page 194

1  Q.  But what evidence do you have that CHG
2  actually had title to those goods?
3  **A.  They represented to me that they did.**
4  Q.  He made a phone call to you.  Right?
5  **A.  Well, it probably was more than that.**
6  Q.  Did he write you an email?  Did he follow up
7  that in an email?
8  **A.  I don't know that he followed up in an email**
9  **or a text, but it was several conversations that he**
10  **was comfortable.  It's...**
11  Q.  Sam Gross was comfortable.  Right?  The
12  convicted felon was comfortable.
13  You, the attorney holding the money
14  that's supposed to make sure title transfer shall
15  occur contemporaneously with release of funds to
16  seller, you didn't get any title documents from
17  CHG.  Right?
18  MR. LAVER:  Objection.
19  THE WITNESS:  I did.
20  BY MR. LIGHTMAN:
21  Q.  Other than the two documents we've been
22  referring to, the January 26th invoice from
23  Charlton to -- from ASolar to Charlton and other
24  than the Available Movers local truck estimate, you

Page 195

1  didn't get any other documents evidencing title.
2  Correct?
3  MR. LAVER:  I object to that
4  testimony.
5  BY MR. LIGHTMAN:
6  Q.  You can answer.
7  MR. LAVER:  That wasn't a question.
8  THE WITNESS:  You're mixing two --
9  they're two sales.  You're mixing them.  You're
10  trying to confuse me I think.
11  BY MR. LIGHTMAN:
12  Q.  There's a sale from ASolar to Charlton.
13  Correct?
14  **A.  Correct.**
15  Q.  And a sale from Charlton to my client and
16  VRC.  Right?
17  **A.  Correct.**
18  Q.  You didn't get any documents from Gary Weiss
19  or ASolar evidencing that he actually had title to
20  those goods.  Correct?
21  **A.  Other than what you've seen, correct.**
22  Q.  And the other than what you've seen you are
23  referencing is the January 26th invoice that ASolar
24  sent to Charlton.  Right?  And the February 7th

Page 196

1  what you call Manifest or Bill of Lading, which
2  says on it Local Truck Estimate.  Right?
3  **A.  What Gary says is a Manifest.**
4  Q.  They're the only two documents.  Right?
5  **A.  And his -- did you say his invoice?**
6  Q.  Yes, the invoice.
7  **A.  His invoice.**
8  Q.  Yes, Exhibit B invoice, the Exhibit D
9  documents, whatever they are, Manifest or Bill of
10  Lading, they're the documents you relied upon.
11  Correct?
12  **A.  Yes.**
13  Q.  There's no other documents.  Correct?
14  **A.  Other than conversations, correct.**
15  Q.  Okay.  So there wasn't any Bill of Sale
16  showing -- other than those documents, you didn't
17  actually have something called a Bill of Sale
18  showing, like Deposition Exhibit Sternberg 20,
19  showing Charlton getting title to these goods from
20  whoever they bought them from.  Right?
21  **A.  Correct.  I was not asked to do that.**
22  Q.  Do you know who he got the goods from?
23  **A.  Who ASolar got them from?**
24  Q.  Yes.

Page 197

1  **A.  I don't know.**
2  Q.  Did you make any effort to determine who he
3  purchased the 151,000 kits from?
4  **A.  My client was in charge of that, not me.**
5  Q.  But your client didn't have the funds.
6  Right?
7  **A.  Until --**
8  Q.  You released them to him.
9  **A.  Until I released them.**
10  Q.  Who is the person responsible for making
11  sure that title transfer shall occur
12  contemporaneous with the release of funds to
13  seller?
14  **A.  That's a broad question.**
15  Q.  It's really not.  Who did my client -- my
16  client transferred $2 million to you based upon the
17  representations made to him and the understanding
18  set forth in the document you created -- excuse
19  me -- you drafted and edited that title transfer
20  would be contemporaneous with the release of funds
21  to the seller?
22  **A.  That's correct.**
23  Q.  Okay.  Other than Exhibit B in your letter
24  to the Bar and Exhibit D, there were no other

Page 198

1  documents that you asked for or relied upon in
2  making the decision to release any of these wires
3  that are set forth in the chart. Correct?
4  **A. Well, I did ask for and I got some**
5  **information from Daphna about her wire instructions**
6  **and her name, address, etc.**
7  Q. But the information you got from Daphna did
8  not pertain to her client's acquisition of title to
9  the test kits. Correct?
10  **A. I don't think that was an issue.**
11  Q. Okay. You said that Gary Weiss fraudulently
12  induced your client to transfer $190,000. Right?
13  **A. Among others, among other funds, yes.**
14  Q. When did you disburse the million eight from
15  your attorney escrow account?
16  **A. Well, it was in a series of transactions**
17  **where I disbursed it according to what my client**
18  **told me because he was trying to buy product in**
19  **order to deliver it.**
20  Q. So he was using the balance of funds that
21  SAFETY HOUSE gave you to purchase product for other
22  people?
23  **A. For SAFETY HOUSE.**
24  Q. What?

Page 199

1  **A. He was trying to use these funds -- I think**
2  **they call it cover. He was trying to make sure**
3  **that he delivered product.**
4  Q. Where are any of the documents reflecting
5  that attempt to cover?
6  **A. My escrow account shows the payments that**
7  **were made.**
8  Q. Your escrow account shows five transfers
9  out. These are the only five transfers you
10  identified in Deposition Exhibit Sternberg 19.
11  You're saying there were other
12  payments made out of your escrow account?
13  **MR. LAVER:** Objection, Gary, to your
14  explanation but you can clarify.
15  BY MR. LIGHTMAN:
16  Q. Were there other funds made -- transfers
17  made out of your escrow account to try and cover
18  when Weiss couldn't cover?
19  **A. To buy new product, yes.**
20  Q. Okay. Were there actually monies
21  transferred out?
22  **A. Yeah.**
23  **MR. LIGHTMAN:** I would request those
24  records be supplied to us. This is the first time

Page 200

1  we're hearing about that.
2  **MR. LAVER:** I object to your testimony
3  but that's inaccurate.
4  BY MR. LIGHTMAN:
5  Q. Other than these five payments, did you
6  identify any other payments made out of your escrow
7  fund in connection with the funds that SAFETY HOUSE
8  gave you?
9  **A. Yes, I believe we did.**
10  Q. Where?
11  **MR. LAVER:** What's the question? The
12  materials have been produced and they speak for
13  themselves.
14  **MR. LIGHTMAN:** Yeah, but these are the
15  only five transfers. He's now saying there were
16  other transfers made of the million eight left in
17  the account.
18  **MR. LAVER:** And that's been disclosed
19  through our production.
20  **MR. LIGHTMAN:** I don't believe so. If
21  you could point to the document numbers or produce
22  the documents.
23  **MR. LAVER:** I will, yeah.
24  **MR. SCULLY:** Well, if there's more

Page 201

1  money that went out than the million eight.
2  BY MR. LIGHTMAN:
3  Q. When was the million eight dissipated,
4  totally dissipated?
5  **A. The records would speak for themselves, but**
6  **there were a series of transactions.**
7  Q. Was it by the end of 2022?
8  **A. Oh, yeah.**
9  Q. Well before the end of 2022?
10  **A. I believe so.**
11  **MR. LIGHTMAN:** Can you mark this as
12  Deposition Exhibit 21.
13  (Exhibit Sternberg 21 was marked for
14  identification.)
15  THE WITNESS: Okay. I've read it.
16  BY MR. LIGHTMAN:
17
18  Q. Now, S-h-l-o-m-i, that's a reference to Sam
19  Gross. Right?
20  **A. That's what you're telling me. I don't know**
21  **that.**
22  Q. Okay. I will represent to you that that is
23  a reference to him. This is a -- Sam is having an
24  email exchange, excuse me, a text exchange with

51 (Pages 198 to 201)

Page 202

1  Daphna Zekaria.
2  **A.  Okay.**
3  Q.  How do I know that?  If you look at the
4  11-21 black email back to Sam, it says, "I'm being
5  asked to testify against you and Gary basically in
6  the federal case and if the judge issues an order,
7  I will because of the lies about the amounts
8  Manfred and Gary said I received."
9      Do you see that?
10 **A.  Yeah.**
11 Q.  So the only other person involved in this is
12 her because you are identified, Gary is identified
13 and she's writing to Sam.
14     So is it a fair assumption to say,
15 based upon reading that, that the black text back
16 to Sam is from Daphna?
17 **A.  You're asking me to testify about your**
18 **document.  I don't know, but the documents speak**
19 **for themselves.  She got those.  I've got the wire**
20 **receipts to show she got them.  If she wants to**
21 **deny it, deny it.**
22 Q.  No, we'll get there in a second.
23     It says -- Sam is telling her
24 September 20, 2023 "End balance 1,876,003.89."

Page 203

1      Do you see that?
2  **A.  Yeah.**
3  Q.  The ending balance in your escrow account,
4  isn't that?
5  **A.  It may be his ending balance, but it's close**
6  **to what you say.**
7  Q.  So you said all that money went out in 2022.
8      Why is Sam Gross writing to Daphna
9  September 2023 that there's still a million --
10 almost a million nine left in your escrow account?
11 **A.  You should actually ask him.  I don't know.**
12 Q.  You don't know?
13 **A.  My bank records will speak for themselves.**
14 Q.  Well, you haven't produced all your bank
15 records.
16 **A.  I think we have but...**
17 Q.  You produced January, February, March and
18 April.
19     MR. SCULLY:  Just to March.
20     MR. LIGHTMAN:  January, February and
21 March and you redacted a lot of it.
22 BY MR. LIGHTMAN:
23 Q.  After she writes "End balance 1,876" --
24 **A.  I thought you said that was what he wrote.**

Page 204

1  Q.  After he wrote, excuse me, to her, she
2  writes back, "All of them are a product of you and
3  your people.  My God you are the devil.  The worst
4  person I ever met" -- excuse my French again --
5  "just not a fucking word.
6      "I'm being asked to testify against
7  you and Gary basically in the federal case and if
8  the judge issues an order I will because of the
9  lies about the amounts Manfred and Gary said I
10 received.
11     "My God you are the devil.  The worst
12 person I ever met - not just a fucking" -- and then
13 it ends there.
14     Do you know what she's talking about?
15 **A.  No.**
16 Q.  I should ask her about it then.  Right?
17 **A.  You probably should.**
18     MR. LIGHTMAN:  Mr. Healey?
19     MR. HEALEY:  I don't answer questions.
20     THE WITNESS:  What I would say is
21 those DZ wires --
22 BY MR. LIGHTMAN:
23 Q.  Let's talk about those.
24 **A.  Those are three wires that went to Daphna.**

Page 205

1  Q.  Let's talk about that.  Okay?
2      MR. LIGHTMAN:  Can we mark this as
3  Deposition Exhibit 17A, please.
4      (Exhibit Sternberg 17A was marked for
5  identification.)
6      MR. LIGHTMAN:  It's money flow chart
7  number 2.
8  BY MR. LIGHTMAN:
9  Q.  If you take 17 and put it on top of 17A, you
10 get the full picture.  My apologies.  I am computer
11 illiterate.  I couldn't figure out how to print
12 this out on one page.
13     But if you look where it says --
14     MR. HEALEY:  There's a button that
15 says, "print on one page."
16     MR. LIGHTMAN:  I tried that.
17 BY MR. LIGHTMAN:
18 Q.  If you look, it says, "MS Total Wires Out"
19 on 17, 2,571,200 and then go back down to the next
20 page, MS wires to Daphna Zekaria, it's 2,351,960.
21     Do you see that?
22 **A.  Yes.**
23 Q.  If you take the two -- if you look at the
24 top page, if you exclude the top one of 219,240 and

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                    February 7, 2024

---

Page 206

1  you take the four there, the million nine, 250, 190
2  and 231, that adds up -- or 1,91 and 25, that adds
3  up to 2,315,960.
4          So start out total wires that you sent
5  to Daphna is $2,351,960. Do you see that?
6  A.  Yes.
7  Q.  Gary Weiss has said that total payments that
8  he got from Daphna are only 1,447,200.
9          Do you know how I know that?
10         MR. LIGHTMAN:  Let's mark this as 22.
11         (Exhibit Sternberg 22 was marked for
12  identification.)
13         MR. LAVER:  Off the record.
14         (Discussion off the record.)
15  BY MR. LIGHTMAN:
16  Q.  So I will represent to you, Mr. Sternberg,
17  that Gary Weiss emailed this to us showing total
18  payments that were made to him.
19         He says he got the 219,240 from you on
20  February 1st.  He says he got on February 7th
21  $1,246,960.  On February 15th he got another
22  130,000, and on February 28th he got 70,000.
23         And if you add those four up, the
24  total payments he said he got from you and Daphna

---

Page 207

1  was $1,447,200.  Do you see that --
2  A.  Yes.
3  Q.  -- on his green stick-um and also on my
4  chart here?
5  A.  Yes.
6  Q.  Then if you subtract out the wire that you
7  sent him of 219,240, that leaves $1,227,960, total
8  wires from Daphna to Gary.  Do you see that?
9          You sent her a total of $2,351,960.
10  She sent him total wires of $1,227,960.  That
11  leaves 1,124,000 of money that you wired to Daphna
12  that she didn't wire to Gary, if my math is correct
13  and the information provided to me by Gary Weiss is
14  correct.  Correct?
15         MR. HEALEY:  Objection.  You can
16  answer.
17  BY MR. LIGHTMAN:
18  Q.  What happened to that money?
19         MR. HEALEY:  Objection.
20         THE WITNESS:  What money?
21  BY MR. LIGHTMAN:
22  Q.  The 1,124,000 of money that you wired to
23  Daphna that she didn't give to Gary Weiss.
24  A.  That's between Daphna and Gary Weiss.  I

---

Page 208

1  don't know what their deal is.
2          MR. LIGHTMAN:  Mr. Healey?
3          MR. HEALEY:  I'm not here to be
4  deposed.
5          THE WITNESS:  So, I mean --
6          MR. LIGHTMAN:  I'm giving you a little
7  preview of what --
8          MR. HEALEY:  He can gave it to Sam.
9          MR. LIGHTMAN:  I wish.
10         THE WITNESS:  You'll notice that he
11  says "should be" to the right and two of his three
12  calculations are correct.
13  BY MR. LIGHTMAN:
14  Q.  What's the third calculation not correct?
15  A.  Well, he says the last one was 130,000.  It
16  was 190,000.
17  Q.  No, no.
18         MR. SCULLY:  He got 70.
19  BY MR. LIGHTMAN:
20  Q.  190 is what you sent to Daphna; 130 is what
21  he said Daphna sent to him.
22  A.  No, you've got it wrong.  He's saying he got
23  70 from Daphna, should be 130.  And what I'm
24  telling you is I sent him -- I sent Daphna 190.

---

Page 209

1  Q.  I see what you're saying.  I got it now.
2  A.  So I don't know where his numbers came from
3  or what his deal is with Daphna.
4  Q.  And I've asked him for his records, actual,
5  not just handwriting, but I want to see his bank
6  records.  And we'll find out next Friday.
7  A.  I also think you should audit his documents.
8  Q.  For sure.
9  A.  Because I think he's manufactured documents.
10  Q.  Really?  Interesting.  Keep those charts
11  there.
12         MR. LIGHTMAN:  Let's mark this as 23,
13  please.
14         (Exhibit Sternberg 23 was marked for
15  identification.)
16         MR. LIGHTMAN:  For the record
17  Deposition Exhibit Sternberg 23 has Bates stamps
18  Sternberg 529, 530 and 531.
19  BY MR. LIGHTMAN:
20  Q.  Do you recognize this deposition exhibit?
21  A.  Not really, but it probably is -- if I
22  produced it, I had it.  So I'm not denying that I
23  got it.  I just don't recall it.
24  Q.  Did you ever respond to this email?

---

53 (Pages 206 to 209)

Page 210

1  A.  I don't know.
2  Q.  Could you check and see if you did produce
3  that?  Because I don't have a response.
4  A.  Okay.
5  Q.  Where is your email that Sam Gross is
6  responding to?
7  A.  Why do you think he's responding?
8  Q.  He just wrote this out of the clear blue to
9  you?
10  A.  I mean, you're suggesting to me that it's
11  responsive to an email from me?  I'm just asking
12  you where did you get that?
13  Q.  I believe it is but will you check that as
14  well?
15  A.  Okay.
16  Q.  He says, "Good morning, my friend."  So
17  you're still friends as of May 21st.  Right?
18  A.  Is that a question?
19  Q.  Yeah.
20  A.  I'd call you my friend.  So I've got a lot
21  of friends.
22  Q.  Okay.  So he says, "The entire deal is
23  causing me now also physically damages as I am
24  constantly stressed."

Page 211

1       Do you see that?
2  A.  Yes.
3  Q.  Then he writes -- what does he mean by that?
4  Do you know?
5  A.  You'd have to ask him.
6  Q.  Okay.  He says, "I don't care about the
7  profit."  What's he referring to there?
8  A.  I guess he's talking about the profit.
9  Q.  That's the million eight that's left in your
10  account after you buy the stuff?
11       MR. LAVER:  Objection.
12       THE WITNESS:  I don't think he says
13  that.  I think he says later it's less than that.
14  BY MR. LIGHTMAN:
15  Q.  I'm sorry.  Hold on a second.  One more
16  thing I forgot to cover.
17       In 17, Deposition Exhibit 17 --
18  A.  Correct.
19  Q.  -- if you take the money that VRC gave you
20  and SAFETY HOUSE gave you, subtract from that the
21  money you wire transferred, there's still 2,283,120
22  bucks left over.
23       Do you see that right there
24  (indicating)?  Right?

Page 212

1  A.  That's what that says.
2  Q.  And if you add to that, next line, the
3  diamonds and gem stones that were given to your
4  client and/or you of $4 million, there's 6,283,120
5  bucks in profit.  Right?
6  A.  No.
7  Q.  Why isn't that correct?
8  A.  Who is giving you the $4 million figure?
9  Q.  That's Gary Weiss' numbers on the collateral
10  that shows it's 4 million bucks.
11       And nowhere in any of the documents do
12  you or Sam say, Gary, the collateral you gave us is
13  not worth 4 million.  None of you write him back.
14  So that's what I go on.
15  A.  So that's complete speculation and you're
16  relying on what he's saying.  I don't know what
17  those jewels are worth.
18       I have no -- I'm not a gemologist.
19  Are you?  I don't think you are.  I don't know how
20  you would know that, but don't suggest to me $6
21  million and have a fake question.
22  Q.  I'll rephrase it.
23       The total profit on the deal for your
24  client is 2,283,120 plus whatever the gem stones

Page 213

1  are valued at that were turned over from Gary to
2  Sam.  Right?
3  A.  Yes.  Some material items, correct.
4  Q.  He says it's 4 million and that brings the
5  profit up to 6 million --
6  A.  Who is he?
7  Q.  Gary Weiss.
8  A.  Ask him about it next Friday.
9  Q.  I plan to, believe me.  Let's go back to
10  this Deposition Exhibit 23.
11       He says, "I haven't sold the
12  collateral yet."  That's a reference to -- do you
13  see where it says -- he writes, "Regardless, the
14  reason I'm texting/emailing this?  Is not to have
15  an argument but to clarify a few things."
16       Do you see that?
17       (Court reporter asked for
18  clarification.)
19  BY MR. LIGHTMAN:
20  Q.  Sam is writing to you on May 31, 2022,
21  "Regardless, the reason I'm texting/emailing this?
22  Is not to have an argument but to clarify a few
23  things."
24       Do you see that?

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:22-CV-0688 (JMY)            Deposition of Manfred Sternberg, Esq.            February 7, 2024

Page 214

1  A.  I do.
2  Q.  So he says, "Yes, I haven't sold the
3  collateral yet." Right?
4  A.  Yes.
5  Q.  So I guess you asked him have you sold the
6  collateral because he's saying, yes, I haven't sold
7  it. Right?
8  A.  Correct.
9  Q.  That's what leads me to think there's a text
10  or an email from you to him to which he's
11  responding. That's why I would like to see that.
12  A.  It may be a phone call, but go ahead.
13  Q.  That's true.
14  A.  And that's why he's saying -- he's saying
15  I'm writing the email because he doesn't want to
16  argue on the phone.
17  Q.  All right. It says, "I might not even sell
18  it till the season starts (which is months ahead)."
19  Right?
20  A.  Right.
21  Q.  Then he writes, "The things is that I have
22  opportunities to close VRC and ship to Scully in
23  full as well for peanuts now." Right?
24  A.  Yes.

Page 215

1  Q.  And then he says, "And I don't know why you
2  say there is no money." Right?
3  A.  Correct.
4  Q.  "(Unless you took out funds for you as
5  profit already. And fine. But then just say it)."
6     Do you see that?
7  A.  Yes.
8  Q.  So why is he saying you may have taken funds
9  out for your profit?
10  A.  Because he's wrong. I remember. Now I
11  remember this. He's just completely wrong, way off
12  base.
13  Q.  So you should have written him back saying,
14  you're wrong, I didn't take money out as profit?
15  A.  Probably but --
16  Q.  I'm asking you to find out what your
17  response is. Okay?
18  A.  Okay.
19  Q.  Then he says, "I'm running around like a
20  chicken with no head. I used my own funds as well
21  for this. Because it's my responsibility to
22  complete these orders no matter what. With Gary
23  screwing me or not. With collateral or not."
24  Right?

Page 216

1  A.  That's what it says.
2  Q.  Do you know what that means?
3  A.  You should ask him.
4  Q.  Well, how did Gary Weiss screw Sam or you if
5  Gary gave you collateral worth 4 million when he
6  did not come through with the test kits?
7  A.  Well, your question keeps on saying you.
8  Gary didn't give me anything. He didn't give me
9  jewels. He didn't give me money. He didn't give
10  me anything.
11  Q.  He gave them to Sam?
12  A.  Sam.
13  Q.  Sam had control over it?
14  A.  Sam was the client, yes.
15  Q.  You didn't have control over it?
16  A.  The money but not the gems.
17  Q.  You didn't have control over the gems?
18  A.  None.
19  Q.  Why did you offer the gems to Randy Adler
20  and/or Bill Berman if they couldn't come through
21  with the product?
22  A.  On behalf of Sam, on behalf of my client. I
23  don't have gems.
24  Q.  So you didn't write -- you wrote in your

Page 217

1  email to them, my client will give you the gems or
2  I will give you the gems?
3  A.  I don't know. What did I say?
4  Q.  We're going to get to that.
5  A.  Okay. You said, I would give you the gems.
6  Is that what you said I said? Let's see how right
7  you are.
8  Q.  I asked.
9  A.  Let's see how right you are.
10  Q.  I asked. I didn't say -- I said which one?
11  A.  You suggested the answer to me of "I."
12  Q.  Mr. Sternberg, I just --
13  A.  I just want to make sure that you're asking
14  questions.
15  Q.  I'm just asking questions. You're the one
16  that's supposed to give full and complete and
17  truthful answers.
18     MR. LAVER:  Gary, move on. We're
19  good. Go on.
20  BY MR. LIGHTMAN:
21  Q.  "The facts are? Number wise?"
22     Do you see that?
23  A.  Yep.
24  Q.  "These people sent us 4.5 million." Right?

55 (Pages 214 to 217)

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 218

1  A.  Okay.
2  Q.  What does my chart say?
3  A.  4.4.
4  Q.  Pretty close, isn't it?
5  A.  Yeah.  For horse shoes, yes.
6  Q.  And there's other people involved.  There's
7  other test kits involved in this deal.  Right?
8  A.  I don't know what that means.
9          MR. LIGHTMAN:  We'll mark this as 24,
10  please.
11          (Exhibit Sternberg 24 was marked for
12  identification.)
13          THE WITNESS:  Okay.
14  BY MR. LIGHTMAN:
15  Q.  So you produced this as Sternberg 282.  It's
16  a list of test kit delivery addresses with PO#,
17  Ship To Address and Quantities Shipped.
18          Do you see that?
19  A.  Yes.
20  Q.  And the PO number, it shows one, two, three,
21  fourth one down, "Aldan Avenue in General Mills,"
22  151,200 kits.  Do you see that?
23  A.  I see that.
24  Q.  But it's really Glen Mills.  Would you agree

Page 219

1  that that's a misstatement?
2  A.  I didn't prepare it.  I think Gary prepared
3  it.  So I have no confidence that anything is
4  accurate.
5  Q.  And if you look at the purchase order,
6  that's not even the right purchase order for my
7  client's product.  Right?
8  A.  Probably not.
9  Q.  But if you look two inches right above it,
10  VRC Medical Services and Nail & Beauty, if you add
11  those two numbers up, the 181,440 and the 7,560,
12  that comes out to 189,000.
13          Do you see that?
14  A.  I see that.
15  Q.  Okay.  So that's those three entries, Nail &
16  Beauty and VRC combined for 189,000 and Aldan
17  Avenue, 151,000.
18          In addition to the VRC, Nail & Beauty
19  and SAFETY HOUSE sales, there's one, two, three
20  other purchasers listed on this.  Correct?
21  A.  I don't know that they're purchasers.  These
22  are delivery addresses.
23  Q.  Okay.  So one of them is El Monte -- the
24  bottom one is El Monte Unified School District

Page 220

1  Warehouse for 7,000 kits.  Right?
2  A.  That's what it says.
3  Q.  And there's a purchase order listed to the
4  left.  Do you see that?
5  A.  Yes.
6  Q.  And if you look at Exhibit B to your letter
7  to the Bar, there's a line item underneath the
8  total for the 7,000.  Do you see that?
9          Exhibit B or look at Deposition
10  Exhibit 4, your letter to the Bar.
11  A.  I'm looking.  Here it is.
12  Q.  Look at Exhibit B.
13  A.  Okay.
14  Q.  One of the line items is a $7000 line item.
15  Right?
16  A.  No.  It's a 7,000 quantity item.
17  Q.  Right, 7,000 quantity item.  Right?
18  A.  Yes.
19  Q.  And that corresponds to Uyba County Schools.
20  Right?
21  A.  Well, it's the same number.
22  Q.  It's the same number.  Excuse me.  It's the
23  same number shown on El Monte Unified School
24  District for quantity number?

Page 221

1  A.  Yeah, same number.
2  Q.  If you look at Nation Wide Medical Services
3  at the top of this page 282, it's for 15,120.
4  Right?
5  A.  That's what it says.
6  Q.  And that number also matches the number set
7  forth on that Exhibit B invoice, 15,120?
8  A.  As the number of units, yes.
9  Q.  Units.  So we have accounted for Nation
10  Wide, Nail & Beauty, VRC, SAFETY HOUSE.
11          Is there a line item for 3,000 to Uyba
12  County Schools on Exhibit B?
13  A.  I don't see it but...
14  Q.  Why isn't there a line item for that in the
15  purchase order when it's shown as a shipping
16  address?
17  A.  Someone else could have bought it and had it
18  shipped to somebody else.
19  Q.  You're just guessing.  Right?
20  A.  Well, I didn't write this document.  I told
21  you it's not mine.
22  Q.  Your answer is I don't know?
23  A.  That's been my answer.  This is what the
24  document says.  It says what it says.

56 (Pages 218 to 221)

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)              Deposition of Manfred Sternberg, Esq.              February 7, 2024

Page 222

1    Q.   So it could be the difference between the
2    4.4 that I calculate and the extra 100,000 is Uyba
3    County Schools that's not on here.  Right?
4    A.   It could be.
5    Q.   You don't know.  You don't know the answer?
6    A.   I've told you I don't know.
7    Q.   So it says, "These people sent us 4.5
8    million."  Who is he referring to by "these
9    people"?
10   A.   You'd have to ask him.
11   Q.   Well, he wrote you an email saying, here's
12   the facts.  These people gave us 4.5.
13        Did you write him back saying, I don't
14   know what you're talking about.  What do you mean
15   by these people?
16   A.   I don't know what he means by seeing this
17   but maybe there's a response letter.
18   Q.   Okay.  So you don't know without seeing if
19   there's a response.  Right?
20   A.   No, but this 4.5, that is close to your 4.4.
21   Q.   Okay.  The number on my schedule?
22   A.   Yeah.
23   Q.   And it says, "We have given Gary 2.5."
24   Right?

Page 223

1    A.   Which is close to your numbers as well.
2    Q.   It's almost exact to my number.  Right?
3    A.   Yes.
4    Q.   That leaves 2 million.
5    A.   Yes.
6    Q.   I came up with what on my chart?
7    A.   1.8.
8    Q.   Pretty close.  Right?
9    A.   For horseshoes, yes.
10   Q.   Then "You sent me 1.25 which I fully used to
11   fulfill VRC."  Correct?
12   A.   That's what it says.
13   Q.   Okay.  So why would he write that when VRC
14   says they only got four pallets?
15   A.   You'd have to ask them.  I don't know.
16   Q.   So even though you sent him another 1.25 out
17   of your attorney escrow account, you didn't do
18   anything to confirm what that money was used for,
19   whether or not he actually had test kits or whether
20   or not they were actually delivered to VRC.
21   Correct?
22   A.   Correct.
23        MR. LAVER:  We're off the record.
24        (Recess taken from 2:01 p.m. to

Page 224

1    2:03 p.m.)
2        MR. LAVER:  What was the question?
3        MR. LIGHTMAN:  The question was --
4        MR. LAVER:  I didn't ask you.  Read it
5    back, please.
6        (The court reporter read back the
7    following:
8        "Q.  So even though you sent him
9    another 1.25 out of your attorney escrow account,
10   you didn't do anything to confirm that that money
11   was used for, whether or not he actually had test
12   kits or whether or not they were actually delivered
13   to VRC.  Correct?
14        "A.  Correct.")
15   BY MR. LIGHTMAN:
16   Q.   Would it surprise you to learn that VRC says
17   they only received a total of four skids?
18        MR. LAVER:  Objection to form.
19        THE WITNESS:  That would surprise me.
20   BY MR. LIGHTMAN:
21   Q.   Why?
22   A.   I was told otherwise.
23   Q.   By your client.  Right?
24   A.   Yes.

Page 225

1    Q.   You didn't get any documentation to evidence
2    him actually acquiring title to test kits which he
3    allegedly said he used the 1.25 million to fill for
4    VRC.  Right?
5    A.   That's not right.
6    Q.   Did you get documentation showing he had
7    test kits to send to VRC?
8    A.   I believe I did.  He provided me with
9    documentation, that email you showed earlier where
10   I said I want the documentation of the BOLs.
11   Q.   The Bills of Lading?
12   A.   Yeah.
13   Q.   Okay.  So he sent you the Bills of Lading?
14   A.   I don't know that he did but that's what I
15   wanted.
16   Q.   You asked him for it.  Sitting here today,
17   did you ever get Bills of Lading or other
18   documentation showing he had this product?
19   A.   I don't recall.
20        MR. LIGHTMAN:  I request that you
21   supply me with that if you have it, please.
22        MR. LAVER:  Put it in writing.
23        MR. LIGHTMAN:  These are document
24   requests on the record that will be supplemented.

57 (Pages 222 to 225)

Page 226

BY MR. LIGHTMAN:

Q. He writes, "That leaves 750,000." The $2 million in his above line minus the 1.25 million is 750,000.

Do you see that?

A. I see that.

Q. Then he says, "We did use 180,000 for Daniel." Do you know who that is?

A. I think that's some guy who sued, who sued him.

Q. Again, for not delivering test kits?

A. I don't think it was test kits, something else.

Q. For PPE, some PPE?

A. Some sort of PPE, yes.

Q. Was an SPA used for that PPE?

A. Probably.

Q. Was the money paid to you?

A. It probably went through my trust account, yes.

Q. So what's Daniel's last name?

A. I don't know.

Q. Okay. So that's another victim that was supposed to get PPE that never got it that ended up

Page 227

suing for the 180,000. Right?

A. You described it as a victim.

Q. Another purchaser. Right?

A. Yeah.

Q. Were you named as a defendant in that lawsuit?

A. I don't know. I don't think so.

Q. Where was the lawsuit brought?

A. I think it was probably -- I don't know that a lawsuit was ever brought.

Q. He threatened to sue. Right?

A. Everybody threatens.

Q. Okay. Well, do you have other threats from other purchasers to sue because orders weren't fulfilled?

A. I don't know.

MR. LIGHTMAN: I request that you produce that stuff, too.

MR. LAVER: Produce what?

MR. LIGHTMAN: Any letters or threats by other victims who purchased PPE or test kits that never got them.

MR. LAVER: Object to that request but you can follow up in writing.

Page 228

MR. LIGHTMAN: Purchasers.

BY MR. LIGHTMAN:

Q. Then it says, "We did use 80k for Foley." Do you see that reference?

What is that a reference to?

A. I think it's the same type of thing.

Q. Who is Foley?

A. Some sort of dispute that he had with Foley, a guy named Foley, I guess.

Q. Do you remember his first name?

A. I do not.

Q. How about Mike Foley? Does that jog a bell?

A. No.

Q. How about Mike Foley, the head of the Teamsters Union? Does that ring a bell?

A. I don't know. I don't know.

Q. Maybe that explains why you and Sam decided to pay him his 80 grand back?

MR. LAVER: Objection to form.

BY MR. LIGHTMAN:

Q. Okay. Maybe that's why --

MR. LAVER: What kinds of questions are these?

BY MR. LIGHTMAN:

Page 229

Q. -- Sam decided he should get his 80 grand back?

A. You should probably ask Sam.

Q. You didn't have anything to do with that. Right? Did you have any knowledge about that?

A. Apparently I did.

Q. Okay. Yeah, you gave 80 grand --

A. As directed by my client, correct.

Q. -- back as a refund to Foley. Right?

A. If that's what it's for, yes.

Q. Do you have documentation with evidence to that?

A. I do not know.

Q. Okay.

MR. LIGHTMAN: I request that you check. Interesting guy, Foley.

BY MR. LIGHTMAN:

Q. And then you say, "And then we did George at about 50k."

A. Yeah.

Q. Who is George?

A. George Gianforcaro.

Q. Gianforcaro?

A. Yes.

58 (Pages 226 to 229)

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:22-CV-0688 (JMY)        Deposition of Manfred Sternberg, Esq.        February 7, 2024

Page 230

1  Q.   And who is he?
2  A.   **He was someone in the PPE business, in**
3  **business with Sam.**
4  Q.   Who bought through an SPA --
5  A.   **No.**
6  Q.   -- and gave you the money?
7  A.   **Well, probably.**
8  Q.   Okay.
9  A.   **Probably.**
10  Q.   And he never got his product and he
11  threatened and Sam said to you, give him his 50k
12  back?
13  A.   **Sam directed me to give him his 50k.**
14  Q.   How many other victims are there?  Excuse
15  me.
16       How many total other purchasers out
17  there that never got their product that threatened
18  to sue you or sued you?
19  A.   **I don't know.**
20  Q.   More than a dozen?
21  A.   **No.**
22  Q.   More than six?
23  A.   **Lots of people threaten lots of things.  I**
24  **don't remember.**

Page 231

1  Q.   But you have records of this stuff.  Right?
2  A.   **I don't know that either.**
3  Q.   Okay.  Then he writes, "So there should be
4  about 550,000 left."  Correct?
5  A.   **That's what he says.**
6  Q.   And do you agree with that or disagree with
7  that?
8  A.   **I don't think I agreed with it.  I thought**
9  **it was way off.**
10  Q.   So you wrote him back saying, Sam, your
11  numbers are way off base?
12  A.   **I've already answered that question.  I**
13  **don't know.**
14  Q.   Okay.  But you'll check and produce the
15  documents?
16  A.   **Yeah.**
17  Q.   Okay.  Then you write, "I know we had funds
18  that you said you laid out before.  But we also had
19  deposits that was kept by you.  And even if you
20  take 150k out of this?  As funds you used?  It's
21  still 400k or so left."
22       What does he mean by you taking 150k
23  out?
24  A.   **I don't know.**

Page 232

1       MR. LAVER:  Note my objection to this
2  ongoing line of questioning.  You're asking the
3  witness his impression on someone else's email?
4       MR. SCULLY:  To him.
5       MR. LAVER:  You're not testifying.
6  Please stop.
7       MR. LIGHTMAN:  It's an email that Sam
8  wrote to Manfred saying you took 150 --
9       MR. LAVER:  Correct.
10       MR. LIGHTMAN:  -- out as funds you
11  used.
12       MR. LAVER:  So ask the author of the
13  email.
14  BY MR. LIGHTMAN:
15  Q.   Do you agree that you took 150,000 out of
16  escrow and used it?
17  A.   **No, I don't agree with those numbers.**
18  Q.   And so I presume you would have written him
19  back if you disagreed and said, Sam, you'll check
20  the records here?  Right?
21  A.   **It's the same answer as three times before,**
22  **yes.**
23  Q.   And it's still 400k or so left.  Right?
24  A.   **That's what it says.**

Page 233

1  Q.   When he wrote this to you in May, he said
2  there's only -- he said there's 400,000 left.
3       Was that the same, more or less than
4  what you actually had left in your escrow account?
5  A.   **I think it was far less.**
6  Q.   Far less?
7  A.   **I had far less in my escrow account than**
8  **that.**
9  Q.   Okay.  So how much do you recollect you had
10  in your escrow account?
11  A.   **I don't know.**
12  Q.   Now, in my letter to you February 15th I
13  notified you do not make any further disbursements
14  from the escrow fund.  Correct?
15  A.   **Who wrote me that?**
16  Q.   I wrote you that in February.  Do you need
17  to see the letter again?
18  A.   **Yeah.  You can show me the letter, but I**
19  **really don't take instruction from you on what to**
20  **do with my client's money.**
21  Q.   But the funds in the escrow account,
22  1,965,000 of those funds were my client's funds.
23  Right?
24  A.   **I don't agree.**

59 (Pages 230 to 233)

Page 234

1  Q.   And if you check -- well, you got a million
2  nine.  Right?
3  **A.   I see the math.**
4  Q.   You only paid 907,000.  Correct?
5  **A.   Correct.**
6  Q.   So you had 1,058,400 left over after you
7  made the disbursements?
8          MR. LAVER:  Objection, according to a
9  document you created.
10  BY MR. LIGHTMAN:
11  Q.   According to the figures that I put together
12  from the documents in this case.
13          You didn't dispute that the 151,000
14  test kits were on the purchase order.  Correct?
15  **A.   Correct.**
16  Q.   You didn't dispute the 1,965,600 was wired
17  to you?
18  **A.   Correct.**
19  Q.   You didn't dispute Sam charged you -- that
20  Gary charged you $6 per kit or a total of $907,200.
21  Correct?
22  **A.   He didn't charge me anything.**
23  Q.   He invoiced Sam --
24  **A.   Correct.**

Page 235

1  Q.   -- $6 or $907,200.  Correct?
2  **A.   Correct.**
3  Q.   And you don't dispute that if you take the
4  million nine, subtract out what Gary charged Sam,
5  you end up with 1,058,400 that still should be
6  sitting in your escrow account.  Right?
7  **A.   I don't agree.**
8  Q.   As of February 15th -- excuse me.  As of
9  February 4th, after you paid the 2,131,920 bucks to
10  Gary Weiss or Daphna, that should be the money
11  left?
12          MR. LAVER:  Objection.
13  BY MR. LIGHTMAN:
14  Q.   Right?
15  **A.   No.**
16  Q.   You don't show any disbursements other than
17  these of my client's funds other than the money you
18  put in here?
19  **A.   That's not true.**
20  Q.   Well, where is the other disbursements?
21  **A.   I think they've been provided to you.**
22  Q.   Not according to your records.
23          The complete escrow records showing
24  plaintiff's 1.9656, as well as each disbursement

Page 236

1  made from that escrow, date, amount, to whom made,
2  manner of payment, and any amount of money remains
3  in escrow.
4          You listed five transactions, one
5  deposit and four withdrawals.  Correct?
6          MR. LAVER:  Objection, in addition to
7  the documents that were produced.
8  BY MR. LIGHTMAN:
9  Q.   This is what your response in writing under
10  oath said was made, the four disbursements you made
11  from my client, 1,965,000.
12  **A.   Will you make the representation on the
13  record that that's my amended responses to
14  Interrogatories?**
15  Q.   You filed amended responses to
16  Interrogatories?
17  **A.   I think we did.**
18  Q.   You know something, if you did, I owe you an
19  apology.
20  **A.   You owe me an apology for a lot of this.**
21  Q.   I don't think so.
22  **A.   Because what you've tried to do is
23  misrepresent what I've said.  You've misrepresented
24  documents.  You've --**

Page 237

1  Q.   I don't think so.
2  **A.   Well, the record will reflect.**
3  Q.   If someone creates -- excuse me.  If someone
4  drafts an SPA that says, I'm going to get the money
5  in escrow from my client, title transfer to occur
6  contemporaneously with release of funds to seller,
7  and then you release the funds without even doing
8  due diligence, let alone obtaining the required
9  documents, I respectfully submit that's not only a
10  $2 million judgment, that's loss of a legal
11  license.
12          But, you know something, I could be
13  wrong and you could be right.
14          MR. LAVER:  Objection.  Move to
15  strike.
16          MR. LIGHTMAN:  That's why there's a
17  jury trial.
18          MR. LAVER:  Ask a question.  Move to
19  strike that entire testimony.
20          MR. LIGHTMAN:  It's not testimony.
21          MR. LAVER:  Gary, of course it is.
22  You didn't ask any question --
23          MR. LIGHTMAN:  Well, you reviewed all
24  the documents.

60 (Pages 234 to 237)

Page 238

1  MR. LAVER: -- and you misrepresented
2  the record and the testimony.
3  MR. LIGHTMAN: I don't think so.
4  MR. LAVER: You're losing focus. Do
5  you want a coffee?
6  MR. LIGHTMAN: I don't think so at
7  all. I'm very focused.
8  Let's mark this as 25.
9  (Exhibit Sternberg 25 was marked for
10  identification.)
11  MR. LIGHTMAN: Will counsel stipulate
12  these are the redacted escrow records for the
13  Manfred Sternberg IOLTA account in question for
14  January 2022?
15  MR. LAVER: Yes.
16  MR. LIGHTMAN: Okay.
17  BY MR. LIGHTMAN:
18  Q. If I were to get unredacted copies of this,
19  in the page that's labeled page 3 of 10 at the
20  bottom right where it says, "Deposits and other
21  credits" --
22  A. Yes.
23  Q. -- I would see two line item entries for the
24  January 19th and January 20th deposit that VRC made

Page 239

1  into your account totaling 2.449 million. Correct?
2  A. This is the account that would have it.
3  Q. Okay. And on the next page where it says
4  1-20 and that's blocked out, that would be the
5  $181,440 wire transfer made by VRC on January 20th?
6  MR. LAVER: Objection. The redactions
7  are because you're not entitled to it.
8  MR. LIGHTMAN: You say we're not
9  entitled to it but it's apparent --
10  MR. LAVER: And we're right.
11  MR. LIGHTMAN: Isn't it apparent to
12  you from these questions and the documents that
13  these aren't separate transactions, that this is
14  all one big fraud scheme?
15  MR. LAVER: I don't answer questions.
16  Your question is objectionable and I've instructed
17  the witness. Move on.
18  BY MR. LIGHTMAN:
19  Q. What is Affiliated Commercial Co?
20  A. Where is that?
21  Q. Withdrawals and debits, 1-13, 1-13 --
22  A. Oh, those?
23  Q. -- 1-14, 1-14, 1-14, 1-18, 1-18 --
24  A. I got it.

Page 240

1  Q. -- 1-18, 1-18, 1-19. What's Affiliated
2  Commercial Co?
3  A. Affiliated Commercial Services is a company
4  that my family owns and it's the owner of the
5  PayPal account that these funds were sent from.
6  Q. Your family owns Affiliated Commercial Co?
7  What is Affiliated Commercial Co?
8  A. It's a privately-held corporation in Texas.
9  Q. Who owns it?
10  A. I don't know.
11  Q. Molly?
12  A. We're not here today to --
13  Q. Wait a second. You didn't redact these that
14  shows money that my client paid into your escrow
15  account. On the 13th you're spending $9,518.18.
16  You're transferring that to Affiliated Commercial
17  Co. Correct? On the 13th you transfer another
18  $1,336. Correct?
19  A. No, no, no. Again, you're wrong.
20  Q. Okay. So tell me --
21  A. Again, you're wrong.
22  Q. Tell me what the $9,518.18 transaction under
23  "Withdrawals and other debits" on January 13th to
24  Affiliated Commercial Co represents?

Page 241

1  A. Well, you're misrepresenting the document.
2  It's not to Affiliated Commercial Co. It's from
3  Affiliated Commercial Co.
4  Q. So wait. Your bank is wrong? Instead of
5  putting it under credits or deposits, they
6  accidentally put it under withdrawals and other
7  debits?
8  A. No. You're making that up. I didn't say
9  that. This is the company that has the PayPal
10  account which is a related company to my family.
11  If you see, "Transfer ID," that's Sam Gross.
12  Q. The PayPal5177 WEB is Sam Gross?
13  A. I don't know where 5177 WEB is.
14  Q. If you see ID, it says, Sam Gross.
15  A. Yeah. "Instant Transfer, ID: SAMROSINC."
16  Q. Tell me what that transaction represents.
17  A. I don't know. It was something he told me
18  he wanted.
19  Q. So you took out 49,518.18 from your escrow
20  account and sent it to Sam Gross?
21  A. Correct.
22  Q. Why does it say, "INDN-Affiliated Commercial
23  Co" on there?
24  A. Because that's who owns the PayPal account.

61 (Pages 238 to 241)

Page 242

1   Q.   But why is it coming out of your escrow
2   account?
3   **A.   Because it's connected to my escrow account**
4   **in order to be able to use PayPal.**
5   Q.   Okay.  So when he said I want money,
6   Affiliated Commercial Co took $9,518.18 out of the
7   escrow funds that SAFETY HOUSE and/or VRC put into
8   your escrow account and transferred it to Sam?
9          MR. LAVER:  Objection.
10         THE WITNESS:  I don't know that's the
11  way it worked.
12  BY MR. LIGHTMAN:
13  Q.   Well, how does it work?  Tell me how the
14  transaction on January 13th for almost ten grand
15  worked.
16         MR. LAVER:  Go ahead.
17         THE WITNESS:  Sam asked me for that
18  amount and he wanted it delivered by PayPal.  And
19  from PayPal I sent it to him, and it comes out of
20  the trust account.
21  BY MR. LIGHTMAN:
22  Q.   Why?
23  **A.   Because it's trust funds.  It's his money.**
24  Q.   Sam is asking you for all these monies for

Page 243

1   what?
2   **A.   Yes.  You'd have to ask Sam.**
3   Q.   You're holding the money in escrow.
4   **A.   It's not my money.**
5   Q.   Whose money is it?
6   **A.   It belongs to Sam.**
7   Q.   No, it doesn't.  It's in trust sent to you
8   by SAFETY HOUSE and VRC and the other purchasers to
9   purchase test kits.
10         So you're releasing 9500 to Sam on the
11  13th of January 2022.  Did you confirm that was for
12  the purchase of test kits or PPE?
13  **A.   That's what I was told.**
14  Q.   Did you get a document?
15  **A.   No.**
16  Q.   Okay.  Who told you that, Sam?
17  **A.   Yes.**
18  Q.   So Sam, a convicted felon convicted of
19  embezzlement, says send me 9500 and you just do it?
20  **A.   It's his money.**
21  Q.   You just do it without any due diligence.
22  Right?
23  **A.   There's no due diligence requirement for me**
24  **to send the client their money.**

Page 244

1   Q.   So the answer to my question is yes, when
2   Sam said send me -- I need $9,518.18, you just did
3   it without any documentation or confirmation,
4   written confirmation, that it was for the purchase
5   of test kits or PPE.  Correct?
6          MR. LAVER:  Objection.  You can answer
7   again.
8          THE WITNESS:  It is what it says it
9   is.
10  BY MR. LIGHTMAN:
11  Q.   Do you have any documentation that you can
12  produce showing that he used that $9,518 to
13  purchase test kits?
14  **A.   You'd have to ask him what he used his money**
15  **for.**
16  Q.   Do you have any documentation showing
17  that --
18  **A.   This is the documentation I have.**
19  Q.   Other than your line item entry on your
20  trust account, you have no other documentation?
21  **A.   I'm sure PayPal probably does.**
22  Q.   The PayPal is not owned by you.  It's owned
23  by Affiliated Commercial Co.  Right?
24  **A.   No.  PayPal is not owned by Affiliated.**

Page 245

1   Q.   Excuse me.  The PayPal account is owned by
2   Affiliated Commercial Co.  Correct?
3   **A.   Correct.  You keep on doing that.  Why are**
4   **you trying to trick me?**
5   Q.   I'm not trying to trick you.  I'm trying --
6   **A.   Well, you keep on using funny words.**
7   Q.   -- to understand why you transferred this
8   money to Sam without any kind of documentation
9   showing it was used for test kits.
10         MR. LAVER:  You already asked that
11  question.
12         THE WITNESS:  Asked and answered.
13  BY MR. LIGHTMAN:
14  Q.   On all of these --
15  **A.   Same answer.**
16  Q.   Is your answer the same for each of these
17  transactions?
18  **A.   Yes.**
19  Q.   Do you have one single Bill of Sale for any
20  of the money that was transferred from PayPal
21  through Affiliated Commercial Co to Sam Gross --
22         MR. LAVER:  Objection.
23  BY MR. LIGHTMAN:
24  Q.   -- for any of these withdrawals from the

Page 246

1    escrow funds?
2           MR. LAVER:  Objection.
3           THE WITNESS:  I'm sure I do.
4    BY MR. LIGHTMAN:
5    Q.   Where is it?  Why haven't you produced any
6    of it?
7    **A.   I don't know what you would consider as**
8    **documentation.**
9    Q.   How about a Bill of Sale?  Do you have a
10   Bill of Sale for any of these transactions?
11   **A.   Maybe, but I don't think so.**
12          MR. LIGHTMAN:  I'm requesting you
13   produce the documentation for each of these PayPal
14   withdrawals.
15          THE WITNESS:  Okay.
16   BY MR. LIGHTMAN:
17   Q.   Would your answer be the same if I asked you
18   for each of the ones shown on page 5 of 10 of your
19   escrow account?
20   **A.   Yes.**
21   Q.   Page 6?
22   **A.   Yes.  Taylor Panagakos, P-a-n-a-g-a-k-o-s,**
23   **that is his stepdaughter that sometimes he asked me**
24   **to send it to her.**

Page 247

1    Q.   So Sam says send 20 grand to my
2    stepdaughter, Taylor.  Right?
3    **A.   It's his money, yes.**
4    Q.   Did she buy any test kits?
5    **A.   I don't know.  You'd have to ask her.**
6    Q.   Did she buy any PPE?
7    **A.   You'd have to ask her.**
8    Q.   Did you do any due diligence to see if the
9    20,000 he wanted sent to Taylor was to fulfill any
10   PPE or test kit sales?
11          MR. LAVER:  Objection.  We keep
12   talking about due diligence, which suggests the
13   requirement that he complete any due diligence.
14          Stop asking that question.
15   BY MR. LIGHTMAN:
16   Q.   So you can use the money, the $2 million
17   that SAFETY HOUSE transferred into your trust
18   account, for any purpose Sam tells you to use it?
19          MR. LAVER:  Here we go again.  Are we
20   going to start all over?
21          MR. LIGHTMAN:  No.
22   BY MR. LIGHTMAN:
23   Q.   This 20,000, does it have anything to do
24   with the purchase of test kids?

Page 248

1    **A.   I have no idea.**
2    Q.   Does it have anything to do with the
3    purchase of PPE?
4    **A.   I don't know.**
5    Q.   Does it have anything to do with the
6    purchase by SAFETY HOUSE or VRC or any other
7    purchasers of the test kits?
8    **A.   I don't know.**
9    Q.   Why did you transfer 20?
10   **A.   It was his money.**
11   Q.   It's not his money when you have it in your
12   attorney escrow account.  It's money that
13   purchasers have sent to you to hold in escrow until
14   title transfer contemporaneous with the delivery of
15   goods occurs.
16          So tell me why did you transfer 20 to
17   his stepdaughter on January 20th?
18          MR. LAVER:  Objection.  Move to strike
19   counsel's testimony again.  There's no question
20   there.
21   BY MR. LIGHTMAN:
22   Q.   Answer the question then.
23          MR. LAVER:  There was no question.
24   BY MR. LIGHTMAN:

Page 249

1    Q.   Why did you send the 20 grand if you have no
2    idea what it was for?
3           MR. LAVER:  Objection.
4    BY MR. LIGHTMAN:
5    Q.   Is it merely because Sam told you to do
6    that?
7    **A.   The funds belonged to my client, as I**
8    **understood it.**
9    Q.   Is it merely because Sam told you to
10   transfer 10,000 (sic) out of your escrow that you
11   did it, regardless of whose you thought the funds
12   were?
13          You think the funds are Sam's once you
14   get them.  We think the funds are escrow funds that
15   you can't release to the seller until the
16   purchasers get title.  Okay?  All right?
17          Question:  Who was your client?
18   **A.   Charlton Holdings.**
19   Q.   Who is the seller?
20   **A.   Charlton Holdings.**
21   Q.   Are any of these PayPal transfers to
22   Charlton Holding's account?
23   **A.   They're for the benefit of Charlton.**
24   Q.   Are any of these transfers directly into a

63 (Pages 246 to 249)

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)              Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 250

1  Charlton Holding Group's account?
2  **A.  I don't know that Charlton had any bank**
3  **account.**
4  Q.  So question -- Go to Exhibit 4.
5       MR. LIGHTMAN:  Let me see this for a
6  second.
7       (Brief pause.)
8  BY MR. LIGHTMAN:
9  Q.  Let's go back to your bank account.
10      So if you look at these payments to
11 Taylor, they're payments to Taylor because Sam told
12 you that's where he wanted the money transferred?
13 **A.  Correct.**
14 Q.  And if you look at... the same day that my
15 client wire transferred you almost $2 million, you
16 transferred out of that to Taylor $5500.  Right?
17 **A.  Where are you reading from?**
18      **(Brief pause.)**
19      THE WITNESS:  So 1-21/1-22 I wired
20 PayPal $5,500.
21 BY MR. LIGHTMAN:
22 Q.  So on January 21st you wired out through
23 PayPal to Taylor or using Affiliated Commercial
24 Co's PayPal account 5500 to Taylor.  Right?

Page 251

1  **A.  Correct.**
2  Q.  And are you a member of Affiliated
3  Commercial Co?
4  **A.  I'm the president.**
5  Q.  You're the president.  Are you an owner?
6  **A.  I don't own any stock.**
7  Q.  Pardon me?
8  **A.  I don't own any stock.**
9  Q.  Who owns the stock?
10 **A.  Other people.**
11 Q.  Who is "other people"?  It's a family-owned
12 business.
13 **A.  It's a family-owned thing.**
14 Q.  Other than Max and Molly, do you have anyone
15 else in your family?
16 **A.  I do.**
17 Q.  How many other people?
18 **A.  I've got one other daughter.**
19 Q.  Who is that?
20 **A.  Margaret.**
21 Q.  And does Margaret have an interest in
22 Affiliated Commercial Co?
23 **A.  They're all the beneficial owners of**
24 **Affiliated.**

Page 252

1  Q.  Who is the title owner of --
2  **A.  I don't know today.  I could tell you later,**
3  **but I don't know today.**
4       MR. LIGHTMAN:  I would request the
5  records for Affiliated Commercial.
6       THE WITNESS:  What does that mean?
7  BY MR. LIGHTMAN:
8  Q.  I want to see the Articles of Incorporation.
9  **A.  You can find all of that at the Texas**
10 **Secretary of State.  It's been incorporated since**
11 **the '90s.**
12 Q.  Why did you use PayPal instead of just
13 transferring it directly from your escrow account?
14 **A.  I guess that's what he asked me to do.  I**
15 **have a PayPal account that can be used.**
16 Q.  Because he wanted the money instantly?
17 **A.  You'd have to ask him.**
18 Q.  Okay.
19      MR. LIGHTMAN:  Let's mark this as 26.
20      (Exhibit Sternberg 26 was marked for
21 identification.)
22      THE WITNESS:  Okay.
23      MR. LIGHTMAN:  For the record
24 Sternberg 318 to 321.

Page 253

1  BY MR. LIGHTMAN:
2  Q.  What is this?
3  **A.  It looks like wires sent.**
4       MR. LIGHTMAN:  Let's mark this as --
5  I'm going to take off deposition sticker 26 and
6  instead put it on --
7       MR. LAVER:  This record is going to be
8  a mess.
9       THE WITNESS:  I've already answered on
10 26.
11      MR. LIGHTMAN:  No, you haven't.  We
12 didn't ask a question.
13 This is 26.
14      MR. LAVER:  A total mess.
15      (Exhibit Sternberg 26 was re-marked
16 for identification.)
17 BY MR. LIGHTMAN:
18 Q.  So 26 would be your IOLTA account statement
19 for February 22.  Right?
20 **A.  Correct.**
21      MR. HEALEY:  Are both of them 26?
22      MR. LIGHTMAN:  No.  I labeled the
23 wrong one.  25 is the IOLTA account statement from
24 Merrill Lynch for January of 2020.

64 (Pages 250 to 253)

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:22-CV-0688 (JMY)        Deposition of Manfred Sternberg, Esq.        February 7, 2024

Page 254

1    MR. HEALEY: That's 26?
2    MR. LIGHTMAN: Right. Deposition
3 Exhibit 26 is the Manfred Sternberg IOLTA trust
4 account records for February of 2022.
5    And what I originally labeled 26 is
6 now being remarked as 27, the Bank of America
7 statement, pages Sternberg 318 to 321.
8    COURT REPORTER: I don't have 27.
9    MR. LAVER: Where is the Bank of
10 America one?
11    Mark that, please. I'm sorry.
12    (Exhibit Sternberg 27 was marked for
13 identification.)
14 BY MR. LIGHTMAN:
15 Q. 26 is your IOLTA account records for
16 February. Right?
17 A. Correct.
18 Q. And it shows the wires out to Gary Weiss on
19 February 1st and to Daphna on February 4th, 15th
20 and 25th. Correct?
21 A. Correct.
22 Q. What's this wire out to Innovative Graphics
23 Limited on the 17th?
24 A. I don't know.

Page 255

1 Q. You don't know. How about look at the last
2 line.
3 A. It says, "Refund in full." It's probably
4 Charlton.
5 Q. Right. So it's a refund to Innovative
6 Graphics Limited. Correct?
7 A. That's what it says, yes.
8 Q. Another victim of this scheme. Correct?
9 A. No.
10 Q. I'll rephrase it. Another purchaser of test
11 kits or PPE that never got what they ordered and
12 you're giving them money back?
13 A. And/or canceled the contract.
14 Q. Oh, wait. So they can cancel the contract
15 and get their money back, but my client can't
16 cancel the contract and get his money back?
17 A. I don't know.
18 Q. Sam wrote a text to him on February 15th
19 that says just tell Manfred you're canceling and
20 you'll get your money back. Correct?
21 A. Correct.
22 Q. We wrote a text -- we wrote to you on the
23 16th saying we want our money back. Correct?
24 A. Correct.

Page 256

1 Q. Why didn't you give my client his money back
2 and avoid this whole thing?
3 A. Because my client instructed me otherwise.
4 Q. The day before that he wrote a text to my
5 client saying no problem.
6 A. My client is not making a complaint that I
7 sent the money to the wrong place or didn't send it
8 to the wrong place, but you need to ask him.
9 Q. Question: The wire back to Innovative
10 Graphics Limited for 77,000, is that the money that
11 Sam refers to in Deposition Exhibit -- is that a
12 reference to Foley, the 80k to Foley?
13 A. I mean, this is 77,000. It might be.
14 Q. It might be, but you don't know. Right?
15 A. No.
16 Q. You would have records of that. Right?
17 A. Maybe.
18 Q. What's the difference between Deposition
19 Exhibit 26 and Deposition Exhibit 27?
20 A. Are you serious? You want me to -- I mean,
21 there's a lot of differences.
22 Q. No. One says Merrill Lynch. One says Bank
23 of America.
24 A. If you look at it carefully, which

Page 257

1 apparently you haven't done, but number 26 says
2 Merrill Lynch, a Bank of America Company and then
3 it says to the right, BankofAmerica.com.
4    And then it says this is a Public
5 Service Trust Account. It's a statement. Right?
6 It's a statement. That's what that is.
7    And 27 is a Wire Transfer Advice and
8 so are the rest of those attached as 27.
9 Q. So the wires came into and out of your Bank
10 of America account at Merrill Lynch?
11 A. I assume that's the way they do it, but
12 you'd have to ask Bank of America or Merrill Lynch.
13 Q. Okay. He writes in that email -- let's go
14 back to -- go back to Deposition Exhibit 23.
15 A. Okay.
16 Q. He writes, "I'm looking at an opportunity to
17 close both the tail of VRC and close Scully
18 (whether he takes the delivery or not. If he don't
19 take the delivery at such cheap prices I can dump
20 it some place else)."
21    Do you see that?
22    MR. LAVER: I don't. Where are you?
23    MR. LIGHTMAN: On page 130, top of the
24 page of Deposition Exhibit 23.

65 (Pages 254 to 257)

Page 258

1      THE WITNESS:  I see that.
2   BY MR. LIGHTMAN:
3   Q.   What does he mean by that?  Do you know?
4   **A.   You'd have to ask him.**
5   Q.   He writes, "The main point?  These people
6   paid for goods.  I need to deliver.  Gary or no
7   Gary.  Collateral sells or no collateral sells.  I
8   am doing my best."
9        Do you see that?
10  **A.   Yes.**
11  Q.   He says, "I need 90,000 from this money to
12  at least close VRC."  Do you see that?
13  **A.   I see that.**
14  Q.   Did you send him the 90,000?
15  **A.   I think I probably did if that's what he
16  said.**
17  Q.   And that should be in the records that you
18  produced for us?
19  **A.   I imagine so.**
20       **MR. LIGHTMAN:**  I'd like to make a
21  request for that because I haven't seen that 90k
22  transfer.
23  BY MR. LIGHTMAN:
24  Q.   And then it says, "Then we can together

Page 259

1   decide what to do with Scully after."
2        What does that mean?
3   **A.   You'd have to ask him.**
4   Q.   Why does he say, "We can decide together
5   what to do with Scully after"?
6   **A.   Because I'm his lawyer.**
7   Q.   Okay.  If you go further down, he talks
8   about got to put VRC to bed.  I need 90,000 to do
9   that.  We need to sell Gary's collateral.
10       Then he writes, "These funds were sent
11  for these goods.  It's the right thing to do.  And
12  we must complete VRC."  Right?
13  **A.   No.  You keep on misrepresenting the record.
14  It says, "And I must complete VRC."**
15  Q.   Excuse me.  That's right.
16  **A.   Why are you trying to trick me?**
17  Q.   I didn't.  I misread it.  And it says, "I
18  must complete VRC."
19  **A.   Get it straight when you're asking me these
20  questions because you want to make it seem like
21  it's we.  It's him.**
22  Q.   And it says, "Please wire from these funds
23  90k to Charlton Holding Group" and he gives you a
24  branch, a bank, a routing number, and an account

Page 260

1   number for Charlton Holding Group?
2   **A.   Yes.**
3   Q.   So you said earlier you didn't think
4   Charlton had a bank account.
5   **A.   I think they did then.**
6   Q.   So you're saying they closed the account
7   after May of 2022?
8   **A.   No.  They probably still have it.  I don't
9   know.  It's their account.**
10  Q.   So why didn't you wire funds directly to
11  Charlton?
12  **A.   I answered that before.**
13  Q.   You said they didn't have a bank account.
14  **A.   At the time I didn't think they did.  That's
15  what I was told.**
16  Q.   Does this refresh your recollection that
17  they did?
18  **A.   No.  I think they got an account, just like
19  I said, later.**
20  Q.   Okay.
21       **MR. LIGHTMAN:**  Mark this as 28.
22       (Exhibit Sternberg 28 was marked for
23  identification.)
24       THE WITNESS:  Okay.

Page 261

1   BY MR. LIGHTMAN:
2   Q.   Do you know what this is?
3   **A.   I know what parts of it are.**
4   Q.   What is it?
5   **A.   It looks like a list of the jewels or
6   whatever.**
7   Q.   I'm sorry the first two pages look like
8   that, but that's the way it came out when it was
9   sent to me.
10       If you look at the last page of
11  this --
12  **A.   Who was it sent to you by, Gary?**
13  Q.   Yeah.
14  **A.   That's probably why.**
15  Q.   If you look at the last page, it's an
16  email -- the email that's blown up and
17  incomprehensible is dated March 30, 2022 from Gary
18  to Sam Gross.
19       And there's a list and it says --
20  right under To Charlton from ASolar it says, "For
21  attention and benefit of Manfred Sternberg,
22  Esquire."
23       Do you see that?
24  **A.   I see it written.**

66 (Pages 258 to 261)

Page 262

1  Q.  Why would he write that on this?
2  A.  Because Gary is a liar and a thief, and I
3  think this is probably a doctored document.
4  Q.  How about Gary and Sam and even you all
5  claiming that you're the one who insisted on the
6  collateral rather than a refund?
7  A.  For the benefit of my client, correct, and
8  not in lieu of refund.
9  Q.  No?
10  A.  As collateral.  That's why they call it
11  collateral.
12  Q.  That's your sworn testimony?
13  A.  That's why they call it collateral.
14  Q.  Okay.
15  A.  Because it's not in payment of.  It's
16  collateral in case it doesn't get paid.
17  Q.  And this was sent to both you and Sam on
18  March 30th.  Correct?
19  A.  That's what it looks like.
20  Q.  And when you got this, you didn't write back
21  to him, hey, Gary, it's not for the attention and
22  benefit of Manfred Sternberg, it's for Sam Gross,
23  did you?
24  A.  I don't know that that was on -- that looks

Page 263

1  like that's written.  So how did he email that to
2  me if it was written?  Explain that.
3  Q.  I'm going to ask him, but I think it was
4  something that he scanned and sent to you after he
5  wrote -- made a list of collateral.
6      He said he wrote it for the attention
7  of Manfred Sternberg, Esquire because you're the
8  one that demanded the collateral and he sent it to
9  you and Sam Gross.
10      Do you dispute that?
11  A.  Yes.
12      MR. LIGHTMAN:  Let's mark this as 29.
13      (Exhibit Sternberg 29 was marked for
14  identification.)
15      THE WITNESS:  Okay, I've read it.
16  BY MR. LIGHTMAN:
17  Q.  For the record it's an email that Gary Weiss
18  sent to you and Sam on March 1st.
19  A.  Yes.
20  Q.  Do you see that?
21  A.  Yes.
22  Q.  And in here the last line, it says, "If you
23  like a refund you have no questions asked."
24      Do you see that?

Page 264

1  A.  I do.
2  Q.  So on March 1, 2022 Gary Weiss was telling
3  you and Sam if you like a refund, no questions
4  asked.  Correct?
5  A.  That's what it looks like he said.
6      MR. LIGHTMAN:  Mark this as 30,
7  please.
8      (Exhibit Sternberg 30 was marked for
9  identification.)
10  BY MR. LIGHTMAN:
11  Q.  At the top it's a text.  It says, Weiss
12  document 329.  Right?
13  A.  Right.
14  Q.  And then right under that is Sam Gross, his
15  identification showing this is a text from him.
16      If you read further down, it says --
17  I'm sorry.  This is Gary Weiss writing to Sam, "I
18  would like to add, Charlton Holding Group requested
19  the funds back.
20      "However? Mr. Sternberg Esq. had
21  insisted on this collateral instead of a refund.
22  Stating he does not wish to lose the profit."  And
23  then he writes, "(If needed? Emails will be
24  provided)."  (sic)

Page 265

1      Do you see that?
2  A.  I do.
3  Q.  So was Gary Weiss lying when he wrote to Sam
4  Gross, "I would like to add, Charlton Holding Group
5  requested the funds back"?
6  A.  I have no idea if this is real or not.  I
7  suspect it's not real, but I would ask for those
8  emails.
9  Q.  You're reading my mind, okay.
10      So when he says, add this, is he
11  telling Sam you should add it to the declaration
12  that you prepared?
13  A.  I don't --
14  Q.  You have no idea?
15  A.  When is the date?
16  Q.  Huh?
17  A.  When is the date?
18  Q.  I don't have a date on this, unfortunately.
19  A.  So you can't give me a date.  I can't tell
20  you what it was about.
21  Q.  Okay.  When he says add this, do you know
22  what he's talking about?
23  A.  You'd have to ask him or Sam.
24      By the way, I advocate for my clients

67 (Pages 262 to 265)

Page 266

1  often to get some sort of security for a debt.
2          MR. LIGHTMAN:  Let's look at this, 31.
3          (Exhibit Sternberg 31 was marked for
4  identification.)
5  BY MR. LIGHTMAN:
6  Q.  So 31 is a series of texts.
7  A.  Okay.
8  Q.  The first page labeled Weiss 6, 000006.
9  A.  Okay.
10  Q.  It says, "This text is to confirm."  This is
11  Sam Gross writing to Gary.  "I never wanted your
12  collateral.  Manfred Sternberg had requested it.
13  And he have confirmed to our lawyer as well.  Per
14  his request I had obtained it from you." (sic)
15          Do you see that?
16  A.  I see that.
17  Q.  Why is Sam Gross telling Manfred I
18  confirmed -- this text is to confirm I never wanted
19  your collateral but Manfred Sternberg is the one
20  who requested it?
21  A.  Number one, he's not telling Manfred.  It
22  looks like he's telling Gary Weiss, if it's real.
23  Q.  I'm sorry.  Excuse me.
24          Why is Sam Gross telling Gary Weiss,

Page 267

1  "This text is to confirm.  I never wanted your
2  collateral.  Manfred Sternberg had requested it"?
3  A.  Because often clients blame their lawyers
4  for things that they don't want to take blame for.
5  Q.  So you're saying Sam's lying in this email?
6  A.  I don't know that he's lying.
7  Q.  In this text.
8  A.  I suggested that he get collateral.
9  Q.  He's saying, "I never wanted your
10  collateral."
11  A.  Well, often clients don't know what they
12  want, but that's what lawyers do is say you want to
13  get collateral.  That would be the right advice.
14  Q.  Why did you tell him to get collateral?
15  A.  Because it looked like we were getting
16  defrauded.
17  Q.  So earlier in the day when you said, I never
18  suggested that they take collateral instead of a
19  refund, you were not telling the truth to me?
20  A.  No.  You've got to stop that, Gary, because
21  you keep on not telling me the truth by your
22  questions.  I never said that.
23  Q.  Okay.  So your testimony --
24  A.  Rephrase your question.

Page 268

1  Q.  -- is you never said earlier today that you
2  never suggested or told Sam or Gary that you wanted
3  collateral instead of a refund?
4          You said you never testified to that
5  earlier?
6  A.  I suggested that he get collateral, but it
7  wasn't my call whether he got a refund or not.
8  That was up to him.
9  Q.  "Per his request I had obtained it from
10  you."
11  A.  Okay.
12  Q.  Okay.  Is he lying?
13  A.  He's calling it a request.  I'm calling it
14  advice.
15  Q.  And why didn't you want the refund?  Why did
16  you want the collateral instead?
17  A.  If we could have gotten the refund, we
18  should have gotten the refund.
19  Q.  Really?
20  A.  Yeah.  Don't you think?
21  Q.  Go to the next page.  This is a text
22  exchange from Sam and you.  Do you think this is
23  doctored up?
24  A.  This is to me?

Page 269

1  Q.  This is between you and Sam.  Sam is saying
2  to you -- this is Weiss document 00008.
3          Weiss is saying -- excuse me.  Gross
4  is saying, "What do you think?  And I'm on hold
5  again.  Sucks for me to."  And you write to him,
6  "Don't want refund as we will lose."
7          Do you see that?
8  A.  Yeah, I see that.  I don't know that I wrote
9  that.
10  Q.  Why didn't you produce any texts?  Where are
11  all your texts?  Gary Weiss is producing texts.
12  Sam Gross is producing texts.
13          Where are the texts from Manfred
14  Sternberg?
15  A.  I think we produced texts.
16  Q.  No.  Can you take out your phone right now?
17  A.  No.
18  Q.  Why?
19  A.  Because --
20  Q.  You said you produced these texts.  Let's
21  look at your phone and see if you've got texts from
22  Gross.
23          MR. LAVER:  He's not taking out his
24  phone.

Page 270

1      MR. LIGHTMAN: Hold on.
2      MR. LAVER: No, you hold on. It's my
3   turn. He's not taking out his phone right now.
4   You can wait and follow up.
5      MR. SCULLY: Why?
6      MR. LAVER: Stop asking questions.
7   You're not an attorney of record.
8      MR. LIGHTMAN: Why isn't it fair for
9   me to say take out your phone?
10      MR. LAVER: Because he's not doing it.
11  BY MR. LIGHTMAN:
12  Q.   Why didn't you produce any texts?
13      MR. LAVER: He did.
14      THE WITNESS: I did.
15  BY MR. LIGHTMAN:
16  Q.   No, no, no. That's another --
17  A.   **You can put a mark there to apologize to me**
18  **again when you figure it out.**
19  Q.   Okay. So what do you mean when you write to
20  Sam, "Don't want refund as we will lose"?
21  A.   **I don't know that I wrote that. You**
22  **produced a document that doesn't have my name on**
23  **it, no time. You can't even tell me when it was**
24  **sent, where it was sent, who sent it, none of those**

Page 271

1   things.
2   Q.   I can tell who sent it, Sam Gross. I can
3   tell it was sent and who responded. You did.
4   Because then he writes, "Ok. So what time line do
5   I give him to perform? In a way that protects you,
6   me and the business."
7   A.   **Okay.**
8   Q.   You think Gary Weiss is writing that?
9   A.   **I don't know who is writing it.**
10  Q.   Sam Gross writing to you when you say,
11  "Don't want refund as we will lose" and he writes,
12  "Ok. So what time line do I give him to perform?"
13      When Sam is writing to you, "So what
14  time line do I give him to perform," who do you
15  think that's a reference to when he's saying, "What
16  time line do I give him to perform"?
17  A.   **I would have to speculate, but I guess he's**
18  **asking me what time line does he give Gary to**
19  **perform.**
20  Q.   Exactly. And this text that you think is
21  made up or fabricated, turn to the next page --
22      MR. LAVER: Objection.
23  BY MR. LIGHTMAN:
24  Q.   -- labeled Weiss 10. Who does it indicate

Page 272

1   at the top of this is the text exchange?
2   A.   **It says that this is from me.**
3   Q.   From you. And he writes -- ready? The same
4   one where you say, I don't know, this may be
5   fabricated, what do you think that's on the
6   fabricated document, Weiss 8, is on the same
7   document, Weiss 10, where your name appears.
8   Right?
9   A.   **Because you showed me a document without any**
10  **time and without any indication that that came to**
11  **me. I had to take your word for it and you've been**
12  **wrong maybe six times today.**
13  Q.   Caught ya. You didn't think I had the
14  follow-up document so you made up a story about
15  Weiss 8.
16  A.   **Made up a story about authenticity?**
17      MR. LAVER: Stop, stop. Objection.
18  You're badgering the witness. You're arguing with
19  the witness.
20  BY MR. LIGHTMAN:
21  Q.   All right. Let's go to Weiss 10.
22      Do you now agree that this is a text
23  exchange between you and Sam Gross?
24  A.   **No.**

Page 273

1   Q.   You don't? Why not?
2   A.   **Where is Sam's name on it?**
3   Q.   Go to the previous page.
4   A.   **Okay.**
5   Q.   Sam Gross.
6   A.   **Okay.**
7   Q.   He's writing, "What do you think? I'm on
8   hold again. Sucks for me to." You respond, "Don't
9   want refund as we will lose."
10      Go to the next page. Same three
11  things, "What do you think? I'm on hold again.
12  Sucks for me to."
13      And you're responding, "Don't want
14  refund as we will lose." Right?
15  A.   **What you say is my text are both in blue and**
16  **if Sam wrote this one and I wrote the second one,**
17  **they should be reversed.**
18  Q.   You're in black on the left. He's in blue
19  on the right.
20  A.   **So the same answer.**
21  Q.   So wait. When you wrote, "So what time" --
22  you're saying you wrote, "So what time line do I
23  give him to perform in a way that protects you, me,
24  and the business"?

Page 274

1    Is that you writing to Sam or Sam
2  writing to you?
3      A.  I don't know who's writing.  I don't know
4  who because you've not told me time and you can't
5  give me any context as to who that is.
6          Then you show me another text, Weiss
7  10, with the same color for the same people and it
8  just doesn't work that way, Gary.
9      Q.  And it's your sworn testimony you can't tell
10 looking at these two documents, Weiss 8 and Weiss
11 10, who is writing to who?
12     A.  No.  I can tell who is writing to who.
13 There's a person in blue and a person in black.
14     Q.  Who is the person in blue?
15     A.  On which one?
16     Q.  On both.
17     A.  On both?  It looks, from what you've told
18 me, it's Sam.
19     Q.  And who is the person writing in black?
20     A.  From what you've told me, it's me.
21     Q.  What do you mean from what I told you?
22     A.  Because you can't tell me on Weiss 8 who
23 that's from, who that's to.  You've got a picture
24 with Sam Gross' name on top of it.  Let me guess,

Page 275

1      Gary produced it.
2      Q.  Ready?  Forget I told you anything about
3  these documents.  Okay?  Look at Weiss 8 and look
4  at Weiss 10 --
5      A.  Right.
6      Q.  -- and tell me who is the writer of the text
7  in the blue and who is the writer of the text in
8  the black.
9      A.  I mean, just from the context of Weiss 10,
10 it looks as though the black was me, but in Weiss 8
11 I'm not sure why I'm in black because that's not
12 how it works.  But maybe you know better.
13     Q.  You're in black -- so your testimony is on
14 10 you're in black and Gross is in blue but on 8
15 you don't know who's who?
16     A.  No, I'm not saying that.
17     Q.  Who is on 10?
18     A.  Did you not understand what I said?
19     Q.  No, I'm going to make sure it's clear.
20         On Weiss 10 who is in blue?  Who is
21 the writer in blue and who is the writer in black?
22     A.  I suspect the writer in blue is Sam and the
23 writer in black is me --
24     Q.  On Weiss 8 --

Page 276

1      A.  -- according to what you've told me.
2      Q.  On Weiss 8 who is the writer in blue?
3      A.  Same answer.
4      Q.  Same answer.  Who is the writer in black?
5      A.  Same answer.
6      Q.  It really wasn't that hard, was it?
7      A.  But, but...
8      Q.  I'm sorry.  You want to add something?
9      A.  Yeah.  I think the documents are fake.
10     Q.  You think these documents are fake?
11     A.  Yeah, because it's not the way it works.  If
12 I text you, it's one color.  If you text me, it's a
13 different color.  But go on.
14     Q.  Weiss 10 at the bottom, who wrote, "Next lie
15 from him we r done."
16     A.  It sounds like something I would write.
17     Q.  And then you write, "I don't think they can
18 deliver, that is the problem."
19         Who wrote that?
20     A.  It sounds like something I would write.
21     Q.  Okay.  Go back to Weiss -- next page, Weiss
22 11.  Who is writing in blue?  Who is texting in the
23 blue?
24     A.  According to what you've told me, it's --

Page 277

1      Q.  No, no.  Forget about what I've told you.
2      A.  Then I don't know.
3      Q.  Just look at the -- just looking at this
4  document, you can't tell who is writing in blue?
5      A.  Is my name on this document?
6      Q.  Just looking at Weiss 10.
7      A.  Weiss 10?
8      Q.  Weiss 11.  Excuse me.
9      A.  Weiss 11.
10     Q.  Can you tell me who's writing in the blue?
11     A.  I can guess but I don't know.
12     Q.  If you don't know, if you really don't know,
13 you can say, I don't know.
14     A.  So are you saying that Sam on his text, that
15 he misspelled his own name on 0011?
16     Q.  Tell me whose writing is in the blue.
17     A.  I don't know.
18     Q.  Whose writing on Weiss 11 is in the black?
19     A.  Same answer.
20     Q.  You don't know?
21     A.  Yeah.
22     Q.  Are you ready?
23     A.  Yeah.  Which one?
24     Q.  On Weiss 10 when I asked you who's writing

70 (Pages 274 to 277)

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:22-CV-0688 (JMY)        Deposition of Manfred Sternberg, Esq.        February 7, 2024

---

Page 278

1   in the bottom right in the black which says, "Next
2   lie from him we r done. I don't think they can
3   deliver, that's the problem," you said that was
4   you?
5   **A.   It sounds like me is what I said.**
6   Q.   But in Weiss 11 where the same lines are
7   "Next lie from him we r done. I don't think they
8   can deliver, that's the problem," you can't state
9   that's yours?
10  **A.   I mean, I don't know. Sam misspells his own**
11  **name? That doesn't sound right to me but, okay,**
12  **I'll take your word for it.**
13  Q.   No. You're saying -- your testimony under
14  oath is you can't tell me, looking at Weiss 11
15  where it says, "Next lie from him we r done. I
16  don't think they can deliver, that's the problem"
17  is your text. Right?
18  **A.   I said it sounded like something I would**
19  **say, but I can't tell you that's my text.**
20  Q.   You can't tell me that, okay.
21       And then where it says on the next
22  page --
23  **A.   What page?**
24  Q.   Weiss 12.

---

Page 279

1   **A.   Okay.**
2   Q.   Whose writing is on the left-hand side in
3   black?
4   **A.   That looks like me.**
5   Q.   Okay. And whose writing on the right-hand
6   side is in blue?
7   **A.   I guess that's Sam.**
8   Q.   You guess? You don't know?
9   **A.   Is Sam's name on this, 12?**
10  Q.   Do you know looking at Weiss 12 whose
11  writing is in the blue?
12  **A.   Can you give me a time that this was sent or**
13  **who sent it?**
14  Q.   Just answer my question, yes, no or I don't
15  know.
16  **A.   Then I don't know.**
17  Q.   Okay. Looking at Weiss 14, whose writing is
18  on Weiss 14?
19  **A.   I mean, the top says my name.**
20  Q.   Okay. And then it says -- there's a text
21  that's cut off, "I will be reversing the charge
22  myself and emailing you proof. Thank you and hope
23  your doing well."
24       Then you write, "Wrong text. Here is

---

Page 280

1   the right one." Right?
2   **A.   Right. And I'm writing to myself, "Dear**
3   **Manfred"?**
4   Q.   You're writing, "Wrong text. Here's the
5   right one. Dear Manfred..." and you're signing it
6   Gary. Right?
7   **A.   That's Gary writing that because I wouldn't**
8   **write "Dear, Manfred."**
9   Q.   How about you're creating a text for Sam or
10  Gary to write to you?
11       **MR. LAVER:** Is that a question?
12  BY MR. LIGHTMAN:
13  Q.   Doesn't that explain this text right here?
14  Doesn't that put it in context?
15       You wrote something wrong and then you
16  wrote, "Wrong text. Here's the right one. Dear
17  Manfred, I am the one to blame, you & Sam did not
18  know about the problems with the shipping, nor did
19  I.
20       "I am sure you guys wanted to deliver
21  to your customers, but the delays were on my side,
22  again I apologize. Till I find out the truth, I am
23  upping the collateral to 4 million with Sam in the
24  meantime, sorry for creating this delivery problem.

---

Page 281

1   Gary."
2        That's you writing a text that you're
3   suggesting that Gary Weiss sent to you, isn't it?
4   **A.   You're wrong.**
5   Q.   What is it?
6   **A.   It's a text that Gary wrote to me.**
7   Q.   Really?
8   **A.   Or an email, because he always said it was**
9   **his fault, 100 percent. I think he said 1,000**
10  **percent his fault. But these have got to be**
11  **produced by Mr. Weiss. That's why they're all**
12  **funky.**
13  Q.   So your testimony under oath here today is
14  that this text on Weiss 14 is something that Gary
15  wrote to you?
16  **A.   It's something that Gary manufactured, yes,**
17  **almost certainly. That is not something I wrote.**
18  **I mean...**
19       **MR. LAVER:** It's copy and paste.
20  BY MR. LIGHTMAN:
21  Q.   What's your phone number for these text
22  messages?
23  **A.   I don't know. You haven't provided me a**
24  **number.**

---

(856) 983-8484                Tate & Tate, Inc.                (800) 636-8283
825 Route 73 North, Suite G, Marlton, New Jersey 08053

Page 282

1  Q.  What's --
2  **A.  Hang on.  Let me answer.  You haven't**
3  **provided me a number where these come from.**
4  Q.  Do you have more than one cell phone?
5  **A.  No.**
6  Q.  What's your cell phone number?
7  **A.  Are you going to call me on it or are you**
8  **just going to -- 713-824-9170.**
9  Q.  The next page, looking at Weiss 17.  Okay?
10      This document indicates -- who is the
11  top person in the black on these texts?
12  **A.  It says, Manfred Sternberg.**
13  Q.  So whose writing is on the left?
14  **A.  It looks like something I would write.**
15  Q.  And whose writing is on the blue?
16  **A.  I have no idea who.**
17  Q.  So when you write, "He is buying himself and
18  his lawyer a bunch of bad pr and claims of fraud
19  and wire fraud," do you see that?
20  **A.  Yes.**
21  Q.  You're writing that.  Right?
22  **A.  I already answered that.**
23  Q.  "Especially last Friday when he said less
24  than 45 minutes away and I scrambled to send him

Page 283

1  another $190k."
2  **A.  Yes.**
3  Q.  You're writing that.  Right?
4  **A.  It sounds like it.**
5  Q.  To Sam.  Right?
6  **A.  I don't know.  You won't tell me whose the**
7  **recipient.**
8  Q.  And you write, "That is classic fraud in the
9  inducement and can only be cured by delivery or
10  return of all the money."
11  **A.  That's accurate.**
12  Q.  Well, I know.  I'm glad you said that.
13      **MR. LIGHTMAN:**  Let's mark that as a
14  separate document, Plaintiff's Trial Exhibit 1.
15      (Court reporter asked for
16  clarification.)
17      **MR. LIGHTMAN:**  This is Deposition
18  Exhibit 32.
19      (Exhibit Sternberg 32 was marked for
20  identification.)
21      THE WITNESS:  Okay.
22  BY MR. LIGHTMAN:
23  Q.  So you wrote, "That is classic fraud in the
24  inducement and can only be cured by delivery or

Page 284

1  return of all the money."  Right?
2  **A.  Right.**
3  Q.  You're referring to last Friday when Gary
4  Weiss said the product is less than 45 minutes away
5  and I scrambled to send him another 190,000.
6  Right?
7  **A.  That's what he says.**
8  Q.  And when you said, Sam, why do I have to
9  send him 190,000, Sam said that's just the way it's
10  done; do it.  Right?
11  **A.  Yes.**
12  Q.  And you think Gary Weiss inducing you to pay
13  him $190,000 for product that was being
14  shipped that you guys never received, that is
15  classic fraud in the inducement and can only be
16  cured by delivery or return of all money.  Right?
17  **A.  Right.**
18  Q.  Do you believe that?
19  **A.  I do believe that.**
20  Q.  Is that true?
21  **A.  I think it's true with him, yeah.**
22  Q.  So Sam Gross inducing The SAFETY HOUSE to
23  wire $1,965,600 to his attorney's escrow account
24  based upon promises that he's going to get 151,200

Page 285

1  boxes of iCOVID test kits --
2  **A.  Correct.**
3  Q.  -- that never come?
4  **A.  No, it did.  He refused it but okay.**
5  Q.  That never come until -- excuse me -- that
6  no delivery is made until the end of March?
7  **A.  Is there a delivery time in the Purchase and**
8  **Sale Agreement?**
9  Q.  Yes, deliver by January 25, something you
10  forgot when you wrote all this stuff.
11  **A.  Well, it's not in the Purchase and Sale**
12  **Agreement.**
13  Q.  It's in the purchase order.  When you got
14  the purchase order, did Sam write back, I'm sorry,
15  we can't deliver by January 25th; here's your money
16  back?
17  **A.  That's not what Sam agreed to, I guess, or**
18  **he would have signed it.**
19  Q.  The four skids that were delivered March
20  29th, where did you get them from?
21  **A.  You'd have to ask Sam.**
22  Q.  You don't know?
23  **A.  I don't know.**
24  Q.  How did you get ahold of the Bill of Lading

72 (Pages 282 to 285)

Page 286

1  to send it to me and my client?
2  A.  Probably from Sam.
3  Q.  Probably from Sam.  Oh, I've already asked
4  you --
5  A.  Do you think I made it up?
6  Q.  Are all of the Bills of Lading you sent me,
7  those four Bills of Lading, are all of them
8  legitimate, bona fide Bills of Lading?
9  A.  They've all been presented to me as being
10  legitimate and bona fide.
11  Q.  Would it surprise you that all of them are
12  fake, fictitious fraud except for one, the one that
13  was actually delivered?
14      Would that surprise you?
15  A.  At the time it would surprise me.  It
16  doesn't surprise me as we sit here today.
17      MR. LAVER:  Hey, Gary, you've got
18  nothing here, man.
19      MR. LIGHTMAN:  I got nothing, okay.
20  BY MR. LIGHTMAN:
21  Q.  Weiss 18, the next one, it says "Sam Grosss"
22  at the top.  Right?  You notice all of these things
23  from Sam Gross says G-r-o-s-s-s.
24      Do you see that?

Page 287

1  A.  Yes.  That's misspelled as far as I
2  understand.
3  Q.  And if you put it in wrong, that's the way
4  his phone would be.
5  A.  If he did it or someone else did.
6  Q.  Well, you're going to produce all the texts
7  between you and Sam relating to this that Sam and
8  Gary were copied on and we'll see whether or not
9  it's fraud or not.
10      But you write, "Don't want refund as
11  we'll lose the profit." (sic)  Right?
12      MR. LAVER:  What?
13  BY MR. LIGHTMAN:
14  Q.  I'm sorry.
15  A.  Again, you're misstating.
16  Q.  I'm sorry.  Ready?  Go down to the bottom of
17  Weiss 18.  There's a date there.  Right?  It's from
18  Charlton in black to Gary Weiss and two more dated
19  February 21 at 12:53 p.m.
20      Do you see that?
21  A.  I see that's what it says.
22  Q.  That's the second email that starts at the
23  bottom of the page here.  Do you see that?
24  A.  These aren't emails.  These are texts.

Page 288

1  Q.  Texts.  I apologize.  I misspoke.
2  A.  Again.
3  Q.  And the writing on the first two texts in
4  the blue, who is that?
5  A.  You're asking me to speculate.
6  Q.  If you don't know, say, "I don't know."
7  A.  I've told you that already.
8  Q.  This is a different page.
9  A.  All of these, it's the same answer.  I've
10  never seen them until you showed them to me and you
11  want me to believe that Sam misspelled his name and
12  these are texts.  Okay.
13  Q.  You've never seen these texts, the one where
14  you write --
15  A.  I don't think I've seen --
16  Q.  "That is classic fraud in the inducement"?
17  A.  I don't think I've seen texts with Sam
18  Gross' name misspelled.
19  Q.  If we take out your phone right now and look
20  for this text, we're not going to find it in your
21  phone?
22  A.  I don't think so.
23  Q.  Did you delete it?
24  A.  I don't think so.

Page 289

1  Q.  Let's take out your phone and see if we can
2  find it.
3      MR. LAVER:  Let's not.
4      THE WITNESS:  Let's take out yours.
5      MR. LIGHTMAN:  I wish I had it.
6      THE WITNESS:  I wish you did, too.
7  BY MR. LIGHTMAN:
8  Q.  How about Weiss 19?  Whose writing is on the
9  left in black?
10  A.  Same answer as before.
11  Q.  Which is -- this is a different document.
12  A.  No.  It looks like it's the same document.
13  Q.  This is the document labeled Weiss 19, which
14  we've never talked about.
15  A.  This is the same document as 18 with the
16  same verbiage on 18, but it's on 19.  Is that
17  right?
18  Q.  I'm sorry.  So on 18 there's a text at the
19  top before this and a text in the bottom that's not
20  on 19.  And there's a statement on 19 that's not in
21  18 where it says, "I don't think they can deliver,
22  that is the problem."
23      Do you see that?
24  A.  Correct.

73 (Pages 286 to 289)

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 290

1  Q.  So why are you writing "I don't think they
2  can deliver, that is the problem"?
3  A.  **I don't know that I'm writing that because I**
4  **would tell you, again, the color of the text, if**
5  **it's from Sam's phone, it should be one way and if**
6  **it's from my phone, it should be exactly opposite.**
7  Q.  Weiss 5.
8  A.  **Weiss 5?**
9  Q.  Next page, yeah.  I tried to put them in
10  order because a lot of them are cut off.
11  A.  **Okay.**
12  Q.  Okay?
13  A.  **Yeah.**
14  Q.  The text on the left in white and black --
15  A.  **Yes.**
16  Q.  -- whose is that?
17  A.  **Same answer as before.**
18  Q.  You don't know?
19  A.  **It may be me.**
20  Q.  Okay.  But you don't know?
21      You're under oath.  When we put these
22  in front of you and a jury and I ask you these
23  questions, you're going to say, I don't know who
24  wrote these texts.  Right?

Page 291

1  A.  **I would like Mr. Weiss to explain to you**
2  **where he got my texts from.**
3  Q.  Your attorney can ask him next Friday but my
4  question is --
5  A.  **You should ask him if you care.**
6  Q.  -- sitting here in front of a jury, if I put
7  this in front of you in front of a court and jury
8  and I say to you, Mr. Sternberg, who wrote the text
9  in white on the left-hand side of this page, Weiss
10  5, what's your answer under oath to the jury going
11  to be?
12  A.  **Have you authenticated the document?**
13  Q.  Your Honor, direct him to answer the
14  question.  Don't answer a question with a question.
15  A.  **Then I don't know if it's not authenticated**
16  **because I believe it's been made up.**
17  Q.  And sitting here on -- and sitting here tell
18  the jury whose writing it is in the blue on the
19  right.
20  A.  **Same answer.**
21  Q.  Okay.
22  A.  **I don't know.**
23  Q.  And the same goes for Weiss 21, the next
24  page?

Page 292

1  A.  **Yeah, same answer.**
2  Q.  Same answer?  Okay.  This is one of my
3  favorites.
4      Weiss 22, the next page.  "Sam Grosss"
5  is indicated at the top.  And Sam is writing to
6  Gary, "I would have been haiku to return the
7  collateral."
8      Do you see that?
9  A.  **Yeah.**
10  Q.  "But Manfred won't let me."  Right?
11  A.  **I see that.**
12  Q.  Sam is not saying Manfred requested I keep
13  the collateral.  Right?
14  A.  **He's saying what he's saying.**
15  Q.  Sam is telling Gary, "Manfred won't let me."
16  A.  **If that's an accurate capture of a text with**
17  **Sam's name misspelled, then Sam said what he said.**
18  Q.  Why wouldn't you let Sam return the
19  collateral to Gary?
20  A.  **There's not much that I can do to make my**
21  **client do anything.  Maybe you haven't had that**
22  **problem but over the years I can only suggest.  I**
23  **can't make them do anything.**
24  Q.  "Manfred won't let me."

Page 293

1  A.  **What does that mean?**
2  Q.  That means, according to Sam, you won't let
3  him return the collateral.  Why?  Why won't you let
4  him return the collateral?
5  A.  **I don't think I have the authority to let**
6  **him or not let him.**
7  Q.  Why does Sam think that you won't let him
8  return it?
9  A.  **You'd have to assume that that's Sam saying**
10  **that.  I don't know.**
11  Q.  How about the next statement?
12  A.  **Why don't you ask Sam.**
13  Q.  How about the next statement, Weiss 22, "I
14  would have never taken the collateral unless
15  Manfred asked for it"?
16  A.  **That's right.  That's what it says.**
17  Q.  So you asked for the collateral?
18  A.  **I told Sam he should get the collateral.  If**
19  **I asked for it, I'd want it under my care and**
20  **custody.**
21  Q.  "So Manfred since he's the one who asked for
22  it" -- sorry.  "So Manfred since he asked for it?
23  Is the one you should talk about it with."
24      Do you see that?

74 (Pages 290 to 293)

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:22-CV-0688 (JMY)              Deposition of Manfred Sternberg, Esq.              February 7, 2024

Page 294

1    A.   Yes.
2    Q.   And then if you look at the next page, "He
3    asked me to obtain it.  And he spoke to you about
4    it."
5    A.   Okay.
6    Q.   So he asked Sam to obtain collateral --
7    excuse me.  You asked Sam to obtain collateral from
8    Gary and Sam says you spoke to Gary about it.
9          Is that true or was your client lying?
10   A.   I spoke to Gary but I don't know what --
11   Q.   And then he writes, "Maybe talk to him.  I
12   never wanted it."
13          This is Sam telling Gary, I never
14   wanted the collateral.  Do you see that?
15   A.   I see that.
16   Q.   And, again, on the next page, Weiss 24, Sam
17   Gross saying to Gary, "You gave me collateral.  I
18   didn't wish for it.  But I took it.  Cause Manfred
19   pushed it and here we are."
20          Do you see that?
21   A.   I see that.
22   Q.   So you were the driving force between taking
23   collateral instead of gem stones.  Right?
24   A.   My advice was clearly to take collateral

Page 295

1    where he was in the position he was in.  That was
2    good advice.  I stand behind that advice.
3    Q.   So all the times that Gary was telling --
4    that Sam was telling Gary, I didn't want the
5    collateral, Manfred pushed it and vice versa,
6    they're all lying to each other?
7    A.   No, I don't think so.
8    Q.   So you did push getting collateral.  Right?
9    A.   I don't think I pushed it.  I advised him to
10   do that.
11   Q.   And one of my favorites.  "I would like to
12   add?"  Do you see that question?
13   A.   Yes.
14   Q.   Go to the next page --
15        MR. LIGHTMAN:  What is this?  Manfred
16   what, 25?
17        MR. SCULLY:  Weiss 25.
18   BY MR. LIGHTMAN:
19   Q.   "Manfred asked for collateral on President
20   Day weekend.  He had his son with him."  That would
21   be Max.  Right?
22   A.   That's my only son.
23   Q.   And the same Max you said had no involvement
24   whatsoever in this deal.  Right?

Page 296

1    A.   Correct.
2    Q.   And he said, "And they both came up with
3    this idea."
4    A.   Well, I had a conversation with him.
5    Q.   So Sam is lying when he said, "They both
6    came up with this idea" or you're lying when you
7    said Max didn't have anything to do with the
8    collateral idea?
9         MR. LAVER:  Objection.
10        THE WITNESS:  He didn't have anything
11   to do with this.  I spoke with him --
12   BY MR. LIGHTMAN:
13   Q.   So Sam's lying and you're telling me --
14        MR. LAVER:  Let him finish.  Stop
15   interrupting him.
16        THE WITNESS:  No, you're
17   mischaracterizing everything.
18        MR. LIGHTMAN:  I don't think so.
19        THE WITNESS:  Oh, I think so.
20        MR. LIGHTMAN:  The record will speak
21   for itself.
22        THE WITNESS:  It sure will.
23        MR. LAVER:  No, it won't because the
24   record's a mess.

Page 297

1         THE WITNESS:  The record is a mess and
2    you've created it because of your inarticulate way
3    of asking questions.
4         But it says, "And they both came up
5    with this idea."  My son and I talk and when we
6    talk, we formulate ideas.
7         And he and I discussed it and he said,
8    don't let Gary leave the country without giving Sam
9    collateral.  And I said, you know what?  You're
10   right.
11   BY MR. LIGHTMAN:
12   Q.   And how does Sam Gross know that your son
13   came up with that?
14   A.   I probably told him.
15   Q.   Really?
16   A.   Because it's a very savvy response for a 21
17   year-old.
18   Q.   He writes, "I love Manfred dearly.  So I
19   didn't want to ignore his request."
20          Do you see that?
21   A.   Yeah.
22   Q.   And then on the next page, "He was very and
23   extremely happy to have me received the
24   collateral."

75 (Pages 294 to 297)

Page 298

1   A.  For him to get the collateral, yes.
2   Q.  Why?
3   A.  Do I have to explain collateral to you?
4   Q.  No, because you didn't lose the entire.
5   That way you got to keep the money, the 2.5
6   million.  You got to keep the collateral, another
7   $4 million, and you didn't have to deliver the
8   product.  But for this lawsuit, you guys would be
9   $6 million richer.
10  A.  Right, right.  That's not accurate, but I
11  could see that's what you're...
12          MR. LIGHTMAN:  One more topic and then
13  we'll go.  I have to finish this up, 33.
14          (Exhibit Sternberg 33 was marked for
15  identification.)
16  BY MR. LIGHTMAN:
17  Q.  33 is an August 14 -- I'm sorry.  Gary Weiss
18  forwards to me on August 14, 2023 an email dated
19  March 7, '23 from Sam Gross to Gary Weiss.
20          Do you see that at the bottom of the
21  page?
22  A.  I see that's what it says.
23  Q.  And he's saying...
24          MR. LIGHTMAN:  Let me mark this as 34.

Page 299

1   It's a little clearer.
2           (Exhibit Sternberg 34 was marked for
3   identification.)
4           THE WITNESS:  Are 33 and 34 the same?
5           MR. LIGHTMAN:  Yeah, except that the
6   one marked 34 doesn't have the forward to me in
7   August of this year -- of last year.
8   BY MR. LIGHTMAN:
9   Q.  So let's look at 34 because it's easier.
10          Sam writes to Gary -- first, at the
11  bottom on March 7th Gary writes to Sam, "Hi, Sam.
12  Regarding the Covid-19 test kits to be shipped on
13  February-March of '22.
14          "You and I agreed that I gave you
15  Merchandise of Diamonds and Gems instead of the
16  150,000 Covid-19 text kits, as a full refund which
17  was on the advice of your counsel, Manfred
18  Sternberg, which is over $3,000,000 worth.
19          "And you consider it as a full refund
20  on the kits transaction, and have no further
21  demands from me, and my obligations in that matter
22  are satisfied in full, and no further action or
23  legal demand from me will take place, which started
24  as Collateral on advice of your lawyer and than

Page 300

1   considered as full refund."  (sic)
2           Do you see that?
3   A.  I see it.
4   Q.  So when you said, oh, it's referred to as
5   collateral, initially it was collateral but it
6   became a refund.  Right?
7   A.  No.
8   Q.  So he's lying in this email?
9   A.  I think you should subpoena AOL because they
10  keep them and you should get this.  But if you
11  don't, then you really don't want to know the
12  truth.
13          And now it says 3 million and you said
14  before it was 4 million and made a big deal about 4
15  million --
16  Q.  Because of the increase.
17  A.  -- and now it's 3 million.
18  Q.  Wait.  You're saying this is fabricated?
19  A.  Yes.
20  Q.  This Deposition Exhibit Sternberg 34 you're
21  claiming is fabricated?
22  A.  I believe it is, yes.
23  Q.  Okay.  And then --
24  A.  I'd like to see the original.

Page 301

1   Q.  -- go to 33.  That's at the bottom of 33.
2   And then Sam writes back, "Hello Gary," same day.
3           "Yes your email is correct and the
4   facts are the agreed upon facts.  Mr. Manfred
5   Sternberg ESQ had directed to receive this
6   collateral as a means of ending the transaction and
7   to conclude the business between your entity ASolar
8   LLC and Charlton Holding Group and himself."
9           Do you see that?
10  A.  I see that.
11  Q.  I read it correctly.  Right?
12  A.  You did.
13  Q.  Sam further writes, "Should you need more
14  clarification?  We can discuss.  However at the
15  present time?  I deemed that our business is
16  concluded due to the fact that you have provided
17  the collateral as requested by Mr. Sternberg ESQ."
18          Do you see that?
19  A.  I see that's what the typed words say, but I
20  don't believe that Sam wrote that.
21  Q.  You don't?
22  A.  No.
23  Q.  Why?
24  A.  It's got a lot of big words in it that he

USDC, ED of PA    American Environmental Ent. v. Manfred Sternberg, Esq., et al.    Wednesday
No. 2:22-CV-0688 (JMY)    Deposition of Manfred Sternberg, Esq.    February 7, 2024

---

Page 302

1 wouldn't use and it's got context that he wouldn't
2 use. And it also is at odds with what he told me.
3 And that was March 7th of '23.
4     MR. LIGHTMAN: Let's mark this as 35.
5     THE WITNESS: I'd ask for you to get
6 that one also, subpoena that one. Get the
7 documents from the source.
8 BY MR. LIGHTMAN:
9 Q.   So 33 and 34 are fake documents?
10 A.   Yeah, I believe so, but show me that they're
11 not.
12     (Exhibit Sternberg 35 was marked for
13 identification.)
14 BY MR. LIGHTMAN:
15 Q.   Deposition Exhibit 35 is a letter from C
16 Holding LLC dated 2-28-22 from the desk of Sam
17 Gross, President, to "Dear Gary Weiss, this letter
18 is to attest that due to my Attorney, Mr. Manfred
19 Sternberg ESQ, request, I will accept collateral in
20 the form of gems due to the fact you are having
21 issues with supplying the Covid test kits my
22 organization had paid for, and you were supposed to
23 send to my customers in Philadelphia, New York and
24 New Jersey.

---

Page 303

1     "Due to my attorney's request I will
2 not request" -- "due to my attorney's request I
3 will not request a refund but will obtain the
4 commentary in the hope you may supply said test
5 kit. And of course should you not? The collateral
6 will be suffice." (sic)
7     Do you see that?
8 A.   I see that.
9 Q.   Fabricated?
10 A.   Yeah.
11 Q.   So this is a fake document as well?
12 A.   I mean, that letterhead, what is C Holding
13 LLC?
14 Q.   Then it says, "My attorney and his team has
15 requested said collateral. There for I have to
16 accept it. I do respect your efforts. And I
17 understand you have no goods to supply at the
18 moment due to certain global supply chain issues.
19     "So due to Mr. Sternberg request and
20 said forth directive? We will accept your
21 collateral. Thank you so much.
22     "Should you decide to provide the
23 Covid test? I will then return the collateral. If
24 not per Mr. Manfred Sternberg I will have to keep

---

Page 304

1 it.
2     "This letter was created and approved
3 by Charlton Holding Group LLC on February 24th in
4 the year 2022" and Sam Gross' signature. (sic)
5     Do you see that?
6 A.   I see that's what it says.
7 Q.   Is it your testimony that this is a
8 fabricated document?
9 A.   The dates don't match.
10 Q.   Just yes or no.
11 A.   I've already told you.
12     MR. LAVER: You can answer however
13 you'd like.
14 BY MR. LIGHTMAN:
15 Q.   Tell me why you think it's fabricated.
16 A.   There are a number of reasons. It doesn't
17 have the right letterhead. It doesn't sound like
18 Sam. I'd like to see the original. I believe
19 that's false.
20     MR. LIGHTMAN: 36.
21     (Exhibit Sternberg 36 was marked for
22 identification.)
23 BY MR. LIGHTMAN:
24 Q.   I will represent to you that this is a

---

Page 305

1 filing made by Gary Weiss in this case and ECF
2 Filing 101 filed on September 1, 2023,
3 "Presentation proof correspondence of Sam Gross
4 given refund and conclusion on business deal
5 communication."
6     Do you see that?
7 A.   I see that.
8 Q.   And he writes to Judge Younge, "I am
9 presenting to you proof that the deal between me,
10 Gary Weiss and Sam Gross was concluded, satisfied
11 and confirmed on many occasions."
12     And it then goes on to supply all
13 those emails that you say are fake. Do you see
14 that?
15 A.   I see that.
16 Q.   Is it your testimony that all of the
17 documents that Gary Weiss attached the emails and
18 texts are fabricated?
19 A.   The only thing I would say is I would want
20 to see the originals or the source from Gmail.
21 They should have it or AOL. They should have it,
22 or the wireless carrier. They should have it.
23     And I believe that they're not
24 accurate and I hope that the judge will be as

---

77 (Pages 302 to 305)

Page 306

1 perplexed as I am because I'm not in the habit of
2 giving fake documents to federal judges but that's
3 what Gary has done.
4 Q. So your testimony is this is a fake -- these
5 are fake documents?
6 A. I believe so. It contains fake documents.
7 Q. Okay. And there's nothing to prevent you or
8 your attorney from getting these records from Gmail
9 or AOL. Correct?
10 A. Nor you.
11 Q. I can rely upon what people have produced,
12 contrary to what you believe.
13 A. Rely upon Gary.
14 Q. I don't think everything against my interest
15 is a fraud or fake.
16        MR. LIGHTMAN: All right. I have one
17 more thing to do and then we're done for the day.
18        Mark this as 37.
19        (Exhibit Sternberg 37 was marked for
20 identification.)
21 BY MR. LIGHTMAN:
22 Q. Would you agree that this is a letter dated
23 February 22, 2022 sent to you by Randy Adler?
24 A. No. It's February 23.

Page 307

1 Q. Oh, my apologies. Let's start over.
2 A. Again, you want me to testify to stuff that
3 is not true and then you're going to try to catch
4 me in the end.
5 Q. I never want you to testify to stuff that's
6 not true, although, in my opinion, you've done it
7 repeatedly. I want you just to tell me the truth.
8 A. I didn't tell you the wrong date. You just
9 did.
10        MR. LAVER: Ask your question.
11 BY MR. LIGHTMAN:
12 Q. Okay. Would you agree that Deposition
13 Exhibit Sternberg 37 is a letter dated February 23,
14 2022 addressed to you by Randy Adler?
15 A. Yes.
16 Q. And he says, "This law firm, RK Adler &
17 Associates, along with The Law Offices of Robert
18 Stahl, represents VRC Medical Supplies." (sic)
19 A. Yes.
20 Q. Then he says, "As previously indicated to
21 you, in my February 10 demand letter your client,
22 Charlton, entered into SPAs to supply a total of
23 204,120 COVID test kits to VRC." (sic)
24        Do you see that?

Page 308

1 A. I see that.
2 Q. And it says, "In connection with the
3 Transaction, VRC deposited for safekeeping to your
4 Attorney IOLTA a total of $2,449,440." Right?
5 A. You're trying to trick me again?
6 Q. No.
7 A. No, I don't agree with the safekeeping but
8 go ahead.
9 Q. That's what I was going to ask you.
10        He writes in connection with this -- I
11 don't make up the word safekeeping, do I?
12 A. I don't think you did.
13 Q. He wrote, in connection with this
14 transaction, VRC deposited for safekeeping to your
15 Attorney IOLTA the 2.5 million. Right?
16 A. That's what he says.
17 Q. Why does he use safekeeping?
18        MR. LAVER: Objection to form.
19        THE WITNESS: Ask Randy. He wrote it.
20 I didn't write it.
21 BY MR. LIGHTMAN:
22 Q. And he writes in here, "As previously
23 indicated in my February 10 letter, you are on
24 notice that the funds are the property of VRC and

Page 309

1 its contracted parties and cannot be disbursed
2 until this matter is resolved." Correct?
3 A. That's what he says.
4 Q. So the person that gave you the funds for
5 VRC, just like the person that gave you the funds
6 for The SAFETY HOUSE, both of these attorneys tell
7 you don't make disbursements of those funds.
8 Correct?
9        MR. LAVER: Objection.
10        THE WITNESS: That's what they say.
11 BY MR. LIGHTMAN:
12 Q. But you do anyway. Right?
13 A. They're not my client.
14 Q. So you ignore my advice to you for my
15 client, SAFETY HOUSE, and you ignore Adler's advice
16 to you, as the attorney for VRC, not to make
17 further disbursements from an attorney escrow
18 account because there's a dispute because your
19 client -- they're your funds -- your client's funds
20 and not the purchasers' funds.
21        Is that correct?
22 A. I believe that my client was in the process
23 of fulfilling those contracts and so the funds were
24 his.

78 (Pages 306 to 309)

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

---

Page 310

1  Q.  So the answer is yes, that is correct.  They
2  were my client's funds.  Right?
3  **A.  They're my client's funds.**
4  Q.  And then he writes, in capitals, in bold and
5  underlined, "DO NOT DISBURSE ANY PORTION OF THE
6  FUNDS TOTALING TWO MILLION FOUR HUNDRED FORTY-NINE
7  THOUSAND FOUR HUNDRED FORTY-FOUR UNITED STATES
8  DOLLARS ($2,449,440.00 USD).
9       "THESE FUNDS MUST BE HELD IN TRUST IN
10  YOUR ATTORNEY IOLTA ACCOUNT UNTIL THE TRANSACTION
11  IS COMPLETE."  Right?
12  **A.  That's what it says.**
13  Q.  Is it your testimony that you have no
14  obligation to maintain funds in your attorney trust
15  account when a dispute is raised as to the
16  disbursement of those funds?
17       Is that your sworn testimony?
18  **A.  It depends on the situation.**
19  Q.  Really?  So if someone makes a dispute to
20  trust funds and says, don't disburse it, in certain
21  circumstances you can make that disbursement
22  without resolving the problem either with the party
23  raising that objection or through a Court Order?
24  **A.  I think, I think it would --**

---

Page 311

1  Q.  Yes or no?
2  **A.  I think yes.**
3  Q.  And in this situation is one of those cases
4  where you didn't have to follow Adler's
5  instructions?
6  **A.  I'm not in the habit of following other**
7  **lawyer's instructions on what to do and how to do**
8  **it.**
9  Q.  So your answer is yes, on this occasion
10  where VRC is concerned you did not feel you needed
11  to follow his instructions.  Right?
12  **A.  I assume that's right.**
13  Q.  And, similarly, when I told you don't
14  disburse the funds, you thought that was a
15  situation where you could disregard what I said.
16  Correct?
17  **A.  Because --**
18  Q.  Correct, yes or no?
19       **MR. LAVER:**  Let him answer.
20  BY MR. LIGHTMAN:
21  Q.  Say yes or no and then answer why all you
22  want but yes or no?
23       **MR. LAVER:**  You can answer however you
24  want.

---

Page 312

1  BY MR. LIGHTMAN:
2  Q.  Isn't it also true that when I told you to
3  hold my client's funds in trust and don't make
4  disbursements, you thought you could disregard that
5  as well?
6  **A.  I disregarded what you said, yes.**
7  Q.  He also tells you, "You were previously
8  placed on notice that you must take all necessary
9  steps to preserve and not destroy, conceal, or
10  alter, any communications and documents...
11  including... and without limitation, emails, text
12  and self-destructing messages, social media posts,
13  voicemails, records, files and other data, wherever
14  located and regardless of the format or media."
15       Do you see that?
16  **A.  I see that.**
17  Q.  It tells you, "Litigation counsel will be in
18  communication with you about this matter in the
19  coming days."  Right?
20  **A.  Yeah.**
21  Q.  Did you respond to this email?
22  **A.  I think it was a letter, but I don't know.**
23  Q.  This letter, I apologize.
24       Did you respond to it?

---

Page 313

1  **A.  I don't know.**
2       **MR. LIGHTMAN:**  Let's mark this as 38.
3       (Exhibit Sternberg 38 was marked for
4  identification.)
5  BY MR. LIGHTMAN:
6  Q.  This is documents marked Weiss 322 through
7  Weiss 325.  Let's go to page 3, Weiss 324.
8       Why didn't you produce these documents
9  in discovery?
10  **A.  I don't know that you asked for them.**
11  Q.  I did.
12       **MR. LIGHTMAN:**  But, without belaboring
13  the point, I request that you see if you can locate
14  these documents as well.
15  BY MR. LIGHTMAN:
16  Q.  You didn't mention anything to the Texas Bar
17  about VRC making the same claims against you that
18  SAFETY HOUSE made, did you?
19       **MR. LAVER:**  Objection.
20       THE WITNESS:  Was that in the
21  Complaint?
22  BY MR. LIGHTMAN:
23  Q.  (MARKED) Isn't it true that nowhere in your
24  April 24th response to the Texas Bar did you

---

79 (Pages 310 to 313)

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:22-CV-0688 (JMY)        Deposition of Manfred Sternberg, Esq.        February 7, 2024

Page 314

1   mention that another entity, VRC, had made the same
2   claims against you as SAFETY HOUSE, did you?
3       MR. LAVER: Objection. Don't answer
4   that question. That's off limits.
5       MR. LIGHTMAN: Mark that.
6       MR. LAVER: It's totally irrelevant.
7       MR. LIGHTMAN: It may be irrelevant to
8   you with tunnel-minded vision but this is a massive
9   fraud scheme.
10      MR. LAVER: Okay. Prove it. Prove
11  it.
12      MR. LIGHTMAN: I am going to, believe
13  me.
14  BY MR. LIGHTMAN:
15  Q.  So on page 3 Bill Berman on Tuesday, March
16  1, two days after, writes to Zekaria of Sokolski &
17  Zekaria, "Ms. Zekaria, I represent VRC Medical
18  Services and Steven Corba."
19      Do you see that?
20  A.  I do.
21  Q.  "Pursuant to our brief telephone
22  conversation... this written request is made to
23  provide you in writing as to what relief my client
24  seeks and why.

Page 315

1       "To date, I have learned that the
2   other parties involved are Sam Gross, Gary Weiss,
3   Charlton Holdings Group. I will make no mention of
4   Manfred Sternberg Esq. or yourself as a party until
5   I learn of the facts from your response to this
6   inquiry."
7       Then he goes on to tell Zekaria, "As I
8   trust you are aware, the parties entered into a
9   Sale and Purchase Agreement which called for the
10  delivery of 204,120 iCOVID test kits in
11  consideration of a payment of $2,449,440.
12      "VCR transferred the aforesaid funds
13  to the trust account of Manfred Sternberg Esq.
14  Mr. Sternberg has advised that he transferred the
15  funds to your trust account.
16      "Notwithstanding the significant
17  period of time between the deposit of funds into
18  the trust account, there has been no delivery of
19  any product to my client.
20      "However, unfortunately, I understand
21  several people have collected certain funds as
22  their profit or commissions. I do hope the
23  aforesaid is false." (sic)
24      Do you see that?

Page 316

1   A.  I see that.
2   Q.  Did several people -- one or more people
3   collect certain funds as their profit or
4   commissions?
5   A.  I don't know.
6   Q.  Why don't you know? You're the one that
7   controlled the money and where it goes to.
8   A.  I did as directed by my client.
9   Q.  Did your client direct you to pay any
10  commissions or profits?
11  A.  I don't believe so, but I don't know.
12  Q.  Did you pay any money to -- did you pay any
13  money to Max for coming up with the idea about the
14  collateral?
15  A.  No.
16  Q.  Did you pay any money from VRC or SAFETY
17  HOUSE to John Mann?
18  A.  John who?
19  Q.  Mann, M-a-n-n.
20  A.  I don't remember.
21  Q.  Did you pay any money or commissions or
22  profit to Dick Gray?
23  A.  I don't believe so.
24  Q.  How about Alex Frazer?

Page 317

1   A.  I don't believe so.
2   Q.  How about Chris Cortiz?
3   A.  I don't believe so.
4   Q.  How about Bob Keech?
5   A.  I don't believe so.
6   Q.  How about Ruthie Countinho,
7   C-o-u-n-t-i-n-h-o?
8   A.  I don't believe so.
9   Q.  So it's your testimony none of those people
10  I just mentioned received any commissions or
11  broker's fees or profits --
12      MR. LAVER: That's what he just said.
13  BY MR. LIGHTMAN:
14  Q.  -- from your escrow account?
15      MR. LIGHTMAN: Okay.
16      (Brief pause.)
17      MR. LAVER: What happened to 2:30?
18      MR. LIGHTMAN: I'm done in five
19  minutes.
20  BY MR. LIGHTMAN:
21  Q.  Now, Bill Berman's letter dated March 1 to
22  Ms. Zekaria, if you look at page 2 of this, Bill
23  Berman sends her the email of March 1 at 11:25 a.m.
24      Do you see that on page 3, Weiss 324?

80 (Pages 314 to 317)

Page 318

1     **A. It's on page 2 but yes.**
2         **MR. LAVER:** The next page.
3         **MR. SCULLY:** It's the next page.
4   BY MR. LIGHTMAN:
5   Q. Page 3. Stop misrepresenting the facts.
6   Stick to the facts.
7     **A. Well, you've done such a good job all day.**
8   Q. Page 3.
9     **A. The record will show it, too.**
10   Q. Page 3 Berman sends an email to Daphna on
11   March 1 at 11:25.
12     **A. Yes.**
13   Q. The page before that at 1:34 she writes --
14   forwards this to you and writes "Please address
15   this and copy me per our discussion in as much as
16   this has absolutely nothing to do with my client
17   and should not be referred to me in any way."
18       Do you see that?
19     **A. I see that.**
20   Q. And then the first page at 5:15 you write to
21   Bill, you start out, "Hi, Bill. As I told you on
22   the phone, Ms. Zekaria is counsel to the vendor of
23   the iCOVID test kits." (sic) Right?
24     **A. It says what it says, yes.**

Page 319

1   Q. So let's go back to this letter.
2       You don't dispute in your March 1
3   response to him any of the facts about him -- his
4   client, VRC, buying the 204,120 COVID test kits or
5   making a payment of $2,449,440 into your trust
6   account. Correct? And they never got product.
7   Right?
8     **A. All until the last part. I think they got**
9   **product.**
10   Q. Until what last part?
11     **A. The last part of your question. They got**
12   **product.**
13   Q. Right. He said, however, there's been no
14   delivery of any product to my client as of March 1.
15     **A. I believe there has been now.**
16   Q. As of March 1 --
17     **A. I don't know.**
18   Q. So you don't know that.
19     But you didn't dispute that in your
20   letter back to him on March 1. You didn't say you
21   did get product, did you?
22     **A. I guess I didn't. It would be in that**
23   **email.**
24   Q. Right. But it's not. Right?

Page 320

1     **A. It's not. It speaks for itself.**
2   Q. He writes, "My client," which is VRC, "has
3   made through prior counsel previous demands for the
4   return of the funds which were deposited in trust
5   and not to be released until a Bill of Lading was
6   issued."
7       Do you see that at the top of page
8   4 --
9     **A. Yes.**
10   Q. -- of 325? When you write back to him on
11   March 1, you don't dispute that. Correct?
12     **A. I don't know if I needed to.**
13   Q. But you didn't write, hey, that's not true.
14   You wrote to me. The funds were deposited in trust
15   not to be released until a Bill of Lading was
16   issued. That's not true, Bill.
17     You didn't write that to him, did you,
18   in your March 1st response, did you?
19     **A. I don't know that I needed to.**
20   Q. But you didn't.
21     **A. It speaks for itself, doesn't it?**
22   Q. And nowhere in your response do you dispute
23   that. Correct?
24     **A. The contract says otherwise, so I don't need**

Page 321

1   to dispute it.
2   Q. Nowhere in your March 1 email to him do you
3   dispute that. Correct?
4     **A. It says what it says.**
5   Q. And it doesn't say that's not correct.
6   Right?
7     **A. Correct. The contract says that.**
8   Q. Thank you. And then it says -- then he
9   says, "A brief review of the history of certain
10   individuals have led us to" -- "have led our group
11   to conclude that this was a fraudulent
12   transaction."
13       Do you see that?
14     **A. Yeah.**
15   Q. You don't write back to him anywhere in your
16   March 1 letter and say, hey, this isn't a
17   fraudulent transaction. Right?
18     **A. I thought the facts were better to tell him.**
19   Q. You didn't write anywhere in here there's no
20   fraud involved, did you?
21     **A. I will tell you now there was no fraud**
22   **involved by me.**
23   Q. You didn't tell Bill Berman on March 1, 2022
24   there's no fraud involved. Correct?

Page 322

1  A.  I also didn't tell him I'm from Houston,
2  but --
3  Q.  But he wrote -- he didn't say you're from
4  Texas -- you're from Dallas so you didn't need to
5  correct it.
6      He wrote to you and said, "A brief
7  review of the history of certain individuals have
8  led our group to conclude that this was a
9  fraudulent transaction."
10  A.  Right.  That's what he says.
11  Q.  You did not dispute that in your March 1
12  email.  Correct?
13  A.  Correct.  I didn't need to.
14  Q.  Wait a minute.  Purchaser claims they
15  transferred 2.45 million into an attorney trust
16  account to purchase over 200,000 test kits and that
17  money was not supposed to be released from trust
18  until the purchaser got a Bill of Lading.
19      And that purchaser never received the
20  goods or the required Bill of Lading and that
21  purchaser demanded the return of his money and the
22  purchaser didn't get back his money or the goods
23  and that purchaser thinks this transaction was a
24  fraudulent transaction.

Page 323

1      Where have I heard that pattern of
2  conduct before?
3  A.  That's what your lawsuit is about.
4  Q.  Exactly.
5  A.  I dispute that also.  Do I need to say that
6  right now?
7  Q.  Exactly.
8  A.  All right.  Are you finished?
9  Q.  One more, one more document.
10  A.  This five minutes is the longest five
11  minutes.  I'm going to miss my flight.
12  Q.  No, you won't.  This is the last document
13  because I'll ask you to stipulate to that.
14      MR. LIGHTMAN:  39.
15      (Exhibit Sternberg 39 was marked for
16  identification.)
17      MR. LIGHTMAN:  This is for my closing.
18      MR. LAVER:  This is not going to a
19  jury and you know it.  This case is a joke.
20      THE WITNESS:  I see Exhibit 39.
21      MR. LIGHTMAN:  Will counsel stipulate
22  that Exhibit 39 is a true and correct copy of the
23  New York State Court lawsuit filed by Nail & Beauty
24  against VRC, including Defendants Charlton, Gross,

Page 324

1  Manfred Sternberg, Manfred Sternberg & Associates
2  PC, Daphna Zekaria and Sokolski & Zekaria?
3      MR. LAVER:  I've never seen this
4  before.
5  BY MR. LIGHTMAN:
6  Q.  Mr. Sternberg, is this a copy of the
7  Complaint that was filed against you and your law
8  firm and others?
9  A.  Is this what I just got served with?
10  Q.  No.  This was filed April 1, 2002.
11  A.  No, I've not seen it, although I've talked
12  to David Schrader.
13  Q.  Who is who?  The attorney for the plaintiff.
14  Right?
15  A.  Yes.
16  Q.  Do you have an attorney in this lawsuit?
17  A.  No.  I didn't know there was a lawsuit
18  against me.
19  Q.  Does it indicate Manfred Sternberg?
20  A.  It sure does.
21  Q.  So you don't have any representation in this
22  suit?
23  A.  Well, you have to get served in Texas with a
24  lawsuit before you have to --

Page 325

1  Q.  Is that what you were served with?
2  A.  I don't know.
3  Q.  Can you take it out?
4  A.  I'm asking you.
5  Q.  I don't know.  I don't know what you were
6  served.
7  A.  Yeah, but I don't recognize this.  That one
8  said US District Court.  So I guess --
9  Q.  It's something different.  Okay.
10      So you were never served with this.  I
11  got you.
12      MR. LIGHTMAN:  We're done.  Okay.
13      COURT REPORTER:  Counsel, will you be
14  ordering a copy of the transcript?
15      MR. HEALEY:  Can I get your info and
16  let you know?
17      COURT REPORTER:  I can email you.
18      MR. LAVER:  I get a copy.  Right?
19  It's my client.
20      MR. LIGHTMAN:  If you want to pay for
21  it, yeah.
22      MR. LAVER:  Well, I need a full copy,
23  yes.
24      MR. LIGHTMAN:  He's opposing counsel

Page 326

1   and I can vouch for him.
2          We agreed that if we need to bring
3   Mr. Sternberg back for additional deposition
4   testimony, Mr. Laver and I will work out in a
5   mutually-agreeable arrangement which will include
6   no more than an hour and a half, but he thinks it's
7   less, and which will also include the right to have
8   Manfred testify virtually.  Correct?
9          **MR. LAVER:**  Fair.  We're off the
10  record.
11         (Witness excused.)
12         (Deposition adjourned at 4:05 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24

Page 328

1
2          INSTRUCTIONS TO WITNESS
3
4
5          Please read your deposition over carefully
6   and make any necessary changes.  You should assign
7   a reason in the appropriate column on the errata
8   sheet for any change made.
9          After making any change which has been
10  noted on the following errata sheet, along with the
11  reason for any change, sign your name to the errata
12  sheet and date it.
13         You are signing it subject to the changes
14  you have made in the errata sheet, which will be
15  attached to the deposition.  You must sign in the
16  space provided.
17         Return the original errata sheet to the
18  deposing attorney within thirty (30) days of
19  receipt of the transcript by you.
20
21
22
23
24

Page 327

1                 - - -
2          C E R T I F I C A T E
3                 - - -
4          I do certify that I am a Notary
5   Public in good standing for the Commonwealth of
6   Pennsylvania; that the aforesaid testimony was
7   taken before me, pursuant to notice, at the time
8   and place indicated; that said deponent was by me
9   duly sworn to tell the truth, the whole truth and
10  nothing but the truth; that the testimony of said
11  deponent was correctly recorded in machine
12  shorthand by me and thereafter transcribed
13  under my supervision with computer-aided
14  transcription; that the deposition is a true
15  and correct record of the testimony given by
16  the witness; and that I am neither of counsel
17  nor kin to any party in said action, nor
18  interested in the outcome thereof.
19
20  _____
21  /s/ JOANNE ROSE
    Registered Merit Reporter
22  Notary Public
    My commission expires August 24, 2026
23
24

Page 329

1                 - - -
2          E R R A T A
3                 - - -
4
5   PAGE    LINE       CHANGE
6   _____
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____

83 (Pages 326 to 329)

Page 330

ACKNOWLEDGEMENT OF DEPONENT

I, _____ do
hereby certify that I have read the foregoing
pages, _____, and that the same is a
correct transcription of the answers given by
me to the questions therein propounded,
except for the corrections or changes in form
or substance, if any, noted in the attached
Errata Sheet.

_____
Date
_____
Signature

Subscribed and sworn to before me this
_____ day of _____, 2024

My Commission expires:
_____
Notary Public

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 87 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                    February 7, 2024

Page 331

**A**

A-F 3:19
a.m 1:18 39:8,8
    317:23
a/k/a 1:10,11
ability 10:24
able 81:5 190:20
    242:4
above-mentioned
    93:14,17
absolutely 70:21
    318:16
accept 302:19
    303:16,20
acceptable 10:18
accidentally 241:6
account 5:6,9,21
    6:6 31:3 71:21
    72:9,13 74:2 78:4
    78:19 79:5 80:12
    80:16 82:10,17,21
    83:4,15,23 84:3
    89:21 92:20 93:16
    93:18,22,23 94:4
    94:18 95:3,8,17
    96:11,20 97:4,10
    107:2 137:13,19
    144:3 145:5
    147:13 149:24
    158:9,16,19,22
    159:10 170:12
    171:20 172:6
    173:4,22 174:14
    174:24 175:16,19
    176:1,16 181:18
    182:2 198:15
    199:6,8,12,17
    200:17 203:3,10
    211:10 223:17
    224:9 226:19
    233:4,7,10,21
    235:6 238:13
    239:1,2 240:5,15
    241:10,20,24
    242:2,3,8,20
    244:20 245:1
    246:19 247:18
    248:12 249:22
    250:1,3,9,24
    252:13,15 253:18
    253:23 254:4,15
    257:5,10 259:24
    260:4,6,9,13,18
    284:23 309:18
    310:10,15 315:13

315:15,18 317:14
319:6 322:16
accounted 221:9
accounting 36:7,13
    36:15,20 37:1,2,7
    37:12,14 170:17
    175:1 179:22
accurate 75:12
    133:18 150:24
    161:17,19 164:10
    169:5 219:4
    283:11 292:16
    298:10 305:24
accurately 10:14
    135:2 144:13
ACKNOWLEDG...
    330:1
acknowledges
    190:11
acquiring 225:2
acquisition 198:8
act 153:22
acting 87:11,24
    88:8,12,15 89:2
    95:16
action 1:4 20:12
    299:22 327:17
Activity 5:9
actual 26:10 104:10
    172:15 209:4
add 173:3 174:11
    178:2,3 206:23
    212:2 219:10
    264:18 265:4,10
    265:11,21 276:8
    295:12
added 128:10,12
    129:5,7 166:16
adding 128:4
addition 74:1,18
    219:18 236:6
additional 173:12
    173:13 326:3
address 121:20
    124:12 198:6
    218:17 221:16
    318:14
addressed 176:7
    189:6,8 307:14
addresses 5:19
    218:16 219:22
adds 206:2,2
adhered 97:12
adjourned 326:12
Adler 7:9 73:5,6,21

73:22 216:19
306:23 307:14,16
Adler's 309:15
    311:4
admit 68:3,4,7
admitted 68:6
    118:22
adverse 11:15,22
advice 257:7 267:13
    268:14 294:24
    295:2,2 299:17,24
    309:14,15
advised 295:9
    315:14
advocate 265:24
affect 10:24
Affidavit 164:19
    166:4
Affidavits 161:19
Affiliated 239:19
    240:1,3,6,7,16,24
    241:2,3 242:6
    244:23,24 245:2
    245:21 250:23
    251:2,22,24 252:5
aforesaid 315:12,23
    327:6
agent 80:18,22
    83:14 92:4,17
    95:7 118:12,23,24
    140:10
aggravated 127:5
ago 30:2 65:5
    183:21
agree 41:10 129:10
    170:10,11 218:24
    231:6 232:15,17
    233:24 235:7
    272:22 306:22
    307:12 308:7
agreeables 124:18
agreed 14:20 56:7
    59:23 70:3 106:16
    113:3,21 114:5
    154:22 231:8
    285:17 299:14
    301:4 326:2
agreement 3:20
    16:21,22,23,24
    17:4,14,20 24:15
    29:18,22 30:2,23
    31:6 43:17 48:2
    48:14,17,22 52:23
    53:3,10 54:18,21
    66:11 67:8 69:21

70:9,12 77:9,13
78:12,14 79:14
80:2,14 82:23,24
83:1,7 90:11,12
90:13,21,23 91:2
91:8,12,18 92:8
92:11,15,21 94:14
94:24 95:5 103:2
103:4,17 106:20
106:21,23 285:8
285:12 315:9
agrees 106:5
ahead 15:19 29:1
    74:13 143:8
    183:10,13,16
    214:12,18 242:16
    308:8
ahold 285:24
al 4:10,13,16,20
    6:19 7:12
alarm 190:5
alcohol 10:23
Aldan 218:21
    219:16
Alex 316:24
all' 144:12,15
alleged 37:16,21,23
allegedly 138:21
    225:3
allowed 28:24
alter 312:10
alternative 155:8
amended 3:8,12
    13:20 15:6 16:1
    22:10,14,23 24:13
    24:22 48:9 236:13
    236:15
Amendment 11:10
    11:14,17
America 5:9 6:8
    254:6,10 256:23
    257:2,10,12
American 1:4 10:4
    22:11
amount 117:19
    190:11 236:1,2
    242:18
amounts 202:7
    204:9
and/or 74:16 91:9
    91:20 107:21
    110:7 113:19
    117:18 158:17
    180:17 181:5
    212:4 216:20

242:7 255:13
answer 8:3 10:9,10
    10:13,16,17,17
    11:4,16 15:19
    16:8,12,12 29:2
    30:9 43:4,8 46:6
    46:11 56:22 57:20
    58:10 59:13 60:15
    65:3,3,4 66:19
    70:14 74:12 76:10
    78:22 79:2,15,19
    79:21 83:11 87:14
    87:16 93:7 105:20
    148:15 177:5
    183:9,14 187:18
    195:6 204:19
    207:16 217:11
    221:22,23 222:5
    232:21 239:15
    244:1,6 245:15,16
    246:17 248:22
    273:20 276:3,4,5
    277:19 279:14
    282:2 288:9
    289:10 290:17
    291:10,13,14,20
    292:1,2 304:12
    310:1 311:9,19,21
    311:23 314:3
answered 58:10
    68:18 75:23 76:6
    76:20,22 231:12
    245:12 253:9
    260:12 282:22
answering 11:5
    12:5 25:9 53:24
    90:16,17
answers 217:17
    330:6
Antigen 150:4
    152:4 156:19
anybody 33:5 84:9
    88:22 153:3
    181:11,12
anymore 148:19
    168:21
anyway 143:13
    309:12
AOL 300:9 305:21
    306:9
apologies 25:11
    182:9 205:10
    307:1
apologize 24:6
    62:23 270:17

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 88 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)              Deposition of Manfred Sternberg, Esq.              February 7, 2024

Page 332

280:22 288:1
312:23
**apology** 236:19,20
**apparent** 239:9,11
**apparently** 35:16
53:18 159:8,20
229:6 257:1
**appear** 124:2
**APPEARANCES**
2:1
**appeared** 43:21
**appears** 26:7 27:19
44:8 70:8,11 71:3
124:8 130:16
172:22 272:7
**appropriate** 147:15
328:7
**approved** 304:2
**approximately** 1:18
**April** 40:14 41:13
42:6,16,21 43:1
43:15 44:22 50:24
51:22 52:14,14
55:7,19 58:1,2
63:11,17,22 64:12
64:18,24 66:5,8
75:2 85:10 112:22
117:14,15 126:22
162:15 185:14
203:18 313:24
324:10
**argue** 214:16
**arguing** 272:18
**argument** 213:15
213:22
**arranged** 72:18
**arrangement** 84:7
326:5
**arrangements**
131:10
**arriving** 146:10
151:12
**Articles** 252:8
**asked** 30:10 33:5
43:4 61:9 67:5
68:11 76:5 119:15
125:11 142:20,22
162:1 164:11
180:15 188:6
196:21 198:1
202:5 204:6 209:4
213:17 214:5
217:8,10 225:16
242:17 245:10,12
246:17,23 252:14

263:23 264:4
277:24 283:15
286:3 293:15,17
293:19,21,22
294:3,6,7 295:19
313:10
**asking** 31:17 34:13
44:18 64:15 84:16
91:17 95:14,15
104:2 118:16
185:24 202:17
210:11 215:16
217:13,15 232:2
242:24 247:14
259:19 270:6
271:18 288:5
297:3 325:4
**asks** 14:4,19
**ASolar** 1:12 19:17
21:6 22:14 109:8
112:9,11,15,19
113:2,2,20 114:1
114:4 121:11,19
184:16 185:5,10
186:18,19,22
187:3,17 188:10
188:11,13,19,24
189:8,20 190:1,8
190:13,20 192:5
192:14,18,19
193:16 194:23
195:12,19,23
196:23 261:20
301:7
**Asolardiamond**
1:11 6:10 19:17
22:15 162:8
186:22 189:9,16
190:23
**aspersions** 9:16
**assign** 328:6
**Associates** 1:9 2:12
12:8,9 83:4 92:23
139:16 307:17
324:1
**assume** 11:4 31:16
32:17 43:24 44:5
44:14 45:9 72:3
83:19,19,23 85:23
85:24 107:16
111:21 123:16
146:17 149:7
150:22,24 257:11
293:9 311:12
**assumed** 86:22

127:21 131:15,16
132:2,4
**assumes** 45:19
**assuming** 157:1
**assumption** 85:11
85:18,19,22 86:3
86:7 202:14
**assure** 24:8 84:3
**assured** 109:17
186:16
**attach** 43:15 163:18
**attached** 7:13 23:3
23:4 24:17 97:20
121:21 122:11,24
164:7 166:2 257:8
305:17 328:15
330:9
**attachment** 3:23
**attachments** 3:19
7:7 28:7,14 29:10
131:17,19
**attempt** 162:7
199:5
**attempted** 160:3,9
160:10
**attempts** 150:2
**attend** 138:5
**attention** 261:21
262:21 263:6
**attest** 302:18
**attorney** 5:6 12:11
16:5 31:3 32:23
32:24 48:15 54:19
63:12 71:20 72:8
72:13 73:8 74:2
74:23 77:5 78:4
78:19 79:5 80:2
80:11,16 82:10,16
82:21 83:20,23
85:13 86:5 87:7
87:12,24 88:3,5,9
88:13,14,16,20,23
89:1,2,8,11,15,21
90:5 91:5 93:15
93:18,22 94:17
95:3,8,17 96:20
97:4,9 107:1
117:18 134:20,23
136:16 137:13,19
138:4 144:3 145:5
147:13 149:12,13
150:9,9,15 158:9
158:16 159:10
173:22 174:24
182:1 194:13

198:15 223:17
224:9 248:12
270:7 291:3
302:18 303:14
306:8 308:4,15
309:16,17 310:10
310:14 322:15
324:13,16 328:18
**attorney's** 84:3
92:20 149:24
284:23 303:1,2
**attorney/client**
77:23
**attorneys** 2:6,11,17
175:14 309:6
**audit** 209:7
**August** 3:20 69:21
125:3 298:17,18
299:7 327:22
**authenticated**
291:12,15
**authenticity** 272:16
**author** 232:12
**authority** 293:5
**authorized** 147:12
**Available** 4:5
121:20 124:6
126:17 128:1,9,14
129:5 185:15
192:13 194:24
**Avenue** 218:21
219:17
**avoid** 256:2
**avoided** 150:2
**aware** 13:5 108:13
115:14 142:11
315:8
**axel** 166:7

**B**

**B** 70:1 93:16,19,21
93:22 112:15,17
121:5 169:21
174:4 189:19
196:8 197:23
220:6,9,12 221:7
221:12
**back** 29:4 39:10
60:16 62:21,22,24
72:20 94:2 105:7
109:2 115:17
117:18 118:1,1
135:6,16,21 136:2
136:7 139:12
141:19 146:24

150:8 154:23
155:11,14,17
163:15,18 167:1
181:2,9,16,23
182:4,14 190:24
202:4,15 204:2
205:19 212:13
213:9 215:13
222:13 224:5,6
228:18 229:2,9
230:12 231:10
232:19 250:9
255:12,15,16,20
255:23 256:1,9
257:14,14 262:20
264:19 265:5
276:21 285:14,16
301:2 319:1,20
320:10 321:15
322:22 326:3
**bad** 282:18
**badgering** 53:22
272:18
**balance** 170:8,12
173:24 174:14,23
179:13,20 198:20
202:24 203:3,5,23
**bank** 5:9 6:8 172:9
203:13,14 209:5
241:4 250:2,9
254:6,9 256:22
257:2,9,12 259:24
260:4,13
**BankofAmerica.c...**
257:3
**Bar** 39:19,24 41:15
41:22 42:1 43:2,9
44:3 47:24 49:15
49:20 50:3,10,18
50:23 51:3,8,22
52:15 55:8,19
56:11,20,24 57:22
58:5,7 59:7 60:13
60:18,19 61:15,18
61:19 62:12 63:3
63:10,17,21 64:18
64:24 65:8 66:8
66:12,17 85:17
108:19 109:1,3,4
109:8,15,16
113:14 115:20
116:20 117:2,16
117:24 118:5
120:6,21 122:12
123:1 124:1,7

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                 February 7, 2024

Page 333

126:22,23 127:12
127:17 128:19
130:1,9,13,17,22
151:8 169:20
174:5 189:3
197:24 220:7,10
313:16,24
**base** 85:16 215:12
231:11
**based** 132:5 191:23
197:16 202:15
284:24
**basically** 202:5
204:7
**basis** 11:16 17:17
85:2 86:2 113:16
113:17,18
**Bates** 5:13 209:17
**beach** 81:15 82:1
**Bear** 23:14
**bearing** 40:21
**Beauty** 219:10,16
219:18 221:10
323:23
**bed** 259:8
**began** 110:1
**beginning** 14:9,9
**behalf** 44:9,11
53:16 59:18,18
152:8 191:20
216:22,22
**belaboring** 313:12
**belief** 118:10
**believe** 13:14 14:1
16:20 18:13 19:6
24:19 25:3,7,12
28:17 29:1,3 31:1
32:14,22,22 38:13
38:14 42:13,18,22
46:23 58:21 61:23
67:17 69:2 73:13
77:7 95:10 107:22
107:24 108:4
119:14,16 167:20
168:15,19,19
172:8 178:12
185:7 186:10
189:14,15 200:9
200:20 201:10
210:13 213:9
225:8 284:18,19
288:11 291:16
300:22 301:20
302:10 304:18
305:23 306:6,12

309:22 314:12
316:11,23 317:1,3
317:5,8 319:15
**believed** 127:1
186:17,20
**bell** 1:17 2:16
228:12,15
**bells** 190:5
**belonged** 249:7
**belongs** 243:6
**beneficial** 251:23
**benefit** 249:23
261:21 262:7,22
**Berman** 73:11,12
73:13,14,23
216:20 314:15
317:23 318:10
321:23
**Berman's** 317:21
**best** 20:2,8 65:6,9
65:10 76:6 139:24
258:8
**better** 275:12
321:18
**beyond** 188:6,8
**big** 239:14 300:14
301:24
**Bill** 5:10,13 73:11
73:12,13,14,22
94:4 100:3,3
102:5,5,24 103:1
103:5,13,24 104:9
104:15,17,20,21
105:2,2,9,10,15
105:15 110:15,16
110:18,19,23,24
111:5,10 112:5
121:10,18 122:1
126:3,6,13,24
127:4,17 128:18
129:12 146:1
147:15 148:4,5
149:20 160:7
173:7 174:23
184:14 185:4,8
186:4 187:23
191:17 192:7
193:19,20,21,22
196:1,9,15,17
216:20 245:19
246:9,10 285:24
314:15 317:21,22
318:21,21 320:5
320:15,16 321:23
322:18,20

**billed** 173:23 174:2
174:8
**billing** 17:18 192:9
192:10,11
**Bills** 36:11 37:20,21
38:21 225:11,13
225:17 286:6,7,8
**bit** 162:12
**black** 124:8 127:9
202:4,15 273:18
274:13,19 275:8
275:10,11,13,14
275:21,23 276:4
277:18 278:1
279:3 282:11
287:18 289:9
290:14
**blacked** 127:2,8
130:16 132:7
**blah** 166:8,8,9
183:18,18,18
**Blake** 33:1,4
**blame** 165:5,6
267:3,4 280:17
**blaming** 165:4
**block** 28:17
**blocked** 124:20
125:3 239:4
**blow-up** 123:9,24
**blown** 261:16
**blue** 1:17 2:16
123:2 210:8
273:15,18 274:13
274:14 275:7,14
275:20,21,22
276:2,22,23 277:4
277:10,16 279:6
279:11 282:15
288:4 291:18
**Bluestone** 1:16
**Board** 28:18
**Bob** 317:4
**Boehms** 1:17
**BOL** 38:6
**bold** 150:7,8 155:10
310:4
**BOLs** 36:8,11,14,22
37:1,3,4,13,15,15
37:23 225:10
**bona** 286:8,10
**bono** 28:19
**bottle** 11:20
**bottom** 6:21 14:16
14:17 15:5 28:10
109:24 121:8,17

124:19 128:6,7
130:2 147:4
165:11 219:24
238:20 276:14
278:1 287:16,23
289:19 298:20
299:11 301:1
**bought** 101:14
112:10 165:14
170:22 196:20
221:17 230:4
**boxes** 70:4 128:22
143:16 159:1,7,15
160:3,9 161:2
186:8 187:11
285:1
**branch** 259:24
**breach** 41:5 153:20
154:1
**breached** 152:14
153:11
**break** 39:7 133:7
134:14 135:4
175:4 182:17
192:2
**brief** 250:7,18
314:21 317:16
321:9 322:6
**bring** 15:2,15 326:2
**brings** 213:4
**broad** 197:14
**broke** 168:17,20
**broken** 166:7
**broker** 72:18
**broker's** 317:11
**brought** 114:13
146:8 227:8,10
**BS** 178:19
**bucks** 211:22 212:5
212:10 235:9
**bullshit** 34:18,24
35:1,2,2 164:2
**bullshited** 35:8
**bunch** 138:16
165:12 282:18
**business** 7:7 22:12
34:1,3,6 104:5,6
134:22 230:2,3
251:12 271:6
273:24 301:7,15
305:4
**button** 205:14
**buy** 79:10,11 81:4
81:15 82:1 170:14
192:9,10,11

198:18 199:19
211:10 247:4,6
**buyer** 55:12,21
59:18 83:13,15
84:19 88:21 90:23
91:5,12,13,21
93:2,13 94:7,16
98:17 99:17,21
100:2 101:11
102:2,4,24 104:8
104:16 105:3,16
106:8 107:5,23
136:9,23 137:2,2
147:16 157:11,18
157:23
**buyers** 70:20 78:2
**buying** 104:1
193:15 282:17
319:4
**buys** 103:15 159:15

— C —

**C** 302:15 303:12
327:2,2
**C-o-u-n-t-i-n-h-o**
317:7
**calculate** 222:2
**calculation** 208:14
**calculations** 208:12
**California** 131:22
**call** 33:9 50:7 67:24
68:1,1 114:22
127:16 128:17
134:21 140:10
141:22 147:8,23
148:12 169:3
184:24 185:17
190:3 194:4 196:1
199:2 210:20
214:12 262:10,13
268:7 282:7
**called** 75:17 131:6,6
141:24 168:16
183:5 185:17,18
190:20,22 193:18
196:17 315:9
**calling** 34:24
137:10 138:2
268:13,13
**calls** 88:4 130:24,24
**Calm** 54:1
**Canaan** 39:20
**cancel** 132:22 133:1
135:13,20 136:13
136:22 138:3

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 90 of 412

USDC, ED of PA      American Environmental Ent. v. Manfred Sternberg, Esq., et al.      Wednesday
No. 2:22-CV-0688 (JMY)      Deposition of Manfred Sternberg, Esq.      February 7, 2024

Page 334

255:14,16
**canceled** 132:13,17
  132:21 255:13
**canceling** 181:16
  255:19
**capacity** 12:6 191:1
  191:2
**capital** 164:19
**capitals** 34:10 150:7
  150:8 155:10
  164:17 310:4
**caps** 147:21
**capture** 292:16
**care** 156:13 211:6
  291:5 293:19
**carefully** 68:21
  256:24 328:5
**carrier** 94:6 99:11
  99:24 102:3 106:6
  107:4 108:8
  144:18 146:4
  148:5,9 305:22
**carrier'** 147:14,22
**case** 9:19 10:3
  11:13 13:2 84:1
  86:1 140:15
  171:24 202:6
  204:7 234:12
  262:16 305:1
  323:19
**cases** 11:13 311:3
**casting** 9:16
**catch** 307:3
**categories** 14:12,14
  15:4
**Caught** 272:13
**cause** 157:12,19
  294:18
**caused** 113:2
**causing** 210:23
**Cc** 152:2
**cell** 282:4,6
**certain** 303:18
  310:20 315:21
  316:3 321:9 322:7
**certainly** 19:14
  33:12 123:15
  129:7 145:3
  281:17
**certification** 32:15
**certified** 1:22 28:19
**certify** 327:4 330:4
**chain** 6:14,15
  303:18
**change** 13:22 328:8

328:9,11 329:5
**changes** 328:6,13
  330:8
**charge** 197:4
  234:22 279:21
**charged** 169:17
  174:13 178:5
  234:19,20 235:4
**Charlton** 3:19 4:16
  6:10 16:16,17
  18:15,16,17 22:13
  33:10,24 34:4
  44:10 69:23 70:3
  74:23 75:4 77:14
  77:24 78:6 81:3
  85:15 87:12
  112:10,19,24
  113:4,22 114:5,6
  115:18,21 116:1,3
  120:24 121:1,11
  121:19 139:17
  143:18 152:2
  156:16 186:4,14
  187:10 188:16
  189:21 190:9
  191:20 192:20
  194:23,23 195:12
  195:15,24 196:19
  249:18,20,22,23
  250:1,2 255:4
  259:23 260:1,4,11
  261:20 264:18
  265:4 287:18
  301:8 304:3
  307:22 315:3
  323:24
**Charlton's** 66:11
  71:5
**CharltonHolding...**
  3:16
**chart** 5:7 169:3,4
  175:4,20 176:24
  177:10 198:3
  205:6 207:4 218:2
  223:6
**charts** 209:10
**chasing** 31:19
**cheap** 257:19
**check** 24:9 26:11
  27:7 28:23 29:9
  37:19 141:16
  191:15 193:6
  210:2,13 229:16
  231:14 232:19
  234:1

**CHG** 16:22 18:15
  18:16,17,23 20:22
  82:6 193:12,13,15
  193:22 194:1,17
**CHG-000008** 5:13
**CHG-8** 186:11
**chicken** 215:20
**Chief** 3:17 41:15
**chocolate** 155:1
**Chris** 317:2
**Church** 1:17
**circumstances**
  310:21
**civil** 1:4 11:13 15:1
**claim** 37:21 59:24
  60:4 61:22 74:22
  84:6 112:22
  119:22,24 120:23
**claimed** 48:1 49:2,9
  49:10,22 50:19,22
  51:4,6,14 52:7,16
  54:4 55:1,5,6,12
  55:21 61:20
**claiming** 48:21,23
  48:24 52:1 56:13
  56:24 58:8,20,22
  59:8 60:20 62:11
  63:2 262:5 300:21
**claims** 282:18
  313:17 314:2
  322:14
**clarification** 213:18
  283:16 301:14
**clarify** 199:14
  213:15,22
**classic** 163:15
  180:21 181:7
  283:8,23 284:15
  288:16
**cleaner** 125:12
**clear** 10:20 98:13
  129:11 210:8
  275:19
**cleared** 94:3
**clearer** 10:8 90:15
  299:1
**clearly** 11:1 94:20
  129:12 294:24
**client** 16:14 17:16
  18:12,18,18,23
  19:13,18 30:15,19
  39:5 41:5 57:17
  70:3,20 72:19
  75:10 76:23 82:6
  83:8,8 84:10 93:6

93:6 95:18,21
  96:3 106:23,24
  107:10,12 108:7
  108:20 110:11
  117:9,11,17,24
  118:2,3,5 135:19
  136:6 137:14,22
  142:14,15,17,18
  143:17 145:9
  146:1,11,11 151:1
  157:3,6 158:7,21
  159:22 160:1,8,12
  160:20 161:2
  176:7 184:18
  186:9,16 187:7,9
  187:14 191:5,19
  193:21,23 195:15
  197:4,5,15,16
  198:12,17 212:4
  212:24 216:14,22
  217:1 224:23
  229:8 236:11
  237:5 240:14
  243:24 249:7,17
  250:15 255:15
  256:1,3,5,6 262:7
  286:1 292:21
  294:9 307:21
  309:13,15,19,22
  314:23 315:19
  316:8,9 318:16
  319:4,14 320:2
  325:19
**client's** 31:7,14
  74:17 135:5 142:6
  176:7 198:8 219:7
  233:20,22 235:17
  309:19 310:2,3
  312:3
**clients** 150:3 265:24
  267:3,11
**clock** 36:2
**close** 203:5 214:22
  218:4 222:20
  223:1,8 257:17,17
  258:12
**closed** 260:6
**closing** 323:17
**Cloud** 31:10,15
**Club** 1:17
**Co's** 250:24
**co-mingled** 176:9
**coffee** 238:5
**collateral** 21:5
  114:21 115:2

116:7,22 117:5,7
  117:9,18 118:1,6
  159:22 166:20,22
  212:9,12 213:12
  214:3,6 215:23
  216:5 258:7,7
  259:9 262:6,10,11
  262:13,16 263:5,8
  264:21 266:12,19
  267:2,8,10,13,14
  267:18 268:3,6,16
  280:23 292:7,13
  292:19 293:3,4,14
  293:17,18 294:6,7
  294:14,17,23,24
  295:5,8,19 296:8
  297:9,24 298:1,3
  298:6 299:24
  300:5,5 301:6,17
  302:19 303:5,15
  303:21,23 316:14
**collect** 316:3
**collected** 315:21
**color** 274:7 276:12
  276:13 290:4
**column** 173:1 328:7
**combined** 219:16
**come** 39:13 70:12
  71:4 110:8,12
  116:21 117:4
  122:15 133:12
  170:3 173:17
  190:16 216:6,20
  282:3 285:3,5
**comes** 29:4 219:12
  242:19
**comfortable** 188:9
  188:14 194:10,11
  194:12
**coming** 35:15 242:1
  312:19 316:13
**commencing** 1:18
**commentary** 303:4
**Commercial** 239:19
  240:2,3,6,7,16,24
  241:2,3,22 242:6
  244:23 245:2,21
  250:23 251:3,22
  252:5
**commission** 327:22
  330:20
**commissions** 315:22
  316:4,10,21
  317:10
**commitments** 150:3

Case 2:22-cv-00688-JMY    Document 200-1    Filed 10/01/24    Page 91 of 412

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:22-CV-0688 (JMY)              Deposition of Manfred Sternberg, Esq.              February 7, 2024

Page 335

150:6
**committee** 56:2,5
  165:20
**common** 94:5 99:11
  99:23 102:3 106:6
  107:4 108:8 146:4
  147:14,22 148:5,8
**Commonwealth**
  1:19 327:5
**communicate** 150:2
**communication** 7:7
  46:3 305:5 312:18
**communications**
  76:2 150:14
  312:10
**company** 31:9 53:4
  75:5 83:9 121:2
  127:22 128:21
  159:21 189:12
  190:14 191:16
  193:7 240:3 241:9
  241:10 257:2
**competently** 85:12
  86:4,5
**complainant** 40:2
  55:10
**complained** 58:16
  58:19
**complaint** 3:12 7:13
  22:10,24 23:2,4
  24:12,13,22 26:2
  27:3 39:22 40:4,8
  40:13 41:18,24
  42:4,8,9,11 43:11
  48:6,10,19,21
  49:9,10,17,23,24
  50:1,2,10,19,21
  51:1,10,14,16,16
  51:17,18 52:1,17
  52:18 53:2,7 54:3
  55:20 56:1,12,15
  56:17,19,21 57:2
  57:3,7,11,22 58:7
  59:4,6,10 60:1,8
  61:19 116:24
  118:2 151:8 256:6
  313:21 324:7
**complete** 23:22
  117:23 212:15
  215:22 217:16
  235:23 247:13
  259:12,14,18
  310:11
**completely** 11:6
  61:15 143:11

215:11
**complied** 184:12
**complies** 18:4
**comply** 84:21
**computer** 205:10
**computer-aided**
  327:13
**conceal** 312:9
**concerned** 311:10
**conclude** 301:7
  321:11 322:8
**concluded** 301:16
  305:10
**conclusion** 7:7
  84:16 95:14 104:3
  104:5 305:4
**condensing** 114:16
**conduct** 323:2
**conference** 39:21
  39:24
**confidence** 219:3
**confidential** 39:13
  39:14
**confidentiality** 41:6
**confirm** 135:4
  141:21 145:3
  223:18 224:10
  243:11 266:10,18
  267:1
**confirmation** 83:16
  244:3,4
**confirmed** 144:1
  266:13,18 305:11
**confuse** 88:22
  189:11 195:10
**confusing** 56:19
**connected** 242:3
**connection** 18:19
  18:20,21 20:10
  22:20 46:22 69:8
  69:11 72:1 86:11
  86:13,19 200:7
  308:2,10,13
**consent** 141:10
**consider** 246:7
  299:19
**consideration**
  315:11
**considered** 49:18
  51:11 300:1
**consistent** 98:3,6,9
  99:1 100:24 101:6
  102:19 145:12
**constantly** 210:24
**constitutes** 59:21

140:22
**constraint** 9:20
**contact** 136:16
  138:4 144:17
  147:21 150:14
**contain** 92:16
**contained** 162:24
**containing** 3:11 4:7
  5:8,16 7:5 47:2
**contains** 306:6
**contemporaneous**
  101:12 153:18
  197:12,20 248:14
**contemporaneously**
  94:11,16,21 95:12
  96:7 97:13,18
  98:20 99:6 100:7
  101:2 102:7,15,20
  104:23 105:12
  145:21 153:16
  154:5,13 191:11
  193:9 194:15
  237:6
**context** 193:12
  274:5 275:9
  280:14 302:1
**continued** 4:1 5:1
  6:1 7:1 152:13
**continues** 137:9
  138:1
**contract** 31:9,12
  53:8 54:12 55:2
  55:13 56:5,8
  59:11 62:7,13
  63:5,13,20 64:23
  66:10 72:11 84:22
  85:15 87:18 89:5
  89:7,22 91:22,24
  92:3 93:1 105:17
  108:24 135:13,13
  135:15,21 136:7
  136:22 152:14,15
  152:20 153:11,12
  154:20 155:20
  157:11,18 255:13
  255:14,16 320:24
  321:7
**contracted** 309:1
**contracts** 32:3
  155:8 309:23
**contrary** 306:12
**control** 216:13,15
  216:17
**controlled** 16:19
  316:7

**conversation** 85:23
  119:9 140:1
  144:14 193:17
  296:4 314:22
**conversations** 71:16
  138:18 194:9
  196:14
**convicted** 33:15
  184:20 191:14
  194:12 243:18,18
**coordinate** 106:5
  107:3
**coordinating** 108:7
**copied** 150:20 287:8
**copies** 27:13 37:13
  40:8 238:18
**copy** 13:20 14:1
  22:10 23:5,22
  24:8,21 25:17,19
  25:21 26:2,3,10
  26:18 27:2,14,18
  29:22 30:14,22,24
  31:5 40:3,5,10,13
  40:14 43:16,22
  44:3,17,21,23
  47:1 48:2,22 49:3
  49:10,22 50:20
  51:5,7,12,15,20
  52:2,8 53:3,8 54:5
  54:11 55:2,9,22
  56:14 57:1,21
  58:3,9,22 59:8,11
  60:7,14,18,20
  61:11,12,15 62:7
  62:13 63:4,12,19
  63:20 64:22 124:6
  124:7,17 125:12
  127:11,14 130:9
  130:13,16,21
  139:14 147:4
  148:4 149:2
  150:22 152:19
  156:3 162:20
  172:8 181:19
  318:15 323:22
  324:6 325:14,18
  325:22
**copying** 124:21
  150:9
**Corba** 172:20
  314:18
**corporate** 121:20
  190:13 191:2
**corporation** 240:8
**correct** 12:3,8,12,13

13:5,8 18:24 19:4
  19:9 22:10,17,24
  23:5 24:7,18
  27:17 28:5,6,8,11
  28:12 29:23,24
  30:23 31:6,7,16
  32:5 33:16 34:11
  34:16 37:17,24
  38:7 41:9,11,22
  43:7,17,18,23
  44:23 45:8,16,23
  46:15,19 48:2,22
  49:4,11 51:2,5,22
  52:3,9,12 53:12
  53:17 54:6 55:4
  55:22 56:14 57:24
  58:23 59:5,14,19
  59:20,22 60:3,6,8
  60:21 62:9,10
  63:14,22 65:21
  67:2 68:22 70:6
  70:10 71:21,23
  72:2 73:9 74:3,24
  75:6,7,9 76:15,17
  76:18 77:20 78:8
  78:10 80:24 82:11
  82:12 85:20 87:14
  88:16,17 89:12,21
  91:13 92:8,11,20
  92:24 93:5,8,16
  93:19,20,24 94:1
  94:13,18,19,23
  95:4,5,9,10,20
  96:8,12,21 97:5,6
  97:14,19,20 98:1
  98:2,4,5,7,8,10,11
  98:14,15,21 99:2
  99:7,11,17,18,22
  100:10,14,20,21
  101:3 102:21
  103:18,19,21
  104:18 108:15
  109:10 111:16,18
  112:15,16,19
  113:16,22,23
  114:17 115:1
  117:20 121:5,16
  122:2 123:2 124:9
  124:22 126:13,20
  126:24 127:14,24
  129:6,14,19
  131:22,23 132:3,5
  137:3,21 138:8,9
  138:10,11 142:12
  142:18,19,21

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 92 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 336

143:22 144:24
146:12,13,16,17
147:2,6 148:9,16
148:17 149:10,11
153:15,21 154:2
154:13 156:7,8,9
156:11,14,16,17
158:4,5,17 159:7
159:11,14,19
162:2,3 169:14,24
170:5,23 172:12
173:1 174:1,9
175:21,22 176:11
176:16,17,19
177:9,15,17,18,24
178:1 181:3,14
183:2 187:7,8,15
187:19 189:9,22
189:24 191:24
192:5,6,21 193:1
193:11,24 195:2
195:13,14,17,20
195:21 196:11,13
196:14,21 197:22
198:3,9 207:12,14
207:14 208:12,14
211:18 212:7
213:3 214:8 215:3
219:20 223:11,21
223:22 224:13,14
229:8 231:4 232:9
233:14 234:4,5,14
234:15,18,21,24
235:1,2 236:5
239:1 240:17,18
241:21 244:5
245:2,3 250:13
251:1 253:20
254:17,20,21
255:6,8,20,21,23
255:24 262:7,18
264:4 285:2
289:24 296:1
301:3 306:9 309:2
309:8,21 310:1
311:16,18 319:6
320:11,23 321:3,5
321:7,24 322:5,12
322:13 323:22
326:8 327:15
330:6

**corrections** 330:8
**correctly** 52:6
89:14 136:18
301:11 327:11

**correspond** 172:23
**corresponded** 75:17
**correspondence** 7:6
150:12 305:3
**corresponds** 173:9
175:19 177:5
220:19
**Cortiz** 317:2
**counsel** 3:18 7:15
9:7,17 12:2 41:15
62:6,6,9 64:20,22
86:17,23 141:21
143:4 171:12,15
171:23,24 238:11
299:17 312:17
318:22 320:3
323:21 325:13,24
327:16
**counsel's** 248:19
**count** 143:16
**Countinho** 317:6
**country** 1:16 297:8
**County** 38:12,15
220:19 221:12
222:3
**course** 10:19 13:2
237:21 303:5
**court** 1:1,22 9:1
10:10 11:15,21
34:21 50:19 51:17
51:19 52:1,4,12
52:17 53:6 55:1
57:2 62:21,24
103:20 105:7
184:8 213:17
224:6 254:8
283:15 291:7
310:23 323:23
325:8,13,17
**courtesy** 141:23
**courts** 155:2
**cover** 155:8 199:2,5
199:17,18 211:16
**Covid** 69:4 112:10
165:13 302:21
303:23 307:23
319:4
**Covid-19** 5:6
143:16 156:19
299:12,16
**create** 66:1 67:1,4
67:20 68:2,18
**created** 65:17,20,23
66:3,4 67:7 68:11
92:16 107:20

108:7 169:4
197:18 234:9
297:2 304:2
**creates** 237:3
**creating** 16:7,11
67:13,14,16,19
68:2,16 280:9,24
**credibility** 144:10
**credits** 238:21
241:5
**criminal** 11:13
134:24
**cure** 180:24
**cured** 283:9,24
284:16
**custody** 293:20
**customers** 121:1
155:9 179:3
280:21 302:23
**cut** 279:21 290:10

─────── **D** ───────

**D** 5:13 94:4 121:24
121:24 122:11,23
122:24 124:1,12
124:22 126:3
127:13 128:7,23
130:3 131:5 196:8
197:24
**D'** 121:21
**d/b/a** 1:4
**Dallas** 322:4
**damages** 157:23
158:7,15 182:7
210:23
**Dan** 4:7,14,16 41:18
59:17 85:6 119:16
133:23,24 134:16
134:18 135:6,20
136:21 149:5,9
150:17 152:1,8
168:3,16
**dance** 180:9
**Daniel** 2:21 44:10
226:8
**Daniel's** 226:21
**Daphna** 1:12 2:18
22:15,19 25:23
177:7,13 178:14
180:17 184:12,14
198:5,7 202:1,16
203:8 204:24
205:20 206:5,8,24
207:8,11,23,24
208:20,21,23,24

209:3 235:10
254:19 318:10
324:2
**data** 312:13
**date** 25:18 48:13
49:24 50:8,14
54:17 55:1 59:10
156:10,23 157:2
161:1 169:9 236:1
265:15,17,18,19
287:17 307:8
315:1 328:12
330:13
**dated** 3:15,17,20,21
4:6,9,12,14,15,18
4:19 5:17 6:11,18
6:21,23 7:8,11
28:4 69:21 112:18
139:13 149:9
186:6 261:17
287:18 298:18
302:16 306:22
307:13 317:21
**dates** 304:9
**daughter** 251:18
**David** 69:12 71:9
71:11,14,16 72:12
72:15,17 324:12
**day** 35:3 81:13
115:4 144:24
145:1 146:24
171:17 172:19
184:3 250:14
256:4 267:17
295:20 301:2
306:17 318:7
330:18
**days** 149:23 180:8
312:19 314:16
328:18
**deal** 7:7 69:1 72:19
85:3,7 181:16
183:22 189:17
191:1 208:1 209:3
210:22 212:23
218:7 295:24
300:14 305:4,9
**dealing** 148:13
165:21 186:23
189:14
**deals** 69:3 78:17
179:23
**dealt** 166:11,13,17
189:18
**Dear** 280:2,5,8,16

302:17
**dearly** 297:18
**debits** 239:21
240:23 241:7
**debt** 266:1
**decide** 259:1,4
303:22
**decided** 228:17
229:1
**decision** 21:5
192:16 198:2
**declaration** 120:4
120:15,20 161:16
162:2,5,9,11,16
162:21,23 163:19
164:8,24 265:11
**deduct** 197:15
**deemed** 301:15
**defendant** 12:6 15:2
227:5
**defendants** 1:14
2:11,17 3:9 12:10
27:2 48:15,16
52:24 54:19,20
175:13 323:24
**defended** 35:3
**define** 78:1
**defined** 80:1
**defines** 95:6
**defining** 77:19
**defrauded** 155:3
267:16
**Delaware** 146:8
**delay** 164:17
**delays** 280:21
**delete** 142:4 143:3,4
288:23
**deleted** 46:21,21
**deliver** 31:20 32:5
35:14 94:5,6
106:7 107:4 108:8
108:15,21,21
109:9 110:9 113:3
112:31 114:4
115:19 150:4
155:7 158:4 181:1
198:19 258:6
276:18 278:3,8,16
280:20 285:9,15
289:21 290:2
298:7
**deliver(ed)** 147:14
**delivered** 32:21
38:10 99:23 102:3
109:19 110:2,7,7

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 93 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)              Deposition of Manfred Sternberg, Esq.              February 7, 2024

Page 337

110:11 159:6,18
160:3 161:2 199:3
223:20 224:12
242:18 285:19
286:13
**delivering** 34:14
144:18 168:17
226:11
**delivery** 5:19
143:20 144:5
152:3 156:23
157:2 160:9,10
218:16 219:22
248:14 257:18,19
280:24 283:9,24
284:16 285:6,7
315:10,18 319:14
**demand** 299:23
307:21
**demanded** 263:8
322:21
**demands** 299:21
320:3
**denied** 68:8
**deny** 119:21 147:24
202:21,21
**denying** 42:23
209:22
**Department** 127:20
**depends** 310:18
**deponent** 11:9
327:8,11 330:1
**deponents** 15:2
**depose** 60:9 83:20
**deposed** 12:14,22
139:1 208:4
**deposing** 96:4
328:18
**deposit** 125:5
129:18 130:5,12
132:8 184:2 236:5
238:24 315:17
**deposited** 308:3,14
320:4,14
**deposition** 1:16 8:1
9:2 13:21,21 14:5
14:8 15:3,6,14,15
16:2 21:20 22:9
26:3,9,13 27:21
28:2 38:23 48:6
65:12 66:6 69:15
69:19 85:8 109:4
125:15 127:12
128:6 133:3,21
138:22,24 146:19

149:2 151:20
155:22 161:21
163:13 167:10
168:23 171:10
175:5,20 182:21
186:3 187:5
196:18 199:10
201:12 205:3
209:17,20 211:17
213:10 220:9
253:5 254:2
256:11,18,19
257:14,24 283:17
300:20 302:15
307:12 326:3,12
327:14 328:5,15
**Depositions** 3:8
**deposits** 231:19
238:20 241:5
**described** 110:1
227:2
**DESCRIPTION**
3:7 4:4 5:4 6:4 7:4
**designate** 14:19
**designated** 12:7
14:20
**desk** 302:16
**destroy** 140:18
312:9
**destroyed** 140:15
**Details** 5:10
**determine** 197:2
**devil** 204:3,11
**diamond** 32:18,23
33:6,8,10,12,14
34:1 178:21
183:22
**diamonds** 32:20
33:9,16 114:15
115:5 116:6,14
117:19 212:3
299:15
**Dick** 316:22
**difference** 67:11,12
67:15,18 186:24
222:1 256:18
**differences** 256:21
**different** 32:23
56:18 57:11 68:20
86:23 124:19
131:20 138:18
165:22 276:13
288:8 289:11
325:9
**diligence** 183:4

187:14 237:8
243:21,23 247:8
247:12,13
**dime** 180:4,5
**dinner** 21:14 34:24
**direct** 75:4 76:3,14
150:14 291:13
316:9
**directed** 94:7 229:8
230:13 301:5
316:8
**Direction** 8:3
**directive** 303:20
**directly** 35:22 78:6
78:20 79:6,12
82:11,17,20 83:10
84:15 176:21
191:9 249:24
252:13 260:10
**disability** 10:23
**disagree** 41:11
102:22 154:14,15
154:15,23 231:6
**disagreed** 232:19
**disburse** 96:10,13
96:19 97:3 198:14
310:5,20 311:14
**disbursed** 95:23
145:7 198:17
309:1
**disbursement** 95:2
235:24 310:16,21
**disbursements**
233:13 234:7
235:16,20 236:10
309:7,17 312:4
**disciplinary** 3:18
40:4,13 41:15
57:3
**disclaimer** 88:8
89:18
**disclaimers** 88:10
**disclose** 117:16
118:4 176:15
**disclosed** 40:23
41:2 200:18
**discloses** 89:15
**disclosure** 87:11,23
88:12 89:10,18
93:8 176:5
**discovery** 15:12,14
40:11,16 133:13
162:21 313:9
**discuss** 301:14
**discussed** 147:5

297:7
**discussion** 26:6
27:11 47:22 87:5
168:8 206:14
318:15
**discussions** 114:8
114:11 188:9
**Dismiss** 27:2 44:3
**dispute** 18:19,20
20:11 21:2,12
22:21 46:22 136:1
136:5,20 137:1
142:5,14,17
160:18,23 161:3
228:8 234:13,16
234:19 235:3
263:10 309:18
310:15,19 319:2
319:19 320:11,22
321:1,3 322:11
323:5
**disregard** 311:15
312:4
**disregarded** 312:6
**dissipated** 201:3,4
**Distance** 124:13
**distributed** 177:23
**District** 1:1,1 38:12
38:15 219:24
220:24 325:8
**docket** 23:17
139:17
**doctored** 262:3
268:23
**Doctrine** 142:11
**document** 3:13 4:7
5:5,8,15,19 7:5
13:3,8,13 23:3,11
24:13 26:21 27:1
28:11,15 40:6,22
43:21 44:7 45:10
65:20 66:3 67:2
70:17 74:11,17,20
79:7 87:13 89:14
119:3 122:24
123:1,2 124:2
125:11,12,21
127:12 128:16
133:15 151:24
154:18 162:14,14
185:7,9 186:13
187:5 189:2 190:2
190:3,8 191:17
197:18 200:21
202:18 221:20,24

225:23 234:9
241:1 243:14
262:3 264:12
269:2 270:22
272:6,7,9,14
277:4,5 282:10
283:14 289:11,12
289:13,15 291:12
303:11 304:8
323:9,12
**documentation**
184:23 187:15
188:10 192:4
225:1,6,9,10,18
229:11 244:3,11
244:16,18,20
245:8 246:8,13
**documented** 120:12
**documents** 3:9 5:20
6:5,7 8:7 13:11
14:5 15:4,9,11,13
15:15,17,22,23,24
17:6,12 37:21
40:11 65:4 66:19
77:7 110:23
137:15,18 140:4
149:21 162:21
171:12 184:15
185:11,13,14,15
187:24 189:1
192:15 194:16,21
195:1,18 196:4,9
196:10,13,16
198:1 199:4
200:22 202:18
209:7,9 212:11
231:15 234:12
236:7,24 237:9,24
239:12 274:10
275:3 276:9,10
302:7,9 305:17
306:2,5,6 312:10
313:6,8,14
**docusign** 164:13
**doing** 22:11 154:10
237:7 245:3 258:8
270:10 279:23
**dollars** 78:3 134:22
155:11 310:8
**door** 39:18
**DOT** 127:20
**doubt** 172:5
**dozen** 230:20
**draft** 68:19 88:20
**drafted** 66:10 67:7

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)              Deposition of Manfred Sternberg, Esq.              February 7, 2024

Page 338

67:10 68:2,4,22
74:14 90:22 91:9
92:11,15 101:7
106:11,15,22
107:21 108:11,12
108:13 120:4
162:24 164:8,24
197:19
**drafting** 67:16,20
67:24 68:7
**drafts** 237:4
**drank** 11:19
**draw** 11:15,22
**drink** 11:19,23
**driving** 294:22
**drugs** 10:23
**due** 9:18 112:24
117:3 183:3
187:14 237:8
243:21,23 247:8
247:12,13 301:16
302:18,20 303:1,2
303:18,19
**duly** 9:12 327:9
**dump** 257:19
**duplicative** 139:9
**duties** 81:16
**duty** 80:3,10,13,17
84:6,8,10,12,19
84:21 89:18 90:8
90:24 91:7,21
92:5,18,24 93:3
95:7 187:20
**DZ** 204:21

**———— E ————**

**E** 88:3,17,18 97:15
97:16,20,22 99:3
99:9 102:13 327:2
327:2 329:2
**earlier** 142:1 147:9
148:12 225:9
260:3 267:17
268:1,5
**early** 163:17
**easier** 299:9
**Eastern** 1:1,18
**eat** 179:9
**ECF** 305:1
**edit** 67:10,22 68:16
**edited** 65:22,23,24
66:2,4 67:4,5 68:3
68:4 74:16 90:22
91:9 92:11 106:11
107:21 197:19

**editing** 67:12 68:1,6
**effect** 91:9
**effective** 132:24
**effort** 197:2
**efforts** 303:16
**eight** 89:1 106:18
108:6 179:21
181:17 182:1
198:14 200:16
201:1,3 211:9
**either** 19:18 20:24
29:4 45:6 49:4
90:2 103:23
104:17 109:11
110:20 111:1,6,22
113:19 168:2
171:16 181:1
187:1 191:20
231:2 310:22
**El** 38:15 219:23,24
220:23
**else's** 232:3
**email** 3:15,21 4:9,9
4:11,11,15,19,19
5:17 6:9,10,11,18
6:18,20,20,21
7:11 17:10 28:2
34:8 44:17 45:2,7
46:5,17,18 47:2
47:13,13 109:17
109:21 111:24
130:24 131:4
135:14 136:11
138:5 139:13,22
140:2 141:21
143:10 144:13,22
146:16,23 147:4,7
147:24 148:3,10
148:10 150:10,12
150:20 152:1
154:23 163:12,16
166:12,14 194:6,7
194:8 201:24
202:4 209:24
210:5,11 214:10
214:15 217:1
222:11 225:9
232:3,7,13 257:13
261:16,16 263:1
263:17 267:5
281:8 287:22
298:18 300:8
301:3 312:21
317:23 318:10
319:23 321:2

322:12 325:17
**emailed** 34:8 206:17
**emailing** 279:22
**emails** 7:10 46:22
138:10,17,21
178:16 264:23
265:8 287:24
305:13,17 312:11
**embezzlement**
33:16 243:19
**en** 109:18
**ended** 36:7 141:22
226:24
**ends** 166:14 204:13
**engage** 34:1,4
**engaged** 17:15 33:2
33:4 108:21
118:12
**ensure** 55:14
**ensured** 55:17
**entered** 80:18
307:22 315:8
**Enterprises** 1:4
22:11
**entire** 87:18 158:1
210:22 237:19
**entirely** 134:10
**entitled** 5:5,19 7:5
157:22 239:7,9
**entity** 190:19,22
301:7 314:1
**entries** 219:15
238:23
**entry** 244:19
**Environmental** 1:4
10:4 22:11
**equally** 47:5
**equals** 102:6 178:4
**equipment** 34:6
**errata** 328:7,10,11
328:14,17 330:10
**escrow** 5:6 31:3
71:20 72:8,13
74:2 77:8,13 78:4
78:19 79:5 80:11
80:16,17,22 82:10
82:17,21 83:4,15
91:6 92:4,17,20
92:21 93:15,18,22
94:18,24 95:3,7,8
95:17 96:6,11,13
96:20 97:4,9
107:1 137:13,19
144:3,5 145:5
147:13 158:9,19

171:20 174:14,24
175:16 176:16
177:21,24 181:17
182:1 192:17
198:15 199:6,8,12
199:17 200:6
203:3,10 223:17
224:9 232:16
233:4,7,10,14,21
235:6,23 236:1,3
237:5 238:12
240:14 241:19
242:1,3,7,8 243:3
246:1,19 248:12
248:13 249:10,14
252:13 284:23
309:17 317:14
**Especially** 282:23
**Esq** 1:8,16 2:8,11
2:14,18 6:12,19
7:9 9:11 264:20
301:5,17 302:19
315:4,13
**Esquire** 1:12 2:3
139:17 156:13
261:22 263:7
**establish** 23:18
111:12
**estimate** 4:5 124:14
126:10,10,17
127:3,14 129:13
129:16,23 130:18
130:20,21 132:3,4
185:16 189:6
190:4 192:13
194:24 196:2
**estimates** 185:2,3
**et** 4:10,13,16,20
6:19 7:12
**ETSI** 40:6,7
**events** 11:1
**eventually** 116:5
**Everwin** 70:4
**Everybody** 227:12
**evidence** 64:16
103:24 140:15,18
140:22 143:10
192:24 193:4,5
194:1 225:1
229:11
**evidences** 48:15
54:19 103:5,7,14
**evidencing** 184:15
185:9 187:15
195:1,19

**exact** 223:2
**exactly** 31:24 35:12
140:9 179:19
184:8 271:20
290:6 323:4,7
**EXAMINATION**
9:22
**examined** 9:12
**example** 109:20
**Excerpt** 5:11
**excess** 117:19 118:6
**exchange** 4:7
133:22 201:24,24
268:22 272:1,23
**exclamation** 34:11
34:12
**exclude** 205:24
**excuse** 34:20 45:17
54:23 91:5 107:20
107:22 117:9
121:15 158:14
178:17 188:17
192:8,11 197:18
201:24 204:1,4
220:22 230:14
235:8 237:3 245:1
259:15 266:23
269:3 277:8 285:5
294:7
**excused** 326:11
**excuses** 164:2
165:12,24
**executed** 29:18,23
30:14,22 31:5,9
32:3 43:10,16
44:2,21,22 48:2
48:22 49:3,11,16
49:22 50:24 51:9
51:15,20 52:2,8
54:12 55:19 56:12
56:14 57:21 58:9
58:23,24 59:2,3,9
59:17,21,24 60:13
60:18 61:10,18
62:7,13 63:4,13
63:19 64:22 100:3
102:5 146:1
**exhibit** 3:6,14 4:3
5:3,13 6:3 7:3
13:17 18:7 21:20
21:21 22:9 23:4,6
23:9,19 24:6,17
26:2,13,14 27:14
27:21,22,24 28:2
38:23 39:1,3,12

Case 2:22-cv-00688-JMY    Document 200-1    Filed 10/01/24    Page 95 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 339

43:15,19,20,22
44:1,6,14 48:6
65:12 66:6 69:15
69:16,19 87:17,19
87:20 88:3,7,17
88:18 93:16,19,21
93:21 94:4 97:15
97:16,20,22 99:3
99:9 102:13 109:5
112:15,17 121:5
121:21,24,24
122:6,11,11,15,23
122:24 123:2,19
123:23,24 124:1
124:12,22 125:8
125:14,15 126:3
127:13 128:7,23
130:3,13 131:5
133:3,4,22 134:9
138:22 139:4
146:19,20 147:4
148:23 149:3
151:20,21 155:22
155:23 161:21,22
167:10,11 168:23
168:24 169:18,21
171:7,10,23 174:4
175:5,7,20 182:21
185:21,22 186:3
187:5 189:19
196:8,8,18 197:23
197:24 199:10
201:12,13 205:3,4
206:11 209:14,17
209:20 211:17
213:10 218:11
220:6,9,10,12
221:7,12 238:9
250:4 252:20
253:15 254:3,12
256:11,19,19
257:14,24 260:22
263:13 264:8
266:3 283:14,18
283:19 298:14
299:2 300:20
302:12,15 304:21
306:19 307:13
313:3 323:15,20
323:22
**exhibits** 3:7,19 4:1
4:4 5:1,4 6:1,4 7:1
7:4 26:18 39:13
90:6
**existing** 155:9

190:14
**expect** 143:20
**experience** 33:11,13
189:10
**expiration** 161:1
**expire** 161:3
**expires** 327:22
330:20
**explain** 30:9 77:22
170:9 263:2
280:13 291:1
298:3
**explained** 30:11,11
**explains** 228:17
**explanation** 47:6
82:8,13,15 145:12
199:14
**extemporaneous**
166:16
**extortion** 136:12
**extra** 178:13 222:2
**extremely** 297:23

——————————————
F
——————————————
**F** 327:2
**fabricated** 271:21
272:5,6 300:18,21
303:9 304:8,15
305:18
**fact** 11:23 41:17
42:16,20,24 43:1
53:19 63:14 89:14
110:1 128:11,23
134:2 142:16
151:1 301:16
302:20
**facts** 85:16 136:5
148:20 182:11
217:21 222:12
301:4,4 315:5
318:5,6 319:3
321:18
**factual** 84:18 85:2
86:2 113:16,17,18
**factually** 187:22
**failed** 15:16 51:3,8
56:23 115:20
150:1
**failure** 150:5
**fair** 57:15 61:24
74:15 134:15
202:14 270:8
326:9
**fairness** 49:17,19
51:10 117:23

**fake** 140:10 212:21
276:9,10 286:12
302:9 303:11
304:19 305:13
306:2,4,5,6,15
**false** 30:4,6 64:5
315:23
**falsehoods** 162:24
**family** 240:4,6
241:10 251:15
**family-owned**
251:11,13
**far** 10:20 19:11
162:16 163:20
183:19 233:5,6,7
287:1
**Fargo** 176:18
**Farmingdale**
126:19
**fashion** 150:5
**fault** 112:24 165:16
281:9,10
**favor** 40:1
**favorites** 167:13
292:3 295:11
**fax** 28:18
**FBI** 118:12,22,24
119:11 140:10
**Feb** 6:6,6
**February** 1:17 25:6
25:22 30:3,21
31:4 49:1 50:1
51:19 52:1,12
54:4,24 85:20,24
86:15 87:2,8
92:14 109:21
120:23 132:21
133:23 134:1,6,19
137:6,11 139:14
149:9,19 151:2,2
151:3 152:4,18
176:18 177:8,12
177:16 178:3,9,14
178:15 180:7
181:15,21 183:1
195:24 203:17,20
206:20,20,21,22
233:12,16 235:8,9
253:19 254:4,16
254:19,19 255:18
287:19 304:3
306:23,24 307:13
307:21 308:23
**February-March**
299:13

**federal** 14:24 50:19
51:16,19 52:1,4
52:11,17 53:5
55:1 118:12 202:6
204:7 306:2
**Fee** 16:23 17:20
**feel** 311:10
**fees** 317:11
**felon** 184:20 191:15
194:12 243:18
**felony** 33:15
**felt** 180:11 188:9,14
**fictitious** 286:12
**fide** 286:8,10
**fiduciary** 84:6,8,10
84:12 90:7,8,24
91:6,13,21 92:5
92:18,23 93:3
95:6
**Fifth** 11:10,14,17
11:21
**figure** 205:11 212:8
270:18
**figures** 234:11
**file** 24:5 52:4
134:23 135:9
**filed** 13:7 22:10
23:2,10,18,22
24:23 26:21 27:3
39:22 42:1 43:11
44:2 48:7,19,20
49:1 50:1,18
51:13,18,24 54:3
54:24 56:15 57:2
57:2,7 58:15,18
59:4,6,10 60:1
117:12 139:18
236:15 305:2
323:23 324:7,10
**files** 312:13
**filing** 50:20 53:2
55:1 118:11 305:1
305:2
**fill** 225:3
**finally** 47:4
**find** 50:7 112:4
123:16 134:11
190:20 209:6
215:16 252:9
280:22 288:20
289:2
**fine** 40:19 215:5
**finish** 25:9 28:22,24
29:2 58:14 66:23
66:24 67:1 74:14

131:17 175:3
183:9,14 296:14
298:13
**finished** 16:6 72:5
323:8
**firm** 10:2 17:15
22:13,20 55:3
66:9 75:3,14 77:9
77:20 91:20
141:20 144:2
145:3 307:16
324:8
**firm's** 89:21
**first** 3:12 6:9 7:5
9:12 11:4 14:9
18:10 22:10,23
23:15 24:13,22
29:16 33:1 39:19
48:9 64:17 73:22
85:23 90:10
101:18 110:9,17
125:1 131:3,9
135:7 138:12
144:23 151:6
162:13 169:6
171:10,13,19
172:10 178:2
182:23 188:17
199:24 228:10
261:7 266:8 288:3
299:10 318:20
**five** 30:1 34:11
40:20 88:24 93:12
98:22,23 99:16,20
100:9,17,22 101:6
102:14,17 121:10
121:13,16 135:6
177:24 199:8,9
200:5,15 236:4
317:18 323:10,10
**flags** 189:12
**flight** 323:11
**flip** 23:19
**flow** 5:7 169:3
205:6
**focus** 238:4
**focused** 238:7
**Foley** 228:3,7,8,9
228:12,14 229:9
229:16 256:12,12
**follow** 17:6,10
163:9 194:6
227:24 270:4
311:4,11
**follow-up** 272:14

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 96 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 340

followed 194:8
following 14:11
  32:2 63:1 81:10
  105:8 224:7 311:6
  328:10
follows 9:13
force 294:22
foregoing 330:4
forget 120:13 275:2
  277:1
forgot 16:4 211:16
  285:10
form 9:8 15:18 30:5
  37:8 43:3 45:18
  47:7 65:17,20
  66:14 68:15,22,24
  69:3,7,10 70:8
  74:16 78:21 80:5
  88:21 108:2
  111:11 128:9
  158:10 159:2
  224:18 228:19
  302:20 308:18
  330:8
formal 136:16
format 312:14
formed 191:16
forms 67:21,22
formulate 297:6
forth 77:20 82:23
  97:24 197:18
  198:3 221:7
  303:20
FORTY-FOUR
  310:7
FORTY-NINE
  310:6
forward 144:19
  299:6
forwards 298:18
  318:14
found 40:1
four 15:4 25:22
  30:20 31:2 37:20
  38:21 40:20 88:24
  98:12,22,22,23
  99:14,20 100:9,17
  100:20,22 101:5
  102:13,18 131:20
  176:15,15 177:23
  206:1,23 223:14
  224:17 236:5,10
  285:19 286:7
  310:6,7
fourth 66:7 218:21

fraud 180:22,24
  181:7 239:14
  282:18,19 283:8
  283:23 284:15
  286:12 287:9
  288:16 306:15
  314:9 321:20,21
  321:24
fraudulent 160:21
  160:22 321:11,17
  322:9,24
fraudulently 181:5
  181:5 198:11
Frazer 316:24
French 204:4
Friday 123:17
  209:6 213:8
  282:23 284:3
  291:3
friend 210:16,20
friends 210:17,21
front 11:20 44:8
  65:12 79:22 125:8
  290:22 291:6,7,7
fruition 70:13
fucking 34:18 204:5
  204:12
fulfill 223:11 247:9
fulfilled 227:15
fulfilling 81:16
  309:23
full 26:10 137:20
  205:10 214:23
  217:16 255:3
  299:16,19,22
  300:1 325:22
fully 10:13 11:6
  25:17,18,21 26:18
  29:17,22 30:2,22
  31:5,9 32:2 43:10
  43:16 44:1,21,22
  48:1,22 49:3,11
  49:16,22 50:24
  51:9,15,20 52:2,8
  54:12 55:13,19
  56:5,11,14 57:1
  57:21 58:9,22,24
  59:2,3,9,17,21,24
  60:13,18 61:9,18
  62:6,13 63:4,13
  63:19 64:22
  112:14,23 142:5
  152:15 178:9
  223:10
fully-executed

24:21
fund 200:7 233:14
funds 92:5,18 93:5
  93:14,17 94:3,11
  94:17,20 95:2,7
  95:12,18,23 96:6
  96:8,10,13,19
  97:3,10,13,18
  98:16,18,20 99:6
  99:9,12,19 100:8
  100:13,14 101:2
  101:10,13 102:1,7
  102:16,20,23
  104:24 105:1,13
  105:14 135:8,10
  135:16,21 136:7
  145:7,21 146:2
  147:13 153:14,17
  153:18 154:5,7,9
  154:11,12 174:11
  176:9 179:13
  182:23 191:11
  192:17 193:9
  194:15 197:5,12
  197:20 198:13,20
  199:1,16 200:7
  215:4,8,20 231:17
  231:20 232:10
  233:21,22,22
  235:17 237:6,7
  240:5 242:7,23
  246:1 249:7,11,13
  249:14,14 259:10
  259:22 260:10
  264:19 265:5
  308:24 309:4,5,7
  309:19,19,20,23
  310:2,3,6,9,14,16
  310:20 311:14
  312:3 315:12,15
  315:17,21 316:3
  320:4,14
funky 281:12
funny 105:21
  135:10 148:20
  245:6
further 14:23 39:23
  48:15 54:19 112:9
  167:7 233:13
  259:7 264:16
  299:20,22 301:13
  309:17
future 9:20 150:13
fuzzy 188:8

__G__

G 1:22
G-r-o-s-s-s 286:23
Gary 1:11 2:3 3:22
  4:10,12,20 5:16
  6:12,18,21,23
  10:2 19:13 21:5
  21:23 22:13 25:23
  26:1 32:21 33:7
  35:17,21 40:4,10
  71:4 85:13 93:8
  97:1 108:13 109:8
  109:16,21 110:8
  110:13,20 111:1,6
  111:14,17 113:11
  113:19 114:1,13
  114:20 115:1,4
  117:11,17 120:5
  122:20 124:13
  125:2,4,10 126:9
  126:18 128:3,10
  130:24 131:18
  132:6,7,9 137:7
  138:24 145:2
  149:13 150:15
  152:2 159:21
  161:15 162:1,2,4
  163:8 164:4,16
  165:7 167:17,22
  167:23 168:2,15
  169:16 170:14
  173:22 174:2,13
  176:21 178:3,5,8
  178:16 179:4
  180:7,9,16,17,20
  181:1 182:24
  183:20 184:13,15
  185:5,10,17,18
  186:17 187:23
  188:18,22 189:7
  190:2,7,21 192:5
  192:14 193:16
  195:18 196:3
  198:11 199:13
  202:5,8,12 204:7
  204:9 206:7,17
  207:8,12,13,23,24
  212:9,12 213:1,7
  215:22 216:4,5,8
  217:18 219:2
  222:23 234:20
  235:4,10 237:21
  254:18 258:6,7
  261:12,17 262:2,4
  262:21 263:17

264:2,17 265:3
  266:11,22,24
  267:20 268:2
  269:11 271:8,18
  274:8 275:1 280:6
  280:7,10 281:1,3
  281:6,14,16 284:3
  284:12 286:17
  287:8,18 292:6,15
  292:19 294:8,8,10
  294:13,17 295:3,4
  297:8 298:17,19
  299:10,11 301:2
  302:17 305:1,10
  305:17 306:3,13
  315:2
Gary's 180:12,12
  183:6 184:11
  259:9
garylightman@li...
  2:4
gem 114:14 115:5
  116:6,9,14 117:19
  159:22 167:1
  212:3,24 294:23
gemologist 32:14
  212:18
gems 216:16,17,19
  216:23 217:1,2,5
  299:15 302:20
general 76:9 218:21
Generally 138:14
George 229:18,21
  229:22
Germantown 2:4
getting 32:2 33:2,4
  35:1 91:6 103:12
  103:13 104:9,17
  104:17 190:2
  196:19 267:15
  295:8 306:8
GIA 32:11,13,18,19
  32:20 34:9
Gianforcaro 229:22
  229:23
give 11:3 30:4,6
  36:13 44:17,18,21
  49:5,6 79:21 82:1
  101:15 109:20
  114:14,21 115:5
  117:8 148:16
  158:24 159:4
  162:8 166:19,21
  166:22 181:8,9,10
  182:4 184:11

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 97 of 412

USDC, ED of PA        American Environmental Ent. v. Manfred Sternberg, Esq., et al.        Wednesday
No. 2:22-CV-0688 (JMY)             Deposition of Manfred Sternberg, Esq.             February 7, 2024

Page 341

187:23 207:23
216:8,8,9,9 217:1
217:2,5,16 230:11
230:13 256:1
265:19 271:5,12
271:14,16,18
273:23 274:5
279:12
**given** 7:6 15:23
35:4 39:12 137:7
137:20 212:3
222:23 305:4
327:15 330:6
**gives** 138:7,10
259:23
**giving** 97:10 115:2
161:19 208:6
212:8 255:12
297:8 306:2
**glad** 283:12
**gladly** 138:5
**Glen** 149:16 218:24
**Glenn** 139:14
**global** 69:12 70:1
303:18
**Gmail** 305:20 306:8
**go** 15:19 26:5 27:10
29:1 39:10 43:19
66:5 93:12 115:17
131:11 133:7
139:11 141:19
143:8,13 154:23
155:21 156:22
157:9 169:4,20
182:21 183:9,13
183:16 188:6
205:19 212:14
213:9 214:12
217:19 242:16
247:19 250:4,9
257:13,14 259:7
268:21 272:21
273:3,10 276:13
276:21 287:16
295:14 298:13
301:1 308:8 313:7
319:1
**go-to** 74:17
**God** 47:1 204:3,11
**goes** 191:8 291:23
305:12 315:7
316:7
**going** 10:5 11:4
26:8 47:8 81:15
95:22,22 107:3

115:9 122:16
133:9 134:23
161:9 162:5
165:17,19 169:4
179:5,7 180:13
184:6 185:20
217:4 237:4
247:20 253:5,7
263:3 275:19
282:7,8 284:24
287:6 288:20
290:23 291:10
307:3 308:9
314:12 323:11,18
**GOLDBERG** 2:7
**good** 10:1 24:4 50:4
68:17 161:11
166:19 182:16
191:22 210:16
217:19 295:2
318:7 327:5
**goods** 72:4,20 83:16
83:17 84:4 94:5,6
94:15 95:24 99:10
99:16,21,23
101:11,20 102:2,3
103:9,12,14,21,23
103:24 104:9,10
104:16,22 105:11
106:7 107:4 108:8
108:15,21 109:9
110:1,6,11 120:24
128:22 143:20
144:6,19 146:3,3
147:14,16 148:1
149:14,23 151:2
152:10,24 153:2,4
155:7 157:3,6
158:4 183:4,17
184:10 191:18
193:14,16 194:2
195:20 196:19,22
248:15 258:6
259:11 303:17
322:20,22
**gotten** 268:17,18
**grand** 228:18 229:1
229:7 242:14
247:1 249:1
**Graphics** 254:22
255:6 256:10
**Gray** 316:22
**green** 123:14
130:15 207:3
**grievance** 51:17

56:2,4 117:12
118:11 128:24
165:20
**grievances** 162:6
**Gross** 1:10,10 4:8
4:14 5:18 6:13,21
6:22,23 7:6 16:19
18:12,13,18 19:4
19:8 22:13 40:13
40:15 45:16 47:18
48:14 49:4 52:24
54:18 55:3 70:21
77:15 78:7 81:3
81:13 83:18 85:7
112:9 133:23
134:18 136:21
139:17 143:17
149:5,10 191:15
191:20 194:11
201:19 203:8
210:5 241:11,12
241:14,20 245:21
261:18 262:22
263:9 264:14
265:4 266:11,17
266:24 269:3,12
269:22 271:2,10
272:23 273:5
275:14 284:22
286:23 294:17
297:12 298:19
302:17 305:3,10
315:2 323:24
**Gross'** 20:3,9 44:9
47:11 53:3 70:17
274:24 288:18
304:4
**Gross/CHG** 187:16
**Grosss** 286:21
292:4
**group** 1:9 4:16 6:10
22:13 143:18
156:16 259:23
260:1 264:18
265:4 301:8 304:3
315:3 321:10
322:8
**Group's** 250:1
**guess** 10:15 12:17
75:11 82:5 84:22
90:2 151:4 211:8
214:5 228:9
252:14 271:17
274:24 277:11
279:7,8 285:17

319:22 325:8
**guessing** 221:19
**gum** 101:15,16
**guy** 80:10 183:20
183:24,24 226:9
228:9 229:16
**guys** 152:12 155:3
163:17 178:21
280:20 284:14
298:8

———————
**H**
**habit** 161:18 306:1
311:6
**haiku** 292:6
**half** 326:6
**hand** 18:22 38:9,10
45:3 109:13 130:4
**handed** 13:20
111:20
**handing** 17:21
**hands** 101:22
**handwriting** 123:13
128:3,4,5 209:5
**Handwritten** 5:15
**Hang** 153:10 282:2
**happen** 94:11,16
95:12 96:7 97:13
97:17 98:20 99:6
100:7,18,19,19
101:1 102:6,20
104:23 105:12
145:20
**happened** 140:6,11
180:9 184:9
207:18 317:17
**happening** 98:24
100:23 102:15
183:18
**happens** 101:5
102:14,18 153:16
157:11 191:14
**happy** 297:23
**hard** 34:18 276:6
**he'll** 43:4 83:20
**head** 10:12 190:6
215:20 228:14
**header** 43:21
**headers** 26:11
**heading** 170:10
**Healey** 2:14 21:23
22:2,5 204:18,19
205:14 207:15,19
208:2,3,8 253:21
254:1 325:15

**hear** 150:8
**heard** 33:18,19
145:2 168:12,13
323:1
**hearing** 200:1
**heck** 118:18
**held** 144:4 310:9
**Hello** 301:2
**help** 165:19
**hereto** 97:20
**hey** 262:21 286:17
320:13 321:16
318:21
**Hi** 131:9 299:11
318:21
**High** 70:4
**highly** 172:2
**history** 321:9 322:7
**hold** 27:9 50:6
104:6 171:4
211:15 248:13
269:4 270:1,2
273:8,11 312:3
**holding** 4:16 6:10
96:5 130:3 135:10
144:2 145:4
156:16 194:13
243:3 250:1
259:23 260:1
264:18 265:4
301:8 302:16
303:12 304:3
**Holding's** 249:22
**Holdings** 1:9 16:16
16:17 22:13
139:17 143:18
249:18,20 315:3
**home** 143:10
**honest** 64:4
**Honor** 291:13
**hope** 79:21 279:22
303:4 305:24
315:22
**horse** 218:5
**horseshoes** 154:18
223:9
**hour** 326:6
**hourly** 17:16,18
**hours** 131:12 145:1
**house** 10:4 16:15
18:23 22:12 24:20
25:5 29:18,23
30:14,15 37:17,22
38:22 39:22 42:1
42:8 44:11 48:1,3
48:4,20,24 49:2,8

Case 2:22-cv-00688-JMY    Document 200-1    Filed 10/01/24    Page 98 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                February 7, 2024

Page 342

49:21 50:10,18
51:4,13,18,24
52:16 53:11,14,15
54:3,24 55:11
56:13,24 57:5,21
58:6,8 59:7,8
60:12,20 69:1
70:9 74:5,18,22
75:6 77:4,10 78:2
80:23 81:14,16
82:1 83:5,16,17
84:1 85:12,14
86:4,19 87:2,20
87:23 89:19 90:9
90:23 95:3,9 97:8
107:23 110:2,8,12
121:2 132:15,16
132:16,20 137:20
143:19 149:9
156:3,24 158:8,24
159:13,15,18
181:4 182:24
186:5 187:11
198:21,23 200:7
211:20 219:19
221:10 242:7
243:8 247:17
248:6 284:22
309:6,15 313:18
314:2 316:17
**HOUSE's** 30:18
82:2 170:13
176:10
**Houston** 322:1
**Huh** 265:16
**HUNDRED** 310:6,7
**hypothetical** 81:6,7
81:19

**I**

**i.e** 144:17
**iCovid** 18:22 162:7
285:1 315:10
318:23
**ID** 241:11,14,15
**idea** 24:24 34:2
85:6 113:16,17
114:24 115:4
118:19 119:12
136:4 168:4 248:1
249:2 265:6,14
282:16 296:3,6,8
297:5 316:13
**ideas** 297:6
**identification** 13:18

18:8 21:22 26:15
27:23 39:2 69:17
122:7 123:20
133:5 139:5
146:21 148:24
151:22 155:24
161:23 167:12
169:1 171:8 175:8
185:23 201:14
205:5 206:12
209:15 218:12
238:10 252:21
253:16 254:13
260:23 263:14
264:9,15 266:4
283:20 298:15
299:3 302:13
304:22 306:20
313:4 323:16
**identified** 160:22
199:10 202:12,12
**identifies** 163:13
**identify** 69:19 200:6
**identifying** 23:10
**identity** 147:21
**ignore** 297:19
309:14,15
**iHealth** 5:6 112:10
143:16 150:4
152:3 156:19
160:22,22
**illiterate** 205:11
**Image** 6:14,17
**images** 6:15 28:18
29:2,3,4,11
**imagine** 31:12
258:19
**imagined** 30:16
**immediately** 109:19
144:13 147:20
155:11
**impersonate** 118:12
**important** 117:1,22
118:4 153:5
**impossible** 27:8
**impression** 232:3
**improper** 134:10
**inability** 155:6
**inaccurate** 152:21
152:22,23 153:1
200:3
**inadvertent** 182:12
**inappropriate**
172:3
**inarticulate** 76:8

297:2
**inches** 219:9
**include** 14:11 23:20
91:4 326:5,7
**included** 28:14 92:7
92:10
**includes** 23:17
96:23
**including** 106:23
121:2 312:11
323:24
**incomplete** 26:8
**incomprehensible**
261:17
**inconsistent** 98:13
100:6
**incorporated** 97:21
252:10
**incorporates** 99:3,5
**Incorporation**
252:8
**incorrect** 127:9
**increase** 300:16
**independent** 33:20
140:5
**INDEX** 3:1,6 4:3
5:3 6:3 7:3 8:1
**indicate** 271:24
324:19
**indicated** 292:5
307:20 308:23
327:8
**indicates** 282:10
**indicating** 211:24
**indication** 272:10
**individual** 12:6
189:11 191:1
**individually** 19:5,9
20:24 191:20
**individuals** 321:10
322:7
**INDN-Affiliated**
241:22
**induce** 83:22
181:11
**induced** 180:19
181:6 198:12
**inducement** 180:22
181:1,7 283:9,24
284:15 288:16
**inducing** 284:12,22
**industry** 33:8,10,12
33:14
**inference** 11:15,22
**info** 325:15

**inform** 91:12
**information** 13:12
118:10 144:16,18
146:14 147:22
148:17 198:5,7
207:13
**informing** 92:16
152:18
**initial** 23:2,3 24:12
27:3 48:19
**initially** 300:5
**Innovative** 254:22
255:5 256:9
**inquired** 14:10
**inquiry** 315:6
**insisted** 262:5
264:21
**insisting** 134:20
**instances** 71:1
**Instant** 241:15
**instantly** 252:16
**instructed** 15:2
239:16 256:3
**instruction** 5:10
140:19 172:15
233:19
**instructions** 10:20
11:7 25:15 93:23
94:6 145:8 198:5
311:5,7,11 328:2
**instructs** 15:14 16:7
16:12
**intend** 26:1
**intended** 48:16
54:20
**interest** 251:21
306:14
**interested** 327:18
**Interesting** 209:10
229:16
**Internet** 68:15
**interpose** 16:6
**interpretation**
145:11 154:24
**Interrogatories**
13:3 133:15
175:12 236:14,16
**Interrogatory** 5:12
**interrupting** 183:12
296:15
**inventory** 128:22
**invoice** 112:15,18
120:24 121:5
190:8 192:8,18,19
193:3 194:22

195:3 196:5,6,7
196:8 221:7
**invoiced** 234:23
**invoke** 11:10,13,21
**involved** 20:17,21
21:1,4 33:3 38:6
77:2,3 180:15,16
187:3 188:15
202:11 218:6,7
315:2 321:20,22
321:24
**involvement** 21:11
21:13,16,17
295:23
**involving** 16:15
33:15 37:16,24
38:22 69:4,11
87:20
**IOLTA** 5:9,21 6:6
238:13 253:18,23
254:3,15 308:4,15
310:10
**IOLTA-Trust**
93:23
**irrelevant** 40:24
314:6,7
**Island** 126:19
**issue** 46:24 136:17
176:8 198:10
**issued** 128:14 129:5
129:7 320:6,16
**issues** 202:6 204:8
302:21 303:18
**item** 99:20 102:13
172:13 220:7,14
220:16,17 221:11
221:14 238:23
244:19
**items** 127:22 213:3
220:14

**J**

**J** 2:14
**January** 5:21,22
74:3,9,9 80:24
81:4 83:6 85:7
86:20 112:18
149:24 154:9
156:11 157:7
169:10 170:18,23
171:20 172:6,20
172:24,24 186:7
194:22 195:23
203:17,20 238:14
238:24,24 239:5

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 99 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                February 7, 2024

Page 343

240:23 242:14
243:11 248:17
250:22 253:24
285:9,15
**Jason** 39:19
**jeopardized** 150:6
**Jersey** 1:23 73:16
  73:16 126:19
  131:24 190:19
  302:24
**jewels** 212:17 216:9
  261:5
**JMY** 1:7
**Joanne** 1:18 327:21
**job** 49:5,6 96:5
  151:13 318:7
**jog** 228:12
**John** 316:17,18
**joke** 323:19
**Jr** 7:9 93:22
**Jr.'s** 5:21 6:5,8
**judge** 39:20,24 41:2
  202:6 204:8 305:8
  305:24
**judges** 306:2
**judgment** 237:10
**jumping** 74:13
**juries** 155:1
**jury** 79:22 237:17
  290:22 291:6,7,10
  291:18 323:19

_____

**K**

**K** 7:9
**Keech** 317:4
**Keech's** 31:9
**keep** 58:24 67:14
  91:1 132:18 133:9
  157:24 161:9
  182:6 209:10
  245:3,6 247:11
  259:13 267:21
  292:12 298:5,6
  300:10 303:24
**keeping** 158:6,14
**keeps** 216:7
**KELLY** 2:14
**kept** 170:8,12
  179:14 231:19
**kids** 247:24
**Kim** 139:15
**kin** 327:17
**kind** 245:8
**kinds** 228:22
**kit** 5:19 156:20

169:17,24 170:3
173:11,17 218:16
234:20 247:10
303:5
**kits** 5:6 18:22 69:4
  74:10 112:10,11
  128:8 143:16
  150:4 152:4
  159:16 160:9,17
  160:21,23 162:7
  165:13 169:12,24
  170:2,14,20,22
  173:8,13,16,23
  174:9,20,21,22
  178:6,10 184:17
  184:19 185:6
  186:9,15 188:20
  188:23 189:23
  190:1 191:21
  192:20,22 197:3
  198:9 216:6 218:7
  218:22 220:1
  223:19 224:12
  225:2,7 226:11,12
  227:21 234:14
  243:9,12 244:5,13
  245:9 247:4 248:7
  255:11 285:1
  299:12,16,20
  302:21 307:23
  315:10 318:23
  319:4 322:16
**knew** 33:5 48:20,24
  49:8 50:18,22
  51:21,23,24 52:14
  52:15 55:7,9,10
  55:11,24 56:9,13
  58:13,15,16,18,18
  58:20 60:19,22,24
  61:2 85:9 117:14
  117:15 118:22,24
  119:22,24 120:3,3
  140:2 153:7
**know** 10:7,17,19
  25:20 33:1,11,17
  33:19 35:6,6
  36:18 37:18 38:1
  38:2,11,16,17,19
  41:9 47:3 48:3,4
  51:6,6 55:15,23
  58:8,13 59:15
  60:10,22,24 61:2
  61:3,5,22 64:11
  64:17 66:4 67:21
  69:9,13 71:12,14

71:24 72:23 73:3
73:4,4,11,17 80:8
81:23 83:18 84:17
85:9,21 86:12,21
87:4 92:13 102:11
102:12,17 104:11
104:12,14,16
106:13 107:11,14
107:15 109:12
110:14,15 113:12
116:1,2,4,9,23
117:2 118:10
119:7 120:1
124:10 126:5,14
126:16 127:5,15
128:2,8,12,13,15
129:4 131:23
132:1,6,10,24
136:3 137:4,17
138:16 140:7,9,14
141:2,11,12
146:11 151:4,12
151:14,14 152:22
160:2,6,11 162:17
162:22 163:22
168:3,10,11,14,20
168:21 176:3,6
182:10 183:13
184:2,3,5,22
186:16,24 188:2,3
188:20,21 189:10
194:8 196:22
197:1 201:20
202:3,18 203:11
203:12 204:14
206:9,9 208:1
209:2 210:1 211:4
212:16,19,20
215:1 216:2 217:3
218:8 219:21
221:22 222:5,5,6
222:14,16,18
223:15 225:14
226:8,22 227:7,9
227:16 228:16,16
229:13 230:19
231:2,13,17,24
233:11 236:18
237:12 240:10
241:13,17 242:10
246:7 247:5 248:4
248:8 250:2 252:2
252:3 254:24
255:1,17 256:14
258:3 260:9 261:2

261:3 262:24
265:21 267:6,11
269:8 270:21
271:9 272:4 274:3
274:3 275:12,15
277:2,11,12,12,13
277:17,20 278:10
279:8,10,15,16
280:18 281:23
283:6,12 285:22
285:23 288:6,6
290:3,18,20,23
291:15,22 293:10
294:10 297:9,12
300:11 312:22
313:1,10 316:5,6
316:11 319:17,18
320:12,19 323:19
324:17 325:2,5,5
325:16
**knowing** 119:21
**knowledge** 19:7
  20:1,2,8 33:20,24
  34:3 60:11 96:2
  113:24 114:2
  116:12 153:8
  229:5
**knows** 37:5 71:11
  118:13

_____

**L**

**L** 2:8 14:14
**labeled** 3:13 238:19
  253:22 254:5
  266:8 271:24
  289:13
**Lading** 36:11 37:20
  37:21 38:21 100:3
  102:5,24 104:18
  104:21 105:3,10
  105:16 110:15,16
  110:18,19,23
  111:1,5,10 112:5
  121:11,18 122:1
  126:4,6,13,24
  127:4,18 128:18
  129:12 148:5
  149:20 196:1,10
  225:11,13,17
  285:24 286:6,7,8
  320:5,15 322:18
  322:20
**Ladings** 160:8
**laid** 231:18
**language** 34:20

92:16 98:14 99:1
**late** 9:18
**Laver** 2:8 9:4 12:11
  15:18 17:5 23:8
  23:14,17 24:1
  26:1 27:4,8,10
  29:6,13 30:5 37:8
  39:4,9 40:19,24
  41:7 43:3 45:13
  45:17 46:8 47:7
  47:20 53:21 54:1
  58:14 66:14,23
  71:4,7,10 75:24
  76:5 78:21 79:17
  80:5 81:6,18 82:4
  90:16 91:14 96:24
  105:21,23 108:2
  111:2,11 122:14
  122:18,21 123:10
  123:13,18 133:12
  133:17 134:8,12
  134:16 138:23
  139:3,6 140:17
  143:1,6 158:10
  159:2 163:9
  167:14 168:7
  171:14,22 172:2
  175:13 176:12
  183:9,13 194:18
  195:3,7 199:13
  200:2,11,18,23
  206:13 211:11
  217:18 223:23
  224:2,4,18 225:22
  227:19,23 228:19
  228:22 232:1,5,9
  232:12 234:8
  235:12 236:6
  237:14,18,21
  238:1,4,15 239:6
  239:10,15 242:9
  242:16 244:6
  245:10,22 246:2
  247:11,19 248:18
  248:23 249:3
  253:7,14 254:9
  257:22 269:23
  270:2,6,10,13
  271:22 272:17
  280:11 281:19
  286:17 287:12
  289:3 296:9,14,23
  304:12 307:10
  308:18 309:9
  311:19,23 313:19

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 100 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 344

314:3,6,10 317:12
317:17 318:2
323:18 324:3
325:18,22 326:4,9
**law** 10:2 17:15
22:13,20 55:3
66:9 75:3,14
77:20 89:20 91:20
93:23 104:13
144:1 145:3
307:16,17 324:7
**lawsuit** 20:17 21:18
29:11 49:1 50:2
54:24 57:9 77:2
134:23,24 162:8
168:13 227:6,8,10
298:8 323:3,23
324:16,17,24
**lawyer** 14:3 20:18
20:21 21:1 73:15
85:1 91:2 104:5,6
104:7 110:10
135:9,14 137:10
138:2 142:9
180:12,12,16
184:7,12 186:21
188:12,15 259:6
266:13 282:18
299:24
**lawyer's** 311:7
**lawyers** 267:3,12
**leading** 107:21,23
108:3
**leads** 214:9
**learn** 33:21 73:19
85:5 224:16 315:5
**learned** 315:1
**leave** 155:8 297:8
**leaves** 173:24 207:7
207:11 223:4
226:2
**led** 321:10,10 322:8
**left** 12:11 28:10
130:4 140:8 141:4
141:24 142:20
170:16 200:16
203:10 211:9,22
220:4 231:4,21
232:23 233:2,4
234:6 235:11
273:18 282:13
289:9 290:14
**left-hand** 279:2
291:9
**legal** 17:16 78:23

84:16 95:14 104:2
104:4 237:10
299:23
**legitimate** 286:8,10
**let's** 65:11,15 72:23
74:14 97:23
115:17 122:5
123:8 138:20
139:11 141:19
151:19 161:20
167:9 168:22
169:3 175:5
204:23 205:1
206:10 209:12
213:9 217:6,9
238:8 250:9
252:19 253:4
257:13 263:12
266:2 269:20
272:21 283:13
289:1,3,4 299:9
302:4 307:1 313:2
313:7 319:1
**letter** 3:17 4:14
6:23 7:8 40:5,14
41:14 42:6,17,21
43:9,16 44:6
45:12,20 47:17,18
50:24 51:21 62:4
62:16 64:12 66:6
66:8 75:2 85:11
108:19 109:1,2,2
109:4,16 111:8,12
112:2,22 115:17
120:21 121:7
122:12,23 123:1
124:1,12 128:18
149:8 169:20
174:5 185:14
189:3,19 197:23
220:6,10 222:17
233:12,17,18
302:15,17 304:2
306:22 307:13,21
308:23 312:22,23
317:21 319:1,20
321:16
**letterhead** 121:12
121:19 303:12
304:17
**letters** 227:20
**Level** 70:5
**liability** 167:7
**liar** 50:7 120:11,13
132:9 165:10,10

262:2
**license** 237:11
**lie** 152:13 165:8
276:14 278:2,7,15
**lied** 165:7,9
**lies** 163:21 202:7
204:9
**lieu** 262:8
**Lightman** 2:3,3 3:3
3:22 4:10,12 9:3
9:15,24 10:2,2
13:15,19 15:21
17:3,8,13 18:5,9
19:3 21:19 22:1,3
22:7 23:12,16,23
24:4,11 26:4,7,16
27:6,9,12,16,20
28:1 29:8,14,15
30:8 34:20,22
36:19,24 37:11
38:20 39:6,17
40:23 41:1,10,12
43:6 45:14,21
46:10 47:10,14,23
53:23 54:2 58:17
62:9 63:8,12,18
64:21 66:18,21
67:9 69:14,18
71:6,9,11,13
75:21 76:1,11
79:1,20 80:6 81:9
81:21 82:7 85:13
86:5 90:18,20
91:16 97:2 105:5
105:19 106:1,3
108:5 111:4,13
112:4,7 118:11,13
119:8,10 122:4,9
122:16,20,22
123:8,12,15,22
133:2,6,10,14,20
134:5,15,17
138:20 139:1,8,10
139:15 140:20
141:15,18 143:2
143:14 145:2
146:18,22 148:21
149:1,13 150:15
151:19,23 152:2
155:22 156:2
158:13 159:5
160:14,16 161:7
161:14,20,24
163:4,7,11,14
167:9,13,15,18,22

168:1,6,9,22
169:2 170:21
171:5,9,16,18
172:1,4 175:3,9
176:13 182:16,20
183:15 185:20
186:2 194:20
195:5,11 199:15
199:23 200:4,14
200:20 201:2,11
201:16 203:20,22
204:18,22 205:2,6
205:8,16,17
206:10,15 207:17
207:21 208:2,6,9
208:13,19 209:12
209:16,19 211:14
213:19 217:20
218:9,14 224:3,15
224:20 225:20,23
226:1 227:17,20
228:1,2,20,24
229:15,17 232:7
232:10,14 234:10
235:13 236:8
237:16,20,23
238:3,6,11,16,17
239:8,11,18
242:12,21 244:10
245:13,23 246:4
246:12,16 247:15
247:21,22 248:21
248:24 249:4
250:5,8,21 252:4
252:7,19,23 253:1
253:4,11,17,22
254:2,14 257:23
258:2,20,23
260:21 261:1
263:12,16 264:6
264:10 266:2,5
270:1,8,11,15
271:23 272:20
280:12 281:20
283:13,17,22
286:19,20 287:13
289:5,7 295:15,18
296:12,18,20
297:11 298:12,16
298:24 299:5,8
302:4,8,14 304:14
304:20,23 306:16
306:21 307:11
308:21 309:11
311:20 312:1

313:2,5,12,15,22
314:5,7,12,14
317:13,15,18,20
318:4 323:14,17
323:21 324:5
325:12,20,24
**likes** 135:9
**limitation** 312:11
**Limited** 254:23
255:6 256:10
**limits** 314:4
**line** 90:11 124:5,8
126:2 129:22
130:8,11,14,15,17
131:3,9 151:6
165:11 166:1
169:6 172:10,13
172:24 173:9
188:8 212:2 220:7
220:14,14 221:11
221:14 226:3
232:2 238:23
244:19 255:2
263:22 271:4,12
271:14,16,18
273:22 329:5
**lines** 278:6
**liquidated** 157:22
158:6,15 182:7
**list** 14:12 35:4
116:16,18 127:22
218:16 261:5,19
263:5
**listed** 93:16,19
100:9 219:20
220:3 236:4
**lists** 15:3
**litigation** 71:8
73:23 86:17,23
122:19 141:21
171:15 312:17
**little** 31:9,15 127:5
162:11 182:10
186:19 208:6
299:1
**LLC** 1:10,11,12
4:16 16:17,19
18:14 19:17,17
22:14,15 55:3
189:16 190:8,13
190:20,23 301:8
302:16 303:13
304:3
**LLP** 2:7
**loaded** 146:3

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                February 7, 2024

Page 345

**local** 4:5 126:10,23
  127:3,13 129:13
  132:3 185:2,16
  190:4 192:12
  194:24 196:2
**locate** 313:13
**located** 107:8
  312:14
**location** 13:22
  110:2 146:10
**location(s)** 94:7
**logically** 11:1
**logistics** 113:1,9,15
  117:4
**logos** 29:5
**Long** 124:13
**long-time** 183:23
**longest** 323:10
**look** 14:8 17:20
  23:6,14 24:1,6
  26:20 41:13 43:20
  44:6,7 52:21 56:6
  56:20 70:16 85:10
  87:19 97:22
  104:13 106:4
  112:17,21 120:1
  122:10,23 124:5
  125:1 129:11
  130:13 134:13
  144:19 147:3
  162:13 169:20
  172:10,14,18
  173:7 174:4
  176:14 189:4
  202:3 205:13,18
  205:23 219:5,9
  220:6,9,12 221:2
  250:10,14 255:1
  256:24 261:7,10
  261:15 266:2
  269:21 275:3,3
  277:3 288:19
  294:2 299:9
  317:22
**looked** 84:22
  267:15
**looking** 42:11
  170:24 171:1
  220:11 257:16
  274:10 277:3,6
  278:14 279:10,17
  282:9
**looks** 69:21 112:20
  123:3 124:17,20
  128:15 136:10

156:5 170:1,24
  186:4 253:3 261:5
  262:19,24 264:5
  266:22 274:17
  275:10 279:4
  282:14 289:12
**loose** 182:10
**lose** 115:10 264:22
  269:6 270:20
  271:11 273:9,14
  287:11 298:4
**losing** 238:4
**loss** 237:10
**lost** 134:21 144:8,10
**lot** 33:13 35:21
  48:23 89:22
  108:16 117:15
  165:15 192:1
  203:21 210:20
  236:20 256:21
  290:10 301:24
**lots** 230:23,23
**love** 79:21 139:1
  297:18
**lunch** 133:8 161:9
  175:4 182:17
**lying** 56:20 66:12
  66:17 152:12
  265:3 267:5,6
  268:12 294:9
  295:6 296:5,6,13
  300:8
**Lynch** 253:24
  256:22 257:2,10
  257:12

_____ M _____

**M-a-n-n** 316:19
**machine** 327:11
**mail** 45:7
**main** 97:7 258:5
**maintain** 41:24 42:5
  310:14
**making** 136:11
  163:11 192:16
  197:10 198:2
  241:8 256:6
  313:17 319:5
  328:9
**man** 286:18
**manager** 18:13
**Manfred** 1:8,8,16
  2:11,12 3:15,18
  4:9,12,19 5:18,20
  6:5,7,12,19 7:9,11

9:11 12:9 28:3
  39:23 40:1,3,12
  75:13 83:4 85:6
  93:22 95:22 125:3
  132:6 134:21,22
  135:8,10,12,14,16
  135:20,22 136:7
  136:16,17 137:9
  138:2,4 139:14,15
  139:16,18 149:12
  152:2 162:14,15
  202:8 204:9 232:8
  238:13 254:3
  255:19 261:21
  262:22 263:7
  266:12,17,19,21
  267:2 269:13
  280:3,5,8,17
  282:12 292:10,12
  292:15,24 293:15
  293:21,22 294:18
  295:5,15,19
  297:18 299:17
  301:4 302:18
  303:24 315:4,13
  324:1,1,19 326:8
**Manhattan** 121:21
**manifest** 121:10,18
  122:1 126:7,15,24
  127:17,23 128:18
  129:13 130:24
  131:1,6,7,11,13
  131:14,18,19,21
  131:22,24 132:1,1
  132:2,4 185:1,1
  185:17,17,18
  190:3,7 196:1,3,9
**Manifests** 131:21
  189:1
**Mann** 316:17,19
**manner** 236:2
**Manochi** 2:3 10:3
**manufactured**
  209:9 281:16
**March** 25:2,13,17
  28:4 29:16,21
  34:9 44:15,16,20
  50:11,12,13,14,15
  50:16 53:20 58:7
  110:3,12 203:17
  203:19,21 261:17
  262:18 263:18
  264:2 285:6,19
  298:19 299:11
  302:3 314:15

317:21,23 318:11
  319:2,14,16,20
  320:11,18 321:2
  321:16,23 322:11
**Margaret** 251:20
  251:21
**mark** 18:5 26:2,12
  27:20 38:23 69:14
  122:5 123:8 133:2
  138:20 146:18
  148:21 151:19
  161:20 167:9
  168:22 171:5
  175:5 185:20
  201:11 205:2
  206:10 209:12
  218:9 238:8
  252:19 253:4
  254:11 260:21
  263:12 264:6
  270:17 283:13
  298:24 302:4
  306:18 313:2
  314:5
**marked** 8:20 13:15
  13:17 18:7 21:19
  21:21 26:8,14
  27:22 39:1 69:16
  122:4,6 123:19
  125:16 133:4
  139:4 146:20
  147:5 148:23
  151:15 155:23
  161:22 167:11
  168:24 171:7
  175:7 185:22
  186:11 201:13
  205:4 206:11
  209:14 218:11
  238:9 252:20
  254:12 260:22
  263:13 264:8
  266:3 283:19
  298:14 299:2,6
  302:12 304:21
  306:19 313:3,6,23
  323:15
**Market** 2:9
**Marlton** 1:23
**masks** 69:5 70:5
**massive** 314:8
**match** 304:9
**matches** 174:5
  221:6
**material** 39:19

41:17 42:16,20,24
  43:1 213:3
**materials** 200:12
**math** 207:12 234:3
**matter** 20:11
  109:13 215:22
  299:21 309:2
  312:18
**matters** 14:10 19:5
  20:17 21:1,12,16
  21:18 22:21
**Max** 20:10,13,16
  116:18 251:16
  295:21,23 296:7
  316:13
**mean** 17:24 31:23
  35:11,20 36:3
  61:3 73:3 74:6
  79:16 82:6 95:11
  95:13 104:2
  124:10,13 157:2
  164:23 165:2,3
  183:11 208:5
  210:10 211:3
  222:14 231:22
  252:6 256:13,20
  258:3 259:2
  270:19 274:21
  275:9 278:10
  279:19 281:18
  293:1 303:12
**meaning** 53:14
  93:18 94:15
  165:16,17,18
  179:2,10
**means** 68:20 112:5
  136:3 216:2 218:8
  222:16 293:2
  301:6
**media** 312:12,14
**Medical** 38:18
  72:24 219:10
  221:2 307:18
  314:17
**medications** 10:24
**meet** 36:4
**Meeting** 2:5
**member** 251:2
**memo** 34:7
**memorialize** 144:14
**memory** 71:19
**mental** 10:3
**mention** 152:13
  153:10 313:16
  314:1 315:3

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 102 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                Deposition of Manfred Sternberg, Esq.                February 7, 2024

Page 346

mentioned 317:10
menus 161:8
Merchandise 299:15
merely 249:5,9
Merit 1:18 327:21
Merrill 5:21 6:5 253:24 256:22 257:2,10,12
mess 253:8,14 296:24 297:1
message 5:14 6:17 141:24 142:4,20 143:3,5
messages 6:14,16 281:22 312:12
met 45:4,5 47:18 111:15,17 204:4 204:12
mid 85:20
Mike 228:12,14
million 30:21 31:4 70:4 72:10 74:1 80:11,16,23 81:14 82:3 83:22 84:20 89:9,10,20 93:5 95:18 107:1 112:23 116:6,22 117:7,10,17 134:21 137:12,19 145:4 155:10,17 158:1,20 159:9,21 166:20,24 167:1 170:7 172:6,11 176:1 179:12,14 179:21 181:17 182:1 191:5,6 197:16 198:14 200:16 201:1,3 203:9,10 206:1 211:9 212:4,8,10 212:13,21 213:4,5 216:5 217:24 222:8 223:4 225:3 226:3,3 234:1 235:4 237:10 239:1 247:16 250:15 280:23 298:6,7,9 300:13 300:14,15,17 308:15 310:6 322:15
millions 78:3
Mills 149:16 218:21 218:24

mind 86:24 265:9
mine 123:15 172:9 221:21
minus 174:22 226:3
minute 322:14
minutes 30:1 34:23 135:7 166:6 178:17 282:24 284:4 317:19 323:10,11
mischaracterizing 296:17
misleading 49:20 52:18 56:6
misread 259:17
misrepresent 66:18 236:23
misrepresentation 54:14 62:17 87:17
misrepresentations 41:17 42:3,7,20 42:24 127:6
misrepresented 236:23 238:1
misrepresenting 241:1 259:13 318:5
missing 26:11 27:5 27:13
misspelled 277:15 287:1 288:11,18 292:17
misspells 278:10
misspoke 288:1
misstatement 219:1
misstating 82:12 287:15
misunderstanding 67:3
mixing 193:12 195:8,9
modus 70:19
Molly 21:8,9 116:18 240:11 251:14
moment 119:17 303:18
money 5:7 25:5 72:16 74:14 78:18 79:5,12 80:4 81:17 82:10,20 83:9,14 84:2,5,14 91:6 92:19 101:15 101:18 109:10 114:7 115:9 117:24 118:1

135:12 137:4,7,24
153:23,24 154:21 155:14,15 159:12 166:7,8 169:3 170:14 173:4,24 174:21 176:4 181:2,8,10,13,16 181:23 182:14 184:6,13 190:11 191:22 194:13 201:1 203:7 205:6 207:11,18,20,22 211:19,21 215:2 215:14 216:9,16 223:18 224:10 226:18 230:6 233:20 235:10,17 236:2 237:4 240:14 242:5,23 243:3,4,5,20,24 244:14 245:8,20 247:3,16 248:10 248:11,12 250:12 252:16 255:12,15 255:16,20,23 256:1,7,10 258:11 283:10 284:1,16 285:15 298:5 316:7,12,13,16,21 322:17,21,22
monies 82:16 149:23 199:20 242:24
Monte 38:15 219:23 219:24 220:23
months 214:18
morning 10:1 54:14 66:19 163:17 210:16
Motion 27:2 44:2
mouth 165:9
move 4:5 126:10,23 127:3,13 129:13 132:4 168:6 185:2 185:16 217:18 237:14,18 239:17 248:18
Movers 4:5 121:20 124:6 128:2,14 129:5 194:24
Movers' 185:15
moving 126:17,18 127:21 128:9,21 192:13
MS/SG 170:11

MSA 5:9
Multi-page 3:13 5:8 7:5
multiply 170:3 173:17
mutually-agreeable 326:5

———— N ————
Nail 219:10,15,18 221:10 323:23
name 10:1 33:1 38:19 71:15,18 73:3,4 118:24 125:4 132:7 135:1 144:17 148:8 191:3,3 198:6 226:21 228:10 270:22 272:7 273:2 274:24 277:5,15 278:11 279:9,19 288:11 288:18 292:17 328:11
named 118:13 227:5 228:9
names 38:16,17
Nation 38:18 221:2 221:9
necessary 10:8 70:22 312:8 328:6
need 31:8 35:7 39:4 40:18 60:15 78:13 78:15 89:9 98:22 135:14 141:9 150:13 154:18 165:23 178:18 180:17 233:16 244:2 256:8 258:6 258:11 259:8,9 301:13 320:24 322:4,13 323:5 325:22 326:2
needed 30:17 264:23 311:10 320:12,19
needs 35:4 103:23 126:8 164:2 166:8
negotiate 82:19
negotiated 82:18
neither 21:17 138:3 327:16
never 19:8,10 24:21 33:18 35:23 45:4 45:5 47:18,24

48:1,16,21 49:2,2 49:9,10,22 50:20 51:4,14,20 52:2,7 53:2,8 54:11,20 55:12,21 56:14 57:1 60:7,20 61:12,20 62:12 63:3 72:4,19,19 72:20 75:16,18 76:20 93:2,6,8,10 111:8,15,17 115:23 133:15 148:8 152:14 153:3 159:6 116:12,17 166:11 166:12,17 167:4,6 168:12 181:7,12 181:19,19 182:13 188:6 226:24 227:22 230:10,17 255:11 266:11,18 267:1,9,17,22 268:1,2,4 284:14 285:3,5 288:10,13 289:14 293:14 294:12,13 307:5 319:6 322:19 324:3 325:10
new 1:23 73:16 121:21 126:19,19 127:20 131:24,24 166:8 190:19,19 199:19 302:23,24 323:23
nine 28:7,14 74:1 191:5 203:10 206:1 234:2 235:4
NJNYPA 131:21
nod 10:11
non-confidential 40:22
non-privileged 13:10
non-public 39:12
noon 133:7
Norristown 2:15
North 1:22 73:16
notably 43:10 50:24 59:3 61:18
Notary 1:19 327:4 327:22 330:22
note 17:5 39:11 134:8 145:11 171:22 232:1
noted 328:10 330:9

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                February 7, 2024

Page 347

**notes** 50:15 119:4,5
119:9,23,24
**notice** 1:16 3:8
13:21 14:5,8,23
15:7,14 16:2
151:6 208:10
286:22 308:24
312:8 327:7
**notified** 233:13
**Notwithstanding**
315:16
**number** 3:11 5:7
17:22 18:2,10
22:6 23:18 28:11
41:16 42:2,7
62:16 88:4,4,19
99:14 102:13
125:21 126:10
135:1 138:7
141:24 150:16
169:3 173:7 174:5
174:6 175:20
205:7 217:21
218:20 220:21,22
220:23,24 221:1,6
221:6,8 222:21
223:2 257:1
259:24 260:1
266:21 281:21,24
282:3,6 304:16
**numbers** 160:21
172:23,23 200:21
209:2 212:9
219:11 223:1
231:11 232:17

————————
            **O**
————————
**oath** 20:15 41:21
42:23 61:1 62:11
62:14,16 63:2,6
63:10 101:24
105:23 115:15
236:10 278:14
281:13 290:21
291:10
**object** 195:3 200:2
227:23
**objection** 15:18
16:6,9 30:5 37:8
39:11 43:3 45:13
45:17 47:7 66:14
78:21 79:17 80:5
81:6,18 82:4
91:14 108:2 111:2
111:11 134:8

**140:**17 143:1,6
158:10 159:2
171:22 176:12
194:18 199:13
207:15,19 211:11
224:18 228:19
232:1 234:8
235:12 236:6
237:14 239:6
242:9 244:6
245:22 246:2
247:11 248:18
249:3 271:22
272:17 296:9
308:18 309:9
310:23 313:19
314:3
**objectionable**
239:16
**objections** 9:8
**obligation** 90:7,8,9
90:24 91:7,13,21
92:6,18,24 93:3
310:14
**obligations** 36:4
299:21
**obtain** 45:1 192:4
294:3,6,7 303:3
**obtained** 44:23
266:14 268:9
**obtaining** 175:24
237:8
**obviously** 17:10
176:6
**occasion** 311:9
**occasions** 305:11
**occur** 81:11 103:5
103:18 154:4
191:10 193:9
194:15 197:11
237:5
**occurred** 86:20
140:1 153:14
**occurring** 154:12
**occurs** 248:15
**October** 175:11
**odds** 302:2
**offer** 116:1 216:19
**offered** 108:14,22
109:9 115:19,21
115:23 116:3
**office** 3:17 41:14
43:11 56:16 57:7
59:4 60:2 152:3
**officer** 184:7

**Offices** 307:17
**official** 21:16,17
**oh** 22:5 26:4 85:21
86:12 109:2 126:5
139:3 155:21
156:22 157:20
162:22 174:19
179:15 201:8
239:22 255:14
286:3 296:19
300:4 307:1
**Ok** 271:4,12
**okay** 10:22 11:7
13:2 14:4 16:4,21
18:12 20:24 21:4
22:6 24:15 26:5
28:22 29:12 32:16
33:24 36:17 42:11
42:15 45:5 46:5
46:17,24 47:15,16
48:8,11 50:16,23
54:16,23 56:10
61:14,17 62:4
64:3 65:10,15
68:24 69:7 71:10
72:23 73:11,24
74:13 76:13 77:8
81:13 83:19,24
84:11 86:8 88:11
94:20 96:4 97:23
102:18 103:11
104:14,20 107:17
108:6,11 109:3
113:20 114:13
116:5 117:1
119:22 122:21
123:4,18,21 125:1
128:17 137:6,23
138:1 141:8 149:8
151:1,18 153:6,13
154:15,23 157:9
157:20 159:6
160:20 161:6
162:20 163:3
169:5 170:16
171:4 175:4,18
178:24 180:5,21
182:22 183:24
184:2 185:13
187:1,9 190:12
193:13 196:15
197:23 198:11
199:20 201:15,22
202:2 205:1 210:4
210:15,22 211:6

**215:**17,18 217:5
218:1,13 219:15
219:23 220:13
222:18,21 223:13
225:13 226:23
227:13 228:21
229:7,14 230:8
231:3,14,17 233:9
238:16 239:3
240:20 242:5
243:16 246:15
249:16 252:18,22
257:13,15 259:7
260:20,24 262:14
263:15 265:9,21
266:7,9 267:23
268:11,12 270:19
271:7 273:4,6
275:3 276:21
278:11,20 279:1,5
279:17,20 282:9
283:21 285:4
286:19 288:12
290:11,12,20
291:21 292:2
294:5 300:23
306:7 307:12
314:10 317:15
325:9,12
**omission** 62:2
**omissions** 41:16
42:2,7,16 43:1
**omitted** 43:11 49:16
51:1,9 55:20
56:12,15 57:6,12
57:14 59:3 60:1
61:18
**omitting** 97:15
**once** 31:18 94:2
98:24 178:8
249:13
**ones** 13:11,12
246:18
**ongoing** 232:2
**opened** 39:18 165:9
**operandi** 70:19
**operating** 70:23
97:24 98:12
**operation** 124:23
**opinion** 68:17 78:24
104:11 307:6
**opinions** 132:12
**opportunities**
214:22
**opportunity** 257:16

**opposed** 78:19
82:17
**opposing** 9:17
143:4 325:24
**opposite** 290:6
**oral** 1:16 193:17
**order** 4:18 59:16
100:9 132:13,17
132:21 149:14
156:4,6,10,24
161:8 169:9,21,23
187:6 188:16,17
189:20 198:19
202:6 204:8 219:5
219:6 220:3
221:15 234:14
242:4 285:13,14
290:10 310:23
**ordered** 155:7
255:11
**ordering** 154:10
325:14
**orders** 215:22
227:14
**organization**
302:22
**original** 29:9
125:11 171:1
300:24 304:18
328:17
**originally** 125:2
254:5
**originals** 305:20
**outcome** 327:18
**outline** 26:3
**outlined** 146:16
**outright** 41:17
42:20 97:10
**outside** 77:13 95:1
236:20
**owe** 84:19 236:18
236:20
**owned** 112:9 186:14
186:18 188:10,22
191:18 244:22,22
244:24 245:1
**owner** 188:18 240:4
251:5 252:1
**owners** 251:23
**ownership** 103:24
**owns** 188:5 192:24
240:4,6,9 241:24
251:9

————————
            **P**
————————
**P** 2:3

(856) 983-8484                              Tate & Tate, Inc.                        (800) 636-8283
825 Route 73 North, Suite G, Marlton, New Jersey 08053

USDC, ED of PA                    American Environmental Ent. v. Manfred Sternberg, Esq., et al.                    Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                    February 7, 2024

Page 348

**P-a-n-a-g-a-k-o-s**
19:21 246:22
**P.C** 1:13 2:18 22:16
**p.m** 139:14 144:23
146:24 152:5,9,23
161:12,13 182:18
182:19 223:24
224:1 287:19
326:12
**PA** 2:5,10,16
149:16
**pack** 101:15
**page** 3:2,7 4:4 5:4
5:11 6:4 7:4,5
14:9,9,13,16,17
14:18 15:5,6
23:15,15 24:1
26:21,22 43:9
44:7 45:11,12
46:19 47:12 62:4
66:5 70:16 109:15
109:24 112:8
113:6 118:9
120:23 121:9,10
121:13,15,15,16
121:17 122:10
123:1,3,24 124:15
124:16 125:1,8
128:23 130:2
131:5 139:11
144:23 147:3
162:13 171:10,13
171:19 172:14,18
173:8 175:10
205:12,15,20,24
221:3 238:19,19
239:3 246:18,21
257:23,24 261:10
261:15 266:8
268:21 271:21
273:3,10 276:21
278:22,23 282:9
287:23 288:8
290:9 291:9,24
292:4 294:2,16
295:14 297:22
298:21 313:7
314:15 317:22,24
318:1,2,3,5,8,10
318:13,20 320:7
329:5
**Page/Line** 8:4,8,8,8
8:8,17,21
**pages** 27:5,15 254:7
261:7 330:5

**paid** 112:14,23
118:6 155:7
170:13 179:6
226:18 234:4
235:9 240:14
258:6 262:16
302:22
**paint** 117:23
**pallet** 160:5
**pallets** 223:14
**Panagakos** 19:20
20:4 246:22
**paper** 3:10 17:21,23
22:4
**paragraph** 14:23
29:16 32:10 41:13
48:9,12 52:7,21
52:22 66:7 75:3
88:7,7 93:12 94:2
95:6 97:11 99:1,3
99:4 100:24 101:6
105:1,14 106:4,4
106:18 108:6
110:6 112:8,21
113:6 121:7,14,17
145:16,19 153:20
155:21 157:9,10
157:13,14
**paragraphs** 121:4
**Pardon** 23:8 39:4
77:17 122:14
171:14 251:7
**part** 23:10 35:17
71:5 74:14 116:23
139:8,9 151:7
187:7 191:2 319:8
319:10,11
**partial** 128:15
**partially** 124:19,20
**parties** 41:2 79:13
82:18,19,22
106:15,22 154:22
309:1 315:2,8
**Partners** 69:12 70:1
**parts** 261:3
**party** 30:19 66:9
69:23 70:1 89:4,7
90:10,12 91:2,22
91:24 92:3 106:21
153:11 310:22
315:4 327:17
**party's** 31:13
**paste** 281:19
**patience** 164:1,16
**PATRICK** 2:14

**pattern** 323:1
**pause** 250:7,18
317:16
**pay** 106:6 107:3
155:16 181:6
228:18 284:12
316:9,12,16,21
325:20
**paying** 108:8
**payment** 129:18
130:6 180:19
236:2 262:15
315:11 319:5
**payments** 5:5,16
175:15 177:24
199:6,12 200:5,6
206:7,18,24
250:10,11
**PayPal** 240:5 241:9
241:24 242:4,18
242:19 244:21,22
244:24 245:1,20
246:13 249:21
250:20,23,24
252:12,15
**PayPal5177** 241:12
**PC** 1:9 2:12 12:8,9
14:11 92:23 324:2
**PC's** 83:4
**peanuts** 214:23
**pen** 17:21
**Pennsylvania** 1:1
1:17,19 73:15
85:13 141:9 327:6
**people** 31:19 33:23
80:3 151:14 152:2
161:19 166:11,13
166:17 189:10
191:1 198:22
204:3 217:24
218:6 222:7,9,12
222:15 230:23
251:10,11,17
258:5 274:7
306:11 315:21
316:2,2 317:9
**percent** 165:17
281:9,10
**perfectly** 10:18
**perform** 48:16
54:20 80:13,17
271:5,12,14,16,19
273:23
**Performance** 70:5
**period** 90:13 114:16

315:17
**perjurer** 132:9
**perplexed** 306:1
**person** 45:3 72:18
95:16 96:5 106:24
118:12 197:10
202:11 204:4,12
274:13,13,14,19
282:11 309:4,5
**personal** 34:6 114:2
116:12 153:8
**personally** 47:19
134:24
**personnel** 113:1,9
113:15 117:3
**pertain** 29:11 198:8
**pertaining** 149:21
**phealey@rebarke...**
2:15
**Philadelphia** 2:10
183:21 302:23
**phone** 28:18 134:2
134:5 135:1,5
138:7 141:22
142:4 144:14
147:8,23 148:12
150:16 194:4
214:12,16 269:16
269:21,24 270:3,9
281:21 282:4,6
287:4 288:19,21
289:1 290:5,6
318:22
**phonetic** 39:20
**photograph** 4:21
123:10
**physical** 10:22
**physically** 111:14
210:23
**picture** 117:23
167:21 168:18,20
205:10 274:23
**pictures** 28:18 29:5
**piece** 17:21,23 22:4
**Pike** 2:4
**place** 85:3 256:7,8
257:20 299:23
327:8
**placed** 312:8
**places** 88:5 89:16
**plaintiff** 1:6 2:6
10:3 13:3 48:13
54:17 163:1
324:13
**plaintiff's** 235:24

283:14
**plan** 213:9
**plane** 115:2
**plausible** 47:5
**play** 182:10
**playing** 125:4 132:7
154:17
**pleading** 52:12
**please** 10:9,13,15
13:16 17:23 18:1
18:2,5 21:20
26:12 27:21 29:2
38:24 43:19 59:1
60:15 64:15 68:21
75:22 77:22 87:16
105:5 106:1 131:8
133:3 142:4
144:15 148:22
150:11,14 166:1
171:6 192:3 205:3
209:13 218:10
224:5 225:21
232:6 254:11
259:22 264:7
318:14 328:5
**plus** 158:24 159:6
212:24
**Plymouth** 2:5
**PO** 218:16,20
**point** 14:6 56:7 73:9
90:6 91:11 125:20
137:5 148:12
153:23 200:21
258:5 313:13
**pointing** 24:10
**points** 34:11,12
40:20
**portion** 23:13 310:5
**portions** 40:15
**position** 57:5,23
60:11 180:21
295:1
**possession** 29:22
30:22 31:6 103:10
103:12,23 104:10
104:22 105:11
111:9 146:12
184:16,19
**possible** 10:14
81:24 82:5
**posts** 312:12
**PPE** 34:6 179:3
226:14,14,15,16
226:24 227:21
230:2 243:12

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 105 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 349

244:5 247:6,10
248:3 255:11
**pr** 282:18
**prepare** 219:2
**prepared** 161:16
219:2 265:12
**present** 2:20 301:15
**Presentation** 7:5
305:3
**presented** 286:9
**presenting** 305:9
**preserve** 40:17
312:9
**president** 251:4,5
295:19 302:17
**President's** 115:4
**pressed** 141:5
**presumably** 41:8
85:14
**presume** 232:18
**Pretty** 218:4 223:8
**prevent** 306:7
**preview** 208:7
**previous** 273:3
320:3
**previously** 307:20
308:22 312:7
**price** 97:9 98:18
99:12 101:10,23
156:18 158:1,8,15
169:16 170:13
174:13,22 178:10
**prices** 257:19
**print** 47:12 205:11
205:15
**printed** 24:3
**prior** 87:2,7 320:3
**privately-held**
240:8
**privilege** 11:10
**privy** 114:10,12
**pro** 28:19
**probably** 11:22
12:21 21:14 46:16
46:20 67:21 69:6
108:18 111:7
119:4 167:17
189:2 194:5
204:17 209:21
215:15 219:8
226:17,19 227:9
229:3 230:7,9
244:21 255:3
258:15 260:8
261:14 262:3

286:2,3 297:14
**problem** 32:11,16
34:10 113:1,10,15
164:20 165:1
166:4 256:5
276:18 278:3,8,16
280:24 289:22
290:2 292:22
310:22
**problems** 117:4
280:18
**procedure** 15:1
70:5,24 98:1,12
**proceeding** 39:13
39:14 41:1
**process** 309:22
**produce** 15:17 17:4
29:12 36:17,20
38:21 47:1,5,11
119:5,9 141:17
162:20 163:5
200:21 210:2
227:18,19 231:14
244:12 246:13
269:10 270:12
287:6 313:8
**produced** 13:10
15:11,13 17:1
36:23 40:10,15
45:10 71:7 122:18
123:11 125:14
133:13 163:19
192:13 200:12
203:14,17 209:22
218:15 236:7
246:5 258:18
269:15,20 270:22
275:1 281:11
306:11
**producing** 269:11
269:12
**product** 37:16,24
38:2,9,14 79:10
79:11 109:18
112:14,23 113:3
113:21 114:1,5
115:19 116:21
117:6 118:7 146:9
146:12 151:12,13
151:15 178:24
179:2,3,6,7
180:13 181:2,6,9
181:11,22 188:5
198:18,21 199:3
199:19 204:2

216:21 219:7
225:18 230:10,17
284:4,13 298:8
315:19 319:6,9,12
319:14,21
**production** 3:9 8:7
17:9 28:15 71:5
139:7 200:19
**products** 189:15
**profit** 115:10,11
170:11 179:8,9,10
179:11,23,24
180:1 181:17
211:7,8 212:5,23
213:5 215:5,9,14
264:22 287:11
298:4 315:22
316:3,22
**profits** 316:10
317:11
**promise** 31:19
150:4 152:11
153:2 164:4
**promised** 32:4
35:21 153:3
162:10 164:3
165:13
**promises** 165:15
284:24
**promising** 34:14
35:13
**proof** 7:6 188:4
279:22 305:3,9
**property** 308:24
**propounded** 330:7
**protection** 11:12
34:6
**protects** 271:5
273:23
**Prove** 314:10,10
**provide** 17:7,14,16
53:5 62:6 88:20
100:2 144:15
146:14 147:20
179:4 303:22
314:23
**provided** 41:7 94:4
110:2 121:11,18
146:10 171:24
184:23 188:11
207:13 225:8
235:21 264:24
281:23 282:3
301:16 328:16
**provides** 17:15

102:4
**providing** 64:21
**Public** 1:19 257:4
327:5,22 330:22
**purchase** 3:20 4:17
24:14 31:5 43:17
66:11 67:8 74:10
80:2,14 97:9
98:18 99:12 101:9
101:23 102:1
146:3 149:14
156:4,6,18,19,24
158:1,8,15 169:9
169:16,21,23
170:13 174:13,22
176:10,11 178:6
188:16,17 189:20
198:21 219:5,6
220:3 221:15
234:14 243:9,12
244:4,13 247:24
248:3,6 285:7,11
285:13,14 315:9
322:16
**purchased** 143:17
159:1,7 173:12
186:9 197:3
227:21
**purchaser** 75:15
77:5 84:13 89:19
92:6,17,19,24
93:9 95:2,8,18
97:8 103:11,13,15
136:6 152:8 159:9
169:6 173:1 227:3
255:10 322:14,18
322:19,21,22,23
**purchasers** 78:18
79:4 219:20,21
227:14 228:1
230:16 243:8
248:7,13 249:16
**purchasers'** 209:9
**purchases** 69:4
74:18 82:9
**purchasing** 94:16
190:1
**purported** 37:22
**purpose** 97:7
247:18
**pursuant** 1:16
14:24 44:14 80:18
314:21 327:7
**push** 295:8

**pushed** 294:19
295:5,9
**put** 18:1 24:2 26:9
27:14 92:4 129:9
192:1 205:9
225:22 234:11
235:18 241:6
242:7 253:6 259:8
270:17 280:14
287:3 290:9,21
291:6
**putting** 9:18 241:5

---

**Q**

**Quantities** 218:17
**quantity** 220:16,17
220:24
**question** 9:9 10:13
11:3,5,14,16
15:24 16:8,13
24:5 25:10 31:2
46:6 50:4 53:24
55:17,18 56:9,10
57:20 59:13,15,16
60:15,17,18 62:22
67:3 74:12 75:22
76:6 79:2 81:8
90:14 91:23 93:7
97:1 105:4,6
109:3 119:12
125:5 132:8
148:15 176:3
187:18 192:1
195:7 197:14
200:11 210:18
212:21 216:7
224:2,3 231:12
237:18,22 238:13
239:16 244:1
245:11 247:14
248:19,22,23
249:17 250:4
253:12 256:9
267:24 279:14
280:11 291:4,14
291:14,14 295:12
307:10 314:4
319:11
**questioning** 232:2
**questions** 8:20 10:6
10:7,8 12:5 39:16
68:21 134:9,13
150:13 204:19
217:14,15 228:22
239:12,15 259:20

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 106 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                February 7, 2024

Page 350

263:23 264:3
267:22 270:6
290:23 297:3
330:7
**quote** 29:17 32:10
41:16 42:2 43:10
62:5 93:13 94:10
96:6 97:12 98:19
100:6 101:1 102:6
102:15,19 103:4
117:3,4 121:18
125:3 126:10
134:19 135:7
136:11 137:9
138:2 191:10,12
**quote-unquote** 32:4

───────────
**R**
**r** 276:15 278:2,7,15
327:2 329:2,2
**raise** 189:12 190:5
**raised** 119:11,15
310:15
**raising** 310:23
**Randolph** 7:9
**Randy** 73:4,6
216:19 306:23
307:14 308:19
**Rapid** 156:19
**rate** 17:18
**re-marked** 253:15
**reached** 150:15
**read** 9:4 22:23
54:15 60:16 62:21
62:24 63:24 85:14
88:17 98:23
100:22 105:7
124:11,21 127:13
130:12 135:2
136:18 140:2
145:13 157:17
165:24 166:1
201:15 224:4,6
263:15 264:16
301:11 328:5
330:4
**reading** 89:13 140:4
202:15 250:17
265:9
**ready** 133:11,19
272:3 275:2
277:22 287:16
**real** 183:18 188:3
265:6,7 266:22
**really** 30:17 60:23

66:5 85:5 124:3
180:3 189:17
197:15 209:10,21
218:24 233:19
268:19 276:6
277:12 281:7
297:15 300:11
310:19
**reason** 27:4 42:13
95:22 96:11,14,17
96:20 115:8
124:21 136:1,20
161:15 172:5
191:8 213:14,21
328:7,11
**reasons** 96:15,17,22
304:16
**REBAR** 2:14
**recall** 10:17 11:1
52:5 72:14,15
73:10 74:12
107:19 151:7
209:23 225:19
**recalled** 30:10
**receipt** 95:1 149:23
328:19
**receipts** 202:20
**receive** 151:1 301:5
**received** 48:13
50:20 52:23 53:2
54:17 55:2,22
83:5,16 89:11
120:24 136:13
144:5 149:15,20
150:22 152:10,24
157:1,2,6 202:8
204:10 224:17
284:14 297:23
317:10 322:19
**receiving** 92:5,17
95:7,17
**Recess** 39:8 161:12
182:18 223:24
**recipient** 283:7
**recognize** 26:17
27:17 209:20
325:7
**recollect** 19:11
233:9
**recollection** 65:7,9
65:10 72:21
139:24 140:5
150:21 260:16
**record** 9:16,19 16:7
16:11 17:9 18:2

23:18,22 26:5,6
27:10,11 28:10
30:11 39:10,18
40:17 47:20,22
68:8,10 69:20
127:6 141:6,7
163:12 166:1
168:7,8 206:13,14
209:16 223:23
225:24 236:13
237:2 238:2
252:23 253:7
259:13 263:17
270:7 296:20
297:1 318:9
326:10 327:15
**record's** 296:24
**recorded** 141:6
327:11
**records** 37:19 74:6
81:2 171:1,3
177:21 190:13
199:24 201:5
203:13,15 209:4,6
231:1 232:20
235:22,23 238:12
252:5 254:4,15
256:16 258:17
306:8 312:13
**red** 189:12
**redact** 176:4 240:13
**redacted** 13:11,12
175:23 203:21
238:12
**redactions** 239:6
**refer** 18:15 40:6
121:4 132:15
**reference** 91:4
93:14 201:18,23
213:12 228:4,5
256:12 271:15
**references** 187:6
**referencing** 195:23
**referred** 37:12
300:4 318:17
**referring** 23:12
64:21 106:12
107:2,6 194:22
211:7 222:8 284:3
**refers** 256:11
**reflect** 9:16 237:2
**reflecting** 5:20 6:5,7
199:4
**refresh** 71:18
150:21 260:16

**refund** 7:6 108:14
108:22 109:9
114:6,20 115:6,9
115:19,21,24
116:1,3 135:16,22
136:14,17 137:20
229:9 255:3,5
262:6,8 263:23
264:3,21 267:19
268:3,7,15,17,18
269:6 270:20
271:11 273:9,14
287:10 299:16,19
300:1,6 303:3
305:4
**refunded** 137:14
**refusal** 11:16
**refused** 285:4
**regarding** 95:1
162:6 299:12
**regardless** 15:13
16:9 213:13,21
249:11 312:14
**regards** 19:12
**Registered** 1:18
327:21
**related** 241:10
**relating** 287:7
**relationship** 75:5,8
75:10,11,13 76:3
76:4,8,10,14,16
76:19,21,23,24
77:2,3,4,19,23,24
80:8 183:19,22,23
**release** 98:16
101:13 147:12
153:18 154:5,7,11
154:11,21 167:6
191:11 192:16
193:9 194:15
197:12,20 198:2
237:6,7 249:15
**released** 83:14
94:12,17,21 95:12
96:8 97:14,18
98:18,21 99:7,10
99:10,12,19 100:8
100:13,14 101:2
101:10 102:1,7,16
102:21,23 104:24
105:1,13,14 144:4
145:21 153:13
197:8,9 320:5,15
322:17
**releases** 84:5

**releasing** 243:10
**relevant** 109:13,14
**relied** 83:21 192:16
196:10 198:1
**relief** 314:23
**rely** 306:11,13
**relying** 84:13
187:13 212:16
**remaining** 171:24
**remains** 236:2
**remarked** 254:6
**remember** 10:16,19
25:18 32:24 71:15
71:18 118:16,18
137:16 138:12,17
139:21 169:18
190:17,17 215:10
215:11 228:10
230:24 316:20
**remembered** 70:14
**remembering**
148:20
**remorse** 166:9,14
**repeat** 62:22 75:21
91:23 105:5
145:16
**repeatedly** 109:17
307:7
**repeating** 145:19
**rephrase** 96:24
212:22 255:10
267:24
**reply** 144:12,15
150:11
**reporter** 1:18 9:1
10:10 34:21 62:21
62:24 105:7
213:17 224:6
254:8 283:15
325:13,17 327:21
**Reporters** 1:22
**represent** 10:3 19:4
19:20 20:5,10
21:8 22:8 27:1
28:13 37:19 41:3
41:14 48:18 50:9
77:1 84:11 85:4
89:4,5 123:23
127:16 133:21
171:11 175:10
190:18 201:22
206:16 304:24
314:17
**representation**
20:21 52:11 63:14

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 107 of 412

USDC, ED of PA            American Environmental Ent. v. Manfred Sternberg, Esq., et al.              Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                   February 7, 2024

Page 351

64:4,4,5,11,23
65:7 85:17 92:2
93:11 123:6 124:4
236:12 324:21
**representations**
49:20 84:13
106:19 197:17
**representative** 12:7
14:21
**represented** 12:2,10
19:8,23 22:19
33:12 39:20,23
64:19 73:9,17,20
85:3,12 86:4,5,13
86:14,19,22 87:2
106:17 113:3,21
114:5 143:15
147:8,23 148:1,11
188:13,13 193:15
194:3
**representing** 86:10
**represents** 75:4
135:15 240:24
241:16 307:18
**request** 3:9 8:7
11:21 17:3,6,8,9
29:8 36:19 47:10
62:7,12 63:3,11
63:15,18 64:6,19
65:1 66:11 111:10
112:4 119:8 120:2
133:15 136:16
141:15 147:20
148:3 163:4
199:23 225:20
227:17,23 229:15
252:4 258:21
266:14 268:9,13
297:19 302:19
303:1,2,2,3,19
313:13 314:22
**requested** 14:5
17:11 144:16
146:15 148:16
264:18 265:5
266:12,20 267:2
292:12 301:17
303:15
**requesting** 246:12
**requests** 13:4,8,13
163:10 225:24
**required** 143:7
237:8 322:20
**requirement** 243:23
247:13

**resale** 112:11
**research** 41:5,8,11
186:19
**reserve** 16:11
**reserved** 9:9
**resolved** 142:5
309:2
**resolving** 310:22
**respect** 35:4 75:14
303:16
**respectfully** 41:4
150:16 237:9
**respects** 14:11
16:14
**respond** 16:9,10
40:20 41:8 209:24
273:8 312:21,24
**responded** 55:24
144:22 271:3
**responding** 150:11
210:6,7 214:11
273:13
**response** 11:14
12:19 13:13 16:1
27:3 36:6 40:9
43:2 50:17 52:15
58:3 61:10 76:9
103:22 128:24
133:24 144:19
146:23 163:16
193:2 210:3
215:17 222:17,19
236:9 297:16
313:24 315:5
319:3 320:18,22
**responses** 5:12
10:18 13:7 175:11
236:13,15
**responsibility** 62:5
89:19 193:6
215:21
**responsible** 159:3
165:17 197:10
**responsive** 210:11
**rest** 172:9 257:8
**restructure** 78:17
**retain** 158:11
**retained** 7:15 86:16
141:20 158:7,17
**retainer** 16:21,22
16:24 17:4,14
19:2
**return** 164:11 181:2
283:10 284:1,16
292:6,18 293:3,4

293:8 303:23
320:4 322:21
328:17
**returned** 159:12
**returning** 141:23
**reversed** 273:17
**reversing** 279:21
**review** 164:12
321:9 322:7
**reviewed** 13:7
237:23
**reviews** 27:24 39:3
87:13
**Revise** 164:7 166:2
**richer** 298:9
**right** 11:9 14:7
20:20 23:16 25:6
31:15 32:8,11
34:15 35:18 36:5
44:4,10,11 45:22
46:2 47:6 49:13
50:21 51:1,8
52:17,22 53:4,9
53:14 54:12 55:8
55:13 57:17 58:5
60:2,5,12 61:8,13
64:1 65:18 68:5
68:13 71:2,17
72:10,12 74:7
77:24 78:4,7,9
80:15 86:6 87:21
88:2,6 89:3,13
90:1,2,4 91:3,9
93:9 94:12,22
95:19 96:11 99:4
99:4,14,21,24
100:4,16 101:17
101:21 104:1
106:14 107:10
108:1,17 109:22
110:17 111:6,15
111:17,20,22,24
112:2 114:15
115:15 116:10,16
116:18 117:14
120:8,22 121:2
122:8,12 124:1,5
124:12 126:9,15
127:4 129:2,4,8
129:10,16,21,23
130:3,8,12 131:16
131:21 132:18
133:14,19 134:21
142:1,9,15,23
143:21,23 144:23

145:5,9,14,17
146:5 147:1,17
151:16 152:20
156:4,20 158:9,19
159:1,10,13,16,23
160:1 162:9
163:10 164:8
165:14,18 166:3
168:5 169:10,12
170:4,9,18 171:2
171:3 172:13
173:9 174:4,6,24
175:2 176:21,22
177:5,10,14,20,20
178:6,7,11 179:12
179:14,16,18,19
181:9 182:7
184:21 186:9,11
187:11,24 188:7
189:23 191:7
192:9,14,20,23
193:3,18,23 194:4
194:11,17 195:16
195:24 196:2,4,20
197:6 198:12
201:19 204:16
208:11 210:17
211:23,24 212:5
213:2 214:3,7,17
214:19,20,23
215:2,24 217:6,9
217:24 218:7
219:6,7,9 220:1
220:15,17,17,20
221:4,19 222:3,19
222:24 223:2,8
224:23 225:4,5
227:1,3,11 229:5
229:9 231:1
232:20,23 233:23
234:2 235:6,14
237:13 238:20
239:10 243:22
244:23 247:2
249:16 250:16,24
253:19 254:2,16
255:5 256:14,16
257:3,5 259:11,12
259:15 261:20
264:12,13,14
267:13 269:16
270:3 272:8,21
273:14,19 275:5
278:1,11,17 280:1
280:1,2,5,6,13,16

282:21 283:3,5
284:1,2,6,10,16
284:17 286:22
287:11,17 288:19
289:17 290:24
291:19 292:10,13
293:16 294:23
295:8,21,24
297:10 298:10,10
300:6 301:11
304:17 306:16
308:4,15 309:12
310:2,11 311:11
311:12 312:19
318:23 319:7,13
319:24,24 321:6
321:17 322:10
323:6,8 324:14
325:18 326:7
**right-hand** 279:5
**rights** 16:11
**ring** 228:15
**RK** 307:16
**Road** 1:17 2:15
**Robert** 307:17
**ROI** 69:12 70:1,5
71:23,24
**role** 74:22 77:19
79:23 80:1
**Rolls** 81:5
**Rose** 1:18 327:21
**route** 1:22 109:18
124:23
**routing** 259:24
**rows** 173:1
**Royce** 81:5
**Rule** 39:21
**Rules** 14:24 15:1
**run** 14:12 103:20
**running** 215:19
**runs** 36:2
**Russell** 118:13
**Ruthie** 317:6

_____
S
_____

**S-h-l-o-m-i** 201:18
**s/** 327:21
**safekeeping** 308:3,7
308:11,14,17
**Safety** 10:4 16:15
18:22,22 22:12
24:20 25:5 29:18
29:23 30:14,14,18
37:17,22 38:9,10
38:22 39:22 42:1

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 108 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                February 7, 2024

Page 352

42:8 44:11 47:24
48:3,4,20,24 49:2
49:8,21 50:9,18
51:4,13,18,24
52:16 53:11,14,15
54:3,24 55:11
56:13,24 57:5,20
58:6,8 59:6,8
60:12,19 69:1
70:9 74:5,18,22
75:6 77:4,9 78:2
80:23 81:14 82:2
83:5,15,17 84:1
85:12,14 86:4,19
87:2,20,23 89:19
90:9,23 95:2,9
97:8 107:23 110:2
110:7,12 121:2
132:15,16,16,20
137:20 143:19
149:9 156:3,23
158:8,24 159:12
159:15,18 170:13
176:10 181:4
182:24 186:5
187:10 198:21,23
200:7 211:20
219:19 221:10
242:7 243:8
247:17 248:6
284:22 309:6,15
313:18 314:2
316:16
**SAFETYhouse.co...**
4:17
sale 3:20 5:10,13
66:10 67:7 80:1
80:13 94:4 100:3
102:5 103:1,5,13
103:24 104:9,21
105:2,10,15 146:2
147:15 148:4
173:7 174:23
184:15 185:4,8
186:4 187:23
191:17 192:7
193:19,20,21,22
195:12,15 196:15
196:17 245:19
246:9,10 285:8,11
315:9
sales 18:21 24:14
31:5 43:16 195:9
219:19 247:10
**Sam** 4:8,14 5:18

6:12,21,22,23 7:6
16:19 18:12,13,18
19:4,8 20:2,9
22:13 28:5 29:17
32:1,4 33:7,9,12
33:22 34:8,8,13
35:13,21 36:13,21
37:2,6 40:13,15
44:9,17,21 45:1
45:15 47:11,18
49:4 53:3,8,16
54:4,4 59:18 60:8
60:21 70:21 71:11
77:14 81:3,13,24
83:13 85:7 107:17
109:21 110:7,21
111:1,6,15 113:19
116:7 131:9
133:23,24 134:7
134:18,19 135:6
135:19,19 136:1,3
136:4,21,23
139:17 143:17
149:5,10,12
166:22 167:2,4,6
167:22 168:2
169:17 178:20
180:9,20,20,23
181:5 182:15
183:5,17 187:16
187:22 188:2,6
189:17 191:15,19
192:10,11 193:17
194:11 201:18,23
202:4,13,16,23
203:8 208:8 210:5
212:12 213:2,20
216:4,11,12,13,14
216:22 228:17
229:1,3 230:3,11
230:13 231:10
232:7,19 234:19
234:23 235:4
241:11,12,14,20
242:8,17,24 243:2
243:6,10,16,18
244:2 245:8,21
247:1,18 249:5,9
250:11 255:18
256:11 261:18
262:4,17,22 263:9
263:18 264:3,14
264:17 265:3,11
265:23 266:11,17
266:24 268:2,22

269:1,1,12 270:20
271:2,10,13
272:23 273:5,16
274:1,1,18,24
275:22 277:14
278:10 279:7
280:9,17,23 283:5
284:8,9,22 285:14
285:17,21 286:2,3
286:21,23 287:7,7
288:11,17 292:4,5
292:12,15,17,18
293:2,7,9,12,18
294:6,7,8,13,16
295:4 296:5 297:8
297:12 298:19
299:10,11,11
301:2,13,20
302:16 304:4,18
305:3,10 315:2
**Sam's** 29:24 61:12
61:20 115:11
133:24 179:9,24
184:22 249:13
267:5 273:2 279:9
290:5 292:17
296:13
**Sam/Manfred**
152:9
**SAMROSINC**
241:15
**SAMUEL** 1:10
satisfaction 342:6
satisfied 299:22
305:10
save 140:12,22,23
141:3 142:21
saved 141:2,12,13
savvy 297:16
saw 149:4 186:17
saying 10:11 32:1
58:24 66:17 67:6
67:14 89:6 91:1
110:16 118:18
131:13 132:18
136:3 151:8 152:9
181:4 183:14
199:11 200:15
208:22 209:1
212:16 214:6,14
214:14 215:8,13
216:7 222:11,13
231:10 232:8
255:23 256:5
260:6 267:5,9

269:1,3,4 271:15
273:22 275:16
277:14 278:13
292:12,14,14
293:9 294:17
298:23 300:18
**says** 14:10,23 23:15
26:21 28:7 44:7
47:4 49:12,12,13
49:14 52:13 53:1
54:7,10,10,11,13
54:15 61:7,7,8,8
63:23,23,24 64:2
64:2 67:8 68:23
78:12 82:14,15
88:3,14,18 90:5,7
90:23 91:4,10,10
91:15,15 92:22
93:13 94:10 96:9
97:17 98:19 99:4
99:5,8,12,16
100:1,15 103:2,3
103:4,16 105:1,14
105:18 106:5
108:10 110:18
113:8,20 118:13
121:13 124:15
125:21 126:5,9,9
126:21,21 127:2
127:13,19 129:13
129:15,17,18,21
129:22 130:2,5,18
130:18 131:18,18
131:21,22,23
132:3 134:19
135:5,7 136:11
144:21 149:8
150:20 151:7
152:21 153:13
154:3,4,19,20,22
155:10 156:10,21
157:1,15,15
160:12 162:16
169:23 174:2,18
177:1 182:6,8
191:8,21 192:23
193:8 196:2,3
202:4,23 205:13
205:15,18 206:19
206:20 208:11,15
210:16,22 211:6
211:12,13 212:1
213:4,11,13 214:2
214:17 215:1,19
216:1 220:2 221:5

221:24,24,24
222:7,23 223:12
223:14 224:16
226:7 228:3 231:5
232:24 237:4
238:20 239:3
241:14 243:19
244:8 247:1 255:3
255:7,19 256:22
256:22 257:1,3,4
258:11,24 259:14
259:17,22 261:19
261:20 263:22
264:11,16 265:10
265:21 266:10
272:2 278:1,15,21
279:19,20 282:12
284:7 286:21,23
287:21 289:21
293:16 294:8
297:4 298:22
300:13 303:14
304:6 307:16,20
308:2,16 309:3
310:12,20 318:24
318:24 320:24
321:4,4,7,8,9
322:10
scanned 263:4
schedule 222:21
schedules 13:21
scheme 239:14
255:8 314:9
**School** 38:12,15
219:24 220:23
**Schools** 220:19
221:12 222:3
**Schrader** 324:12
scope 17:12
scrambled 282:24
284:5
screen 44:9,13 45:2
45:11,23 46:14
screw 216:4
screwing 215:23
screws 166:8
**Scully** 2:21 4:8,14
4:16 19:2 43:12
44:10 49:21 54:23
60:2 61:10 62:6,8
63:11,18 64:20,22
75:5 77:9 83:12
83:20 85:6 87:6
105:22 118:11
119:16 133:23

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                February 7, 2024

Page 353

134:11,18 136:2
136:21 149:6,9
152:1 160:15
167:23 168:3,16
170:20 181:15
200:24 203:19
208:18 214:22
232:4 257:17
259:1,5 270:5
295:17 318:3
**Scully'** 41:18
**Scully's** 30:24 41:18
52:5 75:5 83:9
121:2 170:13
**search** 190:12
**searched** 190:18
**season** 214:18
**second** 3:8 11:5
13:20 16:1 26:20
27:9 40:3 47:21
121:7,13,17
122:10 136:11
139:11 147:3,19
172:14 178:4
202:22 211:15
240:13 250:6
273:16 287:22
**Secretary** 252:10
**section** 98:14
153:15 154:1,3
177:1
**security** 3:11 17:22
18:2 22:5 266:1
**see** 14:15 15:5 26:4
26:23 29:19 31:21
32:19 35:9 36:9
41:19 43:13 47:13
47:17 70:17 77:11
94:8 97:23 106:9
106:10 108:24
110:4 112:12
113:5 116:14
118:14 121:21,22
123:5 125:6,16,24
126:2,11 127:3
129:12 130:5,20
135:17,18,23,24
139:19 142:7
144:7,8,20 145:23
147:10 148:6,7
149:2,4,17,18
150:18,19 152:6
152:16,17 155:4,5
155:12,13 156:1
162:18 163:1,7,23

164:5,6,14,21,22
165:20 167:15
169:5,7 171:21
172:16,21 173:5
173:14,19 174:16
174:19 175:16
177:1,8 190:13
191:16,21 202:9
203:1 205:21
206:5 207:1,8
209:1,5 210:2
211:1,23 213:13
213:16,24 214:11
215:6 217:6,9,22
218:18,22,23
219:13,14 220:4,8
221:13 226:5,6
228:4 233:17
234:3 238:23
241:11,14 247:8
250:5 252:8
257:21 258:1,9,12
258:13 261:23,24
263:20,24 265:1
266:15,16 269:7,8
269:21 282:19
286:24 287:8,20
287:21,23 289:1
289:23 292:8,11
293:24 294:14,15
294:20,21 295:12
297:20 298:11,20
298:22 300:2,3,24
301:9,10,18,19
303:7,8 304:5,6
304:18 305:6,7,13
305:15,20 307:24
308:1 312:15,16
313:13 314:19
315:24 316:1
317:24 318:18,19
320:7 321:13
323:20
**seeing** 65:4 222:16
222:18
**seeks** 314:24
**seen** 22:17 71:2
167:19 183:17
184:24 185:12
192:6,7 195:21,22
258:21 288:10,13
288:15,17 324:3
324:11
**SEGALLA** 2:7
**self** 189:11

**self-destructing**
312:12
**self-evident** 127:7
**self-incrimination**
11:11
**self-serving** 138:17
138:21
**sell** 70:4 214:17
259:9
**seller** 53:16 54:6,9
55:12,14 59:19
69:23 77:6 78:20
79:12 82:11,17,20
83:10 84:14 87:24
88:16,21 89:9
91:4 94:5,12,18
95:13,21 96:8
97:11,14 98:16,18
98:21 99:7,13,20
100:2,8 101:3,10
102:1,4,8,16,21
102:24 104:24
105:2,13,15 106:5
106:17,24 107:3,9
107:13,22,24
136:9,24 137:2
145:7,22 147:14
154:6 157:22,24
158:3,17,18 159:6
187:16 191:9,12
193:10,11,11
194:16 197:13,21
237:6 249:15,19
**seller's** 80:2 84:2
88:3,5,9,20,23
89:1,2,8,11,15
90:5 91:5 92:19
93:15,18 94:3
106:7,12 107:5,7
108:10 147:15
**sellers** 79:6
**selling** 187:10
192:23
**sells** 258:7,7
**send** 29:17 52:19
57:18 58:4 62:12
63:4 79:12 83:9
110:22 125:12
149:5 155:14,17
155:18 163:12
164:12,12 180:6
180:10,20 184:1,6
184:7 225:7
243:19,24 244:2
246:24 247:1

249:1 256:7
258:14 282:24
284:5,9 286:1
302:23
**sending** 78:6,19
79:6 80:4 84:14
93:4 97:8 180:12
**sends** 89:8 95:3
317:23 318:10
**sense** 161:10
**sent** 13:24 14:3 29:4
40:3,5,9,12,14
44:3,22 45:22
46:5,13,15,17
56:2,4 58:3,5
82:20 84:19 98:17
110:15,22 111:6
111:19 116:18
124:7 125:2,10,13
128:2 133:23
134:6,18 135:8
139:21 146:23
149:6 152:14
156:24 160:7
163:16 168:2,17
168:19 172:19
175:13 176:21
189:2 195:24
206:4 207:7,9,10
208:20,21,24,24
217:24 222:7
223:10,16 224:8
225:13 240:5
241:20 242:19
243:7 247:9
248:13 253:3
256:7 259:10
261:9,12 262:17
263:4,8,18 270:24
270:24,24 271:2,3
279:12,13 281:3
286:6 306:23
**sentence** 92:7,22
**separate** 19:2 77:13
94:24 176:10
239:13 283:14
**September** 39:21
202:24 203:9
305:2
**serial** 160:21
**series** 4:9,11,19 6:9
6:18,20 7:10 10:5
198:16 201:6
266:6
**serious** 256:20

**served** 13:3 133:16
175:12 324:9,23
325:1,6,10
**Service** 257:5
**services** 17:16
219:10 221:2
240:3 314:18
**serving** 77:5
**set** 77:20 82:23
197:18 198:3
221:6
**Seth** 2:8 12:11 96:3
175:13
**sets** 97:24
**seven** 89:1 98:24
100:2,10,17,22
102:14,17,19
**share** 171:15
**shared** 171:23
**sheet** 3:10 5:10
172:15 328:8,10
328:12,14,17
330:10
**ship** 214:22 218:17
**shipment** 37:24
110:17 131:11
148:5 149:21
162:7
**shipments** 37:16
**shipped** 36:8,14
38:2,4,5,14
143:18 148:2
149:15 151:9,16
157:3 218:17
221:18 284:14
299:12
**shipper** 148:16
**shipping** 131:10
144:16 146:14
149:20 221:15
280:18
**shit** 31:19 32:5 35:4
**SHLOMO** 1:10
**shoes** 218:5
**short** 39:7
**shorthand** 327:12
**shortly** 118:10
**shot** 44:9,13 45:2,11
45:23 46:14
**show** 42:4,9 56:16
56:21 63:15 64:7
64:9,15 65:1
74:11 90:21,22
116:24 117:13
137:18 202:20

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 110 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 354

233:18 235:16
274:6 302:10
318:9
**showed** 43:22 225:9
272:9 288:10
**showing** 46:1 185:4
185:15 186:13
187:23 193:13
196:16,18,19
206:17 225:6,18
235:23 244:12,16
245:9 264:15
**shown** 123:1 174:23
176:24 220:23
221:15 246:18
**shows** 28:11 75:19
111:9 128:8
171:13,19 172:11
173:8 175:15,18
175:18 187:9
199:6,8 212:10
218:20 240:14
254:18
**Shraga** 168:10,12
168:15,16
**shut** 35:5
**sic** 143:20 146:4
149:21,24 166:10
249:10 264:24
266:14 287:11
300:1 303:6 304:4
307:18,23 315:23
318:23
**side** 279:2,6 280:21
291:9
**sign** 9:5 52:19 53:1
53:6,16 61:14
70:20,21 120:5,8
120:10,12,14,19
161:16 162:2,11
164:24 166:3
193:20 328:11,15
**signatory** 66:9
90:19
**signature** 28:17
29:6,12,24 30:18
30:24 31:7,13
44:9 45:11,12
46:19 47:12 52:5
59:12 61:13,21
70:17 90:11,11
304:4 330:15
**signed** 25:1,7,13,17
25:19,21 26:18
27:18 29:22 30:2

30:15,16,16 43:22
44:10 46:19 47:4
48:14 52:23 53:3
53:8,10,11,11,13
53:15 54:5,9,18
55:2,9,13 56:3,4
57:1,14,16,19
59:17 60:4,8,21
61:11 85:14
147:15 148:4
150:16 152:15,19
193:19 285:18
**significant** 315:16
**signing** 193:22
280:5 328:13
**silly** 143:8
**similarly** 311:13
**single** 245:19
**sir** 18:11 119:11
**sit** 286:16
**sitting** 10:10 11:20
12:11 19:7 64:10
65:6 116:2 225:16
235:6 291:6,17,17
**situation** 310:18
311:3,15
**six** 34:12,13 88:24
97:11 98:19,23
99:1,3,4,23 100:9
100:17,22,24
101:6,21,21
102:14,17,18
105:1,14 230:22
272:12
**skid** 160:14,15,17
161:1
**skids** 224:17 285:19
**slaver@goldberg...**
2:8
**small** 123:5
**social** 3:11 17:22
18:2 22:5 312:12
**Sokolski** 1:13 2:18
22:15 314:16
324:2
**sold** 32:18,23,24
121:1 179:6
213:11 214:2,5,6
**solely** 113:2
**somebody** 221:18
**son** 20:14,18,20
21:1 33:5 114:24
115:3 295:20,22
297:5,12
**song** 180:9

**SOP** 99:9,19 100:13
102:13 103:3
**sorry** 29:1 46:7
64:8 67:15 72:4
74:5 128:1 132:15
137:10 144:9
155:21 156:22
179:15 182:9
183:16 211:15
254:11 261:7
264:17 266:23
276:8 280:24
285:14 287:14,16
289:18 293:22
298:17
**sort** 9:19 32:14
178:17 183:21
226:15 228:8
266:1
**sound** 278:11
304:17
**sounded** 278:18
**sounds** 74:7 161:11
276:16,20 278:5
283:4
**source** 302:7 305:20
**SPA** 23:5 24:9,13
24:14,17,22 25:1
25:12,17,22 26:18
27:18 43:10 44:2
44:22 49:3,11,16
50:24 51:9,15,20
52:3,9 54:5 55:19
56:12 57:1,21
58:9,23 59:2,3,9
59:16,21 60:1,7
60:21 61:18 65:11
65:16,20 68:16,24
69:3,7,10,21 70:8
72:1 74:14,15
75:15 77:14,20
80:18 81:10,17
82:14,15 86:11,13
87:10,15,20,22
88:12,21 89:17
90:6 92:22 93:13
93:21 95:1 97:5
98:3,6,10 103:15
103:16,20 106:4,5
106:22 107:20
108:6 110:1,3
145:8,11,13
153:15,20 154:2
155:21 156:7,22
157:9,10,14 182:6

187:7 191:8 193:8
226:16 230:4
237:4
**SPA'** 66:11
**space** 328:16
**SPAs** 307:22
**speak** 30:12 68:8,10
90:3 137:15
200:12 201:5
202:18 203:13
296:20
**speaking** 46:8
139:21
**speaks** 320:1,21
**specific** 76:9
**specifically** 140:21
142:3
**specified** 156:24
**speculate** 271:17
288:5
**speculation** 212:15
**spending** 240:15
**spoilation** 46:24
**spoke** 75:16 76:20
85:21 87:9 93:6
93:10 134:20
138:13 144:17
146:15 181:19
294:3,8,10 296:11
**spoken** 85:19
139:23
**Spoliation** 142:12
**spreadsheet** 37:5
**square** 167:2
**Stacey** 20:4,7
**Stahl** 307:18
**stamped** 162:15
**stamps** 209:17
**stand** 295:2
**standard** 70:19,23
74:19,20 97:24
98:12
**standing** 327:5
**start** 139:11 206:4
247:20 307:1
318:21
**started** 148:10
299:23
**starts** 214:18
287:22
**state** 41:15,21 42:12
122:1 141:9
157:11 252:10
278:8 323:23
**stated** 51:19 138:4

**statement** 41:21
42:5,12 48:18
66:13 100:24
135:11 190:24
253:18,23 254:7
257:5,6 289:20
293:11,13
**statements** 115:15
136:12
**Staten** 126:19
**states** 1:1 94:20
112:9 135:1 190:3
310:7
**stating** 135:14
264:22
**stepdaughter** 20:3
246:23 247:2
248:17
**steps** 100:8,16
312:9
**Sternberg** 1:8,8,16
2:11,12 3:8,8,10
3:12,13,15,17,18
3:20,21 4:5,7,9,10
4:11,13,14,15,17
4:19,20,21 5:5,5,7
5:8,11,13,14,15
5:17,19,20,21 6:5
6:5,7,8,9,11,12,14
6:15,17,18,19,20
6:23 7:5,8,9,10,11
7:13,15 9:11 10:1
12:7,9 13:16,17
14:11 15:1 18:6,7
20:10,13,16 21:8
21:9,21 22:8,9
26:13,14,17 27:21
27:22 28:2,4,11
28:15 34:7 38:24
39:1,23 40:1,12
48:14 52:24 54:18
66:22 69:16 75:14
83:4 85:6 91:20
92:23 93:22 122:6
123:19 125:15
127:12 128:6
133:4,22 139:4,16
139:16,18 144:23
146:19,20 147:5,7
148:22,23 149:13
151:21,24 155:23
161:22 167:11
168:24 171:7,11
171:20 175:6,7,12
182:21 185:22

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                    February 7, 2024

Page 355

| | | | | |
|---|---|---|---|---|
| 196:18 199:10 | **stuff** 34:14 44:18 | **supplier** 108:20 | 140:24 170:2,6 | 146:7 165:19 |
| 201:13 205:4 | 192:9,10,11 | 116:21 117:3 | 173:16 174:20,20 | 167:8 240:20,22 |
| 206:11,16 209:14 | 211:10 227:18 | 189:15 | 180:1 205:9,23 | 241:16 242:13 |
| 209:17,18 217:12 | 231:1 285:10 | **Supplies** 38:18 | 206:1 211:19 | 248:16 252:2 |
| 218:11,15 238:9 | 307:2,5 | 72:24 307:18 | 215:14 231:20 | 255:19 265:19 |
| 238:13 252:20,24 | **stupid** 125:4 132:7 | **supply** 112:6 | 233:19 235:3 | 267:14 270:23 |
| 253:15 254:3,7,12 | **subject** 20:11 21:12 | 149:22 225:21 | 253:5 257:19 | 271:2,3 274:9,12 |
| 260:22 261:21 | 28:3 139:15 152:3 | 303:4,17,18 | 267:4,18 269:16 | 274:22 275:6 |
| 262:22 263:7,13 | 156:6,7 328:13 | 305:12 307:22 | 270:9 272:11 | 277:4,10,16 |
| 264:8,20 266:3,12 | **submission** 121:5 | **supplying** 302:21 | 278:12 288:19 | 278:14,19,20 |
| 266:19 267:2 | 124:22 126:3 | **SUPPORT** 8:1 | 289:1,4 294:24 | 283:6 290:4 |
| 269:14 282:12 | 130:1 | **supposed** 79:8 | 299:23 312:8 | 291:17 304:15 |
| 283:19 291:8 | **submit** 41:4 60:5 | 144:4 149:22 | 325:3 | 307:7,8 309:6 |
| 298:14 299:2,18 | 61:11,13 237:9 | 179:4 181:22 | **taken** 1:16 27:13 | 315:7 321:18,21 |
| 300:20 301:5,17 | **submitted** 50:10 | 184:10 194:14 | 39:8 100:9 161:12 | 321:23 322:1 |
| 302:12,19 303:19 | 120:6 127:11 | 217:16 226:24 | 182:18 215:8 | 327:9 |
| 303:24 304:21 | 130:9,13,16,21 | 302:22 322:17 | 223:24 293:14 | **telling** 37:7 49:16 |
| 306:19 307:13 | 185:13 | **sure** 10:6 17:7 39:6 | 327:7 | 61:19 64:10,14 |
| 313:3 315:4,13,14 | **subpoena** 300:9 | 64:6 72:6 95:23 | **takes** 104:8 257:18 | 135:19,20 136:6 |
| 323:15 324:1,1,6 | 302:6 | 96:6 97:11 110:20 | **talk** 20:19 21:13 | 136:21 137:2 |
| 324:19 326:3 | **subrogate** 113:24 | 124:10 125:18 | 65:11,15 72:23 | 162:1,4 164:1,23 |
| **Sternberg's** 3:11 | **Subscribed** 330:17 | 145:2 149:4 168:2 | 148:19 204:23 | 188:5,22 201:20 |
| 40:9 | **substance** 330:9 | 180:13 183:4 | 205:1 293:23 | 202:23 208:24 |
| **Steve** 172:20 | **Subtotal** 130:10,11 | 184:8 191:13,18 | 294:11 297:5,6 | 264:2 265:11 |
| **Steven** 314:18 | **subtract** 170:6 | 194:14 197:11 | **talked** 20:20 73:13 | 266:17,21,22,24 |
| **Stick** 318:6 | 174:12 207:6 | 199:2 209:8 | 75:18,20 143:11 | 267:19,21 292:15 |
| **stick-um** 207:3 | 211:20 235:4 | 217:13 244:21 | 148:18 181:12 | 294:13 295:3,4 |
| **sticker** 26:9 253:5 | **Sucks** 269:5 273:8 | 246:3 275:11,19 | 289:14 324:11 | 296:13 |
| **stipulate** 238:11 | 273:12 | 280:20 296:22 | **talking** 21:15 56:18 | **tells** 247:18 312:7 |
| 323:13,21 | **sue** 162:5 227:11,14 | 324:20 | 65:19 87:19 | 312:17 |
| **stipulated** 9:7 | 230:18 | **surgical** 69:5 | 113:10 118:19,20 | **ten** 180:8 242:14 |
| **stipulations** 8:16 | **sued** 226:9,9 230:18 | **surprise** 73:19 85:5 | 119:13 128:21 | **terminates** 157:11 |
| 9:2,3 | **suffering** 10:22 | 224:16,19 286:11 | 163:8 204:14 | 157:18 |
| **stock** 251:6,8,9 | **suffice** 303:6 | 286:14,15,16 | 211:8 222:14 | **terms** 65:12,16 |
| **Stoner** 118:13 | **suggest** 212:20 | **suspect** 25:24 81:20 | 247:12 265:22 | 81:10 84:21 97:5 |
| **stones** 114:14 115:5 | 292:22 | 81:23 156:9 165:3 | **talks** 259:7 | 98:3,6,9 145:13 |
| 116:6,9,14 117:19 | **suggested** 217:11 | 187:2 265:7 | **TATE** 1:21,21 | **test** 5:6,19 18:22 |
| 159:22 167:1 | 267:8,18 268:2,6 | 275:22 | **Taylor** 19:20 20:1 | 69:4 74:10 112:10 |
| 212:3,24 294:23 | **suggesting** 210:10 | **switch** 161:7 | 246:22 247:2,9 | 112:11 128:8 |
| **stop** 34:17 66:14,16 | 281:3 | **sworn** 9:12 20:15 | 250:11,11,16,23 | 143:16 150:4 |
| 105:24 232:6 | **suggestion** 143:7 | 25:16 61:1 65:3 | 250:24 | 152:4 156:20 |
| 247:14 267:20 | **suggests** 23:21 | 102:9 262:12 | **team** 303:14 | 159:16 160:9,17 |
| 270:6 272:17,17 | 247:12 | 274:9 310:17 | **Teamsters** 228:15 | 160:21,23 162:7 |
| 296:14 318:5 | **suing** 165:4 227:1 | 327:9 330:17 | **telephone** 140:1 | 170:2 173:8,11,13 |
| **storage** 4:5 121:20 | **suit** 146:8 324:22 | | 314:21 | 173:16,17,23 |
| 126:18 127:22 | **Suite** 1:22 2:4,9,16 | _____ | **tell** 28:16 30:13 | 174:9,20,21,22 |
| 128:10 192:13 | **Summons** 7:13 | **T** | 42:9 45:15 47:24 | 178:6,10 184:17 |
| **story** 164:1 272:14 | **supervision** 327:13 | **T** 327:2,2 329:2 | 49:21 51:3,8,13 | 184:19 185:5 |
| 272:16 | **supplemented** | **table** 21:14 | 55:20 56:23 61:17 | 186:9,15 188:20 |
| **straight** 259:19 | 225:24 | **tail** 257:17 | 86:10,18 87:1,6 | 189:23 190:1 |
| **Street** 2:9 178:21 | **supplied** 24:21 48:1 | **take** 14:23 26:9 | 101:5 109:8,14 | 191:21 192:20,22 |
| **stressed** 210:24 | 49:3 51:14 52:2,8 | 39:6 45:2 68:15 | 115:20 116:20 | 198:9 216:6 218:7 |
| **strike** 237:15,19 | 54:5,11 55:12 | 82:2 85:8 101:15 | 117:24 126:22 | 218:16 223:19 |
| 248:18 | 105:3,16 171:12 | 114:20 123:6 | 128:17 133:10 | 224:11 225:2,7 |
| **structure** 79:3 82:9 | 199:24 | 124:3,24 133:6 | 135:20 143:9 | 226:11,12 227:21 |
| | | 134:5,13 140:19 | | |

Case 2:22-cv-00688-JMY    Document 200-1    Filed 10/01/24    Page 112 of 412

USDC, ED of PA            American Environmental Ent. v. Manfred Sternberg, Esq., et al.            Wednesday
No. 2:22-CV-0688 (JMY)            Deposition of Manfred Sternberg, Esq.            February 7, 2024

Page 356

234:14 243:9,12
244:5,13 245:9
247:4,10,24 248:7
255:10 285:1
299:12 302:21
303:4,23 307:23
315:10 318:23
319:4 322:16
**testified** 9:12 30:1
36:20 268:4
**testifies** 160:20
**testify** 47:9 83:21
96:3 106:1 202:5
202:17 204:6
307:2,5 326:8
**testifying** 63:9
232:5
**testimony** 19:8
20:15 25:16 30:4
30:7 61:1 62:14
63:6 80:12 82:13
101:24 102:9
115:23 137:11
158:20 160:6,7,8
195:4 200:2
237:19,20 238:2
248:19 262:12
267:23 274:9
275:13 278:13
281:13 304:7
305:16 306:4
310:13,17 317:9
326:4 327:6,10,15
**tests** 156:20 160:3
**Texas** 39:19,24
41:16,22 42:1
43:2 47:24 49:15
49:20 50:10,23
51:3,8,22 52:15
55:8 56:24 58:7
59:7 63:10 64:18
104:6 109:8,15
113:14 115:20
117:2,16,23 118:5
120:6,21 127:17
130:9,21 146:8
240:8 252:9
313:16,24 322:4
324:23
**text** 4:7 5:14 6:14
6:15,17 45:3,7,23
46:1,13,14 47:1
47:12,13 109:17
111:22 133:22
134:6,18 138:1,5

181:21 194:9
201:24 202:15
214:9 255:18,22
256:4 264:11,15
266:10,18 267:1,7
268:21 271:20
272:1,22 273:15
274:6 275:6,7
276:12,12 277:14
278:17,19 279:20
279:24 280:4,9,13
280:16 281:2,6,14
281:21 288:20
289:18,19 290:4
290:14 291:8
292:16 299:16
312:11
**texted** 135:6 181:21
**texting** 276:22
**texting/emailing**
213:14,21
**texts** 46:21 135:7
178:16 266:6
269:10,11,11,12
269:13,15,20,21
270:12 282:11
287:6,24 288:1,3
288:12,13,17
290:24 291:2
305:18
**thank** 24:9 29:14
39:9,17 47:1
53:13,13 93:2,12
138:19 141:22
279:22 303:21
321:8
**thereof** 327:18
**TheSafetyHouse**
28:3 139:15
**THESAFETYHO...**
1:5
**thief** 262:2
**thing** 16:4 29:7
120:12 175:2
180:18 211:16
228:6 251:13
256:2 259:11
305:19 306:17
**things** 31:18,18
34:18 35:13,14,14
35:21 48:23 56:19
70:20 89:23,24
108:16 117:15
152:21 213:15,23
214:21 230:23

267:4 271:1
273:11 286:22
**think** 11:1 16:23
17:1,11 36:15,22
37:4,5 41:11 56:1
57:15 58:10 61:14
61:17,24 62:2
67:19 71:22 73:15
75:16,19,22 79:3
79:23 81:12 87:9
87:13,16 88:10
89:9 100:11,15
101:4 103:16
109:13,14 115:21
117:1,22 118:4
123:17 126:8
129:8 132:22
133:17 134:10
137:7 148:18
152:12 153:16,22
154:3,17,18 155:3
155:15 157:5,8
160:2,10 167:23
167:24 174:2
179:11 188:1,14
188:24 189:18
190:21 195:10
198:10 199:1
203:16 209:7,9
210:7 211:12,13
212:19 214:9
219:2 226:9,12
227:7,9 228:6
231:8 233:5
235:21 236:17,21
237:1 238:3,6
246:11 249:13,14
258:15 260:3,5,14
260:18 262:3
263:3 268:20,22
269:4,15 271:8,15
271:20 272:5,13
273:7,11 276:9,10
276:17 278:2,7,16
281:9 284:12,21
286:5 288:15,17
288:22,24 289:21
290:1 293:5,7
295:7,9 296:18,19
300:9 304:15
306:14 308:12
310:24,24 311:2
312:22 319:8
**thinking** 138:18
**thinks** 322:23 326:6

**third** 30:18 31:13
40:12 41:2 54:14
75:3 112:8,21
172:18 208:14
**thirty** 328:18
**thought** 15:11 61:4
73:21 119:2
127:23 128:20
148:13 180:23
203:24 231:8
249:11 311:14
312:4 321:18
**THOUSAND** 310:7
**threaten** 230:23
**threatened** 140:8,9
227:11 230:11,17
**threatens** 227:12
**threats** 140:7
227:13,20
**three** 13:1 15:4 43:4
75:3 88:4,7,24
98:9 100:17,19
121:15,15 131:20
176:14 177:23
204:24 208:11
218:20 219:15,19
232:21 273:10
**THS** 132:13,14,16
132:17,19 148:2
169:6,9 174:9,12
178:11
**Thursday** 28:4
**ticker** 23:9,21
**till** 214:18 280:22
**time** 9:9,20 16:5,5
16:10 21:6 34:17
55:24 61:9 62:9
63:12,19 64:21
85:3 86:18 87:1,6
93:3 100:23
101:17,20 114:16
134:14 138:12
140:11 147:19
165:9 181:15,24
182:16 199:24
260:14 270:23
271:4,12,14,16,18
272:10 273:21,22
274:4 279:12
285:7 286:15
301:15 315:17
327:7
**timely** 141:23
144:19 150:5
**times** 12:16,24 13:1

43:4 165:7 232:21
272:12 295:3
**tired** 31:17 35:7
36:1 44:18
**title** 83:16 84:4
94:10,14,15,21
95:11,24 96:7
97:12,17 98:17,19
99:5,16,20 100:6
100:12,14 101:1
101:10,12 102:2,6
102:15,19 103:4,6
103:8,14 104:9,23
105:12 145:20
147:16 153:14,17
153:19,19,23,24
154:4,7,12,19,21
184:15,16 185:5
185:10 191:10
192:4 193:8,14
194:2,14,16 195:1
195:19 196:19
197:11,19 198:8
225:2 237:5
248:14 249:16
252:1
**titled** 93:21
**today** 10:6 12:5
13:22 15:15,17,22
16:1 19:7 20:15
34:23,24 35:1
41:21 42:5,23
62:15 63:7,9,9
64:10 65:6 101:24
102:10 116:2
134:24 142:1
147:9 148:12
149:16,19 150:8
152:1 153:3,4
164:16 225:16
240:12 252:2,3
268:1 272:12
281:13 286:16
**told** 30:15 32:4,17
33:23 38:4,5
63:10 64:18 81:20
83:13,18,21 84:2
85:4 86:8,12 93:2
95:21 113:13,14
113:19 114:14
116:13 119:12
126:23 132:5
140:12,21 143:4
144:11 146:9
149:13 151:9,11

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 113 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 357

151:11,14,15
153:4,7 163:21
167:21 180:10,17
180:20,20,23
181:15,19 198:18
221:20 222:6
224:22 241:17
243:13,16 249:5,9
250:11 260:15
268:2 274:4,17,20
274:21 275:2
276:1,24 277:1
288:7 293:18
297:14 302:2
304:11 311:13
312:2 318:21
**tomorrow** 35:5
143:20 146:10
151:12
**top** 4:9,11,19 6:18
6:20 7:10 14:18
15:6 23:9,23
26:20 43:20
124:18 125:21
127:19 205:9,24
205:24 221:3
257:23 264:11
272:1 274:24
279:19 282:11
286:22 289:19
292:5 320:7
**topic** 298:12
**topics** 161:8
**total** 74:8,10 129:16
129:22,22 130:18
130:20,20 173:21
174:8,11,12,18,20
174:21 176:15
177:1,2,19 179:18
205:18 206:4,7,17
206:24 207:7,9,10
212:23 220:8
224:17 230:16
234:20 253:14
307:22 308:4
**totaling** 30:20 31:4
177:24 239:1
310:6
**totally** 165:16 201:4
314:6
**Touche** 56:10
**trading** 10:4
**traffic** 9:18
**transaction** 5:9
16:15 69:8,11

74:23 79:24 82:9
86:20 136:14
187:4 240:22
241:16 242:14
299:20 301:6
308:3,14 310:10
321:12,17 322:9
322:23,24
**transactional** 86:21
86:24
**transactions** 79:4
198:16 201:6
236:4 239:13
245:17 246:10
**transcribe** 10:11
**transcribed** 327:12
**transcript** 325:14
328:19
**transcription**
327:14 330:6
**transfer** 83:22 84:2
93:13 94:10,14,15
94:21 95:11 96:7
97:12,17 98:17,19
99:5,16,21 100:7
100:12,14 101:1
101:11,12 102:2,6
102:15,20 103:4,6
103:8,14,17
104:23 105:12
145:20 153:14,19
153:19,24 154:1,4
154:12 178:14
191:10 193:8
194:14 197:11,19
198:12 237:5
239:5 240:17
241:11,15 248:9
248:14,16 249:10
257:7 258:22
**transferred** 94:3
107:1 146:2
153:17 154:19
158:21 178:9
197:16 199:21
211:21 242:8
245:7,20 247:17
250:12,15,16
315:12,14 322:15
**transferring** 117:17
147:16 153:22
154:8 240:16
252:13
**transfers** 6:8 25:23
30:3,20 31:3

153:17,23 154:21
199:8,9,16 200:15
200:16 249:21,24
**transit** 83:17 84:5
95:24 104:16
143:19
**transmittal** 45:12
45:20 47:11
110:22,24 111:8
111:12 112:5
**transportation**
106:6 107:4
127:20
**trial** 9:9 79:22
106:2 237:17
283:14
**trick** 245:4,5 259:16
308:5
**tried** 132:22,23,23
205:16 236:22
290:9
**trouble** 148:13
**truck** 166:6,7,8
168:17,20 190:4
192:12,12 194:24
196:2
**true** 11:19 15:16,20
22:9 24:20 25:1,3
27:17 37:9,10
41:22 42:12,14,15
42:19 56:23 57:4
59:7 64:12,16,23
65:7 69:10 74:8
80:17 83:13,19,24
87:10,22 88:2,6
88:11 97:7 103:5
109:7 114:6,19,23
115:3,8,12,13,18
116:5 120:4,14,15
120:16,16,17,18
132:13,17,20
160:12 161:15
168:21 184:14
214:13 235:19
284:20,21 294:9
307:3,6 312:2
313:23 320:13,16
323:22 327:14
**trust** 83:23 84:3
89:21 149:24
158:16 159:10
173:22 183:23,24
226:19 242:20,23
243:7 244:20
247:17 254:3

257:5 310:9,14,20
312:3 315:8,13,15
315:18 319:5
320:4,14 322:15
322:17
**trusted** 132:10
**truth** 37:7 61:16
148:14 162:16
163:20,22 165:20
165:22 267:19,21
280:22 300:12
307:7 327:9,9,10
**truthful** 164:10
217:17
**truthfully** 10:14
11:6
**try** 56:19 199:17
307:3
**trying** 68:19 75:12
79:10,11 195:10
198:18 199:1,2
245:4,5,5 259:16
308:5
**TSH** 74:1,4 132:18
132:20 143:17,19
144:2,5 145:4
**Tuesday** 314:15
**tunnel-minded**
314:8
**turn** 48:6,9 121:24
134:6 270:3
271:21
**turned** 213:1
**twice** 131:19
**twisting** 61:5,6
**two** 13:1 15:3 22:3
41:13 56:19 65:5
71:1 75:3 88:4,5,7
88:24 89:15 98:6
100:17,19 101:22
111:20 114:9
121:4 124:18
131:20 135:7
138:10,18 145:1
173:3 176:14
177:23 194:21
195:8,9 196:4
205:23 208:11
218:20 219:9,11
219:19 238:23
261:7 274:10
287:18 288:3
310:6 314:16
**two-page** 89:22
**two-party** 141:9

**type** 32:15 228:6
**typed** 4:7 301:19

_____
**U**

**u** 134:20,24
**Ultimately** 114:18
**unable** 113:2,20
114:4 115:19
**unambiguous** 98:13
**unbelievable**
166:10,15
**Uncertain** 141:14
**underlined** 310:5
**underneath** 14:22
220:7
**undersigned** 62:5,8
64:20 109:17
**understand** 10:6
11:24 12:1 29:13
57:10 78:22 90:14
111:3 164:4 245:7
275:18 287:2
303:17 315:20
**understanding** 34:5
83:2,3 84:18
95:15 104:4
197:17
**understood** 11:5
249:8
**unexecuted** 61:15
61:15
**unforeseen** 113:1,9
113:15 117:3
**unfortunately**
265:18 315:20
**Unified** 219:24
220:23
**Union** 228:15
**UNITED** 1:1 310:7
**units** 221:8,9
**unnumbered** 23:20
**unredacted** 238:18
**unsigned** 23:5
24:18 56:5
**upping** 280:23
**USD** 310:8
**USDOT** 127:19
128:20
**use** 37:5 39:11,18
67:21,21 68:20
95:22 101:22
134:9 144:12,15
171:23 191:2
199:1 226:7 228:3
242:4 247:16,18

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                February 7, 2024

Page 358

252:12 302:1,2
308:17
**usual** 9:3
**usually** 131:10
**Uyba** 38:12,15
220:19 221:11
222:2
_____
**V**

**v** 1:7 28:3 139:15
**validly** 190:14
191:16
**valued** 213:1
**vanilla** 155:1
**various** 121:1
**VCR** 315:12
**vendor** 156:13
318:22
**verbalize** 10:9
**verbally** 109:18
**verbatim** 133:22
**verbiage** 289:16
**verify** 184:10,18
**versa** 295:5
**version** 129:11
**vice** 295:5
**victim** 226:23 227:2
255:8
**victims** 227:21
230:14
**violation** 153:15
**virtually** 326:8
**vision** 314:8
**voicemail** 140:21,22
140:24 141:1,3,4
141:5,23 142:20
143:3
**voicemails** 140:8,13
140:13 141:12,13
312:13
**void** 135:15,21
136:7
**vouch** 326:1
**VRC** 18:22 37:24
38:3,4,5 69:8
72:23,24 73:9,20
74:8 78:2 80:15
97:8 170:18
171:12,20 172:10
172:16,24 173:21
173:23,24 174:9
174:12,13 175:24
176:4 178:11
182:24 191:6
195:16 211:19

214:22 219:10,16
219:18 221:10
223:11,13,20
224:13,16 225:4,7
238:24 239:5
242:7 243:8 248:6
257:17 258:12
259:8,12,14,18
307:18,23 308:3
308:14,24 309:5
309:16 311:10
313:17 314:1,17
316:16 319:4
320:2 323:24
**VRC's** 176:10
_____
**W**

**W-I-L-L** 164:20
**waffling** 165:21
**wait** 16:6 65:15
153:10 167:14
240:13 241:4
255:14 270:4
273:21 300:18
322:14
**want** 18:1 34:10
36:7 37:1 60:17
64:17 76:9 78:23
79:2 81:4 82:1
114:14,20 115:9
117:2 120:14
133:6 134:13
136:13,14 148:19
155:10 157:17
161:8 162:4,9,24
181:16,23 182:15
184:6 209:5
214:15 217:13
225:10 238:5
242:5 252:8
255:23 256:20
259:20 267:4,12
267:12 268:15,16
269:6 270:20
271:11 273:9,13
276:8 287:10
288:11 293:19
295:4 297:19
300:11 305:19
307:2,5,7 311:22
311:24 325:20
**wanted** 32:19 60:13
91:3 114:21 120:5
133:1 136:22
137:22 184:7

186:21 225:15
241:18 242:18
247:9 250:12
252:16 266:11,18
267:1,9 268:2
280:20 294:12,14
**wants** 135:15,20,21
136:6 202:20
**warehouse** 106:7,12
106:18 107:5,7,13
107:18,24 108:10
149:15 183:6,6,7
191:21 193:18
220:1
**wasn't** 49:5 55:17
60:17 120:15,19
159:3 160:11
187:3 195:7
196:15 268:7
276:6
**wasting** 34:17
**water** 11:20,23
**way** 22:19 27:6,7
34:1 35:5,6 43:5
101:6 104:8
108:20 111:23
112:1,3 116:21
130:23 139:2,3
140:12 148:20
174:20 178:20
180:24 183:3
187:14 215:11
231:9,11 242:11
257:11 261:8
265:24 271:5
273:23 274:8
276:11 284:9
287:3 290:5 297:2
298:5 318:17
**we'll** 9:4 17:7 39:6
40:17 64:17 68:8
68:10 69:14 81:2
86:16 123:16
138:23 171:5
175:4 178:24,24
179:3 202:22
209:6 218:9 287:8
287:11 298:13
**we're** 13:23 41:9
81:15 87:19 94:2
95:22 109:2 151:5
167:2 168:2 169:4
200:1 217:4,18
223:23 239:8,10
240:12 288:20

306:17 325:12
326:9
**we've** 71:2 86:16
184:24 194:21
289:14
**WEB** 241:12,13
**Wednesday** 1:17
152:4
**week** 164:3 184:3
**weekend** 295:20
**Weiss** 1:11 4:20
5:16 6:12,14,19
6:21,23 19:13
21:5 22:14 25:23
32:21 40:4,6,6,10
108:14 109:8,16
110:8,13 114:1,13
114:20 117:18
120:5 122:20
123:11,16 124:13
125:2,4,10,16,21
126:9,18 128:4,10
132:7 159:21
161:15 162:1,2,4
163:8 168:15
169:16 170:14
173:22 174:13
176:21 178:3,5,9
182:24 184:13,16
185:5,10 188:19
189:7 190:2 192:5
192:14 195:18
198:11 199:18
206:7,17 207:13
207:23,24 213:7
216:4 235:10
254:18 263:17
264:2,11,17 265:3
266:8,22,24 269:2
269:3,11 271:8,24
272:6,7,15,21
274:6,10,10,22
275:3,4,9,10,20
275:24 276:2,14
276:21,21 277:6,7
277:8,9,18,24
278:6,14,24
279:10,17,18
281:3,11,14 282:9
284:4,12 286:21
287:17,18 289:8
289:13 290:7,8
291:1,9,23 292:4
293:13 294:16
295:17 298:17,19

302:17 305:1,10
305:17 313:6,7,7
315:2 317:24
**Weiss'** 212:9
**Wells** 176:18
**went** 85:7 201:1
203:7 204:24
226:19
**weren't** 37:7 159:18
227:14
**whatsoever** 76:17
86:2 295:24
**white** 290:14 291:9
**whoa** 68:19
**Wide** 38:18 221:2
221:10
**wife** 20:9,9 21:10
81:15 82:2
**wire** 5:10 6:8 25:22
30:3,20 31:2 72:6
72:7 78:18 79:4
81:4,14,17 82:3
82:10 83:22 93:23
171:19 172:15,19
177:4,12,16 178:2
178:4,8 182:23,24
191:22,23 198:5
202:19 207:6,12
211:21 239:5
250:15 254:22
256:9 257:7
259:22 260:10
282:19 284:23
**wired** 25:5 71:20
72:8,12,17 74:2,8
80:11,15,23 82:16
135:12 144:3
145:4 149:23
155:11 158:8,16
158:21 169:14
170:7,18,22 172:6
173:4,21 174:21
176:4 179:20
184:13 207:11,22
234:16 250:19,22
**wireless** 305:22
**wires** 35:1 159:9
175:23 176:16
177:1,2,7,19
179:16,18 198:2
204:21,24 205:18
205:20 206:4
207:8,10 253:3
254:18 257:9
**wiring** 72:15 78:3,9

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 115 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 359

89:20 92:19
**wise** 217:21
**wish** 135:13 138:3
   139:2 208:9
   264:22 289:5,6
   294:18
**withdrawals** 236:5
   239:21 240:23
   241:6 245:24
   246:14
**withheld** 13:12
**witness** 3:2 8:3
   15:20 18:4 19:1
   27:24 30:6 36:22
   37:9 39:3,16
   45:19 47:8 53:22
   58:15 66:16,24
   76:7 78:23 79:18
   81:7,19 82:5
   87:13 90:17 91:15
   105:17 108:3
   122:8 123:21
   133:9,19 140:18
   142:16 143:9
   156:1 158:11
   159:3 161:11
   163:6 167:17
   183:11 185:24
   194:19 195:8
   201:15 204:20
   207:20 208:5,10
   211:12 218:13
   224:19 232:3
   239:17 242:10,17
   244:8 245:12
   246:3,15 250:19
   252:6,22 253:9
   258:1 260:24
   263:15 270:14
   272:18,19 283:21
   289:4,6 296:10,16
   296:19,22 297:1
   299:4 302:5
   308:19 309:10
   313:20 323:20
   326:11 327:16
   328:2
**wjb@brglaw.com**
   7:12
**word** 39:4 68:18
   76:8 85:22 124:24
   184:20,22 187:13
   191:14 204:5
   272:11 278:12
   308:11

**wording** 125:13
**words** 11:18 59:1,2
   67:2 68:12,14,20
   76:12 78:16 90:3
   91:8 106:14
   108:11 130:20
   245:6 301:19,24
**work** 141:24 180:18
   242:13 274:8
   326:4
**worked** 242:11,15
**works** 178:20
   275:12 276:11
**worry** 134:16
**worst** 204:3,11
**worth** 116:6,22
   117:7,10 166:20
   167:1 212:13,17
   216:5 299:18
**wouldn't** 10:10
   70:23 120:8,10,12
   161:16 280:7
   292:18 302:1,1
**Wow** 119:1,2
**Wright** 69:12 71:9
   71:12,14,16 72:12
   72:15,17
**write** 17:22 18:2
   31:8,17 32:10
   34:9,10,17 35:17
   36:1 43:10 49:17
   50:23 59:24 62:4
   66:8 112:24 136:7
   142:3 146:24
   147:7,12,19
   163:15,18,20
   164:18 165:22
   166:5 194:6
   212:13 216:24
   221:20 222:13
   223:13 231:17
   262:1,20 269:5
   270:19 276:16,17
   276:20 279:24
   280:8,10 282:14
   282:17 283:8
   285:14 287:10
   288:14 308:20
   318:20 320:10,13
   320:17 321:15,19
**writer** 275:6,7,21
   275:21,22,23
   276:2,4
**writes** 125:3 152:20
   153:9 155:3,6

162:15 203:23
   204:2 211:3
   213:13 214:21
   226:2 231:3
   257:13,16 258:5
   259:10 264:23
   271:4,11 272:3
   294:11 297:16
   299:10,11 301:2
   301:13 305:8
   308:10,22 310:4
   314:16 318:13,14
   320:2
**writing** 29:17 32:7
   49:15 124:8,11
   128:3,7 129:1
   136:2 202:13
   203:8 213:20
   214:15 225:22
   227:24 236:9
   264:17 266:11
   271:8,9,10,13
   273:7 274:1,2,3
   274:11,12,19
   276:22 277:4,10
   277:16,18,24
   279:2,5,11,17
   280:2,4,7 281:2
   282:13,15,21
   283:3 288:3 289:8
   290:1,3 291:18
   292:5 314:23
**written** 65:5 84:22
   215:13 232:18
   244:4 261:24
   263:1,2 314:22
**wrong** 63:24 138:17
   138:21 143:11
   193:11 208:22
   215:10,11,14
   237:13 240:19,21
   241:4 253:23
   256:7,8 272:12
   279:24 280:4,15
   280:16 281:4
   287:3 307:8
**wrote** 34:8 50:17
   51:21 52:15 53:7
   55:8,18 60:19
   62:11 63:3,17,21
   86:15 106:14
   109:15 119:4
   132:6 138:16
   141:20 143:23,24
   144:1,12 145:1

151:17 181:21,24
   203:24 204:1
   210:8 216:24
   222:11 231:10
   232:8 233:1,15,16
   255:18,22,22
   256:4 263:5,6
   265:3 269:8
   270:21 273:16,16
   273:21,22 276:14
   276:19 280:15,16
   281:6,15,17
   283:23 285:10
   290:24 291:8
   301:20 308:13,19
   320:14 322:3,6
**www.tate-tate.com**
   1:24

---

**X**

---

**Y**

**ya** 272:13
**yeah** 9:4 25:7 50:5
   65:9 73:6 78:2
   99:15 107:11
   108:16,18 116:17
   124:19 130:7
   134:4 139:23
   142:2,10 147:11
   158:11 162:19
   164:15 169:22
   170:1 174:19
   176:20 177:6
   183:24 189:6
   199:22 200:14,23
   201:8 202:10
   203:2 210:19
   218:5 221:1
   222:22 225:12
   227:4 229:7,20
   231:16 233:18
   241:15 261:13
   268:20 269:8
   276:9,11 277:21
   277:23 284:21
   290:9,13 292:1,9
   297:21 299:5
   302:10 303:10
   312:20 321:14
   325:7,21
**year** 299:7,7 304:4
**year-old** 297:17
**years** 65:5 183:21
   188:14 292:22

**yelling** 53:21
**yellow** 3:10 22:3
**yep** 123:12 129:24
   129:24 177:22
   217:23
**yesterday** 149:12
   171:17
**York** 121:21 126:19
   127:20 131:24
   190:19 302:23
   323:23
**Younge** 39:20,24
   305:8

---

**Z**

**Zekaria** 1:12,13
   2:18,18 22:15,16
   22:20 25:23 177:7
   177:13 178:10
   202:1 205:20
   314:16,17,17
   315:7 317:22
   318:22 324:2,2

---

**0**

**000006** 266:8
**00008** 269:2
**000329** 6:14
**0011** 277:15
**04/01/22** 26:22
**08053** 1:23

---

**1**

**1** 3:8 5:22 6:6 13:16
   13:17 14:13 23:9
   23:15,20 66:5
   120:23 130:2
   169:4 264:2
   283:14 305:2
   314:16 317:21,23
   318:11 319:2,14
   319:16,20 320:11
   321:2,16,23
   322:11 324:10
**1-13** 239:21,21
**1-14** 239:23,23,23
**1-18** 239:23,23
   240:1,1
**1-19** 240:1
**1-20** 239:4
**1-21/1-22** 250:19
**1-25-22** 157:2,4
**1,000** 281:9
**1,058,400** 170:9,16
   234:6 235:5

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 116 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)                    Deposition of Manfred Sternberg, Esq.                February 7, 2024

Page 360

**1,124,000** 207:11,22
**1,224,720** 173:18,23
  173:24
**1,227,960** 207:7,10
**1,246,960** 206:21
**1,336** 240:18
**1,447,200** 206:8
  207:1
**1,876** 203:23
**1,876,003.89** 202:24
**1,91** 206:2
**1,911,960** 177:8
  178:4
**1,965,000** 233:22
  236:11
**1,965,600** 74:2 83:5
  93:15 156:18
  169:14 175:19
  181:6 234:16
  284:23
**1,965,600.00** 144:2
**1.25** 223:10,16
  224:9 225:3 226:3
**1.8** 179:11 223:7
**1.9** 158:20
**1.965** 80:23
**1.9656** 80:11 145:4
  170:7 235:24
**1/21/2022** 4:18
**1:09** 182:19
**1:34** 318:13
**10** 3:3 4:9 15:6
  26:22 44:7 50:15
  50:16 138:22
  139:4 141:19
  144:23 147:5
  238:19 246:18
  271:24 272:7,21
  274:7,11 275:4,9
  275:14,17,20
  276:14 277:6,7,24
  307:21 308:23
**10,000** 249:10
**10/25/22** 5:11
**10:34** 146:24
**100** 12:18 165:16
  281:9
**100,000** 222:2
**10054** 112:15
**101** 305:2
**10th** 109:21
**11** 4:11 146:19,20
  155:21 157:9,13
  157:14 276:22
  277:8,9,18 278:6

278:14
**11-21** 202:4
**11:25** 317:23
  318:11
**112/4** 8:14
**117monipair@ao...**
  3:22
**119** 173:9
**119/8** 8:9
**12** 4:14 148:22,23
  149:3 173:11
  278:24 279:9,10
**12:05** 161:12
**12:20** 161:13
**12:47** 182:18
**12:53** 287:19
**122** 3:21
**123** 4:5
**13** 3:8 4:15 27:1
  151:20,21
**13-4** 26:21 43:21
**130** 208:20,23
  257:23
**130,000** 206:22
  208:15
**132** 28:11 34:7
**133** 4:7
**139** 4:9
**13th** 240:15,17,23
  242:14 243:11
**14** 4:17 155:22,23
  279:17,18 281:14
  289:17,18
**141/15** 8:10
**1418** 2:9
**146** 4:11
**148** 4:14
**15** 4:19 134:6
  137:12 139:14
  161:21,22
**15,120** 173:13 221:3
  221:7
**150** 232:8
**150,000** 232:15
  299:16
**150k** 231:20,22
**151** 4:15
**151,000** 186:14
  187:11 197:3
  219:17 234:13
**151,200** 143:15
  156:19 159:1,7,15
  160:9 169:12
  170:2 186:8
  218:22 284:24

**155** 4:17
**158** 40:6
**15th** 85:24 86:15
  133:24 134:1,19
  137:6 151:2
  177:12 178:14,15
  206:21 233:12
  235:8 254:19
  255:18
**16** 4:21 39:21
  149:19 152:4
  167:10,11
**161** 4:19
**163/4** 8:11
**167** 4:21
**168** 5:5
**16th** 132:21 149:9
  151:2 152:18
  181:16,22 255:23
**17** 5:5 168:23,24
  175:21 182:21
  205:9,19 211:17
  211:17 282:9
**17/3** 8:9
**1700** 2:9
**171** 5:8
**175** 5:11
**17A** 5:7 205:3,4,9
**17th** 151:3 254:23
**18** 3:10 5:8 171:5,7
  171:11 286:21
  287:17 289:15,16
  289:18,21
**180,000** 226:7 227:1
**181,000** 173:12
**181,440** 172:20
  219:11 239:5
**18315** 4:18 149:14
  156:4 187:6
**185** 5:13
**189,000** 170:18,20
  170:22 173:8
  219:12,16
**19** 5:11 74:9 172:24
  175:6,7 199:10
  289:8,13,16,20,20
**190** 206:1 208:20,24
**190,000** 177:17
  180:6,18,19
  198:12 208:16
  284:5,9,13
**190k** 283:1
**19103-3907** 2:10
**19422** 2:5,16
**199/23** 8:12

**19th** 170:19,23
  171:21 172:7
  173:4 238:24
**1st** 176:18 178:3
  183:1 184:3
  206:20 254:19
  263:18 320:18

─────────
**2**
**2** 3:10,20 5:7 7:15
  14:10 18:6,7 22:2
  26:22 43:9 62:4
  69:22 81:14 82:3
  83:22 84:20 88:19
  89:9,10,20 93:4
  95:17 107:1 123:1
  123:24 131:5
  137:12,19 143:16
  155:10,17 156:20
  158:1 159:9
  166:24 173:8
  197:16 205:7
  223:4 226:2
  237:10 247:16
  250:15 317:22
  318:1
**2-1** 177:4
**2-28-22** 302:16
**2,131,000** 174:5
**2,131,900** 112:19
**2,131,920** 174:8
  178:5 235:9
**2,268,000** 170:23
  171:19
**2,283,120** 174:15
  211:21 212:24
**2,315,960** 206:3
**2,351,960** 205:20
  206:5 207:9
**2,449,440** 74:9
  173:21 175:24
  308:4 315:11
  319:5
**2,449,440.00** 310:8
**2,571,000** 177:19
  179:20
**2,571,200** 177:20
  205:19
**2.1** 112:23
**2.268** 172:5,11
**2.283** 179:14
**2.4489** 80:15
**2.449** 173:3 239:1
**2.45** 322:15
**2.5** 30:21 31:4

117:17 177:24
191:6 222:23
298:5 308:15
**2,571,200** 179:16
**2/15/22** 4:9,12
**2/16/22** 4:14,15
**2/23/22** 7:8
**2/28/22** 6:23
**2/7/22** 4:6
**2:01** 223:24
**2:03** 224:1
**2:20** 133:24 134:7
  134:19
**2:22-CV-0688** 1:7
**2:30** 317:17
**20** 5:13 74:9 172:24
  183:21 185:21,22
  186:3,4 187:5
  188:14 196:18
  202:24 247:1
  248:9,16 249:1
**20,000** 247:9,23
**200,000** 322:16
**200/20** 8:13
**2002** 324:10
**201** 2:16 5:14
**2020** 253:24
**2021** 3:20 69:22
**2022** 5:22,22 6:6,6
  25:2,13 39:21
  49:1 50:11,13
  52:12 87:3,8
  110:3,12 112:18
  149:24 156:11
  157:7 175:11
  177:17 186:7
  201:7,9 203:7
  213:20 238:14
  243:11 254:4
  260:7 261:17
  264:2 304:4
  306:23 307:14
  321:23
**2022-(NOT** 139:18
**2023** 202:24 203:9
  298:18 305:2
**2024** 1:17 330:18
**2026** 327:22
**204,120** 74:10
  173:16 307:23
  315:10 319:4
**205** 5:7
**206** 5:15
**209** 5:17
**20th** 172:20 173:4

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 117 of 412

USDC, ED of PA          American Environmental Ent. v. Manfred Sternberg, Esq., et al.          Wednesday
No. 2:22-CV-0688 (JMY)          Deposition of Manfred Sternberg, Esq.          February 7, 2024

Page 361

238:24 239:5
248:17
**21** 3:12 5:14 74:3
149:24 156:11
186:7 201:12,13
287:19 291:23
297:16
**210/13** 8:9
**210/2** 8:14
**215-545-3000** 2:5
**215/16** 8:10
**218** 5:19
**219,240** 176:19
177:4 178:3 184:1
205:24 206:19
207:7
**21st** 80:24 83:6
125:3 154:10
169:10 210:17
250:22
**22** 5:15 206:10,11
253:19 292:4
293:13 299:13
306:23
**225/20** 8:11
**227/20** 8:12
**229/15** 8:13
**22nd** 81:4
**23** 5:17 209:12,14
209:17 213:10
257:14,24 298:19
302:3 306:24
307:13
**231** 206:2
**231/14** 8:14
**238** 5:20
**24** 5:19 25:2,13 28:4
29:16,21 34:9
44:15,20,22 51:22
52:14 53:20 70:4
112:22 218:9,11
294:16 327:22
**246/12** 8:9
**24th** 25:17 40:14
41:14 42:6,17,21
43:1,16 44:16
50:24 55:7,19
58:1,2 63:11,17
63:22 64:12,18,24
66:5,8 75:2 85:10
117:14,15 126:22
185:14 304:3
313:24
**25** 5:20 72:10 157:7
175:11 206:2

238:8,9 253:23
285:9 295:16,17
**25,000** 71:20 72:8
72:13,17,20
157:23 158:6,14
182:8
**25,200,000** 70:6
**250** 206:1
**250,000** 81:4 177:13
178:13,18
**252** 6:5
**252/4** 8:10
**254** 6:7
**258/20** 8:11
**25th** 177:16 180:7
254:20 285:15
**26** 3:13 6:5 112:18
252:19,20 253:5
253:10,13,15,18
253:21 254:1,3,5
254:15 256:19
257:1
**260** 6:9
**263** 6:11
**264** 6:14
**266** 6:15
**267-519-6877** 2:10
**26th** 194:22 195:23
**27** 3:15 6:7 254:6,8
254:12 256:19
257:7,8
**28** 6:6,9 260:21,22
**282** 218:15 221:3
**283** 6:17
**28th** 206:22
**29** 6:11 23:15 110:3
110:12 263:12,13
**29/8** 8:10
**296** 125:16,20,22
**298** 6:18
**299** 6:20
**29th** 285:20

_____

**3**

**3** 3:12 21:20,21,24
22:1,9 26:2,9 48:6
70:5,16 113:6
120:23 121:17
151:24 238:19
300:13,17 313:7
314:15 317:24
318:5,8,10
**3-ply** 70:5
**3,000** 221:11
**3,000,000** 299:18

**3/1/22** 6:11 7:11
**3/24/22** 3:15
**3/7/22** 6:21
**30** 6:14 34:23
261:17 264:6,8
328:18
**30(b)(2)** 14:24
**30(b)(6)** 14:22
**300,000** 112:10
**302** 6:23
**304** 7:5
**306** 7:8
**30th** 262:18
**31** 5:22 6:15 213:20
266:2,3,6
**313** 7:10
**313/12** 8:12
**313/23** 8:22
**314** 40:6
**314/3** 8:5
**318** 252:24 254:7
**32** 6:17 48:9,12 52:7
52:21,22 54:15
283:18,19
**321** 252:24 254:7
**322** 313:6
**323** 7:13
**324** 313:7 317:24
**325** 313:7 320:10
**329** 264:12
**33** 6:18 298:13,14
298:17 299:4
301:1,1 302:9
**34** 6:20 14:24
298:24 299:2,4,6
299:9 300:20
302:9
**35** 6:23 302:4,12,15
**36** 7:5 304:20,21
**36/19** 8:11
**37** 7:8 306:18,19
307:13
**38** 7:10 313:2,3
**38/20** 8:12
**39** 3:17 7:13 323:14
323:15,20,22

_____

**4**

**4** 3:13 18:10 26:13
26:14 27:14 65:12
87:20 109:15,24
116:6,22 117:7,10
159:21 166:20
167:1 212:4,8,10
212:13 213:4

216:5 220:10
250:4 280:23
298:7 300:14,14
320:8
**4-24** 40:5,9 169:20
**4,000** 130:10,11
**4,415,040** 179:19
**4.4** 218:3 222:2,20
**4.5** 217:24 222:7,12
222:20
**4/24/22** 3:17
**4/6/22** 4:19
**4:05** 326:12
**400** 2:4
**400,000** 233:2
**4000** 130:19
**400k** 231:21 232:23
**42nd** 178:21
**45** 14:13 166:6
178:17 282:24
284:4
**47/10** 8:13
**470** 2:15
**48-72** 131:11
**484-344-5340** 2:17
**49,518.18** 241:19
**4th** 177:8 178:9
235:9 254:19

_____

**5**

**5** 3:15 27:21,21,22
28:2 44:7,14
112:8 113:6 130:2
131:5 149:23
246:18 290:7,8
291:10
**5,500** 250:20
**5/31/22** 5:17
**5:15** 318:20
**5:35** 139:14
**5:42** 163:16
**50** 12:20,21
**50-count** 70:4
**50,000** 182:6
**500** 129:18 130:6,12
**500,000** 81:15 82:1
82:2
**50k** 229:19 230:11
230:13
**5177** 241:13
**529** 209:18
**530** 209:18
**531** 209:18
**550,000** 231:4
**5500** 250:16,24

_____

**6**

**6** 3:17 27:5,12 38:24
39:1 66:6 94:2
98:14 109:6,7
145:16,19 153:15
153:20 154:1,3
162:15 169:17,23
170:3 173:17
212:20 213:5
234:20 235:1
246:21 266:8
298:9
**6,283,120** 212:4
**6:30** 152:9,23
**6:45** 152:5
**600** 2:4
**636-8283** 1:23
**69** 3:20

_____

**7**

**7** 1:17 3:20 27:5,12
39:21 69:15,16,19
87:17,19 298:19
**7-Eleven** 101:14
**7,000** 220:1,8,16,17
**7,560** 219:11
**7:08** 144:23 146:24
**7:36** 163:16
**70** 208:18,23
**70,000** 206:22
**7000** 220:14
**711** 1:17
**713-824-9170** 282:8
**714194** 126:10
**73** 1:22
**750,000** 226:2,4
**77,000** 256:10,13
**7th** 195:24 206:20
299:11 302:3

_____

**8**

**8** 14:13,17 106:4,4
122:5 272:6,15
274:10,22 275:3
275:10,14,24
276:2
**8/14/23** 6:18
**8/21/23** 3:21
**80** 228:18 229:1,7
**800** 1:23
**80k** 228:3 256:12
**825** 1:22
**856** 1:23
**8A** 3:21 122:5,6,10
123:2,5,24 124:7

USDC, ED of PA            American Environmental Ent. v. Manfred Sternberg, Esq., et al.            Wednesday
No. 2:22-CV-0688 (JMY)            Deposition of Manfred Sternberg, Esq.            February 7, 2024

Page 362

125:2,8 132:6
189:4
**8B** 4:5 122:5 123:8
123:19,23 125:15
125:19 127:12
128:6,15 130:14
130:15,18 189:4,5

---

**9**

**9** 4:7 14:16,18 15:6
133:3,4,22
**9,518** 244:12
**9,518.18** 240:15,22
242:6 244:2
**9/7** 8:18
**9:11** 1:18 9:17
**9:49** 39:8
**9:52** 39:8
**90,000** 258:11,14
259:8
**907,000** 234:4
**907,200** 170:3
234:20 235:1
**90k** 258:21 259:23
**90s** 252:11
**9500** 243:10,19
**983-8484** 1:23

# EXHIBIT I-1

**To Motion for Summary Judgment of Defendants**

**Manfred Sternberg, Esquire and**

**Manfred Sternberg & Associates, PC**

**LIGHTMAN & MANOCHI**
**BY:    GARY P. LIGHTMAN, ESQUIRE**
**GLENN A. MANOCHI, ESQUIRE**
**PA Identification Nos. 28529 and 64223**
**600 Germantown Pike, Suite 400**
**Plymouth Meeting, PA 19422**
**Telephone: 215-760-3000**
**garylightman@lightmanlaw.com**
**gmanochi@lightmanlaw.com**
**kditomaso@lightmanlaw.com**
**Attorneys for Plaintiff**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMERICAN ENVIRONMENTAL** : | |
| **ENTERPRISES, INC., d/b/a** : | |
| **THESAFETYHOUSE.COM** : | |
| : | **CIVIL ACTION** |
| **Plaintiff,** : | |
| : | **No. 2022-cv-00688 (JMY)** |
| **v.** : | |
| : | |
| **MANFRED STERNBERG, ESQUIRE,** : | |
| **and MANFRED STERNBERG &** : | |
| **ASSOCIATES, PC, and CHARLTON** : | |
| **HOLDINGS GROUP, LLC, and** : | |
| **SAMUEL GROSS a/k/a SHLOMO** : | |
| **GROSS, and GARY WEISS,** : | |
| **and ASOLARDIAMOND, LLC a/k/a,** : | |
| **ASOLAR. LLC, and DAPHNA** : | |
| **ZEKARIA, ESQUIRE, and SOKOLSKI** : | |
| **& ZEKARIA, P.C.** : | |
| : | |
| **Defendants.** : | |

### SECOND AMENDED NOTICE OF DEPOSITIONS
### OF THE STERNBERG DEFENDANTS
### (WITH REQUEST FOR PRODUCTION OF DOCUMENTS)

TO:    (1)    Manfred Sternberg, Esquire, individually and as
     (2)    Corporate representative of Manfred Sternberg & Associates, PC
          c/o Seth Laver, Esquire
          Goldberg Segalla
          1700 Market Street, Suite 1418
          Philadelphia, PA 19103-3907

EXHIBIT 1
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

VIA EMAIL:  slaver@goldbergsegalla.com

**cc: all interested counsel and/or parties:**
   (a) Daphna Zekaria, Esquire (VIA EMAIL: Sokolski.Zekaria@mindspring.com)
   (b) Patrick J. Healey, Esquire (VIA EMAIL: phealey@rebarkelly.com)
   (c) Cathleen Kelly Rebar, Esquire (VIA EMAIL: crebar@rebarkelly.com)
   (d) Gary Weiss and ASOLARDIAMOND, LLC (VIA EMAIL: wgary4109@gmail.com and
       monipair@aol.com )
   (e) Sam Gross (VI EMAIL charltonholdinggroupllc@aol.com and Scg1212@gmail.com and
       publicdiamonds@gmail.com and Samrosinc@icloud.com

cc: Tate & Tate Court Reporters (VIA EMAIL: tina@tate-tate.com )

PLEASE TAKE NOTICE that plaintiff American Environmental Enterprises, Inc.

d/b/a TheSafetyHouse.Com ("Plaintiff" or "TSH" ("Sternberg"), through its counsel, shall take

the oral depositions of the defendants Manfred Sternberg, both individually and as the corporate

representative of defendant Manfred Sternberg & Associates ("Sternberg PC") (Sternberg and

Sternberg PC collectively are referred to as the "Sternberg Defendants"), pursuant to Rule 30 *et*

*seq* of the Federal Rules of Civil Procedure.  The depositions shall take place in-person at the law

offices of Lightman & Manochi, 600 W. Germantown Pike, Suite 400, Plymouth Meeting, PA

19462, beginning on **Wednesday, February 7, 2024, commencing at 10:00 a.m.** (as respects

Sternberg); and  **commencing at 2:00 p.m.** (as respects Sternberg PC).  The depositions above

shall continue from day to day thereafter, until all of the depositions noticed hereunder are

completed.  Each deposition will be conducted upon oral examination, before a Notary Public,

Court Stenographer, or such other officer authorized by law to administer oaths.  The depositions

may be videotaped.

The matters to be inquired into as respects Sternberg PC include the following:

(1)     Defendants' Sam Gross and/or Charlton Holding Group, LLC's (collectively, the

"Gross Defendants") requests to purchase iCovid Test Kits from Gary Weiss ("Weiss") or

ASOLARDIAMOND, LLC ("ASolar") (collectively, the "Weiss Defendants") or from any other source, in the time period of the December 2021 through April 2022.

(2)     Plaintiff's request in January 2022 to purchase 151,200 iHeath Covid-19 Antigen Rapid two-pack Test Kits (the "Test Kits" or "Covid Test kits") from either the Gross Defendants or the Weiss Defendants, or from any other person or entity.

(3)     The drafting and preparation and execution and delivery and the contents of the document entitled "Sale and Purchase Agreement" attached as Exhibit "1" to Plaintiff's Complaint (the "Sale Agreement").

(4)     The terms and conditions contained in the Sale Agreement, and the practical operation of the Sale Agreement.

(5)     Any and all wire transfers of funds from the attorney escrow account of either of the Sternberg Defendants, to Daphna Zekaria, Esquire ("Zekaria"), or her law firm of Sokolski & Zekaria, PC (the "Zekaria PC") (collectively Zekaria and Zekaria PC are referred to herein as the "Zekaria Defendants"), and/or to either of the Weiss Defendants, and/or to either of the Gross Defendants, and/or to any other person or entity, concerning iCovid test kits or the plaintiff's purchase thereof.

(6)     Any and all wire transfers of funds into the attorney escrow account of either of the Sternberg Defendants, and/or the subsequent transfers of funds out of said escrow account, from or relating to Belco Distributors, and/or Nail & Beauty, LLC, and/or VRC Medical Supplies, and/or pertaining to the purchase of iCovid test kits by or for any of said entities.

(7)     Any and all wire transfers of funds into the attorney escrow account of either of the Sternberg Defendants, and/or the subsequent transfers of funds out of said escrow account, from

3

or relating to Nationwide Medical Services, and/or pertaining to the purchase of iCovid test kits by or for said entity.

(8)     Any and all wire transfers of funds into the attorney escrow account of either of the Sternberg Defendants, and/or the subsequent transfers of funds out of said escrow account, from or relating to Yuba County Schools, and/or pertaining to the purchase of iCovid test kits by or for said entity.

(9)     Any and all wire transfers of funds into the attorney escrow account of either of the Sternberg Defendants, and/or the subsequent transfers of funds out of said escrow account, from or relating to El Monte Unified School District, and/or pertaining to the purchase of iCovid test kits by or for said entity.

(10)     Any and all wire transfers of funds into the attorney escrow account of either of the Sternberg Defendants, and/or the subsequent transfers of funds out of said escrow account, from or relating to Hand Safety LLC, and/or pertaining to the purchase of iCovid test kits by or for said entity.

(11)     Any and all wire transfers of funds into the attorney escrow account of either of the Sternberg Defendants, and/or the subsequent transfers of funds out of said escrow account, from or relating to DKW Consulting LLC and/or David Wright, including pertaining to the purchase of iCovid test kits by or for said entity or person.

(12)     Any and all wire transfers of funds into the attorney escrow account of either of the Sternberg Defendants, and/or the subsequent transfers of funds out of said escrow account, from or relating to or pertaining to the purchase of iCovid test kits by or for any person or entity, not identified in nos. (6) to (11) above.

4

(13)     The lawsuit styled Nail & Beauty, LLC v. VRC Medical Services Inc et als, NY Supreme Court, Nassau County, Index no. 60424/2022 (the "NY Fraud Lawsuit"), and the underlying facts of said NY Fraud Lawsuit, and the defenses raised by either of the Sternberg Defendants in the NY Fraud Lawsuit.

(14)     Any and all email and other communications to or from Randy Adler, Esquire, or William Berman, Esquire, pertaining to their client's purchase of iCovid test kits or their claims relating thereto, and any settlement discussions of the claims of any of their client(s), and the offer made to give them or their client gemstones in settlement of their claims.

(15)     The receipt of any funds from or on behalf of any of the Gross Defendants or any of the Weiss Defendants to purchase any Covid test kits, whether for plaintiff or another entity or person.

(16)     The transfers of any funds form the Sternberg attorney escrow account to any of the Gross Defendants or the Weiss Defendants or the Zekaria Defendants pertaining to the purchase any Covid test kits, whether for plaintiff or another entity or person.

(17)     The transfer or wiring  of any funds to the Zekaria Defendants, between January 20, 2022, and June 30, 2022, including, but not limited to: (a) $1,911,960.00 allegedly sent to Zekaria on or about February 4, 2022; and (b) $250,000.00 sent to Zekaria on or about February 15, 2022; and (c) $190,000.00 sent to Zekaria on or about February 25, 2022.

(18)     Any and all collateral, including but not limited to, diamonds or gems, delivered by any of the Weiss Defendants to any of the Gross Defendants and/or the Sternberg Defendants for any purpose, including but not limited to, as "collateral" for or securing the repayment of funds provided to the Zekaria or Weiss Defendants, or the purchase or refund of any test kits, whether

5

for plaintiff or any other person or entity, and the subsequent disposition or whereabouts of the gemstones.

(19)   The current status of any and all funds delivered to any of the Sternberg Defendants for the purchase of Test Kits, whether for plaintiff or any other person or entity.

(20)   The time, place and manner of delivery of any Test Kits to plaintiff between January 1, 2022 and June 30, 2022.

(21)   The contact information of the person holding himself out as or known by the name "Shraga," and said person's involvement in the purchase or delivery of Covid test kits for or on behalf of plaintiff, or any other person or entity.

(22)   The efforts made to locate and/or purchase iCovid test kits and to supply to plaintiff pursuant to the Sale Agreement.

(23)   The efforts made to locate and/or purchase iCovid test kits and to supply to any other person or entity.

(24)   Any of the Bills of Lading sent by the Sternberg Defendants to counsel for plaintiff.

(25)   Any and all communications with any common carriers as respects the shipment of the Covid test kits.

(26)   Claims made by Nail & Beauty LLC as respects their failure to timely get the Covid test kits that they ordered.

(27)   Any claims made by any other entities or persons, involving their failure to timely get the Covid test kits that they ordered.

(28)   The current whereabouts of and subsequent disposition of any of the test kits.

(29)     The $1,965,600.00 (the "Purchase Price") wired on 1/21/22 by plaintiff to the attorney escrow account of the Sternberg Defendants to purchase the test kits, and the current whereabouts of and subsequent disposition of the Purchase Price or any portion thereof.

(30)     The time, place and manner of any shipment or delivery of any test kits to plaintiff between January 1, 2022 and June 30, 2022.

(31)     The $2,449,440 or other funds that were wired by BELCO and/or Nail & Beauty and/or VRC to any of the Sternberg Defendants to purchase their test kits, and the current whereabouts of and subsequent disposition of those funds.

(32)     Any brokers that may be involved in the sale of any test kits, whether to plaintiff or others, including without limitation:  Ruth Countinho; and/or John Moran; and/or Dick Gray; and/or Alex Frazier; and/or Chris Cortese.

(33)     Any emails or other communications the Sternberg Defendants or any other defendant had with Available Movers & Storage.

(34)     Any emails or other communications any of the Sternberg Defendants had with any of the Weiss Defendants, pertaining to any of the matters relating to this dispute.

(35)     Any emails or other communications any of the Sternberg Defendants had with any of the Zekaria Defendants pertaining to any of the matters relating to this dispute.

(36)     Stacey Panagakos, and her involvement with Gross or CHG or CHG's or Gross' bank accounts or any of the matters involved in this dispute, and/or any communications with said person.

(37)     Taylor Panagakos, and her involvement with Gross or CHG or CHG's or Gross' bank accounts or any of the matters involved in this dispute, and/or any communications with said person.

7

(38)    Mirtha Pantoja or Iriate, and any communications involving her, or her involvement with any of the Weiss Defendants or any of the matters involved in this dispute, and/or any communications with said person(s).

(39)    Max Sternberg or Molly Sternberg, and any communications involving them, or any of their involvement with the Sternberg Defendants or any of the matters involved in this dispute, and/or any communications with said person(s).

(40)    Any and all Bills of Sale issued or created as respects any test kits purchased by plaintiff, or any other customer.

(41)    Any and all Bills of Lading issued or created as respects any test kits purchased by plaintiff, or any other customer.

(42)    Any of the matters in the Interrogatories served upon the Sternberg Defendants, or their responses thereto.

(43)    Any of the matters in the Document Requests served upon the Sternberg Defendants, or their responses thereto, and the responsive documents produced.

(44)    Any and all facts and/or defenses that the Sternberg Defendants or any of the other defendants intend to rely upon in this proceeding.

(45)    All documents that the Sternberg Defendants or any other defendant intend to rely upon in this proceeding.

In addition to the aforesaid, the matters to be inquired into include: (A) the claims and allegations in plaintiff's Complaint, as amended); (B) the claims and allegations in any Third-Party Complaints filed in this lawsuit; and (C) any and all defenses or counterclaims which any defendants have or may have to any of plaintiff's claims or allegations; (D) any and all facts that support any of the Third-Party Complaints; (E) any and all defenses or counterclaims the any of

8

the defendants may have to the Third-Party Complaints or Cross-Claims; (F) the documents to support any of plaintiff's claims and allegations; (G) the documents to support any of the defenses or crossclaims of the Sternberg Defendants or any other defendant to plaintiff's claims; (H) the documents which support any of the Third-Party Complaints; (I) all areas set forth in any of plaintiff's Document Requests or Interrogatories directed to the Sternberg Defendants or any other of the defendants; (J) all facts any of the Sternberg Defendants or any other defendant intends to rely upon in this case; (K) all documents the Sternberg Defendants or any other defendant intends to use as evidence or an exhibit in this case; and (L) all damages any defendant claims or may claim in this case, and the calculation of such damages, and any and all documents in support of such damages claim or calculation.

TAKE FURTHER NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Sternberg PC is required to designate one or more officers, directors, managers, members, managing agents or other persons who agree to testify on its behalf, and to set forth, for each person so designated, the matters on which each such person will testify, pursuant to Nos. (1) through (45) above, and (A) through (L) above, which designation is to be served upon undersigned counsel reasonably in advance of (and no later than one week prior to) the scheduled deposition(s).

TAKE FURTHER NOTICE that, pursuant to Rules 30(b)(2) and 34 of the Federal Rules of Civil Procedure, each of the Sternberg Defendant deponent(s) are instructed to bring with them to their deposition: (i) the actual and unredacted escrow records for any account(s) into which the Purchase Price paid by plaintiff or funds of any other person or entity who purchased test kits was made; and (ii) all of the aforesaid documents referred to above in this Deposition Notice, including, but not limited to, those requested in Plaintiffs' Document Requests or Interrogatories previously

directed to and served upon the defendants or required or agreed to be produced by Court Order; and (iii) all of the documents the Sternberg Defendants or any other defendant intends to introduce as an exhibit or into evidence in support of any defenses asserted to plaintiffs' claims and allegations set forth in the Complaint (as amended); and (iv) all of the documents the Sternberg Defendants or any other defendant intends to introduce as an exhibit or into evidence in support their claims or defenses or the allegations set forth in any of the Third-Party Complaints.

LIGHTMAN & MANOCHI

BY:  /s/ Gary Lightman
      GARY P. LIGHTMAN, ESQUIRE
      garylightman@lightmanlaw.com

Date:  January 19, 2024            Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM, | CIVIL ACTION<br><br>No. 2:22-CV-0688 (JMY) |
| *Plaintiff*, | |
| v. | |
| MANFRED STERNBERG, ESQUIRE and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SHLOMO GROSS a/k/a SAMUEL GROSS and GARY WEISS and ASOLARDIAMOND, LLC d/b/a ASOLAR, LLC and DAPHNA ZEKARIA, ESQUIRE and SOKOLSKI & ZEKARIA, P.C. | |
| *Defendants*. | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below he caused to be served a true and correct copy of the foregoing Second Amended Notice of Oral Deposition of the Sternberg Defendants With Request for Production of Documents via email, as indicated, upon the following persons at the following addresses:

Samuel Gross
Charlton Holdings Group, LLC
78 Buckminster Rd.
Rockville Center, NY 11570
charltonholdinggroupllc@aol.com
Scg1212@gmail.com
publicdiamonds@gmail.com
Samrosinc@icloud.com

Seth Laver, Esquire
Goldberg Segalla
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
slaver@goldbergsegalla.com

Pro Se Defendant

Attorneys for the Sternberg Defendants

11

Patrick J. Healey, Esquire
Cathleen Kelly Rebar, Esquire
Rebar Kelly
470 Norristown Road, Suite 201
Blue Bell, PA 19422
Phealey@rebarkelly.com
crebar@rebarkelly.com

Attorneys for the Zekaria Defendants

Gary Weiss (pro se)
ASOLARDIAMOND, LLC
437 1st Avenue
Elizabeth, NJ 07206
wgary4109@gmail.com and
 monipair@aol.com

Defendants Gary Weiss
 and ASOLARDIAMOND, LLC

Daphna Zekaria, Esquire
Sokolski & Zekaria, P.C.
267 Main St., 2nd Floor
Huntington, NY 11743
sokolski.zekaria@mindspring.com

Defendant Daphna Zekaria


LIGHTMAN & MANOCHI

BY: /s/ Gary Lightman
GARY P. LIGHTMAN, ESQUIRE

Date: January 19, 2024

Attorneys for Plaintiff

12

EXHIBIT ___3___
WIT: _M. Sternberg_
DATE: _2-7-24_
Joanne Rose, RPR, RMR

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM,** | **CIVIL ACTION** <br><br> **No. 2:22-CV-0688 (JMY)** |
| *Plaintiff,* | |
| v. | |
| **MANFRED STERNBERG, ESQUIRE, and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SHLOMO GROSS a/k/a SAMUEL GROSS, and GARY WEISS, and A.SOLAR, LLC, and DAPHNA ZEKARIA, ESQUIRE, and SOKOLSKI & ZEKARIA, P.C.** | |
| *Defendants.* | |

## FIRST AMENDED COMPLAINT

American Environmental Enterprises, Inc., d/b/a TheSAFETYHOUSE.com, plaintiff

herein ("SAFETY HOUSE" or "Plaintiff"), through its counsel, Lightman & Manochi, by way of

its Amended Complaint against Manfred Sternberg, Esquire ("Sternberg") and Manfred Sternberg

& Associates, PC ("MSA"), and Charlton Holdings Group, LLC ("CHG"), and Shlomo Gross

a/k/a Samuel Gross ("Gross"), and Gary Weiss ("Weiss"), and A.Solar, LLC, and Daphna Zekaria,

Esquire ("Zekaria"), and Sokolski & Zekaria, P.C. ("S&Z") (collectively, "Defendants"), states as

follows:

### NATURE OF ACTION

1.      Defendants Sternberg and MSA (collectively, the "Sternberg Attorney

Defendants") and Defendants Gross and CHG (the "Gross Defendants") fraudulently induced SAFETY HOUSE to order and make a payment to them of $1,965,600.00 in order to purchase 151,200 iHealth Covid-19 Antigen Rapid two-pack test kits (the "Covid Test Kits") (the "Order"). *See* Exhibit 1.

2.      The Order was supposed to be conducted through an escrow agreement with defendant with the Sternberg Attorney Defendants acting as escrowee, but said agreement was merely a ruse to defraud Plaintiff, as Gross and Sternberg formed CHG merely as a front, and the Defendants had no intent or ability to deliver the Covid Test Kits, but instead intended to defraud Plaintiff into transferring them $1,965,600.00, without delivering the Covid Test Kits. *See* Exhibit 1.

3.      The Sternberg Attorney Defendants and the Gross Defendants fraudulently induced SAFETY HOUSE to wire the $1,965,000.00 into the attorney escrow account of the Sternberg Attorney Defendants, after which the Sternberg Attorney Defendants wrongfully released that escrow, without delivering to Plaintiff the required signed Bill of Sale and the required Bill of Lading and other shipping documents evidencing the Covid Test Kits were purchased and being shipped to Plaintiff.

4.      Plaintiff believes and thus avers that the Sternberg Attorney Defendants and the Gross Defendants, acted in their wrongful civil conspiracy together with defendants Gary Weiss and his entity, A Solar LLC (collectively the "Weiss Defendants") and with Daphna Zekaria, Esquire and her law firm of Sokolski & Zekaria, P.C. (collectively the "Zekaria Defendants") to defraud Plaintiff out of the $1,965,600.00 that it was induced to wire to the Sternberg Attorney Defendants and the Gross Defendants, for the purchase of the 151,200 Covid Test Kits.

5.      Defendants failed to deliver the Covid Test Kits to Plaintiff and also failed to

2

provide any refund of the $1,965,600.00 escrow to SAFETY HOUSE. *See* Exhibit 2.

6.      Defendants' behavior is particularly egregious and outrageous, as SAFETY HOUSE needed the Covid Test Kits to sell to its customer, a public school district.

## PARTIES, JURISDICTION AND VENUE

7.      Plaintiff is a Pennsylvania corporation, and operates as a trusted supplier of reliable personal protection and abatement equipment. SAFETY HOUSE is a Pennsylvania resident for purposes of diversity jurisdiction, with its principal place of business and headquarters located in Pennsylvania. SAFETY HOUSE operates from 99 Aldan Avenue, Suite 5, Glen Mills PA 19342.

8.      Defendant Manfred Sternberg is, upon information and belief, is a practicing attorney in good standing under the laws of Texas, and a citizen of the State of Texas, with an address of 1700 Post Oak Boulevard, 2 Boulevard Place, Suite 600, Houston, Texas 77056, and not in the military service of the U.S. or its allies.

9.      Defendant Manfred Sternberg & Associates, PC ("MSA") is, upon information and belief, a Texas professional corporation, a citizen of the State of Texas for diversity purposes and has its principal place of business at 1700 Post Oak Boulevard, 2 Boulevard Place, Suite 600, Houston, Texas 77056.

10.     Plaintiff believes and thus avers that defendant Sternberg practices law from and is the controlling principal of defendant MSA.

11.     Defendants Sternberg and MSA collectively are referred to as the "Sternberg Attorney Defendants."

12.     Defendant Charlton Holding Group LLC ("CHG"), is, upon information and belief, a New York limited liability company with an address of 78 Buckminster Road, Rockville Centre, NY 11570, whose members are all New York residents for purposes of diversity

3

jurisdiction.

13.     Plaintiff believes and thus avers that CHG is an entity with no assets, that is owned and/or controlled by defendant Samuel Gross.

14.     Defendant Shlomo Gross a/k/a Samuel Gross is, upon information and belief, an adult individual and a citizen of the State of New York for purposes of diversity, and has an address at 78 Buckminster Road, Rockville Centre, NY 11570, and not in the military service of the U.S. or its allies.

15.     Unbeknownst to Plaintiff during all times relevant herein, Gross, starting in 2014, served at least 18 months in a New York State prison based on convictions of Grand Larceny and Scheme to Defraud.

16.     Defendant Gary Weiss is an adult individual and a citizen of the State of New Jersey for purposes of diversity, with an address of 437 1st Avenue, Elizabeth, New Jersey 07206.

17.     Defendant A.Solar, LLC ("A.Solar") is a New Jersey limited liability company and a citizen of the State of New Jersey for purposes of diversity, with a principal place of business of 437 1st Avenue, Elizabeth, New Jersey. Upon information and belief, Weiss is the sole member of A.Solar.

18.     Plaintiff believes and thus avers that A. Solar is an entity with no assets, that is owned and/or controlled by defendant Gary Weiss.

19.     Defendant Daphna Zekaria, Esquire ("Zekaria"), is, upon information and belief, an adult individual who is admitted to practice law before the Courts of the State of New York and is a citizen of the State of New York for purposes of diversity, with a principal place of business located at 1133 Broadway, Suite 1001, New York, New York 10010.

4

20.     Defendant Sokolski & Zekaria, P.C. ("S &Z") is, upon information and belief, a New York professional corporation and is a citizen of the State of New York for purposes of diversity, with a principal place of business located at 1133 Broadway, Suite 1001, New York, New York 10010.

21.     Plaintiff believes and thus avers that Zekaria is one of the two attorneys that control S&Z.

22.     Jurisdiction and venue are proper in this Court in that the actions giving rise to Plaintiff's causes of action occurred in the Eastern District of Pennsylvania, the amount in controversy exceeds $75,000.00 and the citizenship of the parties are from different states (namely, Pennsylvania is a citizen of Plaintiff, and Defendants are citizens of New York Texas and New Jersey and Texas), and the jurisdictional prerequisites of this Court otherwise are satisfied. *See* 28 U.S.C.S. §1332(a)(1) & § 1391.

## RELEVANT FACTUAL BACKGROUND

23.     On or about January 21, 2022, SAFETY HOUSE agreed to purchase 151,200 iHealth Covid-19 Antigen Rapid two-pack test kits (the "Covid Test Kits") from CHG and its managing member, Defendant Gross, (the "Order") for a payment of $1,965,600.00 (the "Purchase Price"). *See* Exhibit 1, § 3.

24.     The Gross Defendants and the Sternberg Attorney Defendants represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States.

25.     The Order was supposed to be accomplished through a Sale and Purchase Agreement (the "Agreement"), and an escrow arrangement between Plaintiff and the Sternberg Attorney Defendants, but said "Agreement" was merely a ruse to defraud Plaintiff, as the Gross Defendants and the Sternberg Attorney Defendants had no intention or ability to deliver the Covid

5

Test Kits, but instead intended to fraudulently induce Plaintiff to pay the Purchase Price for the Order without delivering the Covid Test Kits.

26.     The Agreement required Plaintiff to issue a Purchase Order to CHG for the Covid Test Kits and thereafter to deposit the $1,965,600.00 Purchase Price into the attorney escrow account of the Sternberg Attorney Defendants; these funds were not to be released from escrow until (a) after a Bill of Sale was delivered to Plaintiff and (b) after the Covid Test Kits were delivered to a recognized common carrier for delivery to Plaintiff, and the Bill of Lading and shipping documents also delivered to Plaintiff. *See* Exhibit 1, §§ 4 & 6 and Exhibit D thereto.

27.     Defendants informed Plaintiff that Plaintiff needed to wire transfer the $1,965,600.00 Purchase Price into the attorney escrow account of the Sternberg Attorney Defendants immediately, in order to hold Plaintiff's place in the queue, and so the goods could be shipped immediately, and they promised to sign and return the Agreement to Plaintiff as soon as the funds were transferred.

28.     In reliance upon the representations of the Gross Defendants and the Sternberg Attorney Defendants, on or about January 21, 2022, SAFETY HOUSE issued its Purchase Order No. 18315.

29.     In Plaintiff's Purchase Order No. 19315, Plaintiff clearly stated that January 25, 2022 was the delivery date for all of the Covid Test Kits. because the Gross Defendants and the Sternberg Attorney Defendants represented to Plaintiff they could immediately deliver the 151,200 Covid Test Kits, *See* Exhibit 1, Purchase Order.

30.     In further reliance on upon the representations of the Gross Defendants and the Sternberg Attorney Defendants, Plaintiff wired the $1,965,600.00 Purchase Price into the attorney escrow account of the Sternberg Attorney Defendants. *See* Exhibit 2.

6

31.     However, after SAFETY HOUSE wired the $1,965,600.00 into the attorney escrow account of the Sternberg Attorney Defendants, the Gross Defendants and the Sternberg Attorney Defendants failed and refused to sign and deliver the Agreement to Plaintiff.

32.     To date, Plaintiff has not received the signed Agreement from the Gross and Sternberg Attorney Defendants, which further evidences that these Defendants never intended to perform under the Agreement.

33.     Pursuant to Plaintiff's Purchase Order, the Gross and Sternberg Attorney Defendants were supposed to deliver the Order so that SAFETY HOUSE received the Covid Test Kits by January 25, 2022.

34.     After SAFETY HOUSE wired the $1,965,600.00 Purchase Price to the Sternberg Attorney Defendants, the Gross and Sternberg Attorney Defendants failed and refused to deliver the Covid Test Kits to Plaintiff.

35.     After demands by Plaintiff, they also have failed to provide a full refund, or any refund, to Plaintiff.

36.     The Gross and Sternberg Attorney Defendants had no intention of performing as promised, and misrepresented that the Covid Test Kits were currently available for both purchase and shipment.

37.     In fact, and contrary to these Defendants' representations, the Covid Test Kits were not currently available for purchase and shipment.

38.     The Gross and Sternberg Attorney Defendants never provided a Bill of Lading, from a recognized common carrier, and failed to provide other shipping information to SAFETY HOUSE, as required under the Agreement and as a prerequisite to the release of the $1,965,600.00 Purchase Price from the attorney escrow account of the Sternberg Attorney Defendants.

39.     To fraudulently induce Plaintiff to make the wire transfer to them, the Gross and
Sternberg Attorney Defendants represented that the $1,965,600.00 Purchase Price would remain
in the attorney escrow account of the Sternberg Attorney Defendants, and that the $1,965,600.00
Purchase Price would not be released from the attorney escrow account of the Sternberg Attorney
Defendants unless and until the Covid Test Kits had been delivered to a common carrier for
delivery to SAFETY HOUSE, and Plaintiff was supplied with the required Bill of Lading from a
recognized common carrier evidencing that the Covid Test Kits were in transit to Plaintiff..

40.     SAFETY HOUSE needed the Order so it could supply the Covid Test Kits to its
customer, namely a public school district.

41.     As a result of the aforesaid fraudulent conduct of the Defendants, SAFETY HOUSE
has incurred and continues to incur substantial damages, which Plaintiff believes are in excess of
$2 million including the loss of the $1,965,600.00 Purchase Price, as well as significant lost profits
due to the Defendants' fraud.

42.     SAFETY HOUSE, through counsel, has given Defendants multiple opportunities
to confirm that they have not fraudulently taken the $1,965,600.00 Purchase Price, and that
Defendants have in fact shipped the Covid Test Kits.

43.     However, Defendants have continued to make lies and misrepresentations to
Plaintiff concerning the status of the delivery of the Covid Test Kits.

44.     For example, on or about February 8, 2022, the Sternberg Attorney Defendants
misrepresented to Plaintiff the Covid Test Kits were en route and would be delivered by no later
than February 17, 2022, when in fact they were not with a common carrier or otherwise being
shipped to Plaintiff; as of February 17, 2022 (and as of the filing of this Complaint), no delivery
had been made. *See* Exhibit 3.

8

45.     Plaintiff on numerous occasions has requested that Defendants provide Plaintiff with a Bill of Lading and other shipping documents to show Seller had delivered the Covid Test Kits to a common carrier for delivery to Plaintiff. *See* Exhibit 4.

46.     To date, however, Defendants have failed and refused to deliver this shipping documentation to Plaintiff.

47.     For example, on or about February 16, 2022, a man named "Shraga" contacted Plaintiff and advised Plaintiff the Covid Test Kits were on a truck and that delivery would be made to Plaintiff by 4:00 pm on February 16, 2022.

48.     When the alleged shipment did not arrive at 4:00 p.m., Plaintiff contacted Shraga who advised Plaintiff the truck had "broken down" and that the Kits would be delivered in the morning of February 17, 2022.

49.     Plaintiff believes and this avers that defendant Gary Weiss was the person who contacted Plaintiff using the name "Shraga."

50.     As of this writing, the Covid Test Kits still have not been delivered to Plaintiff.

51.     Plaintiff believes and therefore avers Defendants had no ability to provide Plaintiff with the Covid Test Kits and intended, instead, to abscond with Plaintiff's $1,965,600.00.

52.     Plaintiff and Plaintiff's counsel demanded the immediate return of the $1,965,600.00 Purchase Price. *See* Exhibit 5.

53.     To date, however, the $1,965,600.00 Purchase Price has not been refunded to Plaintiff, and the Covid Test Kits have not been delivered.

54.     During the course of this dispute, Plaintiff has learned that other parties, namely defendants Weiss and his entity, defendant A,Solar, and defendants Zekaria and S & Z, either acting in concert with the Gross and Sternberg Attorney Defendants or acting amongst themselves,

9

have schemed and/or participated in the fraudulent scheme to deprive Plaintiff of its $1,965,600.00.

55.     In discovery Plaintiff has obtained so far, the Sternberg Attorney Defendants have claimed that they wire transferred a sum greater than $1,965,600 to Defendants Weiss and Zekaria.

56.     The Gross Defendants and the Sternberg Attorney Defendants have alleged that the Zekaria Defendants at all times relevant herein were the attorneys for Weiss and A.Solar [*see*, ECF 32-1 & 32-13].

57.     Documents obtained in discovery have showed on or about January 26, 2022, the Gross Defendants entered into an alleged agreement with the Weiss Defendants and paid A.Solar over $3,000,000.00 to purchase in excess of 501,400 Covid Test Kits from A.Solar [*see*, ECF 32-12]

58.     The Gross and Sternberg Attorney Defendants have asserted third party indemnification and contribution claims against Weiss and A.Solar [*see* ECF 34]., and they claim Weiss and A.Solar are liable to the Gross Defendants and the Sternberg Attorney Defendants for any judgment amounts Plaintiff obtains from the Gross and Sternberg Attorney Defendants. *Id.*

59.     Weiss and A.Solar have answered the third party claims by alleging that although the Gross Defendants had paid Weiss and A.Solar for the Covid Test Kits, Weiss and A.Solar were agreeable to providing a full refund [*see* ECF 66, and Exhibit "A" thereto]

60.     Weiss and A.Solar further allege that the Gross Defendants refused to accept the refund and, instead, on the advice of Sternberg, requested that Weiss and A. Solar provide collateral to them "as security for the future delivery of the [Covid Test Kits]" [*see* ECF 66, ¶ 17].

61.     Weiss and A.Solar have further alleged that they gave the Gross Defendants collateral consisting of diamonds and gems which had a value in excess of $3,000,000.00. *Id.*, ¶¶ 18-20 &

Exhibit "B," thereto.

62.   Plaintiff believes and therefore alleges that either defendants Weiss and A.Solar are holding Plaintiff's $1,965,600.00, or all Defendants are engaged in an elaborate "shell game" to hide the location of and/or wrongfully retain Plaintiff's $1,965,600,

63.   As a result of the wrongful conduct of all Defendants, Plaintiff was forced to locate and purchase Covid test kits from other sources to fulfill its contractual obligations to Plaintiff's customers and has incurred damages in doing so.

64.   The conduct of the Defendants was intentional and knowing and deliberate, and so outrageous and extreme, so as to entitle Plaintiff to an award of punitive damages.

## COUNT I

### Fraud in the Inducement
### (Against the Gross Defendants and Sternberg Attorney Defendants)

65.   The above paragraphs are incorporated herein by reference as if set forth in full.

66.   The Gross Defendants and Sternberg Attorney Defendants represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had the Covid Test Kits in stock.

67.   CHG was formed on or about December 8, 2020, and appears to have been formed solely in order to defraud SAFETY HOUSE and/or other potential victims.

68.   To fraudulently induce Plaintiff to make this large purchase, the Gross and Sternberg Attorney Defendants represented that the $1,965,600.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the $1,965,600.00 Purchase Price would not be released from escrow, until after Plaintiff was supplied with a Bill of Sale as well as a Bill of Lading from a recognized common carrier , evidencing that the Covid Test Kits had been delivered to a common carrier and were en route for delivery to SAFETY HOUSE.

11

69.     Instead, the Sternberg Attorney Defendants wrongfully and improperly and prematurely released Plaintiff's $1,965,600.00 Purchase Price from escrow, without confirming that the Covid Test Kits were purchased, and without confirming that the Covid Test Kits were delivered to a recognized common carrier for delivery to Plaintiff.

70.     These representations and promises were false when made by Gross and Sternberg Attorney Defendants to SAFETY HOUSE.

71.     Said Defendants knowingly made these false representations and promises to SAFETY HOUSE to induce it to wire the $1,965,600.00 Purchase Price to said Defendants, despite the Gross and Sternberg Attorney Defendants' actual knowledge that they did not intend to and could not honor their representations and lacked the capacity to perform as promised.

72.     SAFETY HOUSE reasonably relied upon the representations of these Defendants and changed its position to its detriment, and sustained damages as a direct and proximate result of the fraud perpetrated by said Defendants as set forth in detail above.

73.     SAFTEY HOUSE sustained damages, including the loss of the $1,965,600.00 Purchase Price it wired into the attorney escrow account of the Sternberg Attorney Defendants.

74.     SAFETY HOUSE has suffered additional damages including lost profits, resulting from its inability to re-sell the Covid Test Kits to its customers.

75.     SAFETY HOUSE also has incurred damages including the increased costs it was forced to spend to in locating Covid test kits in the marketplace so that it could cover and fulfill its contractual obligations to its customers.

76.     The conduct of the Gross and Sternberg Attorney Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

12

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT II

### Fraud
### (Against the Gross and Sternberg Attorney Defendants)

77.     The above paragraphs are incorporated herein by reference as if set forth in full.

78.     The Gross and Sternberg Attorney Defendants represented and promised to SAFETY HOUSE that they could sell Plaintiff and quickly deliver the Covid Test Kits because they already had the Covid Test Kits in stock.

79.     CHG was formed on or about December 8, 2020, and appears to have been formed solely in order to defraud SAFETY HOUSE and/or other potential victims.

80.     To fraudulently induce Plaintiff to make this large purchase, the Gross and Sternberg Attorney Defendants represented that the $1,965,600.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the $1,965,600.00 Purchase Price would not be released from escrow, until after Plaintiff was supplied with a Bill of Sale as well as a Bill of Lading from a recognized common carrier , evidencing that the Covid Test Kits had been delivered to a common carrier and were en route for delivery to SAFETY HOUSE.

13

81.     Instead, these Defendants improperly released and took the Plaintiff's money from escrow, and failed to deliver the Covid Test Kits, which were supposed to be delivered by Plaintiff to a public school district.

82.     These representations and promises were false when made by the Gross and Sternberg Attorney Defendants to SAFETY HOUSE.

83.     These Defendants knowingly made these false representations and promises to SAFETY HOUSE to induce it to wire the entire $1,965,600.00 Purchase Price to them, despite their actual knowledge that they did not intend to honor their representations and lacked the capacity to perform as promised.

84.     SAFETY HOUSE reasonably relied upon the representations of the Gross and Sternberg Attorney Defendants and changed its position to its detriment.

85.     SAFTEY HOUSE has lost the $1,965,600.00 Purchase Price it paid to these Defendants.

86.     SAFETY HOUSE also has suffered lost profits as it has been unable to re-sell the Covid Test Kits to the customers with whom SAFETY HOUSE had purchasing contracts, such as public school districts.

87.     The conduct of the Gross and Sternberg Attorney Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus

14

additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT III

### Fraud
### (Against the Weiss and Zekaria Defendants)

88. The above paragraphs are incorporated herein by reference as if set forth in full.

89. Based upon the representations and filings of the Sternberg Attorney Defendants and the Gross Defendants, and of the Weiss Defendants, Plaintiff believes and thus avers that the Weiss Defendants and the Zekaria Defendants aided and abetted ,if not directly participated in, the aforesaid wrongful fraud perpetrated upon Plaintiff.

90. The Gross Defendants and the Sternberg Attorney Defendants represented that Plaintiff's funds in turn were wire-transferred to the Weiss Defendants and the Zekaria Defendants for the purchase of the Covid Test Kits, but that the Weiss Defendants and the Zekaria Defendants kept Plaintiff's funds and also failed to deliver the Covid Test Kits to Plaintiff.

91. The Weiss Defendants represented in their Answer to the Third Party Complaint that the Covid Test Kits were being shipped to Plaintiff, but then had to be diverted to a warehouse, where they then mysteriously just disappeared, and that said Defendants then gave diamonds and gems with a value in excess of $3 million to the Gross Defendants and/or the Sternberg Attorney Defendants "as collateral." *See* ECF 66, and Exhibit "A." thereto.

92. To date, neither the Sternberg Attorney Defendants, not the Gross Defendants, nor the Weiss Defendants, nor the Zekaria Defendants, have returned Plaintiff's $1,965,600.00 to Plaintiff, and said Defendants also have not delivered the 151,200 Covid Test Kits to Plaintiff, and said Defendants also have not turned over or delivered the gemstones that the Weiss Defendants

15

claimed they delivered to the Gross Defendants and/or the Sternberg Attorney Defendants "as collateral."

93.     The aforesaid representations and promises were false when made by the Defendants, and said Defendants knowingly made these false representations and promises to SAFETY HOUSE to induce it to wire the entire $1,965,600.00 Purchase Price, despite their actual knowledge that they did not intend to honor their representations and lacked the capacity to perform as promised.

94.     Plaintiff reasonably relied upon the representations of the Gross and Sternberg Attorney Defendants and changed its position to its detriment., and as a result, Plaintiff has lost the $1,965,600.00 Purchase Price it paid to these Defendants.

95.     The aforesaid conduct of the Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Gary Weiss, and A. Solar LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as  punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT IV

### WRONGFUL CIVIL CONSPIRACY
### (Against All Defendants)

96.     The above paragraphs are incorporated herein by reference, as if set forth in full.

97.     Each of the Defendants wrongfully conspired with each other to fraudulently induce

SAFETY HOUSE to send them almost two million dollars, as alleged above, without any intent or capacity to perform the alleged Agreement.

98. These Defendants each took active steps to further the conspiracy, from negotiating the terms of the alleged Agreement, to representing that the Purchase Price would be held in an attorney escrow account, and to promising (but failing) to deliver the Covid Test Kits immediately, and to promising (but failing) to provide Plaintiff with a Bill of Lading from a recognized common carrier, and to promising (but failing) to deliver to Plaintiff a signed copy of the Agreement, and to promising (but failing) to deliver the Covid Test Kits, and by failing to return Plaintiff's purchase price.

99. Defendants Weiss, A.Solar, Zekaria and S & Z wrongfully conspired with each and with the other Defendants other to fraudulently obtain payment of Plaintiff's $1,965,600.00 from the Gross and the Sternberg Attorney Defendants, and thereafter failing and refusing to return the funds, or to deliver the Covid Test Kits

100. Upon information and belief, Defendants Zekaria and S & Z accepted the wire transfer from the Sternberg Attorney Defendants and thereafter retained a portion of and/or transferred those funds to defendants Weiss and/or A.Solar.

101. Defendants Weiss and A.Solar accepted the payment of Plaintiff's $1,965,600 from defendants Zekaria and S & Z when they knew or should have known they could not obtain Covid Test Kits in the quantity required to fill Plaintiff's order.

102. Thereafter, defendants Weiss and A.Solar refused to return the Plaintiff's funds.

103. The conspiracy of Weiss, A.Solar, Zekaria and S & Z aimed to obtain, and then keep, SAFETY HOUSE's funds, without delivering the Covid Test Kits purchased and needed by Plaintiff.

17

104. Each of these Defendants is liable for the actions of the other Defendants in furtherance of this conspiracy.

105. All Defendants have engaged in a conspiracy to obtain and keep Plaintiff's $1,965,600.00 purchase price without delivering to Plaintiff the Covid Test Kits.

106. SAFETY HOUSE has lost the $1,965,600.00 Purchase Price it paid to these Defendants.

107. SAFETY HOUSE has suffered lost profits as it has been unable to sell the Covid Test Kits to its customers.

108. The conduct of Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A. Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

### COUNT V

### PIERCING THE CORPORATE VEIL
### (Against Gross and CHG)

109. The above paragraphs are incorporated herein by reference, as if set forth in full.

110. Defendant CHG purports to be limited liability company and, on information and belief, CHG is owned entirely by its managing member, Samuel Gross.

18

111.    On information and belief, CHG was inadequately capitalized, failed to properly observe the required corporate formalities, and was otherwise used by Defendants to perpetuate their fraud against SAFETY HOUSE.

112.    Due to the fraudulent and/or deceptive conduct of the Defendants, and the failure of one or more Defendants to properly capitalize CHG, and/or their failure to observe corporate formalities, the corporate veil of CHG should be disregarded, and its managing member, Samuel Gross, should be held individually liable for the wrongful acts of CHG.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A. Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT VI

### PIERCING THE CORPORATE VEIL
### (Against Weiss and A Solar)

113.    The above paragraphs are incorporated herein by reference, as if set forth in full.

114.    Defendant A. Solar purports to be limited liability company and, on information and belief, A. Solar is owned entirely by its managing member, Gary Weiss.

115.    On information and belief, A. Solar was inadequately capitalized, failed to properly observe the required corporate formalities, and was otherwise used by Defendants to perpetuate their fraud against SAFETY HOUSE.

19

116.    Due to the fraudulent and/or deceptive conduct of the Defendants, and the failure of one or more Defendants to properly capitalize A. Solar, and/or their failure to observe corporate formalities, the corporate veil of A. Solar should be disregarded, and its managing member, Gary Weiss, should be held individually liable for the wrongful acts of A. Solar.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A. Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

### COUNT VII

### PARTICIPATION THEORY
### (Against Shlomo Gross and Sternberg)

117.    The above paragraphs are incorporated herein by reference as if set forth in full.

118.    Gross and Sternberg each represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States.

119.    To fraudulently induce plaintiff to make this large purchase, Gross and Sternberg each represented that the $1,965,600.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants.

120.    These funds were not to be released from escrow until after a Bill of Sale was

delivered to Plaintiff and the Covid Test Kits were delivered to a common carrier for delivery to Plaintiff, and the Bill of Lading and shipping documents also delivered to Plaintiff. *See* Exhibit 1, §6 and Exhibit D thereto.

121.    The Sternberg Attorney Defendants misrepresented to Plaintiff the Covid Test Kits were en route and would be delivered by no later than February 25, 2022, when in fact they were not placed with a common carrier or otherwise being shipped to Plaintiff, either as of the promised January 25 delivery date, or as of February 17, 2022 (the filing of this Complaint), or to date -- no delivery has been made. *See* Exhibit 3.

122.    Plaintiff on numerous occasions has requested that Gross and Sternberg provide Plaintiff with a Bill of Lading and other shipping documents to show they had delivered the Covid Test Kits to a common carrier for delivery to Plaintiff. *See* Exhibit 4.

123.    However, each of Gross and Sternberg, however, have failed and refused to deliver this shipping documentation to Plaintiff.

124.    Furthermore, Gross and Sternberg caused further deception and delay when, on or about February 16, 2022, a man named "Shraga" contacted Plaintiff and advised Plaintiff the Covid Test Kits were on a truck and that delivery would be made to Plaintiff by 4:00 pm on February 16, 2022.

125.    When the shipment did not arrive at 4:00 p.m., Plaintiff contacted Shraga who advised Plaintiff the truck had "broken down" and that the Kits would be delivered in the morning of February 17, 2022.

126.    The goods have not been placed with a common carrier or delivered to Plaintiff, wither as promised, or to date.

127.    Gross and Sternberg have each furthered the fraud and made material

21

misrepresentations to Plaintiff, not only to obtain he funds, but to prevent and delay detection of the fraud.

128.     Each of Gross and Sternberg should be held liable for their individual participation in this fraudulent scheme pursuant to Participation Theory.

129.     Each of Gross and Sternberg made these representations with knowledge that they were false.

130.     Each of Gross and Sternberg personally participated in making these misrepresentations to SAFETY HOUSE.

131.     SAFETY HOUSE has lost the $1,965,600.00 Purchase Price it paid to Defendants, and has sustained and continues to sustain damages, as a result of Defendants' fraudulent and wrongful conduct.

132.     SAFETY HOUSE has suffered lost profits as it has been unable to sell the Covid Test Kits to the customers with whom SAFETY HOUSE had purchasing contracts, such as public school districts.

133.     SAFETY HOUSE has also incurred damages in locating Covid test kits in the marketplace so that it can fulfill its contractual obligations to its customers.

134.     The conduct of each of Gross and Sternberg was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A. Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus

22

additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT VIII

### Unjust Enrichment/Quantum Meruit
### (Against the Gross and Sternberg Attorney Defendants)

135. The above paragraphs are incorporated herein by reference as if set forth in full.

136. In the alternative, SAFETY HOUSE alleges that the Gross and Sternberg Attorney Defendants have unjustly enriched themselves at the expense of SAFETY HOUSE.

137. These Defendants requested SAFETY HOUSE to, *inter alia*, provide funds to purchase the Covid Test Kits, in exchange for the $1,965,600.00 Purchase Price. *See* Exhibit 1.

138. These Defendants represented that the entire $1,965,600.00 Purchase Price was required to be deposited into the attorney escrow account of the Sternberg Attorney Defendants.

139. The Gross and Sternberg Attorney Defendants represented that the entire $1,965,600.00 Purchase Price would not be released from the attorney escrow account of the Sternberg Attorney Defendants unless the Covid Test Kits were delivered to a common carrier for delivery to Plaintiff, and Plaintiff was supplied with a Bill of Sale and the Bill of Lading and other shipping documents.

140. In reliance upon the aforesaid representations of these Defendants, on January 21, 2022, SAFETY HOUSE wired $1,965,600.00 into the attorney escrow account of the Sternberg Attorney Defendants. *See* Exhibit 2.

141. The Gross and Sternberg Attorney Defendants received and accepted and used the $1,965,600.00 Purchase Price described above.

142. SAFETY HOUSE conferred a benefit upon these Defendants by delivering the

23

$1,965,600.00 Purchase Price without receiving anything in return.

143.     These Defendants appreciated, accepted, and retained the benefit of the $1,965,600.00 Purchase Price.

144.     It would be unjust and inequitable to allow Defendants to retain the benefit of the $1,965,600.00 Purchase Price they received from SAFETY HOUSE, without providing full compensation to SAFETY HOUSE.

145.     The fair value of the moneys supplied by SAFETY HOUSE to Defendants and retained and used by Defendants is the amount of $ 1.965,600.00.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A. Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT IX

### Intentional Interference with Existing Contractual Relations
### (Against All Defendants)

146.     The above paragraphs are incorporated herein by reference as if set forth in full.

147.     A contractual relationship existed between Plaintiff and the Gross and the Attorney Sternberg Defendants.

148.     A contractual relationship existed between Plaintiff and the customers to whom Plaintiff intended to ship the Covid Test Kits.

24

149. Each of the Defendants took actions with the specific intent to harm the existing aforesaid contractual relationships.

150. This harm consisted of, among other things: (a) taking Plaintiff's $1,965,600.00 payment as part of the over $3,00,000.00 payment made from the Gross and Sternberg Attorney Defendants made to the Weiss and/or Zekaria Defendants to purchase in excess of 500,000 Covid Test Kits, when Defendants knew or should have known that Covid Test Kits in that volume were not available in the market at the time they induced Plaintiff to wire the $1.965,600 purchase price, and (b) thereafter failing to return the money to Plaintiff, and (c) failing to deliver the promised Covid Test Kits.

151. Defendants had no privilege or justification for their actions.

152. SAFTEY HOUSE has lost the $1,965,600.00 Purchase Price it paid to the Gross and Sternberg Attorney Defendants.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A.Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT X

### Intentional Interference with Prospective Economic Advantage
### (Against All Defendants)

153. The above paragraphs are incorporated herein by reference as if set forth in full.

154. A contractual relationship existed between Plaintiff and the Gross Defendants and the Sternberg Attorney Defendants.

155. A contractual relationship and prospective economic advantage existed between Plaintiff said Defendants, as well as the customers to whom Plaintiff intended to ship the Covid Test Kits.

156. Each of the Defendants took actions with the specific intent to harm Plaintiff's prospective economic advantage and the aforesaid contractual relationships.

157. This harm consisted of, among other things: (a) taking Plaintiff's $1,965,600.00 payment as part of the over $3,00,000.00 payment made from the Gross and Sternberg Attorney Defendants to the Weiss and/or Zekaria Defendants to purchase in excess of 500,000 Covid Test Kits, when Defendants knew or should have known that Covid Test Kits in that volume were not available in the market at the time they induced Plaintiff to wire the $1.965,600 purchase price, and (b) thereafter failing to return the money to Plaintiff, and (c) failing to deliver the promised Covid Test Kits..

158. Defendants had no privilege or justification for their actions.

159. SAFTEY HOUSE has lost the $1,965,600.00 Purchase Price it paid to the Gross and Sternberg Attorney Defendants.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A.Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as

26

punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT XI

### Unjust Enrichment/Quantum Meruit
### (Against Weiss and A.Solar)

160.　The above paragraphs are incorporated herein by reference as if set forth in full.

161.　In the alternative, SAFETY HOUSE alleges that Weiss and A.Solar have unjustly enriched themselves at the expense of SAFETY HOUSE.

162.　These Defendants received from the Sternberg Defendants the Plaintiff's $1,965,600.00 amount that was intended to purchase the 151,200 Covid Test Kits that were the subject of the Agreement.

163.　Weiss and A.Solar received and accepted the Plaintiff's $1,965,600.00 amount from the Sternberg Attorney Defendants.

164.　SAFETY HOUSE conferred a benefit upon Weiss and A.Solar without receiving anything in return.

165.　These Defendants appreciated, accepted, and retained the benefit of the $1,965,600.00 paid by Plaintiff.

166.　It would be unjust and inequitable to allow Weiss and A.Solar to retain the benefit of the $1,965,600.00 without providing full compensation to SAFETY HOUSE.

167.　The fair value of the moneys supplied by SAFETY HOUSE to Weiss and A.Solar and retained by them is $ 1.965,600.00.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Gary Weiss, and A.Solar, LLC, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional

27

compensatory damages, consequential damages, and special damages, as well as punitive

damages, attorney fees and costs and interest on all amounts and for such other and further relief

as the Court deems just and proper, to the maximum extent allowed by applicable law.

Respectfully submitted,

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64423
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Telephone: 215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date: July 31, 2023                                   Attorneys for Plaintiff

## EXHIBITS TO COMPLAINT

### EXHIBIT          DESCRIPTION

"1"          [Unsigned] Purchase and Sale Agreement documents

"2"          1/21/22 Wire Transfer Documents for Wire of $1,965,600.00 Purchase Price Into
             Attorney Escrow Account of the Sternberg Attorney Defendants

"3"          2/8/22 email between Plaintiff and Sternberg Attorney Defendants

"4"          Emails to Sternberg Attorney Defendants requesting shipping information

"5"          2/19/22 email to Sternberg Attorney Defendants demanding return of the
             $1,965,600.00 Purchase Price, and 2/16/22 email from Plaintiff demanding return
             of the $1,965,600.00 Purchase Price

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below he caused to be served a true and correct copy of Plaintiff's First Amended Complaint via ECF, U.S. first class mail and/or email upon the following:

Seth Laver, Esquire
Jason Kaner, Esquire
Goldberg Segall
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
slaver@goldbergsegalla.com
jkaner@goldbergsegalla.com

Samuel Gross
78 Buckminster Road
Rockville Centre, NY 11570
charltonholdinggroupllc@aol.com

William R. Murphy III, Esquire
Rebecca J. Price, Esquire
Norris McLaughlin
515 Hamilton Street, Suite 502
Allentown, PA 18101
wmurphy@norris-law.com
rprice@norris-law.com

Gary Weiss (pro se)
wgary4109@gmail.com

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64423
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Telephone: 215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date: July 31, 2023

Attorneys for Plaintiff

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

American Environmental Enterprises, Inc., d/b/a
THE SAFETYHOUSE.COM

**DEFENDANTS**

Manfred Sternberg, Esquire & Manfred Sternberg & Associates, P.C. & Charlton Holdings Group, LLC & Samuel

**(b)** County of Residence of First Listed Plaintiff   Delaware County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Harris, Houston TX
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gary P. Lightman, Esquire and Glenn A. Manochi, Esquire, Lightman & Manochi, 600 W. Germantown Pike, Suite 400, Plymouth Meeting, PA 19462, 215-760-3000 ▪

Attorneys *(If Known)*
Seth Laver, Esquire and Jason Kaner, Esquire
Goldberg Segall, 1700 Market St., Suite 1418, Phila., PA 19103, 267-519-6800 ▪

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1332(a)(1) & § 1391
Brief description of cause:
Fraudulent inducement with damages over $2million dollars

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   John Milton Younge   DOCKET NUMBER 22-00688

DATE
07/31/2023

SIGNATURE OF ATTORNEY OF RECORD
*Gary Lightman*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

05/2023

Case 2:22-cv-00688-JMY Document 80-2 Filed 07/31/23 Page 1 of 1
Case 2:22-cv-00688-JMY Document 99-1 Filed 01/01/24 Page 163 of 412
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 99 Aldan Avenue, Suite 5, Glenn Mills, PA 19342 _____

Address of Defendant: _____ 1700 Post Oak Blvd., 2 Boulevard Place, Suite 600, Houston, TX 77056 _____

Place of Accident, Incident or Transaction: _____ Glenn Mills, PA 19342 _____

---

**RELATED CASE IF ANY:**

Case Number: _____ N/A _____ Judge: _____ Date Terminated _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is **not** related to any now pending or within one year previously terminated action in this court except as note above.

DATE: _____ 07/31/2023 _____  *Gary Lightman* _____  28529 _____

*Attorney-at-Law (Must sign above)*     *Attorney I.D. # (if applicable)*

---

**Civil (Place a √ in one category only)**

*A.  Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. All Other Federal Question Cases. *(Please specify)*: _____

*B.  Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*: _____
☐ 7. Products Liability
☒ 8. All Other Diversity Cases: *(Please specify)* _____
_____

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, _____ Gary P. Lightman _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____ 07/31/2023 _____  *Gary Lightman* _____  28529 _____

*Attorney-at-Law (Sign here if applicable)*     *Attorney ID # (if applicable)*

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

Case 2:22-cv-00688-JMY   Document 80-3   Filed 07/31/23   Page 1 of 1
Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 164 of 412
**APPENDIX G**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

American Environmental Enterprises          :
                                            :
                                            :
                   V.                       :          Civil Action
                                            :          No:  22-00688
Mangred Sternberg, Esquire et al            :
                                            :

## DISCLOSURE STATEMENT FORM

Please check one box:

☑          The nongovernmental corporate party, _____
           , in the above listed civil action does not have any parent corporation and
           publicly held corporation that owns 10% or more of its stock.

☐          The nongovernmental corporate party, _____
           , in the above listed civil action has the following parent corporation(s) and
           publicly held corporation(s) that owns 10% or more of its stock:

           _____
           _____
           _____
           _____


07/31/2023                                  _Gary Lightman_____
   Date                                              Signature

                   Counsel for:   Plaintiff _____


## Federal Rule of Civil Procedure 7.1 Disclosure Statement

(a)   WHO MUST FILE; CONTENTS.  A nongovernmental corporate party must file
      two copies of a disclosure statement that:
      (1)   identifies any parent corporation and any publicly held corporation
            owning10% or more of its stock;  or

      (2)   states that there is no such corporation.

(b) TIME TO FILE; SUPPLEMENTAL FILING.  A party must:
      (1)   file the disclosure statement with its first appearance, pleading,
            petition, motion, response, or other request addressed to the court;
            and
      (2)   promptly file a supplemental statement if any required information
            changes.

# EXHIBIT "1"

**---- PURCHASE ORDER ----**

# THE SAFETYhouse.com®

99 Aldan Avenue, Suite 5 • Glen Mills, PA 19342
1-800-872-3684 • PH: 610-344-0637 • FAX: 1-610-436-4983
www.thesafetyhouse.com

**P.O. #**  **18315**

| | |
|---|---|
| **Date** | 1/21/2022 |
| **Receive By** | 1/25/2022 |
| **Vendor Account #** | |
| **Memo** | |
| **Terms** | CIA (Cash in Advance) |
| **Ship Via** | |
| **FOB** | |
| **Freight In Status** | Freight Included |
| **Buyer** | Dan Scully |
| **Date Printed** | 01/21/2022 11:57:17 |

**Vendor**

(713) 824-9170
C/O: Manfred Sternberg ESQ
Charlton Holding Group LLC
78 Buckminster Road
Rockville Centre NY 11570
United States

**Ship To**

The Safetyhouse.com
99 Aldan Avenue
Suite 5
Glen Mills PA 19342
United States

| Item | TSH ID | Qty | Rec'd | Ck-In | U/M | Description | Rate | Amount |
|---|---|---|---|---|---|---|---|---|
| FS1001 | FS1001 | 151,200 | 0 | | Each | FS1001 - iHealth Covid-19 Antigen Rapid Test, 2 Tests per Kit | 13.00 | 1,965,600... |

**Total**    $1,965,600.00

_____
Authorized Signature

**CHARLTON HOLDING GROUP, LLC**

### SALE AND PURCHASE AGREEMENT

January 21, 2022

THIS AGREEMENT IS FOR THE SALE AND PURCHASE OF the product identified on the Purchase Order attached hereto and marked as Exhibit A attached hereto (the "Goods"). This Sale and Purchase Agreement is referred to herein as (this "Agreement").

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer") (each hereafter as "Party" and together as the "Parties")

For good and valuable consideration, the Parties agree:

1. Seller shall provide Buyer the Goods listed in Exhibit A for the Purchase Price, provided that Buyer complies with the conditions of this Agreement.

2. Seller agrees to sell to Buyer  151,200  boxes of 2 count iHealth COVID 19 home test kits shall be provided to the Buyer by the Seller for each lot of boxes available for payment as they are ready to be delivered.

3. The Buyer agrees to pay the Seller @ $13.00(USD) per box. Payment upon invoice as the product lots are ready for delivery, total cost **$1,965,600.00**.

4. The product lots may be located in more than one (1) location or warehouse in various locales in the United States.  Immediately after delivering a Purchase Order, Buyer agrees to authorize a wire be made to Seller through the Seller's Attorney Escrow Account identified in Exhibit B for the actual number of boxes of product contained in the Purchase Order.

5. As per the invoice below (EXHIBIT C), Seller agrees to sell **151,200 boxes** of 2 count iHealth COVID 19 home test kits . The Buyer shall transfer the above-mentioned funds to the Seller's Attorney Escrow Account listed inExhibit B as per each invoice.

6. Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. Title transfer shall happen contemporaneously with funds being released to Seller. Exhibit E attached hereto is incorporated herein as Seller's agreed upon Standard Operating Procedure.

7. Seller agrees to pay commissions, if any, included with rolls and extensions for the duration of this Agreement as per separate written agreement.

8. The Seller agrees to coordinate and pay for common carrier transportation to deliver the Goods from the Seller's warehouse(s) to Buyer at Seller's cost and is included in the purchase price paid to Seller by Buyer hereunder.

9. Risk of loss shall transfer to Buyer at the point the product is paid for by Buyer and the Seller is released of all loss guarantees.

10. The Goods shall be sold with the manufacturer's warranty only. Seller makes a warranty of Title to product only when it is paid for by Buyer. Seller makes no other warranty of any kind, express or implied, and any warranty by Seller is expressly disclaimed.

11. Neither Buyer nor Seller shall be liable to the other for any consequential damages, lost profits, cover costs, or punitive or exemplary damages arising out of or related to this Agreement; however if Buyer in any way attempts to circumvent Seller, Seller will be entitled to liquidated damages of $50,000 from Buyer or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer.

12. Seller may terminate this Agreement if Seller determines, in its sole discretion, that Buyer does not have the funds to purchase the Goods, or the Goods become unavailable and all funds deposited with Seller, if any, shall be returned to Buyer.

13. This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.

14. Buyer warrants and represents this transaction is in full compliance with all applicable laws and regulations, including but not limited to Executive Order No. 13224, as amended, the Patriot Act (Public Law 107 56), and any other law relating to the prevention and detection of terrorism and money laundering

15. Buyer agrees to indemnify, defend, and hold harmless the Seller, its agents, servants, employees, contractors, and affiliates (the "Indemnified Parties"), from and against all damages, losses, costs, and expenses (including reasonable attorneys' fees) which they may incur by reason of any breach of the representations and warranties made by Buyer in this Agreement, or any false or misleading representation or warranty in this Agreement or other document provided by Buyer to Seller.

16. Seller and Buyer are independent contracting Parties and nothing in this Agreement shall make either Party the agent, employee, or legal representative of the other.

17. The terms of this Agreement are confidential and may only be disclosed as required by law or to complete the transaction.

18. This constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties. Neither Party is relying upon any representation not contained in this Agreement.

*We, the undersigned, with full legal and corporate responsibility accept the agreement this date:*

**Signing Page**

Agreed and Signed By:

**CHARLTON HOLDING GROUP, LLC**

For and on behalf of Seller,
Charlton Holdings Group, LLC

_____

Authorized Signatory

Name: Mr. Sam Gross

Position: Managing Partner

Date:

For and on behalf of Buyer

_____

Authorized Signatory

Name:
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342

Date: January 21, 2022

**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT "A"- ICPO

**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT "B" - ESCROW ACCOUNT
# Manfred Sternberg Jr. Attorney at Law IOLTA-Trust Account Wire Instructions



## Bank of America; Phone # 888.287.4637
## ABA #026009593

## ACCOUNT NAME:
## Manfred Sternberg Jr. Attorney at Law
## IOLTA - Trust Account
## ACCT # 0008 4000 2143

Bank of America's SWIFT code **BOFAUS3N** should be used for incoming wires in U.S. dollars.

Bank of America's SWIFT code **BOFAUS6S** should be used for incoming wires in foreign currency.
If you do not know or are unsure of the type of currency being received please use **BOFAUS3N**

Someone sending an incoming international wire to you may also ask for Bank of America's address. The address to provide is as follows:
**BOFAUS3N** (US dollars or unknown currency)
      Bank of America, NA
      222 Broadway
      New York, New York 10038
**BOFAUS6S** (foreign currency)
      Bank of America, NA
      555 California St
      San Francisco, CA 94104
  Manfred Sternberg
  Attorney at Law
  1700 Post Oak Blvd., 2 Blvd. Place, Suite 600
  Houston, TX 77056
  TEL: (713) 622-4300
  FAX: (713) 622-9899
  manfred@msternberg.com

**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT C
# INVOICE

Charlton Holdings Group, LLC,
78 Buckminster Road - Rockville Center
New York 11570, USA

INVOICE _____ DATE: January 21, 2022

TO:
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342
*Ship To:*

**INSTRUCTIONS**: Funds are only due and payable upon receipt of Invoice. All sales are final.

| SALESPERSON | P.O. NUMBER | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| SAM GROSS | 18315 | | Common Carrier | Delivery to Buyer | Due on receipt |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 151,200 | iHealth COVID 19 home test kits | $13.00 | $1,965,600.00 |
| | | | |
| | CREDIT FOR DEPOSIT PER SPA $1,965,600.00 | | ($1,965,600.00) |
| | | | |

NO SALES TAX (RESALE)

## TOTAL DUE $0.00

Bank wire or deposit:
**ACCOUNT NAME:**
Manfred Sternberg Jr. Attorney at Law
IOLTA - Trust Account
Bank of America; Phone # 888.287.4637
**ABA #026009593**
**ACCT # 0008 4000 2143**

CHARLTON HOLDING GROUP, LLC

# EXHIBIT D –
# BILL OF SALE

### LOT #1 *(ref: #18315)*

*CHARLTON HOLDINGS GROUP, LLC (the "Seller") does hereby sell, assign and transfer to the "Buyer" Safety House  99 Aldan Avenue, Suite 5 Glen Mills, PA 19342  the item(s) described as follows:*

> **151,200 boxes** of 2 count iHealth COVID 19 home test kits  @ $13.00 PER BOX
> INCLUSIVE.

*for the TOTAL AMOUNT OF $1,965,600.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of January _____, 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933

**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT E -

# STANDARD OPERATING PROCEDURE (SOP)

January 21, 2022

RE:  151,200  boxes of 2 count iHealth COVID 19 home test kits

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer")  (each hereafter as "Party" and together as the "Parties")

The following SOP is how Seller engages with Buyers.

1. Buyer to provide Purchase Order to Seller.
2. Seller's Attorney to draft and provide Buyer with Seller form of Sale and Purchase Agreement. ("SPA").
3. Buyer and Seller execute SPA and Buyer wires Seller's Attorney the total purchase price called for in the Purchase Order.
4. Purchase price funds released to Seller.
5. Title Transfer to Goods to Buyer per SPA.
6. Goods delivered to common carrier by Seller per SPA for delivery to Buyer.
7. Seller to provide Buyer with BOL(s) and executed Bill of Sale for Goods shipped
8. Buyer and its agents agree not to speak to anyone other than Seller or Seller's representative regarding this transaction.   Any discussions with Seller's vendors will be considered attempted circumvention.

# EXHIBIT "2"
# Redacted

 

Fulton Bank

# [encrypt] [Cust Out Wire Advice - eMail] Message ID:220121143457MA98 Advice Code:OTCSADEM

Skip Navigation

- Inbox
- Contacts
- Compose
- Sent Mail
- Drafts
- Help
- ?
- Sign Out

Fulton Bank Message View
dans@thesafetyhouse.com
[encrypt] [Cust Out Wire Advice - eMail]

- Reply
- Reply All
- Forward
- Delete
- Go

Last Sign In: Feb 15, 2022 3:24 PM

Received: Jan 21, 2022 3:43 PM
Expires: Feb 20, 2022 3:43 PM
From: wireroom@fultonbank.com
To: dans@thesafetyhouse.com
Cc:
Subject: [encrypt] [Cust Out Wire Advice - eMail]

In accordance with your instructions, we have DEBITED your account: **********4700 for $1,965,600.00 ON 2022-01-21.

Originator:       AMERICAN ENVIRONMENTAL ENTERPR
Sender Bank Name:  FULTON BANK NA
Sender Bank ABA#:  031301422
Sender Reference:

Fed Reference #:

Receiver Bank Name: BK AMER NYC
Receiver Bank ABA#:      9593

Beneficiary Name: MANFRED STERNBERG JR ATTORNEY AT LAW
Beneficiary Bank:
Beneficiary Reference:

Originator to Beneficiary Info:

Bank to Bank Information:

\*\*\*CONFIDENTIALITY NOTICE\*\*\*
This email contains confidential information which
may also be legally privileged and which is intended
only for the use of the recipient(s) named above. If
you are not the intended recipient, you are hereby
notified that forwarding or copying of this email,
or the taking of any action in reliance on its contents,
may be strictly prohibited. If you have received this
email in error, please notify us immediately by reply
email and delete this message from your inbox. Thank you.

\*\*\*CONFIDENTIALITY NOTICE\*\*\*This email contains confidential information which may also be legally
privileged and which is intended only for the use of the recipient(s) named above. If you are not the intended recipient,
you are hereby notified that forwarding or copying of this email, or the taking of any action in reliance on its contents,
may be strictly prohibited. If you have received this email in error, please notify us immediately by reply email and
delete this message from your inbox. Thank you. E-Mail Opt Out Notice: This e-mail message may include an
advertisement. You have the right to request that we not send future advertisements to you at this e-mail address. If you
prefer not to receive future advertisements from us at this e-mail address, please access the following url
http://www.optoutffc.com/ Fulton Bank, N.A., P.O. Box 8, East Petersburg, Pa. 17520

This message was secured by Zix(R).

Fulton Bank

This service is hosted by Zix on behalf of Fulton Bank More Information



# EXHIBIT "3"

**Subject:** Fwd: PDF Signed SPA and wire transfer receipt from from Dan Scully

Here is the email .

He sent it to Dick Gray

Begin forwarded message:

**From:** Manfred <manfred@msternberg.com>
**Date:** Feb 8, 2022 at 3:50 PM
**To:** Dick Gray <dickgray1951@aol.com>
**Cc:** Sam Gross <samrosinc@icloud.com>, Chris Cortese <cjcsvpllc@gmail.com>
**Subject: Re: PDF Signed SPA and wire transfer receipt from from Dan Scully**

Hi Dick,   Please see attached executed Bill of Sale for Hand Safety's product that is in route for delivery as previously directed.

*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard
2 BLVD Place, Suite 600
Houston, Texas 77056

☎Ph: 713-622-4300
📠Fax: 713-622-9899
✉ Email: manfred@manfredlaw.com



# EXHIBIT "4"

| From: | Gary Lightman |
|---|---|
| To: | Manfred |
| Cc: | G. Manochi; Wl. Stamps; K. DiTomaso; GARY LIGHTMAN |
| Subject: | Re: TheSafetyHouse.com v. Manfred Sternberg & Associates, and Manfred Sternberg, Esquire, and Sam Gross, and Charlton Holding Group, LLC -- Docket No. 2022-[NOT YET FILED] |
| Date: | Tuesday, February 15, 2022 10:33:57 PM |

Mr. Sternberg,

Your email below is NOT what you represented to me in our phone call of earlier today.

You were not authorized to release any funds from your attorney escrow account until "Seller deliver[ed] the goods to a common carrier" with the appropriate *signed* Seller's Bill of Sale transferring title of the goods to Buyer.

This is the second (and last) time we will request that you provide us IMMEDIATELY with the identity and contact information of the "common carrier" that you represented to me in our phone call (and that did not deny in your below email) that has the goods that you represented to me already were being shipped to TSH.

We also request that you email to us a copy of the *signed* Bill of Sale, as well as the Bill of Lading for the common carrier shipment.

If we do not receive this information and documentation from you by no later than tomorrow, then we have been instructed (1) to immediately file a lawsuit, and (2) to file a disciplinary complaint against you for your unauthorized transfer of escrow funds.

You should write us back first thing in the am, if you have any questions or problems. Otherwise, we look forward to timely receiving from you the requested information and documentation.

Please be guided accordingly.

thx
Gary Lightman
cell 215-760-3000

> On Feb 15, 2022, at 7:08 PM, Manfred <Manfred@msternberg.com> wrote:
>
> Mr. Gary Lightman, I am not sure what you heard, but I certainly did not confirm that our law firm is still holding the $1,965,600.00 that TSH wired into our attorney escrow. The funds were disbursed to the Seller in accordance with the SPA and per the instruction of our client. I will note, your interpretation of the SPA and your explanation below is not consistent with the terms of the SPA. Maybe you should read it?
>
> Paragraph 6 of the SPA says: Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the

location(s) as directed by Buyer. Title transfer shall happen contemporaneously with funds being released to Seller. Your client should have an executed Bill of Sale and funds have been transferred for the purchase when the goods were loaded onto the common carrier.

You will also note that Paragraph 13 says: This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement. Proceed accordingly.

I am told the product will be arriving tomorrow at the location provided by your client. Let me know when your client is in possession of his product.

*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard
2 BLVD Place, Suite 600
Houston, Texas 77056

☎Ph: 713-622-4300
Fax: 713-622-9899
✉ Email: manfred@manfredlaw.com

\<image001.png>
\<image002.png>\<image003.png>

**From:** Gary Lightman <garylightman@lightmanlaw.com>
**Date:** Tuesday, February 15, 2022 at 5:35 PM
**To:** Manfred Sternberg <Manfred@msternberg.com>
**Cc:** "G. Manochi" <gmanochi@lightmanlaw.com>, "Wl. Stamps"
<wlstamps@lightmanlaw.com>, "K. DiTomaso" <kditomaso@lightmanlaw.com>,
GARY LIGHTMAN <ltag8r@me.com>
**Subject:** TheSafetyHouse.com v. Manfred Sternberg & Associates, and Manfred
Sternberg, Esquire, and Sam Gross, and Charlton Holding Group, LLC -- Docket No.
2022-[NOT YET FILED]

Mr. Manfred Sternberg,

Our law firm has been retained as litigation counsel for TheSafetyHouse.com ("TSH").
This email will confirm your phone call to me, that just ended. Thank you for your
courtesies in timely returning the voice mail message that we left when we called your
work number (713-622-4300) earlier today (and please do not delete that phone
message, unless and until this dispute is fully resolved to our client's satisfaction).

You represented to us that the 151,200 boxes of 2 count iHealth COVID 19 home test
kits that TSH purchased from your client (Sam Gross and Charlton Holding Group, LLC)
already were being shipped and in transit to TSH, and that TSH should expect delivery
of the goods tomorrow. You also confirmed that your law firm still is holding the
$1,965,600.00 that TSH wired into your attorney escrow account, that is supposed to
be held by you and not released from escrow until TSH has received delivery of the
goods.

You should use "reply all" immediately, if this email does not accurately memorialize
our phone conversation. Otherwise, please use "reply all" and provide us with the
shipping information that we requested from you when we just spoke (i.e., the name
and contact information of the carrier that is delivering the goods).

We look forward to your timely response.

Very truly yours,
Gary Lightman, Esquire
LIGHTMAN & MANOCHI
Attorneys for TSH

cc: client

--
Gary P. Lightman, Esquire
e-mail:
garylightman@lightmanlaw.co
m
or ltag8r@me.com
cell 215-760-3000

LIGHTMAN & MANOCHI
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
Phone: (215) 545-3000 (ext.
107); fax (215) 545-3001

# EXHIBIT "5"

Case 2:22-cv-00688-JMY Document 200-1 Filed 07/31/23 Page 2 of 4

| From: | Dan Scully |
|---|---|
| To: | CharltonHoldingGroupLLC@aol.com |
| Cc: | Manfred; Cicsvplic; Gary Lightman; WI. Stamos; K. DiTomaso; G. Manochi |
| Subject: | RE: Delivery of I Health Antigen Test Kits. |
| Date: | Wednesday, February 16, 2022 6:45:52 PM |

Sam/Manfred:

It's after 6:30 Pm and I still have not received the goods both of you promise I would get today. I think you guys are lying to me and have continued to lie to me.
Not to mention you both breached our contract. (And you never even sent me a fully signed contract)
I think you guys defrauded me.

Do to your inability to deliver the goods that I ordered and paid for, you leave me no alternative but to cover my contracts with my existing customers.

### I WANT MY 2 MILLION DOLLARS WIRED BACK TO ME IMMEDIATELY.

You also will be hearing from my attorneys. I intent to hold each of you fully responsible for all damages I have incurred for your fraudulent and wrongful conduct. I also think your actions are criminal and I intent to report your fraudulent activity to the US Attorneys office and to the District Attorney's office both in Houston and Austin Texas and in New York.
Manfred you also should be disbarred, not only did you wrongfully release my money from escrow, but you lied to me about afterwards.

I am sending a copy of this email to my attorney's and instructing them take all necessary legal action to enforce my rights.

Dan Scully
TheSafetyHouse.com

| From: | Dan Scully |
|---|---|
| To: | Manfred |
| Cc: | CharltonHoldingGroupLLC@aol.com |
| Subject: | RE: The Safetyhouse.com: Purchase Order #18315 |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |

Sam/Manfred:

At this time I still have not received my product and I would like to request that my money be refunded from the escrow account.

Dan Scully
TheSafetyHouse.com

**From:** Manfred (Manfred@msternberg.com) <system@sent-via.netsuite.com>
**Sent:** Friday, January 21, 2022 12:05 PM
**To:** Dan Scully <dans@thesafetyhouse.com>; john@lincolnparkincorp.com
**Cc:** CharltonHoldingGroupLLC@aol.com
**Subject:** Re: The Safetyhouse.com: Purchase Order #18315

See SPA attached

*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard
2 BLVD Place, Suite 600
Houston, Texas 77056

☎Ph: 713-622-4300
Fax: 713-622-9899
Email: manfred@manfredlaw.com

---

**From:** "Dan Scully (dans@thesafetyhouse.com)" <system@sent-via.netsuite.com>

**Reply-To:** Dan Scully <messages.401626.2161448.40263ca555@401626.email.netsuite.com>

**Date:** Friday, January 21, 2022 at 10:57 AM

**To:** Manfred Sternberg <Manfred@msternberg.com>, "john@lincolnparkincorp.com" <john@lincolnparkincorp.com>

**Subject:** The Safetyhouse.com: Purchase Order #18315

Attached Purchase order for IHealth Test Kits. Plese provide Expiration and lot numbers.

Thanks,

Dan Scully
TheSafetyHouse.com |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM**, | **CIVIL ACTION**<br><br>**No. 2:22-CV-0688 (JMY)** |
| *Plaintiff,* | |
| v. | |
| **MANFRED STERNBERG, ESQUIRE, and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SHLOMO GROSS a/k/a SAMUEL GROSS, and GARY WEISS, and A.SOLAR, LLC, and DAPHNA ZEKARIA, ESQUIRE, and SOKOLSKI & ZEKARIA, P.C.** | |
| *Defendants.* | |

## FIRST AMENDED COMPLAINT

American Environmental Enterprises, Inc., d/b/a TheSAFETYHOUSE.com, plaintiff

herein ("SAFETY HOUSE" or "Plaintiff"), through its counsel, Lightman & Manochi, by way of

its Amended Complaint against Manfred Sternberg, Esquire ("Sternberg") and Manfred Sternberg

& Associates, PC ("MSA"), and Charlton Holdings Group, LLC ("CHG"), and Shlomo Gross

a/k/a Samuel Gross ("Gross"), and Gary Weiss ("Weiss"), and A.Solar, LLC, and Daphna Zekaria,

Esquire ("Zekaria"), and Sokolski & Zekaria, P.C. ("S&Z") (collectively, "Defendants"), states as

follows:

### NATURE OF ACTION

1.     Defendants  Sternberg  and  MSA  (collectively,  the  "Sternberg  Attorney

Defendants") and Defendants Gross and CHG (the "Gross Defendants") fraudulently induced SAFETY HOUSE to order and make a payment to them of $1,965,600.00 in order to purchase 151,200 iHealth Covid-19 Antigen Rapid two-pack test kits (the "Covid Test Kits") (the "Order"). *See* Exhibit 1.

2.    The Order was supposed to be conducted through an escrow agreement with defendant with the Sternberg Attorney Defendants acting as escrowee, but said agreement was merely a ruse to defraud Plaintiff, as Gross and Sternberg formed CHG merely as a front, and the Defendants had no intent or ability to deliver the Covid Test Kits, but instead intended to defraud Plaintiff into transferring them $1,965,600.00, without delivering the Covid Test Kits. *See* Exhibit 1.

3.    The Sternberg Attorney Defendants and the Gross Defendants fraudulently induced SAFETY HOUSE to wire the $1,965,000.00 into the attorney escrow account of the Sternberg Attorney Defendants, after which the Sternberg Attorney Defendants wrongfully released that escrow, without delivering to Plaintiff the required signed Bill of Sale and the required Bill of Lading and other shipping documents evidencing the Covid Test Kits were purchased and being shipped to Plaintiff.

4.    Plaintiff believes and thus avers that the Sternberg Attorney Defendants and the Gross Defendants, acted in their wrongful civil conspiracy together with defendants Gary Weiss and his entity, A Solar LLC (collectively the "Weiss Defendants") and with Daphna Zekaria, Esquire and her law firm of Sokolski & Zekaria, P.C. (collectively the "Zekaria Defendants") to defraud Plaintiff out of the $1,965,600.00 that it was induced to wire to the Sternberg Attorney Defendants and the Gross Defendants, for the purchase of the 151,200 Covid Test Kits.

5.    Defendants failed to deliver the Covid Test Kits to Plaintiff and also failed to

2

provide any refund of the $1,965,600.00 escrow to SAFETY HOUSE. *See* Exhibit 2.

6. Defendants' behavior is particularly egregious and outrageous, as SAFETY HOUSE needed the Covid Test Kits to sell to its customer, a public school district.

## PARTIES, JURISDICTION AND VENUE

7. Plaintiff is a Pennsylvania corporation, and operates as a trusted supplier of reliable personal protection and abatement equipment. SAFETY HOUSE is a Pennsylvania resident for purposes of diversity jurisdiction, with its principal place of business and headquarters located in Pennsylvania. SAFETY HOUSE operates from 99 Aldan Avenue, Suite 5, Glen Mills PA 19342.

8. Defendant Manfred Sternberg is, upon information and belief, is a practicing attorney in good standing under the laws of Texas, and a citizen of the State of Texas, with an address of 1700 Post Oak Boulevard, 2 Boulevard Place, Suite 600, Houston, Texas 77056, and not in the military service of the U.S. or its allies.

9. Defendant Manfred Sternberg & Associates, PC ("MSA") is, upon information and belief, a Texas professional corporation, a citizen of the State of Texas for diversity purposes and has its principal place of business at 1700 Post Oak Boulevard, 2 Boulevard Place, Suite 600, Houston, Texas 77056.

10. Plaintiff believes and thus avers that defendant Sternberg practices law from and is the controlling principal of defendant MSA.

11. Defendants Sternberg and MSA collectively are referred to as the "Sternberg Attorney Defendants."

12. Defendant Charlton Holding Group LLC ("CHG"), is, upon information and belief, a New York limited liability company with an address of 78 Buckminster Road, Rockville Centre, NY 11570, whose members are all New York residents for purposes of diversity

3

jurisdiction.

13.     Plaintiff believes and thus avers that CHG is an entity with no assets, that is owned and/or controlled by defendant Samuel Gross.

14.     Defendant Shlomo Gross a/k/a Samuel Gross is, upon information and belief, an adult individual and a citizen of the State of New York for purposes of diversity, and has an address at 78 Buckminster Road, Rockville Centre, NY 11570, and not in the military service of the U.S. or its allies.

15.     Unbeknownst to Plaintiff during all times relevant herein, Gross, starting in 2014, served at least 18 months in a New York State prison based on convictions of Grand Larceny and Scheme to Defraud.

16.     Defendant Gary Weiss is an adult individual and a citizen of the State of New Jersey for purposes of diversity, with an address of 437 1st Avenue, Elizabeth, New Jersey 07206.

17.     Defendant A.Solar, LLC ("A.Solar") is a New Jersey limited liability company and a citizen of the State of New Jersey for purposes of diversity, with a principal place of business of 437 1st Avenue, Elizabeth, New Jersey. Upon information and belief, Weiss is the sole member of A.Solar.

18.     Plaintiff believes and thus avers that A. Solar is an entity with no assets, that is owned and/or controlled by defendant Gary Weiss.

19.     Defendant Daphna Zekaria, Esquire ("Zekaria"), is, upon information and belief, an adult individual who is admitted to practice law before the Courts of the State of New York and is a citizen of the State of New York for purposes of diversity, with a principal place of business located at 1133 Broadway, Suite 1001, New York, New York 10010.

4

20.     Defendant Sokolski & Zekaria, P.C. ("S &Z") is, upon information and belief, a New York professional corporation and is a citizen of the State of New York for purposes of diversity, with a principal place of business located at 1133 Broadway, Suite 1001, New York, New York 10010.

21.     Plaintiff believes and thus avers that Zekaria is one of the two attorneys that control S&Z.

22.     Jurisdiction and venue are proper in this Court in that the actions giving rise to Plaintiff's causes of action occurred in the Eastern District of Pennsylvania, the amount in controversy exceeds $75,000.00 and the citizenship of the parties are from different states (namely, Pennsylvania is a citizen of Plaintiff, and Defendants are citizens of New York Texas and New Jersey and Texas), and the jurisdictional prerequisites of this Court otherwise are satisfied. *See* 28 U.S.C.S. §1332(a)(1) & § 1391.

## **RELEVANT FACTUAL BACKGROUND**

23.     On or about January 21, 2022, SAFETY HOUSE agreed to purchase 151,200 iHealth Covid-19 Antigen Rapid two-pack test kits (the "Covid Test Kits") from CHG and its managing member, Defendant Gross, (the "Order") for a payment of $1,965,600.00 (the "Purchase Price"). *See* Exhibit 1, § 3.

24.     The Gross Defendants and the Sternberg Attorney Defendants represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States.

25.     The Order was supposed to be accomplished through a Sale and Purchase Agreement (the "Agreement"), and an escrow arrangement between Plaintiff and the Sternberg Attorney Defendants, but said "Agreement" was merely a ruse to defraud Plaintiff, as the Gross Defendants and the Sternberg Attorney Defendants had no intention or ability to deliver the Covid

5

Test Kits, but instead intended to fraudulently induce Plaintiff to pay the Purchase Price for the Order without delivering the Covid Test Kits.

26. The Agreement required Plaintiff to issue a Purchase Order to CHG for the Covid Test Kits and thereafter to deposit the $1,965,600.00 Purchase Price into the attorney escrow account of the Sternberg Attorney Defendants; these funds were not to be released from escrow until (a) after a Bill of Sale was delivered to Plaintiff and (b) after the Covid Test Kits were delivered to a recognized common carrier for delivery to Plaintiff, and the Bill of Lading and shipping documents also delivered to Plaintiff. *See* Exhibit 1, §§ 4 & 6 and Exhibit D thereto.

27. Defendants informed Plaintiff that Plaintiff needed to wire transfer the $1,965,600.00 Purchase Price into the attorney escrow account of the Sternberg Attorney Defendants immediately, in order to hold Plaintiff's place in the queue, and so the goods could be shipped immediately, and they promised to sign and return the Agreement to Plaintiff as soon as the funds were transferred.

28. In reliance upon the representations of the Gross Defendants and the Sternberg Attorney Defendants, on or about January 21, 2022, SAFETY HOUSE issued its Purchase Order No. 18315.

29. In Plaintiff's Purchase Order No. 19315, Plaintiff clearly stated that January 25, 2022 was the delivery date for all of the Covid Test Kits. because the Gross Defendants and the Sternberg Attorney Defendants represented to Plaintiff they could immediately deliver the 151,200 Covid Test Kits, *See* Exhibit 1, Purchase Order.

30. In further reliance on upon the representations of the Gross Defendants and the Sternberg Attorney Defendants, Plaintiff wired the $1,965,600.00 Purchase Price into the attorney escrow account of the Sternberg Attorney Defendants. *See* Exhibit 2.

6

31.     However, after SAFETY HOUSE wired the $1,965,600.00 into the attorney escrow account of the Sternberg Attorney Defendants, the Gross Defendants and the Sternberg Attorney Defendants failed and refused to sign and deliver the Agreement to Plaintiff.

32.     To date, Plaintiff has not received the signed Agreement from the Gross and Sternberg Attorney Defendants, which further evidences that these Defendants never intended to perform under the Agreement.

33.     Pursuant to Plaintiff's Purchase Order, the Gross and Sternberg Attorney Defendants were supposed to deliver the Order so that SAFETY HOUSE received the Covid Test Kits by January 25, 2022.

34.     After SAFETY HOUSE wired the $1,965,600.00 Purchase Price to the Sternberg Attorney Defendants, the Gross and Sternberg Attorney Defendants failed and refused to deliver the Covid Test Kits to Plaintiff.

35.     After demands by Plaintiff, they also have failed to provide a full refund, or any refund, to Plaintiff.

36.     The Gross and Sternberg Attorney Defendants had no intention of performing as promised, and misrepresented that the Covid Test Kits were currently available for both purchase and shipment.

37.     In fact, and contrary to these Defendants' representations, the Covid Test Kits were not currently available for purchase and shipment.

38.     The Gross and Sternberg Attorney Defendants never provided a Bill of Lading, from a recognized common carrier, and failed to provide other shipping information to SAFETY HOUSE, as required under the Agreement and as a prerequisite to the release of the $1,965,600.00 Purchase Price from the attorney escrow account of the Sternberg Attorney Defendants.

39. To fraudulently induce Plaintiff to make the wire transfer to them, the Gross and Sternberg Attorney Defendants represented that the $1,965,600.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the $1,965,600.00 Purchase Price would not be released from the attorney escrow account of the Sternberg Attorney Defendants unless and until the Covid Test Kits had been delivered to a common carrier for delivery to SAFETY HOUSE, and Plaintiff was supplied with the required Bill of Lading from a recognized common carrier evidencing that the Covid Test Kits were in transit to Plaintiff..

40. SAFETY HOUSE needed the Order so it could supply the Covid Test Kits to its customer, namely a public school district.

41. As a result of the aforesaid fraudulent conduct of the Defendants, SAFETY HOUSE has incurred and continues to incur substantial damages, which Plaintiff believes are in excess of $2 million including the loss of the $1,965,600.00 Purchase Price, as well as significant lost profits due to the Defendants' fraud.

42. SAFETY HOUSE, through counsel, has given Defendants multiple opportunities to confirm that they have not fraudulently taken the $1,965,600.00 Purchase Price, and that Defendants have in fact shipped the Covid Test Kits.

43. However, Defendants have continued to make lies and misrepresentations to Plaintiff concerning the status of the delivery of the Covid Test Kits.

44. For example, on or about February 8, 2022, the Sternberg Attorney Defendants misrepresented to Plaintiff the Covid Test Kits were en route and would be delivered by no later than February 17, 2022, when in fact they were not with a common carrier or otherwise being shipped to Plaintiff; as of February 17, 2022 (and as of the filing of this Complaint), no delivery had been made. *See* Exhibit 3.

8

45.    Plaintiff on numerous occasions has requested that Defendants provide Plaintiff with a Bill of Lading and other shipping documents to show Seller had delivered the Covid Test Kits to a common carrier for delivery to Plaintiff. *See* Exhibit 4.

46.    To date, however, Defendants have failed and refused to deliver this shipping documentation to Plaintiff.

47.    For example, on or about February 16, 2022, a man named "Shraga" contacted Plaintiff and advised Plaintiff the Covid Test Kits were on a truck and that delivery would be made to Plaintiff by 4:00 pm on February 16, 2022.

48.    When the alleged shipment did not arrive at 4:00 p.m., Plaintiff contacted Shraga who advised Plaintiff the truck had "broken down" and that the Kits would be delivered in the morning of February 17, 2022.

49.    Plaintiff believes and this avers that defendant Gary Weiss was the person who contacted Plaintiff using the name "Shraga."

50.    As of this writing, the Covid Test Kits still have not been delivered to Plaintiff.

51.    Plaintiff believes and therefore avers Defendants had no ability to provide Plaintiff with the Covid Test Kits and intended, instead, to abscond with Plaintiff's $1,965,600.00.

52.    Plaintiff and Plaintiff's counsel demanded the immediate return of the $1,965,600.00 Purchase Price. *See* Exhibit 5.

53.    To date, however, the $1,965,600.00 Purchase Price has not been refunded to Plaintiff, and the Covid Test Kits have not been delivered.

54.    During the course of this dispute, Plaintiff has learned that other parties, namely defendants Weiss and his entity, defendant A,Solar, and defendants Zekaria and S & Z, either acting in concert with the Gross and Sternberg Attorney Defendants or acting amongst themselves,

9

have schemed and/or participated in the fraudulent scheme to deprive Plaintiff of its $1,965,600.00.

55.     In discovery Plaintiff has obtained so far, the Sternberg Attorney Defendants have claimed that they wire transferred a sum greater than $1,965,600 to Defendants Weiss and Zekaria.

56.     The Gross Defendants and the Sternberg Attorney Defendants have alleged that the Zekaria Defendants at all times relevant herein were the attorneys for Weiss and A.Solar [*see*, ECF 32-1 & 32-13].

57.     Documents obtained in discovery have showed on or about January 26, 2022, the Gross Defendants entered into an alleged agreement with the Weiss Defendants and paid A.Solar over $3,000,000.00 to purchase in excess of 501,400 Covid Test Kits from A.Solar [*see*, ECF 32-12]

58.     The Gross and Sternberg Attorney Defendants have asserted third party indemnification and contribution claims against Weiss and A.Solar [*see* ECF 34]., and they claim Weiss and A.Solar are liable to the Gross Defendants and the Sternberg Attorney Defendants for any judgment amounts Plaintiff obtains from the Gross and Sternberg Attorney Defendants. *Id*.

59.     Weiss and A.Solar have answered the third party claims by alleging that although the Gross Defendants had paid Weiss and A.Solar for the Covid Test Kits, Weiss and A.Solar were agreeable to providing a full refund [*see* ECF 66, and Exhibit "A" thereto]

60.     Weiss and A.Solar further allege that the Gross Defendants refused to accept the refund and, instead, on the advice of Sternberg, requested that Weiss and A. Solar provide collateral to them "as security for the future delivery of the [Covid Test Kits]" [*see* ECF 66, ¶ 17].

61.     Weiss and A.Solar have further alleged that they gave the Gross Defendants collateral consisting of diamonds and gems which had a value in excess of $3,000,000.00. *Id.*, ¶¶ 18-20 &

10

Exhibit "B," thereto.

62.     Plaintiff believes and therefore alleges that either defendants Weiss and A.Solar are holding Plaintiff's $1,965,600.00, or all Defendants are engaged in an elaborate "shell game" to hide the location of and/or wrongfully retain Plaintiff's $1,965,600,

63.     As a result of the wrongful conduct of all Defendants, Plaintiff was forced to locate and purchase Covid test kits from other sources to fulfill its contractual obligations to Plaintiff's customers and has incurred damages in doing so.

64.     The conduct of the Defendants was intentional and knowing and deliberate, and so outrageous and extreme, so as to entitle Plaintiff to an award of punitive damages.

## COUNT I

### Fraud in the Inducement
### (Against the Gross Defendants and Sternberg Attorney Defendants)

65.     The above paragraphs are incorporated herein by reference as if set forth in full.

66.     The Gross Defendants and Sternberg Attorney Defendants represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had the Covid Test Kits in stock.

67.     CHG was formed on or about December 8, 2020, and appears to have been formed solely in order to defraud SAFETY HOUSE and/or other potential victims.

68.     To fraudulently induce Plaintiff to make this large purchase, the Gross and Sternberg Attorney Defendants represented that the $1,965,600.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the $1,965,600.00 Purchase Price would not be released from escrow, until after Plaintiff was supplied with a Bill of Sale as well as a Bill of Lading from a recognized common carrier , evidencing that the Covid Test Kits had been delivered to a common carrier and were en route for delivery to SAFETY HOUSE.

11

69.     Instead, the Sternberg Attorney Defendants wrongfully and improperly and prematurely released Plaintiff's $1,965,600.00 Purchase Price from escrow, without confirming that the Covid Test Kits were purchased, and without confirming that the Covid Test Kits were delivered to a recognized common carrier for delivery to Plaintiff.

70.     These representations and promises were false when made by Gross and Sternberg Attorney Defendants to SAFETY HOUSE.

71.     Said Defendants knowingly made these false representations and promises to SAFETY HOUSE to induce it to wire the $1,965,600.00 Purchase Price to said Defendants, despite the Gross and Sternberg Attorney Defendants' actual knowledge that they did not intend to and could not honor their representations and lacked the capacity to perform as promised.

72.     SAFETY HOUSE reasonably relied upon the representations of these Defendants and changed its position to its detriment, and sustained damages as a direct and proximate result of the fraud perpetrated by said Defendants as set forth in detail above.

73.     SAFTEY HOUSE sustained damages, including the loss of the $1,965,600.00 Purchase Price it wired into the attorney escrow account of the Sternberg Attorney Defendants.

74.     SAFETY HOUSE has suffered additional damages including lost profits, resulting from its inability to re-sell the Covid Test Kits to its customers.

75.     SAFETY HOUSE also has incurred damages including the increased costs it was forced to spend to in locating Covid test kits in the marketplace so that it could cover and fulfill its contractual obligations to its customers.

76.     The conduct of the Gross and Sternberg Attorney Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT II

### Fraud
### (Against the Gross and Sternberg Attorney Defendants)

77.     The above paragraphs are incorporated herein by reference as if set forth in full.

78.     The Gross and Sternberg Attorney Defendants represented and promised to SAFETY HOUSE that they could sell Plaintiff and quickly deliver the Covid Test Kits because they already had the Covid Test Kits in stock.

79.     CHG was formed on or about December 8, 2020, and appears to have been formed solely in order to defraud SAFETY HOUSE and/or other potential victims.

80.     To fraudulently induce Plaintiff to make this large purchase, the Gross and Sternberg Attorney Defendants represented that the $1,965,600.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the $1,965,600.00 Purchase Price would not be released from escrow, until after Plaintiff was supplied with a Bill of Sale as well as a Bill of Lading from a recognized common carrier , evidencing that the Covid Test Kits had been delivered to a common carrier and were en route for delivery to SAFETY HOUSE.

13

81.     Instead, these Defendants improperly released and took the Plaintiff's money from escrow, and failed to deliver the Covid Test Kits, which were supposed to be delivered by Plaintiff to a public school district.

82.     These representations and promises were false when made by the Gross and Sternberg Attorney Defendants to SAFETY HOUSE.

83.     These Defendants knowingly made these false representations and promises to SAFETY HOUSE to induce it to wire the entire $1,965,600.00 Purchase Price to them, despite their actual knowledge that they did not intend to honor their representations and lacked the capacity to perform as promised.

84.     SAFETY HOUSE reasonably relied upon the representations of the Gross and Sternberg Attorney Defendants and changed its position to its detriment.

85.     SAFTEY HOUSE has lost the $1,965,600.00 Purchase Price it paid to these Defendants.

86.     SAFETY HOUSE also has suffered lost profits as it has been unable to re-sell the Covid Test Kits to the customers with whom SAFETY HOUSE had purchasing contracts, such as public school districts.

87.     The conduct of the Gross and Sternberg Attorney Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus

14

additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT III

### Fraud
### (Against the Weiss and Zekaria Defendants)

88.     The above paragraphs are incorporated herein by reference as if set forth in full.

89.     Based upon the representations and filings of the Sternberg Attorney Defendants and the Gross Defendants, and of the Weiss Defendants, Plaintiff believes and thus avers that the Weiss Defendants and the Zekaria Defendants aided and abetted ,if not directly participated in, the aforesaid wrongful fraud perpetrated upon Plaintiff.

90.     The Gross Defendants and the Sternberg Attorney Defendants represented that Plaintiff's funds in turn were wire-transferred to the Weiss Defendants and the Zekaria Defendants for the purchase of the Covid Test Kits, but that the Weiss Defendants and the Zekaria Defendants kept Plaintiff's funds and also failed to deliver the Covid Test Kits to Plaintiff.

91.     The Weiss Defendants represented in their Answer to the Third Party Complaint that the Covid Test Kits were being shipped to Plaintiff, but then had to be diverted to a warehouse, where they then mysteriously just disappeared, and that said Defendants then gave diamonds and gems with a value in excess of $3 million to the Gross Defendants and/or the Sternberg Attorney Defendants "as collateral." *See* ECF 66, and Exhibit "A." thereto.

92.     To date, neither the Sternberg Attorney Defendants, not the Gross Defendants, nor the Weiss Defendants, nor the Zekaria Defendants, have returned Plaintiff's $1,965,600.00 to Plaintiff, and said Defendants also have not delivered the 151,200 Covid Test Kits to Plaintiff, and said Defendants also have not turned over or delivered the gemstones that the Weiss Defendants

15

claimed they delivered to the Gross Defendants and/or the Sternberg Attorney Defendants "as collateral."

93. The aforesaid representations and promises were false when made by the Defendants, and said Defendants knowingly made these false representations and promises to SAFETY HOUSE to induce it to wire the entire $1,965,600.00 Purchase Price, despite their actual knowledge that they did not intend to honor their representations and lacked the capacity to perform as promised.

94. Plaintiff reasonably relied upon the representations of the Gross and Sternberg Attorney Defendants and changed its position to its detriment., and as a result, Plaintiff has lost the $1,965,600.00 Purchase Price it paid to these Defendants.

95. The aforesaid conduct of the Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Gary Weiss, and A. Solar LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT IV

### WRONGFUL CIVIL CONSPIRACY
### (Against All Defendants)

96. The above paragraphs are incorporated herein by reference, as if set forth in full.

97. Each of the Defendants wrongfully conspired with each other to fraudulently induce

16

SAFETY HOUSE to send them almost two million dollars, as alleged above, without any intent or capacity to perform the alleged Agreement.

98.     These Defendants each took active steps to further the conspiracy, from negotiating the terms of the alleged Agreement, to representing that the Purchase Price would be held in an attorney escrow account, and to promising (but failing) to deliver the Covid Test Kits immediately, and to promising (but failing) to provide Plaintiff with a Bill of Lading from a recognized common carrier, and to promising (but failing) to deliver to Plaintiff a signed copy of the Agreement, and to promising (but failing) to deliver the Covid Test Kits, and by failing to return Plaintiff's purchase price.

99.     Defendants Weiss, A.Solar, Zekaria and S & Z wrongfully conspired with each and with the other Defendants other to fraudulently obtain payment of Plaintiff's $1,965,600.00 from the Gross and the Sternberg Attorney Defendants, and thereafter failing and refusing to return the funds, or to deliver the Covid Test Kits

100.     Upon information and belief, Defendants Zekaria and S & Z accepted the wire transfer from the Sternberg Attorney Defendants and thereafter retained a portion of and/or transferred those funds to defendants Weiss and/or A.Solar.

101.     Defendants Weiss and A.Solar accepted the payment of Plaintiff's $1,965,600 from defendants Zekaria and S & Z when they knew or should have known they could not obtain Covid Test Kits in the quantity required to fill Plaintiff's order.

102.     Thereafter, defendants Weiss and A.Solar refused to return the Plaintiff's funds.

103.     The conspiracy of Weiss, A.Solar, Zekaria and S & Z aimed to obtain, and then keep, SAFETY HOUSE's funds, without delivering the Covid Test Kits purchased and needed by Plaintiff.

17

104. Each of these Defendants is liable for the actions of the other Defendants in furtherance of this conspiracy.

105. All Defendants have engaged in a conspiracy to obtain and keep Plaintiff's $1,965,600.00 purchase price without delivering to Plaintiff the Covid Test Kits.

106. SAFETY HOUSE has lost the $1,965,600.00 Purchase Price it paid to these Defendants.

107. SAFETY HOUSE has suffered lost profits as it has been unable to sell the Covid Test Kits to its customers.

108. The conduct of Defendants was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A. Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT V

### PIERCING THE CORPORATE VEIL
### (Against Gross and CHG)

109. The above paragraphs are incorporated herein by reference, as if set forth in full.

110. Defendant CHG purports to be limited liability company and, on information and belief, CHG is owned entirely by its managing member, Samuel Gross.

18

111.    On information and belief, CHG was inadequately capitalized, failed to properly observe the required corporate formalities, and was otherwise used by Defendants to perpetuate their fraud against SAFETY HOUSE.

112.    Due to the fraudulent and/or deceptive conduct of the Defendants, and the failure of one or more Defendants to properly capitalize CHG, and/or their failure to observe corporate formalities, the corporate veil of CHG should be disregarded, and its managing member, Samuel Gross, should be held individually liable for the wrongful acts of CHG.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A. Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT VI

### PIERCING THE CORPORATE VEIL
### (Against Weiss  and A Solar)

113.    The above paragraphs are incorporated herein by reference, as if set forth in full.

114.    Defendant A. Solar purports to be limited liability company and, on information and belief, A. Solar is owned entirely by its managing member, Gary Weiss.

115.    On information and belief, A. Solar was inadequately capitalized, failed to properly observe the required corporate formalities, and was otherwise used by Defendants to perpetuate their fraud against SAFETY HOUSE.

19

116. Due to the fraudulent and/or deceptive conduct of the Defendants, and the failure of one or more Defendants to properly capitalize A. Solar, and/or their failure to observe corporate formalities, the corporate veil of A. Solar should be disregarded, and its managing member, Gary Weiss, should be held individually liable for the wrongful acts of A. Solar.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A. Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT VII

### PARTICIPATION THEORY
### (Against Shlomo Gross and Sternberg)

117. The above paragraphs are incorporated herein by reference as if set forth in full.

118. Gross and Sternberg each represented and promised to SAFETY HOUSE that they could sell and quickly deliver the Covid Test Kits because they had access to the Covid Test Kits on the ground, ready to sell, in the United States.

119. To fraudulently induce plaintiff to make this large purchase, Gross and Sternberg each represented that the $1,965,600.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants.

120. These funds were not to be released from escrow until after a Bill of Sale was

20

delivered to Plaintiff and the Covid Test Kits were delivered to a common carrier for delivery to

Plaintiff, and the Bill of Lading and shipping documents also delivered to Plaintiff. *See* Exhibit 1,

§6 and Exhibit D thereto.

121.    The Sternberg Attorney Defendants misrepresented to Plaintiff the Covid Test Kits

were en route and would be delivered by no later than February 25, 2022, when in fact they were

not placed with a common carrier or otherwise being shipped to Plaintiff, either as of the promised

January 25 delivery date, or as of February 17, 2022 (the filing of this Complaint), or to date -- no

delivery has been made. *See* Exhibit 3.

122.    Plaintiff on numerous occasions has requested that Gross and Sternberg provide

Plaintiff with a Bill of Lading and other shipping documents to show they had delivered the Covid

Test Kits to a common carrier for delivery to Plaintiff. *See* Exhibit 4.

123.    However, each of Gross and Sternberg, however, have failed and refused to deliver

this shipping documentation to Plaintiff.

124.    Furthermore, Gross and Sternberg caused further deception and delay when, on or

about February 16, 2022, a man named "Shraga" contacted Plaintiff and advised Plaintiff the

Covid Test Kits were on a truck and that delivery would be made to Plaintiff by 4:00 pm on

February 16, 2022.

125.    When the shipment did not arrive at 4:00 p.m., Plaintiff contacted Shraga who

advised Plaintiff the truck had "broken down" and that the Kits would be delivered in the morning

of February 17, 2022.

126.    The goods have not been placed with a common carrier or delivered to Plaintiff,

wither as promised, or to date.

127.    Gross and Sternberg have each furthered the fraud and made material

misrepresentations to Plaintiff, not only to obtain he funds, but to prevent and delay detection of the fraud.

128. Each of Gross and Sternberg should be held liable for their individual participation in this fraudulent scheme pursuant to Participation Theory.

129. Each of Gross and Sternberg made these representations with knowledge that they were false.

130. Each of Gross and Sternberg personally participated in making these misrepresentations to SAFETY HOUSE.

131. SAFETY HOUSE has lost the $1,965,600.00 Purchase Price it paid to Defendants, and has sustained and continues to sustain damages, as a result of Defendants' fraudulent and wrongful conduct.

132. SAFETY HOUSE has suffered lost profits as it has been unable to sell the Covid Test Kits to the customers with whom SAFETY HOUSE had purchasing contracts, such as public school districts.

133. SAFETY HOUSE has also incurred damages in locating Covid test kits in the marketplace so that it can fulfill its contractual obligations to its customers.

134. The conduct of each of Gross and Sternberg was deliberate, intentional and willful, and so outrageous and extreme as to warrant an award of punitive damages against them.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A. Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus

22

additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT VIII

### Unjust Enrichment/Quantum Meruit
### (Against the Gross and Sternberg Attorney Defendants)

135.    The above paragraphs are incorporated herein by reference as if set forth in full.

136.    In the alternative, SAFETY HOUSE alleges that the Gross and Sternberg Attorney Defendants have unjustly enriched themselves at the expense of SAFETY HOUSE.

137.    These Defendants requested SAFETY HOUSE to, *inter alia*, provide funds to purchase the Covid Test Kits, in exchange for the $1,965,600.00 Purchase Price. *See* Exhibit 1.

138.    These Defendants represented that the entire $1,965,600.00 Purchase Price was required to be deposited into the attorney escrow account of the Sternberg Attorney Defendants.

139.    The Gross and Sternberg Attorney Defendants represented that the entire $1,965,600.00 Purchase Price would not be released from the attorney escrow account of the Sternberg Attorney Defendants unless the Covid Test Kits were delivered to a common carrier for delivery to Plaintiff, and Plaintiff was supplied with a Bill of Sale and the Bill of Lading and other shipping documents.

140.    In reliance upon the aforesaid representations of these Defendants, on January 21, 2022, SAFETY HOUSE wired $1,965,600.00 into the attorney escrow account of the Sternberg Attorney Defendants. *See* Exhibit 2.

141.    The Gross and Sternberg Attorney Defendants received and accepted and used the $1,965,600.00 Purchase Price described above.

142.    SAFETY HOUSE conferred a benefit upon these Defendants by delivering the

23

$1,965,600.00 Purchase Price without receiving anything in return.

143.    These Defendants appreciated, accepted, and retained the benefit of the $1,965,600.00 Purchase Price.

144.    It would be unjust and inequitable to allow Defendants to retain the benefit of the $1,965,600.00 Purchase Price they received from SAFETY HOUSE, without providing full compensation to SAFETY HOUSE.

145.    The fair value of the moneys supplied by SAFETY HOUSE to Defendants and retained and used by Defendants is the amount of $ 1.965,600.00.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A. Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT IX

### Intentional Interference with Existing Contractual Relations
### (Against All Defendants)

146.    The above paragraphs are incorporated herein by reference as if set forth in full.

147.    A contractual relationship existed between Plaintiff and the Gross and the Attorney Sternberg Defendants.

148.    A contractual relationship existed between Plaintiff and the customers to whom Plaintiff intended to ship the Covid Test Kits.

149.     Each of the Defendants took actions with the specific intent to harm the existing aforesaid contractual relationships.

150.     This harm consisted of, among other things: (a) taking Plaintiff's $1,965,600.00 payment as part of the over $3,00,000.00 payment made from the Gross and Sternberg Attorney Defendants made to the Weiss and/or Zekaria Defendants to purchase in excess of 500,000 Covid Test Kits, when Defendants knew or should have known that Covid Test Kits in that volume were not available in the market at the time they induced Plaintiff to wire the $1.965,600 purchase price, and (b) thereafter failing to return the money to Plaintiff, and (c) failing to deliver the promised Covid Test Kits.

151.     Defendants had no privilege or justification for their actions.

152.     SAFTEY HOUSE has lost the $1,965,600.00 Purchase Price it paid to the Gross and Sternberg Attorney Defendants.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A.Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT X

### Intentional Interference with Prospective Economic Advantage
### (Against All Defendants)

153.     The above paragraphs are incorporated herein by reference as if set forth in full.

154.    A contractual relationship existed between Plaintiff and the Gross Defendants and the Sternberg Attorney Defendants.

155.    A contractual relationship and prospective economic advantage existed between Plaintiff said Defendants, as well as the customers to whom Plaintiff intended to ship the Covid Test Kits.

156.    Each of the Defendants took actions with the specific intent to harm Plaintiff's prospective economic advantage and the aforesaid contractual relationships.

157.    This harm consisted of, among other things: (a) taking Plaintiff's $1,965,600.00 payment as part of the over $3,00,000.00 payment made from the Gross and Sternberg Attorney Defendants to the Weiss and/or Zekaria Defendants to purchase in excess of 500,000 Covid Test Kits, when Defendants knew or should have known that Covid Test Kits in that volume were not available in the market at the time they induced Plaintiff to wire the $1.965,600 purchase price, and (b) thereafter failing to return the money to Plaintiff, and (c) failing to deliver the promised Covid Test Kits..

158.    Defendants had no privilege or justification for their actions.

159.    SAFTEY HOUSE has lost the $1,965,600.00 Purchase Price it paid to the Gross and Sternberg Attorney Defendants.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC, and Charlton Holding Group LLC, and Shlomo Gross a/k/a Samuel Gross, and Gary Weiss, and A.Solar, LLC, and Daphna Zekaria, Esquire, and Sokolski & Zekaria, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional compensatory damages, consequential damages, and special damages, as well as

punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

## COUNT XI

### Unjust Enrichment/Quantum Meruit
### (Against Weiss and A.Solar)

160.    The above paragraphs are incorporated herein by reference as if set forth in full.

161.    In the alternative, SAFETY HOUSE alleges that Weiss and A.Solar have unjustly enriched themselves at the expense of SAFETY HOUSE.

162.    These Defendants received from the Sternberg Defendants the Plaintiff's $1,965,600.00 amount that was intended to purchase the 151,200 Covid Test Kits that were the subject of the Agreement.

163.    Weiss and A.Solar received and accepted the Plaintiff's $1,965,600.00 amount from the Sternberg Attorney Defendants.

164.    SAFETY HOUSE conferred a benefit upon Weiss and A.Solar without receiving anything in return.

165.    These Defendants appreciated, accepted, and retained the benefit of the $1,965,600.00 paid by Plaintiff.

166.    It would be unjust and inequitable to allow Weiss and A.Solar to retain the benefit of the $1,965,600.00 without providing full compensation to SAFETY HOUSE.

167.    The fair value of the moneys supplied by SAFETY HOUSE to Weiss and A.Solar and retained by them is $ 1.965,600.00.

WHEREFORE, Plaintiff, American Environmental Enterprises, Inc., requests that the Court enter judgment in favor of Plaintiff against defendants Gary Weiss, and A.Solar, LLC, individually, jointly and severally, for an amount in excess of $2,000,000.00, plus additional

27

compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interest on all amounts and for such other and further relief as the Court deems just and proper, to the maximum extent allowed by applicable law.

Respectfully submitted,

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64423
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Telephone: 215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date: July 31, 2023                    Attorneys for Plaintiff

## EXHIBITS TO COMPLAINT

**EXHIBIT**          **DESCRIPTION**

"1"          [Unsigned] Purchase and Sale Agreement documents

"2"          1/21/22 Wire Transfer Documents for Wire of $1,965,600.00 Purchase Price Into Attorney Escrow Account of the Sternberg Attorney Defendants

"3"          2/8/22 email between Plaintiff and Sternberg Attorney Defendants

"4"          Emails to Sternberg Attorney Defendants requesting shipping information

"5"          2/19/22 email to Sternberg Attorney Defendants demanding return of the $1,965,600.00 Purchase Price, and 2/16/22 email from Plaintiff demanding return of the $1,965,600.00 Purchase Price

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below he caused to be served a true and correct copy of Plaintiff's First Amended Complaint via ECF, U.S. first class mail and/or email upon the following:

Seth Laver, Esquire
Jason Kaner, Esquire
Goldberg Segall
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
slaver@goldbergsegalla.com
jkaner@goldbergsegalla.com

William R. Murphy III, Esquire
Rebecca J. Price, Esquire
Norris McLaughlin
515 Hamilton Street, Suite 502
Allentown, PA 18101
wmurphy@norris-law.com
rprice@norris-law.com

Samuel Gross
78 Buckminster Road
Rockville Centre, NY 11570
charltonholdinggroupllc@aol.com

Gary Weiss (pro se)
wgary4109@gmail.com

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64423
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Telephone: 215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date: July 31, 2023

Attorneys for Plaintiff

29

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

American Environmental Enterprises, Inc., d/b/a
THE SAFETYHOUSE.COM

**(b)** County of Residence of First Listed Plaintiff    **Delaware County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gary P. Lightman, Esquire and Glenn A. Manochi, Esquire, Lightman & Manochi, 600 W. Germantown Pike, Suite 400, Plymouth Meeting, PA 19462, 215-760-3000 ✚

## DEFENDANTS

Manfred Sternberg, Esquire & Manfred Sternberg & Associates, P.C. & Charlton Holdings Group, LLC & Samuel

County of Residence of First Listed Defendant    **Harris, Houston TX**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Seth Laver, Esquire and Jason Kaner, Esquire
Goldberg Segall, 1700 Market St., Suite 1418, Phila., PA 19103, 267-519-6800 ✚

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☒ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 862 Black Lung (923) | |
| | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1332(a)(1) & § 1391
Brief description of cause:
Fraudulent inducement with damages over $2million dollars

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE   John Milton Younge     DOCKET NUMBER 22-00688

DATE
07/31/2023

SIGNATURE OF ATTORNEY OF RECORD
*Gary Lightman*

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ____99 Aldan Avenue, Suite 5, Glenn Mills, PA 19342____

Address of Defendant: ____1700 Post Oak Blvd., 2 Boulevard Place, Suite 600, Houston, TX 77056____

Place of Accident, Incident or Transaction: ____Glenn Mills, PA 19342____

---

**RELATED CASE IF ANY:**
Case Number: ____N/A____ Judge:_____ Date Terminated_____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes [ ]   No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?   Yes [ ]   No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?   Yes [ ]   No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?   Yes [ ]   No [X]

I certify that, to my knowledge, the within case [ ] is /[X]is not related to any now pending or within one year previously terminated action in this court except as note above.

DATE: ____07/31/2023____    *Gary Lightman*    ____28529____
*Attorney-at-Law (Must sign above)*    *Attorney I.D. # (if applicable)*

---

**Civil (Place a √ in one category only)**

*A. Federal Question Cases:*

1. Indemnity Contract, Marine Contract, and All Other Contracts)
2. FELA
3. Jones Act-Personal Injury
4. Antitrust
5. Wage and Hour Class Action/Collective Action
6. Patent
7. Copyright/Trademark
8. Employment
9. Labor-Management Relations
10. Civil Rights
11. Habeas Corpus
12. Securities Cases
13. Social Security Review Cases
14. Qui Tam Cases
15. All Other Federal Question Cases. *(Please specify):*_____

*B. Diversity Jurisdiction Cases:*

1. Insurance Contract and Other Contracts
2. Airplane Personal Injury
3. Assault, Defamation
4. Marine Personal Injury
5. Motor Vehicle Personal Injury
6. Other Personal Injury *(Please specify)*:_____
7. Products Liability
[X] 8. All Other Diversity Cases: *(Please specify)*_____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, ____Gary P. Lightman____, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: ____07/31/2023____    *Gary Lightman*    ____28529____
*Attorney-at-Law (Sign here if applicable)*    *Attorney ID # (if applicable)*

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

Case 2:22-cv-00688-JMY Document 80-3 Filed 07/31/23 Page 1 of 1
Case 2:22-cv-00688-JMY Document 200-1 Filed 10/01/24 Page 220 of 412

**APPENDIX G**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

American Environmental Enterprises

V.

Mangred Sternberg, Esquire et al

:
:
:
:
:
:

Civil Action
No: 22-00688

## DISCLOSURE STATEMENT FORM

Please check one box:

☑ The nongovernmental corporate party, _____
, in the above listed civil action does not have any parent corporation and
publicly held corporation that owns 10% or more of its stock.

☐ The nongovernmental corporate party, _____
, in the above listed civil action has the following parent corporation(s) and
publicly held corporation(s) that owns 10% or more of its stock:

_____
_____
_____
_____

07/31/2023

Date

*Gary Lightman*

Signature

Counsel for:   Plaintiff

## Federal Rule of Civil Procedure 7.1 Disclosure Statement

(a) WHO MUST FILE; CONTENTS. A nongovernmental corporate party must file
two copies of a disclosure statement that:

(1) identifies any parent corporation and any publicly held corporation
owning10% or more of its stock;  or

(2) states that there is no such corporation.

(b) TIME TO FILE; SUPPLEMENTAL FILING. A party must:

(1) file the disclosure statement with its first appearance, pleading,
petition, motion, response, or other request addressed to the court;
and

(2) promptly file a supplemental statement if any required information
changes.

# EXHIBIT "1"

**---- PURCHASE ORDER ----**

**THE SAFETYhouse.COM**

99 Aldan Avenue, Suite 5 • Glen Mills, PA 19342
1-800-872-3684 • PH: 610-344-0637 • FAX: 1-610-436-4983
www.thesafetyhouse.com

| | |
|---|---|
| **P.O. #** | **18315** |

| | |
|---|---|
| **Date** | 1/21/2022 |
| **Receive By** | 1/25/2022 |
| **Vendor Account #** | |
| **Memo** | |
| **Terms** | CIA (Cash in Advance) |
| **Ship Via** | |
| **FOB** | |
| **Freight In Status** | Freight Included |
| **Buyer** | Dan Scully |
| **Date Printed** | 01/21/2022 11:57:17 |

**Vendor**

(713) 824-9170
C/O: Manfred Sternberg ESQ
Charlton Holding Group LLC
78 Buckminster Road
Rockville Centre NY 11570
United States

**Ship To**

The Safetyhouse.com
99 Aldan Avenue
Suite 5
Glen Mills PA 19342
United States

| Item | TSH ID | Qty | Rec'd | Ck-In | U/M | Description | Rate | Amount |
|---|---|---|---|---|---|---|---|---|
| FS1001 | FS1001 | 151,200 | 0 | | Each | FS1001 - iHealth Covid-19 Antigen Rapid Test, 2 Tests per Kit | 13.00 | 1,965,600... |

**Total**     $1,965,600.00

_____
Authorized Signature

**CHARLTON HOLDING GROUP, LLC**

## SALE AND PURCHASE AGREEMENT

January 21, 2022

THIS AGREEMENT IS FOR THE SALE AND PURCHASE OF the product identified on the Purchase Order attached hereto and marked as Exhibit A attached hereto (the "Goods"). This Sale and Purchase Agreement is referred to herein as (this "Agreement").

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer") (each hereafter as "Party" and together as the "Parties")

For good and valuable consideration, the Parties agree:

1. Seller shall provide Buyer the Goods listed in Exhibit A for the Purchase Price, provided that Buyer complies with the conditions of this Agreement.

2. Seller agrees to sell to Buyer  151,200  boxes of 2 count iHealth COVID 19 home test kits shall be provided to the Buyer by the Seller for each lot of boxes available for payment as they are ready to be delivered.

3. The Buyer agrees to pay the Seller @ $13.00(USD) per box. Payment upon invoice as the product lots are ready for delivery, total cost **$1,965,600.00**.

4. The product lots may be located in more than one (1) location or warehouse in various locales in the United States.  Immediately after delivering a Purchase Order, Buyer agrees to authorize a wire be made to Seller through the Seller's Attorney Escrow Account identified in Exhibit B for the actual number of boxes of product contained in the Purchase Order.

5. As per the invoice below (EXHIBIT C), Seller agrees to sell **151,200 boxes** of 2 count iHealth COVID 19 home test kits . The Buyer shall transfer the above-mentioned funds to the Seller's Attorney Escrow Account listed inExhibit B as per each invoice.

6. Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. Title transfer shall happen contemporaneously with funds being released to Seller. Exhibit E attached hereto is incorporated herein as Seller's agreed upon Standard Operating Procedure.

7. Seller agrees to pay commissions, if any, included with rolls and extensions for the duration of this Agreement as per separate written agreement.

8. The Seller agrees to coordinate and pay for common carrier transportation to deliver the Goods from the Seller's warehouse(s) to Buyer at Seller's cost and is included in the purchase price paid to Seller by Buyer hereunder.

**CHARLTON HOLDING GROUP, LLC**

9.  Risk of loss shall transfer to Buyer at the point the product is paid for by Buyer and the Seller is released of all loss guarantees.

10. The Goods shall be sold with the manufacturer's warranty only. Seller makes a warranty of Title to product only when it is paid for by Buyer. Seller makes no other warranty of any kind, express or implied, and any warranty by Seller is expressly disclaimed.

11. Neither Buyer nor Seller shall be liable to the other for any consequential damages, lost profits, cover costs, or punitive or exemplary damages arising out of or related to this Agreement; however if Buyer in any way attempts to circumvent Seller, Seller will be entitled to liquidated damages of $50,000 from Buyer or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer.

12. Seller may terminate this Agreement if Seller determines, in its sole discretion, that Buyer does not have the funds to purchase the Goods, or the Goods become unavailable and all funds deposited with Seller, if any, shall be returned to Buyer.

13. This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.

14. Buyer warrants and represents this transaction is in full compliance with all applicable laws and regulations, including but not limited to Executive Order No. 13224, as amended, the Patriot Act (Public Law 107 56), and any other law relating to the prevention and detection of terrorism and money laundering

15. Buyer agrees to indemnify, defend, and hold harmless the Seller, its agents, servants, employees, contractors, and affiliates (the "Indemnified Parties"), from and against all damages, losses, costs, and expenses (including reasonable attorneys' fees) which they may incur by reason of any breach of the representations and warranties made by Buyer in this Agreement, or any false or misleading representation or warranty in this Agreement or other document provided by Buyer to Seller.

16. Seller and Buyer are independent contracting Parties and nothing in this Agreement shall make either Party the agent, employee, or legal representative of the other.

17. The terms of this Agreement are confidential and may only be disclosed as required by law or to complete the transaction.

18. This constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties. Neither Party is relying upon any representation not contained in this Agreement.

*We, the undersigned, with full legal and corporate responsibility accept the agreement this date:*

**Signing Page**

Agreed and Signed By:

**CHARLTON HOLDING GROUP, LLC**

For and on behalf of Seller,
Charlton Holdings Group, LLC

_____

Authorized Signatory

Name: Mr. Sam Gross

Position: Managing Partner

Date:

For and on behalf of Buyer

_____

Authorized Signatory

Name:
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342

Date: January 21, 2022

**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT "A"- ICPO

**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT "B" - ESCROW ACCOUNT
# Manfred Sternberg Jr. Attorney at Law IOLTA-Trust Account Wire Instructions



## Bank of America; Phone # 888.287.4637
## ABA #026009593

## ACCOUNT NAME:
## Manfred Sternberg Jr. Attorney at Law
## IOLTA - Trust Account
## ACCT # 0008 4000 2143

Bank of America's SWIFT code **BOFAUS3N** should be used for incoming wires in U.S. dollars.

Bank of America's SWIFT code **BOFAUS6S** should be used for incoming wires in foreign currency.
If you do not know or are unsure of the type of currency being received please use **BOFAUS3N**

Someone sending an incoming international wire to you may also ask for Bank of America's address. The address to provide is as follows:
**BOFAUS3N** (US dollars or unknown currency)
     Bank of America, NA
     222 Broadway
     New York, New York 10038
**BOFAUS6S** (foreign currency)
     Bank of America, NA
     555 California St
     San Francisco, CA 94104
Manfred Sternberg
Attorney at Law
1700 Post Oak Blvd., 2 Blvd. Place, Suite 600
Houston, TX 77056
TEL: (713) 622-4300
FAX: (713) 622-9899
manfred@msternberg.com

**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT C
# INVOICE

Charlton Holdings Group, LLC,
78 Buckminster Road - Rockville Center
New York 11570, USA

INVOICE _____ DATE: January 21, 2022

TO:
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342
*Ship To:*

**INSTRUCTIONS**: Funds are only due and payable upon receipt of Invoice. All sales are final.

| SALESPERSON | P.O. NUMBER | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| SAM GROSS | 18315 | | Common Carrier | Delivery to Buyer | Due on receipt |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 151,200 | iHealth COVID 19 home test kits | $13.00 | $1,965,600.00 |
| | | | |
| | CREDIT FOR DEPOSIT PER SPA $1,965,600.00 | | ($1,965,600.00) |
| | | | |

NO SALES TAX (RESALE)

## TOTAL DUE $0.00

Bank wire or deposit:
**ACCOUNT NAME:**
Manfred Sternberg Jr. Attorney at Law
IOLTA - Trust Account
Bank of America; Phone # 888.287.4637
**ABA #026009593**
**ACCT # 0008 4000 2143**

**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT D –
# BILL OF SALE

### LOT #1 *(ref: #18315)*

*CHARLTON HOLDINGS GROUP, LLC (the "Seller") does hereby sell, assign and transfer to the "Buyer" Safety House  99 Aldan Avenue, Suite 5 Glen Mills, PA 19342  the item(s) described asfollows:*

**151,200 boxes** of 2 count iHealth COVID 19 home test kits  @ $13.00 PER BOX INCLUSIVE.

*for the TOTAL AMOUNT OF $1,965,600.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of January _____, 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing ofthis Bill of Sale.*

SELLER:

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933

**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT E -

# STANDARD OPERATING PROCEDURE (SOP)

January 21, 2022

RE:  151,200  boxes of 2 count iHealth COVID 19 home test kits

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer")  (each hereafter as "Party" and together as the "Parties")

The following SOP is how Seller engages with Buyers.

1.  Buyer to provide Purchase Order to Seller.
2.  Seller's Attorney to draft and provide Buyer with Seller form of Sale and Purchase Agreement. ("SPA").
3.  Buyer and Seller execute SPA and Buyer wires Seller's Attorney the total purchase price called for in the Purchase Order.
4.  Purchase price funds released to Seller.
5.  Title Transfer to Goods to Buyer per SPA.
6.  Goods delivered to common carrier by Seller per SPA for delivery to Buyer.
7.  Seller to provide Buyer with BOL(s) and executed Bill of Sale for Goods shipped
8.  Buyer and its agents agree not to speak to anyone other than Seller or Seller's representative regarding this transaction.  Any discussions with Seller's vendors will be considered attempted circumvention.

Case 2:22-cv-00688-JMY   Document 80-5   Filed 07/31/23   Page 1 of 3

# EXHIBIT "2"
# Redacted

Fulton Bank

# [encrypt] [Cust Out Wire Advice - eMail] Message ID:220121143457MA98 Advice Code:OTCSADEM

Skip Navigation

- Inbox
- Contacts
- Compose
- Sent Mail
- Drafts
- Help
  ?
- Sign Out

Fulton Bank Message View
dans@thesafetyhouse.com
[encrypt] [Cust Out Wire Advice - eMail]

- Reply
- Reply All
- Forward
- Delete
- Go

Last Sign In: Feb 15, 2022 3:24 PM

Received: Jan 21, 2022 3:43 PM
Expires: Feb 20, 2022 3:43 PM
From: wireroom@fultonbank.com
To: dans@thesafetyhouse.com
Cc:
Subject: [encrypt] [Cust Out Wire Advice - eMail]

In accordance with your instructions, we have DEBITED your account: **********4700
for $1,965,600.00 ON 2022-01-21.

Originator:      AMERICAN ENVIRONMENTAL ENTERPR
Sender Bank Name:  FULTON BANK NA
Sender Bank ABA#:  031301422
Sender Reference:

Fed Reference #:

Receiver Bank Name:  BK AMER NYC
Receiver Bank ABA#:        9593

Beneficiary Name:  MANFRED STERNBERG JR ATTORNEY ATLAW
Beneficiary Bank:
Beneficiary Reference:

Originator to Beneficiary Info:

Bank to Bank Information:


***CONFIDENTIALITY NOTICE***
This email contains confidential information which
may also be legally privileged and which is intended
only for the use of the recipient(s) named above. If
you are not the intended recipient, you are hereby
notified that forwarding or copying of this email,
or the taking of any action in reliance on its contents,
may be strictly prohibited. If you have received this
email in error, please notify us immediately by reply
email and delete this message from your inbox. Thank you.



***CONFIDENTIALITY NOTICE***This email contains confidential information which may also be legally
privileged and which is intended only for the use of the recipient(s) named above. If you are not the intended recipient,
you are hereby notified that forwarding or copying of this email, or the taking of any action in reliance on its contents,
may be strictly prohibited. If you have received this email in error, please notify us immediately by reply email and
delete this message from your inbox. Thank you. E-Mail Opt Out Notice: This e-mail message may include an
advertisement. You have the right to request that we not send future advertisements to you at this e-mail address. If you
prefer not to receive future advertisements from us at this e-mail address, please access the following url
http://www.optoutffc.com/ Fulton Bank, N.A., P.O. Box 8, East Petersburg, Pa. 17520



This message was secured by Zix(R).

---

Fulton Bank

This service is hosted by Zix on behalf of Fulton Bank More Information

# EXHIBIT "3"

**Subject:** Fwd: PDF Signed SPA and wire transfer receipt from from Dan Scully

Here is the email .

He sent it to Dick Gray

Begin forwarded message:

**From:** Manfred <manfred@msternberg.com>
**Date:** Feb 8, 2022 at 3:50 PM
**To:** Dick Gray <dickgray1951@aol.com>
**Cc:** Sam Gross <samrosinc@icloud.com>, Chris Cortese <cjcsvpllc@gmail.com>
**Subject:** Re: PDF Signed SPA and wire transfer receipt from from Dan Scully

Hi Dick,   Please see attached executed Bill of Sale for Hand Safety's product that is in route for delivery as previously directed.

*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard🔲
2 BLVD Place, Suite 600🔲
Houston, Texas 77056

☎Ph: 713-622-4300
📠Fax: 713-622-9899
✉ Email: manfred@manfredlaw.com



# EXHIBIT "4"

| | |
|---|---|
| **From:** | Gary Lightman |
| **To:** | Manfred |
| **Cc:** | G. Manochi; Wl. Stamps; K. DiTomaso; GARY LIGHTMAN |
| **Subject:** | Re: TheSafetyHouse.com v. Manfred Sternberg & Associates, and Manfred Sternberg, Esquire, and Sam Gross, and Charlton Holding Group, LLC -- Docket No. 2022-[NOT YET FILED] |
| **Date:** | Tuesday, February 15, 2022 10:33:57 PM |

Mr. Sternberg,

Your email below is NOT what you represented to me in our phone call of earlier today.

You were not authorized to release any funds from your attorney escrow account until "Seller deliver[ed] the goods to a common carrier" with the appropriate *signed* Seller's Bill of Sale transferring title of the goods to Buyer.

This is the second (and last) time we will request that you provide us IMMEDIATELY with the identity and contact information of the "common carrier" that you represented to me in our phone call (and that did not deny in your below email) that has the goods that you represented to me already were being shipped to TSH.

We also request that you email to us a copy of the *signed* Bill of Sale, as well as the Bill of Lading for the common carrier shipment.

If we do not receive this information and documentation from you by no later than tomorrow, then we have been instructed (1) to immediately file a lawsuit, and (2) to file a disciplinary complaint against you for your unauthorized transfer of escrow funds.

You should write us back first thing in the am, if you have any questions or problems. Otherwise, we look forward to timely receiving from you the requested information and documentation.

Please be guided accordingly.

thx
Gary Lightman
cell 215-760-3000

> On Feb 15, 2022, at 7:08 PM, Manfred <Manfred@msternberg.com> wrote:
>
> Mr. Gary Lightman, I am not sure what you heard, but I certainly did not confirm that our law firm is still holding the $1,965,600.00 that TSH wired into our attorney escrow. The funds were disbursed to the Seller in accordance with the SPA and per the instruction of our client. I will note, your interpretation of the SPA and your explanation below is not consistent with the terms of the SPA. Maybe you should read it?
>
> Paragraph 6 of the SPA says: Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the

location(s) as directed by Buyer. Title transfer shall happen contemporaneously with funds being released to Seller. Your client should have an executed Bill of Sale and funds have been transferred for the purchase when the goods were loaded onto the common carrier.

You will also note that Paragraph 13 says: This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement. Proceed accordingly.

I am told the product will be arriving tomorrow at the location provided by your client. Let me know when your client is in possession of his product.


*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard
2 BLVD Place, Suite 600
Houston, Texas 77056


☎Ph: 713-622-4300
Fax: 713-622-9899
✉ Email: manfred@manfredlaw.com


<image001.png>
<image002.png><image003.png>

---

**From:** Gary Lightman <garylightman@lightmanlaw.com>
**Date:** Tuesday, February 15, 2022 at 5:35 PM
**To:** Manfred Sternberg <Manfred@msternberg.com>
**Cc:** "G. Manochi" <gmanochi@lightmanlaw.com>, "Wl. Stamps" <wlstamps@lightmanlaw.com>, "K. DiTomaso" <kditomaso@lightmanlaw.com>, GARY LIGHTMAN <ltag8r@me.com>
**Subject:** TheSafetyHouse.com v. Manfred Sternberg & Associates, and Manfred Sternberg, Esquire, and Sam Gross, and Charlton Holding Group, LLC -- Docket No. 2022-[NOT YET FILED]

Mr. Manfred Sternberg,

Our law firm has been retained as litigation counsel for TheSafetyHouse.com ("TSH"). This email will confirm your phone call to me, that just ended. Thank you for your courtesies in timely returning the voice mail message that we left when we called your work number (713-622-4300) earlier today (and please do not delete that phone message, unless and until this dispute is fully resolved to our client's satisfaction).

You represented to us that the 151,200 boxes of 2 count iHealth COVID 19 home test kits that TSH purchased from your client (Sam Gross and Charlton Holding Group, LLC) already were being shipped and in transit to TSH, and that TSH should expect delivery of the goods tomorrow. You also confirmed that your law firm still is holding the $1,965,600.00 that TSH wired into your attorney escrow account, that is supposed to be held by you and not released from escrow until TSH has received delivery of the goods.

You should use "reply all" immediately, if this email does not accurately memorialize our phone conversation. Otherwise, please use "reply all" and provide us with the shipping information that we requested from you when we just spoke (i.e., the name and contact information of the carrier that is delivering the goods).

We look forward to your timely response.

Very truly yours,
Gary Lightman, Esquire
LIGHTMAN & MANOCHI
Attorneys for TSH

cc: client

--
Gary P. Lightman, Esquire
e-mail:
garylightman@lightmanlaw.co
m
or ltag8r@me.com
cell 215-760-3000

LIGHTMAN & MANOCHI
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
Phone: (215) 545-3000 (ext.
107); fax (215) 545-3001

# EXHIBIT "5"

| From: | Dan Scully |
|---|---|
| To: | CharltonHoldingGroupLLC@aol.com |
| Cc: | Manfred; Cicsvnlic; Gary Lightman; WI. Stamos; K. DiTomaso; G. Manochi |
| Subject: | RE: Delivery of I Health Antigen Test Kits. |
| Date: | Wednesday, February 16, 2022 6:45:52 PM |

Sam/Manfred:

It's after 6:30 Pm and I still have not received the goods both of you promise I would get today. I think you guys are lying to me and have continued to lie to me.

Not to mention you both breached our contract. (And you never even sent me a fully signed contract)

I think you guys defrauded me.

Do to your inability to deliver the goods that I ordered and paid for, you leave me no alternative but to cover my contracts with my existing customers.

## I WANT MY 2 MILLION DOLLARS WIRED BACK TO ME IMMEDIATELY.

You also will be hearing from my attorneys. I intent to hold each of you fully responsible for all damages I have incurred for your fraudulent and wrongful conduct. I also think your actions are criminal and I intent to report your fraudulent activity to the US Attorneys office and to the District Attorney's office both in Houston and Austin Texas and in New York.

Manfred you also should be disbarred, not only did you wrongfully release my money from escrow, but you lied to me about afterwards.

I am sending a copy of this email to my attorney's and instructing them take all necessary legal action to enforce my rights.

Dan Scully
TheSafetyHouse.com

| To: | Manfred |
|---|---|
| Cc: | CharltonHoldingGroupLLC@aol.com |
| Subject: | RE: The Safetyhouse.com: Purchase Order #18315 |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |

Sam/Manfred:

At this time I still have not received my product and I would like to request that my money be refunded from the escrow account.

Dan Scully
TheSafetyHouse.com

**From:** Manfred (Manfred@msternberg.com) <system@sent-via.netsuite.com>
**Sent:** Friday, January 21, 2022 12:05 PM
**To:** Dan Scully <dans@thesafetyhouse.com>; john@lincolnparkincorp.com
**Cc:** CharltonHoldingGroupLLC@aol.com
**Subject:** Re: The Safetyhouse.com: Purchase Order #18315

See SPA attached

*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard
2 BLVD Place, Suite 600
Houston, Texas 77056

☎Ph: 713-622-4300
Fax: 713-622-9899
Email: manfred@manfredlaw.com

_____

**From:** "Dan Scully (dans@thesafetyhouse.com)" <system@sent-via.netsuite.com>

**Reply-To:** Dan Scully <messages.401626.2161448.40263ca555@401626.email.netsuite.com>

**Date:** Friday, January 21, 2022 at 10:57 AM

**To:** Manfred Sternberg <Manfred@msternberg.com>, "john@lincolnparkincorp.com" <john@lincolnparkincorp.com>

**Subject:** The Safetyhouse.com: Purchase Order #18315

Attached Purchase order for IHealth Test Kits. Plese provide Expiration and lot numbers.

Thanks,

Dan Scully
TheSafetyHouse.com |

# EXHIBIT A

EXHIBIT __4__
WIT: _M Stemberg_
DATE: _2-7-24_
Joanne Rose, RPR, RMR



**CHARLTON HOLDING GROUP, LLC**

## SALE AND PURCHASE AGREEMENT

January 21, 2022

THIS AGREEMENT IS FOR THE SALE AND PURCHASE OF the product identified on the Purchase Order attached hereto and marked as Exhibit A attached hereto (the "Goods"). This Sale and Purchase Agreement is referred to herein as (this "Agreement").

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer") (each hereafter as "Party" and together as the "Parties")

For good and valuable consideration, the Parties agree:

1. Seller shall provide Buyer the Goods listed in Exhibit A for the Purchase Price, provided that Buyer complies with the conditions of this Agreement.

2. Seller agrees to sell to Buyer 151,200 boxes of 2 count iHealth COVID 19 home test kits shall be provided to the Buyer by the Seller for each lot of boxes available for payment as they are ready to be delivered.

3. The Buyer agrees to pay the Seller @ $13.00(USD) per box. Payment upon invoice as the product lots are ready for delivery, total cost **$1,965,600.00**.

4. The product lots may be located in more than one (1) location or warehouse in various locales in the United States. Immediately after delivering a Purchase Order, Buyer agrees to authorize a wire be made to Seller through the Seller's Attorney Escrow Account identified in Exhibit B for the actual number of boxes of product contained in the Purchase Order.

5. As per the invoice below (EXHIBIT C), Seller agrees to sell **151,200 boxes** of 2 count iHealth COVID 19 home test kits . The Buyer shall transfer the above-mentioned funds to the Seller's Attorney Escrow Account listed inExhibit B as per each invoice.

6. Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. Title transfer shall happen contemporaneously with funds being released to Seller. Exhibit E attached hereto is incorporated herein as Seller's agreed upon Standard Operating Procedure.

7. Seller agrees to pay commissions, if any, included with rolls and extensions for the duration of this Agreement as per separate written agreement.

8. The Seller agrees to coordinate and pay for common carrier transportation to deliver the Goods from the Seller's warehouse(s) to Buyer at Seller's cost and is included in the purchase price paid to Seller by Buyer hereunder.

CHARLTON SALE & PURCHASE AGREEMENT DATED «DATE»

CHARLTON HOLDING GROUP, LLC

9. Risk of loss shall transfer to Buyer at the point the product is paid for by Buyer and the Seller is released of all loss guarantees.
10. The Goods shall be sold with the manufacturer's warranty only. Seller makes a warranty of Title to product only when it is paid for by Buyer. Seller makes no other warranty of any kind, express or implied, and any warranty by Seller is expressly disclaimed.
11. Neither Buyer nor Seller shall be liable to the other for any consequential damages, lost profits, cover costs, or punitive or exemplary damages arising out of or related to this Agreement; however if Buyer in any way attempts to circumvent Seller, Seller will be entitled to liquidated damages of $50,000 from Buyer or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer.
12. Seller may terminate this Agreement if Seller determines, in its sole discretion, that Buyer does not have the funds to purchase the Goods, or the Goods become unavailable and all funds deposited with Seller, if any, shall be returned to Buyer.
13. This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.
14. Buyer warrants and represents this transaction is in full compliance with all applicable laws and regulations, including but not limited to Executive Order No. 13224, as amended, the Patriot Act (Public Law 107 56), and any other law relating to the prevention and detection of terrorism and money laundering
15. Buyer agrees to indemnify, defend, and hold harmless the Seller, its agents, servants, employees, contractors, and affiliates (the "Indemnified Parties"), from and against all damages, losses, costs, and expenses (including reasonable attorneys' fees) which they may incur by reason of any breach of the representations and warranties made by Buyer in this Agreement, or any false or misleading representation or warranty in this Agreement or other document provided by Buyer to Seller.
16. Seller and Buyer are independent contracting Parties and nothing in this Agreement shall make either Party the agent, employee, or legal representative of the other.
17. The terms of this Agreement are confidential and may only be disclosed as required by law or to complete the transaction.
18. This constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties. Neither Party is relying upon any representation not contained in this Agreement.

***We, the undersigned, with full legal and corporate responsibility accept the agreement this date:***

**Signing Page**

Agreed and Signed By: Daniel J. Scully



**CHARLTON HOLDING GROUP, LLC**

For and on behalf of Seller,
Charlton Holdings Group, LLC


Authorized Signatory

Name: Mr. Sam Gross

Position: Managing Partner

Date:

For and on behalf of Buyer

Authorized Signatory

Name:  Daniel J. Scully
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342


Date: January 21, 2022

For and on behalf of Seller,
Charlton Holdings Group, LLC

Authorized Signatory

Name: Mr. Sam Gross

Position: Managing Partner

Date:

For and on behalf of Buyer

Authorized Signatory

Name: Daniel J. Scully
Safety House
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342

Date: January 21, 2022



CHARLTON HOLDING GROUP, LLC

# EXHIBIT "A"- ICPO



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT "B" - ESCROW ACCOUNT
# Manfred Sternberg Jr. Attorney at Law IOLTA-Trust Account Wire Instructions



**Bank of America**

## Bank of America; Phone # 888.287.4637
## ABA #026009593

## ACCOUNT NAME:
## Manfred Sternberg Jr. Attorney at Law
## IOLTA - Trust Account
## ACCT # 0008 4000 2143

Bank of America's SWIFT code **BOFAUS3N** should be used for incoming wires in U.S. dollars.

Bank of America's SWIFT code **BOFAUS6S** should be used for incoming wires in foreign currency.
If you do not know or are unsure of the type of currency being received please use **BOFAUS3N**

Someone sending an incoming international wire to you may also ask for Bank of America's address. The address to provide is as follows:
**BOFAUS3N** (US dollars or unknown currency)
  Bank of America, NA
  222 Broadway
  New York, New York 10038
**BOFAUS6S** (foreign currency)
  Bank of America, NA
  555 California St
  San Francisco, CA 94104
Manfred Sternberg
Attorney at Law
1700 Post Oak Blvd., 2 Blvd. Place, Suite 600
Houston, TX 77056
TEL: (713) 622-4300
FAX: (713) 622-9899
manfred@msternberg.com



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT C
# INVOICE

Charlton Holdings Group, LLC,
78 Buckminster Road - Rockville Center
New York 11570, USA

INVOICE _____ DATE: January 21, 2022

TO:
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342
*Ship To:*

**INSTRUCTIONS**: Funds are only due and payable upon receipt of Invoice. All sales are final.

| SALESPERSON | P.O. NUMBER | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| SAM GROSS | 18315 | | Common Carrier | Delivery to Buyer | Due on receipt |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 151,200 | iHealth COVID 19 home test kits | $13.00 | $1,965,600.00 |
| | CREDIT FOR DEPOSIT PER SPA $1,965,600.00 | | ($1,965,600.00) |

NO SALES TAX (RESALE)

## TOTAL DUE $0.00

Bank wire or deposit:
**ACCOUNT NAME:**
Manfred Sternberg Jr. Attorney at Law
IOLTA - Trust Account
Bank of America; Phone # 888.287.4637
**ABA #026009593**
**ACCT # 0008 4000 2143**



CHARLTON HOLDING GROUP, LLC

# EXHIBIT D –
# BILL OF SALE

### LOT #1 *(ref:* #18315)

*CHARLTON HOLDINGS GROUP, LLC (the "Seller") does hereby sell, assign and transfer to the "Buyer" Safety House  99 Aldan Avenue, Suite 5 Glen Mills, PA 19342  the item(s) described as follows:*

> 151,200 boxes of 2 count iHealth COVID 19 home test kits  @ $13.00 PER BOX
> INCLUSIVE.

*for the TOTAL AMOUNT OF $1,965,600.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of January ___2. (___ , 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933



CHARLTON HOLDING GROUP, LLC

# EXHIBIT E -

# STANDARD OPERATING PROCEDURE (SOP)

January 21, 2022

RE:  151,200  boxes of 2 count iHealth COVID 19 home test kits

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller")
AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer")  (each hereafter as "Party" and together as the "Parties")

The following SOP is how Seller engages with Buyers.

1.  Buyer to provide Purchase Order to Seller.
2.  Seller's Attorney to draft and provide Buyer with Seller form of Sale and Purchase Agreement. ("SPA").
3.  Buyer and Seller execute SPA and Buyer wires Seller's Attorney the total purchase price called for in the Purchase Order.
4.  Purchase price funds released to Seller.
5.  Title Transfer to Goods to Buyer per SPA.
6.  Goods delivered to common carrier by Seller per SPA for delivery to Buyer.
7.  Seller to provide Buyer with BOL(s) and executed Bill of Sale for Goods shipped
8.  Buyer and its agents agree not to speak to anyone other than Seller or Seller's representative regarding this transaction.  Any discussions with Seller's vendors will be considered attempted circumvention.

**Subject:** FW: TheSafetyHouse.com v. Manfred Sternberg & Associates, and Manfred Sternberg, Esquire, and Sam Gross, and Charlton Holding Group, LLC -- Docket No. 2022-[NOT YET FILED]

**Date:** Thursday, March 24, 2022 at 9:50:09 PM Central Daylight Time

**From:** Manfred

**To:** CHARLTONHOLDINGGROUPLLC@AOL.COM

**Priority:** High

**Attachments:** image001.png, image002.png, image003.png, image004.png, image005.png, image006.png, image007.png, image008.png, image009.png

Send me the fully executed agreement with Safety House. I also bneed the fully executed contract with Keech's company Little Cloud. I am tired of asking for things more than once. I have other things to do instead of chasing down shit that people promise me but don't deliver.

The GIA is now a problem. I WANT IT !!!!!! Stop wasting my time on bullshit things like this. How fucking hard can this be? ??? Your 30 minutes I'll get it today wass bullshit. Your after dinner today Im calling you was bullshit. We are getting wires today was bullshit. Don't bullshit me, I have defended you all day and this is the respect I am given? MY list of shit needs to get done tomorrow or I shut down the only way I know to get what I need done, done.. I am tired of being bullshitted. Gary is part of that. I am tired of being the only one that runs like a clock.

I also want an accounting of all the BOLs that have been shipped.


*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard
2 BLVD Place, Suite 600
Houston, Texas 77056

☎Ph: 713-622-4300
📠Fax: 713-622-9899
✉ Email: manfred@manfredlaw.com



# MANFRED STERNBERG & ASSOCIATES, P.C.
### ATTORNEYS AT LAW
1700 POST OAK BLVD., SUITE 600
HOUSTON, TEXAS 77056
manfred@manfredlaw.com

MANFRED STERNBERG, JR.*
DANA L. KIRKPATRICK
* Board Certified: Consumer & Commercial Law
Also admitted in Louisiana

TELEPHONE: (713)622-4300
FACSIMILE: (713)622-9899

April 24, 2022

*Via mail: houcdcreponses@texasbar.com*
Office of the Chief Disciplinary Counsel
State Bar of Texas
4801 Woodway Drive, Suite 315-W
Houston, Texas 77056

> RE: 2022-01819 – Dan Scully - Manfred Sternberg, Jr.; Complaint to the Office of the
> Chief Disciplinary Counsel State Bar of Texas

Dear Counsel:

I am in receipt of your notice of Complaint and file this as my response to same. Along with this
letter please see the production of documents as Exhibits to this letter, that is being supplied to
you for your reference and inclusion into the case file.

There are a number of omissions and outright misrepresentations of material fact in Mr. Dan
Scully's ("Scully") complaint, so it should be helpful moving forward for all of us to understand
the facts as they occurred.

Our law firm represents Charlton Holdings Group, LLC. ("Charlton"). We have no direct
relationship with Scully or Scully's company, Safety House. Our law firm has no agreement
with Scully or Safety House, and certainly Safety House was never our law firm's client. There
is no escrow agreement between our firm and Scully or Safety House. Moreover, I do not
believe I have ever spoken with Mr. Scully.

Instead, Safety House as Buyer, is a party to a contract for Goods with the Seller, my client
Charlton. I am not, nor is our law firm a party nor signatory to the contract, although we drafted
the Sale and Purchase Agreement ("SPA") at Charlton's request. It was always my assumption
that Safety House was competently represented by Attorney Gary Lightman ("Lightman")
(referenced in the complaint) from Pennsylvania when Safety House presumably read and signed
the contract with Charlton.

The $1,965,600. deposit that was transferred into our trust account by Scully on Safety House's
behalf was wired to us on January 21, 2022 pursuant to the terms of the written SPA between the
parties.

EXHIBIT 6
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

Office of the Chief Disciplinary Counsel
State Bar of Texas
Sternberg Response to Grievance
April 24, 2022
Page 2 of 6

Notably, the fully executed SPA was omitted from the Complaint filed with your office by Scully, even though in fairness it should be considered when determining the merits of Scully's complaint. It is now attached hereto as Exhibit "A" and it is requested to be made a part of the Chief Disciplinary Counsel's file on this matter.

There was no responsibility by undersigned counsel to provide Scully or his counsel a fully executed copy of the contract, and no such request was made to the undersigned by Scully or his counsel Mr. Lightman at any time.

It is important to note that in paragraphs 5 and 6 of the SPA, the parties contractually agreed as follows:

5. As per the invoice below (EXHIBIT C), Seller agrees to sell **151,200 boxes** of 2 count iHealth COVID 19 home test kits. The Buyer shall transfer the above-mentioned funds to the Seller's Attorney Escrow Account listed in Exhibit B as per each invoice. (emphasis in original )

6. Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. Title transfer shall happen contemporaneously with funds being released to Seller. Exhibit E attached hereto is incorporated herein as Seller's agreed upon Standard Operating Procedure.

Furthermore, Exhibit E of the SPA referenced immediately above and incorporated into the SPA states in relevant part as follows:

The following SOP is how Seller engages with Buyers.

1. Buyer to provide Purchase Order to Seller.
2. Seller's Attorney to draft and provide Buyer with Seller form of Sale and Purchase Agreement. ("SPA").
3. Buyer and Seller execute SPA and Buyer wires Seller's Attorney the total purchase price called for in the Purchase Order.
4. Purchase price funds released to Seller.
5. Title Transfer to Goods to Buyer per SPA.
6. Goods delivered to common carrier by Seller per SPA for delivery to Buyer.
7. Seller to provide Buyer with BOL(s) and executed Bill of Sale for Goods shipped

Office of the Chief Disciplinary Counsel
State Bar of Texas
Sternberg Response to Grievance
April 24, 2022
Page 3 of 6

On or about January 26, 2022 Charlton received an invoice from ASOLAR, LLC ("ASOLAR") for the goods that were sold by Charlton to various customers of Charlton, including Safety House, Scully's company.

On or about February 1, 2022, undersigned counsel was directed by our client Mr. Sam Gross President of Charlton to wire $219,240.00 from our IOLTA account to ASOLAR's bank as deposit to hold the product and schedule shipping of the goods in the possession of ASOLAR and its principal Mr. Gary Weiss.   Notably, Gary Weiss and Sam Gross have a prior 20 plus year trusted professional working relationship with each other in the diamond industry in New York City, transacting millions of dollars in product with each other over the last 20 years.

On or about February 4, 2022, the undersigned was directed by our client Mr. Sam Gross with Charlton to wire an additional $1,911,960.00 from our IOLTA account to ASOLAR's bank as payment in full for the product in the possession of ASOLAR and its principal Mr. Gary Weiss and in accordance with the invoice attached hereto at Exhibit "B".    Because the dollar amount was sizeable, I requested that ASOLAR engage a New York licensed attorney and officer of the Court to receive the wire and hold the funds in Trust until the product was confirmed to be loaded onto a common carrier.

Mr. Weiss  represented that Daphna Zekaria, Esq. was his lawyer for many years and she would serve in this capacity.  The transaction was discussed by undersigned counsel with Ms. Zekaria and her identity and credentials were confirmed by Internet searches on the State Bar of New York website, and during several telephone calls and emails between counsel.

Daphna Zekaria, Esq. is with the law firm of Sokolski & Zekaria, P.C., 1133 Broadway Ste 1001 New York, NY 10010-7993; Phone:(212) 571-408 Email:sokolski.zekaria@mindspring.com Ms. Zakaria was admitted to the New York Bar on 07/14/1997 and has no disciplinary record according to the State Bar of New York website. The funds were wired directly to Ms. Zekaria's IOLA account with the notation in the reference "RE Charlton Holding Trust Asolar Inv10054" See Exhibit "C" attached.

A Manifest or Bill of Lading was provided to Charlton by ASOLAR on the letterhead of Available Movers & Storage with a corporate address in Manhattan NY. See Exhibit "D" attached.

On or about February 8, 2022,  the Manifest or Bill of Lading from Available Movers & Storage along with an executed Bill of Sale to Safety House by Charlton were provided to the Buyer. See Exhibit "E" attached.

Office of the Chief Disciplinary Counsel
State Bar of Texas
Sternberg Response to Grievance
April 24, 2022
Page 4 of 6

_____

Mr. Gary Weiss assured the undersigned repeatedly by email, text and verbally that the product was enroute and being delivered immediately. Below is an example of one of the many assurances made by Gary Weiss to the undersigned.

**From:** Gary Weiss <<mark>wgary4109</mark>@gmail.com>
**Date:** Thursday, February 10, 2022 at 8:20 AM
**To:** sam gross <charltonholdinggroupllc@aol.com>, Manfred Sternberg <Manfred@msternberg.com>
**Subject:** order #10054

Hi Sam & Manfred, the order is going out Today, please reconfirm Addresses and phone # of the recipients, we to avoid confusion where order were sent to the wrong places, which happened in the past, Waiting for your speedy response.
best
Gary

When Scully states that the undersigned "Sternberg compounded his wrongful conduct by writing us an email in which he represented to us the goods were being shipped and I would get them tomorrow. Sternberg's email is attached to my grievance. That was a lie,…"

Please reference the email that Scully is referencing that was attached to his complaint. You will note Mr. Scully is the one actually not telling the truth about these facts. My email in relevant parts says: "**I am told** the product will be arriving tomorrow." (emphasis added)

That statement was and is 100% true. That is what I was told by Mr. Gary Weiss " the product will be arriving tomorrow."

As counsel for an out of state client, Scully and his counsel knew and know that I have no personal knowledge about the location of the Goods or delivery other than what I was told by other people. Scully's statement in this regard demonstrates his willingness to stretch the true facts and goes directly to his credibility for candor and honesty in this complaint. It is simply his effort to try to mislead this Office of the Chief Disciplinary Counsel into believing that I lied to him and his lawyer. I did not. Even their own "proof" supports that conclusion.

In fact, the Goods described in the SPA began being delivered to Safety House at the location provided in the SPA on March 29, 2022. The Goods were refused and not accepted by Safety House and it is the Seller Charlton's contention that the SPA has now been breached by the Buyer by refusing delivery of paid for Goods. Because of the continued verbal and text harassment and threats made by Scully to many people, from Charlton's lawyer to the product delivery driver, no future deliveries are as of this date scheduled by Seller, Charlton.

Office of the Chief Disciplinary Counsel
State Bar of Texas
Sternberg Response to Grievance
April 24, 2022
Page 5 of 6

_____

It is my opinion that a civil court resolution will be required, or a resolution will need to be negotiated between the actual parties pursuant to the SPA.

The attached Declaration as Exhibit "F" by Charlton President Sam Gross confirms the facts stated above.

Mr. Gross further states that ASOLAR owned over 300,000 iHealth Covid Test Kits and Charlton bought such test kits from ASOLAR for resale. Thereafter the product was fully paid for under ASOLAR Invoice 10054, Exhibit B. Through no fault of Charlton, and due to an unforeseen personnel and logistics problem caused solely by ASOLAR, ASOLAR was unable to deliver the product as it represented and agreed with Charlton.

Sam Gross further states that he honestly believed the trucks with product were enroute to deliver product as Gary Weiss specifically promised several times to Sam Gross and Manfred Sternberg. But, he also states he was surprised when delivery was in fact not made as represented to him by Gary Weiss and his team.

Charlton still intends to fulfill the contract in a commercially reasonable manner. However, now that Buyer has refused to accept the product Charlton now contends that Buyer is in default and Charlton intends to submit the matter to a civil court in Texas to determine next steps to resolve the issues that remain between Buyer and Seller per the SPA. It is Charlton's contention that the SPA between the Charlton and Safety House contains no terms or specific deadlines that were not complied with by Charlton.

Finally, Mr. Gross states that there was no malfeasance by Manfred Sternberg and that this transaction with Safety House was simply a commercial transaction, that to date has failed to be completed, through no fault of Charlton or Manfred Sternberg.

Mr. Gray Weiss has admitted repeatedly that it was his company's 100% responsibility for filling the order, and ASOLAR is still, to this date, attempting to fill the order. Gary Weiss may be contacted at mobile: 908-546-2649, or by email: wgary4109@gmail.com, to verify any of these statements of fact made above, or he may be reached through his counsel, Daphna Zekaria, Esq. at her contact information above.

In order to create a conflict between my law firm and my client, and to create negotiation leverage to lower the price of the product, Scully not only caused a civil lawsuit to be filed against our client and others, but also against the undersigned attorney personally in Pennsylvania. The venue selection itself is indicative of the campaign of harassment sought to be inflicted on undersigned counsel despite the parties specifically agreeing to the exclusive

Office of the Chief Disciplinary Counsel
State Bar of Texas
Sternberg Response to Grievance
April 24, 2022
Page 6 of 6

---

venue provision being State District Court in Harris County Texas. (Paragraph 13 of Exhibit A). There is currently a motion to dismiss pending in Safety House's lawsuit.

You should also know that on information and belief, shortly before filing this grievance, Scully and Lightman engaged a person to impersonate an Federal FBI agent named Russel Stoner, who Lightman says he knows. On March 1, 2022 at 10:06 am said agent called undersigned counsel with regard to this transaction and demanded my home address to personally "pay me a visit" because of the Safety House transaction. The "agent" refused to give undersigned his badge number after repeated requests.

When this felonious scare tactic failed, Mr. Scully threatened to file a grievance against the undersigned attorney if the purchase price was not returned, without even addressing the terms in the SPA. Hence this meritless complaint was filed by Scully.

Per the terms of the SPA, I followed the SPA with regard to disbursement of the funds in question to my client. I am unaware of any missed dates for compliance by the Seller, who I believe is acting in a commercially reasonable manner and in accord with the terms of the SPA.

This is a simple breach of contract matter between two parties to a contract, with the purchase price for the goods deposited into my trust account as the Seller's attorney. Now, the Buyer has buyer's remorse and because the terms of the contract do not allow him to exit the contract as he now seems to desire, he is attacking Seller's attorney by filing this Grievance.

I stand ready to respond to any request by your office.

Respectfully,

Manfred Sternberg

Copy to:

Mr. Dan Scully

# EXHIBIT A



**CHARLTON HOLDING GROUP, LLC**

## SALE AND PURCHASE AGREEMENT

January 21, 2022

THIS AGREEMENT IS FOR THE SALE AND PURCHASE OF the product identified on the Purchase Order attached hereto and marked as Exhibit A attached hereto (the "Goods"). This Sale and Purchase Agreement is referred to herein as (this "Agreement").

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer") (each hereafter as "Party" and together as the "Parties")

For good and valuable consideration, the Parties agree:

1. Seller shall provide Buyer the Goods listed in Exhibit A for the Purchase Price, provided that Buyer complies with the conditions of this Agreement.

2. Seller agrees to sell to Buyer 151,200 boxes of 2 count iHealth COVID 19 home test kits shall be provided to the Buyer by the Seller for each lot of boxes available for payment as they are ready to be delivered.

3. The Buyer agrees to pay the Seller @ $13.00(USD) per box. Payment upon invoice as the product lots are ready for delivery, total cost **$1,965,600.00**.

4. The product lots may be located in more than one (1) location or warehouse in various locales in the United States. Immediately after delivering a Purchase Order, Buyer agrees to authorize a wire be made to Seller through the Seller's Attorney Escrow Account identified in Exhibit B for the actual number of boxes of product contained in the Purchase Order.

5. As per the invoice below (EXHIBIT C), Seller agrees to sell **151,200 boxes** of 2 count iHealth COVID 19 home test kits . The Buyer shall transfer the above-mentioned funds to the Seller's Attorney Escrow Account listed inExhibit B as per each invoice.

6. Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. Title transfer shall happen contemporaneously with funds being released to Seller. Exhibit E attached hereto is incorporated herein as Seller's agreed upon Standard Operating Procedure.

7. Seller agrees to pay commissions, if any, included with rolls and extensions for the duration of this Agreement as per separate written agreement.

8. The Seller agrees to coordinate and pay for common carrier transportation to deliver the Goods from the Seller's warehouse(s) to Buyer at Seller's cost and is included in the purchase price paid to Seller by Buyer hereunder.



CHARLTON HOLDING GROUP, LLC

9. Risk of loss shall transfer to Buyer at the point the product is paid for by Buyer and the Seller is released of all loss guarantees.

10. The Goods shall be sold with the manufacturer's warranty only. Seller makes a warranty of Title to product only when it is paid for by Buyer. Seller makes no other warranty of any kind, express or implied, and any warranty by Seller is expressly disclaimed.

11. Neither Buyer nor Seller shall be liable to the other for any consequential damages, lost profits, cover costs, or punitive or exemplary damages arising out of or related to this Agreement; however if Buyer in any way attempts to circumvent Seller, Seller will be entitled to liquidated damages of $50,000 from Buyer or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer.

12. Seller may terminate this Agreement if Seller determines, in its sole discretion, that Buyer does not have the funds to purchase the Goods, or the Goods become unavailable and all funds deposited with Seller, if any, shall be returned to Buyer.

13. This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.

14. Buyer warrants and represents this transaction is in full compliance with all applicable laws and regulations, including but not limited to Executive Order No. 13224, as amended, the Patriot Act (Public Law 107 56), and any other law relating to the prevention and detection of terrorism and money laundering

15. Buyer agrees to indemnify, defend, and hold harmless the Seller, its agents, servants, employees, contractors, and affiliates (the "Indemnified Parties"), from and against all damages, losses, costs, and expenses (including reasonable attorneys' fees) which they may incur by reason of any breach of the representations and warranties made by Buyer in this Agreement, or any false or misleading representation or warranty in this Agreement or other document provided by Buyer to Seller.

16. Seller and Buyer are independent contracting Parties and nothing in this Agreement shall make either Party the agent, employee, or legal representative of the other.

17. The terms of this Agreement are confidential and may only be disclosed as required by law or to complete the transaction.

18. This constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties. Neither Party is relying upon any representation not contained in this Agreement.

*We, the undersigned, with full legal and corporate responsibility accept the agreement this date:*

**Signing Page**

Agreed and Signed By: Daniel J. Scully

CHARLTON SALE & PURCHASE AGREEMENT DATED «DATE»



**CHARLTON HOLDING GROUP, LLC**

For and on behalf of Seller,
Charlton Holdings Group, LLC

_____

Authorized Signatory

Name: Mr. Sam Gross

Position: Managing Partner

Date:

For and on behalf of Buyer

Authorized Signatory

Name:  Daniel J. Scully
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342

Date: January 21, 2022

For and on behalf of Seller,
Charlton Holdings Group, LLC

Authorized Signatory

Name: Mr. Sam Gross

Position: Managing Partner

Date:

For and on behalf of Buyer

Authorized Signatory

Name: Daniel J. Scully
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342

Date: January 21, 2022



CHARLTON HOLDING GROUP, LLC

# EXHIBIT "A"- ICPO



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT "B" - ESCROW ACCOUNT
# Manfred Sternberg Jr. Attorney at Law IOLTA-Trust
# Account Wire Instructions

**Bank of America**



## Bank of America; Phone # 888.287.4637
## ABA #026009593

## ACCOUNT NAME:
## Manfred Sternberg Jr. Attorney at Law
## IOLTA - Trust Account
## ACCT # 0008 4000 2143

Bank of America's SWIFT code **BOFAUS3N** should be used for incoming wires in U.S. dollars.

Bank of America's SWIFT code **BOFAUS6S** should be used for incoming wires in foreign currency.
If you do not know or are unsure of the type of currency being received please use **BOFAUS3N**

Someone sending an incoming international wire to you may also ask for Bank of America's address. The address to provide is as follows:
**BOFAUS3N** (US dollars or unknown currency)
      Bank of America, NA
      222 Broadway
      New York, New York 10038
**BOFAUS6S** (foreign currency)
      Bank of America, NA
      555 California St
      San Francisco, CA 94104
Manfred Sternberg
Attorney at Law
1700 Post Oak Blvd., 2 Blvd. Place, Suite 600
Houston, TX 77056
TEL: (713) 622-4300
FAX: (713) 622-9899
manfred@msternberg.com



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT C
# INVOICE

Charlton Holdings Group, LLC,
78 Buckminster Road - Rockville Center
New York 11570, USA

INVOICE _____ DATE: January 21, 2022

TO:
**Safety House**
99 Aldan Avenue, Suite 5
Glen Mills, PA 19342
*Ship To:*

**INSTRUCTIONS**: Funds are only due and payable upon receipt of Invoice. All sales are final.

| SALESPERSON | P.O. NUMBER | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| SAM GROSS | 18315 | | Common Carrier | Delivery to Buyer | Due on receipt |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 151,200 | iHealth COVID 19 home test kits | $13.00 | $1,965,600.00 |
| | CREDIT FOR DEPOSIT PER SPA $1,965,600.00 | · | ($1,965,600.00) |

**NO SALES TAX (RESALE)**

## TOTAL DUE $0.00

Bank wire or deposit:
**ACCOUNT NAME:**
Manfred Sternberg Jr. Attorney at Law
IOLTA - Trust Account
Bank of America; Phone # 888.287.4637
**ABA #026009593**
**ACCT # 0008 4000 2143**



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT D –
# BILL OF SALE

### LOT #1 *(ref:* #18315)

*CHARLTON HOLDINGS GROUP, LLC (the "Seller") does hereby sell, assign and transfer to the "Buyer" Safety House  99 Aldan Avenue, Suite 5 Glen Mills, PA 19342  the item(s) described as follows:*

> **151,200 boxes** of 2 count iHealth COVID 19 home test kits  @ $13.00 PER BOX INCLUSIVE.

*for the TOTAL AMOUNT OF $1,965,600.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of January __2 1__, 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing ofthis Bill of Sale.*

SELLER:

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933



CHARLTON HOLDING GROUP, LLC

# EXHIBIT E -

# STANDARD OPERATING PROCEDURE (SOP)

January 21, 2022

RE:  151,200 boxes of 2 count iHealth COVID 19 home test kits

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer")  (each hereafter as "Party" and together as the "Parties")

The following SOP is how Seller engages with Buyers.

1. Buyer to provide Purchase Order to Seller.
2. Seller's Attorney to draft and provide Buyer with Seller form of Sale and Purchase Agreement. ("SPA").
3. Buyer and Seller execute SPA and Buyer wires Seller's Attorney the total purchase price called for in the Purchase Order.
4. Purchase price funds released to Seller.
5. Title Transfer to Goods to Buyer per SPA.
6. Goods delivered to common carrier by Seller per SPA for delivery to Buyer.
7. Seller to provide Buyer with BOL(s) and executed Bill of Sale for Goods shipped
8. Buyer and its agents agree not to speak to anyone other than Seller or Seller's representative regarding this transaction.  Any discussions with Seller's vendors will be considered attempted circumvention.

# EXHIBIT B

**ABOLAB, LLC**
430 3rd Avenue
Elizabeth, New Jersey 07206
United States
Phone: 9089462649
Mobile Email: WGAPHOENIX@GMAIL.COM
Edit your business address and contact details

| | |
|---|---|
| Bill to | |
| Charlton Holding Group, LLC. 78 Buckminster Road - Rockville Center New York 11570 USA | Invoice number : 3 |
| Sam Gross | P.O./S.O number : 10014 |
| 516-2325928 | Invoice date : 2022-01-26 |
| samvross@icloud.com | |
| Edit Charlton Holding Group, LLC. 78 Buckminster Road - Rockville Center New York 11570 USA | Payment due : 2022-02-04 |
| · Choose a different customer | Within 9 days |

✎ Edit columns

| Items | | Quantity | Price | Amount |
|---|---|---|---|---|
| # | Predlift Covid Test kits | | Predlift Covid-19 Test Kits | 346300 | 6.00 | $2,131,300.00 🗑 |
| | View income account | | Tax | . . . . | · | |
| # | #1, 15,200 units to, Nott | | Predlift Covid-19 Test Kits | 15200 | 0.00 | $0.00 🗑 |
| | #2, 7000 units to, VBC | | Predlift Covid-19 Test Kits | 7000 | 0.00 | $0.00 🗑 |
| # | #3 151200 units to, 99 | | Predlift Covid-19 Test Kits | 151200 | 0.00 | $0.00 🗑 |
| | Edit income account | | Tax | . . . . | · | -- |
| # | #4, 189000 units to, Not | | Predlift Covid-19 Test Kits | 189000 | 0.00 | $0.00 🗑 |
| | Edit income account | | Tax | . . . . | · | -- |

⊕ Add an item

| | | |
|---|---|---|
| | Subtotal | $2,131,200.00 |
| | ⊕ Add discount | |
| | Total | USD ($) - U.S. dollar | $2,131,300.00 |

Notes / Terms
Payment of $2,131,200.00. Total, a deposit payment of $279,240.20 was made on 02-01-2022 by MANFRED STERNBERG JR ATTORNEY AT LAW SRF, balance of $1,912,960.00 payment required, to ship. The balance will be made to the Attorneys General accounts, Sobelab & Zelenko PC, 1123 Broadway, Suite 1005, New York, NY 10012, ( 212-571-4280 ) Account # 000000122803, Routing # 021000021, Escrow account at JP CHASE account, Sobelab & Zelenko PC, Attention Deljna Zelenko

# EXHIBIT C

PAGE 1 OF 1

**BANK OF AMERICA**

P.O. Box 15284
Wilmington, DE 19850

BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY          PA6-580-04-05
SCRANTON, PA          18507

MANFRED STERNBERG JR
ATTORNEY AT LAW/IOLTA ACCOUNT
1110 GUINEA DR
HOUSTON TX 77055-7508

DATE: 02/04/22
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: XXXXXXXX2143

THE FOLLOWING WIRE WAS DEBITED TODAY:                    USD AMOUNT $1,911,960.00

TRANSACTION REF:       2022020400435016              SERVICE REF: 015718
RELATED REF:           2202041615000000              IMAD: 20220204B6B7HU2R015718
ORIGINATOR:            MANFRED STERNBERG JR ATTORNEY AT LA  ID: XXXXXXXX2143
INSTRUCTING BANK:      BANK OF AMERICA NA - MMM        ID: MMML
BENEFICIARY:           SOKOLSKI & ZAKARIA IOLA ACCT    ID: 035085442867
BENEFICIARY'S BANK:    JPMORGAN CHASE BANK, N.A.       ID: 021000021

PAYMENT DETAIL:        Attn Dafna Zekaria RE Charlton Holdin Trust Asolar Invl0054 /ACC/,
                       PHN/Sokolski & Zakaria IOLA Acct

# EXHIBIT D

**Subject:** Re: Inv #10054, PDF,G

**Date:** Wednesday, February 2, 2022 at 12:51:08 PM Central Standard Time

**From:** Gary Weiss

**To:** sam gross, Manfred

**Attachments:** IMG_8604.PNG, IMG_8605.PNG, NJ, NY, PA Manifest.jpg, California Manifest.jpg





Hi Sam, all arrangements have been made for shipping, usually shipment will go out after Manifest within 48-72 hours, due to storm coming on Friday in our region, will go out Monday, looking forward to complete this shipment.
Thanks, Gary

On Wed, Jan 26, 2022 at 1:00 PM Gary Weiss <wgary4109@gmail.com> wrote:
Hi Sam & Mr. Manfred Sternberg,
Each Shipment will be sent with insurance. The Down payment is Refundable for any reason till shipment is Packed on the Truck, Usually shipments go out within 2-3 working days. Draft Shipping manifesto will be done in 24 hours. The shipping Company will confirm loading to truck, at which time I will ask you to pay the Balance, all the Kits are ready to be Packed & Shipped to the recipients ( 5 ) and addresses you provided.
Thanks
Gary Weiss, ASOLAR, 908546-2649

On Wed, Jan 26, 2022 at 12:36 PM sam gross <charltonholdinggroupllc@aol.com> wrote:
Dear Mr Weiss.

Thank you for the proforma invoice.

I am adding to this chat , Mr Manfred Sternberg ESQ,

Who is the attorny working with me and our company in diligently delivering these Ihealth Test Kits to our clients.

I am attaching the delivery address per quantity so you may have it for your insurance and  logistics

The questions I have:
1- the cargo shall be insured for full value per our payment. Correct ?
2- the down payment is refundable should we call it off , In the unlikely event that you would be delayed on your time table ?
3- may we secure a draft shipping manifesto with in 24 hours ? We have very antsy clients. We do not wish to delay them, abs possibly risk a cancellation due to it.
4- once the draft shipping manifesto is issued ? How long till pick up ?
5- once your shipper confirms in your ware house ? That the goods are loaded to the truck , is when my attorny Mr Sternberg, will issue the funds to you.

If there are any other questions? Mr Sternberg may contact you.

Thank you again for this opportunity, looking forward for a successful transaction and many more to come.

Sam Gross
Charlton Holding Group LLc

Ps,
Should you have a question for Mr Sternberg yourself ? You may reach him at
713-824-9170

**TEST KIT DELIVERY ADDRESSES**

| PO# | Ship To Address | Quantity Shipping |
|---|---|---|
| A6373NAT | Nation Wide Medical Services | 15,120 |
| | 14141 Covello Street | |
| | Nbuilding 6C | |
| | Van Nuys, CA 91405 | |
| | Attn: Daniel Blatt | |

| | | |
|---|---|---|
| NYV0004CHAR | Nail & Beauty LLC | 181,440 |
| | 100 Adams Blvd | |
| | Farmingdale, NY 11735 | |

| | | |
|---|---|---|
| A011822CHAR | VRC Medical Services | 7,560 |
| | 357 Elf Road | |
| | Sewaren, NJ 07077 | |

| | | |
|---|---|---|
| CHG-ESS-3101-ABN | 99 Aldan Avenue | 151,200 |
| | Suite 5 | |
| | General Mills, PA 19342 | |

| | | |
|---|---|---|
| 30318 | Yuba County Schools | 3,000 |
| | 5730 Packard Avenue | |
| | Suite 300 | |
| | Marysville, CA 95901 | |

| | | |
|---|---|---|
| 30321 | El Monte Unified School District Warehouse | 7,000 |
| | 1003 Durfee Avenue | |
| | South El Monte, CA 91733 | |

Total

365,320



# INVOICE

**ASOLAR , LLC**

437 1st Avenue
Elizabeth, New Jersey 07206
United States

Phone: 9085462649
Mobile: Email, WGARY4109@GMAIL.COM

Bill to
Charlton Holding Group, LLC. 78 Buckminster Road - Rockville
Center New York 11570 USA

Sam Gross

516-2325933
samrosinc@icloud.com

| | | | |
|---|---|---|---|
| **Invoice Number:** | 4 | | |
| **P.O./S.O. Number:** | 10054 | | |
| **Invoice Date:** | January 26, 2022 | | |
| **Payment Due:** | January 28, 2022 | | |
| **Amount Due (USD):** | $2,192,400.00 | | |

| Items | Quantity | Price | Amount |
|---|---|---|---|
| Ihealth Covid Test kits #1 | 15200 | $6.00 | $91,200.00 |
| Ihealth Covid Test kits #2 | 7000 | $6.00 | $42,000.00 |
| Ihealth Covid Test kits #3 | 3000 | $6.00 | $18,000.00 |
| Ihealth Covid Test kits #4 | 151200 | $6.00 | $907,200.00 |
| Ihealth Covid Test kits #5 | 189000 | $6.00 | $1,134,000.00 |
| | | **Total:** | **$2,192,400.00** |
| | | **Amount Due (USD):** | **$2,192,400.00** |

**Notes / Terms**

This is Pro forma Invoice for your consideration, upon approval and submission, 10% ( $219,240.00 ) down payment, to arrange for Logistics Fee, Insurance Fee, Commitment Fee & Booking Fee, balance of $1,973,160.00 at pick up by Shipping Company, CARLOS PATO SHIPPING, Tel: 973-465-7575, Newark, NJ 07105. Bank Wire info, Wells Fargo Bank, 201 N Wood Ave, Linden, NJ 07036, Routing # 121000248, Account # 3166375570, Swift # WFBIUS63XXX, Please provide Address for each order.

[Sent from the all new AOL app for iOS](#)

On Wednesday, January 26, 2022, 12:10, Gary Weiss <[wgary4109@gmail.com](#)> wrote:

Pro Forma Invoice Enclosed

Sent from the all new AOL app for iOS

On Wednesday, January 26, 2022, 12:10, Gary Weiss <wgary4109@gmail.com> wrote:

Pro Forma Invoice Enclosed

# EXHIBIT E

CHARLTON HOLDING GROUP, LLC

# **BILL OF SALE**

### **LOT #1** *(ref: #18315)*

*CHARLTON HOLDINGS GROUP, LLC (the "Seller") does hereby sell, assign and transfer to the "Buyer"* Safety House  99 Aldan Avenue, Suite 5 Glen Mills, PA 19342  *the item(s) described as follows:*

> **151,200 boxes** of 2 count iHealth COVID 19 home test kits  @ $13.00 PER BOX
> INCLUSIVE.

*for the TOTAL AMOUNT OF $1,965,600.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of February*  ___08___ *, 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

DocuSigned by:

32F572D662204E6...

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933

# EXHIBIT F

RE:   2022-01819 – Dan Scully - Manfred Sternberg, Jr.; Complaint to the
Office of the Chief Disciplinary Counsel State Bar of Texas

## DECLARATION OF SAM GROSS
### Regarding Sale And Purchase Agreement ("SPA")

### Between Charlton Holding Group, LLC As Seller

### And

### Safety House As Buyer

I, SAM GROSS, declare:

I am of sound mind, over the age of 21, capable of making this declaration, and I am personally
acquainted with and have personal knowledge of all facts herein stated.  I am the President of
Charlton Holding Group, LLC ("Charlton").  Charlton retained the law firm of Manfred Sternberg
& Associates, PC to represent us as a seller of Personal Protective Equipment ("PPE").

I confirm and agree with all facts stated in, and the authenticity of the Exhibits A-E attached to
Manfred Sternberg's letter to the Office of the Chief Disciplinary Counsel State Bar of Texas dated
April 24,2022, in reference to the subject Complaint.

It was based on my understanding and good faith belief that my friend and business associate Gary
Weiss, the owner of ASOLAR LLC, owned over 300,000 iHealth Covid Test Kits before Charlton
solicited purchasers of such product.  Gary Weiss and I have a prior 20 plus year trusted
professional working relationship with each other in the diamond industry in New York City.
Gary and I have transacted millions of dollars in product sales with each other over the last  20
years.

After I personally saw and inspected the boxes of product with Mr. Weiss,  Charlton bought such
test kits from ASOLAR for resale.  The product was fully paid for under ASOLAR Invoice 10054,
Exhibit B and the money was wired to Gary Weiss' attorney by my attorney Manfred Sternberg
as I directed.     Through no fault of Charlton, and due to an unforeseen personnel and logistics
problem caused solely by ASOLAR, ASOLAR was unable to deliver the product to Charlton and
its customers as it repeatedly represented to and agreed with Charlton.

I honestly believed  trucks with product were enroute to  deliver product as Gary Weiss specifically
promised several times to me in person, by telephone, text and email, often along  with my lawyer
Manfred Sternberg.  I was surprised when delivery was in fact not made when and where, as
represented to me by Gary Weiss and his team.

Charlton still intends to fulfill the contract with Safety House in a commercially reasonable manner as it does with our other customers. However, now that Safety House has refused to accept the product, Buyer is in default of the SPA and Charlton intends to submit the matter to a civil court in Texas to determine next steps to resolve the issues that remain between Buyer and Seller per the SPA. Importantly, the SPA between the Charlton and Safety House contains no terms or specific deadlines that were not complied with by Charlton.

Our attorney, Manfred Sternberg followed the SPA in all respects and followed our specific instructions at all times I believe the threat and the filing of this grievance against Manfred Sternberg is being done by the Buyer to create leverage against Charlton to refund the purchase price of the Product Charlton sold and that Safety House purchased, but who now declines to accept delivery.

There was no malfeasance by Manfred Sternberg. This transaction with Safety House was a routine commercial transaction, that to date has failed to be completed, through no fault of Charlton or Manfred Sternberg.

Charlton stands behind the validity of this transaction and acknowledges that it bears the responsibility for this SPA, per its terms as Seller.

DECLARANT

SAM GROSS

## JURAT

My name is SAM GROSS, my date of birth is January 25, 1974, and my address is

78 Buckminster Road - Rockville Center, New York 11570. I declare under penalty of perjury

that every statement in the foregoing Declaration is within my personal knowledge and is true and

correct: Executed in Harris County, State of Texas on the 24th day of April, 2022.

DECLARANT

SAM GROSS

**CHARLTON HOLDING GROUP, LLC**

EXHIBIT _7_
WIT: _M. Sternberg_
DATE: _2-7-24_
Joanne Rose, RPR, RMR

## SALE AND PURCHASE AGREEMENT

August 2, 2021

THIS AGREEMENT IS FOR THE SALE AND PURCHASE OF the product identified on the Purchase Order attached hereto and marked as Exhibit A attached hereto (the "Goods"). This Sale and Purchase Agreement is referred to herein as (this "Agreement").

**Party A:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Party B:** ROI Global Partners LLC, 712 Hacienda Drive Suite 5 Tempe, AZ 85281 (the "Buyer") (each hereafter as "Party" and together as the "Parties")

For good and valuable consideration, the Parties agree:

1. Seller shall provide Buyer the Goods listed in Exhibit A for the Purchase Price, provided that Buyer complies with the conditions of this Agreement.

2. Buyer and Seller exchange information.

3. Seller agrees to sell to Buyer 24,000,000 boxes of 50 count Everwin High Performance Procedure 3ply Level 3 masks shall be provided to the Buyer by the Seller for each lot of boxes available for payment pickup as they are ready in the warehouse to be picked up. There may be a number of warehouses where the product is physically located

4. The Buyer agrees to pay the Seller @ $1.05(USD) per box. Payment upon invoice as the product lots are ready for immediate pickup, total cost **$25,200,000.00**.

5. The product lots may be located in more than one (1) location or warehouse. After inspecting each warehouse and accepting the Goods in that warehouse, Buyer agrees to authorize a wire be made to Seller through the Escrow Account identified in Exhibit B for the actual number of boxes of masks contained in that warehouse to be purchased at the price indicated herein. Upon full inspection, 100% of Funds shall be Wired to Seller to Escrow Account identified in Exhibit B. Title transfer shall happen contemporaneously with funds being released.

6. As per the invoice below (EXHIBIT C), Seller agrees to sell **24,000,000 boxes** of 50 count Everwin High Performance Procedure 3ply Level 3 masks. The Buyer shall transfer the above-mentioned funds to the Seller's Bank Accounts listed inExhibit B as per each invoice.

7. Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D)shall be provided, and the Buyer can begin the product pickup from the Seller's warehouse.

8. Seller agrees to pay commissions, if any, included with rolls and extensions for the



**CHARLTON HOLDING GROUP, LLC**

duration of this Agreement as per separate written agreement.

9.  The Buyer agrees to provide transportation to pick up the Goods from the Seller's warehouse attheir own cost.

10. Risk of loss shall transfer to Buyer at the point it is loaded on the Buyer's transportation vehicles. Once a product is loaded on the trucks the product liability falls on the Buyer and theSellers are released of all loss guarantees.

11. The Buyer shall have 10 days to pick up the product in total, after which the Buyer shall start to incur storage fees at the rate of $15.00 per pallet per week.

12. The Goods shall be sold with the manufacturer's warranty only. Seller makes no warranty of any kind, express or implied, and any warranty by Seller is expressly disclaimed.

13. Neither Buyer nor Seller shall be liable to the other for any consequential damages, lost profits, cover costs, or punitive or exemplary damages arising out of or related to this Agreement; however, if Buyer fails to pay after inspection and the goods are as described, Seller will be entitled to liquidated damages of $25,000 from Buyer.

14. Seller may terminate this Agreement if Seller determines, in its sole discretion, that Buyer does not have the funds to purchase the Goods, or the Goods become unavailable.

15. This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.

16. Buyer warrants and represents this transaction is in full compliance with all applicable laws and regulations, including but not limited to Executive Order No. 13224, as amended, the Patriot Act (Public Law 107 56), and any other law relating to the prevention and detection of terrorism and money laundering

17. Buyer agrees to indemnify, defend, and hold harmless the Seller, its agents, servants, employees, contractors, and affiliates (the "Indemnified Parties"), from and against alldamages, losses, costs, and expenses (including reasonable attorneys' fees) which they mayincur by reason of any breach of the representations and warranties made by Buyer in this Agreement, or any false or misleading representation or warranty in this Agreement or other document provided by Buyer to Seller.

18. Seller and Buyer are independent contracting Parties and nothing in this Agreement shall make either Party the agent, employee, or legal representative of the other.

19. The terms of this Agreement are confidential and may only be disclosed as required by law or to complete the transaction.

20. This constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties. Neither Party is relying upon any representation not contained in this Agreement.

**CHARLTON HOLDING GROUP, LLC**

*We, the undersigned, with full legal and corporate responsibility accept the agreement this date:*

<u>Signing Page</u>

Agreed and Signed By:

For and on behalf of Party A,
Charlton Holdings Group, LLC

_____

Authorized Signatory

Name: Mr. Sam Gross

Position: Managing Partner

Date:

For and on behalf of Party B

_____

Authorized Signatory

Name:  Jose Castillo
President
**ROI Global Partners LLC**
712 Hacienda Drive
Tempe, AZ 85281

Date: August 2, 2021

**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT "A"- ICPO



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT "B" - ESCROW ACCOUNT
# Manfred Sternberg Jr. Attorney at Law IOLTA-Trust Account Wire Instructions

## Bank of America

Bank of America; Phone # 888.287.4637
### ABA #026009593

## ACCOUNT NAME:
Manfred Sternberg Jr. Attorney at Law
IOLTA - Trust Account
### ACCT # 0008 4000 2143

Bank of America's SWIFT code **BOFAUS3N** should be used for incoming wires in U.S. dollars.

Bank of America's SWIFT code **BOFAUS6S** should be used for incoming wires in foreign currency.
If you do not know or are unsure of the type of currency being received please use **BOFAUS3N**

Someone sending an incoming international wire to you may also ask for Bank of America's address. The address to provide is as follows:
**BOFAUS3N** (US dollars or unknown currency)
    Bank of America, NA
    222 Broadway
    New York, New York 10038
**BOFAUS6S** (foreign currency)
    Bank of America, NA
    555 California St
    San Francisco, CA 94104
Manfred Sternberg
Attorney at Law
1700 Post Oak Blvd., 2 Blvd. Place, Suite 600
Houston, TX 77056
TEL: (713) 622-4300
FAX: (713) 622-9899
manfred@msternberg.com



**CHARLTON HOLDING GROUP, LLC**

# EXHIBIT C
# INVOICE

**CHARLTON HOLDING GROUP, LLC**

Charlton Holdings Group, LLC,
78 Buckminster Road - Rockville Center
New York 11570, USA

INVOICE _____ DATE: August 2, 2021

TO:  Jose Castillo, President
**ROI Global Partners, LLC**
712 S Hacienda Drive Suite 5
Tempe, AZ 85281

*Ship To:*

**FOB LA upon Inspection and Payment**

**INSTRUCTIONS**: BOXES OF MASKS PREPARED FOR INSPECTION ON THE GROUND IN
Houston and Alabama. Buyer may deposit funds at any time to secure the lot, but funds are only
dueand payable upon product acceptance. All sales are final.

| SALESPERSON | P.O. NUMBER | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| SAM GROSS | ROI20210802-1 | | PICK UP | Houston & Alabama | Due on receipt |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 24,000,000 | **Everwin High Performance Procedure 3ply Level 3** | $1.05 | $25,200,000.00 |
| | | | |
| | | | |
| | | | |

NO SALES TAX (RESALE)

## TOTAL DUE:  $25,200,000.00

Bank wire or deposit:
**ACCOUNT NAME:**
Manfred Sternberg Jr. Attorney at Law
IOLTA - Trust Account



**CHARLTON HOLDING GROUP, LLC**

Bank of America; Phone # 888.287.4637
**ABA #026009593**
**ACCT # 0008 4000 2143**

# EXHIBIT D –
# BILL OF SALE

### LOT #1 *(ref: #PO/CHG/2021/0802)*

*CHARLTON HOLDINGS GROUP, LLC (the "Seller") does hereby sell, assign and transfer to the "Buyer" ROI Global Partners LLC 712 S Hacienda Drive, Suite 5 Tempe, AZ, 85281 the item(s) described as follows:*

24,000,000 boxes of 50 count Everwin High Performance Procedure 3ply
Level 3 @ $1.05 PER BOX INCLUSIVE.

*for the TOTAL AMOUNT OF $25,200,000.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of August___, 2021*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933



**Subject:** This is from Manfred
**From:** monipair <monipair@aol.com>
**Date:** 8/21/2023, 6:30 PM
**To:** garylightman@lightmanlaw.com

Manfred blacked out the name Gary Weiss ?
Playing stupid with his question about the deposit

Sent from Samsung Galaxy smartphone.

— Attachments:—

20230821_182748.jpg                                   3.7 MB

EXHIBIT  8A
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR



Gmail - Inv #10054, PDF.G

**Available Movers & Storage**
804 890 E. 133rd St.
Manhattan, NY 10020
availablebros@gmail.com

US DOT #1303278 US MC 6510089 NYDOT #T-38718

Chat online

9085442840
mmmover@aol.com
1684carlita@gmail.com

From: Elizabeth, NJ 07206
To: Farmingdale, NY 11735

Job Date 02/07/22

| Pickup | 02/07/22 6:00AM-9:00AM | 2 Trucks/3 Guys Each Flat Rate | |
| Delivery | 02/07/22 | Truck NJ To Farmingdale | $1800.00 |
| Estimated Size | 2300.00 cf | Truck In NJ/Pa | $2900.00 |
| Liability & Protection | Released Value | | |
| Job Distance | 106.20 mi | Subtotal | $4,000.00 |

| Sales Manager | Gerard | Deposit $500 | Make a Payment |
| Phone | 7182028900 | | |
| Fax | 7152027797 | | |
| Email | gerard@availablemovers.com | Remaining Amount | $4,000.00 |

**Inventory**

| Box (4.5 Cu. Ft.) | 476 | Box (4.5 Cu. Ft.) | |

**Operation Route**

| 02/07/22 6:00AM-9:00AM | Elizabeth, NJ 07206 Ground | | | Pickup Primary Origin | |
| 02/07/22 | Morris Township, NJ 07961 Ground | 8,900 2,180 | Delivery (12 Boxes) Drop Off | 2,560 COVID-19 TEST KITS |
| 02/07/22 | Glen Mills, PA 19342 Ground | 27,980 10,900 | Delivery (17 Boxes) Drop Off | 151,800 COVID-19 TEST KITS |
| 02/07/22 | Farmingdale, NY 11735 Ground | 197,920 | Delivery (167 Boxes) Drop Off | 381,440 COVID-19 TEST HITS |

[Quoted text hidden]
[Quoted text hidden]

FROM MANFRED
1:30 PM

PAGES

WEISS 000296

**Available Movers & Storage**
656 656 E 133rd St,
Manhattan, NY 10020
avamoving@gmail.com

US DOT #1323278 US MC #510368 NYDOT #T-36716

Chat online

02/02/22 11:14AM

| Gary Weiss | Local Move Estimate | Estimate # 714194 |
|---|---|---|

9085462649
monipair@aol.com

From **Staten Island, NJ 07206**
To **Farmingdale, NY 11735**

Job Date **02/07/22**

| | | | |
|---|---|---|---|
| Pickup | 02/07/22 8:00AM-9:00AM | 2 Trucks 3 Guys Each/Flat Rate | |
| Delivery | 02/07/22 | Truck NJ To Farmingdale | $1500.00 |
| Estimated Size | 2000.00 cf | Truck to NJ/Pa | $2500.00 |
| Liability & Protection | Released Value | | |
| | | **Subtotal** | **$4,000.00** |
| Job Distance | 108.20 mi | | |

| **Total Estimate** | **$4,000.00** |
|---|---|
| Deposit $500 | Make a Payment |

| | | |
|---|---|---|
| Sales Manager | Gerard | |
| Phone | 7182926500 | |
| Fax | 7182927797 | |
| Email | gerard@availablemovers.com | Remaining Amount $4,000.00 |

### Inventory

| Item | Qty | Item | Qty | Item | Qty |
|---|---|---|---|---|---|
| Box (4.5 Cu. Ft.) | 410 | Box (4.5 Cu. Ft.) | | | |

| Date | Address | | Operation | Note |
|---|---|---|---|---|
| 02/07/22 8:00AM-9:00AM | Staten Island, NJ 07206 Ground | | Pickup Primary Origin | |
| 02/07/22 | Monroe Township, NJ 08831 Ground | 8 × 900 2 × 180 | Delivery (10 Boxes) | 7,560 COVID-19 TEST KITS |
| 02/07/22 | Glen Mills, PA 19342 Ground | 167 × 900 10 × 90 | Delivery (177 Boxes) | 151,200 COVID-19 TEST KITS |
| 02/07/22 | Farmingdale, NY 11735 Ground | 197 × 920 | Delivery (197 Boxes) | 181,440 COVID-19 TEST KITS |



EXHIBIT 83
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

**TEXT FROM DAN SCULLY TO SAM GROSS sent 2/15/22 @ 2:20 pm:**

Sam just spoke to my attorney and he is insisting that u or Manfred call him right away. I lost over a million dollars in business because of you and Manfred.

My attorney is going to file lawsuit today CRIMINAL lawsuit against u personally

Gary Lightman: 215-760-3000

**SAM GROSS TEXT RESPONSE TO DAN SCULLY sent 2/15/22 @ 2:25 pm (2 texts sent back to back):**

The funds was sent to Manfred. Not me.

Your lawyer can file whatever he likes.

But I am not holding the funds. Manfred is.

So this is a funny statement.

You wired money to manfred per the contract. If you wish to cancel the contract ? You need to have your lawyer email Manfred stating he represents you. And he wants the contract void and funds back.

And then Manfred can refund him.

———————————————————————————————————

Making such statements?

This is extortion for something that I didn't even received.

If you want to cancel the transaction ?  And you want a refund ? All you have to do is have your attorny contact manfred with a formal request so Manfred can issue him a refund.

Manfred is not calling your lawyer. Neither am I.

If you wish to cancel.

Like I stated before.

Have your attorny contact manfred via text or email.

And he will gladly attend to it.

Manfred +1 (713) 824-9170

Manfred Email

manfred@msternberg.com

And

manfred@manfredlaw.com



EXHIBIT _____ 9
WIT: _M. Sternberg_
DATE: _2-7-24_
Joanne Rose, RPR, RMR

**From:** **Manfred** Manfred@msternberg.com  📎 🏳
**Subject:** Re: TheSafetyHouse.com v. Manfred Sternberg & Associates, and Manfred Sternberg, Esquire, and Sam Gross, and Charlton Holding Group, LLC -- Docket No. 2022-[NOT YET FILED]
**Date:** February 15, 2022 at 7:08 PM
**To:** Gary Lightman garylightman@lightmanlaw.com
**Cc:** G. Manochi gmanochi@lightmanlaw.com, Wl. Stamps wlstamps@lightmanlaw.com, K. DiTomaso kditomaso@lightmanlaw.com, GARY LIGHTMAN ltag8r@me.com

Mr. Gary Lightman,   I am not sure what you heard, but I certainly did not confirm that our law firm is still holding the $1,965,600.00 that TSH wired into our attorney escrow.   The funds were disbursed to the Seller in accordance with the SPA and per the instruction of our client.   I will note, your interpretation of the SPA and your explanation below is not consistent with the terms of the SPA.  Maybe you should read it?

Paragraph 6 of the SPA says:  Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D)shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer.  Title transfer shall happen contemporaneously with funds being released to Seller. Your client should have an executed Bill of Sale and funds have been transferred for the purchase when the goods were loaded onto the common carrier.

You will also note that Paragraph 13 says:  This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.   Proceed accordingly.

I am told the product will be arriving tomorrow at the location provided by your client.   Let me know when your client is in possession of his product.


*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard
2 BLVD Place, Suite 600
Houston, Texas 77056

☎Ph: 713-622-4300
📠Fax: 713-622-9899
✉ Email: manfred@manfredlaw.com


**BOARD CERTIFIED**
Texas Board of Legal Specialization


EXHIBIT  _10_
WIT: _M. Sternberg_
DATE: _2-7-24_
Joanne Rose, RPR, RMR

 

**From:** Gary Lightman <garylightman@lightmanlaw.com>
**Date:** Tuesday, February 15, 2022 at 5:35 PM
**To:** Manfred Sternberg <Manfred@msternberg.com>
**Cc:** "G. Manochi" <gmanochi@lightmanlaw.com>, "Wl. Stamps"
<wlstamps@lightmanlaw.com>, "K. DiTomaso" <kditomaso@lightmanlaw.com>, GARY
LIGHTMAN <ltag8r@me.com>
**Subject:** TheSafetyHouse.com v. Manfred Sternberg & Associates, and Manfred Sternberg,
Esquire, and Sam Gross, and Charlton Holding Group, LLC -- Docket No. 2022-[NOT YET
FILED]

Mr. Manfred Sternberg,

Our law firm has been retained as litigation counsel for TheSafetyHouse.com ("TSH").  This email
will confirm your phone call to me, that just ended.  Thank you for your courtesies in timely
returning the voice mail message that we left when we called your work number (713-622-4300)
earlier today (and please do not delete that phone message, unless and until this dispute is fully
resolved to our client's satisfaction).

You represented to us that the 151,200 boxes of 2 count iHealth COVID 19 home test kits that
TSH purchased from your client (Sam Gross and Charlton Holding Group, LLC) already were being
shipped and in transit to TSH, and that TSH should expect delivery of the goods tomorrow.  You
also confirmed that your law firm still is holding the $1,965,600.00 that TSH wired into your
attorney escrow account, that is supposed to be held by you and not released from escrow until
TSH has received delivery of the goods.

You should use "reply all" immediately, if this email does not accurately memorialize our phone
conversation.  Otherwise, please use "reply all" and provide us with the shipping information that
we requested from you when we just spoke (i.e., the name and contact information of the carrier
that is delivering the goods).

We look forward to your timely response.

Very truly yours,
Gary Lightman, Esquire
LIGHTMAN & MANOCHI
Attorneys for TSH

cc: client

--

Gary P. Lightman, Esquire
e-mail: garylightman@lightmanlaw.com
or ltag8r@me.com
cell 215-760-3000

LIGHTMAN & MANOCHI
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
Phone: (215) 545-3000 (ext. 107); fax
(215) 545-3001

New Jersey:
Phone: (856) 795-9669 (ext. 107); fax
(856) 795-9339

**********************************
**********************************
**

ATTENTION: This e-mail and any
attachments to it may contain
PRIVILEGED AND CONFIDENTIAL
INFORMATION intended only for the use
of the addressee. If you are not the
intended recipient or an agent or employee
responsible for delivering this e-mail to
the intended recipient, you are hereby
notified that any dissemination or copying
of this document or the information
contained therein is strictly prohibited. If
you have received this e-mail in error,
please notify us immediately by telephone
at (215) 545-3000 (or in NJ: 856-795-
9669) and delete this e-mail from your
computer.

DISCLAIMER - The transmission or
receipt of this e-mail and any attachments,
in and of itself, does not, and is not
intended to, create an attorney-client
relationship with Lightman & Manochi or
any of its attorneys. The sending of e-mail
to Lightman & Manochi or one of its
attorneys does not create an attorney-
client relationship. In the event and to the
extent that an addressee named herein is
not an existing client of Lightman &
Manochi, please note that the contents of

this e-mail and any attachments are not
legal advice and should not be used as
such.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*

**From:** Gary Lightman <garylightman@lightmanlaw.com>
**Sent:** Tuesday, February 15, 2022 10:34 PM
**To:** Manfred <Manfred@msternberg.com>
**Cc:** G. Manochi <gmanochi@lightmanlaw.com>; Wl. Stamps <wlstamps@lightmanlaw.com>; K. DiTomaso <kditomaso@lightmanlaw.com>; GARY LIGHTMAN <ltag8r@me.com>
**Subject:** Re: TheSafetyHouse.com v. Manfred Sternberg & Associates, and Manfred Sternberg, Esquire, and Sam Gross, and Charlton Holding Group, LLC -- Docket No. 2022-[NOT YET FILED]

Mr. Sternberg,

Your email below is NOT what you represented to me in our phone call of earlier today.

You were not authorized to release any funds from your attorney escrow account until "Seller deliver[ed] the goods to a common carrier"*with the appropriate *signed* Seller's Bill of Sale transferring title of the goods to Buyer.

This is the second (and last) time we will request that you provide us IMMEDIATELY with the identity and contact information of the "common carrier" that you represented to me in our phone call (and that did not deny in your below email) that has the goods that you represented to me already were being shipped to TSH.

We also request that you email to us a copy of the *signed* Bill of Sale, as well as the Bill of Lading for the common carrier shipment.

If we do not receive this information and documentation from you by no later than tomorrow, then we have been instructed (1) to immediately file a lawsuit, and (2) to file a disciplinary complaint against you for your unauthorized transfer of escrow funds.

You should write us back first thing in the am, if you have any questions or problems. Otherwise, we look forward to timely receiving from you the requested information and documentation.

Please be guided accordingly.

thx
Gary Lightman
cell 215-760-3000

1



EXHIBIT ___//___
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

On Feb 15, 2022, at 7:08 PM, Manfred <Manfred@msternberg.com> wrote:

Mr. Gary Lightman,  I am not sure what you heard, but I certainly did not confirm that our law firm is still holding the $1,965,600.00 that TSH wired into our attorney escrow.  The funds were disbursed to the Seller in accordance with the SPA and per the instruction of our client.   I will note, your interpretation of the SPA and your explanation below is not consistent with the terms of the SPA. Maybe you should read it?

Paragraph 6 of the SPA
says:  Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D)s hall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer.  Title transfer shall happen contemporaneously with funds being released to Seller.  Your client should have an executed Bill of Sale and funds have been transferred for the purchase when the goods were loaded onto the common carrier.

You will also note that Paragraph 13 says:   This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue
which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.   Proceed accordingly.

I am told the product will be arriving tomorrow at the location provided by your client.   Let me know when your client is in possession of his product.

*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard[sep]
2 BLVD Place, Suite 600[sep]
Houston, Texas 77056

☎Ph: 713-622-4300
📠Fax: 713-622-9899
📧 Email: manfred@manfredlaw.com

<image001.png>
<image002.png><image003.png>

**From:** Gary Lightman <garylightman@lightmanlaw.com>
**Date:** Tuesday, February 15, 2022 at 5:35 PM
**To:** Manfred Sternberg <Manfred@msternberg.com>
**Cc:** "G. Manochi" <gmanochi@lightmanlaw.com>, "Wl. Stamps"

<wlstamps@lightmanlaw.com>, "K. DiTomaso" <kditomaso@lightmanlaw.com>, GARY
LIGHTMAN <ltag8r@me.com>
**Subject:** TheSafetyHouse.com v. Manfred Sternberg & Associates, and Manfred Sternberg,
Esquire, and Sam Gross, and Charlton Holding Group, LLC -- Docket No. 2022-[NOT YET FILED]

Mr. Manfred Sternberg,

Our law firm has been retained as litigation counsel for TheSafetyHouse.com ("TSH"). This email will
confirm your phone call to me, that just ended. Thank you for your courtesies in timely returning the
voice mail message that we left when we called your work number (713-622-4300) earlier today (and
please do not delete that phone message, unless and until this dispute is fully resolved to our client's
satisfaction).

You represented to us that the 151,200 boxes of 2 count iHealth COVID 19 home test kits that TSH
purchased from your client (Sam Gross and Charlton Holding Group, LLC) already were being shipped
and in transit to TSH, and that TSH should expect delivery of the goods tomorrow. You also confirmed
that your law firm still is holding the $1,965,600.00 that TSH wired into your attorney escrow account,
that is supposed to be held by you and not released from escrow until TSH has received delivery of the
goods.

You should use "reply all" immediately, if this email does not accurately memorialize our phone
conversation. Otherwise, please use "reply all" and provide us with the shipping information that we
requested from you when we just spoke (i.e., the name and contact information of the carrier that is
delivering the goods).

We look forward to your timely response.

Very truly yours,
Gary Lightman, Esquire
LIGHTMAN & MANOCHI
Attorneys for TSH

cc: client

--
Gary P. Lightman, Esquire
e-mail:
garylightman@lightmanlaw.com
or ltag8r@me.com
cell 215-760-3000

LIGHTMAN & MANOCHI
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
Phone: (215) 545-3000 (ext. 107);
fax (215) 545-3001

New Jersey:
Phone: (856) 795-9669 (ext. 107);
fax (856) 795-9339

3

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*

ATTENTION: This e-mail and any attachments to it may contain PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the addressee. If you are not the intended recipient or an agent or employee responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this document or the information contained therein is strictly prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (215) 545-3000 (or in NJ: 856-795-9669) and delete this e-mail from your computer.

DISCLAIMER - The transmission or receipt of this e-mail and any attachments, in and of itself, does not, and is not intended to, create an attorney-client relationship with Lightman & Manochi or any of its attorneys. The sending of e-mail to Lightman & Manochi or one of its attorneys does not create an attorney-client relationship. In the event and to the extent that an addressee named herein is not an existing client of Lightman & Manochi, please note that the contents of this e-mail and any attachments are not legal advice and should not be used as such.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*



99 Aidan Avenue, Suite 5 • Glen Mills, PA 19342
610.344.0637 • www.thesafetyhouse.com

February 16, 2022

Sam Gross
Charlton Holding Group, LLC,
78 Buckminster Road - Rockville Center
New York 11570, USA

Re: Delivery of 151,200 Ihealth Antigen Kits

Sam Gross:

Yesterday your attorney Manfred Sternberg, told my attorney, Gary Lightman, that the goods for my purchase order #18315 has been shipped and should be received at my warehouse in Glen Mills, PA., today.

But as of today, February 16, 2020, I have not received a Bill of Laden (BOL) or any other shipping documents pertaining to the shipment. Please email me the BOL and any relevant shipping documents that identify the shipment and confirms the delivery of all goods that I ordered. **I NEED ALL SHIPPING DOCUMENTS TODAY.**

If that is not the case, please let me know **today**. I will need to make other arrangements of fulfilling this order for my customer. You were supposed to supply these goods 5 days from receipt of monies wired into your attorney's escrow account on January 21, 2022. Not only have you failed to do that you have avoided all attempts to communicate with you. I have made commitments to my clients on your promise to deliver the Ihealth Antigen Test kits in a timely fashion. Your failure to do so has jeopardized the commitments I have made.

I **MUST** hear back from you **TODAY.** I am copying your attorney and my attorney on this email. Please **REPLY ALL** when responding to this email and any other correspondence in the future. If you have questions or need to contact me, please direct all communications to my attorney, Gary Lightman. He can be reached at 215-760-3000.

Respectively yours,

Dan Scully
TheSafetyHouse.com

EXHIBIT  12
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

| From: | Dan Scully |
| To: | CharltonHoldingGroupLLC@aol.com |
| Cc: | Manfred; Cjcsvpllc; Gary Lightman; Wl. Stamps; K. DiTomaso; G. Manochi |
| Subject: | RE: Delivery of I Health Antigen Test Kits. |
| Date: | Wednesday, February 16, 2022 6:45:52 PM |

Sam/Manfred:

It's after 6:30 Pm and I still have not received the goods both of you promise I would get today. i think you guys are lying to me and have continued to lie to me.

Not to mention you both breached our contract. (And you never even sent me a fully signed contract)

I think you guys defrauded me.

Do to your inability to deliver the goods that I ordered and paid for, you leave me no alternative but to cover my contracts with my existing customers.

## I WANT MY 2 MILLION DOLLARS WIRED BACK TO ME IMMEDIATELY.

You also will be hearing from my attorneys. I intent to hold each of you fully responsible for all damages I have incurred for your fraudulent and wrongful conduct. I also think your actions are criminal and I intent to report your fraudulent activity to the US Attorneys office and to the District Attorney's office both in Houston and Austin Texas and in New York.

Manfred you also should be disbarred, not only did you wrongfully release my money from escrow , but you lied to me about afterwards.

I am sending a copy of this email to my attorney's and instructing them take all necessary legal action to enforce my rights.

Dan Scully
TheSafetyHouse.com

EXHIBIT 13
WIT: M Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

STERNBERG000003

**theSAFETYhouse.com**

99 Aldan Avenue, Suite 5 • Glen Mills, PA 19342
1-800-872-3684 • PH: 610-344-0637 • FAX: 1-610-436-4983
www.thesafetyhouse.com

# PURCHASE ORDER

**P.O. #** **18315**

| | |
|---|---|
| **Date** | 1/21/2022 |
| **Receive By** | 1/25/2022 |
| **Vendor Account #** | |
| **Memo** | |
| **Terms** | CIA (Cash in Advance) |
| **Ship Via** | |
| **FOB** | |
| **Freight In Status** | Freight Included |
| **Buyer** | Dan Scully |
| **Date Printed** | 01/21/2022 11:57:17 |

**Vendor**
(713) 824-9170
C/O: Manfred Sternberg ESQ
Charlton Holding Group LLC
78 Buckminster Road
Rockville Centre NY 11570
United States

**Ship To**
The Safetyhouse.com
99 Aldan Avenue
Suite 5
Glen Mills PA 19342
United States

| Item | FShip | Qty | Rec'd | Ck-In | U/M | Description | Rate | Amount |
|---|---|---|---|---|---|---|---|---|
| FS1001 | FS1001 | 151,200 | 0 | | Each | FS1001 - iHealth Covid-19 Antigen Rapid Test, 2 Tests per Kit | 13.00 | 1,965,600... |

**Total** $1,965,600.00

Authorized Signature

EXHIBIT 14
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

## Re: Please DocuSign: Gary Declaration.docx

**Manfred** <Manfred@msternberg.com>
Wed 4/6/2022 7:36 AM
To:Gary Weiss <wgary4109@gmail.com>
Bcc:sam gross <charltonholdinggroupllc@aol.com>

📎 1 attachments (23 KB)
Gary Declaration.docx;

If it is far from the truth, then that is because you have told me so many lies that I still do not know the truth. My patience for your story telling and bullshit excuses is over, this NEEDS TO BE DONE THIS WEEK, again like you promised me!!! YOU UNDERSTAND wwhat a promise is Gary?

Revise the attached so it is TRUTHFUL AND ACCURATE, all I have ever asked, and return it to me and the I will review and send it by docusign. DO IT TODAY Gary,my patience for your delay is over. GET THIS DONE, NOW!!! Or I will do it without your affidavit and then you WILL have a problem with me!!!!! The truck is less than 45 minutes away, more money, the truck has a broken axel, more money, the truck needs new screws, blah blah blah. And you have no remorse, you are unbelievable!!!!!!!!

*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard
2 BLVD Place, Suite 600
Houston, Texas 77056

☎Ph: 713-622-4300
📠Fax: 713-622-9899
✉Email: manfred@manfredlaw.com





**From:** Gary Weiss <wgary4109@gmail.com>
**Date:** Wednesday, April 6, 2022 at 5:42 AM
**To:** Manfred Sternberg <Manfred@msternberg.com>
**Subject:** Re: Please DocuSign: Gary Declaration.docx

Well, the declaration is far from the truth as I know it.
It will be better if I will answer it, which can done once I receive a letter from you the way I have told you over the phone, without any conditiones, hope to receive it this week, so we can work on the declaration for you, I also wish that our correspondence in this matter will stay confidential, anyhow I am very close to a point where I will seek professional counsel, that will happen if do not accomplish this task this week.
Sincerely
Gary

On Tue, Apr 5, 2022, 12:42 PM Manfred <Manfred@msternberg.com> wrote:

Hi Gary, What would you like me to do with this information? Can you sign the declaration I sent to you by Docusign? Thanks

*Manfred Sternberg*

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard
2 BLVD Place, Suite 600
Houston, Texas 77056

☎Ph: 713-622-4300
📠Fax: 713-622-9899
✉Email: manfred@manfredlaw.com

🖼cidimage001.png@01D7B484.037B8B70
🖼cidimage002.png@01D7B484.037B8B70🖼A close up of a sign Description automatically generated

**From:** Gary Weiss <wgary4109@gmail.com>
**Date:** Monday, April 4, 2022 at 10:49 PM
**To:** Manfred Sternberg <Manfred@msternberg.com>
**Subject:** Re: Please DocuSign: Gary Declaration.docx

Ok, I did pay for the merchandise, ( With Diamonds & Jewelry), they did switch the merchandise in that morning of the pick up of the boxes .., I found out when I picked up from the warehouse that the boxes containing each $10 value, so, I paid once, I did give collateral, so, I am paying the second time, I have nothing left for a third time..
I want to avoid a lawsuit which will cost $ once more.
That is what I have to accomplish.

EXHIBIT *15*
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

On Mon, Apr 4, 2022 at 1:42 PM Manfred <Manfred@msternberg.com> wrote:

Dear Gary,   You have asked that I make the following statement, which is mutually agreed.

As long as no one files a grievance or lawsuit against me, I do not have any grievances against you regarding the shipment of Covid-19 test kits by you, and I will not file any lawsuit against Gary Weiss and/or Asolardiamond LLC, concerning this transaction unless I am required by law to join you in any lawsuit against me, for claims of contribution or indemnity as a result of this transaction.

Does that clarify for you that I have no intent to sue you or your company, unless forced to in order to defend myself ?

**Manfred Sternberg**

**Manfred Sternberg & Assoc. PC**
**Attorneys at Law**
1700 Post Oak Boulevard
2 BLVD Place, Suite 600
Houston, Texas 77056

☎Ph: 713-622-4300
📠Fax: 713-622-9899
✉ Email: manfred@manfredlaw.com

cidimage001.png@01D7B484.037B8B70
cidimage002.png@01D7B484.037B8B70A close up of a sign Description automatically generated

**From:** Gary Weiss <wgary4109@gmail.com>
**Date:** Monday, April 4, 2022 at 6:58 AM
**To:** Manfred Sternberg <Manfred@msternberg.com>
**Subject:** Re: Please DocuSign: Gary Declaration.docx

Hi Manfred, as soon as I will get from you a declaration that you do not have any grievances regarding the shipment of Covid-19 test kits, and will not attempt any lawsuit against me or Asolardiamond LLC, nor any claim against me, I will be able to grant you the declaration that you want.
Thanks
Gary Weiss
P.S. you are better at Authoring that letter.

On Wed, Mar 30, 2022 at 9:35 PM Manfred Sternberg via DocuSign <dse_na2@docusign.net> wrote:



**REVIEW DOCUMENT**

 **Manfred Sternberg**
manfred@msternberg.com

Per my email today

Powered by **DocuSign**

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
0D44406598EA4696A4BE468149D2C8C32

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a profe
Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by Manfred Sternberg who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

RE: Gary Weiss questions     mailbox:///G:/STERNBERG%20GROSS/timeline/Mail%20Atta...

Case 2:22-cv-00688-JMY    Document 200-1    Filed 10/01/24    Page 312 of 412



─Attachments:─────────────────────────────────────────────────────────────

imagejpeg.jpg                                                               178 KB

EXHIBIT ___16___
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

**PAYMENTS INTO AND OUT OF STERNBERG ATTORNEY ESCROW ACCOUNT (IHEALTH COVID-19 TEST KITS**

| PURCHASER | date | # kits | wire in | | GW price to SG/CHG | | Balance kept MS/SGprofit |
|---|---|---|---|---|---|---|---|
| TSH | 1/21/22 | 151,200 | $1,965,600 | (@ $13/kit) | $907,200 | (@ $6/kit) | $1,058,400 |
| VRC | 1/19/22 | 189,000 | $2,268,000 | (@ $12/kit) | | | |
| | 1/20/22 | 15,120 | $181,440 | (@ $12/kit) | | | |
| sub-tot VRC | | 204,120 | $2,449,440 | | $1,224,720 | (@ $6/kit) | 1,224,720 |
| TOTAL | 3 dates | 355,320 | $4,415,040 | | $2,131,920 | | $2,283,120 |

PLUS:
GW diamonds and gemstones given to SG/MS $4,000,000

TOTAL PROFIT MADE BY MS AND SG    (TSH and VRC transactions only) $6,283,120

| MS TOTAL WIRES OUT: | | $2,571,200 | |
|---|---|---|---|
| GW  WIRE | 2/1/22 | | $219,240 |
| DZ WIRES: | 2/4/22 | | $1,911,960 |
| | 2/15/22 | | $250,000 |
| | 2/25/22` | | $190,000 |
| sub-tot DZ | | | $2,351,960 |

MS TOTAL WIRES OUT                 $2,571,200

MS BALANCE                 $1,842,840



EXHIBIT _17_
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

MS WIRES TO DZ                              $2,351,960

TOTAL PYMTS TO GW                                      $1,447,200
less: wire from MS directly                              $219,240
TOTAL WIRES DZ to GW                       $1,227,960

MONEY RETAINED BY DZ                       $1,124,000

EXHIBIT 17 A
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

**Bank of America**

## MSA IOLTA BofA: Account Activity Transaction Details

|  |  |
|---|---|
| **Post date:** | 01/19/2022 |
| **Amount:** | 2,268,000.00 |
| **Type:** | Credit |
| **Description:** | WIRE TYPE:WIRE IN DATE: 220119 TIME:1435 ET TRN:2022011900446774 SEQ: /000029 ORIG:VRC CONSULTING SERVICES/V ID:2414001699 SND BK:BCB COMMUNITY BANK ID:021213520 PMT DET:IHE ALTH TEST KITS 181, 440-7, 560 A011822CHAR-NYV0004 |
| **Merchant name:** | VRC CONSULTING SERVICES/V |
| **Merchant information:** | |
| **Transaction category:** | Income: Deposits |



EXHIBIT _18_
WIT: M Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR



☐ Mail
☐ Fax/ Email
☐ International
☐ Other Department:_____

Reference#:_____

## Wire Instruction Sheet

Amount $ 2,268,000.00

Fee    $

Purpose of Wire: A011822CHAR-NYV0004CHAR

**BENEFICIARY INFORMATION (Wire To):**

Credit:

| MANFRED STERNBER JR | | 000840002143 | |
|---|---|---|---|
| Customer Receiving Wire | | Receiving Customer's Account Number | |

1700 POST OAK BLVD 2 BLVD PLACE, SUITE 600

Receiving Customer's Street Address

| HOUSTON | TX | 77056 - | USA |
|---|---|---|---|
| City | State | Zip | Country |

Ihealth test kits-181,440-7,560

Reference Information/ Special Instructions

Receiving

Bank:

| BANK OF AMERICA | | 026009593 | |
|---|---|---|---|
| Receiving Customer's Bank Name | | Receiving Bank's ABA Number | |

222 BROADWAY

Receiving Bank's Street Address

| NEW YORK | NY | 10038 - | USA |
|---|---|---|---|
| City | State | Zip | Country |

Secondary

Bank:

| | | | |
|---|---|---|---|
| Intermediary Bank Name | | Intermediary Bank's ABA Number | |

Intermediary Bank's Street Address

| | | - | |
|---|---|---|---|
| City | State | Zip | Country |

In consideration of these premises, the undersigned hereby agrees that the Bayonne Community Bank, herein referred to as the bank, shall not be liable in any manner whatsoever for any miscarriage, mistake, delay, misfeasance on the part of any agent or method of transmittal selected by the Bank, and further released the Bank from any and all liability for any loss or damage caused or occasioned by any act or thing beyond the immediate direct control of the Bank.

The undersigned hereby acknowledges receipt of a copy of this authorization and certifies to the correctness of all things herein contained. Payment to cover this transaction as follows:

**ORIGINATOR INFORMATION (Wire From):**

Customer:

| VRC Consulting Services/ VRCMED | | ▮▮▮▮▮▮▮▮ | |
|---|---|---|---|
| Customer Sending Wire | | Sending Customer's Account Number | |

357 Elf Road

Sending Customer's Street Address

| Sewaren | NJ | 07077 - | USA |
|---|---|---|---|
| City | State | Zip | Country |

| Stephen Corba | | 01/19/2022 | |
|---|---|---|---|
| Customer's Signature | | Date | Customer Service Representative |

Loan Use

Only

| Signature of Employee Submitting Request | | Date | Signature of Employee Approving Request |
|---|---|---|---|

Wire Instructions Verified By:_____ Note: _____

Wire Initiator:_____Date:_____        Wire Approver:_____Date: _____

Control#: _____



- [ ] Wire-In
- [ ] Fax/ Email
- [ ] International
- [ ] Other Department_____

## Wire Instruction Sheet

Amount $ 181,440.00

Purpose of Wire: A6372NAT

Fee      $ _____

### BENEFICIARY INFORMATION (Wire To):

**Credit:**

MANFRED STERNBER JR

000840002143

<u>Customer Receiving Wire</u> — Receiving Customer's Account Number

1700 POST OAK BLVD 2 BLVD PLACE, SUITE 600

Receiving Customer's Street Address

| HOUSTON | TX | 77056 - | USA |
| City | State | Zip | Country |

Ihealth test kits-15,120

Reference Information/ Special Instructions

**Receiving**

BANK OF AMERICA

026009593

Receiving Customer's Bank Name — Receiving Bank's ABA Number

**Bank:**

222 BROADWAY

Receiving Bank's Street Address

| NEW YORK | NY | 10038 - | USA |
| City | State | Zip | Country |

**Secondary**

Intermediary Bank Name — Intermediary Bank's ABA Number

**Bank:**

Intermediary Bank's Street Address

| City | State | Zip - | Country |

In consideration of these premises, the undersigned hereby agrees that the Bayonne Community Bank, herein referred to as the bank, shall not be liable in any manner whatsoever for any miscarriage, mistake, delay, misfeasance on the part of any agent or method of transmittal selected by the Bank, and further released the Bank from any and all liability for any loss or damage caused or occasioned by any act or thing beyond the immediate direct control of the Bank.

The undersigned hereby acknowledges receipt of a copy of this authorization and certifies to the correctness of all things herein contained.  Payment to cover this transaction as follows:

### ORIGINATOR INFORMATION (Wire From):

**Customer:**

VRC Consulting Services/ VRCMED

Customer Sending Wire — Sending Customer's Account Number

357 Elf Road

Sending Customer's Street Address

| Sewaren | NJ | 07077 - | USA |
| City | State | Zip | Country |

*Stephen Corba*

01/20/2022

Customer's Signature | Date | Customer Service Representative

**Loan Use**

Signature of Employee Submitting Request | Date | Signature of Employee Approving Request

**Only**

Wire Instructions Verified By: _____ Note: _____

Wire Initiator: _____ Date: _____          Wire Approver: _____ Date: _____



**CHARLTON HOLDING GROUP, LLC**

# BILL OF SALE

### LOT #2 *(ref: #NYV0004CHAR & A011822CHAR)*

*CHARLTON HOLDINGS GROUP, LLC (the "Seller") does hereby sell, assign and transfer to the "Buyer" VRC Medical Services  357 Elf Road Sewaren, NJ 07077  the item(s) described as follows:*

**189,000 boxes** of 2 count iHealth COVID 19 home test kits @ $12.00 PER BOX INCLUSIVE.

*for the TOTAL AMOUNT OF $2,268,000.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of February*    08    *, 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

> DocuSigned by:
> 32F672D682204E6...

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933

25. The complete escrow records for Manfred Sternberg and his law firm, showing the receipt of plaintiff's $1.966 million, as well as each disbursement made from that escrow (date, amount, to whom made, and manner of payment (wire transfer, check, etc)), and any of that money that remains in escrow.

| Date | Amount | From | To |
|------|--------|------|-----|
| Jan. 21, 2022 | $1,965,600.00 | TSH Bank of America | Sternberg IOLTA |
| Feb. 1, 2022 | $219,240.00 | Sternberg IOLTA | Weiss Wells Fargo Bank |
| Feb. 4, 2022 | $1,911,960.00 | Sternberg IOLTA | Sokolski JP Morgan Chase |
| Feb. 15, 2022 | $250,000.00 | Sternberg IOLTA | Sokolski JP Morgan Chase |
| Feb. 25, 2022 | $190,000.00 | Sternberg IOLTA | Sokolski JP Morgan Chase |

**RESPONSE:** Objection. Answering Defendants incorporate the foregoing objections as if the same were forth herein. Moreover, Answering Defendants object to the extent that their "complete escrow records" include sensitive, confidential, privileged information pertaining to clients who are non-parties to these proceedings and have absolutely no relevance to the applicable claims and defenses. Answering Defendants have identified and supplied all pertinent transactions, including plaintiff's January 21, 2022 deposit, and the subsequent disbursements of those funds. The below table includes all relevant dollars coming in and those going out. See also Bank of America transaction details, identified as *Sternberg000318-000321*.

**GOLDBERG SEGALLA LLP**

BY:     */s/Seth  L.  Laver*
        SETH L. LAVER, ESQ.
        Attorneys for Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates
Dated: October 25, 2022



EXHIBIT 19
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR



CHARLTON HOLDING GROUP, LLC

# EXHIBIT D –
# BILL OF SALE

### LOT #1 *(ref: #18315)*

*CHARLTON HOLDINGS GROUP, LLC (the "Seller") does hereby sell, assign and transfer to the "Buyer" Safety House  99 Aldan Avenue, Suite 5 Glen Mills, PA 19342  the item(s) described as follows:*

> 151,200 boxes of 2 count iHealth COVID 19 home test kits  @ $13.00 PER BOX
> INCLUSIVE.

*for the TOTAL AMOUNT OF $1,965,600.00 USD. The Seller warrants that the items are being transferred to the Buyer free and clear of any liens and encumbrances. The above items are sold on an "AS IS" tax inclusive basis. The Seller makes no warranties, express or implied unless specifically stated in this document.*

*This transfer is effective as of January*  __2 1__ *, 2022.*

*The ownership of the item(s) shall be transferred to the Buyer immediately upon the signing of this Bill of Sale.*

SELLER:

Charlton Holdings Group, LLC,
78 Buckminster Road
Rockville Center, New York 11570, USA
(the "Seller")
516-232-5933

EXHIBIT __20__
WIT: __M. Sternberg__
DATE: __2-7-24__
Joanne Rose, RPR, RMR

CHG-000008

WEISS_000381

**ShlomiCha...**

September 20, 2023

End balance 1,876,003.89
( one million eight
hundred seventy six )

10:34 AM

All of them are a product
of you and your people

8:02 AM

My god you are the devil

9:52 AM

The worst person I ever
met - just not a fucking
word

9:53 AM

2 UNREAD MESSAGES

I'm being asked to testify
against you and Gary
basically in the federal
case and if the judge
issues an order I will bc of
the lies about the
amounts manfred and
Gary said I received 11:21 AM

My god you are the devil

9:52 AM

The worst person I ever
met - just not a fucking

Message

EXHIBIT 21
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR



PAYMENTS

#1  FEB 1  DIRECT FROM MANFRED STERNBERG JR
            219,240.00
    DEPOSIT

#2  FEB 7  DAFNA
            SOKOLSKI & ZEKARIA   WITHELD 665,000
            1,246,960.00  (SHOULD BE        1,911,960.00  ?

#3  FEB 15  130,000.00   SHOULD BE  250,000.00  ?
            DIPLA
            SOKOLSKI & ZEKARIA

#4  FEB 28  70,000.00   SHOULD BE  130,000  ?
            DAFNA
            SOKOLSKI & ZEKARIA

            219,240
            1,246,960
            130,000
            70,000
            1,447,200.00

EXHIBIT 22
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

**Subject:** Good morning. VRc
**Date:** Tuesday, May 31, 2022 at 9:38:31 AM Central Daylight Time
**From:** sam gross
**To:** Manfred, Manfred

Good morning my friend.
Got home late last night.

And been up since 4am.

This entire deal is causing me now also physically damages as I am constantly stressed.

I don't care about the profit. I really don't. If I close the delivery's? Profits will show up on they're own.
The whole market is waking up again. And I'm still stuck with this.

I care about reputation. And I care about changing my past.

And it's easy to point fingers at me. Since I have a history. But ? It's not the right thing to do.

So it's hard.

Regardless, the reason I'm texting /emailing this? Is not to have an argument. But to clarify a few things.

Yes I haven't sold the collateral yet. And now with dog days of summer a head? I might not even sell it till the season
starts ( which is months ahead ).

The things is that I have opportunities to close vrc and ship to scully in full as well for peanuts now.

And I don't know why you say there is no money ( unless you took out funds for you as profit already. And fine. But
then just say it )

I'm running around like a chicken with no head. I used my own funds as well for this. Because it's my responsibility to
complete these orders no matter what. With Gary screwing me or not. With collateral or not.

The facts are ? Number wise ?

These people sent us 4.5 M.
We have given Gary 2.5M
That leaves 2M. (4.5-2.5=2)
You sent me 1.25M which I fully used to full fill vrc.
That leaves 750k ( 2M-1.25M=750k)
We did use 180k for Daniel and 80k for Foley and that brings it to roughly 600k
And then we did George at about 50k

So there should be there about 550k left.

I know we had funds that you said you laid out before. But we also had deposits that was kept by you. And even if

<div style="border:1px solid black; padding:4px; display:inline-block;">
EXHIBIT <u>23</u><br>
WIT: <u>M. Sternberg</u><br>
DATE: <u>2-7-24</u><br>
Joanne Rose, RPR, RMR
</div>

you take 150k  out of this ? As funds you used ? It's still 400k or so left.

I'm looking at an opportunity to close both the tail of VRC and close scully ( whether he takes the delivery or not. If he don't take the delivery at such cheap prices I can dump it some place else. The main point ? These people paid for goods. I need to deliver. Gary or no Gary. Collateral sells or no collateral sells. I am doing my best.).

And I need  90k from this money to at least close VRC.
And then we can together decide what to do with Scully after.  But not closing vrc is not a good thing. And the opportunity I have to do so is short windowed.

Prices are already moving up again.

These funds was paid for this subject , these goods and this service.

If you are holding these funds as safety net ? Or as your fee ? Or because you don't want to feel you have worked for free etc etc ? I get it. But then? Just say it.

And I have to say ok. But part of it should still be used for servicing and closing these orders.

At the very least we must close vrc. And put that to bed.

We can discuss scully after. But vrc is almost at completion.

And 90k to close it is not much.

It's funds that was sent in order for me to service the clients. And we both know I'm right about it.

Yes. One more time. We need to sell Gary's collateral.
But we can stump our feet all day long. And jump up and down. And yell and scream. But it won't make it happen faster. It's a different business and right now it's the slow season all together.

I had used my own resources. To the full extent. I paid some people moneys myself ( Scottie , Jess , etc etc ) and I paid for goods myself to.

I hate to ask this. But at this point ? We need to finish vrc asap. And I'm not taking this pressure any more. It's a lot for me.

These funds was sent for these goods it's the right thing to do.
And I must complete VRC.

Please wire from these funds 90k
To

Name: Charlton Holding Group LLC
Address: 78 buckminster road Rockville centre, NY 11570
Bank: citi bank
Bank address: 297 merrick road Rockville centre, NY 11570
Swift: citius33
Branch #: Rockville centre BR 230
Rt: 021000089
Account : 6873777780

I'm not debating. Or arguing. I'm more then sure that I will be selling the collateral and I will be getting new orders to.

But this can't wait no more. And it's the right and fair thing to do for our client and for us. As we need to close this order for vrc. And no way we will find it so cheap again.

A few weeks ago it would have been 60k to do it. Now it's up. And it's going to keep going up.

And we do have the funds. So please do so.

Ps

I'm not debating. Or arguing. We simply need to close vrc. And right now that's the only way to do it in a day or two before prices jump up again.

I'm on the train to the city.
I'll get of the train at 12:00 and I'll
Be back on my phone then.

Reason I emailed it ? It's cause it's long ....

Thanks.

Any way. I'll be off the train 12:15 or so. And be back on my phone then.

Sent from the all new AOL app for iOS

Page 282

**TEST KIT DELIVERY ADDRESSES**

| PO# | Ship To Address | Quantity Shipping |
|---|---|---|
| A6373NAT | **Nation Wide Medical Services** | 15,120 |
| | 14141 Covello Street | |
| | Nbuilding 6C | |
| | Van Nuys, CA 91405 | |
| | Attn: Daniel Blatt | |

| PO# | Ship To Address | Quantity Shipping |
|---|---|---|
| NYV0004CHAR | Nail & Beauty LLC | 181,440 |
| | 100 Adams Blvd | |
| | Farmingdale, NY 11735 | |

| PO# | Ship To Address | Quantity Shipping |
|---|---|---|
| A011822CHAR | VRC Medical Services | 7,560 |
| | 357 Elf Road | |
| | Sewaren, NJ 07077 | |

| PO# | Ship To Address | Quantity Shipping |
|---|---|---|
| CHG-ESS-3101-ABN | 99 Aldan Avenue | 151,200 |
| | Suite 5 | |
| | General Mills, PA 19342 | |

| PO# | Ship To Address | Quantity Shipping |
|---|---|---|
| 30318 | **Yuba County Schools** | 3,000 |
| | 5730 Packard Avenue | |
| | Suite 300 | |
| | Marysville, CA 95901 | |

| PO# | Ship To Address | Quantity Shipping |
|---|---|---|
| 30321 | **El Monte Unified School District Warehouse** | 7,000 |
| | 1003 Durfee Avenue | |
| | South El Monte, CA 91733 | |

Total

365,320

EXHIBIT 24
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR



 **MERRILL**
A BANK OF AMERICA COMPANY

P.O. Box 15284
Wilmington, DE 19850

**Client service information**

☐ 1.800.MERRILL (1.800.637.7455)

☑ bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

MANFRED STERNBERG JR
ATTORNEY AT LAW/IOLTA ACCOUNT
1110 GUINEA DR
HOUSTON, TX 77055-7508

# Your Public Service Trust Account

for January 1, 2022 to January 31, 2022        Account number: ▮▮▮▮▮ 2143

**MANFRED STERNBERG JR    ATTORNEY AT LAW/IOLTA ACCOUNT**

## Account summary

| | |
|---|---|
| Beginning balance on January 1, 2022 | |
| Deposits and other credits | |
| Withdrawals and other debits | |
| Checks | |
| Service fees | |
| **Ending balance on January 31, 2022** | |

# of deposits/credits: 9

# of withdrawals/debits: 32

# of days in cycle: 31

Average ledger balance: $▮▮▮▮▮▮

Important disclosure information listed on the 'Important Information for Bank Deposit Accounts' page.

EXHIBIT _25_
WIT: _M. Sternberg_
DATE: _2-7-24_
Joanne Rose, RPR, RMR



# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us – You may call us at the telephone number listed on the front of this statement.

Updating your contact information – We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement – When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers – If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- – Tell us your name and account number.
- – Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- – Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts client) (20 business days if you are a new client, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems – You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits – If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

Merrill Lynch makes available products and services offered by Merrill Lynch, Pierce, Fenner & Smith Incorporated, a registered broker-dealer and member SIPC, and other subsidiaries of Bank of America Corporation.

Banking products are provided by Bank of America, N.A., and affiliated banks, Members FDIC and wholly owned subsidiaries of Bank of America Corporation.

© 2022 Bank of America Corporation

**Bank of America, N.A. Member FDIC and**  **Equal Housing Lender**



**Your checking account**



**MERRILL**
A BANK OF AMERICA COMPANY
MANFRED STERNBERG JR   |   Account # ████████ 2143   |   January 1, 2022 to January 31, 2022

## Deposits and other credits





MANFRED STERNBERG JR   |   Account # ████████ 2143   |   January 1, 2022 to January 31, 2022

## Deposits and other credits - continued

| Date | Transaction description | Customer reference | Bank reference | Amount |
|------|------------------------|-------------------|----------------|--------|
| 01/20/22 | | | | |
| 01/21/22 | WIRE TYPE:WIRE IN DATE: 220121 TIME:1543 ET TRN:2022012100441794 SEQ:220121143457MA98/000454 ORIG:AMERICAN ENVIRONMENTAL EN ID:0089344700 SND BK:FULTON BANK, NA ID:031301422 | | 903701210441794 | 1,965,600.00 |
| 01/24/22 | WIRE TYPE:WIRE IN DATE: 220124 TIME:0415 ET TRN:2022012400219247 SEQ:3007132022ES/001192 ORIG:TAYLOR PANAGAKOS ID:730031587 SND BK:JPMORGAN CHASE BANK, NA ID:021000021 PMT DET:DCD OF 22/01/ 22 | | 903701240219247 | 10,000.00 |

**Total deposits and other credits**     $█████████

## Withdrawals and other debits

| Date | Transaction description | Customer reference | Bank reference | Amount |
|------|------------------------|-------------------|----------------|--------|
| 01/04/22 | PAYPAL        DES:INST XFER  ID:SAMROSINC INDN:AFFILIATED COMMERICAL   CO ID:PAYPALSI77 WEB | | 902503035686505 | -1,600.18 |
| 01/05/22 | PAYPAL        DES:INST XFER  ID:SAMROSINC INDN:AFFILIATED COMMERICAL   CO ID:PAYPALSI77 WEB | | 902504025009895 | -2,500.36 |
| 01/06/22 | PAYPAL        DES:INST XFER  ID:SAMROSINC INDN:AFFILIATED COMMERICAL   CO ID:PAYPALSI77 WEB | | 902505026194977 | -1,500.54 |
| 01/07/22 | PAYPAL        DES:INST XFER  ID:SAMROSINC INDN:AFFILIATED COMMERICAL   CO ID:PAYPALSI77 WEB | | 902507009597186 | -2,500.00 |
| 01/10/22 | PAYPAL        DES:INST XFER  ID:SAMROSINC INDN:AFFILIATED COMMERICAL   CO ID:PAYPALSI77 WEB | | 902510009670706 | -3,600.00 |
| 01/11/22 | PAYPAL        DES:INST XFER  ID:SAMROSINC INDN:AFFILIATED COMMERICAL   CO ID:PAYPALSI77 WEB | | 902510033930534 | -2,700.18 |
| 01/12/22 | PAYPAL        DES:INST XFER  ID:SAMROSINC INDN:AFFILIATED COMMERICAL   CO ID:PAYPALSI77 WEB | | 902511019717012 | -6,100.00 |
| 01/12/22 | PAYPAL        DES:INST XFER  ID:SAMROSINC INDN:AFFILIATED COMMERICAL   CO ID:PAYPALSI77 WEB | | 902511022942172 | -1,418.18 |

*continued on the next page*





**MERRILL**
A BANK OF AMERICA COMPANY

## Your checking account

MANFRED STERNBERG JR   |   Account # ▓▓▓▓ 2143   |   January 1, 2022 to January 31, 2022

## Withdrawals and other debits - continued

| Date | Transaction description | Customer reference | Bank reference | Amount |
|------|------------------------|--------------------|----------------|--------|
| 01/13/22 | PAYPAL       DES:INST XFER  ID:SAMROSINC<br>INDN:AFFILIATED COMMERICAL   CO<br>ID:PAYPALSI77 WEB | | 902512022410633 | –9,518.18 |
| 01/13/22 | PAYPAL       DES:INST XFER  ID:SAMROSINC<br>INDN:AFFILIATED COMMERICAL   CO<br>ID:PAYPALSI77 WEB | | 902512022680821 | –1,300.36 |
| 01/14/22 | PAYPAL       DES:INST XFER  ID:SAMROSINC<br>INDN:AFFILIATED COMMERICAL   CO<br>ID:PAYPALSI77 WEB | | 902513019722831 | –6,300.18 |
| 01/14/22 | PAYPAL       DES:INST XFER  ID:SAMROSINC<br>INDN:AFFILIATED COMMERICAL   CO<br>ID:PAYPALSI77 WEB | | 902513019710448 | –5,900.36 |
| 01/14/22 | PAYPAL       DES:INST XFER  ID:SAMROSINC<br>INDN:AFFILIATED COMMERICAL   CO<br>ID:PAYPALSI77 WEB | | 902513019710973 | –1,600.54 |
| 01/18/22 | ███████████████████████████████ | | | |
| 01/18/22 | PAYPAL       DES:INST XFER  ID:SAMROSINC<br>INDN:AFFILIATED COMMERICAL   CO<br>ID:PAYPALSI77 WEB | | 902518007931483 | –2,700.54 |
| 01/18/22 | PAYPAL       DES:INST XFER  ID:SAMROSINC<br>INDN:AFFILIATED COMMERICAL   CO<br>ID:PAYPALSI77 WEB | | 902518019443070 | –2,500.18 |
| 01/18/22 | PAYPAL       DES:INST XFER  ID:SAMROSINC<br>INDN:AFFILIATED COMMERICAL   CO<br>ID:PAYPALSI77 WEB | | 902518019973469 | –1,800.36 |
| 01/18/22 | PAYPAL       DES:INST XFER  ID:SAMROSINC<br>INDN:AFFILIATED COMMERICAL   CO<br>ID:PAYPALSI77 WEB | | 902518007996258 | –1,018.00 |
| 01/19/22 | PAYPAL       DES:INST XFER  ID:SAMROSINC<br>INDN:AFFILIATED COMMERICAL   CO<br>ID:PAYPALSI77 WEB | | 902518045212913 | –2,500.36 |

*continued on the next page*



## Withdrawals and other debits - continued

| Date | Transaction description | Customer reference | Bank reference | Amount |
|------|------------------------|-------------------|----------------|--------|
| 01/20/22 | WIRE TYPE:WIRE OUT DATE:220120 TIME:1551 ET TRN:2022012000469321 SERVICE REF:016532 BNF:TAYLOR PANAGAKOS ID:730031587 BNF BK:JPMORGAN CHASE BANK, N. ID:021000021 PMT DET:22012015510000 51/ACC/, PHN/Taylor Panagakos | | 903701200469321 | -20,000.00 |
| 01/20/22 | PAYPAL          DES:INST XFER ID:TAYLORPANAGAKOS INDN:AFFILIATED COMMERICAL  CO ID:PAYPALSI77 WEB | | 902519031317376 | -9,500.00 |
| 01/20/22 | PAYPAL          DES:INST XFER ID:TAYLORPANAGAKOS INDN:AFFILIATED COMMERICAL  CO ID:PAYPALSI77 WEB | | 902519031317772 | -4,800.36 |
| 01/21/22 | PAYPAL          DES:INST XFER ID:TAYLORPANAGAKOS INDN:AFFILIATED COMMERICAL  CO ID:PAYPALSI77 WEB | | 902521004065692 | -5,500.00 |
| 01/25/22 | ███████████████ | | | |
| 01/26/22 | PAYPAL          DES:INST XFER ID:TAYLORPANAGAKOS INDN:AFFILIATED COMMERICAL  CO ID:PAYPALSI77 WEB | | 902525024855935 | -135.51 |
| 01/28/22 | ███████████████ | | | |

**Total withdrawals and other debits** ████████

## Checks



\* *There is a gap in sequential check numbers*

## Daily ledger balances





## Your checking account

**MERRILL**
A BANK OF AMERICA COMPANY

MANFRED STERNBERG JR   |   Account # ▮▮▮▮ 2143   |   January 1, 2022 to January 31, 2022

## Daily ledger balances - continued



MANFRED STERNBERG JR   |   Account # ████████ 2143   |   January 1, 2022 to January 31, 2022

This page intentionally left blank





**MERRILL**
A BANK OF AMERICA COMPANY
MANFRED STERNBERG JR   |   Account # ████████ 2143   |   January 1, 2022 to January 31, 2022

## Check images



This page intentionally left blank



**MERRILL**
A BANK OF AMERICA COMPANY

P.O. Box 15284
Wilmington, DE 19850

MANFRED STERNBERG JR
ATTORNEY AT LAW/IOLTA ACCOUNT
1110 GUINEA DR
HOUSTON, TX 77055–7508

**Client service information**

☐ 1.800.MERRILL (1.800.637.7455)

✉ bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622–5118

EXHIBIT _26_
WIT: _M. Sternberg_
DATE: _2-7-24_
Joanne Rose, RPR, RMR

# Your Public Service Trust Account

for February 1, 2022 to February 28, 2022                    Account number: ▮▮▮▮ 2143

**MANFRED STERNBERG JR    ATTORNEY AT LAW/IOLTA ACCOUNT**

## Account summary

| | |
|---|---|
| Beginning balance on February 1, 2022 | |
| Deposits and other credits | |
| Withdrawals and other debits | |
| Checks | |
| Service fees | |
| **Ending balance on February 28, 2022** | |

# of deposits/credits: 0

# of withdrawals/debits: 7

# of days in cycle: 28

Average ledger balance: $▮▮▮▮

Important disclosure information listed on the "Important Information for Bank Deposit Accounts" page.

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us – You may call us at the telephone number listed on the front of this statement.

Updating your contact information – We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement – When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers – If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts client) (20 business days if you are a new client, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems – You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits – If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

Merrill Lynch makes available products and services offered by Merrill Lynch, Pierce, Fenner & Smith Incorporated, a registered broker-dealer and member SIPC, and other subsidiaries of Bank of America Corporation.

Banking products are provided by Bank of America, N.A., and affiliated banks, Members FDIC and wholly owned subsidiaries of Bank of America Corporation.

© 2022 Bank of America Corporation



**Bank of America, N.A. Member FDIC and**   **Equal Housing Lender**



**MERRILL**
A BANK OF AMERICA COMPANY

# Your checking account

MANFRED STERNBERG JR   |   Account #████ 2143   |   February 1, 2022 to February 28, 2022

## Withdrawals and other debits

| Date | Transaction description | Customer reference | Bank reference | Amount |
|------|------------------------|--------------------|----------------|--------|
| 02/01/22 | WIRE TYPE:WIRE OUT DATE:220201 TIME:1149 ET TRN:2022020100323941 SERVICE REF:009820 BNF:GARY WEISS ASOLAR, LLC ID:3166375570 BNF BK:WE LLS FARGO BANK, N.A. ID:121000248 PMT DET:22020111 48000054Ref: Inv#4 Charlton iHealth kits /ACC/, PH | | 903702010323941 | −219,240.00 |
| 02/04/22 | WIRE TYPE:WIRE OUT DATE:220204 TIME:1618 ET TRN:2022020400435016 SERVICE REF:015718 BNF:SOKOLSKI & ZAKARIA IOLA AC ID:035085442867 BNF BK:JPMORGAN CHASE BANK, N. ID:021000021 PMT DET:2202041615000000Attn Dafna Zekaria RE Char | | 903702040435016 | −1,911,960.00 |
| 02/10/22 | ████████████████████ | | | |
| 02/15/22 | WIRE TYPE:WIRE OUT DATE:220215 TIME:1601 ET TRN:2022021500468576 SERVICE REF:016428 BNF:SOKOLSKI & ZAKARIA IOLA AC ID:035085442867 BNF BK:JPMORGAN CHASE BANK, N. ID:021000021 PMT DET:2202151600000052Attn Dafna Zekaria Esq RE | | 903702150468576 | −250,000.00 |
| 02/17/22 | WIRE TYPE:WIRE OUT DATE:220217 TIME:1630 ET TRN:2022021700446336 SERVICE REF:015575 BNF:INNOVATIVE GRAPHICS, LTD ID:01893596911 BNF BK:THE HUNTINGTON NATIONAL ID:044000024 PMT DET:2202171630000013RE: Refund in full Charlto | | 903702170446336 | −77,000.00 |

*continued on the next page*

## Withdrawals and other debits - continued

| Date | Transaction description | Customer reference | Bank reference | Amount |
|------|-------------------------|--------------------|----------------|--------|
| 02/23/22 | | | | |
| 02/25/22 | WIRE TYPE:WIRE OUT DATE:220225 TIME:1642 ET TRN:2022022500540796 SERVICE REF:019504 BNF:SOKOLSKI & ZAKARIA IOLA AC ID:035085442867 BNF BK:JPMORGAN CHASE BANK, N. ID:021000021 PMT DET:2202251639000028Attn Dafna Zekaria Esq RE | | 903702250540796 | −190,000.00 |

**Total withdrawals and other debits**

## Daily ledger balances

PAGE 1 OF 1

**BANK OF AMERICA** 

P.O. Box 15284
Wilmington, DE 19850

BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY          PA6-580-04-05
SCRANTON, PA          18507

MANFRED STERNBERG JR
ATTORNEY AT LAW/IOLTA ACCOUNT
1110 GUINEA DR
HOUSTON TX 77055-7508

DATE: 02/01/22
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: XXXXXXXX2143

THE FOLLOWING WIRE WAS DEBITED TODAY:          USD AMOUNT $219,240.00

| | | |
|---|---|---|
| TRANSACTION REF: | 2022020100323941 | SERVICE REF: 009820 |
| RELATED REF: | 2202011148000054 | IMAD: 20220201B6B7HU3R009820 |
| ORIGINATOR: | MANFRED STERNBERG JR ATTORNEY AT LA | ID: XXXXXXXX2143 |
| INSTRUCTING BANK: | BANK OF AMERICA NA - MMM | ID: MMML |
| BENEFICIARY: | GARY WEISS  ASOLAR, LLC | ID: 3166375570 |
| BENEFICIARY'S BANK: | WELLS FARGO BANK, N.A. | ID: 121000248 |

PAYMENT DETAIL:     Ref: Inv#4 Charlton iHealth kits /ACC/, PHN/Gary Weiss ASolar, LLC

EXHIBIT  27
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

STERNBERG000318

**BANK OF AMERICA** 🇺🇸

P.O. Box 15284
Wilmington, DE 19850

PAGE 1 OF 1

BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY          PA6-580-04-05
SCRANTON, PA          18507

MANFRED STERNBERG JR
ATTORNEY AT LAW/IOLTA ACCOUNT
1110 GUINEA DR
HOUSTON TX 77055-7508

DATE: 02/04/22
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: XXXXXXXX2143

THE FOLLOWING WIRE WAS DEBITED TODAY:                    USD AMOUNT $1,911,960.00

TRANSACTION REF:     2022020400435016              SERVICE REF: 015718
RELATED REF:         2202041615000000              IMAD: 20220204B6B7HU2R015718
ORIGINATOR:          MANFRED STERNBERG JR ATTORNEY AT LA   ID: XXXXXXXX2143
INSTRUCTING BANK:    BANK OF AMERICA NA - MMM       ID: MMML
BENEFICIARY:         SOKOLSKI & ZAKARIA IOLA ACCT   ID: 035085442867
BENEFICIARY'S BANK:  JPMORGAN CHASE BANK, N.A.      ID: 021000021

PAYMENT DETAIL:      Attn Dafna Zekaria RE Charlton Holdin Trust Asolar Invl0054 /ACC/,
                     PHN/Sokolski & Zakaria IOLA Acct

STERNBERG000319

**Bank of America** 🇺🇸

Online Banking

---

**MSA IOLTA BofA: Account Activity Transaction Details**

---

| | |
|---:|:---|
| **Post date:** | 02/15/2022 |
| **Amount:** | -250,000.00 |
| **Type:** | Withdrawal |
| **Description:** | WIRE TYPE:WIRE OUT DATE:220215 TIME:1601 ET TRN:2022021500468576 SERVICE REF:016428 BNF:SOKOLSKI & ZAKARIA IOLA AC ID:035085442867 BNF BK:JPMORGAN CHASE BANK, N. ID:021000021 PMT DET:2202151600000052Attn Dafna Zekaria Esq RE |
| **Merchant name:** ② | SOKOLSKI & ZAKARIA IOLA AC |
| **Merchant information:** | |
| **Transaction category:** | Cash, Checks & Misc: Other Expenses |

**Bank of America** 🇺🇸

Online Banking

---

**MSA IOLTA BofA: Account Activity Transaction Details**

---

| | |
|---|---|
| **Post date:** | 02/25/2022 |
| **Amount:** | -190,000.00 |
| **Type:** | Withdrawal |
| **Description:** | WIRE TYPE:WIRE OUT DATE:220225 TIME:1642 ET TRN:2022022500540796 SERVICE REF:019504 BNF:SOKOLSKI & ZAKARIA IOLA AC ID:035085442867 BNF BK:JPMORGAN CHASE BANK, N. ID:021000021 PMT DET:2202251639000028Attn Dafna Zekaria Esq RE |
| **Merchant name:** | SOKOLSKI & ZAKARIA IOLA AC |
| **Merchant information:** | |
| **Transaction category:** | Cash, Checks & Misc: Other Expenses |

EXHIBIT 28
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

# To, CHARLTON HOLDING GR
# From Asolardiamond, LLC

FOR ATTENTION AND BENEFIT OF MANFRED ST

Collateral given on 02-26-2022, verif
03-11-2022,

First Batch given to Dafna Zekaria E:
Starbucks 2:40PM ( signed, 4-Diamc

1. 5.84ct Round Diamond, F-VS2, $5
2. 2.71ct Round Diamond, G-VS2, $
3. 3.01ct Round Diamond, F-VS1, $
4. 3.01ct Round Diamond, G-VS2, $
5. 9.20ct Cushion Emerald, Genuine
6. 9.80ct Oval Pink Sapphire, Genuir
7. 12.10ct Yellow Sapphire, Genuine
8. 10.80ct Pink Sapphire, Genuine, $
9. 8.70ct Pink Sapphire, Genuine, $:
10. 7.00ct Blue Sapphire, Genuine,

11. 9.12cr Green Emerald, Genuine,

12. 9.05ct Green Emerald, Genuine,

13. 13.90ct Yellow Sapphire, Genuir

14. 6.20ct Pink Sapphire, Genuine,

15. 6.00ct Fancy Sapphire Genuine

16. Bag # 1, 909.30ct Yellow Citrine

17. Bag # 2, 2,529.35ct Y Citrine, $

18. Bag # 3, 2,311.90ct Y Citrine, $

19.Bag # 4, 2,029.30ct Y Citrine, $

20. Bag #5, 1879.30ct Y Citrine, $3

21. Bag #6, 2789.80ct Y Citrine, $2

Total Y Citrine Appraisal, $357,163.

22. 9.95ct Emerald Cut Emerald, $

On Wed, Mar 30, 2022 at 7:15 AM sam gross <charltonholdinggroupllc@aol.com> wrote:

Good morning Gary.

Been that no resolution have been brought up ( no refund and no goods ).

Please be advise , per our consul advise ? Charlton holding group to start soliciting buyers to certain collateral items.

I hope you understand the situation and the problem spot you had placed me in.

And as much as We would like to wait ? We simply can not any longer.

Kindly send the updated list of the goods you have provided Charlton holding group for collateral so we are on the same page.
Thanks you so much.

Should you have any progress this morning? Definitely let us know.

Thanks

Sam
Charlton holding group llc

Sent from the all new AOL app for iOS

**Re: Ihealth**

Gary Weiss <wgary4109@gmail.com>
Wed 3/30/2022 6:42 AM
To:sam gross <charltonholdinggroupllc@aol.com>;Manfred <Manfred@msternberg.com>

**To, CHARLTON HOLDING GROUP, LLC**
**From Asolardiamond, LLC**
FLX attention Mr Sam Gross (Manfred) (CHARTERS: LLP)

Collateral given on 02-26-2022, verified by Sam via SMS, 03-11-2022,
First Batch given to Dafna Zekaria Esq, Feb 22, 2022. At Starbucks 2:40PM ( signed, 4-Diamonds & Appraisals )
1. 5.84ct Round Diamond, F-VS2, $540,000 Appraisal.
2. 2.71ct Round Diamond, G-VS2, $88,800 Appraisal.
3. 3.01ct Round Diamond, F-VS1, $128,500 Appraisal.
4. 3.01ct Round Diamond, G-VS2, $92,000 Appraisal.
5. 9.20ct Cushion Emerald, Genuine, $400,000 Appraisal.
6. 9.80ct Oval Pink Sapphire, Genuine, $300,000 Appraisal.
7. 12.10ct Yellow Sapphire, Genuine, $340,000 Appraisal.
8. 10.80ct Pink Sapphire, Genuine, $350,000 Appraisal.
9. 8.70ct Pink Sapphire, Genuine, $240,000 Appraisal.
10. 7.00ct Blue Sapphire, Genuine, $120,000 Appraisal.
11. 9.12cr Green Emerald, Genuine, $380,000 Appraisal.
12. 9.05ct Green Emerald, Genuine, $370,000 Appraisal.
13. 13.90ct Yellow Sapphire, Genuine, $380,000 Appraisal.
14. 6.20ct Pink Sapphire, Genuine, $80,000 Appraisal.
15. 6.00ct Fancy Sapphire Genuine, $70,000 Appraisal.
16. Bag # 1, 909.30ct Yellow Citrine, $40 P/ct, 23 Pcs.
17. Bag # 2, 2,529.35ct Y Citrine, $35 P/ct, 36 Pcs.
18. Bag # 3, 2,311.90ct Y Citrine, $30 P/ct, 51 Pcs.
19.Bag # 4, 2,029.30ct Y Citrine, $25 P/ct, 56Pcs.
20. Bag #5, 1879.30ct Y Citrine, $30 P/ct, 64 Pcs.
21. Bag #6, 2789.80ct Y Citrine, $20 P/ct, 163 Pcs.
Total Y Citrine Appraisal, $357,163.00.
22. 9.95ct Emerald Cut Emerald, $440,000 Appraisal.

Hi Sam & Manfred, I hope you find the right buyer for the collateral, Diamonds & Gemstones I have given you,  I will continue with my Chemo on Friday, keep me informed.
best

--------- Forwarded message ---------
From: **Gary Weiss** <wgary4109@gmail.com>
Date: Tue, Mar 1, 2022 at 8:19 AM
Subject:
To: Manfred Sternberg ESQ <manfred@manfredlaw.com>, sam gross <Charltonholdinggroupllc@aol.com>

Good Morning guys. We will deliver and I will address all your questions this morning. Sam, I forgive your antics as I know how hard it is to wait for this to co conclude, I believe all the things I stated and regardless of whatever issues I have, or had ? it will not affect you and your buyers. Of course as I said many times before ? If you like a refund you have no questions asked. And please keep your commitment to return my gems once this is concluded.

Thanks
Gary

EXHIBIT  29
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

1

WEISS 000329

**SamGrosss**   

Had insisted ?    5:01 PM ✓✓

Correct it    5:02 PM ✓✓

3 UNREAD MESSAGES

I would like to add ,
Charlton holding group
requested the funds back.
However ? Mr Sternberg
Esq had insisted on this
collateral instead of  a
refund. Siting that he does
not wish to lose the profit
( if needed ? Emails will be
provided )         5:13 PM

That's all. Add this.    5:13 PM

Cause it is the truth.
                5:13 PM

  



EXHIBIT 30
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

WEISS 000406



SamGrosss

But it hurts me all the "law suits "
And the "fbi"

This text is to confirm. I never wanted your collateral.
Manfred sternberg had requested it. As he have confirmed to our lawyer as well.
Per his request I had obtained it from you.



What do you think ?

As I'm on hold again

Sucks for me to

Dont want refund as we will lose

Ok.

EXHIBIT 31
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR



**SamGrosss** >

as well.
Per his request I had
obtained it from you.



What do you think ?

As I'm on hold again

Sucks for me to

Dont want refund as we will lose

Ok.

So what time line do I give him to perform ?

In a way that protects you.

Me

And the business

Next lie from him we r done

Next lie from him we r done



WEISS 000010

**Photo** ∨                    **Done**

Manfred Sternberg ESQ

What do you think ?

As I'm on hold again

Sucks for me to

Dont want refund as we will lose

Ok.

So what time line do I give him to perform ?

In a way that protects you.

Me

And the business

Next lie from him we r done

I dont think they can deliver that is the problem

Text Message

WEISS 000011



**SamGrosss** >

And the business

Next lie from him we r done

Next lie from him we r done

I dont think they can deliver that is the problem

Cause my feeling is   ?

No matter what issues he has ?

He will deliver.

And I don't want to lose

Yes



But it hurts me all the "law suits "
And the "fbi"

charge myself and emailing you proof. Thank you and hope your doing well.

iMessage

WEISS 000012



**Photo** ∨     **Done**

Manfred Sternberg ESQ

And the business

Next lie from him we r done

I dont think they can deliver that is the problem

Cause my feeling is ?

No matter what issues he has ?

He will deliver.

And I don't want to lose

Yes

👍

But it hurts me all the "law suits "
And the "fbi"

Etc etc etc

Text Message

**Photo** ∨                    **Done**

Manfred Sternberg ESQ >

but I will be reversing the charge myself and emailing you proof. Thank you and hope your doing well.

Wrong text

Here is right one...Dear Manfred, I am the one to blame, you & Sam did not know about the problems with the shipping, nor did I, I am sure you guys wanted to deliver to your customers, but the delays were on my side, again I apologize, till I find out the truth, I am upping the collateral to 4 million with Sam in the meantime, sorry for creating this Delivery problem. Gary

Text Message



Manfred Sternberg ESQ >

open ? I'll get what is mine

He is buying himself and his lawyer a bunch of bad pr and claims of fraud and wire fraud

especially last friday when he said less than 45 min away snd i scrambled to send him another $190k

That is classic fraud in the inducement and can only be cured by delivery or return of all money

Should we request refund ? In your mind ??

Or should I try close it ?

Like I didn't work here to lose in full if that makes

WEISS 006010

XM WI-FI

8:05 PM

66%

< S

**SamGrosss** >

Or should I try close it ?

Like I didn't work here to
What do you think ?

As I'm on hold again

Sucks for me to

Dont want refund as we
will lose

Ok.

So what time line do I give
him to perform ?

In a way that protects you.

Me

And the business

Next lie from him we r
done

I dont think they can

From charltonholdinggroupllc@aol.com
To Gary Weiss & 2 more
Feb 21 at 12:53 PM ⌄

iMessage

WEISS 000019

**Photo** ∨                              **Done**



Manfred Sternberg ESQ ⟩

What do you think ?

As I'm on hold again

Sucks for me to

Dont want refund as we will lose

Ok.

So what time line do I give him to perform ?

In a way that protects you.

Me

And the business

Next lie from him we r done

I dont think they can deliver that is the problem

Text Message



**Photo** ∨      **Done**

Manfred Sternberg ESQ

And the business

Next lie from him we r done

I dont think they can deliver that is the problem

Cause my feeling is ?

No matter what issues he has ?

He will deliver.

And I don't want to lose

Yes

👍

But it hurts me all the "law suits "
And the "fbi"

Etc etc etc

Text Message






WEISS-000024

## Photo ⌄          **Done**

Manfred Sternberg ESQ ›

What do you think ?

As I'm on hold again

Sucks for me to

Dont want refund as we will lose

Ok.

So what time line do I give him to perform ?

In a way that protects you.

Me

And the business

Next lie from him we r done

I dont think they can deliver that is the problem

Text Message

WEISS 000022



## SamGrosss

Thu, Dec 1 at 6:42 PM

Gary

I would have been haiku to return the collateral.

But manfred won't let me.

I would have never taken the collateral unless manfred asked for it.

So manfred since he asked for it ? Is the one who you should talk about it with.

He asked m̲e̲ it.



<        S        ▢

**SamGrosss** ›

I would have never taken the collateral unless manfred asked for it.

So manfred since he asked for it ? Is the one who you should talk about it with.

He asked me to obtain it. And he spoke to you to about it.

Maybe talk to him. I never wanted it.

So you confirm that I gave you the collateral that

iMessage

WEISS 000024



### SamGrosss

Manfred asked for ?

Of course

Why not ?

You gave me collateral

I didn't wish for it.

But I took it. Cause
manfred pushed it.

And here we are

I would like to add ?

Manfred asked for
collateral on President
day weekend. He had his

iMessage

SamGrosss

But I took it. Cause manfred pushed it.

And here we are

I would like to add ?

Manfred asked for collateral on President day weekend. He had his son with him. And they both came up with this idea.

I love manfred dearly. So I didn't want to ignore his request

He was very and

iMessage

WEISS 000026



**SamGrosss** >

Manfred asked for collateral on President day weekend. He had his son with him. And they both came up with this idea.

I love manfred dearly. So I didn't want to ignore his request

He was very and extremely happy to have me received the collateral.

Sat, Dec 3 at 9:07 AM

iMessage

XM Wi-Fi

Photo ∨                    Done

Manfred Steinberg ESQ

open ? I'll get what is mine

He is buying himself and
his lawyer a bunch of bad
pr and claims of fraud and
wire fraud

especially last friday when
he said less than 45 min
away snd i scrambled to
send him another $190k

That is classic fraud in the
inducement and can only
be cured by delivery or
return of all money

Should we request
refund ? In your mind ??

Or should I try close it ?

Like I didn't work here to
lose in full if that makes



EXHIBIT ___32___
WIT: _M. Sternberg_
DATE: _2-7-24_
Joanne Rose, RPR, RMR






From: **Gary Weiss** wgary4109@gmail.com
Subject: Fwd: Fw: Release from Liability, order satisfied
Date: August 14, 2023 at 7:06 AM
To: Manfred Sternberg ESQ manfred@manfredlaw.com, samgross3@icloud.com, Laver, Seth L. slaver@goldbergsegalla.com, Gary Lightman garylightman@lightmanlaw.com, GARY LIGHTMAN ltag8r@me.com, sam gross Charltonholdinggroupllc@aol.com , G. Manochi gmanochi@lightmanlaw.com, Kaner, Jason S. jkaner@goldbergsegalla.com



---------- Forwarded message ---------
From: **BLUERIVER4747/GARY** <monipair@aol.com>
Date: Mon, Aug 14, 2023 at 4:28 AM
Subject: Fw: Release from Liability, order satisfied
To: Gary Weiss <wgary4109@gmail.com>

EXHIBIT ___33___
WIT: _M. Sternberg_
DATE: _2-7-24_
Joanne Rose, RPR, RMR

https://jewelformeblue.com, Any setting, or any picture you submit, any Jewel. Diamond Search,  https://jewelformeblue.com/pages/diamond-search#/

----- Forwarded Message -----
**From:** sam gross <charltonholdinggroupllc@aol.com>
**To:** BLUERIVER4747/GARY <monipair@aol.com>; samgross3@icloud.com <samgross3@icloud.com>
**Sent:** Tuesday, March 7, 2023, 11:21:09 AM EST
**Subject:** Re: Release from Liability, order satisfied

Hello Gary.
Yes your email is indeed correct and the facts are the agreed upon facts.
Mr Manfred Sternberg ESQ had directed to receive this collateral as means of ending the transaction. And conclude the business between your entity A Solar LLc and Charlton Holding Group llc and himself.
Should you need more clarification? We can discuss. However at the present time ? I deemed that our business is concluded due to the fact that you have provided the collateral as requested by Mr Sternberg ESQ.

Sam Gross
President
Charlton holding group llc

Sent from the all new AOL app for iOS

On Tuesday, March 7, 2023, 8:59 AM, BLUERIVER4747/GARY <monipair@aol.com> wrote:

Hi Sam, Regarding the Covid-19 kits to be shipped on Feb-March of 2022,
You agreed that I gave you Merchandise of Diamonds and Gems

instead of the 151,000 covid-19 kits, as a full refund which was on the advice of your counsel Manfred Sternberg, which is over $3,000,000 worth, and you consider it as full refund on the kits transaction, and have no further demands from me, and my obligations in that matter are satisfied in full, and no further action or legal demand from me will take place, which started as Collateral on advice of your lawyer, and than considered as full refund.



ail.   Find messages, documents, photos or people        Advanced ∨        🔍

← Back  ↩  ↩↩  →                    ⤴ Move   🗑 Delete   🚫 Spam   ••• More

Re: Release from Liability, order satisfied

**sam gross** <charltonholdinggroupllc@aol.com>                                    🖨   Tue, Mar
To: BLUERIVER4747/GARY, samgross3@icloud.com

Hello Gary,
Yes your email is indeed correct and the facts are the agreed upon facts.
Mr Manfred Sternberg ESQ had directed to receive this collateral as means of ending the transaction. And conclude the busines
your entity A Solar LLc and Charlton Holding Group llc and himself.
Should you need more clarification? We can discuss. However at the present time ? I deemed that our business is concluded d
that you have provided the collateral as requested by Mr Sternberg ESQ.

Sam Gross
President
Charlton holding group llc

Sent from the all new AOL app for iOS

On Tuesday, March 7, 2023, 8:59 AM, BLUERIVER4747/GARY <monipair@aol.com> wrote:

Hi Sam, Regarding the Covid-19 kits to be shipped on Feb-March of 2022,
You agreed that I gave you Merchandise of Diamonds and Gems instead of the 151,000 covid-19 kits,
refund which was on the advice of your counsel Manfred Sternberg, which is over $3,000,000 worth, an
consider it as full refund on the kits transaction, and have no further demands from me, and my obligati
that matter are satisfied in full, and no further action or legal demand from me will take place, which sta
Collateral on advice of your lawyer, and than considered as full refund.

↩  ↩↩  →  •••

EXHIBIT 34
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR



# C HOLDING LLC

78 Buckminster rd , rvc , NY , 11570.
2/28/22

From the desk of : Sam Gross , president , Charlton Holding Group Llc

Dear Gary weiss ,

This letter is to attest; that due to my Attorny , Mr Manfred Sternberg ESQ , request , I will accept collateral in the form of gems due to the fact you are having issues with supplying the Covid tests my organization had paid for, and you were supposed to send my customers in Philadelphia, New York and New Jersey. Due to my attorneys request I will not request a refund , but will obtain the commentary in the hope you may supply said Covid test. And of course should you not ? The collateral will be suffice.

My attorney and his team has requested said collateral. There for I have to accept it. I do respect your efforts. And I understand you have no goods to supply at the moment due to certain global supply chain issues. So due to Mr Sternberg request and so forth directive ? We will accept your collateral. Thank you so much.

Should you decide to provide the Covid test ? I will then return the collateral. If not per Me Manfred Sternberg I will have to keep it.

This letter was created and approved by Charlton Holding Group LLC , on February 24th in the year of 2022.

Sam Gross

Charlton holding group llc.



EXHIBIT 35
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

REC'D SEP - 1

Case Number, 2022-cv-00688 Date, September 1, 2023

**AMERICAN ENVIRONMENTAL ENTERPRISES**
**Doing business as THE SAFETY HOUSE**
**Plaintiff**
**V.**
**Manfred Sternberg, Esquire, & Manfred Sternberg**
**Associates, PC**
**Charlton Holdings Group, Samuel Gross**
**Defendants**

**Gary Weiss, Asolarr LLC**
**Third party defendant**

## PRESENTATION PROOF CORRESPONDENCE OF SAM GROSS GIVEN REFUND AND CONCLUSION ON BUSINESS DEAL COMMUNICATION

.Hi Judge Younge, I am presenting to you proof that the deal between me Gary Weiss and Sam Gross, was concluded, satisfied, and confirmed on many occasions, and were never presented at the request to Amend the complaint to name me third party defendant in November of 2022, and answers to complaint afterwards, which was fraud by Attorney Manfred Sternberg, because he new that Sam Gross received full refund, at his order to take merchandise as collateral already in February of 2022, which both, Manfred Sternberg Esq. and Sam Gross, already sold the Collateral, and acknowledged that business is concluded.

I am enclosing for you 11 pages of Sam's Gross acknowledgement to the above . Also pages 7 & 8, whereby Sam Gross wanted to File to DISMISS the case, but is prohibited from Leaving Nassau County New York bye the Southern District court of NYC, New York, being that he is on Trial there, to file the request to Dismiss, pages 7 & 8, Enclosed, and asked me to do it for him.

Respectfully
Gary Weiss

10-1-2023

EXHIBIT 36
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

Case 2:22-cv-00688-JMY Document 200-1 Filed 10/01/23 Page 29 of 13
Case 2:22-cv-00688-JMY Document 200-1 Filed 10/01/24 Page 374 of 412

3/7/23, 11:04 AM

Advanced ∨

MIRTHA    Home

← Back ← ← → 📥 Move  🗑 Delete  🚫 Spam  ••• More

Settings ⚙

Compose

Today on AOL

| Inbox | 1.9K |
| Unread | |
| Starred | |
| Drafts | 479 |
| Sent | |
| Spam | |
| Trash | |
| ∧ Less | |

BLUERIVER4747/GARY <monipair@aol.com> ∨

sam gross

Re: Release from Liability, order satisfied

AA  B  I  U  S̶  🎨  ⌐⊃  ☺  ☰  ☰  ⇥  ⁞

| Views | Hide |
| Contacts | |
| Photos | |
| Documents | |
| Subscriptions | |
| Travel | |

On Tuesday, March 7, 2023, 10:35:04 AM EST, sam gross
<charltonholdinggroupllc@aol.com> wrote:

Yes. That is correct. And what we had agreed upon.

Thanks.
Sam Gross.

Sent from the all new AOL app for iOS

| Folders | Hide |
| + New Folder | |
| Saved Mail | |
| Archive | |
| gary | |
| Notebook | |
| Notes | |
| SavedIMs | |

On Tuesday, March 7, 2023, 8:59 AM,
BLUERIVER4747/GARY <monipair@aol.com> wrote:

Hi Sam, Regarding the Covid-19 kits to be shipped on
Feb-March of 2022,
You agreed that I gave you Merchandise of Diamonds
and Gems instead of the 151,000 covid-19 kits, as a
full refund which was on the advice of your counsel
Manfred Sternberg, which is over $3,000,000 worth,
and you consider it as full refund on the kits
transaction, and have no further demands from me,
and my obligations in that matter are satisfied in full,
and no further action or legal demand from me will take
place, which started as Collateral on advice of your
lawyer, and than considered as full refund.

 Gmail

Gary Weiss <wgary4109@gmail.com>

**lhealth**
2 messages

Case 2:22-cv-00688-JMY   Document 101   Filed 09/01/23   Page 3 of 13

---

**sam gross** <charltonholdinggroupllc@aol.com>                                       Wed, Mar 30, 2022 at 7:13 AM
To: Gary Weiss <wgary4109@gmail.com>, Manfred Sternberg ESQ <manfred@manfredlaw.com>, Manfred Email <manfred@mstemberg.com>

Good morning Gary.

Been that no resolution have been brought up ( no refund and no goods ).

Please be advise , per our consul advise ? Charlton holding group to start soliciting buyers to certain collateral items.

I hope you understand the situation and the problem spot you had placed me in.

And as much as We would like to wait ? We simply can not any longer.

Kindly send the updated list of the goods you have provided Charlton holding group for collateral so we are on the same page.
Thanks you so much.

Should you have any progress this morning? Definitely let us know.

Thanks

Sam
Charlton holding group llc

Sent from the all new AOL app for iOS

---

**Gary Weiss** <wgary4109@gmail.com>
To: sam gross <charltonholdinggroupllc@aol.com>, Manfred Sternberg ESQ <manfred@manfredlaw.com>



## (no subject)
1 message

**Gary Weiss** <wgary4109@gmail.com>                                                                 Tue, Mar 1, 2022 at 8:19 AM
To: Manfred Sternberg ESQ <manfred@manfredlaw.com>, sam gross <Charltonholdinggroupllc@aol.com>

Good Morning guys. We will deliver and I will address all your questions this morning. Sam, I forgive your antics as I know how hard it is to wait for this to co conclude, I believe all the things I stated and regardless of whatever issues I have, or had ? it will not affect you and your buyers. Of course as I said many times before ? If you like a refund you have no questions asked. And please keep your commitment to return my gems once this is concluded.

Thanks
Gary





# C HOLDING LLC

78 Buckminster rd , rvc , NY , 11570.

2/28/22

From the desk of : Sam Gross , president , Charlton Holding Group Llc

### Dear Gary weiss ,

This letter is to attest; that due to my Attorny , Mr Manfred Sternberg ESQ , request , I will accept collateral in the form of gems due to the fact you are having issues with supplying the Covid tests my organization had paid for, and you were supposed to send my customers in Philadelphia, New York and New Jersey. Due to my attorneys request I will not request a refund , but will obtain the commentary in the hope you may supply said Covid test. And of course should you not ? The collateral will be suffice.

My attorney and his team has requested said collateral. There for I have to accept it. I do respect your efforts. And I understand you have no goods to supply at the moment due to certain global supply chain issues. So due to Mr Sternberg request and so forth directive ? We will accept your collateral. Thank you so much.

Should you decide to provide the Covid test ? I will then return the collateral. If not per Me Manfred Sternberg I will have to keep it.

This letter was created and approved by Charlton Holding Group LLC , on February 24ᵗʰ in the year of 2022.

Sam Gross

Charlton holding group llc.



4



# SamGrosss



$3,000,000 worth, and you consider it as full refund on the kits transaction, and have no further demands from me, and my obligations in that matter are satisfied in full, and no further action or legal demand from me will take place, which started as Collateral on advice of your lawyer, and than considered as full refund

      

Delete    Archive    Move    Reply All    More



SAM TO ME
1:12:31 AM

XM Wi-Fi

< S

## SamGrosss



BLUERIVER4747/GARY

Release from Liability, order
satisfied

Hi Sam. Regarding the Covid-19 kits to be
shipped on Feb-March of 2022.
You agreed that I gave you Merchandise
of Diamonds and Gems instead of the
151,000 covid-19 kits, as a full refund
which was on the advice of your counsel
Manfred Sternberg, which is over
$3,000,000 worth, and you consider it as
full refund on the kits transaction, and
have no further demands from me, and
my obligations in that matter are satisfied
in full, and no further action or legal
demand from me will take place, which
started as Collateral on advice of your
lawyer, and than considered as full refund.

Delete     Archive     Move     Reply All     More

*78 Buckminster RD, RVC, NJ*
*11570*

YOUR INFORMATION HERE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA (Philadelphia)

AMERICAN ENVIRONMENTAL : 
ENTERPRISES INC. doing business as :
THESAFETYHOUSE.COM :   NO. 2:22-cv-00688-JMY
     *Plaintiff,* :
      :
      :
  v.      :
      :
      :
MANFRED STERNBERG, ESQUIRE, :
MANFRED STERNBERG & :
ASSOCIATES, PC, :
CHARLTON HOLDINGS GROUP, LLC, :
SAMUEL GROSS, :
     *Defendants.* :
  v.      :
      :
GARY WEISS, :
A.SOLAR LLC, :   STIPULATION
    *Third Party Defendants* :
And :
AMERICAN ENVIRONMENTAL :
ENTERPRISES INC. :
    *Counter Defendant* :

## NOTICE

    Defendants, Charlton Holdings Group, LLC, and Samuel Gross, pursuant to Rule

41(a)(1)(A)(i) and Rule 41(c) of the Federal Rules of Civil Procedure, hereby gives notice that

the previously filed Third Party Complaint against Third Party Defendant Gary Weiss and A.

Solar, LLC, is voluntarily **DISMISSED**. No party has filed a responsive pleading to said Third

Party Complaint. Accordingly, Defendants notice voluntary dismissal, without prejudice. *See*

Fed. R. Civ. P. 41(a)(1)(B).

Date: 3/17/23       Respectfully submitted,

*Charlton Holding group LLC*

*7*

78 BUCKMINSTER RD, RVC, NY

YOUR INFORMATION HERE 11570

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA (Philadelphia)

| | | |
|---|---|---|
| AMERICAN ENVIRONMENTAL ENTERPRISES INC. doing business as THESAFETYHOUSE.COM<br>*Plaintiff,* | : : : : | NO. 2:22-cv-00688-JMY |
| v. | : : | |
| MANFRED STERNBERG, ESQUIRE, MANFRED STERNBERG & ASSOCIATES, PC, CHARLTON HOLDINGS GROUP, LLC, SAMUEL GROSS,<br>*Defendants.* | : : : : : | |
| v. | : : | |
| GARY WEISS, A.SOLAR LLC,<br>*Third Party Defendants*<br>And<br>AMERICAN ENVIRONMENTAL ENTERPRISES INC.<br>*Counter Defendant* | : : : : : : : | STIPULATION |

## NOTICE

Defendants, Charlton Holdings Group, LLC, and Samuel Gross, pursuant to Rule 41(a)(1)(A)(i) and Rule 41(c) of the Federal Rules of Civil Procedure, hereby gives notice that the previously filed Third Party Complaint against Third Party Defendant Gary Weiss and A. Solar, LLC, is voluntarily **DISMISSED**. No party has filed a responsive pleading to said Third Party Complaint. Accordingly, Defendants notice voluntary dismissal, without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(B).

Date: 3/17/23

Respectfully submitted,

Charlton Holding group LLC



S

## SamGrosss



SAM TOME
8:59 AM





9

WHILE I AM DRIVING

## Re: Release from Liability, order satisfied

From: sam gross (charltonholdinggroupllc@aol.com)

To:     monipair@aol.com; samgross3@icloud.com

Date:  Tuesday, March 7, 2023, 11:21 AM EST

Hello Gary.
Yes your email is indeed correct and the facts are the agreed upon facts.
Mr Manfred Sternberg ESQ had directed to receive this collateral as means of ending the transaction. And conclude the business between your entity A Solar LLc and Charlton Holding Group llc and himself.
Should you need more clarification? We can discuss. However at the present time ? I deemed that our business is concluded due to the fact that you have provided the collateral as requested by Mr Sternberg ESQ.

Sam Gross
President
Charlton holding group llc

Sent from the all new AOL app for iOS

On Tuesday, March 7, 2023, 8:59 AM, BLUERIVER4747/GARY <monipair@aol.com> wrote:

Hi Sam, Regarding the Covid-19 kits to be shipped on Feb-March of 2022,
You agreed that I gave you Merchandise of Diamonds and Gems instead of the 151,000 covid-19 kits, as a full refund which was on the advice of your counsel Manfred Sternberg, which is over $3,000,000 worth, and you consider it as full refund on the kits transaction, and have no further demands from me, and my obligations in that matter are satisfied in full, and no further action or legal demand from me will take place, which started as Collateral on advice of your lawyer, and than considered as full refund.



**AOL Mail.**

Find messages, documents, photos or people       Advanced ∨       🔍

MIRTHA       🏠 Home

Compose

← Back  ◀  ◀◀  ➡       📥 Move   🗑 Delete   🚫 Spam   ••• More       ▼ ✕       Settings

Today on AOL

Re: Release from Liability, order satisfied                    Aol/Inbox ☆

Inbox          1.9K
Unread
Starred
Drafts          479
Sent
Spam
Trash
∧ Less

**sam gross** <charltonholdinggroupllc@aol.com>          🖨  Tue, Mar 7 at 11:21 AM  ☆
To: BLUERIVER4747/GARY,  samgross3@icloud.com

Hello Gary,
Yes your email is indeed correct and the facts are the agreed upon facts.
Mr Manfred Sternberg ESQ had directed to receive this collateral as means of ending the transaction. And conclude the business between
your entity A Solar LLc and Charlton Holding Group llc and himself.
Should you need more clarification? We can discuss. However at the present time ? I deemed that our business is concluded due to the fact
that you have provided the collateral as requested by Mr Sternberg ESQ.

Sam Gross
President
Charlton holding group llc

Sent from the all new AOL app for iOS

Views          Hide

Contacts
Photos
Documents
Subscriptions
Travel

Folders        Hide

+ New Folder
Saved Mail
Archive

On Tuesday, March 7, 2023, 8:59 AM, BLUERIVER4747/GARY <monipair@aol.com> wrote:

Hi Sam, Regarding the Covid-19 kits to be shipped on Feb-March of 2022,
 You agreed that I gave you Merchandise of Diamonds and Gems instead of the 151,000 covid-19 kits, as a full
refund which was on the advice of your counsel Manfred Sternberg, which is over $3,000,000 worth, and you
consider it as full refund on the kits transaction, and have no further demands from me, and my obligations in
that matter are satisfied in full, and no further action or legal demand from me will take place, which started as
Collateral on advice of your lawyer, and than considered as full refund.

◀  ◀◀  ➡  •••

Sam Gross  🔍
charltonholdinggroupllc@aol.com
+ Add to contacts

Case 2:22-cv-00688-JMY   Document 101   Filed 09/01/23   Page 13 of 13
Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 385 of 412

3/7/23, 11:31 AM



Advanced ∨                                    MIRTHA      Home

Compose

← Back   ↩   ↩↩   →   📇 Move   🗑 Delete   🚫 Spam   ••• More        Settings ⚙

Today on AOL                    Re: Release from Liability, order satisfied        ☆

Inbox        1.9K          sam gross                        🖨              ☆       Sam Gross  🔍
Unread                     BLUERIVER4747/GARY,
                           samgross3@icloud.com                                    charltonholdinggroupllc@aol.com
Starred                                                                            + Add to contacts
Drafts        478     Hello Gary.
                      Yes your email is indeed correct and the facts are the agreed upon facts.
Sent                  Mr Manfred Sternberg ESQ had directed to receive this collateral as
Spam                  means of concluding the transaction. And conclude the business between
                      your entity A Solar LLc and Charlton Holding Group llc and himself.
Trash                 Should you need more clarification? We can discuss. However at the
                      present time ? I deemed that our business is concluded due to the fact
∧ Less                that you have provided the collateral as requested by Mr Sternberg ESQ.

Views        Hide     Sam Gross
                      President
📇 Contacts            Charlton holding group llc

📷 Photos
                      Sent from the all new AOL app for iOS
📄 Documents

📑 Subscriptions
                      On Tuesday, March 7, 2023, 8:59 AM,
✈ Travel              BLUERIVER4747/GARY <monipair@aol.com> wrote:

Folders      Hide         Hi Sam, Regarding the Covid-19 kits to be shipped on
                          Feb-March of 2022,
+ New Folder               You agreed that I gave you Merchandise of Diamonds
  Saved Mail              and Gems instead of the 151,000 covid-19 kits, as a
                          full refund which was on the advice of your counsel
  Archive                 Manfred Sternberg, which is over $3,000,000 worth,
  gary                    and you consider it as full refund on the kits
                          transaction, and have no further demands from me,
  Notebook                and my obligations in that matter are satisfied in full,
  Notes                   and no further action or legal demand from me will take
                          place, which started as Collateral on advice of your
  SavedIMs                lawyer, and than considered as full refund.


                                ↩   ↩↩   →   •••


                  Reply  Reply All  Forward

12

**RKADLER**

Randolph K. Adler, Jr.
Managing Partner
212.381.0838
rka@rkadler.law

EXHIBIT  37
WIT: M. Steinberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

February 23, 2022

Manfred Sternberg, Esq.
Attorney at Law
1700 Post Oak Blvd., 2 Blvd. Place, Suite 600
Houston, TX 77056
United States of America

RE:   **Demand for Preservation of Funds as well as Documents Related to all Transactions between Charlton Holdings Group, LLC and VRC Medical Services**

Dear Manfred:

This law firm, RK ADLER & Associates, PLLC, along with The Law Offices of Robert G. Stahl, LLC, represents VRC Medical Services of 357 Elf Road, Suite B, Sewaren, New Jersey 07077 ("VRC").

As previously indicated to you, in my February 10, 2022 demand letter, your client, Charlton Holdings Group, LLC ("Charlton"), entered into several Sale and Purchase Agreements (collectively, the "SPA") to supply a total of Two Hundred Four Thousand One Hundred Twenty (204,120) two (2) count iHealth COVID-19 home test kits to VRC (collectively, the "Transaction"). In connection with the Transaction, VRC deposited for safekeeping to your Attorney IOLTA a total of Two Million Four Hundred Forty-Nine Thousand Four Hundred Forty-Four United States Dollars ($2,449,440.00 USD).

Charlton has failed to perform on its contractual obligations and is in material breach of the SPA. For avoidance of doubt, you are hereby placed on notice that there is an official dispute as to the funds currently being held in your IOLTA account that pertain to the Transaction between your client, Charlton Holdings Group, LLC, "Sam" Shlomo Gross, and our client VRC. As previously indicated in my February 10, 2022 demand letter, you are **on notice** that the funds are the property of VRC and its contracted parties and cannot be disbursed until this matter is resolved. Should Charlton, or anyone purportedly acting on its behalf, claim that the deal has been completed and the goods delivered, that is incorrect and any paperwork supposedly reflecting same would be fraudulent. The transaction has not been completed, the contract has not been met and the funds must not be disbursed to Charlton nor any person or company on its behalf.

**DO NOT DISBURSE ANY PORTION OF THE FUNDS TOTALING TWO MILLION FOUR HUNDRED FORTY-NINE THOUSAND FOUR HUNDRED FORTY-FOUR UNITED STATES DOLLARS ($2,449,440.00 USD). THESE FUNDS MUST BE HELD IN TRUST IN YOUR ATTORNEY IOLTA ACCOUNT UNTIL THE TRANSACTION IS COMPLETE.**

You were previously placed on notice that you must take all necessary steps to preserve, and not destroy, conceal, or alter, any and all communications and documents relevant to this matter, including by way of example, and without limitation, emails, text and self-destructing messages, social media posts, voicemails, records, files and other data,



Randolph K. Adler, Jr.
Managing Partner
212.381.0838
rka@rkadler.law

wherever located and regardless of the format or media. We reiterate this notification. As before, you are also notified that purposeful destruction of such evidence could result in penalties, including legal sanctions.

Litigation counsel will be in communication with you about this matter in the coming days. Thank you, in advance, for your prompt attention to this extremely important and time-sensitive matter.

Very truly yours,

*Randolph K. Adler, Jr.*

Randolph K. Adler, Jr.
Managing Partner

cc: Robert G. Stahl, Esq.



---------- Forwarded message ---------
From: **Manfred** <Manfred@msternberg.com>
Date: Tue, Mar 1, 2022 at 5:15 PM
Subject: Re: VRC MEDICAL SERVICES
To: wjb@brglaw.com <wjb@brglaw.com>
Cc: sokolski.zekaria@mindspring.com <sokolski.zekaria@mindspring.com>


HI Bill As I told you on the phone, Ms. Zekaria is counsel to the vendor of the iHealth tests kits that were purchased by Charlton from Ms. Zekaria's client, Gary Weiss.   Ms. Zekaria does not know much about the transaction due to her very limited involvement, or any knowledge about my client Charlton, as she only represented her client who is the vendor of the product and the vendor is responsible for delivery of the product.    The vendor has been her client for some time, and in this case she was serving as counsel for that vendor to receive payment for product on his behalf per his invoice, and no one disputes I wired full payment to her IOLA account for the benefit of her client.


As I indicated to the lawyers who I shared her information with just yesterday,  to contact Ms. Zekaria will only serve to harass the parties and impede the transaction.   If there is any hope of salvaging this transaction any additional intervention is sure to destroy what my client has worked so hard to put together.


My suggestion is to wait a few more days and plan for delivery.  I will say that my client is still very optimistic about immediate delivery because of his long relationship with the vendor, the vendor's acknowledgement of his full responsibility for the veracity of the transaction and the vendor's repeated assurances of delivery to us both.


Please direct all further correspondence concerning this transaction to me.


Respectfully,


*Manfred Sternberg*



EXHIBIT 38
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

1

WEISS 000323

## Manfred Sternberg & Assoc. PC

## Attorneys at Law

1700 Post Oak Boulevard

2 BLVD Place, Suite 600

Houston, Texas 77056

☎Ph: 713-622-4300

Fax: 713-622-9899

Email: manfred@manfredlaw.com





**From:** "sokolski.zekaria@mindspring.com" <sokolski.zekaria@mindspring.com>
**Date:** Tuesday, March 1, 2022 at 1:34 PM
**To:** Manfred Sternberg <Manfred@msternberg.com>, "'Sokolski & Zekaria P.C.'"
<sokolski.zekaria@mindspring.com>
**Subject:** FW: VRC MEDICAL SERVICES

Please address this and copy me per our discussion in as much as this has absolutely nothing to do with my client and should not be referred to me in any way.

WEISS 000324

Thank you.


Daphna Zekaria, Esq.



**From:** William J. Berman, Esq. <wjb@brglaw.com>
**Sent:** Tuesday, March 01, 2022 11:25 AM
**To:** SOKOLSKI.ZEKARIA@MINDSPRING.COM
**Subject:** VRC MEDICAL SERVICES


Dear Ms. Zekaria,


I represent VRC Medical Services and Steven Corba. Pursuant to our brief telephone conversation of moments ago, this written request is made to provide you are writing as to what relief my client seeks and why. To date, I have learned that the other parties involved are Sam Shlomo Gross, Gary Weiss and Charlton Holdings Group, LLC. I will make no mention of Manfred Sternberg Esq. or yourself as a party until I learn of the facts from your response to this inquiry.


As I trust you are aware, the parties entered into a Sale and Purchase Agreements which called for the delivery of 204,120  iHealth Covid – 19 home test kits to VCR in consideration of a payment of $2,449,440. VCR transferred the aforesaid funds to the trust account of Manfred Sternberg Esq. Mr. Sternberg has advised that he transferred the funds to your trust account. Notwithstanding the significant period of time between the deposit of funds into the trust account, there has been no delivery of any product to my client. However, unfortunately, I understand that several people have collected certain funds as their profit or commissions. I do hope the aforesaid is false.

WEISS 000325

My client has made through prior counsel previous demands for the return of his funds which were deposited in trust and not to be released until up Bill of Lading was issued. A brief review of the history of certain individuals have led our group to conclude that this was a fraudulent transaction. We hope you can explain that it was not and have the funds returned immediately. In the event that we do not receive a satisfactory and substantive explanation with a commitment to return the funds immediately, I will be forced to take further action to protect my clients rights. If you ignore this inquiry or provided an unsatisfactory response, it will only lead to expensive and protracted litigation for all. If you had no involvement in any capacity whatsoever with the described transaction and did not receive funds from Mr. Sternberg, please so state but definitely do not hide behind Mr. Sternberg if you did receive the funds.

I look forward to hearing from you by the end of the day as you promised.

Stay safe.

Bill

*Go Green! Please consider the environment before printing this email.*

**William J. Berman, Esq.**

BERMAN ROSENBACH LLC

150 Morristown Road

Suite 200

Bernardsville, NJ 07924

Tel:  908.992.7720 ext. 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

|  |  |
|---|---|
| NAIL & BEAUTY LLC, | Civil Action |
| Plaintiff, | |
| | Index No. |
| v. | |
| VRC MEDICAL SERVICES, INC.;<br>MICHAEL APA; DANIEL SHAUGHNESSY;<br>STEPHEN F. CORBA a/k/a STEPHEN F.<br>CORBA, JR.; STEPHANIE CORBA;<br>CHARLTON HOLDINGS GROUP, LLC;<br>SHLOMO H. GROSS a/k/a SAMUEL<br>H. GROSS a/k/a SAM GROSS a/k/a<br>SAM N. GROSS; MANFRED STERNBERG;<br>MANFRED STERNBERG & ASSOC. P.C.;<br>DAPHNA ZEKARIA; SOKOLSKI &<br>ZEKARIA, P.C., | Venue is set pursuant to CPLR 503 based<br>plaintiff's place of business<br><br><br><br><br><br>SUMMONS |
| Defendants. | |

You are hereby summoned and required to serve upon the attorneys for plaintiffs, an answer to the complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer the complaint, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Purchase, New York
April 1, 2022

PAYKIN KRIEG & ADAMS, LLP

EXHIBIT 39
WIT: M. Sternberg
DATE: 2-7-24
Joanne Rose, RPR, RMR

By: *David Schrader*
David A. Schrader, Esq.
2500 Westchester Avenue, Ste. 107
Purchase, New York 10577
(347) 879-2345
dschrader@pka-law.com
*Attorneys for Plaintiff*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

NAIL & BEAUTY LLC,                                    Civil Action

        Plaintiff,

                              Index No.

        v.

VRC MEDICAL SERVICES, INC.;
MICHAEL APA; DANIEL SHAUGHNESSY;
STEPHEN F. CORBA a/k/a STEPHEN F.                    COMPLAINT
CORBA, JR.; STEPHANIE CORBA;
CHARLTON HOLDINGS GROUP, LLC;
SHLOMO H. GROSS a/k/a SAMUEL
H. GROSS a/k/a SAM GROSS a/k/a
SAM N. GROSS; MANFRED STERNBERG;
MANFRED STERNBERG & ASSOC. P.C.;
DAPHNA ZEKARIA; SOKOLSKI &
ZEKARIA, P.C.,

        Defendants.

---

        Plaintiff Nail & Beauty LLC ("N&B" or "Plaintiff"), by its attorneys, by way of

complaint against defendants, alleges as follows:

## The Parties

    1.    Plaintiff N&B is a New York limited liability company with its principal place of

business located at 400 Jericho Turnpike, Suite 226, Jericho, New York 11753. Among other

things, N&B is in the business of selling personal protective equipment (including but not limited to

COVID testing kits) and other products,

    2.    Defendant VRC Medical Services, Inc. ("VRC"), is upon information and belief, a

New York corporation with its principal place of business located at 357 Elf Road, Sewaren, New

Jersey 07077. Upon information and belief, VRC is owned and/or operated by defendants Daniel

(Danny) Shaughnessy ("Shaughnessy"), Stephen F. Corba ("Stephen Corba") and Stephanie Corba.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been

Upon information and belief, VRC's officers and directors include Shaughnessy, Stephen Corba and Stephanie Corba. Upon information and belief, Michael Apa ("Apa") was an agent of VRC authorized to represent VRC in connection with its transaction with plaintiff. Shaughnessy, Stephen Corba, Stephanie Corba and Apa ("Apa") are hereinafter collectively referred to as the "Managers". These same four individuals, the Managers, were all directly and intimately involved in both directing and operating VRC and were directly involved in undertaking and directing the wrongful conduct of VRC the subject of this Complaint.

3.    Upon information and belief, defendant Shaughnessy is an individual residing at 132 Somerset Ave., South Plainfield, New Jersey 07080. Shaughnessy is an owner, director, officer and manager of VRC and was directly involved in the fraudulent, reckless and negligent misrepresentations made to plaintiff set forth in more detail below.

4.    Upon information and belief, defendant Stephen Corba (a/k/a Stephen F. Corba a/k/a Stephen F. Corba, Jr.) is an individual residing at 24 Alexis Dr., Farmingdale, New Jersey 07727. Stephen Corba is an owner, director, officer and manager of VRC and was directly involved in the fraudulent, reckless and negligent misrepresentations made to plaintiff set forth in more detail below.

5.    Upon information and belief, defendant Stephanie Corba is an individual and is the wife of Stephen Corba; and also resides at 24 Alexis Dr., Farmingdale, New Jersey 07727. Stephanie Corba is an owner, director, officer and manager of VRC and was directly involved in the fraudulent, reckless and negligent misrepresentations made to plaintiff set forth in more detail below.

6.    Upon information and belief, defendant Michael Apa ("Apa") is an individual

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

residing at 175 Voorhis Road, River Edge, New Jersey 07661. Apa was an agent of VRC and was directly involved in the fraud perpetrated upon plaintiff. He was also directly involved in making fraudulent, reckless and negligent misrepresentations to plaintiff set forth in more detail below. Upon information and belief, Apa received (or was to receive) a fee for his agency relationship with VRC in connection with the transaction at issue in this case.

7.     Each of the Managers was an agent of VRC involved in the wrongful conduct committed by VRC the subject of this action. Each is individually, personally and jointly responsible for VRC's misconduct and its liability to plaintiff and were each knowingly involved in the frauds committed against plaintiff and the conversion of plaintiff's funds.

8.     As set forth below, VRC entered into a contract with plaintiff whereby plaintiff paid $2.3 million to purchase COVID Test Kits. VRC and the Managers made false representations to plaintiff to induce plaintiff to enter into this transaction and pay for the COVID Test Kits notwithstanding that plaintiff did not have such goods. Although VRC is a corporate entity, it was used in the commission of a fraud by, and for the benefit of, the Managers. VRC acts as the alter ego of the Managers.

9.     Defendant Charlton Holdings Group LLC ("CHG"), is upon information and belief, a New York limited liability company with its principal place of business at 78 Buckminster Road, Rockville Center, New York 11570. Upon information and belief, it also maintains an address at 11 Broadway, New York, New York. Upon information and belief, CHG is owned and operated by defendant Shlomo H. Gross a/k/a Samuel H. Gross a/k/a Sam Gross a/k/a Sam N. Gross ("Gross").

10.     Defendant Gross is an individual who, upon information and belief, resides at 78

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

Buckminster Rd, Rockville Centre, New York 11570. This is also an address used by Gross for the operation of CHG. Gross is an owner, member, and manager of CHG. Upon information and belief, Gross has a criminal record and was previously convicted of Grand Larceny and Scheme to Defraud in connection with a scam in the Diamond Industry. Gross spent 3 years in jail from 2014 to 2017.

11.     Upon information and belief, Gary Weiss ("Weiss") is believed to be an owner, member and manager of CHG and is believed to be directly involved in the scam committed by Gross and CHG and the VRC parties. Plaintiff has inadequate information to make direct allegations against Weiss at this time but reserves the right to amend to add Weiss after taking discovery.

12.     CHG and Gross were all directly and intimately involved in the fraudulent scheme perpetrated upon plaintiff to sell plaintiff COVID Test Kits that did not exist. Alternatively, CHG and its Principals committed a fraud against VRC resulting in the ultimate theft of $2.3 million from plaintiff.

13.     Gross was directly involved in undertaking and directing the wrongful conduct of CHG; and upon information and belief, may have also been involved in directing the conduct of VRC the subject of this Complaint.

14.     Defendant Manfred Sternberg ("Sternberg") and his law firm Manfred Sternberg & Assoc. P.C. ("Sternberg PC") are attorneys in the State of Texas (the "Sternberg Defendants") who maintain an office at 1700 Post Oak Boulevard, 2 Blvd Place, Suite 600, Houston, Texas 77056. The Sternberg Defendants were directly involved in the fraudulent conduct committed by VRC, the Managers, CHG and Gross. They acted as an escrow agent for funds purportedly transferred by

4

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been

VRC to CHG.

15.     The Sternberg Defendants received the funds wired by VRC allegedly in payment of the purchase of the purported COVID Test Kits. The funds were funneled through the Sternberg Defendants' escrow account on behalf of VRC, the Managers, CHG and Gross.

16.     The \$2.3 million in wired proceeds of the fake sale of COVID Test Kits to the plaintiff was wired to VRC's bank account in Bayonne, New Jersey. Notwithstanding that VRC said that the funds were refundable if the product was not delivered, upon information and belief, VRC wired the funds to the Sternberg Defendants in Texas from New Jersey. The funds were then wired by the Sternberg Defendants to New York to the Zekaria law firm (discussed below).

17.     The Sternberg Defendants had knowledge that VRC and CHG did not have the goods to sell to the plaintiff and that there was a fraud being committed. Each of VRC, and then the Sternberg Defendants, each understood that they were not to release any funds from their escrow account until goods were delivered to plaintiff. Their failure to honor this condition is further evidence of their involvement in the fraud.

18.     Alternatively, the Sternberg Defendants were reckless, grossly negligent or negligent in their conduct as an escrow agent. Upon information and belief, the Sternberg Defendants released the funds from their escrow account to assist VRC, the Managers, CHG and Gross either to commit a fraud upon the plaintiff, or recklessly/negligently without regard to the restrictions on transfer and that the funds appeared to be utilized for a fraud.

19.     Defendant Daphna Zekaria ("Zekaria") and her law firm Sokolski & Zekaria, P.C. ("S&Z PC") are attorneys in the State of New York (the "Zekaria Defendants") who maintain an office at 1133 Broadway, Suite 1001, New York, NY 10010. The Zekaria Defendants were

5

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

Case 2:22-cv-00688-JMY   Document 200-1   Filed 10/01/24   Page 398 of 412

directly involved in the fraudulent conduct committed by VRC, the Managers, CHG and Gross.

20.     The Zekaria Defendants received the funds wired from the Sternberg Defendants purportedly for the payment of non-existent COVID Test Kits. These funds were funneled to the the Zekaria Defendants escrow account on behalf of VRC, the Managers, CHG and Gross.

21.     Each of the Sternberg Defendants and the Zekaria Defendants received payment in connection with their participation in the movement of the funds effectively stolen from plaintiffs. Each were also aware, or on notice of facts which should have led them to believe, that a fraud was being committed.

22.     At least a portion of the $2.3 million in wired proceeds of the fake sale of COVID Test Kits to the plaintiff was wired to the Zekaria Defendants from the Sternberg Defendants.

23.     Each of the Sternberg Defendants and Zekaria Defendants were on notice and were notified of the fraudulent nature of the transaction and were requested to return the funds to VRC and/or plaintiff. Both sets of attorneys refused to do so and also refused to provide information on the details of their relationship with the other defendants or the transactions at issue in this case.

24.     Each of the Sternberg Defendants and the Zekaria Defendants were in receipt of the fraudulent funds and knowingly paid such funds from their escrow account to the fraudsters.

25.     The Zekaria Defendants had knowledge that defendants did not have the goods to sell to the plaintiff and that there was a fraud being committed. They actually ignored contacts from the plaintiff and VRC directing the return of the funds to plaintiff.

26.     The Zekaria and Sternberg Defendants were requested to return the escrowed funds to plaintiff, or at a minimum, hold the funds because of the fraud involved. Both ignored these contacts and failed to either freeze the funds or contact plaintiff or VRC.

6

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been      7 of 21

27.   Alternatively, the Zekaria Defendants were reckless, grossly negligent or negligent in their conduct.  Upon information and belief, the Zekaria Defendants have released the funds from their escrow account to assist VRC, the Managers, CHG and Gross to commit a fraud upon the plaintiff.  The Zekaria Defendants and Sternberg Defendants were each paid in connection with their role in these transactions and have shared in plaintiff's funds.

**THE FRAUDULENT TRANSACTION**

28.   On or about January 18, 2022, plaintiff entered into an agreement with defendant VRC for the purchase of 181,440 iHealth COVID-19 Antigen Rapid Test 2 PC Kits (the "COVID Test Kits").  The purchase price for the COVID Test Kits was $2,358,720.  The transaction was evidenced by a Commercial Invoice issued by VRC.  A copy of the Commercial Invoice is annexed hereto as Exhibit A (the "Contract").  The Commercial Invoice was expressly signed by Danny Shaughnessy, an officer of VRC.

29.   In January 2022, in connection with the negotiation of the purchase transaction, Apa, Stephen Corba and Shaughnessy from and on behalf of VRC made oral representations to Dennis Schnur ("Schnur") and Rick Kantor ("Kantor"), each agents of plaintiff in connection with the transaction.  These representations included that VRC had immediate access to sell a large volume of COVID Test Kits and the test kits were maintained in several warehouses around the country and that the goods were under VRC's control.

30.   In connection with the acceptance of the Contract by plaintiff on January 18, 2022, the Apa, Stephen Corba and Shaughnessey made express representations to Schnur and Kantor that the Test Kits would be delivered no later than January 22, 2022.  This delivery date was also

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

expressly indicated on the Commercial Invoice. The Commercial Invoice expressly represented that the product would ship within 24-48 hours of payment.

31. The purchase of the goods by plaintiff was time sensitive based upon the changing market price of COVID Test Kits and the needs of plaintiff's customers.

32. VRC and its Managers also expressly represented that the payment was refundable if the goods were not timely delivered.

33. On January 19, 2022, pursuant to instructions received from VRC, plaintiff wired the purchase price of $2,358,720 into the bank account of VRC.

34. On that same day after the wire was sent, Stephen Corba again stated that the product would be delivered within 24-48 hours of receipt of the wire and if not timely delivered, the payment would be refundable at plaintiff's option. Plaintiff was also expressly told that VRC would not release the funds unless the goods were delivered to plaintiff.

35. VRC did not disclose the source of the goods being sold or that a known criminal was involved in the transaction. VRC also did not disclose that they in fact were releasing the funds sent to VRC and sending them to the Sternberg Defendants (see below).

36. On January 20, 2022, Shaughnessey of VRC notified plaintiff that they would have an update soon on the specific Lot Numbers, Expiration Dates and Shipping Arrival of the product. Also on that date, Shaughessy and Corba each acknowledged receipt of the wire and that the arrangements were being made for the delivery of the goods from a location in Pennsylvania.

37. On January 20, 2022, plaintiff requested proof of shipment of the goods and notified VRC that if proof of shipping was not received by the next day, plaintiff wanted a refund of its payment.

8

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

38.     Corba, on behalf of VRC and the Managers, falsely stated that they had been working with their distributor for many years and had sold numerous test kits received from this distributor. This statement was false when made and was made to induce plaintiff to make a purchase of goods that defendants did not have. VRC also stated that they did $250 million of sales in the past year – another false statement. Defendant also again indicated that the money paid by plaintiff was fully refundable upon request.

39.     Defendants, through Apa, Shaughnessy and Stephen Corba made repeated promises that the goods were being delivered. When the goods were not delivered by January 21, 2022, plaintiff requested a refund of their money paid.

40.     Over the next few days, VRC and its Managers continued to make excuses for the delay and never delivered the goods or refunded the money paid – as requested. Plaintiff even offered to send its own truck to pick up the goods and were told by VRC and its Managers that this "would just delay things."

41.     Over the week or two following the funds being wired, VRC's Managers made repeated excuses and provided false information about having shipping documents and also provided multiple false dates when the goods would be delivered. Defendants made numerous false excuses for the delay, as well as made repeated promises of the shipment to be made. Among other things, these defendants made repeated false statements that the goods were at different warehouse locations, including in California, Pennsylvania, Texas and New York (including in the Bronx). In fact, none of these representations were true and VRC did not have, or have access to, the goods that had been promised in the Contract.

9

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

42.    Even after failing to deliver the goods, VRC attempted to get plaintiff to make an additional alternative purchase of goods for even more money.

43.    On February 2 and 3, 2022, VRC purported that they were gong to refund plaintiff's money and that they were arranging the refund. This representation was false and the funds were not returned to plaintiff.

44.    In furtherance of covering up the fraudulent scheme, and despite repeated requests made to VRC's principals and another attorney that purported to represent VRC, VRC refused to provide any documentation or information about the location of the goods, the source of the purported goods, the location of the money or any other information about the transaction. Defendant made repeated efforts to conceal and cover up their fraud.

45.    After threats were made of an immediate lawsuit, defendant VRC then provided the plaintiff with fake documentation purporting that the goods were in a warehouse in the Bronx, New York. The fake warehouse "estimate" document received was redacted such that the identifying information about the purported goods was redacted. The address block of the warehouse itself was also doctored and it was clear on its face that the document was fraudulent. When the warehouse was contacted about the documentation, it could not identify the document or the identifying warehouse "estimate" identification number.

46.    After the false nature of the warehouse document was addressed with VRC, VRC claimed that they bought the goods from CHG and Gross and that they were the victim of the fraud. VRC admitted at this time that they had never had possession of the goods. In effect, VRC and the Managers admitted that they had provided false information to plaintiff to induce the transaction.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

47.     CHG is owned by Gross who is a criminally convicted fraudster.

Notwithstanding all of the representations made by VRC that it had the goods, that it paid for the
goods in January 2022, that the goods were in transit, VRC later provided plaintiff a copy of a
purported Bill of Sale with CHG dated February 8, 2022 – a date weeks after VRC alleged to
have the goods and had failed to deliver the goods which had been promised by January 20,
2022.

48.     Efforts were made to contact CHG and CHG did not respond to these efforts.
Efforts were made to contact the various attorneys involved in the wire transfers to demand the
return of the funds. Defendants CHG, Gross and the attorney defendants never returned calls
from plaintiff and its representatives.

49.     Plaintiff has notified VRC, with whom it has direct contractual privity, that it
cancelled the transaction. Plaintiff also demanded the return of its $2.3 million payment which
VRC had promised to make if the goods were not delivered.

50.     VRC is in breach of its Contract and fraudulently induced plaintiff to enter into
the Contract. All of the defendants were part of a fraudulent scheme to convert plaintiff's
money. No defendant had an intent to deliver the goods to plaintiff which had been purchased,
and each was a knowing participant in the fraudulent scheme.

### FIRST CAUSE OF ACTION
### (Fraud and Misrepresentation)

51.     Plaintiff repeats and realleges each of the allegations set forth above as if set forth at
length herein.

52.     Defendants made false and inaccurate representations and statements to plaintiff
(and further intentionally omitted to inform plaintiff of relevant facts) to induce plaintiff to purchase

11

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been

goods from VRC which VRC did not have and was never able to deliver.  These misrepresentations are set forth in the above.

53.     These deceptive statements, misrepresentations and omissions include but are not limited to repeated false and/or misleading statements that defendant had the goods; had immediate access to the goods; that the goods would be delivered within 24-48 hours; that plaintiff would and could refund the funds if the goods were not timely delivered; that defendant Gross, a known criminal convicted in a fraud, was involved in the transaction.

54.     At the time these statements were made by the defendants, they were false and defendants knew them to be false.

55.     These deceptive statements, misrepresentations and omissions were undertaken knowingly by defendant, despite defendant's full knowledge that plaintiff was relying on these representations in agreeing to enter into the Contract and wire the funds for the purchase of the COVID Test Kits.

56.     These affirmative statements, misrepresentations and omissions were made by defendants in an ongoing series of telephone conversations with plaintiff and in text messages.

57.     It became clear during ongoing communications after the goods were not timely delivered that defendants did not have the goods.  Yet, despite this, defendants continued to make false statements that the goods were in transit, would be delivered shortly and other false statement to mislead plaintiff and attempt to cover up the fraud with additional misstatements of intention, and additional concealments.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

58. The concealed facts and misstatements, had they been disclosed (and been known to be false), would have been material to plaintiff, and would have resulted in plaintiff not agreeing to enter into the Contract or make payment for the goods.

59. Moreover, defendant had (and knew that they had) superior undisclosed knowledge affecting the veracity of and likely reliance upon what they did say.

60. Even to the extent that VRC and its Managers were not involved in the scheme by CHG and Gross to steal the funds, their misrepresentations, concealments and omissions had the same effect on fraudulent inducing plaintiff to enter into the Contract and make payment for goods that VRC never had.

61. Each of these false representations and knowing omissions or concealments were made or effected by defendant with the knowledge that such statements were false and misleading, or that plaintiff would be misled by said omissions and/or concealments. Moreover, such representations, omissions and concealments were made or effected by defendants intentionally and with full knowledge of the false and misleading nature of their action, and with the intent to defraud plaintiff and to induce plaintiff to purchase non-existing goods.

62. Moreover, the concealments rendered the statements actually made misleading.

63. These facts, had they been disclosed, would have been expressly material to plaintiff, and would have resulted in plaintiff not agreeing to enter into the Contract or wire the funds to defendants, or at an absolute minimum, would have resulted in plaintiff or taking other steps to assure adequate security or to timely take steps to halt the disbursement of the funds by the attorney defendants.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

64.     In that plaintiff did not know the false and misleading nature of these misrepresentations, omissions, and concealments, plaintiff reasonably relied upon these statements, omissions and concealments to its detriment.

65.   Defendant's conduct was malicious.

66.   As a direct result of the deceptive misrepresentations and omissions described above, plaintiff was fraudulently induced to provide the requested goods and has suffered economic loss.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

67.     Plaintiff repeats and realleges each of the allegations set forth above as if set forth at length herein.

68.     Plaintiff entered into a Contract with defendant VRC for the delivery of certain goods at an agreed price.

69.     Pursuant to the Contract, plaintiff paid for the goods and fulfilled its obligation under the Contract.

70.     Despite that plaintiff performed all of its agreed obligations under the Contract, defendant VRC breached the agreements and failed to deliver the goods causing financial injury to the plaintiff.

71.     As part of the Contract, defendant VRC had promised that if the goods were not timely delivered, that the funds paid by plaintiff would be refunded. VRC expressly agreed to refund the funds.

72,     Despite demand, defendant never delivered the goods and failed to refund the funds to plaintiff.

14

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

73.     There remains due and owing from defendant the sum of $2,358,720 as a refund for the funds paid.

74.     Plaintiff was additionally financially injured from profits that it would have made on the resale of the COVID Test Kits, as well as other financial injuries sustained by plaintiff resulting from defendant VRC's breach of contract.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

75.     Plaintiff hereby repeats and realleges each of the allegations set forth above as if set forth at length.

76.     The payment provided by plaintiff to purchase the goods was provided with the full understanding that defendant VRC would deliver the goods.

77.     By not delivering the goods to plaintiff, defendant received the full benefit of plaintiff's performance without performing in return.

78.     Plaintiff has made demands of defendant for refund of the fees paid (and previously demanded deliver of the goods before terminating the Contract based upon defendant's breach), but defendant has failed and refused to perform or refund the funds to plaintiff.

79.     Plaintiff reasonably expected the delivery of the goods – and thereafter, a full refund of the payment made to defendants when the goods were not delivered.  The payment made to plaintiff conferred a benefit upon defendant.

80.     Since the failure to deliver the goods or refund the money paid enriched defendant beyond their entitlement, defendant's aforesaid conduct constitutes unjust enrichment.

15

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

## FOURTH CAUSE OF ACTION
### (Promissory Estoppel)

81.     Plaintiff hereby repeats and realleges each of the allegations set forth above as if set forth at length herein.

82.     Defendant made promises to deliver goods and additionally to refund funds paid when goods were not delivered.  These promises were clear and unambiguous in their terms.

83.     Said promises were reasonably relied upon by plaintiff to its detriment.

84.     Such reliance was foreseeable to defendants.

85.     Plaintiff was damaged as a result of said reliance.

## FIFTH CAUSE OF ACTION
### (Negligent Misrepresentation)

86.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth at length herein.

87.     Defendant's statements and omissions, described in detail above, were made with the knowledge that they would be relied upon by plaintiff, and that plaintiff would be damaged if said statements (and omissions) would prove to be false (and deceptive).

88.     In the alternative to the allegation of fraud above, in making the aforementioned statements, defendants, at a minimum, failed to exercise reasonable care to ensure that the statements made were correct and acted Recklessly, Grossly Negligently or Negligently in their conduct.

89.     By reason of the foregoing, plaintiff has been injured by its reasonable and justifiable reliance on these negligent statements (and omissions) and are entitled to damages.

16

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been

## SIXTH CAUSE OF ACTION
### (Conversion/Money Had and Received)

90.     The plaintiff repeats each and every allegation in the preceding paragraphs as if fully set forth herein.

91.     At all times relevant, plaintiff was the rightful owner of the funds paid to the defendant VRC and had a full right to a refund.

92.     It was agreed that the funds being wired to defendants would not be released from escrow until the goods were delivered to the plaintiff – which delivery never occurred.

93.     Once deliver was not made, the plaintiff demanded a refund of the funds and was entitled to immediate possession of the funds at that time. The funds were not refunded to the plaintiff and the defendants had not continued right to possession of the funds.

94.     Each of the defendants were directly involved in the misappropriation and conversion of plaintiff's $2.3 million dollar payment and are (or were) wrongfully in the release, transfer and possession of, such funds.

95.     As such, plaintiff has been, and continues to be, entitled to immediate possession of such funds.

96.     This conversion and wrongful taking of the funds was for the personal gain and benefit of the defendants, at plaintiff's expense, and without plaintiff's permission.

97.     In this regard, defendants have intentionally and unlawfully exercised ownership, dominion and control over plaintiff's assets and property, in denial and repudiation of plaintiffs' rights thereto.

98.     By reason of the foregoing, the plaintiff has been injured and continue to be injured.

99.     As a result of this conversion, the plaintiff has sustained grave economic injury.

17

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been    18 of 21

## SEVENTH CAUSE OF ACTION
### (Joint Participants In a Fraud – Aiding and Abetting a Fraud – Enterprise Liability)

100. The plaintiff repeats each and every allegation in the preceding paragraphs as if fully set forth herein.

101 Each of the defendants were jointly involved in the commission of a fraud and each had full knowledge of the fraud and the participation of the other defendants.

102. Each worked together to assist and perpetrate the commission of the fraud upon the plaintiff.

103. Each of VRC and its Managers are in fact each <u>alter egos</u> of each other and worked together to commit the fraud on behalf of VRC.

104. There is only a single "enterprise" of entities being used each acting in concert to carry on the commission of the fraud.

105. Each of the defendants were in fact, the alter egos of each other acting as a single enterprise for the commission of the fraud and to obfuscate imposition of liability to the individual defendants who are profiting from the fraudulent scheme.

106. The defendants are each responsible for the conduct of all other defendants and have imputed vicarious liability as a knowing participant in the fraudulent scheme.

WHEREFORE plaintiff demands judgment jointly, severally and in the alternative against each of the defendants:

      (a)     for compensatory damages in the amount of no less than $3 million dollars;

      (b)     for punitive damages in the amount of $10 million dollars;

      (c)     cost, disbursements, attorneys's fees;

      (d)     for an imposition of a constructive trust on the funds wired from plaintiff to

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been

the defendants, as they may be located with any of the defendants

(e)    for such other and further relief as the court deems just and proper.

PAYKIN KRIEG & ADAMS LLP
Attorneys for Plaintiff

By: *David Schrader*
    David A. Schrader
    2500 Westchester Ave., Ste 107
    Purchase, New York 10577
    (347)-879-2345
    dschrader@pka-law.com

Dated: April 1, 2022

19

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been





This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been