# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM** | : : | |
| *Plaintiff*, | : | |
| v. | : : | CIVIL ACTION<br>No. 2022-CV-00688 |
| **Manfred Sternberg, Esquire; Manfred Sternberg & Associates, PC; Charlton Holdings Group, LLC; Samuel Gross; Gary Weiss; A. Solar, LLC; Daphna Zekaria, Esq.; Sokolski & Zekaria, PC,** | : : : : : : | (JMY) |
| *Defendants* | : | |

## DEFENDANTS MANFRED STERNBERG, ESQUIRE AND MANFRED STERNBERG & ASSOCIATES, PC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO BAR EXPERT REPORTS

**GOLDBERG SEGALLA LLP**
Seth L. Laver, Esq. (PA ID #094518)
Joseph Ross, Esq. (PA ID #318039)
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
Telephone: 267-519-6800
slaver@goldbergsegalla.com
jross@goldbergsegalla.com
*Attorneys for Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC*

Dated: October 30, 2024

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................................................1

II.   RELEVANT PROCEDURAL HISTORY................................................................................2

III.   LEGAL ARGUMENT ...........................................................................................................3

    A.   Standard Governing the Sternberg Defendants' Expert Submissions ............................3

    B.   The Sternberg Defendants' Expert Reports are Timely ....................................................5

    C.   There is No Conflict that Impacts the Sternberg Defendants' Expert Submissions ...6

    D.   The Sternberg Defendants' Expert Submissions are Admissible Under Rule 702 and *Daubert* ........................................................................................................................................8

IV.   CONCLUSION...................................................................................................................14

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brown v. Robert Packer Hosp.*,
    341 F.R.D. 570 (M.D. Pa. 2022) ...................................................................................... 14

*CFTC v. Eustace*,
    Nos. 05-2973, 06-1944, 2007 U.S. Dist. LEXIS 33137 (E.D. Pa. May 3, 2007) ............... 8

*U.S. ex rel Cherry Hill Convalescent Center, Inc. v. Healthcare Rehab Systems, Inc.*,
    994 F. Supp. 244 (D.N.J. 1997) ......................................................................................... 7

*Cordy v. Sherwin-Williams Co.*,
    156 F.R.D. 575 (D.N.J. 1994) ............................................................................................ 7

*Costanzo v. Pa. Tpk. Comm'n*,
    50 Pa. D. & C.4th 414 (C.P. 2001) .................................................................................... 8

*Daubert v. Merrell Dow Pharms, Inc.*,
    113 S. Ct. 2786 (1993) ............................................................................................. 2, 3, 8

*DeLuca v. Merrell Dow Pharm., Inc.*,
    911 F.2d 941 (3d Cir. 1990) .............................................................................................. 4

*Dorman Prods. v. PACCAR, Inc.*,
    201 F. Supp. 3d 663 (E.D. Pa 2016) ............................................................................ 4, 13

*Schneider ex rel. Estate of Schneider v. Fried*,
    320 F.3d 396 (3d Cir. 2003) .............................................................................................. 4

*Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, LLC*,
    202 F.R.D. 426 (E.D. Pa. 2001) ......................................................................................... 7

*Kannankeril v. Terminix Int'l, Inc.*,
    128 F.3d 802 (3d Cir. 1997) .............................................................................................. 3

*Kremsky v. Kremsky*,
    No. 16-4474, 2017 U.S. Dist. LEXIS 216489 (E.D. Pa. Feb. 22, 2017) ........................... 6

*Linkstrom v. Golden T. Farms*,
    883 F.2d 269 (3d Cir. 1989) ........................................................................................ 3, 9

*Meiksin v. Howard Hanna Co.*,
    404 Pa. Super. 417, 590 A.2d 1303 (1991) ..................................................................... 11

*Nicholas v. Pa. State Univ.*,
    227 F.3d 133 (3d Cir. 2000) ............................................................................................... 13

*In re Paoli RR Yard PCB Litigation (Paoli II)*,
    35 F.3d 717 (3d Cir. 1994) ................................................................................................... 3

*Pineda v. Ford Motor Co.*,
    520 F.3d 237 (3d Cir. 2008) ......................................................................................... 3, 4, 9

*Quinn Constr., Inc. v. Skanska United States Bldg., Inc.*,
    No. 07-406, 2009 U.S. Dist. LEXIS 45247 (E.D. Pa. May 26, 2009) .................................. 9

*Ralston v. Garabedian*,
    2022 U.S. Dist. LEXIS 49 (E.D. Pa. Jan. 3, 2022) ............................................................... 3

*Sampathkumar v. Chase Home Fin., LLC*,
    241 A.3d 1122 (Pa. Super. 2020) ......................................................................................... 5

*Stecyk v. Bell Helicopter Textron, Inc.*,
    295 F.3d 408 (3d Cir. 2002) ................................................................................................. 4

*Total Control, Inc. v. Danaher Corp.*,
    338 F. Supp. 2d 566 (E.D. Pa. 2004) ................................................................................. 13

*UGI Sunbury LLC v. A Permanent Easement*,
    949 F.3d 825 (3d Cir. 2020) ................................................................................................. 4

*United States v. Schiff*,
    602 F.3d 152 (3d Cir. 2010) .............................................................................................. 3, 9

*Virginia St. Fidelco, L.L.C. v. Orbis Prods. Corp.*,
    2018 U.S. Dist. LEXIS 45317, 2018 WL 1399304 (DNJ 2018) .......................................... 5

*Weaver v. Mobile Diagnostech, Inc.*,
    2009 U.S. Dist. LEXIS 36277 ............................................................................................. 7

*In re Zenith Elecs. Corp.*,
    241 B.R. 92 (Bankr. D. Del. 1999) ...................................................................................... 8

**Other Authorities**

52 Am.Jur.2d Malicious Prosecution § 64 (1970) ..................................................................... 11

*citing Weinstein's Federal Evidence* § 702.03[2][b] (Joseph M. McLaughlin ed., 2d ed. 2004) ................................................................................................................................... 13

Federal Rules of Civil Procedure Rule 26 ............................................................................... 2, 3

iv

Federal Rules of Evidence 702 ................................................................................................3

Pa.R.C.P. 4003.5 ......................................................................................................................2

*Pa.R.C.P. 4003.5(a)(1)(B)* ........................................................................................................2

Rule of Evidence 702 ..............................................................................................................3

Rule 26(a) ................................................................................................................................5

Rule 702 ...................................................................................................................................3

Rule 702 ...................................................................................................................................4

Rule 702 ...................................................................................................................................8

Rule 702 ...................................................................................................................................9

Rule 702 .................................................................................................................................12

I. **PRELIMINARY STATEMENT**

On August 16, 2024, the Sternberg Defendants timely supplemented their written discovery responses with the expert submissions of Steven E. Angstreich, Esquire and Joseph W. Lesovitz, CPA. By way of his expert report, Angstreich articulated his opinions regarding the scope of the Sternberg Defendants duties and obligations as agreed upon by the transacting parties. By way of his expert report, Lesovitz documented the results of his accounting of the Sternberg Defendants' IOLTA account including the relevant flow of funds. These expert submissions directly address and will assist the jury in evaluating at least two inaccuracies presented by Plaintiff: (i) that the Sternberg Defendants owed Plaintiff any duty and/or mishandled their clients' funds and (ii) that the Sternberg Defendants somehow profited from this failed transaction.

Litigation is often tense, and this case is no exception. Certainly, Plaintiff feels strongly that it has been wronged and that each of the defendants is responsible, perhaps some more than others. That said, the conduct of Plaintiff (and its counsel) at times was unnecessarily aggressive and less professional than the Sternberg Defendants (and their counsel) have come to expert before this Court. Plaintiff often resorted to bold accusations, some targeting the Sternberg Defendants, including the routine theme that it was the Sternberg Defendants who orchestrated a grand conspiracy to profit at Plaintiff's expense and to somehow conceal their wrongdoing. The Sternberg Defendants' expert submissions directly contradict that narrative.

Plaintiff did not serve any expert reports. Hence, upon receipt of the Sternberg Defendants' submissions, Plaintiff apparently scrambled to reverse course. Plaintiff's motion to strike valid, timely and appropriate expert reports is an attempt to ignore the truth. According to Plaintiff, the reports

1

should be stricken as (i) untimely, (ii) due to a conflict of interest; and (iii) pursuant to *Daubert* principles. Plaintiff's arguments are without merit.

## II.   RELEVANT PROCEDURAL HISTORY

Rule 26 of the Federal Rules of Civil Procedure requires the parties to disclose experts and their reports "at the times and in the sequence that the court orders." The Court's March 20, 2024 Amended Scheduling Order provided the following deadlines:

- "The parties shall produce their expert report(s) by Friday, August 2, 2024."
- "Rebuttal expert report(s) shall be produced by Friday, August 16, 2024."
- "All expert discovery, including all depositions of expert witnesses, shall be completed by Friday, August 30, 2024."

*See, Ex. A, 03/20/2024 [ECF 154] Amended Scheduling Order.*

Of course, the burden of proof falls on Plaintiff, not the Sternberg Defendants. As such, the Sternberg Defendants had no obligation to provide an affirmative expert submission by the initial deadline of August 2. Nonetheless, prior to the first deadline, in the abundance of caution and out of the interest of transparency, the Sternberg Defendants wrote to the court and all parties on July 29, 2024. The Sternberg Defendants sought clarification as to the applicable expert submission deadlines, as follows:

> Our understanding … of the [Amended Scheduling] Order requires plaintiff, and any other party asserting an affirmative claim, to produce affirmative expert reports by Friday, August 2, 2024. Per the order, any defendant producing a rebuttal submission must do so by Friday, August 16. In our practice and experience, it has always been the plaintiff to first provide expert submissions, and then the defendant is permitted to respond accordingly. We understand that a similar approach would apply here, but wanted to confirm Your Honor's preference, especially with the first deadline set for this Friday.
>
> *See, Ex. B, 07/29/2024 [ECF186] Letter to Court.*

Neither the Court nor any party wrote in response to the Sternberg Defendants' inquiry.

Pursuant to Pa.R.C.P. 4003.5, a party may supplement a response to an expert interrogatory by providing a "report of the expert." *See, Pa.R.C.P. 4003.5(a)(1)(B).* On August 16, 2024, the Sternberg

2

Defendants supplemented their prior responses to written discovery and their Rule 26 disclosures by serving their expert reports via email upon all counsel and unrepresented parties.

### III. LEGAL ARGUMENT

#### A. Standard Governing the Sternberg Defendants' Expert Submissions

The admissibility of expert testimony is governed by Federal Rules of Evidence 702 as well as by *Daubert v. Merrell Dow Pharms, Inc.*, 113 S. Ct. 2786 (1993), and its progeny. *See In re Paoli RR Yard PCB Litigation (Paoli II)*, 35 F.3d 717, 735 (3d Cir. 1994). The Third Circuit recognizes a "liberal policy of admissibility" regarding Rule 702. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008); *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010).

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b) the testimony is based on sufficient facts or data;
>
> c) the testimony is the product of reliable principle and methods; and
>
> d) the expert has reliably applied the principles and methods to the facts of the case.
>
> Fed. R. Evid. 702.

Congress, through Rule of Evidence 702, "usually favors admissibility." *Ralston v. Garabedian*, 2022 U.S. Dist. LEXIS 49, at *5-6 (E.D. Pa. Jan. 3, 2022). The "touchtone" for Rule 702 analysis is the broad helpfulness of the expert's testimony to the trier of fact. *Linkstrom v. Golden T. Farms*, 883 F.2d 269, 270 (3d Cir. 1989). The Third Circuit clarified that even "in doubtful cases," Rule 702 "favor[s] admissibility." *Linkstrom*, 883 F.2d at 270; *see also Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) ("Rule 702 . . . has a liberal policy of admissibility.").

In this context, while the court is often referred to as a "gatekeeper," tasked with ensuring opinion testimony satisfies Rule 702, "the court is *only* a gatekeeper, and a gatekeeper alone does not protect the castle; as courts have explained, a party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002). In this role, a trial judge must: "(i) confirm the witness is a qualified expert; (ii) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (iii) ensure the expert's testimony is sufficiently tied to the facts of the case, so that it will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement*, 949 F.3d 825, 832 (3d Cir. 2020). These factors are frequently referred to as "qualification," "reliability," and "fit." *See Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

An expert will "qualify," based upon a "broad range of knowledge, skills, and training." *Pineda*, 520 F.3d at 244. Reliability means that "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Id.* at 247, *quoting In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994)). Finally, "the expert testimony must fit the issues in the case," meaning the "expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404.

Cross-examination and counter-experts play a central role in the Rule 702 regime, and the same standards of reliability and helpfulness should be applied to both sides, with a "preference for admitting any evidence having some potential for assisting the trier of fact" over preclusion. *DeLuca v. Merrell Dow Pharm., Inc.*, 911 F.2d 941, 956 (3d Cir. 1990). In sum, the "rejection of expert testimony is the exception and not the rule." *Dorman Prods. v. PACCAR, Inc.*, 201 F. Supp. 3d 663, 686 (E.D. Pa 2016) (quoting Fed. R. Evid. 702 advisory committee's note).

B.     **The Sternberg Defendants' Expert Reports are Timely**

The Sternberg Defendants' deadline to serve expert reports was August 16, 2024. That day, they timely issued a supplement to their Rule 26(a) disclosures, which included the report and CV of Joseph W. Lesovitz, CPA/ABV/CFF, CFA, CFE and the report and CV of Steven E. Angstreich, Esquire. This type of supplement to discovery is entirely consistent with the Pennsylvania Rules of Civil Procedure governing discovery of expert testimony. *See,* 4003.5(a)(1)(B).[1]

According to Plaintiff, however, the Sternberg Defendants "usurped the authority of the Court, and served two expert repots [SIC] on August 16, 2024, well after, and in blatant violation of, the Court-Ordered deadline to do so." *See, Plaintiff's Motion.* (The Sternberg Defendants have grown accustomed to this type of bluster from Plaintiff). The fact remains that their submission was timely, and Plaintiff cannot point to any law to the contrary.

Each of the cases relied upon by Plaintiff is easily distinguishable. In *Sampathkumar v. Chase Home Fin., LLC,* the Superior Court considered the defendant's failure to comply with an order that specified the deadline for expert submissions *as to each party,* as opposed to an initial and then rebuttal report. *See Sampathkumar v. Chase Home Fin., LLC*, 241 A.3d 1122, 1136 (Pa. Super. 2020). The case of *Virginia St. Fidelco, L.L.C. v. Orbis Prods. Corp.* is also distinguishable, given that the defaulting party missed two extensions to provide a supplemental expert report. *Virginia St. Fidelco, L.L.C. v. Orbis Prods. Corp.,* 2018 U.S. Dist. LEXIS 45317, 2018 WL 1399304 (DNJ 2018). Finally, Plaintiff relies upon

---

[1]     On September 21, 2022, as part of the Sternberg Defendants' responses to Plaintiff's written discovery, the Sternberg Defendants wrote that "expert submissions will be provided pursuant to the applicable case management deadlines." The August 16 supplement was timely and appropriate.

*Kremsky v. Kremsky*, which is also distinguishable because it involved an order fixing a global deadline for all expert discovery by any party. *Kremsky v. Kremsky*, No. 16-4474, 2017 U.S. Dist. LEXIS 216489, at *11-12 (E.D. Pa. Feb. 22, 2017).

Here, the Sternberg Defendants not only complied with the applicable case management deadlines, they sought advance clarification from the court to avoid confusion and prejudice. The Sternberg Defendants made clear their understanding that the binding Order required Plaintiff to produce its expert report by August 2 and the Sternberg Defendants (or any other defendant) to produce their reports, if any, two weeks later. The Sternberg Defendants met this deadline in good faith.

**C.     There is No Conflict that Impacts the Sternberg Defendants' Expert Submissions**

Next, Plaintiff argues that the Sternberg Defendants' reliance upon Angstreich's expert opinion constitutes an "absolute conflict of interest." Plaintiff is mistaken. In reality, one of Angstreich's law partners previously provided limited representation to Plaintiff unrelated to the subject of this lawsuit. That representation ended more than five years ago.[2] Neither Angstreich nor anyone with whom he is associated obtained any information through that representation that bears on this litigation or the bases for his expert conclusions. Angstreich has not reached any opinion

---

[2] After years of inactivity, Plaintiff contacted Angstreich's law partner by telephone in the days following receipt of the expert reports. In a shameless attempt to somehow manufacture a conflict, Plaintiff inquired of the status of the long dormant prior representation. This was undoubtedly no coincidence. Such gamesmanship should not be rewarded.

6

critical of Plaintiff in his report. Rather, the subject report exclusively pertains to the roles and responsibilities of the Sternberg Defendants, an analysis that has no bearing on the prior, wholly unrelated representation.

When the Sternberg Defendants initially inquired of his availability and interest in authoring an expert opinion, Angstreich – a well-known and experienced expert of attorney conduct - completed a thorough conflict analysis, considered his firm's prior representation of Plaintiff, and concluded that there was no reportable conflict or other cause for concern. *See, Ex. C, October 30, 2024 Affidavit of Steven E. Angstreich, Esq.* As such, there is no basis to preclude Angstreich's report or testimony.

"Disqualification of an expert witness is a drastic measure that is imposed reluctantly." *Weaver v. Mobile Diagnostech, Inc.*, 2009 U.S. Dist. LEXIS 36277, *23; 2009 WL 1230297 (W.D. Pa. 2009). The standard for disqualification of an expert is much different than that applicable to disqualification of counsel, in view of their distinct roles. *U.S. ex rel Cherry Hill Convalescent Center, Inc. v. Healthcare Rehab Systems, Inc.*, 994 F. Supp. 244, 249 (D.N.J. 1997). The moving party bears this high burden. *Id.* Disqualification is only "appropriate when the expert acquired confidential information from the opposing party during a prior engagement." *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 426, 428 (E.D. Pa. 2001). It is only in those limited scenarios when the moving party can establish that it disclosed to the expert confidential information that impacted the expert's proposed testimony. *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 580 (D.N.J. 1994).

Angstreich never acquired any confidential information much less any information pertaining to the subject matter of these proceedings. The type of "confidential information" necessary to support disqualification includes discussion of litigation strategies, strengths and weaknesses, the pertinent witnesses to the proceeding and defense strategy. *U.S. ex rel Cherry Hill Convalescent Center, Inc.*, 994 F. Supp. at 249 *citing Koch Refining Co. v. Boudreaux MV*, 85 F.3d 1178, 1182 (5th Cir. 1996).

7

Of course, Plaintiff's engagement with Angstreich's law partner ended years before Plaintiff ever encountered the Sternberg Defendants. As such, any discussion with Angstreich's partner necessarily could not have included strategies to be employed in a transaction yet to occur or litigation yet to be filed.

Moreover, Angstreich's opinions as expressed in his expert report reflect his evaluation of the Sternberg Defendants' conduct as opposed to some critique of Plaintiff. Suffice it to say, Plaintiff's limited engagement of Angstreich's law partner years ago had absolutely no bearing on Angstreich's expert opinion. Plaintiff cannot meet the high burden of disqualification.

Plaintiff relies on a series of inapposite or distinguishable cases in purported support of its unsubstantiated stance. *CFTC v. Eustace* is immaterial because it involved a court-appointed receiver with an ongoing relationship with entities related to the subject entity. *CFTC v. Eustace*, Nos. 05-2973, 06-1944, 2007 U.S. Dist. LEXIS 33137 (E.D. Pa. May 3, 2007). Plaintiff's reliance on *Costanzo v. Pa. Tpk. Comm'n* is also misplaced because it involved a plaintiff's attorney and an engineering expert who were both lawyers at the same law firm. *Costanzo v. Pa. Tpk. Comm'n*, 50 Pa. D. & C.4th 414 (C.P. 2001). Finally, *In re Zenith Elecs. Corp.* fails to support Plaintiff's argument for disqualification. That case involved an investment banking firm disqualified from bankruptcy proceedings because it had previously provided a valuation of the debtor. *In re Zenith Elecs. Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999). Nothing could be further from the instant circumstances. Since it cannot meet its burden of establishing a conflict of interest, Plaintiff's motion must be denied.

### D. The Sternberg Defendants' Expert Submissions are Admissible Under Rule 702 and *Daubert*

By way of its final argument, Plaintiff alleges that the Sternberg Defendants' expert submissions must be barred pursuant to Rule 702 and *Daubert* principles. Specifically, Plaintiff argues that the report submitted by Angstreich "is not really a legal 'expert' opinion" that would assist the

8

trier of fact, "especially inasmuch as this is not a complex or difficult case." Likewise, Plaintiff alleges that the report submitted by Lesovitz "is not really a legal expert opinion" but instead is a conclusion "that the plaintiff did not sustain damages." Respectfully, Plaintiff is mistaken.

1. **Plaintiff Cannot Meet the Applicable Standard For Preclusion**

Again, the Third Circuit recognizes a "liberal policy of admissibility" regarding Rule 702. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008); *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010). The Court should err on the side of admissibility, as opposed to preclusion. *Linkstrom v. Golden T. Farms*, 883 F.2d 269, 270 (3d Cir. 1989). Furthermore, even a "finding that expert testimony was not required does not necessarily imply that expert testimony cannot be permitted, if that testimony otherwise complies with the Federal Rules of Evidence." *Quinn Constr., Inc. v. Skanska United States Bldg., Inc.*, No. 07-406, 2009 U.S. Dist. LEXIS 45247, at *11 (E.D. Pa. May 26, 2009).

2. **The Report and Testimony of Steven E. Angstreich, Esq. Meets All Requirements of Rule 702 and Should Be Considered by this Court Because it is Helpful to the Jury.**

The report issued by Angstreich will assist the trier of fact to evaluate the respective roles and responsibilities of the parties. Critically, from as early as the initial pleadings and continuing through its most recent summary judgment motion, Plaintiff has sought to blur the lines and dramatically expand the Sternberg Defendants' limited role in this transaction. The reality: the Sternberg Defendants drafted the SPA, acted as counsel for the Gross Defendants, and collected and disbursed the purchase funds at the direction of their clients. The fiction: the Sternberg Defendants (along with the Gross Defendants) "represented and promised [to Plaintiff] that they could sell and quickly deliver" test kits, used the SPA as "a ruse to defraud Plaintiff," and mishandled Plaintiff's funds held in their escrow account. Should this matter survive summary judgment, Angstreich's expert testimony will assist the fact finder in understanding the Sternberg Defendants' duties to the Gross Defendants

(and the lack of duty to Plaintiff) and how an attorney in their position should manage and monitor purchaser funds held in trust.

It is perhaps understandable that Plaintiff would prefer to proceed undeterred with its fictional narrative, but a jury would greatly benefit from the opinion of an independent expert on the applicable standards and expectations governing the Sternberg Defendants' conduct. While Plaintiff could not characterize its allegations against them as "malpractice" due to the lack of privity, Plaintiff took great pains to embellish and exaggerate the Sternberg Defendants' role, at one point going so far as to testify: "I had an attorney, Manfred Sternberg," and "he was the golden boy." *See, Ex. L to Sternberg Defendants' MSJ,* Scully Dep 77:18-78:3. Of course, such testimony is unreliable, inaccurate and baseless.

For his part, Angstreich concluded "to a reasonable degree of legal certainty that neither Mr. Sternberg nor the law firm breached any duty to Plaintiff, and neither is liable to Plaintiff for the loss of the funds." *See Ex. N to Sternberg Defendants' MSJ,* Angstreich Report, at p.13. Put simply, Plaintiff has mischaracterized the Sternberg Defendants' role in this transaction. Since it did not engage its own counsel, which would have been expected under the circumstances, Plaintiff has morphed a misguided malpractice claim into one of "fraud." In reality, "Sternberg's role in the transaction at issue was as attorney for the seller, Charlton." *Id.*, at p. 5. While Angstreich notes that attorneys can be liable to non-clients where they make an affirmative representation to the non-client who then relies thereon to his detriment, he found no such circumstance here. *Id.*, at p. 6.

Likewise, according to Angstreich's unrefuted opinion, the Sternberg Defendants properly and effectively complied with their client's requests governing the transfer of funds. Angstreich opined that the "SPA does not name Sternberg as escrow agent, it is silent as to any duties or obligations placed upon Sternberg, and Sternberg never signed the SPA or voluntarily agreed to act in the capacity

10

of an escrow agent." *Id.*, at p. 12. He continues in his unrefuted report that in the absence of an executed escrow agreement "imposing duties upon the agent, Sternberg owed no duty to Plaintiff." *Id.* Importantly, "when he followed his client's direction and wired the funds from his attorney IOLTA Account to the supplier of goods that were to be shipped to Plaintiff, Sternberg owed no duty to Plaintiff, only his client." *Id.*

Angstreich also details why Plaintiff's attempt to impute the representations made by the Gross Defendants in the SPA is not consistent with applicable law, pointing out that attorneys are "entitled" to rely on the representations of their clients. *Id.* at p. 9 (*citing Reis v. Barley, Snyder, Senft & Cohen LLC*, 667 F.Supp.2d 471, 489 (E.D. Pa. 2009)). That principle is the basis of the opinion that "there was no duty owing to Plaintiff that arose out of Sternberg and his firm's representation of Charlton or from any 'misrepresentation' that he allegedly made to Plaintiff," though he elaborates on that principle with citations to 52 Am.Jur.2d Malicious Prosecution § 64 (1970) (no duty to verify client's statement before giving advice thereon) and *Meiksin v. Howard Hanna Co.*, 404 Pa. Super. 417, 424, 590 A.2d 1303, 1306 (1991) (no liability for an attorney who acts in good faith upon the facts stated by the client).

Angstreich rigorously applied the relevant law to the facts regarding escrow agents, focusing on the erroneous propositions that (i) the SPA was a so-called "escrow agreement," and (ii) the Sternberg Defendants held the purchase funds for *both* Plaintiff and the Gross Defendants. *See Angstreich Report at p. 10*. Per Angstreich, under both Pennsylvania and Texas law, "in the absence of a written escrow agreement, no duty arose." *See Angstreich Report at p. 11-12*. He concludes by describing the decision in *Janson v. Cozen & O'Connor*, where, as here, "there was no signed agreement between the attorney, his client and plaintiff imposing any specific duty on him." *See Angstreich Report at p. 12* (discussing *Janson v. Cozen & O'Connor*, 450, Pa. Super. 415, 424, 676 A.2d 242, 247 (Pa. Super. 1996)).

11

Angstreich, an accomplished and well-regarded expert in cases involving attorneys, has practiced law for more than 50 years. He applied the relevant law to the facts and evidence, including the deposition of Plaintiff's corporate designee. The factfinder would benefit from a clear understanding of the Sternberg Defendants' obligations to their clients on the one hand and the extremely limited duties to Plaintiff on the other. Likewise, the factfinder would benefit from an explanation of the principles governing an attorney tasked with safeguarding client funds.

### 3. The Report and Testimony of Joseph W. Lesovitz, CPA Meets All Requirements of Rule 702 and Should Be Considered by this Court Because it is Helpful to the Jury.

Likewise, the report issued by Lesovitz, a Certified Public Accountant and Certified Fraud Examiner, will assist the trier of fact to evaluate Plaintiff's alleged damages and, perhaps just as important, whether the Sternberg Defendants contributed to said damages, if any. Plaintiff contends that the Sternberg Defendants profited as a result of this transaction. This is untrue. Lesovitz examined the pertinent evidence of record and concluded that "disbursements for the Test Kits exceeded amounts received from [Plaintiff] for the Test Kits." The fact that Plaintiff conferred no benefit on the Sternberg Defendants is a critical fact for the jury to consider especially given that it undercuts Plaintiff's flawed narrative and plays into credibility and motive.

The distinct style of the parties to this litigation is particularly compelling on this point. On the one hand, Plaintiff - really Plaintiff's counsel - created a self-serving, unsupported and inadmissible document purporting to show the flow of certain funds involving the Sternberg Defendants' escrow account. Plaintiff's "exhibit," which it marked at several fact depositions, is as unclear as it is unreliable. On the other hand, the evidence is clear that the Sternberg Defendants did not profit from the failed transactions and, quite to the contrary, incurred a loss as supported through Lesovitz's damages analysis and accounting of the flow of funds.

12

Neither the Sternberg Defendants nor their experts argue the Plaintiff did not incur *any* damages as a result of this failed transaction. Rather, the pertinent inquiries addressed by Lesovitz are (i) whether the Sternberg Defendants *contributed* to said damages, (ii) did they retain any of Plaintiff's funds, and (iii) did they profit from the subject transaction. Plaintiff had every right and opportunity to provide its own damages expert and, for reasons known only to it, opted against it. That strategic decision is its own to bear. The report and testimony of Lesovitz are reliable, admissible, and beneficial to the fact finder and as such should not be stricken.

**4.     Disqualification is Not Appropriate Under the Circumstances**

The "rejection of expert testimony is the exception and not the rule." *Dorman Prods. v. PACCAR, Inc.*, 201 F. Supp. 3d 663, 686 (E.D. Pa 2016) (quoting Fed. R. Evid. 702 advisory committee's note). In Pennsylvania, "courts have taken a liberal approach to the admissibility of expert testimony in instances when a party offers expert guidance to the finder of fact respecting factual issues that arguably fall within the competence of lay people." *Total Control, Inc. v. Danaher Corp.,* 338 F. Supp. 2d 566, 569-570 (E.D. Pa. 2004), *citing Weinstein's Federal Evidence* § 702.03[2][b] (Joseph M. McLaughlin ed., 2d ed. 2004).

A court considering the disqualification of expert testimony to sanction a discovery violation will evaluate "the prejudice or surprise of the party against whom the excluded evidence would have been admitted," disruption of the proceedings, and "bad faith or willfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). In the Third Circuit, exclusion of an expert report and testimony "is generally unwarranted... particularly in the absence of a firm, impending trial date." *Brown v. Robert Packer Hosp.*, 341 F.R.D. 570, 574 (M.D. Pa. 2022). Each of these factors weigh in favor of admitting the Sternberg Defendants' expert submissions.

The Sternberg Defendants served their reports timely on August 16. Even if the court concludes that the submissions were due on August 2, two weeks earlier, the record is clear that the Sternberg Defendants sought guidance regarding the deadline and invited input from the parties and the court. Under the circumstances, the Sternberg Defendants' good faith and interest in complying with all deadlines is clear.

The expert reports submitted on behalf of the Sternberg Defendants, along with the expected testimony, are admissible and appropriate. These experts will assist the trier of fact. Accordingly, Plaintiff's motion must be denied.

## IV.   CONCLUSION

For the reasons set forth above, the Sternberg Defendants respectfully request that this Honorable Court deny Plaintiff's Motion to Bar Expert Reports and Preclude Expert Trial Testimony, as set forth in the attached Order.

Dated: October 30, 2024

**GOLDBERG SEGALLA LLP**

By: */s/ Seth L. Laver*
Seth L. Laver, Esq. (PA ID #094518)
Joseph Ross, Esq. (PA ID #318039)
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
Telephone: 267-519-6800
slaver@goldbergsegalla.com
jross@goldbergsegalla.com
*Attorneys for Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC*

43074998.v1

14