# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM** | : : : | |
| | : | CIVIL ACTION |
| *Plaintiff*, | : | No. 2022-CV-00688 |
| v. | : | (JMY) |
| | : | |
| **Manfred Sternberg, Esquire; Manfred Sternberg & Associates, PC; Charlton Holdings Group, LLC; Samuel Gross; Gary Weiss; A. Solar, LLC; Daphna Zekaria, Esq.; Sokolski & Zekaria, PC** | : : : : : : | |
| *Defendants* | : | |

---

## OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS MANFRED STERNBERG, ESQUIRE AND MANFRED STERNBERG & ASSOCIATES, PC

---

**GOLDBERG SEGALLA LLP**
Seth L. Laver, Esq. (PA ID #094518)
Joseph Ross, Esq. (PA ID #318039)
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
Telephone: 267-519-6800
slaver@goldbergsegalla.com
jross@goldbergsegalla.com
*Attorneys for Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC*

Dated:  October 30, 2024

**Table of Contents**

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS ...................................................2

III. LEGAL ARGUMENT ...........................................................................................3

    A.   Summary Judgment Governing Standard..................................................3

    B.   Plaintiff's Motion Must Be Denied on the Merits......................................3

        1.   Plaintiff Cannot Prove Fraudulent Inducement or Fraud......................4

            a.   The Parol Evidence Rule is Fatal to Plaintiff's Allegations of Fraud by Virtue of the Contractual Interegration Clause.................................6

            b.   Plaintiff Cannot Attribute Non-Party Representations to the Sternberg Defendants .............................................................................7

        2.   Plaintiff Cannot Prove Civil Conspiracy in Count IV ...........................9

        3.   Plaintiff's Remaining Claims Fail as a Matter of Law and Fact ............10

            a.   Plaintiff Cannot Prove Participation Theory in Count VII .......................10

            b.   Plaintiff Cannot Prove Unjust Enrichment/Quantum Meruit in Count VIII....................................................................................................11

            c.   Plaintiff Cannot Prove Intentional Interference with Contractual Relations in Count IX or Intentional Interference with Prospective Economic Advantage in Count X ..........................................................13

    C.   The Sternberg Defendants Provided Full and Complete Responses to Plaintiff's 172 Requests for Admission ......................................................15

    D.   Plaintiff is Not Entitled to Punitive Damages............................................16

    E.   The Sternberg Defendants Take No Position as to the Claims Against the Other Defendants.............................................................................................17

IV.  RELIEF REQUESTED...........................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Eagle Outfitters v. Lyle & Scott Ltd.*,
    584 F.3d 575 (3d Cir. 2009) ...........................................................................................3

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .........................................................................................................3

*Artisan Builders, Inc. v. So Young Jang*,
    2022 PA Super 36, 271 A.3d 889 ..................................................................................13

*Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*,
    321 F. Supp. 3d 503 (M.D. Pa. 2018) ...........................................................................15

*Battle Born Munitions Inc. v. Dicks Sporting Goods Inc.*,
    2023 U.S. App. LEXIS 19048 (3d Cir. July 26, 2023) ...................................................7

*Berardi v. USAA Gen. Indem. Co.*,
    606 F. Supp. 3d 158 (E.D. Pa. 2022) ............................................................................12

*Boyanowski v. Capital Area Intermediate Unit*,
    215 F.3d 396 (3d Cir. 2000) .........................................................................................10

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
    140 F.3d 494 (3d Cir. 1998) .........................................................................................14

*Burton Imaging Grp. v. Toys "R" Us, Inc.*,
    502 F. Supp. 2d 434 (E.D. Pa. 2007) ............................................................................12

*Chester-Cambridge Bank & Tr. Co. v. Rhodes*,
    346 Pa. 427, 31 A.2d 128 (1943) ..................................................................................11

*Cohen v. Maus*,
    297 Pa. 454, 147 A. 103 (1929) ....................................................................................11

*Dunkin' Donuts Franchised Rests., LLC v. Claudia I, LLC*,
    998 F. Supp. 2d 383 (E.D. Pa. 2004) ............................................................................10

*Ecore Int'l, Inc. v. Downey*,
    343 F. Supp. 3d 459 (E.D. Pa. 2018) ............................................................................15

*Farrell v. Planters Lifesavers Co.*,
    206 F.3d 271 (3d Cir. 2000) ...........................................................................................3

*Feld v. Merriam,*
    485 A.2d 742 (Pa. 1984) ...............................................................................................17

*Hager v. Etting,*
    268 Pa. .........................................................................................................................11

*Hutchison v. Luddy,*
    870 A.2d 766 (Pa. 2005) ......................................................................................... 17, 18

*K&G Contr., Inc. v. Warfighter Focused Logistics, Inc.,*
    689 F. Supp. 3d 35 (ED Pa. 2023) ................................................................................7

*Knuth v. Erie-Crawford Dairy Cooperative Ass'n.,*
    463 F.2d 470 (3d Cir. 1972), cert. denied, 410 U.S. 913, 93 S. Ct. 966, 35 L. Ed.
    2d 278 (1973) .................................................................................................................11

*Kribbs v. Jackson,*
    129 A.2d 490 (Pa. 1957) ...............................................................................................18

*Laborers' Combined Funds of W. Pa. v. Molinaro Corp.,*
    234 F. Supp. 3d 660 (W.D. Pa. 2017) ........................................................................11

*Martin v. Johns-Manville Corp.,*
    508 Pa. 154 (1985) ........................................................................................................17

*Pac-West Distrib. NV LLC v. AFAB Indus. Servs.,*
    674 F. Supp. 3d 132 (E.D. Pa. 2023) .........................................................................14

*Rizzo v. Haines,*
    555 A.2d 58 (Pa. 1989) .................................................................................................18

*Salvitti v. Lascelles,*
    669 F. Supp. 3d 405 (E.D. Pa. 2023) .........................................................................12

*SodexoMAGIC, LLC v. Drexel Univ.,*
    24 F.4th 183 ....................................................................................................................7

*Spaw v. Springer,*
    715 A.2d 1188 (Pa. Super. 1998) ..............................................................................4, 9

*Synthes, Inc. v. Emerge Med., Inc.,*
    No. 11-1566, 2014 U.S. Dist. LEXIS 79895, 2014 WL 2616824 (E.D. Pa. June
    11, 2014) .........................................................................................................................15

*Thompson Coal Co. v. Pike Coal Co.,*
    412 A.2d 466 (Pa. 1979) ...............................................................................................10

*Toy v Metro. Life Ins. Co.,*
   593 Pa. 20 (2007) ........................................................................................................ 7

*Turnway Corporation v. Soffer,*
   336 A.2d 871 (Pa. 1975) ............................................................................................ 9

*V-Tech Servs. v. Street,*
   72 A.3d 270 (Pa. Super. 2013) ................................................................................... 9

*Watson v. Eastman Kodak Company,*
   235 F.3d 851 (3d Cir. 2000) ....................................................................................... 3

*Weissberger v. Myers,*
   90 A.3d 730 (Pa. Super. Ct. 2014) ............................................................................ 4

*Yocca v. Pittsburgh Steelers Sports, Inc.,*
   854 A.2d 425 (Pa. 2004) ............................................................................................ 6

**Other Authorities**

Fed. R. Civ. P. 56(a) .......................................................................................................... 3

*Plaintiff's Motion* at p. 92 ................................................................................................... 4

I.   P̲R̲E̲L̲I̲M̲I̲N̲A̲R̲Y̲ ̲S̲T̲A̲T̲E̲M̲E̲N̲T̲

By way of their own Motion for Summary Judgment, Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, P.C. (the "Sternberg Defendants") carefully detailed the lack of evidence to support any claim against them. Therein, the Sternberg Defendants debunk each of the unsupported theories with reference to the record and the failure to prove any cause of action by Plaintiff American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM ("Plaintiff"). In stark contrast, Plaintiff seemingly relies upon a simple but meritless theory in its motion: guilt by association. Plaintiff ignores the reality that the Sternberg Defendants were only counsel to the Gross Defendants and that the Sternberg Defendants were not parties to the applicable contract. Likewise, Plaintiff cannot dispute that it had no dialog with the Sternberg Defendants *before* wiring any funds or effectuating that contract. Nonetheless, regardless of which class of defendant was responsible for what task or how each was contractually bound, Plaintiff would have this court determine as a matter of fact that simply because Plaintiff did not receive the subject test kits, *everyone is to blame for everything*.

The Sternberg Defendants readily concede that this transaction did not go as planned. Importantly, however, that reality does not equate to causation, and reliance, and scope of duty, and the other standards Plaintiff must prove in order to sustain a specific claim against them. Perhaps liability is a given against *certain* defendants due to the default proceedings or otherwise. Maybe that is so. But it is clear that there is no evidence to support any claim against the Sternberg Defendants, the only represented parties who have consistently, confidently and clearly asserted a viable defense.

Plaintiff's motion is equally chaotic and unfocused. As a result, it is awkward to succinctly respond. Plaintiff paints a complex fiction and a vast conspiracy, with the Sternberg Defendants apparently at the controls. Yet, Plaintiff's glaring omissions speak volumes. To be successful in its motion, Plaintiff had to necessarily ignore the most important and dispositive facts of the case: (i) the

absence of *any* representations by the Sternberg Defendants prior to Plaintiff transferring the purchase funds, (ii) the undeniable lack of knowing misrepresentations throughout the entire debacle, (iii) the unrebutted expert opinion that the Sternberg Defendants adhered to their extremely limited duties in the transaction, and (iv) additional unrebutted expert opinion that they retained exactly *none* of Plaintiff's money, taking a loss on the transaction.

While Plaintiff may prefer its version of the story, the evidence proves otherwise. Plaintiff's self-serving certification, which is riddled with inaccuracies, mischaracterizations and, in some places, outright falsehoods, does not moot the evidence. A plea to strike and deem admitted each of the 172 (!) Requests for Admissions that the Sternberg Defendants painstakingly answered does not moot the evidence. As set forth herein, and in their own motion, the Sternberg Defendants were engaged by the Gross Defendants to act as a conduit of funds between buyer and seller. Job well done. The Sternberg Defendants had no obligation to obtain, inspect, or provide test kits. The Sternberg Defendants had no communication with Plaintiff before it transferred funds, which is to be expected given that they shared no professional relationship whatsoever. Finally, the Sternberg Defendants appropriately disbursed all funds at the request of their clients prior to Plaintiff's eventual demand for a refund. In the face of these simple truths, Plaintiff resorts to almost exclusively collective allegations against *all* defendants. Over and over again, that construct either fails to meet the heightened standard for fraud, fails to find a foothold in the evidence, or, most commonly, both.

II.    **RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS**

With reference to this Court's Policies and Procedures, the Sternberg Defendants separately filed a Response in Opposition to Plaintiff's Statement of Facts.

III.     L<span>EGAL</span> A<span>RGUMENT</span>

### A.  Summary Judgment Governing Standard

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

While the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *Watson v. Eastman Kodak Company*, 235 F.3d 851, 858 (3d Cir. 2000). The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir. 1994)).

### B.  Plaintiff's Motion Must Be Denied on the Merits

For the reasons more fully developed in their own Motion, Plaintiff's Motion must be denied for failure to prove any viable theory as to the Sternberg Defendants. As to these defendants, Plaintiff purports to plead Fraud in the Inducement (Count I), Fraud (Count II), Civil Conspiracy (Count IV), Participation Theory (Count VII), Unjust Enrichment/Quantum Meruit (Counts VIII), Intentional Interference With Contractual Relations (Count IX), and Intentional Interference With Prospective Economic Advantage (Count X). Each of these claims must be dismissed, with prejudice.

### 1.   Plaintiff Cannot Prove Fraudulent Inducement or Fraud

Plaintiff cannot prove a claim against the Sternberg Defendants for Fraudulent Inducement or Fraud in Counts I and II. Plaintiff has failed to prove each of the necessary elements that the Sternberg Defendants made a knowing, material misrepresentation to Plaintiff with the intent that Plaintiff justifiably rely to its detriment. *Weissberger v. Myers*, 90 A.3d 730, 735 (Pa. Super. Ct. 2014). Plaintiff's burden to present clear and convincing evidence of these elements is "the highest in our civil law." *Spaw v. Springer,* 715 A.2d 1188, 1189 (Pa. Super. 1998). Plaintiff cannot approach this threshold.

Lacking any evidence of record[1], Plaintiff instead makes the sweeping and unsupported assertion that the Sternberg Defendants "induced" Plaintiff into proceeding with the transaction. According to Plaintiff:

> TSH was induced to pay the $1,965,600.00 purchase price into escrow, to the attorney trust account of the Sternberg Defendants, based upon the representations of the Gross and Sternberg Defendants (through their sales brokers that communicated with me and were acting on their behalf), that the COVID Test Kits would be shipped to TSH forthwith, and that the $1,965,600.00 purchase price would not be released from escrow unless and until TSH was supplied both with a Bill of Sale, as well as a Bill of Lading from a recognized common carrier evidencing that the goods were owned by and in transit to TSH.

> *See,* Certification of D. Scully ("Scully Cert."), Plaintiff's Motion [ECF 196] at ¶5.

---

[1]     As a preliminary matter, it must be noted that Plaintiff has repeatedly asserted arguments in its motion without proper citation to the record. Of course, such evidence does not exist. Plaintiff has not and cannot point to any evidence that the Sternberg Defendants "induced" Plaintiff or made "representations" or "assurances" about the transaction prior to the wire transfer. *See Plaintiff's Motion* at p. 92. Likewise, Plaintiff has not and cannot cite to any facts supportive of the false claim that the Sternberg Defendants had any duty beyond the extremely narrow one set forth in the SPA. Plaintiff's fast and loose approach is an apparent attempt to bend and obscure the truth.

4

This is conclusively untrue because the evidence proves that (i) the Sternberg Defendants had no communication of any kind with Plaintiff *before* Plaintiff's wire and, what's more, even if there was such correspondence, (ii) such extrinsic evidence is inadmissible and, further still, (iii) there was no reasonable expectation that Plaintiff would rely upon the Sternberg Defendants for any purpose given that they were unequivocally counsel for Plaintiff's adversary in this transaction.

The reality is that the Sternberg Defendants could not possibly induce Plaintiff to take any action, including effectuating a wire transfer, because Plaintiff had no communication with the Sternberg Defendants before the transaction. *See Ex. L* to Sternberg Defendant's Motion for Summary Judgment, Scully Dep., at 21:4-6. This reality is dispositive. Plaintiff could not and did not rely on the Sternberg Defendants, who acted as counsel for Plaintiff's seller, for any purpose at any time. *Maybe* Plaintiff was somehow comforted by the involvement of an attorney in the transaction, even if they represented someone else, and that involvement reflected more credibility on the Gross Defendants in Plaintiff's estimation. Nonetheless, that comfort does not amount to reliance or causation or duty. The Sternberg Defendants were duty bound only to the Gross Defendants. They had no obligation to Plaintiff whatsoever, let alone a duty to obtain, inspect, insure or provide Plaintiff with anything. Not only did Plaintiff not interact with the Sternberg Defendants prior to executing the contract and wire funds, it would have no basis to rely. There is no evidence to support Plaintiff's revisionist history.

Without any evidence of a tie between Plaintiff and the Sternberg Defendants, Plaintiff cannot proceed with a viable theory of fraud. Case closed. Lacking this critical link necessary to establish the elements of a material misrepresentation and justifiable reliance, Plaintiff suggests that it is the contract itself, the SPA, that contains the Sternberg Defendants' "misrepresentations." Nonsense. Next,

Plaintiff suggests that third-party representations are somehow attributable to the Sternberg Defendants. Again, this is nonsense. We will evaluate each, in turn.

a. **The Parol Evidence Rule is Fatal to Plaintiff's Allegations of Fraud by Virtue of the Contractual Integration Clause**

Undeterred by the lack of evidence of any precontractual communications between them, Plaintiff argues that the Sternberg Defendants "induced" it to effectuate the SPA. Specifically, Plaintiff alleges that the Sternberg Defendants, well really "their sales brokers that …were acting on their behalf," represented to Plaintiff that the test kits would be shipped "forthwith" and that the purchase price "would not be released from escrow…unless and until" Plaintiff received a Bill of Sale." Regardless of the fact that these representations did not occur, such (nonexistent) evidence is inadmissible due to the combination of two factors: the contracting parties' integration clause and the impact of the parol evidence rule.

Plaintiff agreed with the Gross Defendants that the SPA "constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties" and that "[n]either Party is relying upon any representation not contained in this Agreement." *See* SPA at ¶ 18. This clause acts as a fatal blow because Plaintiff is precluded as a matter of law from seeking to prove alleged fraud through extrinsic evidence. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).

The parol evidence rule attaches legal consequences to an integrated contract - a contract that is the only agreement between the parties on a specific topic. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 212-213 ED Pa. 2022), *quoting* Restatement (Second) Contracts § 209(1) ("An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement."). "To demonstrate integration, parties commonly include an integration clause in a contract stating that the contract contains the final expression of all the terms of the parties' agreement and that it supersedes all prior agreements on the subject matter." *Id.*

[C]ontract drafters can extend the reach of the parol evidence rule by writing a fraud-insulating clause into their contract, which prevents a party from satisfying the justifiable-reliance element of a fraudulent inducement claim.  When a contract has a fraud-insulating provision, it is virtually impossible to establish the justifiable-reliance element needed for a fraud claim. Two such examples are clauses that state that the representations in the contract supersede all prior representations, or are the only representations made.

*Battle Born Munitions Inc. v. Dicks Sporting Goods Inc.*, 2023 U.S. App. LEXIS 19048, at *14 (3d Cir. July 26, 2023).

When, as here, the contracting parties agreed to a binding integration clause, "due to the parol evidence rule's operation, a party cannot be said to have justifiably relied on prior representations that he has superseded and disclaimed." *Toy v Metro. Life Ins. Co.,* 593 Pa. 20, 53 (2007). Thus, by virtue of clear Pennsylvania precedent, Plaintiff is absolutely precluded from seeking to admit parol evidence that the Sternberg Defendants somehow induced it to execute the SPA. *Battle Born Munitions Inc. v. Dicks Sporting Goods Inc.*, 2023 U.S. App. LEXIS 19048 ("parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract; i.e. that an opposing party made false representations that induced the complaining party to agree to the contract"); *see also, K&G Contr., Inc. v. Warfighter Focused Logistics, Inc.,* 689 F. Supp. 3d 35, 44 (ED Pa. 2023). Therefore, Plaintiff's suggestion that the Sternberg Defendants' representations somehow prompted it to sign the SPA, is not only unsubstantiated, but inadmissible.

Since Plaintiff did not communicate with the Sternberg Defendants before executing the SPA, and even if it did, the terms of that contract and controlling case law preclude parol evidence, Counts I and II must be dismissed.

### b. Plaintiff Cannot Attribute Non-Party Representations to the Sternberg Defendants

In addition to Plaintiff's impermissible attempt to rely upon parol evidence, Plaintiff also proposes that the Sternberg Defendants are bound by the representations of others. Seeking to fill the

gaping holes in its theory, and the complete lack of evidence, Plaintiff instead relies upon the Certification of its president in purported support of its motion ("Scully Cert"). As alleged, although the Sternberg Defendants never uttered any material misrepresentations, they still "induced" Plaintiff to act through the representations of non-parties to these proceedings. Plaintiff relies upon the following two examples:

> [Plaintiff] was induced to pay the $1,965,600.00 purchase price into escrow… based upon the representations of the Gross and Sternberg Defendants (*through their sales brokers that communicated with me and were acting on their behalf*), that the COVID Test Kits would be shipped to TSH forthwith… *Scully Cert.* ¶5 (emphasis added).
>
> …
>
> After 1/25/22, when the COVID test kits that [Plaintiff] purchased were not delivered, I repeatedly contacted John Mann, *the sales broker for Sternberg and Gross*, who repeatedly told me that Sternberg had promised him that the COVID test kits were being delivered to me. *Scully Cert.* ¶35 (emphasis added).

There are several holes in Plaintiff's theory. First, Plaintiff did not conduct any deposition of the "sales brokers." Apart from Plaintiff's baseless conclusions, there is no evidence of the extent of their agency or authority in the transaction, or of their relationship to any party, what they communicated to whom, and how that allegedly impacted the end result. Second, as set forth above, Plaintiff contractually agreed in the SPA not to rely upon any representation outside of the parties' contract. Third, Plaintiff has not established, nor could it, that any sort of agency relationship existed amongst or between the Sternberg Defendants and the "sales brokers" to prove that they were authorized to "act on their behalf" as Plaintiff suggests. Stated differently, there is no evidence that the Sternberg Defendants authorized any "sales broker" to bind them and, as such, the so-called representations of said brokers clearly cannot be attributed to the Sternberg Defendants. *V-Tech Servs. v. Street*, 72 A.3d 270, 279 (Pa. Super. 2013); *Turnway Corporation v. Soffer*, 336 A.2d 871 (Pa. 1975).

Finally, Plaintiff's chronology is fatally flawed as it cannot prove justifiable reliance based upon alleged representations that occurred *after* it had already effectuated the wire transfer. Specifically, a February 8, 2022 communication, which occurred four days after the transfer of Plaintiff's funds as directed by the Gross Defendants, and nearly three weeks after Plaintiff effectuated the wire, is wholly immaterial to evaluating alleged fraud, as there can be no cause and effect. It is only those representations upon which Plaintiff appropriately relied *before* sending funds which could somehow evidence Plaintiff's justifiable reliance. That evidence does not exist.

Even if Plaintiff could overcome each of these insurmountable obstacles, there is no evidence that the unverified, unsubstantiated and vague representations of third parties were knowingly false. As noted above, Plaintiff must bring to trial clear and convincing evidence of the alleged fraud and fraudulent inducement. That evidentiary burden is "the highest in our civil law." *Spaw v. Springer,* 715 A.2d 1188, 1189 (Pa. Super. 1998). For all of the reasons set forth in this section, Plaintiff's incurable inability to meet that burden requires the denial of Plaintiff's Motion as to Counts I and II and, instead, summary judgment should be granted in favor of the Sternberg Defendants.

## 2.   Plaintiff Cannot Prove Civil Conspiracy in Count IV

In Count IV, Plaintiff purports to plead civil conspiracy as to the Sternberg Defendants. Civil conspiracy requires proof of an agreement between two or more persons to do an unlawful and overt act which causes legal damage to the plaintiff. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). Importantly, this cause of action is *not* an independent tort but depends upon the commission of an underlying tortious act. *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000). The failure of an underlying fraud claim is fatal to a claim for civil conspiracy relating to that alleged fraud. *Dunkin' Donuts Franchised Rests., LLC v. Claudia I, LLC*, 998 F. Supp. 2d

383, 390 (E.D. Pa. 2004). Since Plaintiff cannot prove fraud in Counts I and II, civil conspiracy must likewise be dismissed.

### 3.   Plaintiff's Remaining Claims Fail as a Matter of Law and Fact

In its Motion, Plaintiff provides no argument in support of its claims for Participation Theory (Count VII), Unjust Enrichment/Quantum Meruit (Counts VIII), Intentional Interference With Contractual Relations (Count IX), and Intentional Interference With Prospective Economic Advantage (Count X). Instead, it relies on a catch-all that "for the reasons set forth above" Plaintiff "also has established its other causes of action against the defendants." *See* Plaintiff's Motion at p. 95. While the Sternberg Defendants diligently documented why summary judgment should be granted entirely in their favor, Plaintiff apparently ran out of steam. Nonetheless, at the risk of redundancy, the Sternberg Defendants rely upon and reassert their arguments targeting each of these flawed claims as set forth in their own Motion, a condensed version of which follows.

### a.   Plaintiff Cannot Prove Participation Theory in Count VII

In Count VII, Plaintiff purports to plead a cause of action for participation theory. In Pennsylvania, "a corporate officer who takes part in the commission of a tort by the corporation is personally liable for that tort." *Laborers' Combined Funds of W. Pa. v. Molinaro Corp.*, 234 F. Supp. 3d 660, 668 (W.D. Pa. 2017) (citing *Laborers Combined Funds of W. Pa v. Cioppa*, 346 F. Supp. 2d 765 (W.D. Pa. 2004)). Liability under this theory attaches only where the corporate officer participates in the wrongful acts. *Chester-Cambridge Bank & Tr. Co. v. Rhodes*, 346 Pa. 427, 31 A.2d 128 (1943). See also *Knuth v. Erie-Crawford Dairy Cooperative Ass'n.*, 463 F.2d 470, 481 (3d Cir. 1972), cert. denied, 410 U.S. 913, 93 S. Ct. 966, 35 L. Ed. 2d 278 (1973). Nevertheless, corporate officers and directors may not be held liable for mere nonfeasance. *Chester-Cambridge B. & T. v. Rhodes*, 346 Pa. at 432, 31 A.2d at 131;

*Hager v. Etting*, 268 Pa. Superior Ct. 416, 422, 408 A.2d 856, 859 (1979). *See also Cohen v. Maus*, 297 Pa. 454, 457, 147 A. 103, 104 (1929) (directors of a corporation cannot be held individually liable for a conversion by the corporation and its general manager about which they knew nothing simply because they might have discovered the conversion by examining the corporate records). *Id.*

As pled, each of the defendants engaged in a grand scheme to defraud Plaintiff out of the purchase price. The evidence proves otherwise. In reality, Plaintiff distributed funds into an account maintained by the Sternberg Defendants who, in turn, distributed those funds as directed by their clients. That is where the Sternberg Defendants' role as escrow counsel began and ended. The Sternberg Defendants were not responsible for locating, securing or providing test kits to anyone. They were not obligated to verify, corroborate or ensure delivery. The possibility that others somehow acted to Plaintiff's detriment does nothing to evidence liability on the part of the Sternberg Defendants. The role of each professional – accountants, engineers, attorneys and others - is limited to an agreed upon scope of services and cannot stretch to include tasks outside of that scope. Here, the Sternberg Defendants appropriately and professionally carried out their responsibilities as agreed upon by their clients. Plaintiff has introduced no evidence to suggest otherwise. Since Plaintiff has not proven any malfeasance on the part of the Sternberg Defendants, it cannot demonstrate that Sternberg should be held individually liable under participation theory. Thus, as more fully set forth in their own motion, Count VII should be dismissed.

### b. Plaintiff Cannot Prove Unjust Enrichment/Quantum Meruit in Count VIII

In Count VIII, Plaintiff purports to plead a cause of action for unjust enrichment and quantum meruit. Although distinct legal theories, Plaintiff improperly has pled both. We will address each of the flawed claims, in turn.

11

"Unjust enrichment is an equitable remedy, defined as 'the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution.'" *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 411-12 (E.D. Pa. 2023) (citing *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 648 Pa. 604, 194 A.3d 1010, 1034 (Pa. 2018). To overcome summary judgment, a plaintiff must prove that "(i) they conferred benefits on the defendant, (ii) the defendant appreciated such benefits, and (iii) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without the payment of value." *Berardi v. USAA Gen. Indem. Co.*, 606 F. Supp. 3d 158, 163 (E.D. Pa. 2022). A benefit that is conferred upon a defendant is not unjustly retained where a plaintiff confers such benefit in the hope of obtaining a future benefit in return. *Burton Imaging Grp. v. Toys "R" Us, Inc.*, 502 F. Supp. 2d 434, 440 (E.D. Pa. 2007) ("A benefit conferred is not unjustly retained if a party confers the benefit with the hope of obtaining a contract.").

Under Pennsylvania law, "quantum meruit is an equitable remedy, which is defined as 'as much as deserved' and measures compensation under an implied contract to pay compensation as reasonable value of services rendered." *Artisan Builders, Inc. v. So Young Jang*, 2022 PA Super 36, 271 A.3d 889, 892 (citing *Angino & Rovner v. Jeffrey R. Lessin & Associates*, 2016 PA Super 2, 131 A.3d 502, 508 (Pa. Super. 2016).

Plaintiff can sustain neither cause of action against the Sternberg Defendants, who received no benefit from Plaintiff. Plaintiff, really Plaintiff's counsel, created a self-serving, unsupported and inadmissible document purporting to show the flow of certain funds involving the Sternberg Defendants' escrow account. Plaintiff's "exhibit," which it marked at several fact depositions, is as unclear as it is unreliable. On the other hand, the evidence is clear that the Sternberg Defendants did not profit from the failed transactions and, quite to the contrary, incurred a loss.

12

Although the allegations are unclear, and seemingly ever changing, Plaintiff has suggested that the Sternberg Defendants' "motive" to defraud is evidenced by their attorney IOLTA account – the escrow account - which allegedly proves that the Sternberg Defendants benefited from this transaction. That is not true. Rather than relying upon back-of-the-napkin math, the Sternberg Defendants coordinated a full and complete accounting of their bank records which entirely refute Plaintiff's claims. *See Ex. P*, Lesovitz Report, generally.

The Sternberg Defendants' damages expert examined the pertinent evidence of record and concluded that "disbursements for the Test Kits exceeded amounts received from [Plaintiff] for the Test Kits." Ex. C, Lesovitz Report, at p. 11. In fact, according to that report, the Sternberg Defendants incurred a significant loss in connection with the contemplated transaction. Thus, Plaintiff conferred no benefit on them, they could not appreciate any benefit, and no benefit was accepted nor retained. Moreover, Plaintiff performed no services whatsoever for the Sternberg Defendants, and the Sternberg Defendants never agreed, in writing or otherwise, to compensate Plaintiff for any services performed. Therefore, Plaintiff's unjust enrichment/quantum meruit claim against the Sternberg Defendants fails and must be dismissed.

### c.   Plaintiff Cannot Prove Intentional Interference with Contractual Relations in Count IX or Intentional Interference with Prospective Economic Advantage in Count X

In Counts IX and X, Plaintiff purports to plead a cause of action for interference with existing contractual relations and tortious interference with contract. These two causes of action, though distinct, "share essentially the same elements." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 529 (3d Cir. 1998).

A plaintiff claiming tortious interference with existing or prospective contractual relationships must prove: (i) the existence of an actual or prospective contract between the plaintiff and a third-

party; (ii) the defendants' purposeful action intended to harm an existing relationship; (iii) the absence of privilege or justification; and, (iv) resulting damage. *Pac-West Distrib. NV LLC v. AFAB Indus. Servs.*, 674 F. Supp. 3d 132, 137 (E.D. Pa. 2023) (quoting *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009)).

Plaintiff cannot demonstrate that its inability to acquire the subject test kits from the Gross Defendants interfered with any contractual relationship, either then-existing or prospective. Plaintiff has not identified any customers to whom it intended to provide kits. Moreover, it has not proven any intentional action on the part of the Sternberg Defendants. Again, the record is devoid of any pre or post-contractual action on the part of the Sternberg Defendants which somehow caused Plaintiff's alleged harm. None. When pressed during his deposition on the "existence of a contractual or prospective contractual relationship between the plaintiff and a third party," Plaintiff's president testified simply that he would not provide that "proprietary" information and ultimately conceded that Plaintiff's intended customers for the test kits are "not part of [Plaintiff's] damages claim, so it's irrelevant." *See, Ex. B to the Sternberg Defendants' Motion*, Scully Deposition, at 70:4-13; Scully Deposition, at 71:2-5. Thus, Plaintiff has not and cannot demonstrate the existence of a contractual relationship with an undisclosed, hypothetical third-party.

However, even if Plaintiff could overcome this hurdle, the claims still fail because there is no evidence from which a finder of fact could conclude that the Sternberg Defendants acted purposefully with the intent to harm Plaintiff's contractual relationships. *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 502 (E.D. Pa. 2018) (citing to *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2014 U.S. Dist. LEXIS 79895, 2014 WL 2616824, at *21 (E.D. Pa. June 11, 2014) ("A party alleging tortious interference 'must show that the defendant acted for the malevolent purpose of interfering with the plaintiff's existing or prospective business relationships.") and to *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 321 F.

Supp. 3d 503, 518 (M.D. Pa. 2018) ("The burden of proving the absence of any privilege or justification is on the plaintiff."). Plaintiff has not met this burden as there is no evidence that the Sternberg Defendants knew of, let alone interfered with, Plaintiff's third-party contractual relationships. Therefore, Counts IX and X also fail as a matter of law.

      **C.**    **The Sternberg Defendants Provided Full and Complete Responses to Plaintiff's 172 Requests for Admission**

As the Court is likely aware, the discovery process has been less than ideal in these proceedings. Plaintiff routinely pursued unfounded, exaggerated or outright meritless discovery-related motions. Incredibly, Plaintiff filed at least ten such motions, some of which targeted the Sternberg Defendants. All the while, Plaintiff failed to comply with its required meet-and-confer obligations nor to engage in even the most basic professionalism or courtesy expected before this Honorable Court. The Sternberg Defendants diligently sought to comply with all discovery requests, in good faith, and timely addressed each of Plaintiff's discovery motions, incurring great expense to do so. Plaintiff remained unsatisfied.

Incredibly, Plaintiff issued a relatively unprecedented 172 Requests for Admissions ("RFAs") to all of the defendants. As they had done throughout the litigation, the Sternberg Defendants endeavored to provide full and complete, substantive responses to each of the RFAs while, of course, preserving appropriate objections where necessary. The Sternberg Defendants spent many hours with counsel to provide complete responses.

On July 24, 2024, Plaintiff filed a Motion to deem the Sternberg Defendants' responses admitted (ECF 184), which the Sternberg Defendants timely opposed (ECF 188). Undeterred, Plaintiff has repacked and regurgitated that argument in its motion for summary judgment. The Sternberg Defendants note that the Court has scheduled argument on Plaintiff's RFA motion for November 14, 2024. Given that the Plaintiff's motion regarding the RFAs is fully briefed and ripe for a decision, they will not repeat their opposition herein. Suffice it to say, however, the Sternberg

Defendants fully, completely, and appropriately responded to Plaintiff's intentionally burdensome and oppressive RFAs and, as such, this component of Plaintiff's motion must also be denied.

### D.    Plaintiff is Not Entitled to Punitive Damages

Plaintiff has not proven *any* conceivable theory against the Sternberg Defendants. Accordingly, summary judgment should be granted in their favor and against Plaintiff. Nonetheless, according to Plaintiff, it should be granted summary judgment as to its plea for punitive damages.[2] Plaintiff falls woefully short of the mark.

"Punitive damages are appropriate to punish and deter only extreme behavior and, even in the rare instances in which they are justified, are subject to strict judicial controls" *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 169 (1985). "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984). "As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005).

There is no evidence of the Sternberg Defendants' malice, vindictiveness, or a wholly wanton disregard for the rights of Plaintiff or others. In reality, the Sternberg Defendants endeavored to act on behalf of their clients in a contemplated transaction gone wrong. After the fact, the Sternberg Defendants tirelessly sought to locate the missing product to protect their clients. The Sternberg

---

[2]    The Sternberg Defendants are unaware of any published decision wherein a non-client recovered punitive damages from its adversary's attorney via summary judgment.

16

Defendants had no knowledge of foul play or any reason to suspect wrongdoing (none of which has been proven herein). Plaintiff is not entitled to any recovery from the Sternberg Defendants, let alone punitive damages.

In support of its theory, Plaintiff leans heavily on two decisions involving the intentional misconduct of an attorney to *his own* client. *Rizzo v. Haines*, 555 A.2d 58 (Pa. 1989) and *Hutchison v. Luddy*, 870 A.2d 766, 773 (Pa. 2005) both were filed by a former client against the former counsel for misconduct arising from that representation. In *Rizzo,* for example, the court permitted a punitive damages award to "warn the profession that the law will regard with the gravest suspicion – a virtually insurmountable suspicion – circumstances whereby an attorney procures his client's assets by way of supposed gift." *Rizzo*, 555 A.2d at 67-68. With reference to the "highest order of integrity, fairness, and good faith" existing within the all-important attorney client relationship, it is true that attorneys can be subject to penalty and discipline for a breach of that relationship when the evidence warrants such a result. *Kribbs v. Jackson*, 129 A.2d 490 (Pa. 1957). Importantly, however, the Sternberg Defendants owed no duty to Plaintiff, let alone an attorney-client duty. Moreover, there is no evidence that Plaintiff incurred any harm due to any act or omission by the Sternberg Defendants, let alone their outrageous, willful, wanton or reckless conduct. Plaintiff's plea for punitive damages as to the Sternberg Defendants should be denied.

 E.   **The Sternberg Defendants Take No Position as to the Claims Against the Other Defendants**

Plaintiff has moved for summary judgment against each of the other defendants based upon the defaults it filed against them at ECF 141, ECF 100 and ECF 190. *See Plaintiff's Motion for Summary Judgment*, ECF 196 at p.84. The Sternberg Defendants take no position with respect to this component of Plaintiff's argument.

**IV.**   <u>RELIEF REQUESTED</u>

Wherefore, for the reasons set forth above, and for the arguments set forth in their own Motion for Summary Judgment, the Sternberg Defendants respectfully request that this Honorable Court deny Plaintiff's Motion for Summary Judgment as to the Sternberg Defendants, and grant Summary Judgment in their favor and against Plaintiff.

**GOLDBERG SEGALLA LLP**

Dated: October 30, 2024

By:   /s/ *Seth L. Laver*
Seth L. Laver, Esq. (PA ID #094518)
Joseph Ross, Esq. (PA ID #318039)
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
Telephone: 267-519-6800
slaver@goldbergsegalla.com
jross@goldbergsegalla.com
*Attorneys for Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC*

43079968.v2