**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMERICAN ENVIRONMENTAL** : | |
| **ENTERPRISES, INC., d/b/a** : | |
| **THESAFETYHOUSE.COM** : | |
| : | **CIVIL ACTION** |
| **Plaintiff,** : | |
| : | **No. 2022-cv-00688 (JMY)** |
| **v.** : | |
| : | |
| **MANFRED STERNBERG, ESQUIRE,** : | |
| **and MANFRED STERNBERG &** : | |
| **ASSOCIATES, PC, and CHARLTON** : | |
| **HOLDINGS GROUP, LLC, and** : | |
| **SAMUEL GROSS a/k/a SHLOMO** : | |
| **GROSS, and GARY WEISS,** : | |
| **and ASOLARDIAMOND, LLC a/k/a,** : | |
| **ASOLAR. LLC, and DAPHNA** : | |
| **ZEKARIA, ESQUIRE, and SOKOLSKI** : | |
| **& ZEKARIA, P.C.** : | |
| : | |
| **Defendants.** : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
STERNBERG DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND IN RESPONSE TO GARY WEISS SUBMISSION**

Plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM ("TSH" or "SAFETY HOUSE"), hereby files its Response in Opposition to the Motion for Summary Judgment [ECF 198] filed by defendants, Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC (collectively the "Sternberg Defendants") (the "Sternberg MSJ"), and also in response to the submission made by Gary Weiss [ECF 203]. For the reasons set forth herein, plaintiff respectfully submits that the Court should deny the Sternberg MSJ, and grant the plaintiff's Motion for Summary Judgment [ECF 197] (the "TSH MSJ").

1

## GENERAL COMMENTS IN RESPONSE TO STERNBERG MSH

In the Sternberg Defendants' effort to obtain Summary Judgment, the mastermind of this fraud scheme, Manfred Sternberg, has twisted and contorted the plain terms of the Sale and Purchase Agreement (the "SPA") (Plaintiff's Exhibit P-3 to the TSH MSJ), and conveniently overlooked many material facts which are adverse to Sternberg's position, and which establish that the Sternberg Defendants are **not** entitled to Summary Judgment (and that TSH is the party that entitled to Summary Judgment). While admitting that Sternberg drafted the SPA, the Sternberg Defendants claim that their only role in the TSH purchase transaction, was "solely" and "exclusively" only as the attorney for Seller (Sam Gross and his LLC, Charlton Holdings Group, LLC ("CHG") (collectively the "Gross Defendants"). The Sternberg Defendants contend that they were not acting as an escrow agent in the TSH purchase transaction, and that they owed no duty to SAFETY HOUSE, and that they were required as the attorneys for the Gross Defendants to release the money from their attorney escrow account simply upon the demand of their clients, the Gross Defendants. The position taken by the Sternberg ignores many undisputed facts that establish that Sternberg' role in the fraud scheme was more than just to be the attorney for the Seller (the Gross Defendants), and, to the contrary, establish that Sternberg was completely involved in the fraud scheme. The position taken by the Sternberg Defendants -- that they only were acting as Seller's attorney, and had to release funds to Seller at the instruction of their client, the Seller (i.e., before transfer of the goods purchased to SAFETY HOUSE as Buyer) -- is wrong, and contrary to the express terms of the SPA, and contrary to Pennsylvania and Texas law, and misreads the provisions of the SPA, and would render the escrow provisions of the SPA meaningless, and overlooks material facts. In fact, and to the contrary, Sternberg was completely involved in the fraud scheme – from fraudulently inducing TSH to wire the $1,965,600 purchase

price into escrow to the Sternberg attorney trust account, to using a fraudulent Bill of Sale sent to TSH (for goods that the Gross Defendants and the Sternberg Defendants did not own), to making repeated misrepresentations to TSH about the imminent delivery of TSH's Covid Test Kits (which never happened), to sending fictitious Bills of Lading to TSH (after the fact), all the while, while Sternberg disbursed plaintiff's funds from his attorney escrow account without complying with the provisions of the SPA (to make sure that "title transfer shall happen contemporaneously with the release of funds to Seller").  *See* Plaintiff's P-3, the SPA, at ¶ 6.

Sternberg also would have this Court ignore the many false statements he made to SAFETY HOUSE, several times promising to TSH that the Covid Test Kits would be delivered "the next day" (*see* Plaintiff's Exhibit P-13 to the TSH MSJ) or were en route for delivery (*see* Plaintiff's Exhibit P-27 to the TSH MSJ).  Sternberg himself ignored the instructions of counsel for SAFETY HOUSE (*see* Plaintiff's Exhibit P-13 and P-16 to the TSH MSJ) and the instructions of the attorney for VRC Medical Supplies ("VRC")[1] (*see* Plaintiff's Exhibit P-25 to the TSH MSJ) not to make any further disbursements from the Sternberg attorney escrow account into which TSH and VRC wired the funds to purchase the Covid Test Kits.

Throughout the Sternberg Defendants' MSJ submission, not once does Sternberg refer to his trust account as an "escrow" account.  Instead, he refers to the account as his "IOLTA account," even though the SPA itself in many places refers to Sternberg's account as an "escrow" account. The Sternberg Defendants rely upon the "expert" opinion of Steven Angstreich[2] – according to the

---

[1] VRC was another victim of the defendants' fraud scheme.  On January 19-20, 2022 (the day before TSH wired the $1,985,600 purchase price into escrow to Sternberg), VRC made two wires totaling $2,449,440 into Sternberg's attorney escrow account, for the purchase of 204,120 Covid Test Kits. *See* Plaintiff's Exhibit P-6 accompanying the TSH MSJ.  VRC never received their Test Kits of the refund of their $2,449,440.

[2] The Sternberg Defendants did not identify Angstreich or any other expert in their responses to plaintiff's Interrogatories and Document Requests propounded upon them, and they did not

Sternberg Defendants, "Angstreich opined that the 'SPA does not name Sternberg as escrow agent, it is silent as to any duties or obligations placed upon Sternberg, and Sternberg never signed the SPA or voluntarily agreed to act in the capacity of an escrow agent.' " Sternberg MSJ [ECF 198], at p. 22, page 34 of the 54 page pdf.  Even if the Angstreich expert report was timely and admissible, however, it simply is wrong.

The Sternberg Defendants admit that Sternberg drafted the SPA.  The Sternberg Defendants and the Angstreich report conveniently ignore the provisions of the SPA, and is contrary to the plain reading of the SPA, which in fact makes Sternberg an escrow agent. ***The SPA clearly establishes that the Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants***. *See* Plaintiff's Exhibit P-3, the SPA, at ¶¶ 4, 5 and 6, and Exhibit B.  Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE.  Pursuant to paragraph 4 of the SPA, SAFETY HOUSE as Buyer wired the funds to "the Seller's Attorney **Escrow** Account identified in Exhibit B" (emphasis added).  Paragraph 5 of the SPA clearly and unambiguously states that "the Buyer [TSH] shall transfer the above-mentioned funds [$1,965,600.00] to the Seller's Attorney **Escrow** Account listed in Exhibit B…" (emphasis added).  Exhibit B to the SPA is titled "EXHIBIT B – **ESCROW** ACCOUNT" (emphasis added), and the next line of Exhibit B identifies that escrow

---

produce any expert report by the August 2, 2024 deadline set in this case by the Court, and they did not even move, let alone obtain, the Court's permission, to identify and produce an expert report out of time.  In addition, Angstreich's law firm provides legal services to plaintiff, so it is an actual conflict of interest for Angstreich to render an expert opinion adverse to plaintiff.  In addition, the "expert opinion" goes to the ultimate issue for the fact-finder.  Plaintiff has filed a Motion to Preclude Expert Reports and Bar Expert Testimony [ECF 196], which Motion is pending before the Court.

account as the "Manfred Sternberg Jr. Attorney at Law IOLTA Trust Account" and Exhibit B provides wire instructions for the wire into the Sternberg ESCROW account. Most importantly, the SPA also clearly states in paragraph 6 that "**title transfer shall happen contemporaneously with funds being released to Seller**."

**It is significant that nowhere in the Sternberg MSJ do they even mention that provision in paragraph 6 of the SPA – the Sternberg Defendants simply ignore the requirement in the SPA that title transfer of the goods to SAFETY HOUSE (i.e., through delivery to SAFETY HOUSE of a Bill of Sale and a Bill of Lading), has to happen "contemporaneously" with the release of funds by the Sternberg Defendants from their attorney escrow account), just as the Sternberg Defendants would have this Honorable Court do the same.** But that did not happen in this case. SAFETY HOUSE did not receive a Bill of Sale for the 151,200 Covid Test Kits that the Gross Defendants were supposed to own, as required by the SPA (because in fact, they never owned any Test Kits). A Bill of Sale dated January 21, 2022, was delivered to SAFETY HOUSE, but neither the Gross Defendants nor the Sternberg Defendants owned any, let alone 151,200 Covid Test Kits, when that (fraudulent) Bill of Sale was given to SAFETY HOUSE. SAFETY HOUSE did not receive any Bill of Lading evidencing that the 151,200 Test Kits were with a recognized common carrier en route for delivery to SAFETY HOUSE, as required by the SPA (because in fact, no Test Kits ever were delivered to a common carrier). Instead, Sternberg just ignored his duties as the escrow agent, and the Sternberg Defendants released money from their attorney escrow account, on several occasions, prior to title transfer of the goods to SAFETY HOUSE.

It doesn't matter that the Sternberg Defendants did not sign the SPA. Title companies routinely act as escrow agents, to facilitate the transfer of the purchase price to the seller of a home,

contemporaneous with the transfer of title (the Deed) to the home to the buyer, but title companies do not sign the Sale and Purchase Agreements for those sales and purchases of homes.  The title company, as the escrow agent, owes a fiduciary duty both to the buyer (not to release the purchase price to the seller until buyer gets title to the property), and to the seller (not to release title to the buyer until the seller gets the purchase price).  The seller cannot unilaterally demand that the title company release the purchase price to the seller, because the title company also has a duty not to release the purchase price until the title company also satisfies his duty to the buyer. The title company discharges its fiduciary duty by a contemporaneous exchange of title (the Deed) to the buyer, with the release of the purchase price to the seller.

The same principle applies to Sternberg's role as escrow agent in the instant case.  Contrary to the position taken by the Sternberg Defendants, the Gross Defendants cannot unilaterally demand that Sternberg release the purchase price from Sternberg's attorney escrow account. Stenberg only can release the purchase price from his attorney escrow account by satisfying his duty to the buyer under paragraph 6 of the SPA, which clearly states that "**title transfer shall happen contemporaneously with funds being released to Seller**."  But Sternberg failed to comply with that provision.  The Sternberg Defendants made multiple distributions from their attorney escrow account before SAFETY HOUSE as buyer received a Bull of Lading from a reputable common carrier that the goods were en route to Seller (TSH never received a Bill of Lading), and before TSH received a valid Bill of Sale (neither the Gross Defendants nor the Sternberg Defendants had possession of any Covid Test Kits, let alone the 151,200 Test Kits purchased by TSH, when they delivered the (fraudulent) 1/21/22 Bill of Sale to SAFETY HOUSE. The Gross Defendants and the Sternberg Defendants never had a Bill of Sale for any Test Kits – they point to the 1/26/22 invoice from Weiss to Gross whereby Weiss billed them for Test Kits,

but Weiss never sent them a Bill of Sale for any Test Kits.  And no such Bill of Sale from Weiss

to the Gross Defendants or the Sternberg Defendants for any Test Kits was produced in this case.

### PLAINTIFF HAS ESTABLISHED ITS FRAUD CLAIMS AGAINST THE STERNBERG DEFENDANTS BASED UPON THE UNDISPUTED FACTS

In  their effort to avoid Summary Judgment, the Sternberg Defendants miscast and

misconstrue the claims of TSH in this lawsuit.  The Sternberg Defendants claim that "this is a

breach of contract case involving CHG's alleged inability to satisfy its contractual obligations

under the SPA.  The dispositive issues involve the respective responsibilities of the parties to that

contract.  The Sternberg Defendants are strangers to  the SPA apart from their role as scrivener of

that document in their capacity as independent counsel to CHG."  *See* Sternberg MSJ [ECF 198,

at p. 12 (page 18 of the 38 pdf).  ***Nothing could be further from the truth***.

The undisputed facts establish that Sternberg, the mastermind of this classic fraud scheme.

made multiple material misrepresentations of fact to SAFETY HOUSE, both to induce TSH to

wire transfer the $1,965,600 purchase price into escrow to the Sternberg escrow account, and also

thereafter, knowing that those representations were false, and intending TSH to rely upon them,

which SAFETY HOUSE did, and sustained damages as a result.  The Sternberg Defendants admit

that the SPA used in this transaction was drafted by Sternberg.  The SPA states that the purchase

price was to be wired by TSH as the buyer into escrow to the Sternberg attorney escrow account.

*See* Plaintiff's Exhibit P-3, the SPA, at ¶¶ 4, 5 and 6, and Exhibit B.  It simply is ludicrous for the

Sternberg Defendants to deny that Sternberg wasn't an escrow agent, and instead that Sternberg

only was acting "solely and exclusively" as the conduit for their client, who was the seller (the

Gross Defendants).  While throughout their MSJ, the Sternberg Defendants refer to the Sternberg

account as the "IOLTA account" without reference in their moving papers to the word "escrow," the terms of the SPA clearly state otherwise, in several places.

Sternberg attempts to justify his wrongful conduct by incredibly claiming that he had no role as an escrow agent under the SPA, despite the express wording of his trust account as the escrow account, many times throughout the SPA and also in Exhibit B to the SPA.   But contrary to Stenberg's claim, he had a duty as the escrow holder to insure that "**title transfer shall happen contemporaneously with the release of finds to Seller**."  Sternberg failed to fulfill his duty as the holder of the escrow funds.

As previously noted, although Sternberg conveniently omits the term "escrow" in describing the Sternberg trust account, pursuant to paragraph 4 of the SPA, SAFETY HOUSE as Buyer wired the funds to "the Seller's Attorney **Escrow** Account identified in Exhibit B" (emphasis added).  Paragraph 5 of the SPA clearly and unambiguously states that "the Buyer [TSH] shall transfer the above-mentioned funds [$1,965,600.00] to the Seller's Attorney **Escrow** Account listed in Exhibit B…" (emphasis added).  Exhibit B to the SPA is titled "EXHIBIT B – **ESCROW** ACCOUNT" (emphasis added), and the next line of Exhibit B identifies that escrow account as the "Manfred Sternberg Jr.  Attorney at Law IOLTA Trust Account" and the title of Exhibit B provides wire instructions for the wire into the Sternberg ESCROW account.

The claim of the Sternberg Defendants that they "are strangers to  the SPA apart from their role as scrivener of that document in their capacity as independent counsel to CHG" and that their only role was to disburse funds from the escrow account upon the instructions of their clients Gross Defendants as seller, also are belied and contradicted by the terms of the very SPA that they drafted and that was used in this transaction.  The SPA also clearly states in paragraph 6 that "**title**

8

**transfer shall happen contemporaneously with funds being released to Seller.**" Paragraphs 5

and 6 of the SPA also sets forth how that was supposed to be accomplished:

> "5.     Seller agrees to sell 151,299 boxes of 2 count iHealth COVID 19 home test kits. The Buyer shall transfer the above mentioned funds [$1,965,600.00] to the Seller's Attorney Escrow Account listed in Exhibit B as per the invoice.
>
> 6.     Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by the Buyer. Title transfer shall happen contemporaneously with funds being released to Seller."

Plaintiff's Exhibit P-3, the SPA, at ¶¶ 5 and 6.

The SPA also states that the "Seller agrees to coordinate and pay for common carrier

transportation to deliver the Goods from the Seller's warehouse(s) to Buyer at Seller's cost and is

included in the purchase price paid to Seller by Buyer hereunder. Id, at ¶ 8.

Throughout his deposition, and also in the Certification filed by him in support of plaintiff's

MSJ, Daniel Scully, the principal of SAFETY HOUSE, testified that he relied upon those

representations, which were the main inducement for TSH to wire the $1,965,600 into escrow to

attorney Sternberg in the first place. Mr. Scully stated that the express provisions of the SPA

repeated what he was told by the brokers acting for Sternberg, that induced him to make that wire

transfer into escrow to Sternberg's attorney trust account. Sternberg was so involved in the TSH

transaction that the TSH Purchase Order #13815 (see Plaintiff's Exhibit P-2) submitted by Plaintiff

with the 1/21/22 SPA and its wire transfer listed Sternberg's number and name in the "vendor"

section of TSH's Purchase Order. Who wouldn't feel comfortable knowing that their $1,965,600

purchase price was *not* going directly to the Seller, but instead to the attorney for the Seller (a

reputable Texas attorney), who agreed to hold the $1,965,600 purchase price in escrow in his

attorney trust account, and not release the refunds to Seller unless and until TSH received a Bill of Sale for the Test Kits, and a Bill of Lading that would evidence that the Seller had delivered the Test Kits to a common carrier for delivery to the Buyer?

But that did not happen. After Sternberg received the $1,965,600 purchase price wired from SAFETY HOUSE into escrow to Sternberg's attorney trust account, Stenberg failed to do anything to make sure that a bona fide Bill of Sale was delivered to TSH, and that a Bill of Lading also was sent to evidence that the Covid Test Kits had been delivered to a common carrier for delivery to TSH, before releasing those funds from his attorney escrow account. Instead, Sternberg made distributions form his attorney escrow account before a bona fide Bill of Sale was delivered to TSH, and before a Bill of Lading also was sent to TSH. Portions of the funds from Sternberg's attorney escrow account were distributed to the Gross Defendants and the Zekaria Defendants and the Weiss Defendants, and retained by Sternberg himself,  All defendants in this fraud scheme received portions of TSH's money, and they all failed to refund what they received to TSH. TSH paid 41,965,600 for 151, 200 Covid Test Kits, but never received any Test Kits or the return of its purchase price. In the words of Stenberg himself, that [inducing someone to transfer money to you to purchase goods that are never delivered] "is **classic fraud in the inducement and can only be cured by delivery of return of all money**." *See*  Plaintiff's Exhibit P-17, the text that Sternberg sent to Gross after Weiss told them he needed another $190,000 wired to Weiss in order to deliver the Test Kits (which delivery also never happened).

Sternberg was so involved in the TSH transaction that the TSH Purchase Order #13815 (see Plaintiff's Exhibit P-2) submitted by Plaintiff with the 1/21/22 SPA and its wire transfer listed Sternberg's number and name in the "vendor" section of TSH's Purchase Order.

And Sternberg's fraudulent misrepresentations did not stop there.  On February 8, 2022, Stenberg misrepresented to plaintiff that the Covid Test Kits were en route and would be delivered to plaintiff by no later than February 17, 2022 (when they were not with a common carrier or otherwise being shipped to TSH).  *See* Plaintiff's Exhibit P-27.  And the very first time that undersigned counsel and Scully contacted Sternberg, on February 15, 2022, Sternberg represented that "the product will be arriving tomorrow at the location provided by your client [TSH]. Let me know when your client is in possession of his product."  *See* Plaintiff's Exhibit P-13.  Sternberg was requested to supply the Bill of Lading to confirm his representations (*see* Plaintiff's Exhibit P-28), but failed to do so.  In fact, no Bills of Lading were supplied to TSH before the lawsuit was filed.

Even the Bill of Sale that was delivered to SAFETY HOUSE is fraudulent, and was used by the Sternberg Defendants in this case.  That 1/21/22 Bill of Sale purports to "sell, assign and transfer to the 'Buyer'…151,200 boxes of 2 count iHealth Covid 19 test kits"  and that "this transfer is effective as of January 21, 2022 "  (Plaintiff's Exhibit P-5).  But ***none of the defendants owned any Test Kits, let alone 151,200 Test Kits, on January 21, 2022***.  The Sternberg Defendants further compounded their fraud by using that fraudulent 1/21/22 Bill of Sale in the Motion to Dismiss Complaint that the Sternberg and Gross Defendants filed with this Court on April 1, 2022, in response to plaintiff's Complaint  that fraudulent 1/21/22 Bill of Sale was attached as Exhibit D to their Motion to Dismiss.  *See* Plaintiff's Exhibit P-5a, page 9 of 10 the Sternberg/Gross Defendants' Motion to Dismiss [ECF 13-4].

The Sternberg Defendants compounded their wrongful and fraudulent conduct by knowingly making several distributions from the Sternberg attorney escrow account after counsel

for TSH and counsel for VRC each gave Sternberg notice not to make any further distributions from that escrow account (*see*, Plaintiff's Exhibits P-13 and 16, and P-25).

The Sternberg Defendants compounded their wrongful and fraudulent conduct by knowingly making several distributions from the Sternberg attorney escrow account before complying with their duties as escrow agent by confirming that title transfer would happen contemporaneous with the release of funds to Seller, as required by paragraph 6 of the SPA. Sternberg wrongfully and prematurely wired $219,240 from the escrow account directly to the Weiss Defendants on February 1, 2022, which was 5 days before Weiss even claims to have acquired Covid Test Kits. Sternberg wrongfully and prematurely wired another $1,911,960 to the Zekaria Defendants (Weiss's attorney)  on February 4, 2022, again which was before Weiss even claims to have acquired Covid Test Kits.

The Sternberg Defendants attempt to excuse their failure to hold TSH's $1,965,600 purchase price in their attorney escrow account, by pointing to the Standard Operating Procedures ("SOP") set forth in Exhibit E of the SPA.  However, unlike paragraph 6 of the SPA, which was signed by TSH (and eventually but belatedly signed by Gross, after the lawsuit was filed), that Exhibit E was not signed.  Sternberg's reading of the SOP is inconsistent with paragraph 6 of the signed SPA that Stenberg admits drafting (**"title transfer shall happen contemporaneously with funds being released to Seller"**).  The only way that Exhibit E can be consistent with paragraph 6 of the signed SPA (**"title transfer shall happen contemporaneously with funds being released to Seller"**) is if items 3, 4, 5, 6, and 7 in the SOP occur simultaneously.  No wonder that the Sternberg Defendants fail even to mention the paragraph 6 requirement (**"title transfer shall happen contemporaneously with funds being released to Seller"**) anywhere in their motion seeking summary judgment.  Because that did not happen.  Sternberg filed to fulfill his duty as the

holder of the escrow funds, to make sure that title transfer happened contemporaneously with the release of funds to Seller. That provision alone cannot justify summary judgment in favor of the Sternberg Defendants.

The position taken by the Sternberg Defendants, that they only were acting as Seller's attorney, and had to release funds to Seller at the instruction of their client, the Seller (i.e., before transfer of the goods purchased to SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA, and contrary to PA and TX law, and would render the escrow provisions of the SPA meaningless.

In sum, SAFETY HOUSE has established fraud on the part of the Sternberg Defendants and that Summary Judgment is appropriate against the Sternberg Defendants on the fraud claims.

## PLAINTIFF HAS ESTABLISHED ITS OTHER CLAIMS AGAINST THE STERNBERG DEFENDANTS BASED UPON THE UNDISPUTED FACTS

The Stenberg Defendants claim that TSH has not established their claim for civil conspiracy, because plaintiff fails to establish an underlying separate cause of action. But, as set forth in the TSH MSJ, and above, plaintiff has established their fraudulent inducement and fraud claims against the Sternberg Defendants. The undisputed facts show an agreement between two or more persons, to do an illegal act, which established their conspiracy claim against the Sternberg Defendants. Schwartz v. Taylor, 2021 U.S. Dist. LEXIS 198818 (ED PA 2021); Church Mut. Ins. Co. v. Alliance Adjustment Group, 102 F. Supp. 3d 719 (ED PA 2015). Plaintiff is entitled to summary judgment in its favor against the Stenberg Defendants for the civil conspiracy claims set forth in Count IV of plaintiff's Amended Complaint.

Similarly, Sternberg individually is liable to TSH under the participation theory, because Stenberg individually took part in the fraud perpetrated upon TSH by his law firm entity. Plaintiff

is entitled to summary judgment in its favor against the Stenberg Defendants for the participation theory claims set forth in Count VII of plaintiff's Amended Complaint. <u>Black v. Gigliotti</u>, 514 B.R. 439 (ED PA 2014) (summary judgment granted based upon participation theory).

Plaintiff also is entitled to summary judgment against the Stenberg Defendants based upon their Count VIII claim of unjust enrichment/quantum meruit. The Stenberg Defendants retained the benefit of the $1,965,600 purchase price that the plaintiff wired into their attorney escrow account, without providing the expected benefit to plaintiff (i.e. the delivery of the Test Kits for which the wire was made). Nether the SPA, nor any other agreement, nor any law, justifies the Sternberg Defendants retaining the $1,965,600 purchase price, without providing any resulting benefit or compensation to TSH. Summary judgment for plaintiff TSH against the Stenberg Defendants on this cause of action is proper. <u>Stephan Zouras LLP v. Marrone</u>, 2023 U.S. Dist. LEXIS 140108 (MD PA 2023).

Contrary to the claims of the Sternberg Defendants, the economic loss doctrine is not applicable – this is a fraud case, and not a breach of contract case.

Contrary to the claims of the Stenberg Defendants, the Sternberg Defendants are not immune under Texas law. The Court previously denied their Motion to Dismiss based upon their claim that Texas law was applicable. And in any event, the actions of the Stenberg Defendants were not undertaken within the scope of their representation of the Gross Defendants, but were fraudulent in and among themselves.

In sum, SAFETY HOUSE has established that it is entitled to Summary Judgment in its favor against the Sternberg Defendants on each of the claims asserted by Plaintiff against them in the Amended Complaint.

## THE EXPERT REPORTS OF THE STERNBERG DEFENDANTS
## SHOULD BE PRECLUDED, AND ARE WRONG IN ANY EVENT

The expert reports of the Sternberg Defendants should be precluded, and their testimony barred, for the reasons set forth in greater detail in plaintiff's Motion to Preclude Expert Reports and Bar Expert Testimony [ECF 196], which Motion is pending before the Court.[3]

The Angstreich report also must be barred because it is an actual conflict of interest for that firm to render an expert opinion against TSH, which is one of their current clients.  *See* plaintiff's Motion to Preclude Expert Reports and Bar Expert Testimony [ECF 196], Legal Argument, at section C (p. 25); *see also*, the Second Certification of Daniel Scully, being filed contemporaneously with this Response, which is incorporated herein by reference as it fully set forth at length.

In addition, the expert reports simply are wrong.

Lesovitz concludes that Sternberg did not benefit from the Safety House transaction and that Sternberg incurred a loss from the transaction.  But Lesovitz bases his conclusion by focusing only on the TSH transaction, and he ignores the VRC transaction, and he also ignores Weiss's delivery of $4 million of diamonds and gemstones to Sternberg/Gross.  Lesovitz states that TSH paid $1,965,600 into Sternberg's attorney escrow account, and that Sternberg wired $2,571,200 out to buy the Covid Test Kits, resulting in a loss of $605,600 (*see* page 11 of the Lesovitz report).  Lesovitz does not explain why, when TSH only wired $2 million into Sternberg's attorney escrow account, Sternberg then wired $2.5 million out (i.e., $600,000 more than TSH wired into escrow to Stenberg).  Lesovitz also does not explain why Sternberg wired out more than $907,000 for the 151,200 Covid Test Kits that TSH purchased  (the Weiss 1/26/22 invoice to Gross had a $6

---

[3] *See* footnote 2, *supra*.

per unit purchase price, so 151,200 x $6 is $907,000, but Sternberg wired out $2,571,200).   Lesovitz conveniently and totally ignores the fact that VRC made 2 wires into Sternberg's attorney escrow account totaling $2,449,440, on January 19-20, 2022, one day before TSH's 1/21/22 $1,965,600 wire to Sternberg.  Lesovitz also conveniently and totally ignores the fact that Gary Weiss gave Sternberg/Gross diamonds and gemstones totaling $4 million as collateral, which they kept and did not return to Weiss.  That turns Lesovitz's $605,600 loss into a $5.8 million gain for Sternberg/Gross.

The Angstreich Report similarly is flawed. As previously noted, "Angstreich opined that the 'SPA does not name Sternberg as escrow agent, it is silent as to any duties or obligations placed upon Sternberg, and Sternberg never signed the SPA or voluntarily agreed to act in the capacity of an escrow agent.' "  Sternberg MSJ [ECF 198], at p. 22, page 34 of the 54 page pdf.  However, that simply is wrong.

The Sternberg Defendants admit that Sternberg drafted the SPA.   The Sternberg Defendants and the Angstreich report conveniently ignore the provisions of the SPA, and is contrary to the plain reading of the SPA, which in fact makes Sternberg an escrow agent.  *The SPA clearly establishes that the Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants*. *See* Plaintiff's Exhibit P-3, the SPA, at ¶¶ 4, 5 and 6, and Exhibit B.  Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE.  Pursuant to paragraph 4 of the SPA, SAFETY HOUSE as Buyer wired the funds to "the Seller's Attorney **Escrow** Account identified in Exhibit B" (emphasis added).  Paragraph 5 of the SPA clearly and unambiguously states that "the Buyer [TSH] shall transfer the above-mentioned

funds [$1,965,600.00] to the Seller's Attorney **Escrow** Account listed in Exhibit B…" (emphasis added).  Exhibit B to the SPA is titled "EXHIBIT B – **ESCROW** ACCOUNT" (emphasis added), and the next line of Exhibit B identifies that escrow account as the "Manfred Sternberg Jr.  Attorney at Law IOLTA Trust Account" and Exhibit B provides wire instructions for the wire into the Sternberg ESCROW account.  Most importantly, the SPA also clearly states in paragraph 6 that "**title transfer shall happen contemporaneously with funds being released to Seller**."

The opinion of Angstreich, adopted by the Sternberg Defendants, that the "sole and exclusive" role of Sternberg Defendants was only as Seller's attorney, and that Sternberg had to release funds to Seller at the instruction of their client, the Seller (i.e., before transfer of the goods purchased to SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA, and contrary to PA and TX law, and would render the escrow provisions of the SPA meaningless.  *See also*, plaintiff's Motion to Preclude Expert Reports and Bar Expert Testimony [ECF 196], at pp. 31-36.

## GARY WEISS'S SUBMISSION IS IMPROPER AND DOES NOT PRECLUDE JUSGMENT AGAINST THE WEISS DEFENDANTS IN ANY EVENT

In response to the TSH MSJ, Gary Weiss made a submission to the Court [ECF 203], in which he argues that Judgment should not be entered against him, in general because he did not have direct dealings with SAFETY HOUSE, and because he gave $4 million in diamonds and gemstones as collateral to the Sternberg Defendants and the Gross Defendants, which they retained and did not return to him.

In the first instance, his submission is improper, in light of the default that was entered against him on December 21, 2023 [ECF 141].  That default establishes the liability of the Weiss Defendants.  No motion to set aside or open the default has been made.  The only remaining issue as respects the Weiss Defendants is the amount of their liability owed to plaintiff.  In addition,

Weiss failed to comply with Judge Younge's Policies and Procedures, because Weiss fails to cite to the documents or record in support of his claims.

Even if the Weiss submission was proper, however, the facts admitted by Wiess, and not disputed by Weiss, actually support TSH's Motion for a Judgment against the Weiss Defendants, as well as Summary Judgment against the Sternberg Defendants.

Weiss claims that "there was no financial benefit to Weiss from this transaction…" See Weiss submission [ECF 203], at p. 2 of 13.  But Weiss does not dispute that Sternberg wired $219,240 directly to the Weiss Defendants on February 1, 2022, and that a total of $2,571,200 (from the total of $4,415,040 that Sternberg received from TSH and VRC) was wired by Sternberg to Weiss and his attorneys, the Zekaria Defendants.  *See* Plaintiff's Exhibit P-7 accompanying the TSH MSJ.  Weiss does not dispute that the $2,571,200 that Sternberg wired to him and the Zekaria Defendants was retained and divided up between the Weiss Defendants, and the Zekaria Defendants, and the Gross Defendants. *See* Plaintiff's Exhibit P-31 accompanying the TSH MSJ.

Weiss does not dispute that Sternberg wired $219,240 directly to the Weiss Defendants on February 1, 2022. *See* Plaintiff's Exhibit P-7 accompanying the TSH MSJ.  That 2/1/22 transfer from Sternberg's escrow account to Weiss was 5 days before Weiss even claims to have acquired any Test Kits from "Mask & Eldiven" – *see* Plaintiff's Exhibit P-9 accompanying the TSH MSJ, the alleged Bill of Sale from "Mask & Eldiven" that Weiss produced during discovery, to support his claimed purchase of 365,790 Covid Test Kits from them.  Weiss does not dispute that Sternberg wired another $1,911,960 to his attorney, the Zekaria Defendants, on February 4, 2022 *See* Plaintiff's Exhibit P-7 accompanying the TSH MSJ.  That 2/4/22 transfer from Sternberg's escrow account to Weiss was 2 days before Weiss even claims to have acquired any Test Kits.  Those transfers made by Sternberg out of his attorney escrow account before even the Weiss Defendants

claim to have acquired any Test Kits, underscores Sternberg's repeated failures to comply with his escrow duties under the SPA.

It even is questionable whether the Weiss Defendants ever purchased any Covid test Kits at all. Weiss produced a one page document which he claimed was a Bill of Sale from "Mask & Eldiven" for his purchase of 365,790 Covid Test Kits. *See* Plaintiff's Exhibit P-9 accompanying the TSH MSJ. But the alleged seller of the test kits (Mask & Eldiven) has no Internet presence, and cannot be located or reached, and the address Weiss shown on P-9 is a vacant building.

Gary Weiss also gave two inconsistent and conflicting stories under oath in this case, about the 365,790 Test Kits he claims he obtained.

The Gary Weiss first story under oath: In his verified Answer to the Amended Complaint that he filed [ECF 105], *see* Exhibit P-18 accompanying the TSH MSJ, Weiss claimed under oath that when the Stenberg Defendants and the Gross Defendants failed to supply him with any Bills of Lading for delivery of the Test Kits, he was forced to store the 365,790 Test Kits that he claims he bought, with Available Moving & Storage ("AMS"), but that when he went to AMS to pick them up, they were no longer on the truck and "could not be located." *See* Plaintiff's Exhibit P-18, the Answer of the Weiss Defendants filed to the First Amended Complaint [ECF 105], at ¶¶ 172-183.

The Gary Weiss second story under oath:   In his sworn deposition conducted on 2/16/24 (*see* Exhibit P-19 accompanying the TSH MSJ), Weiss testified under oath that he picked the Test Kits up from AMS, but when he drove back to his place in New Jersey, he claims he discovered that someone had replaced all of the 365,790 Test Kits with rice. *See* Exhibit P-19, 2/16/24 Weiss deposition, at Tr. 102:1-107:19.

In either case, Weiss admitted that he did not make a police report, or confront or sue AMS, or even inform Sternberg or Gross, concerning the alleged $1.8 million of test kits he claimed he bought, and that he first claimed AMS lost, and that he then claimed were replaced with rice.   He did not take any pictures of the alleged 365,790 Test Kits, or any pictures of the alleged Test Kit boxes filled with rice.  The only picture Weiss produced by Weiss (*see* Plaintiff's Exhibit RFA-5 accompanying the TSH MSJ), is a picture of "Home Depot" boxes (not iHealth Covid Test Kit boxes), that Weiss claimed were delivered to him on February 6, 2022.  But the picture does not show what is inside the boxes, and the boxes only occupy about half of the trailer in the picture (insufficient space for 365,790 boxes of Covid Test Kits). And under either story, Weiss admits that he no longer had possession of any of the Test Kits.

Gary Weiss also states that he gave $4 million in diamonds and gemstones to the Sternberg Defendants and the Gross Defendants as collateral, which they retained and did not return to him. Weiss claims he has no liability to SAFETY HOUSE because a "FULL REFUND was given by Weiss, by way of Defendant Sam Gross, Charlton Holding Group and His Lawyer Manfred Sternberg asked for collateral which was given and acknowledged, and they kept the Collateral and sold it and accepted it as a Full Refund." *See* Weiss Submission [ECF 203], at page 3 of 13. Weiss once again admits that *it was Sternberg who asked for the collateral* (*Id*.), supporting the documents Weiss produced in discovery that *it was Sternberg who wanted Weiss to give him the diamonds and gemstones because Sternberg "did not want to lose his profit"* (*see* Plaintiff's Exhibits P-23a to P-23g accompanying the TSH MSJ). While Weiss's claim (that he gave diamonds and gemstones as collateral to Sternberg and Gross) may establish that the Weiss Defendants may have claims over against Sternberg and Gross, i.e., for contribution and/or indemnity, Weiss's "full refund" defense does not affect plaintiff TSH's claim that all defendants

(the Weiss Defendants, together with the Sternberg Defendants and the Gross Defendants and the Zekaria Defendants), are liable to plaintiff on account of the fraud scheme that is the subject of this lawsuit.  The Weiss Defendants did not give any of the $4 million in diamonds and gemstones to SAFETY HOUSE.  The Weiss Defendants did not return to SAFETY HOUSE any of the $2,571,200 that was wired from Sternberg from his escrow account.  The Weiss Defendants did not deliver any Covid Test Kits to SAFETY HOUSE, even assuming that Weiss even had acquired any Test Kits.

Weiss's claim that he delivered $4 million in diamonds and gemstones to Sternberg and Gross also provides further support for SAFETY HOUSE's claims against those defendants, while also directly undercutting the Sternberg expert report of Lesovitz that Sternberg lost money on the Covid Kit transactions.  Sternberg cannot dispute that Weiss delivered the $4 million in collateral to them, and that Sternberg had control over that collateral.  After delivery of that collateral, Sternberg then offered to the attorneys for VRC to deliver some of that collateral to VRC, if VRC did not receive delivery of their Test Kits.  *See* Plaintiff's Exhibit P-24 accompanying the TSH MSJ, the 3/13/22 email to Sternberg from Randy Adler, Esquire, the attorney for VRC, memorializing that Sternberg offered to liquidate the collateral that Weiss delivered to them and to pay the proceeds to VRC, in the event that they failed to deliver to VRC the Test Kits purchased by VRC. And it should go without saying that VRC never received the Test Kits they purchased, or a refund of their $2,449,440 purchase price that was wired into escrow to Sternberg's trust account, and they did not receive any of the collateral that Weiss delivered to Sternberg and Gross, or any proceeds from the liquidation of the $4 million in diamonds and gemstones. *See* Plaintiff's Exhibit P-35 accompanying the TSH MSJ, a copy of the federal court lawsuit filed by VRC against

the Sternberg Defendants and the Weiss Defendants alleging the same fraud scheme that is the subject of the instant TSH lawsuit.

Weiss claims that TSH suffered no damages because TSH failed to name one customer to whom TSH was supposed to re-sell the Test Kits (*see* Weiss submission [ECF 203], at p. 4 of 13), and because the $1,965,600 purchase price paid by SAFETY HOUSE "came from an EDIL loan from the Government for $2,000,000 Dollars [sic], which Scully does not have to pay back till present date (July 23, 2024)…" (*Id*, at p. 7 of 13). Weiss conveniently overlooks that TSH lost the $1,965,600 purchase price TSH paid, which was retained and distributed among the defendants (including the Weiss Defendants), without refunding any of the purchase price to TSH, and without delivering to TSH any of the Covid Test Kits that were purchased. The fact that TSH paid the purchase price from the proceeds of an EDIL government loan, does not establish that TSH did not suffer any loss. If anything, it shows that not only has SAFETY HOUSE lost its $1,965,600 purchase price, but TSH now has to start repaying the $$2 million loan it obtained, in effect resulting in a double loss to TSH.

Weiss also (falsely) claims that plaintiff TSH was "offered a FULL REFUND on more than 1 occasion" and in support of that (false) claim, Weiss points to ECF 180, which is Weiss's response to plaintiff's Request for Admission, and specifically RFA #38. While plaintiff wishes that were true (it is not – plaintiff never was sent any refund), to the contrary the RFA #38 referenced by Weiss states that "Gross and Sternberg failed to refund to Plaintiff the $1,965,600.00 paid by plaintiff and wired to Sternberg for Plaintiff's purchase of the 151,200 Test Kits." The Gross Defendants on February 15, 2022, informed TSH that all they had to do to get a full refund was to ask for a refund from Sternberg (*see* Plaintiff's Exhibit RFA-1 through RFA-4, the 2/15/22 texts between Gross and Scully to that effect, and *see* Plaintiff's Exhibit P-33, a transcription of

those 2/15/22 text exchanges).  But when plaintiff the next day then made demand on Sternberg for that refund (*see* Plaintiff's Exhibit P-15 accompanying the TSH MSJ), that Sternberg's client stated would be made (*see* Plaintiff's Exhibit RFA-1 through RFA-4, the 2/15/22 texts between Gross and Scully to that effect, and *see* Plaintiff's Exhibit P-33, a transcription of those 2/15/22 text exchanges), Sternberg just ignored what his client said, and continued to make distributions from his attorney escrow account (even after being put on notice both by counsel for TSH (*see* Plaintiff's Exhibits P-13 and  P-16) and counsel for VRC (*see* Plaintiff's Exhibit P-25) not to make any further distributions from the Sternberg escrow account

Even if properly filed, there is nothing in the Weiss submission that prevents SAFETY HOUSE from obtaining a Default Judgment and Summary Judgment against the Weiss Defendants, and much of his arguments lend further support to TSH's request for Summary Judgment against the Sternberg Defendants.

## RELIEF REQUESTED

WHEREFORE, plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM, respectfully submits that the Court should enter the proposed Order accompanying the TSH MSJ: (a) granting Summary Judgment under Rule 56, in favor of plaintiff TSH against each of the Defendants, individually jointly and severally, for compensatory damages in the amount of $1,965,600.00, plus post-Judgment interest at the legal rate, plus costs; and (b) granting a final Default Judgment under Rule 55, in favor of plaintiff TSH against the Weiss Defendants, and the Gross Defendants, and the Zekaria Defendants, individually, jointly and severally, for compensatory damages in the amount of $1,965,600.00, plus post-Judgment interest at the legal rate, plus costs; and (c) granting Summary Judgment under Rule 56, for punitive damages in favor of plaintiff TSH against each of the defendants, individually jointly and severally, either in an

amount determined by the Court (which plaintiff requests be ten times the purchase price paid by plaintiff), or in the alternative, enter liability for punitive damages in favor of plaintiff TSH against all Defendants and establish a schedule for Plaintiff to conduct asset discovery of the Defendants, and thereafter schedule and conduct a punitive damages hearing to determine the amount of punitive damages to be awarded in favor of plaintiff against the Defendants; and (c) granting to plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64223
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com

Date:  October 30, 2024

Attorneys for plaintiff TSH

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below he caused to be served a true and correct copy of the foregoing Plaintiff's Response including supporting exhibits and papers, upon all defendants, via ECF, and/or email, upon the following:

Seth Laver, Esquire
Joseph Ross, Esquire
Goldberg Segalla
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
slaver@goldbergsegalla.com
Jross@goldbergsegalla.com

Gary Weiss
ASOLARDIAMOND, LLC
437 1st Avenue
Elizabeth, NJ 07206
wgary4109@gmail.com
monipair@aol.com

Samuel Gross
a/k/a Shlomo Gross
78 Buckminster Road
Rockville Centre, NY 11570
charltonholdinggroupllc@aol.com
publicdiamonds@gmail.com
Scg1212@gmail.com
Samrosinc@icloud.com

Daphna Zekaria, Esquire
SOKOLSKI & ZEKARIA, PC
8 Westminster Road
Syosset, NY 11791
Dzandpeanut@aol.com

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE

Date:  October 30, 2024          Attorneys for Plaintiff TSH