**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN ENVIRONMENTAL | : | |
| ENTERPRISES, INC., d/b/a | : | |
| THESAFETYHOUSE.COM | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 2022-cv-00688 (JMY)** |
| v. | : | |
| | : | |
| MANFRED STERNBERG, ESQUIRE, | : | |
| and MANFRED STERNBERG & | : | |
| ASSOCIATES, PC, and CHARLTON | : | |
| HOLDINGS GROUP, LLC, and | : | |
| SAMUEL GROSS a/k/a SHLOMO | : | |
| GROSS, and GARY WEISS, | : | |
| and ASOLARDIAMOND, LLC a/k/a, | : | |
| ASOLAR. LLC, and DAPHNA | : | |
| ZEKARIA, ESQUIRE, and SOKOLSKI | : | |
| & ZEKARIA, P.C. | : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFF'S RESPONSE TO STERNBERG DEFENDANTS' LATE-FILED**
**STATEMENT OF [ALLEGED]  UNDISPUTED FACTS IN SUPPORT OF**
**STERNBERG RULE 56 MOTION FOR SUMMARY JUDGMENT**

Plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM ("TSH"

or "SAFETY HOUSE"), pursuant to section D of Judge Younge's Policies and Procedures governing

Summary Judgment Motions in Civil Cases, and Rule 56, respectfully submits this Response to the

Sternberg Defendants' Statement of [Alleged] Undisputed Material Facts, which said defendants

submitted (late) in support of their Motion for Summary Judgment, and in response to said factual

claims, SAFETY HOUSE states as follows:

1. **THE PARTIES**

1.      In this civil action, a plaintiff seeks to recover from a series of  defendants for the alleged

failure to provide COVID-19 test kits during the global pandemic. *See, Ex. A, First Amended*

*Complaint* ("Complaint").

**SAFETY HOUSE RESPONSE**:   **Admitted.**

2.      In its Complaint, Plaintiff American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM ("Plaintiff") purports to plead ten causes of action against the following sets of defendants: (i) the seller of the test kits – Defendant Charlton Holdings Group, LLC ("CHG") and its president, Defendant Samuel Gross; (ii) CHG's supplier of the test kits – Defendant Gary Weiss ("Weiss"); Weiss' attorney in the transaction – Defendant Daphna Zekaria, Esq. ("Zekaria"); and, finally (iv) the Sternberg Defendants, whose sole role in the transaction was as counsel for CHG. *See, id.*

**SAFETY HOUSE RESPONSE**:   **DISPUTED. ASOLARDIAMOND, LLC, a/k/a ASOLAR, LLC, also is one of the Weiss Defendants, and SOKOLSKI & ZEKARIA, PC, is one of the Zekaria Defendants. *See* Plaintiff's Exhibit P-36, Plaintiff's Amended Complaint [ECF 80]. SAFETY HOUSE also disputes and denies that the "sole role" of the Sternberg Defendants was as counsel for defendant CHG.  The SPA clearly establishes that the Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants.  *See* Plaintiff's Exhibit P-3, the SPA, at ¶¶ 4 Plaintiff's Exhibit P-36, 5, 6 and Exhibit B.  Sternberg's role in the SPA is as an escrow agent, was to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE.  *Id*, at ¶ 6.  Pursuant to paragraph 4 of the SPA (see Plaintiff's Exhibit P-3, the SPA), SAFETY HOUSE as Buyer wired the funds to "the Seller's Attorney *Escrow* Account identified in Exhibit B" (emphasis added). *Id*, at ¶ 4.  Paragraph 5 of the SPA clearly and unambiguously states that "the Buyer [TSH] shall transfer the above-mentioned funds [$1,965,600.00] to the Seller's Attorney *Escrow* Account listed in Exhibit B…" (emphasis added). *Id*, at ¶ 5.  Exhibit B to the SPA is titled "EXHIBIT B – *ESCROW* ACCOUNT" (emphasis added), and the next line of Exhibit B identifies that escrow account as the "Manfred Sternberg Jr.  Attorney at Law IOLTA Trust Account" and Exhibit B provides wire instructions for the wire into the Sternberg ESCROW account.  *Id*, at Exhibit B.   The SPA also clearly states in paragraph 6 that "title transfer shall happen contemporaneously with funds being released to Seller" *Id*, at ¶ 6 (which did not happen – *see* Plaintiff's Statement of Undisputed Facts (the "Plaintiff SUF") filed in support of plaintiff's Motion for Summary Judgment [ECF 196] (the "TSH MSJ"), at ¶¶ 29-34). The position taken by the Sternberg Defendants, that they only were acting as Seller's attorney, and had to release funds to Seller at the instruction of the Seller (i.e., before transfer of the goods purchased to SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA, and would render meaningless the escrow provisions of the SPA meaningless.**

### A. Plaintiff (the Buyer)

3.      Plaintiff is a Pennsylvania S corporation, solely owned by its president, Daniel J. Scully, in the business of supplying personal protection and abatement equipment (PPE). *Id and Ex. L, 07/23/24, Deposition of Daniel J. Scully ("Scully Dep.")* at 36:12-22.

**<u>SAFETY HOUSE RESPONSE</u>:   Admitted.**

4.      Scully has independently and exclusively operated Plaintiff since opening the business in approximately 1993. *Id.* at 40:12-15.

**<u>SAFETY HOUSE RESPONSE</u>:   Denied as stated.  Mr. Scully has employees to assist him in the operation of his business.**

5.      Plaintiff employs ten individuals, including Scully. *Id.,* at 50:9-10.

**<u>SAFETY HOUSE RESPONSE</u>: Admitted.**

6.      Per its website, Plaintiff's "headquarters and main shipping facility" in West Chester, Pennsylvania "is positioned to service the Northeast corridor with [its] own fleet of delivery trucks." *See, Plaintiff's Website:* https://thesafetyhouse.com/about- us.

**<u>SAFETY HOUSE RESPONSE</u>: DISPUTED.  Plaintiff is not located in West Chester, PA.**

7.      Plaintiff boasts that it can ship PPE equipment "anywhere in the United States and surrounding countries." *Id.*

**<u>SAFETY HOUSE RESPONSE</u>:  Admitted.**

8.      In January 2022, Plaintiff executed a contract with CHG to purchase 151,200 iHealth COVID-19 test kits for an agreed upon purchase price of $1,965,600. *See Ex. A, Compl.,* at ¶ 1.

**<u>SAFETY HOUSE RESPONSE</u>:  DISPUTED.  CHG is an entity with no assets, that was undercapitalized, and that is owned and controlled by defendant Samuel Gross. Defendants Samuel Gross ("Gross") and Charlton Holdings Group, LLC ("CHG") (collectively the "Gross Defendants") admitted that CHG is an entity with no assets, that was undercapitalized, and that**

is owned and controlled by defendant Samuel Gross, when the Gross Defendants ignored and failed to respond, either timely or to date, to Request For Admission No. 11 in Plaintiff's Requests for Admission dated and served on each defendant on June 17, 2024 ("RFA"), *See*, RFA #11; *see also*, Plaintiff SUF, at ¶¶ 3-4, 6, 8, and Exhibit P-1 accompanying the TSH MSJ, RFA #11.

### B. CHG (the Seller) and Weiss (the Supplier)

9.     CHG is a New York limited liability company, owned and operated by Gross. *Id.* at ¶¶12-14.

**SAFETY HOUSE RESPONSE:  DISPUTED.  CHG is an entity with no assets, that was undercapitalized, and that is owned and controlled by defendant Samuel Gross.  The Gross Defendants admitted that CHG is an entity with no assets, that was undercapitalized, and that is owned and controlled by defendant Samuel Gross. *See*, RFA #11; *see also*, Plaintiff SUF, at ¶¶ 3-4, 6, 8, and Exhibit P-1 accompanying the TSH MSJ, RFA #11.**

10.    As alleged, Gross enlisted his longtime ally, Weiss, to procure the test kits necessary to fulfill Gross' contract with Plaintiff. *See Ex. J, 02/16/24 Deposition of Gary Weiss ("Weiss Dep. 1") at 46:12-21 and 49:13-23.*

**SAFETY HOUSE RESPONSE:  Admitted,  but it still remained the responsibility of the Gross Defendants as Seller to deliver the 151,200 Covid Test Kits to TSH (which they never did).**

11.    Weiss and Gross enjoyed a professional and personal relationship spanning over 20 years since the early 2000s when they first collaborated in the diamond sales industry. *See Ex. J, Weiss Dep. 1*, at 20:3-9.

**SAFETY HOUSE RESPONSE:  Denied, for lack of knowledge.**

12.    Weiss and Gross first discussed the concept of PPE sales early in the pandemic, but Weiss initially declined to participate in such a venture. *Id.* at 43:1-22.

**SAFETY HOUSE RESPONSE:  Denied, for lack of knowledge.**

13.     It was not until 2021 or 2022, when Weiss coincidentally learned of an opportunity to purchase COVID-19 PPE equipment through a non-party vendor who inquired whether Weiss knew of anyone interested in such products. *Id* at 41:18-42-20.

**SAFETY HOUSE RESPONSE:  Denied, for lack of knowledge.**

14.     Knowing of Gross' previous interest in PPE sales, Weiss solicited Gross on January 24, 2022 to determine whether he remained in the market for COVID-19 products. *Id.* at 45:1-11.

**SAFETY HOUSE RESPONSE:  Denied, for lack of knowledge.**

### C.  Zekaria (Weiss' Counsel)

15.     Zekaria was licensed to practice law in New York until her recent suspension (which is unrelated to the allegations in this proceeding). *See Ex. H, 06/16/24 Grievance Decision*.

**SAFETY HOUSE RESPONSE:  Admitted.**

16.     Weiss engaged Zekaria to represent him in connection with the contemplated transaction between Plaintiff and CHG. *See Ex. J, Weiss Dep. 1* at 117:4- 10.

**SAFETY HOUSE RESPONSE:  DISPUTED.  Despite there being an alleged representation letter that sets forth the terms and conditions or Zekaria's representation, and despite a Court Order [ECF 174] compelling the production of that alleged representation letter, to dated none of the defendants have in fact produced that representation letter.  Further, the documents evidencing the WhatsApp communications between Zekaria and Weiss and Gross (*see* Exhibit P-31 accompanying the TSH MSJ), evidence that both the Gross Defendants and the Weiss Defendants controlled the funds that were wired to Zekaria's attorney trust account by the Sternberg Defendants.  Both Zekaria and Weiss also testified that *Sternberg* had to give permission for funds to be disbursed from Zekaria's attorney trust account. *See* Exhibit M accompanying the Stenberg MSJ, the 4/2/24 Zekaria deposition transcript, at 11:11-12, 56:10-11, 57:4-17, 61:12-19, 64:12-19, 81:23-82:3, 82:17-83:4.**

17.     Zekaria provided legal counsel to Weiss and utilized her attorney IOLTA account to collect CHG's funds earmarked for Plaintiff's product. *See Ex. J, Weiss Dep. 1, at 116:23-117:5.*

**SAFETY HOUSE RESPONSE:  DISPUTED.  See response to #16 above, incorporated herein by reference.**

**D. The Sternberg Defendants (CHG's Counsel)**

18.    Sternberg Law is a Texas professional corporation with a principal place of business in Houston, Texas. *See Ex. A, Compl.,* at ¶ 9; *see also Ex. I, 02/07/24 Deposition of Manfred Sternberg* at 12:5-9.

**SAFETY HOUSE RESPONSE:  Admitted.**

19.     Sternberg is a member in good standing of the Texas bar and is "board

certified… in consumer and commercial law." *See,* https://www.manfredlaw.com-

/manfred-sternberg.

**SAFETY HOUSE RESPONSE:  Denied, for lack of knowledge.**
**This alleged claim also was not established in this case.**

20.     Sternberg is involved in public policy representing the consumer, and was

initial Chairman for the Texas Health Services Authority, appointed by Texas Governor Rick

Perry. *Id.* He has nearly 40 years of experience practicing law and representing businesses.

*Id.*

**SAFETY HOUSE RESPONSE:  Denied, for lack of knowledge.  This alleged claim was**
**not established in this case.**

21.     Sternberg and his wife have two adult children. *See, Ex. I, Sternberg Depo* at

21:8-10, 20:15-19, and 251:14-20.

**SAFETY HOUSE RESPONSE:  Denied, for lack of knowledge.  This alleged claim was**
**not established in this case.**

22.     On August 23, 2023, the Sternberg Defendants timely filed an Answer to

Plaintiff's First Amended Complaint with Crossclaims. *See, Ex. G, Sternberg Answer*.

**SAFETY HOUSE RESPONSE:  Admitted.**

**E. The Depositions**

23.     Weiss was deposed twice; February 16, 2024 and July 16, 2024.

**SAFETY HOUSE RESPONSE:  Admitted.**

24.     Scully, individually and in his capacity as president of Plaintiff, was deposed

on July 23, 2024. *See Ex. L, 07/23/24 Scully Deposition*.

**SAFETY HOUSE RESPONSE:  Admitted.**

25.     Zekaria was deposed on April 2, 2024. *See Ex. M*, *04/02/24 Uncertified Zekaria Deposition* at 96:20 - 97:3. Unfortunately, however, the court reporter refused to certify the transcript due to alleged lack of professionalism exhibited by the witness and by Plaintiff's counsel. *Id.*

**SAFETY HOUSE RESPONSE:  DISPUTED.  Plaintiff admits that Zekaria was deposed on April 2, 2024, and that a copy of the Zekaria Deposition transcript accompanies the Sternberg MSJ as Exhibit M.  The remainder of the claims in this paragraph are denied (plaintiff's counsel denies any ";lack of professionalism" and the transcript speaks for itself).**

26.     Sternberg was deposed individually and on behalf of Sternberg Law on February 7, 2024. *See Ex. I, 02/07/24 M. Stenberg Dep.,* at 12:5-9.

**SAFETY HOUSE RESPONSE:  Admitted.**

II.     THE CONTRACT

28.     On January 21, 2022, Plaintiff agreed to purchase from CHG 151,200 iHealth Covid-19 Antigen Rapid two-pack test kits (the "Test Kits") for $1,965,600. *See Ex. A, Compl. at ¶ 23* and See *Ex. B, SPA,* at ¶¶ 2-3.

**SAFETY HOUSE RESPONSE:  Admitted, but TSH also considered Sam Gross as the Seller.**

29.     Plaintiff and CHG memorialized the terms of their agreement in a contract entitled the "Sale and Purchase Agreement" ("SPA"). *See Ex. A, Compl. at ¶¶ 23. 25* and *Ex. B, SPA,* generally.

**SAFETY HOUSE RESPONSE:  Admitted, but TSH also considered Sam Gross as the**

**Seller, and further, the SPA was not signed by the Gross Defendants and delivered to TSH until after well after TSH started this lawsuit.** *See* **Declaration of Dan Scully accompanying the TSH MSJ, at footnote 47;** *see also***, Plaintiff SUF at ¶¶ 18-19.**

30.    Scully - on behalf of Plaintiff/buyer - and Gross – on behalf of CHG/seller,

executed the SPA. *See, Ex. B. SPA.*

**SAFETY HOUSE RESPONSE:  Denied as stated. See TSH's response to #29, above, which is incorporated herein by reference.**

31.    The SPA explicitly incorporated CHG's Standard Operating Procedure

("SOP"). *See Ex. B, SPA*, at ¶ 6 and p. 8.

**SAFETY HOUSE RESPONSE:  Admitted, but paragraph 6 of the SPA signed by the parties controls when Sternberg was permitted to disburse the funds from his attorney escrow account.** *See* **Plaintiff's Exhibit P-3,  at ¶ 6.  The SPA clearly establishes that the Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants.** *Id***, at ¶¶ 4, 5, and 6, and Exhibit B.  Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE.** *Id***. Pursuant to paragraph 4 of the SPA, SAFETY HOUSE as Buyer wired the funds to "the Seller's Attorney _Escrow_ Account identified in Exhibit B" (emphasis added).** *Id***, at ¶ 4.   Paragraph 5 of the SPA clearly and unambiguously states that "the Buyer [TSH] shall transfer the above-mentioned funds [$1,965,600.00] to the Seller's Attorney _Escrow_ Account listed in Exhibit B…" (emphasis added).** *Id***, at ¶ 5. Exhibit B to the SPA is titled "EXHIBIT B – _ESCROW_ ACCOUNT" (emphasis added), and the next line of Exhibit B identifies that escrow account as the "Manfred Sternberg Jr. Attorney at Law IOLTA Trust Account" and Exhibit B provides wire instructions for the wire into the Sternberg ESCROW account.** *Id***, at Exhibit B. The SPA also clearly states in paragraph 6 that "title transfer shall happen contemporaneously with funds being released to Seller"** *Id***, at ¶ 6.  That did not happen. The position taken by the Sternberg Defendants, that they only were acting as Seller's attorney, and had to release funds to Seller at the instruction of the Seller (i.e., before transfer of the goods purchased to SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA, and would render the escrow provisions of the SPA meaningless. TSH also incorporates its response to #32, below as if set forth at length herein.**

32.    The SOP provides a systematic list of "how Seller engages with Buyers," as

follows:

1. Buyer to provide Purchase Order to Seller.
2. Seller's Attorney to draft and provide Buyer with Seller form of Sale and Purchase Agreement. ("SPA").
3. Buyer and Seller execute SPA and Buyer wires Seller's Attorney the total purchase price called for in the Purchase Order.
4. Purchase price funds released to Seller.
5. Title Transfer to Goods to Buyer per SPA.
6. Goods delivered to common carrier by Seller per SPA for delivery to Buyer.
7. Seller to provide Buyer with BOL(s) and executed Bill of Sale for Goods shipped
8. Buyer and its agents agree not to speak to anyone other than Seller or Seller's representative regarding this transaction.   Any discussions with Seller's vendors will be considered attempted circumvention.

*See Ex. B*, SPA, at p. 8.

**SAFETY HOUSE RESPONSE:  DISPUTED.  Paragraph 6 of the SPA signed by the parties controls when Sternberg was permitted to disburse the funds from his attorney escrow account, and not the unsigned Exhibit E SOP. Paragraph 6 of the SPA clearly and unambiguously states as follows (emphasis added):**

> **"Once the transferred funds [the Purchase Price] have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer.   Title transfer shall happen contemporaneously with the funds being released to Seller."**

**See RFA #30 and Plaintiff's Exhibit P-3.  The SPA was signed by SAFETY HOUSE, but the Exhibit E (Standard Operating Procedure) ("SOP") that was incorporated into the SPA, is not signed by anyone.  The SOP states that the SPA was drafted by the Sternberg Defendants.  [see item 2 of the SOF #32, below].  The interpretation claimed by the Sternberg Defendants is inconsistent with the clear and unambiguous sentence of paragraph 6 of the SPA, which provides that inconsistent with "Title transfer shall happen contemporaneously with the funds being released to Seller." (emphasis added). The only way that Exhibit E can be read to be consistent with that sentence of paragraph 6, is if items 3, 4, 5, 6, and 7 in the SOP are performed together, at the same time.  Further, since the Sternberg Defendant admit that they drafted the SPA, any inconsistencies in the provisions of the SPA and its accompanying exhibits (in the document they drafted) are held against them.  TSH also incorporates its response to #31, above, as if set forth at length herein.**

33.     Thus, Plaintiff agreed to be bound by these all-important terms in the

following order: (i) the Sternberg Defendants, as counsel for CHG, would provide

Plaintiff with the SPA; (ii) upon execution of the SPA, Plaintiff would wire the purchase price

to the Sternberg Defendants; (iii) the Sternberg Defendants would release those funds to

CHG; (iv) and then title for the test kits would transfer from CHG to Plaintiff. *Id.*

**SAFETY HOUSE RESPONSE:  DISPUTED. TSH incorporates its response to #32, below as if set forth at length herein.  The interpretation advanced by the Sternberg Defendants would render meaningless the provision on paragraph 6 – that "Title transfer shall happen contemporaneously with the funds being released to Seller."  The whole purpose for the Sternberg Defendants to act as the escrow agent under the SPA was to provide assurances to TSH that the Sternberg Defendants would hold TSH's wired funds in their attorney escrow account and not release the funds from escrow unless and until TSH was assured it was getting the 151,200 iCovid Test Kits it was purchasing by wiring the money into escrow to be held by the Sternberg Defendants, i.e., by delivery to TSH of a Bill of Sale as well as a Bill of Lading, evidencing the goods were with a recognized common carrier and in transit for delivery to TSH.  *See generally*, Plaintiff's Exhibit P-3, the SPA, *and see generally*, the Certification of Dan Scully accompanying the TSH MSJ, and the Scully Deposition transcript.  There would be no reason for the Sternberg Defendants to receive the wire from TSH, or to hold the $2 million purchase price in escrow, if they then could release TSH's funds to the Gross Defendants before delivery to TSH of a Bill of Sale as well as a Bill of Lading, evidencing the goods were with a recognized common carrier and in transit for delivery to TSH.**

34.     Although this was the largest agreed upon purchase price of any transaction

in Plaintiff's history, and it had previously relied upon attorneys for assistance, Plaintiff

negotiated this transaction without independent counsel. *See, Ex. L, Scully Dep.* at 77:7-14,

56:14-20, and 82:20-23.

**SAFETY HOUSE RESPONSE:  Denied as stated.  SAFETY HOUSE admits that it did not engage independent counsel in connection with this transaction, because it received assurances and relied upon the provisions of the SPA that the Sternberg Defendants were going to act as the escrow agent under the SPA would hold TSH's wired funds in their attorney escrow account and not release the funds from escrow unless and until TSH was assured it was getting the 151,200 iCovid Test Kits it was purchasing by wiring the money into escrow to be held by the Sternberg Defendants, i.e., by delivery to TSH of a Bill of Sale as well as a Bill of Lading, evidencing the goods were with a recognized common carrier and in transit for delivery to TSH.  TSH also incorporates its responses to nos. 32 and 33, above, as if fully set forth herein at length.**

35.     When pressed why Plaintiff did not engage an attorney to negotiate any aspect

of the SPA, Plaintiff's president testified that he had "been doing this forever," and was

comfortable negotiating directly with vendors without any independent due diligence. *Id.* at

58:22-59:16.

**SAFETY HOUSE RESPONSE:  DISPUTED.  Dan Scully repeatedly stated through his deposition (and he also stated in his Certification filed in connection with the TSH MSJ), that he was comfortable knowing that Manfred Sternberg, Esquire, whom the Internet revealed is a duly licensed Texas attorney in good standing, was acting as the escrow agent in the transaction, under the SPA, and that TSH had received assurances that the Sternberg Defendants would hold TSH's wired funds in their attorney escrow account and not release the funds from escrow unless and until TSH was getting the 151,200 iCovid Test Kits it was purchasing by wiring the money into escrow to be held by the Sternberg Defendants, i.e., by delivery to TSH of a Bill of Sale as well as a Bill of Lading, evidencing the goods were with a recognized common carrier and in transit for delivery to TSH.  *See* Plaintiff's Exhibit P-3, and *see generally*, Exhibit L to the Sternberg MSJ, the 7/23/24 Dan Scully deposition**

36.     During its evaluation process, Plaintiff did not request, propose or suggest any

revisions to the SPA. *Id.*, at 97:22-98:2 and 177:10-20.

**SAFETY HOUSE RESPONSE:  Denied as stated.  SAFETY HOUSE was not offered any opportunity to request, propose or suggest any revisions to the SPA, which the Sternberg Defendants admit they drafted.  Further, Sternberg's brokers told Dan Scully that if he did not act immediately, then TSH would lose its place in line and the Covid Test Kits would be sold to someone else.  *Se*e Dan Certification at ¶ 4; Plaintiff SUF at ¶¶ 13, 14, 27.**

37.     For its part, CHG engaged the Sternberg Defendants to provide CHG with

"legal counsel on various PPE transactions, escrow services, strategic counsel and other

matters as specifically assigned by Client." *See Ex. Q, CHG-Sternberg Fee Agreement*.

**SAFETY HOUSE RESPONSE:  DISPUTED.  The purported fee agreement was not produced by the Sternberg Defendants until after Sternberg was deposed, and his counsel refused to produce him again for a subsequent deposition session, precluding plaintiff from questioning Sternberg about his alleged representation.  *See* Plaintiff's Motion to Compel Sternberg Deposition {ECF 183], pending before the Court.  Plaintiff also believes that the Sternberg Defendants acted as the attorneys for Sam Gross during this transaction, as well as for the Gross Defendants prior to this transaction.**

38.     As agreed upon by the parties per the SOP, the Sternberg Defendants drafted

the SPA. *Ex. B, SPA,* at p. 8.

**SAFETY HOUSE RESPONSE: DISPUTED. Admitted that the Sternberg Defendants drafted the SPA. DISPUTED that the SOP controls the express provisions of paragraph 6 of the SPA that was signed – paragraph 6 of the SPA controls, and it expressly states that "title transfer shall happen contemporaneously with the release of funds top Seller."**

39.     Next, on January 21, 2022, Plaintiff delivered a purchase order and effectuated a wire transfer of $1,965,500 to "Seller's Attorney" into the Sternberg Defendants' IOLTA account, as set forth in the SPA. *See Ex. A, Compl. at ¶ 140*; Ex. B, SPA, at ¶ 4; and *Ex. L, Scully Dep.*, at 65:15-19.

**SAFETY HOUSE RESPONSE: Admitted that on 1/21/22, SAFETY HOUSE wired $1,965,600.00 into escrow to the Sternberg Defendants' IOLTA account, but the SPA (in paragraphs 4, 5 and 6) as well as Exhibit B expressly refers to that account as the Sternberg ESCROW account. TSH also sent to Sternberg TSH's 1/21/22 Purchase Oder, which clearly has a "receive by" date of January 25, 2022, for the delivery of the Covid Test Kits to TSH. *See* Plaintiff's Exhibit P-2.**

40.     Thus, per the SPA, title transfer and the risk of loss associated with the test kits transferred to Plaintiff on January 21, 2022. *See Ex. B, SPA*, at ¶ 9.

**SAFETY HOUSE RESPONSE: DISPUTED. Pursuant to the express terms of paragraph 6 of the SPA, "Title transfer shall happen contemporaneously with the funds being released to Seller." That did not happen. *None of the defendants had title to any iCovid Test Kits on January 21, 2022*, the date of the (fraudulent) Bill of Sale that was delivered to plaintiff. Further, no Bill of Lading was delivered to TSH evidencing that 151,200 Test Kits were with a recognized common carrier en route for delivery to TSH. *See* Scully Certification at ¶ 15. Defendants just kept TSH's $1,965,600 purchase price, and did not give any refund to TSH, and divided the $1,965,600 purchase price amongst themselves, and did not deliver any Covid Test Kits to TSH. Id, at ¶¶ 60-61.**

41.     On February 1, 2022, at CHG's direction, the Sternberg Defendants transferred an initial installment of $219,240 to Weiss via the IOLTA account maintained by Weiss' attorney, Zekaria. *See Ex. I, Sternberg Dep*. at 176:18-23, 178:8-12 and 184:1-12. *See also Ex. P, Lesovitz Report, at p. 10.*

**SAFETY HOUSE RESPONSE:  Admitted that The Stenberg Defendants (wrongfully) made a distribution of a portion of TSH's $!,965,600 purchase price from the attorney escrow account of Sternberg, on February 1, 2022, in violation of paragraph 6 of the SPA, and before any of the defendants owned or actually had possession of any Covid Test Kits, and before TSH received both a Bill of Sale and a Bill of Lading for the Test Kits it purchased.  DISPUTED that the premature distribution made by the Sternberg Defendants from their attorney escrow account was proper, and in accordance with the SPA.  *See* Scully Certification at ¶ 65; Plaintiff SUF, at ¶¶ 28-29.**

42.     Subsequently, at CHG's direction, the Sternberg Defendants transferred the balance of the purchase price from CHG to Zekaria on February 4, 2022. *Id.*

**SAFETY HOUSE RESPONSE:  Admitted that The Stenberg Defendants (wrongfully) made another distribution of a portion of TSH's $1,965,600 purchase price from the attorney escrow account of Sternberg, on February 4, 2022, in violation of paragraph 6 of the SPA, and before any of the defendants owned or actually had possession of any Covid Test Kits, and before TSH received both a Bill of Sale and a Bill of Lading for the Test Kits it purchased.  DISPUTED that the premature distribution made by the Sternberg Defendants from their attorney escrow account was proper, and in accordance with the SPA.  *See* Plaintiff SUF, at ¶¶ 28-29.**

43.     As of February 4, 2022, it was incumbent upon CHG to deliver the test kits to a common carrier with instructions to execute deliveries as directed by the Plaintiff since the funds had now cleared CHG's account as contemplated in the SPA. *See Ex. B, SPA*, at ¶ 6.

**SAFETY HOUSE RESPONSE:  DISPUTED.  TSH admits that it was incumbent on the Gross Defendants to deliver the 151,200 Test Kits to a common carrier for delivery to TSH, and to supply TSH with the Bill of Lading for that delivery to TSH, but pursuant to paragraph 6 of the SPA, that was required to happen contemporaneous with the release of the funds from Sternberg's escrow account, which did not happen.  See, Plaintiff's Exhibit P-3, and Plaintiff SUF at ¶¶ 28-29.  Stenberg improperly released the funds from his attorney escrow account prior to delivery of any Test Kits to a common carrier – no Test Kits were delivered to a common carrier, and no Bill of Lading was supplied to TSH.  Plaintiff SUF at ¶¶ 27-29; Scully Certification at ¶ 15.**

44.     In an ongoing effort to effectuate the delivery of the test kits to Plaintiff, Weiss demanded and CHG authorized the Sternberg Defendants to effectuate an additional wire of $250,000 to Weiss via Zekaria's IOLTA account on February 15, 2022. *See Ex. I, Sternberg Dep.* at 178:13-179:1.

**SAFETY HOUSE RESPONSE: DISPUTED. TSH admits that another $250,000 distribution of a portion of TSH's $1,965,600 purchase price from the attorney escrow account of Sternberg, was improperly made by Sternberg on February 15, 2022, in violation of paragraph 6 of the SPA, and before TSH received both a Bill of Sale and a Bill of Lading for the Test Kits it purchased. DISPUTED that the premature distribution made by the Sternberg Defendants from their attorney escrow account was proper. *See* Plaintiff SUF at ¶¶27-29.**

45. Although the $250,000 transfer was not initially contemplated by any of the interested parties, Weiss demanded this increase to address unforeseen delays and purportedly to expedite delivery. *Id.*

**SAFETY HOUSE RESPONSE: DISPUTED. TSH did not agree to any distribution of its funds from Stenberg's attorney escrow account, unless any distribution was made contemporaneous with title to the goods being transferred to TSH and TSH receiving assurances that the Covid Test Kits were en route for delivery to TSH (via delivery of a Bill of Lading to TSH). *See*, Plaintiff's Exhibit P-3, and Plaintiff SUF at ¶¶ _____. TSH admits that another $250,000 distribution of a portion of TSH's $!,965,600 purchase price from the attorney escrow account of Sternberg, was improperly made by Sternberg on February 15, 2022, in violation of paragraph 6 of the SPA, and before TSH received both a Bill of Sale and a Bill of Lading for the Test Kits it purchased. DISPUTED that the premature distribution made by the Sternberg Defendants from their attorney escrow account was proper. *See* Plaintiff SUF at ¶¶ 27-29; Scully Certification at ¶ 15.**

46. When Weiss still had not provided the test kits by February 25, 2022, he again demanded more funds, this time $190,000, which the Sternberg Defendants wired to Zekaria's IOLTA account at the direction of their client, CHG. *See, Ex. I, Sternberg Dep.* at 180:5-16.

**SAFETY HOUSE RESPONSE: DISPUTED. TSH admits that another $190,000 distribution of a portion of TSH's $1,965,600 purchase price from the attorney escrow account of Sternberg, was improperly made by Sternberg on February 25, 2022, in violation of paragraph 6 of the SPA, and before TSH received both a Bill of Sale and a Bill of Lading for the Test Kits it purchased. *See*, Plaintiff's Exhibit P-3, and Plaintiff SUF at ¶¶ 27-29. Sternberg has claimed that Weiss's inducement of this additional $190,000 payment from his attorney escrow account is "classic fraud in the inducement and can only be cured by delivery or return of all money." *See* Plaintiff Exhibit P-17, the text sent from Sternberg to Gross shortly after the 2/25/22 $190,00 wire transfer made by Sternberg.**

47.     As its counsel, the Sternberg Defendants issued a warning regarding Weiss'

continued demands for payments in excess of their agreement and cautioned that it may

constitute Weiss' "fraud in the inducement." *Id.* at 180:17-181:3.

**SAFETY HOUSE RESPONSE:  Admitted that Sternberg has claimed that Weiss's
inducement of this additional $190,000 payment from his attorney escrow account is
"classic fraud in the inducement and can only be cured by delivery or return of all
money."  *See* Plaintiff Exhibit P-17, the text sent from Sternberg to Gross shortly after
the 2/25/22 $190,00 wire transfer made by Sternberg.**

48.     Still, the Sternberg Defendants complied with the requests of their client and

exhausted their IOLTA account of all funds provided by Plaintiff. *Id.* at 181:4-14.

**SAFETY HOUSE RESPONSE:  DISPUTED.  The position taken by the Sternberg
Defendants, that they only were acting as Seller's attorney, and had to release funds to
Seller at the instruction of the Seller (i.e., before transfer of the goods purchased to
SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA,
and would render the escrow provisions of the SPA meaningless.  The SPA clearly
establishes that the Sternberg Defendants also were acting as the escrow agent as
respects the transfer of the purchase price from TSH to the Gross Defendants.
Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY
HOUSE that the release of funds from Sternberg's attorney escrow account would
happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY
HOUSE. *See*, Plaintiff's Exhibit P-3, and Plaintiff SUF at ¶¶ 24-29.**

        **TSH did not agree to any distribution of its funds from Stenberg's
attorney escrow account, unless any distribution was made contemporaneous with title
to the goods being transferred to TSH and TSH receiving assurances that the Covid
Test Kits were en route for delivery to TSH (via delivery of a Bill of Lading to TSH).
*Id.* TSH admits that Sternberg improperly made several distributions of portions of
TSH's $1,965,600 purchase price from the attorney escrow account of Sternberg, which
were made by Sternberg in violation of paragraph 6 of the SPA, and before TSH
received both a Bill of Sale and a Bill of Lading for the Test Kits it purchased.  *Id.*  The
Gross Defendants and the Stenberg Defendants never owned or had possession of
151,200 Covid Test Kits, and they failed to deliver any Bill of Lading to TSH of those
Test Kits.  *See*, Plaintiff SUF at ¶¶ 27-29; Scully Certification at ¶ 15.   Further, when
TSH cancelled the transaction on February 16, 2022, and demanded the return of its
money, there was in excess of $2 million remaining in the Sternberg attorney escrow
account.  Plaintiff's Exhibits P-6, P-7, P-8, and P-32.  The Sternberg Defendants failed
to honor the promises made to TSH by Sternberg's client because they failed to make**

that refund to TSH.   Plaintiff's Exhibits RFA-1 through RFA 4, and P-33.

**Even if it was true what the Sternberg Defendants are claiming – that they had to release funds from the Sternberg attorney escrow account because their client (the Gross Defendants)  instructed to, once the TSH attorney notified them (and once Randy Adler, the VRC attorney also notified them), not to make any further disbursements from the Sternberg attorney escrow account),** *see* **Plaintiff's Exhibits P-13, P-16 and P-25, the Sternberg Defendants no longer had the right to  make any further disbursements from escrow, absent either the consent of the ones who made the transfers into to the Sternberg attorney escrow account (i.e., plaintiff TSH and VRC), or an Order from a Court of competent jurisdiction.**

49.    As expected, given their role as counsel only to CHG, the Sternberg Defendants had *no* dialog or other exchange of any kind with Plaintiff prior to the parties' execution of the SPA, the January 21, 2022 wire transfer or the disbursements of Plaintiff's funds made at CHG's instruction. *See, Ex. L, Scully Dep.,* at 20:16-22 and 85:1-6.

**SAFETY HOUSE RESPONSE: DISPUTED.  Dan Scully testified in his deposition (and also stated in his Certification that he had dealings with Sternberg through Sternberg's brokers, who were acting on Sternberg's behalf, and that Scully also had direct dealings with Sternberg after January 25, 2022, when the Test Kits were not delivered to TSH on 1/25/22 as promised.   *See* Exhibit L to Sternberg MSJ, and see Dan Scully Certification, at ¶¶ 35-45.**

**Further DISPUTED that the role of the Sternberg Defendants was "as counsel to only CHG."   *See*, responses to nos. 31 and 32, *supra*, and citations therein. The position taken by the Sternberg Defendants, that they only were acting as Seller's attorney, and had to release funds to Seller at the instruction of the Seller (i.e., before transfer of the goods purchased to SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA, and would render the escrow provisions of the SPA meaningless.  *Id*.  The SPA clearly establishes that the Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants. Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE.  *See*, Plaintiff's Exhibit P-3, the SPA, at ¶¶  4, 5, and 6, and Exhibit B thereto. Paragraph 6 of the SPA provides that  "title transfer shall happen contemporaneous with the funds being released to Seller."  *Id*., at ¶ 6.  The Sternberg defendants had a duty both to TSH as the Buyer, and to the Gross Defendants as the Seller, to make sure that happened, but the Sternberg Defendants violated the SPA by making distributions from Sternberg's attorney trust account before they ever owned or had title to the Test Kits, and before title transfer and delivery of the Test Kits to**

TSH (which never happened). *See*, responses to nos. 31 and 32, *supra*. In the words of Sternberg himself, the defendants' actions amounted to "<u>classic fraud in the inducement and can only be cured by delivery or return of all money</u>." *See* Plaintiff Exhibit P-17, the text sent from Sternberg to Gross shortly after the 2/25/22 $190,00 wire transfer made by Sternberg.

50.   It was not until February 16, 2022 when Plaintiff first communicated with the Sternberg Defendants by way of a demand for a refund. *See Ex. F, 02/16/22 Email re Refund.* A refund was impossible given that the Sternberg Defendants had complied with the SPA and with their client's requests by distributing Plaintiff's funds nearly two weeks earlier. *Id.*

<u>SAFETY HOUSE RESPONSE</u>: **DISPUTED. TSH admits that on February 16, 2022, TSH cancelled the transaction and demanded a refund. TSH denies and disputes that the Sternberg Defendants complied with the SPA, or that the Sternberg Defendants did not have sufficient funds to make the refund to TSH, because Stenberg had over $2 million remaining in his attorney trust account on February 16, 2022. *See*, Plaintiff Exhibits P-6, P-7, P-8, and P-32.**

51.   Plaintiff filed suit the following week, on February 23, 2022.

<u>SAFETY HOUSE RESPONSE</u>: **Admitted.**

III.   THE STERNBERG DEFENDANTS' LIMITED RESPONSIBILITIES
       UNDER THE CONTRACT

52.   Plaintiff's theories are creative, albeit unsupported, in that it has alleged that despite the lack of an engagement letter, retainer payment, or invoice of any kind between them, Plaintiff somehow had a right to rely upon the Sternberg Defendants – CHG's counsel - as if they entered into an attorney-client relationship. *Ex. L, Scully Dep.,* at 77:18-78:10.

<u>SAFETY HOUSE RESPONSE</u>: **DISPUTED. SAFETY HOUSE admits that there was no attorney-client relationship between it and the Sternberg Defendants. However, the SPA clearly establishes that the Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants. *See*, Plaintiff Exhibit P-3, at ¶¶ 4, 5, and 6, and Exhibit B. Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE. Pursuant to paragraph 4 of the SPA, SAFETY HOUSE as Buyer wired the funds to "the Seller's Attorney *Escrow***

Account identified in Exhibit B" (emphasis added).  *Id*, at ¶ 4.  **Paragraph 5 of the SPA clearly and unambiguously states that "the Buyer [TSH] shall transfer the above-mentioned funds [$1,965,600.00] to the Seller's Attorney *Escrow* Account listed in Exhibit B…" (emphasis added). *Id*, at ¶ 5.   Exhibit B to the SPA is titled "EXHIBIT B – *ESCROW* ACCOUNT" (emphasis added), and the next line of Exhibit B identifies that escrow account as the "Manfred Sternberg Jr.  Attorney at Law IOLTA Trust Account" and Exhibit B provides wire instructions for the wire into the Sternberg ESCROW account. *Id*, at Exhibit B.   The SPA also clearly states in paragraph 6 that "title transfer shall happen contemporaneously with funds being released to Seller." *Id*, at ¶ 6.  The position taken by the Sternberg Defendants, that they only were acting as Seller's attorney, and had to release funds to Seller at the instruction of the Seller (*i.e.*, before transfer of the goods purchased to SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA, and would render meaningless, the escrow provisions of the SPA.**

53.    Nonetheless, Plaintiff conceded, as it must, that he fully understood the Sternberg Defendants' role as counsel only to CHG and that Plaintiff was unrepresented in the transaction. *Id.*, at 89:13-22 and 62:13-14.

**SAFETY HOUSE RESPONSE:  DISPUTED.  The Sternberg Defendants role under the SPA also was to serve as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants, and the Sternberg Defendants had a duty as the escrow agent receiving the purchase price in escrow from the Buyer to ensure that "title transfer shall happen contemporaneously with funds being released to Seller" (which was not done). *See* Plaintiff Exhibit P-3, at ¶¶ 4, 5, and 6, and Exhibit B.  *See also,* response to no. 52 above, incorporated herein by reference. Further, Dan Scully testified  throughout his deposition (and also stated in his Certification filed in support of the TSH MSJ) that he was relying upon the Sternberg Defendants to act as the escrow agent under the SPA to make sure that the funds were not released until the 151,200 Test Kits were with a common carrier en route for delivery to TSH.  *See* Exhibit L to Sternberg MSJ, and Dan Scully Certification filed with the TSH MSJ**

54.    The Sternberg Defendants' exclusive role with respect to the SPA was that of "Seller's Attorney." *See. Ex. B, SPA, at ¶¶ 4 and 5.*

**SAFETY HOUSE RESPONSE:  DISPUTED. The Sternberg Defendants role under the SPA also was to serve as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants, and the Sternberg Defendants had a duty as the escrow agent receiving the purchase price in escrow from the Buyer to ensure that "title transfer shall happen contemporaneously with funds being released to Seller" (which was not done).  *See* Plaintiff Exhibit P-3, at ¶¶ 4, 5, and 6, and Exhibit B.  *See also,* response to no. 52 above, incorporated herein by reference.**

55.     As such, the Sternberg Defendants were expected to (i) draft the SPA, (ii) to collect funds from Plaintiff using its IOLTA account, and (iii) to release such funds at the direction of CHG. *See Ex. B, SPA,* at ¶ 6 and p. 8, ¶ 4-7.

**SAFETY HOUSE RESPONSE:  DISPUTED.  The Sternberg Defendants role under the SPA also was to serve as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants, and the Sternberg Defendants had a duty as the escrow agent receiving the purchase price in escrow from the Buyer to ensure that "title transfer shall happen contemporaneously with funds being released to Seller" (which was not done).  *See* Plaintiff Exhibit P-3, at ¶¶ 4, 5, and 6, and Exhibit B.  The position taken by the Sternberg Defendants, that they only were acting as Seller's attorney, and had to release funds to Seller at the instruction of the Seller (i.e., before transfer of the goods purchased to SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA, and would render meaningless the escrow provisions of the SPA. *See* response to no. 52 above, incorporated herein by reference.**

56.     As agreed upon by the contracting parties, the Sternberg Defendants were to release the purchase price funds at the direction of CHG which then triggered CHG's duty to provide the test kits and also triggered the risk of loss from CHG to Plaintiff. *See Ex. B, SPA*, at ¶¶ 4-6, 9 and p. 8 at ¶¶ 3-5. The applicable contracts do not contain any conditions prerequisite to the release of the purchase funds to CHG.

**SAFETY HOUSE RESPONSE:  DISPUTED.  The position taken by the Sternberg Defendants, that they only were acting as Seller's attorney, and had to release funds to Seller at the instruction of the Seller (i.e., before transfer of the goods purchased to SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA, and would render meaningless the escrow provisions of the SPA.  The SPA clearly establishes that the Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants. *See* Plaintiff Exhibit P-3, at ¶¶ 4, 5, and 6, and Exhibit B.  Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE. *Id.*  Pursuant to paragraph 4 of the SPA, SAFETY HOUSE as Buyer wired the funds to "the Seller's Attorney _Escrow_ Account identified in Exhibit B" (emphasis added). *Id*, at ¶ 4.  Paragraph 5 of the SPA clearly and unambiguously states that "the Buyer [TSH] shall transfer the above-mentioned funds [$1,965,600.00] to the Seller's Attorney _Escrow_ Account listed in Exhibit B…" (emphasis added). *Id*, at ¶ 5.   Exhibit B to the SPA is titled "EXHIBIT B – _ESCROW_ ACCOUNT" (emphasis added), and the next line of Exhibit B identifies that escrow account as the "Manfred Sternberg Jr.  Attorney at Law IOLTA Trust**

**Account" and Exhibit B provides wire instructions for the wire into the Sternberg ESCROW account.  *Id*, at Exhibit B. The SPA also clearly states in paragraph 6 that "title transfer shall happen contemporaneously with funds being released to Seller." *Id*, at ¶ 6.  That did not happen – the Sternberg Defendants released funds from their attorney escrow account prior to Seller acquiring title to any Covid Test Kits, and prior to delivery of any Test Kits to a common carrier for delivery to TSH, and prior to any Bill of Lading being supplied to TSH.  *See* Plaintiff SUF, at ¶¶ 24-29.**

57.     The SPA is completely devoid of any responsibility on the Sternberg

Defendants to warrant, secure, verify or provide test kits to Plaintiff or anyone. *See Ex. B,*

*SPA, ¶¶ 1-8 and p. 1-8.*

**SAFETY HOUSE RESPONSE:  DISPUTED.  The Sternberg Defendants role under the SPA also was to serve as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants, and the Sternberg Defendants had a duty as the escrow agent receiving the purchase price in escrow from the Buyer to ensure that "title transfer shall happen contemporaneously with funds being released to Seller" (which was not done).  *See* Plaintiff Exhibit P-3, at ¶¶ 4, 5, and 6, and Exhibit B.  *See also,* response to nos. 52 and 56 above, incorporated herein by reference.**

58.     The SPA and SOP consistently reference the "Seller's Attorney." *See Ex.*

*B, SPA*, at ¶¶ 4-5 and p. 8 at ¶¶ 2-3 but there is no mention of a "Buyer's Attorney."

**SAFETY HOUSE RESPONSE:  Denied as stated.  SAFETY HOUSE admits that there was no attorney-client relationship between it and the Sternberg Defendants, and no mention of "Buyer's Attorney" in the SPA.  However, the SPA clearly establishes that the Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants. Sternberg's role in the SPA is as an escrow agent, was to assure SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE. *See* Plaintiff Exhibit P-3, at ¶¶ 4, 5, and 6, and Exhibit B. *See also,* response to no. 52 above, incorporated herein by reference.**

59.     The SPA and SOP contained no terms explicitly governing the conduct of the

Sternberg Defendants other than the expectation that the "Seller's Attorney" would accept

Plaintiff's wire and, in turn, distribute those funds to CHG.

**SAFETY HOUSE RESPONSE:  DISPUTED.  The SPA clearly establishes that the**

**Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants. Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE.** *See* **Plaintiff Exhibit P-3, at ¶¶ 4, 5, and 6, and Exhibit B.** *See also,* **response to no. 52 above, incorporated herein by reference.**

60.     The Sternberg Defendants had no responsibility of any kind once they transferred the balance of the purchase price funds from Plaintiff per CHG's instructions on February 4, 2022. *See* Ex. I, Sternberg. Dep. at 176:18-23, 178:8-12 and 184:1-12. *See also Ex. P, Lesovitz Report, at p. 10.*

**SAFETY HOUSE RESPONSE:  DISPUTED.  The SPA clearly establishes that the Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants. Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE.** *See* **Plaintiff Exhibit P-3, at ¶¶ 4, 5, and 6, and Exhibit B.** *See also,* **response to no. 52 above, incorporated herein by reference.**

### IV.   THE FAILURE TO DELIVER

61.     Although the SPA does not specify an agreed upon delivery date, Plaintiff testified that it anticipated delivery on January 25, 2022, a few days after effectuating the wire. *Ex. L, Scully Dep.* at 96:7-12.

**SAFETY HOUSE RESPONSE:  DISPUTED.  The TSH Purchase Order # 18315 dated January 21, 2022, submitted by SAFETY HOUSE contemporaneous with the SPA and its wire-transfer of the $1,965,600.000 purchase price into the attorney escrow account of the Sternberg Defendant, clearly states a "receive by" date of January 25, 2022, for the 151,200 Covid Test Kits.** *See* **Plaintiff's Exhibit P-2.**

62.     CHG did not deliver test kits to Plaintiff on January 25, 2022. *Id.*, at 98:3-17.

**SAFETY HOUSE RESPONSE:  Admitted.  The 151,200 Test Kits were never delivered to SAFETY HOUSE, and the defendants retained and did not refund the $1,965,600.00 purchase price that TSH wired into escrow to the Sternberg Defendants.**

63.     Ultimately, after several weeks of unexplained delays, Weiss allegedly grew impatient with his common carrier and planned to personally deliver the test kits earmarked for Plaintiff and other CHG customers. *Ex. J, Weiss Dep. 1,* at 102:6-20.

**SAFETY HOUSE RESPONSE:  DISPUTED.  TSH disputes that "Weiss allegedly grew impatient with his common carrier."  To the contrary, Weiss testified that he requested that the Gross Defendants and the Sternberg Defendants were supposed to supply him with the necessary Bills of Lading to enable the alleged Test Kits to be delivered, but that the Gross Defendants and the Sternberg Defendants never supplied him with the necessary Bills of Lading.  *See* Exhibit P-19 accompanying the TSH MSJ, the 2/16/24 Weiss Deposition, at 89:16-91:17.**

64.     Unbelievably, however, in or about March 2022 – after Plaintiff initiated this action - Weiss claimed that the test kits he previously inspected personally had mysteriously and inexplicably been replaced by bags of rice. *See Ex. J, Weiss Dep. 1,* at 106:15-1-7:22 *and Ex. K, 07/06/24 Transcript of Weiss' Second Deposition,* at 138:1-9.

**SAFETY HOUSE RESPONSE:  Denied as stated.  First, on September 12, 2022,  Weiss claimed that he stored the alleged Test Kits at Available Moving & Storage ("AMS"), but that when he went to pick them up from AMS, they could not be located.  *See* Exhibit P-18, the Answer to Plaintiff's Amended Complaint filed by the Weiss Defendants on September 12, 2022, [ECF105], Weiss Answer to Plaintiff's Complaint, at ¶¶ 172 – 183]; *see also*, RFA #100**

**Then Weiss subsequently testified at his deposition on February 16, 2024, that when he picked up the alleged Test Kits from AMS, all 395,790 alleged Test Kits had been replaced with rice. *See* Exhibit P-19, the Weiss Deposition, at 106:15-17.  Weiss further admitted that he did not take any pictures of the alleged rice, and that he did not make any Police report, or confront or sue AMS, or even inform the Gross Defendants or the Sternberg Defendants, of his claim about the alleged 365,790 Test Kits all being replaced with rice.  *Id*;  *see also*, RFAs #102-104**

65.     Weiss did not notify the Sternberg Defendants or Plaintiff, or any insurance

agency used to insure the kits as required by contract, nor any law enforcement agency of this unexpected development. *Ex. K, Weiss Dep. 2*, at 194:4-24.

 **SAFETY HOUSE RESPONSE**:  **Admitted,  but TSH also incorporates its response to no. 64 above, as if set forth at length herein.**

### V.     THE CIVIL ACTION COMPLAINT

66.     Plaintiff initiated this litigation on February 23, 2022 via a Complaint. *See ECF No. 1.*

**SAFETY HOUSE RESPONSE**:  **Admitted,**

67.     Plaintiff filed a First Amended Complaint on July 31, 2023. *See Ex. A and ECF No. 80.*

**SAFETY HOUSE RESPONSE**:  **Admitted,**

68.     Plaintiff seeks to recover from the Sternberg Defendants pursuant to the following theories:

   a.  Count I: fraud in the inducement,
   b.  Count II: fraud,
   c.  Count IV: civil conspiracy,
   d.  Count VII: participation theory,
   e.  Count VIII: unjust enrichment/quantum meruit,
   f.  Count IX: intentional interference with existing contractual relations, and
   g.  Count X: intentional interference with prospective economic advantage.
   *See Ex. A* at pp. 11, 13, 16, 20, 23, 24 and 25, respectively.

**SAFETY HOUSE RESPONSE**:  **Admitted,**

69.     As alleged, the Sternberg Defendants "fraudulently induce[d] Plaintiff to make the wire transfer to them, the Gross and Sternberg Attorney Defendants represented that the $1,965,600.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the $1,965,600.00 Purchase Price

would not be released […].” *See, Ex. A, Complaint* at ¶ 39.

**SAFETY HOUSE RESPONSE: Admitted, except that the Sternberg Defendants conveniently failed to supply the complete paragraph 39 of the Complaint, which states:**

> **“39.   To fraudulently induce Plaintiff to make the wire transfer to them, the Gross and Sternberg Attorney Defendants represented that the $1,965,600.00 Purchase Price would remain in the attorney escrow account of the Sternberg Attorney Defendants, and that the $1,965,600.00 Purchase Price would not be released from the attorney escrow account of the Sternberg Attorney Defendants unless and until the Covid Test Kits had been delivered to a common carrier for delivery to SAFETY HOUSE, and Plaintiff was supplied with the required Bill of Lading from a recognized common carrier evidencing that the Covid Test Kits were in transit to Plaintiff.”**

70.     Plaintiff also alleges that “the Sternberg Attorney Defendants wrongfully and improperly and prematurely released Plaintiff's $1,965,600.00 Purchase Price from escrow, without confirming that the Covid Test Kits were purchased, and without confirming that the Covid Test Kits were delivered to a recognized common carrier for delivery to Plaintiff.” *Id.* at ¶ 69.

**SAFETY HOUSE RESPONSE: Admitted that this is part of TSH's claims against the Sternberg Defendants.**

71.     Plaintiff's allegations are inconsistent with the facts and conflict with the agreed upon terms set forth in the SPA. *See Ex. B, SPA*, at ¶¶ 4-6, 9 and p. 8 at ¶¶ 3-5.

**SAFETY HOUSE RESPONSE: DISPUTED. The whole purpose of Sternberg acting as the escrow agent in the SPA,  and for TSH to wire the $1,965,600.00 purchase price into escrow to the Sternberg attorney escrow account, was to provide assurance to TSH that the plaintiff's $1,965,600.00 Purchase Price would not be released by Sternberg from escrow, without confirming that the Covid Test Kits were purchased, and without confirming that the Covid Test Kits were delivered to a recognized common carrier for delivery to plaintiff. *See* Plaintiff's Exhibit P-3, the SPAP, at ¶¶ 4, 5, and 6, and Exhibit B; *see* Dan Scully Certification at ¶¶ 6-9. The position taken by the Sternberg Defendants, that they only were acting as Seller's attorney, and had to release funds to Seller at the instruction of the Seller (i.e., before transfer of the goods purchased to SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA,**

and would render meaningless the escrow provisions of the SPA.  *See* **Plaintiff Exhibit P-3, at ¶¶ 4, 5, and 6, and Exhibit B. The SPA clearly establishes that the Sternberg Defendants also were acting as the <u>escrow</u> agent as respects the transfer of the purchase price from TSH to the Gross Defendants. Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE.  *Id.*  Pursuant to paragraph 4 of the SPA, SAFETY HOUSE as Buyer wired the funds to "the Seller's Attorney *Escrow* Account identified in Exhibit B" (emphasis added).  *Id*, at ¶ 4.  Paragraph 5 of the SPA clearly and unambiguously states that "the Buyer [TSH] shall transfer the above-mentioned funds [$1,965,600.00] to the Seller's Attorney *Escrow* Account listed in Exhibit B…" (emphasis added). *Id*, at ¶ 5.  Exhibit B to the SPA is titled "EXHIBIT B – *ESCROW* ACCOUNT" (emphasis added), and the next line of Exhibit B identifies that escrow account as the "Manfred Sternberg Jr.  Attorney at Law IOLTA Trust Account" and Exhibit B provides wire instructions for the wire into the Sternberg ESCROW account.  *Id*, at Exhibit B. The SPA also clearly states in paragraph 6 that "title transfer shall happen contemporaneously with funds being released to Seller."  *Id*, at ¶ 6. That did not happen – the Sternberg Defendants released funds from their attorney escrow account prior to Seller acquiring title to any Covid Test Kits, and prior to delivery of any Test Kits to a common carrier for delivery to TSH, and prior to any Bill of Lading being supplied to TSH.**

### VI.   THE STERNBERG DEFENDANTS' UNREFUTED EXPERT SUBMISSIONS

72.   Summary judgment is warranted in favor of the Sternberg Defendants as evidenced, in part, by the expert submissions timely disclosed on August 16, 2024. *See Ex. N, Rule 26 Supplement.*

**<u>SAFETY HOUSE RESPONSE</u>:  DISPUTED.  The expert submissions were not timely. *See* Plaintiff's Motion to Preclude Expert Reports and Bar Expert Testimony [ECF 197], filed on September 30, 2024, which Motion currently is pending before the Court.  The Sternberg Defendants failed to identify any expert in their responses to plaintiff's discovery requests. *Id.*  The Sternberg Defendants did not submit expert reports by the August 2, 2024 deadline set forth in the Court's Amended Scheduling Order [ECF 154]. *Id.*  The Sternberg Defendants did not even seek, let alone obtain, permission from the Court to designate experts after the discovery deadline, or to produce expert reports after the discovery deadline, or after the deadline set  by the Court for expert reports. *Id.*  Further, the Expert Report from Steven Angstreich of the Weir Law Firm is improper, since the Weir Law Firm also provides legal services to SAFETY HOUSE (which is an actual conflict of interest). *Id.***

**Even if the Sternberg Defendants had timely designated their experts, and timely submitted their expert reports, are wrong.  The Angstreich Expert Report**

also not only is wrong, but purports to opine on the issue that more properly is determined by the fact-finder. *Id.*

Lesovitz concludes that Sternberg did not benefit from the Safety House transaction and that Sternberg incurred a loss from the transaction. But Lesovitz bases his conclusion by focusing only on the TSH transaction, and ignoring the VRC deal and also ignoring Weiss's delivery of $4 million of diamonds and gemstones to Sternberg/Gross (*see* Weiss submission [ECF 103]; *see also* Plaintiff's Exhibits P-22 and P-23a to P-23g). Lesovitz states that TSH paid $1,965,600 into Sternberg's attorney escrow account, and that Sternberg wired $2,571,200 out to buy the Covid test kits, resulting in a loss of $605,600 (see page 11 of the Lesovitz report). Lesovitz does not explain why, when TSH only wired $2 million into Sternberg's attorney escrow account, Sternberg then wired $2.5 million out ($600k more than TSH wired in). Lesovitz also does not explain why Sternberg wired out more than $907,000 for the 151,200 Covid Test Kits that TSH purchased (the Weiss 1/26/22 invoice to Gross had a $6 per unit purchase price, so 151,200 x $6 is $907,000, but Sternberg wired out $2,571,200) (*see* Plaintiff's Exhibit P-7). Lesovitz conveniently and totally ignores the fact that VRC made 2 wires into Sternberg's attorney escrow account totaling $2,449,440, on January 19-20, 2022, one day before TSH's 1/21/22 $1,965,600 wire to Sternberg (*see* Plaintiff's Exhibit P-6). Lesovitz also conveniently and totally ignores the fact that Gary Weiss gave Sternberg/Gross diamonds and gemstones totaling $4 million as collateral, which they kept and did not return to Weiss (*see* Plaintiff's Exhibits P-22 and P-23a to P-23g). That turns Lesovitz's $605,600 loss into a $5.8 million gain for Sternberg/Gross.

The Angstreich report also is wrong and flawed. Angstreich states that Sternberg's only role in the TSH transaction was as the Seller's attorney. Angstreich concludes that the Sternberg owed no duty to TSH because the 1/21/22 Sale and Purchase Agreement (the "SPA") does not make Sternberg an escrow agent, and there is no separate escrow agreement. Angstreich's position is contrary to the terms of the SPA (*see* Plaintiff's Exhibit P-3, at ¶¶ 4, 5 and 6, and Exhibit B). His opinion also is contrary to both PA and TX law. *See* Plaintiff's Motion to Preclude Expert Reports and Bar Expert Testimony [ECF 197], at pp. 31-36. Angstreich conveniently ignores the provisions of the Sale and Purchase Agreement, that in fact make Sternberg an escrow agent. The SPA clearly establishes that the Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants. Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE (*see* Plaintiff's Exhibit P-3, at ¶¶ 4, 5 and 6, and Exhibit B). Pursuant to paragraph 4 of the SPA, SAFETY HOUSE as Buyer wired the funds to "the Seller's Attorney <u>Escrow</u> Account identified in Exhibit B" (emphasis added) (*Id* at ¶ 4). Paragraph 5 of the SPA clearly and unambiguously states that "the Buyer [TSH] shall transfer the above-mentioned funds [$1,965,600.00] to the Seller's Attorney <u>Escrow</u> Account listed in Exhibit B…" (emphasis added) (*Id* at ¶ 4). Exhibit B to the SPA is titled "EXHIBIT B – <u>ESCROW</u> ACCOUNT" (emphasis added), and the next line of Exhibit B identifies that escrow account as the "Manfred Sternberg Jr. Attorney at Law IOLTA Trust Account" and Exhibit B provides wire instructions for the wire into the Sternberg ESCROW account (*Id* at Exhibit B). The SPA also clearly states in paragraph 6 that "title transfer shall happen contemporaneously with funds being released to Seller" (which did not happen) (*Id* at ¶ 6). The position taken by the Sternberg Defendants, that they only were acting

as Seller's attorney, and had to release funds to Seller at the instruction of their client, the Seller (i.e., before transfer of the goods purchased to SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA, and contrary to PA and TX law, and would render meaningless the escrow provisions of the SPA.

Plaintiff incorporates by reference herein, all of the allegations and documents comprising its Motion to Preclude Expert Reports and Bar Expert Testimony [ECF 197], filed on September 30, 2024, which Motion currently is pending before the Court.

Summary Judgment is NOT warranted in favor of the Sternberg Defendants. To the contrary, Summary Judgment in favor of plaintiff SAFETY HOUSE, against the Sternberg Defendants, is warranted, as more fully set forth in plaintiff's Motion for Summary Judgment [ECF 196], which Motion currently is pending before the Court, and the allegations of said Motion and documents comprising said Motion are incorporated herein by reference.

73.     Steven Angstreich, Esquire, a partner at Weir Greenblatt Pierce LLP, has been licensed to practice law in Pennsylvania for more than 50 years, and has handled actions involving allegations against attorneys. *See Ex. O, Angstreich Report*, at pp. 3, 14.

**SAFETY HOUSE RESPONSE**: **Denied, for lack of knowledge.** ***See also***, **the response to no. 72 above, which is incorporated herein by reference.**

74.     Angstreich concluded that "to a reasonable degree of legal certainty that neither Mr. Sternberg nor the law firm breached any duty to Plaintiff, and neither is liable to Plaintiff for the loss of the funds." *Id.*, at p.13.

**SAFETY HOUSE RESPONSE**: **Denied.** ***See also***, **the response to no. 72 above, which is incorporated herein by reference.**

75.     The Sternberg Defendants' position is also bolstered by the opinions of Joseph W. Lesovitz, a Forensic, Litigation and Valuation Services Group partner in Eisner Amper where he specializes in calculating damages in complex commercial litigation and in providing financial consulting and forensic accounting services. *See, Ex. P, Lesovitz Report*,

at p. 15.

**SAFETY HOUSE RESPONSE:  DISPUTED.   The Lesovitz Report takes an "ostrich-head-in-the-sand" approach, by considering only the TSH purchase, and incredibly concluding that the Sternberg Defendants lost money.  However, the Lesovitz Report is unreliable and simply wrong.  *See*, the response to no. 72 above, which is incorporated herein by reference.**

76.     Lesovitz is a Certified Public Accountant and a Certified Fraud Examiner. *Id.*, at p. 4.

**SAFETY HOUSE RESPONSE:  Denied, for lack of knowledge.  *See also*, the responses to nos. 72 and 75 above, which are incorporated herein by reference.**

77.     Lesovitz reviewed the pertinent evidence of record and concluded that the Sternberg Defendants did not withhold any of Plaintiff's funds nor otherwise financially benefit from the contemplated transaction. *Id.*, at p. 11.

**SAFETY HOUSE RESPONSE:  Denied.  *See also*, the responses to nos. 72 and 75 above, which are incorporated herein by reference.**

78.     Plaintiff produced no timely expert reports to either affirmatively support its unsubstantiated claims as to liability and damages, or to rebut the opinions of the Sternberg Defendants' experts.

**SAFETY HOUSE RESPONSE:  DISPUTED.  Plaintiff did not designate any experts because the Sternberg Defendants did not designate any experts, and because expert submissions of the Sternberg Defendants were not timely.  The Sternberg Defendants failed to identify any expert in their responses to plaintiff's discovery requests.  The Sternberg Defendants did not submit expert reports by the August 2, 2024 deadline set forth in the Court's Amended Scheduling Order [ECF 154].  The Sternberg Defendants did not even seek, let alone obtain, permission from the Court to designate experts after the discovery deadline, or to produce expert reports after the discovery deadline, or after the deadline set  by the Court for expert reports.   Plaintiff incorporates by reference herein, all of the allegations and documents comprising its Motion to Preclude Expert Reports and Bar Expert Testimony [ECF 197], filed on September 30, 2024, which Motion currently is pending before the Court.  To the extent that the Court denies said Motion and allows the Sternberg Defendants to use experts not identified during discovery, and to allow expert reports not timely produced, than plaintiff also should**

**be allowed to submit rebuttal expert reports.  *See also*, the response to no. 72 above, which is incorporated herein by reference.**

79.   The Sternberg Defendants submit this statement of undisputed material facts in support of their motion for summary judgment.

**<u>SAFETY HOUSE RESPONSE</u>:  Admitted that the Sternberg Defendants submitted their statement of alleged undisputed material facts in support of their motion for summary judgment.  TSH denies and disputes that the alleged undisputed material facts are undisputed, for the reasons set forth above.  TSH denies that the Sternberg Defendants are entitled to Summary Judgment.   Summary Judgment is NOT warranted in favor of the Sternberg Defendants.  To the contrary, Summary Judgment in favor of plaintiff SAFETY HOUSE, against the Sternberg Defendants, is warranted, as more fully set forth in plaintiff's Motion for Summary Judgment [ECF 196], which Motion currently is pending before the Court, and the allegations of said Motion and documents comprising said Motion are incorporated herein by reference. *See also*, the response to no. 72 above, which is incorporated herein by reference.**

WHEREFORE, plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM, respectfully submits that the Court should enter the proposed Order accompanying this Motion: (a) granting Summary Judgment for compensatory damages in favor of Plaintiff TSH against each of the defendants, Manfred Sternberg, Esquire, and Manfred Sternberg & Associates, PC (collectively the "Sternberg Defendants"), and Daphna Zekaria, Esquire, and Sokolski & Zekaria, P.C. (collectively the "Zekaria Defendants"), and Gary Weiss and ASOLARDIAMOND, LLC, a/k/a ASOLAR, LLC (collectively the "Weiss Defendants"), and Sam Gross and Charlton Holdings Group, LLC (collectively the "Gross Defendants"), individually jointly and severally, in the amount of $1,965,600.00, plus post-Judgment interest at the legal rate, plus costs; and (b) granting a Default Judgment in favor of TSH against the Gross Defendants and the Weiss Defendants and the Zekaria Defendants, individually jointly and severally, in the amount of $1,965,600.00, plus post-Judgment interest at the legal rate, plus costs; and (c) granting Summary Judgment for punitive damages in favor of Plaintiff against each of the defendants, individually

jointly and severally, either in an amount determined by the Court (which plaintiff requests be ten times the purchase price paid by Plaintiff,) or in the alternative, enter liability for punitive damages in favor of Plaintiff against all defendants and establish a schedule for Plaintiff to conduct asset discovery of the defendants, and thereafter conduct a punitive damages hearing to determine the amount of punitive damages to be awarded in favor of Plaintiff against the defendants; and (d) granting to Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQUIRE
Identification Nos. 28529 & 64223
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
215-760-3000
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com


Date:  October 30, 2024                    Attorneys for plaintiff SAFETY HOUSE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below he caused to be served a true and correct copy of the foregoing Plaintiff's Response including supporting exhibits and papers, upon all defendants, via ECF, and/or email, upon the following:

Seth Laver, Esquire
Joseph Ross, Esquire
Goldberg Segalla
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
slaver@goldbergsegalla.com
Jross@goldbergsegalla.com

Gary Weiss
ASOLARDIAMOND, LLC
437 1st Avenue
Elizabeth, NJ 07206
wgary4109@gmail.com
monipair@aol.com


Samuel Gross
a/k/a Shlomo Gross
78 Buckminster Road
Rockville Centre, NY 11570
charltonholdinggroupllc@aol.com
publicdiamonds@gmail.com
Scg1212@gmail.com
Samrosinc@icloud.com

Daphna Zekaria, Esquire
SOKOLSKI & ZEKARIA, PC
8 Westminster Road
Syosset, NY 11791
Dzandpeanut@aol.com


LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE

Date:  October 30, 2024          Attorneys for Plaintiff TSH