IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM : <br><br> : <br> **Plaintiff,** : <br> : <br> v. : <br> : <br> MANFRED STERNBERG, ESQUIRE, : <br> and MANFRED STERNBERG & : <br> ASSOCIATES, PC, and CHARLTON : <br> HOLDINGS GROUP, LLC, and : <br> SAMUEL GROSS a/k/a SHLOMO : <br> GROSS, and GARY WEISS, : <br> and ASOLARDIAMOND, LLC a/k/a, : <br> ASOLAR. LLC, and DAPHNA : <br> ZEKARIA, ESQUIRE, and SOKOLSKI : <br> & ZEKARIA, P.C. : <br> : <br> **Defendants.** : | **CIVIL ACTION** <br><br> **No. 2022-cv-00688 (JMY)** |

**PLAINTIFF'S REPLY BRIEF IN RESPONSE TO SUBMISSIONS OF
THE STERNBERG DEFENDANTS, AND IN FURTHER SUPPORT OF
PLAINTIFF'S RULE 56 MOTION FOR SUMMARY JUDGMENT
AND MOTION TO PRECLUDE STERNBERG DEFENDANT EXPERTS**

Plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM

("TSH" or "SAFETY HOUSE"), respectfully submits its Reply Brief in response to the

submissions of the Sternberg Defendants [ECF 208 and 209], and in further support of plaintiff's

Motion for Summary Judgment [ECF 196] and to Preclude the Sternberg Defendant Experts [ECF

197].

**THE STERNBERG DEFENDANT EXPERT REPORTS ARE NOT TIMELY**

The Sternberg Defendants argue that their expert reports are timely because they were

submitted on August 16, 2024, in compliance with the 8/16/24 deadline set forth by the Court in

the Court's Amended Scheduling Order [ECF 154].  *See* Sternberg Defendant Expert Brief [ECF

208], at p. 5-6. However, the claim of the Sternberg Defendants is misleading and also misreads the Court's Scheduling Order.  The Court set August 2, 2024 as the deadline for the parties to submit expert reports, and set August 16, 2024 as the deadline for *rebuttal* reports.  *See*, the Court's Amended Scheduling Order [ECF 154], at ¶ 1b.  **No parties designated any experts in discovery responses.  No parties produced any expert reports by the August 2, 2024 deadline set by the Court.** The two expert reports first produced by the Sternberg Defendants on August 16, 2024, cannot be characterized as *rebuttal* reports, because there were no expert reports of plaintiff to rebut.  They are not timely, especially where the Sternberg Defendants failed to designate any experts in their responses to plaintiff's discovery requests served on them.

Allowing the Sternberg Defendants to designate and to use expert reports out of time, and when they failed to identify any experts during discovery, is improper.  *See* plaintiff's Motion to Preclude Experts [ECF 197], and caselaw cited therein.  It also will result in substantial prejudice to plaintiff SAFETY HOUSE.  Because the Sternberg Defendants failed to timely designate any experts, and then produced the two expert reports out of time, plaintiff lost the opportunity to produce any expert reports of its own to rebut the expert reports of Stenberg Defendants. Because the Sternberg Defendants failed to designate any experts, and then produced the two expert reports out of time, they now are arguing that their expert opinions are unrefuted.   This is especially so where the Angstreich report is a clear and present conflict of interest – Angstreich's law firm currently also represents plaintiff in other matters.  *See* the Certification of Daniel Scully dated and filed on October 30, 2024, as Exhibit "A" to that filing [ECF 210-1 at pp. 2-14 of that pdf], and the Certification of Daniel Scully dated and filed on September 30, 2024 [ECF 197, at pp 13-14 of that pdf].

## THE SUBSTANCE OF THE STERNBERG DEFENDANT EXPERT REPORTS ARE WRONG,  AND NOT PROPER "EXPERT" OPINIONS IN ANY EVENT

The subject matters of the expert reports are wrong, and also are not proper for expert opinions. *See* plaintiff's Motion to Preclude Experts [ECF 197], and caselaw cited therein; *see also*, plaintiff's Response to Sternberg Motions [ECF 210, at pp. 15-17 of that pdf].

The Lesovitz expert report concludes that Sternberg did not benefit from the Safety House transaction and that Sternberg incurred a loss from the transaction.  But Lesovitz bases his conclusion by focusing only on the TSH transaction, and he ignores the VRC transaction, and he also ignores Weiss's delivery of $4 million of diamonds and gemstones to Sternberg/Gross.  Lesovitz states that TSH paid $1,965,600 into Sternberg's attorney escrow account, and that Sternberg wired $2,571,200 out to buy the Covid Test Kits, resulting in a loss of $605,600 (*see* page 11 of the Lesovitz report).  Lesovitz does not explain why, when TSH only wired $2 million into Sternberg's attorney escrow account, Sternberg then wired $2.5 million out (i.e., $600,000 more than TSH wired into escrow to Stenberg).  Lesovitz also does not explain why Sternberg wired out more than $907,000 for the 151,200 Covid Test Kits that TSH purchased  (the Weiss 1/26/22 invoice to Gross had a $6 per unit purchase price, so 151,200 x $6 is $907,000, but Sternberg wired out $2,571,200).    Lesovitz conveniently and totally ignores the fact that VRC made 2 wires into Sternberg's attorney escrow account totaling $2,449,440, on January 19-20, 2022, one day before TSH's 1/21/22 $1,965,600 wire to Sternberg.  Lesovitz also conveniently and totally ignores the fact that Gary Weiss gave Sternberg/Gross diamonds and gemstones totaling $4 million as collateral, which they kept and did not return to Weiss.  That turns Lesovitz's $605,600 loss into a $5.8 million gain for Sternberg/Gross.

The Angstreich Report similarly is flawed. As previously noted, "Angstreich opined that the 'SPA does not name Sternberg as escrow agent, it is silent as to any duties or obligations placed

upon Sternberg, and Sternberg never signed the SPA or voluntarily agreed to act in the capacity of an escrow agent.' " Sternberg MSJ [ECF 198], at p. 22, page 34 of the 54 page pdf. However, that simply is wrong. The Sternberg Defendants admit that Sternberg drafted the SPA. The Sternberg Defendants and the Angstreich report conveniently ignore the provisions of the SPA, and is contrary to the plain reading of the SPA, which in fact makes Sternberg an escrow agent. *The SPA clearly establishes that the Sternberg Defendants also were acting as the escrow agent as respects the transfer of the purchase price from TSH to the Gross Defendants.* See Plaintiff's Exhibit P-3, the SPA, at ¶¶ 4, 5 and 6, and Exhibit B. Sternberg's role in the SPA is as an escrow agent, to provide assurances to SAFETY HOUSE that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to SAFETY HOUSE. Pursuant to paragraph 4 of the SPA, SAFETY HOUSE as Buyer wired the funds to "the Seller's Attorney **Escrow** Account identified in Exhibit B" (emphasis added). Paragraph 5 of the SPA clearly and unambiguously states that "the Buyer [TSH] shall transfer the above-mentioned funds [$1,965,600.00] to the Seller's Attorney **Escrow** Account listed in Exhibit B…" (emphasis added). Exhibit B to the SPA is titled "EXHIBIT B – **ESCROW** ACCOUNT" (emphasis added), and the next line of Exhibit B identifies that escrow account as the "Manfred Sternberg Jr. Attorney at Law IOLTA Trust Account" and Exhibit B provides wire instructions for the wire into the Sternberg ESCROW account. Most importantly, the SPA also clearly states in paragraph 6 that "**title transfer shall happen contemporaneously with funds being released to Seller**."

The opinion of Angstreich, adopted by the Sternberg Defendants, that the "sole and exclusive" role of Sternberg Defendants was only as Seller's attorney, and that Sternberg had to release funds to Seller at the instruction of their client, the Seller (i.e., before transfer of the goods

purchased to SAFETY HOUSE as Buyer), is wrong, and contrary to the express terms of the SPA, and contrary to PA and TX law, and would render the escrow provisions of the SPA meaningless. *See also*, plaintiff's Motion to Preclude Expert Reports and Bar Expert Testimony [ECF 196], at pp. 31-36.

### STERNBERG DID MAKE MISREPRESENTATIONS UPON WHICH THE PLAINTIFF RELIED

The Sternberg Defendants continue to argue that they are entitled to Summary Judgment because (a) their role in the TSH transaction was solely and exclusively" are the attorneys for the Gross Defendants as the Sellers, and because they made no representations to plaintiff. *See generally,* Sternberg Brief [ECF 209]. However, both contentions of the Sternberg Defendants are wrong.

Plaintiff SAFETY HOUSE was induced to enter into the SPA and to wire transfer the $1.965,600.00 purchase price into escrow based upon representations that Sternberg would hold the $1,965,600 purchase price in escrow, and that "title transfer shall happen contemporaneously with funds being released to Seller." *See* Plaintiff's Exhibit P-3, the SPA, at ¶ 6. Those representations were made to SAFETY HOUSE both orally, by Sternberg's broker (through Dick Gray and John Mann) , and *by Sternberg himself, in the very provisions of the SPA that Sternberg drafted and used in the TSH transaction*, to induce TSH to enter into the purchase transaction. TSH never would have wired the $1,965,600.00 purchase price into escrow to the Sternberg attorney escrow account, if the SPA did not document what TSH was being told how the transaction would work.

Sternberg claims that the parol evidence rule precludes SAFETY HOUSE from asserting that Dick Gray and John Mann were Sternberg's brokers. But Sternberg does not deny that they were acting as his broker, and Sternberg has not filed anything from either disputing their role in

the transaction as Sternberg's broker. In fact, and to the contrary, there are emails between Sternberg and the brokers discussing the commissions that Sternberg was supposed to pay to them. Even more telling, it was Dick Gray who emailed to Sternberg the plaintiff's signed SPA and who sent Sternberg the evidence of plaintiff's $1,965,500.00 wire transfer.  Plaintiff's Exhibit P-32 is a copy of the email sent by Dick Gray to Manfred Sternberg on January 21, 2022.  The 1/21/22 email from Dick Gray to Manfred Sternberg states:

"Manfred,

Attached is the signed SPA from Dan Scully for 151,200 kits - iHealth.

Would you please get the SPA signed by Sam or Chris for DBA
The Safety House American Environmental Enterprises?

The wire has been sent for $1,965,600.  Wire copy attached.

Thanks."

*See* Plaintiff's Exhibit P-32.  That email evidences Dick Gray's role in the transaction as Sternberg's broker, and nothing in any of the Sternberg submissions, and no documents relied upon by Sternberg, refute that the role of Dick Gray was as Sternberg's broker.  In fact, and to the contrary, Sternberg was supposed to pay commissions to his brokers for the TSH transaction.

The emails between Sternberg and the broker about correcting TSH's name in the original Bill of Sale also evidence that the broker was working for Sternberg.  The initial Bill of Sale incorrectly had "Hand Safety" instead of "SAFETY HOUSE" as the buyer.  Dan Scully pointed that out in his email to the Broker on February 8, 2022, who in turn contacted Sternberg, and Sternberg then corrected and re-sent the Bill of Sale with TSH's correct name.  A copy of the 2/8/22 email string evidencing Sternberg's correcting the Bill of Sale upon notification from his broker is marked as Exhibit P-42 and accompanies this Reply Brief.

It also should be noted that while Sternberg claims the parol evidence rule prohibits evidence of the representations made by his broker, Sternberg repeatedly has claimed that he is not a party to the SPA, since he did not sign it.  How convenient, that while Sternberg claims on the one hand that he is not a party to the SPA contract, on the other hand he argues that representations made by his broker nonetheless should be barred from consideration.  And an exception to the parol evidence allows intrinsic evidence where there is an ambiguity in the SPA. Vianourt v. Paragon Wholesale Foods Corp., 2020 US Dist. LEXIS 232215 (WD PA. 2020). Sternberg claims that the (unsigned) Standard Operating Procedure ("SOP") set forth in Exhibit E of the SPA controls, but paragraph 6 of the (signed) SPA requires title transfer to happen simultaneously with the release of funds to seller.  The representations made by Sternberg's broker certainly go to resolving the apparent ambiguity between the Exhibit E SOP and the language in paragraph 6 of the SPA, especially since Sternberg by his own admission was the one who drafted the SPA and its Exhibits.  And as previously noted, the only way that The Exhibit E SOP is consistent with paragraph 6 of the SPA, is if items 3 through 7 of the SOP happen at the same time.

Even more telling, the representations made by Sternberg upon which SAFETY HOUSE relied, and that induced TSH to enter into the transaction and make the $1,965,600.00 wire transfer into escrow to Sternberg, are set forth by Sternberg himself, in the very SPA that he drafted that was used for the transaction.  Sternberg, the admitted scrivener of the SPA, provides that the "Buyer shall transfer the above-mentioned funds to the Seller's Attorney Escrow Account listed in Exhibit B…." Plaintiff's Exhibit P-3, the SPA, at ¶ 5.  Sternberg, the admitted scrivener of the SPA, represented in the SPA that once the transferred funds have been made, "Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer."  Plaintiff's Exhibit P-3, the SPA, at ¶ 6.  Most importantly, Sternberg, the admitted

scrivener of the SPA, represented that "Title transfer shall happen contemporaneously with funds being released to Seller." Plaintiff's Exhibit P-3, the SPA, at ¶ 6. The SPA drafted by Sternberg contains repeated references to the purchase price being wired into *escrow* to Stenberg, and the account in the SPA drafted by Sternberg repeatedly refers to his account as an *escrow* account.

It is no wonder that Sternberg claims that his only role is "solely and exclusively" as Seller's attorney. Because Sternberg by his own admission did nothing to fulfill his fiduciary duty as the escrow agent to make sure that representations he made in the SPA he drafted were fulfilled. Sternberg can claim that he was not a signatory to the SPA, but he cannot dispute that he was involved in the transaction as the escrow agent – Sternberg repeatedly is named in the SPA as the person to whom the buyer wire-transferred the purchase price into escrow. Sternberg by his own admission did nothing to fulfill his fiduciary duty as the escrow agent to make sure that title transfer of the Covid Test Kits to SAFETY HOUSE happened contemporaneously with the release of funds to Seller. Sternberg admits that he did nothing to verify that the Gross Defendants actually acquired title to or possession of the 151,200 Covid Test Kits (because in fact, and to the contrary, the Gross Defendants never had title to or possession of any of the Test Kits, and the 1/21/22 Bill of Sale delivered to plaintiff was fraudulent). Sternberg admits that he did nothing to verify that his client the Seller delivered the Goods to a common carrier with instructions to deliver the Goods to the Buyer (and in fact, and to the contrary, the Gross Defendants never delivered the 151,200 Test Kits to any common carrier). Stenberg freely admits that no Bill of Lading ever was delivered to TSH evidencing that the 151,200 Test Kits were with a common carrier en route for delivery to SAFETY HOUSE. Sternberg represented in the SPA he drafted and that he used for the TSH transaction that his client, the Seller, would deliver the Test Kits to a common carrier, before the

funds would be released from his attorney escrow account.  Plaintiff's Exhibit P-3, the SPA, at ¶ 6.

None of the representations made by Sternberg in the SPA came to fruition, because he was the mastermind of this fraud scheme, and Sternberg never intended to honor any of the representations he made in the SPA that induced TSH to wire the $1,965,600 purchase price into escrow to his attorney escrow account in the first place.  Stenberg knew that his client the Seller did not own any of the 151,200 Covid Test Kits to be delivered to SAFETY HOUSE (and Stenberg also knew that his client the Seller did not own any of the 204,120 Covid Test Kits that were supposed to be delivered to VRC, the other main victim of their fraud scheme).  The 1/21/22 Bill of Sale delivered to SAFETY HOUSE for 151,200 Test Kits was fraudulent.  Sternberg not only used that fraudulent Bill of Sale in the Motion to Dismiss that he filed in this Court [ECF 13-9, filed 4/1/2022], but over a year and a half has passed since Sternberg made that filing, and to date, Sternberg never filed any supplemental pleading to bring to the Court's attention that said Bill of Sale was false.

The TSH transaction was not an isolated incident, either.  VRC has filed a lawsuit against Sternberg (*see* plaintiff's Exhibit P-36, a copy of their New Jersey federal court lawsuit against Sternberg and Gross), alleging that they were victims of the same fraud scheme – they wired $2,449,440 into escrow to Sternberg's attorney escrow account, but they also did not receive their 204, 120 Covid Test Kits of a refund of their purchase price that they wired into escrow to Sternberg.  And discovery in this case evidences that David Wright was the victim of the same fraud scheme approximately six months prior to the TSH transaction.  Even more damning, even after SAFETY HOUSE was defrauded, and made its fraud claims against Sternberg, he continued to work the fraud scheme (with Gross) on other additional victims, for Covid Test Kits and other

PPE (*e.g.*, George Gianforcaro, from Inductex USA; and Daniel Rodin; George Carcia-Menocal, Esquire). *See* Daniel Scully Certification [ECF 196], at ¶ 59; *see also* Plaintiff's Exhibit P-34 (the Sternberg spreadsheet prepared by Sternberg, that Weiss produced at the Weiss deposition, and the names of the other victims identified by Sternberg; and Plaintiff SUF at No. 136).

As respects the instant TSH transaction, Sternberg also admits that no bona fide Bills of Lading were sent to SAFETY HOUSE for the 151,200 Test Kits.  *See*, Fact Nos. 27 and 33 contained in Plaintiff's Statement of Undisputed Facts filed in support of TSH MSJ  [ECF 196], and Sternberg "undisputed" Responses to those facts [ECF 209].  However, even though Sternberg claims he had no role in the TSH transaction other than exclusively as Seller's attorney, Sternberg apparently has forgotten that he himself emailed at least three Bills of Lading to counsel for TSH, that were fraudulent.  A copy of the 3/20/22 email sent by Sternberg accompanies this Reply as Plaintiff's Exhibit P-43.  Copies of the three (fraudulent) Bills of Lading that Sternberg emailed to TSH through counsel, collectively are marked and accompany this Reply as Plaintiff's Exhibit P-44.  All of those three Bills of Lading are fraudulent – none were for goods that were delivered to TSH.

Sternberg represented in the SPA that once the funds were wired into his attorney escrow account, the Seller would deliver the Test Kits to a common carrier.  Stenberg represented in paragraph 8 of the SPA that his client the Seller was going "to deliver the Goods from the Seller's warehouse(s) to Buyer at Seller's cost…" but when he made that representation, Sternberg didn't even know whether his client did not own any warehouses, let alone any warehouse(s) containing 355,320 Covid Test Kits that were supposed to be delivered to TSH and to VRC.  (*See* Plaintiff's Exhibit P-37, the 2/7/24 Sternberg deposition transcript, at 106:3-107:14  The Seller named in the SPA, Gross's entity, CHG was an LLC in name only, without any assets, that was under-

capitalized (*see* RFA #11).  The only assets of the seller were the $1,965,600 in funds that TSH wired into escrow to Sternberg's attorney escrow account, and $2,449,440 in funds that VRC wired into escrow to Sternberg's attorney escrow account that Stenberg represented would be released from his escrow account only contemporaneously with transfer of title to the Test Kits to TSH and VRC.  A very profitable fraud scheme  – in the space of 3 days (January 19-21, 2022), Sternberg gets $4,415,040 wired into his attorney escrow account for purchases of a total of 355,320 Test Kits.  The problem is, Sternberg's client the Seller doesn't have any, let alone 355,320, Test Kits. So what does Sternberg, the escrow agent, do to solve that small problem?  Sternberg keeps a large portion of the money for himself, and makes distributions of $2,571,200 of the purchase price from his attorney escrow account to the other defendants, before his client the Seller even acquires any Test Kits.  Sternberg continues to make distributions from his attorney escrow account, even after being told by attorneys for buyers not to make any further disbursements.  *See* Plaintiff's Exhibits P-13, P-16, and P-25.

All the while, Sternberg continued to make repeated misrepresentations to TSH that their Test Kits should be delivered "the next day" (*see* Plaintiff's Exhibit P-13) or were en route for delivery to TSH (*see* Plaintiff's Exhibit P-37), knowing those misrepresentations were not true. When defendants failed to deliver any Covid Test Kits, TSH cancelled the transaction on February 16, 2024, and demanded a full refund.  The SPA does *no*t allow defendants both to keep the $1,965,600.00 purchase price and to not deliver the Test Kits to TSH.  At most, the liquidated damages provision in paragraph 11 of the SPA would allow them to keep only $50,000 (if the buyer terminates the SPA without cause),  but they are not even entitled to that liquidated damage provision in the instant case (because the SPA was cancelled by Seller for cause).   Instead, Sternberg divided up TSH's $1,965,600 purchase price among the other defendants (keeping a

lion's share for himself).  And to top off everything, Weiss delivered $4 million in diamonds and gemstones to Gross and Sternberg as collateral.  Instead of liquidating that collateral and refunding the $1,965,600.00 to SAFETY HOUSE, instead Sternberg further profited at TSH's expense by keeping Weiss's $4 million in diamonds and not returning the gems to him, or selling them and giving the purchase price back to TSH.

SAFETY HOUSE respectfully submits that the Sternberg Defendants (and the other defendants) must be brought to justice for their wrongful and fraudulent conduct.

## RELIEF REQUESTED

WHEREFORE, plaintiff American Environmental Enterprises, Inc. d/b/a THE SAFETY HOUSE.COM, respectfully submits that the Court should enter the proposed Order accompanying the TSH MSJ: (a) granting Summary Judgment under Rule 56, in favor of plaintiff TSH against the Sternberg Defendants, and each of the other Defendants, individually jointly and severally, for compensatory damages in the amount of $1,965,600.00, plus post-Judgment interest at the legal rate, plus costs; and (b) granting a final Default Judgment under Rule 55, in favor of plaintiff TSH against the Weiss Defendants, and the Gross Defendants, and the Zekaria Defendants, individually, jointly and severally, for compensatory damages in the amount of $1,965,600.00, plus post-Judgment interest at the legal rate, plus costs; and (c) granting Summary Judgment under Rule 56, for punitive damages in favor of plaintiff TSH against each of the defendants, individually jointly and severally, either in an amount determined by the Court (which plaintiff requests be ten times the purchase price paid by plaintiff), or in the alternative, enter liability for punitive damages in favor of plaintiff TSH against all Defendants and establish a schedule for Plaintiff to conduct asset discovery of the Defendants, and thereafter schedule and conduct a punitive damages hearing to

determine the amount of punitive damages to be awarded in favor of plaintiff against the

Defendants; and (c) granting to plaintiff such other and further relief as the Court deems just and

proper.

           Respectfully submitted,

           LIGHTMAN & MANOCHI

           BY: /s/ Gary P. Lightman
           GARY P. LIGHTMAN, ESQUIRE
           GLENN A. MANOCHI, ESQUIRE
           Identification Nos. 28529 & 64223
           600 W. Germantown Pike, Suite 400
           Plymouth Meeting, PA 19462
           215-760-3000
           garylightman@lightmanlaw.com
           gmanochi@lightmanlaw.com

Date:  November 6, 2024        Attorneys for plaintiff TSH

## EXHIBITS TO TSH REPLY BRIEF

**EXHIBIT**    **DESCRIPTION**

P-42    2/8/22 email string between Stenberg and the broker wherein Sternberg corrects the name of TSH in the Bill of Sale

P-43    3/20/22 email from Sternberg to TSH counsel (including 3/20/22 response from TSH counsel)

P-44    Copies of the three (fraudulent) Bills of Lading sent by Sternberg to TSH through counsel

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that on the date shown below he caused to be served a true and correct copy of the foregoing Plaintiff's Response including supporting exhibits and papers, upon all defendants, via ECF, and/or email, upon the following:

Seth Laver, Esquire
Joseph Ross, Esquire
Goldberg Segalla
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
slaver@goldbergsegalla.com
Jross@goldbergsegalla.com

Gary Weiss
ASOLARDIAMOND, LLC
437 1st Avenue
Elizabeth, NJ 07206
wgary4109@gmail.com
monipair@aol.com


Samuel Gross
a/k/a Shlomo Gross
78 Buckminster Road
Rockville Centre, NY 11570
charltonholdinggroupllc@aol.com
publicdiamonds@gmail.com
Scg1212@gmail.com
Samrosinc@icloud.com

Daphna Zekaria, Esquire
SOKOLSKI & ZEKARIA, PC
8 Westminster Road
Syosset, NY 11791
Dzandpeanut@aol.com


LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE

Date: November 6, 2024

Attorneys for Plaintiff TSH