## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM | : : : : | |
| *Plaintiff,* | : : | CIVIL ACTION No. 2022-CV-00688 (JMY) |
| v. | : : | |
| Manfred Sternberg, Esquire; Manfred Sternberg & Associates, P.C.; Charlton Holdings Group, LLC; Samuel Gross; Gary Weiss; A Solar, LLC; Daphna Zekaria, Esq; and Sokolski & Zekaria, P.C., | : : : : : : : | |
| *Defendants,* | : : | |

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS'
## <u>MOTION FOR SUMMARY JUDGMENT</u>

**GOLDBERG SEGALLA LLP**

By:  *<u>/s/ Joseph Ross</u>*
Seth L. Laver, Esq. (PA ID #094518)
Joseph Ross, Esq. (PA ID #318039)
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
Telephone: 267-519-6800
slaver@goldbergsegalla.com
jross@goldbergsegalla.com
*Attorneys for Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, P.C.*

Dated:  November 6, 2024

## I.   PRELIMINARY STATEMENT

The Sternberg Defendants[1] hereby file this short reply brief in further support of their Motion for Summary Judgment. Not for lack of creativity, but Plaintiff cannot point to *any* admissible evidence necessary to sustain any cause of action against the Sternberg Defendants. Bluster, exaggeration, and unsupported theories? Sure. But Plaintiff lacks the facts.

Omit the bald allegations and the distractions from Plaintiff's unsupported tale of a grand conspiracy and all that remains is a failed transaction between a buyer and a seller. This is an otherwise simple breach of contract action dramatically and unnecessarily expanded to a claim of fraud, which carries with it the "highest" evidentiary burden "in our civil law." *Spaw v. Springer,* 715 A.2d 1188, 1189 (Pa. Super. 1998). Plaintiff's case against its seller – the Gross Defendants – and to a lesser extent, its supplier – the Weiss Defendants – may have some traction because those defendants were contractually bound or otherwise obligated to provide Plaintiff with product. Given that Plaintiff did not receive the test kits, there is a viable argument that *those* defendants may be liable. This is in stark contrast to the Sternberg Defendants, however, who had no obligation to provide Plaintiff with anything at any time and owed it no duty whatsoever.

The discovery process has proven what the Sternberg Defendants have preached from day one: Plaintiff cannot sustain any claim against them. The Sternberg Defendants cannot be liable for fraud because they had no pre-contract communication with Plaintiff. Plaintiff seeks to fill that void with the representations of others or immaterial discussions that occurred after the fact as opposed to explicit representations attributable to the Sternberg Defendants *before the parties effectuated the contract*.

---

[1]   The Sternberg Defendants will utilize the same defined terms in their opening brief for purposes of efficiency and consistency.

Furthermore, those post-contract "representations" that Plaintiff relies upon in its opposition to summary judgment cannot evidence fraud by virtue of the contracting parties' integration clause and the parol evidence rule. As a result, Plaintiff cannot prove justifiable reliance as a matter of fact and of law.

Plaintiff's theme throughout this litigation has been as consistent as it has been unprovable. In the opening sentence of its opposition, Plaintiff makes clear its willingness to die on this hill: "the mastermind of this fraud scheme, Manfred Sternberg…" While Plaintiff's theory makes for high drama, it is entirely lacking in facts.[2] There is no evidence of the Sternberg Defendants' so-called "fraud." There is no evidence of a scheme, let alone one orchestrated by an independent attorney. Plaintiff seeks to plead a fiction into reality by repeating the theme that it was *induced* to sign the SPA and that it was *induced* to wire funds but cannot overcome the dispositive issue that it had no dialogue with the Sternberg Defendants before doing so.

Herein, the Sternberg Defendants respond to several of the most glaring inaccuracies asserted in Plaintiff's Opposition to Summary Judgment ("Plaintiff's Opp"). Notably, Plaintiff insists that the Sternberg Defendants "induced" it to act, when the facts prove otherwise. Likewise, Plaintiff alleges without support that the Sternberg Defendants were bound by the SPA. Finally, Plaintiff again

---

[2] In its shameless efforts to weave a connection between the Sternberg Defendants and the transaction, Plaintiff has resorted to piecing together portions of documents like a patchwork quilt. According to Plaintiff, the Sternberg Defendants were "so involved" in the subject transaction that their name and telephone number was listed in the "vendor" section of the contracting parties' Purchase Order. For what it is worth, the subject Purchase Order, which *Plaintiff prepared,* lists the Gross Defendants as the "Vendor," *care of* their attorneys, Manfred Sternberg. While this fact has little bearing on Plaintiff's claims, it illustrates Plaintiff's desperate willingness to distort reality.

repackages its flawed arguments seeking to strike the Sternberg Defendants' expert submissions when that issue has already been fully briefed elsewhere.

### A. The Sternberg Defendants Did Not and Could Not Induce Plaintiff's Conduct.

An exceptionally clear and convincing basis to grant summary judgment in favor of the Sternberg Defendants is the fact that they had no pre-contract communication with Plaintiff and therefore could not be liable for fraud. Still, in its opposition, Plaintiff repeats one of its go-to mantras that it relied upon the representations of third-party brokers which "induced" it to execute the SPA. According to Plaintiff:

> Mr. Scully [its president] stated that the express provisions of the SPA repeated what he was told by the brokers acting for Sternberg, that induced him to make that wire transfer into escrow to Sternberg's attorney trust account.

There are at least two flaws in Plaintiff's reasoning. First, there is no evidence that the Sternberg Defendants authorized non-party "brokers" to act on their behalf or to otherwise bind the Sternberg Defendants. Second, since the contracting parties agreed that they were *not* relying on any extrinsic communications, any so-called representations must therefore be excluded as evidence by virtue of the parol evidence rule.

Plaintiff has not established, nor could it, that any sort of agency relationship existed amongst or between the Sternberg Defendants and the "sales brokers" to prove that they were authorized to act on their behalf. Plaintiff has not met, nor even attempted to meet, its burden of establishing the Sternberg Defendants' "manifestation" that any sales broker could act for them, that the brokers accepted that relationship, and an understanding that the Sternberg Defendants were "in control of the undertaking." *V-Tech Servs. v. Street*, 72 A.3d 270, 278-279 (Pa. Super. 2013). The Sternberg Defendants were counsel for Gross. They were not parties to the contract. Plaintiff's attempt to bind the Sternberg Defendants through the representations of others does not approach the high bar necessary to prove fraud.

3

Furthermore, even if the Sternberg Defendants were somehow bound by the representations of third-party brokers, which is clearly not the case, those representations could not be considered by the court by virtue of the SPA's clear integration clause and the impact of the parol evidence rule. The Sternberg Defendants are legal professionals, not suppliers of COVID testing equipment and no one thought otherwise. Plaintiff had every opportunity to review, negotiate, reconsider, reject or revise the SPA but it entered into the contract knowingly and with eyes open.[3] Plaintiff agreed that it was not "relying upon any representation not contained" in the SPA. Plaintiff is bound by its contract with the Gross Defendants and although it has recourse against them for the deal gone wrong, Plaintiff has not and cannot sustain a claim as to the Sternberg Defendants as a matter of fact or law.

The parol evidence rule attaches legal consequences to an integrated contract like the SPA, which is limited by its own terms to the four corners of the document. *SodexoMAGIC, LLC v. Drexel Univ.*, 24F.4th 183, 212-213 (ED Pa. 2022), *quoting* Restatement (Second) Contracts §209(1). Plaintiff agreed with the Gross Defendants that the SPA "constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties" and that "neither Party is relying upon any representation not contained in this Agreement." *SPA, ¶18.* This contractual language is fatal to Plaintiff's fraud claim because it expressly disclaimed anything and everything allegedly communicated before signing the SPA. Importantly, in light of the SPA's integration clause and "due to the parol evidence rule's operation," Plaintiff "cannot be said to have justifiably relied on prior representations that he has superseded and disclaimed." *Toy v Metro. Life Ins. Co.*, 593 Pa. 20, 53 (2007).

_____

[3]    During his deposition, Plaintiff's president testified that he reviewed the SPA "maybe ten times" during a two-to-three-week period before he effectuated the wire transfer. *See Ex. L to Sternberg Motion for Summary Judgment, Transcript of Scully Deposition* at 220:6-23.

Thus, the unsupported allegation that the Sternberg Defendants induced Plaintiff's conduct through the representations of third-party brokers is inadmissible. *Battle Born Munitions Inc. v. Dicks Sporting Goods Inc.*, 2023 U.S. App. LEXIS 19048 ("parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract; i.e. that an opposing party made false representations that induced the complaining party to agree to the contract"); *see also, K&G Contr., Inc. v. Warfighter Focused Logistics, Inc.*, 689 F. Supp. 3d 35, 44 (ED Pa. 2023). Summary judgment should be granted in favor of the Sternberg Defendants.

### B.  The Sternberg Defendants Were Not Parties to the SPA.

The SPA contains the agreed upon duties and obligations of the parties *to that contract*: the Gross Defendants as seller and Plaintiff as buyer. Those parties executed the contract after the opportunity to consult with counsel of their choice. The Gross Defendants elected to engage the Sternberg Defendants as their attorneys. For its part, Plaintiff foolishly opted to negotiate, review and execute the SPA without engaging counsel. Despite the defined roles of those parties, Plaintiff stubbornly insists that the SPA creates contractual duties upon the Sternberg Defendants. That contention is not supported by the law or the facts.

One of the more egregious examples of Plaintiff's revisionist history is its ongoing insistence that the SPA imposed upon the Sternberg Defendants an obligation to *do* or *confirm* or *inspect* anything *at all* before disbursing the purchase funds. According to Plaintiff:

> [the Sternberg Defendants] role in the SPA is as an escrow agent, to provide assurances to [Plaintiff] that the release of funds from Sternberg's attorney escrow account would happen contemporaneous with transfer of the 151,200 Covid Test Kits to [Plaintiff].

The SPA imposed no such duties on the Sternberg Defendants. Importantly, there is no contractual pre-condition to the Sternberg Defendants' release of funds from their account. Moreover, even if the contracting parties agreed to a different sequence, it is the Gross Defendants who would be bound by that limitation, and potentially liable for any breach, as opposed to the Sternberg Defendants who are

not parties to the contract. *See, Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. 1991)("It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract.").

Per the SPA, "Buyer agrees to authorize a wire be made to Seller through Seller's Attorney Escrow Account." *SPA at ¶4*. The triggering event to deliver a bill of sale and provide the goods to a common carrier does not occur until "once the transferred funds have cleared in the Seller's account." *SPA at ¶6*. As agreed, Plaintiff would wire funds to the Sternberg Defendants who, in turn, would rely upon their clients for distribution instructions. The contracting parties did *not* agree that those funds would remain in escrow for a certain duration or until a particular condition is met. Plaintiff suggests that the parties agreed "title transfer happened contemporaneously with the release of funds to Seller," when those terms do not exist in the parties' agreement. Perhaps Plaintiff could have negotiated to that effect, but it elected not to do so. Certainly, the Sternberg Defendants cannot be responsible for a contracting parties' alleged failure to comply with a contractual term that does not exist.

The Sternberg Defendants did not agree to anything, let alone that they would "provide assurances" to Plaintiff at any time. Likewise, the Sternberg Defendants did not agree to safeguard Plaintiff's funds unless or until a particular event occurred. Unfortunately for Plaintiff, it is too late to renegotiate the SPA which explicitly "constitutes the entire agreement of the Parties." Plaintiff has not and cannot sustain any cause of action as to the Sternberg Defendants.

### C. The Parties Fully Briefed Any Dispute Regarding the Sternberg Defendants' Experts.

Finally, Plaintiff spills considerable ink attacking the credibility, conclusions and even the ethics of the experts who authored a report on behalf of the Sternberg Defendants. It would appear that Plaintiff has second-guessed its strategic decision not to engage experts of its own. Nonetheless, by way of its unjustified motion to strike, which the Sternberg Defendants adamantly opposed,

Plaintiff attempted to persuade this Court to ignore these experts. That issue is fully briefed, but Plaintiff continues to beat that drum in its opposition to summary judgment.

Suffice it to say, the expert reports submitted by Steven E. Angstreich, Esq. and Joseph W. Lesovitz, CPA are instructive, appropriate and timely. These experts have reached conclusions that are relevant to at least two important themes: (i) as to liability, that the Sternberg Defendants owed no duty to Plaintiff and complied with their obligations to the Gross Defendants and (ii) as to damages, that the Sternberg Defendants did not profit from this failed transaction. Plaintiff's decision not to engage experts has no bearing on the admissibility of the defendants' unrebutted reports.

## II. CONCLUSION

Bald allegations and distractions. When faced with the facts, Plaintiff comes up empty. Displeased with the evidence and facts, Plaintiff seeks to invent unsupported theories. Displeased with the Sternberg Defendants' expert opinions, Plaintiff seeks to strike those reports. Plaintiff's story is an illusion, but the facts and evidence are clear: there is no evidence to support any claim as to the Sternberg Defendants. Discovery is long over. Depositions are completed. Plaintiff had every opportunity to make its case, but insurmountable holes remain. In fact, Plaintiff's omissions jump off the page. In its opposition, when flagged for its failure to point to a single misrepresentation attributable to the Sternberg Defendants before Plaintiff signed the SPA, Plaintiff again comes up empty. That evidence does not exist.

The Sternberg Defendants' Motion for Summary Judgment provides a clear picture of the frailty of Plaintiff's claims. Nothing in Plaintiff's Opposition proves otherwise. Plaintiff is bound by the contract it elected to sign without the assistance of counsel. Likewise, Plaintiff is bound by its decision not to bolster its position through expert opinion.

In light of the foregoing, and as more fully set forth in their Motion, the Sternberg Defendants respectfully ask this Honorable Court to grant their Motion for Summary Judgment and dismiss Plaintiff's action against them with prejudice.

Respectfully submitted,

By: */s/ Joseph Ross*
Seth L. Laver, Esq. (PA ID #094518)
Joseph Ross, Esq. (PA ID #318039)
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
Telephone: 267-519-6800
slaver@goldbergsegalla.com
jross@goldbergsegalla.com
*Attorneys for Defendants Manfred Sternberg, Esquire and Manfred Sternberg & Associates, P.C.*

Dated: November 6, 2024

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below he caused to be served a true and correct copy of the foregoing via ECF upon all counsel of record, and/or email upon the following:

Gary P. Lightman, Esquire
Glenn A. Manochi, Esquire
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com
*Attorneys for Plaintiff*

Samuel Gross
a/k/a Shlomo Gross
78 Buckminster Road
Rockville Centre, NY 11570
charltonholdinggroupllc@aol.com
publicdiamonds@gmail.com
Scg1212@gmail.com
Samrosinc@icloud.com
*Defendant Pro Se*

Gary Weiss
437 1st Avenue
Elizabeth, NJ 07206
wgary4109@gmail.com
monipair@aol.com
*Defendant Pro Se*

Daphna Zekaria
8 Westminster Road
Syosset, NY 11791
Dzandpeanut@aol.com
*Defendant Pro Se*

Dated:  November 6, 2024          By:   */s/ Joseph Ross*
                                        Seth L. Laver, Esq. (PA ID #094518)
                                        Joseph Ross, Esq. (PA ID #318039)
                                        1700 Market Street, Suite 1418
                                        Philadelphia, PA 19103-3907
                                        Telephone: 267-519-6800
                                        slaver@goldbergsegalla.com
                                        jross@goldbergsegalla.com
                                        *Attorneys for Defendants Manfred Sternberg, Esquire and*
                                        *Manfred Sternberg & Associates, P.C.*

9