# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## CIVIL ACTION
## No.2022-cv-00688 (JMY)

**AMERICAN ENVIRONMENTAL ENT**                    REC'D NOV  6 2024
**D/b/a The safetyhouse.com**
    **Plaintiff, TSH.**
**vs.**
**Manfred Sternberg, Esquire**
**Sam Gross, CHG**
**GARY WEISS. Pro-Se**
**DAFNA ZEKARIA,Esq.**
    **Defendants**

**Re,**
**PLAINTIFF'S RESPONSE IN OPPOSITION STERNBERG'S**
**DEFENDANTS MOTION FOR JUDGEMENT  AND DEFAULT**
**JUDGEMENT AGAINST AND RESPONSE TO GARY WEISS**
**SUBMISSION, ( ECF , Document 210 )**

  **I, Defendant Gary Weiss will Respond to this Plaintiff's**
**description of events, as the title is naming me as a part of this**
**response by Plaintiff, TSH.**

## GENERAL COMMENTS IN RESPONSE TO STERNBERG MSH

  The Plaintiff " Twisted" all the paragraphs in SPA meaning, the
**THE SALE AND PURCHASE AGREEMENT ( SPA). Plaintiff ignores**
**Paragraphs 9, 10, 11, & 18, which describes Plaintiff's**
**responsibilities. The facts are in contrast to Plaintiff's theories to**
**the real events and agreements between Buyer, Charlton Holding**
**Group & Plaintiff, The Safety House. Plaintiff is creating 2 new**
**Phantom characters, 1 is the "Mastermind", and the 2nd is the**

"Escrow AGENT",. And commits yet again a new Perjury while creating an objection to Defendant's Expert Witness.

The Mastermind is not a description of a villain, or a Criminal, nor does the Plaintiff lay out the plan of the Mastermind, on the contrary, the Plaintiff, Daniel J. Scully in his deposition, claims that he did not communicate with " Sternberg The Mastermind", prior to his decision to make a purchase, or Defendant Weiss, prior of paying money, or sign the SPA and Agree to the SPO, nor was he solicited by Sternberg, or Weiss, or any of the Named Defendants, and did not consult with an Attorney or anybody, because "he has done many deals like that before". The Plaintiff's Lawyer, Gary Lightman, Esq. Shortcoming ( negligence ) is compounded by not deposing those People that Masterminded the Sale of Covid Test Kits to the Plaintiff, the so called " Brokers".

The " ESCROW AGENT" is a new Character invented by Attorney's Counsel, Gary Lightman, Esq., Plaintiff now claims that Attorney Sternberg, is an "Escrow Agent", which is very particular profession, nowhere in all the documents and agreements between Seller, CHG, Gross, and Buyer TSH, Scully, was mentioned an "Escrow Agent". Attorney Sternberg never presented himself as an " Escrow Agent", did not present an Escrow Agreement to be part of this deal, Plaintiff, the Buyer, Daniel J. Scully never asked for an "Escrow Agent" to be part of the deal, Defendants Sternberg & Gross never offered an " Escrow Agent", no fees were ever charged on account of the ESCROW AGENT.

Plaintiff is referencing his claim on the SPA, and the SPO, which are the agreed upon only agreement between Buyer and Seller, see paragraph 18 of the SPA. The SPA consists 18 Paragraphs, see document 180, ECF, Exhibit 10F, none of the Paragraphs in the SPA, Document 180, ECF, Exhibit 10L-10F has a reference to the "Escrow Agent". Paragraphs 4 & 5 of the SPA, unambiguously describes payment is made through "Seller's Attorney Escrow

Account IDENTIFIED in Exhibit B, not to the "ESCROW AGENT", and not implying that Exhibit B is an Escrow Agreement, just info about the destination of the money to be paid by Buyer TSH, so that the Attorney for the SELLER can verify money received for the order, that it is free and clear and Good funds. Nor is the Attorney for the "Seller" Manfred Sternberg is the "Enforcer" of this agreement, or a Guarantor of any kind to the Buyer. Paragraph 5 of the SPA is a repeat of Paragraph 4 " Wire to be made to Seller through the Seller's Attorney Escrow Account identified in Exhibit B", not to the account of the" Escrow Agent ".

Plaintiff's claims that the BILL OF SALE is fraudulent, however the Bill of Sale is only a receipt and acknowledgment for the payment for the goods purchased, which was given to Plaintiff the Buyer, and describes the sale, not as conditions for the sale or another item that was purchased in addition to the Test Kits, and can be generated any time by the seller, and so it was.
 As per Paragraph 6 of the SPA, " and Seller will deliver the Goods to a common carrier with instructions to deliver the goods", Plaintiff claims that the Merchandise was not placed on the truck of the Common Carrier is a LIE, and unambiguously the Test Kits were loaded on the Common Carrier's truck on Available Movers truck on February 7, 2022, documents evidencing the delivery of 365 boxes containing the Test Kits picked up by the Common Carrier, Available Movers on February 7, 2022, and having 365 boxes with the merchandise in their possession, each of those boxes were confirmed by Available Movers on February 8, 2022, in details of each box separately, copies of that Email Confirmation of those 365 boxes in the possession of the Common Carrier is detailed, and is evidenced Exhibit 4a-4h, attached., which was also documented in Document 180 ( ECF), as Exhibit 4a-4H, on 07-12-2024. Plaintiff's attorney, Gary Lightman, Esq., failed to depose the Available Movers, as the fact that they picked up the merchandise, will contradict  Plaintiff's claim of induced fraud, neglecting to

perform his due diligence in deposing of all the relevant Witnesses. Plaintiff compounded his ( miss actions), by not bringing his own Expert Witness to any aspect of his case, knowing that such report will contradict in entirety his wild Conspiracy Theory. A Theory of "Induced Fraud", "Escrow Agent", "not delivered to the Common  Carrier",  or to whom to release money and when, which will contradict  all his reckless accusations at Defendant Weiss & Defendant Sternberg.

  Plaintiff ignores Paragraph 9, 10, 11, & 18 of the SPA, regarding his responsibility about the Safety of Buyers merchandise once it is placed on the truck of the Common Carrier, and being the owner of that merchandise at that point in time.

  Plaintiff ignores Paragraph 18, which unambiguously describes the SPA and the SPO as the only agreement governing this transaction. Plaintiff's claim that the title did not transfer as per Paragraph 6 of the SPA, is a Lie, as the loading of the merchandise, the 365 BOXES, the Covid Test Kits, was done on February 7, 2022, by the Movers company, Available Movers, through it's Employees ( 3 Men, 1 driver), and confirmed by Available movers, in Exhibit 4a-4b, attached. Email dated February 8, 2022.

  As for the "Claim" by Plaintiff that the Expert Witness opinion did not name Attorney Sternberg as the "Escrow Agent", is because Sternberg was not the "Escrow Agent".


  The Defendant Sternberg  filed the timely Expert Witness Opinion as he understood regarding the time, as August 16, 2024, and even if it is in dispute as far as the Date Deadline, it is still a Valid Document, and Factually Accurate with real Expert Witness Opinion, done by a lawyer that was engaged numerous times to date as Expert Witness, and a lawyer practicing Law for over 50 years . Plaintiff compounded his Effort to strike down the Expert Witness opinion Report, through FRAUDULENT ACTION by Plaintiff Daniel J. Scully and his Counsel, Gary Lightman. The FRAUD by Plaintiff was enacted after the August 16, 2024

deadline to submit the Expert Witness Report, Plaintiff Scully makes a Phone call and sends Email to the law Firm of WEIR GREENBLATT PIERCE LLP on August 27, 2024, 11 days after the Presentation of the Expert Witness Report on August 16, 2024, see document 210-1 ,ECF, "EXHIBIT 1", which triggers the Billing department of the Law firm of WEIR GREENBLAT PIERCE to send an invoice to Plaintiff Scully, TSH. Scully claims he was a customer of that Law Firm Several years prior, ( Unsubstantiated ) Plaintiff on August 27, 2024 is carefully asking info about "Issues", by making a phone call and sending Email to law firm Weir Greenblat LLP, and not in the regard of the present subject Case, than Plaintiff, Daniel J. Scully makes a Payment of the $420 Bill on 10-1- 2024, for an invoice, that WEIR & Partners sent to him for reviewing the call and Emails, that same day the Law Firm of WEIR & Partners LLP, realizes the TRICK that Scully Played on them, they sent him a Refund for the Erroneous Bill of the $420, see Document 210-1 ECF, Exhibit "3", nowhere acknowledging Daniel J. Scully as a customer in the present and giving him $420 refund. And at this Time the Plaintiff claims that he is a customer of the Law Firm of WEIR & Partners LLP, as a matter of fact Scully personally or his company TSH is NOT in the midst of a Legal Case, or contract, (Retainer) which the law firm of WEIR LLP is Handling for Plaintiff currently or in the last several years, and therefore the Expert Witness report submitted by Defendant Sternberg to the court <u>should not be barred</u> because of conflict of interest. The Expert Witness opinion is damning for TSH, Plaintiff Daniel J. Scully, that is reason for their objection to it. Plaintiff Daniel J. Scully with his lawyer are trying to <u>Pull The Wool</u> over the eyes of the Honorable Judge Younge. !!

## <u>PLAINTIFF HAS ESTABLISHED IT'S FRAUD CLAIMS, (NOT)</u>

Plaintiff is **twisting** All the facts it claims Against Plaintiff Sternberg and Weiss, Plaintiff was offered a **Full Refund** several

times, the last time was  in April of 2024, see Document 180, ECF, Exhibit 7, also copy attached here as Exit 7, and on each occasion Plaintiff could not agree on the amount and terms, nor would agree on  it's own Liability in cancelling the order Prematurely, asking for a refund in order to use the loan it got from the government without Having to pay it back.  Plaintiff using <u>fraudulent</u> action to have the Judge dismiss the Expert Witness report, additionaly Plaintiff's Attorney was disruptive in it's client deposition on 07-23-2024 by Sternberg Defendant's Lawyer, with over 40 incidents of answering the questions submitted to Plaintiff Daniel J. Scully instead of letting the deposed, his client Daniel J. Scully, All throughout the deposition Attorney Lightman was jumping-in and giving the answers instead of the deposed Daniel J. Scully, and Giving Scully the Answer to be answered. ( See Document 201-1 (ECF) Exhibit L, dated 10-1-2024 , pages, 339-341, p342, p343, p344, p378, p391, p392, p394, p398, p399, p400, p402 line10-12, 404 line 11-12, 413 line 16-17, 421 line 14-15, 425 line 22-23, 429 line 19-19, 430  line 1 and 10-15, 431 line 15-19, 456 line 3-4, 458 line 4-7, 459 line 24, 460 line 16-19 and 21-24, 461 line 4-9, 463 line 5-8, 465 line 3, 468 line 22, 469 line 12-14 and 16-24, 470 line 1-12 and 17 & 20, p473 line 15-16 &18 & 21-22, p476 line 18-21, p428 line 16-19, p481 line 12, p484 line 22-23, p491 lines6 & 20 & 23-24, p492 lines15-22, p524 lines 21-24, p526 lines 21-24, p536 line 22, p537 lines 12-13 & 15-16, p540 lines 10-11, p544 Lines 8-9, p544 lines 23-24, p545 lines 2-4, p546 lines 12-13, p547 lines6-12 & 16-20, ( Those are not Objection by Plaintiff's Lawyer)

Plaintiff's Claims that TITLE did not transfer to the Buyer as per Paragraph 6 of the SPA, is a total fabrication, the Title Transfer in this SPA, is referenced to the point where responsibility of Ownership of the agreed upon merchandise will happen, which is at the point that it was loaded to Available Movers' truck which happened on February 7, 2022, as confirmed by documents that the Common Carrier sent through Email, on February 8, 2022,

Exhibit 4a-4h, attached. And cannot be compared to a Title transfer of a House or a car, as Covid Test Kits do not come with a Title, and are manufactured to be consumed and discarded, Nor are 365,000 Test Kits were sold to Sam Gross, CHG, come with 365,000 title certificates.

   An Escrow account was not required to accomplish this sale, escrow account details was meant as an instruction of destination of the Bank Details of the Seller's Bank. The page info for this transaction, which is a common manner which companies give to their clients for payment instructions was handled by Sellers Lawyer Manfred Sternberg, and was made in order to ensure that Good Funds were paid to the Seller. Plaintiff is trying to deny responsibility for the Merchandise once it is loaded on the Common Carrier"s truck, as per paragraph 6, and trying to escape the clear language of the SPA, the only signed agreed upon agreement between the Buyer & Seller.

## GARY WEISS SUBMISSION IS ( NOT ) IMPROPER


   Plaintiff's claim that Default was entered on Gary Weiss, a default order on ASOLARDIAMOND LLC, was due to the law in PA that requires a Lawyer to represent a corporation or an entity in a lawsuit, which was entered against ASOLARDIAMOND LLC, because of that entity to secure funds to hire a lawyer, but the court did not establish a liability against that LLC, nor did the court prevent Gary Weiss to be represented and heard during the current Discovery of facts, Gary Weiss at present represent's himself Pro-Se, and was recognized by the court and the Honorable Judge Younge in the appearance of Gary Weiss at the proceedings of the Status Conference in court on July 11, 2024, nor could the Plaintiff bring forward any Viable claim against Gary Weiss that will support any liability of Weiss to Plaintiff TSH, nor can the TSH bring any viable claim against all Defendants for violation of any Agreements made between Plaintiff and any of

the Defendants.

This transaction between Plaintiff TSH and Defendant CHG, Sam Gross, is a dispute of a commercial transaction between 2 parties, The Safety House, and Charlton Holding Group, not any other Entity or person, Gary Weiss never received even 1 Dime From TSH, nor did it keep Any Money from the proceeds of it's sale to Charlton holding Company, by giving a Full refund of this transaction, nor is the Defendant CHG, Sam Gross have any claims against Weiss, and confirmed the refund and affirms that the transaction has ended and there is no further Grievance by CHG, Sam Gross against Weiss Defendant. Nor is Defendant Sternberg denying that full refund was given by Weiss to His Client already over 2 years ago.

Plaintiff continues to Bark at Weiss, alleging Conspiracy Theories, without any Viable evidence, knowing full well that Weiss already gave a full refund on it's part, in Weiss's and CHG's transaction, nor is Defendant CHG, Sam Gross denying that some money or merchandise is owed to Plaintiff. And as a Matter of fact Sam Gross tried to settle with Plaintiff as late as April this year 2024, with the Mediation of Weiss, as requested by Plaintiff, however Plaintiff kept presenting obstacles in each round of communication, negotiations.


Weiss Defendant ask the Court to dismiss Plaintiff's request for Default Judgement and Summery Judgement against Weiss, because Plaintiff  The Safety House (TSH) has not proven any viable cause of action against Defendant Weiss and, or affiliated ( Alleged ) company.

The evidence is clear, Weiss did not have any agreement with Defendant The Safety House, Weiss did not " induce " Plaintiff to enter an Agreement to buy the 151,200 Covid Test Kits, nor sign any Agreement with Plaintiff, or any of the Defendants, nor with any Third party Plaintiffs.

Plaintiff, The Safety House and the other Defendants, Charlton

Holding Group, ( CHG ), the Sternberg Defendants, Dafna Zekaria Esq., could NOT bring forward any viable cause of action against Weiss Defendant, nor are any of them, had any contract with Weiss, which Weiss violated, nor are they claiming any proven damages Weiss caused them. Defendant Weiss gave a FULL REFUND of all monies it received regarding this transaction to it's customer Sam Gross, CHG. Therefore Plaintiff's request that the court, Judge Younge enter a Summery Judgement or Default Judgement against Weiss defendant is FAULTY and should not be ordered by the Honorable  Judge Younge against Weiss.

   Weiss gave a FULL  Refund of all the monies it received in connection with this transaction of Covid Test Kits, Undisputed, the refund was confirmed by Defendants Charlton Holding Group and it's lawyer Manfred Sternberg Defendants, back in 2022, over 2 1/2 years ago.   The Weiss Defendant Respectfully request the Court to enter an order dismissing Plaintiff's Request for Summery Judgement and Default Judgement against Weiss. There was no Financial benefit to Weiss from this transaction between Plaintiff the " Buyer" and "Seller"  Defendant Charlton Holding Group, Sam Gross. Defendant Weiss acted in a way that could have resulted in the Delivery of the merchandise to Plaintiff. The Merchandise of Covid Test Kits, were Substituted ( Switched ) into 20 Lbs of Rice in each box, similar looking Boxes during the period that they were left with the truck of the Available Movers, Plaintiff at that time had the title and the responsibility to it's merchandise, but preferred to deny it's Responsibility to pick up or secure and insure his merchandise. Given that I gave collateral to CHG, I decided to go pick up the Test Kits and deliver it myself to all recipients, in order to receive my collateral back from Sam Gross, once I picked up the Boxes, 365 of them and drove away with all the boxes, taped and sealed. After I arrived back to New Jersey with the  boxes to re arrange the boxes for delivery by myself, I opened them and discovered that the boxes now contain rice. When I called Sam Gross to inform him that there are no more Covid Test Kits in the boxes,

Sam Gross told me that the FBI is on the case already, and to wait for them to contact me.

The Plaintiff continues to Allege misconduct, fraud claims that cannot be substantiated of wrongful conduct by Weiss.

The Plaintiff is blaming the whole world, except himself, and does not want to complete the transaction.

Plaintiff however Managed to buy and fulfill the order that he had from his customer for 151,000 Kits, for just about the same price that CHG charged him, and shipped that order to his customer, as per the words of Plaintiff Scully own testinony, see Document 201-1 ECF, document L, pages 517-518 line v16-19, " I provided all of them, yeah. They got them all", line 19, " Yeah, they got all their product". Plaintiff did not sustain a loss, nor did sustain damages, as HIS customer continued to do business with him since that time, see Docu 201-1, Exhibit L, p533 line 4-7,.

Plaintiff cannot ask for Punitive Damages from Weiss, as Weiss did not cause any unlawful action towards Plaintiff, nor did Plaintiff suffered any Financial loss..

Weiss is asking to be dismissed from this case at present time after participating in the lengthy discovery of over 2 1/2 years, and 2 depositions, for lack of Contract with Plaintiff before Plaintiff sent Money to his Seller Charlton Holding Group on February 21, 2024. Plaintiff did not hear about Weiss till 6 months after that date, Weiss did not do any Wrongful Conduct towards Plaintiff. Plaintiff till today could not bring any viable claim against Weiss defendant. Weiss will continue to be ready to defend it's position till the conclusion of this hostile and Malicious act against Weiss.

Fact Matter, evidence is necessary for allegations of fraud by Weiss, or by violating any contract with Plaintiff, or any party to this lawsuit. Viable claims against Defendant Weiss have to be backed  by  undisputed Evidence.

Defendant Gross does not deny his liability, he only disputes the allegations of fraud and disputes the amount of his liability at this time.

Fraud or unlawful  claims against Weiss by Plaintiff, are in contrast to the fact that Weiss Gave a Full Refund of all the monies immediately in Feb-Mar of 2022 over 2 1/2 years ago, money it received in this transaction.

## GARY WEISS SUBMISSION IS ( NOT) IMPROPER AND DOES PRECLUDE JUDGEMENT AGAINST DEFENDANT

Right away in this section Counsel for Plaintiff starts with False Facts ( actually lying to the Honorable Judge Younge ), citing document 141 (ECF), which was terminated by the Court, the honorable judge Younge, there was not an order issued by Judge Younge, but there is Plaintiff's order suggestion,  NOT signed by the Honorable Judge Younge,  Exhibit "False 1a-b" submitted ( attached)g. Plaintiff submitted ORDER signed by Judge Youne on November 13- 2023, advising Defendant ASOLARDIAMOND LLC to obtain Counsel, see Exhibit " False 3".


Aaaaaa

The claims by Plaintiff that Weiss defendant was represented by Attorney Zekaria is False, Weiss never Entered into an agreement with Attorney Zekaria, this was actually the Attorney for Defendant Gross, actively defending him in court in the Southern District Court of New York at the time on different case, Defendants Gross & Manfred suggested to sent the balance of payments, after the first deposit of $219,200 on February 1, 2022, was made directly to Weiss, and later payment through the Fraudulent Escrow account of Attorney Zekaria, where she defrauded many of her customers, and Gross will instruct Attorney Zekaria to release part of the Money to Weiss after proof of Merchandise on the truck, on February 7, 2022, the day the common carrier, Available Movers picked up the

merchandise, defendant Gross & Sternberg would not release the money before that, as a matter of fact, Sternberg sent the Balance owed to Weiss 1.9 Million already of February 4, 2022, but Money will not be released till February 7, 2022 at the time of Common Carrier picking up the merchandise. Till to date Weiss got paid only 1,666,200.00 Million dollars from Gross, and is owed over $520,000.00. as verified by Plaintiff in Defendant's Weiss deposition on February 16, 2024, Exhibit "False 4a-b attached, which are from Weiss testimony, deposition of Weiss on February 16, 2024, verified by Attorney Lightman's Math, with accompanying documents in the deposition.

Attorney Lightman continues to lie on page 19 of Document 210 ECF, " he was forced to store the 365,000 test kits that he claims..." Exhibit "False 5", attached, page from Plaintiff's Document 210 ECF, page 19. However that was not the testimony of Weiss, as you can see in Exhibit " False 6" attached which is a page from Document 201-1, page 26,  ECF, a copy of Weiss's Deposition on 02-16- 2024, page 91 lines 14-17.

And in the next paragraph in Document 210, Page 19, last paragraph, which is Exhibit " False 5", attached, Weiss picked up the 365 boxes from Available Movers, so that I can deliver them myself, so I can get back my collateral, the boxes which were taped and sealed, and suppose to contain Covid Test Kits, but drove back to New Jersey to rearrange them for the 4 Recipients, found them to contain rice in each Box, each bag of rice 20 LBS.

Plaintiff next claims that Weiss did not give him any of the $4 million in Diamonds and Gems, and that is true, I gave the Collateral to Gross and Manfred, they ask for Collateral, they are the ones that made payments to Weiss, Plaintiff never asked me for a refund, Plaintiff never made a payment to me.

Plaintiff continues to claim that TSH's money was divided with Weiss, another Lie, the Gross Defendant made payments against merchandise of Covid Test Kits, which he purchased from Weiss.

### RELIEF REQUESTED

Summery Judgement & Default judgement against Weiss is a ridicules request, Weiss did not participate in the agreement Plaintiff TSH had with Defendant Gross CHG,  but Defendant Weiss never promised TSH any Merchandise, never received any payment from TSH, never met or knew the TSH, as matter of fact in Paragraph 15 of the  SPA, the Buyer, TSH ( Plaintiff, Daniel J. Scully ) agrees to "hold  harmless the seller, It's agents, servants, employees, contractors and affilliates, ( "Indemnified parties"), from and against all damages, losses, costs, and expenses". See Exhibit "False 7" a-c

  Till to date Plaintiff could not bring any Viable claims of Weiss's misconduct towards Plaintiff, none, Zero, Zilch. Plaintiff should not get a Summery Judgement on Weiss, nor a Default Judgement, or punitive damages from Weiss, never did Weiss cause any harm or loss to Plaintiff TSH.

   Weiss Defendant gave back all the money it received from this transaction, and than some.


Gary Weiss, Pro-Se
wgary4109@gmail.com
908-5642649

November 7, 2024

EXHIBITS



CHARLTON HOLDING GROUP, LLC

9.  Risk of loss shall transfer to Buyer at the point the product is paid for by Buyer and the Seller is released of all loss guarantees.

10. The Goods shall be sold with the manufacturer's warranty only. Seller makes a warranty of Title to product only when it is paid for by Buyer. Seller makes no other warranty of any kind, express or implied, and any warranty by Seller is expressly disclaimed.

11. Neither Buyer nor Seller shall be liable to the other for any consequential damages, lost profits, cover costs, or punitive or exemplary damages arising out of or related to this Agreement; however if Buyer in any way attempts to circumvent Seller, Seller will be entitled to liquidated damages of $50,000 from Buyer or if Buyer terminates this contract without cause, Seller will be entitled to liquidated damages of $25,000 from Buyer.

12. Seller may terminate this Agreement if Seller determines, in its sole discretion, that Buyer does not have the funds to purchase the Goods, or the Goods become unavailable and all funds deposited with Seller, if any, shall be returned to Buyer.

13. This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to this Agreement.

14. Buyer warrants and represents this transaction is in full compliance with all applicable laws and regulations, including but not limited to Executive Order No. 13224, as amended, the Patriot Act (Public Law 107 56), and any other law relating to the prevention and detection of terrorism and money laundering

15. Buyer agrees to indemnify, defend, and hold harmless the Seller, its agents, servants, employees, contractors, and affiliates (the "Indemnified Parties"), from and against all damages, losses, costs, and expenses (including reasonable attorneys' fees) which they may incur by reason of any breach of the representations and warranties made by Buyer in this Agreement, or any false or misleading representation or warranty in this Agreement or other document provided by Buyer to Seller.

16. Seller and Buyer are independent contracting Parties and nothing in this Agreement shall make either Party the agent, employee, or legal representative of the other.

17. The terms of this Agreement are confidential and may only be disclosed as required by law or to complete the transaction.

18. This constitutes the entire agreement of the Parties and may only be modified by a writing signed by the Parties. Neither Party is relying upon any representation not contained in this Agreement.

*We, the undersigned, with full legal and corporate responsibility accept the agreement this date:*

**Signing Page**

Agreed and Signed By: Daniel J. Scully

CHARLTON SALE & PURCHASE AGREEMENT DATED «DATE»         Page 2 of 8

EXH — FALSE 7q

EXHIBIT 10 of (q)



**CHARLTON HOLDING GROUP LLC**

For and on behalf of Seller,
Charlton Holdings Group, LLC

Authorized Signatory

Name: Mr. Sam Gross

Position: Managing Partner

Date:

For and on behalf of Buyer

Authorized Signatory

Name:  Daniel J. Scully
Safety House
99 Aidan Avenue, Suite 5
Glen Mills, PA 19342

Date: January 21, 2022

EX11   FALSE 7b

/ EXHIBIT NON 1



CHARLTON HOLDING GROUP LLC

## SALE AND PURCHASE AGREEMENT

January 21, 2022

THIS AGREEMENT IS FOR THE SALE AND PURCHASE OF the product identified on the Purchase Order attached hereto and marked as Exhibit A attached hereto (the "Goods"). This Sale and Purchase Agreement is referred to herein as (this "Agreement").

**Seller:** Charlton Holdings Group, LLC, 78 Buckminster Road - Rockville Center, New York 11570, USA (the "Seller") AND

**Buyer:** Safety House, 99 Aldan Avenue, Suite 5, Glen Mills, PA 19342 (the "Buyer") (each hereafter as "Party" and together as the "Parties")

For good and valuable consideration, the Parties agree:

1. Seller shall provide Buyer the Goods listed in Exhibit A for the Purchase Price, provided that Buyer complies with the conditions of this Agreement.

2. Seller agrees to sell to Buyer 151,200 boxes of 2 count iHealth COVID 19 home test kits shall be provided to the Buyer by the Seller for each lot of boxes available for payment as they are ready to be delivered.

3. The Buyer agrees to pay the Seller @ $13.00(USD) per box. Payment upon Invoice as the product lots are ready for delivery, total cost **$1,965,600.00.**

4. The product lots may be located in more than one (1) location or warehouse in various locales in the United States. Immediately after delivering a Purchase Order, Buyer agrees to authorize a wire be made to Seller through the Seller's Attorney Escrow Account identified in Exhibit B for the actual number of boxes of product contained in the Purchase Order.

5. As per the Invoice below (EXHIBIT C), Seller agrees to sell **151,200 boxes** of 2 count iHealth COVID 19 home test kits . The Buyer shall transfer the above-mentioned funds to the Seller's Attorney Escrow Account listed inExhibit B as per each Invoice.

6. Once the transferred funds have cleared in the Seller's account, BILL OF SALE (EXHIBIT D) shall be provided, and Seller will deliver the Goods to a common carrier with instructions to deliver the Goods to the location(s) as directed by Buyer. Title transfer shall happen contemporaneously with funds being released to Seller. Exhibit E attached hereto is incorporated herein as Seller's agreed upon Standard Operating Procedure.

7. Seller agrees to pay commissions, if any, included with rolls and extensions for the duration of this Agreement as per separate written agreement.

8. The Seller agrees to coordinate and pay for common carrier transportation to deliver the Goods from the Seller's warehouse(s) to Buyer at Seller's cost and is included in the purchase price paid to Seller by Buyer hereunder.

EXH FALSEfc 10R 102(a)

USDC, ED of PA                  American Environmental Ent. v. Manfred Sternberg, Esq., et al.                  Friday
No. 2:22-CV-0688 (JMY)                          Deposition of Gary Weiss                          February 16, 2024

Page 90

1   A   They left.
2   Q   Your SUV?
3   A   My SUV.
4   Q   They left.  Okay.  And then what happened?
5   A   And they started to go except that they
6   stopped at the end of the street.  I waited few
7   more minutes.  I thought it's a stop sign or
8   whatever, but they are stopping there and they
9   don't move.  I drove there to the back of the
10  truck.  I came to the driver and asked him, que
11  pasa.  He says, I need a bill of lading.  I said, I
12  don't know what it is.
13  Q   You had not gotten any bill of lading from
14  Sam?
15  A   I never had a bill of lading.
16  Q   From anybody?
17  A   From anybody.
18  Q   At any time?
19  A   At any time.  I don't know what it is.  I
20  said, I gave you the list where you go.  He says,
21  no.  It has to be a form that says bill of lading.
22  Q   And then what did you do?
23  A   I said okay.  Let me call Sam.
24  Q   And then what happened?

Page 91

1   A   Sam said, okay.  I'll send it to you soon.  We
2   wait there like an hour and I called Sam and Sam
3   said, soon, very soon.  And the drivers told me,
4   listen, I spoke to my office, I cannot wait here.
5       MR. HEALEY:  That was Advanced
6   Movers?
7   BY MR. LIGHTMAN:
8   Q   Available Movers?
9   A   Available Movers, yes.  And we have to take it
10  to the hub and when we get the bill of lading, we
11  continue with the delivery.
12  Q   The hub meaning Available Moving and Storage
13  warehouse?
14  A   That's what they said, the hub.  The driver
15  said, I'm going to the hub and once I get the bill
16  of lading and everything else, we will continue
17  with the delivery.  I said okay.
18  Q   Now, when the -- go back for a second.  After
19  you -- these guys -- who was the driver?  Do you
20  know?  Was it Girard?
21  A   I don't think so.
22  Q   So, when they transferred everything in to
23  their own truck, did you talk to Levon and Zadik
24  and say, your truck is empty.  Come get it.  Or did

Page 92

1   you just leave it there?
2   A   No.  The driver left.
3   Q   No.  The driver on the Sunday after you paid
4   the cash and merchandise and they left you with the
5   merchandise, the driver -- you said you parked your
6   SUV and stayed overnight with the goods; right?
7   A   But the driver, also, in the cabby.
8   Q   Oh, the driver stayed, too?
9   A   Yeah.
10  Q   Do you know who that driver was?
11  A   No.
12  Q   So, when they transferred it, he then drove
13  the truck, the empty truck away?
14  A   Yeah.
15  Q   And when the goods were transferred to
16  Available Moving and taken away by them, was there
17  any documentation created?  Did Available Movers
18  give you anything?
19  A   I don't remember.
20  Q   You are loading a million eight worth of goods
21  into Available Movers and they just drove away
22  without leaving you with any documents or receipts
23  that you got it?
24  A   Maybe.  I just don't have it if they did.

Page 93

1   Q   You don't remember?
2   A   I don't remember.
3   Q   And to evidence that you owned these million
4   eight worth of test kits all you had to show for it
5   was this piece of paper, Gary Weiss-5?  There was
6   no bill of sale that they gave you?
7   A   This what they gave me.
8   Q   The only thing they gave you was Gary Weiss-5;
9   right?
10  A   Yeah.
11  Q   And did you ever hear the name Mask and
12  Eldiven before?
13  A   No.
14  Q   2 West 47 Street?
15  A   Never.
16  Q   The New York, New York address?
17  A   I just checked it.  The building does not
18  exist anymore.
19  Q   Right.  The phone number (201) 575-0193?
20  A   There is a phone number, too.
21  Q   That's the phone number; right?
22  A   Yeah.
23  Q   Does that match the one in your phone?
24  A   Yeah.  I tried to call several times.  Nobody

EXHIBIT "FALSE 6"

claim to have acquired any Test Kits, underscores Sternberg's repeated failures to comply with his escrow duties under the SPA.

It even is questionable whether the Weiss Defendants ever purchased any Covid test Kits at all. Weiss produced a one page document which he claimed was a Bill of Sale from "Mask & Eldiven" for his purchase of 365,790 Covid Test Kits. *See* Plaintiff's Exhibit P-9 accompanying the TSH MSJ. But the alleged seller of the test kits (Mask & Eldiven) has no Internet presence, and cannot be located or reached, and the address Weiss shown on P-9 is a vacant building.

Gary Weiss also gave two inconsistent and conflicting stories under oath in this case, about the 365,790 Test Kits he claims he obtained.

The Gary Weiss first story under oath: In his verified Answer to the Amended Complaint that he filed [ECF 105], *see* Exhibit P-18 accompanying the TSH MSJ, Weiss claimed under oath that when the Stenberg Defendants and the Gross Defendants failed to supply him with any Bills of Lading for delivery of the Test Kits, he was forced to store the 365,790 Test Kits that he claims he bought, with Available Moving & Storage ("AMS"), but that when he went to AMS to pick them up, they were no longer on the truck and "could not be located." *See* Plaintiff's Exhibit P-18, the Answer of the Weiss Defendants filed to the First Amended Complaint [ECF 105], at ¶¶ 172-183.

The Gary Weiss second story under oath: In his sworn deposition conducted on 2/16/24 (*see* Exhibit P-19 accompanying the TSH MSJ), Weiss testified under oath that he picked the Test Kits up from AMS, but when he drove back to his place in New Jersey, he claims he discovered that someone had replaced all of the 365,790 Test Kits with rice. *See* Exhibit P-19, 2/16/24 Weiss deposition, at Tr. 102:1-107:19.

*EXHIBT "FALSE 5"*

**Page 81**

1  Is that right?
2  A. Right.
3  Q. On receiving that money, what did you do with it
4  next?
5  A. I cashed most of it.
6  Q. And when you say you cashed most of it, what do
7  you mean by that?
8  A. I take out, took out cash transactions.
9  Q. So you took cash home from the bank?
10 A. Yeah.
11 Q. Did you pay any portion of that cash you took to
12 Levin and Zadok?
13 A. Well, as I told you before, on February 6th, I
14 finalized to pay to Levin and Zadok. So the answer is
15 no.
16 Q. On February 6th, how did you pay them?
17 A. Well, let me make a correction. The payment of
18 $219,000 was on February 1st, right. So I had that
19 money available. And so this money, the first part
20 probably was going into the payment that I made to
21 Levin and Zadok for the total that I agreed to pay
22 them, which was about $1.8 million.
23 Q. So it's your testimony that you would have paid
24 the $219,240 that you got on the 1st of February 2022
25 to Levin and Zadok?

**Page 82**

1  A. Well, I made a comment and I said that probably
2  this money went part payment towards the total
3  payment, yes.
4  Q. What day did you pay them?
5  A. I paid them in two parts. One part was on,
6  probably on February 4th and one part on February
7  6th.
8  Q. Do you remember how much you paid on each of
9  those days?
10 A. I believe on February 4th, which was a Friday, I
11 think, I paid them $400,000. And the balance I paid
12 them on January 6th ---.
13 ATTORNEY LIGHTMAN:
14 February 6th.
15 THE WITNESS:
16 I'm sorry, February 6 --- yeah, I'm not
17 sure, but that's what I remember.
18 BY ATTORNEY ROSS:
19 Q. Would you have paid them out of this account
20 reflected in GW-8?
21 A. No.
22 Q. How would you have paid them?
23 A. I paid them mostly with cash and jewelry. They
24 did not agree to take any other form of payments.
25 Q. You say that your initial deposit to them was a

**Page 83**

1  diamond ring?
2  A. A diamond ring, which I had, yeah.
3  Q. Did you get that back after you paid them ---
4  A. Yes.
5  Q. --- cash? When did you get that back?
6  A. I got it back on Friday of February 4th.
7  Q. Do you remember how much that ring was worth?
8  A. It had an excess of $5,000.
9  Q. When you made the deal with --- when you
10 finalized the deal with Levin and Zadok for how much
11 you were going to pay them and had then finalized the
12 deal with Gross of how much he was going to pay you,
13 how much did you expect to make in profit?
14 A. Well, it's a very simple math. From the total
15 price, which was 2.1 million, or whatever the invoice
16 was, minus what I paid them, which is 1.8 million.
17 So the exact numbers are on an invoice that --- I
18 would say in excess of about $300,000. Yeah, that's
19 what I think it is.
20 Q. And what did you actually end up making off of
21 the transaction at the end of the day?
22 A. Well, right now I didn't get yet paid for the
23 balance, which is another almost $200,000.
24 Q. So are you saying Mr. Gross owes you $200,000?
25 A. Yes.

**Page 84**

1  Q. As we sit here today, you made about $100,000 off
2  the deal because there's this 200 that's outstanding
3  in a balance owed by Mr. Gross.
4  A. No. What I said that my purchase of the test
5  kits was a little bit in excess of 1.8 million. I
6  got paid from Gross, 1.66, 200, $1,066,200. So the
7  balance is almost $200,000 that Mr. Gross has to pay
8  me.
9  Q. Yeah. Until he pays you that, you've made about
10 $100,000 where you expected to make $300,000.
11 Is that right?
12 A. Let's make a correction. Mr. Gross owes me
13 almost $500,000. I told you I have to get the
14 invoice. I'll give you an exact number, 2.19,
15 $200,000. If we have a calculator, I can tell you.
16 I'll get a calculator. Let me just do it properly
17 with numbers because I don't have the invoices in
18 front of me. I'll get you the numbers in a minute.
19 Q. You're using the calculator on your smartphone?
20 A. You have a different calculator here?
21 Q. No, I'm just asking, just for the record.
22 A. Yes.
23 Q. I can see that you're using your phone, but I'm
24 just saying ---.
25 A. Yes, calculator. Right now, it's going to be a



ESQUIRE
DEPOSITION SOLUTIONS

"
FALSE 4aᴺ

Page 85

1  calculator. So okay.
2  We're going to have 365,000 times --- I have to
3  check really how much I had to pay Levin and Zadok.
4  The number is on a receipt that they gave me, and
5  maybe Mr. Lightman will find it before so we get the
6  correct number. So I don't want to give you just all
7  kind of guesses, you know, without numbers. I'm sure
8  you guys have it. So we're going to be exactly for
9  the record.
10  ATTORNEY LIGHTMAN:
11  Let the record reflect, I'm handling
12  handing the witness ---
13  THE WITNESS:
14  Okay. What is the number there?
15  ATTORNEY LIGHTMAN:
16  --- Gary Weiss 5.
17                                   ---
18  (Whereupon, Weiss Deposition Exhibit 5,
19  Invoice of COVID Test Kits, was marked
20  for identification.)
21                                   ---
22  THE WITNESS:
23  Okay.
24  So $1,810,660. Okay. Okay.
25  Now, I hope I didn't make a mistake

Page 86

1  here.
2  BY ATTORNEY ROSS:
3  Q.Well, walk us through the math you did.
4  Q.Okay.
5  What I billed Charlton Holding Group, Shlomo
6  Gross was $2,190,000 minus what he paid me is
7  $1,666,200 will leave a balance of $523,800.
8  Q.And that's --- go ahead.
9  A.Yes. Okay.
10  So that's the balance from Charlton Holding
11  Group. Okay. My sale to Charlton Holding Group was
12  billed at $2,190,000 minus what I paid to this
13  gentleman for their merchandise to Levin and Zadok,
14  which totaled $1,810,660. Will leave a supposedly
15  profit of $379,340. Is this answering the questions
16  that you asked me?
17  Q.Yes.
18  A.Okay.
19  Q.So as of today, Mr. Gross still owes you
20  $523,800?
21  A.800, correct.
22  Q.And in this --- strike that.
23  Let's check that when Levin and Zadok brought the
24  truck of COVID tests to the meeting place with
25  Available Movers on that day that you transferred

Page 87

1  them over from one truck to the other. Remember that
2  testimony earlier?
3  ATTORNEY LIGHTMAN:
4  February 6th.
5  THE WITNESS:
6  Okay.
7  Yes and no. They brought the truck not
8  at the final place where Available Movers move picked
9  up the merchandise. The delivery to me was made on
10  Sunday in the evening, which was February 6th. The
11  pickup from Available Movers was on February 7th in
12  the morning.
13  BY ATTORNEY ROSS:
14  Q.So you stayed with the truck that night?
15  A.Exactly.
16  Q.And then Available Movers came that morning?
17  A.Yes.
18  Q.They weren't there at the same time as Levin and
19  Zadok?
20  A.Exactly. They ---.
21  Q.But they came to the same place that Levin and
22  Zadok had dropped the truck off?
23  A.No. I said I've moved from that place to the
24  Urbanovich straight where ---.
25  Q.You moved the truck Levin and Zadok dropped off?

Page 88

1  A.I told the truck driver let's move to a place
2  where he can park and another truck can park.
3  Q.Okay.
4  Before Levin and Zadok, how did they --- they
5  sent a truck driver. They were not there on the 6th?
6  A.On the 6th, they came. They were in one car.
7  The truck was in another car. I made the final
8  payment to them. They left me with the truck and the
9  driver.
10  Q.Before they left, did you take a look at the test
11  kits?
12  A.Yes.
13  Q.How many?
14  A.I don't remember. Several boxes. Not kits.
15  Several boxes.
16  Q.So when you say boxes, you mean a box with many
17  kits in each box?
18  A.Yes.
19  Q.Did you open any of the kits?
20  A.The kits themselves? No.
21  Q.Did you shake them up or did you get --- did you
22  try and get a sense of whether there was a test kit
23  in there, in any of the test kit packages inside the
24  boxes?
25  A.I don't remember what I did. I just remember



"FALSE 4 b"

Case 2:22-cv-00688-JMY   Document 143-7   Filed 12/21/23   Page 1 of 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMERICAN ENVIRONMENTAL     :
ENTERPRISES, INC., d/b/a         :
THESAFETYHOUSE.COM,       :

                             :         **22-cv-0688-JMY**

                             :

        v.                     :

                             :

MANFRED STERNBERG, et al.,     :

                             :

## <u>ORDER</u>

**AND NOW**, this 13th day of November 2023, upon consideration of Norris McLaughlin, P.A.'s (hereinafter "Movant" or "Norris McLaughlin"), Motion to Withdraw as Counsel for Third Party Defendants Gary Weiss and ASOLARDIAMOND, LLC, d/b/a ASOLAR, LLC, and any response thereto, it is hereby **ORDERED** as follows:

1. The Motion to Withdraw is **GRANTED**; and

2. Defendant ASolarDiamond LLC, d/b/a ASOLAR LLC is **ORDERED** to obtain counsel within thirty (30) days or risk the Entry of Default.

3. The underlying case is **STAYED** pending the expiration of the thirty (30) days in order to give Third-Party Defendants an opportunity to secure new counsel.

4. All Motions to Compel Discovery by the Plaintiff are **DENIED** without prejudice.

**IT IS SO ORDERED.**

                                       **BY THE COURT:**

                               */s/ John Milton Younge*
                               **JUDGE JOHN MILTON YOUNGE**

"FALSE 3"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMERICAN ENVIRONMENTAL ENTERPRISES, INC., d/b/a THESAFETYHOUSE.COM** | : : : : | |
| **Plaintiff,** | : : | **CIVIL ACTION** |
| **v.** | : : : | **No. 2022-cv-00688 (JMY)** |
| **MANFRED STERNBERG, ESQUIRE, and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SHLOMO GROSS a/k/a SAMUEL GROSS, and GARY WEISS, and ASOLARDIAMOND, LLC a/k/a, ASOLAR, LLC, and DAPHNA ZEKARIA, ESQUIRE, and SOKOLSKI & ZEKARIA, P.C.** | : : : : : : : : : : : : | |
| **Defendants** | : | |

## ORDER GRANTING DEFAULT AND FINAL JUDGMENT AGAINST DEFENDANTS ASOLARDIAMOND, LLC a/k/a ASOLAR, LLC and GARY WEISS

AND NOW, this _____ day of _____, 2024, this matter having been opened to the Court upon the motion of Plaintiff American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM, for Entry of Default and Final Judgment (the "Motion") against Defendants ASOLARDIAMOND, LLC a/k/a ASOLAR, LLC, and Gary Weiss (collectively, the "Weiss Defendants"), and the Court having reviewed any opposition to the Motion, and the Court having held a hearing on the Motion and for good cause it is hereby:

**ORDERED** as follows:

1. The Motion is GRANTED.

2. The Weiss Defendants' Answer to Plaintiff's First Amended Complaint with Affirmative Defenses and Cross-Claims [ECF 105] is hereby stricken as of record with prejudice.

*EXHIBIT "FALSE 1"*

3.      Default and final judgment be and is hereby entered in Plaintiff's favor against Defendants ASOLARDIAMOND, LLC a/k/a ASOLAR, LLC and Gary Weiss, individually, jointly and severally, in the amount of $1,965,600.00, plus Plaintiff's attorney's fees and costs, and interest at the judgment rate on all amounts from the date of this Order through the time the judgment amount is paid in full.

BY THE COURT:

_____
JOHN MILTON YOUNGE, U.S.D.J.

EXHIBIT "FALSE 1b

Gmail - Gems and settlement                                                                      7/5/24, 4:03 PM

 **Gmail**                                           Gary Weiss <wgary4109@gmail.com>

_____

## Gems and settlement.

5 messages

_____

**sam gross** <charltonholdinggroupllc@aol.com>                     Mon, Apr 1, 2024 at 9:35 AM
To: Gary Lightman <garylightman@lightmanlaw.com>, Gary Lightman <ltag8r@me.com>, Gary Weiss
<wgary4109@gmail.com>

    Dear Mr Lightman,
    We have spoken number of times and per your request to resolve this dispute I had shown out most will to do so.
    You had requested my proposal, which I handed over to you. And since then all we have done was bicker and
    argue and avoid the subject on hand.
    Should you still wish to resolve the matter ? Kindly submit a counter proposal.

    Best regards,

_____

**Gary Lightman** <garylightman@lightmanlaw.com>                     Tue, Apr 2, 2024 at 11:38 PM
To: sam gross <charltonholdinggroupllc@aol.com>
Cc: Gary Weiss <wgary4109@gmail.com>, GARY LIGHTMAN <ltag8r@me.com>

    SETTLEMENT COMMUNICATION

    Sam,

    In response to your below email, and as we previously informed you:

    My client's first choice is to get cash from you.

    My client's second choice is to get real (not lab) diamonds and/or gold from you that when sold, will generate at
    least $2 million in cash.

    If you are interested, let's talk.

    So there is no misunderstanding or miscommunication, please note that unless and until may client actually gets
    his money back, we have been instructed to proceed forward with the lawsuit.

    thx

    PS, still waiting to hear from the attorney you said you were hiring, pls advise, thx

_____

**Gary Weiss** <wgary4109@gmail.com>                                 Fri, Apr 26, 2024 at 9:24 PM
To: Pat Healey <phealey@rebarkelly.com>, Cathleen Kelly Rebar <crebar@rebarkelly.com>, Gary Weiss
<wgary4109@gmail.com>, Gary Weiss <monlpair@aol.com>, Sam Gross <samrosinc@icloud.com>, "G. Manochi"
<gmanochi@lightmanlaw.com>, "K. DiTomaso" <kditomaso@lightmanlaw.com>, GARY LIGHTMAN
<ltag8r@me.com>, "Laver, Seth L." <slaver@goldbergsegalla.com>

                                                    EXHIBIT 7

Order for Service 714194                                                                 7/24/23, 10:06 PM



Enjoy the difference with Available Movers & Storage,
reliable moving company in New York NYC.

**Available Movers & Storage**          US DOT #1323278US MC #510368NYDOT #T-36716          Phone7182926500
656 656 E 133rd St,                                                                      Chat online
Manhattan, NY 10020
info@avallablemovers.com                                                                 03/08/22 1:24PM

**A solar**                          **Order for Service**                              **Job # 714194**

9085462649                                                                              Straight-job
                          From **1020 Augusta, Elizabeth, NJ 07206**                    Date02/07/22
monipair@aol.com
                          To **Farmingdale, NY 11735**

**Note: Please be advised this is your final invoice and you understand by agreeing to these charges
you understand the final totalincluding storage is $6,080.09.**

**These Charges are non-refundable.**

| | | | | |
|---|---|---|---|---|
| Pickup | 02/07/228:00AM-9:00AM | | 1 month of storage | $1040.00 |
| Delivery | 02/07/22 | | 1 Week Storage | $1040.00 |
| Job Description | 2 trucks 3 workers | | Basic Handling Fee | $0.09 |
| Estimated Size | 2000.00 cf | | Truck NJ To Farmingdale | $1500.00 |
| Liability & Protection | Released Value | | Truck to NJ/Pa | $2500.00 |
| Job Distance | 108.20 ml | | | |
| | | | Subtotal | $6,080.09 |
| Sales Manager | Gerard | | | |
| Phone | 7182926500 | | **Total Job** | **$6,080.09** |
| Fax | 7182927797 | | | |
| Email | gerard@avallablemovers.com | | | |

**Inventory**

| Item | Qty | Item | Qty | Item | Qty |
|---|---|---|---|---|---|
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |

CON EXHIBIT 4q

*INVOICE PAID IN FULL*

*TOTAL OF $6,080 —*

*# OF BOXES CONFIRMED*



*24 BOXES*

**Note:** Please be advised this is your final invoice and you understand by agreeing to these charges you understand the final total including storage is $6,080.09.

**These Charges are non-refundable.**

| Pickup | 02/07/228:00AM-9:00AM |
| --- | --- |
| Delivery | 02/07/22 |
| Job Description | 2 trucks 3 workers |
| Estimated Size | 2000.00 cf |
| Liability & Protection | Released Value |
| Job Distance | 108.20 mi |
| Sales Manager | Gerard |
| Phone | 7182926500 |
| Fax | 7182927797 |
| Email | gerard@availablemovers.com |

| | |
| --- | --- |
| 1 month of storage | $1040.00 |
| 1 Week Storage | $1040.00 |
| Basic Handling Fee | $0.09 |
| Truck NJ To Farmingdale | $1500.00 |
| Truck to NJ/Pa | $2500.00 |
| **Subtotal** | **$6,080.09** |
| **Total Job** | **$6,080.09** |

### Inventory

| Item | Qty | Item | Qty | Item | Qty |
| --- | --- | --- | --- | --- | --- |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |



*CONF EXHIBIT 4 b*

| | | | | | |
|---|---|---|---|---|---|
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |

123 Boxes



Order for Service 714194

7/24/23, 10:06 PM

| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
|---|---|---|---|---|---|
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. I | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. F | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. F | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. F | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |

*123 Boxes* (handwritten)

*CONF EXHIBIT 41* (handwritten)

Order for Service 714194

7/24/23, 10:06 PM

| | | | | | |
|---|---|---|---|---|---|
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. FL) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box ( | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box ( | | Box (4.5 Cu. FL) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box ( | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | | Box (4.5 Cu. FL) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box | | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. FL) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. FL) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |

*123*

[CONF EXHIBIT / e]

Case 2:22-cv-00688-JMY    Document 214    Filed 11/06/24    Page 31 of 33
Order for Service 714194  Case 2:22-cv-00688-JMY    Document 180    Filed 07/12/24    Page 63 of 79
7/24/23, 10:06 PM

| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 |
| Box (4.5 Cu. Ft.) | 1 | Box (4.5 Cu. Ft.) | 1 | | |

## Local Move Estimate

**Inventory**
Only the items listed are included in the total cost. Any additional items or any additional services added will result in an additional cost. Packing materials are charged separately from the hauling.

**Reservations**
To schedule a date and reserve space on a truck, a deposit of 20% of the total cost of the move is required upon booking. The deposit will be applied to the move and deducted from the total cost. The deposit is refundable up to 7 days prior to your move date. All cancellations must be in writing via e-mail. The deposit can be in the form of Visa or Master Card. By providing us with your credit car  the terms and conditions of this contract.

**Form of payment**
20% deposit due upon booking via Visa or Master Card, 40% due upon pick up via Cash, Postal Money Ord
40% due upon delivery via Postal Money Order OR Cash ONLY. A 4% Credit Card Surcharge will apply to c
deposits.NO PERSONAL CHECKS Please

**Charges Include**
1. Disassembling and assembling of basic furniture (except cribs), loading & unloading.
2. Transportation, gas, tolls, mileage (Parking Tickets are extra)
3.Padding for protection of furniture with moving blankets, padding materials

**Estimate Information:**
This estimate includes labor, loading, unloading, and basic valuation. All furniture must be wrapped in blankets and/or protective ....
disassembly and reassembly of basic furniture is also included provided all parts are available excluding cribs. The shipper also understands that boxes & labor for packing boxes are not included and will be charged per items ordered and listed on the packing materials price list. If non-binding, the total charges are based on the actual weight of the property and may exceed the estimate subject to U.S. Federal Law and the 110% rule; you may be charged 110% of the non-binding estimate. Estimate may also be based upon or the actual space or cubic feet occupied by the property on the transport vehicle. If binding, the total amount of the binding estimate must be paid in full prior to unloading. For all estimates there may be additional charges for flights of stairs, elevators, extra drop-offs or pick-ups, re-delivery, long carriers over 150 feet from the entrance to the home and shuttles for residences in restrictive areas such as downtown Manhattan or other restrictive complexes. There will be a fuel surcharge on all shipments in the amount of 18% of the line haul charges. All charges are based upon full tariff rates. The carrier's tariff is available for inspection upon reasonable request. Please contact carrier to make arrangements.

**Dispute settlement program**
Our neutral arbitration program has been designed to give neither the carrier nor the shipper any special advantage. If a dispute arises between the carrier and the shipper Arbitration may be a mutually beneficial alternative to help resolve the dispute. Section 49 U.S.C. Section 375.211 provides that a mover must have a program in place to provide shippers with an Arbitration alternative. Arbitration is optional and not required under Federal law. 1. Summary of the arbitration process: Arbitration is an alternative to courtroom litigation. It provides each party to the dispute to present their cases and allows a neutral third party arbitrator to make decision as to the merits of each side's case. 2. Applicable costs: Each party is responsible for their own costs associated with arbitration. A benefit to the arbitration alternative may be that it is less expensive than traditional litigation. Each party is responsible for 50% of the costs associated with securing the arbitrator and 100% of their own expenses, including but not limited to attorney fees. 3. Legal effects: If the arbitration alternative is chosen, then any decision made by the arbitrator may be binding. Additionally, an arbitration decision may not be appealed in a court of law. There are many arbitration programs available at multiple locations throughout the United States. It is mandatory that JAMS Arbitration services be used for. Contact information and other information about JAMS can be found at http://www.jamsadr.com. Please contact the moving company if you wish to participate in or get more information about the arbitration program.

**Cancellation/Rescheduling Policy**
All cancelations must be made in writing at least 7 business days prior to the original move date as stated on the original estimate in order for a refund to be honored. Written cancellations may be submitted either via mail, email or fax to the office listed on this estimate. For the quickest cancellation process, it is best to forward your cancellation request via email. Your deposit will not be refundable if your cancellation notice is not received 7 business days or more prior to the first date of your moving pick up window (moving date). For original reservations made less than 7 business days prior to the move and/or postponed moves, cancellation policy does not apply, therefore deposit is non-refundable.
By placing a deposit with Available Movers & Storage, I am agreeing to the Terms & Conditions stated above. By approving this Estimate Cost for Service via my electronic or hand signature, I hereby voluntarily free Available Movers & Storage the liability of an onsite visual, and agree to an online, e-mail / over the phone estimate. I am fully aware that I am entitled to an in home consultation at my request for no additional cost and that

Case 2:22-cv-00688-JMY   Document 214   Filed 11/06/24   Page 32 of 33
Order for Service 714194 Case 2:22-cv-00688-JMY   Document 180   Filed 07/12/24   Page 64 of 79

7/24/23, 10:06 PM

it is my responsibility to request it.

## Storage
Monthly rates are charged at 50 per cubic foot, with a minimum of 200 cubic feet. Handling fees may apply.

## Packing/Unpacking
Unless specified in the Additional Services above, your move does not include packing services, unpacking services or packing materials. Packing labor and packing materials can be ordered through your salesperson or at the time of the pick-up with the foreman. All Trucks come fully equipped with a full line of moving supplies such as boxes, tape, shrink wrap, etc. Our company policy states that certain items MUST BE PROTECTED IN BOXES before being moved and loaded. You may pack these items yourself, prior to the moving date, in either the original boxes or other suitable boxes.

## Visual/In-Home Survey
Shipper has read and agrees to accept the estimate based on the terms and conditions set forth on all pages of this estimate. Shipper understands that they may request for an additional charge a visual binding estimate if they live within a 50 mile radius of the estimators location. However, the shipper hereby waives his/her right to a visual estimate and selects to have a FREE non-visual estimate of services.

## Your Right And Responsibilities When You Move
Please click on the link below to view this important pamphlet -Right and Responsibilities | FMCSA

## Protect Your Move
Please click on the link below to review this important pamphlet -Protect Your Move | FMCSA

## Valuation
Available Movers & Storage will do everything that we can to ensure that your shipment is delivered in the same condition as it was picked-up in. But, because of to unforeseen circumstances, Available Movers & Storage provides Standard Moving Valuation free of charge. Standard valuation offers coverage of 60 cents per pound per article.
If you choose to examine other coverage options, we recommend the following: 1. Check with you Home Owners or Renters Insurance 2. Call MovingInsurance.Com at 888-893-8835 or log onto movinginsurance.com for more information

## Do not Ship the Following Items
Available Movers & Storage recommends that the following items not be transported with ANY moving company. These items include passports, deeds, mortgage papers, bank reports, gold, silver, jewelry, coins, currency, diamonds, medications, military items, ammunition, government documents legal documents, personal checks. These items ARE not covered by Available Movers & Storage.

## Boxes Packed by the Owner
If you choose to pack your own boxes, please note that Available Movers & Storage has no way of determining the contents or the conditions of said contents in your boxes. Thus, these boxes will not be honored or accepted for claims, unless there is Clear and Visible damage to the actual box.

## Electronics
Available Movers & Storage. is Not Responsible for the inner working or functionality of any electronic device(including, but not limited to televisions, DVD players, surround sound systems, speakers, ps3, iPods, laptops, stoves, microwaves, etc.), unless there is Clear and Visible physical damage to the unit and the original manufactures` box it was shipped in.

## Press wood/Particle Board Furniture
Furniture made from press wood and particle boards are easily broken when dismantled and/or transported. Available Movers & Storage will accept these items for shipment, but at the risk of the owner, not Available Movers & Storage. We will not dismantle any furniture piece made of this material, regardless of it being one piece or the entire unit, unless it is at the sole responsibility of the shipper.

## Labelling All Your Items
We highly recommend labelling all your items including furniture and boxes with the name on file and order number provided for your move. We do offer labelling services at an additonal small cost. If you wish to order labels from us, please ensure to make this request directly from your salesperson before the scheduled move date. Labels will be prepared with all of your information and brought to the pick up location to be used then.

## Please Note the Following Information Regarding Valuation
If a moving company loses or damages your goods, there are 2 different standards for the companies liability based on the types of rates you pay. BY FEDERAL LAW, THIS FORM MUST CONTAIN A FILLED-IN ESTIMATE OF THE COST OF A MOVE FOR WHICH THE MOVING COMPANY IS LIABLE FOR THE FULL (REPLACEMENT) VALUE OF YOUR GOODS in the event of loss of, or damage to, the goods. This form may also contain an estimate of the cost of a move in which the moving company is liable for FAR LESS than the replacement value of your goods, typically at a lower cost to you. You will select the liability level later, on the bill of lading (contract) for your move. Before selecting a liability level, please read Your Rights and Responsibilities When You Move Provided by the moving company, and seek further information at the government website

CONT EXHIBIT "A"

Order for Service 714194

7/24/23, 10:06 PM

-Protect Your Move | FMCSA

**Understanding Your Delivery Schedule:**
To ensure proper and timely delivery of your household goods, please take the time to read your contract thoroughly. When you state your first available date for delivery, Available Movers & Storage uses that date as the starting time line for your delivery. For East Coast bound shipments, delivery can take between 3 to 14 business days. For Midwest shipments, the delivery schedule will be between 5 to 14 business days. For West Coast bound shipments, your expected delivery should be between 7 to 21 business days. For shipments destined for the Pacific Northwest, delivery makes take up to 30 days. This assures that the delivery does not arrive prior to your availability.

**Questions About Your Move**
If you have questions or issues regarding any part of your move (i.e. delivery, scheduling, inquiries, claims, or just basic customer service), please forward us an e-mail at info@availablemovers.com Please remember to include your Job Number for a faster response. Our customer services representatives will contact you immediately after receipt.

**Summary of Estimate**
(I) Unless packing services are requested above, shipper must be packed and ready to move. If you choose to do your own packing, please make sure that all loose items are placed in a box. Also, protect all fragile items and items of delicate nature with a box/carton.

(II) The deposit will be deducted from the total cost of the move and is refundable up to 7 days prior to the scheduled move date.

(III) There will be no taxes charged for moving/labor services.

(IV) Delivery can take up to 14 business days for east coast delivery and 21 business days forwest coast toWest coast delivery (or west coast to east coast), effective from first requested delivery date.[EINI

(V) At the destination, in case of a walk up building, there will be a charge of $75 for each flight of stairs after the first flight which is free.

(VI) At the destination, in case of no access for a trailer, additional special services charges for long carry or shuttle truck may apply.

(VII) Reassembly/Disassembly: Available Movers & Storage assistonly withbasicdisassembly and reassembly of standardHousehold items, such as beds or table legs. For items requiring more complex assembly or disassembly it is the customer's responsibility to arrange such services with another company.

**Full Value Protection**
Amount of Liability: (Optional Service)

**WARNING**
If a moving company loses or damages your goods, there are 2 different standards for the company's liability based on the types of rates you pay. **BY FEDERAL LAW, THIS FORM MUST CONTAIN A FILLED-IN ESTIMATE OF THE COST OF A MOVE FOR WHICH THE MOVING COMPANY IS LIABLE FOR THE FULL (REPLACEMENT) VALUE OF YOUR GOODS** in the event of loss of, or damage to, the goods. This form may also contain an estimate of the cost of a move in which the moving company is liable for **FAR LESS** than the replacement value of your goods, typically at a lower cost to you. You will select the liability level later, on the bill of lading (contract) for your move.

Before selecting a liability level, please read:

Right and Responsibilities | FMCSA

Ready To Move Brochure | FMCSA

Protect Your Move | FMCS

[CONT EXHIBIT 4 h]