## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM** | : : : : | **CIVIL ACTION** No. 2022-CV-00688 (JMY) |
| *Plaintiff,* | : | |
| v. | : : | |
| **Manfred Sternberg, Esquire; Manfred Sternberg & Associates, PC; Charlton Holdings Group, LLC; Samuel Gross; Gary Weiss; A. Solar, LLC; Daphna Zekaria, Esq.; and Sokolski & Zekaria, PC,** | : : : : : : : | |
| *Defendants,* | : : : | |

### DEFENDANTS MANFRED STERNBERG, ESQUIRE AND MANFRED STERNBERG & ASSOCIATES, PC PRE-TRIAL MEMORANDUM

Defendants Manfred Sternberg, Esquire ("Sternberg") and Manfred Sternberg & Associates, PC ("Sternberg Law") (collectively the "Sternberg Defendants") submit the following Pre-Trial Memorandum.

### A.    FACTUAL SUMMARY OF THE CASE

1.    In this civil action, a plaintiff seeks to recover from a series of defendants for the alleged failure to provide COVID-19 test kits during the global pandemic. *See, Ex. A, First Amended Complaint* ("Complaint").

1

2.     In its Complaint, Plaintiff American Environmental Enterprises, Inc. d/b/a THESAFETYHOUSE.COM ("Plaintiff") purports to plead ten causes of action against the following sets of defendants: (i) the seller of the test kits – Defendant Charlton Holdings Group, LLC ("CHG") and its president, Defendant Samuel Gross; (ii) CHG's supplier of the test kits – Defendant Gary Weiss ("Weiss"); Weiss' attorney in the transaction – Defendant Daphna Zekaria, Esq. ("Zekaria"); and, finally (iv) the Sternberg Defendants, whose sole role in the transaction was as counsel for CHG. *See, id.*

3.     Plaintiff is a Pennsylvania S corporation, solely owned by its president, Daniel J. Scully, in the business of supplying personal protection and abatement equipment (PPE). *Id and Ex. L, 07/23/24, Deposition of Daniel J. Scully ("Scully Dep.")* at 36:12-22.

4.     Scully has independently and exclusively operated Plaintiff since opening the business in approximately 1993. *Id.* at 40:12-15.

5.     Plaintiff employs ten individuals, including Scully. *Id.,* at 50:9-10.

6.     Per its website, Plaintiff's "headquarters and main shipping facility" in West Chester, Pennsylvania "is positioned to service the Northeast corridor with [its] own fleet of delivery trucks." *See, Plaintiff's Website:* https://thesafetyhouse.com/about-us.

7.     Plaintiff boasts that it can ship PPE equipment "anywhere in the United States and surrounding countries." *Id.*

8.      In January 2022, Plaintiff executed a contract with CHG to purchase 151,200 iHealth COVID-19 test kits for an agreed upon purchase price of $1,965,600. *See Ex. A, Compl.*, at ¶ 1.

9.      CHG is a New York limited liability company, owned and operated by Gross. Id. at ¶¶12-14.

10.     As alleged, Gross enlisted his longtime ally, Weiss, to procure the test kits necessary to fulfill Gross' contract with Plaintiff. *See Ex. J, 02/16/24 Deposition of Gary Weiss ("Weiss Dep. 1") at 46:12-21 and 49:13-23*.

11.     Weiss and Gross enjoyed a professional and personal relationship spanning over 20 years since the early 2000s when they first collaborated in the diamond sales industry. *See Ex. J, Weiss Dep. 1*, at 20:3-9.

12.     Weiss and Gross first discussed the concept of PPE sales early in the pandemic, but Weiss initially declined to participate in such a venture. *Id.* at 43:1-22.

13.     It was not until 2021 or 2022, when Weiss coincidentally learned of an opportunity to purchase COVID-19 PPE equipment through a non-party vendor who inquired whether Weiss knew of anyone interested in such products. *Id* at 41:18-42-20.

14.     Knowing of Gross' previous interest in PPE sales, Weiss solicited Gross on January 24, 2022 to determine whether he remained in the market for COVID-19 products. *Id.* at 45:1-11.

15.    Zekaria was licensed to practice law in New York until her recent suspension (which is unrelated to the allegations in this proceeding). *See Ex. H, 06/16/24 Grievance Decision.*

16.    Weiss engaged Zekaria to represent him in connection with the contemplated transaction between Plaintiff and CHG. *See Ex. J, Weiss Dep. 1* at 117:4-10.

17.    Zekaria provided legal counsel to Weiss and utilized her attorney IOLTA account to collect CHG's funds earmarked for Plaintiff's product. *See Ex. J, Weiss Dep. 1, at 116:23-117:5.*

18.    Sternberg Law is a Texas professional corporation with a principal place of business in Houston, Texas. *See Ex. A, Compl.,* at ¶ 9; *see also Ex. I, 02/07/24 Deposition of Manfred Sternberg* at 12:5-9.

19.    Sternberg is a member in good standing of the Texas bar and is "board certified… in consumer and commercial law." *See,* https://www.manfredlaw.com-/manfred-sternberg.

20.    Sternberg is involved in public policy representing the consumer, and was initial Chairman for the Texas Health Services Authority, appointed by Texas Governor Rick Perry. *Id.* He has nearly 40 years of experience practicing law and representing businesses. *Id.*

21.    Scully, individually and in his capacity as president of Plaintiff, was deposed on July 23, 2024. *See Ex. L, 07/23/24 Scully Deposition.*

22.    On January 21, 2022, Plaintiff agreed to purchase from CHG 151,200 iHealth Covid-19 Antigen Rapid two-pack test kits (the "Test Kits") for $1,965,600. *See Ex. A, Compl. at ¶ 23* and See *Ex. B, SPA,* at ¶¶ 2-3.

23.    Plaintiff and CHG memorialized the terms of their agreement in a contract entitled the "Sale and Purchase Agreement" ("SPA"). *See Ex. A, Compl. at ¶¶ 23. 25* and *Ex. B, SPA,* generally.

24.    Scully - on behalf of Plaintiff/buyer - and Gross – on behalf of CHG/seller, executed the SPA. *See, Ex. B. SPA.*

25.    The SPA explicitly incorporated CHG's Standard Operating Procedure ("SOP"). *See Ex. B, SPA,* at ¶ 6 and p. 8.

26.    The SOP provides a systematic list of "how Seller engages with Buyers," as follows:

1. Buyer to provide Purchase Order to Seller.
2. Seller's Attorney to draft and provide Buyer with Seller form of Sale and Purchase Agreement. ("SPA").
3. Buyer and Seller execute SPA and Buyer wires Seller's Attorney the total purchase price called for in the Purchase Order.
4. Purchase price funds released to Seller.
5. Title Transfer to Goods to Buyer per SPA.
6. Goods delivered to common carrier by Seller per SPA for delivery to Buyer.
7. Seller to provide Buyer with BOL(s) and executed Bill of Sale for Goods shipped
8. Buyer and its agents agree not to speak to anyone other than Seller or Seller's representative regarding this transaction.   Any discussions with Seller's vendors will be considered attempted circumvention.

*See Ex. B*, SPA, at p. 8.

27.    Thus, Plaintiff agreed to be bound by these all-important terms in the following order: (i) the Sternberg Defendants, as counsel for CHG, would provide Plaintiff with the SPA; (ii) upon execution of the SPA, Plaintiff would wire the purchase

price to the Sternberg Defendants; (iii) the Sternberg Defendants would release those funds to CHG; (iv) and then title for the test kits would transfer from CHG to Plaintiff. *Id.*

28.     Although this was the largest agreed upon purchase price of any transaction in Plaintiff's history, and it had previously relied upon attorneys for assistance, Plaintiff negotiated this transaction without independent counsel. *See, Ex. L, Scully Dep.* at 77:7-14, 56:14-20, and 82:20-23.

29.     When pressed why Plaintiff did not engage an attorney to negotiate any aspect of the SPA, Plaintiff's president testified that he had "been doing this forever," and was comfortable negotiating directly with vendors without any independent due diligence. *Id.* at 58:22-59:16.

30.     During its evaluation process, Plaintiff did not request, propose or suggest any revisions to the SPA. *Id.*, at 97:22-98:2 and 177:10-20.

31.     For its part, CHG engaged the Sternberg Defendants to provide CHG with "legal counsel on various PPE transactions, escrow services, strategic counsel and other matters as specifically assigned by Client." *See Ex. Q, CHG-Sternberg Fee Agreement.*

32.     As agreed upon by the parties per the SOP, the Sternberg Defendants drafted the SPA. *Ex. B, SPA,* at p. 8.

33.     Next, on January 21, 2022, Plaintiff delivered a purchase order and effectuated a wire transfer of $1,965,500 to "Seller's Attorney" into the Sternberg

Defendants' IOLTA account, as set forth in the SPA. *See Ex. A, Compl. at ¶ 140*; Ex. B, SPA, at ¶ 4; and *Ex. L, Scully Dep.*, at 65:15-19.

34.     Thus, per the SPA, title transfer and the risk of loss associated with the test kits transferred to Plaintiff on January 21, 2022. *See Ex. B, SPA*, at ¶ 9.

35.     On February 1, 2022, at CHG's direction, the Sternberg Defendants transferred an initial installment of $219,240 to Weiss via the IOLTA account maintained by Weiss' attorney, Zekaria. *See Ex. I, Sternberg Dep.* at 176:18-23, 178:8-12 and 184:1-12. *See also Ex. P, Lesovitz Report, at p. 10.*

36.     Subsequently, at CHG's direction, the Sternberg Defendants transferred the balance of the purchase price from CHG to Zekaria on February 4, 2022. *Id.*

37.     As of February 4, 2022, it was incumbent upon CHG to deliver the test kits to a common carrier with instructions to execute deliveries as directed by the Plaintiff since the funds had now cleared CHG's account as contemplated in the SPA. *See Ex. B, SPA*, at ¶ 6.

38.     In an ongoing effort to effectuate the delivery of the test kits to Plaintiff, Weiss demanded and CHG authorized the Sternberg Defendants to effectuate an additional wire of $250,000 to Weiss via Zekaria's IOLTA account on February 15, 2022. *See Ex. I, Sternberg Dep.* at 178:13-179:1.

39.     Although the $250,000 transfer was not initially contemplated by any of the interested parties, Weiss demanded this increase to address unforeseen delays and purportedly to expedite delivery. *Id.*

40.     When Weiss still had not provided the test kits by February 25, 2022, he again demanded more funds, this time $190,000, which the Sternberg Defendants wired to Zekaria's IOLTA account at the direction of their client, CHG. *See, Ex. I, Sternberg Dep.* at 180:5-16.

41.     As its counsel, the Sternberg Defendants issued a warning regarding Weiss' continued demands for payments in excess of their agreement and cautioned that it may constitute Weiss' "fraud in the inducement." *Id.* at 180:17-181:3.

42.     Still, the Sternberg Defendants complied with the requests of their client and exhausted their IOLTA account of all funds provided by Plaintiff. *Id.* at 181:4-14.

43.     As expected, given their role as counsel only to CHG, the Sternberg Defendants had *no* dialog or other exchange of any kind with Plaintiff prior to the parties' execution of the SPA, the January 21, 2022 wire transfer or the disbursements of Plaintiff's funds made at CHG's instruction. *See, Ex. L, Scully Dep.,* at 20:16-22 and 85:1-6.

44.     It was not until February 16, 2022, when Plaintiff first communicated with the Sternberg Defendants by way of a demand for a refund. *See Ex. F, 02/16/22 Email re Refund.* A refund was impossible given that the Sternberg Defendants had complied with the SPA and with their client's requests by distributing Plaintiff's funds nearly two weeks earlier. *Id.*

45.     Plaintiff filed suit the following week, on February 23, 2022.

46. Plaintiff conceded, as it must, that he fully understood the Sternberg Defendants' role as counsel only to CHG and that Plaintiff was unrepresented in the transaction. *Id.*, at 89:13-22 and 62:13-14.

47. The Sternberg Defendants' exclusive role with respect to the SPA was that of "Seller's Attorney." *See. Ex. B, SPA, at ¶¶ 4 and 5*.

48. As such, the Sternberg Defendants were expected to (i) draft the SPA, (ii) to collect funds from Plaintiff using its IOLTA account, and (iii) to release such funds at the direction of CHG. *See Ex. B, SPA,* at ¶ 6 and p. 8, ¶ 4-7.

49. As agreed upon by the contracting parties, the Sternberg Defendants were to release the purchase price funds at the direction of CHG which then triggered CHG's duty to provide the test kits and also triggered the risk of loss from CHG to Plaintiff. *See Ex. B, SPA,* at ¶¶ 4-6, 9 and p. 8 at ¶¶ 3-5. The applicable contracts do not contain any conditions prerequisite to the release of the purchase funds to CHG.

50. The SPA is completely devoid of any responsibility on the Sternberg Defendants to warrant, secure, verify or provide test kits to Plaintiff or anyone. *See Ex. B, SPA, ¶¶ 1-8 and p. 1-8.*

51. The SPA and SOP consistently reference the "Seller's Attorney." *See Ex. B, SPA,* at ¶¶ 4-5 and p. 8 at ¶¶ 2-3 but there is no mention of a "Buyer's Attorney."

52. The SPA and SOP contained no terms explicitly governing the conduct of the Sternberg Defendants other than the expectation that the "Seller's Attorney" would accept Plaintiff's wire and, in turn, distribute those funds to CHG.

53.     The Sternberg Defendants had no responsibility of any kind once they transferred the balance of the purchase price funds from Plaintiff per CHG's instructions on February 4, 2022. *See* Ex. I, Sternberg. Dep. at 176:18-23, 178:8-12 and 184:1-12. *See also Ex. P, Lesovitz Report, at p. 10.*

54.     Although the SPA does not specify an agreed upon delivery date, Plaintiff testified that it anticipated delivery on January 25, 2022, a few days after effectuating the wire. *Ex. L, Scully Dep.* at 96:7-12.

55.     CHG did not deliver test kits to Plaintiff on January 25, 2022. *Id.*, at 98:3-17.

56.     Ultimately, after several weeks of unexplained delays, Weiss allegedly grew impatient with his common carrier and planned to personally deliver the test kits earmarked for Plaintiff and other CHG customers. *Ex. J, Weiss Dep. 1,* at 102:6-20.

57.     Unbelievably, however, in or about March 2022 – after Plaintiff initiated this action - Weiss claimed that the test kits he previously inspected personally had mysteriously and inexplicably been replaced by bags of rice. *See Ex. J, Weiss Dep. 1,* at 106:15-1-7:22 *and Ex. K, 07/06/24 Transcript of Weiss' Second Deposition,* at 138:1-9.

58.     Weiss did not notify the Sternberg Defendants or Plaintiff, or any insurance agency used to insure the kits as required by contract, nor any law enforcement agency of this unexpected development. *Ex. K, Weiss Dep. 2,* at 194:4-24.

59.     Steven Angstreich, Esquire, a partner at Weir Greenblatt Pierce LLP, has been licensed to practice law in Pennsylvania for more than 50 years, and has handled actions involving allegations against attorneys. *See Ex. O, Angstreich Report*, at pp. 3, 14.

60.     Angstreich concluded that "to a reasonable degree of legal certainty that neither Mr. Sternberg nor the law firm breached any duty to Plaintiff, and neither is liable to Plaintiff for the loss of the funds." *Id.*, at p.13.

61.     The Sternberg Defendants' position is also bolstered by the opinions of Joseph W. Lesovitz, a Forensic, Litigation and Valuation Services Group partner in Eisner Amper where he specializes in calculating damages in complex commercial litigation and in providing financial consulting and forensic accounting services. *See, Ex. P, Lesovitz Report*, at p. 15.

62.     Lesovitz is a Certified Public Accountant and a Certified Fraud Examiner. *Id.*, at p. 4.

63.     Lesovitz reviewed the pertinent evidence of record and concluded that the Sternberg Defendants did not withhold any of Plaintiff's funds nor otherwise financially benefit from the contemplated transaction. *Id.*, at p. 11.

64.     Plaintiff produced no timely expert reports to either affirmatively support its unsubstantiated claims as to liability and damages, or to rebut the opinions of the Sternberg Defendants' experts.

**B.** <u>**PARTIES' CLAIMS AND DEFENSES**</u>

Plaintiff's Amended Complaint asserts causes of action for Fraud in the Inducement (Count I), Fraud (Counts II and III), Wrongful Civil Conspiracy (Count IV), and Piercing the Corporate Veil (Counts V and VI), Participation Theory (Count VII), for Unjust Enrichment/Quantum Meruit (Count VIII and XI), for Intentional Interference with Contractual Relations (Count IX) and Intentional Interference with Prospective Economic Advantage (Count X).

The Sternberg Defendants' exclusive role with respect to the SPA was that of "Seller's Attorney." As such, the Sternberg Defendants were expected to (i) draft the SPA, (ii) to collect funds from Plaintiff using its IOLTA account, and (iii) to release such funds at the direction of CHG. As agreed upon by the contracting parties, the Sternberg Defendants were to release the purchase price funds at the direction of CHG which then triggered CHG's duty to provide the test kits and also triggered the risk of loss from CHG to Plaintiff. The SPA is completely devoid of any responsibility on the Sternberg Defendants to warrant, secure, verify or provide test kits to Plaintiff or anyone. The Sternberg Defendants had no responsibility of any kind once they transferred the balance of the purchase price funds from Plaintiff per CHG's instructions on February 4, 2022.[1]

---

[1] The Sternberg Defendants contend that none of the purported "Admissions by Defendants" are binding on them. The Co-Defendants' responses to Requests for Admissions are not binding on the Sternberg Defendants. The Sternberg Defendants answered Plaintiff's excessive and otherwise burdensome Requests for Admission.

C.    **LIST OF TRIAL WITNESSES**

- Daniel Scully of the Plaintiff. It is anticipated that Mr. Scully will testify about his decision not to retain counsel and his culpability in causing Plaintiff's alleged harm.

- Manfred Sternberg, Defendant. It is anticipated that Mr. Sternberg will testify as to all aspects of his involvement in the transaction and his obligations therein. He will also testify that he did not owe any duties to Plaintiff as he did not represent him.

- Gary Weiss, Defendant. It is anticipated Mr. Weiss will testify regarding his role in the transaction.

- Daphne Zekaria, Esquire, Defendant. It is anticipated that Ms. Zekaria will testify regarding her role in the transaction.

- Samuel Gross, Defendant. It is anticipated that Mr. Gross will testify regarding his role in the transaction.

- Steven Angstreich, Esquire, a partner at Weir Greenblatt Pierce LLP. Mr. Angstreich will testify about the standard of care, if any, Mr. Sternberg owed to the Plaintiff. He will provide testimony about whether Mr. Sternberg breached any standard of care he may have owed the Plaintiff.

- Joseph W. Lesovitz, a Forensic, Litigation and Valuation Services Group partner in Eisner Amper. Mr. Lesovitz will testify about Plaintiff's damages, or lack thereof.

D.    **LIST OF TRIAL EXHIBITS**

D1.    First Amended Complaint

D2.    Sale and Purchase Agreement

D3.    Wire Documents, 1/21/2022

D4.    Bill of Sale Email, 2/8/2022

D5.    Shipping Emails, 2/15/2022

D6.    Refund Demand Email, 2/16/2022

D7.    Sternberg Answer, 8/23/2023

D8.    AGC Decision *In Re: Zekaria,* 2/18/2024

D9.    Sternberg Deposition Transcript, 2/7/2024

D9(a). Exhibits to Sternberg Deposition

D10.   Weiss Deposition Transcript 1, 2/16/2024

D11.   Weiss Deposition Transcript 2, 7/16/2024

D11(a). Exhibits to Weiss Depositions

D12.   Scully Deposition Transcript, 7/23/2024

D13.   Zekaria Deposition Transcript, 4/2/2024

D14.   Sternberg Letter disclosing expert reports, 8/16/2024

D15.   Angstreich Report, 8/16/2024

D16.   Lesovitz Report, 8/16/2024

D17.   CHG-Sternberg Fee Agreement

D18.   Plaintiff 9-29-22 Reply to Sternberg Interrogatories

D19.   Plaintiff 9-29-22 Reply to Sternberg Request for Production

D20.   Plaintiff 4-22-24 Reply to Sternberg Interrogatories

D21.   Plaintiff 4-22-24 Reply to Sternberg Request for Production

The Sternberg Defendants reserve the right to use as an exhibit, any exhibit or document identified by any of the other partes, and any document identified or produced in any deposition or identified at any deposition.

E.    <u>**MISCELLANEOUS**</u>

The Sternberg Defendants' motion for summary judgment remains pending.

The Sternberg Defendants anticipate filing various motions in limine to preclude anticipated irrelevant and prejudicial evidence.

**GOLDBERG SEGALLA LLP**

<u>By:</u>    /s/ *Seth L. Laver*

Seth L. Laver, Esq. (PA ID #094518)
Daniel S. Strick, Esq. (PA ID #88381)
1700 Market Street, Suite 3232
Philadelphia, PA 19103-3907
Telephone: 267-519-6800
slaver@goldbergsegalla.com
dstrick@goldbergsegalla.com
*Attorneys for Defendants Manfred Sternberg, Esq.*
*and Manfred Sternberg & Associates, PC*

Dated:    March 28, 2025
50656707.v1